1  Michael W. Stocker (179083)
   Reed R. Kathrein (139304)
2  Kristen McCulloch (177558)
   Danielle Smith (291237)
3  HAGENS BERMAN SOBOL SHAPIRO LLP
   715 Hearst Ave., Suite 202
4  Berkeley, CA  94710
   Telephone: (510) 725-3000
5  Facsimile:  (510) 725-3001
   mikes@hbsslaw.com
6  reed@hbsslaw.com
   kristenm@hbsslaw.com
7  danielles@hbsslaw.com

8  *Attorneys for Proposed Lead Plaintiff*

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                        SAN FRANCISCO DIVISION

| | |
|---|---|
| KALMAN ISAACS, Individually and on Behalf of All Others Similarly Situated,<br><br>                                   Plaintiff,<br><br>    v.<br><br>ELON MUSK and TESLA, INC.,<br><br>                                   Defendants. | Case No. 3:18-cv-04865-EMC<br><br>**NOTICE OF MOTION AND MOTION OF JAMES JOHNSON FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:         November 15, 2018<br>Time:         1:30 p.m.<br>Courtroom:  5, 17th Floor<br>Judge:        Hon. Edward M. Chen<br><br>ORAL ARGUMENT REQUESTED |
| WILLIAM CHAMBERLAIN, Individually and on Behalf of All Others Similarly Situated,<br><br>                                   Plaintiff,<br><br>    v.<br><br>TESLA, INC. and ELON MUSK,<br><br>                                   Defendants. | Case No. 3:18-cv-04876-EMC |

010768-11 1066365 V1

| | |
|---|---|
| JOHN YEAGER, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>TESLA, INC. and ELON MUSK,<br><br>                              Defendants. | Case No.3:18-cv-04912-EMC |
| CARLOS MAIA, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>TESLA, INC. and ELON R. MUSK,<br><br>                              Defendants. | Case No. 3:18-cv-04939-EMC |
| KEWAL DUA, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>TESLA, INC. and ELON MUSK,<br><br>                              Defendants. | Case No. 3:18-cv-04948-EMC |
| JOSHUA HORWITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>TESLA, INC. and ELON R. MUSK<br><br>                              Defendants. | Case No. 3:18-cv-05258-EMC |

010768-11 1066365 V1

| | |
|---|---|
| ANDREW E. LEFT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC. and ELON R. MUSK,<br><br>Defendants. | Case No. 3:18-cv-05463-EMC |
| ZHI XING FAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC. and ELON R. MUSK,<br><br>Defendants. | Case No. 3:18-cv-05470-EMC |
| SHAHRAM SODEIFI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., a Delaware corporation, and ELON R. MUSK, an individual,<br><br>Defendants. | Case No. 3:18-cv-05899-EMC |

010768-11 1066365 V1

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ..........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................2

I.     STATEMENT OF ISSUE TO BE DECIDED .................................................................2

     II     STATEMENT OF FACTS ................................................................................2

III.    ARGUMENT ...................................................................................................................7

          A.     The Related Actions Should Be Consolidated. ................................................7

          B.     Johnson Should Be Appointed Lead Plaintiff. .................................................8

          C.     The Court Should Approve Johnson's Choice of Lead Counsel. ...................12

IV.    CONCLUSION .............................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ............................................................................................... 9, 10

*City of Harper Woods Emps. Ret. Sys. v. AXT, Inc.*,
  2005 WL 318813 (N.D. Cal. Feb. 7, 2005) ............................................................................... 8

*Crossen v. CV Therapeutics*,
  2005 WL 1910928 (N.D. Cal. Aug. 10, 2005) ........................................................................ 11

*Ferrari v. Gisch*,
  225 F.R.D. 599 (C.D. Cal. 2004) ............................................................................................ 10

*Feyko v. Yuhe Int'l Inc.*,
  2012 WL 682882 (C.D. Cal. Mar. 2, 2012) .............................................................................. 9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................................ 11

