**LEVI & KORSINSKY, LLP**
Adam C. McCall (SBN 302130)
Adam M. Apton (SBN 316506)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel:  (415) 291-2420
Email: amccall@zlk.com
Email: aapton@zlk.com

*Attorneys for Movant Glen Littleton*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KALMAN ISAACS, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>ELON MUSK and TESLA, INC.,<br><br>Defendants. | No.  3:18-cv-04865-EMC<br><br>Hon. Edward M. Chen<br><br>**GLEN LITTLETON'S RESPONSE TO COMPETING MOTIONS FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; MEMORANDUM AND POINTS OF AUTHORITIES**<br><br>Date: November 15, 2018<br>Time: 1:30 p.m.<br>Courtroom: 5-17th Floor |
| WILLIAM CHAMBERLAIN, on behalf of himself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., and ELON MUSK,<br><br>Defendants. | No. 3:18-cv-04876-EMC<br><br>Hon. Edward M. Chen |

GLEN LITTLETON'S OPPOSITION TO COMPETITNG MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC;
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

| | |
|---|---|
| JOHN YEAGER, Individually and on Behalf of All Others Similarly Situated, | No. 3:18-cv-04912-EMC |
| Plaintiff, | Hon. Edward M. Chen |
| v. | |
| TESLA, INC. and ELON MUSK, | |
| Defendants. | |
| CARLOS MAIA, on behalf of himself and all other similarly situated, | No. 3:18-cv-04939-EMC |
| Plaintiff, | Hon. Edward M. Chen |
| v. | |
| TESLA, INC., and ELON R. MUSK, | |
| Defendants. | |
| KEWAL DUA, Individually and on Behalf of All Others Similarly Situated, | No. 3:18-cv-04948-EMC |
| Plaintiff, | Hon. Edward M. Chen |
| v. | |
| TESLA, INC., and ELON MUSK, | |
| Defendants. | |
| JOSHUA HORWITZ, Individually and on Behalf of All Others Similarly Situated, | No. 3:18-cv-05258-EMC |
| Plaintiff, | Hon. Edward M. Chen |
| vs. | |
| TESLA, INC., and ELON R. MUSK, | |
| Defendants. | |

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC;
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

| | |
|---|---|
| ANDREW E. LEFT, Individually and on Behalf of All Others Similarly Situated, | No. 3:18-cv-05463-EMC |
| Plaintiff, | Hon. Edward M. Chen |
| vs. | |
| TESLA, INC., and ELON R. MUSK, | |
| Defendants. | |
| ZHI XING FAN, Individually and on Behalf of All Others Similarly Situated, | No. 3:18-cv-05470-EMC |
| Plaintiff, | Hon. Edward M. Chen |
| vs. | |
| TESLA, INC., and ELON R. MUSK, | |
| Defendants. | |
| SHAHRAM SODEIFI, Individually and on Behalf of All Others Similarly Situated, | No. 3:18-cv-05899-EMC |
| Plaintiff, | Hon. Edward M. Chen |
| vs. | |
| TESLA, INC., a Delaware corporation , and ELON R. MUSK, an individual, | |
| Defendants. | |

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC;
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

I.    INTRODUCTION .......................................................................................................1

II.   STATEMENT OF FACTS ........................................................................................2

III.  ARGUMENT ...........................................................................................................6

    A.   Glen Littleton is the Most Capable of Adequately Representing the Full Interests of the Class Members ...........................................................................................................6

    B.   Alternatively, Glen Littleton Should be Appointed Co-Lead Plaintiff......................................16

    C.   Glen Littleton's Selection of Counsel Should Be Approved .....................................17

V.    CONCLUSION..........................................................................................................18

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC;
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alkhoury v. Lululemon Athletica, Inc.*,
No. 13-cv-4596-KBF, 2013 WL 5496171 (S.D.N.Y. Oct. 1, 2013) .................................... 7

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
No. 09-MD-2058-PKC, 2011 WL 4538428 (S.D.N.Y. Sept. 29, 2011) .............................. 14

*In re Bank of America Corp. Securities, Derivative, and Employment Retirement Income Security Act (ERISA) Litigation*,
No. 09-MD-2058-PKC, 2011 WL 3211472 (S.D.N.Y. July 29, 2011) .................................... 10, 11, 14

*Bell v. Ascendant Solutions, Inc.*,
No. 01-cv-0166, 2002 WL 638571 (N.D. Tex. Apr. 17, 2002) ........................................ 17

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
No. 17-cv-4846-WFK-PK, 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017) ......................... 17

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ......................................................................................... 7

*Chill v. Green Tree Fin. Corp.*,
181 F.R.D. 398 (D. Minn. 1998) ................................................................................... 11

*In re Critical Path, Inc.*,
No. 01-cv-00551-WHA, 2002 WL 32627559, (N.D. Cal. June 18, 2002) ....................... 14

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006) ............................................................................. 7

*Fishbury, Ltd. v. Connetics Corp.*,
No. 06-cv-11496-SWK, 2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006) ......................... 15

*Freudenberg v. E*Trade Fin. Corp.*,
No. 07-cv-8538, 2008 WL 2876373 (S.D.N.Y. July 16, 2008) ................................. 16, 17

*Hall v. Medicis Pharm. Corp.*,
No. CV08-1821PHX-GMS, 2009 WL 648626 (D. Ariz. Mar. 11, 2009) ....................... 12

*Johnson v. Pozen, Inc.*,
No. 07-cv-599, 2008 WL 474334 (M.D.N.C. Feb. 15, 2008) ...................................... 16

*La. Mun. Police Employees' Ret. Sys. v. Green Mt. Coffee Roasters, Inc.*,
No. 11-cv-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) ........................................ 16

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC;
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

*Laborers Local 1298 Pension Fund v. Campbell Soup Co.*,
   No. 00-cv-152, 2000 WL 486956 (D.N.J. Apr. 24, 2000) .................................. 17

*In re Lucent Techs., Inc. Sec. Litig.*,
   221 F. Supp. 2d 472 (D.N.J. 2001) ............................................................. 16

