1  Ramzi Abadou (SBN 222567)
   KAHN SWICK & FOTI, LLP
2  912 Cole Street, # 251
   San Francisco, California 94117
3  Telephone: (415) 459-6900
   Facsimile: (504) 455-1498
4  ramzi.abadou@ksfcounsel.com

5

6  *Counsel for Movant Bridgestone
   Investment Corporation Limited
   and Proposed Lead Counsel for the Class*

7  *[Additional counsel on signature page]*

8

9              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
10              **SAN FRANCISCO DIVISION**

11

| | |
|---|---|
| KALMAN ISAACS, individually and on behalf of all others similarly situated, | ) |
| | ) Case No. 3:18-cv-04865-EMC |
| Plaintiff, | ) |
| | ) <u>CLASS ACTION</u> |
| v. | ) |
| | ) BRIDGESTONE INVESTMENT CORPORATION |
| ELON MUSK and TESLA, INC., | ) LIMITED'S OMNIBUS MEMORANDUM OF |
| | ) LAW IN OPPOSITION TO ALL OTHER |
| Defendants. | ) MOTIONS FOR APPOINTMENT AS LEAD |
| | ) PLAINTIFF |
| | ) |
| | ) Judge:      Hon. Edward M. Chen |
| | ) Date:       November 15, 2018 |
| | ) Time:       1:30 p.m. |
| | ) Courtroom: Courtroom 5 – 17th Floor |
| | ) |

1
2

WILLIAM CHAMBERLAIN, on behalf of )
himself and all other similarly situated,  )     No. 18-cv-04876-EMC
                                            )
3                    Plaintiff,             )
                                            )
4                       v.                  )
                                            )
5     TESLA, INC., and ELON MUSK,           )
                                            )
6                   Defendants.             )
                                            )
7                                           )

8

9     JOHN YEAGER, Individually and on      )
      Behalf of All Others Similarly Situated, )   No. 18-cv-04912-EMC
10                                          )
11                   Plaintiff,             )
                                            )
12                      v.                  )
                                            )
13    TESLA, INC. and ELON MUSK,            )
                                            )
14                  Defendants.             )
                                            )
15                                          )

16

17    CARLOS MAIA, on behalf of himself and )
      all others similarly situated,        )     No. 18-cv-04939-EMC
18                                          )
19                   Plaintiff,             )
                                            )
20                      v.                  )
                                            )
21    TESLA, INC. and ELON R. MUSK,         )
                                            )
22                  Defendants.             )
                                            )
23                                          )

24
25
26
27
28

| | |
|---|---|
| KEWAL DUA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC. and ELON MUSK,<br><br>Defendants. | No. 18-cv-04948-EMC |
| JOSHUA HORWITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC. and ELON R. MUSK,<br><br>Defendants. | No. 18-cv-05258-EMC |
| ANDREW E. LEFT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., and ELON R. MUSK,<br><br>Defendants. | No. 18-cv-05463-EMC |

| | | |
|---|---|---|
| 1 | ZHI XING FAN, Individually and On Behalf of All Others Similarly Situated, | )<br>)  No. 18-cv-05470-EMC |
| 2 | | ) |
| 3 | Plaintiff, | )<br>) |
| 4 | v. | )<br>) |
| 5 | TESLA, INC. and ELON R. MUSK, | )<br>) |
| 6 | Defendants. | )<br>) |
| 7 | | )<br>) |
| 8 | | ) |
| 9 | SHAHRAM SODEIFI, Individually and on behalf of all others similarly situated, | )<br>)  No. 18-cv-05899-EMC<br>) |
| 10 | | ) |
| 11 | Plaintiff, | )<br>) |
| 12 | v. | )<br>) |
| 13 | TESLA, INC., a Delaware corporation, and ELON R. MUSK, an individual, | )<br>)<br>) |
| 14 | | )<br>) |
| 15 | Defendants. | )<br>) |

1

## **TABLE OF CONTENTS**

2

3

4   I.     INTRODUCTION ..................................................................................................1

5   II.    ARGUMENT .......................................................................................................7

6          A.     Legal Standard ...................................................................................7

           B.     Tempus/UOF are not the Most Adequate Plaintiffs ..................................9

7                 1.     Tempus/OUF Lack Article III Standing ......................................9

8                 2.     Tempus/OUF Do Not Have the Largest Financial Interest ...................11

9                 3.     Tempus/OUF Engaged in Highly Atypical Investments in Tesla
                         Securities.............................................................................11

10                4.     Tempus/OUF Appear to Have Engaged in Off-Market Transactions in
11                       Acquiring Tesla Securities .......................................................13

12         C.     Bridgestone is the "Most Adequate Plaintiff" ($3.9 million loss).........................15

           D.     All Other Motions Should be Denied ....................................................16

13                1.     Glen Littleton ($3.5 million claimed loss)..................................16

14                2.     Andrew Left ($1.6 million claimed loss)....................................16

15                3.     First New York (no claimed loss)...............................................18

                  4.     The Remaining Applicants .......................................................21
16
     III.   CONCLUSION.................................................................................................22

17

18

19

20

21

22

23

24

25

26

27

28

OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO ALL OTHER
MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

1

## TABLE OF AUTHORITIES

2

3

Cases:                                                                                                    Page(s)

4

*Applestein v. Medivation, Inc.,*
   2010 U.S. Dist. LEXIS 98255 (N.D. Cal. 2010) ................................................ 6, 16, 17

5

6

*Aronson v. McKesson HBOC, Inc.,*
   79 F. Supp. 2d 1146 (N.D. Cal. 1999) ................................................................... 2, 6

7

*Basic Inc. v. Levinson,*
   485 U.S. 224, 99 L. Ed. 2d 194, 108 S. Ct. 978 (1988) ........................................ 13

8

9

*Baydale v. Am. Express Co.,*
   2009 U.S. Dist. LEXIS 71668 (S.D.N.Y. 2009) .................................................. 10

10

11

*Bodri v. GoPro, Inc.,*
   2016 U.S. Dist. LEXIS 57559 (N.D. Cal. 2016) ............................................. 2, 8, 9

12

*Bowman v. Legato Sys.,*
   195 F.R.D. 655 (N.D. Cal. 2000) ........................................................................... 8

13

14

*Danis v. USN Commc'ns, Inc.,*
   189 F.R.D. 391 (N.D. Ill. 1999) .......................................................................... 12

15

*Dura Pharms., Inc. v. Broudo,*
   544 U.S. 336 (2005) ..................................................................................... 3, 4, 11

16

17

*Eichenholtz v. Verifone Holdings, Inc.,*
   2008 U.S. Dist. LEXIS 64633 (N.D. Cal. 2008) ............................................... 9, 16

18

19

*Ezra Charitable Tr. v. Rent-Way, Inc.,*
   136 F. Supp. 2d 435 (W.D. Pa. 2001) ................................................................. 10

20

*Glauser v. EVCI Career Colls. Holding Corp.,*
   236 F.R.D. 184 (S.D.N.Y. 2006) ........................................................................... 8

21

22

*Gudimetla v. Ambow Educ. Holding Ltd.,*
   2012 U.S. Dist. LEXIS 195807 (C.D. Cal. 2012) ............................................... 15

23

*Guohua Zhu v. UCBH Holdings, Inc.,*
   682 F. Supp. 2d 1049 (N.D. Cal. 2010) .............................................................. 18

24

25

*Hall v. Medicis Pharm. Corp.,*
   2009 U.S. Dist. LEXIS 24093 (D. Ariz. 2009) .............................................. 6, 15

26

*Hevesi v. Citigroup Inc.,*
   366 F.3d 70 (2d Cir. 2004) .................................................................................. 15

27

28

*In re Adobe Sys., Inc. Sec. Litig.,*
　　139 F.R.D. 150 (N.D. Cal. 1991) .................................................................. 6, 15

*In re Assets in Brown Bros. Harriman & Co. Account # 8870792,*
　　601 F. Supp. 2d 252 (D.D.C. 2009) ..................................................................... 3

*In re Bank One S'holders Class Actions,*
　　96 F. Supp. 2d 780 (N.D. Ill. 2000) .............................................. 13, 19, 20, 21

*In re Cardinal Health, Inc. Sec. Litig.,*
　　226 F.R.D. 298 (S.D. Ohio 2005) .......................................................... 6, 19, 20

*In re Cavanaugh,*
　　306 F.3d 726 (9th Cir. 2002) ................................................................... *passim*

*In re Cendant Corp. Litig.,*
　　264 F.3d 201 (3d Cir. 2001) ............................................................................... 8

*In re Century Aluminum Co. Sec. Litig.,*
　　2009 U.S. Dist. LEXIS 81205 (N.D. Cal. 2009) .............................................. 1

