**Exhibit E**

**KELLER LENKNER LLC**
Ashley C. Keller (*admitted pro hac vice*)
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
Telephone: (312) 741-5222
ack@kellerlenkner.com

**KELLER LENKNER LLC**
U. Seth Ottensoser (*admitted pro hac vice*)
1330 Avenue of the Americas, Suite 23A
New York, NY 10019
Telephone: (212) 653-9715
so@kellerlenkner.com

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
David J. Schwartz
Francis P. McConville
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
dschwartz@labaton.com
fmcconville@labaton.com

*Counsel for the Tesla Investor Group and*
*Proposed Co-Lead Counsel for the Class*
[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| KALMAN ISAACS, on behalf of himself and all others similarly situated, | Case No. 3:18-cv-04865-EMC |
| Plaintiff, | **CLASS ACTION** |
| v. | **DECLARATION OF ROBERT M. DAINES IN FURTHER SUPPORT OF THE MOTION OF THE TESLA INVESTOR GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL** |
| ELON MUSK and TESLA, INC, | |
| Defendants. | Date:        November 15, 2018 |
| | Time:        1:30 p.m. |
| | Courtroom:   5 – 17th Floor |
| | Judge:       Hon. Edward M. Chen |

*(caption continues on the following pages)*

WILLIAM CHAMBERLAIN, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

TESLA INC., and ELON MUSK,

Defendants.

Case No. 3:18-cv-04876-EMC

---

JOHN YEAGER, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

TESLA, INC. and ELON MUSK,

Defendants.

Case No. 3:18-cv-04912-EMC

---

CARLOS MAIA, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

TESLA, INC. and ELON R. MUSK,

Defendants.

Case No. 3:18-cv-04939-EMC

---

KEWAL DUA, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

TESLA, INC. and ELON MUSK,

Defendants.

Case No. 3:18-cv-04948-EMC

*(caption continues on the following page)*

| | |
|---|---|
| JOSHUA HORWITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>        v.<br><br>TESLA INC., and ELON R. MUSK,<br><br>        Defendants. | Case No. 3:18-cv-05258-EMC |
| ANDREW E. LEFT, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>        v.<br><br>TESLA INC., and ELON R. MUSK,<br><br>        Defendants. | Case No.  3:18-cv-05463-EMC |
| ZHI XING FAN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>        v.<br><br>TESLA INC., and ELON R. MUSK,<br><br>        Defendants. | Case No.  4:18-cv-05470-EMC |
| SHAHRAM SODEIFI, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>        v.<br><br>TESLA, INC., a Delaware corporation, and ELON R. MUSK, an individual,<br><br>        Defendants. | Case No.  3:18-cv-05899-EMC |

I, Robert M. Daines, state and declare that the below sets forth the opinions that I have reached at this time in this action:

## **BACKGROUND AND QUALIFICATIONS**

1. I am the Pritzker Professor of Law and Business and Associate Dean at Stanford Law School. I am also Professor of Finance (by courtesy) at the Stanford Graduate School of Business and Senior Faculty at the Rock Center on Corporate Governance.

2. I received my JD from Yale Law School, where I received the Olin Prize for the Best Paper in Law and Economics, and my BS/BA in Economics and American Studies from Brigham Young University. After law school I served as a law clerk for Judge Ralph Winter on the U.S. Court of Appeals for the Second Circuit.

3. I regularly teach the basic Corporations course, as well as Corporate Finance, International Business Transactions, advanced courses on the Law and Economics of Complex Transactions and Corporate Governance. Before coming to Stanford, I taught at the New York University School of Law and the Yale Law School, and have also taught at Columbia Law School, the University of Toronto Faculty of Law, and the University of Basel.

4. My academic research focuses on corporate governance and law and finance, and has appeared in the Journal of Financial Economics, the Journal of Financial and Quantitative Analysis, the Journal of Law, Economics and Organization, and The Yale Law Journal, and it has been covered in mainstream publications that include The Economist, the New York Times, the Wall Street Journal, the Financial Times, Forbes, and Fortune. My curriculum vitae, which includes a list of my publications and presentations, is attached as Exhibit 1.

5. I am (or have been) a member of the NASDAQ Stock Market Review Council, the Chair of the Corporate and Securities Law Section of the American Law and Economics Association, the Law and Economics Section of the Association of American Law Schools, and the Program Committee for the Conference on Empirical Legal Studies. I am a member of the American Finance Association and the American Law and Economics Association. In addition, I have served as a referee for various professional journals and publications, including Journal of

Finance, Journal of Law and Economics, Journal of Law, Economics and Organization, Journal of Financial and Quantitative Analysis, Financial Management, Journal of Legal Studies, The American Law and Economics Review, and others.

6.      I regularly provide business and legal training to corporate directors as part of executive education programs on corporate governance and on mergers and acquisitions run by Stanford Graduate School of Business, Stanford Law School, and The University of Chicago Booth School of Business.

7.      Before entering academia, I was an associate in the investment banking division of Goldman, Sachs & Co from 1993 to 1997, where I advised firms and conducted due diligence investigations for public and private financings, bank loans, and potential acquisitions.

8.      I have been qualified as an expert, provided testimony or consulted on many cases involving corporate governance, complex corporate transactions, and corporate finance, among other things. I have also been retained on several occasions by the Securities and Exchange Commission and by the United States Department of Justice to provide expert testimony on various issues including corporate finance, corporate governance and complex corporate transactions.

9.      My billing rate for expert witness services is $1,100 per hour. I have been assisted by Compass Lexecon's professional staff.

## INTRODUCTION AND SUMMARY OF CONCLUSIONS

10.     Tesla, Inc. ("Tesla" or the "Company") designs, develops, manufactures, and sells high-performance, fully electric vehicles and designs, manufactures, installs, and sells solar energy generation and energy storage products.[1]

11.     Elon Musk is the Chief Executive Officer and Chairman of the Board of Tesla and owns/controls approximately 22 percent of Tesla's shares.[2] Mr. Musk frequently issues

---

[1]   Tesla, Inc. Form 10-Q for the quarter ended June 30, 2018, at 8.
[2]   Class Action Complaint, Kalman Isaacs, et al. v. Elon Musk and Tesla, Inc. ("Isaacs Complaint"), ¶ 3.

1    statements about Tesla, including statements related to short sellers of Tesla stock, using

2    Twitter.[3] A statement issued using Twitter is referred to as a "Tweet."[4]

3           12.    On August 7, 2018 at 12:48 pm, Mr. Musk Tweeted, "Am considering taking

4    Tesla private at $420. Funding secured."[5] Mr. Musk issued additional Tweets the same afternoon

5    and the Company issued an official statement discussing the potential going private transaction.

6           • At 1:40 pm, Mr. Musk Tweeted, "I don't have a controlling vote now & wouldn't

7                  expect any shareholder to have one if we go private. I won't be selling in either

8                  scenario."[6]

9           • At 2:00 pm, Mr. Musk Tweeted, "My hope is *all* current investors remain with

10                 Tesla even if we're private. Would create special purpose fund enabling anyone to

11                 stay with Tesla. Already do this with Fidelity's SpaceX investment."[7]

12          • At 2:07 pm, Mr. Musk Tweeted a response to a different Tweet with, "Absolutely.

13                 Am super appreciative of Tesla shareholders. Will ensure their prosperity in any

14                 scenario."[8]

15          • At 2:13 pm Mr. Musk Tweeted, "Shareholders could either to sell [sic] at 420 or

16                 hold shares & go private."[9]

17          • At 2:14 pm Mr. Musk Tweeted that there would be no change to his status as

18                 CEO if the going private deal was successful.[10]

19          • At 3:07 pm, Mr. Musk Tweeted, "Def no forced sales. Hope all shareholders

20                 remain. Will be way smoother & less disruptive as a private company. Ends

21                 negative propaganda from shorts."[11]

22

23          [3]  Isaacs Complaint, ¶ 3.
24          [4]  Isaacs Complaint, ¶ 3.
25          [5]  Isaacs Complaint, ¶ 4.
             [6]  Isaacs Complaint, ¶ 5.
26          [7]  Isaacs Complaint, ¶ 6.
             [8]  Isaacs Complaint, ¶ 7.
27          [9]  Isaacs Complaint, ¶ 8.
             [10] Isaacs Complaint, ¶ 9.
28          [11] Isaacs Complaint, ¶ 10.

