1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  RACHEL L. JENSEN (211456)
   RANDI D. BANDMAN (145212)
3  TRICIA L. McCORMICK (199239)
   655 West Broadway, Suite 1900
4  San Diego, CA  92101-8498
   Telephone:  619/231-1058
5  619/231-7423 (fax)
   rachelj@rgrdlaw.com
6  randib@rgrdlaw.com
   triciam@rgrdlaw.com
7
   LIEFF, CABRASER, HEIMANN
8    & BERNSTEIN, LLP
   ELIZABETH J. CABRASER (83151)
9  RICHARD M. HEIMANN (63607)
   KATHERINE LUBIN (259826)
10 275 Battery Street, 29th Floor
   San Francisco, CA  94111-3339
11 Telephone:  415/956-1000
   415/956-1008 (fax)
12 ecabraser@lchb.com
   rheimann@lchb.com
13 kbenson@lchb.com

14 [Proposed] Lead Counsel for Plaintiff

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17                SAN FRANCISCO DIVISION

18 KALMAN ISAACS, Individually and on      )  Case No. 3:18-cv-04865-EMC
   Behalf of All Others Similarly Situated,  )
19                                          )  CLASS ACTION
                              Plaintiff,    )
20                                          )  DANY DAVID'S OPPOSITION TO
           vs.                              )  COMPETING MOTIONS FOR
21                                          )  APPOINTMENT AS LEAD PLAINTIFF
   ELON MUSK, et al.,                       )
22                                          )  DATE:       November 15, 2018
                              Defendants.   )  TIME:       1:30 p.m.
23 _____ )  CTRM:       5, 17th Floor
                                               JUDGE:      Hon. Edward M. Chen
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   BACKGROUND AND INTRODUCTION ..................................................................1

II.  REGARDLESS OF THEIR CLAIMED LOSSES, THE COMPETING
     MOVANTS DO NOT MEET THE RULE 23 REQUIREMENTS....................................4

     A.   Appointment of the Hedge Fund Group Could Raise Adequacy Issues.................5

     B.   Bridgestone, First New York, and Mr. Littleton Are Net Sellers and Net
          Gainers During the Class Period and Profited, Rather than Suffered, from
          the Alleged Fraud........................................................................................9

     C.   The Left Group and the Kulik Group Are Lawyer-Driven Amalgamations,
          Formed Solely to Achieve the Largest Financial Interest Designation ................11

          1.   The Kulik Group Made No Attempt to Show It Is Anything but A
               Lawyer-Driven Amalgamation ...............................................................12

          2.   The Left Group Is Similarly Lawyer-Driven, and Its
               "Spokesperson" Is Subject to Unique Defenses ........................................15

     D.   Vilas Capital, First New York, and Likely the Hedge Fund Group, Are
          Subject to a Unique Standing Defense....................................................................21

     E.   Mr. Johnson Does Not Possess the Largest Financial Interest .............................23

III. CONCLUSION.....................................................................................................23

1

**TABLE OF AUTHORITIES**

2

Page

3

**CASES**

4

*Abouzied v. Applied Optoelectronics, Inc*,
5    No. 4:17-CV-2399, 2018 U.S. Dist. LEXIS 16808
    (S.D. Tex. Jan. 22, 2018) ....................................................................................................11

6

*Apple v. LJ Int'l, Inc.*,
7    No. CV 07-6076 GAF, 2008 U.S. Dist. LEXIS 12618
    (C.D. Cal. Feb. 8, 2008) .................................................................................................2, 13

8

*Bhojwani v. Pistrolis*,
9    No. 06 Civ. 13761 (CM), 2007 U.S. Dist. LEXIS 96246
    (S.D.N.Y. July 31, 2017) ....................................................................................................6

10

*Bodri v. GoPro, Inc.*,
11    No. 16-cv-00232-JST, 2016 U.S. Dist. LEXIS 57559
    (N.D. Cal. Apr. 28, 2016) ...........................................................................................12, 14

12

*Buettgen v. Harless*,
13    263 F.R.D. 378 (N.D. Tex. 2009) .....................................................................................14

14

*Deering v. Galena Biopharma, Inc.*,
15    No. 3:14-cv-00367-SI, 2014 U.S. Dist. LEXIS 140766
    (D. Or. Oct. 3, 2014) ...........................................................................................................9

16

*Eichenholtz v. Verifone Holdings, Inc.*,
17    No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633
    (N.D. Cal. Aug. 22, 2008) ....................................................................................... *passim*

18

*Frank v. Dana Corp.*,
19    237 F.R.D. 171 (N.D. Ohio 2006) .....................................................................................11

20

*Glauser v. EVCI Career Colls. Holding Corp.*,
21    236 F.R.D. 184 (S.D.N.Y. 2006) .......................................................................................19

22

*Gluck v. CellStar Corp.*,
23    976 F. Supp. 542 (N.D. Tex. 1997) ...................................................................................16

24

*Hevesi v. Citigroup Inc.*,
25    366 F.3d 70 (2d Cir. 2004) .................................................................................................16

26

*In re Bard Assocs., Inc.*,
27    No. 09-6243, 2009 U.S. App. LEXIS 26289
    (10th Cir. Dec. 2, 2009) .....................................................................................................22

28

**Page**

*In re Bausch & Lomb Inc. Sec. Litig.*,
    244 F.R.D. 169 (W.D.N.Y 2007) ...................................................................9, 11

*In re Cardinal Health, Inc. Sec. Litig.*,
    226 F.R.D. 298 (S.D. Ohio 2005) .........................................................................11

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ........................................................................4, 13, 23

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ...................................................................11, 13, 14, 15

*In re Comdisco Sec. Litig.*,
    150 F. Supp. 2d 943 (N.D. Ill. 2001) .....................................................................11

*In re Cree, Inc., Sec. Litig.*,
    219 F.R.D. 369 (M.D.N.C. 2003) ...........................................................................16

*In re Critical Path*,
    156 F. Supp. 2d 1102 (N.D. Cal. 2001) ..............................................................7, 16

*In re Donnkenny Inc.*,
    171 F.R.D. 156 (S.D.N.Y. 1997) ............................................................................19

*In re Doral Fin. Corp. Sec. Litig.*,
    414 F. Supp. 2d 398 (S.D.N.Y. 2006).....................................................................19

*In re Enron Corp., Sec. Litig.*,
    206 F.R.D. 427 (S.D. Tex. 2002).............................................................................15

*In re Enzymotec Ltd. Sec. Litig.*,
    No. 14-5556, 2015 U.S. Dist. LEXIS 25720
    (D.N.J. Mar. 3, 2015).................................................................................................5

*In re Gemstar-TV Guide Int'l Sec. Litig.*,
    209 F.R.D. 447 (C.D. Cal. 2002).............................................................................12

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
    No. 5:03CV2166, 2004 U.S. Dist. LEXIS 27043
    (N.D. Ohio May 12, 2004).......................................................................................11

*In re Herley Indus. Inc. Sec. Litig.*,
    No. 06-2596, 2009 U.S. Dist. LEXIS 91600
    (E.D. Pa. Sept. 30, 2009) .........................................................................................21

**Page**

*In re IMAX Sec. Litig.*,
No. 06 Civ. 6128 (NRB), 2009 U.S. Dist. LEXIS 58219
(S.D.N.Y. June 29, 2009) ..........................................................................22

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
No. 09-cv-00200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706
(D. Colo. May 4, 2009) .........................................................................12, 13

*In re LightInTheBox Holding Co., Inc. Sec. Litig.*,
No. 13 Civ 6016 (PKC), 2013 U.S. Dist. LEXIS 165842
(S.D.N.Y. Nov. 21, 2013) .........................................................................17

*In re McKesson HBOC, Inc. Sec. Litig.*,
97 F. Supp. 2d 993 (N.D. Cal. 1999) ..........................................................9

*In re MicroStrategy Inc. Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2000) .....................................................7, 13

*In re Netflix, Inc., Sec. Litig.*,
No. 12-0225 JC, 2012 U.S. Dist. LEXIS 59465
(N. D. Cal. Apr. 22, 2012) ....................................................................22, 23

*In re Network Assocs. Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ............................................... *passim*

*In re Peregrine Sys. Sec. Litig.*,
No. 02cv870-J (RBB), 2002 U.S. Dist. LEXIS 27690
(S.D. Cal. Oct. 2, 2002) ................................................................................7

*In re Petrobras Sec. Litig.*,
104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015) ...............................................12

*In re Pfizer, Inc. Sec. Litig.*,
233 F.R.D. 334 (S.D.N.Y. 2005) ...............................................................19

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
No. 07-02830, 2010 U.S. Dist. LEXIS 132902
(W.D. Tenn. Dec. 15, 2010) .......................................................................22

*In re Silicon Storage Tech., Inc.*,
No. C 05-0295-PJH, 2005 U.S. Dist. LEXIS 45246
(N.D. Cal. May 3, 2005) .............................................................................15

*In re SLM Corp. Sec. Litig.*,
258 F.R.D. 112 (S.D.N.Y. 2009) ...............................................................22

**Page**

*In re Surebeam Corp. Sec. Litig.*,
No. 03 Civ. 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022
(S.D. Cal. Jan. 5, 2004) ...........................................................................................8, 19, 20

*In re Tarragon Corp. Sec. Litig.*,
No. 07 Civ. 07972 (PKC), 2007 U.S. Dist. LEXIS 91418
(S.D.N.Y. Dec. 6, 2007) ......................................................................................................13

*In re Vaxgen Sec. Litig.*,
No. C 03-1129 JSW, 2004 U.S. Dist. LEXIS 29812
(N.D. Cal. Apr. 14, 2004) ...................................................................................................13

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*,
407 F. Supp. 2d 483 (S.D.N.Y. 2005) ..................................................................................7

