# EXHIBIT 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:

Any and all funds and assets in Brown Brothers Harriman & Co. Account #8870792 in Name of Tiger Eye Investments Ltd.;

Any and all funds and assets in any and all Accounts held at UBS AG and UBS Securities LLC, Stamford, CT, by or containing any interest held by or controlled by Daniel Valente Dantas and/or Veronica Valente Dantas, Opportunity Group, Opportunity Fund, Opportunity Unique Fund, Ridgeview Investments LLC., including but not limited to Account #WA359025 in the name of Opportunity Fund.

**UNDER SEAL**

Misc. No. _____

## EX-PARTE APPLICATION OF THE UNITED STATES FOR A RESTRAINING ORDER PURSUANT TO 28 U.S.C. § 2467(d)(3)(B)(i) AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

The United States of America, by and through its undersigned attorneys, respectfully requests that this Court issue a Restraining Order against the assets captioned above based upon a formal request by the Government of Brazil under the Mutual Legal Assistance in Criminal Matters Treaty between the United States and Brazil (the "MLAT"), signed by the United States and Brazil on October 14, 1997, and ratified by the United States on September 28, 1998, S. Treaty Doc. No. 105-42, asking the United States to restrain assets in the United States for which there is a reasonable basis to believe there will be a judgment of forfeiture at the conclusion of certain criminal proceedings in Brazil. The Brazilian authorities have provided an Affidavit, executed by the supervisory Brazilian Federal Police officer assigned to the investigation (attached to this Application as Exhibit 1), which summarizes the investigation to date, the charges anticipated against certain Brazilian citizens, the facts to support those charges, and the basis for concluding that the captioned financial institution assets in the United States will be

subject to forfeiture in Brazil.

Thus, pursuant to 28 U.S.C. § 2467 (d)(3)(B)(i) and 18 U.S.C. § 983(j)(1)(A), the United States requests that this Court issue a Restraining Order to restrain such property located in the United States. The targets of the Brazilian investigation are being investigated for serious financial fraud and money laundering crimes for which forfeiture is provided under Brazilian law.

## I. JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2467. Venue is proper in this Court pursuant to 28 U.S.C. § 2467(c)(2)(B), which provides, in relevant part, that "venue shall lie in the district court for the District of Columbia . . . ." *Id.*

## II. APPLICATION

The United States seeks a Restraining Order to preserve the following assets for forfeiture (hereinafter the "Property"):

> Any and all funds and assets in Brown Brothers Harriman & Co. Account #8870792 in Name of Tiger Eye Investments Ltd.;
>
> Any and all funds and assets in Accounts held at UBS AG and UBS Securities LLC, Stamford, CT, by or containing any interest held by or controlled by Daniel Valente Dantas and/or Veronica Valente Dantas, Opportunity Group, Opportunity Fund, Opportunity Unique Fund, Ridgeview Investments LLC, Tiger Eye Investments Ltd., including but not limited to Account #WA359025 in the name of Opportunity Fund.

Some of the captioned assets, in particular any pertaining to the Opportunity Fund, are already subject to a Brazilian Restraining Order issued by Federal Judge Fausto Martin de Sanctis of the Sixth Federal Criminal Court Specialized in Crimes Against the National Financial System and in the Laundering of Funds dated July 17, 2008. However, a Restraining Order applicable to all captioned assets, some of which have been identified by U.S. investigators

2

coordinating with the Brazilian investigators, has not yet been received by the United States, although such an Order is anticipated in the future. Because of the danger of these assets being transferred beyond the jurisdiction of the United States, the United States is requesting this Restraining Order based upon the Affidavit of Federal Police Chief Ricardo Saadi, which is attached to this Application as Exhibit 1 ("Saadi Affidavit"). Accordingly, the United States respectfully requests that this Court issue a Restraining Order pursuant to 28 U.S.C. § 2467(d)(3)(B)(i) and 18 U.S.C. § 983(j). A proposed Order is attached.

