Reed R. Kathrein (139304)
Michael W. Stocker (179083)
Kristen McCulloch (177558)
Danielle Smith (291237)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
mikes@hbsslaw.com
reed@hbsslaw.com
kristenm@hbsslaw.com
danielles@hbsslaw.com

*Attorneys for Proposed Lead Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KALMAN ISAACS, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>       v.<br><br>ELON MUSK and TESLA, INC.,<br><br>                              Defendants. | Case No. 3:18-cv-04865-EMC<br><br>**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF JAMES JOHNSON FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO COMPETING MOTIONS**<br><br>Date:         November 15, 2018<br>Time:        1:30 p.m.<br>Courtroom: 5, 17th Floor<br>Judge:       Hon. Edward M. Chen<br><br>ORAL ARGUMENT REQUESTED |
| WILLIAM CHAMBERLAIN, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>       v.<br><br>TESLA, INC. and ELON MUSK,<br><br>                              Defendants. | Case No. 3:18-cv-04876-EMC |

010768-11 1071415 V1

| | |
|---|---|
| JOHN YEAGER, individually and on behalf of all others similarly situated, | Case No. 3:18-cv-04912-EMC |
| Plaintiff, | |
| v. | |
| TESLA, INC. and ELON MUSK, | |
| Defendants. | |
| CARLOS MAIA, Individually and on Behalf of All Others Similarly Situated, | Case No. 3:18-cv-04939-EMC |
| Plaintiff, | |
| v. | |
| TESLA, INC. and ELON R. MUSK, | |
| Defendants. | |
| KEWAL DUA, Individually and on Behalf of All Others Similarly Situated, | Case No. 3:18-cv-04948-EMC |
| Plaintiff, | |
| v. | |
| TESLA, INC. and ELON MUSK, | |
| Defendants. | |
| JOSHUA HORWITZ, Individually and on Behalf of All Others Similarly Situated, | Case No. 3:18-cv-05258-EMC |
| Plaintiff, | |
| v. | |
| TESLA, INC. and ELON R. MUSK | |
| Defendants. | |

010768-11 1071415 V1

| | |
|---|---|
| ANDREW E. LEFT, Individually and on Behalf of All Others Similarly Situated,<br><br>                                            Plaintiff,<br><br>    v.<br><br>TESLA, INC. and ELON R. MUSK,<br><br>                                            Defendants. | Case No. 3:18-cv-05463-EMC |
| ZHI XING FAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                                            Plaintiff,<br><br>    v.<br><br>TESLA, INC. and ELON R. MUSK,<br><br>                                            Defendants. | Case No. 3:18-cv-05470-EMC |
| SHAHRAM SODEIFI, Individually and on Behalf of All Others Similarly Situated,<br><br>                                            Plaintiff,<br><br>    v.<br><br>TESLA, INC., a Delaware corporation, and ELON R. MUSK, an individual,<br><br>                                            Defendants. | Case No. 3:18-cv-05899-EMC |

## I.     PRELIMINARY STATEMENT

The Court should appoint Movant James Johnson[1] as lead plaintiff for Tesla investors who are traditional long purchasers of Tesla common stock, and not short sellers or option traders. Short sellers and option traders are subject to unique defenses and damage theories and should be separately represented under the unique circumstances of this case.

In settling with the Securities Exchange Commission, Defendants essentially admit that Elon Musk's tweets over taking Tesla private were without foundation and have injured investors. While the issue of scienter remains, loss causation and the allocation of a limited recovery, amongst the different investor classes, is the most salient issue that will be confronting the parties. Where the Defendant's ability to pay the total amount of claimed losses is likely to be in question, as it is here[2], each class of investors has incentive to argue for damage calculations, minimize the losses of the other investor class, either traditional stock purchasers ("long purchasers"), short sellers and option traders. Moreover, Defendants will attack the standing of short seller and option traders, and will attack the appropriate length of the Class Period, wherein many of the movants' losses are incurred by purchases in the latter filed and asserted class periods long after Tesla's stock had fallen below the pre-tweet price.

Movant James Johnson is the only movant who is solely a long stock purchaser. Johnson was not a short seller. Johnson did not trade options. Johnson bought 91,846 shares of Tesla stock during the Class Period—more than any other movant.[3] Johnson's total net funds expended was $34,429,733.27.

