1  Laurence D. King (SBN 206423)
   Mario M. Choi (SBN 243409)
2  **KAPLAN FOX & KILSHEIMER LLP**
   350 Sansome Street, Suite 400
3  San Francisco, CA 94104
   Telephone: 415-772-4700
4  Facsimile: 415-772-4707
   *lking@kaplanfox.com*
5  *mchoi@kaplanfox.com*

6  *Counsel for movant Tempus International Fund
   SPC and Opportunity Unique Fund Inc.*
7
   [Additional Counsel Appear on Signature Page]
8

9                    **UNITED STATES DISTRICT COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**
10                         **SAN FRANCISCO DIVISION**

11

12 | KALMAN ISAACS, individually and on behalf of all others similar situated, | Case No.: 3:18-cv-04865-EMC |
13 | Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPETING MOTIONS AND IN FURTHER SUPPORT OF TEMPUS INTERNATIONAL FUND SPC AND OPPORTUNITY UNIQUE FUND INC.'S MOTION FOR (1) CONSOLIDATION OF RELATED ACTIONS; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF THEIR CHOICE OF LEAD COUNSEL** |
14 | v. | |
15 | ELON MUSK and TESLA, INC., | |
16 | Defendants. | |

19 Judge: Edward M. Chen
   Courtroom: 5
20 Date: November 15, 2018
   Time: 1:30 p.m.

22 [Additional Captions Below]

Case No. 18-cv-04865-EMC
MPA IN OPP. TO COMPETING MOTIONS

| | |
|---|---|
| WILLIAM CHAMBERLAIN, on behalf of himself and all other similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>TESLA, INC. and ELON MUSK,<br><br>    Defendants. | Case No.:  3:18-cv-04876-EMC |
| JOHN YEAGER, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>TESLA, INC. and ELON MUSK,<br><br>    Defendants. | Case No.:  3:18-cv-04912-EMC |
| CARLOS MAIA, on behalf of himself and all other similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>TESLA, INC. and ELON MUSK,<br><br>    Defendants. | Case No.:  3:18-cv-04939-EMC |
| KEWAL DUA, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>TESLA, INC. and ELON MUSK,<br><br>    Defendants. | Case No.:  3:18-cv-04948-EMC |

| | |
|---|---|
| JOSHUA HORWITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC. and ELON R. MUSK,<br><br>Defendants. | Case No.: 3:18-cv-05258-EMC |
| ANDREW E. LEFT, Individually and on Behalf of All Other Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., and ELON R. MUSK,<br><br>Defendants. | Case No.: 3:18-cv-05463-EMC |
| ZHI XING FAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., and ELON R. MUSK,<br><br>Defendants. | Case No.: 3:18-cv-05470-EMC |
| SHAHRAM SODEIFI, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., a Delaware corporation, and ELON R. MUSK, an individual,<br><br>Defendants. | Case No.: 3:18-cv-05899-EMC |

## I. PRELIMINARY STATEMENT

Presently pending before this Court are seven motions for consolidation of the above-captioned actions (the "Related Actions") pursuant to Federal Rule of Civil Procedure ("Rule") 42(a), and appointment of lead plaintiff and lead counsel.[1] As set forth below, related fund movants Tempus International Fund SPC ("Tempus") and Opportunity Unique Fund Inc. ("OUF"), which incurred losses of approximately $15.87 million,[2] have, by far, the "largest financial interest" in the Tesla, Inc. ("Tesla" or the "Company") securities litigation under the standards of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and otherwise satisfy Rule 23. Indeed, the combined alleged losses of all other remaining competing movants who have stated their losses total approximately $11.1 million—over $4.6 million less than Tempus and OUF's losses alone.

