# EXHIBIT B

EXHIBIT B-1






# AMF: Enforcement Committee Decision Concerning Thierry Boutin

Date 26/02/2008 (26/02/2008)

In a decision dated 6 December 2007, the AMF Enforcement Committee imposed a fine of €1.2 million on Thierry Boutin.

The decision illustrates a typical case of insider market abuse. The Committee recalled that "a person holding inside information is under an absolute obligation to refrain from trading. Accordingly, market abuse is characterised simply by establishing a connection between the time at which information is held and the time at which it is used, unless the person who is the subject of the complaint can prove that he or she had a compelling reason for making the transaction [...]". That was not the situation in this case.

Further, the Committee judged that these actions had been compounded by another infringement committed simultaneously, namely the sale of a significant number of shares before a sharp fall in price. Mr Boutin had sold the shares short while he was an "insider", thereby infringing the rights of investors while compromising the orderly operation and integrity of the market.

The Committee found that such behaviour was "particularly serious" and warranted an "exemplary penalty".

An appeal may be lodged against this decision in accordance with Articles R. 621-44 to R. 621-46 of the Monetary and Financial Code.



EXHIBIT B-2

February 27, 2008    BULLETIN OF COMPULSORY LEGAL ANNOUNCEMENTS    Bulletin n ° 25

Official Bulletin of the AMF

_____

Decisions of the Sanctions Committee

_____

# DECISION OF THE COMMITTEE ON SANCTIONS AGAINST MR THIERRY BOUTIN

The 2nd section of the Sanctions Commission of the Autorité des marchés financiers (" *AMF* ");

Considering the Monetary and Financial Code, in particular its articles L. 621-14 and L. 621-15 as well as its articles R. 621-7, R. 621-38 to R. 621-40;

Having regard to Articles 517-2, 621-1, 622-1 and 622-2 of the General Regulations of the AMF, applicable at the material time, Article 517-2 having been taken over in substance by Articles 560- 1 and 560-2 new General Regulations;

Considering the notice of grievances dated January 9, 2007 addressed to Mr. Thierry BOUTIN;

Having regard to the decision of the President of the Sanctions Committee of 18 April 2007 designating Mr Antoine COURTEAULT, Member of the Sanctions Committee, as Rapporteur;

Having regard to the written observations submitted by Mr. Thierry VALLAT for Mr. Thierry BOUTIN, received at the AMF on September 7th;

Having regard to the report of Mr Antoine COURTEAULT dated 28 September 2007;

Having regard to the letter convening a meeting of the Sanctions Committee of 15 November 2007, to which was appended the report signed by the Rapporteur, sent on 1 October 2007 to Mr Thierry BOUTIN;

Having regard to the written observations in reply to the Rapporteur's report, presented by Maître VALLAT for Mr Thierry BOUTIN, received at the AMF on 24 October 2007;

Having regard to the letter dated 27th November 2007 addressed to Mr Thierry BOUTIN stating that, in accordance with his request, the meeting planned for 15th November 2007 has been postponed and then fixed for 6th December 2007;

Considering the other parts of the file;

After having heard during the sitting of December 6, 2007,

- Mr Antoine COURTEAULT in his report;

- Mr Nicolas NAMIAS, Government Commissioner, who indicated that he has no comments to make;

- Mr Thierry BOUTIN, assisted by his counsel, Mr Thierry VALLAT;

the defendant who spoke last.

# I. FACTS AND PROCEDURE

## A. Facts

The CYBERDECK company, created in 1998 and whose activity is the design, manufacture and sale of computer terminals, was introduced at the Euronext Paris Nouveau Marché in June 2000; it is currently listed on compartment C of the Eurolist Market of Euronext Paris.

Faced with the growing worsening of the company's losses during the 2004 and 2005 financial years, its managers decided, in the second half of 2005, to carry out a capital increase in order to raise between € 1 and 1.5 million. This operation was prepared during the summer of 2005 and was made public on October 13, 2005, through a press release. The plan to reserve the capital increase to the company CASALVA GERMANY GmbH, at the time headed by Mr. Thierry BOUTIN, who was the sole shareholder, was approved by the extraordinary general meeting of the company CYBERDECK on 21 November 2005 and was the subject of a prospectus approved by the AMF on November 23. As of December 2005, this company has been able to recapitalize for € 1.5 million.

