1   MARC M. SELTZER (54534)
    mseltzer@susmangodfrey.com
2   SUSMAN GODFREY L.L.P.
    1900 Avenue of the Stars, Suite 1400
3   Los Angeles, CA  90067-4405
    Telephone:  (310) 789-3100
4   Facsimile:  (310) 789-3150

5   ANDREW J. ENTWISTLE
    aentwistle@entwistle-law.com
6   ARTHUR V. NEALON
    anealon@entwistle-law.com
7   ROBERT N. CAPPUCCI
    rcappucci@entwistle-law.com
8   ENTWISTLE & CAPPUCCI LLP
    299 Park Avenue, 20th Floor
9   New York, NY  10171
    Telephone:  (212) 894-7200
10  Facsimile:  (212) 894-7272

11  *Counsel for FNY Investment Advisers, LLC*

12

13

14                  UNITED STATES DISTRICT COURT

15                NORTHERN DISTRICT OF CALIFORNIA

16                   SAN FRANCISCO DIVISION

17

18  KALMAN ISAACS, on behalf of himself and     Case No.  3:18-cv-04865-EMC
    all others similarly situated,
19                                              Hon. Edward M. Chen
                    Plaintiff,
20                                              CLASS ACTION

21             vs.                              **FNY INVESTMENT ADVISERS, LLC'S**
                                                **MEMORANDUM IN RESPONSE TO**
22  ELON MUSK and TESLA, INC.,                  **COMPETING LEAD PLAINTIFF**
                                                **MOTIONS**
23                  Defendants.

24

25                                              Date:  November 15, 2018
                                                Time:  1:30 p.m.
26                                              Place:  Courtroom 5, 17th Floor

27  *[Additional captions appear on following*
    *pages]*
28

| | |
|---|---|
| 1 | WILLIAM CHAMBERLAIN, on behalf of himself and all others similarly situated, | Case No.  3:18-cv-04876-EMC |
| 2 | |
| 3 | Plaintiff, |
| 4 | vs. |
| 5 | ELON MUSK and TESLA, INC., |
| 6 | Defendants. |
| 7 | |
| 8 | JOHN YEAGER, individually and on behalf of all others similarly situated, | Case No.  3:18-cv-04912-EMC |
| 9 | Plaintiff, |
| 10 | |
| 11 | vs. |
| 12 | ELON MUSK and TESLA, INC., |
| 13 | Defendants. |
| 14 | CARLOS MAIA, on behalf of himself and all others similarly situated, | Case No.  3:18-cv-04939-EMC |
| 15 | |
| 16 | Plaintiff, |
| 17 | vs. |
| 18 | ELON MUSK and TESLA, INC., |
| 19 | Defendants. |
| 20 | |
| 21 | KEWAL DUA, Individually and on Behalf of All Others Similarly Situated | Case No.  3:18-cv-04948-EMC |
| 22 | Plaintiff, |
| 23 | |
| 24 | vs. |
| 25 | ELON MUSK and TESLA, INC., |
| 26 | Defendants. |
| 27 | |
| 28 | |

| | |
|---|---|
| JOSHUA HORWITZ, Individually and on Behalf of All Others Similarly Situated | Case No.  3:18-cv-05258-EMC |
| Plaintiff, | |
| vs. | |
| ELON MUSK and TESLA, INC., | |
| Defendants. | |
| ANDREW E. LEFT, Individually and on Behalf of All Others Similarly Situated | Case No.  3:18-cv-05463-EMC |
| Plaintiff, | |
| vs. | |
| ELON MUSK and TESLA, INC., | |
| Defendants. | |
| ZHI XING FAN, Individually and on Behalf of All Others Similarly Situated | Case No. 3:18-cv-05470-EMC |
| Plaintiff, | |
| vs. | |
| ELON MUSK and TESLA, INC., | |
| Defendants. | |
| SHAHRAM SODEIFI, Individually and on Behalf of All Others Similarly Situated | Case No. 3:18-cv-05899-EMC |
| Plaintiff, | |
| vs. | |
| TESLA, INC., a Delaware corporation, and ELON R. MUSK, an individual, | |
| Defendants. | |

1

## <u>TABLE OF CONTENTS</u>

2

ARGUMENT ................................................................................................................ 1

