**LEVI & KORSINSKY, LLP**
Adam C. McCall (SBN 302130)
Adam M. Apton (SBN 316506)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 291-2420
Email: amccall@zlk.com
Email: aapton@zlk.com

*Attorneys for Movant Glen Littleton*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KALMAN ISAACS, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>ELON MUSK and TESLA, INC.,<br><br>Defendants. | No. 3:18-cv-04865-EMC<br><br>Hon. Edward M. Chen<br><br>**GLEN LITTLETON'S REPLY TO COMPETING MOTIONS FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL**<br><br>Date: November 15, 2018<br>Time: 1:30 p.m.<br>Courtroom: 5-17th Floor |
| WILLIAM CHAMBERLAIN, on behalf of himself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., and ELON MUSK,<br><br>Defendants. | No. 3:18-cv-04876-EMC<br><br>Hon. Edward M. Chen |

GLEN LITTLETON'S REPLY TO COMPETITNG MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC;
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

| | |
|---|---|
| JOHN YEAGER, Individually and on Behalf of All Others Similarly Situated, | No. 3:18-cv-04912-EMC |
| | Hon. Edward M. Chen |
| Plaintiff, | |
| v. | |
| TESLA, INC. and ELON MUSK, | |
| Defendants. | |
| CARLOS MAIA, on behalf of himself and all other similarly situated, | No. 3:18-cv-04939-EMC |
| | Hon. Edward M. Chen |
| Plaintiff, | |
| v. | |
| TESLA, INC., and ELON R. MUSK, | |
| Defendants. | |
| KEWAL DUA, Individually and on Behalf of All Others Similarly Situated, | No. 3:18-cv-04948-EMC |
| | Hon. Edward M. Chen |
| Plaintiff, | |
| v. | |
| TESLA, INC., and ELON MUSK, | |
| Defendants. | |
| JOSHUA HORWITZ, Individually and on Behalf of All Others Similarly Situated, | No. 3:18-cv-05258-EMC |
| | Hon. Edward M. Chen |
| Plaintiff, | |
| vs. | |
| TESLA, INC., and ELON R. MUSK, | |
| Defendants. | |

ii
GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC;
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

| | | |
|---|---|---|
| ANDREW E. LEFT, Individually and on Behalf of All Others Similarly Situated, | | No. 3:18-cv-05463-EMC |
| | Plaintiff, | Hon. Edward M. Chen |
| | vs. | |
| TESLA, INC., and ELON R. MUSK, | | |
| | Defendants. | |
| ZHI XING FAN, Individually and on Behalf of All Others Similarly Situated, | | No. 3:18-cv-05470-EMC |
| | Plaintiff, | Hon. Edward M. Chen |
| | vs. | |
| TESLA, INC., and ELON R. MUSK, | | |
| | Defendants. | |
| SHAHRAM SODEIFI, Individually and on Behalf of All Others Similarly Situated, | | No. 3:18-cv-05899-EMC |
| | Plaintiff, | Hon. Edward M. Chen |
| | vs. | |
| TESLA, INC., a Delaware corporation, and ELON R. MUSK, an individual, | | |
| | Defendants. | |

iii

GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC;
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

**TABLE OF CONTENTS**

I. LITTLETON IS THE MOVANT MOST CAPABLE OF ADEQUATELY REPRESENTING THE FULL INTERESTS OF THE CLASS MEMBERS ........ 1

II. LITTLETON IS BOTH TYPICAL AND ADEQUATE UNDER RULE 23 AND IS NOT SUBJECT TO UNIQUE DEFENSES ........ 3

A. Littleton is the Ideal Lead Plaintiff to Represent "Niche" Investors ........ 3

B. Littleton is Not Atypical for Trading in Option Contracts ........ 4

C. Littleton is Not Atypical Because He is Not a High Volume Trader ........ 5

D. Littleton Was Not a Net Gainer ........ 8

E. Littleton Was Significantly Damaged By His Long Positions ........ 10

F. Littleton's Losses Were Caused By His Reliance on the Fraudulent Statements ........ 11

III. ALTERNATIVELY, LITTLETON SHOULD BE APPOINTED CO-LEAD PLAINTIFF ........ 12

IV. LITTLETON'S SELECTION OF COUNSEL SHOULD BE APPROVED ........ 13

V. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Cases**

*Alkhoury v. Lululemon Athletica, Inc.*,
  No. 13-cv-4596-KBF, 2013 WL 5496171 (S.D.N.Y. Oct. 1, 2013) .......................................... 2

*Applestein v. Medivation Inc.*,
  No. 10-998, 2010 WL 3749406 (N.D. Cal. Sep. 20, 2010) ..................................................... 5

*In re AudioEye, Inc. Sec. Litig,*
  No. CV15163TUCDCBLEAD, 2015 WL 13654027 (D. Ariz. Aug. 3, 2015) ........................ 10

*Bell v. Ascendant Solutions, Inc.*,
  No. 01-cv-0166, 2002 WL 638571 (N.D. Tex. Apr. 17, 2002) ............................................... 12

*Broadfoot v. Barrick Gold Corp.*,
  No. 17 CIV. 3507 (NRB), 2017 WL 3738444 (S.D.N.Y. Aug. 9, 2017) ............................. 7, 8

