1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  RACHEL L. JENSEN (211456)
   RANDI D. BANDMAN (145212)
3  TRICIA L. McCORMICK (199239)
   655 West Broadway, Suite 1900
4  San Diego, CA  92101-8498
   Telephone:  619/231-1058
5  619/231-7423 (fax)
   rachelj@rgrdlaw.com
6  randib@rgrdlaw.com
   triciam@rgrdlaw.com
7
   LIEFF, CABRASER, HEIMANN
8    & BERNSTEIN, LLP
   ELIZABETH J. CABRASER (83151)
9  RICHARD M. HEIMANN (63607)
   KATHERINE LUBIN (259826)
10 275 Battery Street, 29th Floor
   San Francisco, CA  94111-3339
11 Telephone:  415/956-1000
   415/956-1008 (fax)
12 ecabraser@lchb.com
   rheimann@lchb.com
13 kbenson@lchb.com

14 [Proposed] Lead Counsel for Plaintiff

15                UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                  SAN FRANCISCO DIVISION

18 KALMAN ISAACS, Individually and on          )  Case No. 3:18-cv-04865-EMC
   Behalf of All Others Similarly Situated,    )
19                                             )  CLASS ACTION
                              Plaintiff,       )
20                                             )  DANY DAVID'S REPLY MEMORANDUM
            vs.                                )  IN FURTHER SUPPORT OF HIS MOTION
21                                             )  FOR APPOINTMENT AS LEAD
   ELON MUSK, et al.,                          )  PLAINTIFF
22                                             )
                              Defendants.      )  DATE:      November 15, 2018
23 _____ )  TIME:      1:30 p.m.
                                                  CTRM:      5, 17th Floor
24                                                JUDGE:     Hon. Edward M. Chen

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT ......................................................................................................3

        A.      Mr. David Is An Adequate Lead Plaintiff..............................................3

        B.      Bridgestone, First New York, and Mr. Johnson's Challenges to Certain
                Types of Claims Demonstrate They Cannot Adequately Represent the
                Entire Class ............................................................................................7

        C.      "Niche" Co-Lead Plaintiffs Are Unnecessary and Contrary to the PSLRA ...........8

        D.      The Left Group's Alternative Request to Dismantle the Group
                Undermines Its Attempts to Show Cohesion and Adequacy ................................10

        E.      Mr. David's Selection of Robbins Geller and Lieff Cabraser as Lead
                Counsel Is Appropriate ............................................................................12

III.    CONCLUSION..................................................................................................15

1

**TABLE OF AUTHORITIES**

2

**Page**

3 **CASES**

4 *Abelson v. Strong*,

5     No. 85-0592-S, 1987 U.S. Dist. LEXIS 7515
      (D. Mass. July 30, 1987) .................................................................................................7

6

7 *Andrada v. Atherogenics, Inc.*,
      No. 05 Civ. 00061 (RJH), 2005 U.S. Dist. LEXIS 6777

8     (S.D.N.Y. Apr. 19, 2005) ...............................................................................................6

9 *Applestein v. Medivation, Inc.*,
      No. C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255

10    (N.D. Cal. Sept. 20, 2010) .............................................................................................6

11 *Bodri v. GoPro, Inc.*,
      No. 16-cv-00232-JST, 2016 U.S. Dist. LEXIS 57559

12    (N.D. Cal. Apr. 28, 2016) .............................................................................................10

13 *Borenstein v. Finova Grp.*,
      No. CIV 00-619-PHX-SMM, 2000 U.S. Dist. LEXIS 14732

14    (D. Ariz. Aug. 30, 2000) ................................................................................................8

15 *Buettgen v. Harless*,

16    263 F.R.D. 378 (N.D. Tex. 2009) .................................................................................11

17 *Chahal v. Credit Suisse Grp. AG*,
      No. 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185

18    (S.D.N.Y. June 21, 2018) .............................................................................................14

19 *Chih Teh Shen v. Miller*,

20    212 Cal. App. 4th 48 (2012) .........................................................................................14

21 *Constance Sczesny Trust v. KPMG LLP*,

22    223 F.R.D. 319 (S.D.N.Y. 2004) ....................................................................................9

23 *Crossen v. CV Therapeutics*,
      No. C 03-03709 SI, 2005 U.S. Dist. LEXIS 41396

24    (N.D. Cal. Aug. 10, 2005) ..........................................................................................4, 5

25 *Danis v. USN Commcn's, Inc.*,
      189 F.R.D. 391 (N.D. Ill. 1999) .....................................................................................5

26 *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*,

27    657 F.2d 890 (7th Cir. 1981) ..........................................................................................7

28

**Page**

*Eichenholtz v. Verifone Holdings, Inc.*,
   No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633
   (N.D. Cal. Aug. 22, 2008) ........................................................................................... 7, 8

*Fields v. Biomatrix, Inc.*,
   198 F.R.D. 451 (D.N.J. 2000) ............................................................................................ 5

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) ...................................................................................... 14

*Guohua Zhu v. UCBH Holdings, Inc.*,
   682 F. Supp. 2d 1049 (N.D. Cal. 2010) ........................................................................... 10

*Hall v. Medicis Pharm. Corp.*,
   No. CV-08-1821-PHX-GMS, 2009 U.S. Dist. LEXIS 24093
   (D. Ariz. Mar. 11, 2009) ..................................................................................................... 6

*Hevesi v. Citigroup Inc.*,
   366 F.3d 70 (2d Cir. 2004) ............................................................................................ 9, 10

*Hill v. Accentia Biopharm., Inc.*,
   No. 8:13-cv-1945-T-23EAJ, 2013 U.S. Dist. LEXIS 170982
   (M.D. Fla. Dec. 4, 2013) ................................................................................................... 12

*In re Adobe Sys., Inc. Sec. Litig.*,
   139 F.R.D. 150 (N.D. Cal. 1991) ........................................................................................ 6

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ........................................................................................ 1, 12

*In re Cendant Corp. Litig.*,
   182 F.R.D. 144 (D.N.J. 1998) ............................................................................................. 9

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) .............................................................................................. 12

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods.*
   *Liab. Litig.*, No. 3:17-md-02777-EMC
   (N.D. Cal. June 19, 2017) ............................................................................................. 3, 13

*In re Cohen*,
   586 F.3d 703 (9th Cir. 2009) ............................................................................................ 13

Page

*In re Concord EFS, Inc., Sec. Litig.*,
No. 02-2697 Ma, 2002 U.S. Dist. LEXIS 29610
(W.D. Tenn. Dec. 2, 2002)...................................................................................5

