1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ramzi Abadou (SBN 222567)
KAHN SWICK & FOTI, LLP
912 Cole Street, # 251
San Francisco, California 94117
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

*Counsel for Movant Bridgestone
Investment Corporation Limited
and Proposed Lead Counsel for the Class*

*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| KALMAN ISAACS, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| ELON MUSK and TESLA, INC., | ) ) ) |
| Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 3:18-cv-04865-EMC

CLASS ACTION

BRIDGESTONE INVESTMENT CORPORATION LIMITED'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

Judge:      Hon. Edward M. Chen
Date:       November 15, 2018
Time:       1:30 p.m.
Courtroom:  Courtroom 5 – 17th Floor

WILLIAM CHAMBERLAIN, on behalf of
himself and all other similarly situated,

    Plaintiff,

    v.

TESLA, INC., and ELON MUSK,

    Defendants.

No. 18-cv-04876-EMC

JOHN YEAGER, Individually and on
Behalf of All Others Similarly Situated,

    Plaintiff,

    v.

TESLA, INC. and ELON MUSK,

    Defendants.

No. 18-cv-04912-EMC

CARLOS MAIA, on behalf of himself and
all others similarly situated,

    Plaintiff,

    v.

TESLA, INC. and ELON R. MUSK,

    Defendants.

No. 18-cv-04939-EMC

| | | |
|---|---|---|
| KEWAL DUA, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 18-cv-04948-EMC |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TESLA, INC. and ELON MUSK, | ) ) | |
| Defendants. | ) ) ) ) | |

| | | |
|---|---|---|
| JOSHUA HORWITZ, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 18-cv-05258-EMC |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TESLA, INC. and ELON R. MUSK, | ) ) | |
| Defendants. | ) ) ) ) | |

| | | |
|---|---|---|
| ANDREW E. LEFT, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 18-cv-05463-EMC |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TESLA, INC., and ELON R. MUSK, | ) ) | |
| Defendants. | ) ) ) ) | |

| | |
|---|---|
| ZHI XING FAN, Individually and On Behalf of All Others Similarly Situated, | ) ) No. 18-cv-05470-EMC |
| Plaintiff, | ) ) |
| v. | ) ) |
| TESLA, INC. and ELON R. MUSK, | ) ) |
| Defendants. | ) ) ) |
| | ) |
| SHAHRAM SODEIFI, Individually and on behalf of all others similarly situated, | ) No. 18-cv-05899-EMC ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TESLA, INC., a Delaware corporation, and ELON R. MUSK, an individual, | ) ) ) |
| Defendants. | ) ) |

1

## <u>TABLE OF CONTENTS</u>

2

I.      INTRODUCTION ....................................................................................................1

II.     ARGUMENT ..........................................................................................................5

        A.      The "Most Adequate Plaintiff" Presumption in Bridgestone's Favor Has Not
                Been Rebutted.................................................................................................5

        B.      The Court Should and Need not Appoint Co-Lead Plaintiffs and/or Co-Lead
                Counsel ........................................................................................................10

III.    CONCLUSION.....................................................................................................11

i

# TABLE OF AUTHORITIES

Cases:                                                                    Page(s)

*Andrada v. Atherogenics, Inc.,*
  2005 U.S. Dist. LEXIS 6777 (S.D.N.Y. 2005) ....................................... 3, 6-7

*Andrade v. Am. Apparel Inc.,*
  2011 U.S. Dist. LEXIS 79795 (C.D. Cal. 2011) ..................................... 2

*Aronson v. McKesson HBOC, Inc.,*
  79 F. Supp. 2d 1146 (N.D. Cal. 1999) ............................................... 5, 10

*Basile v. Valeant Pharm. Int'l, Inc.,*
  2015 U.S. Dist. LEXIS 158055 (C.D. Cal. 2015) ............................. 6

*Bodri v. GoPro, Inc.,*
  2016 U.S. Dist. LEXIS 57559 (N.D. Cal. 2016) .............................. 2

*Deutschman v. Beneficial Corp.,*
  132 F.R.D. 359 (D. Del. 1990) ...................................................... 3-4, 6

*Dura Pharmaceuticals, Inc. v. Broudo,*
  544 U.S. 336 (2005) .................................................................... 1

*Ferrari v. Impath, Inc.,*
  2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. 2004) ............................. 5

*Freudenberg v. E*Trade Fin. Corp.,*
  2008 U.S. Dist. LEXIS 62767 (S.D.N.Y. 2008) ............................. 6

*Garbowski v. Tokai Pharm., Inc.,*
  302 F. Supp. 3d 441 (D. Mass. 2018) ........................................... 8

*Gordon v. Sonar Capital Mgmt. LLC,*
  2014 U.S. Dist. LEXIS 111543 (S.D.N.Y. 2014) ........................... 8

*Hall v. Medicis Pharm. Corp.,*
  2009 U.S. Dist. LEXIS 24093 (D. Ariz. 2009) ............................. 3, 6

*Hevesi v. Citigroup Inc.,*
  366 F.3d 70 (2d Cir. 2004) ........................................................ 5, 10, 11

*In re Adobe Sys., Inc. Sec. Litig.,*
  139 F.R.D. 150 (N.D. Cal. 1991) .............................................. 3, 6

