1  Laurence D. King (SBN 206423)
   Mario M. Choi (SBN 243409)
2  **KAPLAN FOX & KILSHEIMER LLP**
   350 Sansome Street, Suite 400
3  San Francisco, CA 94104
   Telephone:  415-772-4700
4  Facsimile:   415-772-4707
   *lking@kaplanfox.com*
5  *mchoi@kaplanfox.com*

6  *Counsel for Movants Tempus International Fund SPC*
   *and Opportunity Unique Fund Inc.*
7
   [Additional Counsel Appear on Signature Page]
8

9
                    **UNITED STATES DISTRICT COURT**
10                  **NORTHERN DISTRICT OF CALIFORNIA**
                    **SAN FRANCISCO DIVISION**
11

12 KALMAN ISAACS, individually and on          Case No.: 3:18-cv-04865-EMC
   behalf of all others similar situated,
13                                             **REPLY MEMORANDUM OF POINTS**
                          Plaintiff,           **AND AUTHORITIES IN FURTHER**
14                                             **SUPPORT OF TEMPUS**
            v.                                 **INTERNATIONAL FUND SPC AND**
15                                             **OPPORTUNITY UNIQUE FUND INC.'S**
   ELON MUSK and TESLA, INC.,                  **MOTION FOR (1) CONSOLIDATION**
16                                             **OF RELATED ACTIONS; (2)**
                          Defendants.          **APPOINTMENT AS LEAD PLAINTIFF;**
17                                             **AND (3) APPROVAL OF THEIR**
                                               **CHOICE OF LEAD COUNSEL**
18
                                               Judge:  Edward M. Chen
19                                             Courtroom:  5
                                               Date:  November 15, 2018
20                                             Time:  1:30 p.m.

21
   [Additional Captions Below]
22

23

24

25

26

27

28

| | |
|---|---|
| WILLIAM CHAMBERLAIN, on behalf of himself and all other similarly situated<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC. and ELON MUSK,<br><br>Defendants. | Case No.:  3:18-cv-04876-EMC |
| JOHN YEAGER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC. and ELON MUSK,<br><br>Defendants. | Case No.:  3:18-cv-04912-EMC |
| CARLOS MAIA, on behalf of himself and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC. and ELON MUSK,<br><br>Defendants. | Case No.:  3:18-cv-04939-EMC |
| KEWAL DUA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC. and ELON MUSK,<br><br>Defendants. | Case No.:  3:18-cv-04948-EMC |

| | |
|---|---|
| JOSHUA HORWITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC. and ELON R. MUSK,<br><br>Defendants. | Case No.:  3:18-cv-05258-EMC |
| ANDREW E. LEFT, Individually and on Behalf of All Other Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., and ELON R. MUSK,<br><br>Defendants. | Case No.:  3:18-cv-05463-EMC |
| ZHI XING FAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TESLA, INC., and ELON R. MUSK,<br><br>Defendants. | Case No.:  3:18-cv-05470-EMC |
| SHAHRAM SODEIFI, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>TESLA, INC., a Delaware corporation, and ELON R. MUSK, an individual,<br><br>Defendants. | Case No.: 3:18-cv-05899-EMC |

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ............................................................................................ 1

II.  ARGUMENT ..................................................................................................................... 1

    A.  Opportunity Has the Authority to Seek Lead Plaintiff Appointment on
         Behalf of Tempus and OUF. ................................................................................ 1

    B.  Tempus and OUF's Purchases of Tesla Common Stock Were Made in
         Reliance on Defendants' Materially False and Misleading Statements. ................. 3

    C.  Tempus and OUF Have Article III Standing to Assert Claims for Damages
         Resulting from Their Investment in Tesla Securities. ............................................. 4

    D.  OUF Is in Good Standing and Has Been Since 2002. .......................................... 5

    E.  Tempus and OUF Are Typical Members of the Proposed Class. ......................... 6

         1.  Short Sellers Like Tempus and OUF That Relied on the Integrity
                of the Market for Tesla Securities Are Typical of Tesla Investors. ............ 7

         2.  Niche Lead Plaintiffs for All Tesla Securities and to Represent
                Each Conceivable Interest Are Contrary to the PSLRA and
                Unnecessary. ......................................................................................... 9

         3.  Speculation of Intra-Class Differences in Timing of Purchases Is
                Not Proof of a Conflict of Interest. ............................................................. 9

          4.  Questions Concerning Loss Causation and Damages Before any
                Fact or Expert Discovery Are Premature. ................................................. 10

    F.  Innuendo and Scurrilous, Unproven Allegations Concerning Daniel
         Dantas Are Irrelevant to OUF and Tempus's Investment in Tesla Securities. ...... 11

    G.  There is No Basis for the Left Group's Request for Discovery. ........................... 13

III.  CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aaronson v. McKesson HBOC, Inc.*,
   79 F. Supp. 2d 1146 (N.D. Cal. 1999) ....................................................................... 9

*Basic v. Levinson*,
   485 U.S. 224 (1988) ................................................................................................... 8

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) .................................................................................... 11

*Bodri v. GoPro, Inc.*,
   No. 16-CV-00232-JST, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) .................... 13

*Constance Sczesny Trust v. KPMG LLP*,
   223 F.R.D. 319 (S.D.N.Y. 2004) ............................................................................... 9

*Cortes v. Mkt. Connect Grp., Inc.*,
   2015 U.S. Dist. LEXIS 133750 (S.D. Cal. Sept. 30, 2015) ..................................... 12

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005) ................................................................................................. 10

*Ganesh, L.L.C. v. Computer Learning Centers, Inc.*,
   183 F.R.D. 487 (E.D. Va. 1998) ................................................................................ 8

*Glauser v. EVIC Career Colleges Holding Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) ........................................................................... 6, 9