*Investors Research Co. v. U.S. District Court for Cent. Dist. of Cal.*,
  877 F.2d 777 (9th Cir. 1989) .................................................................................................... 7

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
  2014 WL 2604991 (N.D. Cal. June 10, 2014) .......................................................................... 7

*Miller v. Ventro Corp.*,
  2001 WL 34497752 (N.D Cal. Nov. 28, 2001) ...................................................................... 11

*Richardson v. TVIA, Inc.*,
  2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) .......................................................................... 9

*Russo v. Finisar Corp.*,
  2011 WL 5117560 (N.D. Cal. Oct. 27, 2011) ..................................................................... 7, 11

*Schriver v. Impac Mortg. Holdings, Inc.*,
  2006 WL 6886020 (C.D. Cal. May 2, 2006) .......................................................................... 10

*Siegall v. Tibco Software, Inc.*,
  2006 WL 1050173 (N.D. Cal. Feb. 24, 2006) ........................................................................ 10

*Takeda v. Turbodyne Techs. Inc.*,
  67 F.Supp. 2d 1129, 1137 (C.D. Cal. 1999) ........................................................................... 12

*Westley v. Oclaro, Inc.*,
    2011 WL 4079178 (N.D. Cal. Sept. 12, 2011) ...................................................................... 10, 11

*Yousefi v. Lockheed Martin Corp.*,
    70 F. Supp. 2d 1061 (C.D. Cal. 1999) ............................................................................................ 8

**FEDERAL RULES AND STATUTES**

17 C.F.R. § 240.10b-5 ............................................................................................................................ 2, 8

15 U.S.C. § 78u-1(a)(3)(B)(v) ..................................................................................................................... 12

15 U.S.C. § 78u-4(a) *et seq* ............................................................................................................... *passim*

Fed. R. Civ. P. Rule 23 ........................................................................................................................ *passim*

Fed. R. Civ. P. Rule 42(a) .................................................................................................................... *passim*

Securities Act of 1933 ......................................................................................................................... *passim*

Securities Exchange Act of 1934 ........................................................................................................ *passim*

**OTHER AUTHORITIES**

Manual for Complex Litigation (Third), § 20.123 (1995) ........................................................................ 7

Newberg on Class Actions, §3:13 (4th ed. 2008) .................................................................................. 11

MOT. TO CONSOL. REL. CASES, APPOINT LEAD PL. AND APPROVE THE SELECTION OF COUNSEL   - iv
Case No.: 3:18-cv-04865-EMC

010768-11 1066365 V1

**NOTICE OF MOTION AND MOTION**

**TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD**

PLEASE TAKE NOTICE that pursuant to the lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), codified as Section 27(a)(3) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77z-1(a)(3) (2013), and/or Section 21D(a)(3) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3), James Johnson ("Movant") will and hereby does move the Honorable Judge Edward Chen, United States District Court, Northern District of California, San Francisco Division, Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102, on November 15, 2018, at 1:30 p.m., or as soon thereafter as the matter may be heard, for an order to consolidate these related cases; appoint him as lead plaintiff in the above-referenced actions ("Actions") against Defendants Tesla, Inc. ("Tesla" or the "Company") and Elon R. Musk (collectively "Defendants"); and approve his selection of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as lead counsel in the Actions.

Movant's motion is based on this notice of motion and motion, the memorandum of points and authorities in support thereof, the declaration of Michael W. Stocker in support of this motion, the pleadings on file in this action, oral argument and such other matters as the Court may consider in hearing this motion.