*Miller v. Ventro Corp.*,
   No. 01-cv-1287, 2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) .......................... 16

*In re New Oriental Edu. & Tech. Grp. Secs.Litig.*,
   293 F.R.D. 483 (S.D.N.Y. 2013) ............................................................. 12, 13

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ................................................................. 16

*Perrin v. Sw. Water Co.*,
   No. 08-cv-7844-FMC-AGRx, 2009 WL 10654690 (C.D. Cal. Feb. 13, 2009) .................. 17

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ............................................................... 16

*Plumbers & Pipefitters Local 51 Pension Fund v. First Bancorp*,
   409 F. Supp. 2d 482 (S.D.N.Y. 2006) ......................................................... 17

*Police & Fire Ret. Sys. of the City of Detroit v. Safenet, Inc.*,
   No. 06-cv-5797, 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007) .............................. 7

*Richman v. Goldman Sachs Group, Inc.*,
   274 F.R.D. 473 (S.D.N.Y. 2011) ............................................................... 13

*In re Royal Bank of Scotland Grp. PLC Sec. Litig.*,
   765 F. Supp. 2d 327 (S.D.N.Y. 2011) ......................................................... 11

*In re Veritas Software Corp. Securities Litigation*,
   496 F.3d 962 (9th Cir. 2007) ................................................................. 14

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
   712 F. Supp. 2d 958 (N.D. Cal. 2010) ........................................................ 11

*Yousefi v. Lockheed Martin Corp.*,
   70 F. Supp. 2d 1061 (C.D. Cal. 1999) ........................................................ 17

*In re Zynga Inc. Sec. Litig.*,
   No. 12-cv-04007-JSW, 2014 WL 721948 (N.D. Cal. Feb. 25, 2014)......................... 11

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC;
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

1

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................................ 1

15 U.S.C. § 78u-4(a)(3)(B)(i) .......................................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B)(v) ........................................................................................ 18

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC;
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

## I.    INTRODUCTION

In this securities class action against Elon Musk and Tesla Inc., nine motions have been filed for appointment of lead plaintiff and lead counsel, representing a wide variety of individual and institutional investors, some moving individually and others as part of groups.[1] The Court is now tasked with appointing "the member or members" of the class who can most adequately prosecute this case on the class' behalf, consistent with the requirements of the Private Securities Litigation Reform Act ("PSLRA"). 15 U.S.C. § 78u-4. This task is unusually complex because this is a unique securities action involving a multitude of different types of investors who were harmed by the Defendants' fraud, including long interests, short interests, and options trading. This makes it very different from the typical securities class action where all investors are generally harmed in the same way. In typical securities class actions, it is relatively straightforward to conclude that the movant who suffered the largest loss will most adequately represent the class. That may not be the case here where a movant who suffered the largest loss as a result of a short position, for instance, may not adequately represent the interests of investors who held long positions or engaged in other trading strategies with Tesla stock or options. It is critical that the Court address these issues at this early stage and ensure that all members of the Class are adequately represented by the lead plaintiff or plaintiffs because it can be time consuming and prejudicial to try to fix a problem later in the case such as at the class certification stage. The result may be that the full class's interests will be inadequately protected or that otherwise avoidable litigation may result.

No other individual movant appears to adequately represent the full class of injured Tesla investors better than Movant Glen Littleton. Littleton suffered significant losses in excess of $3.5 million which

---

[1] The nine movants are: FNY Investment Advisers, LLC (Dkt. 40); Glen Littleton (Dkt. 41); the Tesla Investor Group, consisting of Kulik, Han, Riahi, Mehta, and Nama (the "First Tesla Investor Group") (Dkt. 45); Bridgestone Investment Corporation Limited (Dkt. 46); the Tesla Investor Group, consisting of Left, PROtecto Informatikai Szolgáltató Korlátolt Felelősségű Társaság, Boutin, Shirazi, and Vilas Capital Management, LLC (the "Second Tesla Investor Group") (Dkt. 47); James Johnson (Dkt. 64); Tempus International Fund SPC and Opportunity Unique Fund Inc. (Dkt. 71); the Tesla Investor Group, consisting of Abrams, Freeland, Lyman, and Gaur (the "Third Tesla Investor Group") (Dkt. 74), and Dany David (Dkt. 80). However, the First Investor Group has filed a Notice of Non-Opposition to the competing motions (Dkt. 104), and the Third Investor Group has filed a Notice of Withdrawal of its Motion for Appointment as Lead Plaintiff (Dkt. 102).

1

GLEN LITTLETON'S OPPOSITION TO COMPETITNG MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC;
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

were the result of a combination of short positions, long positions, and options. Littleton, therefore, is properly incentivized to prosecute this class action to maximize the recovery for all of these classes of investors. No other individual movant can offer the same range of adequate representation to the class alleged in this case. Accordingly, Littleton respectfully submits that the Court should appoint him as Lead Plaintiff. Alternatively, the Court should include Littleton as a Co-Lead Plaintiff as part of a group of movants to represent the full interests of the Class.

## II.        STATEMENT OF FACTS

Tesla, Inc. is a technology company that designs, develops, manufactures, and sells fully electric vehicles and solar energy products. *Left* ¶ 2.[2]  Presently pending before the Court are nine related securities class action lawsuits (the "Actions") brought on behalf of all persons who purchased, sold, or otherwise acquired the securities of Tesla, Inc. ("Tesla" or the "Company") between August 7, 2018 and August 17, 2018, inclusive (the "Class Period").[3]  Plaintiffs in the Actions allege violations of the Securities Exchange Act of 1934 (the "Exchange Act") against the Company and Elon Musk ("Musk").