*In re Cohen v. U.S. Dist. Court for the N. Dist. of Cal.,*
　　586 F.3d 703 (9th Cir. 2009) .............................................................................. 8

*In re Critical Path,*
　　156 F. Supp. 2d 1102 (N.D. Cal. 2001) ................................... 4, 5, 12, 13, 14

*In re Enron Corp., Sec. Litig.,*
　　206 F.R.D. 427 (S.D. Tex. 2002) ....................................................................... 9

*In re Gemstar-Tv Guide Int'l Sec. Litig.,*
　　209 F.R.D. 447 (C.D. Cal. 2002) ....................................................................... 9

*In re Herley Indus. Sec. Litig.,*
　　2009 U.S. Dist. LEXIS 91600 (E.D. Pa. 2009) .............................................. 10

*In re IMAX Sec. Litig.,*
　　2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. 2009) ............................................. 10

*In re Infineon Techs. AG Sec. Litig.,*
　　2011 U.S. Dist. LEXIS 152965 (N.D. Cal. 2011) .......................................... 14

*In re Juniper Networks Sec. Litig.,*
　　264 F.R.D. 584 (N.D. Cal. 2009) ....................................................................... 4

*In re LendingClub Sec. Litig.,*
　　282 F. Supp. 3d 1171 (N.D. Cal. 2017) .......................................................... 12

*In re MicroStrategy Sec. Litig.,*
　　110 F. Supp. 2d 427 (E.D. Va. 2000) .................................................. 18, 19, 20, 21

*In re Netflix, Inc., Sec. Litig.,*
    2012 U.S. Dist. LEXIS 59465 (N.D. Cal. 2012) .................................................. 2

*In re Network Assocs. Sec. Litig.,*
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) ................................................. *passim*

*In re Safeguard Scientifics,*
    216 F.R.D. 577 (E.D. Pa. 2003) ........................................................ 18, 19, 20

*In re Telxon Corp. Sec. Litig.,*
    67 F. Supp. 2d 803 (N.D. Ohio 1999) ............................................................ 8, 18

*In re Terayon Commc'ns Sys., Sec. Litig.,*
    2004 U.S. Dist. LEXIS 3131 (N.D. Cal. 2004) ........................................ 5, 12, 17

*In re Turkcell Iletisim Hizmetler,*
    209 F.R.D. 353 (S.D.N.Y. 2002) ..................................................................... 10

*In re Vaxgen Sec. Litig.,*
    2004 U.S. Dist. LEXIS 29812 (N.D. Cal. 2004) ............................................... 8

*Khoja v. Orexigen Therapeutics, Inc.,*
    899 F.3d 988 (9th Cir. 2018) ......................................................................... 16

*Morrison v. Nat'l Austl. Bank Ltd.,*
    561 U.S. 247 (2010) .................................................................................. 5, 14

*Mulligan v. Impax Labs., Inc.,*
    2013 U.S. Dist. LEXIS 93119 (N.D. Cal. 2013) ........................................ 1, 18

*Northstar Fin. Advisors, Inc. v. Schwab Invs.,*
    609 F. Supp. 2d 938 (N.D. Cal. 2009) *rev'd on other grounds*, 615 F.3d 1106
    (9th Cir. 2010) ..................................................................................... 3, 10, 11

*Oaktree Capital Mgmt., L.P. v. KPMG,*
    963 F. Supp. 2d 1064 (D. Nev. 2013) ......................................................... 3, 11

*Padilla v. Lever,*
    463 F.3d 1046 (9th Cir. 2006) ......................................................................... 8

*Perlmutter v. Intuitive Surgical, Inc.,*
    2011 U.S. Dist. LEXIS 16813 (N.D. Cal. 2011) .............................................. 4

*Petrie v. Elec. Game Card, Inc.,*
    308 F.R.D. 336 (C.D. Cal. 2015) ............................................................... 3, 11

*Robb v. Fitbit Inc.,*
    2016 U.S. Dist. LEXIS 62457 (N.D. Cal. 2016) ............................................. 2

OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO ALL OTHER
MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

iv

*Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*,
  2005 U.S. Dist. LEXIS 16857 (D.N.J. 2005) ............................................................. 12

*Ross v. Abercrombie & Fitch Co.*,
  2007 U.S. Dist. LEXIS 24903 (S.D. Ohio 2007) ......................................................... 9

*Ruland v. InfoSonics Corp.*,
  2006 U.S. Dist. LEXIS 79144 (S.D. Cal. 2006) ............................................. 2, 4, 8, 11

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ......................................................................................... 4

*Shiring v. Tier Techs., Inc.*,
  244 F.R.D. 307 (E.D. Va. 2007) .................................................................................. 13

*Smith v. Suprema Specialties*,
  206 F. Supp. 2d 627 (D.N.J. 2002) *rev'd in part on other grounds* 438 F.3d 256
  (3d Cir. 2006) ............................................................................................................... 10

*Stackhouse v. Toyota Motor Co.*,
  2010 U.S. Dist. LEXIS 79837 (C.D. Cal. 2010) ........................................................... 5

*Stengle v. Am. Italian Pasta Co.*,
  2005 U.S. Dist. LEXIS 43816 (W.D. Mo. 2005) ........................................................... 1

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche L.L.P.*,
  549 F.3d 100 (2d Cir. 2008) ............................................................................... 3, 9, 10

*Weisz v. Calpine Corp.*,
  2002 U.S. Dist. LEXIS 27831 (N.D. Cal. 2002) ..................................................... 5, 13

*Wenderhold v. Cylink Corp.*,
  188 F.R.D. 577 (N.D. Cal. 1999) .................................................................................. 8

Statutes:

15 U.S.C. § 78u-4 .................................................................................... 1, 2, 17, 19

CASE NO. 3:18-CV-04865-EMC

OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO ALL OTHER
MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

v

1

## I.      INTRODUCTION

2       Bridgestone Investment Corp. Ltd. ("Bridgestone") respectfully submits this omnibus

3  memorandum of law in opposition to all other lead plaintiff motions, and in further support of its

4  motion for appointment as lead plaintiff and for approval of its selection of lead counsel.  For all the

5  reasons set forth herein, Bridgestone's lead plaintiff motion should be granted and all other such

6  motions should be denied.[1]

7       On October 9, 2018, nine motions were filed in this Court pursuant to the Private Securities

8  Litigation Reform Act of 1995 ("PSLRA") seeking appointment as lead plaintiff.  The motions were

9  filed by: (i) Bridgestone (ECF No. 46); (ii) First New York Investment Advisors, LLC ("First New

10  York") (ECF No. 40); (iii) Glen Littleton (ECF No. 41); (iv) Dany David (ECF No. 80); (v) Tempus

11  International Fund SPC and Opportunity Unique Fund Inc. ("Tempus/OUF") (ECF No. 71); (vi)

12  Andrew E. Left, PROtecto Informatikai Szolgáltató Korlátolt Felelősségű Társaság, Thierry Boutin,

13  Dr. Abrar Shirazi, and Vilas Capital Management, LLC (the "Tesla Investor Group") (ECF No. 47);

14  (vii) James Johnson (ECF No. 64); (viii) Donald Freeland, Alvin Abrams, Christopher Lyman, and

15  Rajinder Gau (the "Tesla Investor Group") (ECF No. 74); and (ix) Jiri Kulik, Jason Han, Esmaeil

16  Riahi, Deepak Mehta, and Raghunath Nama (the "Tesla Investor Group") (ECF No. 45).[2]

17       The Ninth Circuit holds that "district courts deciding motions for appointment as lead

18  plaintiff … should follow a three-step process." *Mulligan v. Impax Labs., Inc.*, 2013 U.S. Dist.

19  LEXIS 93119, at *11 (N.D. Cal. 2013) (Chen, J.) (citing *In re Cavanaugh*, 306 F.3d 726, 729-30

20  (9th Cir. 2002)).  After first determining whether the PSLRA's notice requirement has been satisfied,

21  as it has been here, "the court must consider the financial interest of the potential plaintiffs, as the

22

23  [1]      The PSLRA provides that, prior to appointing a lead plaintiff, the Court must decide whether
to consolidate the Related Actions.  *See* 15 U.S.C. §78u-4(a)(3)(B)(ii); *In re Century Aluminum Co.*
24  *Sec. Litig.*, 2009 U.S. Dist LEXIS 81205, at *7 (N.D. Cal. 2009) ("A court must rule on a motion to
consolidate before it can rule on a motion to appoint a lead plaintiff.") (Illston, J.).  All emphasis
25  added and internal citations omitted unless otherwise noted.

26  [2]      The three separate "Tesla Investor Group" designations were "adopted solely for the
purposes of this litigation." *Stengle v. Am. Italian Pasta Co.*, 2005 U.S. Dist. LEXIS 43816, at *14
27  (W.D. Mo. 2005).