- At 3:30 pm, Tesla released a public statement on its corporate blog containing the text of an email from Mr. Musk to Tesla employees. The statement reiterated that Musk was considering taking Tesla private at $420 per share, noted that no decision had been made, described the rationale for such a step including that "wild swings in our stock price," earnings pressure, and short sellers were distracting. It stated that taking Tesla private would eliminate these distractions and that Tesla is at its best "when everyone is focused on executing, when we can remain focused on our long-term mission, and when there are not perverse incentives for people to try to harm what we're all trying to achieve."[12] The blog post contained additional details of Mr. Musk's vision for the Company.[13]

- At 3:36 pm, Mr. Musk tweeted "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote."[14]

13.     Plaintiffs in this action claim that Mr. Musk had not secured financing for a possible going private transaction and therefore, these Tweets and the Company's blog post were "materially false and misleading and/or omitted to state other facts necessary to make the statements made not misleading."[15] Plaintiffs in this action further claim that as a result of the false and misleading statements, Tesla's stock price was artificially inflated beginning on August 7, 2018 after Mr. Musk's 12:48 pm Tweet.[16]

14.     On August 6, 2018, the day before the Tweets discussed in *supra* ¶ 13, Tesla stock closed at $341.99 per share.[17] On August 7, 2018, after the Tweets and the Company's public blog post, Tesla's stock closed at $379.57 per share, after reaching an intraday high of $387.46.[18] The closing price represented a $37.58 increase over the closing price the prior day.

---

[12]  Isaacs Complaint, ¶ 12.
[13]  Isaacs Complaint, ¶ 12.
[14]  Isaacs Complaint, ¶ 14.
[15]  Isaacs Complaint, ¶ 41.
[16]  Isaacs Complaint, ¶ 42.
[17]  Bloomberg L.P.
[18]  Isaacs Complaint, ¶ 42.

15.     I understand that multiple parties have filed suit claiming that after Mr. Musk's Tweets, Tesla's stock price was artificially inflated.  I further understand that the relevant Class Period is August 7, 2018 to August 17, 2018, both inclusive.[19]

16.     I have been asked by counsel for the "Tesla Investor Group"[20] to (a) review and describe the trading by the Tempus Plaintiffs and the Tesla Investor Group Plaintiffs; (b) describe the mechanics of short selling and reasons that short sellers may cover by buying securities at particular times; and (c) analyze the Tempus Plaintiffs' incentives to represent the interests of all other potential Class Members.

17.     Based on my review and analysis, as well as my general background and expertise, I have reached the following principal conclusions:

- The Tempus Plaintiffs covered their entire short positions on August 7, 2018, the first day of the Class Period; the Tesla Investor Group (as a group) traded and held positions at various points throughout the Class Period.

- When a stock price jumps, investors with short positions sometimes purchase stock even if they do not rely on the new information that led to the price increase (as might occur, for instance, with margin calls or share recalls);

- Because the Tempus Plaintiffs closed their positions in Tesla stock on August 7, 2018 (the first day of the Class Period), they do not have an incentive to represent the interests of all potential Class Members.

18.     Exhibit 2 lists the materials that I have reviewed.

---

[19]  Class Action Complaint of Andrew E. Left, et al., v. Tesla, Inc., and Elon Musk, ¶ 63.
[20]  I understand the Tesla Investor Group includes Andrew E. Left, PROtecto Informatikai Szolgáltató Korlátolt Felelősségű Társaság, Thierry Boutin, Dr. Abrar Shirazi, and Vilas Capital Management, LLC.

**THE TEMPUS PLAINTIFFS COVERED THEIR ENTIRE SHORT POSITIONS ON AUGUST 7, 2018, THE FIRST DAY OF THE CLASS PERIOD; THE TESLA INVESTOR GROUP (AS A GROUP) TRADED AND HELD POSITIONS AT VARIOUS POINTS THROUGHOUT THE CLASS PERIOD**

19.     Exhibit 3 to this declaration contains what I understand is the Tempus Plaintiffs' submission of their transactions and losses in Tesla stock during the Class Period.[21]

20.     The Tempus Plaintiffs (Tempus and OUF) each held short positions in Tesla common stock on August 6, 2018, the day before Mr. Musk's Tweets.[22] These short positions appear to have been established in May and July 2018 at prices below $300 per share.[23] Exhibit 3 shows that both Tempus and OUF covered (closed) all of their short positions by purchasing a total of 177,022 shares on August 7, 2018 at the same price of $375.9503 per share. The Tempus Plaintiffs made no transactions in Tesla stock between August 8, 2018 and the end of the Class Period on August 17, 2018.

21.     Exhibit 4 to this declaration contains what I understand are the Tesla Investor Group's submission of their transactions and losses in Tesla stock during the Class Period.[24] The Tesla Investor Group is composed of five entities or individuals who made different types of investments. Exhibit 5 shows the types and date ranges of trading for each of the Tesla Investor Group Plaintiffs. Overall, the Tesla Investor Group Trading includes purchases, sales, shorts and covers in Tesla common stock and various transactions in Tesla put and call options. The transactions occurred throughout the Class Period.

---

[21]   *See,* Declaration of Laurence D. King in Support of Tempus International Fund SPC and Opportunity Unique Fund Inc.'s Motions for (1) Consolidation of Related Actions; (2) Appointment as Lead Plaintiff; and (3) Approval of their Choice of Lead Counsel, Exhibits B-D.

[22]   *See,* Exhibit 3.

[23]   *Id.*

[24]   *See,* Declaration of James M. Wagstaffe in Support of Motion of the Tesla Investor Group for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Counsel, Exhibit B.

**WHEN A STOCK PRICE JUMPS, INVESTORS WITH SHORT POSITIONS SOMETIMES PURCHASE STOCK EVEN IF THEY DON'T RELY ON NEW INFORMATION**

22.     A short sale allows an investor to profit from the decline in a security's price and is executed by borrowing shares from a broker (who borrows them from the beneficial owner) and then immediately selling them.[25] To close the position, the investor later purchases shares to cover the short position and returns the shares to the broker, along with any dividends paid in the interim.[26] When the short is covered, the investor's position will no longer be affected by the firm's stock price. This strategy is profitable when the stock price declines because the "share can be purchased later at a lower price than it initially sold for."[27] If instead, the stock price rises, short sellers lose money; they will have to pay more to buy the shares than they made by selling them. Typically, short-sellers pay the broker a fee for the use of the shares they borrow.[28] The cost of borrowing shares can vary based on how difficult the shares are to borrow.

23.     When a stock price increases substantially, short positions in that stock may be closed (by a stock purchase) even if the investor has gained no new information and even in situations where the investors is not initiating the action or interested in closing the short position.

24.     To see why short positions may be closed even though the investor receives no new information, it is helpful to recall that a short creates risk for the short seller and the broker. The broker lends shares to the short-seller and the short-seller must one day buy shares and return them to the broker; the broker is thus a creditor and the short seller is a debtor. There is the risk that the stock price will rise and the investor will not have enough money to buy the shares it has promised to return to the broker. The broker therefore requires short sellers to post cash or

---

[25]  Zvi Bodie, Alex Kane & Alan J. Marcus, *Investments,* 11th Ed. (2018) ("Bodie, Kane & Marcus (2018)"), at 79.

[26]  *Id.*

[27]  *Id.*

[28]  John C. Hull, *Options, Futures, and Other Derivatives*, 10th Ed. (2018) ("Hull (2018)"), at 108.

other collateral to cover any losses on the short positions should the stock price rise.[29] This protects the broker from the possible loss it would incur if the short-seller did not have enough money to buy enough stock to return the shares it initially borrowed.

25.    If the stock price continues to rise, this initial cash or collateral may not be enough to cover the investors' possible loss. Thus, when the stock price rises, brokers typically require investors to buy shares (and cover the short) or to post additional collateral to limit the broker's potential losses.[30] This is known as a "margin call." Similar to traders who *buy* stock on margin, "a short-seller must be concerned about margin calls. If the stock price rises, the margin in the account will fall; if margin falls to the maintenance level, the short-seller will receive a margin call."[31] This is because unlike *buying* on margin, which involves a loan of a specific dollar amount, "when short-selling, you borrow a given number of shares, which must be returned. Therefore, when the price of the shares changes, the value of the loan also changes."[32] To the extent that investors do not post additional margin, a broker may liquidate the investor's position (and buy stock) to protect the lender from additional losses.[33]

26.    Another reason short positions may be closed when the stock price increases, even without receiving any new information about the firm, is that lenders may recall the shares lent to the investor.[34] Lenders may recall shares for various reasons. For instance, the owner of the shares may sell the shares that the broker lent out and need to deliver shares to the new buyer (or for any other reason the shares are committed elsewhere), but the broker may be unable to find substitute shares to lend. In that case, the short seller may be forced to close the position whether it desires to or not.

27.    On August 7, 2018, when Tesla's stock price increased substantially, it is possible that investors such as the Tempus Plaintiffs were unable to post collateral sufficient to prevent

---

[29] *See, e.g.,* Bodie, Kane & Marcus (2018), at 79; Hull (2018), at 109.
[30] Bodie, Kane & Marcus (2018), at 80.
[31] Bodie, Kane & Marcus (2018), at 80.
[32] Bodie, Kane & Marcus (2018), at 80.
[33] Hull (2018), at 109.
[34] Frank J. Fabozzi, Ed., *Short Selling: Strategies, Risks, and Rewards*, (2004), at 12.

their positions from being closed by the broker. It is also possible that investors whose Tesla stock was lent may have recalled the shares because they sold the shares themselves to take advantage of the stock price increase. I understand that the information provided by the Tempus Plaintiffs is insufficient to determine whether either scenario actually occurred.