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*,
No. 05 Civ. 2745 (LAK), 2006 U.S. Dist. LEXIS 28298
(S.D.N.Y. May 10, 2006) .......................................................................................................8

*Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*,
No. 15-CV-3599 (KMW), 2015 U.S. Dist. LEXIS 153202
(S.D.N.Y. Nov. 12, 2015) ....................................................................................................18

*Irving Firemen's Relief & Ret. Fund v. Tesco PLC*,
No. 14 Civ. 8495 (RMB), 2015 U.S. Dist. LEXIS 38635
(S.D.N.Y. Mar. 19, 2015) .....................................................................................................6

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523, 534 (S.D.N.Y. 2015) ........................................................................19

*Marcus v. J.C. Penney Co., Inc.*,
No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529
(E.D. Tex. Feb. 28, 2014) ...................................................................................................11

*Micholle v. Ophthotech Corp.*,
No. 17-CV-210 (VSB), 2018 U.S. Dist. LEXIS 41120
(S.D.N.Y. Mar. 13, 2018) ...................................................................................................17

*Nager v. Websecure, Inc.*,
No. 97-10662-GAO, 1997 U.S. Dist. LEXIS 19601
(D. Mass. Nov. 26, 1997) .....................................................................................................7

*Niederklein v. PCS Edventures!.com, Inc.*,
No. 1:10-cv-00479-EJL-CWD, 2011 U.S. Dist. LEXIS 18247
(D. Idaho Feb. 24, 2011) ....................................................................................................13

Page

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
609 F. Supp. 2d 938 (N.D. Cal. 2009), *rev'd on other grounds*,
615 F.3d 1106 (9th Cir. 2010) ............................................................21

*Perlmutter v. Intuitive Surgical, Inc.*,
No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813
(N.D. Cal. Feb. 15, 2011)...................................................2, 10, 11

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
275 F.R.D. 187 (S.D.N.Y. 2011) ........................................................17

*Ross v. Abercrombie & Fitch Co.*,
No. 2:05-CV-819, 2007 U.S. Dist. LEXIS 24903
(S.D. Ohio Mar. 22, 2007) ...........................................................12, 14

*Roth v. Knight Trading Grp.*,
228 F. Supp. 2d 524 (D.N.J. 2002) ....................................................16

*Schriver v. Impac Mortg. Holdings, Inc.*,
No. SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607
(C.D. Cal. May 2, 2006) ...............................................................13, 14

*Shiring v. Tier Techs., Inc.*,
244 F.R.D. 307 (E.D. Va. 2007) ..........................................................6

*Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*,
No. 11-6247, 2012 U.S. Dist. LEXIS 118693
(D.N.J. Aug. 22, 2012)..................................................................5, 21

*Tanne v. Autobytel, Inc.*,
226 F.R.D. 659 (C.D. Cal. 2005) ........................................................16

*Teran v. Subaye, Inc.*,
No. 11 Civ. 2614 (NRB), 2011 U.S. Dist. LEXIS 105774
(S.D.N.Y Sept. 16, 2011) ...................................................................17

*Tsirekidze v. Syntax-Brillian Corp.*,
No. CV 07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562
(D. Ariz. Apr. 7, 2008)..............................................................11, 12, 14

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)..................................................17

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008)........................................................4, 21, 22

**Page**

*Weisman v. Darneille*,
   78 F.R.D. 669 (S.D.N.Y. 1978) ...................................................................19

*Weisz v. Calpine Corp.*,
   No. C 02-1200, 2002 U.S. Dist. LEXIS 27831
   (N.D. Cal. Aug. 19, 2002)..............................................................9, 21, 22

*Xianglin Shi v. SINA Corp.*,
   No. 05 Civ. 2154 (NRB), 2005 U.S. Dist. LEXIS 13176
   (S.D.N.Y. July 1, 2005) ...........................................................................8, 20

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78-4(a)(2)(A)..............................................................................................5
   §78u-4(a)(3)(A)...........................................................................................13

Federal Rules of Civil Procedure
   Rule 23 .......................................................................................4, 5, 14, 23
   Rule 23(a)......................................................................................................4

# I.      BACKGROUND AND INTRODUCTION

Seven movants are still pursuing their motions for appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]  While other movants claim to have suffered a greater loss, the only movant that satisfies *all* of the PSLRA's requirements is Mr. David.

For instance, the Hedge Fund Group, which claims to have suffered the largest loss from transactions in Tesla Inc. securities during the Class Period, suffers from a multitude of typicality and adequacy issues which could jeopardize the class, and therefore, disqualify the Hedge Fund Group from being appointed lead plaintiff, including that:

- The Hedge Fund Group's sworn Certifications evidence a fundamental standing defect as they are not signed by its members, Opportunity Unique Fund and Tempus, but rather are submitted by "Opportunity Gestao de Investimentos e Recursos Ltda., an Investment Manager on behalf of" the funds.  ECF Nos. 71-3, 71-4.  In addition, there is no name under the illegible signature on the Certifications so it is impossible to decipher whether the person is authorized to sign on behalf of the Investment Manager or the funds.  *See id.*  Even were the person authorized to sign on behalf of Opportunity Gestao, nothing indicates that Opportunity Gestao has any authority to submit the Certification on behalf of the Hedge Fund Group or to bind the members of the Hedge Fund Group in litigation.  *See* §II.A., *infra*.  Moreover, because the Investment Manager signed the Certifications, the Hedge Fund Group is subject to the unique defense that it lacks standing.  *See* §II.D., *infra*.

- The Hedge Fund Group's transactions listed on their Certifications do not appear anywhere on Bloomberg's trade/quote recaps.  Declaration of Tricia

---

[1]     The movants are: (1) Dany David ("Mr. David"); (2) two hedge funds, Opportunity Unique Fund Inc. (the "Opportunity Unique Fund") and Tempus International Fund SPC ("Tempus") (together, the "Hedge Fund Group"); (3) a group of five unrelated individuals and entities that dubbed themselves the Tesla Investor Group, Dr. Abrar Shirazi, PROtecto Informatikai Szolgáltató Korlátolt Felelősségű Társaság ("PROtecto"), Thierry Boutin, Andrew E. Left ("Mr. Left") and Vilas Capital Management, LLC ("Vilas Capital") (together the "Left Group"); (4) another group consisting of five unrelated individuals and also calling itself the Tesla Investor Group, Jiri Kulik, Esmaeil Riahi, Jason Han, Deepak Mehta and Raghunath Nama (the "Kulik Group"); (5) another group of four unrelated individuals also calling itself the Tesla Investor Group, Donald Freeland, Christopher Lyman, Rajinder Gaur, and Alvin Abrams (the "Freeland Group"); (6) Glen Littleton ("Mr. Littleton"); (7) Bridgestone Investment Corporation Limited ("Bridgestone"); (8) FNY Investment Advisers, LLC ("First New York"); and (9) James Johnson ("Mr. Johnson").  ECF Nos. 80, 71, 47, 45, 74, 41, 46, 40, and 64, respectively.  On October 22, 2018, the Freeland Group withdrew its motion, and the Kulik Group filed a notice of non-opposition, but did not withdraw its motion.  ECF Nos. 102, 104.

L. McCormick in Support of Dany David's Opposition to Competing Motions for Appointment as Lead Plaintiff ("McCormick Opp. Decl."), Ex. 1. As a result, the only conclusion that can be drawn is that the trades are either: (1) inaccurate; or (ii) they were made in private transactions. Either scenario renders the Hedge Fund Group subject to unique defenses regarding the nature of its transactions. *See* §II.A., *infra*.

- The Hedge Fund Group members were founded and are controlled by Daniel Dantas and are related to Opportunity Equity Partners, Ltd. ("Opportunity Equity"), an entity also founded and controlled by Dantas. Dantas' and Opportunity Equity's actions in previous litigation and the creation of the Opportunity Unique Fund severely call into question the ability of the Hedge Fund Group to adequately represent the class in the fiduciary role of lead plaintiff. *See* §II.A., *infra*.

Likewise, Bridgestone, Mr. Littleton, and First New York all sold more Tesla shares and/or options during the Class Period than they purchased, and received more funds from selling their shares/options than they spent purchasing them during the Class Period. *See also* §II.B., *infra*. As a result, each of these movants is a net seller and net gainer, a designation which subjects each to unique defenses and precludes their appointment as lead plaintiff. *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813, at *29-*31 (N.D. Cal. Feb. 15, 2011) (denying lead plaintiff motion of a net seller and net gainer). *See also* §II.B., *infra*.

Next, neither of the movant groups – the Left Group or the Kulik Group – can be appointed because they both failed to make the *prima facie* showing of adequacy. Both groups consist of unrelated persons and/or entities "whose only connection is the 'happenstance of having bought the same securities.'" *Apple v. LJ Int'l, Inc.*, No. CV 07-6076 GAF (JWJx), 2008 U.S. Dist. LEXIS 12618, at *15 (C.D. Cal. Feb. 8, 2008) (denying motion by artificial grouping of individuals).[2] "[I]gnoring the basis of the group formation and appointing a group of unrelated investors," like the movant groups here, "undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation." *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *25 (N.D. Cal. Aug. 22, 2008); *see also In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1025 (N.D. Cal. 1999) ("It seems clear that Congress intended a single, strong lead plaintiff to

---

[2]    Unless otherwise noted, all emphasis is added and citations are omitted.

1    control counsel and the litigation.  No reference whatsoever was made in the [PSLRA litigation

2    history] to multiple, unrelated individuals at the helm."); §II.C, *infra*.