### III. STATEMENT OF POINTS AND AUTHORITIES

The essential criteria for obtaining a Restraining Order pursuant to 28 U.S.C. § 2467(d)(3)(B)(i) are satisfied: (1) Brazil is a "foreign jurisdiction with which the United States has a treaty agreement in effect providing for mutual forfeiture assistance," 28 U.S.C. § 2467(a)(1); (2) Brazil has submitted a request pursuant to that Treaty requesting assistance in pending forfeiture matters, *id.*; (3) Brazil has presented sufficient information to establish that there is "a reasonable basis to believe that the property to be restrained will be named in a judgment of forfeiture at the conclusion" of the Brazilian criminal proceedings, 28 U.S.C. § 2467(d)(3)(B)(i); and (4) Brazil has presented sufficient information to establish that the final "forfeiture or confiscation judgment" would be enforceable in the United States as a sum of money representing the proceeds of an offense, or property the value of which corresponds to such proceeds, or property involved in or traceable to an offense, which would constitute a forfeitable offense in the United States, 28 U.S.C. § 2467(a)(2).

Thus, this Court has the authority to preserve the availability of any property that may become subject to the forfeiture or confiscation judgment which may be entered at the

3

conclusion of the investigation described in the Saadi Affidavit, based upon the information set forth in that Affidavit.

A. **Factual Background**

1. According to the Saadi Affidavit, Daniel Valente Dantas (a Brazilian banker), his sister Veronica Valente Dantas, Dorio Ferman, Arthur Joaquim Carvalho, and others were temporarily detained by a July 4, 2008 order of Federal Judge Fausto Martin de Sanctis of the Sixth Federal Criminal Section Court Specialized in Crimes Against the Brazilian Financing System and Money Laundering, located in Sao Paulo, Brazil, on charges related to financial fraud and money laundering. Saadi Affidavit at ¶ 55. The July 4th Order states that sufficient evidence was presented by the Brazilian Federal Police to the court to justify temporary detention of these and other individuals, and for further official investigation for these offenses under Brazilian law: (1) conducting an association of three or more people in a criminal organization, group or gang to perpetrate crimes of racketeering (Brazilian Criminal Code No. 2.848, Art. 288); (2) fraudulently administering a financial institution (Brazilian Criminal Code No. 7.492, Art. 4); (3) operating an unauthorized and unlicensed money transmitting business (Brazilian Criminal Code No. 7.492, Art. 22); (4) laundering and concealing or disguising the nature, origin, location, disposition, movement or ownership of assets obtained from crimes against the national financial system and crimes committed by a criminal organization (Brazilian Criminal Code No. 9.613, Art. 1); (5) improper use of insider information for securities violations (Brazilian Code No. 6.385, Art. 27-D); and (6) corruption (Brazilian Code Art. 333). Saadi Affidavit at ¶¶ 55-56.

4

2. The Saadi Affidavit states that, as part of the Brazilian investigation known as "Satiagraha" (meaning path to light or truth), Brazilian investigators have learned that Daniel Valente Dantas, who has amassed great wealth and political influence through the operation of numerous ventures both inside and outside of Brazil, and others were operating a criminal organization, group, or "gang" which defrauded not only the Brazilian Government's financial and securities regulatory agencies, but also some partners in various Dantas' investment ventures. Saadi Affidavit at ¶¶ 5-8.

3. In 1998 and subsequently, in order to purchase a number of public companies which were being privatized in Brazil, including three telecommunications systems, a port system at the Port of Santos (the largest port in Latin America), a metro system in Rio de Janeiro, and a sanitation system in the State of Parana, Daniel Dantas created three investment funds to be managed by his company, Opportunity Group, which is a company formed by several financial and non-financial entities whose partners include Dantas' sister, Veronica Valente Dantas, Danielle Silbergleid Ninnio (legal director), and others. Saadi Affidavit at ¶ 31. In July 1998, this consortium of three funds bought the assets of the Brazilian Telebras System, consisting of one landline telephone service provider and two cellular phone service providers. Saadi Affidavit at ¶ 41.

4. The three investment funds included: (1) Fundo Nacional (CVC FIA), an "onshore" fund (established and regulated in Brazil) consisting primarily of three Brazilian pension funds (PREVI, FUNCEF, and PETROS) plus funds from the Brazilian Bank of Economic and Social Development (BNDES), which contributed millions of dollars to the enterprise; (2) Fundo Estrangeiro (CVC LP), an "offshore" fund (established in the Cayman

5

Islands) in which Citigroup, USA, contributed over US$ 720 million; and (3) the Opportunity Fund (also an "offshore" Cayman fund which is registered with the Brazilian Stock Exchange and was established to hold investments only by non-Brazilians in the purchases of the newly privatized Brazilian enterprises). Saadi Affidavit at ¶¶ 31, 32, 33, 40.