---

[1] *See* Resume of movant James Johnson attached as Exhibit A to the Declaration of Reed R. Kathrein In Support Of Memorandum Of Law In Further Support Of Motion Of James Johnson For Appointment As Lead Plaintiff, And Approval Of His Selection Of Lead Counsel; And In Opposition To Competing Motions ("Reed Decl.").

[2] Numerous news articles and analysts have observed that Tesla is in a precarious financial condition and is in a desperate need to raise cash. For example, *see* Mark Maousek, *Over $1 billion in upcoming debt payments are putting a huge amount of pressure on Tesla's Q3 results — here's what experts have to say about the company's make-or-break moment*, Business Insider (Oct. 14, 2018, 8:57 AM), https://www.businessinsider.com/teslas-upcoming-debt-payments-could-be-a-big-challenge-experts-2018-10.

[3] FNY Investment Advisors is also an options trader. Dany David traded in options and was a short seller during the first days of the class period and will have unique defenses relating to his trading strategy. Other traditional common stock purchasers have joined unrelated groups cobbled

1    Johnson also purchased all of his shares on August 8th—the second day in the class period of
2    every complaint[4], which have class periods ending on the 9th (Isaacs, Yeager), 10th (Chamberlain,
3    Sodeifi ), 14th (Maia), 17th (Horowitz, Left, Fan).  Thus, Johnson's August 8th purchases fit in every
4    Class Period.  Johnson sold his shares stretched across the various disclosures of the truth alleged in
5    the complaints on August 8, 14, 15 and 16, thus incurred damages according to every loss causation
6    theory in every complaint.

Unlike the three "Tesla Investor Groups", Johnson is not part of an unrelated attorney driven amalgamation of investors cobbled together by multiple law firms who are attempting to represent investors with competing interests and confronting unique legal and factual issues—long purchasers, short sellers and options traders.  Johnson is represented by one law firm—Hagens Berman Sobol Shapiro LLP—who is not beholden to any other investor class.

Johnson has the largest uncompromised financial interest in the relief sought by long investors.  Because he only purchased and sold stock, unlike the other movants, Johnson has made a *prima facie* showing of its typicality and adequacy to other class members who purchased stock and is in an uncompromised position to litigate for a recovery of stock purchases and sales.  Accordingly, Johnson is entitled to a strong presumption that he is the "most adequate plaintiff" for the class of long common stock purchasers, should be appointed lead plaintiff for that class, and Hagens Berman Sobol Shapiro LLP approved as Lead Counsel for that class.  Johnson expresses no opinion on appropriate lead plaintiff for the short seller and option trader class.

## II.    FACTUAL BACKGROUND

A.    **Underlying Facts to the Lawsuit**

The Class Period starts at 12:48 PM on August 7, 2018 when Elon Musk tweeted, "Am considering taking Tesla private at $420. Funding secured."[5]  Tesla's stock was already trading at

---

together by their attorneys, effectively turning control over to their attorneys with conflicting allegiances to all three classes of investors.

[4] The *Dua* complaint is unique in that it is brought on behalf of "who had open short positions or put options for Tesla as of August 7, 2018 or August 8, 2018 (the "Class Period"), and who suffered damages as a result . . . ." Dua Cmpl. ¶1.  So no end to the Class Period is suggested in *Dua*.

[5] Isaacs Cmpl.¶¶4, 32.

$356.82.[6]  On August 9, 2018, on the heels of news that the SEC was investigating and market commentators and others casting doubt on the *bona fides* of the deal, Tesla's stock price fell $17.89, closing at $352.45.  The first complaint filed ends the Class Period on August 9, 2018.

**B.     The Movants**

On October 9, 2018, Mr. James Johnson ("Johnson" or "Movant") moved to be appointed Lead Plaintiff in this action. ECF No. 64.  Eight other lead plaintiff motions were also filed on that date.[7]

Because Johnson is not otherwise conflicted by group aggregation and investor class conflicts, Johnson has the "largest financial interest" in long positions, and has exceeded the *prima facie* showing of typicality and adequacy required by Rule 23 and the PSLRA, Movant should be appointed as Lead Plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

Johnson also has the largest financial interest in this litigation for the class of long common stock purchasers.  Johnson acquired of 91,846 shares of common stock and spent total funds expended of $34,429,733.2.  Johnson incurred a loss of $333,185.26.  The following table demonstrates the superiority of Johnson's financial interest under every relevant metric considered by courts when assessing financial interest under the PSLRA.[8]

---

[6] Opening price on August 7, 2018 at 12:48 PM was $356.82.  Per Bloomberg Subscription Service (verified on October 21, 2018).