|   | Movant | Loss Claimed |
|---|--------|-------------|
| 1 | Tempus and OUF (ECF No. 71) | **$15,871,345** |
| 2 | Andrew E. Left, PROtecto Informatikai Szolgáltató Korlátolt Felelősségű Társaság, Thierry Boutin, Dr. Abrar Shirazi, and Vilas Capital Management, LLC (the "Left Investor Group") (ECF No. 47) | **$4,582,035** |
| 3 | Glen Littleton ("Littleton") (ECF No. 41) | **$3,518,478** |
| 4 | Bridgestone Investment Corporation Limited ("Bridgestone") (ECF No. 46) | **$2,272,864** |
| 5 | Dany David ("David") (ECF No. 80) | **$439,399** |
| 6 | James Johnson ("Johnson") (ECF No. 64) | **$333,185** |

Under the PSLRA and Ninth Circuit precedent, once a court identifies the movant with the largest financial interest in the relief sought by the class that satisfies the adequacy and typicality requirements of Rule 23, that movant is presumptively the "most adequate plaintiff" and should be appointed lead plaintiff. *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the

---

[1] There appears to be no opposition to consolidation of the Related Actions. Therefore, no further arguments on this issue will be made in this memorandum of points and authorities. On October 22, 2018, movants Donald Freeland, Alvin Abrams, Christopher Lyman, and Rajinder Gaur withdrew their motion. *See* ECF No. 102. Also on October 22, 2018, movants Jiri Kulik, Jason Han, Esmaeil Riahi, Deepak Mehta, and Raghunath Nama filed a Notice of Non-Opposition that stated "Movant Tempus International Fund SPC and Opportunity Unique Fund, Inc., two institutional investors, have asserted the largest financial interest in this litigation and are, therefore, the presumptive lead plaintiff. . . ." *See* ECF No. 104.

[2] Tempus and OUF's losses are based on their transactions for the longest possible class period, as set forth in their certifications. *See* Decl. of Laurence D. King in Supp. of Tempus and OUF's Mot. to (1) Consol. the Related Actions; (2) Appt. Tempus and OUF as Lead Pltf; and (3) Appr. Tempus and OUF's Choice of Lead Counsel, dated October 9, 2018 ("10/9/18 King Decl."), Exs. B, C [ECF Nos. 71-3, 71-4].

1  plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status. . ."); 15 U.S.C. § 78u-4(a)(3)(B). In this case, Tempus and OUF have by far the largest financial interest of any movant and therefore is the presumptive lead plaintiff. The presumption that Tempus and OUF is the "most adequate plaintiff" can only be rebutted "upon proof" that Tempus and OUF are inadequate or atypical. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists, nor are there any grounds to challenge Tempus and OUF's typicality and adequacy. Because Tempus and OUF are the "most adequate plaintiff," the Court should grant Tempus and OUF's motion and deny all competing motions.

## II.  ARGUMENT

The PSLRA sets forth a three-step process to select the lead plaintiff. *Cavanaugh*, 306 F.3d at 729; *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 16-cv-3435, 2016 WL 5930844, at *2 (N.D. Cal. Oct. 11, 2016). In the first step, the plaintiff who filed the first PSLRA action must "publiciz[e] the pendency of the action, the claims made and the purported class period." *Cavanaugh*, 306 F.3d at 729; 15 U.S.C. § 78u-4(a)(3)(A)(i). For the Related Actions, it is undisputed that the first step has been satisfied. *See, e.g.*, 10/9/18 King Decl., Ex. A [ECF No. 71-2].

The second step requires the Court to identify the presumptive lead plaintiff. *Cavanaugh*, 306 F.3d at 729-30; 15 U.S.C. § 78u-4(a)(3)(B)(i). This requires the Court to compare the potential lead plaintiffs' financial stakes by calculating each one's financial interest in the litigation using "accounting methods that are both rational and consistently applied." *Cavanaugh*, 306 F.3d at 730 n.4. The Court then focuses solely on the plaintiff with "the most to gain from the lawsuit" and "determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* Once the Court identifies the person with the largest financial interest in the relief sought by the class that satisfies the adequacy and typicality requirements of Rule 23, that movant is the presumptively most adequate plaintiff. *Id.* at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status . . ."); *Mulligan v. Impax Labs.*, No.