## B. Procedure

During the preparatory phase of the project and until the suspension of the share price on 14 October 2005, the Market Surveillance Service noted unusual movements in the CYBERDECK shares, which led the Secretary General of the AMF to take the decision, on February 28, 2006, to open a market investigation for this share as of September 1, 2005.

In view of the findings of the investigation report and the decision of the Special Commission No 2 of 12 December 2006, the President of the AMF, by registered letter with acknowledgment of receipt of 9 January 2007, notified the complaints accused of Mr Thierry BOUTIN for facts likely to constitute a breach of Articles 517-2, 622-1, 622-1 and 622-2 of the General Regulations of the AMF and on the basis of Articles L. 621-14 and L. 621-15 of the Monetary and Financial Code.

In essence, he is reproached to the latter:

1. Between October 4 and 13, 2005, sold 1,143,447 CYBERDECK shares on behalf of CASALVA GERMANY GmbH, of which he was the manager and sole partner, while in possession of privileged information, relating to the preparation of a capital increase reserved for this company and to be carried out at a price more than two and a half times lower than the stock market price of the moment, these sales having allowed to realize a capital gain of 375 € 161;

2. having, in violation of Article 517-2 of the AMF General Regulation, carried out these short sales, the delivery being possible only on 17 October 2005, whereas the CYBERDECK shares were not not eligible for the Deferred Settlement Service.

In accordance with Article R. 621-38 of the Monetary and Financial Code, a copy of the statement of objections was sent on 9 January 2007 to the Chairman of the Sanctions Committee, who appointed Mr Antoine COURTEAULT as Rapporteur by decision of April 18, 2007.

Mr Thierry BOUTIN was informed by a registered letter with acknowledgment of receipt of 25 April 2007 informing him of his ability to be heard, at his request, in accordance with Article R. 621-39 I of the Monetary and Financial Code.

By fax and letter dated September 6, 2007, received respectively on September 7 and 10, 2007, Mr. Thierry VALLAT sent comments on behalf of Mr. Thierry BOUTIN, in response to the notice of grievance received on January 25, 2007.

Mr Antoine COURTEAULT submitted his report on 28 September 2007;

Mr Thierry BOUTIN was summoned by a registered letter with acknowledgment of receipt dated 1 October 2007 to a meeting of the Sanctions Committee of 15 November 2007, to which the report signed by the Rapporteur was annexed.

On behalf of Thierry BOUTIN, Maître Thierry VALLAT sent comments in response to the Rapporteur's report, received at the AMF on 24 October 2007.

The meeting of November 15, 2007 having been canceled at the request of Mr. Thierry BOUTIN because of the transport strikes, its postponement to the date of December 6, 2007 was brought to his attention by registered letter with acknowledgment of receipt on November 27, 2007.

## II. REASONS FOR DECISION

### A. Insider breach

Considering that it is criticized Thierry BOUTIN, on the basis of articles 621-1, 622-1 and 622-2 of the General Regulations of the AMF, to have, between October 4 and 13, 2005 and for the account of CASALVA GERMANY GmbH, of which he was the manager and the sole shareholder, sold 1,143,447 CYBERDECK shares despite the knowledge of privileged information relating to the existence of a plan to increase the share capital of the latter company;

Considering that it follows from the article 622-1 of the General Regulations of the AMF, in its version prior to the decree of December 30, 2005, which remains applicable to the facts of the case, that " *any person mentioned in the 622-2 shall refrain from using the inside information it holds by acquiring or assigning, for its own account or on behalf of others, either directly or indirectly, the financial instruments to which that information relates information or the financial instruments to which these instruments are linked (...) "* ; that section 622-2 of the General By-law, which determines the persons to whom this absolute forbearance obligation applies, includes " *any person who holds privileged information because of (...) his access to information as a result of his work, his profession or his functions, as well as his participation in the preparation and execution of a financial operation* "; that privileged information, within the meaning of section 621-1 of the General Regulations, means " *specific information that has not been made public"* and "*that, if made public, would be likely to have a significant impact on the course* » Of the title;