I.      FIRST NEW YORK IS WELL-QUALIFIED TO BE A LEAD PLAINTIFF .................. 1

        A.      First New York Is the Most Qualified Lead Plaintiff Applicant........................... 1

        B.      First New York is Precisely the Type of Domestic Institutional Investor
                Congress Intended to Lead Securities Class Actions when it Enacted the
                PSLRA ................................................................................................................ 2

II.     PURCHASERS OF TESLA COMMON STOCK REQUIRE SEPARATE
        LEADERSHIP .............................................................................................................. 3

III.    FIRST NEW YORK SHOULD BE APPOINTED LEAD PLAINTIFF ON
        BEHALF OF PURCHASERS OF COMMON STOCK.................................................... 5

        A.      First New York Had the Largest Gross Expenditures on Common Stock of
                Any Movant and Suffered the Largest Common Stock Net Losses of Any
                Domestic Institutional Investor Movant ............................................................. 5

        B.      First New York Otherwise Satisfies the Requirements of Rule 23........................ 5

CONCLUSION ............................................................................................................... 5

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Movant FNY Investment Advisers, LLC ("First New York")[1] respectfully submits this memorandum in response to the competing Lead Plaintiff motions[2] and in further support of its motion for consolidation of the above-captioned actions (which has now been conceded by Defendants[3]), appointment as Lead Plaintiff and approval of its selection of Lead Counsel.[4]

## ARGUMENT

### I.     FIRST NEW YORK IS WELL-QUALIFIED TO BE A LEAD PLAINTIFF

#### A.     First New York Is the Most Qualified Lead Plaintiff Applicant

First New York has significant experience serving as a lead plaintiff in securities fraud class actions.  Most recently, First New York was appointed to lead a group of investors suing NASDAQ in a class action lawsuit arising out of Facebook's IPO.  That case raised novel claims that NASDAQ violated state and federal laws by failing to disclose technology weaknesses in its IPO systems and failing to design and test them prior to the offering.  Judge Robert Sweet of the Southern District of New York sustained First New York's complaint in a decision that represented the first time a court had sustained claims brought by a class of investors against an exchange for market disruption.  Among other things, Judge Sweet found that NASDAQ was not entitled to self-regulatory organization immunity from certain claims arising from design, testing and promotion of its IPO software because those activities were not performed in connection with the discharge of SRO responsibilities.  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 460 (S.D.N.Y. 2013).

In this Circuit, First New York's counsel, Entwistle & Cappucci LLP and Susman Godfrey L.L.P., recently achieved notable success as Co-Lead Counsel representing derivative securities investors in Allergan, Inc. ("Allergan") in an action against Valeant Pharmaceuticals International, Inc. (now Bausch Health Companies Inc.), Pershing Square Capital Management,

---

[1] Unless otherwise noted, all capitalized terms herein shall have the same meaning set forth in First New York's opening brief.  ECF No. 40.

[2] ECF Nos. 41; 46; 47; 64; 71; 80.

[3] Defendants' Response, ECF No. 105 at 4.

[4] ECF No. 40.

1  L.P. and related defendants alleging insider trading violations of the Exchange Act in connection

2  with a planned attempt to take over Allergan.  *See In re Allergan, Inc. Proxy Violation*

3  *Derivatives Litig.*, Case No. 2:17-cv-04776 DOC (KESx) (C.D. Cal.) (the court recently observed

4  at the final settlement hearing: "counsel have received just excellent results . . .  the skill and

5  experiences and the complexity of the issues before the Court and before counsel [were]

6  extraordinary.")[5]

7       **B.**    **First New York is Precisely the Type of Domestic Institutional Investor**

              **Congress Intended to Lead Securities Class Actions when it Enacted the**

8                **PSLRA**

9      First New York is the paradigmatic Lead Plaintiff that Congress envisioned when it

10  enacted the PSLRA – a large domestic institutional investor with a significant stake in the

11  outcome of the litigation that is capable of actively prosecuting the action and directly overseeing

12  the efforts of its counsel.  *Lloyd v. CVB Fin. Corp.*, No. CV 10-06256 MMM (PJWx), 2011 WL

13  13128303, at *5 (C.D. Cal. Jan. 21, 2011) ("[T]he Reform Act establishes a preference that

14  sophisticated institutional investors direct the course of securities cases."); *see also In re Extreme*

15  *Networks Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2016 WL 3519283, at *6 (N.D. Cal. June 28,

16  2016) ("To curb the troubling proliferation of lawyer-driven securities class actions and better

17  serve the interests of the absent class members, Congress sought to increase the participation of

18  institutional investors in prosecuting securities cases.") (citing H.R. Conf. Rep. No. 104-369, at

19  *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995)).