*Chill v. Green Tree Fin. Corp.*,
  181 F.R.D. 398 (D. Minn. 1998) ............................................................................................. 4

*In re Cooper Cos. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009) .......................................................................................... 11

*Crossen v. CV Therapeutics*,
  No. C 03-03709 SI, 2005 WL 1910928 (N.D. Cal. Aug. 10, 2005) ................................. 4, 11

*Danis v. USN Communications, Inc.*,
  189 F.R.D. 391 (N.D.Ill.1999) ................................................................................................ 5

*Degulis v. LXR Biotechnology, Inc.*,
  176 F.R.D. 123 (S.D.N.Y. 1997) ............................................................................................. 8

*In re Doral Fin. Corp. Sec. Litig.*,
  414 F. Supp. 2d 398 (S.D.N.Y. 2006) .................................................................................... 2

*Eichenholtz v. Verifone Holdings, Inc.*,
  No. C07-06140MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ................................. 6, 8

*Fischler v. AmSouth Bancorporation*,
  No. 95-1567-Civ-T-17A, 1997 WL 118429 (M.D. Fla. Feb. 6, 1997) ..................................... 7

*Frank v. Dana Corp.*,
  237 F.R.D. 171 (N.D. Ohio 2006) ......................................................................................... 10

*Frias v. Dendreon Corp.*,
  835 F. Supp. 2d 1067 (W.D. Wash. 2011) ............................................................................. 9

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990) ................................................................................................... 7

*Hall v. Medicis Pharm. Corp.*,
  No. CV08-1821PHX-GMS, 2009 WL 648626 (D. Ariz. Mar. 11, 2009) ................................. 4

*In re Initial Pub. Offering Sec. Litig.*,
  227 F.R.D. 65 (S.D.N.Y. 2004) ............................................................................................. 12

GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC;
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

*Laborers Local 1298 Pension Fund v. Campbell Soup Co.*,
   No. 00-cv-152, 2000 WL 486956 (D.N.J. Apr. 24, 2000) ............................................................ 12

*Landry v. Price Waterhouse Chartered Accountants*,
   123 F.R.D. 474 (S.D.N.Y.1989) .................................................................................................... 7

*Levie v. Sears, Roebuck & Co.*,
   496 F. Supp. 2d 944 (N.D. Ill. 2007) ........................................................................................... 12

*In re Magma Design Automation, Inc. Sec. Litig.*,
   No. C 05 2394 CRB, 2007 WL 2344992 (N.D. Cal. Aug. 16, 2007) .......................................... 11

*In re McKesson HBOC, Inc. Sec. Litig.*,
   97 F. Supp. 2d 993 (N.D. Cal. 1999) ............................................................................................. 9

*Miller v. Ventro Corp.*,
   No. 01-cv-1287, 2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) ............................................... 12

I*n re Network Assocs. Inc., Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) ........................................................................................... 7

*Nursing Home Pension Fund v. Oracle Corp.*,
   No. C01-00988 MJJ, 2006 WL 8071391 (N.D. Cal. Dec. 20, 2006) ............................................ 4

*Pena v. iBio, Inc.*,
   2015 U.S. Dist. LEXIS 10686 (D. Del. Jan. 30, 2015) .................................................................. 7

*In re Peregrine Sys., Inc. Sec. Litig.*,
   No. CIV.02 CV 870-J(RBB), 2002 WL 32769239 (S.D. Cal. Oct. 11, 2002) ............................... 7

*In re Petrobras Sec. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015) ........................................................................................... 6

*Plumbers & Pipefitters Local 51 Pension Fund v. First Bancorp*,
   409 F. Supp. 2d 482 (S.D.N.Y. 2006) ......................................................................................... 12

*Police & Fire Ret. Sys. of the City of Detroit v. Safenet, Inc.*,
   No. 06-cv-5797, 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007) .................................................... 3

*In re Priceline.com Inc. Sec. Litig.*,
   236 F.R.D. 89 (D. Conn. 2006) ..................................................................................................... 4

*In re Royal Bank of Scotland Grp. PLC Sec. Litig.*,
   765 F. Supp. 2d 327 (S.D.N.Y. 2011) ........................................................................................... 3

*Scheicher v. Wendt*,
   618 F.3d 679 (7th Cir. 2010) ....................................................................................................... 11

*Schueneman v. Arena Pharm., Inc.*,
   No. 10CV1959 BTM BLM, 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ................................... 9

*Serafimov v. Netopia, Inc.*,
   No. C-04-03364 RMW, 2004 WL 7334061 (N.D. Cal. Dec. 3, 2004) .......................................... 6

*Tsirekidze v. Syntax-Brillian Corp.*,
   No. CV-07-02204-PHX-FJM, 2009 WL 2151838 (D. Ariz. July 17, 2009) ............................... 11

vi
GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC;
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

*In re UTStarcom, Inc. Sec. Litig.*,
   No. C 04-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010) .................................................. 10

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
   712 F. Supp. 2d 958 (N.D. Cal. 2010) .............................................................................................. 3

*Yousefi v. Lockheed Martin Corp.*,
   70 F. Supp. 2d 1061 (C.D. Cal. 1999) ............................................................................................ 12