*In re Critical Path*,
156 F. Supp. 2d 1102 (N.D. Cal. 2001) ..............................................................5, 9

*In re Dayco Corp. Derivative Sec. Litig.*,
102 F.R.D. 624 (S.D. Ohio 1984) ......................................................................13

*In re Elan Corp. Sec. Litig.*,
No. 1:08-cv-08761-AKH, 2009 U.S. Dist. LEXIS 39859
(S.D.N.Y. May 11, 2009).....................................................................................6

*In re Enron Corp., Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002).......................................................................10

*In re Fuwei Films Sec. Litig.*,
247 F.R.D. 432 (S.D.N.Y. 2008) .........................................................................9

*In re Galena Biopharma, Inc. Derivative Litig.*,
83 F. Supp. 3d 1033, 1044 (D. Or. 2015) ..........................................................14

*In re LDK Solar Sec. Litig.*,
255 F.R.D. 519 (N.D. Cal. 2009)..........................................................................5

*In re LendingClub Sec. Litig.*,
282 F. Supp. 3d 1171, 1188 (N.D. Cal. 2017) .....................................................5

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
No. 09-cv-0200-PAB-CBS, 2009 U.S. Dist. LEXIS 44706
(D. Colo. May 4, 2009)......................................................................................11

*In re LightInTheBox Holding Co., Sec. Litig.*,
No. 13 Civ. 6016 (PKC), 2013 U.S. Dist. LEXIS 165842
(S.D.N.Y. Nov. 21, 2013)....................................................................................8

*In re Merck & Co. Sec. Litig.*,
432 F.3d 261 (3d Cir. 2005)...............................................................................12

*In re Microstrategy Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2000) ..................................................................6

*In re Network Assocs. Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ............................................................9, 10

**Page**

*In re Oracle Corp. Sec. Litig.*,
  No. C01-0988-MJJ, 2005 U.S. Dist. LEXIS 35723
  (N.D. Cal. Apr. 22, 2005) ....................................................................................13

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618
  (S.D.N.Y. 2015) .................................................................................................11

*In re Priceline.com Inc. Sec. Litig.*,
  236 F.R.D. 89 (D. Conn. 2006)...........................................................................6

*In re Select Comfort Corp. Sec. Litig.*,
  202 F.R.D. 598 (D. Minn. 2001).........................................................................5

*In re Telxon Corp. Sec. Litig.*,
  67 F. Supp. 2d 803 (N.D. Ohio 1999).................................................................10

*In re Terayon Commc'ns Sys., Sec. Litig.*,
  No. C 00-01967 MHP, 2004 U.S. Dist. LEXIS 3131
  (N.D. Cal. Feb. 23, 2004)....................................................................................5

*In re Tesla Motors, Inc. Stockholder Litig.*,
  C.A. No. 12711-VCS (Del. Ch.)..................................................................3, 13, 14

*In re Twitter Inc. Sec. Litig.*,
  No. 16-cv-05314-JST, 2018 U.S. Dist. LEXIS 119153
  (N.D. Cal. July 17, 2018) ....................................................................................12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*,
  No. 3:15-md-02672-CRB (N.D. Cal.) ............................................................3, 13

*Marcus v. J.C. Penney Co., Inc.*,
  No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529
  (E.D. Tex. Feb. 28, 2014) ...................................................................................11

*Margolis v. Caterpillar, Inc., G.A.*,
  815 F. Supp. 1150 (C.D. Ill. 1991) .....................................................................6

*McNamara v. Bre-X Minerals, Ltd.*,
  No. 5:97-CV-159, 2003 U.S. Dist. LEXIS 25641
  (E.D. Tex. Mar. 31, 2003)...................................................................................12

*Niederklein v. PCS Edventures!.com, Inc.*,
  No. 1:10-cv-00479-EJL-CWD, 2011 U.S. Dist. LEXIS 18247
  (D. Idaho Feb. 24, 2011).....................................................................................11

**Page**

*Nursing Home Pension Fund v. Oracle Corp.*,
No. C01-00988 MJJ, 2006 U.S. Dist. LEXIS 94470
(N.D. Cal. Dec. 20, 2006) ...................................................................................4, 13

*Radcliffe v. Hernandez*,
818 F.3d 537 (9th Cir. 2016) .............................................................................14

*Richman v. Goldman Sachs Grp., Inc.*,
274 F.R.D. 473 (S.D.N.Y. 2011) .................................................................13, 14

*Ross v. Abercrombie & Fitch Co.*,
No. 2:05-CV-819, 2007 U.S. Dist. LEXIS 24903
(S.D. Ohio Mar. 22, 2007) .................................................................................11

*Schriver v. Impac Mortg. Holdings, Inc.*,
No. SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607
(C.D. Cal. May 2, 2006) .....................................................................................11

*Smith v. Sperling*,
No. CV-11-0722-PHX-JAT, 2012 U.S. Dist. LEXIS 3672
(D. Ariz. Jan. 11, 2012)......................................................................................14

*Tanne v. Autobytel, Inc.*,
226 F.R.D. 659 (C.D. Cal. 2005) .........................................................................9

*Tsirekidze v. Syntax-Brillian Corp.*,
No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562
(D. Ariz. Apr. 7, 2008).................................................................................1, 11

*Weikel v. Tower Semiconductor, Ltd.*,
183 F.R.D. 377 (D.N.J. 1998) .............................................................................6

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(3)(B)(ii).................................................................................................7
§78u-4(a)(3)(B)(iii)(II) .......................................................................................12

Federal Rules of Civil Procedure
Rule 23 ...........................................................................................................6, 12

I.      **INTRODUCTION**

The Related Actions were initiated when Tesla, Inc.'s stock price fluctuated wildly in connection with: (i) a series of statements Defendant Elon Musk issued on Twitter concerning the prospects of taking Tesla private; (ii) reports that the U.S. Securities and Exchange Commission was making inquiries regarding the veracity of Mr. Musk's tweets; and (iii) Mr. Musk disclosing his use of Ambien to cope with stress during the time leading up to his statements.[1]   The Related Actions were filed on behalf of putative class members who: (i) sold Tesla shares short or traded options (*Dua*); (ii) purchased Tesla securities (*Fan*, *Isaac*, *Yeager*, *Maia*, *Horwitz*); and (iii) purchased or sold Tesla securities (*Sodeifi*, *Left*, *Chamberlain*).

Dany David is the only movant that meets all of the Private Securities Litigation Reform Act of 1995's ("PSLRA") lead plaintiff requirements and is represented by competent and experienced counsel.