*In re Bausch & Lomb Inc. Sec. Litig.,*
  244 F.R.D. 169 (W.D.N.Y. 2007) ............................................... 8

*In re Cavanaugh,*
306 F.3d 726 (9th Cir 2002) ................................................................ *passim*

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001) ................................................................ 2

*In re Cohen v. U.S. Dist. Court for N. Dist. of Cal.,*
586 F.3d 703 (9th Cir. 2009) ................................................ 4, 5, 10, 11

*In re Elan Corp. Sec. Litig.,*
2009 U.S. Dist. LEXIS 39859 (S.D.N.Y. 2009) ................................ 6

*In re Enron Corp., Sec. Litig.,*
206 F.R.D. 427 (S.D. Tex. 2002) ...................................... 4-5, 11

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.,*
209 F.R.D. 447 (C.D. Cal. 2002) ........................................ 8

*In re Glob. Crossing Ltd. Sec. Litig.,*
313 F. Supp. 2d 189 (S.D.N.Y. 2003) .......................... 5, 10, 11

*In re Initial Pub. Offering Sec. Litig.,*
214 F.R.D. 117 (S.D.N.Y. 2002) ........................................ 5

*In re McKesson HBOC, Inc. Sec. Litig.,*
97 F. Supp. 2d 993 (N.D. Cal. 1999) ................................ 7

*In re MicroStrategy Sec. Litig.,*
110 F. Supp. 2d 427 (E.D. Va. 2000) ................................ 7

*In re NTL Sec. Litig.,*
2006 U.S. Dist. LEXIS 5346 (S.D.N.Y. 2006) .................... 7

*In re Outerwall Inc.,*
2017 U.S. Dist. LEXIS 31570 (W.D. Wash. 2017) .............. 4

*In re Priceline.com Inc. Sec. Litig.,*
236 F.R.D. 89 (D. Conn. 2006) ...................................... 3, 7

*In re Salomon Analyst Level 3 Litig.,*
350 F. Supp. 2d 477 (S.D.N.Y. 2004) ............................ 10

*In re Schering-Plough Corp. Sec. Litig.,*
2003 U.S. Dist. LEXIS 26297 (D.N.J. 2003) .................... 7

*In re Sepracor Inc.,*
233 F.R.D. 52 (D. Mass. 2005) ...................................... 3, 6

*In re UTStarcom Sec. Litig.,*
2010 U.S. Dist. LEXIS 48122 (N.D. Cal. 2010) ................ 7

iii

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ................................................................... 5

*Margolis v. Caterpillar, Inc., G.A.*,
    815 F. Supp. 1150 (C.D. Ill. 1991) ............................................................... 7

*Moskowitz v. Lopp*,
    128 F.R.D. 624 (E.D. Pa. 1989) .................................................................. 7

*Perlmutter v. Intuitive Surgical, Inc.*,
    2011 U.S. Dist. LEXIS 16813 (N.D. Cal. 2011) ................................... 1, 8

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*,
    2004 U.S. Dist. LEXIS 27008 (N.D. Cal. 2004) ........................................ 7

*Reinschmidt v. Zillow, Inc.*,
    2013 U.S. Dist. LEXIS 36793 (W.D. Wash. 2013) ................................... 8

*Schueneman v. Arena Pharm., Inc.*,
    2011 U.S. Dist. LEXIS 87373 (S.D. Cal. 2011) ...................................... 10

*Tanne v. Autobytel, Inc.*,
    226 F.R.D. 659 (C.D. Cal. 2005) .............................................................. 10

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
    2007 U.S. Dist. LEXIS 67354 (D. Ariz. 2007) .......................................... 3

*Weikel v. Tower Semiconductor, Ltd.*,
    183 F.R.D. 377 (D.N.J. 1998) ................................................................... 7

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) .............................................................. 10

*Weisz v. Calpine Corp.*,
    2002 U.S. Dist. LEXIS 27831 (N.D. Cal. 2002) ........................................ 7

*Woburn Ret. Sys. v. Omnivision Techs., Inc.*,
    2012 U.S. Dist. LEXIS 21590 (N.D. Cal. 2012) ...................................... 10

*Zlotnick v. TIE Commc'ns*,
    836 F.2d 818 (3d Cir. 1988) ...................................................................... 2

Rules:

Fed. R. Civ. P. 23 .......................................................................... 1, 3, 6, 7

iv

1   **I.   INTRODUCTION**

2          Bridgestone Investment Corporation Limited ("Bridgestone") respectfully submits this reply

3   memorandum of law in further support of its motion for appointment as sole lead plaintiff, and for

4   approval of its selection of Kahn Swick & Foti, LLC as sole lead counsel.  *See* ECF No. 46.

5          On October 9, 2018, nine motions for appointment as lead plaintiff were filed pursuant to the

6   Private Securities Litigation Reform Act of 1995 ('PSLRA").  Seven motions still remain pending.

7   After carefully reviewing the seven responses filed in this Court on October 23, 2018, Bridgestone

8   respectfully submits that it emerges as the investor with the "largest financial interest in the relief

9   sought by the class" that also satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23

10  ("Rule 23").  Further, under *Cavanaugh's* three-part test, the "most adequate plaintiff" presumption

11  in Bridgestone's favor has not been rebutted.  *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir

12  2002) (in the third step, the process becomes "adversarial").