*Hodges v. Immersion Corp.*,
   No. C-09-4073 MMC, 2009 U.S. Dist. LEXIS 122565 (N.D. Cal. Dec. 21, 2009) ................ 14

*In re Comput. Memories Sec. Litig.*,
   111 F.R.D. 675 (N.D. Cal. 1986) ............................................................................. 12

*In re CornerStone Propane Ptnrs*,
   No. C 03-2522 MHP, 2006 U.S. Dist. LEXIS 25819 (N.D. Cal. May 3, 2006) ..................... 10

*In re Critical Path, Inc. Sec. Litig.*,
   156 F. Supp. 2d 1102 (N.D. Cal. 2001) ..................................................................... 8

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
   458 F. Supp. 2d 455 (E.D. Mich. 2006) ..................................................................... 9

*In re Enron Corp. Sec. Litig.*
   206 F.R.D. 427 (S.D. Tex. 2002) ............................................................................... 6

*In re LendingClub Sec. Litig.*
   282 F. Supp. 3d 1171 (N.D. Cal. 2017) ..................................................................... 8

**TABLE OF AUTHORITIES - (cont.)**

**Page(s)**

*In re LendingClub Sec. Litig.*,
No. C 16-02627 WHA, 2018 U.S. Dist. LEXIS 44835 (N.D. Cal. Mar. 16, 2018) ................... 8

*In re Magma Design Automation Secs. Litig.*,
No. C 05-2394 CRB, 2007 U.S. Dist. LEXIS 62641 (N.D. Cal. 2007) ..................................... 7

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) ........................................................................................... 3, 14

*In re Network Assocs. Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) .................................................................................... 13

*In re Terayon Communs. Sys., Sec. Litig.*,
No. C 00-01967 MHP, 2004 U.S. Dist. LEXIS 3131 (N.D. Cal. Feb. 23, 2004) ...................... 8

*In re Tyco Int'l, Ltd. Sec. Litig.*,
MDL No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 13390 (D. N.H. Aug. 17, 2000) .............. 11

*In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*,
No. 16-cv-3435, MDL No. 2672 CRB (JSC), 2016 WL 5930844 (N.D. Cal. Oct. 11, 2016).. 14

*Irving Firemen's Relief & Ret. Fund v. Tesco PLC*,
No. 14-cv-8495, 2015 U.S. Dist. LEXIS 38635 (S.D.N.Y. Mar. 19, 2015) .............................. 6

*Luna v. Marvell Tech. Grp., Ltd.*,
No. C 15-05447 WHA, 2017 WL 4865559 (N.D. Cal. Oct. 27, 2017) ..................................... 10

*Murphy v. JBS S.A.*,
No. 17-CV-3084, 2017 U.S. Dist. LEXIS 166262 (E.D.N.Y. Oct. 6, 2017) ............................. 6

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
63 F. Supp. 3d 394 (D. Del. 2014) ........................................................................................... 5

*Roby v. Ocean Power Techs., Inc.*,
No. 14-CV-3799 FLW LHG, 2015 WL 1334320 (D.N.J. Mar. 17, 2015) ................................. 3

*Scheicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010) .................................................................................................... 8

*Takeda v. Turbodyne Techs., Inc.*,
67 F. Supp. 2d 1129 (C.D. Cal. 1999) ..................................................................................... 14

*Weisz v. Calpine Corp.*,
No. 4:02-CV-1200, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) ......................................... 8

*Wood v. Capital One Auto Fin., Inc.*,
2006 U.S. Dist. LEXIS 67513 (E.D. Wis. Sept. 19, 2006) ...................................................... 13

*Zhu v. UCBH Holdings, Inc.*,
682 F. Supp. 2d 1049 (N.D. Cal. 2010) .................................................................................. 14

1

**TABLE OF AUTHORITIES - (cont.)**

2

**Page(s)**

3

*Zlotnick v. Tie Communications & L.W. Kifer*,
    836 F.2d 818 (3d Cir. 1988) ......................................................................................... 8

4

5

**STATUTES**

6

U.S. Constitution
    Article III ................................................................................................................... 4, 5

7

8

15 U.S.C.
    § 78u-4 (Private Securities Litigation Reform Act of 1995 ["PSLRA"]) ..................... 1, 6, 7, 14
    § 78u-4(a)(3)(B)(iii)(II) ................................................................................................ 14
    § 78u–4(a)(3)(B)(iv) ..................................................................................................... 14

9

10

**RULES**

11

Federal Rules of Civil Procedure
    Rule 41(a)(1)(A)(ii) ..................................................................................................... 12
    Rule 41(c) ..................................................................................................................... 12

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Tempus and OUF's Reply MPA in Fur. Supp. of Mo. for Consol.;Appt of Lead Pltf, Approval of Counsel

1    **I.    PRELIMINARY STATEMENT**

2          Recognizing that Tempus International Fund SPC ("Tempus") and Opportunity Unique

3    Fund Inc. ("OUF") are sophisticated institutional investors that have, by far, the largest financial

4    interest in this litigation—with losses of approximately $15.87 million—and are the presumptive

5    lead plaintiff, certain competing movants have engaged in a scorched earth campaign based on

6    speculation and unproven allegations in an effort to convince this Court that Tempus and OUF

7    should not serve as lead plaintiff.  Other movants assert—contrary to the intent of the Private

8    Securities Litigation Reform Act of 1995 ("PSLRA")—that each Tesla Inc. ("Tesla") security and

9    every conceivable interest require separate representation.