This motion is made on the grounds that the Actions arise from the same operative facts, name identical defendants, and are appropriate for consolidation. Movant makes this motion on the belief that he is the most "adequate plaintiff" as defined in the PSLRA because he has the largest known financial interest in the relief sought by the Class and have incurred substantial losses as a result of his purchase and/or acquisition of shares of Tesla securities. Further, Movant satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      STATEMENT OF ISSUE TO BE DECIDED**

1.      Whether the Court should consolidate the nine above-captioned related actions, which involve common questions of law and fact, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure;

2.      Whether the Court should appoint James Johnson as lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and

3.      Whether the Court should approve of James Johnson's selection of Hagens Berman as lead counsel for the proposed class, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

**II     STATEMENT OF FACTS**

The Actions allege that Defendants Tesla, Inc. ("Tesla" or the "Company") and Company Chairman and Chief Executive Officer ("CEO") Elon R. Musk ("Musk") violated Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  The initial complaint in the Actions was filed against Defendants on August 10, 2018 on behalf of all investors (the "Class") who acquired stock in Tesla between August 7, 2018 and August 10, 2018 (the "Class Period").[1]  Notice informing Class members of their right to move for lead plaintiff in this action was published the same day on Cision PR Newswire.  *See* Declaration of Michael W. Stocker In Support of Motion to Consolidate Cases, Appoint James Johnson as Lead Plaintiff and Approve the Selection of Lead Counsel ("Stocker Decl."), Ex. A, filed concurrently herewith.

Tesla, Inc. designs, manufactures, and sells high-performance electric vehicles and electric vehicle powertrain components.  *Chamberlain Compl.* paragraph ("¶") 2.  The Company owns its sales and service network and sells electric powertrain components to other automobile

---

[1] The initial complaint in the Actions is entitled *Isaacs v. Elon Musk, et al.*, No. 3:18-cv-04865, filed August 10, 2018, ECF No. 1 ("*Isaacs Compl.*"), asserting a class period of August 7 to August 8, 2018.  A second complaint, *Chamberlain v. Tesla, Inc., et al.*, No. 3:18-cv-04876, ECF No. 1 ("*Chamberlain Compl.*"), was filed on the same day, August 10, 2018, which makes substantially identical allegations against identical defendants on behalf of the same class of investors but extends the class period for two days (August 7 - 10, 2018).  A total of nine complaints were filed asserting substantially identical allegations against Defendants for slightly different class periods and slightly different classes of investors.  The facts set forth in this motion are taken from the *Isaacs* and *Chamberlain Compls*.

1  manufacturers. *Id*. Tesla primarily offers sedans and sport utility vehicles. *Id*. Tesla is incorporated
2  in Delaware, with its principal executive offices Palo Alto, California. *Chamberlain Compl*. ¶ 14.
3        The related Actions all allege that on August 7, 2018, Musk issued materially false and
4  misleading statements regarding the funding to take the Company private and the related investor
5  support. *Chamberlain Compl*. ¶ 19. Specifically, on August 7, 2018, Musk issued the following
6  statements on his Twitter social media account:[2]

- at 9:48 A.M.: "Am considering taking Tesla private at $420. **Funding secured.**" (Emphasis added). [*Isaacs Compl*. ¶ 32 and *Chamberlain Compl*. ¶ 20(a)].

- at 11:00 A.M.: "My hope is *all* current investors remain with Tesla even if we're private.  Would create special purpose fund enabling anyone to stay with Tesla.  Already do this with Fidelity's SpaceX investment"[3] [*Isaacs Compl*. ¶ 34].

- at 11:07 A.M.: "Absolutely.  Am super appreciative of Tesla shareholders.  Will ensure their prosperity in any scenario."[4] [*Isaacs Compl*. ¶ 35].

- at 11:13 P.M.: "Shareholders could either to [sic] sell at 420 or hold shares & go private." [*Isaacs Compl*. ¶36].

- at 11:14 P.M.: "no change"[5] [*Isaacs Compl*. ¶37].

- at 12:07 P.M.: "Def no forced sales.  Hope all shareholders remain.  Will be way smoother & less disruptive as a private company.  Ends negative propaganda from shorts."[6] [*Isaacs Compl*. ¶38].