The Actions arise from Defendant Musk's August 7, 2018, afternoon tweet stating, "Am considering taking Tesla private at $420. Funding secured."  ¶ *Left* ¶ 32.  In the subsequent hours after this initial tweet, Defendant Musk issued additional tweets and statements about the supposed secured going-private transaction, including answering tweets from current Tesla shareholders.  *Left* ¶¶ 34-36. These tweets included Musk's statement that "Investor support is confirmed.  Only reason why this is not certain is that it's contingent on a shareholder vote." *Left* ¶ 5.  Moreover, Tesla posted on a corporate blog

---

[2] Citations to "¶ (Plaintiff Name) ____" are to paragraphs from the corresponding class action complaint for violations of the federal securities laws filed in one of the Actions. The facts set forth in the complaints filed in the Actions (collectively, the "Complaints") are incorporated herein by reference.

[3] The nine actions are captioned *Isaacs v. Musk, et al.*, 3:18-cv-04865-EMC ("*Isaacs* Action"), *Chamberlain v. Tesla Inc. et al.*, 3:18-cv-04876 -EMC ("*Chamberlain* Action"), *Yeager v. Tesla, Inc. et al.*, 3:18-cv-04912 -EMC ("*Yeager* Action"), *Maia v. Musk. et al.*, 3:18-cv-04939-EMC ("*Maia* Action"), *Dua v. Tesla, Inc. et al.*, 3:18-cv-04948-EMC ("*Dua* Action"), *Horwitz v. Tesla, Inc. et al.*, 3:18-cv-05258-EMC ("*Horwitz* Action"), *Left v. Tesla, Inc. et al.*, 3:18-cv-05463-EMC ("*Left* Action"), *Fan v. Tesla, Inc. et al.*, 3:18-cv-05470-EMC ("*Fan* Action"), and *Sodeifi v. Tesla, Inc. et al.*, 3:18-cv-05899-EMC ("*Sodeifi* Action").  These nine actions each listed a different Class Period, the broadest Class Period being all who purchased, sold, or otherwise transacted in Tesla securities between August 7, 2018 and August 17, 2018, both dates inclusive.

2
GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

an email from Musk to Tesla's employees concerning the potential going-private transaction. *Horowitz* ¶ 24. The statements made by Musk and Tesla caused the stock price to skyrocket to more than $45 above the previous day's closing price with over 30 million shares being traded on August 7, 2018 alone. *Isaacs* ¶ 42. In response to the tweets and Tesla's rising stock price, many Tesla short-sellers were forced to cover their positions at artificially high prices that resulted in losses of approximately $1.3 billion in a single day. *Left* ¶ 6.

The above information proved to be false. The Complaints generally allege that throughout the Class Period, the Defendants made false and/or misleading statements and/or failed to disclose that: (1) that the Defendants had not secured funding for the Going-Private Transaction; (2) that Musk's statements that the going-private transaction only required shareholder approval were false since the going-private transaction required approval by the Company's board of directors and even the board was unaware of the funding referred to by Musk; (3) that the status and likelihood of the going-private transaction was misrepresented to the market because financing for it had not been secured and Tesla's board approval was required, and (4) as a result of the foregoing, Defendants' statements about Tesla's business, operations, and prospects, were materially false and/or misleading and/or lacked a reasonable basis.

On August 8, 2018, the day following Musk's tweets, several of Tesla's directors issued a statement regarding Musk's previous discussion with the board about a going-private transactions and the "funding for this to occur." *Isaacs* ¶ 16. The same day, news began entering the market raising questions as to whether Musk had the funding secured for the going-private transaction. Included in this news was an article by *The Wall Street Journal* that reported that the U.S. regulators were inquiring if "Elon Musk was truthful when he tweeted that he had secured funding" for the proposed buyout of Tesla and if Musk had a "factual basis" to support "that the going-private transaction was all but certain, with only a shareholder vote needed to pull it off." *Left* ¶ 37. As a result of that news, Tesla securities incurred its first of many drops, losing $9.23 per share. *Left* ¶ 38.

On August 9, 2018, *Bloomberg* reported that the SEC was "intensifying its scrutiny of Tesla's public statements" in the wake of Musk's tweet two days before, and *Reuters* reported that Tesla's board of directors had "not yet received a detailed financing plan from Musk and specific information on who

3

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

will provide the funding." *Left* ¶¶ 39-40.  In response to this news, Tesla's stock price fell an additional $17.89 per share to close at $352.45 on August 9, 2018.  *Left* ¶ 41.

On August 13, 2018, Musk tweeted again about the proposed going-private transaction, announcing he was working with Goldman Sachs and Silver Lake for the transaction. *Left* ¶ 42.  That same day, Tesla posted on its corporate blog an "Update on Taking Tesla Private" from Musk.  *Left* ¶ 43. Also on the same day, *The New York Times* published an article that reported that Tesla's board of directors was "totally blindsided by Mr. Musk's decision to air his plan on Twitter" and that plan had not been "cleared" by the board.  *Left* ¶ 44. The next day, August 14, 2018, *Bloomberg* published an article that reported that neither Goldman Sachs nor Silver Lake had started to work with Musk pursuant to signed agreements, in stark contrast to what Musk previously stated.  *Left* ¶ 45.  In response to these announcements, Tesla's stock fell an additional $8.77 per share to close at $347.64 per share on August 14, 2018.  *Left* ¶ 46.

Thereafter, on August 16, 2018, *The New York Times* published an article that contained an in-depth interview with Musk that described the events that led up to his original August 7, 2018 going-private tweet and revealed his high-stress levels and use of prescription drugs to deal with this stress.  *Left* ¶ 47.  That same day, *The Wall Street Journal* reported that the "SEC is investigating whether Mr. Musk intentionally misled investors when he tweeted about the proposal in a bid to hurt short-sellers by driving up Tesla's stock price." On this news Tesla's stock dropped once again, declining $29.95 per share to close at $305.50 on August 17, 2018.  *Left* ¶ 49.