28
OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO ALL OTHER
MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

1     potential plaintiff with the greatest financial interest is presumptively the most adequate plaintiff."

2     *Id*.  In the third step, "the court must give the other potential plaintiffs the chance to rebut the

3     presumptive lead plaintiff's showing that it satisfies the typicality and adequacy requirements of

4     Rule 23(a)." *Id*.

5        One wrinkle in applying the three-part test here that *Cavanaugh* did not address is lead

6     plaintiff motions filed by unrelated "groups." *See Robb v. Fitbit Inc*., 2016 U.S. Dist. LEXIS 62457,

7     at *11 (N.D. Cal. 2016) ("The Ninth Circuit has not ruled on whether groups may aggregate their

8     financial losses in order to assert the largest interest in a securities case.") (Illston, J.).  Judge Tigar's

9     recent and thoughtful lead plaintiff ruling in *Bodri v. GoPro, Inc*., 2016 U.S. Dist. LEXIS 57559

10     (N.D. Cal. 2016), however, provides guidance.  Namely, that this Court can and should simply deny

11     the motions filed by the three separate "Tesla Investor Group[s]" as inadequate because "Northern

12     District of California courts have generally found that appointing a group of unrelated investors

13     undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation."  *Id*. at *14; *see*

14     *In re Netflix, Inc., Sec. Litig*., 2012 U.S. Dist. LEXIS 59465, at *14-15 (N.D. Cal. 2012) ("the courts

15     of this circuit uniformly refuse to aggregate the losses of individual investors with no apparent

16     connection to each other aside from their counsel.") (Conti, J.); *Aronson v. McKesson HBOC, Inc*.,

17     79 F. Supp. 2d 1146, 1152-1154 (N.D. Cal. 1999) (same) (Whyte, J.).[3]

18        With these principles in mind, Tempus/OUF assert, but do not possess, the largest financial

19     interest with $15.8 million in combined claimed losses. Regardless of the approach this Court adopts

20     with respect to groups, Tempus/OUF cannot and should not be appointed as lead plaintiff.  Indeed,

21     for the following four reasons, their motion should never have been filed.  ***First***, the PSLRA

22     provides that each "plaintiff" seeking to serve as a representative party on behalf of a class "shall"

23     provide a "personally signed" sworn certification.  15 U.S.C. § 78u-4(a)(2)(A).  This requirement is

24

---

25     [3]      In weighing the applications of groups seeking lead plaintiff appointment, some courts

26     "look at each movant individually when evaluating who should be appointed lead plaintiff." *Ruland v. InfoSonics Corp*., 2006 U.S. Dist. LEXIS 79144, at *10-11 (S.D. Cal. 2006).  In the event the

27     Court does so, Bridgestone herein applies *Cavanaugh's* three part test to individual rather than group applicants.

                                                           CASE NO. 3:18-CV-04865-EMC

28     OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO ALL OTHER
      MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

1  mandatory.  *See Cavanaugh*, 306 F.3d at 738.  Here, neither Tempus nor OUF signed their own

2  mandatory PSLRA certifications. Instead, Tempus/OUF, offshore entities based in the Cayman

3  Islands and British Virgin Islands, respectively, (*see* Second Abadou Decl., Exs. 1 and 2) had two

4  employees from their Brazilian investment manager execute certifications on their behalf.[4]  *See* ECF

5  No. 71-3/4.  This is no mere ministerial oversight.  Rather, it presents an insurmountable Article III

6  obstacle because, as a result, Tempus/OUF lack Constitutional standing to assert any claims in this

7  case.  *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108-111 (2d

8  Cir. 2008) ("*Huff*"); *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 609 F. Supp. 2d 938, 942 (N.D.

9  Cal. 2009) ("Under *Huff*, which this Court finds persuasive, [the plaintiff] cannot bring claims on

10  behalf of its clients simply by virtue of its status as an investment advisor."), *rev'd on other grounds*,

11  615 F.3d 1106 (9th Cir. 2010).

12  Indeed, the real parties-in-interest with an injury-in-fact here – the two offshore hedge funds

13  themselves – apparently failed to provide timely and valid assignments to their Brazilian investment

14  manager "in order to establish constitutional standing to submit claims on behalf of the funds."

15  *Oaktree Capital Mgmt., L.P. v. KPMG*, 963 F. Supp. 2d 1064, 1079 (D. Nev. 2013).  Tempus/OUF's

16  Brazilian investment manager's failure or inability to obtain assignments from their own clients prior

17  to the filing of Tempus/OUF's lead plaintiff motion is fatal to their request to serve as lead plaintiff.

18  *See Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 346 (C.D. Cal. 2015) ("because Dr. Lee has

19  not shown that he has suffered an injury in fact [under *Huff*], the Court finds that Dr. Lee is not a

20  typical or adequate class representative."); *see* §II.B.1, *infra*.

21  **Second**, while Tempus/OUF claim the largest loss, a significant majority of their claimed

22  financial interest is not recoverable under *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342

23  _____

24  [4]    To further complicate matters, the investment manager, Opportunity Gestão de Investimentos
e Recursos Ltda., has faced serious criminal exposure in the United States (*see In re Assets in Brown

25  Bros. Harriman & Co. Account # 8870792*, 601 F. Supp. 2d 252 (D.D.C. 2009)), as reportedly has
Opportunity Unique Fund itself in Brazil. *See* Second Declaration of Ramzi Abadou in Further

26  Support of Bridgestone Investment Corp., Ltd.'s Motion for Appointment as Lead Plaintiff, Ex. 4
(hereinafter, "Second Abadou Decl."); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1030

27  (N.D. Cal. 1999).

28

(2005); *Perlmutter v. Intuitive Surgical, Inc.*, 2011 U.S. Dist. LEXIS 16813, at *17 (N.D. Cal. 2011) ("recent Ninth Circuit authority favors considering loss causation on a motion for appointment as lead plaintiff.") (Koh, J.).  In *Dura*, the Supreme Court reasoned that if a "purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Dura*, 544 U.S. at 342.  And "[a]lthough a precise determination of damages is not possible at this stage of the litigation, courts typically equate 'largest financial interest' with the amount of potential recovery." *InfoSonics*, 2006 U.S. Dist. LEXIS 79144, at *13-16. Here, under *Dura* and its progeny, Tempus/OUF's potential recovery is approximately 75% less than its claimed $15.9 million loss – or about $3.5 million.

For a short seller, like Tempus/OUF, that later makes a cover purchase on those short sales, the "mirror image[ ]" application of *Dura* is that any losses incurred ***before*** the first alleged false and misleading statement are not recoverable because they have nothing to do with the alleged fraud. *Schleicher v. Wendt*, 618 F.3d 679, 683-84 (7th Cir. 2010) ("A person buys stock (goes long) because he thinks the current price too low and expects it to rise; a person sells short (sells today and promises to cover in the market and deliver the shares in the future) because he thinks the price too high and expects it to fall. These positions are mirror images.") (Easterbrook, J.); *see In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 594 (N.D. Cal. 2009) (Ware, J.).  Here, prior to the start of the Class Period on August 7, 2018, Tempus/OUF already faced an unrealized loss of over $12 million on their short position in Tesla securities – *i.e.*, the difference between their short sale prices of between $277 and $299 per share (ECF No. 75-1) and the trading price of Tesla securities immediately prior to Elon Musk's August 7, 2018 "Funding Secured" tweet ($356.78 per share). *See* Second Abadou Decl. at Ex. 3.  Hence, under *Dura*, Tempus/OUF's financial interest is approximately $476,961 less than Bridgestone's $3.9 million loss. *See* §II.B.2, *infra*.

***Third***, investors like Tempus/OUF have been repeatedly disqualified from serving as lead plaintiffs for engaging exclusively in short selling a company's securities.  *See In re Critical Path*, 156 F. Supp. 2d 1102, 1109-1110 (N.D. Cal. 2001) ("It is a poor choice to appoint a class

representative who engaged in a trading practice premised on the belief the stock would fall.") (Orrick, J.); *In re Terayon Commc'ns Sys., Sec. Litig.*, 2004 U.S. Dist. LEXIS 3131, at *24 (N.D. Cal. 2004) (same) (Patel, C.J.); *Weisz v. Calpine Corp.*, 2002 U.S. Dist. LEXIS 27831, at *28 (N.D. Cal. 2002) (finding that history of short selling stock in issue disqualified investor from appointment as lead plaintiff in securities fraud class action) (Armstrong, J.).  Here, Tempus/OUF's only Class Period transactions in Tesla securities involved "covering" their pre-Class Period Tesla short sales. *See id.*; ECF 71-3/4.