**BECAUSE THE TEMPUS PLAINTIFFS CLOSED THEIR POSITIONS IN TESLA STOCK ON AUGUST 7, 2018 (THE FIRST DAY OF THE CLASS PERIOD), THEY DO NOT HAVE AN INCENTIVE TO REPRESENT THE INTERESTS OF ALL POTENTIAL CLASS MEMBERS**

28.     In contrast to short sellers, most investors take a "long" position in a stock, purchasing shares in the open market and holding them with the expectation that the share price will increase and the investor will sell the shares at a profit. More fundamentally, a short seller *closes* his position when he purchases the stock while a long investor *opens* his position when he purchases. Because the short seller's position in the stock is closed at the time of the short cover purchase, he has no economic interest in what happens to the stock's price afterward. On the other hand, the economic interest of a long investor is entirely dependent on what happens to the price after his purchase. Consequently, in the context of a securities litigation involving a class of purchasers, the economic interests of a lead plaintiff and a class are not necessarily aligned when the lead plaintiff is a short seller who closed his position early in the class period.

29.     In this litigation, the Tempus Plaintiffs' economic interest solely depends on how much Tesla's stock price was allegedly artificially inflated by the Tweets on August 7, 2018 when they purchased the stock to cover their short positions. The amount of alleged artificial inflation in Tesla's stock price on various dates afterward does not affect the harm they incurred when they purchased. However, the economic interests in this litigation of all purchasers after August 7, 2018 (regardless of whether they were long or short) depends *entirely* on how much the stock was artificially inflated after this date. For long purchasers in particular (who by definition retained their shares and maintained a position in Tesla stock after purchasing), when and by how much such alleged inflation was dissipated from the stock price determines how much of their loss was caused by alleged corrective disclosures that occurred after the Tempus

1   Plaintiffs closed their positions. Similarly, the economic interest of short sellers who purchased

2   to cover their short positions after August 7, 2018 depends on the amount of alleged inflation in

3   Tesla's stock price on the date they covered.

4          30.     Because the Tempus Plaintiffs have no economic interest in what happened to

5   Tesla's share price after they purchased on August 7, 2018, they have no economic incentive

6   regarding the recovery of later purchasers. In fact, whether the Class Period presented to the

7   finder of fact at trial ends on August 17, 2018 or on August 7, 2018 makes no difference to the

8   Tempus Plaintiffs' recovery, but makes all the difference to Class members who purchased after

9   August 7, 2018. For instance, Class members who purchased Tesla stock on August 16, 2018

10  will recover only if the lead plaintiff establishes that the stock price was still artificially inflated

11  on that date, but the Tempus Plaintiffs have no economic incentive to make that showing.

12         31.     In sum, there are two principal factual questions that will determine Class

13  members' recovery: the length of the Class Period and the amount of artificial inflation in

14  Tesla's stock price during that period. Although these are key concerns for other Class members,

15  the Tempus Plaintiffs have no economic incentive to protect the welfare of Class members

16  (whether long or short) who purchased after August 7, 2018.

17         32.     Further, because the vast majority of securities class actions settle before trial, the

18  Tempus Plaintiffs may have an economic *disincentive* to obtain a recovery for later purchasers.

19  To see why, note that settlement funds typically are distributed on a *pro rata* basis. Therefore,

20  anything that limits the amount of the settlement fund, such as Tesla's ability to pay, also limits

21  the recovery for each claimant. Hence, the Tempus Plaintiffs would be better off if the later

22  purchasers' *pro rata* share were eliminated because at least a portion of any award to other Class

23  members would come at the Tempus Plaintiffs' expense. This gives Tempus Plaintiffs a

24  powerful economic incentive to pursue a legal theory that would lessen other Class members'

25  potential recovery by, e.g., ending the Class Period earlier or otherwise claiming that the alleged

26  inflation dissipated from the stock price earlier than Class members who purchased later would

27  claim to maximize their own potential recovery. Thus, in such a situation, the interests of the

28

1    Tempus Plaintiffs are in direct conflict with the interests of any other Class members who

2    purchased Tesla stock after August 7.

3         33.    In contrast to the Tempus Plaintiffs, the Tesla Investor Group is not limited to

4    short sellers who covered their positions on August 7, 2018 – rather, it includes members who

5    purchased Tesla stock by covering short positions after that date as well as by entering into long

6    positions throughout the proposed Class Period.  Accordingly, the Tesla Investor Group has a

7    strong economic incentive regarding the recovery of all Class members throughout the Class

8    Period (including all short sellers, not just those who covered their positions on August 7, 2018).

9         34.    Finally, unlike the Tempus Plaintiffs, the Tesla Investor Group would have no

10   economic incentive to maximize its members' recovery at the expense of other Class members.

11   Any minimization of the potential recovery of other purchasers after August 7, 2018 would be to

12   the detriment of Tesla Investor Group members. For example, while ending the Class Period on

13   August 8, 2018 would not reduce the Tempus Plaintiffs' potential recovery, it would eliminate

14   all of Mr. Boutin's claim and a substantial portion of other Tesla Investor Group members'

15   claims, as well as the claims of absent Class members in similar positions.

16

17        I declare under penalty of perjury that the foregoing is true and correct.

18        Executed on October 22, 2018 at Stanford, California.

19

20

21

22                                                    _____
23                                                    Robert M. Daines

EXHIBIT 1

# Robert M. Daines

Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305

Phone: (650) 736-2684
Daines@Stanford.edu

---

| **Employment** | **Stanford Law School** | *2004-* |
| | • Associate Dean for Global and Graduate Programs | |
| | • Pritzker Professor of Law and Business | |
| | • Professor of Finance, Stanford Graduate School of Business (by courtesy) | |
| | • Senior Faculty, Rock Center for Corporate Governance at Stanford | |
| | | *1997-04* |
| | **NYU School of Law**   Professor of Law | |
| | **Yale Law School**   Visiting Professor | *2001* |
| | **Columbia Law School**   Visiting Olin Fellow | *1999* |
| | **Goldman Sachs & Company** Associate in Leveraged Finance | *1993-97* |
| | Advised firms on high-yield bond and bank financings, acquisition finance and project finance in emerging markets. | |
| | **Hon. Ralph K. Winter, United States Court of Appeals for the Second Circuit** Law Clerk | *1992-93* |

---

**Teaching**

Corporate Law, Corporate Finance, Mergers and Acquisitions, Corporate Governance, The Law and Economics of Complex Transactions, International Business Transactions, Regulation and Litigation.

Awarded Stanford Law School's JBH Award for Excellence in Teaching

University Committee on Review of Undergraduate Majors
University Committee on Graduate Studies
Chair, Stanford University Advisory Panel on Investment Responsibility and Licensing
Chair, Law School Admissions and Faculty Appointments

---

| **Education** | **Yale Law School** | *1993* |
| | ▪ Postgraduate research on property and tort reform | |
| | **Yale Law School** (J.D.) | *1989-92* |
| | ▪ John M. Olin prize for best paper on law, economics and public policy | |
| | ▪ Lead and Executive Editor, Yale Journal on Regulation | |
| | **Brigham Young University** | *1985-89,* |
| | | *1982-83* |
| | ▪ BS Economics, BA American Studies - University Honors, Highest Distinction | |
| | ▪ Student body President | |

---

| **Professional** | • Current or former:  Member, NASDAQ Stock Market Review Council; Chair of the Corporate and Securities Law section of the American Law and Economics Association; Chair of the Law and Economics Section of the Association of American Law Schools; Program Committee for Conference on Empirical Legal Scholarship. |
| --- | --- |
| | • Referee for the Journal of Finance; Journal of Financial Economics, Journal of Law and Economics; Journal of Law, Economics and Organization; Financial Management; Journal of Legal Studies; and the American Law and Economics Review. |

## Research & Publications

1. Robert Daines, Shelley Xin Li, Charles and C.Y. Wang, <u>Can Staggered Boards Improve Value? Evidence from the Massachusetts Natural Experiment,</u> (working paper) (September  2015).

2. Robert Daines, Grant Richard McQueen and Robert J. Schonlau, <u>Right on Schedule: CEO Option Grants and Opportunism,</u> Journal of Financial and Quantitative Analysis, forthcoming.

3. Robert M. Daines and Olga Koumrian, <u>Merger Lawsuits Yield High Costs and Questionable Benefits,</u> New York Times Dealbook, June 8, 2012.

4. Robert M. Daines and Tyler Shumway, <u>Pornography and Divorce</u> (7th Annual Conference on Empirical Legal Studies Paper) (June 4, 2012).

5. Robert M. Daines and Charles M. Jones, <u>Truth or Consequences: Mandatory Disclosure and the Impact of the 1934 Act</u> (draft working paper) (May 2012).

6. Robert M. Daines and Olga Koumrian, <u>Recent Developments in Shareholder Litigation Involving Mergers and Acquisitions. March 2012 Update,</u> Cornerstone Research, 2012.

7. Robert M. Daines, Ian D. Gow and David F. Larcker, <u>Rating the Ratings: How Good Are Commercial Governance Ratings?,</u> 98 Journal of Financial Economics 439 (2010).