3         The Kulik Group's motion should also be denied because it failed to present any evidence

4    that the members of the Group were even aware that they moved together, let alone provide the

5    Court with any meaningful information about the background or ability of the individual members or

6    how they will function together as lead plaintiff.  *See* §II.C.1 *infra*.  Other than their bare names and

7    claimed loss amounts, the record is completely devoid of any information about any of the members

8    of the Group.  The Kulik Group, which failed to submit any evidence that they were not merely

9    "'created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel,'". . .

10   is the type of group "district courts in this circuit and throughout the country look upon with

11   disfavor." *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *29 (citing cases).  *See also* §II.C.1., *infra*.

12        The Left Group will undoubtedly highlight its "Joint Declaration" in an attempt to claim its

13   grouping is proper, but the Joint Declaration does nothing to remedy the Left Group's inadequacy.

14   *Compare* ECF No. 51-4 *with Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *28 ("In sum, the

15   declaration does not state any pre-existing relationships nor does it clarify how the group will tackle

16   the massive coordination and strategic issues that are certain to arise in this litigation.").  The Joint

17   Declaration confirms that multiple counsel brought the members of the Group together and the

18   Group's conclusory statements and assurances about its members' ability to work together fail to

19   meet the evidentiary showing required of a group under the PSLRA.  *See* §II.C.2., *infra*.  "Simply

20   stated, this conclusory declaration has little or no substance." *Eichenholtz*, 2008 U.S. Dist. LEXIS

21   64633, at *28.

22        More importantly, the Left Group's designated "spokesperson," Mr. Left, is a market moving

23   short seller who publishes analyst-type reports to cause stocks to rise or fall to his benefit.  *See* ECF

24   No. 51-4 at ¶¶2, 15; McCormick Opp. Decl., Exs. 2-3.  Mr. Left was recently barred from trading in

25   Hong Kong for issuing false and misleading statements to cause the stock of a Chinese company to

26   plummet to his benefit.  *Id.*, Ex. 4.  In addition, Mr. Left was previously found to have made false

27   and misleading statements to cheat, defraud, or deceive a customer while working at the Universal

28   Commodity Corporation.  *Id.*, Ex. 5.  As a result, he was barred for three years from association with

DANY DAVID'S OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD
PLAINTIFF - 3:18-cv-04865-EMC                                                              - 3 -

1    any National Futures Association ("NFA") member, and required to tape record and log all his

2    conversations with current and potential customers.  *Id*.  A group that would make such an atypical

3    and inadequate investor its spokesperson cannot adequately protect the interests of the class.  *See*

4    §II.C.2., *infra*.

5         Another fact that disqualifies First New York, Vilas Capital (of the Left Group), and the

6    Hedge Fund Group is that they appear to be, or their Certifications are signed by, investment

7    managers which have failed to demonstrate that they have standing to sue on behalf of their clients.

8    *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108, 111 (2d Cir. 2008)

9    (investment advisor did not meet Article III's injury-in-fact standing requirement where the clients

10   did not transfer ownership of their stock to the plaintiff).  *See also* §II.D., *infra*.

11        Mr. David, as the movant with the next largest financial interest after the disqualified

12   movants described above, satisfies all of the PSLRA's requirements, and is not subject to any unique

13   defenses or challenges to his adequacy.  Mr. David's motion should be granted.  Mr. Johnson

14   suffered smaller losses than Mr. David, and his motion should be denied.  *In re Cavanaugh*, 306

15   F.3d 726, 730-31 (9th Cir. 2002) (court should consider motion of movant with smaller financial

16   interest only if movant with larger losses fails to meet PSLRA requirements).

17   **II.    REGARDLESS OF THEIR CLAIMED LOSSES, THE COMPETING
         MOVANTS DO NOT MEET THE RULE 23 REQUIREMENTS**

18

19        To identify the presumptively most adequate plaintiff, the Court "'must compare the financial

20   stakes of the various plaintiffs who have timely filed motions and determine which one has the most

     to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 729-30.  It "must then focus its attention on ***that***

21   plaintiff and determine, based on the information he has provided in his pleadings and declarations,

22   whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and

23   'adequacy.'" *Id.* at 730 (emphasis in original).  "If the plaintiff with the greatest financial stake does

24   not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the

25   plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and

26   satisfies the requirements of Rule 23." *Id.*

27

28

1      Although some of the movants claim to have suffered a larger LIFO loss than Mr. David

2 suffered, as demonstrated herein, each one fails to meet the Rule 23 typicality and/or adequacy

3 requirements, and they are all disqualified from serving as lead plaintiff.

4      **A.**     **Appointment of the Hedge Fund Group Could Raise Adequacy Issues**

5      The Hedge Fund Group suffers from a variety of issues that prevents its appointment as lead

6 plaintiff.  Primarily, the Hedge Fund Group has failed to meet the most basic requirement of

7 submitting a sworn certification setting forth its transactions in Tesla securities which is "personally

8 signed" by the Hedge Fund Group members.  *See* 15 U.S.C. §78-4(a)(2)(A) ("Each plaintiff seeking

9 to serve as a representative party on behalf of a class shall provide a sworn certification, ***which shall***

10 ***be personally signed by such plaintiff*** . . . .").  The Certifications submitted with the Hedge Fund

11 Group's motion were not signed by Opportunity Unique Fund or Tempus.  ECF Nos. 71-3, 71-4.

12 Rather, both Certifications were signed by an Investment Manager, Opportunity Gestao, purportedly

13 "on behalf of" the funds.  *Id*.  Further complicating the issue, the signature on the Certifications is

14 illegible, and there is no designation regarding the signatory's name or title, rendering it impossible

15 to determine who the person is or whether they have the authority to sign the Certification on behalf

16 of Opportunity Gestao or the Hedge Fund Group members.  *In re Enzymotec Ltd. Sec. Litig*., No. 14-

17 5556, 2015 U.S. Dist. LEXIS 25720, at *8-*9 (D.N.J. Mar. 3, 2015) (finding movant subject to

18 unique defense in part because "nowhere in 3B's certification does [the signatory] identify himself

19 or provide any indication of his role within 3B").

20      Even if the signatory had authority to sign for Opportunity Gestao, there is nothing to

21 indicate that Opportunity Gestao has the authority to: (i) sign and submit the Certifications on behalf

22 of the Hedge Fund Group members; or (ii) commit them to litigation.  *See id*.  The Hedge Fund

23 Group's motion should be denied for having failed the basic requirement of personally signing their

24 Certifications.  *See, e.g., Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp*., No.

25 11-6247 (JBS/KMW), 2012 U.S. Dist. LEXIS 118693, at *34-*36 (D.N.J. Aug. 22, 2012) (rejecting

26 movant's lead plaintiff motion in part because the correct entity did not sign the Certification);

27 *Enzymotec*, 2015 U.S. Dist. LEXIS 25720, at *6-*10 (finding "most adequate plaintiff" presumption

28 "successfully rebutted" where the movant was subject to a unique defense because its certification

1    "provide[d] no indication that its signer . . . is authorized to sign the certification on [movant's]

2    behalf"). Nor is there anything before the Court indicating that Opportunity Gestao has standing to

3    seek appointment as lead plaintiff. *See* §II.D., *infra* (discussing investment advisor's lack of Article

4    III injury-in-fact standing requirement where the clients did not transfer ownership of their stock to

5    the plaintiff).

6         The Hedge Fund Group's trading listed on its Certifications also renders it atypical and

7    inadequate to represent the class. Bloomberg provides trade/quote recaps of each open market trade

8    of every stock. The trades that the Hedge Fund Group lists on its Certifications, however, do not

9    appear ***anywhere*** on Bloomberg's trade/quote recaps for the dates and at the prices listed on the

10   Certifications. *Compare* ECF Nos. 74-3, 74-4 *with* McCormick Opp. Decl., Ex. 1. For example, the

11   Certification of Opportunity Unique Fund states that it made a cover purchase of 11,324 shares at

12   $375.950 on August 7, 2018. ECF No. 71-4 at 3. The Bloomberg trade/quote recap for August 7,

13   2018, however does not show that any trade of 11,324 shares was made at that price. *See*

14   McCormick Opp. Decl., Ex. 1. Similarly, the Certification of Tempus states that it made 3 cover

15   purchases of 35,526 shares, 128,135 shares, and 2,037 shares, all at $375.950 on August 7, 2018.

16   ECF No. 71-3 at 3. Again, the Bloomberg trade/quote recap does not show any trades of these

17   amounts of shares at that price on that day. McCormick Opp. Decl., Ex. 1.

18        Only two conclusions can be drawn – either of which disqualifies the Hedge Fund Group.

19   First, it is possible that the Hedge Fund Group did not provide accurate trading data. Such

20   inaccuracies cast doubt not only on the veracity of the Hedge Fund Group's claimed loss, but also on

21   its adequacy. *See Bhojwani v. Pistrolis*, No. 06 Civ. 13761 (CM)(KNF), 2007 U.S. Dist. LEXIS

22   96246, at *12 (S.D.N.Y. July 31, 2017) (declining to appoint movant as lead plaintiff because "the

23   fact that the data [underlying his claimed loss] still do not quite add up indicates a certain

24   carelessness about detail that undermines the adequacy of [movant] (and his associated group) as a

25   lead plaintiff"); *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 317 (E.D. Va. 2007) ("Plaintiff's

26   inadvertence or [its] indifference . . . demonstrates a lack of diligence and candor that . . . counsel

27   against a finding of adequacy."); *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, No. 14 Civ.