5. The Opportunity Fund submitted documents to the Brazilian National Monetary Council (CMN) and the Brazillian Securities and Exchange Commission (CVM) stating that, as required by Brazilian law, no residents of Brazil would hold shares in the Fund. From time to time, each year, the Opportunity Fund continued to file such representations with the CVM. Foreign investors in the Opportunity Fund were permitted favorable tax treatment under Brazilian law because of their non-resident status. Through court authorized searches and seizures, the Brazilian Federal Police obtained documents and computer records which indicated that most of the investors in the Opportunity Fund were, in actuality, wealthy residents of Brazil - some of whom had previously been investigated for criminal activity, and at least one individual with known connections to a narcotics organization. Saadi Affidavit at ¶ 34, 46, 58.

6. In order to conceal their illegal investments in the offshore Opportunity Fund, the Brazilian investors used "doleiros," or dollar dealers, in Brazil, which comprise a major underground banking pipeline, similar to the Black Market Peso Exchange in Colombia, to transmit both criminal and lawful proceeds abroad in order to evade financial reporting requirements and certain taxing parameters in Brazil. Brazilian authorities use the term "doleiro" to refer to an individual or business engaged in an illegal and unauthorized foreign money remittance system. Saadi Affidavit at ¶¶ 34, 47. In such a system, ready supplies of funds must remain available in banks in both of the countries involved. As a parallel exchange

6

system which operates outside of the control and regulation of the Brazilian Central Bank (BACEN), the doleiro system generally involves the transfer of funds in Brazilian currency (usually in cash) by a client to a tourist cambio in Brazil. Some Brazilian cambios are licensed to perform travel agency functions, as well as the exchange of foreign currency, but are not permitted to perform any other financial transactions. The cambio then sends information to a cooperating individual outside Brazil, requesting that an equivalent amount of funds be wired, as requested by the client. This financial activity often has no apparent associated legitimate commercial activity. Like most underground banking systems, such as *hawala*, this process circumvents the regulatory Central Banks in both countries, and permits the laundering of the proceeds of international crime and unbeknownst to banking and law enforcement authorities to avoid reporting requirements and to obtain a lower tax liability. In this manner, billions of dollars were invested by Brazilians through the use of offshore trusts and other entities to disguise their true ownership into the Opportunity Fund. In 2004, a Brazilian investigation into the Bank of the Brazilian State of Parana discovered that over US$ 20 million of funds were moved through a money laundering scheme using doleiros connected with the Merchants Bank in New York, New York. A U.S. citizen, Caroline Nolasco, was convicted in the U.S. District Court for the District of New Jersey on October 24, 2004, for her participation in the unlicensed Brazilian money remitter service in violation of 18 U.S.C. § 1960 as a result. *See United States v. Maria Carolina Nolasco*, Crim. No. 04-617 (D.N.J.). In addition, numerous Brazilian doleiros were convicted and provided information against the Opportunity Fund's Brazilian investors. Also, the investigation recommended charges against Dantas and Carla Cicco (then director of Brasil Telecom) for influence peddling and corruption. Saadi Affidavit at ¶¶ 34, 47.

7

7.  Even though Dantas' Opportunity Group initially made little, if any, financial contribution to the three-Fund purchase of the Brazilian Telebras System, through the Opportunity Group's agreements with Citibank and the Fundo Nacional, Dantas maintained control of the businesses as Administrator. Dantas' joint venturers, Citibank and the Fundo Nacional, eventually filed lawsuits against him and the Opportunity Group asserting allegations of fraud, and breaches of contractual and fiduciary duties resulting in damages to their interests. The Fundo Nacional (Pension Funds) and Brazil Italia (which also invested in Brasil Telecom (BrT) filed complaints with the Brazilian Securities Exchange Commission (CVM), alleging that Dantas was operating BrT primarily for the benefit of his Opportunity Group and to the detriment of the other Funds. In particular, the Pension Funds alleged substantial losses as a result of fraudulent fees and misuse of assets. Citibank also filed a lawsuit in 2005 alleging breach of fiduciary and contractual duties by Dantas, as well as fraud. As a result, Dantas and Opportunity Group were removed as Administrator of both the Fundo Nacional and Fundo Estrangeiro. Allegations included that Dantas and his family used company assets for their personal gain and for personal expenses such as non-company related office buildings, furnishings, supplies, attorneys and other fees. Saadi Affidavit at ¶ 50, 51.