[7] On October 9, 2018, motions were also filed by FNY Investment Advisers, LLC (ECF No. 40); Glen Littleton (ECF No. 41); Tesla Investor Group:  Jiri Kulik, Jason Han, Esmaeil Riahi, Deepak Mehta, and Raghunath Nama (ECF No. 45); Bridgestone Investment Corporation Limited (ECF No. 46); Tesla Investor Group:  Andrew E. Left, PROtecto Informatikai Szolgáltató Korlátolt Felelösségü Társaság, Thierry Boutin, Dr. Abrar Shirazi, and Vilas Capital Management, LLC (ECF No. 47); Tempus International Fund SPC ("Tempus") and Opportunity Unique Fund Inc. ("OUF") (ECF No. 71); Tesla Investor Group:  Donald Freeland, Alvin Abrams, Christopher Lyman, and Rajinder Gaur (ECF No. 74); and Dany David (ECF No. 80).

[8] *See, e.g., Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007) ("Courts have typically considered the "Olsten-Lax" factors to determine who has the largest financial interest:  '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.'"); *see also Zucker v. Zoran Corp.*, No. C 06-04843 WHA, 2006 WL 3591156, at *3 (N.D. Cal. Dec. 11, 2006) ("the candidate with the largest potential recovery would be the candidate who had bought the largest number of . . . shares."); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1107-08 (N.D. Cal. 2001) ("largest financial interest" equates with amount of potential recovery, number of shares purchased, and estimated losses).

| Movant[9] | Class Period Common Stock Long Purchases | Class Period Total Funds Expended for Common Stock Purchases |
|---|---|---|
| **James Johnson** | **91,846** | **$34,429,733.20** |
| FNY Investment Advisers, LLC | 418,614<br>Also in option trading in Class Period | $148,211,443.78 |
| Dany David | 25,228<br>Also short sales and option trading | $8,974,697.88 |
| Glen Littleton | 100<br>Damages almost all in short sales | No Calculation ("NC") |
| Kulik, Han, Riahi, Mehta and Nama | Unrelated Group.<br>Kulik (10,270), Nama (140 long plus Options), Riahi (2,100), Han (4,400), Mehta (1,000) | NC (Withdrawn) |
| Bridgestone Investment Corporation Limited | 1,000 long.<br>Damages almost all in options. | NC |
| Left, PROtecto Informatikai Szolgáltató Korlátolt Felelösségü Társaság, Boutin, Shirazi, and Vilas Capital Management, LLC | Unrelated Group.<br>Left (9,000 plus Short Sales), PROtecto (5,900 plus Options), Boutin (14,000 plus Options), Shirazi (8,500), Vilas (Short Sales) | NC |
| Freeland, Abrams, Lyman and Gaur[10] | Unrelated Group.<br>Abrams (Options), Freeland (21,000 and Options and Shorts), Lyman (5,563), Gaur (1,675) | NC (Withdrawn). |
| Tempus International Fund SPC and Opportunity Unique Fund Inc. | 0<br>(Only Short Covers) | $0 |

Significantly, Johnson purchased more TSLA shares and spent more funds than all other movants other than FNY Investment Advisers, who was also as options trader during the Class Period.

---

[9] The table reflects figures initially submitted with each respective lead plaintiff motion.

[10] This Unrelated Group filed a Notice of Withdrawal on October 22, 2018. *See* ECF No. 102.

## III.  ARGUMENT

**A.  The Other Movants are Neither Typical nor Can They Adequately Represent Long Common Stock Purchasers on in This Case.**

"Due process requires named plaintiffs and lead counsel to have undivided loyalty to absent class members, and the adequacy of representation requirement is meant to preclude class certification when adversity among subgroups or other conflicts of interest exist." *Ganesh, L.L.C. v. Computer Learning Centers, Inc.*, 183 F.R.D. 487, 490 (E.D. Va. 1998) *citing Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998).