C-13-1037 EMC, 2013 U.S. Dist. LEXIS 93119, at *11 (N.D. Cal. July 2, 2013) ("[t]he potential plaintiff with the greatest financial interest is presumptively the most adequate plaintiff.") (Chen, J.).

At the third step, the most adequate plaintiff presumption can only be overcome by proof that "the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Ferrari v. Impath, Inc.*, No. 03-cv-5667, 2004 WL 1637053, at *6 (S.D.N.Y. July 20, 2004) (finding "innuendo and inferences" to be insufficient to rebut the presumption of most adequate plaintiff). The PSLRA limits rebuttal evidence to proof that shows the presumptively lead plaintiff "[1] will not fairly and adequately protect the interests of the class; or [2] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

The PSLRA gives the appointed lead plaintiff the right to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "Although this power is subject to court approval and is therefore not absolute, it plainly belongs to the lead plaintiff." *Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 709 (9th Cir. 2009). "[T]he district court has no authority to select for the class what it considers to be the best possible lawyer[.]" *Cavanaugh*, 306 F.3d at 732.

### A. Tempus and OUF are the "Most Adequate Plaintiff" and Should Be Named Lead Plaintiff

#### 1. Tempus and OUF Have the Largest Financial Interest in the Relief Sought by the Class

In determining which movant should be appointed lead plaintiff, courts "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 730. While the PSLRA does not specify how to calculate financial interests, the Court must select a method that is "both rational and consistently applied." *Id.* at 730, n.4. The methods used primarily fall into two categories: (1) equating largest financial interest with greatest economic losses suffered or (2) equating largest financial interest with greatest potential recovery. *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813, at *11-12 (N.D. Cal. Feb. 15, 2011). In the instant case, six of the seven remaining movants,

including Tempus and OUF, have relied upon "losses" as the measure of their financial interest.[3] Compared to the closest competing movant, Tempus and OUF suffered losses more than *three times* the size and over *$11 million* greater than the losses alleged by the closest competing movant, the Left Investor Group. Therefore, Tempus and OUF undeniably have the "largest financial interest in the relief sought by the class" by a wide margin and should be appointed Lead Plaintiff.

### 2. Tempus and OUF Have Made a Preliminary Showing of Typicality and Adequacy under Rule 23

After making the determination of which lead plaintiff movant has the largest financial interest in the litigation, a court must examine whether that movant satisfies the typicality and adequacy requirements of Rule 23. *Cavanaugh*, 306 F.3d at 730; *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, No. 07-2245, 2008 WL 3895478, at *2 (S.D. Cal. May 22, 2008). "A presumptive lead plaintiff need only make a 'preliminary showing' of typicality and adequacy." *Ferrari v. Gisch*, 225 F.R.D. 599, 606 (C.D. Cal. 2004). Tempus and OUF, which have the largest financial interest in the litigation, also satisfy the typicality and adequacy requirements of Rule 23.

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether the class members have been injured by the same course of conduct." *Backe v. Novatel Wireless, Inc.*, No. 08-CV-01689-H (RBB), 2008 U.S. Dist. LEXIS 100622, at *10-11 (S.D. Cal. Dec. 10, 2008) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)); *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204, 2009 WL 2151838, at *3 (D. Ariz. July 17, 2009) (typicality requires "that the unnamed class members have injuries similar to those of named plaintiffs and that the injuries result from the same, injurious course of conduct") (citing *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001)). The typicality standard is satisfied if the representative's claims are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Backe*, 2008 U.S. Dist. LEXIS 100622, at *10 (citing *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)).

---

[3] The only movant that did not claim "losses" under either a LIFO or FIFO methodology as the appropriate measure of their financial interest is First New York, which provided no methodology for measuring their financial interest in their motion papers.