Considering that it is established that Mr Thierry BOUTIN was informed of the existence and main characteristics of the proposed capital increase, since it was to be reserved for CASALVA GERMANY GmbH which he was managing and of which he was the single partner; that between 4 and 13 October 2005, at the time of the disputed assignments, this information was both unknown to the public and precise; that indeed, there was an agreement, at least verbal, between the companies CYBERDECK and CASALVA GERMANY GmbH, the principle and the amount of a capital increase of at least 1 M € reserved for the latter, which was the only investor proposed, as well as the subscription price set, at the request of Thierry BOUTIN, at only € 0.20; that these terms and conditions were necessarily terminated before October 4, 2005, at which time they were approved by the CYBERDECK Board of Directors; that the investment had to be preceded by a contribution in the current account of the company CASALVA GERMANY GmbH already intervened, so that the probability that it was realized was very strong;

Considering that this type of information, relating to a large transaction on the capital of an issuer, is likely to have a significant influence on the price of its share; whereas, moreover, at the resumption of listing on October 24, 2005, the CYBERDECK share recorded a decline of more than 19%; As a result, the information in

possession of Mr. Thierry BOUTIN was, in all its elements, " *privileged* " within the meaning of Article 621-1 of the General Regulations of the AMF;

Considering that the obligation of forbearance for the holder of privileged information is absolute; that, therefore, the breach is characterized by the simple chronological reconciliation between the holding of the information and its exploitation, except, for the person implicated, to prove that the operation was justified by an imperative motive; that, if the sale by Thierry BOUTIN, on behalf of CASALVA GERMANY GmbH, of 1,143,447 CYBERDECK shares between October 4 and October 13, 2005 is not disputed, it is limited to invoking the need to obtain funds to subscribe to the CYBERDECK capital increase; such an argument is indicative of the total lack of justification for the mis en cause's behavior;

Considering that all the constituent elements of the insider breach are thus gathered, the disposals made on the initiative of Mr Thierry BOUTIN on behalf of CASALVA GERMANY GmbH between 4 and 13 October 2005 having unduly favored, not only the latter company, which was able to achieve a capital gain of € 375,161, but also, indirectly, Mr. Thierry BOUTIN, who was the sole shareholder;

## B. On short sales

Considering that it is also criticized Thierry BOUTIN, on the basis of Article 517-2 of the General Regulations of the AMF, to have sold the securities CYBERDECK on behalf of the company CASALVA GERMANY GmbH uncovered while, in the words of the Notice of Grievance, these actions were " *not eligible for the Deferred Settlement Service"* ;

Considering that it follows from the provisions of this Article, taken over in substance by the new Articles 560-1 and 560-2 of the General Regulations, which do not contain any softer measures that may be applicable in this case, than " *on a market in in cash, the buyer is liable for the funds, the seller of the securities, upon execution of the order* ";

Considering that on October 4, 2005, Mr. Thierry BOUTIN has placed an order of sale on 690,433 CYBERDECK securities; that it was not until 17 October 2005, ie thirteen days later, that these shares were credited to the account of CASALVA GERMANY GmbH and on 18 October 2005 that the sales transactions could be regularized vis-à-vis the market ; that between October 11th and 13th, 2005, Mr. Thierry BOUTIN then passed three orders of sale relating to 453,014 titles CYBERDECK; it is established that the processing date for these orders has been changed manually to be postponed to October 18, 2005, which is five to seven days after the date on which they occurred; it is not disputed that these actions were not eligible for the Deferred Settlement Service;

Whereas, therefore, it is established that Mr Thierry BOUTIN, acting on behalf of CASALVA GERMANY GmbH, sold 1,143,447 CYBERDECK shares which he was not able to deliver immediately, in violation of Article 517-2 of the AMF General Regulations;

## III. SANCTIONS

Considering that it results from the c) of the II of the article L. 621-15 of the Code monetary and financial, in its drafting resulting from the law n ° 2005-842 of July 26, 2005 applicable in this case, that the Commission sanctions may impose a sanction against " *any person who, on the French territory or abroad, indulged or attempted to engage in insider trading or engaged in manipulation disclosure of false information or any other*

breach mentioned in the first paragraph of I of Article L. 621-14, where such acts concern a financial instrument issued by a person or entity using public savings (...) "; that the first paragraph of I of Article L. 621-14, in its version resulting from the same law, mentions " *breaches of obligations resulting from laws and regulations or professional rules designed to protect investors against trading operations". insiders, price manipulation and the dissemination of false information* " and " *any other failure likely to affect the protection of investors or the proper functioning of the market* "; that the behavior of Mr Thierry BOUTIN having consisted, while he was in possession of information privileged, to make sell by the company CASALVA GERMANY GmbH a very large number of actions before these do not fall of significantly, has infringed the rights of investors while compromising the proper functioning and integrity of the market, so that it has a particular gravity calling for exemplary punishment;