20      As an established firm, and the only domestic institutional investor lead plaintiff

21  applicant, First New York's sophistication and ability to manage this litigation cannot be

22  seriously questioned.  First New York is a sole movant, rather than a member of a group, and thus

23  it is not encumbered by the necessity for a group decision-making apparatus and the potential

24  delays and inefficiencies such an apparatus may cause.  *See, e.g., Eichenholtz v. Verifone*

25  *Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *9 (N.D. Cal. Aug. 22, 2008)

26  

27  [5] Transcript of June 12, 2018 hearing, *Basile et al. v. Valeant Pharmaceutical International, Inc.*

*et al.*, 8:14-cv-02004 (related case) ECF No. 640 at 24:6-10.

28

1    (finding that "[t]he coordination problems inherent within [the prospective lead plaintiff group] . .

2    . will outweigh whatever gains are to be had through the grouping.").  Also, as a domestic

3    institutional investor experienced in the leadership of securities class action litigation, First New

4    York is not vulnerable to potential challenges to the adequacy of its representation of common

5    stock purchasers.  Lastly, First New York is not currently serving as a lead plaintiff in any other

6    securities class action and can therefore devote its full attention to the prosecution of this case.

7    For these reasons, appointment of First New York as Lead Plaintiff would not only be consistent

8    with the express requirements of the PSLRA, but also would fulfill the PSLRA's purpose.

9    **II.      PURCHASERS OF TESLA COMMON STOCK REQUIRE SEPARATE
            LEADERSHIP**

10        The common stock purchasers will be required to prove, *inter alia*, that corrective

11   disclosures caused the stock price to decline, and the portion of each decline that was caused by

12   the disclosures.  15 U.S.C.A. § 78u-4(b)(4).  In contrast, plaintiffs that established short positions

13   prior to the Class Period and covered those positions after defendants' first alleged misstatement

14   – Musk's first tweet – will have no reason to seek to prove that subsequent corrective disclosures

15   caused the stock price to decline.[6]  In addition, while short-sellers may be able to establish

16   damages without reference to any events that occurred after covering their transactions, short

17   sellers may nevertheless have unique causation and damage issues, none of which impact

18   common stock purchasers and at least the litigation of some of those issues may be antagonistic to

19   the interests of the common stock claimants whose purchases are necessarily all contemporaneous

20   with or subsequent to the Musk tweet.  By way of example only, at least one court in this District

21   has observed that "[g]iven the practical difficulties of tracing the short seller's loss to any alleged

22   fraud, excluding short sellers who incurred losses from short sales during the class period is a

23   sensible limitation. . . ." *In re Lendingclub Sec. Litig.,* 282 F. Supp. 3d 1171, 1188 (N.D. Cal.

24   2017)); *see also Rocker Mgmt., LLC v. Lernout & Hauspie Speech Prods. N.V.*, No. 00-5965

25   (PGS), 2007 WL 2814653, at *2 (D.N.J. Sept 24, 2007) ("it is more difficult to determine a short

---

[6] This is so because short-sellers establish damages by reference to sales (shorts) made before, rather than after, the corrective disclosures.

seller's rights and liabilities using ordinary principles of securities law which were developed, for the most part, with long investors in mind.").[7]

Purchasers of common stock will also benefit from separate representation to protect them from the collateral effects of Musk's very public attacks on Tesla short-sellers.  Musk has devoted considerable efforts to vilify short sellers that disparaged Tesla, and it is likely that Musk will attempt to turn the proceeding into a reverse-trial by criticizing the "short-and-disparage" investment strategy.  At a minimum, Musk's vitriolic attacks on short-sellers will distract from the core issues in this case.

Appointing a lead plaintiff specifically to represent the interest of common stock purchasers will also protect those purchasers in the event that short-sellers are disqualified as Lead Plaintiffs later in the proceedings.  In *In re Terayon Communications Systems*, the court granted defendants' motion to disqualify a lead plaintiff  – after a class of investors had been certified – partly on the grounds that the plaintiff waged a short-seller campaign against the company, finding that, although short sales "may not, in and of themselves render a lead plaintiff's claims atypical, a pattern of affirmatively engaging in campaigns devised to lower the price of the stock in question certainly contains within it the seeds of discord between lead plaintiffs and the remaining plaintiffs."  *In re Terayon Commc'n Sys., Inc. Sec. Litig.*, No. C 00-01967 MHP, 2004 WL 413277, at *8 (N.D. Cal. February 23, 2004); *see also In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1109-10 (N.D. Cal. 2001) ("It is a poor choice to appoint a class representative who engaged in a trading practice premised on the belief the stock would fall.").  The above conflicts between short sellers and common stock claimants, and related issues, are sufficiently "fundamental" to at least merit "dividing the class into separate homogeneous subclasses [] with separate representation to eliminate conflicting interests."  *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249-50, 254 (2d Cir. 2011) (citation omitted).