*In re Zynga Inc. Sec. Litig.*,
   No. 12-cv-04007-JSW, 2014 WL 721948 (N.D. Cal. Feb. 25, 2014) ........................................... 3, 6

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................................... 1, 2, 5, 11

15 U.S.C. § 78u-4(a)(3)(B)(iv) ................................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B)(v) .................................................................................................... 13

vii
GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC;
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

I. **LITTLETON IS THE MOVANT MOST CAPABLE OF ADEQUATELY REPRESENTING THE FULL INTERESTS OF THE CLASS MEMBERS**

Out of the remaining motions for appointment as lead plaintiff, no movant is more "capable of adequately representing the interests of class members" in this complex and unusual case better than Glen Littleton. 15 U.S.C. § 78u-4.[1] The Court is now tasked with appointing "the member or members" of the class who can most adequately prosecute this case on the class' behalf, consistent with the requirements of the Private Securities Litigation Reform Act. 15 U.S.C. § 78u-4. The Court should appoint Littleton either as sole Lead Plaintiff or as part of a Lead Plaintiff group.

As discussed in Movant Littleton's Opposition (Dkt. No. 106), the Court's task is unusually complex because this is a unique securities action involving a multitude of different types of investors who were harmed by the Defendants' fraud, including long interests, short interests, and options trading. Littleton lost approximately $3,518,478.68 from Tesla's fraudulent conduct including $3,185,205.20 from his net long positions and $333,373.48 from his net short positions. Littleton was harmed as a result of the alleged fraud from the positions he opened prior to the Class Period and closed during the Class Period, positions he opened and closed during the Class Period, and the position he opened during the Class Period and closed after the Class Period. Littleton incurred losses from both long and short positions in Tesla's calls and puts, and a long position in its common stock. More specifically, as a result of his long call positions entered into before the Class Period or during the Class Period, Littleton incurred losses of approximately $3,296,977.20. Additionally, as a result of his long put positions entered into before the Class Period, Littleton incurred losses of approximately $1,316,573.48. Furthermore, during the Class Period, Littleton also purchased common stock that he ultimately incurred

---

[1] The remaining movants are: FNY Investment Advisers, LLC (Dkt. 40); Glen Littleton (Dkt. 41); Bridgestone Investment Corporation Limited (Dkt. 46); the Tesla Investor Group, consisting of Left, PROtecto Informatikai Szolgáltató Korlátolt Felelősségű Társaság, Boutin, Shirazi, and Vilas Capital Management, LLC (the "Second Tesla Investor Group") (Dkt. 47); James Johnson (Dkt. 64); Tempus International Fund SPC and Opportunity Unique Fund Inc. (Dkt. 71); and Dany David (Dkt. 80). Movants the Tesla Investor Group, consisting of Kulik, Han, Riahi, Mehta, and Nama (the "First Tesla Investor Group") (Dkt. 45) filed a Notice of Non-Opposition to the competing movants on October 22, 2018 (Dkt. No. 104); the Tesla Investor Group, consisting of Abrams, Freeland, Lyman, and Gaur (the "Third Tesla Investor Group") (Dkt. 74), filed a Notice of Withdrawal of their Motion on October 22, 2018 (Dkt. No. 102).

1
GLEN LITTLETON'S REPLY TO COMPETITNG MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC;
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

approximately $3,552 in losses. Moreover, Littleton also incurred losses as result of his short positions in options. As a result of his short position created by selling Tesla January 2020 $500 calls contracts during the Class Period, Littleton incurred losses of approximately $45,490.00. From his short position created before the Class Period by buying Tesla June 2019 $300 put contracts and Tesla January 2020 $400 put contracts, Littleton incurred losses totaling approximately $1,133,419.48.[2] In total, Littleton lost $5,796,012.16 from his losing trades in Tesla stock and options, employing both long and short strategies. Taking into account his gains of $2,277,533.48 from other trades during the Class Period,[3] Littleton's net out of pocket loss was $3,518,478.68. This substantial loss resulting from option and stock trades and long and short strategies means that Littleton has the most to gain from the litigation bringing suit for all members of the class and is the most adequate lead plaintiff.

No other individual movant appears to adequately represent the full class of injured Tesla investors better than Movant Glen Littleton. Littleton suffered significant losses in excess of $3.5 million which were the result of a combination of short positions, long positions, and options. Littleton, therefore, is properly incentivized to prosecute this class action to maximize the recovery for all of these classes of investors. When compared to other movants whose interests are limited to short losses or long losses, Littleton's losses were a combination of short positions, long positions, and options, and therefore he has the most to gain by assuring a class and outcome that covers all class members. Therefore, Littleton is the movant "most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4; *see In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (the court appointed the movant with lower financial losses who was "the more adequate and preferable of the two plaintiffs" naming the movant as sole "lead plaintiff, to minimize control problems and expense."); s*ee, e.g., Alkhoury v. Lululemon Athletica, Inc.*, No. 13-cv-4596-KBF, 2013 WL 5496171, at *1 (S.D.N.Y. Oct. 1, 2013) (finding a negligible difference in losses "insufficient

---

[2] In the opposition, Littleton noted that he incurred $215,320 from his short position in Tesla June 2019 $300 put contracts. This figure did not represent all of Littleton's losses from his short positions in Tesla puts, but was rather used merely to show that he had standing to pursue claims on behalf of investors who had short positions in Tesla puts.