Indeed, among the candidates for appointment, Mr. David suffered a substantial loss based on his investment in Tesla securities that fall within ***all*** of the Related Actions' class definitions, and is therefore best positioned to comprehensively and adequately represent the ***entire*** putative class harmed by Defendants' alleged misconduct.   He also exemplifies the type of investor most affected by Mr. Musk's instantly viral tweets, which had an immediate effect on all trading in Tesla securities, including option trades and short or long positions.   Other than noting Mr. David's comparatively smaller financial interest, Mr. David was barely mentioned in any of the opposition briefs.   The nearly unanimous lack of meaningful, substantive opposition to Mr. David's motion – including by the Defendants, Tesla and Mr. Musk – speaks volumes.[2]

---

[1]      The Related Actions are: *Isaac v. Musk*, No. 3:18-cv-04865-EMC; *Chamberlain v. Tesla, Inc.*, No. 3:18-cv-04876-EMC; *Yeager v. Tesla, Inc.*, No. 3:18-cv-04912-EMC; *Maia v. Tesla, Inc.*, No. 3:18-cv-04939-EMC; *Dua v. Tesla, Inc.*, No. 3:18-cv-04948; *Horwitz v. Tesla, Inc.*, No. 3:18-cv-05258-EMC; *Left v. Tesla, Inc.*, No. 3:18-cv-05463-EMC; *Fan v. Tesla, Inc.*, No. 3:18-cv-05470-EMC; and *Sodeifi v. Tesla, Inc.*, 3:18-cv-05899-EMC.   Unless otherwise noted herein, all emphasis is added and citations are omitted.

[2]      *See, e.g.*, *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 U.S. Dist. LEXIS 118562, at *19 (D. Ariz. Apr. 7, 2008) ("The opposing movants make no argument against [the movant with the fourth largest loss], St. Clair other than pointing out its relatively low financial stake in the litigation.   But we have thoroughly applied the *In re Cavanaugh* test, and St. Clair is the first to meet its standards.").

1    By contrast, the remaining applicants that claim to have suffered larger losses than Mr. David

2    should not be appointed because they are all subject to unique defenses that could jeopardize the

3    class as a whole, as illustrated below: [3]

| MOVANT | SHORT SALES | OPTIONS | ORDINARY STOCK PURCHASES | MEETS RULE 23 REQUIREMENTS |
|---|---|---|---|---|
| Mr. David | YES | YES | YES | YES |
| Mr. Littleton | NO | YES | YES | NO<br>Potentially Subject to Unique Defenses<br>Net Seller<br>Net Gainer |
| FNY | NO | YES | YES | NO<br>Potentially Subject to Unique Defenses<br>Attacks Class Members<br>Standing<br>Net Seller<br>Net Gainer |
| Bridgestone | NO | YES | YES | NO<br>Potentially Subject to Unique Defenses<br>Attacks Class Members<br>Net Seller<br>Net Gainer |
| Hedge Fund Grp | YES | NO | NO | NO<br>Potentially Subject to Unique Defenses<br>Standing<br>Aypical Trading |
| Left Grp | YES | YES | YES | NO<br>Potentially Subject to Unique Defenses<br>Improper group<br>Atypical Trader<br>Standing<br>Spokesman Inadequate |
| Mr. Johnson | NO | NO | YES | NO<br>Attacks Class Members |

In seeking to distinguish themselves from the pack and minimize their flaws, several

competing movants (Bridgestone, Mr. Johnson, and First New York) have counterintuitively aligned

themselves with the Defendants in attacking class members that sold Tesla stock short or traded

options despite the fact that these class members fall squarely within the Related Actions' class

definitions. *See* §II.B., *infra.*  In a similar vein, certain movants (First New York, Mr. Johnson, and

---

[3]   The remaining competing movants are: (1) Opportunity Unique Fund Inc. and Tempus
International Fund SPC (the "Hedge Fund Group"); (2) Dr. Abrar Shirazi, PROtecto Informatikai
Szolgáltató Korlátolt Felelősségű Társaság, Thierry Boutin, Andrew E. Left, and Vilas Capital
Management, LLC (the "Left Group"); (3) Glen Littleton; (4) Bridgestone Investment Corporation
Limited; (5) FNY Investment Advisers, LLC ("First New York"); and (6) James Johnson.

1  Mr. Littleton) seek to create a "niche" role for themselves based on the nuances of their individual

2  transactions, which is counterintuitive to the lead plaintiff role, *i.e.*, a representative that is "most

3  capable of adequately representing the interests of class members."  *See* §II.C., *infra*.  Regardless,

4  Mr. David's common stock transactions combined with his short sales and options trades ensure he

5  will advocate for the ***entire*** class's interests rather than a small subset.

6          Mr. David's ability to adequately represent the entire class in the Related Actions is further

7  bolstered by his selection of Robbins Geller Rudman & Dowd LLP and Lieff, Cabraser, Heimann &

8  Bernstein, LLP as counsel – an ideal pairing of trial experienced, highly respected, and accomplished

9  lawyers with a track record of success working together in this District and Court on highly complex

10  litigation, achieving objectively impressive results on behalf of their clients and classes they

11  represent.  *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*,

12  No. 3:15-md-02672-CRB (N.D. Cal.) (Joint Steering Committee) (Ms. Cabraser as lead counsel,

13  along with Mr. Geller as a member of the Steering Committee, achieved $17 billion class result – the

14  largest class action consumer recovery in history); *In re Chrysler-Dodge-Jeep EcoDiesel Mktg.,*

15  *Sales Practices & Prods. Liab. Litig.*, No. 3:17-md-02777-EMC, ECF No. 173 (N.D. Cal. June 19,

16  2017) (appointing Ms. Cabraser as lead counsel, along with Ms. Jensen as a member of the

17  Plaintiffs' Steering Committee).  A movant's suggestion that Mr. David's adequacy is somehow

18  impacted by Robbins Geller's service as one of three co-lead counsel for shareholders in a derivative

19  action involving wholly unrelated claims fails because that representation in the derivative action

20  does not conflict with representation in this securities action.  *See* §II.E., *infra*.

21          In sum, Mr. David and his counsel are fully prepared to pursue litigation on behalf of ***all***

22  proposed class members against Tesla and Mr. Musk in these Related Actions.  Mr. David's motion

23  should be granted.