13         As set forth in Bridgestone's omnibus opposition, Tempus/OUF's claimed $15.8 million loss

14  is vastly inflated when calculated, as it must be, under *Dura Pharmaceuticals, Inc. v. Broudo*, 544

15  U.S. 336, 342 (2005); *see* ECF No. 107 at 3-4, 11.  The majority of the August 7, 2018 "cover

16  purchase" losses that Tempus/OUF claim here were due to a pre-Class Period increase in Tesla's

17  share price and untethered to the alleged fraud in this case.  *See* ECF 109-3 at 2.  Under applicable

18  law, therefore, Bridgestone's $3.9 million loss is larger than Tempus/OUF's.  *See Perlmutter v.*

19  *Intuitive Surgical, Inc.*, 2011 U.S. Dist. LEXIS 16813, at *17 (N.D. Cal. 2011) ("recent Ninth

20  Circuit authority favors considering loss causation on a motion for appointment as lead plaintiff.")

21  (Koh, J.); ECF No. 107 at 11 (calculating Tempus/OUF's *Dura*-complaint losses as "$3.393

22  million").[1]  And, of course, as noted by several applicants, Tempus/OUF suffers from a host of other

23  Rule 23 infirmities regarding its Article III standing, short-selling strategy and other major issues

24

25  _____

26  [1]     Indeed, another movant independently and justifiably identified the same issue with

27  Tempus/OUF's overstated claimed loss.  *See* ECF No. 113 at 5 (calculating Tempus/OUF's claimed loss as "$3.386 million").  All emphasis added and internal citations omitted unless otherwise noted.

28                                                          1

that preclude them from being considered the presumptive lead plaintiff.[2]   *See* ECF No. 111 at 5; ECF No. 113 at 5-6; *Cavanaugh*, 306 F.3d at 729 (the presumptive lead plaintiff "is the one who has the greatest financial stake in the outcome of the case, ***so long as*** he meets the requirements of Rule 23.").

The only other applicant that claimed a larger loss than Bridgestone, the Keller/Labaton Group (with an aggregated $4.5 million claimed loss), is clearly not the presumptive lead plaintiff. As set forth in Bridgestone's opposition (ECF No. 107 at 2, 8-9), by other movants (ECF No. 111 at 11-14; ECF No. 113 at 1, n.3) and Defendants themselves (ECF No. 105 at 1), "Northern District of California courts have generally found that 'appointing a group of unrelated investors undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation.'" *Bodri v. GoPro, Inc.*, 2016 U.S. Dist. LEXIS 57559, at *14 (N.D. Cal. 2016).[3]   Further, the Labaton/Kellers Group's largest loser, Andrew E. Left, is atypical, inadequate and subject to myriad "unique defenses" concerning his credibility and apparent market manipulation of Tesla's securities.   *See* ECF No. 107 at 16-17; ECF No. 111 at 19-21; ECF No. 115 at 8.   With Mr. Left disqualified, the Labaton/Keller Group's still inappropriately combined loss drops to approximately $2.9 million.   *See* ECF No. 107 at 9, n. 10.

"Once … the court identifies the plaintiff with the largest stake in the litigation [as should be the case with Bridgestone here], further inquiry must focus on that plaintiff alone and [should] be limited to determining whether he satisfies the other statutory requirements."   *Cavanaugh*, 306 F.3d at 732.   While applicants like Mr. Littleton, Mr. Johnson and Mr. David suggest they are somehow best suited to serve as lead plaintiff here, despite their smaller losses, "[t]his inquiry 'is not a relative one.'"   *Andrade v Am. Apparel Inc.*, 2011 U.S. Dist. LEXIS 79795, at *27 (C.D. Cal. 2011); *see*

---

[2]   *See Zlotnick v. TIE Commc'ns*, 836 F.2d 818, 823 (3d Cir. 1988) (declining to presume reliance on the part of a short seller and stating that "since Zlotnick decided that the market price was not an accurate valuation of the stock at the time of his short sale, we should not presume that it was reasonable for him to rely on the market price at the time of his purchase.").

[3]   While some courts hold that Defendants lack standing at this juncture, *see In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) (holding that "the [district] court should not permit or consider any arguments by defendants or non-class members" at the lead plaintiff stage of the litigation), Bridgestone does not object to Defendants' filing in this matter.  ECF No. 105.

2

1    ECF No. 106 at 7 (Littleton: "Accordingly, as the majority of movants have significant losses, this

2    Court should take a ***broader view*** when appointing Lead Plaintiff …"); ECF No. 113 at 2 (Johnson:

3    "Because he only purchased and sold stock, ***unlike the other movants*** …"); ECF No. 111 at 23

4    (David: "***Regardless of the losses*** claimed by the Hedge Fund Group, Bridgestone, the Left Group,

5    the Kulik Group, First New York, or Mr. Littleton …").  While they try to suggest otherwise, "[t]hat

6    the presumption is rebuttable does not mean that it may be set aside for any reason that the court

7    may deem sufficient."  *Cavanaugh*, 306 F.3d at 729 n.2.  As set forth herein, "[t]he record in the

8    present case is completely void of any such proof [concerning Bridgestone]."  *Teamsters Local 617*

9    *Pension & Welfare Funds v. Apollo Grp., Inc.*, 2007 U.S. Dist. LEXIS 67354, at *20 (D. Ariz.