10          The competing movants' burden to overcome the presumption that Tempus and OUF are

11    the most adequate plaintiff is heavy, and they have not come close.  Speculation, innuendo and

12    gratuitous mudslinging cannot substitute for the "proof" that is required under the PSLRA to rebut

13    the presumption that Tempus and OUF are the most adequate plaintiff.  As set forth below, each of

14    the speculative arguments are meritless because they are contradicted by facts and well-established

15    law, contradict the intent of the PSLRA, or are based on scurrilous, unproven allegations that are

16    irrelevant to Tempus and OUF's investment in Tesla securities.  Such baseless speculation and

17    argument fall short of "proof" rebutting the presumption that Tempus and OUF are the most

18    adequate plaintiff.  Therefore, Tempus and OUF's motion to be appointed lead plaintiff should be

19    granted, and all competing motions should be denied.

20    **II.    ARGUMENT**

21          **A.    Opportunity Has the Authority to Seek Lead Plaintiff Appointment on
                   Behalf of Tempus and OUF.**

22

23          Movants Bridgestone, David, and the Left Group speculate that Tempus and OUF's

24    investment manager, Opportunity Gestão de Investimentos e Recursos Ltda.'s ("Opportunity")[1],

25    has provided no "corroborative evidence" of authority to act for Tempus and OUF, and that their

26    certifications somehow suffer from "informational deficiencies."  ECF Nos. 108 at 10:19-20; 11-

27    12; 111 at 5.   This is not true.   Consistent with the PSLRA's certification requirements,

28    _____

[1] Opportunity was formerly known as Opportunity Gestão Internacional De Recursos Ltda.

1   Opportunity's authority is set forth in Tempus's and OUF's respective certifications.  ECF Nos. 71-

2   3; 71-4.  The certifications submitted on behalf of Tempus and OUF state that Opportunity is the

3   Investment Manager for Tempus and OUF, and that Opportunity has authority to make the

4   certification to seek lead plaintiff appointment.  ECF Nos. 71-3; 71-4.

5       To definitively answer any questions regarding Opportunity's authority, Tempus and OUF

6   have submitted the Declaration of Gary Linford, a member of the board of Tempus, and the

7   Declaration of Alan Davidson, a member of the board of OUF, that state Opportunity is authorized

8   to bring lawsuits on behalf of Tempus and OUF.  *See* Declaration of Laurence D. King in Support

9   of Tempus and OUF's Reply, dated October 30, 2018 ("10/30/18 King Decl."), Exs. A, B.  In

10  addition, Tempus and OUF have submitted redacted versions of their respective investment

11  management agreements with Opportunity that set forth Opportunity's broad powers as investment

12  manager for Tempus and OUF, including the power and obligation to commence litigation.  The

13  investment management agreement between Opportunity and Tempus states the following:

14      **2. APPOINTMENT AND DUTIES OF THE INVESTMENT MANAGER . . .**

15      2.2 The Investment Manager hereby accepts such appointment and agrees to assume
        the obligations set forth in this Agreement including to . . . (p) on behalf of the Fund,
16      exercise all rights, powers, privileges and other incidents of ownership or possession
        with respect to the Securities and other property and funds held or owned by the
17      Fund, including without limitation the right to possess, lend, transfer, mortgage,
        pledge or otherwise deal in, and to secure the payment of obligations of the Fund by
18      mortgage upon, or hypothecation or pledge of, all or part of the property of the Fund,
        whether at the time owned or thereafter acquired, participate in arrangements with
19      creditors, ***institute and settle or compromise suits*** and administrative proceedings
        and other similar matters . . . .
20

21  10/30/18 King Decl., Ex. C (Investment Management Agreement between Opportunity and

22  Tempus, dated August 12, 2012) (emphasis added).

23      Opportunity's investment management agreement with OUF has substantially similar

24  language:

25      **2. APPOINTMENT AND DUTIES OF THE INVESTMENT MANAGER . . .**

26      2.2 The Investment Manager hereby accepts . . . (r) on behalf of the Fund, exercise
        all rights, powers, privileges and other incidents of ownership or possession with
27      respect to the Securities and other property and funds held or owned by the Fund,
        including without limitation the right to possess, lend, transfer, mortgage, pledge
28

1
2
3

> or otherwise deal in, and to secure the payment of obligations of the Fund by mortgage upon, or hypothecation or pledge of, all or part of the property of the Fund, whether at the time owned or thereafter acquired, participate in arrangements with creditors, ***institute and settle or compromise suits*** and administrative proceedings and other similar matters . . .

4
5

10/30/18 King Decl., Ex. D (Investment Management Agreement between Opportunity and OUF, dated November 28, 2014) (emphasis added).

6
7
8
9
10
11
12
13
14

This evidence, without doubt, establishes Opportunity's authority and proves false the speculation that no such authority exists. *See Roby v. Ocean Power Techs., Inc.*, No. 14-CV-3799 FLW LHG, 2015 WL 1334320, at *9 (D.N.J. Mar. 17, 2015) (finding investment manager had authority where supplemental declarations were submitted that explained the role of the investment manager, which included, *inter alia*, the right "to pursue claims and rights arising out of [the Fund's] ownership interests in its assets"); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 152 n.10 (D. Del. 2005) (appointing foreign "investment advisor/manager" as lead plaintiff after it provided affidavits demonstrating that it had authority to recover damages on behalf of the investors in its funds).

15
16

**B.     Tempus and OUF's Purchases of Tesla Common Stock Were Made in Reliance on Defendants' Materially False and Misleading Statements.**

17
18
19
20
21
22
23

Movants Bridgestone and David question whether Tempus and OUF's Tesla transactions ever took place because they could not find evidence of Tempus and OUF's transactions through publicly available information sources like *Bloomberg* or *Thomson/Reuters.* ECF No. 107 at 13:21-23; ECF No. 111 at 6:6-10.  They speculate that Tempus and OUF either purchased their Tesla shares in an "off-market, private arrangement", on a foreign stock exchange, or were forced to purchase their shares by a margin or collateral call.  ECF No. 107 at 5, 13-14; 111 at 6-7.  None of the speculative arguments are based on proof and should be rejected on this basis alone.