---

[2] All times are Pacific Standard Time ("PST"), which is the time zone from which Musk was issuing his statements.

[3] This statement was in response to @Gfilche who posted to Twitter, "Noooooo!!!!! Still processing what this means, but would be sad to see all the investors who've been w/ $TSLA miss out on the upside over the next few years.  Although if this helps the mission and Elon thinks it's smart, I understand and fully support."

[4] This statement was in response to @heydave7 who posted to Twitter, "Or if you do take Tesla private, please have a provision for retail investors who have held Tesla shares prior to Dec 31, 2016 that those shares will be converted into private shares in the new private company.  This would be only fair and the right thing to do."

[5] This statement was in response to questions posted to Twitter about Musk's status as CEO if the proposed deal was successful.

[6] This statement was in response to @MindFieldMusic who posted to Twitter, "At 1st I was upset bc I thought this would be a forced buyout.  But if average folk like myself are allowed to reside with the garden walls along with you, then . . . Yes please."

- at 12:36 P.M.: "**Investor support is confirmed**. Only reason why this is not certain is that it's contingent on a shareholder vote." (Emphasis added). *Isaacs Compl.* ¶ 40 and *Chamberlain Compl.* ¶ 20(c).

- at 1:40 P.M.: "I don't have a controlling vote now & wouldn't expect any shareholder to have one if we go private. I won't be selling in either scenario." *Isaacs Compl.* ¶ 33.

News reports stated that Tesla going private at $420 per share could be the largest corporate buyout in history, which would require securing tens of billions of dollars for a company whose debt ratings currently occupy junk status. *Chamberlain Compl.* ¶ 23.

At approximately 3:30pm on August 7, 2018, Tesla released a statement via its corporate blog entitled "Taking Tesla Private," which contained an email from Musk sent to Tesla employees that states:

> Earlier today, I announced that I'm considering taking Tesla private at a price of $420/share. I wanted to let you know my rationale for this, and why I think this is the best path forward.
>
> First, a final decision has not yet been made, but the reason for doing this is all about creating the environment for Tesla to operate best. As a public company, we are subject to wild swings in our stock price that can be a major distraction for everyone working at Tesla, all of whom are shareholders. Being public also subjects us to the quarterly earnings cycle that puts enormous pressure on Tesla to make decisions that may be right for a given quarter, but not necessarily right for the long-term. Finally, as the most shorted stock in the history of the stock market, being public means that there are large numbers of people who have the incentive to attack the company.
>
> I fundamentally believe that we are at our best when everyone is focused on executing, when we can remain focused on our long-term mission, and when there are not perverse incentives for people to try to harm what we're all trying to achieve.
>
> This is especially true for a company like Tesla that has a long-term, forward-looking mission. SpaceX is a perfect example: it is far more operationally efficient, and that is largely due to the fact that it is privately held. This is not to say that it will make sense for Tesla to be private over the long-term. In the future, once Tesla enters a phase of slower, more predictable growth, it will likely make sense to return to the public markets.
>
> Here's what I envision being private would mean for all shareholders, including all of our employees.
>
> First, I would like to structure this so that all shareholders have a choice. Either they can stay investors in a private Tesla or they can be bought out at $420 per share, which is a 20% premium over the stock price following our Q2 earnings call (which had already increased by 16%). My hope is for