The effect of Defendants' fraudulent statements on Tesla's stock price can be clearly seen on the following chart:

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18



19   As a direct result of Musk's fraudulent tweets and statements, investors of all types of securities,

20   including investors with long positions, short positions, call options, and put options were harmed. For

21   example, investors who held a short position in Tesla prior to the Class Period and closed that position

22   after Musk's August 7, 2018 tweet suffered significant losses from the increase in stock resulting from

23   Musk's tweet. Alternatively, investors who bought common stock after Musk's August 7, 2018 tweet and

24   sold the common stock after one or more of the corrective disclosures were harmed when the truth was

25   revealed. Option holders who held long and short positions in Tesla were similarly harmed. Therefore,

26   this Court should appoint a representative who has standing and can adequately represent all types of

27   investors in this action.

28

5

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

Littleton lost approximately $3,518,478.68.  Littleton was harmed as a result of the alleged fraud from the positions he opened prior to the Class Period and closed during the Class Period, positions he opened and closed during the Class Period, and the position he opened during the Class Period and closed after the Class Period. Littleton incurred losses from both long and short positions in Tesla's calls and puts, and a long position in its common stock.[4] More specifically, as a result of his long call positions entered into before the Class Period or during the Class Period, Littleton incurred losses of approximately $3,296,977.20. Additionally, as a result of his long put positions entered into before the Class Period, Littleton incurred losses of approximately $1,316,573.48. Furthermore, during the Class Period, Littleton also purchased common stock that he ultimately incurred approximately $3,552 in losses. Moreover, Littleton also incurred losses as result of his short positions in options. As a result of his short position created by selling Tesla January 2020 $500 calls contracts during the Class Period, Littleton incurred losses of approximately $45,490.00. From his short position created before the Class Period by buying Tesla June 2019 $300 put contracts, Littleton incurred losses of approximately $215,320.00.  Therefore, Littleton has the most to gain from the litigation bringing suit for all members of the class and is the most adequate lead plaintiff.

## III.      ARGUMENT

### A.  Glen Littleton is the Most Capable of Adequately Representing the Full Interests of the Class Members

In a PSLRA class action, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Courts are to "adopt a presumption" that the most adequate plaintiff is the plaintiff who: (1) has either filed a complaint or moved to be named lead plaintiff, (2) has the largest financial interest in the relief sought by the class, and (3) satisfies the

---

[4] The loss figures in the remainder of this paragraph list Littleton's losses from his trades in a specific Tesla security that he incurred a loss. For instance Littleton incurred losses of approximately $220,080.00 from his trades in Tesla January 2020 $350 call contracts. Any of Littleton's trades in other Tesla securities that resulted in a gain have been offset against his collective losses as depicted on his loss chart. *See* ECF No. 42-2. After offsetting the above losses in specific Tesla securities by gains in other specific Tesla securities as depicted in his loss chart, Littleton incurred a loss of $3,518,478.68. *Id.*

6
GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and that "the representative parties will fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). "[T]he district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). Although the Ninth Circuit clarified many aspects of the PSLRA's lead plaintiff selection procedure in *Cavanaugh*, it expressly declined to instruct district courts on how to calculate the largest financial stake. 306 F.3d at 730 n.4. This case is highly unusual due to the different types of securities holders affected by the fraud and the different types of losses that were suffered. It is very rare for both short and long investors to have suffered losses and be members of the same class. Accordingly, as the majority of movants have significant losses, this Court should take a broader view when appointing Lead Plaintiff and consider the representation of all the financial interests contained within the proposed class.

As a direct result of Musk's fraudulent tweets and statements, investors of all types of securities, including investors with long positions, short positions, call options, and put options were harmed. Littleton owned both common stock and options, and both long and short positions in Tesla. For example, Littleton held a short position in Tesla prior to the August 7, 2018 tweet and was harmed when he closed that position after Musk's tweet. Further, Littleton bought common stock during the Class Period and held it throughout the corrective disclosures. When compared to other movants whose interests are limited to short losses or long losses, Littleton's losses were a combination of short positions, long positions, and options, and therefore he has the most to gain by assuring a class and outcome that covers all class members. *See In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (the court appointed the movant with lower financial losses who was "the more adequate and preferable of the two plaintiffs" naming the movant as sole "lead plaintiff, to minimize control problems and expense."); s*ee, e.g., Alkhoury v. Lululemon Athletica, Inc.*, No. 13-cv-4596-KBF, 2013 WL 5496171, at *1 (S.D.N.Y. Oct. 1, 2013) (finding a negligible difference in losses "insufficient to outweigh the substantial financial interest of [movant] that is evidenced by the other factors.") (citing *Police & Fire Ret. Sys. of the City of Detroit v. Safenet, Inc.*, No. 06-cv-5797, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007)).

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

1    The other movants do not have the same interests. For example, Tempus and OUF did not hold a

2    single long position in Tesla during the Class Period. The entirety of Tempus' and OUF's losses arise

3    from the movants closing out their short positions on August 7, 2018. This means that Tempus and OUF

4    do not have the same interests as Littleton and many of the Class members who also held long positions

5    and were harmed by statements and factors that had nothing to do with Tempus' and OUF's losses.

6    Therefore, Tempus and OUF have less to gain from asserting many of the allegations in the lawsuits. As

7    the following chart shows, Littleton represents a greater range of the potential types of losses suffered by

8    the Class than any other movant:

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

| Movant[5] | Long Position Call Options | Short Position Call Options | Long Position Put[6] Options | Short Position Put Options | Long Position Common Stock | Short Position Common Stock | Claimed Losses[7] |
|---|---|---|---|---|---|---|---|
| **Tempus and OUF** | | | | | | | |
| Tempus | NO | NO | NO | NO | NO | **YES** | $14,860,089 |
| OUF | NO | NO | NO | NO | NO | **YES** | $1,011,257 |
| **Bridgestone Investment Corporation** | **YES** | NO | NO | NO | **YES** | NO | $3,869,744 |
| **Glen Littleton[8]** | **YES** | **YES** | **YES** | **YES** | **YES** | NO | $3,518,479 |
| **Second Tesla Investor Group:** | | | | | | | |
| Andrew Left | NO | **YES** | NO | NO | **YES** | UNCLEAR[9] | $1,682,147 |
| PROtecto Kft | NO | NO | **YES** | NO | **YES** | NO | $843,565 |
| Thierry Boutin | NO | NO | **YES** | NO | **YES** | NO | $707,922 |
| Vilas Capital Management, LLC | NO | NO | NO | NO | NO | UNCLEAR 10 | $695,081 |
| Dr. Abrar Shirazi | NO | NO | NO | NO | **YES** | NO | $653,322 |
| **First Tesla Investor Group:** | | | | | | | |
| Jiri Kulik | NO | NO | NO | NO | **YES** | NO | $717,354 |
| Raghunath Nama | **YES** | NO | NO | NO | **YES** | NO | $212,203 |
| Jason Han | NO | NO | NO | NO | **YES** | NO | $116,870 |
| Esmaeil Riahi | NO | NO | NO | NO | **YES** | NO | $131,307 |
| Deepak Mehta | NO | NO | NO | NO | **YES** | NO | $70,270 |
| **Dany David** | NO | **YES** | NO | NO | **YES** | UNCLEAR[11] | $439,400 |
| **James Johnson** | NO | NO | NO | NO | NO | **YES** | $335,185 |
| **FNY Investment Advisers, LLC[12]** | **YES** | UNCLEAR | UNCLEAR | NO | NO: NET SELLER/NET GAINER[13] | NO | Failed to provide loss amount |

---

[5] In this chart, if the movant had at least one loss resulting from a specific security position the chart was marked with a "YES." For instance if a movant bought Tesla January 2020 $450 call contracts that resulted in a gain (a long position in calls), but also incurred a loss from purchasing Tesla January 2020 $500 call contracts (a long position), the above chart will have a "YES" designated in the "Long Position Call Options." If all long call positions resulted in a gain or no loss, the chart designates a "NO."

[6] "Long Position Put" means the movant sold a put to enter into a long position in Tesla. "Short Position Put" means that the movant bought a put to enter into a short position in Tesla.

[7] "Claimed Losses" rounded to the nearest dollar. No losses are provided for FNY Investment Advisers, Inc. as they failed to provide a loss number in their papers filed in support of their motion for appointment as Lead Plaintiff. *See* ECF Nos. 40, 40-1.

[8] Littleton incurred losses from his investments in Tesla: common stock; January 2020 $250 put contracts; June 2019 $300 put contracts; January 2020 $300 put contracts; January 2020 call contracts; January 2020

9

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

The risks of failing to ensure the adequate protection of all traders' interests are most evident in cases where those risks materialized into needless litigation. For example, in *In re Bank of America Corp. Securities, Derivative, and Employment Retirement Income Security Act (ERISA) Litigation*, No. 09-MD-2058-PKC, 2011 WL 3211472, at *12 (S.D.N.Y. July 29, 2011), the class was originally defined to include "owners of call options purchased during the class period and put options sold during the class period." *Id*. at *12. However, the lead plaintiffs that the court appointed were not significant options traders. As a result, the defendants argued that "these claims should be dismissed because the class plaintiffs did not themselves purchase or sell these securities, and therefore lack Article III standing to bring a justiciable claim." *Id*.

---

$350 put contracts; June 2019 $400 call contracts; January 2020 $400 call contracts; January 2020 $400 put contracts; June 2019 $450 call contracts; and January 2020 $500 calls. ECF No. 42-2. Littleton's transactions in the following securities resulted in gains: January 2020 $200 call contracts; June 2019 $500 call contracts; June 2019 $550 call contracts; January 2020 $550 call contracts; January 2020 $600 call contracts; January 2020 $600 put contracts; and January 2020 $600 call contracts. *Id*.

[9] Andrew Left's loss chart reflects that on August 7, 2019 that he purchased shares to cover shorts that he appears to have sold short prior to the beginning of the Class Period. ECF No. 51-2. His loss chart, however, provides no pre-Class period transaction information to match the cover purchases Andrew Left made during the Class Period. *Id*. As, such it is impossible to tell utilizing the Last-In-First-Out methodology ("LIFO") whether or not these covers resulted in a recoverable loss.

[10] Vilas Capital Management, LLC's loss chart reflects that it covered short sales of common stock on August 7, 2018. ECF No. 51-2. Its loss chart, however, provides no pre-Class Period trade information to match the cover purchases it made during the Class Period. *Id*. As such, it is impossible to tell utilizing LIFO whether these covers resulted in a recoverable loss. Likewise, Vilas Capital Management, LLC's loss chart neither provides any transactions after the Class Period to cover the short sales entered into during the Class Period or the offsetting value of these positions. *Id*.

[11] David Dany possibly has a short position in shares. It is possible, and even likely, however, that the position was opened and closed on August 7, 2018 before Musk's 12:48 p.m. tweet as supported by the trade prices listed. *See* ECF No. 81-3. In such event, his losses would not have resulted as a result of the alleged fraud.

[12] FNY Investment Advisors, LLC ("FNY") only provided transactional information during the Class Period. ECF No. 40-1. Given the way the trade transactions are presented, it is impossible to ascertain in certain instances whether FNY has a position that resulted in a recoverable loss. For example, it is unclear whether or not FNY has a short call position when its opening transactions listed are sales of call contracts because they could match to a pre-Class Period call contract purchase and no "buy to open" or "sell to close" language was utilized. Furthermore, FNY did not provide a loss chart detailing its losses from its various trades in Tesla securities. *See* ECF Nos. 40, 40-1.

[13] FNY sold more shares and received more proceeds than it expended on its transactions in Tesla common stock during the Class Period. ECF No. 40-1.

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

The court largely agreed. It noted that only one plaintiff "purchased 10 call options for $35 and sold them for $14.50, for a loss of more than $20. This class representative's call options were callable in January 2011." *Id.* at *14 (citation omitted). The court thus held that "lead plaintiffs have standing to pursue claims solely on behalf of holders of January 2011 call options." *Id.* Notably, the court rejected an attempt by Dornfest, an options trader, to "provide[] standing for lead plaintiffs to pursue all BofA options claims," on the grounds that "Dornfest is not a named class representative, [such that] his purchases do not establish standing to pursue classwide claims." *Id.* at 14 n. 11. As a result, option traders were significantly prejudiced by the failure to have a lead plaintiff with standing to assert their claims.