*Fourth*, and finally, it appears that Tempus/OUF's Tesla short sale "cover purchases" on August 7, 2018 may have been the result of an off-market, private arrangement.  Indeed, there is no indication that their combined purchase of 177,022 Tesla shares at $375.9503 (and at that volume) ever took place on NASDAQ on August 7, 2018.  *See* Second Abadou Decl., Ex. 5.  Courts in this district hold that this, too, renders investors like Tempus/OUF atypical under Rule 23.  *See Critical Path*, 156 F.Supp.2d at 1110 ("Appointing as lead plaintiff one who acquired its shares in a private transaction invites lengthy litigation both at the class certification stage and thereafter of whether that plaintiff is subject to unique defenses."); *Network Assocs.*, 76 F. Supp. 2d at 1030 ("KBC, unfortunately, would be encumbered with the unique question whether it acquired its Network shares on better terms than the investing public and not fully in reliance on the market price.").  Another plausible alternative – namely, that Tempus/OUF's transactions occurred on a foreign exchange – would similarly preclude them from bringing any claims in this case under the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 263-65 (2010).[5]

With a loss of $3.9 million, Bridgestone suffered the largest *Dura*-compliant financial interest in the litigation.  Bridgestone is a Canadian investment fund organized under the Business Corporations Act of British Columbia.  Mr. Liu, an investor who resides in West Vancouver and executed Bridgestone's certification, is its sole managing director.   *See* ECF No. 52-1.

---

[5]   *See Stackhouse v. Toyota Motor Co.*, 2010 U.S. Dist. LEXIS 79837, at *1 (C.D. Cal. 2010) ("It is clear that *Morrison* forecloses § 10(b) claims by foreign plaintiffs based on securities bought or sold outside of the United States."); §II.B.4, *infra*.

OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO ALL OTHER
MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

1   Bridgestone's chosen counsel, Kahn Swick & Foti, LLC, met in person with Mr. Liu in West

2   Vancouver prior to the filing of Bridgestone's motion to ensure both his commitment to this

3   litigation and his understanding of serving as a lead plaintiff in this matter.

4       Further, Bridgestone suffered losses on its Class Period transactions in both Tesla options

5   and common stock ensuring that it will represent the interests of a variety of class members.  *See*

6   *Hall v. Medicis Pharm. Corp.,* 2009 U.S. Dist. LEXIS 24093, at *12 (D. Ariz. 2009); *see also In re*

7   *Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 155 (N.D. Cal. 1991); *McKesson*, 79 F. Supp. 2d at

8   1151 (given the PSLRA's procedure for swift consolidation of all pending claims, there is a

9   "statutory presumption that one lead plaintiff can vigorously pursue all available causes of action

10  against all possible defendants under all available legal theories"). Bridgestone, led by Mr. Liu, is a

11  determined defrauded Tesla investor that would be an ideal lead plaintiff in this important case.

12      With individual losses of $3.5 million and $1.6 million, respectively, Glen Littleton and

13  Andrew E. Left, claim to have suffered the two next largest financial interests in the relief sought by

14  the class.[6]  In addition to asserting a smaller financial interest than Bridgestone, their motions should

15  be denied for the added reasons that: (i) Mr. Left has a long history of behavior that calls his

16  credibility into question (*see* §II.D.2, *infra*); and (ii) Mr. Littleton engaged in high frequency trading

17  in Tesla securities untethered to the alleged false and misleading statements in this case (*see* §II.D.1,

18  *infra*). *See Applestein v. Medivation, Inc*., 2010 U.S. Dist. LEXIS 98255, at *9-10 (N.D. Cal. 2010)

19  (refusing to appoint high frequency trader as lead plaintiff) (Patel, J.).

20      The remaining movants each claim to have lost less than $1 million.[7]  Under *Cavanaugh's*

---

[6]     Mr. Left is the single largest member of one of the "Tesla Investor Group[s]."  ECF No. 47.

[7]     Either unwilling or unable to do so, First New York did not assert any loss figure in its lead plaintiff motion. *See* ECF No. 40; §II.D.3, *infra*. Based on Bridgestone's review of First New York's voluminous and faulty trading data, it appears that it actually may have had a gain on its investment in Tesla securities during the Class Period. *Id*. Regardless, First New York has previously been denied as a proposed lead plaintiff for the same defects that afflict its lead plaintiff application here. *See In re Cardinal Health, Inc. Sec. Litig*., 226 F.R.D. 298, 311 (S.D. Ohio 2005) ("the Court finds First New York would be susceptible to unique defenses, and thus is not an adequate Lead Plaintiff."); §II.D.3, *infra*.

28  OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO ALL OTHER
    MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF
    6

1   three step process, the Court need not reach any of these applicants as the PSLRA does not

2   "authorize the district judge to examine the relative merits of plaintiffs seeking lead status on a

3   round-robin basis." *Cavanaugh*, 306 F.3d at 732; *see* §II.D.4, *infra*.  Accordingly, Bridgestone's

4   motion, filed by just one law firm and one proposed lead plaintiff, should be granted and all other

5   motions should be denied.

6   **II.    ARGUMENT**

7         **A.  Legal Standard**

8       While the PSLRA "contains a number of requirements, it is neither overly complex nor

9   ambiguous; we need be neither Talmudic scholars nor skilled in the use of Urim and Thummin to

10  construe it."   *Cavanaugh*, 306 F.3d at 729. "The 'most capable plaintiff' – and hence the lead

11  plaintiff – is the one who has the greatest financial stake in the outcome of the case, so long as he

12  meets the requirements of Rule 23." *Id*. To identify the presumptively most adequate plaintiff, "the

13  district court must compare the financial stakes of the various plaintiffs and determine which one has

14  the most to gain from the lawsuit." *Id*. at 730. "It must then focus its attention on ***that*** plaintiff and

15  determine, based on the information he has provided in his pleadings and declarations, whether he

16  satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id*.

17  (emphasis in original).

18      "If the plaintiff with the largest financial stake in the controversy provides information that

19  satisfies these requirements, he becomes the presumptively most adequate plaintiff." *Id*.  If, however,

20  "the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must

21  repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it

22  finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id*.  "The

23  second additional factor that the court should consider in making [its] threshold adequacy

24  determination will arise only when the movant with the largest interest in the relief sought by the

25

26

27

28

OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO ALL OTHER
MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

7

class is a group rather than an individual person or entity."[8]  *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001).  "If the court determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant. . . ."  *Id.*

Here, there is no "real preexisting relationship between or among the various members of the individual [Tesla Investor] [G]roup[s].  The tie that binds the members of each group is representation by the same lawyers."  *InfoSonics*, 2006 U.S. Dist. LEXIS 79144, at *10.  Courts in this district have repeatedly held that "the phrases 'members' and 'group of persons' must be read in the context of the overall scheme and purpose of the Reform Act [which] was to eradicate lawyer-driven securities fraud class actions."  *Bowman v. Legato Sys.*, 195 F.R.D. 655, 658 (N.D. Cal. 2000) (Fogel, J.).  Accordingly, this district generally requires groups to have preexisting relationships that predate the litigation.  *See Network Assocs.*, 76 F. Supp. 2d at 1024 (same); *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 586 (N.D. Cal. 1999) (same) (Walker, J.); *Legato Sys.*, 195 F.R.D. at 658 (same); *GoPro,* 2016 U.S. Dist. LEXIS 57559, at *15.[9]

As discussed herein, by their filings, the three separate self-designated "Tesla Investor Groups" (ECF Nos. 45, 47, 74) have left little doubt that they were "created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel" and, as such, are "groups" of the sort district courts in this Circuit and throughout the country look upon with disfavor.  *InfoSonics*, 2006 U.S. Dist. LEXIS 79144, at *8-11; *In re Vaxgen Sec. Litig.*, 2004 U.S. Dist. LEXIS 29812, at *16 (N.D. Cal. 2004) (White, J.); *Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 189-90 (S.D.N.Y. 2006); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 809-17 (N.D. Ohio 1999) (providing lengthy discussion of groups in PSLRA context); *In re Enron Corp., Sec. Litig.*, 206

---

[8]      The PSLRA does not define what a "group" can or should be. "Where a statute fails to define a key term, this court's 'duty, in matters of statutory construction, is to give effect to the intent of Congress.'"  *Padilla v. Lever*, 463 F.3d 1046, 1057 (9th Cir. 2006).

[9]      *See also In re Cohen v. United States Dist. Court for the N. Dist. of Cal.*, 586 F.3d 703, 711 n.4 (9th Cir. 2009).

F.R.D. 427, 442 (S.D. Tex. 2002) (a group "must bear the burden of demonstrating that the group [has] a pre-litigation relationship based on more than the losing investments at issue in the securities fraud class action.).