8. Robert M. Daines and Charles Jones, <u>Mandatory Disclosure, Information Asymmetry and Liquidity:  The Effect of the 1934</u> (working paper) (2010).

9. Robert M. Daines and Michael Klausner, *Economic Analysis of Corporate Law*, in <u>The New Palgrave Dictionary of Economics,</u> Lawrence E. Blume & Stephen Durlauf, eds., New York: Macmillan, 2nd ed., 2008.

10. Robert M. Daines and Davina Drabkin, <u>PeopleSoft Finally Accepts Oracle's Offer(B),</u> Stanford: Stanford Graduate School of Business, 2006.

11. Robert M. Daines and Davina Drabkin, <u>Oracle's Hostile Takeover of PeopleSoft(A),</u> Stanford: Stanford Graduate School of Business, 2006.

12. Robert M. Daines, <u>The Good, the Bad, and the Lucky: CEO Pay and Skill,</u> Stanford Lawyer, Spring 2005, p. 41.

13. Robert M. Daines, Vinay B. Nair and Lewis A. Kornhauser, <u>The Good, The Bad, And The Lucky: CEO Pay and Skill,</u> University of Pennsylvania Institute for Law and Economics, Research Paper Series (2005).

14. Robert M. Daines & Michael Klausner, <u>Agents Protecting Agents: An Empirical Study of Takeover Defenses in Spinoffs,</u> Stanford University Law School. Working Paper (December 16, 2004).

15. Robert M. Daines, <u>Do classified boards affect firm value?  Takeover defenses after the pill</u> (revise and resubmit, Journal of Financial and Quantitative Analysis).

16. Robert M. Daines, <u>The Incorporation Choices of IPO Firms (Initial Public Offerings),</u> 77 New York University Law Review 1559-1611 (2002).

17. Robert M. Daines, <u>Does Delaware Law Improve Firm Value?,</u> 62 Journal of Financial Economics 525-558 (2001) (*All Star Paper*)

18. Robert M. Daines & Michael Klausner, <u>Do IPO Charters Maximize Firm Value? Antitakeover Protection in IPOs,</u> 17 Journal of Law, Economics, & Organization 83 (2001).

19. Robert M. Daines, <u>Is There a Delaware Premium?,</u> 21 Corporate Board 22-26 (May/June 2000).

20. Robert M Daines & Scott Naatjes, <u>Measuring Legal Change,</u> (working paper) (1997).

21. Robert M. Daines & Jon Hanson, <u>The Corporate Law Paradox: The Case for Restructuring Corporate Law (Book Review of The Economic Structure of Corporate Law, by Frank H. Easterbrook and Daniel R. Fischel,</u> 102 Yale Law Journal 577-637 (1992).

Oct. 2018

**Robert M. Daines**

**Expert Testimony**

Deposition in re Syngenta AG MIR162 Corn Litigation, United States District Court for the District of Kansas, Master File No. 2:14-MD-02591-JWL-JPO, MDL No. 2591 (2017)

Deposition in re Allergan, Inc. Proxy Violation Securities Litigation, United States District Court, Central District of California, Southern District, Case No. 8:14-cv-2004-DOC (ANx) (2017)

Deposition in re Robert Englehart, et al., v. Charles M. Brown, et al., Superior Court for the State of Washington in and for King County, Case No. 13-2-33726-6 KNT (2016)

Deposition in re Monster LLC v. Beats Electronics LLC, et al., Superior Court for the State of California, County of Los Angeles, Case No. BC595235 (2016)

Deposition in re Musashi, LLC, et al., v. Virgin Media Inc., Superior Court of the State of New Jersey, County of Morris, Civil Action No. MRS-L-734-13 (2016)

Deposition in re Tibco Software, Inc. Stockholders Litigiation, In the Court of Chancery of the State of Delaware, Consolidated C.A. No. 10319-CB (2016)

Direct Testimony in re Natural Blue Resources, Inc., James E. Cohen, and Joseph A. Corazzi, Respondents, SEC Administrative Proceeding, File No. 3-15974 (2015)

Deposition and Trial Testimony in re United States v. BP Exploration & Production, Inc., et al., Penalty Phase, United States District Court, Eastern District of Louisiana, Civil Action No. 10-MD-02179-CJB-SS (2014-2015)

Deposition and Trial Testimony in re Starr International Company, Inc., et al., v. The United States, U.S. Court of Federal Claims, Civil Action No. 11-CV-00779 (TCW) (2014)

Deposition in re Allergan, Inc., et al., v. Valeant Pharmaceuticals International, Inc. et al., United States District Court, Central District of California, Southern Division, Santa Ana, Case No.: 8:14-cv-01214-DOC-(ANx) (2014)

Deposition in re R. Mancuso v. The Clorox Company et al., Superior Court of California, County of Alameda, Civil Action No. RG12-651653 (2013)

Deposition in re Intermec, Inc. Shareholder Litigation, Superior Court of Washington in and for Snohomish County, Civil Action No. 12-2-01841-1 (2013)

Deposition and Trial Testimony in re The matter of the application of The Bank of New York Mellon et al., Supreme Court of The State of New York, County Of New York, Civil Action No. 651786/2011 (2012-2013)

**Declaration and Expert Report**

Expert Report in re Syngenta AG MIR162 Corn Litigation, United States District Court for the District of Kansas, Master File No. 2:14-MD-02591-JWL-JPO, MDL No. 2591 (2016)

Expert Report in re Syngenta Litigation, State of Minnesota District Court, County of Hennepin, Fourth Judicial District, Court File No. 27-CV-15-3785 (2016)

Expert Declaration in re Allergan, Inc. Proxy Violation Securities Litigation, United States District Court, Central District of California, Southern District, Case No. 8:14-cv-2004-DOC (ANx) (2016)

Expert and Rebuttal Reports in re Robert Englehart, et al., v. Charles M. Brown, et al., Superior Court for the State of Washington in and for King County, Case No. 13-2-33726-6 KNT (2016)

Expert Report in re Chesapeake Energy Corporation v. Aubrey K. McClendon, et al. Case No. 01-15-0002-6739 (2016)

Rebuttal Report in re Musashi, LLC, et al., v. Virgin Media Inc., Superior Court of the State of New Jersey, County of Morris, Civil Action No. MRS-L-734-13 (2016)

Expert and Rebuttal Reports in re Tibco Software, Inc. Stockholders Litigation, In the Court of Chancery of the State of Delaware, Consolidated C.A. No. 10319-CB (2015)

Rebuttal Report in re Stephen M. Stradman v. Republic Services, Inc., et al., United States District Court for the Eastern District of Virginia, Civil Action No. CA 1:14cv01289 (JCC/JFA) (2015)

Expert, Reply, and Responsive Reports in re United States v. BP Exploration & Production, Inc., et al., Penalty Phase, United States District Court, Eastern District of Louisiana, Civil Action No. 10-MD-02179-CJB-SS (2014-2015)

Expert Declaration in re Allergan, Inc., et al., v. Valeant Pharmaceuticals International, Inc. et al., United States District Court, Central District of California, Southern Division, Santa Ana, Case No.: 8:14-cv-01214-DOC-(ANx) (2014)

Expert Report in re Starr International Company, Inc., et al., v. The United States, U.S. Court of Federal Claims, Civil Action No. 11-CV-00779 (TCW) (2014)

Declaration in re R. Mancuso v. The Clorox Company et al., Superior Court of California, County of Alameda, Civil Action No. RG12-651653 (2013)

Declaration and Expert Report in re Intermec, Inc. Shareholder Litigation, Superior Court of Washington in and for Snohomish County, Civil Action No. 12-2-01841-1 (2013)

Expert Report in re Sprint Nextel Corporation Shareholder Litigation, Kansas District Court, Johnson County, Civil Action No. 12-CV-08366 (2013)

EXHIBIT 2

**Exhibit 2**

**Materials Relied Upon**

Class Action Complaint, Kalman Isaacs, et al. v. Elon Musk and Tesla, Inc.

Class Action Complaint, Andrew E. Left, et al. v. Telsa, Inc. and Elon Musk

Declaration of Laurence D. King in Support of Tempus International Fund SPC and Opportunity Unique Fund Inc.'s Motions for (1) Consolidation of Related Actions; (2) Appointment as Lead Plaintiff; and (3) Approval of their Choice of Lead Counsel, Exhibits B-D.

Declaration of James M. Wagstaffe in Support of Motion of the Tesla Investor Group for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Counsel, Exhibit B.

Tesla, Inc. Form 10-Q for the quarter ended June 30, 2018

Frank J. Fabozzi, Ed., *Short Selling: Strategies, Risks, and Rewards*, (2004)

Zvi Bodie, Alex Kane & Alan J. Marcus, *Investments,* 11th Ed. (2018)

John C. Hull, *Options, Future, and Other Derivatives*, 10th Ed. (2018)

Bloomberg L.P.