28   8495 (RMB), 2015 U.S. Dist. LEXIS 38635, at *10 (S.D.N.Y. Mar. 19, 2015) (refusing to appoint

1   lead plaintiff movant with the largest claimed losses given that "based upon publicly available

2   historical trading data, that [movant's] loss[es were] overstated because it 'list[ed] various trades that

3   . . . f[e]ll outside of the daily price range'"); *Nager v. Websecure, Inc.*, No. 97-10662-GAO, 1997

4   U.S. Dist. LEXIS 19601, at *3 n.1 (D. Mass. Nov. 26, 1997) (finding that "inaccuracy [in movant's

5   affidavit] may be explainable, but it casts sufficient doubt on [movant's] adequacy as a

6   representative plaintiff that he should be excluded" from serving as lead plaintiff).

7          Second, if the transactional data is correct, then the Hedge Fund Group could not have made

8   the trades on the open market.  Such private transactions render a movant atypical and disqualify it

9   from serving as lead plaintiff because it "would be encumbered with the unique question whether it

10   acquired its [Tesla] shares on better terms than the investing public and not fully in reliance on the

11   market price."  *Network Assocs.*, 76 F. Supp. 2d at 1029-30.  *See also In re Critical Path*, 156 F.

12   Supp. 2d 1102, 1110 (N.D. Cal. 2001) ("Appointing as lead plaintiff one who acquired its shares in a

13   private transaction invites lengthy litigation both at the class certification stage and thereafter of

14   whether that plaintiff is subject to unique defenses."); *In re Peregrine Sys. Sec. Litig.*, No. 02cv870-J

15   (RBB), 2002 U.S. Dist. LEXIS 27690, at *32-*33 (S.D. Cal. Oct. 2, 2002) (finding movant who

16   acquired shares in private transaction subject to unique defenses which disqualified it from serving

17   as lead plaintiff); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436-37 (E.D. Va. 2000)

18   (rejecting hedge fund lead plaintiff movant because it "was an atypical investor that engages in

19   transactions far beyond the scope of what a typical investor contemplates").

20          Finally, if the significant problems with the Hedge Fund Group's Certifications were not

21   enough, serious questions exist as to: (i) the nature of the Hedge Fund Group's existence and

22   oversight; (ii) the veracity of the funds and their founder;  and (iii) the Hedge Fund Group's ability

23   to adequately serve as fiduciaries for the class.  The Opportunity Unique Fund was founded by

24   Dantas (*see* McCormick Opp. Decl., Ex. 6), and the Hedge Fund Group funds are related to

25   Opportunity Equity, which was found by Judge Kaplan in another case to have attempted to "reap

26   enormous gains for itself at the expense of those to whom it owe[d] fiduciary duties."  *Int'l Equity*

27   *Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 407 F. Supp. 2d 483, 514 (S.D.N.Y. 2005).  In

28

another order, Judge Kaplan described Dantas and Opportunity Equity (the "defendants" in a case before him) in the following manner:

> First, the defendants do not come to this Court with entirely clean hands. The Court has found that plaintiffs are quite likely to prevail on their claim that defendants repeatedly have acted out of self interest and in breach of their fiduciary duties. Moreover, it has observed disquieting instances of what might be regarded as a lack of candor.  The Court lacks confidence that defendants will behave in an honorable fashion absent legal compulsion.

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, No. 05 Civ. 2745 (LAK); 2006 U.S. Dist. LEXIS 28298, at *3 (S.D.N.Y. May 10, 2006).

Furthermore, the U.S. Department of Justice, Criminal Division, Asset Forfeiture and Money Laundering Section described one member of the Hedge Fund Group, the Opportunity Unique Fund, in a federal court filing as a "mirror fund" to another Opportunity fund created "'in order to transfer resources from investors that were invested in the Opportunity Fund with the intent of "erasing any residue of irregularity that leads to identifying any financial illegality."'" McCormick Opp. Decl., Ex. 6 at 9.  In other words, the Opportunity Unique Fund "was created in order to further obfuscate and conceal the overall unlawful objectives of the criminal organization." *Id.*  Finally, in 2017, Dantas was dubbed the "bad boy of Brazil Finance" and scandal continues to follow him.  *See* McCormick Opp. Decl., Ex. 7.

This information calls into question the Hedge Fund Group members' ability to act as a fiduciary on behalf of the class in this securities fraud case and, particularly in conjunction with the additional issues raised above, precludes the Court's consideration of the Hedge Fund Group as a lead plaintiff candidate.  *See In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at *20-*22 (S.D. Cal. Jan. 5, 2004) (finding certain allegations against a lead plaintiff movant disqualified it from serving as lead plaintiff); *Network Assocs.*, 76 F. Supp. 2d at 1029 ("the Court is unwilling to install an enterprise under such a cloud in a position of trust and confidence."); *Xianglin Shi v. SINA Corp.*, No. 05 Civ. 2154 (NRB), 2005 U.S. Dist. LEXIS 13176, at *14 (S.D.N.Y. July 1, 2005) ("[h]onesty and trustworthiness are thus relevant factors in determining an[] individual's ability to serve as a class representative" and "convictions of fraud or

other forms of dishonesty undermine the qualifications of a potential class representative"). The Hedge Fund Group's motion should be denied in its entirety.

**B. Bridgestone, First New York, and Mr. Littleton Are Net Sellers and Net Gainers During the Class Period and Profited, Rather than Suffered, from the Alleged Fraud**

Bridgestone, First New York, and Mr. Littleton all sold more shares/options than they purchased during the Class Period. As a result, the profit they received from the sales of those shares/options during the Class Period far outweighs their expenditures purchasing their shares/options during the Class Period:

| Movant | Shares or Options Purchased During Class Period | Funds Expended on Purchases | Shares or Options Sold During Class Period | Funds Received on Sales | Loss/Gain on Class Period Transactions |
|---|---|---|---|---|---|
| Bridgestone | 1,000 shares 1,860 options | $382,133 $3,399,311 | 1,000 shares 4,360 options | $339,250 $4,511,405 | ($42,883) loss on shares **$1,112,094 gain on options $1,069,211 total gain** |
| First New York | 418,614 shares 5,882 options | $148,211,443 $1,792,142 | 427,520 shares 5,866 options | $151,135,960 $1,838,219 | **$2,924,516 gain on shares $46,066 gain on options $2,970,582 total gain** |
| Mr. Littleton | 100 shares 2,325 options | $35,043 $9,450,364 | 0 shares 3,630 options | $0 $11,958,574 | ($35,043) loss on shares **$2,473,167 gain on options $2,438,124 total gain** |

The fact that these net sellers are also net gainers disqualifies them from being appointed lead plaintiff. *Weisz v. Calpine Corp.*, No. C 02-1200 SBA, 2002 U.S. Dist. LEXIS 27831, at *27 (N.D. Cal. Aug. 19, 2002) (removing from consideration applicant for lead plaintiff that sold more shares than it purchased during class period because it was "apparent that [applicant] may have actually profited, not suffered losses, as a result of the allegedly artificially inflated stock price"); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 996-97 (N.D. Cal. 1999) ("a net purchaser will, presumably have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares, and has been left 'holding the bag' when the fraudulent inflation is revealed[;] [b]y contrast a net seller has arguably ***profited*** more from the fraud than it has been injured, possibly reducing its incentive to litigate") (emphasis in original); *Deering v. Galena Biopharma, Inc.*, No. 3:14-cv-00367-SI, 2014 U.S. Dist. LEXIS 140766, at *34-*35 (D. Or. Oct. 3, 2014) (observing that "courts around the country consistently have rejected applications for lead plaintiff made by net

1    sellers and net gainers, recognizing the difficulty of proving damages at trial"); *In re Bausch & Lomb*

2    *Inc. Sec. Litig.*, 244 F.R.D. 169, 173-74 (W.D.N.Y 2007) ("Courts have consistently rejected

3    applications for lead plaintiff status made by 'net sellers' and 'net gainers,' recognizing that they

4    may in fact have profited, rather than suffered, as a result of the inflated stock prices.").

5        Bridgestone and Mr. Littleton may argue that although they sold more shares/options during

6    the Class Period than they purchased, they still suffered some loss so they should still be appointed

7    lead plaintiff.  This argument misses the mark as noted by Judge Koh in *Perlmutter*.  In *Perlmutter*, a

8    lead plaintiff movant was challenged on the basis that he was a net seller during the Class Period.

9    The movant argued that although he sold more shares during the Class Period, he still suffered an

10   overall loss on his transactions in the defendant company's stock.  2011 U.S. Dist. LEXIS 16813, at

11   *29-*31.   Judge Koh rejected his argument, explaining that "[t]he purpose of isolating the

12   calculation of net sales and net gains to the Class Period is to determine whether a party potentially

13   benefitted from the fraud."  *Id.* at *29.  Judge Koh further noted:

14       This is not the same as determining whether a party lost or earned money trading in a
         particular stock.  As alleged in the complaint, Defendants' fraud artificially inflated
15       Intuitive's stock price during the Class Period.  Thus, when Marcus purchased
         Intuitive stock prior to the Class Period, he purchased it at fair market value.  When
16       he sold it during the Class Period, however, he sold it at fraudulently inflated prices.
         As a result, instead of being injured by the fraud on these sales, Marcus actually
17       benefitted from the fraud.

18   *Id.* at *29-*30.

19       In looking at the movants' net funds expended, it is clear that these movants received more

20   money during the Class Period from selling their shares/options than they spent purchasing

21   shares/options during the Class Period.  As in *Perlmutter*, "the fact that [the movants] received more

22   money from selling stock at fraudulently inflated prices than [they] spent purchasing stock at inflated

23   prices makes it more likely that [they] benefitted from Defendants' alleged fraud.  Even if [the

24   movants] lost money in all of [their Tesla] stock transactions, this amount was reduced by [their]

25   Class Period sales when the stock prices were inflated." *Id.* at *30.  Consequently, Bridgestone, First

26   New York, and Mr. Littleton's status as net sellers and net gainers "weighs against [their]

27   appointment as the lead plaintiff."  *Id.*  "Besides demonstrating that [they] potentially benefitted

28   from Defendants' fraud, [Bridgestone's, First New York's, and Mr. Littleton's] status as a net seller

1   and a net gainer also weighs against [them] because it may subject [them] to unique defenses if

2   [they] were to be the class representative.  *Id.*[3]  The motions filed by Bridgestone, First New York,

3   and Mr. Littleton should be denied.