8.  In addition, complaints before the CVM also alleged the use of insider market information regarding Brasilia Telecom to make investment decisions, resulting in abnormally large and quick rates of growth for the shares (mainly held illegally by Brazilian investors, including Dantas and his family) in the offshore Opportunity Fund. The result of the CVM administrative proceeding included a fine and revision of the company books and records. Saadi Affidavit at ¶ 50.

8

9. An investigation conducted by the Brazilian Central Bank (BACEN) concluded that Dantas' Opportunity Bank in Brazil did not have an effective anti-money laundering compliance program in place, and that it had, on numerous specified occasions, failed to file suspicious activity reports with the Brazilian Financial Intelligence Unit (COAF) on transactions of funds which were incompatible with the economic activity and professional occupation of its customers, transfers and withdrawals of large sums which did not have any apparent legal purpose. As a result of these findings, Opportunity Bank was placed on a mandatory compliance program. Saadi Affidavit at ¶ 52 and Attachment A at Sec. 5.4.

10. Dantas created the Opportunity Unique Fund as a "mirror fund" to the Opportunity Fund, meaning that it performs broadly in line with the Opportunity Fund. A "mirror fund" is generally an investment trust which "mirrors" a mutual fund's objectives. The Opportunity Unique Fund is registered in the British Virgin Islands, and its assets are maintained and managed primarily by UBS AG in Dublin, Ireland. According to Brazilian Federal Police records, the Opportunity Unique Fund "was created in order to transfer resources from investors that were invested in the Opportunity Fund with the intent of 'erasing any residue of irregularity that leads to identifying any financial illegality." Attachment A to Saadi Affidavit, Ex. 1, at Sec. 5.3. Thus, this second offshore fund was created in order to further obfuscate and conceal the overall unlawful objectives of the criminal organization.

11. ABN AMRO do Brasil was appointed the custodian of Opportunity Fund assets in the Brazilian stock exchange, and Brown Brothers Harriman & Co. (BBH) was appointed the custodian of Opportunity Fund's international assets. UBS (Luxembourg) and UBS (Ireland) also held accounts or sub-accounts for the Opportunity Fund. Investigation by U.S. officials has

indicated the presence of the captioned accounts at both of these institutions. Saadi Affidavit at ¶ 45, 57, 60, 61.

13. During the Brazilian investigation, officials discovered that Dantas and his associates also devised a method for illegally transporting assets of TPSA Brazil abroad. Dantas and his sister, Veronica, control "TPSA do Brasil", which holds interests in the Brazilian market. Saadi Affidavit at ¶ 64. In March 2008, Veronica Dantas was intercepted discussing a transfer of a large sum from Highlake Investment in connection with the TPSA Investment Corp. account. In addition, Dantas and his associates appeared to have used accounts set up for Ridgeview Investments LLC, a Delaware corporation, to conceal assets of the Opportunity Fund. Saadi Affidavit at ¶ 63.

14. On July 7, 2008 a transfer of US$ 51,873,928.42 was made by Daniel Dantas from an account in the name of Harpy Eagle Investment managed by BBH at UBS AG, London, to an account in the name of Tiger Eye Investments Ltd. to an account maintained by BBH at Citibank in New York, New York. This transfer was carried out one day before the launch of the Satiagraha Operation in Brazil. Pursuant to a domestic Restraining Order, Brazil has already restrained an amount exceeding approximately US$ 135 million in connection with the investigation. Saadi Affidavit at ¶ 20. Also, the United Kingdom has restrained in excess of US$ 46 million in connection with this Brazilian investigation. Saadi Affidavit at ¶ 66. Tiger Eye Investments is a sub-trust of an umbrella trust held at Brown Brothers Harriman in New York.

15. On July 17, 2008, Federal Judge de Sanctis entered a Restraining Order for all

funds maintained by the Opportunity Fund in any banking institution in the United States. As the Brazilian investigation proceeds, it is anticipated that additional Restraining Orders will be issued by the Brazilian court. Brazil submitted an MLAT request dated November 11, 2008, requesting financial records pertaining to Daniel and Veronica Dantas, their cohorts, and accounts held by the Opportunity Fund, the Opportunity Unique Fund, and other funds known to the Brazilian Federal Police. Additional Restraining Orders from the Brazilian court pertaining to accounts in the United States, including those captioned in this Application, are anticipated. Saadi Affidavit at ¶ 20.

16. On December 3, 2008, Daniel Dantas and two co-conspirators were convicted of corruption arising out of an attempt to bribe one of the police officers working on the above-described investigation by offering US$ 1 million to drop Dantas, his sister, and his son from the criminal investigation. Dantas received a ten year sentence on this conviction, and has appealed. Saadi Affidavit at ¶ 56.