### 1.  Short Seller Interests are Antagonistic to Long Purchasers Where Recovery is Threatened to be Limited as Here

Tempus International Fund SPC and Opportunity Unique Fund Inc. ("Tempus/OUF") purchased 177,022 shares at $375.9503 to cover short sales purchased long before the class period at prices between $277 and $299 per share.  As short sellers, Tempus/OUF have and will likely argue that their damages is the difference between the short sale (which may preceded the Class Period by months) and the price to cover the short sale.  In fact, in their loss calculations submitted to the Court with their motion, Tempus/OUF claims damages of $15,871,345.77.  However, prior to Musk's tweet, Tesla's stock price was already $356.82.  Tempus/OUF damages per share, based on stock inflation, arguably should be not more than $19.13 per share ($375.9503-$356.82) for total damages of around $3.386 million (177,022 x $19.13).  The nearly 5x difference is huge, and contrary to the interests of long common stock purchasers who would not want to see any recovery diluted by such magnitude.  *See Ganesh,* 183 F.R.D. at 491 (Noting the interests in "Longs" and "Shorts" are aligned in assuring that the market price of a stock is artificially influenced by material representations, "subject only to some potential variation in how their damages would be calculated in the event that 10b-5 liability were otherwise established.").

Defendants are also likely to attack short sellers ability to utilize the presumption of reliance to defeat class certification.  *See Zlotnick v. TIE Commc'ns,* 836 F.2d 818 (3d Cir.1988); *Ganesh*, 183 F.R.D. at 491 ("But gambling on a predicted loss is precisely what a short-seller seeks to do, and the Court cannot presume that a short-seller who discounted the market price at the time of his short sale later reversed his strategy and relied on the market price when the time to cover arrived. . . .  As

a result, even if short-sellers have standing to sue under 10b-5, they cannot logically use a fraud on the market theory to obviate the need for positive proof of individual reliance."), *cf*. *Schleicher v. Wendt*, No. 1:02-CV-1332-DFH-TAB, 2009 WL 761157, at *9 (S.D. Ind. Mar. 20, 2009), *aff'd,* 618 F.3d 679 (7th Cir. 2010) ("To the extent that a short seller was injured, that person should still be able to rely on the fraud on the market presumption. *Basic* makes no exception for short sellers . . . ."). This same antagonism between investor classes competing for potentially limited funds applies to other short seller movants too: namely the three Tesla Investor Groups, Glenn Littleton and Dany David.

### 2. Option Trader Interests are Antagonistic to Long Purchasers Where Recovery is Threatened to be Limited as Here

Other options trading movants, including Glenn Littleton, the three Tesla Investor Groups, Bridgestone Investment Corporation, and Dany David also have potential antagonistic interests to long common stock purchasers in calculating their damages. They also have unique defenses requiring separate representation.

First, the extent a recovery is limited, as with short seller, long purchasers have an interest in minimizing the damages of options purchasers. In fact, courts have found that options trading can render a proposed lead plaintiff inadequate. *See*, *e.g*., *In re Elan Corp. Sec. Litig.*, No. 08-CV-08761, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009) (lead plaintiff that traded call options was rejected because "he would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict; *cf. MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000) (rejecting as lead plaintiff "an atypical investor that engages in transactions far beyond the scope of what a typical investor contemplates").

Defendants are expected to advance several reasons why option traders should be excluded from the class. For example, while this issue was unresolved in *In re Fed. Nat. Mortg. Ass'n Secs., Derivative and "ERISA" Litig.*, 247 F.R.D. 32, 41 (D.D.C. 2008), the Defendant requested to exclude options traders from the class definition on the basis that options traders should not benefit from the fraud-on-the-market presumption since they trade on perceived inefficiencies in the stock

1   price.  *Andrada v. Atherogenics, Inc.*, No. 05 Civ. 00061 (RJH), 2005 WL 912359, at *5 (S.D.N.Y.
2   Apr. 19, 2005) ("Were South Ferry to be appointed lead plaintiff for the entire class, factual issues
3   specific to South Ferry in determining the precise value of the options-e.g., the maturity, the
4   volatility of the price of the Atherogenics stock, the level of short term interest rates, and the
5   competitive structure of the market in which the options are traded-would likely "threaten to become
6   the focus of the litigation."); *Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 391 (D.N.J. 1998)
7   ("The applicability of the fraud on the market theory to the Euro Options purchases does not,
8   however, end the inquiry into the typicality and adequacy of [and options trader] as a class
9   representative."); *Margolis v. Caterpillar, Inc.,* 815 F. Supp. 1150, 1156 (C.D. Ill.1991) (since option
10  holder's claim was "not typical of stock purchaser's claim," option holder could "only represent a
11  class of option holders, not stock holders.").