1    Here, the claims of Tempus and OUF, like the other members of the class, whether short
2 sellers that made cover purchases, long purchasers of Tesla shares, or options purchasers, arise from
3 the same conduct, *i.e.*, Defendant Musk's allegedly false and misleading representations that funding
4 was secured for a go-private transaction, which artificially inflated or otherwise manipulated the
5 price of Tesla common stock and other Tesla securities, thereby damaging such investors of the
6 putative class in violation of Section 10(b) and 20(a) of the Securities Exchange Act of 1934, 15
7 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

8    Moreover, Tempus and OUF, like all other investors that acquired Tesla securities, relied on
9 the integrity of the market price when they made their purchases of Tesla securities following the
10 publication of Defendant Musk's false and misleading statements. Indeed, this District and courts
11 across the country have found that investors in short positions, such as Tempus and OUF, are like
12 all other investors that rely on the integrity of the market price when they make purchases of stock.
13 *See, e.g.*, *In re Magma Design Automation Secs. Litig.*, No. C 05-2394 CRB, 2007 U.S. Dist. LEXIS
14 62641, at *7 (N.D. Cal. Aug. 16, 2007) (Breyer, J.) (certifying class that included short sellers and
15 finding that any difference that exists in terms of actual reliance, or the damages they suffer, does
16 not render class certification improper and can be addressed during subsequent phases of the trial);
17 *Scheicher v. Wendt*, 618 F.3d 679, 684 (7th Cir. 2010) (Easterbrook, J.) (stating that short sellers
18 rely on the market, just like long investors: "[a] person buys stock (goes long) because he thinks the
19 current price too low and expects it to rise; a person sells short (sells today and promises to cover in
20 the market and deliver the shares in the future) because he thinks the price too high and expects it to
21 fall. These positions are mirror images. If a long can participate in a class, so can a short. Both the
22 long and the short are affected by news that influences the price they pay or receive."); *In re Cooper
23 Cos. Sec. Litig.*, 254 F.R.D. 628, 641 (C.D. Cal. 2009) (rejecting argument that short sellers were not
24 entitled to the fraud on the market presumption at the class certification stage); *Syntax-Brillian*, 2009
25 WL 2151838, at *6 (stating that "[s]hort-sellers and market makers depend on the market to provide
26 accurate information regarding a company" and "are entitled to a presumption of reliance based on
27 the 'fraud-on-the-market' theory.");[4] *Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 949 (N.D.
28

---

[4] *See also* Decl. of Professor Steven P. Feinstein, Ph.D., CFA, dated April 9, 2009, filed in *Syntax-*

Ill. 2007); *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 108-09 (S.D.N.Y. 2004) ("The fact that [short sellers and other traders] have divergent motivations in purchasing shares should not defeat the fraud-on-the-market presumption absent convincing proof that price played *no* part whatsoever in their decision making."). Therefore, Tempus and OUF's claims are typical of the claims of the other members of the Class. Like all other Class members, Tempus and OUF purchased Tesla securities during the Class Period in reliance on the market price of Tesla securities, and suffered damages as a result of the artificial inflation of Tesla's common stock. In this District and others, courts have found that the purchasers of options, like movant Littleton or movant David, who have losses that are a small fraction of Tempus and OUF, are niche plaintiffs that can be represented by the purchasers of common stock.[5]

A presumptive lead plaintiff meets the adequacy requirements of Rule 23 when the presumptive lead plaintiff's "interests are not antagonistic to the interests of absent class members, it is unlikely that the action is collusive, and counsel for the class is qualified and competent." *Ruland v. InfoSonics Corp*, No. 06cv1231 BTM(WMc), 2006 U.S. Dist. LEXIS 79144, at *17 (S.D. Cal. Oct. 23, 2006) (citing *In re N.D. Cal., Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982)). Tempus and OUF's interests are clearly aligned with the members of the proposed class, and there is no evidence of any antagonism between their interests and the class members, nor is there a showing of any collusive action. As detailed above, Tempus and OUF share identical questions of law and fact with the members of the class, and their claims are typical of the members of the class. Additionally, Tempus and OUF are not subject to any unique defenses.