Considering that it follows from Article L. 621-15 of the Monetary and Financial Code, in its wording from the same law, that can be pronounced against any author of facts referred to in c) and d) of II of Article L. 621-15 of the said Code, a financial penalty of not more than € 1,500,000 or ten times the amount of any profits made; that it is not disputed that the deficiencies attributable to Mr Thierry BOUTIN have indirectly benefited him personally, since they allowed a company of which he was and of which he is still the sole shareholder to realize a capital gain of € 375,161;

Considering that the mis en cause indicated in the meeting that in the company CASALVA GERMANY GmbH, in amicable liquidation, whose assets amounted to at least 12 M € at the end of the year 2005 and whose current debts do not exceed not € 7.5 million, its current account was creditor of € 7 million; that he did not speak about the other property in his possession; that he is currently engaged in a business consultancy business in Switzerland; thus, he has not only an important heritage, but also resources, the amount of which he has not indicated;

Considering that, consequently, the penalty will be fixed at one million two hundred thousand euros;

Considering that Article L. 621-15 V of the Monetary and Financial Code provides that " *the Sanctions Committee may make its decision public in the publications, newspapers or media it designates, unless such publication may cause serious disruption financial markets or cause disproportionate harm to the parties involved. The costs are borne by the sanctioned persons* " ; that by these provisions, the legislator intended to highlight the requirements of general interest relating to market fairness, transparency of operations and the protection of savers who base the power of sanction of the Commission, and take into account the interest which is attached to the legal certainty of all operators that they may, by having access to the decisions rendered, better apprehend the content of the rules they must observe; that, in this case, the publication of the decision does not appear likely to lead, in view of these requirements, disproportionate consequences for Mr. Thierry BOUTIN, it will be ordered;

**FOR THESE REASONS,**

**And after having deliberated under the presidency of Mrs. Claude NOCQUET, by MM. Alain FERRI, Jean-Pierre MORIN and Jean-Jacques SURZUR, Members of the 2nd section of the Sanctions Committee, in the presence of the Secretary of the meeting,**

**DECIDE TO :**

- to impose a penalty of € 1,200,000 (one million two hundred thousand euros) on Mr. Thierry BOUTIN;

- publish this decision in the " *Bulletin des annonces légales obligatoires* ", as well as on the website and in the AMF review.

In Paris, on December 6, 2007,

The Secretary of the meeting,                              The president,
Marc-Pierre JANICOT                                      Claude NOCQUET

**This decision may be appealed under the conditions set out in Articles R. 621-44 to R. 621-46 of the French Monetary and Financial Code.**

*0801971*

EXHIBIT B-3

27 février 2008 　　BULLETIN DES ANNONCES LEGALES OBLIGATOIRES 　　Bulletin n°25

Bulletin officiel de l'AMF
———————————

Décisions de la Commission des sanctions
———————————

# DECISION DE LA COMMISSION DES SANCTIONS A L'EGARD DE M. THIERRY BOUTIN

La 2ème section de la Commission des sanctions de l'Autorité des marchés financiers (« *AMF* ») ;

Vu　le Code monétaire et financier, notamment ses articles L. 621-14 et L. 621-15 ainsi que ses articles R. 621-7, R. 621-38 à R. 621-40 ;

Vu　les articles 517-2, 621-1, 622-1 et 622-2 du Règlement général de l'AMF, applicables à l'époque des faits, l'article 517-2 ayant été repris en substance par les articles 560-1 et 560-2 nouveaux du Règlement général ;

Vu　la notification de griefs datée du 9 janvier 2007 adressée à M. Thierry BOUTIN ;

Vu　la décision du 18 avril 2007 du Président de la Commission des sanctions désignant M. Antoine COURTEAULT, Membre de la Commission des sanctions, en qualité de Rapporteur ;

Vu    les observations écrites présentées par Maître Thierry VALLAT pour M. Thierry BOUTIN, reçues à l'AMF le 7 septembre ;

Vu    le rapport de M. Antoine COURTEAULT en date du 28 septembre 2007 ;