---

[7] Defendants have already suggested that differences between buyers and sellers present "antagonistic or conflicting interests with the unnamed members of the class."  Defendants' Response, ECF No. 105 at 5 (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) and *Donaldson v. Microsoft Corp.*, 205 F.R.D. 558, 568 (W.D. Wash. 2001).

### III.   FIRST NEW YORK SHOULD BE APPOINTED LEAD PLAINTIFF ON BEHALF OF PURCHASERS OF COMMON STOCK

#### A.   First New York Had the Largest Gross Expenditures on Common Stock of Any Movant and Suffered the Largest Common Stock Net Losses of Any Domestic Institutional Investor Movant

During the Class Period, First New York purchased in aggregate 418,614 shares of Tesla common stock and expended in excess of $148 million.[8] This represents the largest gross expenditure on common stock of any movant.  When netted against the proceeds of its sales of common stock, First New York incurred a net loss of $304,204.98 in connection with those purchases, the largest common stock losses of any domestic institution

#### B.   First New York Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA requires that a lead plaintiff movant also satisfy the requirements of Rule 23.  As demonstrated in its opening brief, First New York is a typical Class representative.  *See* First New York Mem. at 15-16, ECF No. 40.  Like other Class members, First New York:  (i) purchased Tesla common stock during the Class Period; (ii) at prices artificially inflated by Defendants' materially false and misleading statements and omissions; and (iii) was damaged thereby.

First New York is also an adequate Class representative for the reasons stated in Points I and II above, and because there is no evidence suggesting potential conflicts of interest or antagonisms between First New York and other members of the proposed common stock Class. First New York is a domestic institution, is an experienced Lead Plaintiff, meets all Rule 23 requirements and has selected highly qualified counsel to prosecute the matter.  Accordingly, it is respectfully submitted that the Court should appoint it as Lead Plaintiff for the common stock claims.

### CONCLUSION

For the reasons discussed above, First New York respectfully requests that the Court:  (i) consolidate the above-captioned actions under Rule 42(a); (ii) appoint First New York to serve as

---

[8] First New York's Gross expenditure on common stock purchases during the class period was $148,005,508.40. Declaration of Marc M. Seltzer, ECF No. 40-1 at Ex. A.

1   Lead Plaintiff for purchasers of Tesla common stock pursuant to Section 21D(a)(3)(B) of the

2   Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B); (iii) approve its selection of Entwistle & Cappucci

3   LLP and Susman Godfrey L.L.P. as Lead Counsel for purchasers of Tesla common stock; and

4   (iv) grant such other relief as the Court may deem just and proper.

5

    Dated:  October 23, 2018                   By:     /s/ Marc M. Seltzer

6

7                                              **SUSMAN GODFREY L.L.P.**
                                               MARC M. SELTZER (54534)
8                                              1900 Avenue of the Stars, Suite 1400
                                               Los Angeles, CA  90067-4405
9                                              Telephone:  (310) 789-3100
                                               Facsimile:  (310) 789-3150
10                                             mseltzer@susmangodfrey.com

11                                             **ENTWISTLE & CAPPUCCI LLP**
                                               ANDREW J. ENTWISTLE
12                                             ARTHUR V. NEALON
                                               ROBERT N. CAPPUCCI
13                                             299 Park Avenue, 20th Floor
                                               New York, NY  10171
14                                             Telephone:  (212) 894-7200
                                               Facsimile:  (212) 894-7272
15                                             aentwistle@entwistle-law.com
                                               anealon@entwistle-law.com
16                                             rcappucci@entwistle-law.com

17                                             *Counsel for FNY Investment Advisers, LLC*

18

19

20

21

22

23

24

25

26

27

28

FIRST NEW YORK'S MEMORANDUM IN RESPONSE TO COMPETING LEAD PLAINTIFF MOTIONS
CASE NO. 3:18-cv-04865- EMC