[3] Other movants also offset gains made on certain trades during the Class Period against losses to generate a net loss. *See* Dkt. Nos. 51-2; 65-3; and 81-3.

2
GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

to outweigh the substantial financial interest of [movant] that is evidenced by the other factors.") (citing *Police & Fire Ret. Sys. of the City of Detroit v. Safenet, Inc.*, No. 06-cv-5797, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007)). Accordingly, Littleton respectfully submits that the Court should appoint him as Lead Plaintiff. Alternatively, the Court should include Littleton as a Co-Lead Plaintiff as part of a group of movants to represent the full interests of the Class.

## II. LITTLETON IS BOTH TYPICAL AND ADEQUATE UNDER RULE 23 AND IS NOT SUBJECT TO UNIQUE DEFENSES

As an initial matter, unlike many of the competing movants, including Tempus, OUF, the Second Tesla Investor Group, no movant has questioned the adequacy of Littleton. Therefore, this section will concentrate on Littleton's typicality and the issues raised by competing movants.

### A. Littleton is the Ideal Lead Plaintiff to Represent "Niche" Investors

Tempus International and OUF argue that they can represent "niche" investors who invested in option contracts. Dkt. 115 at 7. However, as the chart in Littleton's Opposition points out, Littleton is capable of representing many more "niche" investors than Tempus and OUF, or any other movant. Tempus and OUF have standing to represent only short position common stock and have no incentive to maximize recovery for the rest of the class. Dkt. No. 106 at 9. Tempus and OUF cite case law supporting the proposition that a lead plaintiff need not have standing to pursue every claim. These cases, however, do not address the fundamental issue raised by Littleton, namely that there is nothing preventing the other movants from simply excluding "niche" investors from the case, either when filing an amended complaint, or when moving for class certification, or when apportioning any eventual recovery. In fact, including niche investors from the class may be to their disadvantage, as it would reduce their share of any potential recovery. As such, the Court should appoint a lead plaintiff void of risk that will invite attacks on standing. *See, e.g., In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSW, 2014 WL 721948, at *3 (N.D. Cal. Feb. 25, 2014) (dismissing claims because lead plaintiff(s) lacked standing); *In re Royal Bank of Scotland Grp. PLC Sec. Litig.*, 765 F. Supp. 2d 327, 339 (S.D.N.Y. 2011) (same); *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 965 (N.D. Cal. 2010) (same). Littleton is the most adequate plaintiff to handle all of the class's interests. Appointing

3
GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

Littleton as Lead Plaintiff substantially forecloses such attacks. *See, e.g., Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 406 (D. Minn. 1998) ("[O]ur role is not to resolve the standing issue, which appears to remain open to honest debate, but to determine whether the debate itself is substantive enough" to warrant prophylactic measures.). Consequently, Tempus' and OUF's argument must fail.

**B. Littleton is Not Atypical for Trading in Option Contracts**

Competing movants also argue that Littleton is atypical because the majority of his trades were in option contracts. "However, many courts have appointed options traders as lead plaintiffs to represent the interests of common stockholders." *Hall v. Medicis Pharm. Corp.*, No. CV08-1821PHX-GMS, 2009 WL 648626, at *4 (D. Ariz. Mar. 11, 2009) (citing cases); *see e.g. Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988 MJJ, 2006 WL 8071391, at *8 (N.D. Cal. Dec. 20, 2006) (granting class certification and finding that lead plaintiff was "not atypical because of his strategy of selling 'call options.'"); *In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 99 (D. Conn. 2006) (granting class certification in part holding that "[u]pon consideration of the nature of options trading in general . . . the court is satisfied that [lead plaintiff's] interests . . . are sufficiently aligned with those of the class members."); *Crossen v. CV Therapeutics*, No. C 03-03709 SI, 2005 WL 1910928, at *5 (N.D. Cal. Aug. 10, 2005) (Illston, J.) (certifying class and finding reliance because lead plaintiff's "sale of call options does not make him atypical. Short sales do not in and of themselves render a lead plaintiff's claims atypical."). If there are questions whether the claims of one or more categories of Tesla investor do not meet the requirements of class certification under Federal Rule of Civil Procedure 23, it is preferable that these questions are addressed and litigated by a Tesla investor such as Littleton who actually has a financial interest in obtaining class certification for the broadest range of Tesla investors, including the categories that are subject to question. The alternative is a lead plaintiff who has no incentive to advocate on behalf of those Tesla investors and who may be inclined to simply drop them from the class rather than litigate the issue.

Additionally, Littleton also held shares of common stock during the Class Period. These claims are identical to other class members who held common stock. *See Crossen* 2005 WL 1910928, at *5 (the Court found adequate a plaintiff who both engaged in short selling of stock and made ordinary purchases

4
GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

during the class period) (citing *Danis v. USN Communications, Inc.*, 189 F.R.D. 391 (N.D.Ill.1999)). Therefore, Littleton is incentivized to maximize the recovery not only for option traders, but also for holders of common stock. It is Littleton's standing to pursue all claims for the Class that makes him the "most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4.