24  **II.    ARGUMENT**

25          **A.    Mr. David Is An Adequate Lead Plaintiff**

26          All of the nine lead plaintiff movants unanimously asked the Court to consolidate ***all*** of the

27  Related Actions.  ECF Nos. 40, 41, 45, 46, 47, 64, 71, 74 and 80.  While the complaints make

28  similar allegations of wrongdoing against Defendants Tesla and Musk, some seek to represent

1   classes including class members that sold Tesla shares short or traded options, and others purchasers

2   and sellers of Tesla securities.  The appointed lead plaintiff must therefore be able to adequately

3   represent the interests of all proposed class members, whether or not the lead plaintiff himself

4   engaged in each of these type of transactions.  Here, Mr. David is equipped to adequately represent a

5   class that includes all class members without regard to whether Defendants' misconduct impacted

6   them as purchasers, sellers, or both as Mr. David purchased Tesla common stock and options, and

7   also sold Tesla shares short during the Class Period.  *See* ECF No. 81-2.

8          Indeed, the overwhelming majority of courts, including in this District, hold that class

9   members who sell shares short and, ***like Mr. David, also make ordinary purchases of common***

10  ***stock*** (in addition to short sales), are adequate and typical lead plaintiffs.[4]  *See Crossen v. CV*

11  *Therapeutics*, No. C 03-03709 SI, 2005 U.S. Dist. LEXIS 41396, at *16 (N.D. Cal. Aug. 10, 2005).

12         In *Crossen*, the court concluded that as long as the lead plaintiff with short positions also

13  made ordinary purchases of common stock, it was an adequate lead plaintiff.  2005 U.S. Dist. LEXIS

14  41396, at *16-*17 ("Short sales do not in and of themselves render a lead plaintiff's claims

15  atypical," and "a plaintiff may still be entitled to the presumption of reliance if he makes ordinary

16  purchases of common stock and sustains losses on these holdings.").  *Crossen* has since been cited

17  approvingly by other courts in this District in appointing as lead plaintiff purchasers of common

18  stock that also made short sales during the same period.  *See, e.g., In re LDK Solar Sec. Litig.*, 255

19  F.R.D. 519, 533 (N.D. Cal. 2009) (Alsup, J.) (citing *Crossen* and approving class representative who

20  made a sale of call options but also retained a long position); *Nursing Home Pension Fund v. Oracle*

21  *Corp.*, No. C01-00988 MJJ, 2006 U.S. Dist. LEXIS 94470, at *28-*29 (N.D. Cal. Dec. 20, 2006)

22

23

24

25  ───────────────────────
    [4]    In a footnote, Mr. Littleton appears to question the validity of Mr. David's losses from covering
26  shares of the previously sold short shares during the Class Period.  *See* ECF No. 106 at 9-10.  Mr.
    Littleton's speculation that Mr. David covered his short sale before Musk's tweet is just that –
27  unsupported speculation.  It is clear from Mr. David's Certification and loss chart that he covered his
    short positions on August 8, 2018, not August 7, 2018 (the date of Mr. Musk's first tweet).  ECF
28  Nos. 81-2, 81-3.  The losses arising from the covers are a result of Defendants' fraud.

DANY DAVID'S MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT
AS LEAD PLAINTIFF - 3:18-cv-04865-EMC                                                    - 4 -

1    (Jenkins, J.) (appointing lead plaintiff who sold call options but also made "ordinary purchases of

2    common stock"). [5]

3          Indeed, *Crossen* distinguishes the authorities cited by Bridgestone (ECF No. 107 at 12-13)

4    because they address situations where the proposed lead plaintiff engaged primarily in short-selling

5    and did not make any ordinary stock purchases.   2005 U.S. Dist. LEXIS 41396, at *16-*17

6    (distinguishing *In re Critical Path*, 156 F. Supp. 2d 1102, 1109-10 (N.D. Cal. 2001); *In re Terayon*

7    *Commc'ns Sys., Sec. Litig.*, No. C 00-01967 MHP, 2004 U.S. Dist. LEXIS 3131, at *24 (N.D. Cal.

8    Feb. 23, 2004)).  In *Terayon*, Judge Alsup recognized this distinction, noting that while "some short

9    sales may not, in and of themselves render a lead plaintiff's claims atypical" the movants in that case

10   did not make any "ordinary purchases other than those needed to cover their short sales."  2004 U.S.

11   Dist. LEXIS 3131, at *23-*24.  Thus, groups that ***only*** engaged in short sales of Tesla stock (such as

12   the Hedge Fund Group), or those that have "a pattern of affirmatively engaging in campaigns

13   devised to lower the price of the stock" (such as Mr. Left of the Left Group) are subject to unique

14   defenses.  *Id.* at *24. [6]

15         Similarly, Mr. David's options contracts positively affect his ability to serve as lead plaintiff.

16   While Mr. Johnson claims that options traders cannot be appointed to represent a class including

17   shareholders (*see* ECF No. 113 at 6-7), that assertion is misguided as the authorities Mr. Johnson

18   cites rejected lead plaintiff applicants not because they purchased options, but rather because they

---

19   [5]    *See also Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 461 (D.N.J. 2000) ("the Court finds that the
20   fact that [the lead plaintiff movant] may have made some short sales does not render its claims
     atypical of the other plaintiffs in the putative class or subject to unique defenses such that it is
21   incapable of adequately representing the case"); *In re Concord EFS, Inc., Sec. Litig.*, No. 02-2697
     Ma, 2002 U.S. Dist. LEXIS 29610, at *15 (W.D. Tenn. Dec. 2, 2002) ("argument against allowing
22   short-sellers to serve as Lead Plaintiffs . . . remains a minority position"); *Danis v. USN Commcn's,*
     *Inc.*, 189 F.R.D. 391 (N.D. Ill. 1999) (holding that a party's having engaged in some short-selling
23   does not necessarily disqualify it from serving as lead plaintiff where it also lost money in
     conventional trading); *In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 607 n.12 (D. Minn.
24   2001) (citing *Danis* with approval and holding divergent trading strategies of class members do not
     prevent appointment as lead plaintiff).

25   [6]    Judge Alsup's opinion in *In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1188 (N.D. Cal.
26   2017), also declined "to exclude from the class every investor who ever took a short position on
     LendingClub stock." *Id.*  Judge Alsup, however, noted that because the class definition was limited
27   to "individuals who were damaged by their acquisition of LendingClub stock, it automatically
     excludes any short sale profits based on price declines." *Id.*  Because this case specifically includes
28   class members who sold Tesla shares short, *LendingClub* is distinguishable.