10   2007).

11   　　　Mr. David and Mr. Johnson – the investors with the two smallest losses before the Court –

12   have challenged Bridgestone for investing in options.  It is a poor argument.  *See In re Priceline.com*

13   *Inc. Sec. Litig.*, 236 F.R.D. 89, 98 (D. Conn. 2006) (certifying options investor under heightened

14   Rule 23 standard); *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 154 (N.D. Cal. 1991) (same)

15   (Conti, J.).  Moreover, in doing so, they each overlook that Bridgestone also suffered losses on its

16   investment in Tesla common stock during the Class Period which distinguishes Bridgestone from

17   investors who invest exclusively in options.  *See, e.g., Andrada v. Atherogenics, Inc.*, 2005 U.S.

18   Dist. LEXIS 6777, at *14 (S.D.N.Y. 2005) ("South Ferry '***only*** purchased call options and not any of

19   the underlying Atherogenics common stock that most putative class members purchased.'")

20   (emphasis original).  Further, courts routinely appoint investors as lead plaintiff who traded ***solely*** in

21   options under the PSLRA – even for a putative class of common stock purchasers. *See Hall v.*

22   *Medicis Pharm. Corp.,* 2009 U.S. Dist. LEXIS 24093, at *12 (D. Ariz. 2009) (collecting cases); *In*

23   *re Sepracor Inc.*, 233 F.R.D. 52, 56 (D. Mass. 2005) (appointing purchaser of options as lead

24   plaintiff for class that included purchasers of all defendant company's equity securities);

25   *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359 (D. Del. 1990) (appointing lead plaintiff who

26

27

28                                              3

purchased only call options to represent class of purchasers of call options and common stock).[4]

The applicant with the next largest loss after Bridgestone, Mr. Littleton, concedes that he does not possess the largest financial interest.  *See* ECF No. 106 at 9 (Littleton's loss chart of remaining movants).  Instead, Mr. Littleton and others with smaller losses, including First New York (ECF No. 117 at 3-4), and Mr. Johnson (ECF No. 113 at 7-9), have now each made eleventh-hour requests to balkanize this litigation with unwieldy "co-lead plaintiff" (and, of course, "co-lead counsel") structures for discrete types of investors (long, short, put and call options, common stock, *etc.*).  Their invitations to have this Court do so, however, would likely constitute error under *In re Cohen v. U.S. Dist. Court for N. Dist. of Cal.*, 586 F.3d 703, 711 n.4 (9th Cir. 2009) (hereinafter, "*Cohen*").[5]

There, in *dicta*, the Ninth Circuit *sua sponte* questioned the propriety of appointing "co-lead" plaintiffs as inconsistent with *Cavanaugh's* three-step process, reasoning: "[a]lthough none of the parties raise the issue, the district court may have erred in appointing 'co-lead plaintiffs,' a practice occasionally employed by district courts … [t]he appointment of multiple lead plaintiffs would also tend to run counter to the sequential inquiry we outlined for selection of lead plaintiff [in *Cavanaugh*]."  *Cohen*, 586 F.3d at 711 n.4; *see In re Outerwall Inc.*, 2017 U.S. Dist. LEXIS 31570, at *28 n.11 (W.D. Wash. 2017) ("In addition, the Ninth Circuit has stated in *dicta* that the PSLRA 'suggest[s] that the district court should appoint only one lead plaintiff' and that appointing more than one lead plaintiff 'would . . . tend to run counter to the sequential inquiry' under *Cavanaugh*.") (emphasis added).

Further, there is simply no need to fracture this litigation with co-lead plaintiffs as "courts ruling on motions for appointment of Lead Plaintiff have usually refused to subdivide classes or appoint separate leadership based on alleged intraclass differences or conflicts." *In re Enron Corp.,*

---

[4]    One applicant, Mr. David (a short seller who suffered the second smallest loss in this matter) challenges Bridgestone for being a "net seller."  He is the only person to do so.  His assertion is factually inaccurate and merits only passing mention.  *See* §II(A), *infra*.

[5]    None of the movants advised this Court of *Cohen* in requesting to be appointed co-lead plaintiff.

*Sec. Litig.*, 206 F.R.D. 427, 446 (S.D. Tex. 2002); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1150-51 (N.D. Cal. 1999) (different claims do "not create the need for a separate lead plaintiff [and counsel]. . .").  Indeed, "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action."  *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004).  "The only other possibility – that the court should cobble together a lead plaintiff group that has standing to sue on all possible causes of action – has been rejected repeatedly … and undermines the purpose of the PSLRA." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 286 (S.D.N.Y. 2003).