24
25
26
27

To again definitively answer the speculative questions raised by certain competing movants, Tempus and OUF have submitted evidence that demonstrates that their purchases of Tesla common stock were in reliance on Defendants Tesla and Elon Musk's materially false and misleading statements, and that their certifications were accurate.  Accompanying this brief is the Declaration

28

of Marcos Pinheiro, dated October 30, 2018 ("Pinheiro Declaration"), and supporting documents, that set forth the following concerning Tempus and OUF's Tesla transactions:

> 3.      The transactions reflected on Tempus and OUF's certifications submitted to the Court (ECF Nos. 71-3 and 71-4) are based on a report prepared by Credit Suisse, which is consistent with the order to purchase Tesla shares to cover all short positions attached hereto as Exhibit A.

> 4.      Upon further investigation, the prices reflected in the Credit Suisse report and on the Tempus and OUF certifications were average prices for each block of transactions, as the order to purchase was executed in smaller blocks of shares.  Attached as Exhibit B is a transaction by transaction list that comprises the transactions listed in the Credit Suisse report.

> 5.      The purchase of Tesla shares on August 7, 2018 by Tempus and OUF was made in reliance on the materially false and misleading statements made by Elon Musk and Tesla on that day.  The August 7, 2018 purchases were not in any way forced purchases or related to margin calls by a third party.

10/30/18 King Decl., Ex. E (Pinheiro Decl., ¶¶ 3-5).

Furthermore, counsel for Tempus and OUF have compared the detailed transactional data attached to the Pinheiro Declaration to the public data available in *Bloomberg* and confirmed that there is support for all of Tempus and OUF's transactions at the stated amounts and price per share. Considering these facts and the evidence, movants Bridgestone's and David's speculative arguments should be rejected.[2]

### C.      Tempus and OUF Have Article III Standing to Assert Claims for Damages Resulting from Their Investment in Tesla Securities.

Movants Bridgestone and David speculate that Tempus and OUF do not have Article III standing because Tempus and OUF are "not the real parties in interest with standing to serve as

---

[2] The Pinheiro Declaration rebuts the Left Group's rank speculation (including the speculative declaration of its so-called expert), about the nature of Tempus and OUF's transactions in Tesla securities.  ECF No. 108 at 16:24-18:19.

lead plaintiff."  ECF Nos. 111 at 22:5-6; ECF No. 107 at 9-10.  Specifically, movant Bridgestone asserts that "[b]y inexplicably failing to provide a valid assignment of claims to their investment manager in connection with their lead plaintiff motion, Tempus/OUF have failed to demonstrate Constitutional standing under Article III."  ECF No. 107 at 11:6-8.  Movants Bridgestone and David are confused, and their argument makes no sense.

Opportunity, Tempus and OUF's investment manager, is **NOT** seeking to be appointed lead plaintiff.  As set forth above, Opportunity has the power to assert claims on behalf of Tempus and OUF, and therefore, signed their respective certifications.  But Tempus and OUF—who indisputably invested in Tesla securities and were injured by Defendants—are seeking lead plaintiff appointment.  Because Tempus and OUF are seeking lead plaintiff status, the argument that Opportunity should have obtained assignments is nonsensical—there is nothing to assign because Tempus and OUF are the real parties in interest with unequivocal Article III standing.  *See OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014) ("Here, OFI & Timber Hill do not claim that there was an assignment . . . Therefore, the Sun Family's argument that, because there is no proof of assignment, OFI does not have standing under [*W. R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008)] is irrelevant.").

Separately, the Left Group speculates that OUF does not demonstrate Article III standing because it may have purchased Tesla stock for a subsidiary fund.  ECF No. 108 at 13-14.  This is not true.  As set forth in OUF's certification and the Pinheiro Declaration, OUF's investment in Tesla securities was for its own benefit.  *See* Pinheiro Decl., ¶¶ 2-4.

**D.     OUF Is in Good Standing and Has Been Since 2002.**

The Left Group speculates—based on its purported investigation—that there are "serious questions as to whether [OUF] even existed during the Class Period or when its certification was executed" and that there is "scant publicly available information" concerning OUF.  ECF No. 108 at 12-13.  This is not true.  Proof obtained from the Financial Services Commission, Registry of Corporate affairs for the British Virgin Islands shows that OUF has been in good standing since

2002, including during the Class Period and when its certification was signed.  *See* 10/30/18 King Decl., Exs. F, G.[3]

While the documentary evidence submitted by Tempus and OUF puts to rest the speculation raised by the Left Group, its patently deficient investigation, and related-specious argument, call into question the credibility of the Left Group's other speculative arguments.

### E.    Tempus and OUF Are Typical Members of the Proposed Class.

The intent of the PSLRA was for securities class actions to be prosecuted by a lead plaintiff with a significant stake in the outcome of the litigation.  Since the passage of the PSLRA, courts have declined to appoint multiple lead plaintiffs to represent every security at issue in the litigation because that would contravene the main purpose of having a lead plaintiff.  *See In re Enron Corp. Sec. Litig.* 206 F.R.D. 427, 451 (S.D. Tex. 2002) (rejecting arguments by different security holders that separate classes and separate lead counsel were required for each type of security and noting that for purposes of efficiency and fairness to all litigants, "the litigation should proceed as a unified class with a strong Lead Plaintiff, at least until the time for class certification"); *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, No. 14-cv-8495, 2015 U.S. Dist. LEXIS 38635, at *14-16 (S.D.N.Y. Mar. 19, 2015) (stating purpose of the PSLRA's lead plaintiff provision is "to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole" and "[I]f certain class claims cannot be advanced because of standing . . .  issues, this deficiency can be corrected [at the class certification stage] by the designation of other members of the purported class as named plaintiffs or class representatives.") (citing cases)).  To appoint multiple lead plaintiffs would risk fracturing the litigation leadership, involve multiple law firms, and waste the parties and judicial resources—all of which harm the interests of the proposed class. *Glauser v. EVIC Career Colleges Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006) (stating