> all shareholders to remain, but if they prefer to be bought out, then this would enable that to happen at a nice premium.
>
> Second, my intention is for all Tesla employees to remain shareholders of the company, just as is the case at SpaceX. If we were to go private, employees would still be able to periodically sell their shares and exercise their options. This would enable you to still share in the growing value of the company that you have all worked so hard to build over time.
>
> Third, the intention is not to merge SpaceX and Tesla. They would continue to have separate ownership and governance structures. However, the structure envisioned for Tesla is similar in many ways to the SpaceX structure: external shareholders and employee shareholders have an opportunity to sell or buy approximately every six months.
>
> Finally, this has nothing to do with accumulating control for myself. I own about 20% of the company now, and I don't envision that being substantially different after any deal is completed.
>
> Basically, I'm trying to accomplish an outcome where Tesla can operate at its best, free from as much distraction and short-term thinking as possible, and where there is as little change for all of our investors, including all of our employees, as possible.
>
> This proposal to go private would ultimately be finalized through a vote of our shareholders. If the process ends the way I expect it will, a private Tesla would ultimately be an enormous opportunity for all of us. Either way, the future is very bright and we'll keep fighting to achieve our mission.
>
> Thanks, Elon

*Isaacs Compl.* ¶ 39.

The statements that funding had been "secured" to take Tesla private at $420 per share and that "[i]nvestor support is confirmed" and other supporting statements drove the price of Tesla shares up as much as $45.47, or up about 13%, during intraday trading before closing at $379.57 on August 7, 2018. *Isaacs Compl.* ¶ 42 and *Chamberlain Compl.* ¶ 22.

However, contrary to Defendant's statements that funding had been "secured" to take Tesla private at $420 per share, no such funding had in fact been secured; and contrary to Defendant's statement that investor support to take Tesla private "is confirmed", there was in fact, no such investor confirmation. In fact, even Tesla's board of directors had no evidence that funding had been secured. *Chamberlain Compl.* ¶¶ 4 and 23-24. As a result, the public statements by Defendants were materially false and misleading at all relevant times. *Chamberlain Compl.* ¶¶ 4 and 23.

MOT. TO CONSOL. REL. CASES, APPOINT LEAD PL. AND APPROVE THE SELECTION OF COUNSEL   - 5
Case No.: 3:18-cv-04865-EMC

010768-11 1066365 V1

In the days that followed, both the U.S. Securities and Exchange Commission ("SEC") and Tesla's board of directors investigated the truth of Musk's August 7, 2018 Twitter statement, and whether in fact funding had been secured. *Isaacs Compl.* ¶ 24 and *Chamberlain Compl.* ¶¶ 27-28. Major investors and banks unanimously stated that they have no knowledge of any such funding. *Chamberlain Compl.* ¶ 7. In the face of these investigations and demand for support for the false statements set forth above, Defendants remained silent, further evidencing the lack of support for the false statements. *Chamberlain Compl.* ¶ 7. In light of Tesla not being able to substantiate that the funding had been secured, the price of Tesla securities fell back down to a value near the pre-Twitter statements, with its common stock closing down at $355.49 on August 10, 2018. *Isaacs Compl.* ¶ 45 and *Chamberlain Compl.* ¶ 29.

Defendant Musk has had a long-running public battle with Tesla bearish investors who have been critical of Tesla's finances and/or contend its sales targets are unreasonable, which is the alleged to be the motivation for Musk's false statements. *Isaacs Compl.* ¶ 13.

On September 29, 2018, the SEC announced that it agreed to settlement of separate Complaints against both Elon Musk and Tesla, Inc. The Press Release issued by the SEC on the same day states, in part:

> According to the SEC's complaint against him, Musk tweeted on August 7, 2018 that he could take Tesla private at $420 per share — a substantial premium to its trading price at the time — that funding for the transaction had been secured, and that the only remaining uncertainty was a shareholder vote. The SEC's complaint alleged that, in truth, Musk knew that the potential transaction was uncertain and subject to numerous contingencies. Musk had not discussed specific deal terms, including price, with any potential financing partners, and his statements about the possible transaction lacked an adequate basis in fact. According to the SEC's complaint, Musk's misleading tweets caused Tesla's stock price to jump by over six percent on August 7, and led to significant market disruption.
>
> According to the SEC's complaint against Tesla, despite notifying the market in 2013 that it intended to use Musk's Twitter account as a means of announcing material information about Tesla and encouraging investors to review Musk's tweets, Tesla had no disclosure controls or procedures in place to determine whether Musk's tweets contained information required to be disclosed in Tesla's SEC filings. Nor did it have sufficient processes in place to that Musk's tweets were accurate or complete.