Similarly, if the Court decides to appoint a lead plaintiff in this case that does not include all interests, including short positions, long positions, and option holders, there is a risk that this will invite attacks on standing. *See, e.g., In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSW, 2014 WL 721948, at *3 (N.D. Cal. Feb. 25, 2014) (dismissing claims because lead plaintiff(s) lacked standing); *In re Royal Bank of Scotland Grp. PLC Sec. Litig.*, 765 F. Supp. 2d 327, 339 (S.D.N.Y. 2011) (same); *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 965 (N.D. Cal. 2010) (same);. Littleton is the most adequate plaintiff to handle all of the class's interests. Appointing Littleton as Lead Plaintiff substantially forecloses such attacks. *See, e.g., Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 406 (D. Minn. 1998) ("[O]ur role is not to resolve the standing issue, which appears to remain open to honest debate, but to determine whether the debate itself is substantive enough" to warrant prophylactic measures.).

Another complication that has arisen in other securities cases is the outright exclusion of certain traders by lead plaintiff and lead counsel from the class definition. This is especially evident here where certain traders are *already* excluded by the class definitions in some of the above-captioned actions. For example, in the *Issacs* complaint, the class is limited to "all persons who *purchased* Tesla securities after 12:48pm eastern standard time on August 7, 2018 through and including August 8, 2018." This definition fails to include individuals who closed short positions by purchasing securities after Musk's tweet.[14] Additionally, the *Yeager* complaint limits the class to "all individuals and entities who purchased or

---

[14] The *Maia*, *Horwitz*, and *Fan* complaints have similar limitations against investors with short positions in the class definition.

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

otherwise acquired Tesla *common stock* on the public market during the Class Period [from August 7, 2018 through August 9, 2018, both dates inclusive]." This completely ignores option holders and investors with short positions that were harmed as a result of the fraud. On the other hand, the *Dua* complaint defines the class as "all persons and entities who had *open short positions or put options* for Tesla as of August 7, 2018 or August 8, 2018, and who suffered damages as a result of the misconduct alleged herein." This definition excludes purchasers of common stock from the class definition.

Littleton does not have the above issues as he held both long and short positions, as well as option contracts. If Littleton is appointed, he will ensure that the class is defined to include all members of the class, eliminating any prejudicial omission. Littleton's raising of this issue now is evidence that he will be motivated to ensure all traders are fully protected, and evidence of the concrete benefit Littleton brings to the case.

More generally, unless Littleton is appointed, there can be no guarantee that all types of traders will be included at all in the case going forward. In *In re New Oriental Education & Technology Group. Securities Litigation*, 293 F.R.D. 483 (S.D.N.Y. 2013), that is precisely what happened. Although options traders were initially part of the case, the lead plaintiff's amended complaint did "not assert claims on behalf of purchasers or sellers of EDU option contracts." *Id*. at 485. This was so even though counsel for the lead plaintiff initially represented to counsel for an options trader that options traders' claims would be pursued. *Id*.

The lead plaintiff claimed that this decision was based on fears that options claims could not meet certain class certification requirements because "option contracts were [too] thinly traded … to substantiate the use of the fraud-on-the-market doctrine." *See In re New Oriental*, No. 12-cv-05724-JGK, Dkt. 47 (S.D.N.Y. Apr. 26, 2013) (lead plaintiff's opposition brief).[15] The options trader then requested

---

[15] To the extent competing movants raise similar arguments against Littleton, *e.g.*, that his claims invite unique defenses or raise complicated class-certification issues, it is premature to address those issues now. "However, many courts have appointed options traders as lead plaintiffs to represent the interests of common stockholders." *Hall v. Medicis Pharm. Corp.*, No. CV08-1821PHX-GMS, 2009 WL 648626, at *4 (D. Ariz. Mar. 11, 2009) (citing cases). If there are questions whether the claims of one or more categories of Tesla investor do not meet the requirements of class certification under Federal Rule of Civil Procedure 23, it is preferable that these questions are addressed and litigated by a Tesla investor such as Littleton who actually has a financial interest in obtaining class certification for the broadest range of Tesla investors, including the categories that are subject to question. The alternative is a lead plaintiff who

12
GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

1   either appointment as co-lead plaintiff, or severance and permission to proceed with a separate class

2   action. *In re New Oriental*, 293 F.R.D. at 484. The defendants and the existing lead plaintiff strongly

3   opposed, arguing, among other things, that severance would "result in an 'ecosystem' of additional class

4   actions for all of the claims that the lead plaintiff excises," and that the existing lead plaintiff's authority

5   to define the class should not be disturbed. *Id*. at 488.

6           The court agreed that the failure to include options traders posed a substantial problem, including

7   because options traders no longer benefited from *American Pipe* tolling as a result of being omitted from

8   the class, thus creating substantial "statute of limitations repercussions." *Id*. at 487. Further, in response

9   to the existing lead plaintiff's claims that the options class plaintiffs could not rely on the fraud-on-the-

10  market doctrine, the court noted that to accept that argument without permitting severance "would have

11  the effect of peremptorily dismissing the options class claims without any briefing on whether such a

12  dismissal was warranted." *Id*. at 488. Thus, "in order to protect the potential options class," the court

13  severed the option trader's case and ordered that he "may pursue his claims on an individual basis and can

14  seek to have a class certified if he can satisfy all of the requirements for such a class action." *Id*.