Further, because there "is no requirement in the PSLRA that the Court realign a proposed group to cure a deficiency in adequacy of representation," the group lead plaintiff motions (ECF Nos. 45, 47, 74) can and should be denied *in toto*.[10]  *See Ross v. Abercrombie & Fitch Co.*, 2007 U.S. Dist. LEXIS 24903, at *13 (S.D. Ohio 2007).  Indeed, that is precisely what Judge Tigar recently did in *GoPro*, reasoning that while the group before him had the largest loss, the entire group could not satisfy Rule 23 and that the "joint declaration" the group submitted "is silent regarding the relationship between the GoPro Group's members prior to this litigation…" *GoPro*, 2016 U.S. Dist. LEXIS 57559, at *15.  The same holds true here.[11]  The Court added that "[a]bsent any indication otherwise, the Court finds that the GoPro Group's amalgamation of previously unrelated individuals together in this case was made 'for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'"  *Id.*  This Court should adopt Judge Tigar's thoughtful approach to considering groups from *GoPro*.

## B.  Tempus/UOF are not the Most Adequate Plaintiffs

### 1.  Tempus/OUF Lack Article III Standing

Courts must consider whether a movant possesses standing to sue at the lead plaintiff stage because standing is a threshold Constitutional Article III requirement. *See Huff*, 549 F.3d at 106-111

---

[10]      Only one of these amalgamations claims a larger loss than Bridgestone (hereinafter defined as the "Labaton/Keller Group").  ECF No. 47.  Its largest member (Andrew E. Left), suffered a loss of $1.6 million which is substantially smaller than Bridgestone's $3.9 million loss.  In other words, only by aggregating the losses of its five unrelated members does the Labaton Group's loss exceed Bridgestone's.  *See In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002) ("'One of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation…To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation.'").

[11]      Here, the Labaton/Keller Group's joint declaration actually concedes that its five members were amalgamated by counsel.  *See* ECF No. 51-4.  "Simply stated, this conclusory declaration has little or no substance." *Eichenholtz v. Verifone Holdings, Inc.*, 2008 U.S. Dist. LEXIS 64633, at *28 (N.D. Cal. 2008) (Patel, J.); *GoPro*, 2016 U.S. Dist. LEXIS 57559, at *13-15 (rejecting entire group *in toto* despite joint declaration).

(holding that the plaintiff did not meet Article III's injury-in-fact requirement where the plaintiff, an investment advisor, had authority to make investment decisions and to litigate on its investor clients' behalf but the clients had never transferred ownership of stock to the plaintiff); *Northstar Fin. Advisors,* 609 F. Supp. 2d at 942.[12] "While *Huff* was not a class action, the court's holding has ramifications for investment advisers seeking to become lead plaintiffs." *In re Herley Indus. Sec. Litig.*, 2009 U.S. Dist. LEXIS 91600, at *14 (E.D. Pa. 2009). Numerous district courts have applied *Huff* to securities class action lead plaintiff proceedings such as this. *See, e.g., Baydale v. Am. Express Co.*, 2009 U.S. Dist. LEXIS 71668, at *9 (S.D.N.Y. 2009) (declining to appoint an investment adviser as lead plaintiff because its claim of third-party standing would render it atypical); *In re IMAX Sec. Litig.*, 2009 U.S. Dist. LEXIS 58219, at *11 (S.D.N.Y. 2009) (replacing an investment adviser as lead plaintiff in the wake of *Huff*).

Here, according to Tempus/OUF's counsel, their PLSRA-mandated certifications were executed by:

> Ana Carolina Silva Moreira Lima, Compliance Director for Tempus and OUF's ***Investment Manager***, and Bruno Bak, who ***was*** granted Power of Attorney by Tempus and OUF's ***Investment Manager***…

*See* ECF No. 71 at 17. It is unclear how or why Ms. Lima and/or Mr. Bak, both employees of Tempus/OUF's Brazilian investment manager (Opportunity Gestão de Investimentos e Recursos Ltda.) could credibly be granted power of attorney by it to claim the losses incurred by Tempus/OUF. Instead, valid assignments would have to be granted by Tempus/OUF to their investment manager. Notably, while they claim "[t]his evidence" demonstrates their *bona fides*, Tempus/OUF failed to submit the referenced "power of attorney" that apparently only Mr. Bak was

---

[12] *See also In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 358 (S.D.N.Y. 2002) (reasoning that investment advisors do not have standing to claim their clients' investment losses); *Ezra Charitable Tr. v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 441 (W.D. Pa. 2001) (same); *Network Assocs.*, 76 F. Supp. 2d at 1030 (denying investment advisors' motion for appointment as lead plaintiff); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 633-35 (D.N.J. 2002) ("The clients' mere grant of authority to an investment manager to invest on its behalf does not confer authority to initiate suit on its behalf.") *rev'd in part on other grounds* 438 F.3d 256 (3d Cir. 2006).

granted by Tempus/OUF's investment manager.[13] *Id.*

Even if they had submitted the "power of attorney" their brief references, the law is clear that a mere "power of attorney" is insufficient to establish Article III standing under the PSLRA.   *See Petrie*, 308 F.R.D. at 346; *Northstar Fin. Advisors*, 609 F. Supp. 2d at 942; *Oaktree Capital Mgmt.*, 963 F. Supp. 2d 1079.   Rather, the law requires valid assignments of claims before litigation has begun.   *See id.*   By inexplicably failing to provide a valid assignment of claims to their investment manager in connection with their lead plaintiff motion, Tempus/OUF have failed to demonstrate Constitutional standing under Article III.   Their motion must therefore be denied.   *See Petrie*, 308 F.R.D. at 346 ("Thus, because Dr. Lee has not shown that he has suffered an injury in fact [under *Huff*], the Court finds that Dr. Lee is not a typical or adequate class representative.").

### 2.   Tempus/OUF Do Not Have the Largest Financial Interest

As explained in §I, *supra*, the regular trading losses Tempus/OUF incurred prior to Mr. Musk's materially false "Funding Secured" tweet are not recoverable under *Dura* because they had absolutely nothing to do with the alleged fraud here.   *See InfoSonics*, 2006 U.S. Dist. LEXIS 79144, at *13-15 (applying and explaining *Dura* at lead plaintiff).   Indeed, if Tempus/OUF had properly factored out their regular market trading losses prior to 12:48 EST on August 7, 2018, when the first misleading statement was made in this case, Tempus/OUF's recoverable damages would be reduced by at least 75% – limited to the difference between their short sale covering purchase price ($375.95 per share) and the trading price of Tesla immediately prior to Mr. Musk's August 7, 2018 "Funding Secured" tweet of $356.7842 per share ($19.17 x Tempus/OUF's total share volume of 177,020 shares purchased which totals $3,392,783 – or approximately $476,961 less than Bridgestone's approximate loss of $3.9 million).[14]

### 3.   Tempus/OUF Engaged in Highly Atypical Investments in Tesla Securities

Tempus/OUF covered their pre-Class Period short positions in Tesla on August 7, 2018.

---

[13]     Moreover, the arguments of counsel in support of their own lead counsel application do not constitute "evidence."   ECF No. 71 at 17.

[14]     *See* Second Abadou Decl., Ex. 3.

According to the Securities and Exchange Commission ("SEC"):

> A short sale is the sale of a stock that an investor does not own or a sale which is consummated by the delivery of a stock borrowed by, or for the account of, the investor. Short sales are normally settled by the delivery of a security borrowed by or on behalf of the investor. The investor later closes out the position by returning the borrowed security to the stock lender, typically by purchasing securities on the open market.
>
> Investors who sell stock short typically believe the price of the stock will fall and hope to buy the stock at the lower price and make a profit … If the price of the stock rises, short sellers who buy it at the higher price will incur a loss.

*See* Second Abadou Decl., Ex. 6.[15] Hence, "[p]rofits [for short sellers] result from borrowing stock from various sources, selling that stock at current market prices, purchasing shares of the stock at a lower price to 'cover' the original position, and then returning the stock to the original source. *Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*, 2005 U.S. Dist. LEXIS 16857, at *5 (D.N.J. 2005). Here, Tempus/OUF apparently lost money on their short sales when they "covered" at a higher price following Musk's August 7, 2018 tweet about taking Tesla private at $420.

There is nothing inherently wrong with short-selling. The question, rather, is whether an investor that bets that the price of a company's securities will fall should be made the face of the class as a lead plaintiff. Courts in this district that have considered the issue have consistently held that they should not. *See Critical Path*, 156 F. Supp. 2d at 1109 ("It is a poor choice to appoint a class representative who engaged in a trading practice [short-selling] premised on the belief the stock would fall."); *In re Terayon*, 2004 U.S. Dist. LEXIS 3131, at *22 (same). This Court should too.