***All other documents cited in this report and exhibits.***

# EXHIBIT 3

## CERTIFICATION PURSUANT TO THE FEDERAL SECURITIES LAWS

I, Opportunity Gestão de Investimentos e Recursos Ltda., Investment Manager, on behalf of Tempus International Fund SPC ("Tempus") hereby declare that:

1.    I am authorized to make a certification on behalf of Tempus.

2.    I have reviewed a complaint filed in this action alleging violations of the securities laws and authorize the filing of a lead plaintiff motion.

3.    Tempus did not purchase the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4.    Tempus is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial if necessary. Tempus fully understands the duties and responsibilities of the Lead Plaintiff under the Private Securities Litigation Reform Act of 1995, specifically concerning its selection and retention of counsel and overseeing and directing the prosecution of the action on behalf of the class.

5.    Tempus' transactions in Tesla, Inc. securities during the proposed class period are set forth in Schedule A, which is attached hereto.

6.    Tempus has not sought to serve as a representative party on behalf of a class or been appointed lead plaintiff in any action under the federal securities laws filed during the three-year period preceding the date of this Certification.

7.    Tempus will not accept any payment for serving as a representative party on behalf of a class beyond its pro-rata share of any recovery, except as ordered or approved by the court, including any award to a representative plaintiff of reasonable costs and expense directly related to the representation of the class.

8.    I declare under penalty of perjury that the foregoing is true and correct, executed on this 27 day of September, 2018.

Opportunity Gestão de Investimentos e Recursos Ltda.
Investment Manager
*Tempus International Fund SPC*



## Schedule A
### Tempus Transactions in Tesla, Inc.

| Security | CUSIP | Transaction | Trade Date | Quantity | Price |
|---|---|---|---|---|---|
| Tesla, Inc. | 88160R101 | Cover Purchase | 8/7/2018 | 35,526 | 375.950 |
| Tesla, Inc. | 88160R101 | Cover Purchase | 8/7/2018 | 128,135 | 375.950 |
| Tesla, Inc. | 88160R101 | Cover Purchase | 8/7/2018 | 2,037 | 375.950 |

2



## CERTIFICATION PURSUANT TO THE FEDERAL SECURITIES LAWS

I, Opportunity Gestão de Investimentos e Recursos Ltda., Investment Manager, on behalf of Opportunity Unique Fund Inc. ("OUF") hereby declare that:

1.    I am authorized to make a certification on behalf of OUF.

2.    I have reviewed a complaint filed in this action alleging violations of the securities laws and authorize the filing of a lead plaintiff motion.

3.    OUF did not purchase the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4.    OUF is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial if necessary.  OUF fully understands the duties and responsibilities of the Lead Plaintiff under the Private Securities Litigation Reform Act of 1995, specifically concerning its selection and retention of counsel and overseeing and directing the prosecution of the action on behalf of the class.

5.    OUF's transactions in Tesla, Inc. securities during the proposed class period are set forth in Schedule A, which is attached hereto.

6.    OUF has not sought to serve as a representative party on behalf of a class or been appointed lead plaintiff in any action under the federal securities laws filed during the three-year period preceding the date of this Certification.

7.    OUF will not accept any payment for serving as a representative party on behalf of a class beyond its pro-rata share of any recovery, except as ordered or approved by the court, including any award to a representative plaintiff of reasonable costs and expense directly related to the representation of the class.

8.    I declare under penalty of perjury that the foregoing is true and correct, executed on this 27 day of September, 2018.

Opportunity Gestão de Investimentos e Recursos Ltda.
Investment Manager
*Opportunity Unique Fund Inc.*



### Schedule A
### OUF Transactions in Tesla, Inc.

| Security | CUSIP | Transaction | Trade Date | Quantity | Price |
|---|---|---|---|---|---|
| Tesla, Inc. | 88160R101 | Cover Purchase | 8/7/2018 | 11,324 | 375.950 |



# Exhibit D



**KAPLANFOX**
EXPERIENCE. SELECTIVITY. RESULTS.

## TEMPUS AND OUF

### Estimated LIFO Losses in Tesla, Inc. (TSLA) - Class period: 8/7/2018 - 8/17/2018

| SECURITY NAME | CUSIP | TRANSACTION TYPE | TRADE DATE | SHARES | PRICE PER SHARE | COSTS or (PROCEEDS) | ESTIMATED LOSSES or (PROFIT) | ACCOUNT |
|---|---|---|---|---|---|---|---|---|
| **TESLA, INC.** | | | | | | | | |
| Tesla, Inc. | 88160R101 | Sold | 5/2/2018 | (37,440) | $299.0651 | ($11,196,997.34) | | TEMPUS |
| Tesla, Inc. | 88160R101 | Sold | 5/2/2018 | (675) | $299.0651 | ($201,868.94) | | TEMPUS |
| Tesla, Inc. | 88160R101 | Sold | 5/3/2018 | (92,454) | $277.4724 | ($25,653,433.27) | | TEMPUS |
| Tesla, Inc. | 88160R101 | Sold | 5/3/2018 | (1,349) | $277.4724 | ($374,310.27) | | TEMPUS |
| Tesla, Inc. | 88160R101 | Sold | 7/31/2018 | (7,660) | $296.2556 | ($2,269,317.90) | | TEMPUS |
| Tesla, Inc. | 88160R101 | Sold | 7/31/2018 | (26,120) | $296.2556 | ($7,738,196.27) | | TEMPUS |
| | | | | *(165,698)* | | *($47,434,123.99)* | | |
| Tesla, Inc. | 88160R101 | Bought | 8/7/2018 | 35,526 | $375.9503 | $13,356,010.36 | | TEMPUS |
| Tesla, Inc. | 88160R101 | Bought | 8/7/2018 | 128,135 | $375.9503 | $48,172,391.69 | | TEMPUS |
| Tesla, Inc. | 88160R101 | Bought | 8/7/2018 | 2,037 | $375.9503 | $765,810.76 | | TEMPUS |
| | | | | 165,698 | | $62,294,212.81 | $14,860,088.82 | |
| Tesla, Inc. | 88160R101 | Sold | 5/2/2018 | (2,707) | $299.0651 | ($809,569.23) | | UNIQUE EQUITY MASTER |
| Tesla, Inc. | 88160R101 | Sold | 5/3/2018 | (6,197) | $277.4724 | ($1,719,496.46) | | UNIQUE EQUITY MASTER |
| Tesla, Inc. | 88160R101 | Sold | 7/31/2018 | (2,420) | $296.2556 | ($716,938.55) | | UNIQUE EQUITY MASTER |
| | | | | *(11,324)* | | *($3,246,004.24)* | | |
| Tesla, Inc. | 88160R101 | Bought | 8/7/2018 | 11,324 | $375.9503 | $4,257,261.20 | | UNIQUE EQUITY MASTER |
| | | | | 11,324 | | $4,257,261.20 | $1,011,256.96 | |
| | | | | | | Total Estimated Losses | $15,871,345.77 | |

EXHIBIT 4

**LOSS ANALYSIS**

Tesla, Inc. - Tesla Investor Group

Class Period: 8/7/2018 to 8/17/2018

| Andrew E. Left | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Security | | Ticker | CUSIP | SEDOL | ISIN | Lookback Price [1] |
| | | Tesla Common Stock | | TSLA | 88160R101 | B616C79 | US88160R101 | $295.08 |
| Investor/Account | Security | Transaction Type | Trade Date | Quantity | Price | Cost/Proceeds | Hold Value[1] | Gain/(Loss) |
| Andrew E. Left - Account 1 | Tesla Common Stock | Purchase | 8/7/2018 | 9,000 | $350.07 | ($3,150,630.00) | $2,655,685.93 | ($494,944.07) |
| Andrew E. Left - Account 1 | Tesla Common Stock | Sale | 8/7/2018 | -9,000 | $342.29 | $3,080,610.00 | ($2,655,685.93) | $424,924.07 |
| **Andrew E. Left - Account 1** | **Tesla Common Stock** | | | **0** | | **($70,020.00)** | | **($70,020.00)** |
| | | | | | | | | |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/7/2018 | 3,000 | $344.70 | ($1,034,100.00) | $885,228.64 | ($148,871.36) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/7/2018 | -6,000 | $342.57 | $2,055,420.00 | ($1,770,457.29) | $284,962.71 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/7/2018 | 5,000 | $346.18 | ($1,730,900.00) | $1,475,381.07 | ($255,518.93) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/7/2018 | -2,000 | $340.88 | $681,760.00 | ($590,152.43) | $91,607.57 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/7/2018 | 2,000 | $353.85 | ($707,700.00) | $590,152.43 | ($117,547.57) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/7/2018 | 1,000 | $353.85 | ($353,850.00) | $295,076.21 | ($58,773.79) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/7/2018 | 9,000 | $353.85 | ($3,184,650.00) | $2,655,685.93 | ($528,964.07) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/7/2018 | 3,000 | $353.85 | ($1,061,550.00) | $885,228.64 | ($176,321.36) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/7/2018 | 4,000 | $355.96 | ($1,423,840.00) | $1,180,304.86 | ($243,535.14) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/7/2018 | -7,000 | $359.25 | $2,514,750.00 | ($2,065,533.50) | $449,216.50 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/7/2018 | 2,000 | $361.97 | ($723,940.00) | $590,152.43 | ($133,787.57) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/7/2018 | 3,500 | $368.43 | ($1,289,505.00) | $1,032,766.75 | ($256,738.25) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/7/2018 | 1,500 | $367.74 | ($551,610.00) | $442,614.32 | ($108,995.68) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/7/2018 | 1,000 | $367.74 | ($367,740.00) | $295,076.21 | ($72,663.79) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/7/2018 | -8,000 | $358.23 | $2,865,840.00 | ($2,360,609.71) | $505,230.29 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/7/2018 | 4,000 | $361.78 | ($1,447,120.00) | $1,180,304.86 | ($266,815.14) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/7/2018 | 4,000 | $367.79 | ($1,471,160.00) | $1,180,304.86 | ($290,855.14) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/7/2018 | -6,000 | $380.65 | $2,283,900.00 | ($1,770,457.29) | $513,442.71 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/7/2018 | -1,500 | $374.83 | $562,245.00 | ($442,614.32) | $119,630.68 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/7/2018 | 3,000 | $378.64 | ($1,135,920.00) | $885,228.64 | ($250,691.36) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/8/2018 | 4,500 | $371.22 | ($1,670,490.00) | $1,327,842.96 | ($342,647.04) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/8/2018 | -5,000 | $375.30 | $1,876,500.00 | ($1,475,381.07) | $401,118.93 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/8/2018 | -3,133 | $369.25 | $1,156,860.25 | ($924,473.78) | $232,386.47 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/8/2018 | -1,867 | $368.86 | $688,661.62 | ($550,907.29) | $137,754.33 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/9/2018 | 10,000 | $363.00 | ($3,630,000.00) | $2,950,762.14 | ($679,237.86) |