### C.   The Left Group and the Kulik Group Are Lawyer-Driven Amalgamations, Formed Solely to Achieve the Largest Financial Interest Designation

6          In determining whether to appoint a group as lead plaintiff, as opposed to an single investor,

7   courts should consider one additional factor.  "If the court determines that the way in which a group

8   seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude

9   it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the

10  grounds that it will not fairly and adequately represent the interests of the class."  *In re Cendant*

11  *Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001).  If the group does not demonstrate that it was formed

12  in a manner consistent with the PSLRA, ***regardless of the group's claimed losses***, "the court should

13  disqualify that movant on the grounds that it will not fairly and adequately represent the interests of

14  the class."  *Id.*[4]  Although both of the groups – the Left Group and the Kulik Group– claim larger

---

[3]    *See also Frank v. Dana Corp.*, 237 F.R.D. 171, 172 (N.D. Ohio 2006) ("Because parties which are net sellers and net gainers, with respect to the relevant securities transactions during the class period, may have more trouble proving damages at trial, courts frequently reject their applications to serve as lead plaintiffs."); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) (finding lead plaintiff movant group subject to unique defenses because two of its members experienced net gains during class period); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03CV2166, 2004 U.S. Dist. LEXIS 27043, at *19-*20 (N.D. Ohio May 12, 2004) (rejecting lead plaintiff motion where movants were net sellers and net gainers); *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 946 (N.D. Ill. 2001) (plaintiff who sold more shares than it purchased during class period was "totally out of the running for designation as lead plaintiff");. *Bausch & Lomb*, 244 F.R.D. at 174 ("I agree with the rationale of those courts finding that net sellers and net gainers, such as Detroit Police & Fire, are ill-suited to serve as lead plaintiffs.  If nothing else, its status as a net gainer may 'subject [it] to unique defenses that render such plaintiff incapable of adequately representing the class.'").

[4]    The Groups are the movants here, not the individuals within the Groups.  *See* ECF Nos. 45, 47 (stating that Group, not individuals, seek appointment).  As such, only the Groups as a whole can be evaluated.  *See Abouzied v. Applied Optoelectronics, Inc*, No. 4:17-CV-2399, 2018 U.S. Dist. LEXIS 16808, at *16 (S.D. Tex. Jan. 22, 2018) (considering only "the motion of the collective group" because "[n]either Stephen Rakower nor the Knights has moved for appointment as sole-lead plaintiff"); *Marcus v. J.C. Penney Co., Inc.*, No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529, at *20 (E.D. Tex. Feb. 28, 2014) ("Because Mr. Webb [a group member] did not individually submit a motion for lead plaintiff, his consideration for appointment as lead plaintiff rises and falls with the group.").  In fact, any suggestion that the Court should consider the group members individually would simply confirm the group's true purpose.  *See Tsirekidze v. Syntax-Brillian Corp.*, No. CV 07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562, at *15 (D. Ariz. Apr. 7, 2008) (group "moved for

---

1  losses than Mr. David, they are both disparate groups of individuals and/or entities that were brought

2  together by counsel for the purpose of satisfying the PSLRA's largest financial interest requirement.

3      While the PSLRA contemplates the appointment of a group, "'courts have uniformly refused

4  to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of

5  aggregating their claims in an effort to become the presumptive lead plaintiff.'"  *Eichenholtz*, 2008

6  U.S. Dist. LEXIS 64633, at *22 (quoting *In re Gemstar-TV Guide Int'l Sec. Litig.*, 209 F.R.D. 447,

7  451-52 (C.D. Cal. 2002)); *see also Bodri v. GoPro, Inc.*, No. 16-cv-00232-JST, 2016 U.S. Dist.

8  LEXIS 57559, at *13-*14 (N.D. Cal. Apr. 28, 2016).  Courts recognize that to "'allow lawyers to

9  designate unrelated plaintiffs as a "group" and aggregate their financial stakes would allow and

10  encourage lawyers to direct the litigation.'"  *Network Assocs.*, 76 F. Supp. 2d at 1023 ("'Congress

11  hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead

12  plaintiff.'").[5]  For good reason, to "ignor[e] the basis of the group formation and appoint[] a group of

13  unrelated investors undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven

14  litigation."  *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *25.[6]

15      **1.    The Kulik Group Made No Attempt to Show It Is Anything
           but A Lawyer-Driven Amalgamation**

16

17      The appointment of an unrelated group is inappropriate where, as here, the Kulik Group has

18  failed to demonstrate it "'is capable of performing the lead plaintiff function'" by "'provid[ing]

19  lead plaintiff as a group and will be evaluated as such"); *Ross v. Abercrombie & Fitch Co.*, No. 2:05-
20  CV-819, 2007 U.S. Dist. LEXIS 24903, at *13 (S.D. Ohio Mar. 22, 2007) ("There is no requirement
    in the [PSLRA] that the Court realign a proposed group to cure a deficiency in adequacy of
21  representation.").  In fact, any suggestion that the Court should consider the group members
    individually would simply confirm the group's true purpose. *See Tsirekidze*, 2008 U.S. Dist. LEXIS
22  118562, at *15-*16 (such a "willingness to abandon the group only suggests how loosely it was put
    together").

23  [5]  Notably, in *Cavanaugh*, the Ninth Circuit expressly reserved the question of "whether a group
24  can satisfy the 'largest financial interest' requirement by aggregating losses."  306 F. 3d. at 731 n.8.

25  [6]  *See also In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015) (stating that
    "many courts, including this one, are skeptical of such arrangements when they are the product of an
26  artificial grouping designed merely to qualify as lead plaintiff") (citing cases); *In re Level 3
    Commc'ns, Inc. Sec. Litig.*, No. 09-cv-00200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706, at *12 (D.
27  Colo. May 4, 2009) (same); *Tsirekidze*, 2008 U.S. Dist. LEXIS 118562, at *15 ("when unrelated
    investors are cobbled together, the clear implication is that counsel, rather than the parties, are
28  steering the litigation").

appropriate information about its members, structure, and intended functioning'" including "'descriptions of its members, including any pre-existing relationships among them; an explanation of how it was formed and how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation.'"[7] *Network Assocs.*, 76 F. Supp. 2d at 1026-27.[8] And where, as here, the "'proposed group fails to explain and justify its composition and structure to the court's satisfaction, its motion should be denied.'" *Id.*[9]

As to the Kulik Group, "evidence that the members of these groups have ever communicated" is "wholly lacking." *In re Tarragon Corp. Sec. Litig.*, No. 07 Civ. 07972 (PKC), 2007 U.S. Dist. LEXIS 91418, at *3, *5-*6 (S.D.N.Y. Dec. 6, 2007); *MicroStrategy*, 110 F. Supp. 2d at 437 (group "failed to present evidence" that "members of the group had ever communicated with one another"). Indeed, ***three*** of the five members of the Kulik Group's Certifications were electronically signed October 9, 2018, the day the motions were filed (ECF No. 48-2), further

---

[7]    The threshold adequacy showing should be apparent from the group's initial motion. *See generally* 15 U.S.C. §78u-4(a)(3)(A) (60-day deadline); *Cavanaugh*, 306 F.3d at 730 (inquiry based on information provided in pleadings and declarations); *In re Vaxgen Sec. Litig.*, No. C 03-1129 JSW, 2004 U.S. Dist. LEXIS 29812, at *14 (N.D. Cal. Apr. 14, 2004) ("PSLRA is unequivocal and allows for no exceptions" and "'precludes consideration of . . . any other pleading . . . filed ***after*** the sixty (60) day window has closed'") (emphasis in original). As such, the Court should not permit the Kulik Group to belatedly proffer this information when "there is no reason the . . . groups could not have submitted such evidence in connection with their initial motions." *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607, at *28 n.10 (C.D. Cal. May 2, 2006).

[8]    *See also Cendant*, 264 F.3d at 266 (directing district courts to assess whether "the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff"); *Apple*, 2008 U.S. Dist. LEXIS 12618, at *11 (courts "should examine any proposed groups closely to determine whether they will be able to perform the lead plaintiff function and guide the litigation"); *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *26 (movants should demonstrate "how and when they were joined together, how they intend to conduct discovery or how they will coordinate litigation efforts and strategy"); *Schriver*, 2006 U.S. Dist. LEXIS 40607, at *25 (groups "are not adequate class representatives absent a showing that they are able to coordinate their efforts in the litigation").

[9]    *See also Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479-EJL-CWD, 2011 U.S. Dist. LEXIS 18247, at *13 (D. Idaho Feb. 24, 2011) (declining to appoint group because "the record is devoid of evidence demonstrating the group is cohesive and not purely lawyer-driven"); *Level 3*, 2009 U.S. Dist. LEXIS 44706, at *13 (rejecting group that "has not submitted evidence demonstrating a likelihood that its constituents will act in a cohesive fashion and affirmatively control this litigation").

1  indicating that the members of this "Group" had no pre-filing contact but instead were put together

2  by counsel at the last minute.

3      "[I]nstead of explaining how they are prepared to work together to manage this litigation on

4  behalf of the proposed class," the Kulik Group "submitted essentially boilerplate certifications."

5  *Buettgen v. Harless*, 263 F.R.D. 378, 381 (N.D. Tex. 2009); *Tsirekidze*, 2008 U.S. Dist. LEXIS

6  118562, at *15 (denying motion by group of "completely unrelated individuals from different parts

7  of the country" who have "participated only to the extent of signing his name").