## BASIS FOR RESTRAINT OF ASSETS IN THE UNITED STATES

The offenses for which Daniel Dantas, his sister, Veronica Dantas, and others have been charged in Brazil are ones which would subject the above-captioned assets to forfeiture under United States law. Specifically, the conduct underlying certain violations allegedly committed by this criminal organization in Brazil would constitute several violations of U.S. law giving rise to forfeiture of the captioned assets, including, but not limited to, the following: (1) association of three or more people in a organization, group or gang, in order to perpetuate crimes (Brazilian Criminal Code, Law No. 2.848/1940, Art. 288) is comparable to the U.S. crime of conspiracy to commit a violation of Title 18, United States Code (18 U.S.C. § 371), including conspiracy to

11

submit false statements to officials within the jurisdiction of any branch of government (18 U.S.C. § 1001); (2) operating a non-authorized exchange system (Brazilian Criminal Code No. 7.492, Art. 22) is comparable to the U.S. crime of conducting an unlicensed money remitter service (18 U.S.C. § 1960); and, (3) laundering and concealing or disguising the nature, origin, location, disposition, movement or ownership of assets obtained from crime, including insider trading, fraudulent financial activity, non-authorized exchange systems, fraud, embezzlement, and other offenses (Brazilian Criminal Code No. 9.613, Art. 1) is comparable to the U.S. crime of laundering of the proceeds of Specified Unlawful Activities (SUAs) and other offenses (18 U.S.C. § 1956), including insider trading and securities fraud - 18 U.S.C. § 1961(l), unlicensed money remitter services - 18 U.S.C. § 1960, mail fraud and wire fraud - 18 U.S.C. §§ 1341/1343, embezzlement from pension funds - 18 U.S.C. § 664, submitting false statements and false and fraudulent bank entries - 18 U.S.C. § 1005. Thus, the captioned assets would be subject to forfeiture in the United States under 18 U.S.C. §§ 981 (a)(1)(A) and (C).

As previously stated, the United States and the Government of Brazil have a mutual legal assistance treaty in effect which requires assistance by the United States in matters related to the confiscation of assets in the U.S. which would be subject to forfeiture in Brazil, as provided under U.S. law. The Treaty on Mutual Legal Assistance requires the United States to provide forfeiture assistance to Brazil in Article 16.

For the reasons set forth above, pursuant to 28 U.S.C. §2467 (d)(3), the United States applies for a restraining order to preserve the availability of property listed in Attachment A for 30 days. During such time, U.S. investigators and prosecutors will be working with counterparts in Brazil to obtain further evidence to support the continued restraint and forfeiture of these

assets, and will seek an extension of time should it be necessary, as well as additional restraining orders to cover the captioned properties. Without the requested Restraining Order, the criminal proceeds may dissipate and become unavailable for their eventual return to the Government of Brazil. This Order is needed in order to preserve the availability of the property that may be subject to a forfeiture action brought pursuant to U.S. law or brought in furtherance of forfeiture proceedings under Brazilian law pursuant to 28 U.S.C. §2467.

The United States asks that the Court provide in the Restraining Order that Brown Brothers Harriman & Co., as well as UBS AG and UBS Securities LLC, be permitted to conduct their usual and ordinary sweeps for normal cash management purposes, and the discretion to continue to manage and invest (buying and selling) the restrained assets in accordance with the current arrangements with and instructions from their clients, and collect their usual and ordinary fees for doing so. The United States requests that, should the clients seek to change the current investment arrangements, the clients seek approval from this Court before the restrained institutions may do so.

## CONCLUSION

Wherefore, in consideration of the above, the United States respectfully prays that this Court enter the requested Restraining Order. A proposed Order is submitted herewith.

Respectfully submitted,

RICHARD WEBER, Chief
Asset Forfeiture and Money Laundering Section

*Linda M. S.*

LINDA M. SAMUEL, Deputy Chief
DC BAR #388970
JEAN B. WELD, Senior Trial Attorney
VA BAR # 19295
U.S. Department of Justice
Criminal Division
Asset Forfeiture and
 Money Laundering Section
1400 New York Avenue, N.W., Suite 10100
Washington, D.C. 20530
Tel: (202) 514-1263
Fax: (202) 514-5522

Attorneys for Applicant United States

14