12  Accordingly, as with short sellers, both the long common stock trader and the option traders
13  should have separate representation in this case.

14  **B.    The Court Has the Power to Appoint a Lead Plaintiff and Approve Lead Counsel for Each Investor Class.**

16  While rare—as are the facts in this case where short sellers were arguably targeted—Courts
17  have exercised the power to appoint a lead plaintiff and approve a lead counsel for different investor
18  classes.  For example, in *In re BP, PLC Sec. Litig.*, the court held that "[t]he stark difference between
19  the two groups' class periods and their two distinct theories of the case create a significant risk of
20  conflict and prejudice to class members if they are not separated."  758 F. Supp. 2d 428, 441 (S.D.
21  Tex. 2010); *In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 444 (S.D. Tex. 2002) ("the Court is
22  required to insure that independent classes with conflicts are protected by subdivision and separate
23  representation"); *see also In re Peregrine Sys., Inc.,* No. Civ.02 CV 870J(RBB), 2002 WL 32769239,
24  *12 (S.D. Cal., Oct. 11, 2002) (creating one subclass for Securities Act plaintiffs and another for
    Exchange Act plaintiffs).

26  The rationale for the appointment of a lead plaintiff and separate lead counsel for different
27  classes of investors, and the case law discussing the considerations, is examined in depth in *In re BP,*

*PLC Sec. Litig.,* 758 F. Supp. 2d at 436-443 and will not be repeated here.  The same basic rationale applies to cases in the Ninth Circuit:

> Rule 23(a) also requires that the person representing the class be able "fairly and adequately to protect the interests" of all members of the class.  *See* Fed.R.Civ.P. 23(a)(4).  "The Ninth Circuit has held that representation is 'adequate' when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive."  [Citations Omitted].

*Weisz v. Calpine Corp.*, No. 4:02-CV-1200, 2002 WL 32818827, at *8 (N.D. Cal. Aug. 19, 2002); *see also*, *Id.* ("Neither party, standing alone, is a particularly ideal lead plaintiff. As such, subject to the Rule 23 analysis set forth below, the Court exercises its discretion and appoints Local 1298 and Makadia as co-lead plaintiffs.  The Court finds that appointing both an institutional and an individual investor to serve as co-lead plaintiffs will ensure that all class members will adequately be represented in the prosecution of this action.  *See In re Oxford Health Plans, Inc. Secs. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y.1998)"); *In re Cable & Wireless, PLC Securities Litig.*, 217 F.R.D. 372, 376 (E.D. Va. 2003) (same).

**C.    Johnson Should Be Appointed Lead Plaintiff To Represent Long Common Stock Purchasers**

The PSLRA creates a strong presumption that the Lead Plaintiff is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. 78u-4(a)(3)(B)(iii)(I).  Once this presumption is triggered, it can only be rebutted upon "proof" that the presumptive lead plaintiff will not fairly represent the interests of the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Cavanaugh*, 306 F.3d. 726, 730 (9th Cir. 2002) ("[T]he district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit.").

Here, as explained above, Johnson has the largest financial interest in this litigation for long purchasers and has made the *prima facie* typicality and adequacy showing under Rule 23. Mr. Johnson has further demonstrated his adequacy by selecting Hagens Berman Sobol Shapiro LLP ("Hagens Berman") – counsel experienced in prosecuting securities cases and managing complex

litigation efficiently – to serve as Lead Counsel for the Class.  Hagens Berman is beholden to no other investor or investor class than that represented by Johnson.

### IV.     CONCLUSION

For the reasons stated above, James Johnson respectfully requests that the Court:  (1) appoint him as Lead Plaintiff for the class of long common stock investors; and (2) approve his selection of Hagens Berman Sobol Shapiro LLP as Lead Counsel.

Dated: October 23, 2018

Respectfully submitted,

*/s/ Reed R.Kathrein*
Reed R. Kathrein (139304)
Michael W. Stocker (179083)
Kristen McCulloch (177558)
Danielle Smith (291237)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
mikes@hbsslaw.com
kristenm@hbsslaw.com
danielles@hbsslaw.com

*Attorneys for Proposed Lead Plaintiff James Johnson*