In examining adequacy, courts have also looked to whether the presumptive lead plaintiff

---

*Brillian Corp.*, 2009 WL 1504940 (D. Ariz.) (explaining short-sellers rely on the integrity of the market and market prices).

[5] Although, Tempus and OUF did not purchase options, the case law is clear that options purchasers can be represented by common stock purchasers. *Aaronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1150-51 (N.D. Cal. 1999) (rejecting arguments of the niche plaintiffs, including a movant seeking to represent a separate class of options purchasers, that the presumptively most adequate plaintiff would not fairly and adequately protect their interests); *see also Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, No. 14-cv-8495, 2015 U.S. Dist. LEXIS 38635, at *14-16 (S.D.N.Y. Mar. 19, 2015) (rejecting argument that a lead plaintiff must have standing to assert every claim for every possible security and noting that the lead plaintiff can designate named plaintiffs or class representatives at the class certification stage).

1  indicated a willingness to serve as a representative of the class. *See Backe*, 2008 U.S. Dist. LEXIS
2  100622, at *12. Here, Tempus and OUF have demonstrated their adequacy and willingness to serve
3  as, and assume the responsibilities of, lead plaintiff. *See* 10/9/18 King Decl., Exs. B-C [ECF Nos.
4  71-3; 71-4]. Further, the court in *Backe* stated that it was "of note" to the adequacy determination
5  that the presumptive lead plaintiff was "the sort of lead plaintiff envisioned by Congress in the
6  enactment of the PSLRA—a sophisticated institutional investor with a real financial interest in the
7  litigation." *Id.*, 2008 U.S. Dist. LEXIS 100622, at *12. Likewise, Tempus and OUF are sophisticated
8  institutional investors with real financial interest in the litigation, and therefore are adequate
9  representatives of the Class. Moreover, Tempus and OUF have chosen qualified and competent
10 counsel, Kaplan Fox, to represent the class. *See* 10/9/18 King Decl., Ex. E [ECF No. 71-6].
11 Therefore, Tempus and OUF have met the adequacy requirements of Rule 23.

12 Tempus and OUF anticipate that other movants may argue that Tempus and OUF are not
13 adequate or typical because they only engaged in cover purchases of Tesla common stock, and that
14 class members who were long Tesla common stockholders or engaged in options transactions require
15 separate representation. *See, e.g.*, Decl. of James M. Wagstaffe in Supp. of Mot. of the Tesla Investor
16 Grp for Consol., Appt. as Lead Pltf. and Appr. of Selection of Counsel, dated Oct. 9, 2018, Ex. 4
17 ("Joint Declaration") [ECF No. 51-4] (stating that as "a small group of sophisticated investors,
18 covering long, short, equity, and options positions"). The vast majority of courts have refused to
19 appoint "niche" lead plaintiffs, arguing that such a practice defeats the PSLRA's goal of minimizing
20 lawyer-driven litigation. *See McKesson*, 79 F. Supp. 2d at 1150-51 (rejecting "niche" plaintiffs
21 because "speculations about possible conflicts do not rebut the statutory presumption that one lead
22 plaintiff can vigorously pursue <u>all</u> available causes of action against <u>all</u> possible defendants under
23 <u>all</u> available legal theories." (emphasis in original)); *In re Advanced Tissue Scis. Secs. Litig.*, 184
24 F.R.D. 346, 350 (S.D. Cal. 1998) ("Although either of the competing groups could qualify as lead
25 plaintiff in the absence of the other, where two or more parties are competing for appointment as
26 lead plaintiff, the mandate of the PSLRA is unambiguous. All else equal, the PSLRA requires that a
27 court appoint as lead plaintiff the 'person or group of persons that . . . in the determination of the
28 court, has the *largest* financial interest in the relief sought by the class." (emphasis in original)).

Because Tempus and OUF have the largest financial interest in this litigation, and otherwise meet the typicality and adequacy requirements of Rule 23, Tempus and OUF should be appointed lead plaintiff.