Vu    la lettre de convocation à une séance de la Commission des sanctions du 15 novembre 2007, à laquelle était annexé le rapport signé du Rapporteur, adressée le 1er octobre 2007 à M. Thierry BOUTIN ;

Vu    les observations écrites en réponse au rapport du Rapporteur, présentées par Maître VALLAT pour M. Thierry BOUTIN, reçues à l'AMF le 24 octobre 2007 ;

Vu    la lettre en date du 27 novembre 2007 adressée à M. Thierry BOUTIN faisant part de ce que, conformément à sa demande, la séance prévue le 15 novembre 2007 a été renvoyée, puis a été fixée au 6 décembre 2007 ;

Vu    les autres pièces du dossier ;

Après avoir entendu au cours de la séance du 6 décembre 2007,

- M. Antoine COURTEAULT en son rapport ;

- M. Nicolas NAMIAS, Commissaire du Gouvernement, qui a indiqué ne pas avoir d'observations à formuler ;

- M. Thierry BOUTIN, assisté de son conseil, Maître Thierry VALLAT ;

la personne mise en cause ayant pris la parole en dernier.

## I.   FAITS ET PROCEDURE

## A. Faits

La société CYBERDECK, créée en 1998 et ayant pour activité la conception, la fabrication et la commercialisation de bornes informatiques, a été introduite au Nouveau Marché d'Euronext Paris en juin 2000 ; elle est aujourd'hui cotée sur le compartiment C du Marché Eurolist d'Euronext Paris.

Face à l'aggravation croissante des pertes de la société au cours des exercices 2004 et 2005, ses dirigeants ont décidé, au 2ème semestre 2005, de réaliser une augmentation de capital afin de lever entre 1 et 1,5 M €. Cette opération a été préparée au cours de l'été 2005 et a été rendue publique le 13 octobre 2005, par voie de communiqué de presse. Le projet de réserver l'augmentation de capital à la société CASALVA GERMANY GmbH, à l'époque dirigée par M. Thierry BOUTIN, qui en était l'unique actionnaire, a été approuvé par l'assemblée générale extraordinaire de la société CYBERDECK le 21 novembre 2005 et a fait l'objet d'une note d'opération visée par l'AMF le 23 novembre suivant. Elle a permis à cette société, dès le mois de décembre 2005, de se recapitaliser à hauteur de 1,5 M €.

## B. Procédure

Le Service de la Surveillance des Marchés a constaté, au cours de la phase préparatoire du projet et jusqu'à la suspension du cours du titre le 14 octobre 2005, des mouvements inhabituels sur les titres CYBERDECK, qui ont amené le Secrétaire général de l'AMF à prendre la décision, le 28 février 2006, d'ouvrir une enquête sur le marché de cette action à compter du 1er septembre 2005.

Au vu des conclusions du rapport d'enquête et sur décision de la Commission spécialisée n° 2 du 12 décembre 2006, le Président de l'AMF a, par lettre recommandée avec demande d'avis de réception du 9 janvier 2007, notifié les griefs reprochés à M. Thierry BOUTIN pour des faits susceptibles de constituer un manquement aux articles 517-2, 621-1, 622-1 et 622-2 du Règlement général de l'AMF et sur le fondement des articles L. 621-14 et L. 621-15 du Code monétaire et financier.

En substance, il est reproché à ce dernier :

1. d'avoir, entre les 4 et 13 octobre 2005, vendu 1 143 447 actions CYBERDECK pour le compte de la société CASALVA GERMANY GmbH dont il était le dirigeant et l'unique associé, alors qu'il était en possession d'une information privilégiée, relative à la préparation d'une augmentation de capital réservée à cette société et devant être réalisée à un prix plus de deux fois et demi inférieur au cours de bourse du moment, ces ventes ayant permis de réaliser une plus-value de 375 161 € ;

2.　d'avoir, en violation de l'article 517-2 du Règlement général de l'AMF, effectué ces ventes à découvert, la livraison n'ayant pu intervenir que le 17 octobre 2005, alors que les actions CYBERDECK n'étaient pas éligibles au Service de Règlement Différé.

Conformément à l'article R. 621-38 du Code monétaire et financier, copie de la notification de griefs a été transmise le 9 janvier 2007 au Président de la Commission des sanctions, qui a désigné M. Antoine COURTEAULT en qualité de Rapporteur par décision du 18 avril 2007.