**C. Littleton is Not Atypical Because He is Not a High Volume Trader**

Bridgestone incorrectly claims that Littleton is "high frequency trad[er]," rendering him subject to unique defenses under Rule 23. Dkt. No. 107 at 16. However, Bridgestone cites no facts to support its arguments. *Id*. Bridgestone's argument comes down to whether Littleton was a "day trader." Littleton is not a "day trader". Even though he occasionally bought and sold some shares in the same day, Littleton repeatedly held a long position overnight, and continuously held a long position in Tesla securities such as in Tesla's common stock from August 9, 2018 through the end of the Class Period. McCall Decl. (Dkt. 42-2). In fact, out of the 19 different Tesla securities purchased or sold by Littleton during the Class Period, Littleton only bought and sold the same Tesla security on the same day in one. *Id.* Notably, the net effect of Littleton's trades on August 8, 2018 in Tesla January 2020 $400 call contracts was a 250 contract increase in Littleton's long position. *Id.* Furthermore, a cursory review of his loss chart shows that in many instances Littleton held positions in specific Tesla securities for weeks before he ultimately closed the position in the security. *Id.* Given these facts, Littleton was not a "day trader" within the proper meaning of that term: Day traders do not hold positions in securities overnight or for weeks. *See* Financial Industry Regulation Authority Rule 4210(f)(8)(B)(i) (defining "day trading as "the purchasing and selling or the selling and purchasing of the same security on the same day in a margin account").[4]

Additionally, unlike Littleton, the disqualified movants in cases that Bridgestone cited traded far more frequently and had trades in the hundreds or thousands. *See Applestein v. Medivation Inc.*, No. 10-998, 2010 WL 3749406, at *3 (N.D. Cal. Sep. 20, 2010) (407 trades over a 644 day period); *Eichenholtz*

---

[4] Additionally, as defined by former head of the U.S. Securities and Exchange Commission ("SEC") Mary Schapiro, day trading "generally refers to the trading activities of a 'professional day trader,' that is, an individual who conducts intra-day trading in a focused and consistent manner, with the primary goal of earning a living through the profits derived from this trading strategy." *In re Rea*, 245 B.R. 77, 82 (N.D. Tex. 2000) (citing *Testimony of Mary L. Schapiro, President of NASD Regulation, Inc., Concerning Day Trading Before the Permanent Subcommittee on Investigations, United States Senate,* p. 6-7 (Sep. 16, 1999).

5
GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

*v. Verifone Holdings, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at *10 (N.D. Cal. Aug. 22, 2008) (over 5,000 trades during a nine-month period.). In any event, whether a movant is a day trader "is inconsequential to his request to be appointed lead plaintiff." *Zynga*, 2013 WL 257161, at *2; *Serafimov v. Netopia, Inc.*, No. C-04-03364 RMW, 2004 WL 7334061, at *5 (N.D. Cal. Dec. 3, 2004) (holding that the majority of cases, including the Ninth Circuit, have held that day traders may serve as class representatives and suffer as do other traders).

Further, a substantial part of Bridgestone's total losses of $3,869,744.20 stem primarily from the $1,641,391 in losses it incurred from buying Tesla January 2019 $450 call options. Dtk. No. 52-5. These transactions, however, subject Bridgestone to a unique defense based on this class definition. Specifically, this loss chart (Dkt. 52-5) is proof that Bridgestone purchased the January 2019 $450 call options by not relying upon the first materially false and/or misleading statement issued by Musk on August 7, 2018 at 12:48 p.m. EDT stating that "Am considering taking Tesla private at $420. Funding secured." *See* Dkt. No. 46, at 3. If Bridgestone was relying upon the content of Musk's 12:48 p.m. tweet, it would not have purchased Tesla January 2019 $450 call option contracts because Musk's tweet was clear that he was only considering to take Tesla private at ***$420*** per share. It simply makes no sense that Bridgestone would have invested $2,156,496 to buy January 2019 $450 call option contracts relying on Musk's 12:48 p.m. tweet when they would expire worthless when Musk took Tesla private at $420. In fact, Bridgestone must have expected that Tesla's stock price would surpass $467.85 per share (the exercise price of $450 plus the highest premium paid of $17.85 for these call option contracts).[5]

Courts have found that when movants did not rely upon the false and misleading statements during the class period or knew that they were false and/or misleading renders them subject to a unique defense. *See In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015) (finding movant inadequate where "transactions raise serious questions regarding [movant's] reliance on the alleged misrepresentations and omissions.") (*citing Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce,*

---

[5] If Bridgestone later states that it purchased the January 2019 $450 call options before Musk's 12:48 p.m. tweet, then its loss chart (Dkt. No. 52-2) that it has presented to the Court improperly inflates its losses by over $1,641,391 for the more limited class period consisting of investors who purchased securities only.