1   purchased **only** options, or were the **only class member** to purchase options.  *See, e.g., In re Elan*

2   *Corp. Sec. Litig.*, No. 1:08-cv-08761-AKH, 2009 U.S. Dist. LEXIS 39859, at *6 (S.D.N.Y. May 11,

3   2009) (rejecting a movant that traded "exclusively in call options"); *Andrada v. Atherogenics, Inc.*,

4   No. 05 Civ. 00061 (RJH), 2005 U.S. Dist. LEXIS 6777, at *14 (S.D.N.Y. Apr. 19, 2005) (rejecting

5   movant that purchased only options); *Margolis v. Caterpillar, Inc., G.A.*, 815 F. Supp. 1150, 1156

6   (C.D. Ill. 1991) (finding class representative that purchased only options could only represent a class

7   of options purchasers); *Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 391 (D.N.J. 1998)

8   (plaintiff was the **only** class member who purchased options in private transaction).[7]

9        Courts in this District and around the country regularly recognize this distinction.  *See*

10   *Applestein v. Medivation, Inc.*, No. C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255, at *16 (N.D.

11   Cal. Sept. 20, 2010) (Patel, J.) (options trader met PSLRA's lead plaintiff requirements where he

12   also purchased common stock); *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 155 (N.D. Cal.

13   1991) (Conti, J.) (typicality requirement of Rule 23 was met for options traders, and appointing them

14   class representatives, because there was no arguably unique challenge to standing for options traders

15   and that "since the value of options is directly related to the value of common stock, defendants had

16   reason to expect that option traders would rely on their alleged misrepresentations"); *Hall v. Medicis*

17   *Pharm. Corp.*, No. CV-08-1821-PHX-GMS, 2009 U.S. Dist. LEXIS 24093, at *12-*13 (D. Ariz.

18   Mar. 11, 2009) (appointing options purchaser as lead plaintiff); *In re Priceline.com Inc. Sec. Litig.*,

19   236 F.R.D. 89, 98-99 (D. Conn. 2006) (finding options trader typical and adequate and

20   distinguishing *Andrada* and *Weikel*).

21        Therefore, because Mr. David purchased Tesla common stock and suffered losses on those

22   purchases, his short sales and options trades favorably support his ability to serve as lead plaintiff.

23

24

25

26

---

27   [7]   Mr. Johnson's citation to *In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000), is misplaced because there the court rejected the lead plaintiff movant due to its status as a

28   hedge fund.  Mr. David is not a hedge fund.

**B.**     **Bridgestone, First New York, and Mr. Johnson's Challenges to Certain Types of Claims Demonstrate They Cannot Adequately Represent the Entire Class**

Bridgestone, First New York, and Mr. Johnson did not object to the consolidation of the cases filed on behalf of those class members who: (i) sold Tesla shares short or traded in options (*Dua*); (ii) only purchased Tesla securities (*Fan*, *Isaac*, *Yeager*, *Maia*, *Horwitz*); and (iii) purchased and sold Tesla securities (*Sodeifi*, *Left*, *Chamberlain*).[8]   This makes sense because common questions of fact regarding Defendants' conduct, intent, and duty will be the focus of liability determinations for all types of purchases and trades.   Despite this, in an *ex post facto* attempt to obtain a strategic leg up in connection with their lead plaintiff applications, these three movants now directly attack the claims of those class members who sold Tesla shares short or traded options.   *See* ECF No. 107 (Bridgestone) at 11-13, 21 n.23 (opposing inclusion of short sellers in class);[9] ECF No. 117 (First New York) at 3-4 (opposing inclusion of short sellers in the class); ECF No. 113 (Mr. Johnson) at 6-7 (opposing inclusion of options purchasers).   In taking this position, these movants have oddly aligned themselves with the Defendants.   *See* ECF No. 105.[10]

As Judge Patel recognized in *Eichenholtz*, it runs counter to the class's best interests to narrow the class definition at the lead plaintiff stage:

> The court finds the appropriate class period, for purposes of appointing lead plaintiff, to be August 31, 2006 to December 3, 2007.   Certain plaintiffs propose that the class period used here be limited to March 1, 2007 to December 3, 2007, even though that argument is inimical to the interests of the class members those plaintiffs

---

[8]   Defendants also agree that the Related Actions should be consolidated.   ECF No. 105 at 1. Because consolidation is unanimously supported, the Related Actions should be consolidated before the appointment of a lead plaintiff.   15 U.S.C. §78u-4(a)(3)(B)(ii).

[9]   Bridgestone's motion reserves the right to challenge any lead plaintiff movant who moved in support of a class which included short sellers.   *See* ECF No. 46 at 4 n.4.   But, at the same time, Bridgestone itself moved to consolidate the *Dua* Action, which included those with short positions. No. 3:18-cv-04948-EMC, ECF No. 1 at ¶1.   Thus, if the unopposed consolidation motions are granted, the class will necessarily include investors with short positions and options.

[10]   "There is an irony inherent in defendants' attempts to protect absent class members when their real hope is to deny plaintiffs any recovery."   *Abelson v. Strong*, No. 85-0592-S, 1987 U.S. Dist. LEXIS 7515, at *6 (D. Mass. July 30, 1987); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981) ("[w]hen it comes, for instance, to determining whether 'the representative parties will fairly and adequately protect the interests of the class,' . . . it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house").

DANY DAVID'S MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF - 3:18-cv-04865-EMC                                                                      - 7 -

1
2
3
4

> purportedly represent. Though a shorter class period may simplify the litigation, no benefits accrue by shortening the class period at this stage in the litigation. Indeed, it is unclear why a plaintiff would argue for a shorter class period at this stage, which would have the effect of reducing the class size and limiting the potential amount of damages, unless it was in the best interest of that particular plaintiff only. Consequently, at this stage, the court is wary of arguments advocating a shorter class period instead of the longest potential class period.

5   *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at \*6

6   (N.D. Cal. Aug. 22, 2008).

7          Moreover, having now taken a position that is plainly adverse to the broader class, none of

8   these three movants can adequately protect the interests of the entire class.  *See Borenstein v. Finova*

9   *Grp.*, No. CIV 00-619-PHX-SMM, 2000 U.S. Dist. LEXIS 14732, at \*26-\*27 (D. Ariz. Aug. 30,

10   2000) (appointment of a lead plaintiff movant who opposed inclusion of some class members'

11   claims "would pose a significant risk that the complete interests of all class members would not be

12   fairly and adequately protected"); *In re LightInTheBox Holding Co., Sec. Litig.*, No. 13 Civ. 6016

13   (PKC), 2013 U.S. Dist. LEXIS 165842, at \*12 (S.D.N.Y. Nov. 21, 2013) (rejecting claim that

14   options should not be included in the class where they were included in one of the related actions

15   and "all movants agreed that consolidation of these three cases was appropriate without raising any

16   objection that the Sabile Complaint's class definition was overbroad").

17          Accordingly, in addition to the numerous reasons previously identified in the opposition

18   briefs, because Bridgestone, First New York, and Mr. Johnson have aligned themselves with

19   defendants in seeking to prematurely excise and abandon the claims of certain putative class

20   members, their motions should be denied.