Moreover, if appointed, Bridgestone must and will ensure that the interests of all Tesla investors are protected in this case because "Lead Plaintiffs have a responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have distinct interests or claims." *In re Glob. Crossing Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003); *see* ECF No. 107 at 15, n. 16.  Bridgestone, one lead plaintiff represented by one law firm as proposed lead counsel, is the "most adequate plaintiff" under *Cavanaugh's* "sequential inquiry."  *Cohen*, 586 F.3d at 711 n.4.  Its lead plaintiff motion should be granted, and all other motions should be denied.

## II.   ARGUMENT

### A. The "Most Adequate Plaintiff" Presumption in Bridgestone's Favor Has Not Been Rebutted

None of the other six remaining lead plaintiff applicants advance any evidence to rebut the lead plaintiff presumption in Bridgestone's favor.  *See Ferrari v. Impath, Inc.*, 2004 U.S. Dist. LEXIS 13898, at *21-23 (S.D.N.Y. 2004) (PSLRA's rebuttable presumption requires "proof" of inadequacy, not "red-herring[s]" or "innuendo").  Indeed, Mr. Littleton, First New York and others (ECF Nos. 106 at 9; 117 at 5) do not dispute that Bridgestone in fact suffered a larger $3.9 million loss on its purchase and sale of Tesla options and common stock during the putative class period. *See* ECF Nos. 46 at 6; 107 at 15.  The few arguments raised against Bridgestone do not come close to rebutting the presumption in its favor.

***First***, Mr. Johnson, the applicant with the smallest loss before the Court, challenges Bridgestone (and other applicants) for investing in options.  *See* ECF No.  113 at 9-10.  This argument lacks merit as it ignores that, in 1982, Congress amended the definition of "securities" applicable to Rule 10b-5 such as this to explicitly include options: "The term 'security' means . . . .any put, call, straddle, option, or privilege on any security . . .."  *In re Adobe*, 139 F.R.D. at 154 (certifying options investor as typical and adequate under Rule 23); *see Basile v. Valeant Pharm. Int'l, Inc.*, 2015 U.S. Dist. LEXIS 158055, at *28 n.11 (C.D. Cal. 2015) ("The court also notes that 'Congress amended the definition of 'securities' applicable to Rule 10b-5 to explicitly include options.'").

"In light of the Securities Exchange Act's broad definition of 'security,' courts have appointed as lead plaintiffs purchasers of a wide variety of financial instruments. Further, [courts] often appoint purchasers of one type of securities to represent purchasers of other types of securities of the same issuer where the interests of those purchasers are aligned." *Freudenberg v. E*Trade Fin. Corp.*, 2008 U.S. Dist. LEXIS 62767, at *16-17 (S.D.N.Y. 2008); *see In re Sepracor Inc.*, 233 F.R.D. at 56 (appointing purchaser of options as lead plaintiff for class that included purchasers of all defendant company's equity securities); *Beneficial Corp.*, 132 F.R.D. 359 (appointing lead plaintiff who purchased only call options to represent class of purchasers of call options and common stock).

A thoughtful PSLRA ruling from within this Circuit – *Medicis Pharmaceutical Corp.,* 2009 U.S. Dist. LEXIS 24093 – is instructive.  There, the court appointed an investor who invested exclusively in options as lead plaintiff, reasoning that "many courts have appointed options traders as lead plaintiffs to represent the interests of common stockholders."  *Id*. at *12 (collecting cases). Further, because Bridgestone did not invest solely in options, but also suffered common stock losses, the cases Mr. Johnson cites where the investors were scrutinized for investing only in options are distinguishable.  *See In re Elan Corp. Sec. Litig*., 2009 U.S. Dist. LEXIS 39859, at *6 (S.D.N.Y. 2009) (rejecting plaintiff who "traded ***exclusively*** in call options, not common stock or ADRs" and had a smaller financial interest) (emphasis added); *Atherogenics,* 2005 U.S. Dist. LEXIS 6777, at

1   *14 ("South Ferry '*only* purchased call options and not any of the underlying Atherogenics common

2   stock that most putative class members purchased.'").[6]  Bridgestone is therefore subject to none of

3   the Rule 23 issues Mr. Johnson and others advance against it here by virtue of its investment in Tesla

4   common stock and options.  *See In re Priceline.com*, 236 F.R.D. at 98 (certifying options investor

5   under Rule 23); *Moskowitz v. Lopp*, 128 F.R.D. 624, 631 (E.D. Pa. 1989) (holding that plaintiff who

6   used a variety of trading strategies, including options, could rely upon the fraud-on-the-market

7   presumption and was an adequate class representative).

8     ***Next***, Mr. David incorrectly claims that Bridgestone was a "net seller/gainer" of Tesla

9   securities. It is a peculiar argument, particularly given that courts in this district hold that "net

10   sellers/gainers" are typical and adequate under Rule 23.  *See In re UTStarcom Sec. Litig.,* 2010 U.S.