---

[3] Movant the Left Group speculates that Tempus and OUF's "opaque structure" is suspicious and movant David pejoratively refers to them as "hedge funds".  ECF No. 108 at 10:3-4; ECF No. 111. But such speculation is not proof of inadequacy.  *See Murphy v. JBS S.A.*, No. 17-CV-3084, 2017 U.S. Dist. LEXIS 166262, at *21 (E.D.N.Y. Oct. 6, 2017) (finding speculation about hedging strategy and allegations concerning the potential use of tax havens are mere "speculation and innuendo," not proof).

appointment of co-lead plaintiff "would only serve to fracture the leadership and drive up attorneys['] fees.")

Notwithstanding the PSLRA, several competing movants speculate that separate interests or Tesla securities require separate representation. ECF No. 106 (seeking separate representation for Tesla options traders); ECF No. 113 (seeking separate representation for Tesla investors who were long common stock investors); ECF No. 117 (same). This is both contrary to the intent of the PSLRA and wholly unnecessary because Tempus and OUF as lead plaintiff have no conflicting interests—they, like all members of the proposed class, were harmed by Defendant Musk and Tesla's false and misleading "funding secured" tweet and related representations. Where additional securities, like options, need representation, Tempus and OUF would coordinate with other plaintiffs to ensure that their interests are protected as named plaintiffs or class representatives. This structure is both efficient and consistent with the PSLRA.

As set forth below, the competing movants' speculation that Tempus and OUF are subject to potential unique defenses or conflicts are meritless.

### 1. Short Sellers Like Tempus and OUF That Relied on the Integrity of the Market for Tesla Securities Are Typical of Tesla Investors.

Several competing movants assert that short sellers are inadequate and subject to unique defenses. ECF No. 108 at 16; ECF No. 107 at 4, 12 n.15, 13; ECF No. 113 at 5-6; ECF No. 106 at 8. These arguments are meritless. As set forth in the Pinheiro Declaration (¶ 5), Tempus and OUF's purchases of Tesla common stock was indisputably in reliance on Defendants Tesla and Musk's materially false and misleading statements. Tempus and OUF, like all other investors that acquired Tesla securities, relied on the integrity of the market price when they made their purchases of Tesla securities following the publication of Defendant Tesla and Musk's false and misleading statements.[4]  *See In re Magma Design Automation Secs. Litig.*, No. C 05-2394 CRB, 2007 U.S.

---

[4] While Andrew Left—the titular head of the Left Group—stated, under penalty of perjury, that he "relied upon the materially false and misleading information disseminated by Defendants Musk and Tesla, when I covered my Tesla short positions during the Class Period" (ECF No. 110-7), Left made contradictory statements to CNBC on September 27, 2018. *See* https://www.cnbc.com/video/2018/09/27/im-surprised-shareholders-are-shocked-musk-was-charged-citrons-left.html (last visited Oct. 26, 2018) (Left stating "whether [Musk] was charged or not [by the

Dist. LEXIS 62641, *7 (N.D. Cal. 2007) (Breyer, J.) (certifying class that included short sellers and held that any difference that exists among short sellers and other shareholders in terms of their actual reliance on the alleged misrepresentation, or the damages they suffer does not render class certification improper and can be addressed during subsequent phases of the trial); *Scheicher v. Wendt*, 618 F.3d 679, 684 (7th Cir. 2010) (Easterbrook, J.) (stating that short sellers rely on the market, just like long investors); *see also* Tempus and OUF's Opposition Brief (ECF No. 115), at 5-6 (citing cases stating short sellers rely on the integrity of the market price).[5]

The authorities cited by several of the movants for the proposition that short sellers do not rely on the fraud on the market presumption are arguably no longer good law, are out of circuit authority that is not binding on this Court, or are distinguishable.  *See Zlotnick v. Tie Communications & L.W. Kifer*, 836 F.2d 818 (3d Cir. 1988) (out of circuit decision decided before *Basic v. Levinson*, 485 U.S. 224 (1988)); *In re Terayon Communs. Sys., Sec. Litig.*, No. C 00-01967 MHP, 2004 U.S. Dist. LEXIS 3131, at *24 and n.4 (N.D. Cal. Feb. 23, 2004) (disqualifying short seller who engaged in a pattern of affirmatively engaging in campaigns devised to lower the price of the stock); *Ganesh, L.L.C. v. Computer Learning Centers, Inc.*, 183 F.R.D. 487 (E.D. Va. 1998) (where number of shares shorted exceeded the company's shares outstanding).[6]

---

SEC] I think everyone knew it [Musk's "funding secured" tweet] wasn't true . . . ."), at 1:30-40. This inconsistency calls into serious question Mr. Left's credibility, truthfulness and suitability to represent the proposed class.

[5] Movant Bridgestone's reliance on *In re LendingClub Sec. Litig.* 282 F. Supp. 3d 1171, 1188 (N.D. Cal. 2017), is misplaced.  In *LendingClub*, while Judge Alsup excluded short sellers from a certified class, he noted that "[t]his order declines to exclude from the class every investor who ever took a short position on LendingClub stock . . . It is, however, possible that a short sale could have resulted in a loss (for the short seller) during the class period if, for instance, the short sale occurred during a period in which [there] was a short-term price increase" *Id.*  Notably, for purposes of settlement, Judge Alsup modified his certification order to "to erase the exclusion of 'short sellers who incurred losses during the class period as a result of their short sales.'"  *In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 U.S. Dist. LEXIS 44835, at *11-12 (N.D. Cal. Mar. 16, 2018).