The settlements with the SEC included penalties totaling $40 million ($20 million each) and Musk's resignation as Tesla's Chairman.

## III.     ARGUMENT

### A.     The Related Actions Should Be Consolidated.

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Consolidation is appropriate under Federal Rule of Civil Procedure 42(a) where, as here, the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a) ("[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.").

Rule 42(a) affords the Court broad discretion to consolidate cases in this district. *Investors Research Co. v. U.S. District Court for Cent. Dist. of Cal.,* 877 F.2d 777, 777 (9th Cir. 1989) (district court has broad discretion to consolidate cases pending in the same district). Consolidation is appropriate, where, as here, the actions involve common questions of law and fact, and consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a); *see also* Manual for Complex Litigation (Third), § 20.123 (1995); *Russo v. Finisar Corp. (Finisar)*, No. CV 11-1252-EJD, 2011 WL 5117560, at *3 (N.D. Cal. Oct. 27, 2011) (noting that "actions [that] present virtually identical factual and legal issues . . . should be consolidated"). Courts recognize that class action shareholder suits are "particularly well suited to consolidation" because their unification expedites proceedings, reduces duplication, and minimizes the expenditure of time and money by all concerned. *Miami Police Relief & Pension Fund v. Fusion-io, Inc. (Fusion-io)*, No. 13-CV-05368-LHK, 2014 WL 2604991, at *4 (N.D. Cal. June 10,

2014); *see also City of Harper Woods Emps. Ret. Sys. v. AXT, Inc.*, No. C 04-4362-MJJ, 2005 WL 318813, at *3 (N.D. Cal. Feb. 7, 2005) (finding that consolidating securities class actions "would expedite pretrial proceedings and reduce case duplication, thereby conserving judicial resources").

Here, the Related Actions present virtually identical factual and legal issues. Each Action alleges violations of Sections 10(b) and 20(a) of the Exchange Act, names the same Defendants, and stems from the same underlying operative facts and circumstances. Consolidation would plainly expedite these proceedings, reduce duplicative efforts, and save all parties time, energy, and expense. Accordingly, the Actions are appropriate for consolidation and should be consolidated pursuant to Rule 42(a). *See Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1064 (C.D. Cal. 1999).

### B. Johnson Should Be Appointed Lead Plaintiff.

#### 1. Johnson's Motion Meets the PSLRA's Procedural Requirements.

The PSLRA governs appointment of a lead plaintiff in securities class actions arising under the Exchange Act. *See* 15U.S.C. §§ 78u-4(a)(1)-(3)(B)(iii)(I). The PSLRA requirements are both procedural and substantive. *Id*.

First, the plaintiff who files the initial action must publish notice to the class within twenty days of filing the initial action. 15 U.S.C. § 78u-4(a)(3)(A)(i). Here, notice was published on Cision PR Newswire on August 10, 2016. *See* Stocker Decl., Ex. A. Within sixty days after publication of notice, "any person" who is a member of the Class can move to be appointed as lead plaintiff regardless of whether they filed a complaint. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). After the motions have been filed, the Court is charged with selecting the class member most capable of adequately representing the interests of the class to serve as lead plaintiff, based on substantive considerations outlined in the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B). The Court:

> (s)hall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be ***most capable of adequately representing the interests of class members*** in accordance with this subparagraph.

15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added).

> The "most adequate plaintiff" assumes a rebuttable presumption that:
>
> [T]he most adequate plaintiff in any private action arising under this chapter is the person or group of persons that –
>
> > (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Richardson v. TVIA, Inc.*, No. C06-06304-RMW, 2007 WL 1129344, at *2 (N.D. Cal. Apr. 16, 2007) (discussing the PSLRA's lead plaintiff appointment process); *Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP (PJWX), 2012 WL 682882, at *2 (C.D. Cal. Mar. 2, 2012) (same) (citing *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002)).