15          Although the court in *In re New Oriental* severed the option trader's case, other courts have not

16  left traders with the same outcome when they are excluded from the class definition. For example, in

17  *Richman v. Goldman Sachs Group, Inc.*, 274 F.R.D. 473 (S.D.N.Y. 2011), the court rejected Bochner's,

18  an options trader's, application for appointment as co-lead plaintiff, despite Bochner's argument that the

19  other movants would not adequately protect options traders. In so doing, the court noted that "the option

20  claims raised by Ms. Bochner can be handled in other ways which fully protect the interests of her

21  proposed class," but did not elaborate on what those methods were. *Id*. at 476-77. Later, when the

22  appointed lead plaintiffs filed their consolidated complaint and class certification motions, options traders

23  were not included. *See In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10-cv-03461-PAC, Dkt. 68

24  (S.D.N.Y. July 25, 2011) (consolidated complaint) (covering only "purchasers" of Goldman securities,

25  and thus omitting at least put option sellers); *see also In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10-

26  cv-03461-PAC, Dkt. 136 (S.D.N.Y. Jan. 30, 2015) (class certification motion) (covering only Goldman

27  
28  _____
    has no incentive to advocate on behalf of those Tesla investors and who may be inclined to simply drop
    them from the class rather than litigate the issue.

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

1    "common stock," and thus definitively excluding options traders).

2           In the *Bank of America* case described above, Dornfest, the options trader whose attempt to protect

3    options traders' interests was rebuffed, later tried to vindicate those interests by filing a separate class

4    action on behalf of Bank of America options traders. *See In re Bank of Am. Corp. Sec., Derivative, &*

5    *Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09-MD-2058-PKC, 2011 WL 4538428, at *1 (S.D.N.Y.

6    Sept. 29, 2011). However, the court rejected that attempt as well, essentially deferring to the lead

7    plaintiffs' decision to abandon options traders. *Id.* Instead, the court only permitted Dornfest to pursue his

8    claims individually. *Id.* at *2.

9           Even if the class definition does end up including all traders, there is no guarantee that their

10   interests will be protected throughout the case. For example, in *In re Veritas Software Corp. Securities*

11   *Litigation*, 496 F.3d 962 (9th Cir. 2007), although the complaint's class definition included both common

12   stock and option traders, the initial settlement agreement only covered "purchasers of VERITAS common

13   stock." *Id.* at 965. Only after an options trader objected was the lead plaintiff forced to include options

14   traders in the settlement, nearly five months after the initial settlement had been reached. *Id.* at 966. Yet,

15   even then, the revised settlement limited the claims of options traders to a mere 2% of the recovery,

16   drawing further objections. *Id.* at 968. This led to substantial additional litigation over the settlement,

17   including an appeal to the Ninth Circuit. The Ninth Circuit ultimately did not rule on the fairness of the

18   2% cap, vacating the district court's judgment on other grounds.[16]

19          Further, if the case is settled and the class definition does not include all traders, Littleton and

20   others like him will be even less protected. In *In re Critical Path, Inc.*, the court rejected out of hand an

21   option trader's objection that a "settlement unjustly excludes investors who purchased call options or sold

22   put options during the class period," because the "consolidated complaint did not mention options" and

23   claims based on options were "outside the scope of the case." No. 01-cv-00551-WHA, 2002 WL

24   32627559, at *5 (N.D. Cal. June 18, 2002).

25

26   ───────────────────
     [16] After omitting options traders completely, the lead plaintiffs then defended the 2% cap by arguing that
27   calculating damages for options traders was too complicated. These kinds of disputes only further
     highlight the need for the lead plaintiff to have an interest in all claims of the class from the very beginning
28   of the case.

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

1    Accordingly, because Littleton and other traders might simply be defined out of the class by the

2    amended complaint or by the class certification motion, it is not enough to say that any potential conflicts

3    or issues, such as issues related to standing, can be resolved later. For example, in *Fishbury, Ltd. v.*

4    *Connetics Corp.*, the options trader argued that unless it was appointed co-lead plaintiff, a competing

5    movant would lack standing to pursue claims on behalf of options traders. No. 06-cv-11496-SWK, 2006

6    WL 3711566, at *4 (S.D.N.Y. Dec. 14, 2006). The court rejected that argument, and said the issue could

7    be resolved later, should it arise, by the "designation of other members of the purported class as named

8    plaintiffs or class representatives." *Id.* at *4. However, as the above cases demonstrate, the danger is not

9    merely that a lead plaintiff will lack standing. It is that a lead plaintiff will simply choose not to include

10    certain traders in the class definition. If that were to occur, Littleton, and others like him, will have little

11    meaningful recourse. Certain types of traders would not even be class members, let alone have the ability

12    to try to become class representatives.

13    The above cases are clear examples of the complications that can arise from the failure to ensure

14    the interests of a distinct group, such as holders of short positions, long positions, and/or option traders,

15    are adequately protected at the outset of a class action. Importantly, not only were certain traders' interests

16    prejudiced in these cases, but judicial resources were unnecessarily wasted as a result. Much of that waste

17    could have been avoided by the early appointment of a lead plaintiff with complete standing at the onset

18    of the litigation.

19    Here, the Court has the ability to foreclose all such complications at the outset by appointing

20    Littleton as Lead Plaintiff. Among other things, doing so has the significant benefits of ensuring that

21    certain traders are not arbitrarily (and without representation) excluded from the class definition, and that

22    they are adequately represented in the event of a recovery. Moreover, there is virtually no downside risk

23    to so doing as any issues with class certification of particular sub-categories of Tesla investors can be

24    addressed at class certification on a full record. As set forth in Exhibit B to the Declaration of Adam

25    McCall submitted in support of his motion, Littleton suffered significant losses totaling 3,518,478.68

26    giving him a significant financial interest in the case and the most to gain from litigating the claims of *all*

27    the members of the Class. Accordingly, the Court should appoint Littleton as Lead Plaintiff.