*Critical Path* is instructive. There, Judge Orrick considered and rejected a short seller, like

---

[15]     Courts have long struggled with whether to even include short sellers as absent class members in the class certification context. *See, e.g., In re LendingClub Sec. Litig*., 282 F. Supp. 3d 1171, 1188 (N.D. Cal. 2017) ("Given the practical difficulties of tracing the short seller's loss to any alleged fraud, excluding short sellers who incurred losses from short sales during the class period is a sensible limitation that is hereby incorporated into the class definition.") (Alsup, J.); *c/f Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391, 396 (N.D. Ill. 1999) (rejecting challenge to class representative's typicality based on short sales, because class representative also lost money on long positions; acknowledging that short selling may be inconsistent with fraud-on-the-market theory).

Tempus/OUF, as lead plaintiff, reasoning:

> Short-selling is an investment strategy the success of which is premised on a drop in stock price. In *In re Bank One Shareholders Class Actions*, 96 F. Supp. 2d 780 (N.D. Ill. 2000), the court rejected a hedge fund because of a similar trading pattern. It is a poor choice to appoint a class representative who engaged in a trading practice premised on the belief the stock would fall. The fraud on-the-market theory, the premise of which is that the market price accurately reflects publicly available information, is central to securities actions. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 99 L. Ed. 2d 194, 108 S. Ct. 978 (1988). Short sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny.

*Critical Path*, 156 F.Supp.2d at 1109-1110; *Calpine Corp.*, 2002 U.S. Dist. LEXIS 27831, at *28 (finding that history of short selling stock issuer disqualified investor from serving as lead plaintiff in securities fraud class action). That Tempus/OUF claim to have lost money by short selling Tesla securities "does not mean, of course, that [Tempus/OUF] [are] in any way disabled from *individually* pursuing [their] own [] claim[s] against defendants. Indeed, [they] may certainly do so [ ]; what [they] may not do, for the reasons stated here, is to represent a class of persons seeking to assert such claims." *Shiring v. Tier Techs., Inc.,* 244 F.R.D. 307, 317 (E.D. Va. 2007).

### 4.  Tempus/OUF Appear to Have Engaged in Off-Market Transactions in Acquiring Tesla Securities

According to their own filings, Tempus made three cover purchases of 35,526, 128,135 and 2,037 Tesla securities on August 7, 2018 at $375.9503 and OUF made one cover purchase of 11,324 Tesla securities on August 7, 2018 at $375.9503.  *See* ECF No. 71-5.  All four transactions took place on August 7, 2018 at $375.9503 for a total of 177,022 shares.  *Id*. The tick-by-tick trade data available on *Thomson Reuters* for trading in Tesla securities on the NASDAQ on August 7, 2018 does not report *any* trades being executed at $375.9503 that day with a volume even close to 177,022 shares.  *See* Second Abadou Decl., Ex. 5.  To the contrary, according to publicly-available data, there were 40 trades recorded on August 7, 2018 with a trade price greater than $375.95 but less than $375.96, but none of these has an exact price of $375.9503 and, again, the total volume did not come close to 177,022 shares.  *Id*.  There are two plausible explanations for the apparent

1  discrepancy between publicly-available information about trading in Tesla securities on August 7,

2  2018, and the information Tempus/OUF submitted in connection with its lead plaintiff filing.

3        First, it appears that Tempus/OUF's cover purchases were the result of a private, off-market

4  arrangement which is, of course, entirely plausible for two offshore tax-haven entities with a

5  Brazilian investment manager.  Further suggesting that Tempus/OUF's cover purchases were the

6  result of a private transaction, Tesla's securities in Brazil were issued by Deutsche Bank without

7  Tesla's involvement in the issuance of the securities.  *See* Second Abadou Decl., Ex. 7.   Acquiring

8  shares pursuant to a private arrangement is disqualifying in a securities fraud case such as this.  As

9  Judge Orrick has previously reasoned in denying the appointment of an investor who acquired its

10  shares off-market, "[a]ppointing as lead plaintiff one who acquired its shares in a private transaction

11  invites lengthy litigation both at the class certification stage and thereafter of whether that plaintiff is

12  subject to unique defenses. Certainly, the Court should not appoint as lead plaintiff one whose

13  appointment will invite scrutiny of the details of a private transaction." *Critical Path*, 156 F. Supp.

14  2d at 1110-1111; *Network Assocs.*, 76 F. Supp. 2d at 1130 ("KBC, unfortunately, would be

15  encumbered with the unique question whether it acquired its Network shares on better [private]

16  terms than the investing public and not fully in reliance on the market price.").

17         Second, given that Tempus/OUF's August 7, 2018 transactions do not appear to have taken

18  place on the NASDAQ, Tempus/OUF's transactions in Tesla securities may have taken place on a

19  foreign exchange.  This would make sense here as Tempus/OUF are: (i) offshore hedge funds with

20  a Brazilian investment manager; and (ii) Tesla's securities trade on the Brazilian stock exchange

21  (the BOVESPA). If their Tesla transactions did indeed take place outside the United States,

22  Tempus/OUF cannot bring any claims pursuant to the federal securities laws under *Morrison,* 561

23  U.S. 247, let alone serve as lead plaintiff here. *See In re Infineon Techs. AG Sec. Litig*., 2011 U.S.

24  Dist. LEXIS 152965, at *10–13 (N.D. Cal. 2011) (explaining *Morrison*, and denying with prejudice

25  securities fraud claims brought by foreign investor who purchased shares on foreign exchange)

26  (Ware, J.).  For the foregoing reasons, Tempus/OUF's motion should be denied.

27

28
OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO ALL OTHER
MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

1

### C.  Bridgestone is the "Most Adequate Plaintiff" ($3.9 million loss)

Bridgestone suffered a loss of approximately $3.9 million from its transactions in Tesla securities between August 7, 2018 and August 17, 2018, which represents the largest Dura-complaint loss of a single investor before the Court.  *See* §I, *supra*.  Bridgestone is also typical because its claims are identical, non-competing and non-conflicting with the claims of other putative class members.  *See* ECF No. 46.  Bridgestone and the putative class each similarly transacted in Tesla securities during the Class Period when the Company's stock price was artificially inflated as a result of Defendants' alleged misrepresentations.  Both Bridgestone and the putative class also suffered damages as a result of these purchases when the truth about Defendants' fraud began to be revealed on August 14, 2018.  *See*, *e.g. Left, et. al v. Musk and Tesla, Inc.* No. 18-cv-5463-EMC (N.D. Cal.) at ECF No. 1, at ¶¶ 13, 14, 45, and 46.  Accordingly, Bridgestone's claims and injuries arise from the same conduct from which the other class members' claims and injuries arise. *See Gudimetla v. Ambow Educ. Holding Ltd.,* 2012 U.S. Dist. LEXIS 195807, at *9 (C.D. Cal. 2012).

Bridgestone is also adequate as its interests are clearly aligned with the members of the putative class. Its claims are identical to that of the putative class and, importantly, Bridgestone transacted in both Tesla common stock and options during the putative Class Period. *See Medicis Pharm. Corp.,* 2009 U.S. Dist. LEXIS 24093, at *12; *see also In re Adobe,* 139 F.R.D. at 155. Accordingly, there is no evidence of antagonism between Bridgestone's interests and those of the proposed class.[16]  Further, as set forth in its opening moving papers (ECF No. 52-4 (firm résumé of Kahn Swick & Foti, LLC)), Bridgestone has selected a law firm highly experienced in successfully

---

[16]     While Bridgestone respectfully submits herein that short sellers seeking lead plaintiff appointment should be precluded from serving in that role due to their Rule 23 infirmities, Bridgestone can and will represent the interests of all class members – including short sellers – if charged by this Court with the responsibility of serving as lead plaintiff.  *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2nd Cir. 2004) ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action.").

CASE NO. 3:18-CV-04865-EMC

OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO ALL OTHER
MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

15

prosecuting securities class actions and complex litigation as Proposed Lead Counsel.[17]   Hence, because Bridgestone suffered the largest loss of any movant that satisfies the typicality and adequacy requirements of Rule 23, the Court need not even reach the remaining lead plaintiff applications unless "proof" is submitted to rebut the presumptions in its favor.  *See Cavanaugh*, 306 F.3d at 732 (the PSLRA does not "authorize the district judge to examine the relative merits of plaintiffs seeking lead status on a round-robin basis").  Bridgestone is the presumptive lead plaintiff and should be appointed as such on behalf of the class.

### D.  All Other Motions Should be Denied

#### 1.  Glen Littleton ($3.5 million claimed loss)

In addition to claiming a smaller financial interest than Bridgestone, Mr. Littleton's trading data (ECF Nos. 42-1/2) demonstrates that he engaged in high frequency trading in Tesla securities during the Class Period.  *See Medivation,* 2010 U.S. Dist. LEXIS 98255, at *9-10 (refusing to appoint high frequency trader as lead plaintiff); *see also Verifone Holdings,* 2008 U.S. Dist. LEXIS 64633, at *36 ("Consequently, in light of possible day-trading issues, the CLAL Group cannot be appointed plaintiff.").  Therefore, in addition to suffering a smaller loss than Bridgestone, his motion should be denied for this added reason.  *See id.*

#### 2.  Andrew Left ($1.6 million claimed loss)

Mr. Left, a member of the Labaton/Kessler Group, not only engaged in short selling during the Class Period, he has a history of ***affirmatively*** driving Tesla's stock price down to profit from shorting the Company's securities.[18]  *See* Second Abadou Decl., Exs. 8 and 9.  Indeed, a March 1, 2016 *MarketWatch* report titled "Tesla lower after Citron Research says it is betting against the stock" reported that "Shares of Tesla Motors Inc. TSLA, -2.86% added to losses Tuesday after short seller Andrew Left of online investment site Citron Research said the research firm is shorting the

---

[17]     Serving as sole lead counsel, Kahn Swick & Foti, LLC recently obtained a favorable securities fraud ruling before the Ninth Circuit in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018).

[18]     Mr. Left is the founder of a short selling entity called Citron Research. ECF No. 51-4.

1    stock, or making a bet that it will fall." *Id.*[19]  This is the type of highly atypical conduct that at least

2    one court in this District has previously found disqualifying under the PSLRA.  *See In re Terayon*,

3    2004 U.S. Dist. LEXIS 3131, at *24 ("While some short sales may not, in and of themselves render

4    a lead plaintiff's claims atypical, a pattern of affirmatively engaging in campaigns devised to lower

5    the price of the stock in question certainly contains within it the seeds of discord between lead

6    plaintiffs and the remaining plaintiffs.").

7           To add to these Rule 23 issues, Mr. Left also has a long history of behavior that also calls his

8    credibility into question.  *See Network Assocs.*, 76 F. Supp. 2d at 1029 ("the Court is unwilling to

9    install an enterprise under such a cloud in a position of trust and confidence.").  The National

10   Futures Association has previously barred him from membership for three years after finding that

11   Mr. Left "made false and misleading statements to cheat, defraud or deceive a customer" while

12   working at Universal Commodity Corporation. *See* Second Abadou Decl., Ex. 10 at 18; *id.* at Ex. 11,

13   respectively.  In 2012, Mr. Left was found guilty of publishing a "false and misleading report" by the

14   Hong Kong Market Misconduct Tribunal.  *See* Second Abadou Decl., Ex. 12. The Tribunal later

15   banned Mr. Left from trading on the Hong Kong market for five years, and ordered him to repay HK

16   $1.6 million (about US $200,000) in trading profits and HK $4 million (about US $510,000) in legal

17   fees. The judgment was upheld by the Hong Kong Court of Appeals in January of 2017. *See* Second

18   Abadou Decl., Ex. 13.  For the foregoing reasons, Mr. Left's motion should be denied as either a

19   member of the inadequate Labaton/Kessler Group or in his individual capacity were the Court to

20   consider him separately.

---

[19]    To make matters worse, today, on October 23, 2018, Mr. Left again moved the market for Tesla securities by announcing that he had had a "change of heart" and is now long on Tesla.  *See* Second Abadou Decl., Ex. 14.  His public role in moving Tesla's securities in opposite directions to serve his own interests – and, today, to the detriment of a class of short sellers he seeks to represent – will certainly subject him to "unique defenses" inapplicable to a typical Tesla investor.  *See Medivation*, 2010 U.S. Dist. LEXIS 98255, at *5 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).  Indeed, Mr. Left's October 23, 2018, comments about the Company sharply drove up its share price by over 12%.

### 3.  First New York (no claimed loss)

First New York failed to assert any loss in its submission because it appears to have **_profited_** on its transactions in Tesla securities during the Class Period.  Indeed, it sold approximately 9,000 more shares than it purchased during that time.[20]  Further, First New York is a trading entity of the sort courts hold cannot satisfy Rule 23, and submitted trading data (from its dozens of different individual high-frequency traders) which is riddled with errors and ambiguities that render its certification's trading data unreliable – if not incomprehensible.[21]  *See In re Safeguard Scientifics*, 216 F.R.D. 577, 582-83 & n.4 (E.D. Pa. 2003) (a lead plaintiff's defective loss submissions left it "vulnerable to further attacks that would impose an unnecessary disadvantage on the class"); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436-37 n.6 (E.D. Va. 2000) (refusing to consider the evidence submitted for purposes of being appointed lead plaintiff because it did not permit a confident conclusion that its financial interest was as large as it averred).

First New York's own trade data shows, for instance, that it claims to have traded Tesla securities at prices the stock **_never_** traded, and churned in and out of the stock dozens of times a day seeking gains of pennies a share on normal intra-day price fluctuations while seldom holding their positions open for more than a few hours.  *See* ECF No. 40-1.  A brief, but not exhaustive, sampling of First New York's errors include the erroneous purchase prices of: (i) 2,000 shares of Tesla common stock at $339.05; (ii) 1000 shares at $342.50; (iii) 500 shares at $346.85; and (iv) 200

---

[20]    For reasons known only to First New York, it failed to provide its pre-Class Period opening position in Tesla securities which would have enabled the parties to match its net sales under the LIFO or FIFO accounting methodologies to its Class Period transactions.

[21]    Moreover, First New York's motion should be denied because it failed to identify its financial loss within the statutory time period. *See Impax Labs.*, 2013 U.S. Dist. LEXIS 93119, at *26-27 ("'All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action. The plain language of the statute precludes consideration of a financial loss asserted for the first time in … any other pleading, for that matter, filed after the sixty (60) day window has closed.'") (quoting *In re Telxon Corp.*, 67 F. Supp. 2d at 818); *see also Guohua Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010) ("The intent of the provisions is to ensure that the lead plaintiff is appointed at the earliest possible time and to expedite the lead plaintiff process.") (White, J.)

1   shares at $359.22 on August 17, 2018. *See* Second Abadou Decl., Ex. 15 (Tesla Pricing History

2   chart). Also false are the quoted sales of 988 shares at $342.85 on August 16, 2018 (trading range

3   $333.80 - $342.20) and 100 shares each at $364.15 and 365.93 on August 13, 2018 (trading range

4   $349.20- $363.19). *See id*. These errors, and others, do not to permit the Court or the parties a

5   confident assessment of First New York's financial interest, if any, here. *See Safeguard*, 216 F.R.D.

6   at 582-83 & n.4. Indeed, First New York ultimately reported over two and half million dollars in

7   erroneous transactions in its certification. ECF No. 40-1 at 7-14.

8         The *MicroStrategy* court summarily refused to appoint as lead plaintiff an atypical trader,

9   like First New York, that similarly submitted faulty data, reasoning:

10          Although Wolverine Trading's loss was apparently very large, the evidence it
            submitted did not permit a confident conclusion that its loss was as large as it averred:
11          While the other candidates set forth in clear terms the specific transactions that led to
            a loss, Wolverine submitted a conclusory affidavit and a collection of indecipherable
12          financial statements that purported to support the affidavit's conclusion.

13  110 F. Supp. 2d at 436. Like the proposed lead plaintiff's submission in *MicroStrategy*, First New

14  York submitted a conclusory affidavit and a collection of indecipherable financial statements in

15  support of its Lead Plaintiff application. *See MicroStrategy*, 110 F. Supp. 2d at 436-37 (same); *Bank*

16  *One*, 96 F. Supp. 2d at 783-84 (same). Accordingly, at a minimum, First New York's lead plaintiff

17  application should be denied based on its failure to provide the Court with reliable evidence

18  demonstrating its "financial interest in the relief sought by the class." 15 U.S.C. §78u-

19  4(a)(3)(B)(iii)(I)

20        Further, First New York's manner of doing business and opaque lead plaintiff submissions

21  has previously disqualified it from serving as a lead plaintiff in a securities class action such as this.

22  *In re Cardinal Health,* 226 F.R.D. at 311 ("the Court finds First New York would be susceptible to

23  unique defenses, and thus is not an adequate Lead Plaintiff."). In denying First New York's motion

24  there, the *Cardinal Health* court added that even if the Court had adopted First New York's proposed

25  loss calculations First New York would not be an adequate lead plaintiff because it was, as here, a

26  net seller. *See id*. at 311 (citing *Network Assoc.*, 76 F. Supp. 2d at 1027).

27                                                                        CASE NO. 3:18-CV-04865-EMC

28

1    Finally, First New York is not an investor in any true sense of the word – but rather, an

2  amalgamation of "195 traders" that cannot, individually or collectively, satisfy the adequacy and

3  typicality requirements of Rule 23.  *In re Cardinal Health*, 226 F.R.D. at 311; *Bank One*, 96 F. Supp.

4  2d at 784; *MicroStrategy*, 110 F. Supp. 2d at 436-37.  Unlike typical class members, First New York

5  bought and sold large volumes of shares daily, generally holding them for just minutes or perhaps

6  hours, seeking profits of pennies a share on the normal price fluctuations that occur in every stock.

7  *See* ECF No. 40-1 (buying and selling 129,721 shares on August 9, 2018 *alone*).  *See Bank One*, 96

8  F. Supp. 2d at 784 (refusing to appoint as lead plaintiff an entity that "engaged in extensive

9  daytrading").  Indeed, according to Securities and Exchange Commission ("SEC") Reports, "[d]ay

10  traders do not 'invest,'" instead:

11      [t]hrough the use of sophisticated computer software, day traders sit in front of
        computer screens and look for nothing more than real time price movements.  What it
12      is that they are buying or selling is of no concern to them.

13  *See SEC Reports, Day Trading: Your Dollars at Risk*, at https://www.sec.gov/reportspubs/investor-

14  publications/investorpubsdaytipshtm.html; *see also Oral Statement of Chairman Arthur Levitt*, at

15  https://www.sec.gov/news/testimony/testarchive/1999/tsty2099.htm;  *see also Day Trading*, at

16  https://www.sec.gov/fast-answers/answersdaytradinghtm.html (attached as Exs. 16, 17, and 18 to the

17  Second Abadou Decl., respectively).

18    Hence, if appointed, Defendants will later argue at class certification that First New York's

19  investment strategy is not the approach of typical investor members of the class who purchased (or

20  sold) Tesla securities in reliance on publicly available information.  Because such an investment

21  strategy clearly has nothing to do with Defendants' fraudulent public statements and/or omissions,

22  First New York cannot and should not be appointed lead plaintiff.  *See*, *e.g.*, *Safeguard*, 216 F.R.D.

23  at 582-83.  As the court explained in *MicroStrategy*:

24      [E]ven assuming Wolverine Trading's evidence of loss was sufficient, its application
        did not satisfy the statutory requirements of typicality and adequacy .... Evidence
25      presented ... confirmed that Wolverine Trading was an atypical investor that engages
        in transactions far beyond the scope of what a typical investor contemplates....
26      Accordingly, Wolverine Trading may [be] subject to unique defenses based on its

27                                                              CASE NO. 3:18-CV-04865-EMC

28

method of doing business. For these reasons, Wolverine Trading [is] not an adequate
class representative.

110 F. Supp. 2d at 436-37.  As such, First New York fails to satisfy Rule 23 and is subject to unique defenses which would disqualify it even if it had provided evidence from which a court could determine its loss with confidence.  *MicroStrategy*, 110 F. Supp. 2d at 436-37; *Bank One*, 96 F. Supp. 2d at 783-84.

### 4.  The Remaining Applicants

Finally, none of the remaining other movants or individual group members, should this Court evaluate them individually, can be appointed lead plaintiff because their respective losses in this case are each considerably smaller than Bridgestone's $3.9 million loss as set forth in the chart below:

| Lead Plaintiff Applicant | Claimed Loss |
| --- | --- |
| **(1) Bridgestone** | **$3.9 million** |
| (2) Littleton | $3.5 million |
| (3) Left (from Labaton/Keller Group) | $1.6 million |
| (4) Kulik (from Liebhard Group)[22] | $0.7 million |
| (5) Dany[23] | $0.44 Million |
| (6) Johnson | $0.33 Million |
| (7) Abrams (from Pomerantz Group)[24] | $0.27 Million |

Indeed, under *Cavanaugh*, the Court need not even consider these other applicants.  *See* 306 F.3d at 732 ("[t]he court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the

---

[22]    The Liebhard Group withdrew its motion on October 22, 2018.  ECF No. 104.

[23]    Applicant Dany David also engaged in short selling Tesla securities during the Class Period. His motion should be denied for the same reasons set forth regarding Tempus/OUF in §II.B.3, *supra*.

[24]    The Pomerantz Group withdrew its motion on October 22, 2018.  ECF No. 102.

presumptive lead plaintiff [here, Bridgestone] is found inadequate or atypical").

## III.    CONCLUSION

For the foregoing reasons, Bridgestone's motion should be granted and all other motions should be denied.


Dated: October 23, 2018              KAHN SWICK & FOTI, LLP

                                      By:    */s/ Ramzi Abadou*

                                      Ramzi Abadou (SBN 222567)
                                      ramzi.abadou@ksfcounsel.com
                                      KAHN SWICK & FOTI, LLP
                                      912 Cole Street, # 251
                                      San Francisco, California 94117
                                      Telephone: (415) 459-6900
                                      Facsimile: (504) 455-1498

                                      -and-

                                      KAHN SWICK & FOTI, LLC
                                      Lewis S. Kahn (*pro hac vice to be submitted*)
                                      Alexander L. Burns (*pro hac vice to be submitted*)
                                      Alayne K. Gobeille (*pro hac vice to be submitted*)
                                      KAHN SWICK & FOTI, LLC
                                      1100 Poydras Street, Suite 3200
                                      New Orleans, Louisiana 70163
                                      Telephone: (504) 455-1400
                                      Facsimile: (504) 455-1498
                                      lewis.kahn@ksfcounsel.com
                                      alexander.burns@ksfcounsel.com
                                      alayne.gobeille@ksfcounsel.com

                                      *Counsel for Movant Bridgestone Investment
                                      Corporation Limited and Proposed Lead Counsel
                                      for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*/s/ Ramzi Abadou*
RAMZI ABADOU

**Mailing Information for a Case 3:18-cv-04865-EMC Isaacs v. Musk et al**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- Ramzi Abadou
  ramzi.abadou@ksfcounsel.com,dawn.hartman@ksfcounsel.com

- Randi D. Bandman
  randib@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- Jennifer Corinne Bretan
  jbretan@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,aepstein@fenwick.com

- Robert Nicholas Cappucci
  rcappucci@entwistle-law.com,ncasey@entwistle-law.com,ffleming@entwistle-law.com

- Mario Man-Lung Choi
  mchoi@kaplanfox.com

- Andrew John Entwistle
  aentwistle@entwistle-law.com,jbeemer@entwistle-law.com,bbrodeur@entwistle-law.com,sriegert@entwistle-law.com,RArnall@Entwistle-Law.com,ffleming@entwisle-law.com,ncasey@entwistle-law.com,mgayle@entwistle-law.com,rcappucci@entwistle-law.com

- Frederic S. Fox
  FFox@kaplanfox.com

- Eric Marc George
  egeorge@bgrfirm.com,khall@bgrfirm.com,cbonilla@bgrfirm.com

- David William Hall
  dhall@hedinhall.com

- Rachel Lynn Jensen
  rachelj@rgrdlaw.com,e_file_sd@rgrdlaw.com,6139295420@filings.docketbird.com

- Reed R. Kathrein
  reed@hbsslaw.com,peterb@hbsslaw.com,brianm@hbsslaw.com,sf_filings@hbsslaw.com

- Ashley Conrad Keller
  ack@kellerlenkner.com

- Laurence D. King
  lking@kaplanfox.com,spowley@kaplanfox.com,nlee@kaplanfox.com

- Dean S. Kristy
  dkristy@fenwick.com,kayoung@fenwick.com,lkelleybourne@fenwick.com

- Mara Rachelle Ludmer
  mludmer@fenwick.com

- Adam Christopher McCall
  amccall@zlk.com

- Francis P McConville
  fmcconville@labaton.com,kgutierrez@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- Tricia Lynn McCormick
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- Arthur Vincent Nealon
  anealon@entwistle-law.com

- Uri Seth Ottensoser
  so@kellerlenkner.com

- Jennifer Pafiti
  jpafiti@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- Carl Alan Roth
  croth@bgrfirm.com,khall@bgrfirm.com,mbetti@bgrfirm.com

- Marc M. Seltzer
  mseltzer@susmangodfrey.com,ecf-4d2b1f772250@ecf.pacerpro.com,hdanielson@susmangodfrey.com,ecf-67366a65900c@ecf.pacerpro.com

- Michael Walter Stocker
  mikes@hbsslaw.com,sf_filings@hbsslaw.com

- James Matthew Wagstaffe
  wagstaffe@kerrwagstaffe.com,reboredo@kerrwagstaffe.com,bechtol@kerrwagstaffe.com

**Manual Notice List**

The following is the list of attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

CASE NO. 3:18-CV-04865-EMC

OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO ALL OTHER
MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

25

1 • (No manual recipients)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28