| Investor/Account | Security | Transaction Type | Trade Date | Quantity | Price | Cost/Proceeds | Hold Value[1] | Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/9/2018 | -4,600 | $359.81 | $1,655,126.00 | ($1,357,350.59) | $297,775.41 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/9/2018 | 4,600 | $362.11 | ($1,665,706.00) | $1,357,350.59 | ($308,355.41) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/9/2018 | -2,000 | $359.38 | $718,760.00 | ($590,152.43) | $128,607.57 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/9/2018 | -3,000 | $356.64 | $1,069,920.00 | ($885,228.64) | $184,691.36 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/9/2018 | 5,000 | $357.94 | ($1,789,700.00) | $1,475,381.07 | ($314,318.93) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/9/2018 | -5,000 | $350.48 | $1,752,400.00 | ($1,475,381.07) | $277,018.93 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/9/2018 | 5,000 | $352.09 | ($1,760,450.00) | $1,475,381.07 | ($285,068.93) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/10/2018 | -3,000 | $349.95 | $1,049,850.00 | ($885,228.64) | $164,621.36 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/10/2018 | 3,000 | $350.57 | ($1,051,710.00) | $885,228.64 | ($166,481.36) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/17/2018 | -3,000 | $328.00 | $984,000.00 | ($885,228.64) | $98,771.36 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/17/2018 | -1,000 | $326.27 | $326,270.00 | ($295,076.21) | $31,193.79 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/17/2018 | -1,000 | $322.29 | $322,290.00 | ($295,076.21) | $27,213.79 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/17/2018 | 5,000 | $325.54 | ($1,627,700.00) | $1,475,381.07 | ($152,318.93) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/17/2018 | -5,000 | $309.98 | $1,549,900.00 | ($1,475,381.07) | $74,518.93 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/17/2018 | 5,000 | $309.09 | ($1,545,450.00) | $1,475,381.07 | ($70,068.93) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Short Sale | 8/17/2018 | -8,000 | $307.54 | $2,460,320.00 | ($2,360,609.71) | $99,710.29 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/17/2018 | 1,500 | $308.58 | ($462,870.00) | $442,614.32 | ($20,255.68) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Short) | Cover Purchase | 8/17/2018 | 6,500 | $305.50 | ($1,985,750.00) | $1,917,995.39 | ($67,754.61) |
| **Andrew E. Left - Account 2** | **Tesla Common Stock (Short)** | | | **20,000** | | **($7,098,638.13)** | | **($1,197,113.84)** |
| | | | | | | | | |
| Andrew E. Left - Account 2 | Tesla Common Stock (Long) | Purchase | 8/9/2018 | 7,000 | $360.99 | ($2,526,930.00) | $2,065,533.50 | ($461,396.50) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Long) | Purchase | 8/9/2018 | 5,000 | $361.83 | ($1,809,150.00) | $1,475,381.07 | ($333,768.93) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Long) | Purchase | 8/9/2018 | 3,000 | $362.90 | ($1,088,700.00) | $885,228.64 | ($203,471.36) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Long) | Sale | 8/10/2018 | -3,000 | $350.05 | $1,050,150.00 | ($885,228.64) | $164,921.36 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Long) | Sale | 8/10/2018 | -3,500 | $348.90 | $1,221,150.00 | ($1,032,766.75) | $188,383.25 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Long) | Sale | 8/10/2018 | -5,100 | $346.56 | $1,767,456.00 | ($1,504,888.69) | $262,567.31 |
| Andrew E. Left - Account 2 | Tesla Common Stock (Long) | Purchase | 8/10/2018 | 15,000 | $356.18 | ($5,342,700.00) | $4,426,143.21 | ($916,556.79) |
| Andrew E. Left - Account 2 | Tesla Common Stock (Long) | Sale | 8/10/2018 | -15,000 | $353.64 | $5,304,600.00 | ($4,426,143.21) | $878,456.79 |
| **Andrew E. Left - Account 2** | **Tesla Common Stock (Long)** | | | **3,400** | | **($1,424,124.00)** | | **($420,864.87)** |

| | Security | | | Ticker | CUSIP | SEDOL | ISIN | Lookback Price [1] |
|---|---|---|---|---|---|---|---|---|
| | TSLA Aug 24 '18 $355 Call | | | - | - | - | - | $0.46 |

| Investor/Account | Security | Transaction Type | Trade Date | Quantity | Price | Cost/Proceeds | Hold Value[1] | Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|
| Andrew E. Left - Account 2 | TSLA Aug 24 '18 $355 Call | Short Sale | 8/9/2018 | -50 | $15.65 | $78,250.00 | ($2,283.33) | $75,966.67 |
| Andrew E. Left - Account 2 | TSLA Aug 24 '18 $355 Call | Cover Purchase | 8/17/2018 | 50 | $1.12 | ($5,600.00) | $2,283.33 | ($3,316.67) |
| **Andrew E. Left - Account 2** | **TSLA Aug 24 '18 $355 Call** | | | **0** | | **$72,650.00** | | **$72,650.00** |

| Security | | Ticker | CUSIP | SEDOL | ISIN | Lookback Price [1] |
|---|---|---|---|---|---|---|
| TSLA Nov 16 '18 $360 Call | | - | - | - | - | $8.55 |

| Investor/Account | Security | Transaction Type | Trade Date | Quantity | Price | Cost/Proceeds | Hold Value[1] | Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|
| Andrew E. Left - Account 2 | TSLA Nov 16 '18 $360 Call | Short Sale | 8/9/2018 | -80 | $35.22 | $281,760.00 | ($68,374.74) | $213,385.26 |
| Andrew E. Left - Account 2 | TSLA Nov 16 '18 $360 Call | Cover Purchase | 8/10/2018 | 80 | $34.65 | ($277,200.00) | $68,374.74 | ($208,825.26) |
| **Andrew E. Left - Account 2** | **TSLA Nov 16 '18 $360 Call** | | | **0** | | **$4,560.00** | | **$4,560.00** |

| Security | | Ticker | CUSIP | SEDOL | ISIN | Lookback Price [1] |
|---|---|---|---|---|---|---|
| TSLA Sep 21 '18 $320 Call | | - | - | - | - | $4.86 |

| Investor/Account | Security | Transaction Type | Trade Date | Quantity | Price | Cost/Proceeds | Hold Value[1] | Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|
| Andrew E. Left - Account 2 | TSLA Sep 21 '18 $320 Call | Short Sale | 8/9/2018 | -50 | $42.00 | $210,000.00 | ($24,277.63) | $185,722.37 |
| Andrew E. Left - Account 2 | TSLA Sep 21 '18 $320 Call | Cover Purchase | 8/10/2018 | 90 | $47.60 | ($428,400.00) | $43,699.74 | ($384,700.26) |
| Andrew E. Left - Account 2 | TSLA Sep 21 '18 $320 Call | Short Sale | 8/17/2018 | -30 | $22.00 | $66,000.00 | ($14,566.58) | $51,433.42 |
| **Andrew E. Left - Account 2** | **TSLA Sep 21 '18 $320 Call** | | | **10** | | **($152,400.00)** | | **($174,917.89)** |
| Andrew E. Left - Account 2 | TSLA Sep 21 '18 $320 Call | Post-Class Cover Purchase | 8/20/2018 | 30 | $13.98 | ($41,940.00) | $14,566.58 | ($27,373.42) [2] |

| Security | | Ticker | CUSIP | SEDOL | ISIN | Lookback Price [1] |
|---|---|---|---|---|---|---|
| TSLA Aug 31 '18 $302.50 Call | | - | - | - | - | $15.46 |

| Investor/Account | Security | Transaction Type | Trade Date | Quantity | Price | Cost/Proceeds | Hold Value[1] | Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|
| Andrew E. Left - Account 2 | TSLA Aug 31 '18 $302.50 Call | Short Sale | 8/17/2018 | -40 | $21.00 | $84,000.00 | ($618.47) | $83,381.53 |
| **Andrew E. Left - Account 2** | **TSLA Aug 31 '18 $302.50 Call** | | | **-40** | | **$84,000.00** | | **$33,000.00** |
| Andrew E. Left - Account 2 | TSLA Aug 31 '18 $302.50 Call | Post-Class Cover Purchase | 8/20/2018 | 40 | $12.75 | ($51,000.00) | $618.47 | ($50,381.53) [2] |

| Security | | Ticker | CUSIP | SEDOL | ISIN | Lookback Price [1] |
|---|---|---|---|---|---|---|
| TSLA Nov 16 '18 $330 Call | | - | - | - | - | $16.56 |

| Investor/Account | Security | Transaction Type | Trade Date | Quantity | Price | Cost/Proceeds | Hold Value[1] | Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|
| Andrew E. Left - Account 2 | TSLA Nov 16 '18 $330 Call | Short Sale | 8/16/2018 | -60 | $37.39 | $224,340.00 | ($99,363.16) | $124,976.84 |
| Andrew E. Left - Account 2 | TSLA Nov 16 '18 $330 Call | Short Sale | 8/17/2018 | -60 | $27.09 | $162,540.00 | ($99,363.16) | $63,176.84 |
| Andrew E. Left - Account 2 | TSLA Nov 16 '18 $330 Call | Cover Purchase | 8/17/2018 | 120 | $26.36 | ($316,320.00) | $198,726.32 | ($117,593.68) |
| **Andrew E. Left - Account 2** | **TSLA Nov 16 '18 $330 Call** | | | **0** | | **$70,560.00** | | **$70,560.00** |

| Andrew E. Left Total Loss: | ($1,682,146.61) |
|---|---|

| PROtecto Informatikai Szolgáltató Korlátolt Felelősségű Társaság ("PROtecto Kft") | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | **Security** | | **Ticker** | **CUSIP** | **SEDOL** | **ISIN** | **Lookback Price** [1] |
| | | Tesla Common Stock | | TSLA | 88160R101 | B616C79 | US88160R101 | $295.08 |
| **Investor/Account** | **Security** | **Transaction Type** | **Trade Date** | **Quantity** | **Price** | **Cost/Proceeds** | **Hold Value** [1] | **Gain/(Loss)** |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.74 | ($38,473.50) | $29,507.62 | ($8,965.88) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 37 | $384.74 | ($14,235.20) | $10,917.82 | ($3,317.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.88 | ($38,488.00) | $29,507.62 | ($8,980.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 10 | $384.84 | ($3,848.40) | $2,950.76 | ($897.64) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 63 | $384.74 | ($24,238.31) | $18,589.80 | ($5,648.50) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.88 | ($38,488.00) | $29,507.62 | ($8,980.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 18 | $384.88 | ($6,927.84) | $5,311.37 | ($1,616.47) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.88 | ($38,488.00) | $29,507.62 | ($8,980.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 500 | $384.60 | ($192,300.00) | $147,538.11 | ($44,761.89) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 50 | $384.54 | ($19,227.00) | $14,753.81 | ($4,473.19) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 50 | $384.54 | ($19,227.00) | $14,753.81 | ($4,473.19) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.55 | ($38,455.00) | $29,507.62 | ($8,947.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.57 | ($38,457.00) | $29,507.62 | ($8,949.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.59 | ($38,459.00) | $29,507.62 | ($8,951.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.59 | ($38,459.00) | $29,507.62 | ($8,951.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 1,070 | $384.59 | ($411,511.30) | $315,731.55 | ($95,779.75) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 30 | $384.36 | ($11,530.80) | $8,852.29 | ($2,678.51) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.38 | ($38,438.00) | $29,507.62 | ($8,930.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $385.02 | ($38,502.00) | $29,507.62 | ($8,994.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 50 | $385.02 | ($19,251.00) | $14,753.81 | ($4,497.19) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.97 | ($38,497.00) | $29,507.62 | ($8,989.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $385.00 | ($38,500.00) | $29,507.62 | ($8,992.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $385.00 | ($38,500.00) | $29,507.62 | ($8,992.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.97 | ($38,497.00) | $29,507.62 | ($8,989.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.94 | ($38,494.00) | $29,507.62 | ($8,986.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.96 | ($38,496.00) | $29,507.62 | ($8,988.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 32 | $385.00 | ($12,320.00) | $9,442.44 | ($2,877.56) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $385.02 | ($38,502.00) | $29,507.62 | ($8,994.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.99 | ($38,499.00) | $29,507.62 | ($8,991.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $385.00 | ($38,500.00) | $29,507.62 | ($8,992.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 33 | $385.00 | ($12,705.00) | $9,737.52 | ($2,967.48) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $385.00 | ($38,500.00) | $29,507.62 | ($8,992.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.94 | ($38,494.00) | $29,507.62 | ($8,986.38) |

| Investor/Account | Security | Transaction Type | Trade Date | Quantity | Price | Cost/Proceeds | Hold Value[1] | Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 250 | $384.93 | ($96,232.50) | $73,769.05 | ($22,463.45) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.83 | ($38,483.00) | $29,507.62 | ($8,975.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 34 | $384.70 | ($13,079.80) | $10,032.59 | ($3,047.21) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.80 | ($38,480.00) | $29,507.62 | ($8,972.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.70 | ($38,470.00) | $29,507.62 | ($8,962.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.71 | ($38,471.00) | $29,507.62 | ($8,963.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.81 | ($38,481.00) | $29,507.62 | ($8,973.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $384.81 | ($38,481.00) | $29,507.62 | ($8,973.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 34 | $385.57 | ($13,109.38) | $10,032.59 | ($3,076.79) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 34 | $385.57 | ($13,109.38) | $10,032.59 | ($3,076.79) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $385.61 | ($38,561.00) | $29,507.62 | ($9,053.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $385.58 | ($38,558.00) | $29,507.62 | ($9,050.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 66 | $385.58 | ($25,448.28) | $19,475.03 | ($5,973.25) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 34 | $385.59 | ($13,110.06) | $10,032.59 | ($3,077.47) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 100 | $385.62 | ($38,562.00) | $29,507.62 | ($9,054.38) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 134 | $385.62 | ($51,673.08) | $39,540.21 | ($12,132.87) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 266 | $385.62 | ($102,574.92) | $78,490.27 | ($24,084.65) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 34 | $385.48 | ($13,106.32) | $10,032.59 | ($3,073.73) |
| PROtecto Kft | Tesla Common Stock | Purchase | 8/7/2018 | 71 | $385.57 | ($27,375.47) | $20,950.41 | ($6,425.06) |
| **PROtecto Kft** | **Tesla Common Stock** | | | **5,900** | | **($2,270,874.53)** | | **($529,924.87)** |

| | Security | Ticker | CUSIP | SEDOL | ISIN | Lookback Price[1] |
|---|---|---|---|---|---|---|
| | TSLA Mar 15 '19 $330 Put | - | - | - | - | $68.38 |

| Investor/Account | Security | Transaction Type | Trade Date | Quantity | Price | Cost/Proceeds | Hold Value[1] | Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|
| PROtecto Kft | TSLA Mar 15 '19 $330 Put | Sale | 8/7/2018 | -46 | $29.50 | $135,700.00 | ($314,560.11) | ($178,860.11) |
| **PROtecto Kft** | **TSLA Mar 15 '19 $330 Put** | | | **-46** | | **$135,700.00** | | **($178,860.11)** |

| | Security | Ticker | CUSIP | SEDOL | ISIN | Lookback Price[1] |
|---|---|---|---|---|---|---|
| | TSLA Jan 17 '20 $200 Put | - | - | - | - | $33.73 |

| Investor/Account | Security | Transaction Type | Trade Date | Quantity | Price | Cost/Proceeds | Hold Value[1] | Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|
| PROtecto Kft | TSLA Jan 17 '20 $200 Put | Sale | 8/7/2018 | -62 | $18.75 | $116,250.00 | ($209,098.26) | ($92,848.26) |
| PROtecto Kft | TSLA Jan 17 '20 $200 Put | Sale | 8/7/2018 | -28 | $18.75 | $52,500.00 | ($94,431.47) | ($41,931.47) |
| **PROtecto Kft** | **TSLA Jan 17 '20 $200 Put** | | | **-90** | | **$168,750.00** | | **($134,779.74)** |

| | |
|---|---|
| **PROtecto Kft Total Loss:** | **($843,564.71)** |

## Thierry Boutin

| | | Security | | Ticker | CUSIP | SEDOL | ISIN | Lookback Price[1] |
|---|---|---|---|---|---|---|---|---|
| | | Tesla Common Stock | | TSLA | 88160R101 | B616C79 | US88160R101 | $295.08 |
| Investor/Account | Security | Transaction Type | Trade Date | Quantity | Price | Cost/Proceeds | Hold Value[1] | Gain/(Loss) |
| Thierry Boutin | Tesla Common Stock | Purchase | 8/9/2018 | 2,000 | $355.01 | ($710,020.00) | $590,152.43 | ($119,867.57) |
| Thierry Boutin | Tesla Common Stock | Purchase | 8/9/2018 | 2,000 | $352.01 | ($704,020.00) | $590,152.43 | ($113,867.57) |
| Thierry Boutin | Tesla Common Stock | Purchase | 8/16/2018 | 1,000 | $337.01 | ($337,010.00) | $295,076.21 | ($41,933.79) |
| Thierry Boutin | Tesla Common Stock | Purchase | 8/16/2018 | 1,000 | $335.96 | ($335,961.40) | $295,076.21 | ($40,885.19) |
| Thierry Boutin | Tesla Common Stock | Purchase | 8/16/2018 | 1,000 | $335.01 | ($335,010.00) | $295,076.21 | ($39,933.79) |
| Thierry Boutin | Tesla Common Stock | Purchase | 8/17/2018 | 1,500 | $322.80 | ($484,200.00) | $442,614.32 | ($41,585.68) |
| Thierry Boutin | Tesla Common Stock | Purchase | 8/17/2018 | 2,000 | $322.80 | ($645,600.00) | $590,152.43 | ($55,447.57) |
| Thierry Boutin | Tesla Common Stock | Purchase | 8/17/2018 | 1,500 | $322.80 | ($484,200.00) | $442,614.32 | ($41,585.68) |
| Thierry Boutin | Tesla Common Stock | Purchase | 8/17/2018 | 2,000 | $306.01 | ($612,020.00) | $590,152.43 | ($21,867.57) |
| **Thierry Boutin** | **Tesla Common Stock** | | | **14,000** | | **($4,648,041.40)** | | **($516,974.40)** |

| | | Security | | Ticker | CUSIP | SEDOL | ISIN | Lookback Price[1] |
|---|---|---|---|---|---|---|---|---|
| | | TSLA Jan 17 '20 $330 Put | | - | - | - | - | $91.52 |
| Investor/Account | Security | Transaction Type | Trade Date | Quantity | Price | Cost/Proceeds | Hold Value[1] | Gain/(Loss) |
| Thierry Boutin | TSLA Jan 17 '20 $330 Put | Sale | 8/17/2018 | -20 | $67.20 | $134,400.00 | ($183,036.84) | ($48,636.84) |
| Thierry Boutin | TSLA Jan 17 '20 $330 Put | Sale | 8/17/2018 | -20 | $67.20 | $134,400.00 | ($183,036.84) | ($48,636.84) |
| Thierry Boutin | TSLA Jan 17 '20 $330 Put | Sale | 8/17/2018 | -20 | $67.21 | $134,420.00 | ($183,036.84) | ($48,616.84) |
| Thierry Boutin | TSLA Jan 17 '20 $330 Put | Sale | 8/17/2018 | -20 | $68.99 | $137,980.00 | ($183,036.84) | ($45,056.84) |
| **Thierry Boutin** | **TSLA Jan 17 '20 $330 Put** | | | **-80** | | **$541,200.00** | | **($190,947.37)** |

**Thierry Boutin Total Loss:** ($707,921.77)

## Dr. Abrar Shirazi

| | | Security | | Ticker | CUSIP | SEDOL | ISIN | Lookback Price[1] |
|---|---|---|---|---|---|---|---|---|
| | | Tesla Common Stock | | TSLA | 88160R101 | B616C79 | US88160R101 | $295.08 |
| Investor/Account | Security | Transaction Type | Trade Date | Quantity | Price | Cost/Proceeds | Hold Value[1] | Gain/(Loss) |
| Dr. Abrar Shirazi | Tesla Common Stock | Purchase | 8/7/2018 | 2,500 | $360.00 | ($900,000.00) | $737,690.54 | ($162,309.46) |
| Dr. Abrar Shirazi | Tesla Common Stock | Purchase | 8/7/2018 | 3,000 | $380.00 | ($1,140,000.00) | $885,228.64 | ($254,771.36) |
| Dr. Abrar Shirazi | Tesla Common Stock | Purchase | 8/8/2018 | 2,055 | $373.83 | ($768,220.65) | $606,381.62 | ($161,839.03) |
| Dr. Abrar Shirazi | Tesla Common Stock | Purchase | 8/8/2018 | 145 | $373.83 | ($54,205.34) | $42,786.05 | ($11,419.28) |
| Dr. Abrar Shirazi | Tesla Common Stock | Purchase | 8/8/2018 | 100 | $373.82 | ($37,381.80) | $29,507.62 | ($7,874.18) |

| Investor/Account | Security | Transaction Type | Trade Date | Quantity | Price | Cost/Proceeds | Hold Value[1] | Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|
| Dr. Abrar Shirazi | Tesla Common Stock | Purchase | 8/8/2018 | 200 | $373.81 | ($74,762.00) | $59,015.24 | ($15,746.76) |
| Dr. Abrar Shirazi | Tesla Common Stock | Purchase | 8/8/2018 | 500 | $373.80 | ($186,900.00) | $147,538.11 | ($39,361.89) |
| **Dr. Abrar Shirazi** | **Tesla Common Stock** | | | **8,500** | | **($3,161,469.79)** | | **($653,321.96)** |

| | |
|---|---|
| **Dr. Abrar Shirazi Total Loss:** | **($653,321.96)** |

### Vilas Capital Management, LLC ("Vilas Capital")

| | | Security | | Ticker | CUSIP | SEDOL | ISIN | Lookback Price[1] |
|---|---|---|---|---|---|---|---|---|
| | | Tesla Common Stock | | TSLA | 88160R101 | B616C79 | US88160R101 | $295.08 |

| Investor/Account | Security | Transaction Type | Trade Date | Quantity | Price | Cost/Proceeds | Hold Value[1] | Gain/(Loss) |
|---|---|---|---|---|---|---|---|---|
| Vilas Capital | Tesla Common Stock | Cover Purchase | 8/7/2018 | 4,000 | $385.25 | ($1,541,000.00) | $1,180,304.86 | ($360,695.14) |
| Vilas Capital | Tesla Common Stock | Cover Purchase | 8/7/2018 | 4,000 | $382.32 | ($1,529,280.00) | $1,180,304.86 | ($348,975.14) |
| Vilas Capital | Tesla Common Stock | Cover Purchase | 8/7/2018 | 4,000 | $374.07 | ($1,496,280.00) | $1,180,304.86 | ($315,975.14) |
| Vilas Capital | Tesla Common Stock | Short Sale | 8/13/2018 | -2,000 | $359.09 | $718,180.00 | ($590,152.43) | $128,027.57 |
| Vilas Capital | Tesla Common Stock | Short Sale | 8/13/2018 | -2,000 | $359.99 | $719,980.00 | ($590,152.43) | $129,827.57 |
| Vilas Capital | Tesla Common Stock | Short Sale | 8/14/2018 | -708 | $358.63 | $253,910.04 | ($208,913.96) | $44,996.08 |
| Vilas Capital | Tesla Common Stock | Short Sale | 8/17/2018 | -1,292 | $316.53 | $408,951.98 | ($381,238.47) | $27,713.51 |
| **Vilas Capital** | **Tesla Common Stock** | | | **6,000** | | **($2,465,537.98)** | | **($695,080.69)** |

| | |
|---|---|
| **Vilas Capital Total Loss:** | **($695,080.69)** |

| | |
|---|---|
| **Tesla Investor Group Total Losses:** | **($4,582,035.74)** |

*Endnotes*

[1] *Lookback Prices and Hold Values are valued at the mean trading price of the security from 8/17/2018 to 10/9/2018.*

[2] *Cover purchases occurring during the 90-day lookback period have been valued at the original trading price.*

EXHIBIT 5

**Exhibit 5**

**Tesla Investor Group Transactions**

| Tesla Investor Group Member | Tesla Common Stock | | | | Tesla Options | Date Range of Trading |
|---|---|---|---|---|---|---|
| | Purchase | Sale | Short | Cover | | |
| Andrew E. Left | x | x | x | x | x | August 7, 2018 - August 17, 2018 |
| PROtecto Informatikai Szolgáltató Korlátolt Felelősségű Társaság | | | | x[1] | x | August 7, 2018 |
| Thierry Boutin | x | | | | x | August 9, 2018 - August 17, 2018 |
| Dr. Abrar Shirazi | x | | | | | August 7, 2018 - August 8, 2018 |
| Vilas Capital Management, LLC | | | x | x | | August 7, 2018 - August 17, 2018 |

[1] I understand the PROtecto purchases were short covers.

Source:  Declaration of James M. Wagstaffe in Support of Motion of the Tesla Investor Group for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Counsel, Exhibit B.