8      The situation here is similar to that in *Network Associates*, where Judge Alsup noted that

9      [t]he only thing the investors in any group have in common, however, is the lawyer.
10     They have no link to each other.  They are not organized with any group
       decisionmaking apparatus.  They attended no organizing meetings.  They have no
11     cohesive identity.  They have no name other than one arbitrarily selected by the
       lawyers.

12  76 F Supp. 2d at 1022.  Accordingly, it is clear that the Kulik Group was "created by the efforts of

13  lawyers hoping to ensure their eventual appointment as lead counsel."  *Cendant*, 264 F.3d at 267.

14      Courts in this District have previously reviewed unrelated amalgamations like the Kulik

15  Group to determine whether they have made the threshold showing required of them.  *Bodri*, 2016

16  U.S. Dist. LEXIS 57559, at *13-*14.  In *Bodri*, Judge Tigar noted that the group failed to "even

17  attempt to explain the connection between" the various unrelated members of the group.  *Id*. at *15.

18  As a result, the Court held that "[a]bsent any indication otherwise, the Court finds that the GoPro

19  Group's amalgamation of previously unrelated individuals together in this case was made 'for the

20  sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'"  *Id*.

21  Thus, the group failed to meet the adequacy requirement of Rule 23.  *Id.*

22      Similarly here, the Kulik Group does not appear to have any related members.  The Kulik

23  Group failed to submit ***any*** evidence with its motion explaining how it was formed, why the

24  individual members moved for lead plaintiff appointment together, or how the Group will function

25  together as lead plaintiff.  Given the lack of evidence supporting the Group's adequacy, "there [is]

26  no basis from which to ascertain the ability of the . . . Group as a whole, or its members, to fairly and

27  adequately represent the interests of the class."  *Ross*, 2007 U.S. Dist. LEXIS 24903, at *12-*13.

28  Consequently, the Kulik Group is not "entitled to the presumption that it is the most adequate

plaintiff because it has not made the required preliminary showing that it would adequately represent the class." *Schriver*, 2006 U.S. Dist. LEXIS 40607, at *28; *see also Cendant*, 264 F.3d at 266.  The Kulik Group's motion should be denied in its entirety.

### 2.  The Left Group Is Similarly Lawyer-Driven, and Its "Spokesperson" Is Subject to Unique Defenses

While the Left Group submitted a Joint Declaration, to demonstrate that a group is not lawyer-driven, however, courts require groups to "'provide appropriate information about its members, structure, and intended functioning.  Such information should include descriptions of its members, including any pre-existing relationships among them; an explanation of how it was formed and how its members would function collectively; and a description of the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation.'" *Network Assocs.*, 76 F. Supp. 2d at 1026.  Here, the Left Group's Joint Declaration falls far short of this evidentiary showing.

While the Joint Declaration gives a brief description of each member, it also confirms that the members have no pre-existing relationships and that they were, in fact, brought together by counsel.  *See* ECF No. 51-4 at ¶¶8-10.  There are no pre-existing relationships among the Group's five disparate members.  Rather, they are investors strewn across the globe – Hungary, Europe and the Middle East, Chicago, and California – who were plainly brought together by two different law firms.  *Id*.  Judge Hamilton explained that "[a]ny subsequent relationship that the members of these groups may have developed, ***after being introduced to each other by their lawyers***, is insufficient in the court's view to qualify them as 'most adequate' lead plaintiff." *In re Silicon Storage Tech., Inc.*, No. C 05-0295-PJH, 2005 U.S. Dist. LEXIS 45246, at *6-*8, *33 (N.D. Cal. May 3, 2005) (rejecting three movants with larger losses before appointing movant with fourth largest loss).

According to the Joint Declaration, all of the Group's members participated in a single conference call on October 7, 2018, only two days prior to their motion being filed.  ECF No. 51-4 at ¶10.  And, even a cursory review of the assertions in the Certifications and Joint Declaration confirm that there is "no clear or persuasive reason why [these movants] have joined together."  *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 455 (S.D. Tex. 2002).  While the Joint Declaration states that

1    some of the members communicated to their counsel that they were interested in working "with

2    other sophisticated and experienced investors," not one reason was provided as to why each of these

3    sophisticated and experienced investors could not move to serve as lead plaintiff on their own. *See*

4    ECF No. 51-4 at ¶8.  Although the Joint Declaration claims the Group is ideal because it includes

5    plaintiffs that purchased stock, covered short positions, and traded options, "'[n]othing in the

6    PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every

7    available cause of action.'" *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 669 (C.D. Cal. 2005) (quoting

8    *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004)); *see also* ECF No. 51-4 at ¶7 (claiming the

9    grouping provides the class with the "broadest representation").  In fact, courts have refused to

10   appoint multiple plaintiffs as lead plaintiff for the sole purpose of having "broad[] representation" as

11   being contrary to the PSLRA.  *See Tanne*, 226 F.R.D. at 670; *Network Assocs.*, 76 F. Supp. 2d at

12   1031 (refusing to appoint another movant as lead plaintiff despite the fact that doing so would

13   provide a broader representation of the class); *Critical Path*, 156 F. Supp. 2d at 1112 (electing not to

14   appoint a co-lead plaintiff so as "not to dilute the fiduciary responsibility of the lead plaintiff").[10]

15   Thus, there is no valid reason for this disparate group of unrelated individuals and entities to have

16   moved together other than for the purpose of achieving the largest financial interest.

17        The Left Group's mechanism to oversee the litigation and communicate with one another and

18   with counsel further demonstrate the Group's inadequacy.  The Left Group claims that they "do not

19   anticipate any disagreements between us will arise and agree to make all efforts, in good faith, to

20   reach consensus with respect to all litigation decisions."  ECF No. 51-4 at ¶15.  In addition, they

21

22   _____

[10]   *See also Gluck v. CellStar Corp.*, 976 F. Supp. 542, 549 (N.D. Tex. 1997) (finding that the
23   appointment of two unrelated movants would "inevitably delegate more control and responsibility to
     the lawyers for the class and make the class representatives more reliant on the lawyers[,] . . . reduce
24   the influence and responsibility of [the lead plaintiff], something Congress clearly did not wish the
     Court to do[, and] . . . unnecessarily increase the time and expense spent on preparing and litigating
25   the case, especially if the co-Lead Plaintiffs decided to hire co-Lead Counsel"); *In re Cree, Inc., Sec.
     Litig.*, 219 F.R.D. 369, 372 (M.D.N.C. 2003) ("Plaintiffs have not identified, nor has the court
26   determined, any reason why co-lead plaintiffs would be helpful or appropriate . . . .  A single lead
     plaintiff could reduce expenses and facilitate the control and prosecution of this litigation."); *Roth v.
27   Knight Trading Grp.*, 228 F. Supp. 2d 524, 531 (D.N.J. 2002) ("The reasons advanced by PAM and
     Hassenger to proceed together as Lead Plaintiff are not compelling.  There need be only one cook for
28   this broth.") (emphasis omitted).

DANY DAVID'S OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD
PLAINTIFF - 3:18-cv-04865-EMC                                                              - 16 -

1   believe they are "a small, cohesive group that is strongly motivated" and that they have "shared

2   goals of securing the maximum potential recovery for the Class." *Id.* at ¶7.

3        Judge Patel's decision in *Eichenholtz* is instructive.  There, the Court found that "ignoring the

4   basis of the group formation and appointing a group of unrelated investors undercuts the primary

5   purpose of the PSLRA: to eliminate lawyer-driven litigation." 2008 U.S. Dist. LEXIS 64633, at

6   *25.  In assessing the validity of a group of five entities for appointment as lead plaintiff, Judge Patel

7   found the group's joint declaration did not cure the group's deficiencies where the group claimed:

8   (i) they "'affirmatively decided that it would be a benefit to ourselves and the Class we seek to

9   represent if we, together, as five sophisticated investors, sought appointment as Lead Plaintiff as a

10  part of a small, cohesive group'"; (ii) the group members "intend[ed] to communicate regularly";

11  and  (iii) the  group  would  "exercise joint decision-making."  *Id.* at *27-*28.  Despite these

12  assurances, Judge Patel found concerning that the group failed to "clarif[y] how they will resolve

13  their differences," or "how the group will tackle the massive coordination and strategic issues that

14  are certain to arise in this litigation." *Id.* at *28.  In the end, Judge Patel found that the concerns

15  raised with appointing five unrelated entities brought together by counsel outweighed any benefit in

16  their appointment.  *Id.*

17       Recently, in *Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 U.S. Dist. LEXIS

18  41120, at *21-*22 (S.D.N.Y. Mar. 13, 2018), the court declined to appoint a group where the

19  group's joint declaration stated: (i) the group members would "'exercise joint decision-making' and

20  [that they] have 'established procedures for overseeing the progress of the litigation and

21  communicating regularly with counsel'"; and (ii) the group had "'implemented communication

22  procedures' and will 'direct counsel and actively oversee the prosecution of the Actions.'"  *Id.*

23  Despite these assurances, the court found "no evidence" that group had a "prior relationship or

24  engaged in any cooperative efforts." *Id.* at *22.  Furthermore, the court rested its decision on the fact

25  that "[t]he only evidence of cooperative efforts taken thus far is a conference call." *Id.*[11]

26

27  [11]  *See also Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394
    (S.D.N.Y. 2008) (rejecting the group's "conclusory assertion" that it would be able to effectively
28  manage the litigation); *see also In re LightInTheBox Holding Co., Inc. Sec. Litig.*, No. 13 Civ. 6016
    (PKC), 2013 U.S. Dist. LEXIS 165842, at *4-*5 (S.D.N.Y. Nov. 21, 2013) (declining to appoint a

1    Particularly concerning here is that the Left Group's members are widely strewn about the

2  world in Chicago, California, Hungary, Europe, and the Middle East.  ECF No. 51-4 at ¶¶2-6.  *See*

3  *Network Assocs.*, 76 F. Supp. 2d at 1030 (rejecting motions by foreign funds where there was

4  evidence that the movants would be unable to attend hearings and/or trial).  Here, as in *Network*

5  *Associates.*, the Group has anticipated (though "unlikely" as the Group claims it may be) that all of

6  the Group's members may not be able to "be consulted or to meet together to collectively make a

7  decision."  ECF No. 51-4 at ¶15.  In such circumstances, the Group has elected Mr. Left to be "the

8  group's spokesperson and liaison with counsel and the Court." *Id*.  This is concerning on a number

9  of levels.  First, the likelihood that this disparate Group could quickly assemble in differing time

10  zones and with hectic schedules is more than "unlikely."

11    Even more concerning, as set forth below, a simple Google search of the chosen

12  spokesperson readily demonstrates that Mr. Left is inadequate to represent the class.  Yet, the Left

13  Group elected Mr. Left their spokesperson and representative of the Group and the class either

14  despite this information, or without doing any due diligence to discover Mr. Left's inadequacies.

15  The Left Group is apparently unable, and even possibly unwilling, to make the necessary time

16  commitment to ensure the class is protected and represented by the "most adequate plaintiff."  In

17  short, the Group decisions to date have already proven that "[t]he coordination problems inherent

18  within the five distinct entities involved here . . . will outweigh whatever gains are to be had through

19  the grouping." *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *28.  As a result there is "no rationale

20  _____

21  group of unrelated investors that had held a pre-filing conference call and established procedures for
   overseeing counsel, communicating with one another, and voting); *Teran v. Subaye, Inc.*, No. 11

22  Civ. 2614 (NRB), 2011 U.S. Dist. LEXIS 105774, at *10-*12 (S.D.N.Y Sept. 16, 2011) (same);
   *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92

23  (S.D.N.Y. 2011) ("although [the members of a lead plaintiff movant group] have submitted a joint
   declaration stating that they have discussed 'protocols for managing the litigation' and 'have

24  implemented communication procedures to enable [them] to confer via phone and/or email,' these
   conclusory assurances do not satisfy this Court that the [] Group will be able to effectively manage

25  this litigation"); *Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*, No. 15-
   CV-3599 (KMW), 2015 U.S. Dist. LEXIS 153202, at *10-*11 (S.D.N.Y. Nov. 12, 2015) (two

26  unrelated movants did not have a proper "plan for cooperation" where their Joint Declaration stated
   "that they will 'confer via phone and/or email as necessary to ensure that we are able to

27  independently communicate and make timely decisions'" as "[t]hese conclusory assurances are
   precisely the types of statements that courts in this District have rejected as insufficient proof that a

28  group of unrelated investors will be able to effectively manage the litigation").

DANY DAVID'S OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD
PLAINTIFF - 3:18-cv-04865-EMC                                                    - 18 -

1  for this grouping other than to manufacture the greatest financial interest in order to be appointed

2  lead plaintiff." *Id.*

3        "On the whole, no matter how experienced or sophisticated these plaintiffs may be, the

4  [Group] 'appears to be nothing more than a lawyer-created group of unrelated investors who were

5  cobbled together "in the hope of thereby becoming the biggest loser for PSLRA purposes."'" *Khunt*

6  *v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 534 (S.D.N.Y. 2015) (quoting *Glauser v. EVCI*

7  *Career Colls. Holding Corp.*, 236 F.R.D. 184, 190 (S.D.N.Y. 2006)).  The appointment of the Left

8  Group as lead plaintiff "'would allow and encourage lawyers to direct the litigation.  Congress hoped

9  that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff.'"

10  *Id.* (quoting *In re Donnkenny Inc.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997)); *In re Doral Fin. Corp.*

11  *Sec. Litig.*, 414 F. Supp. 2d 398, 401 (S.D.N.Y. 2006) ("Nothing before this Court indicates that

12  these random cumulations of plaintiffs are anything more than an effort to achieve the highest

13  possible 'financial interest' figure to be chosen, which, however also cumulates case control

14  problems and rival disagreements, resulting in delay and increased expense.  I reject this approach as

15  essentially inconsistent with the intention of the PSLRA."); *In re Pfizer, Inc. Sec. Litig.*, 233 F.R.D.

16  334, 337 (S.D.N.Y. 2005) (same).

17        Equally concerning, Mr. Left, the Left Group's designated spokesperson for the Group is a

18  market moving short seller who publishes reports on public companies for his own benefit.  *See* ECF

19  No. 51-4 at ¶2; McCormick Opp. Decl., Exs. 2-3.  "As a fiduciary for the class," Mr. Left "would be

20  required to adhere to the highest standards of honesty and integrity."  *Weisman v. Darneille*, 78

21  F.R.D. 669, 671 (S.D.N.Y. 1978).  In this regard, "[o]n more than one occasion courts have found

22  that an individual is an inadequate lead plaintiff due to unrelated misconduct which implicates the

23  individual's ability to serve as a fiduciary."  *Surebeam*, 2003 U.S. Dist. LEXIS 25022, at *21-*22.

24  In *Surebeam*, the court denied a lead plaintiff motion filed by an entity whose principal

25  representative was subject to "complaints to securities regulators including misrepresentation,

26  unauthorized trading in client accounts, and use of unsuitable investments" and "had his National

27  Association of Securities Dealers ('NASD') membership terminated."  *Id.* at *21.

28

1    In 2016, Mr. Left was found guilty of issuing a false report about a Chinese developer China

2 Evergrande Group.  McCormick Opp. Decl., Ex. 4.  The investigation found that Mr. Left made a

3 profit of over HK$1.5 million by shorting shares of the company before issuing a scathing report

4 about the company.  *Id.*  Following his report, shares in the company plummeted 19.6%.

5 McCormick Opp. Decl., Ex. 8.  The report was found to contain false and misleading information

6 concerning a material fact.  McCormick Opp. Decl., Ex. 4.  In 2017, the Court of Appeal in Hong

7 Kong dismissed Mr. Left's application to appeal the ruling.  McCormick Opp. Decl., Ex. 8.  As a

8 result, Mr. Left was banned from the Hong Kong market for 5 years and forced to repay the HK$1.6

9 million he received in trading profits and will face criminal prosecution in Hong Kong if he breaks

10 Hong Kong rules again.  *Id.*

11    Mr. Left's legal difficulties are not limited to his recent run ins with the regulators in Hong

12 Kong.  In 1998, while Mr. Left was working for the Universal Commodity Corporation, the NFA

13 found that he had "made false and misleading statements to cheat, defraud or deceive a customer,"

14 and that his "conduct was inconsistent with just and equitable principles of trade."  McCormick Opp.

15 Decl., Ex. 5 at 9.  As a result, the NFA barred Mr. Left "from association with and from acting as a

16 principal of any NFA member for three years; ordered him to take an ethics training course; and

17 placed restrictions on his activities for two years."  *Id.*

18    This evidence renders Mr. Left inadequate as a class representative in this securities fraud

19 case and precludes the Court's consideration of Mr. Left as a lead plaintiff candidate.  *See Surebeam*,

20 2003 U.S. Dist. LEXIS 25022, at *22 ("Without comment or consideration of Mr. Brown's guilt or

21 innocence as to the underlying charges, this court finds that there is at least a potential that Jamerica

22 will be subject to unique defenses and will not fairly and adequately protect the interests of the class.

23 Therefore, the court finds that Jamerica is incapable of serving as lead plaintiff."); *Network Assocs.*,

24 76 F. Supp. 2d at 1029 (finding presumptive lead plaintiff was inadequate due to criminal fraud

25 investigation of entity and its CEO's arrest for tax evasion, fraud, and money laundering); *SINA*,

26 2005 U.S. Dist. LEXIS 13176, at *14 (declining to appoint individual as lead plaintiff because

27 "[h]onesty and trustworthiness are thus relevant factors in determining an[] individual's ability to

28 serve as a class representative" and "convictions of fraud or other forms of dishonesty undermine the

1   qualifications of a potential class representative").  Mr. Left and the Group that selected him as the

2   spokesman for the Left Group and (potentially) the class are inadequate to represent the class as lead

3   plaintiff and the Left Group's motion should be denied in its entirety.

4         **D.**    **Vilas Capital, First New York, and Likely the Hedge Fund Group,**
               **Are Subject to a Unique Standing Defense**

5          Vilas Capital (member of the Left Group) and First New York are both investment advisors

6   that appear to invest the funds of their clients.  McCormick Opp. Decl., Exs. 9-10.  Opportunity

7   Gestao, an investment manager, signed the Hedge Fund Group's Certifications "on behalf of" the

8   funds.  *See* ECF. Nos. 71-3, 71-4.  As a result, these entities have a fundamental (and disabling)

9   standing problem because the real party in interest with an injury in fact – their clients – did not

10  execute a certification and did not seek appointment as lead plaintiff.  *See Huff*, 549 F.3d at 108, 111

11  (holding that plaintiff did not meet Article III's injury-in-fact requirement where the plaintiff, an

12  investment advisor, had authority to make investment decisions and to litigate on its investor clients'

13  behalf but the clients had never transferred ownership of stock to the plaintiff).

14         To have Article III standing, a plaintiff must adequately establish, among other things, "'an

15  injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest).'"

16  *Steamfitters Local 449*, 2012 U.S. Dist. LEXIS 118693, at *27-*28.  Indeed, courts recognize that

17  "the minimum requirement for injury-in-fact is that the plaintiff has legal title to, or a proprietary

18  interest in, the claim." *Huff*, 549 F.3d at 108.  Importantly, merely possessing investment authority,

19  or even attorney-in-fact status will not suffice for standing to pursue a claim.  *Id*.

20         Because standing is a threshold issue, courts regularly consider whether a movant possesses

21  standing to sue at the lead plaintiff stage of the proceedings.  *See In re Herley Indus. Inc. Sec. Litig.*,

22  No. 06-2596, 2009 U.S. Dist. LEXIS 91600, at *14-*15 (finding *Huff* persuasive and applying its

23  reasoning at the lead plaintiff stage).  To that end, courts have rejected investment advisors like

24  Opportunity Gestao (on behalf of the Hedge Fund Group), Vilas Capital, and First New York as lead

25  plaintiffs that have failed to provide any proof of their standing to serve as a lead plaintiff.  *See*

26  *Weisz*, 2002 U.S. Dist. LEXIS 27831, at *20-*21 (refusing to appoint lead plaintiff movant with

27  largest loss because it "fail[ed] to present any evidence or information concerning whether its

1    investment in Calpine was for its own account or the account of its clients"); *Northstar Fin.*

2    *Advisors, Inc. v. Schwab Invs.*, 609 F. Supp. 2d 938, 942 (N.D. Cal. 2009) ("Under *Huff*, which this

3    Court finds persuasive, [the plaintiff] cannot bring claims on behalf of its clients simply by virtue of

4    its status as an investment advisor."), *rev'd on other grounds*, 615 F.3d 1106 (9th Cir. 2010).[12]

5        Here, it is likely that Opportunity Gestao (on behalf of the Hedge Fund Group), Vilas

6    Capital, and First New York are not the real parties in interest with standing to serve as lead plaintiff.

7    A similar situation arose in *Weisz*, where an investment advisor appeared to have the largest

8    financial interest.  2002 U.S. Dist. LEXIS 27831, at *19.  However, Judge Armstrong noted that

9    under "Rule 10b-5 plaintiffs must be actual purchasers or sellers of securities." *Id*.  The investment

10    advisor, "which merely makes investments on its individual clients' behalf," had not demonstrated

11    that it had "complete discretion and control over its clients' accounts and that it  has the authority to

12    litigate this action." *Id* at *20-*21.  As a result, Judge Armstrong held that the investment advisor

13    could not be appointed lead plaintiff.  *Id*. at *22.

14        Similarly, in *In re Netflix, Inc., Sec. Litig.*, No. 12-0225 JC, 2012 U.S. Dist. LEXIS 59465, at

15    *19 (N. D. Cal. Apr. 22, 2012) an individual (Ms. Comstock) moved for appointment as lead

16    plaintiff but was "not actually the legal entity who held the account on which her calculation of

17    losses [was] based," rather a "Trust is." *Id*. at *18.  In considering this "colorable issue" of standing,

18    the court recognized it "need not decide whether this fact would result in a valid defense, only

19    whether it is substantially likely that the [movants]—and hence, the putative class – could be forced

20    to litigate against defenses arising from it." *Id*.  In that case, "Comstock's presence among the Fish

21    Group could subject the class to the burden of litigation focused on her standing." *Id*.  As such, the

22    Court found the movant "would not satisfy the PSLRA's typicality requirement." *Id*. at *19; *see*

23    *also In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-02830, 2010 U.S. Dist. LEXIS

24

---

25    [12]  *See also In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2009 U.S. Dist. LEXIS 58219
(S.D.N.Y. June 29, 2009) (replacing an investment advisor as lead plaintiff in the wake of *Huff*); *In*

26    *re SLM Corp. Sec. Litig.*, 258 F.R.D. 112 (S.D.N.Y. 2009) (substituting new lead plaintiffs due to an
investment adviser's standing problem); *In re Bard Assocs., Inc*., No. 09-6243, 2009 U.S. App.

27    LEXIS 26289, at *8 (10th Cir. Dec. 2, 2009) (finding no error in district court's "bright line rule
requiring lead plaintiff movants to establish Article III standing by the time the lead plaintiff motions

28    are due").

1   132902, at *36 (W.D. Tenn. Dec. 15, 2010) ("exclud[ing]" account from "financial interest

2   calculation" for which there was no standing to assert loss). As in *Netflix*, this Court should protect

3   the putative class by declining to appoint movants, including Opportunity Gestao (on behalf of the

4   Hedge Fund Group), Vilas Capital, and First New York, subject to such a defense.

**E.     Mr. Johnson Does Not Possess the Largest Financial Interest**

6   The only remaining movant besides Mr. David is Mr. Johnson. Mr. David's loss is $439,399

7   compared to Mr. Johnson's claimed loss of $333,199. Unlike the movants discussed above, Mr.

8   David is not subject to unique defenses and is adequate to represent the class. As a result, Mr. David

9   should be appointed Lead Plaintiff. Because Mr. David meets all of the PSLRA's requirements, and

10   because Mr. Johnson's loss is smaller than Mr. David's loss, Mr. Johnson's motion need not be

11   considered. *Cavanaugh*, 306 F.3d at 730 ("the court must . . . consider[] the plaintiff with the next-

12   largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the

13   requirements of Rule 23").

**III.    CONCLUSION**

15   Regardless of the losses claimed by the Hedge Fund Group, Bridgestone, the Left Group, the

16   Kulik Group, First New York, or Mr. Littleton, each of these movants fails to meet the Rule 23

17   requirements to trigger the PSLRA's most adequate plaintiff presumption. Mr. Johnson lacks the

18   largest financial interest. As a result, none of these competing movants can be appointed lead

19   plaintiff and their motions should be denied in their entirety.

20   Mr. David is the movant with the next largest loss, and, unlike the competing movants, he

21   meets all of the PSLRA's requirements to trigger the presumption. As such, his motion should be

22   granted.

23   DATED: October 23, 2018                    Respectfully submitted,

24                                              ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
25                                              RACHEL L. JENSEN
                                                RANDI D. BANDMAN
26                                              TRICIA L. McCORMICK

27

28                                                  s/ Tricia L. McCormick
                                                TRICIA L. McCORMICK

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

LIEFF, CABRASER, HEIMANN
   & BERNSTEIN, LLP
ELIZABETH J. CABRASER
RICHARD M. HEIMANN
KATHERINE LUBIN
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415/956-1000
415/956-1008 (fax)

[Proposed] Lead Counsel for Plaintiff

1    <u>CERTIFICATE OF SERVICE</u>

2          I hereby certify under penalty of perjury that on October 23, 2018, I authorized the electronic

3    filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

4    notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I

5    hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the

6    non-CM/ECF participants indicated on the attached Manual Notice List.

7                                      s/ Tricia L. McCormick
                                       TRICIA L. McCORMICK
8
                                       ROBBINS GELLER RUDMAN
9                                          & DOWD LLP
                                       655 West Broadway, Suite 1900
10                                     San Diego, CA  92101-8498
                                       Telephone:  619/231-1058
11                                     619/231-7423 (fax)

12                                     E-mail:  tmccormick@rgrdlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 3:18-cv-04865-EMC Isaacs v. Musk et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzi.abadou@ksfcounsel.com,dawn.hartman@ksfcounsel.com

- **Randi D. Bandman**
  randib@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,aepstein@fenwick.com

- **Robert Nicholas Cappucci**
  rcappucci@entwistle-law.com,ncasey@entwistle-law.com,ffleming@entwistle-law.com

- **Mario Man-Lung Choi**
  mchoi@kaplanfox.com

- **Andrew John Entwistle**
  aentwistle@entwistle-law.com,jbeemer@entwistle-law.com,bbrodeur@entwistle-law.com,sriegert@entwistle-law.com,RArnall@Entwistle-Law.com,ffleming@entwisle-law.com,ncasey@entwistle-law.com,mgayle@entwistle-law.com,rcappucci@entwistle-law.com

- **Frederic S. Fox**
  FFox@kaplanfox.com

- **Eric Marc George**
  egeorge@bgrfirm.com,khall@bgrfirm.com,cbonilla@bgrfirm.com

- **David William Hall**
  dhall@hedinhall.com

- **Rachel Lynn Jensen**
  rachelj@rgrdlaw.com,e_file_sd@rgrdlaw.com,6139295420@filings.docketbird.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,peterb@hbsslaw.com,brianm@hbsslaw.com,sf_filings@hbsslaw.com

- **Ashley Conrad Keller**
  ack@kellerlenkner.com

- **Laurence D. King**
  lking@kaplanfox.com,spowley@kaplanfox.com,nlee@kaplanfox.com

- **Dean S. Kristy**
  dkristy@fenwick.com,kayoung@fenwick.com,lkelleybourne@fenwick.com

- **Mara Rachelle Ludmer**
  mludmer@fenwick.com

- **Adam Christopher McCall**
  amccall@zlk.com

- **Francis P McConville**
  fmcconville@labaton.com,kgutierrez@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Tricia Lynn McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Arthur Vincent Nealon**
  anealon@entwistle-law.com

- **Uri Seth Ottensoser**
  so@kellerlenkner.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Carl Alan Roth**
  croth@bgrfirm.com,khall@bgrfirm.com,mbetti@bgrfirm.com

- **Marc M. Seltzer**
  mseltzer@susmangodfrey.com,ecf-4d2b1f772250@ecf.pacerpro.com,hdanielson@susmangodfrey.com,ecf-67366a65900c@ecf.pacerpro.com

- **Michael Walter Stocker**
  mikes@hbsslaw.com,sf_filings@hbsslaw.com

- **James Matthew Wagstaffe**
  wagstaffe@kerrwagstaffe.com,reboredo@kerrwagstaffe.com,bechtol@kerrwagstaffe.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`