### 3. All Competing Movants Should Be Denied Because They Have Significantly Smaller Financial Interests than Tempus and OUF, and there is Proof of Inadequacy or Atypicality for Certain Competing Movants

As set forth in the chart above, none of the competing movants, either individually or as a group, have a larger financial interest in this litigation than Tempus and OUF. The Court should deny all competing motions for this reason alone. Further, certain of the movants suffer from disqualifying conflicts of interest or are otherwise not adequate to represent the Class.

#### a. The Left Group is Inadequate Because Two of Its Members Have Engaged in Fraudulent and Deceitful Conduct

The Left Investor Group is subject to a number of unique defenses that render the group inadequate. Notably, Andrew Left – to whom the group has delegated ultimate decision-making authority in its Joint Declaration [ECF No. 51-4] – has a checkered past, including being banned by the National Futures Association ("NFA") for providing "false and misleading statements to cheat, defraud or deceive a customer" in violation NFA compliance rules. *See* Decl. of Laurence D. King in Supp. of Tempus and OUF's Opp. to Competing Mots. and in Further Supp. of Their Mot. for (1) Consol. of Related Actions; (2) Appt. as Lead Pltf.; and (3) Appr. of Their Choice of Lead Counsel, dated October 23, 2018 ("10/23/18 King Decl."), Ex. A, at A-1, A-5, A-12-13, A-15, A-20. Additionally, Thierry Boutin was fined €1.2 million in February 2008 and fined €500,000 in June 2008 by the Autorité des Marchés Financiers (French financial markets regulator) for insider trading. *Id.*, Ex. B, at B-1, B-2-5, B-3-8; *id.*, Ex. C, at C-1-22, C-2-10. Accordingly, given the proof that two members of the Left Investor Group have engaged in fraudulent and deceitful conduct in the past, the Left Investor Group is inadequate to represent the Class.

#### b. Counsel for the Left Investor Group and Dany David Suffer from Disqualifying Conflicts of Interest and Are Subject to Disqualification

In separate litigation involving shareholder derivative claims on behalf of Defendant Tesla and its shareholders, Labaton Sucharow LLP ("Labaton") (which seeks appointment as lead counsel

1  on behalf of the Left Investor Group), and Robbins Geller Rudman & Dowd LLP ("Robbins Geller")
2  (which seeks appointment as lead counsel on behalf of Dany David), currently represent, or recently
3  represented, Defendant Tesla and its shareholders in a derivative action that alleges claims on behalf
4  of the Company against the Tesla board of directors. *See In re Tesla Motors, Inc. Stockholder Litig.*,
5  C.A. No. 12711-VCS (Del. Ch.) ("Tesla Derivative Action"). On October 10, 2016, Robbins Geller
6  was named co-lead counsel for plaintiffs, and two of Labaton's clients were named co-lead plaintiffs.
7  10/23/18 King Decl., Ex. D. Both the Labaton and Robbins Geller firms were identified as counsel
8  in the Second Amended Verified Class Action and Derivative Complaint ("Amended Complaint"),
9  filed on March 16, 2017. *Id.*, Ex. E. Notably, the public version of Amended Complaint indicates
10 the Labaton and Robbins Geller firms were in possession of confidential information that was
11 redacted from the public version. *Id.*; *see also In re Tesla Motors, Inc. Stockholder Litig.* C.A. No.
12 12711-VCS, 2018 WL 1560293 (Del. Ch. Mar. 18, 2018) (denying motion to dismiss and citing
13 redacted complaint and documents produced by Tesla). The Labaton firm filed *Left v. Tesla, Inc.*,
14 No. 18-cv-5463-EMC—one of the Related Actions—on September 6, 2018, approximately one
15 month before the Labaton firm sought to withdraw from the Tesla Derivative Action on October 5,
16 2018. *See* 10/23/18 King Decl., Ex. F.

17 While currently representing, or recently representing, Tesla in the Tesla Derivative Action,
18 the Labaton and Robbins Geller firms now seek to represent the proposed class in the instant
19 litigation that is adverse to Defendant Tesla. Under California law, both firms are subject to
20 disqualification at class certification by Tesla, and therefore, cannot be appointed lead counsel.

21 Under California law, lawyers cannot represent two clients that are adverse to each other,
22 even where the adversity arises in two unrelated matters. *Fujitsu Ltd. v. Belkin Int'l, Inc.*, No. 10-
23 CV-03972-LHK, 2010 U.S. Dist. LEXIS 138407, at *13-14 (N.D. Cal. Dec. 22, 2010) (Koh, J.).
24 Unless a lawyer fully discloses the conflict and obtains a waiver in writing, the lawyer is prohibited
25 from simultaneous representations. *Id.* (citing Cal. R. Prof. Conduct, R. 3-310(C)(3): "A member
26 shall not, without informed written consent of each client[, r]epresent a client in a matter and at the
27 same time in a separate matter accept as a client a person or entity whose interest in the first matter
28 is adverse to the client in the first matter."); *TransPerfect Glob., Inc. v. MotionPoint Corp.*, No. C-

1  10-02590 CW (JCS), 2012 U.S. Dist. LEXIS 85649, at *19 (N.D. Cal. June 20, 2012) (Spero, J.). The rule of disqualification is a *per se* or automatic one, and cannot be cured by discontinuing its representation of the first client. *Id.* (citing *Truck Ins. Exch. v. Fireman's Fund Ins. Co.,* 6 Cal. App. 4th 1050, 1057 (1992) (stating "law firm that knowingly undertakes adverse concurrent representation may not avoid disqualification by withdrawing from the representation of the less favored client.")). There is no evidence that either firm received a written waiver. In light of this conflict of interest, neither the Robbins Geller nor Labaton firms are adequate because the appointment of either firm would distract from prosecution of the claims on behalf of the class, and waste time and resources on satellite litigation concerning this disqualifying conflict of interest.

### B. This Court Should Approve Tempus and OUF's Choice of Lead Counsel

Pursuant to the PSLRA, the party selected to serve as lead plaintiff "shall, subject to approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also Impax Labs.,* 2013 U.S. Dist. LEXIS 93119, at *31 ("While the PSLRA requires the court to confirm the plaintiff's choice of counsel, it clearly leaves the choice of counsel in the hands of the lead plaintiff." (quoting *Cavanaugh*, 306 F.3d at 734)). Tempus and OUF have retained Kaplan Fox to serve as Lead Counsel for the class. Kaplan Fox is highly experienced in prosecuting securities class actions, is well qualified to represent the class and has an impeccable record. *See* 10/9/18 King Decl., Ex. E (Kaplan Fox Firm Resume) [ECF No. 71-6]. Accordingly, Tempus and OUF respectfully move for Kaplan Fox to be appointed lead counsel.

### III.  CONCLUSION

For the above reasons, Tempus and OUF respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint Tempus and OUF as Lead Plaintiff; (3) approve Tempus and OUF's selection of Kaplan Fox as Lead Counsel; and (4) deny all other competing motions.

DATED:  October 23, 2018                Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

By:  /s/ *Laurence D. King*
      Laurence D. King

Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  415-772-4700
Facsimile:   415-772-4707
*lking@kaplanfox.com*
*mchoi@kaplanfox.com*

Frederic S. Fox (*pro hac vice*)
Joel B. Strauss (*pro hac vice* to be filed)
Donald R. Hall (*pro hac vice* to be filed)
Jeffrey P. Campisi (*pro hac vice* to be filed)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
New York, NY 10022
Telephone:  212-687-1980
Facsimile:   212-687-7714
*ffox@kaplanfox.com*
*jstrauss@kaplanfox.com*
*dhall@kaplanfox.com*
*jcampisi@kaplanfox.com*

*Counsel for Movant Tempus International Fund SPC and Opportunity Unique Fund Inc.*