M. Thierry BOUTIN en a été informé par une lettre recommandée avec demande d'avis de réception du 25 avril 2007 l'informant de sa faculté d'être entendu, à sa demande, conformément à l'article R. 621-39 I du Code monétaire et financier.

Par télécopie et lettre datées du 6 septembre 2007, reçues respectivement les 7 et 10 septembre 2007, Maître Thierry VALLAT a fait parvenir des observations pour le compte de M. Thierry BOUTIN, en réponse à la notification de griefs reçue le 25 janvier 2007.

M. Antoine COURTEAULT a déposé son rapport le 28 septembre 2007 ;

M. Thierry BOUTIN a été convoqué par une lettre recommandée avec demande d'avis de réception en date du 1er octobre 2007 à une séance de la Commission des sanctions du 15 novembre 2007, à laquelle était annexé le rapport signé du Rapporteur.

Pour le compte de M. Thierry BOUTIN, Maître Thierry VALLAT a fait parvenir des observations en réponse au rapport du Rapporteur, reçues à l'AMF le 24 octobre 2007.

La séance du 15 novembre 2007 ayant été annulée à la demande de M. Thierry BOUTIN en raison des grèves de transport, son report à la date du 6 décembre 2007 a été porté à sa connaissance par lettre recommandée avec demande d'avis de réception le 27 novembre 2007.

## II.　MOTIFS DE LA DECISION

### A.　Sur le manquement d'initié

Considérant qu'il est reproché à M. Thierry BOUTIN, sur le fondement des articles 621-1, 622-1 et 622-2 du Règlement général de l'AMF, d'avoir, entre les 4 et 13 octobre 2005 et pour le compte de la société CASALVA GERMANY GmbH dont il était le dirigeant et l'unique actionnaire, cédé 1 143 447 actions CYBERDECK alors qu'il avait connaissance d'une information privilégiée tenant à l'existence d'un projet d'augmentation du capital de cette dernière société ;

Considérant qu'il résulte de l'article 622-1 du Règlement général de l'AMF, dans sa version antérieure à l'arrêté du 30 décembre 2005, qui reste applicable aux faits de l'espèce, que « *toute personne mentionnée à l'article 622-2 doit s'abstenir d'utiliser l'information privilégiée qu'elle détient en acquérant ou en cédant, pour son propre compte ou pour le compte d'autrui, soit directement soit indirectement, les instruments financiers auxquels se rapporte cette information ou les instruments financiers auxquels ces instruments sont liés (...)* » ; que l'article 622-2 du Règlement général, qui détermine les personnes auxquelles s'applique cette obligation absolue d'abstention, vise notamment « *toute personne qui détient une information privilégiée à raison de (...) son accès à l'information du fait de son travail, de sa profession ou de ses fonctions, ainsi que de sa participation à la préparation et à l'exécution d'une opération financière* » ; qu'une information privilégiée, au sens de l'article 621-1 du Règlement général, s'entend d'une « *information précise qui n'a pas été rendue publique* » et « *qui, si elle était rendue publique, serait susceptible d'avoir une incidence sensible sur le cours* » du titre ;

Considérant qu'il est établi que M. Thierry BOUTIN était informé de l'existence et des principales caractéristiques de l'augmentation de capital projetée, puisqu'elle devait être réservée à la société CASALVA GERMANY GmbH qu'il dirigeait et dont il était le seul associé ; qu'entre les 4 et 13 octobre 2005, au moment des cessions litigieuses, cette information était à la fois inconnue du public et précise ; qu'en effet, il existait un accord, au moins verbal, entre les sociétés CYBERDECK et CASALVA GERMANY GmbH, sur le principe et sur le montant d'une augmentation de capital d'au moins 1 M€ réservée à cette dernière, qui était le seul investisseur proposé, ainsi que sur le prix de souscription fixé, à la demande de M. Thierry BOUTIN, à 0,20 € seulement ; que ces modalités ont nécessairement été arrêtées avant le 4 octobre 2005, date à laquelle elles ont été approuvées par le conseil d'administration de CYBERDECK ; que l'investissement devait être précédé d'un apport en compte courant de la société CASALVA GERMANY GmbH déjà intervenu, de sorte que la probabilité qu'il se réalise était très forte ;

Considérant que ce type d'information, relative à une opération d'ampleur sur le capital d'un émetteur, est de nature à avoir une influence sensible sur le cours de son titre ; qu'au demeurant, à la reprise de la cotation le 24 octobre 2005, l'action CYBERDECK a enregistré une baisse de plus de 19 % ; qu'en conséquence, l'information en possession de M. Thierry BOUTIN était bien, dans tous ses éléments, « *privilégiée* » au sens de l'article 621-1 du Règlement général de l'AMF ;

Considérant que l'obligation d'abstention pesant sur le détenteur d'une information privilégiée revêt un caractère absolu ; que, dès lors, le manquement est caractérisé par le simple rapprochement chronologique entre la détention de l'information et son exploitation, sauf, pour la personne mise en cause, à rapporter la preuve que l'opération a été justifiée par un motif impérieux ; que, la cession par M. Thierry BOUTIN, pour le compte de la société CASALVA GERMANY GmbH, de 1 143 447 actions CYBERDECK entre les 4 et 13 octobre 2005 n'est pas contestée, celui-ci se borne à invoquer la nécessité d'obtenir des fonds pour pouvoir souscrire à l'augmentation de capital de CYBERDECK ; qu'une telle argumentation est révélatrice de l'absence totale de justification du comportement du mis en cause ;

Considérant que sont donc réunis tous les éléments constitutifs du manquement d'initié, les cessions opérées à l'initiative de M. Thierry BOUTIN pour le compte de CASALVA GERMANY GmbH entre le 4 et le 13 octobre 2005 ayant indûment avantagé, non seulement cette dernière société, qui a pu réaliser une plus-value d'un montant de 375 161 €, mais également, de manière indirecte, M. Thierry BOUTIN, qui en était l'unique actionnaire ;

## B.    Sur les ventes à découvert

Considérant qu'il est par ailleurs reproché à M. Thierry BOUTIN, sur le fondement de l'article 517-2 du Règlement général de l'AMF, d'avoir vendu les titres CYBERDECK pour le compte de la société CASALVA GERMANY GmbH à découvert alors que, selon les termes de la notification de griefs, ces actions n'étaient « *pas éligibles au Service de Règlement Différé* » ;

Considérant qu'il résulte des dispositions de cet article, repris en substance par les articles 560-1 et 560-2 nouveaux du Règlement général qui ne comportent aucune mesure plus douce susceptible de trouver application en l'espèce, que « *sur un marché au comptant, l'acheteur est redevable des fonds, le vendeur des titres, dès l'exécution de l'ordre* » ;

Considérant que le 4 octobre 2005, M. Thierry BOUTIN a passé un ordre de vente portant sur 690 433 titres CYBERDECK ; que ce n'est que le 17 octobre 2005, soit treize jours plus tard, que ces actions ont été créditées sur le compte de CASALVA GERMANY GmbH et le 18 octobre 2005 que les opérations de vente ont pu être régularisées vis-à-vis du marché ; qu'entre les 11 et 13 octobre 2005, M. Thierry BOUTIN a ensuite passé trois ordres de vente portant sur 453 014 titres CYBERDECK ; qu'il est établi que la date de traitement de ces ordres a été modifiée manuellement pour être reportée au 18 octobre 2005, soit entre cinq et sept jours après la date à laquelle ils sont intervenus ; qu'il n'est pas contesté que ces actions n'étaient pas éligibles au Service de Règlement Différé ;

Considérant qu'en conséquence, il est établi que M. Thierry BOUTIN, agissant pour le compte de la société CASALVA GERMANY GmbH, a vendu 1 143 447 titres CYBERDECK qu'il n'a pas été en mesure de livrer immédiatement, en violation de l'article 517-2 du Règlement général de l'AMF ;

## III.   SANCTIONS

Considérant qu'il résulte du c) du II de l'article L. 621-15 du Code monétaire et financier, dans sa rédaction issue de la loi n° 2005-842 du 26 juillet 2005 applicable en l'espèce, que la Commission des sanctions peut prononcer une sanction à l'encontre de « *toute personne qui, sur le territoire français ou à l'étranger, s'est livrée*

*ou a tenté de se livrer à une opération d'initié ou s'est livrée à une manipulation de cours, à la diffusion d'une fausse information ou à tout autre manquement mentionné au premier alinéa du I de l'article L. 621-14, dès lors que ces actes concernent un instrument financier émis par une personne ou une entité faisant appel public à l'épargne (...) »* ; que le 1er alinéa du I de l'article L. 621-14, dans sa version issue de cette même loi, mentionne les *« manquements aux obligations résultant des dispositions législatives et réglementaires ou des règles professionnelles visant à protéger les investisseurs contre les opérations d'initiés, les manipulations de cours et la diffusion de fausses informations »* et*, « tout autre manquement de nature à porter atteinte à la protection des investisseurs ou au bon fonctionnement du marché »* ; que le comportement de M. Thierry BOUTIN ayant consisté, alors qu'il était en possession d'une information privilégiée, à faire vendre à découvert par la société CASALVA GERMANY GmbH un nombre très important d'actions avant que celles-ci ne baissent de manière significative, a porté atteinte aux droits des investisseurs en même temps qu'il a compromis le bon fonctionnement et l'intégrité du marché, de sorte qu'il revêt une particulière gravité appelant une sanction exemplaire ;

Considérant qu'il résulte de l'article L. 621-15 du Code monétaire et financier, dans sa rédaction issue de la même loi, que peut être prononcée à l'encontre de tout auteur de faits visés aux c) et d) du II de l'article L. 621-15 dudit Code une sanction pécuniaire qui ne peut excéder 1 500 000 € ou le décuple du montant des profits éventuellement réalisés ; qu'il n'est pas contestable que les manquements imputables à M. Thierry BOUTIN l'ont, de manière indirecte, avantagé personnellement, puisqu'ils ont permis à une société dont il était et dont il est toujours l'unique actionnaire de réaliser une plus-value d'un montant de 375 161 € ;

Considérant que le mis en cause a indiqué en séance que, dans la société CASALVA GERMANY GmbH, en liquidation amiable, dont les actifs s'élevaient au moins à 12 M€ à la fin de l'année 2005 et dont les dettes actuelles ne dépassent pas 7,5 M€, son compte courant était créditeur de 7 M€ ; qu'il ne s'est pas exprimé sur les autres biens en sa possession ; qu'il exerce actuellement une activité de Conseil d'entreprise en Suisse ; qu'ainsi, il dispose, non seulement d'un important patrimoine, mais aussi de ressources, dont il n'a pas indiqué le montant ;

Considérant, qu'en conséquence, la sanction sera fixée à un million deux cent mille euros ;

Considérant que l'article L. 621-15 V du Code monétaire et financier dispose que *« la commission des sanctions peut rendre publique sa décision dans les publications, journaux ou supports qu'elle désigne, à moins que cette publication ne risque de perturber gravement les marchés financiers ou de causer un préjudice disproportionné aux parties en cause. Les frais sont supportés par les personnes sanctionnées »* ; que par ces dispositions, le législateur a entendu mettre en lumière les exigences d'intérêt général relatives à la loyauté du marché, à la transparence des opérations et à la protection des épargnants qui fondent le pouvoir de sanction de la Commission, et prendre en compte l'intérêt qui s'attache, pour la sécurité juridique de l'ensemble des opérateurs, à ce que ceux-ci puissent, en ayant accès aux décisions rendues, mieux appréhender le contenu des règles qu'ils doivent observer ; que, dès lors qu'en l'espèce, la publication de la décision ne paraît pas de nature à entraîner, au regard de ces exigences, des conséquences disproportionnées pour M. Thierry BOUTIN, elle sera ordonnée ;

**PAR CES MOTIFS,**

**Et après en avoir délibéré sous la présidence de Mme Claude NOCQUET, par MM. Alain FERRI, Jean-Pierre MORIN et Jean-Jacques SURZUR, Membres de la 2 ème section de la Commission des sanctions, en présence du Secrétaire de séance,**

**DECIDE DE :**

- prononcer une sanction d'un montant de 1 200 000 € (un million deux cent mille euros) à l'encontre de M. Thierry BOUTIN ;

- publier la présente décision au « *Bulletin des annonces légales obligatoires* », ainsi que sur le site internet et dans la revue de l'Autorité des marchés financiers.

A Paris, le 6 décembre 2007,

Le Secrétaire de séance,                    La Présidente,
Marc-Pierre JANICOT                        Claude NOCQUET

**Cette décision peut faire l'objet d'un recours dans les conditions prévues aux articles R. 621-44 à R. 621-46 du Code monétaire et financier.**

*0801971*