6
GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

*Fenner & Smith, Inc.*, 903 F.2d 176, 179 (2d Cir. 1990)); *In re Peregrine Sys., Inc. Sec. Litig.*, No. CIV.02 CV 870-J(RBB), 2002 WL 32769239, at *7 (S.D. Cal. Oct. 11, 2002) ("[W]hether plaintiffs actually relied on such information in their decision to purchase, [is a] difficult factual questions which cannot be resolved at this stage of the litigation. However, whether these defenses will be successful is of no matter. The fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members.") (*quoting Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y.1989)).

Alternatively, if the Court is still inclined to appoint Bridgestone as the Lead Plaintiff despite the arguments against its appointment, Littleton respectfully requests that the Court allow him to take limited discovery concerning the potential unique defense and/or the inflation of Bridgestone's loss figure and to present this information to the Court before rendering a decision on the appointment of a Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iv) of the PSLRA specifically explicitly provides that a class member may conduct discovery into the adequacy of a plaintiff upon the showing of a reasonable basis for a finding that he or she is incapable of adequately representing the class. Numerous courts have ordered a proposed lead plaintiff to submit to discovery in similar circumstances. *See, e.g., Broadfoot v. Barrick Gold Corp.*, No. 17 CIV. 3507 (NRB), 2017 WL 3738444, at *1 (S.D.N.Y. Aug. 9, 2017) (granting competing movant's request for discovery based on evidence contained in the certification regarding potential unique defenses); *Pena v. iBio, Inc.*, 2015 U.S. Dist. LEXIS 10686, at *2-3 (D. Del. Jan. 30, 2015); I*n re Network Assocs. Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1024 (N.D. Cal. 1999) (authorizing a four-hour deposition of two lead plaintiff movants and finding the discovery "illuminating" as to why they were inadequate to represent the class); *Fischler v. AmSouth Bancorporation*, No. 95-1567-Civ-T-17A, 1997 WL 118429, at *3 (M.D. Fla. Feb. 6, 1997) ("uncertainty" or "unanswered questions" about a putative lead plaintiff's ability to properly represent the class are sufficient to trigger the PSLRA's lead plaintiff discovery provision).

A reasonable basis exists to justify limited discovery into the adequacy of Bridgestone. Bridgestone's PSLRA certification and accompanying loss chart, is **proof** of a unique defense that defense counsel will almost certainly make the focus of any forthcoming motion for certification of the

7
GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

class. Notably, these documents show that either Bridgestone did not believe Musk's 12:48 p.m. tweet or purchased its Tesla January 2019 $450 call option contracts before this tweet and therefore has inflated the losses represented to the Court in its loss chart (Dkt. 52-2).

Thus, the Court should first allow Littleton to undertake limited discovery to investigate the extent of the unique defenses that will undoubtedly be raised against Bridgestone if it is appointed as the Lead Plaintiff. *See Barrick Gold Corp.*, 2017 WL 3738444, at *1; *Degulis v. LXR Biotechnology, Inc.*, 176 F.R.D. 123, 127 (S.D.N.Y. 1997) (granting defendants' request for discovery on the proposed class representative's trading strategy as a class representative's typicality can be "affected by any unique defenses relating to an investment strategy.").

Notably, the issues raised by Littleton will undoubtedly be raised by defendants at the class certification stage and these issues are best vetted at this preliminary stage. *See Barrick Gold Corp.*, No. 2017 WL 3738444, at *1.

**D. Littleton Was Not a Net Gainer**

David's argument that Littleton should be disqualified for being a net seller/net gainer is misplaced and reflects that David does not fully appreciate the scope of the claims being asserted in the Actions. Notably, David has defined his version of the "Class Period" to only include purchasers of securities during the period of August 7, 2018 to August 17, 2018. Dkt. No. 80, at 1. This is in stark contrast to broadest class definition of all persons who purchased, sold, or transacted in Tesla securities between August 7, 2018 and August 17, 2018, inclusive. Courts in this Circuit, however, have repeatedly rejected truncating the definition of the class at the lead plaintiff appointment stage, and are especially critical of movant's attempts to restrict the definition of the class to their advantage for appointment. *See e.g. Verifone Holdings, Inc.*, 2008 WL 3925289, at *2 ("shorter class period may simplify the litigation, no benefits accrue by shortening the class period at this stage in the litigation. Indeed, it is unclear why a plaintiff would argue for a shorter class period at this stage, which would have the effect of reducing the class size and limiting the potential amount of damages, unless it was in the best interest of that particular plaintiff only. Consequently, at this stage, the court is wary of arguments advocating a shorter class period instead of the longest potential class period."); *Frias v.*

8
GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

*Dendreon Corp.*, 835 F. Supp. 2d 1067, 1070 (W.D. Wash. 2011) (it would be inappropriate for the court to make a determination shortening the putative class period on a motion to appoint lead plaintiff); *Schueneman v. Arena Pharm., Inc.*, No. 10CV1959 BTM BLM, 2011 WL 3475380, at *1 (S.D. Cal. Aug. 8, 2011) (using most inclusive class period for the purpose of evaluating lead plaintiff motions).

In this case, investors that transacted in Tesla securities during the Class Period were harmed by the artificial prices of Tesla securities as a result of the alleged misrepresentations. Purchasers and sellers of Tesla securities alike suffered damages from their transactions in Tesla securities during August 7, 2018 and August 17, 2018. In fact, Littleton suffered losses as result from both his sales and purchases during this period. Specifically, David's definition of the class definition completely disregards class members who may have opened long or short positions in Tesla's options by selling securities during the August 7, 2018 and August 17, 2018 timeframe, or who suffered damages as a result of selling options during that period to close open positions at a loss as a result of the alleged fraud.

The net seller/net gainer arguments against movants are typically applied to the prototypical securities fraud case concerning long investors in a company's common stock that were harmed by purchasing stock at inflated prices and subsequently hurt by a stock price drop when the truth emerged. The logic of simply summing the purchases/sales of common stock and the funds spent and received during the class period, however, does not hold in the Actions when options and short positions are included. Here, the Actions differ substantially from a typical securities class action as the increase in stock price caused damages to investors who closed their open short option positions as a result of the substantial price increase in Tesla's stock as a result of Musk's statement on August 7, 2018 or when investors with long call positions with exercise prices above $420 were injured as a result of the alleged fraud when they sold their call positions during the class period at times when the option market was affected by Musk's statement that he was thinking to take Tesla private at $420 per share.

The underlying purpose for excluding movants for being a net gainer/net seller is that the "net seller has arguably profited more from the fraud than it has been injured, possibly reducing its incentive to litigate." *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 997 (N.D. Cal. 1999). Littleton,

9
GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

however, lost over $3,518,478 from his transactions during the broadest Class Period when matched using the last-in-first-out methodology. His matched losses shows that Littleton did not profit from the fraud and therefore is typical of other members of the Class. *See e.g. In re AudioEye, Inc. Sec. Litig,* No. CV15163TUCDCBLEAD, 2015 WL 13654027, at *5 (D. Ariz. Aug. 3, 2015) ("the courts in the Ninth Circuit and elsewhere have repeatedly held that a "net seller" can be a lead plaintiff or class representative, as long as it has a recoverable loss."); *Frank v. Dana Corp.,* 237 F.R.D. 171, 173 (N.D. Ohio 2006) (rejecting net seller/net gainer argument as "The City's claims concerning the [movant]'s losses are not well-founded. In its reply memorandum, [movant] notes that it suffered a loss even on its holdings of Dana securities that predated the alleged fraud".); *In re UTStarcom, Inc. Sec. Litig.*, No. C 04-04908 JW, 2010 WL 1945737, at *6 (N.D. Cal. May 12, 2010) (finding movant typical despite arguments he was a net seller and net gainer because when the movant's sales were matched to purchases it showed that movant suffered a net loss). Simply put, Littleton is not a net gainer as result of transactions in Tesla securities during the broadest class definition, and should not be excluded based on David's limited class definition as a net seller and net gainer.[6]

### E. Littleton Was Significantly Damaged By His Long Positions

Johnson argues that Littleton's damages are "almost all in short sales[.]" Dkt. No. 113 at 4. However, Littleton was significantly damaged by his long positions in Tesla securities. In fact, Littleton's net loss from his long positions in Tesla securities is approximately $3,185,205.20. Thus, Littleton's net losses from his short positions corresponds only to $333,373.48 of Littleton's $3,518,478.68 total net losses as a result of his transaction in Tesla securities during the Class Period. Further, just because Littleton traded in options, does not mean that his position is short. In fact, Littleton held long positions in call options, put options, and common stock and was damaged by Musk's fraudulent tweets. Dkt. No. 106 at 9-10. The fact that Littleton has standing for all of these claims *and* short claims, makes him the "most capable of adequately representing the interests of class

---

[6] Even accepting *in arguendo* that the Court accepts David's limited class definition, this would only affect certain of Littleton's Tesla securities. For example, Littleton investment in common stock is not a net seller/net gainer position as his only transaction during the period August 7, 2018 through August 17, 2018, was a purchase of 100 shares.

10
GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

members . . . ." 15 U.S.C. § 78u-4.

**F. Littleton's Losses Were Caused By His Reliance on the Fraudulent Statements**

Defendants' concern that the appointment of a single movant to represent both purchasers and sellers of Tesla securities is unwarranted. Dkt. 105 at 2. Littleton lost a significant amount due to his long and short positions in Tesla securities, *i.e.* his "purchasing" and "selling" of securities. Littleton's losses in both his long and short positions in Tesla were caused by Littleton's reliance on the integrity of the market price when he purchased Tesla securities. Littleton relied on the fraudulent statements by Musk to open long positions in Tesla securities and close his short positions in Tesla securities. Therefore, Littleton's reliance on the fraudulent statements is identical to the rest of the Class. *See Crossen v. CV Therapeutics*, No. C 03-03709 SI, 2005 WL 1910928, at *4 (N.D. Cal. Aug. 10, 2005) (Court found that short sale "does not, on its own, rebut the presumption of reliance."). Courts in this District and others have held that investors in short positions have the same reliance on the integrity of the market price. For example in *Scheicher v. Wendt*, Judge Easterbrook made clear that short sellers rely on the market, just like long investors. 618 F.3d 679, 684 (7th Cir. 2010). Judge Easterbrook explained:

> A person buys stock (goes long) because he thinks the current price too low and expects it to rise; a person sells short (sells today and promises to cover in the market and deliver the shares in the future) because he thinks the price too high and expects it to fall. These positions are mirror images. If a long can participate in a class, so can a short. Both the long and the short are affected by news that influences the price they pay or receive."

*Id.*; *see, e.g., In re Magma Design Automation, Inc. Sec. Litig.*, No. C 05 2394 CRB, 2007 WL 2344992, at *2 (N.D. Cal. Aug. 16, 2007) (Breyer, J.) (certifying class that included short sellers and finding that any difference that exists in terms of actual reliance, or the damages they suffer, does not render class certification improper and can be addressed during subsequent phases of the trial); *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 641 (C.D. Cal. 2009) (rejecting argument that short sellers were not entitled to the fraud on the market presumption at the class certification stage); *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 WL 2151838, at *6 (D. Ariz. July 17, 2009) (stating that "[s]hort-sellers and market makers depend on the market to provide accurate information regarding a

11
GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

company" and "are entitled to a presumption of reliance based on the 'fraud-on-the-market' theory.").[7]

### III. ALTERNATIVELY, LITTLETON SHOULD BE APPOINTED CO-LEAD PLAINTIFF

If the Court declines to appoint Littleton as Lead Plaintiff, the Court should alternatively appoint Littleton as Co-Lead Plaintiff as part of a group of Lead Plaintiffs designed to protect the total interests of the Class. *See Miller v. Ventro Corp.*, No. 01-cv-1287, 2001 WL 34497752, at *9 (N.D. Cal. Nov. 28, 2001) ("[T]he decision to create a separate class or co-lead plaintiffs is within the discretion of the Court").

Appointing Littleton and his counsel to a "co-lead" structure would benefit the class because Littleton would: a) protect the class from unnecessary challenges to the other movants' standing, adequacy, and other unique defenses; and b) represent the individual- and retail-investor members of the class of Tesla shareholders if appointed to the "co-lead" structure. Courts around the country have approved the rationale behind appointing an individual investor to an otherwise institutional-led plaintiff group. As explained time and again, appointing an individual investor as a co-lead plaintiff allows the lead plaintiffs to "represent a broader range of shareholder interests than if the Court appointed an individual or an institutional investor alone." *Yousefi v. Lockheed Martin Corp.,* 70 F. Supp. 2d 1061, 1071 (C.D. Cal. 1999); *accord, e.g., Freudenberg*, 2008 WL 2876373, at *7 (appointing individual investor to protect against potential future conflicts); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. 00-cv-152, 2000 WL 486956, at *3 (D.N.J. Apr. 24, 2000); *Plumbers & Pipefitters Local 51 Pension Fund v. First Bancorp*, 409 F. Supp. 2d 482, 483 (S.D.N.Y. 2006); *Bell v. Ascendant Solutions, Inc.*, No. 01-cv-0166, 2002 WL 638571, at *5 (N.D. Tex. Apr. 17, 2002). Furthermore, due to the different trading positions that Littleton took during the Class Period, he can assist the representation of different constituencies within the class without the number of lead plaintiffs becoming unwieldy or impracticable.

---

[7] *See Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 949 (N.D. Ill. 2007); *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 108-09 (S.D.N.Y. 2004) ("The fact that [short sellers and other traders] have divergent motivations in purchasing shares should not defeat the fraud-on-the-market presumption absent convincing proof that price played no part whatsoever in their decision making.").

12
GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC

**IV.  LITTLETON'S SELECTION OF COUNSEL SHOULD BE APPROVED**

This Court should approve Movant Littleton's selection of Levi & Korsinsky, LLP as Lead Counsel. The PSLRA vests authority in the lead plaintiff to select and retain lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v). Given Levi & Korsinsky, LLP's extensive experience in the securities litigation area, Littleton's choice of counsel should be approved.

**V.  CONCLUSION**

For the foregoing reasons, Movant Littleton respectfully requests that this Court appoint him as lead plaintiff or, alternatively, include him as a co-lead plaintiff in any group of lead plaintiffs who may be appointed.

Dated: October 30, 2018                                  Respectfully submitted,

**LEVI & KORSINSKY, LLP**

/s/ Adam C. McCall
Adam C. McCall (SBN 302130)
Adam M. Apton (SBN 316506)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: 415-291-2420
Email: amccall@zlk.com
Email: aapton@zlk.com

Nicholas I. Porritt (to be admitted pro hac vice)
Alexander A. Krot III (to be admitted pro hac vice)
1101 30th Street, NW, Suite 115
Washington, DC 20007
Tel: 202-524-4290
Email: nporritt@zlk.com

Eduard Korsinsky (to be admitted pro hac vice)
55 Broadway, 10th Floor
New York, New York 10006
Tel: 212-363-7500
Email: ek@zlk.com

*Attorneys for Movant Glen Littleton and
Proposed Lead Counsel for the Class*

13
GLEN LITTLETON'S REPLY TO COMPETING MOTIONS
Nos. 3:18-cv-04865-EMC, 3:18-cv-04876-EMC, 3:18-cv-04912-EMC, 3:18-cv-04939-EMC,
3:18-cv-04948-EMC, 3:18-cv-05258-EMC, 3:18-cv-05463-EMC, 3:18-cv-05470-EMC, and 3:18-cv-05899-EMC