21   **C.     "Niche" Co-Lead Plaintiffs Are Unnecessary and Contrary to the PSLRA**

22

23          Recognizing their own shortcomings, the Left Group, Mr. Littleton, First New York, and Mr.

24   Johnson request the Court to carve out a role for each of them, or assert that their group needs to be

25   appointed to ensure the broadest representation of all possible class member claims.  *See, e.g.*, ECF

26   No. 106 at 6-17 (Mr. Littleton) (claiming he provides broad representation and, at least, should be

27   appointed co-lead); ECF Nos. 108 at 1; 51-4 at ¶¶7, 9 (Left Group) (arguing that their group

28   provides the broadest representation of all class members); ECF No. 117 at 3-4 (First New York)

1    (suggesting that separate representation is required for shareholders and short sellers); ECF No. 113

2    at 1-8 (Mr. Johnson) (arguing that each type of investor needs its own representative).  This request

3    is contrary to the PSLRA.

4         Indeed, "'[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff

5    with standing to sue on every available cause of action.'"  *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659,

6    669 (C.D. Cal. 2005) (quoting *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004)).  In fact,

7    "there is no requirement that a court select as lead plaintiff only a movant with standing to assert

8    every possible claim against every defendant, nor does the presumptive lead plaintiff fail to satisfy

9    the typicality prong if he or she cannot assert every possible claim."  *In re Fuwei Films Sec. Litig.*,

10   247 F.R.D. 432, 438 (S.D.N.Y. 2008).  As such, courts regularly decline to appoint multiple

11   plaintiffs as lead plaintiff in order to have "broad representation" as being contrary to the underlying

12   purpose of the PSLRA.  *See Tanne*, 226 F.R.D. at 670; *In re Network Assocs. Sec. Litig.*, 76 F. Supp.

13   2d 1017, 1031 (N.D. Cal. 1999) (refusing to appoint another movant as lead plaintiff despite the fact

14   that doing so would provide a broader representation of the class); *Critical Path*, 156 F. Supp. 2d at

15   1112 (electing not to appoint a co-lead plaintiff so as "not to dilute the fiduciary responsibility of the

16   lead plaintiff"); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 325 (S.D.N.Y. 2004) ("the

17   interests of [] option investors and shareholders are not sufficiently differentiated to require the

18   appointment of a 'niche' lead plaintiff at this time").

19        Judge Whyte's opinion in *Aronson* is instructive.  There, certain movants sought "to be

20   appointed lead plaintiffs for their 'niche' actions, claiming their causes of action [were] so distinct as

21   to justify appointment of multiple lead plaintiffs."  79 F. Supp. 2d at 1150-51.  Judge Whyte

22   recognized that "[a]lthough each plaintiff undoubtedly has an interest in securing an outcome most

23   favorable to its position, 'every warrior in this battle cannot be a general.'"  *Id*. at 1151 (quoting *In

24   re Cendant Corp. Litig.*, 182 F.R.D. 144, 148 (D.N.J. 1998)).  The "speculations about possible

25   conflicts do not rebut the statutory presumption that one lead plaintiff can vigorously pursue ***all***

26   available causes of action against ***all*** possible defendants under ***all*** available legal theories." *Id*.

27   (emphasis in original)  These requests also overlook the basic fact that Mr. David can – and will –

28

DANY DAVID'S MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT
AS LEAD PLAINTIFF - 3:18-cv-04865-EMC                                                          - 9 -

1  capably represent all of their myriad interests, but without the unique defenses each brings to the

2  table.

3      Nonetheless, should the need arise in the future, additional plaintiffs may be added at class

4  certification.  *See Bodri v. GoPro, Inc.*, No. 16-cv-00232-JST, 2016 U.S. Dist. LEXIS 57559, at *21

5  (N.D. Cal. Apr. 28, 2016) (rejecting the request to appoint a co-lead plaintiff for options purchasers

6  because "'a lead plaintiff is not the same thing as being a class representative, and additional named

7  plaintiffs may be added later to represent subclasses of plaintiffs with distinct interests or claims'");

8  *see also Hevesi*, 366 F.3d at 83 ("the PSLRA does not in any way prohibit the addition of named

9  plaintiffs to aid the lead plaintiff in representing a class").  But that speculative concern is not alone

10  sufficient to justify appointment of a "niche" lead plaintiff now.  *See id*; *In re Enron Corp., Sec.*

11  *Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002); *Network Assocs.*, 76 F. Supp. 2d at 1031 (declining to

12  appoint a co-lead plaintiff because doing so would dilute the fiduciary responsibility of the lead

13  plaintiff).  Certain movants' requests that they be appointed "niche" co-lead plaintiffs should be

14  denied.

15          **D.    The Left Group's Alternative Request to Dismantle the Group
               Undermines Its Attempts to Show Cohesion and Adequacy**
16

17      Those movants that were cobbled together into unrelated groups by counsel to attain the

18  largest loss are not adequate lead plaintiffs.  ECF No. 111 at 11-12 (citing authority).  Defendants

19  agree.  ECF No. 105 at 1-2.

20      Despite expressly filing their motion collectively rather than individually, the Left Group's

21  counsel now seeks to retroactively amend their motion by suggesting that the Court can simply

22  construe their motion as an option between appointing the Group or plucking an individual from

23  within the Group to serve as lead plaintiff.  ECF No. 108 at 22 n.28.  The Court should reject that

24  request.

25      None of the individuals comprising the Left Group timely filed an individual motion for

26  appointment as lead plaintiff.  *See* ECF No. 47 at 1 (moving "collectively").  Any modification to the

27  substance of the motion now is plainly untimely and runs afoul of the PSLRA's strict deadline.  *See*

28  *Guohua Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010) ("The PSLRA is

1    unequivocal and allows for no exceptions."); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818

2    (N.D. Ohio 1999) ("The plain language of the statute precludes consideration of a financial loss

3    asserted for the first time in a complaint, or any other pleading, for that matter, filed ***after*** the sixty

4    (60) day window has closed.") (emphasis in original).

5         Because none of the individuals comprising the groups moved for appointment in their

6    individual capacity their "consideration for appointment as lead plaintiff rises and falls with the

7    group." *Marcus v. J.C. Penney Co., Inc.*, No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529, at *20

8    (E.D. Tex. Feb. 28, 2014) (rejecting group member's request that the court consider him for lead

9    plaintiff appointment separate from the other group members).[11]  In fact, the request to be appointed

10   individually in the alternative only confirms "'a "willingness to abandon the group [and] only

11   suggests how loosely it was put together.""'  *J.C. Penney*, 2014 U.S. Dist. LEXIS 197529, at *20

12   (quoting *Buettgen v. Harless*, 263 F.R.D. 378, 382 (N.D. Tex. 2009); *Tsirekidze*, 2008 U.S. Dist.

13   LEXIS 118562, at *15-*16)); *see also In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 622-24 & n.4

14   (S.D.N.Y. 2015) (appointing single institution as lead plaintiff instead of groups of institutions with

15   larger aggregated losses and noting that although one of the rejected group members had the largest

16   individual financial interest, "it at no time sought to serve as individual lead plaintiff").

17        In sum, neither group here is "entitled to the presumption that [they are] the most adequate

18   plaintiff because [they have] not made the required preliminary showing that [they] would

19   adequately represent the class."  *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC

20   (RNBx), 2006 U.S. Dist. LEXIS 40607, at *28 (C.D. Cal. May 2, 2006).

21

22   _____

     [11]    *In re Level 3 Commc'ns, Inc. Sec. Litig.*, No. 09-cv-0200-PAB-CBS, 2009 U.S. Dist. LEXIS
23   44706, at *15-*17 (D. Colo. May 4, 2009) (finding that group members who failed to move for
     appointment individually could not be considered apart from their group because neither member
24   "satisfies the prerequisite of the Reform Act's lead plaintiff provision that the person 'made a
     motion' in response to the notice of the putative class action"); *Tsirekidze*, 2008 U.S. Dist. LEXIS
25   118562, at *15-*16 (refusing to consider group members individually because the group "moved for
     lead plaintiff as a group and will be evaluated as such"); *Ross v. Abercrombie & Fitch Co.*, No. 2:05-
26   CV-819, 2007 U.S. Dist. LEXIS 24903, at *13 (S.D. Ohio Mar. 22, 2007) ("There is no requirement
     in the [PSLRA] that the Court realign a proposed group to cure a deficiency in adequacy of
27   representation."); *Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479-EJL-CWD, 2011
     U.S. Dist. LEXIS 18247, at *24-*25 (D. Idaho Feb. 24, 2011) (refusing to disband an inappropriate
28   group to appoint one member because they had not moved separately for appointment).

### E.     Mr. David's Selection of Robbins Geller and Lieff Cabraser as Lead Counsel Is Appropriate

While the vast majority of defendants decline to weigh in at the lead plaintiff stage in deference to the plain statutory language indicating their lack of standing, Defendants here made an appearance to ask the Court to decline to permit multiple firms as lead counsel.  ECF No. 105 at 1-2.[12]  Ignoring for the moment the substance of their unusual request, it bears mentioning that "[i]t is in a defendant's best interests to object to class counsel who are, in fact, best suited to protect the class and represent its interests, so that the defendant can seek new class counsel who will more readily compromise the claims of the class." *McNamara v. Bre-X Minerals, Ltd.*, No. 5:97-CV-159, 2003 U.S. Dist. LEXIS 25641, at *52 (E.D. Tex. Mar. 31, 2003).

Nonetheless, Defendants' request is unsupported by the case law in this District.  For example, in *In re Twitter Inc. Securities Litigation*, No. 16-cv-05314-JST, 2018 U.S. Dist. LEXIS 119153, at *23 (N.D. Cal. July 17, 2018), Judge Tigar found "not persuasive" the defendants' opposition to the appointment of co-lead counsel.  *Id.*  In fact, the court explained, "'[i]n certain situations, the appointment of multiple lead counsel may better protect the interests of the plaintiff class.'"  *Id*; *see also id.* ("courts in this district and circuit have appointed co-class counsel in PSLRA cases") (citing cases).  That is the case here: appointment of two firms well-experienced in litigating securities class actions in this District will best serve the interests of the proposed class, in particular where this case represents the first alleging securities fraud arising from a tweet.

Mr. David's chosen counsel, Robbins Geller and Lieff Cabraser, have a proven ability to work effectively together successfully on a number of large, complex cases, including the

---

[12]   The PSLRA's plain language unambiguously states that only "***member[s] of the purported plaintiff class***" may offer evidence to rebut the presumption in favor of the most adequate plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) (finding that the PSLRA "is quite specific on this point, providing that the presumption 'may be rebutted ***only*** upon proof ***by a member of the purported plaintiff class***'" and "the court should not permit or consider any arguments by defendants or non-class members"); *In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 267 (3d Cir. 2005) (reiterating that "weight of authority falls against" defendants' "ability to challenge lead plaintiff selection"); *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("The third step of the process is to give ***other plaintiffs*** an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements.").  Thus, defendants may not "'challenge the appointment of lead plaintiffs and counsel.'"  *Hill v. Accentia Biopharm., Inc.*, No. 8:13-cv-1945-T-23EAJ, 2013 U.S. Dist. LEXIS 170982, at *3 (M.D. Fla. Dec. 4, 2013).

1    *Volkswagen* Action before Judge Breyer and the *Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales*

2    *Practices* Action before this Court. The Defendants will have no difficulty in communicating with

3    Mr. David's lead counsel, and have identified no legitimate concern regarding either Robbins Geller

4    or Lieff Cabraser.  Defendants' request to influence the Court's approval of the lead plaintiff's

5    selection of lead counsel should be disregarded.  *See generally In re Cohen*, 586 F.3d 703, 709 (9th

6    Cir. 2009) (emphasizing that the PSLRA "clearly identifies the most adequate plaintiff as the actor

7    that 'select[s] and retain[s]' class counsel" and "[a]lthough this power is subject to court approval

8    and is therefore not absolute, it plainly belongs to the lead plaintiff").

9           Almost as an after-thought, the Hedge Fund Group challenges not Mr. David's application,

10   but his counsel's, asserting that Robbins Geller cannot serve as lead counsel because it serves, along

11   with two other firms, as co-lead counsel in a derivative action pending in Delaware Chancery Court,

12   *In re Tesla Motors, Inc. Stockholder Litig.*, C.A. No. 12711-VCS (Del. Ch.) (the "Derivative

13   Action").   The feebleness of this contention is self-evident: not even the Defendants challenge

14   Robbins Geller, nor do they suggest Robbins Geller is representing Tesla.

15          Nor could they, as the law is clear that Robbins Geller's representation of shareholders on

16   behalf of nominal Defendant Tesla in a derivative action does not operate as a conflict with their

17   application to serve as lead counsel.  In *Oracle*, the court denied a motion to disqualify counsel

18   representing stockholders in a securities action against Oracle while having represented Oracle in a

19   ***related*** derivative action.  *In re Oracle Corp. Sec. Litig.*, No. C01-0988-MJJ, 2005 U.S. Dist. LEXIS

20   35723, at *6 (N.D. Cal. Apr. 22, 2005).  The court concluded that the representation in the derivative

21   action was not "adverse" to the representation of shareholders in a securities action, and, as a result,

22   "a conflict under California law does not arise."  *Id.*; *see generally In re Dayco Corp. Derivative Sec.*

23   *Litig.*, 102 F.R.D. 624, 630 (S.D. Ohio 1984) ("counsel can represent a stockholder bringing ***both*** an

24   individual ***and*** a derivative action" because playing this dual role is only a "surface duality" that

25   presents a potential for conflict, and is not a conflict per se) (emphasis in original); *Richman v.*

26   *Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 478 (S.D.N.Y. 2011) (rejecting argument that lead

27

28

1    plaintiff movant's counsel was disqualified due to conflict for representing the company in an

2    unrelated derivative action").[13]

3        *Richman* is particularly instructive because this proposed class action and the Derivative

4    Action pending in Delaware Chancery Court are completely unrelated.   Robbins Geller's

5    representation as one of three co-lead counsel in a case involving issues surrounding Tesla's 2016

6    acquisition of SolarCity does not give rise to a conflict were Robbins Geller (and Lieff Cabraser)

7    appointed as lead counsel in this case concerning tweets by Defendant Musk on August 7 and 13,

8    2018.  As a result, the Hedge Fund Group has not demonstrated that even a potential conflict could

9    arise, let alone an existing conflict.[14]  *See Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268

10   (AT)(SN), 2018 U.S. Dist. LEXIS 104185, at *20 (S.D.N.Y. June 21, 2018) ("any conflict of interest

11   must be grounded in fact to rebut the presumption of the most adequate lead plaintiff"); *Foley v.*

12   *Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011) (rejecting competing movant's "remote"

13   argument that law firm's prior representation in an unrelated derivative action involving the

14   defendant was disqualifying, noting that the defendant had not raised the issue and the competing

15   movant's "motive . . . is obvious").[15]

16

17   [13]  Although the Hedge Fund Group cites California's *per se* automatic law that "lawyers cannot

18   represent two clients that are adverse to each other, even where the adversity arises in two unrelated matters," (ECF No. 115 at 9), the Hedge Fund Group ignores clear Ninth Circuit authority holding that California's law regarding "*per se* disqualification when an attorney has been shown to possess

19   a simultaneous conflict of interest in her representation of multiple clients" "does not require automatic disqualification in class action cases."  *Radcliffe v. Hernandez*, 818 F.3d 537, 541, 547

20   (9th Cir. 2016).   Indeed, the California Court of Appeal holds that lawyers representing a shareholder suing derivatively do not form an attorney-client relationship with the corporation

21   simply because the suit is being pursued on behalf of the corporation.  *Chih Teh Shen v. Miller*, 212 Cal. App. 4th 48 (2012).  This is particularly so in the context of a derivative action where plaintiff's

22   counsel is retained by a shareholder and counsel for the company maintains that it represents the corporate entity.  *See* Declaration of Tricia L. McCormick in Support of Dany David's Reply

23   Memorandum in Further Support of His Motion for Appointment as Lead Plaintiff ("Reply Decl."), Ex. A (Notices of Appearance of counsel for Tesla in the Derivative Action).

24   [14]  Regardless, to avoid even the slightest possibility of conflict, Mr. David was made aware of the Derivative Action prior to his retention of Robbins Geller in this action.

25

26   [15]  *See also In re Galena Biopharma, Inc. Derivative Litig.*, 83 F. Supp. 3d 1033, 1044 (D. Or. 2015) (court denying defendants' motion to stay stating that there is no direct conflict but a

27   theoretical one, explaining "Galena's interests in the derivative action conflicts with its interest in the securities class action is formalistic and sacrifices pragmatic common sense"); *Smith v. Sperling*, No.

28   CV-11-0722-PHX-JAT, 2012 U.S. Dist. LEXIS 3672, at *7 (D. Ariz. Jan. 11, 2012) (court denying defendants' motion to stay, stating "[w]hile the concept that the corporation is a Defendant in one

1

**III.    CONCLUSION**

2        Mr. David is the only movant that meets every one of the PSLRA's lead plaintiff

3  requirements.  Mr. David should be appointed sole Lead Plaintiff, his counsel approved as Lead

4  Counsel, and the motions of the competing movants should all be denied in their entirety.

5  DATED:  October 30, 2018                          Respectfully submitted,

6                                                    ROBBINS GELLER RUDMAN
                                                       & DOWD LLP
7                                                    RACHEL L. JENSEN
                                                     RANDI D. BANDMAN
8                                                    TRICIA L. McCORMICK

9
                                                        s/ Tricia L. McCormick
10                                                   TRICIA L. McCORMICK

11                                                   655 West Broadway, Suite 1900
                                                     San Diego, CA  92101-8498
12                                                   Telephone:  619/231-1058
                                                     619/231-7423 (fax)
13
                                                     LIEFF, CABRASER, HEIMANN
14                                                     & BERNSTEIN, LLP
                                                     ELIZABETH J. CABRASER
15                                                   RICHARD M. HEIMANN
                                                     KATHERINE LUBIN
16                                                   275 Battery Street, 29th Floor
                                                     San Francisco, CA  94111-3339
17                                                   Telephone:  415/956-1000
                                                     415/956-1008 (fax)
18
                                                     [Proposed] Lead Counsel for Plaintiff
19

20

21

22

23

24

25

26  action (*Apollo II* - where Plaintiff shareholders claim the corporation itself committed wrongdoing)
    and the Plaintiff in another action (*Apollo III* - where the corporation is claiming its Officers and
27  Directors engaged in wrongdoing) appears at first glance to be a conflict, an actual analysis of the
    possible conflict merely highlights the differences in the procedural posture of the two actions").
28

DANY DAVID'S MEMORANDUM IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT
AS LEAD PLAINTIFF - 3:18-cv-04865-EMC                                                      - 15 -

1

<u>CERTIFICATE OF SERVICE</u>

2

      I hereby certify under penalty of perjury that on October 30, 2018, I authorized the electronic

3

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

4

notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I

5

hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the

6

non-CM/ECF participants indicated on the attached Manual Notice List.

7

                                s/ Tricia L. McCormick
                                 TRICIA L. McCORMICK

8

9

                                 ROBBINS GELLER RUDMAN
                                   & DOWD LLP

10

                                 655 West Broadway, Suite 1900
                                 San Diego, CA  92101-8498
                                 Telephone:  619/231-1058

11

                                 619/231-7423 (fax)

12

                                 E-mail:  tmccormick@rgrdlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28