11   Dist. LEXIS 48122, at *19-20 (N.D. Cal. 2010) (rejecting Rule 23 challenge to investor represented

12   by Mr. David's counsel for being "a 'net seller' and a 'net gainer'"); *Plumbers & Pipefitters Local*

13   *572 Pension Fund v. Cisco Sys., Inc.*, 2004 U.S. Dist. LEXIS 27008, at *11, *17 (N.D. Cal. 2004)

14   (certifying net seller as lead plaintiff represented by Mr. David's counsel); *see also In re Schering-*

15   *Plough Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 26297, at *25-27 (D.N.J. 2003); *In re NTL Sec.*

16   *Litig.*, 2006 U.S. Dist. LEXIS 5346, at *41 (S.D.N.Y. 2006) ("Defendants have not shown that

17   Fleck's net sales of NTL stock destroys its typicality for the purposes of class certification.").

18     Further, the cases Mr. David cites are inapposite to Bridgestone, particularly given his

19   concession that Bridgestone is not a net seller of Tesla common stock.  *See ECF No. 111 at 9; see*

20   *Weisz v. Calpine Corp.*, 2002 U.S. Dist. LEXIS 27831, at *26-28 (N.D. Cal. 2002) (addressing net

21   seller argument for common shares, not sales to close stock options); *In re McKesson HBOC, Inc.*

22   *Sec. Litig.*, 97 F. Supp. 2d 993, 996 (N.D. Cal. 1999) (same); *In re Bausch & Lomb Inc. Sec. Litig.*,

23   ────────────────

24   [6] *See also In re MicroStrategy Sec. Litig.*, 110 F. Supp. 2d 427, 436-437 (E.D. Va. 2000)
    (rejecting movant who "specialize[d] in options trading for its own account" because evidence was

25   presented that it was "an atypical investor that engage[d] in transactions far beyond the scope of
    what a typical investor contemplates."). The other cases they cite are based on facts that are

26   blindingly distinct. *See Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 391 (D.N.J. 1998)
    (rejecting putative class representative where there was evidence that his option sales were not

27   openly traded); *Margolis v. Caterpillar, Inc., G.A.*, 815 F. Supp. 1150, 1153 (C.D. Ill. 1991)
    (rejecting putative class representative whose only trades were sales of put options).

28

244 F.R.D. 169, 173-74 (W.D.N.Y. 2007) (same); *Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at *27 (same); *see also* ECF No. 52-5.  Notably, Mr. David did not and could not muster a single case to the contrary because all of Bridgestone's options sales were made to close its open positions. *See* ECF No. 52-5 (properly netting options contracts). Bridgestone's sales proceeds were correctly matched against the cost basis for those options.  A net seller analysis, by contrast, "applies only when a net seller is also a net gainer[,]" which is not the case with Bridgestone here.  *Id.* at 7–10; *see Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at *27; *see also* ECF No. ECF No. 42-2 at 3–4 (Littleton's Loss Chart) (same).

Ultimately, Mr. David conflates "sales proceeds" with "profits" simply in an effort to manufacture the appearance of gains by Bridgestone (and Mr. Littleton) on its investments in options and also overlooks that the *Chamberlain, Left*, and *Sodeifi* actions specifically assert claims on behalf of a seller class of investors.  Thus, the very notion that a so-called "net seller" should not be able to represent a "seller class" of investors defies logic.  *See, generally, Gordon v. Sonar Capital Mgmt. LLC*, 2014 U.S. Dist. LEXIS 111543, at *7-8 (S.D.N.Y. 2014) (denying motion to dismiss for a plaintiff that was a net seller during a "seller" class period).[7]

***Finally***, two movants (the Labaton/Kessler Group and Tempus/OUF) seek to subtly imply that Bridgestone suffered a loss of less than $3.9 million. Their attempted sleight of hand is disingenuous.  *See* ECF Nos. 108 at 22-23; 115 at 1.  The Related Actions proposed numerous different class definitions, including: (i) a purchaser only class (the *Isaacs, Yeager, Maia, Horwitz* and *Fan* actions); (ii) a purchaser and seller class (the *Chamberlain, Left*, and *Sodeifi* actions); and

---

[7]    Further, by purportedly raising this argument, Mr. David has "provided little information for the Court to assess his adequacy to serve as lead plaintiff." *Reinschmidt v. Zillow, Inc.*, 2013 U.S. Dist. LEXIS 36793, at *13 (W.D. Wash. 2013); *see Garbowski v. Tokai Pharm., Inc.*, 302 F. Supp. 3d 441, 449 (D. Mass. 2018) (finding movant's submissions "did not provide sufficient information for the court to decide whether [the movant] satisfied all of the PSLRA's requirements for serving as lead plaintiff"). *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002) (finding that "record contains no evidence that [individual movants] are competent to serve as lead plaintiffs" or "to supervise the . . . attorneys representing them."). On the present record, therefore, it is difficult for the Court – or the competing movants – to make the determination the PSLRA requires of it as to whether Mr. David is qualified or has the necessary capacity to serve as lead plaintiff.

(iii) investors with open short positions or put options (the *Dua* action).  *See* ECF No. 46 at 4; *see also* ECF No. 71 at 3.  In an effort to assist the Court to make a valid financial interest analysis under *Cavanaugh*, Bridgestone provided two separate loss charts, each conforming to different class definitions proposed by the Related Actions, citing the appropriate exhibits.[8]  *See* ECF No. 46 at 6; *Cavanaugh*, 306 F.3d at 730 n.4 (a district court "may select accounting methods that are both rational and consistently applied.").

Further, the Labaton/Kessler Group was only able to make their claim by mismatching Bridgestone's $3.9 million figure to Bridgestone's Exhibit B (ECF No. 52-2) rather than to its Exhibit E (ECF No. 52-5).  *See* ECF No. 108 at 23-24; *c/f with* ECF No. 46 at 6.  After doing so, the Labaton/Kessler Group then suggests that Bridgestone's calculations are incorrect. *See* n. 9, *supra*. In other words, the Labaton/Kessler Group's challenge on this point is premised on an error ***they*** made in reviewing Bridgestone's pleadings.[9]  Ultimately, since the applicants before the Court (including Mr. Littleton and others) used the "purchased or sold" class definition alleged in the pending complaints, Bridgestone's $3.9 million loss figure is based on "established accounting methods," and therefore controls. *Cavanaugh*, 306 F.3d at 730 n.4.

---

[8]    Only Bridgestone presented alternative loss charts conforming to the different class definitions, hoping to assist the Court (and the other movants) to make an "apples to apples" comparisons among the movants.  *See* ECF No. 46 at 6; *see also* ECF Nos. 52-2 and 52-5.  Based on the other movants' loss charts, Bridgestone's $3.9 million loss chart (ECF No. 52-5) provides the comparable methodology.  *See, e.g.* Littleton at ECF No. 42-2 at 3–4; *id.* at 7–10; (both matching class period options "closing" transactions to pre-class period "opening" transactions); *see also* Tempus/OUF at ECF No. 71-5 (matching class period cover purchases to pre-class period short sales).  For similar reasons, Tempus/OUF's wholesale disregard of Bridgestone's $3.9 million loss is improper. *See* ECF No. 115 at 1 (ignoring Bridgestone's $3.9 million loss).

[9]    Ironically, while the Labaton/Kessler Group's opposition inaccurately chastised Bridgestone for making a mistake in its loss calculations (ECF No. 108 at 23-24), the Labaton/Kessler Group's opposition earlier concedes that it ***actually*** erred in submitting its initial loss figure to the Court.  *See* ECF No. 108 at n.5 ("The Tesla Investor Group's revised loss figure reflects the inclusion of certain Class Period options transactions by Vilas Capital Management, LLC ("Vilas Capital"), which were inadvertently omitted from the Tesla Investor Group's initial lead plaintiff application. The inclusion of the options transactions ***reduces*** the Tesla Investor Group's loss by $93,440, or 2% of its overall exposure.").

### B. The Court Should and Need not Appoint Co-Lead Plaintiffs and/or Co-Lead Counsel

"[A] straightforward application of the [PSLRA's] statutory scheme … provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." *Cavanaugh*, 306 F.3d at 732; *Cohen*, 586 F.3d at 711 n.4.  Realizing this, and tacitly acknowledging that they do not possess the largest loss, Mr. Littleton, Mr. Johnson and First New York each now ask the Court to appoint them as "co-lead plaintiffs." *See* ECF Nos. 106 at 16; 113 at 10-12; 117 at 7-9.  Their niche/subclass proposals should be rejected. It is by now Black Letter law that: "'the fact that plaintiffs might have different types of securities does not require a separate class or co-lead plaintiffs because lead plaintiffs need not satisfy all elements of standing with respect to the entire lawsuit under the PSLRA.'" *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 498 (S.D.N.Y. 2004); *Citigroup*, 366 F.3d at 82.[10]

Indeed, consistent with the Second Circuit in *Citigroup*, the Ninth Circuit in *Cohen* has also expressed doubt that it is appropriate to appoint "co-lead plaintiffs" under the PSLRA. *Cohen*, 586 F.3d at 711 n.4 ("the district court may have erred in appointing 'co-lead plaintiffs,' a practice occasionally employed by district courts…[t]he appointment of multiple lead plaintiffs would also tend to run counter to the sequential inquiry we outlined for selection of lead plaintiff [in *Cavanaugh*].");  *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 673 (C.D. Cal. 2005) (rejecting a smaller investor's proposal [like Mr. Littleton's here] that it be appointed as co-lead plaintiff with a larger investor competing to be appointed lead plaintiff); *Schueneman v. Arena Pharm., Inc.*, 2011 U.S. Dist. LEXIS 87373, at *17 (S.D. Cal. 2011) (refusing to appoint co-lead plaintiff); *Woburn Ret. Sys. v. Omnivision Techs., Inc.*, 2012 U.S. Dist. LEXIS 21590, at *19-20 (N.D. Cal. 2012) (same); *McKesson*, 79 F. Supp. 2d at 1150-51; *see also Citigroup*, 366 F.3d at 83 ("the PSLRA does not in

---

[10]     *See also Glob. Crossing,* 313 F. Supp. 2d at 204 ("nothing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims that may be made on behalf of all of the potential classes and subclasses of holders of different categories of security at issue in the case."); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003) ("It is well established that the Lead Plaintiff's claims do not have to be identical to the other class members' claims and in fact, the idea that there should multiple [sic] Lead Plaintiffs with standing to sue on all possible causes of action has been rejected by the Southern District.").

10

1   any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class.").[11]

2   Ultimately, if appointed, Bridgestone will exercise its "responsibility to identify and include

3   named plaintiffs who have standing to represent the various potential subclasses of plaintiff who

4   may be determined, at the class certification stage, to have distinct interests or claims." *Glob.*

5   *Crossing*, 313 F. Supp. 2d at 204.  It is wholly unnecessary, then, and possibly contrary to the law of

6   this Circuit, to complicate this otherwise simple securities fraud case by appointing co-lead

7   plaintiffs.  *See Cohen*, 586 F.3d at 711 n.4; *Citigroup*, 366 F.3d at 83; *Enron*, 206 F.R.D. at 455

8   (appointing a sole lead plaintiff and sole lead counsel and denying appointment of a separate lead

9   plaintiff for purchasers of bonds, preferred stock, and other types of securities).

10  **III.   CONCLUSION**

11  For the foregoing reasons, Bridgestone should be appointed as sole lead counsel and its

12  selection of Kahn Swick & Foti, LLC as sole lead counsel should be approved.

13

14  Dated: October 30, 2018                                   KAHN SWICK & FOTI, LLP

15                                                                          By:___/s/ Ramzi Abadou_____

16                                                                          Ramzi Abadou (SBN 222567)
                                                                            ramzi.abadou@ksfcounsel.com

17                                                                          KAHN SWICK & FOTI, LLP
                                                                            912 Cole Street, # 251

18                                                                          San Francisco, California 94117
                                                                            Telephone: (415) 459-6900

19                                                                          Facsimile: (504) 455-1498

20                                                                          -and-

21
                                                                            KAHN SWICK & FOTI, LLC
22                                                                          Lewis S. Kahn (*pro hac vice to be submitted*)

23                                                                          Alexander L. Burns (*pro hac vice to be submitted*)
                                                                            Alayne K. Gobeille (*pro hac vice to be submitted*)

24                                                                          KAHN SWICK & FOTI, LLC
                                                                            1100 Poydras Street, Suite 3200

25                                                                          New Orleans, Louisiana 70163

26

27  [11]   The other cited "co-lead plaintiff" decisions are either from outside this Circuit or pre-date
    *Cohen*. *See* 586 F.3d at 711 n.4.

28                                                                          11

Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com
alexander.burns@ksfcounsel.com
alayne.gobeille@ksfcounsel.com

*Counsel for Movant Bridgestone Investment
Corporation Limited and Proposed Lead Counsel
for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*/s/ Ramzi Abadou*
RAMZI ABADOU

**Mailing Information for a Case 3:18-cv-04865-EMC Isaacs v. Musk et al**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- Ramzi Abadou
  ramzi.abadou@ksfcounsel.com,dawn.hartman@ksfcounsel.com

- Randi D. Bandman
  randib@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- Jennifer Corinne Bretan
  jbretan@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,aepstein@fenwick.com

- Robert Nicholas Cappucci
  rcappucci@entwistle-law.com,ncasey@entwistle-law.com,ffleming@entwistle-law.com

- Mario Man-Lung Choi
  mchoi@kaplanfox.com

- Andrew John Entwistle
  aentwistle@entwistle-law.com,jbeemer@entwistle-law.com,bbrodeur@entwistle-law.com,sriegert@entwistle-law.com,RArnall@Entwistle-Law.com,ffleming@entwisle-law.com,ncasey@entwistle-law.com,mgayle@entwistle-law.com,rcappucci@entwistle-law.com

- Frederic S. Fox
  FFox@kaplanfox.com

- Eric Marc George
  egeorge@bgrfirm.com,khall@bgrfirm.com,cbonilla@bgrfirm.com

- David William Hall
  dhall@hedinhall.com

- Rachel Lynn Jensen
  rachelj@rgrdlaw.com,e_file_sd@rgrdlaw.com,6139295420@filings.docketbird.com

- Reed R. Kathrein
  reed@hbsslaw.com,peterb@hbsslaw.com,brianm@hbsslaw.com,sf_filings@hbsslaw.com

- Ashley Conrad Keller
  ack@kellerlenkner.com

- Laurence D. King
  lking@kaplanfox.com,spowley@kaplanfox.com,nlee@kaplanfox.com

- Dean S. Kristy
  dkristy@fenwick.com,kayoung@fenwick.com,lkelleybourne@fenwick.com

- Mara Rachelle Ludmer
  mludmer@fenwick.com

- Adam Christopher McCall
  amccall@zlk.com

- Francis P McConville
  fmcconville@labaton.com,kgutierrez@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- Tricia Lynn McCormick
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- Arthur Vincent Nealon
  anealon@entwistle-law.com

- Uri Seth Ottensoser
  so@kellerlenkner.com

- Jennifer Pafiti
  jpafiti@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- Carl Alan Roth
  croth@bgrfirm.com,khall@bgrfirm.com,mbetti@bgrfirm.com

- Marc M. Seltzer
  mseltzer@susmangodfrey.com,ecf-4d2b1f772250@ecf.pacerpro.com,hdanielson@susmangodfrey.com,ecf-67366a65900c@ecf.pacerpro.com

- Michael Walter Stocker
  mikes@hbsslaw.com,sf_filings@hbsslaw.com

- James Matthew Wagstaffe
  wagstaffe@kerrwagstaffe.com,reboredo@kerrwagstaffe.com,bechtol@kerrwagstaffe.com

**Manual Notice List**

The following is the list of attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)