[6] The decisions in *Weisz v. Calpine Corp.*, No. 4:02-CV-1200, 2002 WL 32818827, at *8 (N.D. Cal. Aug. 19, 2002), and *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1109-10 (N.D. Cal. 2001), are factually inapposite because in both cases, the courts found short sales raise the question whether the seller was actually relying on the market price.  Here, as set forth in the Pinheiro Declaration, at ¶ 6, Tempus and OUF purchased Tesla securities in reliance on Defendant Musk's tweet and other materially false and misleading statements of the Defendants and in reliance on the market price.

2.     **Niche Lead Plaintiffs for All Tesla Securities and to Represent Each Conceivable Interest Are Contrary to the PSLRA and Unnecessary.**

In this District and others, courts have found that the purchasers of options, like Littleton, Bridgestone, the Left Group, or David, that have losses only a small fraction of Tempus and OUF, are niche plaintiffs that can be represented by the purchasers of common stock.  The case law is clear that options purchasers can be represented by common stock purchasers.  *Aaronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1150-51 (N.D. Cal. 1999) (rejecting arguments of the niche plaintiffs, including a movant seeking to represent a separate class of options purchasers, that the presumptively most adequate plaintiff would not fairly and adequately protect their interests). The rationale for this rule is well-settled law: "[t]ypicality is established where the claims of the Lead Plaintiff arise from the same course of conduct that gives rise to the claims of the other class members, where these claims are based on the same legal theory, and where the class members and Lead Plaintiff were injured by the same conduct."  *Glauser*, 236 F.R.D. at 189-90; *see also Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 325 (S.D.N.Y. 2004) (rejecting appointment of separate lead plaintiff for options where "the interest of Polaroid options investors and shareholders are not sufficiently differentiated to require the appointment of a "niche" lead plaintiff at this time."); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 458 F. Supp. 2d 455, 462 (E.D. Mich. 2006) ("[T]he Court finds that separate lead plaintiff status and counsel for a separate class of Delphi Trust I claimants is unnecessary in this case . . . segregating out a sub-class of [niche plaintiffs] is wholly unnecessary here where the claims of both the common and preferred stock are all predicated upon the same allegedly false and misleading fraudulent representations and actions . . . .").

3.     **Speculation of Intra-Class Differences in Timing of Purchases Is Not Proof of a Conflict of Interest.**

The Left Group speculates that Tempus and OUF do not have an incentive to represent the interest of all potential class members.  ECF No. 108 at 14-16 (speculating that Tempus and OUF suffer from "misaligned incentives," "skewed front-end losses" and "are economically incentivized to collude with defendants"); ECF No. 110-5 at 13-15.  This argument has been rejected by numerous courts and falls short of proof of required to rebut the presumption that Tempus and OUF

are adequate and typical.  *See Luna v. Marvell Tech. Grp., Ltd.*, No. C 15-05447 WHA, 2017 WL 4865559, at *5 (N.D. Cal. Oct. 27, 2017) (noting "'equity conflict'" is "'present in almost every large, complex securities case'" and would therefore be an inappropriate basis for denial of class certification" and finding argument does not defeat lead plaintiff's showing of adequacy); *In re CornerStone Propane Ptnrs*, No. C 03-2522 MHP, 2006 U.S. Dist. LEXIS 25819, at *22-23 (N.D. Cal. May 3, 2006) ("In *Blackie*, the Ninth Circuit established that when a course of conduct or scheme is alleged and is common to all plaintiffs, it is immaterial whether plaintiffs purchased stock at different times and were affected by different statements or omissions in the general scheme of misconduct . . . a common scheme to defraud is alleged-plaintiffs contend that over a particular time period defendants made false and misleading statements.  Thus any alleged conflicts between earlier and later purchasers do not operate to bar certification.").  In addition to being a legally dubious argument, this argument is factually baseless.  The Left Group fails to identify proof that Tempus and OUF "are not incentivized to fight for the largest possible recovery" and would "collude" with defendants.

Further, speculation that "potentially limited funds" (ECF No. 113 at 6), could give rise to antagonism among members of the class is specious, at best.  There is no evidence in the record that Defendants Tesla and Musk do not have the ability to pay a judgment or that this is a limited fund case.

### 4.    Questions Concerning Loss Causation and Damages Before any Fact or Expert Discovery Are Premature.

Movants Bridgestone and Johnson speculate that Tempus and OUF's loss is limited to the inflation caused by Defendants Tesla and Musk's false and misleading representations, and as a result, Tempus and OUF overstate their financial interest and potential damages in this litigation. ECF No. 113 at 5; ECF No. 107 at 3-4.  This argument is deficient for several reasons.  First, it misapplies *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), which held that investors who purchased and sold at inflated prices (so-called "in-and-out traders"), cannot show loss causation.  544 U.S. 336 at 342 ("if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").  Tempus and OUF

were not "in-and-out traders" because they only purchased Tesla common stock during the Class Period.  *See* ECF Nos. 71-3; 71-4.

Further, assuming the Court were to attempt to quantify damages—which it should not do at the lead plaintiff or class certification stages—Bridgestone's financial interest would be subject to such a limitation and its claimed loss—if any—may be potentially overstated because Bridgestone sold more Tesla securities than it purchased.  *See* ECF No. 111 at 9-11 (analyzing Bridgestone, First New York and Littleton's transactions and finding that they are net sellers who may have gains on their Tesla transactions) (citing cases finding net sellers who have gains are disqualified from serving as lead plaintiff).

Finally, this argument should be rejected because it speculates—before any fact or expert discovery—the amount of damage per share suffered by Tesla shareholders.  Courts have generally declined to consider conflicts, particularly as they regard damages, sufficient to defeat class certification status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit.  *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975); *In re Tyco Int'l, Ltd. Sec. Litig.*, MDL No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 13390, at *32 (D.N.H. Aug. 17, 2000) (rejecting argument that lead plaintiff was inadequate because "two groups 'have different interests when it comes to establishing and apportioning damages.'").

**F.    Innuendo and Scurrilous, Unproven Allegations Concerning Daniel Dantas Are Irrelevant to OUF and Tempus's Investment in Tesla Securities.**

Movants the Left Group, David and Bridgestone speculate that Tempus and OUF's adequacy is impaired based on unproven and scurrilous allegations concerning Daniel Dantas, founder of the Opportunity group of companies.  ECF Nos. 107 at 3 n.4; 108 at 4-7; 111 at 2:5-8. These speculative arguments miss the mark for several reasons.

Mr. Dantas is not seeking to be lead plaintiff, is not a member of the board of directors for Tempus or OUF, and did not sign Tempus or OUF's respective certifications.  *See* 10/30/18 King Decl., Exs. A-B; ECF Nos. 71-3; 71-4.  In fact, Mr. Dantas was not involved in the Tesla transactions.  *See* Pinheiro Decl., ¶ 6.  Even if Mr. Dantas were involved in the Tesla matter, which he is not, a critical fact lost among the competing movants' gratuitous mudslinging is that the

criminal charges brought against Mr. Dantas were annulled in 2011—a decision that was affirmed by the Federal Supreme Court of Brazil in 2015.  *See* 10/30/18 King Decl. Exs. H-I (summary, report and vote annulling Mr. Dantas conviction); Ex. J (extraordinary appeal affirming annulment of criminal charges).

In addition, the civil litigation and forfeiture proceeding cited by the movants were settled or dismissed.  *See Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, No. 05-cv-2745 (S.D.N.Y.) (ECF No. 639) (stipulation and order of dismissal with prejudice pursuant to Rule 41(a)(1)(A)(ii) and 41(c) of the Federal Rules of Civil Procedure, dated April 28, 2008)[7]; *In re Assets in Brown Bros. Harriman & Co. Account #8870792*, No. 08-mc-807 (D.D.C.), ECF Nos. 76-77 (unopposed motion of U.S. government to dismiss, and order dated July 28, 2009 granting motion).

Courts have rejected attempts to rebut the presumption that a plaintiff is the "most adequate plaintiff" based on unproven criminal or civil allegations.  *See Cortes v. Mkt. Connect Grp., Inc*., 2015 U.S. Dist. LEXIS 133750, at *11 (S.D. Cal. Sept. 30, 2015) (rejecting speculation that proposed class representative was inadequate based on unproven allegations and stating the "general rule is that 'unrelated unethical or even criminal conduct is not sufficient to support a finding of inadequacy.'") (internal citation omitted); *In re Comput. Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986) (dismissing attack on putative class representative "based substantially on a federal grand jury indictment for mail fraud and racketeering . . . and on a number of civil law suits brought against [the putative class representative]" where the federal indictment

---

[7] While movants David and the Left Group rely heavily on allegations from the *Int'l Equity* litigation before Judge Kaplan in the United States District Court for Southern District of New York (ECF No. 111 at 7:25-8:8; ECF No. 108 at 4-5), they fail to mention that in the *Int'l Equity* litigation, Opportunity Fund asserted counterclaims for breach of fiduciary duty, fraud, and tortious interference with business relationship (ECF No. 492), against Citigroup, Inc. and others.  On April 18, 2008, the court upheld Opportunity Fund's claims against Citigroup, Inc. and others.  *See Int'l Equity Invs., Inc., v. Opportunity Equity Partners, Ltd.*, No. 05-cv-2745 (S.D.N.Y.), ECF No. 633. Ten days later, the *Int'l Equity* litigation was settled and dismissed with prejudice.  The Left Group cites a civil action in New York State Supreme Court related to the *Int'l Equity* litigation, *Wilson v. Dantas, et al*., Index No. 650915/12 (N.Y. Sup.), (ECF No. 108 at 6 n. 16), but fails to mention that on January 17, 2018, the court granted summary judgment in favor of defendants "in its entirety." *Wilson v. Dantas, et al*., Index No. 650915/12, NYCECF Doc. No. 497.

was subsequently dismissed and all of the civil suits were either settled or dismissed with prejudice).[8]  Indeed, at least one court in this District rejected a challenge to a lead plaintiff's adequacy where the lead plaintiff movant was convicted, but the court found that the conviction had nothing to do with the litigation at issue.  *See Bodri v. GoPro, Inc.*, No. 16-CV-00232-JST, 2016 WL 1718217, at *5 (N.D. Cal. Apr. 28, 2016).  In *GoPro*, Judge Tigar stated that "[t]here is inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud."  *Id.* at *5 (citing *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (Chen, J.) (internal quotation marks omitted)).[9]

Here, Mr. Dantas was not involved in Tempus and OUF's Tesla investment, and assuming *arguendo* he was, his criminal conviction was annulled, and other civil litigation was settled or dismissed long ago.  At best, the competing movants rely on speculation and innuendo based on a now-annulled conviction and unproven allegations—none of which is "proof" required to rebut the presumption that Tempus and OUF are the most adequate plaintiff.

### G.    There is No Basis for the Left Group's Request for Discovery.

The Left Group's request for discovery from Tempus and OUF (ECF No. 108 at 3 n.4, 19), should be denied because they have failed to establish any basis—let alone one that the Court would find reasonable—to assert that Tempus and OUF are incapable of adequately representing the proposed class.  As set forth above, the Left Group's and certain other movant's arguments

---

[8] The Left Group and Bridgestone's reliance on *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999), is misplaced because in *Network Assocs.* a lead plaintiff movant was found to be inadequate, in part, because it was under criminal investigation at the time its motion was pending.  Neither Tempus nor OUF are under criminal investigation, and, as noted above, the unproven allegations concerning Dantas have been settled, dismissed or annulled, and had nothing to do with Tempus and OUF's Tesla investment.

[9] Notably, in *GoPro*, movant David's counsel, the Robbins Geller firm, successfully argued that their client was adequate even though the lead plaintiff's president had **pled guilty** to making false statements.  *See Bodri v. GoPro, Inc.*, No. 16-CV-00232-JST, ECF No. 62 at 2-4 (reply brief filed by Robbins Geller arguing previous unrelated unethical and criminal conduct is insufficient to support a finding of inadequacy); *see also Wood v. Capital One Auto Fin., Inc.*, 2006 U.S. Dist. LEXIS 67513, at *8-*11 (E.D. Wis. Sept. 19, 2006) (finding 16-year old conviction for misappropriating company funds that "has no relation to this case" was irrelevant because "there has been no subsequent conduct to suggest that Wood lacks the personal qualities necessary to represent a class in this civil suit").  Neither Tempus nor OUF have ever been convicted of any crimes.

1
2
concerning Tempus and OUF are based on nothing more than unsubstantiated speculation, innuendo, unproven allegations and argument—not proof.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
Under the PSLRA, "discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iv); *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1055 n.1 (N.D. Cal. 2010) (stating "a movant must 'first demonstrates a reasonable basis" for its assertions of inadequacy. . . Courts are to 'take care to prevent the use of discovery to harass presumptive lead plaintiffs,' something the Reform Act was 'meant to guard against.'") (internal citation omitted).   Speculation and innuendo concerning adequacy or typicality are insufficient to establish the reasonable basis that courts require before authorizing discovery of a lead plaintiff. *See In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, No. 16-cv-3435, MDL No. 2672 CRB (JSC), 2016 WL 5930844, at *5 (N.D. Cal. Oct. 11, 2016) (rejecting request for limited discovery based on speculative allegations; *Hodges v. Immersion Corp.*, No. C-09-4073 MMC, 2009 U.S. Dist. LEXIS 122565, at *12-13 (N.D. Cal. Dec. 21, 2009) (rejecting leave to conduct discovery of lead plaintiff movant's adequacy where discovery proponent failed to demonstrate a reasonable basis for finding that presumptive lead plaintiff was incapable of adequately representing the class).   The Left Group has failed to establish a reasonable basis and its request for discovery should be denied.[10]

21
22
23
24
25
26
[10] Courts routinely reject efforts by defendants—who are adverse to the best interest of the proposed class—to interject their views regarding the selection of lead plaintiff and the nature and scope of the proposed class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (stating presumption of adequacy "may be rebutted only upon proof **by a member of the purported plaintiff class**." (emphasis added); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1138 (C.D. Cal. 1999) ("[D]efendants lack standing to object to the adequacy or typicality of the proposed lead plaintiffs at this preliminary stage of the litigation."). The Court should follow these authorities and strike, or at least ignore, Defendants' response concerning the lead plaintiff selection process and Defendants' commentary on the nature and scope of discovery (which—by their own admission—is premature). ECF No. 105.

27
28
Furthermore, Defendants' questions about Tempus and OUF's foreign domicile is meritless given their substantial financial interest in this litigation. *See Molson Coors Brewing Co.*, 233 F.R.D. at 152 n.10 (rejecting logistical arguments that "Europe is too far away", so lead plaintiff

III.    **CONCLUSION**

For the above reasons, Tempus and OUF respectfully request that the Court: (1) consolidate the Related Actions; (2) appoint Tempus and OUF as Lead Plaintiff; (3) approve Tempus and OUF's selection of Kaplan Fox as Lead Counsel; and (4) deny all other competing motions.

DATED:  October 30, 2018                     Respectfully submitted,

                                            **KAPLAN FOX & KILSHEIMER LLP**

                                            By:     /s/ *Laurence D. King*
                                                    Laurence D.  King

                                            Laurence D. King (SBN 206423)
                                            Mario M. Choi (SBN 243409)
                                            350 Sansome Street, Suite 400
                                            San Francisco, CA 94104
                                            Telephone:  415-772-4700
                                            Facsimile:  415-772-4707
                                            *lking@kaplanfox.com*
                                            *mchoi@kaplanfox.com*

                                            **KAPLAN FOX & KILSHEIMER LLP**
                                            Frederic S. Fox (admitted *pro hac vice*)
                                            Joel B. Strauss (*pro hac vice* to be filed)
                                            Donald R. Hall (*pro hac vice* to be filed)
                                            Jeffrey P. Campisi (*pro hac vice* to be filed)
                                            850 Third Avenue
                                            New York, NY 10022
                                            Telephone:  212-687-1980
                                            Facsimile:  212-687-7714
                                            *ffox@kaplanfox.com*
                                            *jstrauss@kaplanfox.com*
                                            *dhall@kaplanfox.com*
                                            *jcampisi@kaplanfox.com*

                                            *Counsel for Movant Tempus International
                                            Fund SPC and Opportunity Unique Fund Inc.*

---

will be "prevented from making necessary appearances in this Action" because "with a well-heeled institutional party like Metzler, which claims to have losses of over $2 million, that argument deserves no more attention than Plumbers gave it."). If the Court were to appoint Tempus and OUF lead plaintiff, they would prosecute claims on behalf of the proposed class, including discovery, in accord with the Federal Rules of Civil Procedure, the Local Rules, this Court's individual practices and procedures, and applicable precedent of the United States Court of Appeals for the Ninth Circuit.