Only by a showing that a lead plaintiff will not fairly and adequately represent the Class, or is subject to unique defenses that will render such plaintiff incapable of adequately representing the Class, will this presumption be overcome. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Under the PSLRA test, Mr. Johnson is "most adequate" proposed representative for the Class. First, he satisfies the procedural requirements of the PSLRA by timely moving this Court for appointment as lead plaintiff within sixty days of publication of the notice and submitting his PSLRA certification. *See* Stocker Decl. Ex. B. Next, as outlined below, he has the largest known financial loss in the case and otherwise satisfy the requirements of Rule 23. Movant has the willingness, resources, and expertise to obtain excellent results for the Class. Consequently, Mr. Johnson respectfully requests that the Court appoint him as lead plaintiff and approve his selection of Hagens Berman as lead counsel for the Class.

### 2. Johnson Has the Largest Financial Interest in the Relief Sought by the Class And Is Therefore Presumptively the Most Adequate Plaintiff.

The PSLRA provides a rebuttable presumption that the "most adequate plaintiff" is the plaintiff with the largest financial interest in the relief sought by the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). As a result of his long investments in Tesla stock during the Class Period, Mr. Johnson suffered a loss of $333,185.26. *See* Stocker Decl., Ex. C. Movant, therefore, has the largest known financial interest in this class action. Mr. Johnson also satisfied the procedural requirements by timely filing this motion. They need only meet the Rule 23 typicality and adequacy requirements to be entitled to lead plaintiff status under the PSLRA. "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status . . . ." *Ferrari v. Gisch*, 225 F.R.D. 599, 603 (C.D. Cal. 2004) (quoting *In re Cavanaugh*, 306 F.3d at 732). Because Movant meets all the substantive requirements, Movant is presumptively the "most adequate plaintiff" pursuant to the PSLRA.

### 3. Johnson Satisfies the Requirements of Federal Rule of Civil Procedure 23.

Section 27(a)(3)(B)(iii)(I)(cc) of the Securities Act and Section 21D(a)(3)(B)(iii)(I)(cc) of the Exchange Act, as amended by the PSLRA, provide that the lead plaintiff must satisfy the requirements of Federal Rule of Civil Procedure 23(a). At this stage of the litigation, courts focus only on the typicality and adequacy requirements of Rule 23. *Siegall v. Tibco Software, Inc.*, No. C 05-2146 SBA, 2006 WL 1050173, at *5 (N.D. Cal. Feb. 24, 2006) ("In the context of determining the appropriate lead plaintiff under the PSLRA, the requirements of 'typicality' and adequacy of representation are the key factors."); *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 WL 6886020, at *4-*5 (C.D. Cal. May 2, 2006). Consequently, in deciding motions for appointment of lead plaintiff, Courts limit their inquiry into the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *Westley v. Oclaro, Inc.*, No. C-11-2448-EMC, 2011 WL 4079178, at *2 (N.D. Cal. Sept. 12, 2011) (noting that only a "preliminary showing" of typicality and adequacy satisfies Rule 23 at the lead plaintiff stage).

### (1) Johnson's Claims Are Typical of the Claims of All Class Members.

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiffs' claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *Id.*; *see also Crossen v. CV Therapeutics*, No. C 03-03709 SI, 2005 WL 1910928, at *4 (N.D. Cal. Aug. 10, 2005). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, the claims Johnson asserts are typical of the claims of the other members of the proposed class because, Johnson: (1) purchased Tesla securities during the Class Period; (2) was harmed by Defendants' allegedly false and misleading statements; and (3) suffered damages as a result. *See Finisar*, 2011 WL 5117560, at *4 (discussing ways in which a lead plaintiff movant can meet the typicality requirement). Since the claims Johnson asserts are based on the same legal theories and arise "from the same event or practice or course of conduct that gives rise to the claims of other class members," they satisfy typicality. *See* Newberg, *et al.*, NEWBERG ON CLASS ACTIONS, §3:13 (4th ed. 2008); *accord Crossen*, 2005 WL 1910928, at *4.

Moreover, Movant is not subject to any unique or special defenses. Thus, Movant meets the typicality requirement of Rule 23 because his claim is the same as the claims of the other Class members.

### (2) Johnson Will Adequately Represent the Class.

The requirements of Rule 23(a) relating to adequate representation are satisfied if: (1) the class counsel is qualified, experienced and generally able to conduct the litigation; (2) the interests of the class are not antagonistic to one another; and (3) the lead plaintiff has a "'sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Miller v. Ventro Corp.*, No. C 01-01287, 2001

WL 34497752, at *12 (N.D Cal. Nov. 28, 2001) (quoting *Takeda v. Turbodyne Techs. Inc.*, 67 F.Supp. 2d 1129, 1137 (C.D. Cal. 1999)). As described below, Movant will adequately represent the interests of the Class.

Movant's interests are clearly aligned with the members of the Class because his claim is identical to the claims of the Class who made long investments in Tesla securities. There is no evidence of antagonism between Movant's interests and those of proposed Class members. Furthermore, Movant has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the very large financial loss they incurred as a result of the wrongful conduct alleged herein. These motivations clearly show that Movant will adequately and vigorously pursue the interests of the Class. In addition, Movant has selected lead counsel that is highly experienced in prosecuting securities class actions to represent himself and the Class in this action. Hagens Berman has undertaken high-stakes complex securities, antitrust, and consumer litigation matters for several decades and pursue active litigation in California's state and federal courts.

In sum, because of Movant's common interests with Class members, Movant's clear motivation and ability to vigorously pursue this action, and Movant's selection of highly competent counsel, the adequacy requirement of Federal Rule of Civil Procedure 23(a) is met. Furthermore, Johnson meets the typicality and adequacy requirements of Rule 23(a) and has sustained the largest losses at the hands of the Defendants, Movant is, therefore, the most adequate plaintiff to lead this action in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

**C.     The Court Should Approve Johnson's Choice of Lead Counsel.**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the Court's approval. 15 U.S.C. § 78u-1(a)(3)(B)(v). Thus, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to protect the interests of the class. § 78u-l(a)(3)(B)(iii)(II)(aa). Movant has selected Hagens Berman to serve as lead counsel for the Class.

Hagens Berman has litigated complex securities fraud actions before this Court (*In re Charles Schwab Secs. Litig.*, Case No. 08-1510-WHA) and has successfully prosecuted many other securities fraud class actions on behalf of injured investors. Stocker Decl., Ex. D. After Hagens Berman negotiated two settlements resulting in an 82.1% recovery by California class members in the Schwab case, the Honorable William Alsup commented, "Class counsel did a good job persistently advocating for the best interests of the class members, and obtained a very good result for the class . . . ."

If this motion is granted, Hagens Berman will provide members of the Class with the highest caliber of representation available. Accordingly, the Court should approve Movant's selection of lead counsel.

## IV.    CONCLUSION

For all of the foregoing reasons, Johnson respectfully requests that this Court: (1) consolidate the Actions; (2) appoint Johnson to serve as lead plaintiff in this action; (3) approve Johnson's selection of Hagens Berman as lead counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: October 9, 2018

Respectfully submitted,

*/s/ Michael W. Stocker*
Michael W. Stocker (179083)
Reed R. Kathrein (139304)
Kristen McCulloch (177558)
Danielle Smith (291237)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
mikes@hbsslaw.com
reed@hbsslaw.com
kristenm@hbsslaw.com
danielles@hbsslaw.com

*Attorneys for Proposed Lead Plaintiff James Johnson*