28

15

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

**B.  Alternatively, Glen Littleton Should be Appointed Co-Lead Plaintiff**

If the Court declines to appoint Littleton as Lead Plaintiff, the Court should alternatively appoint Littleton as Co-Lead Plaintiff as part of a group of Lead Plaintiffs designed to protect the total interests of the Class. *See Miller v. Ventro Corp.*, No. 01-cv-1287, 2001 WL 34497752, at *9 (N.D. Cal. Nov. 28, 2001) ("[T]he decision to create a separate class or co-lead plaintiffs is within the discretion of the Court"). Although other movants claim larger losses than Littleton, his appointment to a "co-lead" structure would be prudent for the purpose of protecting the class as well as providing greater resources for the litigation of this significant case. *See La. Mun. Police Employees' Ret. Sys. v. Green Mt. Coffee Roasters, Inc.*, No. 11-cv-289, 2012 WL 12985571, at *3-4 (D. Vt. Apr. 27, 2012); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 420 (S.D.N.Y. 2004); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) ("The use of multiple lead plaintiffs will best serve the interests of the proposed class in this case because such a structure will allow for pooling, not only of the knowledge and experience, but also of the resources of the plaintiffs' counsel in order to support what could prove to be a costly and time-consuming litigation.").

Appointing Littleton and his counsel to a "co-lead" structure would benefit the class for several reasons. First, if appointed as lead plaintiff, Littleton would protect the class from unnecessary challenges to the other movants' standing, adequacy, and other unique defenses. Littleton and his counsel would also ensure that the class action would not be abandoned at a later stage in the litigation. *See Freudenberg v. E*Trade Fin. Corp.*, No. 07-cv-8538, 2008 WL 2876373, at *7 (S.D.N.Y. July 16, 2008) (appointing individual investor to protect against potential future conflicts); *see also Johnson v. Pozen, Inc.*, No. 07-cv-599, 2008 WL 474334, at *2-3 (M.D.N.C. Feb. 15, 2008). Second, Littleton stands ready, willing and able to serve as lead plaintiff. His certification is accurate and correctly completed. Dkt. 42-1, at 2. He is "willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary." *Id.* at ¶ 3. Considering his status as a resident of the United States, the class will benefit from Littleton's appointment due to the fact that he would be able to appear for deposition and/or trial on behalf of the class representatives with far less difficultly than Tempus, OUF, and other movants. *See In re Lucent Techs., Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 483 (D.N.J. 2001)

16
GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

1   (appointing co-lead plaintiffs provides "additional representation [that] may benefit the class and provide

2   flexibility, if needed, in the future").

3           Third, Littleton will represent the individual- and retail-investor members of the class of Tesla

4   shareholders if appointed to the "co-lead" structure. Courts around the country have approved the rationale

5   behind appointing an individual investor to an otherwise institutional-led plaintiff group. As explained

6   time and again, appointing an individual investor as a co-lead plaintiff allows the lead plaintiffs to

7   "represent a broader range of shareholder interests than if the Court appointed an individual or an

8   institutional investor alone." *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1071 (C.D. Cal.

9   1999); *accord, e.g., Freudenberg*, 2008 WL 2876373, at *7 (appointing individual investor to protect

10  against potential future conflicts); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. 00-cv-

11  152, 2000 WL 486956, at *3 (D.N.J. Apr. 24, 2000); *Plumbers & Pipefitters Local 51 Pension Fund v.

12  First Bancorp*, 409 F. Supp. 2d 482, 483 (S.D.N.Y. 2006); *Bell v. Ascendant Solutions, Inc.*, No. 01-cv-

13  0166, 2002 WL 638571, at *5 (N.D. Tex. Apr. 17, 2002). Here, Littleton would provide the precise type

14  of balance that courts in the past intended to provide by appointing individual investors as co-lead

15  plaintiffs. Furthermore, any group of lead plaintiffs should not be so numerous that it becomes unwieldy.

16  *See e.g. Perrin v. Sw. Water Co.*, No. 08-cv-7844-FMC-AGRx, 2009 WL 10654690, at *3 (C.D. Cal. Feb.

17  13, 2009) (finding group of four "not to be is not so large as to be unwieldy or unmanageable"); *In re Blue

18  Apron Holdings, Inc. Sec. Litig.*, No. 17-cv-4846-WFK-PK, 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15,

19  2017) ("neither group is so large as to be unwieldly and impracticable"). Failure to appoint Littleton as

20  Co-Lead Plaintiff would result in representation for the Class with no incentive to monitor the interests of

21  all potential class members and would result in unnecessary harm to the class. As Littleton individually

22  represents more types of Tesla investor than any other movant, his appointment would enable the Court

23  to structure a group offering the broadest representation of the Class but with the fewest Lead Plaintiffs

24  as members of the group.

25          **C.  Glen Littleton's Selection of Counsel Should Be Approved**

26          This Court should approve Movant Littleton's selection of Levi & Korsinsky, LLP as Lead

27  Counsel. The PSLRA vests authority in the lead plaintiff to select and retain lead counsel. 15 U.S.C. §

28

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

78u-4(a)(3)(B)(v). Given Levi & Korsinsky, LLP's extensive experience in the securities litigation area, Littleton's choice of counsel should be approved.

## V.      CONCLUSION

For the foregoing reasons, Movant Littleton respectfully requests that this Court appoint him as lead plaintiff or, alternatively, include him as a co-lead plaintiff in any group of lead plaintiffs who may be appointed.


Dated: October 23, 2018                    Respectfully submitted,

                                           **LEVI & KORSINSKY, LLP**

                                           /s/ Adam C. McCall
                                           Adam C. McCall (SBN 302130)
                                           Adam M. Apton (SBN 316506)
                                           44 Montgomery Street, Suite 650
                                           San Francisco, CA 94104
                                           Tel:  415-291-2420
                                           Email: amccall@zlk.com
                                           Email: aapton@zlk.com

                                           Nicholas I. Porritt (to be admitted pro hac vice)
                                           Alexander A. Krot III (to be admitted pro hac vice)
                                           1101 30th Street, NW, Suite 115
                                           Washington, DC 20007
                                           Tel: 202-524-4290
                                           Email: nporritt@zlk.com

                                           Eduard Korsinsky (to be admitted pro hac vice)
                                           55 Broadway, 10th Floor
                                           New York, New York 10006
                                           Tel: 212-363-7500
                                           Email: ek@zlk.com

                                           *Attorneys for Movant Glen Littleton and*
                                           *Proposed Lead Counsel for the Class*

GLEN LITTLETON'S OPPOSITION TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC