# EXHIBIT I-1

# Superior Justice Tribunal

[watermark]

**HABEAS CORPUS No. 149.250 - SP (2009/0192565-8)**

| | |
|---|---|
| PETITIONER | : ANDREI ZENKNER SCHMIDT ET AL |
| ATTORNEY | : TIAGO CEDRAZ LEITE OLIVEIRA |
| DEFENDANT | : FEDERAL REGIONAL TRIBUNAL OF THE 3rd REGION |
| CLIENT | : DANIEL VALENTE DANTAS |

## REPORT

**The HON. HON. JUSTICE ADILSON VIEIRA MACABU (JUSTICE CALLED FROM THE TR/RJ) (Rapporteur):**

**ANDREI ZENKNER SCHMIDT ET AL** file *habeas corpus in favor of DANIEL VALENTE DANTAS* against a judgment rendered by the 5th Panel of the Hon. Federal Regional Court of the 3rd Region, thus summarized, *verbis*:

> *"HABEAS CORPUS - PENAL AND CRIMINAL PROCEEDING - PARTICIPATION OF SERVERS OF THE BRAZILIAN INFORMATION AGENCY (ABIN) IN AN INVESTIGATION CONDUCTED BY THE FEDERAL POLICE - ABSENCE OF PRE-ESTABLISHED EVIDENCE - LAW 9.883/99 THAT ALLOWS DATA SHARING BETWEEN BODIES OF THE BRAZILIAN SYSTEM OF INTELLIGENCE - NULLITIES VERIFIED IN THE PRE-PROCEDURAL PHASE DO NOT ADVERSELY AFFECT A FUTURE CRIMINAL ACTION - ORDER DENIED.*
>
> *1. The petitioners did not include in the "writ," sufficient evidence for this Court, at this point, to render a judgment on the participation, or not, of public servants connected to the Brazilian Information Agency (ABIN) in investigative proceedings related to so-called "Operation Satiagraha." And even if, on the assumption of a positive conclusion, said documents do not clarify the extent to which such participation took place, to a point of allowing it to be examined at the present time.*
>
> *2. The petitioning authority denies the participation of ABIN agents in criminal prosecution No. 2008.61.81.008291-3, as well as providing a statement by the police authority that presided over the investigations, which culminated in the complaint filed by the Federal Office of the Attorney General. Regardless of any other elements of conviction, strong enough to prove otherwise, it is a matter of order to respect the information presented by the authority in question, since it was most in direct contact with the facts.*

# Superior Justice Tribunal

[watermark]

*3. Regarding the other investigative procedures it was found that, in relation thereto, there were not enough elements for conviction presented to this Court, sufficient to assess the participation and possible illegality of such activity by the ABIN agents. The petition does not list a single, specific, concrete fact, in which the ABIN agents participated. The information provided by the petitioned authority shows that, if ABIN agents participated in the other investigative procedures that are part of the operation in question, this occurred in secondarily, and does not justify any claim of nullity of evidence, especially since there is no concrete demonstration of damage, as seen in the information already transcribed in this decision. One must bear mind that the basic premise of criminal proceedings is the rule that no nullity can be declared without evidence of damage. Article 563 of the Code of Criminal Procedure is well-founded in this regard.*

*4. There is no evidence of concrete damage experienced by the client, because Brazilian Information Agency public servants, hypothetically, knew about the content of intercepted telephone conversations. It is clear that this fact may even generate the professional accountability of said authority that potentially violated its duty of secrecy, but such a violation does not have the ability to mar the evidence as a whole.*

*5. Law 9.883/99 - which instituted the Brazilian Intelligence System - suggests the possibility of bodies comprising the aforementioned system, to share information and data regarding situations in which the Brazilian government is interested. Both the Federal Police and ABIN are part of the Brazilian Intelligence System, as is inferred from items III and IV of Article 4 of Decree No. 4.376/02, which governs Law 9.883/99.*

# *Superior Justice Tribunal*

[watermark]

*6. The sharing of data and confidential information between agencies in charge of criminal prosecution and other government agencies, is nothing new. Recall that IBAMA (Brazilian Institute for the Environment and Renewable Natural Resources), the Federal Revenue Office, INSS (National Social Security Institute), BACEN (Central Bank of Brazil) and CVM (Brazilian Securities and Exchange Commission) are cited only as an example, and share data with the Federal Police and the Federal Office of the Attorney General, in order to broaden criminal investigations, and this has never caused any confusion or surprise.*

*7. Potential nullities in the pre-procedural phase do not have the potential to mar the criminal action. The Code of Criminal Procedure establishes the dispensability of the Police Investigation (Article 39, § 5), which also corroborates the reasoning that any nullities found in that scope do not mar the criminal action, which is subsequent and ontologically different.*

*8. Order denied." (pp. 2,703-2,705 - vol. 11)*

The case records show that the client was charged with the crime of active bribery, as set forth under Article 333, *caput*, coupled with Article 29, *caput* , both of the Criminal Code.

In lengthy reasoning, the petitioners claim, in short, that:

a) Operation Satiagraha is the result of an informal criminal investigation carried out beyond a police investigation, which was improperly replaced by the clandestine actions of the Brazilian Intelligence Agency - ABIN and by a private investigator hired by Police Chief Protógenes Queiroz - responsible for the operation;

a.1) violation of Articles 144, § 1, IV, of the Federal Constitution and 4, of the Code of Criminal Procedure is mentioned, adding that, although the Brazilian Intelligence Agency - ABIN carried out, by people at its service, telephone and telematic surveillance, to detriment of the client, in the period between February 2007 and early 2008, the Federal Police Department only started the investigation on 06/25/08;

b) clandestine and illegal nature of the investigation proven by:

b.1) the "informality" both in the request and in the execution of the activities carried out by ABIN;

# Superior Justice Tribunal

[watermark]

b.2) the clandestine funding of the operation by ABIN, through the use, in fact, of so-capped VS - "secret funds";

b.3) the manipulation, by ABIN, of audio and e-mail files considered confidential;

b.4) the interception and analysis of e-mails exchanged between the legal department of Banco Opportunity, indicating ABIN's surveillance of actions by its lawyers;

b.5) the illegal access, by ABIN, to the data of Banco Opportunity's HDs, considered confidential;

b.6) illegal access, by ABIN, to the Surveillance System, using passwords provided by federal police;

b.7) surveillance acts, typical of the Criminal Investigation Department, carried out by ABIN,;

b.8) carrying out concealed measures (photography and filming) involving the privacy of the investigated persons, including through the use of an ABIN technical vehicle.

c) abusive and illegal government interference in the area of private life, privacy, honor and image, submitting the client as an 'object' of investigations, thus violating the Principle of Human Dignity, as well as obtaining unlawful evidence, because such evidence was obtained contrary to legal provisions.

The petitioners maintain violation of articles. 1, III, and 5, X, XII, LVI, both of the Federal Constitution and 157, of the Code of Criminal Procedure.

They also asserted that the sharing of information between ABIN and the Federal Police is prohibited, unless the data is directly addressed to the Police Intelligence office, pursuant to Article 6, of Law 9.883/99 and of Article 4, III and IV of Decree 4376/02, which was not the case, *in casu* ;

Finally, they request "*the granting of habeas corpus, culminating in the nullification of Procedures No. 2007.61.81.010208-7 (telephone surveillance), 2007.61.81.011419-3 (telematic monitoring) and 2008.61.81.008291-3 (Controlled action), which unequivocally prove that the illegalities were planned, in order that, later on, derivation of the nullity could be evaluated in light of investigations and/or criminal actions resulting from such procedures.*" (p. 66 - vol. 01)

# *Superior Justice Tribunal*

[watermark]

Motions for clarification were filed against the contested judgment, which were rejected, in accordance with the judgment on pp. 2,717/2,718 - vol. 11.

Since there was no request for an injunction, the Hon. **J**ustice Arnaldo Esteves Lima, when Rapporteur of this case, requested information from the enforcement authority named, and subsequently granted examination of such to the Office of the Attorney General (pp. 2,679 - vol. 11).

In its opinion, on pp. 2,728/2,733 - vol. 11, the Office of the Attorney General decided <u>to grant the order,</u> "*ex officio, so that an order can be issued, with the power to annul, from the started, the criminal action examined hereunder. If it is considered impossible to grant the habeas corpus order, as proposed, I hope, as an agent of the Office of the Attorney General, that it is granted, in order to annul the judgment in which the Regional Federal Court of the Third Region, through its Fifth Panel, denied the original appeal, so that in its place another may be rendered, with analysis and consideration, by its members, of the documents that they refused to consider at that time*."

The case records were submitted to be concluded, by attribution, after being called to be a member of this Hon. 5th Panel, 12/17/10.

On 02/24/11, a petition was attached to the case records, requesting a preference upon judgment.

That is essentially the report.

# Superior Justice Tribunal

[watermark]

HABEAS CORPUS No. 149.250 - SP (2009/0192565-8)

RAPPORTEUR      : JUSTICE ADILSON VIEIRA MACABU (CALLED FROM THE TR/RJ)
PETITIONER      : ANDREI ZENKNER SCHMIDT ET AL
ATTORNEY        : TIAGO CEDRAZ LEITE OLIVEIRA
DEFENDANT       : FEDERAL REGIONAL TRIBUNAL OF THE 3rd REGION
CLIENT          : DANIEL VALENTE DANTAS

SUMMARY

PENAL AND CRIMINAL PROCEEDINGS. *HABEAS CORPUS*. OPERATION SATIAGRAHA. IRREGULAR, IMPROPERLY PROVEN PARTICIPATION OF MANY EMPLOYEES OF THE BRAZILIAN INFORMATION AGENCY (ABIN) AND A FORMER SNI PUBLIC SERVANT IN AN INVESTIGATION CONDUCTED BY THE FEDERAL POLICE. MANIFEST ABUSE OF POWER. IMPOSSIBILITY OF CONSIDERING THE ACTION CARRIED OUT AS AN EXCEPTIONAL CASE, PERMITTING DATA SHARING BETWEEN BODIES OF THE BRAZILIAN INTELLIGENCE SYSTEM. LACK OF A LAW AUTHORIZING IT. CLEAR OCCURRENCE OF STATE INTROMISSION, ABUSIVE AND ILLEGAL IN PRIVATE LIFE, IN THIS SPECIFIC CASE. VIOLATIONS OF HONOR, IMAGE AND DIGNITY OF THE HUMAN PERSON. IMPROPER OBTAINMENT OF UNLAWFUL EVIDENCE, AS IT WAS GATHERED IN BREACH OF LAW. LACK OF REASONABLENESS. NULLITIES VERIFIED IN THE PRE-PROCEDURAL PHASE, AND EXHAUSTIVELY DEMONSTRATED, MAR FUTURE CRIMINAL ACTIONS. BREACH OF VARIOUS PROVISIONS OF LAW. BREACH OF THE PRINCIPLES OF LEGALITY, IMPARTIALITY AND DUE LEGAL PROCESS UNQUESTIONABLY DEFINED. THE JUDGE'S AUTHORITY IS DIRECTLY LINKED TO HIS INDEPENDENCE IN JUDGING AND IMPARTIALITY. A COURT DECISION CANNOT BE DICTATED BY SUBJECTIVE CRITERIA, GOVERNED BY THE ABUSE OF POWER OR BEYOND LEGAL PARAMETERS. THESE REQUIREMENTS RESULT FROM DEMOCRATIC PRINCIPLES AND FROM THE INDIVIDUAL RIGHTS AND GUARANTEES SET FORTH IN THE CONSTITUTION. NULLITY OF THE PROCEDURES APPLIED, THEREBY ANNULLING THE CRIMINAL ACTION FROM THE START.

# Superior Justice Tribunal

[watermark]

1. A detailed analysis of the 11 (eleven) volumes that comprise the HC shows that there is a significant amount of evidence to confirm, in full, the undue, flagrantly illegal and abusive participation of ABIN and of the private investigator hired by the Police Chief responsible for heading up Operation Satiagraha.

2. There was no data sharing between ABIN and the Federal Police, given that the situation in the case records does not fall under the exceptions provided for under Law No. 9.883/99.

3. We live in a democratic rule of law, in which, as Professor Ada Pellegrini Grinover explains, *in* "Nullities in Criminal Proceedings," "the right to evidence is limited in that it constitutes the guarantees of adversary proceedings and full defense, so that the exercise of such cannot exceed the limits of the law and, above all, of the Constitution."

4. In the case in question, the damage caused by the investigations carried out in violation of the law is unquestionable, and they do not remedy it, from any angle that the matter may be analyzed, since the nullity of the procedures carried out by the ABIN agents and a former agent of SNI, is manifest, and in violation of the law.

5. We must point out, as appropriate, that the judge must strictly follow penal law, and cannot depart therefrom unless he recklessly risks following, alone, a tortuous path of subjectivity which, quite often, leads to an odious loss of impartiality. He must never lose sight of the importance of democracy and the democratic rule of law.

6. There is therefore no question that such evidence is irremediably tainted and must be considered to be unlawful and inadmissible, circumstances which make it devoid of any legal effect, in accordance with the position already recognized by well-established legal writing and backed by extensive jurisprudence of our courts.

# *Superior Justice Tribunal*

[watermark]

7. In light of the foregoing, I hereby order the annulment of all evidence produced, in particular that of procedures No. 2007.61.81.010208-7 (telephone surveillance), No. 2007.61.81.011419-3 (telephone surveillance), and No. 2008.61.81.008291-3 (controlled action), and other related procedures, also annulling, from the outset, the criminal action, in the same vein as the well-prepared opinion drawn up by the Federal Office of the Attorney General.

# Superior Justice Tribunal

[watermark]

VOTE

The HON. HON. JUSTICE ADILSON VIEIRA MACABU (JUSTICE CALLED FROM THE TR/RJ) (Rapporteur):

These are the case records of procedures adopted by the Federal Police during the collection of evidence of the so-called Operation Satiagraha.

It is a public and well-known fact that this is an operation that investigated possible crimes of misappropriation of public funds, corruption and money laundering, initiated in early 2004 and resulted in the arrest - subsequently repealed, as ordered by the 6th Federal Supreme Court in São Paulo, of several bankers, bank directors and investors, on July 8, 2008, among them DANIEL VALENTE DANTAS, the client hereunder.

The petitioners basically seek, with this *habeas corpus,* nullity of telephone, telematic monitoring and controlled action procedures that resulted in criminal action against the client, under the argument that they resulted from unlawful evidence.

As stated elsewhere, they maintain, in a very brief summary, that, in this case, the clandestine and illegal actions by ABIN - BRAZILIAN INTELLIGENCE AGENCY and a private investigator - that was hired by the then Police Chief responsible for the investigations of Operation Satiagraha, carried out several acts typical of the Criminal Investigation Department, which resulted in a number of illicit evidence, in flagrant violation of various legal provisions.

They affirmed that "*ABIN's actions are at the exclusive service of the Office of the* <u>*President of the Republic* </u> *- and not another Branch, body or employee of the government. In no way, therefore, can it be understood that its duties include the commission of acts typical of the Criminal Investigation Department , either because (a) there is no legal provision in this sense, or because (b) the recipient of its activities (the President of the Republic) is absolutely different from the addressee of any criminal investigation (Office of the Attorney General)*" (Supreme Court of Justice, p. 19 - vol. 01) (emphasis in the source)

They further argue that the procedural consequences of this alleged clandestine and illegal commission by ABIN and the private investigator result in nullity of the criminal investigation that resulted in criminal action and a police investigation, in progress before the 6th Federal Criminal Court of São Paulo, since the evidence brought under the aforementioned cases was marred by illegality, at the time it was collected.

They conclude that the Hon. 5th Panel of the Regional Federal Court of the 3rd Region, failing to acknowledge the actions by ABIN and a private investigator in the criminal investigation, breached Articles 1, III, 5, X, XII, LVI, 144, § 1, IV, all of the Federal Constitution, as well as Articles 4 and 157, both of the Code of Criminal Procedure.

# *Superior Justice Tribunal*

[watermark]

  The petitioners are correct.

  In this case, the Court *a quo* rejected the order in question, stating, in a very brief summary, that: (i) the petitioners did not prove ABIN's participation in the investigations, (ii) it is acceptable to share data between agencies of the Brazilian Intelligence System and (iii) that the nullities declared at the pre-procedural stage do not have the potential to mar the future action. The summary of the decision is as follows:

> *"HABEAS CORPUS" - PENAL AND CRIMINAL PROCEDURE - PARTICIPATION OF PUBLIC SERVANTS OF THE BRAZILIAN INFORMATION AGENCY (ABIN) IN AN INVESTIGATION CONDUCTED BY THE FEDERAL POLICE - LACK OF PRE-ESTABLISHED EVIDENCE - LAW 9.883/99 THAT ALLOWS DATA SHARING BETWEEN BRAZILIAN SYSTEM MEMBERS OF INTELLIGENCE - NULLITIES VERIFIED IN THE PRE-PROCEDURAL PHASE DO NOT MAR A FUTURE CRIMINAL ACTION - ORDER DENIED.*
>
> *1. The petitioners did not include in the "writ," sufficient evidence for this Court, at this point, to render a judgment on the participation, or not, of public servants connected to the Brazilian Information Agency (ABIN) in investigative proceedings related to so-called "Operation Satiagraha." And even if, on the assumption of a positive conclusion, said documents do not clarify the extent to which such participation took place, to a point of allowing it to be examined at the present time.*
>
> *2. The petitioning authority denies the participation of ABIN agents in criminal prosecution No. 2008.61.81.008291-3, as well as providing a statement by the police authority that presided over the investigations, which culminated in the complaint filed by the Federal Office of the Attorney General. Regardless of any other elements of conviction, strong enough to prove otherwise, it is a matter of order to respect the information presented by the authority in question, since it was most in direct contact with the facts.*

# Superior Justice Tribunal

[watermark]

*3. Regarding the other investigative procedures, it was found that, in relation thereto, there were not enough elements for conviction presented to this Court, sufficient to assess the participation and possible illegality of such activity by the ABIN agents. The petition does not list a single, specific, concrete fact, in which the ABIN agents participated. The information provided by the petitioned authority shows that, if ABIN agents participated in the other investigative procedures that are part of the operation in question, this occurred in secondarily, and does not justify any claim of nullity of evidence, especially since there is no concrete demonstration of damage, as seen in the information already transcribed in this decision. One must bear mind that the basic premise of criminal proceedings is the rule that no nullity can be declared without evidence of damage. Article 563 of the Code of Criminal Procedure*
*is well-founded in this regard.*

*4. There is no evidence of concrete damage experienced by the client, because Brazilian Information Agency public servants, hypothetically, knew about the content of intercepted telephone conversations. It is clear that this fact may even generate the professional accountability of said authority that potentially violated its duty of secrecy, but such a violation does not have the ability to mar the evidence as a whole.*

*5. Law 9.883/99 - which instituted the Brazilian Intelligence System - suggests the possibility of bodies comprising the aforementioned system, to share information and data regarding situations in which the Brazilian government is interested. Both the Federal Police and ABIN are part of the Brazilian Intelligence System, as is inferred from items III and IV of Article 4 of Decree No. 4.376/02, which governs Law 9.883/99.*

# *Superior Justice Tribunal*

[watermark]

*6. The sharing of data and confidential information between agencies in charge of criminal prosecution and other government agencies, is nothing new. Recall that IBAMA (Brazilian Institute for the Environment and Renewable Natural Resources), the Federal Revenue Office, INSS (National Social Security Institute), BACEN (Central Bank of Brazil) and CVM (Brazilian Securities and Exchange Commission) are cited only as an example, and share data with the Federal Police and the Federal Office of the Attorney General, in order to broaden criminal investigations, and this has never caused any confusion or surprise.*

*7. Potential nullities in the pre-procedural phase do not have the potential to mar the criminal action. The Code of Criminal Procedure establishes the dispensability of the Police Investigation (Article 39, § 5), which also corroborates the reasoning that any nullities found in that scope do not mar the criminal action, which is subsequent and ontologically different.*

*8. Order denied." (p. 2,703-2,705 - vol. 11) (published on 05/28/2009)*

Motions for clarification were filed against this decision, which continued to be rejected, in light of the terms of the judgment attached to pp. 2,712-2,715 - vol. 11.

I would like to quote a section of the judgment of the motions for clarification, *verbis*:

*"... omissis ...*

*The grounds expounded by Your Excellency are flawless.*

*It is also important to emphasize the well-established position of this Panel in the sense that it is incumbent upon the petitioners to correctly and sufficiently support the plea for "habeas corpus," which, by virtue of its special and rapid sequence, does not entail discovery.*

*In other words, the pela for a "writ" must be accompanied by sufficient pre-constituted evidence for judgment thereof. There is no justification for postponing examination of a request for "habeas corpus," - providing court protection for such a valuable legal right - by virtue of documents submitted at the last minute, especially where there is no evidence to show that those concerned only obtained them on that date.*

# Superior Justice Tribunal

[watermark]

*Incidentally, it should be noted that the zealous summoned Federal Judge Hélio Egydio de Matos Nogueira, decided to examine the information in the media (DVD) attached to the file.*

*Even after unsuccessful attempts to access the media in question, at his office, the summoned Federal Judge forwarded the document to the attention of the IT Department of this Court, which, after further unsuccessful attempts, found a defect in the disc that was attached to the proceedings, which prevented accessing its content.*

*Faced with a situation like the one described above, there was no other solution but to reject the request for postponement of judgment of the "writ."*

*Furthermore, there is nothing to prevent the petitioners from filing a new plea for "habeas corpus" with this Court, now taking care to correctly support the "writ," an indisputable burden of their responsibility.*

*What cannot be admitted is that the provision of court protection be obstructed by documents attached to the file at the last second, especially under the circumstances mentioned above, in which the media presented by the defense had a defect obstructing the access thereto.*

*The position adopted by the Honorable summoned Federal Judge, Hélio Egydio de Matos Nogueira, is correct, which in the vote that served as a paradigm for the judgment rendered at the time, he stated the following: "(...) As regards the extensive documentation submitted by the petitioners to this Rapporteur this morning – a media disc with images from the police investigation file in progress at the 7th Federal Criminal Court of São Paulo - I note that it is not possible that the provision court of court protection, which should be particularly quick in the case of Habeas Corpus, should be granted upon the addition of new documents, and it should be pointed out that the alleged illegal humiliation that the client is purportedly suffering should be demonstrated by pre-constituted evidence at the time of filing. Thus, note the following precedent of the Superior Court of Justice: 'Habeas corpus, as a constitutional writ, does not give rise to discovery, which is why it requires, to its consideration, pre-constituted evidence of the grounds for filing' (Supreme Court of Justice – 6th Panel - HC 7.277 - Rapp. Fernando Gonçalves – judgment 05/21/1998 - DJU, 06/08/1998, p. 180).*

# Superior Justice Tribunal

[watermark]

> *In the same sense: Supreme Court of Justice – 5th Panel - HC 25.700 - Rapp. José Arnaldo da Fonseca - judgment 06/17/2003 – Federal Court Gazette of 08/25/2003, p. 336. Incidentally, I would like to emphasize that the media disc submitted by the petitioners could not even be opened in order for the Rapporteur could examine its content. Both the office computers and those in the IT department of this Court were unable to access the images therein. Well. The petitioners should have submitted to the Court, in a timely manner, the documentation in question, so as to allow manifestation by the Regional Federal Prosecutor's Office.*

> *And there is no element of conviction apt to show that this evidence was obtained by the petitioners only now, in order to justify the last-minute submission thereof. However, there is nothing to prevent the petitioners from introducing a new petition with the aforementioned documents, at which time this Panel will properly examine and hold the potential claim. In light of the above, in the imposing copy of the "writ," it would not be possible to vertically examine the evidence produced in a police investigation that investigates alleged offenses perpetrated by the police authority in conducting criminal proceedings concerning so-called "Operation Satiagraha," because the aforementioned investigation was not even completed. Thus, an in-depth analysis of the new documentation attached by the petitioners is not possible, which would require extensive investigation of the evidence and consideration of elements of conviction to prove the existence of manifest nullity of the case, as required by Article 648, VI, CPP (...)" (p. 623). (published 03/26/2009)*

> *I therefore reject the line of argument put forward by the petitioner in this regard. There are no grounds for claiming that the judgment is null and void because judgment of the "writ" was not postponed.*

*Data maxima venia*, after accurate analysis of the case records, of the 11 volumes that comprise the case, it is possible to verify that there is a great amount of evidence to confirm, in full - in my opinion, the improper and flagrantly illegal participation of ABIN and the private investigator hired by Police Chief Protógenes Queiroz.

# Superior Justice Tribunal

[watermark]

In the abundant material attached to the case records, we highlight several documents:

- a copy of the Official Letter sent by Mr. Daniel Lorenz de Azevedo (then Director of Police Intelligence of the Federal Police) forwarding to Mr. Amaro Vieira Ferreira (also a police chief of the Federal Police and responsible for Police Investigation No. 2-4447/2008, which verified a possible breach of professional secrecy during Operation Satiagraha), copies of 3 (three) receipts in the name of Francisco Ambrósio do Nascimento, during the rendering of accounts of case No. 08200.001332/2008-22, listing DPF Protógenes Pinheiro de Queiroz, former coordinator of Operation Satiagraha - p. 1,460 v/1.462, vol. 6 of the case records.

- official letter sent by police chief Mr. Glorivan Bernardes de Oliveira to Mr. Amaro Vieira Ferreira, confirming that Mr. Márcio Seltz – an ABIN public servant, had been in the Southwest Administrative Complex, where the staff of Operation Satiagraha was - pp. 1,408-v/1,409, vol. 6 of the case records.

- letter sent by Mr. Paulo Fernando da Costa Lacerda to Police Chief Nelson Pellegrino - CPI Rapporteur on Clandestine Telephone Tapping, confirming the participation of ABIN agents in Operation Satiagraha - pp. 2,210-2,224-vol. 9.

- official letter providing information, sent by Mr. Amaro Vieira Ferreira to Federal Prosecutor Mr. Roberto Antônio Dassiê Diana, on 03/12/09, which reads: "*in this line of investigation, it was found that public servants of the Brazilian Intelligence Agency - ABIN and a former public servant, at the initiative of Police Chief Protógenes Queiroz, without court authorization and without any formalization, were secretly included in the work of the Operation Satiagraha, were informed of data that as confidential, and, following an order by said authority and other subordinate public servants, carried out surveillance work, target tracking, photographic records, filming, doing environmental recordings, reviewing equally confidential documents, generating reports and producing transcriptions from the recordings of telephone conversations intercepted by the surveillance system, in a situation that surpasses any limits of understanding that it was a merely temporary action involving exchange of intelligence data between agencies of the Brazilian System of Intelligence - SISBIN, the reason for existence and purpose of action of which, differ diametrically from those corresponding to the Federal Criminal Investigative Department.*" (p. 2,274 - vol. 09)

# *Superior Justice Tribunal*

[watermark]

**- on pp. 2,342-2,385-v, vol. 10 of the case records, is the report from the police investigation, initiated on 07/24/08 and reported on <u>04/07/09</u>, in which Police Chief Amaro Vieira Ferreira presents in detail the results of investigations confirming the undue participation of ABIN and private investigator in Operation Satiagraha, to the Federal Office of the Attorney General. This is a long report, but I would like to quote two passages that seem to me relevant to the outcome of that decision.**

Regarding the participation of a private investigator, hired by Mr. Protógenes Queiroz, the report expressly states that:

> *"... omissis ...*
> *The participation of a third party is confirmed by the testimony of FRANCISCO AMBRÓSIO DO NASCIMENTO (pp. 795-808), a retired former ABIN public servant, who reports on the circumstances of him being called for execution of works of interest to the operation, confirming that he had access to sensitive information of the operation." (p. 2,365 - vol. 10)*

In turn, on the back of p. 2,383, it should be noted, *verbis*:

> *"... omissis ...*
> *Thus, it is concluded that, there was evidence of breach of the provisions of Article 8 and consequent violation of the provisions of the second part of Article 10 of Law No. 9296 of July 24, 1996, since in relation to actions by public servants of ABIN, complete deviation of purpose was verified, and data was transferred to those public servants who were working, that was under court secrecy in a court proceeding involving the wiretaping of telephone calls, authorized specifically to offer evidence in a criminal investigation and in criminal procedural discovery, in accordance with Article 1 of Law 9.296/96, which regulated section XII, final section XII, section 5, of the Federal Constitution, which determined the indictment of police officers WALTER GUERRA SILVA (pp. 2124-21270 [sic], ROBERTO CARLOS DA ROCHA (pp. 2215-2218) and EDUARDO GARCIA (pp. 2630/2634), in addition to the delegate PROTÓGENES QUEIROZ (pp. 2630/2634), for breach of the second part of Article 10, of Law 9.296 of July 24, 1996, being individually identified and questioned, and generally refused to answer the questions, opting for the right to do so only in court" (emphasis in the source)*

# Superior Justice Tribunal

[watermark]

In my opinion, it is quite reasonable for the client's defense to have produced new documents - practically on the date of the judgment, which I do not think were possible to obtain earlier, since the investigation was in progress, culminating in the indictment of Police Chief Protógenes Queiroz, as can be seen, for example, from verifying the date on which the result of the investigation was reported, that is, 04/07/09, a few days after judgment of the Ed's.

In addition, as very well stated by the *Court* , in its opinion on p. 273 of the case records, the request of the person most interested in the judgment of the *writ* , that is, the client:

> *"... omissis ...*
>
> *9. Thus: if the habeas corpus is for a <u>useful</u> order for an indicted or a procedural subject, who upon seeing the petitioner <u>suffer</u> or <u>finds himself</u> to about to bear the effects of an illegal constraint, it seems to me extremely doubtful that the speed of the judgment will <u>respect</u> , primarily, him and the client, whom, therefore, <u>have the right to seek the adjournment thereof, so that</u> the court or its judges <u>consider documents</u> that are <u>relevant</u> to justify the decision, <u>even if they could</u>, upon weighing the evidence, proclaim that they are worthless.*
>
> *10. I therefore, find, if correctly understood, that the rule called upon by the eminent rapporteur, to deny the intended postponement, would only authorize the conclusion reached by the judgment, if extension of the deadline (i) was damaging to the accused, or (ii) could jeopardize the exercise of the punitive claim, by possible pronouncement, to the detriment of the Office of the Attorney General, of a limitation period about to be met.*
>
> *11. The illegality, identified here, is aggravated by the fact that the petitioners clarified, at the origin, that they intended, with the documentation presented at the time of the trial, to show the active participation of the Brazilian Intelligence Agency - ABIN - in the investigations involving the client, as, moreover, testified in the judgment that rejected the motions for clarification, addressed soon after the denial of habeas corpus of origin."*

# *Superior Justice Tribunal*

[watermark]

Having made these considerations, I shall now analyze the merits of the present *writ*.

Article 144 of the Federal Constitution enumerates and establishes the duties of the bodies responsible for public security activities:

> *"144. Public security, the duty of the State, a right and responsibility of all, is exercised to preserve public order and the security of persons and property, through the following agencies:*
> *I - federal police;*
> *II - federal highway patrol;*
> *III - federal railway police;*
> *IV - civil police;*
> *V - military police and military fire brigades."*

In paragraph 1, item IV, the same legal provision states that the duties of the Criminal Investigation Department, within the scope of the Union, lie exclusively with the Federal Police and, in the area of the government, must be exercised by the Civil Police, unless under the authority of the Military Police (§ 4), *verbis*:

> *"Article 144 -*
> *§ 1 The federal police, established by law as a permanent body, organized and maintained by the Federal Government and structured as a career, is responsible for:*
> *...omissis...*
> *IV - to exclusively exercise the functions of the federal Criminal Investigation Department.*
> *...omissis...*
> *§ 4 – to the civil police, headed by career police officers, shall, except if under the competence of the federal government, be entrusted with the functions of the Criminal Investigation Department and the investigation of criminal offenses, except for military offenses."*

# *Superior Justice Tribunal*

[watermark]

Within this context, restricted by the Federal Constitution, I believe that investigative activities must adhere to established orders. Only in exceptional cases and provided that the legal requirements of Article 4, sole paragraph, of the Code of Criminal Procedure have been met, shall this activity be allowed to be exercised by a body other than the Criminal Investigation Department.

On the other hand, Law No. 9.883/99 established the Brazilian Intelligence System "*which is involved in the planning and execution of the country's intelligence activities, with the purpose of providing assistance to the President of the Republic in matters of national interest*" (Article 1) and created the Brazilian Intelligence Agency - ABIN, as the central body of such system, establishing its duties that are clearly described in its Article 4, namely:

> *Art. 4 ABIN, in addition to what is set forth in the previous Article, is responsible for: I - planning and carrying out actions, including confidential actions, involving the collection and analysis of data for the production of information, in order to advise the President of the Republic;*
> *II - to plan and execute the protection of sensitive information concerning interests and security of the State and of society;*
> *III - to evaluate the internal and external threats to the constitutional order;*
> *IV – to develop human resources and the doctrine of intelligence, and to conduct studies and research to exercise and improve intelligence activities." (emphasis added)*

Upon reading the aforementioned legal provisions, it can be concluded that ABIN's activities are limited to intelligence activities, the primary and sole purpose of which is to provide subsidies to the President of the Republic in matters of national interest.

In addition. There is no possibility of characterizing the participation of ABIN and of a former SNI public servant for the purpose of "mere sharing of information," as stated in the herein objected judgment, especially because the judgment itself is categorical in stating that this sharing of data information is admitted in exceptional cases *"for situations in which there is interest of the Brazilian state,"* as shown up reading the summary under item No. 5.

# *Superior Justice Tribunal*

[watermark]

It being public and well-known that the present *writ* originated from investigative processes of possible crimes of misappropriation of public funds, corruption and money laundering, as the Portuguese say, we ask: wherein lies national interest in the investigation of such crimes?

We live in a Democratic Rule of Law governed by a set of laws that govern and establish permitted or prohibited behavior, aiming at a main purpose of public tranquility and ensuring harmonious coexistence of the most varied social groups. Under this set of rules, is the Principle of Legality, enshrined in our Constitution, under Article 5, item II - no one shall be obliged to do or not to do anything other than by virtue of law.

Alexandre Rezende da Silva, in an Article entitled "Principle of Legality," published in August 2002, on the website *Jus Navigandi*, teaches us that: "*the Principle of Legality is the highest expression of the Democratic Rule of Law, the vital guarantee that society is not bound to the personal, particular wants of those that govern. Its effects and importance are quite visible in the legal system, as well as in social life. Due Process of Law and Legal Reserve are its most important developments. It is in the Government that one realizes how important this principle is, since it is there that the State is more directly experienced by the citizens. This is the main principle of our legal system, which, like the system that it is, has several guiding principles, which affect both the application of law and its drafting.*"

In accordance with the renowned jurist Luis Roberto Barroso, *in* Principle of Legality, Legislative Delegations, Regulatory Power, Constitutional Distribution of Legislative Powers, an article taken from the Infojus website, www.infojus.com.br: "*The Rule of Law, from its historical origins, is associated with the principle of legality, the primacy of law, ideally conceived as an 'expression of the general institutionalized will'.*"

"*Thus, in the search for an effective life in society it is necessary that each function of the Power respects the limit of the other functions, under penalty of a breakdown of the balance of public functions that is essential for the existence of the so-called Democratic State of Law.*

*Because of these premises, which over the years have proven to be true, if a person commits an unlawful, civil, criminal, administrative, tax, or any other unlawful act, the person can only be prosecuted and judged by the Judiciary Branch, where full defense and adversary proceedings are assured thereto together with all of the appeals inherent thereto.*

# Superior Justice Tribunal

[watermark]

*Compliance with procedural principles does not mean the pursuit of impunity or even an incentive to commit a crime. If the State is properly equipped, it will be able, through licit procedures, to produce the necessary evidence that can demonstrate the culpability of an accused, although the crime practiced by the violator can cause spurn to its fellowmen by reason of ethical or moral precepts.*

*From the moment that all of the guarantees established in the Federal Constitution exist, it can be affirmed that the rule of law is also being weakened, since the Institutions lose their meaning and the promotion of Justice is transferred to third parties, which violates the principle of impartiality and due process of law.*

*Freedom of information is a citizen's right, but this freedom cannot and should not go beyond the limits that have also been established in constitutional writing, such as respect for the dignity of the human person, physical integrity, preservation of life, preservation of image, among other fundamental rights that are listed under Article 5, of the Federal Constitution, and also in the international instruments signed by Brazil, such as the American Convention on Human Rights, and the Costa Rica Pact of San José.*

*The search for or even the transmission of information cannot and should not be confused with public execration, or even as carrying out judgments in advance, with the imposition of sentences that are not issued by the Judiciary Branch, the body competent to prosecute and judge a person in the Federative Republic of Brazil.*

*... omissis ...*

*All crimes must be repressed by the State in the pursuit of maintaining and preserving public order and social peace, but this does not mean that the State can do justice by its own hands. The accused, even though they have committed crimes considered heinous, must be prosecuted and judged in accordance with the Law, which is the instrument chosen by society for the resolution of social conflicts.*

*... omissis ...*

*The claims presented here are part of what people often, even without having full knowledge or an understanding of the meaning, usually refer to as the Democratic Rule of Law. In this type of State, the main commandment is the Law, which must be complied with and respected.*

# Superior Justice Tribunal

[watermark]

Due process of law is not to be confused with impunity, and all offenders must be convicted, but people, regardless of the crime committed, have the established right to defend themselves, which does not mean that at the end of a process if authorship and materiality of the offense is proven, that the persons shall be free from serving a sentence.

In spite of all these considerations, if society reaches the conclusion that the principles established in the Federal Constitution are ineffective, and that such principles should no longer be observed and respected, justice, liberty and democracy must be abandoned and a step backwards in time and space will be taken and justice will be served in society with the use of one's own hands, based on the principle of an eye for an eye, a tooth for a tooth.

An unbiased analysis of the facts leads us to the conclusion that in reality what needs to be done is to improve the system, be it at the executive, legislative, or judicial level, since society can only live in peace and harmony, seeking to achieve collective and individual goals, and even national goal, when based on the Law and also on a legal system.

... omissis ...

This is how the Democratic Rule of Law functions, which was the system chosen by the original constituent legislator when the Constitution of the Federative Republic of Brazil was enacted on October 5, 1988. Only under the Rule of Law is this kind of discussion allowed, because outside the rule of law there is no democracy, and there is no freedom, and there is no due process. It can be said that justice by one's own hands causes much more harm and much more suffering than compliance with the procedural precepts that were established when the current Federal Constitution was enacted. (ROSA, Paulo Tadeu Rodrigues, at www.ibccrim.org.br, 08/14/2006.)."

Thus, if a law explicitly determines the functions and the *modus operandi* of ABIN, it is not acceptable that such limitations should be extrapolated even more so because the list of functions thereof under the Law does not allow for elastic interpretation, in disagreement with the intent of the legislator.

It cannot be admitted, that in a Democratic Rule of Law, beyond the law and several established Principles, such as the principle of legality, due process and impersonality, that one support the guiding and, why not say, with the conspiracy, of a criminal investigation that goes beyond all legal limits, becoming, I dare say, a personal quarrel to incriminate a specific person, therefore using actual ABIN agents and even a former public servant of the shutdown SNI, by the administrative authority, in an unquestionable and unacceptable misuse of power, blighting any administrative or investigative act performed.

# *Superior Justice Tribunal*

[watermark]

In addition. Police Chief Protógenes Queiroz, in charge of leading the investigations of Operation Satiagraha, by his official duty, must act within the strict limits of the legislation in force and within the Principles mentioned above, especially the principle of Impersonality. Incidentally, the work of José dos Santos Carvalho Filho, *in* Federal Administrative Procedure, 3rd Edition, Ed. Lumen Juris illustrates this concept well:

> .".. omissis ...
>
> *Regarding the administrative proceeding, it is clear that, although there is not always a dispute to be resolved, there are interests and rights of citizens, to be safeguarded, so that the situation of equidistance is required of the government official in relation to citizens. In other words, the government official must hold a legal status of such a level that he can convey confidence to the citizens, to face the questions and requests that he is responsible for, without their actions arousing suspicions and mistrust on the part of those who require an administrative proceeding.*
>
> *If the government official does not have impartiality in order to conduct and decide on administrative proceedings, it is because he favors or will harm the interested party, conduct which is totally antagonistic to the objective that should guide the activity, i.e. public interest.*
>
> *Vitiation of this order reveals a clear misuse of power, illegal conduct that must be corrected through administrative or judicial channels." (emphasis added)*

On the same matter, I also quote the work entitled "*Control of Administrative Acts*," by Juarez Freitas, 4th Edition, 2009, Malheiros Publishing, p. 82, perfectly appropriate to the situation under examination:

> "... omissis ...
>
> *In accordance with the principle under examination, the Public Administration must offer isonomic treatment to all, without spurious privileges, nor persecutory maneuvers, not even for those driven by supposed good intentions.*

# Superior Justice Tribunal

[watermark]

*Attempts are made for the government to establish, above personal suggestions, fundamental principles and objectives, instead of an idiosyncratic 'emotivism' empire of factious projects, antagonistic, by definition, to the philosophy of good administration."*

This is why the learned Federal Public Prosecutor, who issued his opinion on the case, categorically stated:

*"... omissis ...*

*13. Yes, because as the central body of the Brazilian Intelligence System (Law No. 9883, of 1999, Article 3, caput), the Brazilian Intelligence Agency - ABIN - should not, under any pretext, act beyond its institutional competence, which closes with: (i) knowledge and execution of actions, confidential or not, for the collection and analysis of reports that may be deemed necessary or useful to advise the Office of the President of the Republic; (ii) in the planning, execution and protection of sensitive knowledge relating to the security of the State and society; (iii) in the evaluation of internal and external threats to constitutional order; and (iv) training and development of human resources, developing an intelligence doctrine and carrying out studies to improve it (Law 9883 of 1999), Article 4, caput, I to IV)*

*14. To the exhausting nature of this list of attributions, we must add the obstacle of sharing data collected because of its exercise, which can only be taken by the Head of the Institutional Office of the President of the Republic for the benefit of the authorities with powers to request them, and even so, agree to safeguard the secrecy legally imposed, with punishment under three areas, administrative, civil and criminal (Law No. 9893, of 1999, Article 9, caput, and § § 1 and 2).*

*...omissis...*

# *Superior Justice Tribunal*

[watermark]

> *16. Note: one thing is the Brazilian Intelligence Agency - ABIN - representing the Federal Police Department, suggesting that the authorities, working there, take care of unveiling a fact that its agents found out; it is quite another thing to hide people working for them in ongoing investigations, with the purpose of allowing them to practice acts reserved for police officers, such as the manipulation and analysis of dialogue captured by telephone wiretapping, as happened in the present case" (p. 2,731/2,733 - vol. 11) (emphasis in the source)*

In light of all of these considerations, it seems to me that it is clearly demonstrated that: (i) it is not ABIN's role to investigate possible crimes that have no connection with matters of national interest, as in the case at hand, and (ii) a private investigator directly hired by the Police Chief responsible for leading the operation and paid for with public money, which leads us to a single possible conclusion: ABIN exceeded its duties by participating in the investigations of Operation Satiagraha.

Solely for informational purposes, the investigation initiated to ascertain the excesses committed by the Police Chief responsible for the operation resulted, under the Hon. 7th Criminal Court of São Paulo, in proceedings No. 0011893-69.2008.4.03.61681, and in its conviction for the commission of crimes in violation of professional secrecy and procedural fraud, Articles 325, § 2, and 347, c/c Articles 69 and 71, all of the Penal Code, to a sentence of custody of 3 (three) years and 11 (eleven) months, 2 (two) years of imprisonment to be served in an open prison system, being replaced by the restrictive rights of services to the community and prohibition of elective office, position, function or public activity, as indicated above, and a pecuniary penalty of 52 (fifty two) days-fine, with a unit value of one minimum wage, monetarily corrected from the date of final judgment. In addition to the above, the loss of public office held by the accused in the Federal Police Department, pursuant to Article 92, I, of the Penal Code, as well as the payment of BRL 100,000.00 (one hundred thousand Brazilian reals) as compensation for the moral damages caused to the community.

I emphasize that the above proceeding is at the appeal level at the Federal Supreme Court, and was distributed to the Hon. Justice Ellen Gracie, in February of this year.

For these reasons, I find that all evidence collected by ABIN agents and by the private investigator improperly hired in the course of the operation, are illegal.

We can define unlawful evidence as being obtained in violation of a constitutional rule or principle.

# Superior Justice Tribunal

[watermark]

With respect to the unlawful evidence, our legal system adopted the system of the inadmissibility of the evidence obtained by illicit means, that is to say, any and all evidence in this situation could not, in theory, even be part of the records, in accordance with the provisions in Articles 5, LVI of the Federal Constitution and 157 of the Code of Criminal Procedure. And, if that happens, it should be excluded (exclusionary rules).

In accordance with LUIZ FRANCISCO TORQUATO AVOLIO, unlawful evidence, in the strict sense, can be defined as "*evidence collected in violation of rules or principles laid down by the Federal Constitution and by the law, often for the protection of public freedoms and rights of personality the manifestation thereof, which is the right to privacy.*" (AVOLIO, Luiz Francisco Torquato.) Illegal evidence - telephone wiretapping and clandestine recordings. 2. ed. São Paulo: RT, 1999, p. 43.)

Once the unlawfulness of the evidence collected has been recognized, we must verify the consequences thereof.

The Theory of the Fruits of the Poisonous Tree has its origins in the American Supreme Court, which adopted the position that the flaws of "*tree are transmitted to its fruits,*" that is to say, since there is an unlawful origin, such as *in casu*, an investigation based on unconstitutionality, all evidence deriving therefrom, even if not unlawful in itself, cannot be admitted, it is marred.

Moreover, § 1 of Article 157, of the Code of Criminal Procedure, with the wording given by Law No. 11.690/08, admits adoption of the Theory of Poisoned Fruit, except for the case of not proving the causal link between the derived evidence and the unlawful evidence or in the event that the derived evidence can be obtained through a source other than the illicit ones.

There is much discussion regarding the applicability of the theory under Brazilian Law. However, the Supreme Federal Supreme Court has already manifested itself on the matter, in a brilliant vote by the Hon. Justice Sepúlveda Pertence, the summary of which I quote below:

> "*ILLICIT EVIDENCE: TELEPHONE WIRETAPPING BY COURT AUTHORIZATION: AFFIRMED BY MAJORITY OF THE REQUIREMENTS OF LAW, UNTIL NOW NOT EDITED, SO THAT, "IN THE CASES AND IN THE MANNER" ESTABLISHED THEREBY, THE JUDGE MAY, PURSUANT TO ART. 5, XII, OF THE CONSTITUTION, TO AUTHORIZE WIRETAPPING OF TELEPHONE COMMUNICATION FOR CRIMINAL INVESTIGATION PURPOSES;*

# *Superior Justice Tribunal*

[watermark]

> *IRRESPECTIVE, INITIAL DENIAL OF HABEAS CORPUS BY THE OF THE VOTES, OF A TOTAL OF SIX, THAT, OR REFUSED THE ARGUMENT OF CONTAMINATION OF THE EVIDENCE ARISING FROM THE TELEPHONE WIRETAPPING, UNLESS AUTHORIZED, OR DECIDED IT WAS IMPOSSIBLE, IN THE PROCEDURAL CHANNEL OF HABEAS CORPUS, TO VERIFY THE EXISTENCE OF EVIDENCE FREE OF CONTAMINATION AND SUFFICIENT TO SUPPORT THE CHALLENGED CONVICTION; NULLITY OF THE FIRST DECISION, GIVEN DECISIVE PARTICIPATION, IN THE OPINION OF A BARRED JUSTICE (MS 21.750, 11/24/93, VELLOSO); CONSEQUENT RENEWAL OF THE TRIAL, IN WHICH THE ORDER OF THE PREVALENCE OF THE FIVE DISSENTING VOTES IN THE PREVIOUS ONE, WAS GRANTED IN THE ABOVE, IN THE SENSE THAT THE UNLAWFULNESS OF THE TELEPHONE WIRETAPPING - THE LACK OF A LAW THAT, UNDER CONSTITUTIONAL TERMS, GOVERNS IT AND MAKES IT VIABLE - CONTAMINATED, IN THIS CASE, OTHER EVIDENCE, ALL DIRECTLY OR INDIRECTLY STEMMING FROM THE INFORMATION OBTAINED FROM THE WIRETAPPING (FRUITS OF THE POISONOUS TREE), ON WHICH THE CLIENT'S SENTENCE WAS FOUNDED." (HC 69912 second/RS, Rapporteur Justice SEPÚLVEDA PERTENCE, Trial: 12/16/1993 Judgment Body: Full Court, Publication in the Court Gazette 03/25/1994 PP-06012, SUMMARY VOL-01738-01 PP-00112 RTJ VOL-00155-02 PP-00508)*

In this same sense, there is a brilliant precedent drafted by the Hon. Justice Maria Thereza de Assis Moura, *verbis*:

> *"CRIMINAL. CRIMINAL PROCEEDING. HABEAS CORPUS. 1. FILING OF A CRIMINAL ACTION. BASED ON DOCUMENTATION SEIZED SURING A MEASURE CONSIDERED ILLEGAL BY THE Federal Supreme Court AND Supreme Court of Justice. SEPARATE CRIMINAL ACTIONS. IRRELEVANCE. PRINCIPLES OF ISONOMY AND LEGAL CERTAINTY. 2. UNLAWFULNESS OF THE EVIDENCE GATHERED.*

# *Superior Justice Tribunal*

[watermark]

*THEORY OF THE TREE OF POISONOUS FRUITS. COMPLAINED FILED ON THE BASIS OF EVIDENCE DERIVED FROM ILLICIT EVIDENCE. IMPOSSIBILITY. PERMANENTLY DISMISSED. 3. ORDER GRANTED.*

*1. The Federal Supreme Court having declared the unlawfulness of the search and seizure measure that gave rise to several criminal actions, we must extend this decision to all actions derived therefrom, in compliance with the principles of isonomy and legal certainty.*

*2. If all evidence that supported the complaint was derived from the documentation seized during an investigative measure is considered illegal, one must also recognize that they are also worthless, in accordance with the theory of the fruits of the poisonous tree, thus barring the criminal action thus filed.*

*3. Order granted to permanently dismiss the criminal action in question, thus also extending the effects of this order to the defendant in the same action, LUIZ FELIPE DA CONCEIÇÃO RODRIGUES." (HC 100.879/RJ, Rapp. Justice MARIA THEREZA DE ASSIS MOURA, SIXTH PANEL, judged on 08/19/2008, E-Court Gazette 09/08/2008) (emphasis added)*

In the same vein, the following precedents of this Superior Court should be mentioned:

*"HABEAS CORPUS. CRIMINAL PROCEEDING. CRIME OF FRAUDULENT MISREPRESENTATION. REQUEST TO PERMANENTLY DISMISS A CRIMINAL ACTION. "CONSTITUTIONAL PRIVILEGE AGAINST SELF-INCRIMINATION: BASIC GUARANTEE PROVIDED TO PEOPLE. THE PERSON UNDER INVESTIGATION (PARLIAMENTARY, POLICE OR JUDICIAL) DOES NOT DO AWAY WITH THE RIGHTS AND GUARANTEES ASSURED" (Federal Supreme Court, HC 94.082-MC/RS, JUSTICE CELSO DE MELLO, Court Gazette of 03/25/2008). PRINCIPLE OF "NEMO TENETUR SE DETEGERE."*

# Superior Justice Tribunal

[watermark]

*CONFIRMATION IN THE ESTABLISHED LIST OF INDIVIDUAL RIGHTS AND GUARANTEES (ARTICLE 5, SECTION LXIII, OF THE FEDERAL CONSTITUTION): OPTION OF THE BRAZILIAN CONSTITUENT, UNDER THE 1988 FEDERAL CONSTITUTION, "FUNDAMENTAL PROCLAIMED GUIDELINE, SINCE 1791, BY THE FIFTH AMENDMENT [OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA], ESTABLISHING THE AMERICAN "BILL OF RIGHTS"" (Federal Supreme Court, HC 94.082-MC/RS, JUSTICE CELSO DE MELLO, Court Gazette of 03/25/2008). PRECEDENTS CITED FROM THE SUPREME COURT OF THE UNITED STATES: ESCOBEDO V. ILLINOIS (378 US 478, 1964); MIRANDA V. ARIZONA (384 US 436, 1966), DICKERSON V. UNITED STATES (530 US 428, 2000). CASE OF MIRANDA V. ARIZONA: ESTABLISHING THE GUIDELINES KNOWN AS "MIRANDA WARNINGS," "MIRANDA RULES" OR "MIRANDA RIGHTS." RIGHT OF ANY INVESTIGATED OR ACCUSED PARTY TO BE ADVISED THAT IT IS NOT OBLIGED TO PRODUCE ANY EVIDENCE AGAINST ITSELF, AND THAT IT MAY REMAIN SILENT BEFORE THE COURT, POLICE OR JUDICIAL AUTHORITY. INVESTIGATED PARTY NOT INFORMED, IN THIS CASE OF SUCH FUNDAMENTAL GUARANTEES. SUBMISSION OF GRAFOTECHNIC MATERIAL BY THE CLIENT, WITHOUT KNOWING THAT SUCH A FACT COULD POTENTIALLY BE USED TO GROUND A FUTURE CONVICTION. EXPERT REPORT THAT GROUNDED THE COMPLAINT. UNLAWFUL EVIDENCE. THEORY OF FRUITS OF THE POISONOUS TREE. ORDER GRANTED.*

*... omissis ...*

*6. There was evidence in the case records that the Client was already being investigated and that, at no time, was he warned about his constitutionally guaranteed rights, in particular, the right to remain silent and to not produce evidence against himself, the illegality of the only evidence that supported the conviction is evidenced.*

*Contamination of the case, derived from the production of the unlawful report. Theory of the fruits of the poisonous tree.*

*7. Simply note that the observance of fundamental rights should not be confused with supporting impunity.*

# *Superior Justice Tribunal*

[watermark]

> *It is essential for the Judiciary Branch to ensure that the state jus puniendi is not carried out with contamination of due process of law, so that the observance of individual guarantees is effective throughout society, whether in relations between the State and citizens or between individuals (Federal Supreme Court, RE 201.819/RS, 2nd Panel, Rapp. Justice ELLEN GRACIE, Rapp. of the Judgment: Justice GILMAR MENDES, Court Gazette of 10/27/2006). 8. Order granted to determine permanent dismissal of the criminal action, not affecting the filing of a new complaint based on other evidence." (HC 107.285/RJ, Rapp. Justice LAURITA VAZ, QUINTA TURMA, judged on 09/11/2010, E-Court Gazette 07/02/2011) (emphasis added)*

Thus, there is no other way except decontamination of the investigation, removing from the records all evidence collected in breach of the law.

As a result of the irregularities and abuses practiced, the evidence obtained by illicit means, a fully evidenced circumstance, can no longer be part of the case records, and the Constitution of 88 clearly repudiated them, in the wording of its Article 5, LVI, with a clause on the principle that "*evidence obtained by illegal means is inadmissible.*"

Therefore, we are faced with a guarantee that is an integral part of that set forth in due legal process, which requires, in determining the commission of a criminal offense and its authorship, compliance with that which is legally prescribed in the law.

Incidentally, it is appropriate to transcribe the position of the Supreme Federal Court Justice Celso de Mello, noting in RHC 90376-3-RJ, Second Panel, Judged on 04/03/07:

> *"The prosecutorial action of the State, regardless of the instance where it was filed, in order to have standing, cannot rely on illicitly obtained evidence, under penalty of violation of the constitutional guarantee of "due process of law," which has, in the dogma of the inadmissibility of illicit evidence, one of its most expressive establishing projections at the level of our system of positive law."*

Ada Pellegrini Grinover was of the same position, *in* "Nullities in Criminal Procedure." 9th Ed. Court Journal, São Paulo, 2006, p. 145-146, by emphasizing that the right to evidence is limited in so far as it constitutes guarantees of adversary proceedings and full defense, so that the exercise of such cannot exceed the limits of the law and, above all, of the Constitution.

# *Superior Justice Tribunal*

[watermark]

The magisterium of the distinguished professor follows the same line of reasoning when discussing this in his work "Public Liberties and Criminal Procedure - Telephone wiretappings." Saraiva. 1976, p. 189, when he states that "*the procedural inadmissibility of unlawful evidence becomes absolute, where the unlawfulness consists of violation of a constitutional provision, to the detriment of the parties or of third parties. In such cases, it is irrelevant whether the offense was committed by a public official or by individuals, because in both cases the evidence was obtained in violation of the constitutional principles guaranteeing entity rights. It will also be irrelevant to ask about the moment when unlawfulness was defined (before or after the case or during the case); it would be irrelevant to ask whether the offense was committed against the party or against third parties, provided that it considered the violation of fundamental rights; and it will ultimately be irrelevant whether the procedure in which unlawful evidence of that case is used, is of a criminal or civil nature.*"

Following the line of thought of ADA PELLEGRINI GRINOVER STATES, the Federal Supreme Court, judging *habeas corpus* 90.376-2, in a brilliant vote by the Hon. Justice Celso de Mello, thus decided:

> "*Criminal evidence. CONSTITUTIONAL BANISHING OF UNLAWFUL EVIDENCE (FEDERAL CONSTITUTION, ART. 5 . LVI) - UNLAWFULNESS (OF ORIGIN AND BY DERIVATION) - INADMISSIBILITY - SEARCH AND SEIZURE OF MATERIALS AND EQUIPMENT PERFORMED, WITHOUT A COURT RULING, IN AN OCCUPIED HOTEL ROOM - IMPOSSIBILITY (...) GUARANTEE THAT TRANSFERS CONSTITUTIONAL LIMITATION TO THE POWER OF THE STATE IN THE AREA OF CRIMINAL PROSECUTION, EVEN IN ITS PRE-PROCEDURAL PHASE (...) ILLEGAL EVIDENCE - LEGAL LACK OF STANDING (...) BECAUSE PERMEATED WITH UNLAWFULNESS AT THE ORIGIN. Doctrine. Precedents (Federal Supreme Court). UNLAWFULNESS OF EVIDENCE - INADMISSIBILITY OF ITS PRODUCTION IN COURT (OR AT ANY INSTANCE OF POWER) - LEGAL LACK OF STANDING OF THE EVIDENCE RESULTING FROM STATE TRANSGRESSION OF THE CONSTITUTIONAL REGIME OF INDIVIDUAL RIGHTS AND GUARANTEES.*

# *Superior Justice Tribunal*

[watermark]

*Prosecution by the State, regardless of the instance at which it is initiated, in order to have standing, cannot rely on illicitly obtained evidence, under penalty of violation of the constitutional guarantee of "due process of law ,"which has, in the dogma of the inadmissibility of illicit evidence, one of its most expressive establishing projections at the level of our system of positive law. - The Federal Constitution, under a law covering vetoes (Federal Constitution, Article 59, LVI), disallows, as being incompatible with the rules that govern a society based on democratic bases (Federal Constitution, Article 1.), any evidence that the Government collects by transgression of constitutional clauses, thereby rejecting any evidence that results from infringement of substantive law (or even procedural law) and as a consequence, in the Brazilian legal system, in terms of probative activities, the authoritarian formula of "male captum, bene retentum" does not prevail. Doctrine. Precedents. THE ISSUE OF DOCTRINE ON THE FRUITS OF THE POISONOUS TREE: THE QUESTION OF UNLAWFULNESS BY DERIVATION. - No one may be investigated, charged or condemned solely on the basis of unlawful evidence, whether it is an unlawful act of origin or an unlawful act of diversion. Any new evidentiary information, even if produced validly and subsequently, cannot be supported by, cannot have a causal foundation, nor can it be derived, from evidence that is tainted by unlawfulness of origin. - The exclusion of originally unlawful evidence - or that which is affected by the flaw of illegality by derivation - represents one of the most important means to confer effectiveness to the guarantee of the due process of Law and to make it more intense, by banning the evidence illegally obtained, the constitutional protection that preserves the rights and prerogatives granted to any accused party in criminal proceedings. Doctrine. Precedents. - The doctrine of illegality by derivation (theory of the "fruits of the poisonous tree") repudiates, as unconstitutionally inadmissible, the evidentiary means, which, although validly produced at a subsequent time, are affected, however, by the flaw (very serious) of the original illegality, which is transferred thereto, contaminating them, due to causal repercussions.*

# *Superior Justice Tribunal*

[watermark]

> *A case in which the new evidence was only considered by the Government, due to a previous transgression originally committed by the agents of the criminal prosecution, who breached the constitutional guarantee. (...) Thus, as a result of illegality by derivation, the evidence to which the agencies of the criminal prosecution only had access because of the originally unlawful evidence is inadmissible, obtained as a result of transgression, by state agents, of constitutional and legal rights and guarantees, the determining effectiveness of which, in terms of the Brazilian positive law, translates into a significant limitation of legal order to the power of the State against citizens."*

Such was the meaning of Law 11.690/08, which expressly translated the constitutional order that orders the uncovering of evidence obtained by illicit means, establishing, in Article 157 of the Code of Criminal Procedure, the following:

> *"Unlawful evidence, considered evidence that was obtained in violation of constitutional or law, is inadmissible and should be disregarded in the case."*

I would like to note, before concluding my vote, that this is not a rumbling case that went unpunished. No! In fact, any crimes committed by the client hereunder can and should be investigated and, if proven, judged, provided that, ALWAYS AND IN ANY CASE, the legality of the methods employed in the search for the truth is respected, respecting the Democratic Rule of Law and the Principles of Legality, Impersonality and Due Process of Law.

In the case in question, the damage caused by the investigations carried out in violation of the law is unquestionable, and they cannot be supported, from any angle that the matter is analyzed, since the nullity of the measures perpetrated by the agents of ABIN and a former agent of SNI is manifest, in violation of the law.

We must point out, as appropriate, that the judge must strictly follow penal law, and cannot depart therefrom unless he recklessly risks following, alone, a tortuous path of subjectivity which, quite often, leads to an odious loss of impartiality.

# Superior Justice Tribunal

[watermark]

In an effective and true rule of law, the magistrate must judge without passion and in absolute harmony with the existing regulatory structure, even if it is not for him to legislate, but only to apply the rules drafted by another power, the legislative, that in the system adopted by our Federal Constitution, in its Article 2, also enjoys independence, in accordance with the lesson based on the principle of separation of powers.

Now, if all are equal before the law, in accordance with the principle of isonomy set forth under Article 5 of the Constitution, it cannot be accepted that a manipulated investigation, carried out *a lattere,* essentially discriminatory and inspired by illegitimate interests, such as political and electoral motives, could lead to disastrous consequences, affecting the liberty of persons and procedural guarantees, regardless of who is being prosecuted and the nature of the criminal offense charged against the client.

Thus, in the present case, it is undisputed that the investigations carried out by ABIN, outside of its legal listed and limited attributions, expressly set forth under Article 4, of Law 9.883/99, in actual usurpation of its functions and with undisputed misuse of power, inasmuch as a former SNI agent was hired to perform acts of the Criminal Investigation Department and, more seriously, paid for with secret funds, that is, public money, without a legal provision for such, constitutes one of the most serious violations of the Democratic Rule of Law.

There is therefore no question that such evidence is irremediably marred and must be regarded as unlawful and inadmissible, circumstances which make it devoid of any legal effect, as has already been demonstrated above by well-established doctrine and backed by substantial jurisprudence of our courts.

By all evidence, there is no way to support a complaint or the conviction of the judge to render a court-based provision with the indispensable impartiality inherent in all who exercise, with dignity, the noble mission of judging, without subjectivism or ideological tendencies that do not meet the true sense of justice.

I have never witnessed, eminent Justices, and come across a case, with such disregard and disrespect for insurmountable constitutional rules and legal precepts.

# *Superior Justice Tribunal*

[watermark]

In light of the foregoing, I hereby order the annulment of all evidence produced, in particular that of procedures 2007.61.81.010208-7 (telephone surveillance), 2007.61.81.011419-3 (telephone surveillance), and 2008.61.81.008291-3 (controlled action), and of the other related ones, also annulling, from the start, the criminal action, in the same vein as the well-prepared opinion rendered by the Federal Public Prosecutor's Office.

That is my vote.

# EXHIBIT I-2



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Jordan Johnson, hereby certify that the document "HABEAS CORPUS No. 149.250 - SP (2009 0192565-8) Report Summary and Vote" is, to the best of my knowledge and belief, a true and accurate translation from Portuguese into English

_Jordan Johnson_ _(signature)_

Jordan Johnson

Sworn to before me this
October 29, 2018

_(signature)_

Signature, Notary Public

ANDERS MIKAEL EKHOLM
NOTARY PUBLIC-STATE OF NEW YORK
No. 01EK6378373
Qualified in New York County
My Commission Expires 07-23-2022

Stamp, Notary Public

EXHIBIT I-3

*Superior Tribunal de Justiça*

HABEAS CORPUS Nº 149.250 - SP (2009/0192565-8)

IMPETRANTE    : ANDREI ZENKNER SCHMIDT E OUTROS
ADVOGADO      : TIAGO CEDRAZ LEITE OLIVEIRA
IMPETRADO     : TRIBUNAL REGIONAL FEDERAL DA 3A REGIÃO
PACIENTE      : DANIEL VALENTE DANTAS

RELATÓRIO

O EXMO. SR. MINISTRO ADILSON VIEIRA MACABU (DESEMBARGADOR
CONVOCADO DO TJ/RJ) (Relator):

ANDREI ZENKNER SCHMIDT E OUTROS impetram *habeas corpus
em favor de DANIEL VALENTE DANTAS* contra acórdão proferido pela 5ª Turma do
Eg. Tribunal Regional Federal da 3ª Região, assim ementado, *verbis*:

> *"HABEAS CORPUS - PENAL E PROCESSO PENAL -
> PARTICIPAÇÃO DE SERVIDORES DA AGÊNCIA BRASILEIRA DE
> INFORMAÇÃO (ABIN) EM INQUÉRITO CONDUZIDO PELA POLÍCIA
> FEDERAL – AUSÊNCIA DE PROVA PRÉ-CONSTITUÍDA – LEI
> 9.883/99 QUE PERMITE COMPARTILHAMENTO DE DADOS ENTRE
> ÓRGÃOS INTEGRANTES DO SISTEMA BRASILEIRO DE
> INTELIGÊNCIA – NULIDADES VERIFICADAS NA FASE
> PRÉ-PROCESSUAL NÃO CONTAMINAM FUTURA AÇÃO PENAL –
> ORDEM DENEGADA.*

> *1. Os impetrantes não instruíram o "writ" com elementos de prova
> suficientes para que esta Corte, neste passo, emita juízo de valor
> sobre a participação, ou não, de servidores vinculados à Agência
> Brasileira de Informação (ABIN) nos procedimentos investigatórios,
> relacionados com a denominada "Operação Satiagraha". E mesmo
> que, por hipótese, se prestassem a permitir uma conclusão positiva,
> tais documentos não esclarecem em que medida se deu essa
> participação, a ponto de autorizar, já neste momento, um exame da
> sua legalidade.*

> *2. A autoridade impetrada nega a participação de agentes da ABIN na
> persecução penal nº 2008.61.81.008291-3, amparando-se, inclusive,
> em declaração da própria autoridade policial que presidiu as
> Investigações que culminaram na denúncia formulada pelo Ministério
> Público Federal. À míngua de quaisquer outros elementos de*

*Superior Tribunal de Justiça*

*convicção, robustos o suficiente para provar o contrário, é medida de rigor prestigiar as informações apresentadas pela autoridade impetrada, pois é aquela que se encontra em contato mais direto com os fatos.*

*3. No que diz respeito aos demais procedimentos investigatórios verifica-se que, em relação a eles, também não foram apresentados a esta Corte, elementos de convicção suficientes o bastante para que seja avaliada a participação e eventual ilegalidade dessa atividade, por parte dos agentes da ABIN. A impetração não indica um único fato específico, concreto, no qual houve a participação de agentes da ABIN. As informações prestadas pela autoridade impetrada indicam que, se houve participação de agentes da ABIN nos demais procedimentos investigatórios que integram a operação em apreço, esta deu-se de forma secundária, incapaz de justificar qualquer alegação de nulidade de prova, especialmente porque ausente demonstração concreta de prejuízo, conforme se viu do trecho das informações já transcritas nesta decisão. Há que se ter em mente que é premissa básica do processo penal a regra segundo a qual não se declara nenhuma nulidade sem a demonstração do prejuízo. O artigo 563 do Código de Processo Penal é firme nesse sentido.*

*4. Não há prova acerca de um prejuízo concreto experimentado pelo paciente, pelo fato de servidores da Agência Brasileira de Informação, hipoteticamente, terem conhecido do conteúdo de conversas telefônicas interceptadas. É certo que esse fato pode até vir a gerar a responsabilização funcional daquela autoridade que eventualmente violou o seu dever de sigilo, contudo, tal violação, não possui o condão de macular a prova como um todo.*

*5. A Lei 9.883/99 – que instituiu o Sistema Brasileiro de Inteligência – indica a possibilidade de órgãos componentes do aludido sistema, compartilharem informações e dados relativos a situações nas quais haja interesse do estado brasileiro. Tanto a Polícia Federal como a ABIN, integram o Sistema Brasileiro de Inteligência, como se infere dos incisos III e IV do artigo 4º do Decreto nº 4.376/02, que regulamenta a Lei 9.883/99.*

*6. O compartilhamento de dados e informações sigilosos entre os*

*Superior Tribunal de Justiça*

>órgãos encarregados da persecução penal e outros órgãos integrantes
>do Estado, não é novidade. Basta lembrar que, ordinariamente,
>IBAMA (Instituto Brasileiro do Meio Ambiente e dos Recursos Naturais
>Renováveis), Receita Federal, INSS (Instituto Nacional do Seguro
>Social), BACEN (Banco Central do Brasil) e CVM (Comissão de
>Valores Mobiliários), os quais cita-se apenas a título de exemplo,
>compartilham dados com a Polícia Federal e o Ministério Público
>Federal, visando o aprofundamento das apurações criminais, e isso
>nunca causou perplexidade ou surpresa.
>
>7. Eventuais nulidades da fase pré-processual não possuem o condão
>de contaminar a ação penal. O Código de Processo Penal consagra a
>dispensabilidade do Inquérito Policial (artigo 39, § 5º), o que, também,
>corrobora o raciocínio de que eventuais nulidades verificadas naquele
>âmbito não contaminam a ação penal, que lhe é posterior e
>ontologicamente distinta.
>
>8.Ordem denegada." (fls. 2.703/2.705 - vol. 11)

Consta dos autos que o paciente foi denunciado pela prática do crime de corrupção ativa, como incurso no art. 333, *caput*, combinado com o art. 29, *caput*, ambos do Código Penal.

Em longo arrazoado, os impetrantes alegam, em síntese, que:

a) a Operação Satiagraha é resultado de uma investigação criminal oficiosa, realizada à margem de inquérito policial, que foi, indevidamente, substituído pela atuação clandestina da Agência Brasileira de Inteligência - ABIN  e de investigador particular, contratado pelo Delegado Protógenes Queiroz - responsável pela operação;

a.1) aponta-se violação aos arts. 144, § 1º, IV, da Constituição Federal e 4º, do Código de Processo Penal, aduzindo que, embora a  Agência Brasileira de Inteligência - ABIN tenha levado a efeito, por pessoas a seu serviço, monitoramentos telefônico e telemático em desfavor do ora paciente, no período compreendido entre fevereiro de 2007 e o início de 2008, o Departamento de Polícia Federal só instaurou o inquérito em 25.06.08;

b) clandestinidade e ilegalidade da investigação comprovadas mediante:

b.1) a "informalidade" tanto na solicitação quanto na execução das

*Superior Tribunal de Justiça*

atividades realizadas pela ABIN;

        b.2) o custeio clandestino da operação realizado pela ABIN, mediante a utilização, inclusive, das chamadas VS - "verbas secretas";

        b.3) a manipulação, pela ABIN, de arquivos de áudio e de e-mail acobertados pelo sigilo;

        b.4) a interceptação e análise de e-mails trocados entre a área jurídica do Banco Opportunity, indicando monitoramento, pela ABIN, das ações de seus advogados;

        b.5) o acesso ilegal, pela ABIN, aos dados dos HDs do Banco Opportunity, acobertados por sigilo;

        b.6) o acesso ilegal, pela ABIN, ao Sistema Guardião, mediante senhas disponibilizadas por policiais federais;

        b.7) a prática, pela ABIN, de atos de vigilância típicos de Polícia Judiciária;

        b.8) a realização de diligências (fotografias e filmagens) camufladas em torno da vida privada dos investigados, inclusive mediante a utilização de veículo técnico da ABIN.

        c) a intromissão estatal abusiva e ilegal na esfera da vida privada, da intimidade, da honra e da imagem, proscrita  submissão do paciente à condição de 'objeto' das investigações, violando, assim, o Princípio da Dignidade Humana, bem como a obtenção de prova ilícita, em virtude de tal prova ter sido obtida em contrariedade à previsão legal.

        Sustentam os impetrantes violação aos arts. 1º, III, e 5º, X, XII, LVI, ambos da Magna Carta e 157, do Código de Processo Penal.

        Asseveram, também, que existe vedação ao compartilhamento de informações, entre a ABIN e a Polícia Federal, salvo se os dados forem endereçados, diretamente, à sua Diretoria de Inteligência Policial, nos termos do art. 6º, da Lei nº 9.883/99 e do art. 4º, III e IV, do Decreto nº 4376/02, o que não teria ocorrido, *in casu;*

        Por fim, requerem "*a concessão da ordem de habeas corpus, a culminar com a decretação da nulidade dos Procedimentos nº 2007.61.81.010208-7 (monitoramento telefônico), 2007.61.81.011419-3 (monitoramento telemático) e 2008.61.81.008291-3 (ação controlada), sobre os quais inequivocamente se projetaram as comprovadas ilegalidades, a fim de que, ulteriormente, se possa avaliar a*

*Superior Tribunal de Justiça*

*derivação da nulidade a investigações e/ou ações penais decorrentes de tais procedimentos.*" (fls. 66 - vol. 01)

Foram opostos embargos de declaração contra o acórdão ora impugnado, que restaram rejeitados, nos termos do acórdão às fls. 2.717/2.718 - vol. 11.

Como não houve pedido de liminar, o Exmo. Sr. Ministro Arnaldo Esteves Lima, quando Relator do presente feito, solicitou informações à autoridade apontada como coatora e, posteriormente, deferiu vista ao Ministério Público (fl. 2.679 - vol. 11).

No seu parecer, às fls. 2.728/2.733 - vol. 11, o Ministério Público Federal opinou pela concessão da ordem, "*ex officio, para que seja expedida ordem, com força para anular, desde o início, a ação penal declinada nesta manifestação. Se tida como incabível à concessão da ordem de habeas corpus, nos moldes propostos, espero, como agente do Ministério Público, o seu deferimento para que seja anulado o acórdão em que o Tribunal Federal Regional da Terceira Região, através de sua Quinta Turma, indeferiu a súplica originária, para que em seu lugar outro seja proferido, com análise e consideração, pelos seus integrantes, dos documentos que se recusaram a apreciar naquela oportunidade.*"

Vieram-me os autos à conclusão, por atribuição, após ter sido convocado para integrar esta eg. 5ª Turma, em 17.12.10.

Em 24.02.11 foi juntada aos autos, petição requerendo preferência no julgamento.

É, no essencial, o relatório.

*Superior Tribunal de Justiça*

HABEAS CORPUS Nº 149.250 - SP (2009/0192565-8)

RELATOR          : MINISTRO ADILSON VIEIRA MACABU (DESEMBARGADOR
                   CONVOCADO DO TJ/RJ)
IMPETRANTE       : ANDREI ZENKNER SCHMIDT E OUTROS
ADVOGADO         : TIAGO CEDRAZ LEITE OLIVEIRA
IMPETRADO        : TRIBUNAL REGIONAL FEDERAL DA 3A REGIÃO
PACIENTE         : DANIEL VALENTE DANTAS

EMENTA

PENAL E PROCESSO PENAL. *HABEAS CORPUS*. OPERAÇÃO SATIAGRAHA. PARTICIPAÇÃO IRREGULAR, INDUVIDOSAMENTE COMPROVADA, DE DEZENAS DE FUNCIONÁRIOS DA AGÊNCIA BRASILEIRA DE INFORMAÇÃO (ABIN) E DE EX-SERVIDOR DO SNI, EM INVESTIGAÇÃO CONDUZIDA PELA POLÍCIA FEDERAL. MANIFESTO ABUSO DE PODER. IMPOSSIBILIDADE DE CONSIDERAR-SE A ATUAÇÃO EFETIVADA COMO HIPÓTESE EXCEPCIONALÍSSIMA, CAPAZ DE PERMITIR COMPARTILHAMENTO DE DADOS ENTRE ÓRGÃOS INTEGRANTES DO SISTEMA BRASILEIRO DE INTELIGÊNCIA. INEXISTÊNCIA DE PRECEITO LEGAL AUTORIZANDO-A. PATENTE A OCORRÊNCIA DE INTROMISSÃO ESTATAL, ABUSIVA E ILEGAL NA ESFERA DA VIDA PRIVADA, NO CASO CONCRETO. VIOLAÇÕES DA HONRA, DA IMAGEM E DA DIGNIDADE DA PESSOA HUMANA. INDEVIDA OBTENÇÃO DE PROVA ILÍCITA, PORQUANTO COLHIDA EM DESCONFORMIDADE COM PRECEITO LEGAL. AUSÊNCIA DE RAZOABILIDADE. AS NULIDADES VERIFICADAS NA FASE PRÉ-PROCESSUAL, E DEMONSTRADAS À EXAUSTÃO, CONTAMINAM FUTURA AÇÃO PENAL. INFRINGÊNCIA A DIVERSOS DISPOSITIVOS DE LEI. CONTRARIEDADE AOS PRINCÍPIOS DA LEGALIDADE, DA IMPARCIALIDADE E DO DEVIDO PROCESSO LEGAL INQUESTIONAVELMENTE CARACTERIZADA. A AUTORIDADE DO JUIZ ESTÁ DIRETAMENTE LIGADA À SUA INDEPENDÊNCIA AO JULGAR E À IMPARCIALIDADE. UMA DECISÃO JUDICIAL NÃO PODE SER DITADA POR CRITÉRIOS SUBJETIVOS, NORTEADA PELO ABUSO DE PODER OU DISTANCIADA DOS PARÂMETROS LEGAIS. ESSAS EXIGÊNCIAS DECORREM DOS PRINCÍPIOS DEMOCRÁTICOS E DOS DIREITOS E GARANTIAS INDIVIDUAIS INSCRITOS NA CONSTITUIÇÃO. NULIDADE DOS PROCEDIMENTOS QUE SE IMPÕE, ANULANDO-SE, DESDE O INÍCIO, A AÇÃO PENAL.

1.Uma análise detida dos 11 (onze) volumes que compõem o HC demonstra que existe uma grande quantidade de

*Superior Tribunal de Justiça*

provas aptas a confirmar, cabalmente, a participação indevida, flagrantemente ilegal e abusiva, da ABIN e do investigador particular contratado pelo Delegado responsável pela chefia da Operação Satiagraha.

2. Não há se falar em compartilhamento de dados entre a ABIN e a Polícia Federal, haja vista que a hipótese dos autos não se enquadra nas exceções previstas na Lei nº 9.883/99.

3. Vivemos em um Estado Democrático de Direito, no qual, como nos ensina a Profª. Ada Pellegrini Grinover, *in* "Nulidades no Processo Penal", "o direito à prova está limitado, na medida em que constitui as garantias do contraditório e da ampla defesa, de sorte que o seu exercício não pode ultrapassar os limites da lei e, sobretudo, da Constituição."

4. No caso em exame, é inquestionável o prejuízo acarretado pelas investigações realizadas em desconformidade com as normas legais, e não convalescem, sob qualquer ângulo que seja analisada a questão, porquanto é manifesta a nulidade das diligências perpetradas pelos agentes da ABIN e um ex-agente do SNI, ao arrepio da lei.

5. Insta assinalar, por oportuno, que o juiz deve estrita fidelidade à lei penal, dela não podendo se afastar a não ser que imprudentemente se arrisque a percorrer, de forma isolada, o caminho tortuoso da subjetividade que, não poucas vezes, desemboca na odiosa perda da imparcialidade. Ele não deve, jamais, perder de vista a importância da democracia e do Estado Democrático de Direito.

6. Portanto, inexistem dúvidas de que tais provas estão irremediavelmente maculadas, devendo ser consideradas ilícitas e inadmissíveis, circunstâncias que as tornam destituídas de qualquer eficácia jurídica, consoante entendimento já cristalizado pela doutrina pacífica e lastreado na torrencial jurisprudência dos nossos tribunais.

7. Pelo exposto, concedo a ordem para anular, todas as provas produzidas, em especial a dos procedimentos nº 2007.61.81.010208-7 (monitoramento telefônico), nº 2007.61.81.011419-3 (monitoramento telefônico), e nº 2008.61.81.008291-3 (ação controlada), e dos demais correlatos, anulando também, desde o início, a ação

*Superior Tribunal de Justiça*

penal, na mesma esteira do bem elaborado parecer exarado pela douta Procuradoria da República.



*Superior Tribunal de Justiça*

VOTO

O EXMO. SR. MINISTRO ADILSON VIEIRA MACABU (DESEMBARGADOR CONVOCADO DO TJ/RJ) (Relator):

Cuidam os autos de procedimentos adotados pela Polícia Federal durante a colheita de provas da conhecida Operação Satiagraha.

É fato público e notório que se trata de uma operação que investigou possíveis crimes de desvio de verbas públicas, corrupção e lavagem de dinheiro, desencadeada em princípios de 2004 e que resultou na prisão - posteriormente revogada, determinada pela 6ª Vara da Justiça Federal em São Paulo, de vários banqueiros, diretores de banco e investidores, em 8 de julho de 2008, dentre eles DANIEL VALENTE DANTAS, o ora paciente.

Os impetrantes visam, basicamente, com este *habeas corpus*, a nulidade dos procedimentos de monitoramento telefônico, telemático e ação controlada que resultaram em ação penal instaurada contra o paciente, ao argumento que eles decorreriam de provas ilícitas.

Como dito alhures, sustentam, em apertada síntese, que, no caso concreto, resta cabalmente demonstrada a atuação clandestina e ilegal da ABIN - AGÊNCIA BRASILEIRA DE INTELIGÊNCIA e de um investigador particular - que teria sido contratado pelo então Delegado responsável pelas investigações da Operação Satiagraha, realizando vários atos típicos de Polícia Judiciária, que resultaram num conjunto de provas ilícitas, em flagrante violação a diversos dispositivos legais.

Asseveram que "*a atuação da ABIN está a serviço exclusivo dos interesses da Presidência da República - e não de outro Poder, órgão ou funcionário da administração pública. De modo algum, portanto, pode-se compreender que suas atribuições englobem a prática de atos típicos de Polícia Judiciária, seja porque (a) ausente previsão legal nesse sentido, seja porque (b) o destinatário de suas atividades (o Presidente da República) é absolutamente diverso do destinatário de qualquer investigação criminal (Ministério Público)*" (STJ fls. 19 - vol. 01) (grifos no original)

Aduzem, ainda, que as consequências processuais dessa alegada atuação clandestina e ilegal da ABIN e do investigador particular redundam na nulidade da investigação criminal que resultou em ação penal e inquérito policial, em trâmite perante a 6ª Vara Federal Criminal de São Paulo, vez que as provas carreadas aos já mencionados processos estariam contaminadas pela ilicitude, quando de sua colheita.

Concluem que a eg. 5ª Turma do Tribunal Federal Regional da 3ª Região, ao deixar de reconhecer a atuação da ABIN e de investigador particular na

*Superior Tribunal de Justiça*

investigação criminal, contrariou os arts. 1º, III, 5º, X, XII, LVI, 144, § 1º, IV, todos da Constituição Federal, bem como os arts. 4º e 157, ambos do Código de Processo Penal.

Com razão os impetrantes.

No caso concreto, o Tribunal *a quo* denegou a ordem pretendida, afirmando, em brevíssima síntese, que: (i) os impetrantes não comprovaram a participação da ABIN nas investigações, (ii) que é perfeitamente aceitável o compartilhamento de dados entre órgãos do Sistema Brasileiro de Inteligência e (iii) que as nulidades porventura declaradas na fase pré-processual não têm o condão de contaminar a futura ação. Assim está ementada a decisão:

*"HABEAS CORPUS" – PENAL E PROCESSO PENAL – PARTICIPAÇÃO DE SERVIDORES DA AGÊNCIA BRASILEIRA DE INFORMAÇÃO (ABIN) EM INQUÉRITO CONDUZIDO PELA POLÍCIA FEDERAL – AUSÊNCIA DE PROVA PRÉ-CONSTITUÍDA – LEI 9.883/99 QUE PERMITE COMPARTILHAMENTO DE DADOS ENTRE ÓRGÃOS INTEGRANTES DO SISTEMA BRASILEIRO DE INTELIGÊNCIA – NULIDADES VERIFICADAS NA FASE PRÉ-PROCESSUAL NÃO CONTAMINAM FUTURA AÇÃO PENAL – ORDEM DENEGADA.*

*1. Os impetrantes não instruíram o "writ" com elementos de prova suficientes para que esta Corte, neste passo, emita juízo de valor sobre a participação, ou não, de servidores vinculados à Agência Brasileira de Informação (ABIN) nos procedimentos investigatórios, relacionados com a denominada "Operação Satiagraha". E mesmo que, por hipótese, se prestassem a permitir uma conclusão positiva, tais documentos não esclarecem em que medida se deu essa participação, a ponto de autorizar, já neste momento, um exame da sua legalidade.*

*2. A autoridade impetrada nega a participação de agentes da ABIN na persecução penal nº 2008.61.81.008291-3, amparando-se, inclusive, em declaração da própria autoridade policial que presidiu as investigações que culminaram na denúncia formulada pelo Ministério Público Federal. À mingua de quaisquer outros elementos de convicção, robustos o suficiente para provar o contrário, é medida de*

*Superior Tribunal de Justiça*

rigor prestigiar as informações apresentadas pela autoridade impetrada, pois é aquela que se encontra em contato mais direto com os fatos.

3. No que diz respeito aos demais procedimentos investigatórios verifica-se que, em relação a eles, também não foram apresentados a esta Corte, elementos de convicção suficientes o bastante para que seja avaliada a participação e eventual ilegalidade dessa atividade, por parte dos agentes da ABIN. A impetração não indica um único fato específico, concreto, no qual houve a participação de agentes da ABIN. As informações prestadas pela autoridade impetrada indicam que, se houve participação de agentes da ABIN nos demais procedimentos investigatórios que integram a operação em apreço, esta deu-se de forma secundária, incapaz de justificar qualquer alegação de nulidade de prova, especialmente porque ausente demonstração concreta de prejuízo, conforme se viu do trecho das informações já transcritas nesta decisão. Há que se ter em mente que é premissa básica do processo penal a regra segundo a qual não se declara nenhuma nulidade sem a demonstração do prejuízo. O artigo 563 do Código de Processo Penal é firme nesse sentido.

4. Não há prova acerca de um prejuízo concreto experimentado pelo paciente, pelo fato de servidores da Agência Brasileira de Informação, hipoteticamente, terem conhecido do conteúdo de conversas telefônicas interceptadas. É certo que esse fato pode até vir a gerar a responsabilização funcional daquela autoridade que eventualmente violou o seu dever de sigilo, contudo, tal violação, não possui o condão de macular a prova como um todo.

5. A Lei 9.883/99 – que instituiu o Sistema Brasileiro de Inteligência – indica a possibilidade de órgãos componentes do aludido sistema, compartilharem informações e dados relativos a situações nas quais haja interesse do estado brasileiro. Tanto a Polícia Federal como a ABIN, integram o Sistema Brasileiro de Inteligência, como se infere dos incisos III e IV do artigo 4º do Decreto nº 4.376/02, que regulamenta a Lei 9.883/99.

6. O compartilhamento de dados e informações sigilosos entre os

*Superior Tribunal de Justiça*

> *órgãos encarregados da persecução penal e outros órgãos integrantes do Estado, não é novidade. Basta lembrar que, ordinariamente, IBAMA (Instituto Brasileiro do Meio Ambiente e dos Recursos Naturais Renováveis), Receita Federal, INSS (Instituto Nacional do Seguro Social), BACEN (Banco Central do Brasil) e CVM (Comissão de Valores Mobiliários), os quais cita-se apenas a título de exemplo, compartilham dados com a Polícia Federal e o Ministério Público Federal, visando o aprofundamento das apurações criminais, e isso nunca causou perplexidade ou surpresa.*
>
> *7. Eventuais nulidades da fase pré-processual não possuem o condão de contaminar a ação penal. O Código de Processo Penal consagra a dispensabilidade do Inquérito Policial (artigo 39, § 5º), o que, também, robora o raciocínio de que eventuais nulidades verificadas naquele âmbito não contaminam a ação penal, que lhe é posterior e ontologicamente distinta.*
>
> *8. Ordem denegada."   (fls. 2.703/2.705 - vol. 11) (publicada em 28/05/2009)*

Contra essa decisão foram opostos embargos de declaração, que restaram rejeitados, ante os termos do acórdão acostado às fls. 2.712/2.715 - vol. 11.

Peço vênia para transcrever trecho do acórdão dos declaratórios, que julgo de extrema importância para o deslinde da controvérsia, *verbis*:

> *"...omissis...*
>
> *Irretocáveis as razões expostas por Sua Excelência.*
>
> *Cumpre ainda ressaltar o entendimento pacífico desta Egrégia Turma no sentido de que cabe aos impetrantes promover a correta e suficiente instrução do pedido de "habeas corpus", o qual, em virtude do seu rito especialíssimo e célere, não comporta dilação probatória.*
>
> *Em outras palavras, o pedido de "writ" deve vir acompanhado de prova pré-constituída suficiente para o seu julgamento. Não se justifica o adiamento do exame de um pedido de "habeas corpus", - a prestação da tutela jurisdicional relativa a bem jurídico tão precioso - em virtude de documentos apresentados na última hora, especialmente quando não há prova capaz de comprovar que os interessados somente os obtiveram naquela data.*

*Superior Tribunal de Justiça*

*Aliás, deve ficar registrado que o zeloso Juiz Federal Convocado, Dr. Hélio Egydio de Matos Nogueira, diligenciou no sentido de examinar o teor das informações contidas na mídia (DVD) juntada aos autos.*

*Mesmo após tentativas frustradas de acesso ao conteúdo da mídia em questão, no seu próprio gabinete de trabalho, o Juiz Federal Convocado encaminhou o documento aos cuidados do Departamento de Informática desta Corte, que, após novas tentativas infrutíferas, certificou a existência de um defeito no disco juntado aos autos, o que impedia o conhecimento do seu conteúdo.*

*Diante de um quadro como o acima desenhado, outra solução não se apresentava, senão o indeferimento do pedido de adiamento do julgamento do "writ".*

*Ademais, nada impede que os impetrantes ajuízem um novo pedido de "habeas corpus" junto a esta Corte, cuidando agora de promover a correta instrução do "writ", ônus que indiscutivelmente lhes cabe.*

*O que não se pode admitir é que a prestação da tutela jurisdicional reste obstada por força de documentos trazidos aos autos na última hora, especialmente nas circunstâncias acima apontadas, em que a mídia apresentada pela defesa possuía um defeito impeditivo do seu acesso.*

*Plena de acerto a postura adotada pelo Ilustre Juiz Federal Convocado, Hélio Egydio de Matos Nogueira, que, no voto que serviu de paradigma para o acórdão lavrado na ocasião, deixou expresso o quanto segue: "(...) No que diz respeito à volumosa documentação apresentada pelos impetrantes a este Relator na manhã do dia de hoje – disco de mídia com imagens dos autos do inquérito policial em curso na 7ª Vara Federal Criminal de São Paulo - observo não ser possível que a prestação da tutela jurisdicional, que deve ser especialmente célere no caso do Habeas Corpus, seja protelada pela juntada de novos documentos, cabendo salientar que o suposto constrangimento ilegal que estaria sofrendo o paciente deveria ser demonstrado por prova pré-constituída no momento da impetração. Nesta senda, confira-se o seguinte precedente do Superior Tribunal de Justiça: 'O habeas corpus, como writ constitucional que é, não rende ensejo à dilação probatória, razão pela qual exige, para seu*

*Superior Tribunal de Justiça*

conhecimento, prova pré-constituída do fundamento da impetração' (STJ – 6ªT – HC 7.277 – Rel. Fernando Gonçalves – j. 21.05.1998 – DJU de 08.06.1998, p. 180).

No mesmo sentido: STJ – 5ªT – HC 25.700 – Rel. José Arnaldo da Fonseca – j. 17.06.2003 – DJU de 25.08.2003, p. 336. Aliás, ressalto que o disco de mídia apresentado pelos impetrantes sequer pôde ser aberto para que este Relator pudesse examinar o seu conteúdo. Tanto os computadores do gabinete, quanto aqueles do departamento de informática desta Corte, não conseguiram acessar as imagens ali contidas. Pois bem. Os impetrantes deveriam ter trazido a esta Corte, em tempo hábil, a documentação em apreço, de modo a permitir, inclusive, a manifestação da Procuradoria Regional da República.

E não há elemento de convicção apto a indicar que essa prova foi obtida pelos impetrantes somente agora, de modo a justificar a apresentação de última hora. Contudo, nada impede que os impetrantes aparelhem nova impetração com os documentos acima mencionados, ocasião na qual esta Egrégia Turma examinará de forma adequada e detida a pretensão porventura

manifestada. A par disso, na augusta via do "writ" não seria possível o exame vertical da prova produzida em inquérito policial que apura supostos delitos perpetrados pela autoridade policial na condução dos procedimentos criminais atinentes à denominada "Operação Satiagraha", até porque o referido inquérito sequer foi concluído. Neste sentido, incabível, nesta sede, a análise aprofundada da documentação nova colacionada pelos impetrantes, que demandaria pesquisa probatória ampla e cotejamento de elementos de convicção para que comprovasse a existência de manifesta nulidade do processo, tal como exigido pelo artigo 648, VI, CPP (...)" (fl. 623/ v°). (publicado em 26/03/2009)

Rejeito, portanto, a linha de argumentação apresentada pelo embargante a esse respeito. Não procede a alegação de nulidade do acórdão por força do não adiamento do julgamento do "writ".

Data maxima venia, feita uma análise acurada dos autos, diga-se de passagem, dos 11 volumes que compõem o caso, é possível verificar que existe uma grande quantidade de provas aptas a confirmar, cabalmente - a meu ver, a

*Superior Tribunal de Justiça*

participação    indevida e flagrantemente ilegal da ABIN e do investigador particular contratado pelo Delegado Protógenes Queiroz.

Dentre o farto material acostado aos autos, podemos destacar alguns documentos:

- cópia do Ofício enviado pelo Dr. Daniel Lorenz de Azevedo (então Diretor de Inteligência Policial da Polícia Federal) encaminhando ao Dr. Amaro Vieira Ferreira (também delegado da Polícia Federal e responsável pelo Inquérito Policial nº 2-4447/2008, que apurava possível violação de sigilo profissional no decorrer da Operação Satiagraha) cópias de 3 (três) recibos em nome de Francisco Ambrósio do Nascimento, localizados no bojo da prestação de contas do processo nº 08200.001332/2008-22, o qual tem como suprido o DPF Protógenes Pinheiro de Queiroz, ex- coordenador da Operação Satiagraha - fls. 1.460 v/1.462, vol. 6 dos autos.

- ofício enviado pelo delegado Dr. Glorivan Bernardes de Oliveira ao Dr. Amaro Vieira Ferreira , confirmando que o Sr. Márcio Seltz - servidor da ABIN, esteve no Complexo Administrativo Sudoeste, local para onde foi transferido o efetivo da Operação Satiagraha - fls. 1.408-v/1.409, vol. 6 dos autos.

- carta enviada pelo Dr. Paulo Fernando da Costa Lacerda ao Dep. Nelson Pellegrino - Relator da CPI das Escutas Telefônicas Clandestinas, comprovando a participação de agentes da ABIN na Operação Satiagraha - fls. 2.210/2.224 - vol. 9.

- ofício prestando informações, enviado pelo Dr. Amaro Vieira Ferreira ao Procurador da República Dr. Roberto Antônio Dassiê Diana, em 12/03/09, no qual se lê: "*nessa linha investigativa verificou-se que servidores da Agência Brasileira de Inteligência - ABIN e um ex-servidor, por iniciativa do Delegado Protógenes Queiroz, sem autorização judicial e sem qualquer formalização, foram introduzidos ocultamente nos trabalhos da operação Satiagraha, tomaram conhecimento de dados que estavam sob sigilo, e, seguindo comando daquela autoridade e de outros servidores a ela subordinados, realizaram trabalhos de vigilância, acompanhamento de alvos, registros fotográficos, filmagens, gravações ambientais, análise de documentos igualmente sigilosos, geraram relatórios e produziram transcrições a partir da audição de gravações de conversações telefônicas interceptadas pelo sistema guardião, em situação que ultrapassa qualquer limite de entendimento de que fosse simples atuação pontual com troca de dados de inteligência entre órgãos integrantes do Sistema Brasileiro de Inteligência - SISBIN, cuja razão de existir e finalidade de atuação, diferem diametralmente daquelas correspondentes à Polícia Judiária da União.*" (fls. 2.274 - vol. 09)

- às fls. 2.342/2.385-v, vol.10 dos autos, encontra-se o relatório

*Superior Tribunal de Justiça*

oriundo do inquérito policial, instaurado em 24/07/08 e relatado em 07/04/09, no qual o Delegado Amaro Vieira Ferreira apresenta, detalhadamente, ao Ministério Público Federal o resultado das investigações que confirmam a participação indevida da ABIN e de investigador particular na Operação Satiagraha. Trata-se de um longo relatório, mas peço vênia para transcrever 2 trechos que me parecem relevantíssimos para o desfecho dessa decisão.

No que tange à participação de investigador particular, contratado pelo Dr. Protógenes Queiroz, o relatório consigna, expressamente, que:

> *"...omissis...*
>
> *A participação de terceiro é confirmada pelo depoimento de FRANCISCO AMBROSIO DO NASCIMENTO (fls. 795/808), aposentado, ex-servidor da ABIN, que relata as circunstâncias de seu chamamento para execução de trabalhos de interesse da operação, confirmando que tivera acesso a informações sigilosas do bojo da operação." (fls. 2.365 - vol 10)*

Por sua vez, no verso da fl. 2.383, destaca-se, verbis:

> *"...omissis...*
>
> *Desse modo, conclui-se que, restou evidenciado desrespeito ao disposto no artigo 8º e conseqüente infração ao disposto na segunda parte, do artigo 10, da Lei nº9.296, de 24 de julho de 1996, uma vez que em relação a atuação dos servidores da ABIN, constatou-se completo desvio de finalidade, tendo ocorrido para aqueles servidores, que assim atuaram, repasse de dados que estavam sob segredo de justiça em procedimento judicial de interceptação de comunicações telefônicas, autorizada especificamente para fazer prova em investigação criminal e em instrução processual penal, conforme dispõe o artigo 1º da Lei 9.296/96, que regulamentou o inciso XII, parte final, do artigo 5º, da Constituição Federal, situação que determinou o indiciamento dos policiais WALTER GUERRA SILVA (fls. 2124/21270, ROBERTO CARLOS DA ROCHA (fls. 2215/2218) e EDUARDO GARCIA (fls. 2630/2634), além do delegado PROTÓGENES QUEIROZ (fls. 2630/2634), por infração ao disposto na segunda parte, do artigo 10, da Lei 9.296, de 24 de julho de 1996, sendo eles individualmente*

*Superior Tribunal de Justiça*

qualificados e interrogados, de modo geral se recusaram a responder aos questionamentos, optando pelo direito de fazê-lo somente na justiça" (grifos no original)

A meu sentir, é bastante razoável que a defesa do paciente tenha apresentado documentos novos - praticamente na data do julgamento dos declaratórios, os quais não me parece ter sido possível obter antes, haja vista que se encontrava em curso a investigação que culminou com o indiciamento do Delegado Protógenes Queiroz, como se depreende, por exemplo, da verificação da data em que foi relatado o resultado da investigação, qual seja, 07/04/09, poucos dias após o julgamento dos Ed´s.

Ademais, como muito bem colocado pelo *Parquet*, em seu parecer à fl. 273 dos autos, não se pode considerar protelatório o requerimento do maior interessado no julgamento do *writ*, qual seja, o paciente:

"...omissis...

9. Pois bem: se o habeas corpus busca uma ordem *proveitosa* a um indiciado ou a um sujeito processual, que ao ver do impetrante _sofre_ ou _acha-se_ na iminência de suportar os efeitos de um constrangimento ilegal , parece-me extreme de dúvida que a presteza do julgamento _respeita_, primordialmente, a ele _e_ ao paciente, aos quais, por isso, _assiste o direito de buscar seu_ _adiamento_, _para que_ o julgador ou os julgadores _considerem_ _documentos_ que se afiguram _relevantes_ para a motivação da decisão, _ainda que possam_, no sopesamento das provas, proclamar a sua desvalia.

10. Logo, tenho que, se corretamente compreendida, a regra invocada pelo eminente relator, para denegar o pretendido adiamento, só autorizaria a conclusão a que chegou o v. acórdão vergastado, se o alongamento do prazo (i) fosse prejudicial ao acusado, ou (ii) pudesse comprometer o exercício da pretensão punitiva, pelo possível pronunciamento, em detrimento do Ministério Público,de prescrição prestes a consumar-se.

11. A ilegalidade, aqui identificada, agrava-se pela circunstância de terem os impretantes esclarecido, à origem, que pretendiam, com a documentação apresentada na data do julgamento, evidenciar a ativa participação da Agência Brasileira de Inteligência - ABIN - , nas

*Superior Tribunal de Justiça*

> *investigações que se projetaram sobre o paciente, como, aliás, testifica o v. acórdão que rejeitou os embargos de declaração, manejados logo após a denegação do habeas corpus originário."*

Feitas essas considerações, passo à análise do mérito do presente *writ*.

O art. 144 da Constituição Federal enumera e fixa a atribuição dos órgãos responsáveis pelas atividades de segurança pública:

> *" 144. A segurança pública, dever do Estado, direito e responsabilidade de todos, é exercida para a preservação da ordem pública e da incolumidade das pessoas e do patrimônio, através dos seguintes órgãos:*
> *I - polícia federal;*
> *II - polícia rodoviária federal;*
> *III - polícia ferroviária federal;*
> *IV - polícias civis;*
> *V - polícias militares e corpos de bombeiros militares."*

Em seu § 1º, inciso IV, o mesmo dispositivo legal consigna que as atribuições da Polícia Judiciária, no âmbito da União, cabem exclusivamente à Polícia Federal e, na esfera dos Estados, devem ser exercidas pela Polícia Civil, ressalvada a competência da Polícia Militar (§ 4º), *verbis*:

> *"Art. 144 -*
> *§ 1º A polícia federal, instituída por lei como órgão permanente, organizado e mantido pela União e estruturado em carreira, destina-se a:*
> *...omissis...*
> *IV - exercer, com exclusividade, as funções de polícia judiciária da União.*
> *...omissis...*
> *§ 4º - às polícias civis, dirigidas por delegados de polícia de carreira, incumbem, ressalvada a competência da União, as funções de polícia judiciária e a apuração de infrações penais, exceto as militares."*

*Superior Tribunal de Justiça*

Dentro desse contexto, delimitado pela Constituição Federal, entendo que a atividade investigatória deve ater-se aos ditames fixados. Apenas em casos excepcionalíssimos e desde que preenchidos os requisitos legais do art. 4º, parágrafo único, do Código de Processo Penal, permitir-se-á que essa atividade seja exercida por órgão diverso da Polícia Judiciária.

Por outro lado, a Lei nº 9.883/99 instituiu o Sistema Brasileiro de Inteligência "*que integra as ações de planejamento e execução das atividades de inteligência do País, com a finalidade de fornecer subsídios ao Presidente da República nos assuntos de interesse nacional*" (art. 1º) e criou a Agência Brasileira de Inteligência - ABIN, como órgão central de tal sistema, fixando suas atribuições, claramente descritas em seu art. 4º, a saber:

> *Art. 4º A ABIN, além do que lhe prescreve o artigo anterior, compete:*
>
> *I - planejar e executar ações, inclusive sigilosas, relativas à obtenção e análise de dados para a produção de conhecimentos destinados a assessorar o Presidente da República;*
>
> *II - planejar e executar a proteção de conhecimentos sensíveis, relativos aos interesses e à segurança do Estado e da sociedade;*
>
> *III - avaliar as ameaças, internas e externas, à ordem constitucional;*
>
> *IV - promover o desenvolvimento de recursos humanos e da doutrina de inteligência, e realizar estudos e pesquisas para o exercício e aprimoramento da atividade de inteligência.*" (grifei)

Da simples leitura dos acima mencionados dispositivos legais, pode-se concluir que a atuação da ABIN se limita às atividades de inteligência que tenham como finalidade precípua e única fornecer subsídios ao Presidente da República nos assuntos de interesse nacional.

E mais. Não há qualquer possibilidade de se caracterizar a participação da ABIN e de ex-servidor do SNI com o intuito de "mero compartilhamento de informações", como consignado no acórdão vergastado, especialmente, porque o próprio acórdão é categórico ao afirmar que esse compartilhamento de informações de dados é admitido em casos excepcionais "*a situações nas quais haja interesse do estado brasileiro.*", conforme simples leitura da ementa no item nº 5.

*Superior Tribunal de Justiça*

Sendo público e notório que o presente *writ* teve origem em processos investigatórios de possíveis delitos de desvio de verbas públicas, corrupção e branqueamento de capitais, como dizem os portugueses, indaga-se: onde reside o interesse nacional na apuração de tais crimes?

Vivemos em um Estado Democrático de Direito regido por um conjunto de leis que disciplinam e estabelecem os comportamentos permitidos ou proibidos, visando como finalidade principal a tranquilidade pública e garantindo a convivência harmônica dos mais variados grupos sociais. Dentro desse conjunto de normas, destaca-se o Princípio da Legalidade, consagrado em nossa Constituição no art. 5º, inciso II - ninguém será obrigado a fazer ou deixar de fazer alguma coisa senão em virtude de lei.

Alexandre Rezende da Silva, em artigo intitulado " Princípio da Legalidade", publicado em agosto de 2002, no sítio eletrônico *Jus Navigandi*, nos ensina que: " *o Princípio da Legalidade é a expressão maior do Estado Democrático de Direito, a garantia vital de que a sociedade não está presa às vontades particulares, pessoais, daquele que governa. Seus efeitos e importância são bastante visíveis no ordenamento jurídico, bem como na vida social. O Devido Processo Legal e a Reserva Legal são os seus mais importantes desdobramentos. É na Administração Pública que se percebe o quanto é importante este princípio, posto que é aí que o Estado se faz sentir mais diretamente junto aos cidadãos. Trata-se do princípio maior do nosso sistema legal, que, como o sistema que é, tem vários princípios norteadores, os quais atingem tanto a aplicação do Direito como a sua elaboração.*"

Segundo o renomado jurista Luis Roberto Barroso, *in* Princípio da Legalidade, Delegações Legislativas, Poder Regulamentar, Repartição Constitucional das Competências Legislativas, artigo extraído do site Infojus, - www.infojus.com.br: *"O Estado de Direito, desde suas origens históricas, envolve associado ao princípio da legalidade, ao primado da lei, idealmente concebida como 'expressão da vontade geral institucionalizada'".*

*"Neste sentido, na busca de uma efetiva vida em sociedade é preciso que cada função do Poder respeite o limite das outras funções, sob pena de uma quebra do equilíbrio das funções públicas que é essencial para a existência do denominado Estado Democrático de Direito.*

*Por força destas premissas, que no decorrer dos anos têm se mostrado verdadeiras, se uma pessoa comete um ilícito, civil, penal, administrativo, tributário, ou qualquer outro, somente poderá ser processada e julgada pelo Poder Judiciário, onde deverão ser assegurados a ampla defesa e o contraditório com todos*

*Superior Tribunal de Justiça*

os recursos a eles inerentes.

A observância dos princípios processuais não significa a busca da impunidade e nem mesmo um incentivo à criminalidade. Se o Estado estiver devidamente aparelhado este conseguirá por meio de procedimentos lícitos produzir as provas necessárias que possam demonstrar a culpabilidade de um acusado, ainda que o crime praticado pelo infrator possa causar repulsa aos seus semelhantes em razão de preceitos éticos ou morais.

A partir do momento em que existe a quebra de todos as garantias estabelecidas na Constituição Federal pode-se afirmar que o Estado de Direito também está sendo fragilizado, uma vez que as Instituições perdem o seu sentido e a promoção da Justiça é transferida para terceiras pessoas, o que fere o princípio da imparcialidade e do devido processo legal.

A liberdade de informação é um direito do cidadão, mas esta liberdade não pode e não deve ultrapassar os limites que também foram estabelecidos no texto constitucional, como o respeito a dignidade da pessoa humana, a integridade física, a preservação da vida, a preservação da imagem, entre outros direitos fundamentais que se encontram enumerados no artigo 5º, da Constituição Federal, e também nos instrumentos internacionais que foram subscritos pelo Brasil, como a Convenção Americana de Direitos Humanos, Pacto de São José da Costa Rica.

A busca ou mesmo a transmissão de uma informação não pode e não deve ser confundida com uma execração pública, ou mesmo como a realização de julgamentos antecipados, com a imposição de penas que não são provenientes do Poder Judiciário, órgão competente para processar e julgar uma pessoa na República Federativa do Brasil.

...omissis...

Todos crimes devem ser reprimidos pelo Estado na busca da manutenção e preservação da ordem pública e da paz social, mais isto não significa que o Estado possa fazer justiça com as próprias mãos. Os acusados ainda que tenham praticado crimes considerados hediondos devem ser processados e julgados em conformidade com a Lei, que é o instrumento escolhido pela sociedade para a resolução dos conflitos sociais.

...omissis...

Os postulados ora apresentados fazem parte daquilo que as pessoas muitas vezes até mesmo sem ter o pleno conhecimento ou o alcance do significado costumam chamar de Estado Democrático de Direito. Nesta espécie de Estado, o principal mandamento é a Lei, a qual deve ser cumprida e respeitada.

*Superior Tribunal de Justiça*

O devido processo legal não se confunde com a impunidade, e todos os infratores devem ser condenados, mas as pessoas independentemente do crime praticado possuem o direito líquido e certo de se defenderem, o que não significa que ao final de um processo se provado a autoria e materialidade do ilícito, as pessoas ficarão livres do cumprimento de uma pena.

Apesar de todas essas considerações, se a sociedade chegar a conclusão que os princípios estabelecidos na Constituição Federal não possuem eficácia, e que estes princípios não devem mais ser observados e respeitados é preciso então que a Justiça, a Liberdade, a Democracia, sejam abandonadas e que se proceda a um retrocesso no tempo e no espaço e se volte a promover a Justiça na sociedade com o emprego das próprias mãos, tendo como base o princípio do olho por olho, dente por dente.

Uma análise imparcial dos fatos leva à conclusão que na realidade o que precisa ser feito é um aprimoramento do sistema, seja na função executiva, legislativa, ou judiciária, uma vez que a sociedade somente pode conviver em paz e em harmonia, buscando a realização dos objetivos coletivos e individuais, e até mesmo nacionais, quando tem como base a Lei e também um sistema jurídico.

...omissis...

Assim funciona o Estado Democrático de Direito que foi o sistema escolhido pelo legislador constituinte originário quando da promulgação da Constituição da República Federativa do Brasil, no dia 5 de outubro de 1988. Somente no Estado de Direito é que permite esse tipo de discussão, pois fora do império da lei não existe democracia, e também não existe liberdade, e ainda não existe devido processo legal. Pode-se afirmar que a Justiça pelas próprias mãos causa muito mais mal e muito mais sofrimentos do que a observância dos preceitos processuais que foram estabelecidos quando da promulgação da vigente Constituição Federal. (ROSA, Paulo Tadeu Rodrigues, disponível na internet www.ibccrim.org.br, 14.08.2006.)."

Ora, se uma lei determina, expressamente, frise-se bem, as funções e o *modus operandi* da ABIN, não é aceitável que tais limitações sejam extrapoladas, ainda mais, porque o rol de funções disposto na Lei não permite uma interpretação elástica e em desconformidade com o espírito do legislador.

Não se pode admitir que em um Estado Democrático de Direito, à margem da lei e de vários Princípios consagrados, como o da legalidade, do devido processo legal e da impessoalidade, se corrobore com o direcionamento e, por que não dizer, com o complô, de uma investigação criminal que ultrapassou todos os limites legais, tornando-se, ouso dizer, uma querela pessoal para incriminar determinada

*Superior Tribunal de Justiça*

pessoa, valendo-se, para tanto, do uso efetivo de agentes da ABIN e até de um ex-servidor do finado SNI, por parte da autoridade administrativa, em induvidoso e inaceitável desvio de poder, maculando todo e qualquer ato administrativo ou investigativo praticado.

E mais. O Delegado Protógenes Queiroz, encarregado de chefiar as investigações da Operação Satiagraha, até por dever de ofício, deveria atuar nos estritos limites da legislação vigente e dentro dos Princípios já mencionados, especialmente, o da Impessoalidade. Aliás e a propósito, valiosa a lição de José dos Santos Carvalho Filho, *in* Processo Administrativo Federal, 3ª Edição, Ed. Lumen Juris:

> *"... omissis...*
>
> *Em relação ao processo administrativo, é certo que, embora nem sempre haja litígio a ser solvido, há interesses e direitos dos administrados a serem resguardados, de modo que não e de menor relevância a situação de equidistância exigida do administrador em relação aos interessados. Em outras palavras, o administrador deve situar-se em condição jurídica de nível tal que possa transmitir confiança aos administrados para enfrentar as questões e os pedidos a seu cargo, sem que sua atuação desperte suspeitas e desconfianças por parte daqueles que precisam socorrer-se do processo administrativo.*
>
> *Se o administrador não tem imparcialidade para conduzir e decidir processos administrativos é porque favorece ou prejudica o interessado, conduta totalmente antagônica ao objetivo que lhe deve nortear a atividade, ou seja, o interesse público.*
>
> *Vício dessa ordem revela claro desvio de poder, conduta ilegal que deve ser corrigida na via administrativa ou judicial." (grifei)*

Sobre o mesmo tema trago, ainda, transcrição da obra "*O controle dos Atos Administrativos*", de Juarez Freitas, 4ª Edição, 2009, Editora Malheiros, p. 82, perfeitamente adequada à situação em análise:

> *"...omissis...*
>
> *Segundo o princípio em tela, a Administração Pública precisa dispensar tratamento isonômico a todos, sem privilégios espúrios, tampouco manobras persecutórias, sequer as movidas por supostas boas intenções. Intenta-se a instauração,a cima de*

*Superior Tribunal de Justiça*

*sinuosos personalismos, do governo dos princípios e dos objetivos fundamentais, em lugar do idiossincrático império 'emotivista' dos projetos de cunho faccioso, antagônicos, por definição, à filosofia da boa administração."*

Não foi por motivo diverso que o douto Procurador da República, que opinou nos autos, asseverou de forma categórica:

*"... omissis...*

*13. Sim, porque como órgão central do Sistema Brasileiro de Inteligência (Lei nº 9883, de 1999, atr. 3º, caput), a Agência Brasileira de Inteligência - ABIN - não deve, sob nenhum pretexto, atuar além de sua competência institucional, que se encerra: (i) no conhecimento e na execução de ações, sigilosas ou não, destinadas à colheita e à análise de informes, que vierem a ser considerados necessários ou úteis ao assessoramento da Presidência da República: (ii) no planejamento, na execução e na proteção de conhecimentos sensíveis, relativos à segurança do Estado e da sociedade; (iii) na avaliação de ameaças, internas e externas, à ordem constitucional; e (iv) na formação e desenvolvimento de recursos humanos, na elaboração de uma doutrina de inteligência e na realização de estudos em ordem a aprimorá-la ( Lei nº 9883, de 1999), art. 4º, caput, I a IV)*

*14. A natureza exauriente desse elenco de atribuições, cabe agregar o óbice ao compartilhamento dos dados, coligidos em razão do seu exercício, que só pode ser removido pelo Chefe do Gabinete Institucional da Presidência da República, em benefício das autoridades dotadas de poderes para solicitá-los, que, mesmo assim, comprometem-se com a guarda do sigilo legalmente imposto, pena da tríplice responsabilidade administrativa, civil e criminal ( Lei nº 9883, de 1999, art. 9º, caput, e § § 1º e 2º).*

*...omissis...*

*16. Remarque-se: uma coisa é a Agência Brasileira de Inteligência - ABIN - representar ao Departamento de Polícia Federal, sugerindo que*

*Superior Tribunal de Justiça*

*as autoridades, nele lotadas, cuidem de desvendar um fato de que os seus agentes vieram a tomar conhecimento; outra, bem diferente, é ocultar pessoas a seu serviço em investigações em curso, com o fito de propiciar a prática, por elas, de atos reservados a agentes policiais, a exemplo da manipulação e da análise de diálogos captados por eficiência de interceptações telefônicas, como ocorreu no caso vertente" (fls. 2.731/2.733 - vol. 11) (grifos nos original)*

Por todas essas considerações, parece-me  que está claramente demonstrado que: (i) não é função da ABIN investigar possíveis crimes que não tenham qualquer conexão com assuntos de interesse nacional, como no caso concreto e (ii) é inadmissível a participação de um investigador particular contratado diretamente pelo Delegado encarregado de chefiar a operação e pago com dinheiro público, o que nos leva a uma única e possível conclusão: a ABIN extrapolou suas funções ao participar das investigações da Operação Satiagraha.

Apenas a título informativo, a investigação instaurada para averiguar os excessos cometidos pelo Delegado responsável pela operação, resultou, pelo Juízo da eg. 7ª Vara Criminal de São Paulo, nos autos nº 0011893-69.2008.4.03.61681, na sua condenação pela prática dos crimes de violação de sigilo funcional e fraude processual, arts. 325, § 2º, e 347, c/c arts. 69 e 71, todos do Código Penal, à pena privativa de liberdade de 3 (três) anos e 11 (onze) meses, sendo 2 (dois) anos de detenção, a ser cumprida em regime prisional aberto, ficando substituída pelas restritivas de direitos de prestação de serviços à comunidade e proibição de exercício de mandato eletivo, cargo, função ou atividade pública, conforme assinalado acima, e pena pecuniária de 52 (cinquenta e dois) dias-multa, no valor unitário de um salário mínimo, corrigida monetariamente a partir do trânsito em julgado da sentença. Além do já exposto, a perda do cargo público ocupado pelo acusado no Departamento de Polícia Federal, nos termos do art. 92, I, do Código Penal, bem como o pagamento de R$ 100.000,00 (cem mil reais) a título de reparação dos danos morais causados à coletividade.

Ressalto que o processo acima se encontra em grau de recurso no e. STF, tendo sido distribuído à em. Ministra Ellen Gracie, em fevereiro do corrente ano.

Por estas razões, tenho que todas as provas colhidas por agentes da ABIN e pelo investigador particular contratado indevidamente,  no curso da operação, são ilícitas.

Podemos definir prova ilícita como sendo aquela obtida com violação

*Superior Tribunal de Justiça*

de regra ou princípio constitucional.

Em relação às provas ilícitas, nosso ordenamento jurídico adotou o sistema da inadmissibilidade das obtidas por meios ilícitos, ou seja, toda e qualquer prova nessa situação não poderia, em tese, sequer, ingressar nos autos, conforme o disposto nos arts. 5º, LVI, da Constituição Federal e 157, do Código de Processo Penal. E, na hipótese de vir a acontecer, ela deve ser excluída (exclusionary rules).

Consoante LUIZ FRANCISCO TORQUATO AVOLIO, a prova ilícita, em sentido estrito, pode ser definida como a "*prova colhida infringindo-se normas ou princípios colocados pela CF e pelas leis, freqüentemente para a proteção das liberdades públicas e dos direitos da personalidade e daquela sua manifestação que é o direito à intimidade*". (AVOLIO, Luiz Francisco Torquato. Provas ilícitas - interceptações telefônicas e gravações clandestinas. 2. ed. São Paulo: RT, 1999, p. 43.)

Uma vez reconhecida a ilicitude das provas colhidas, necessário verificar os desdobramentos daí advindos.

A Teoria dos Frutos da Árvore Envenenada ( *The fruit of the poisonus tree*) teve origem na Suprema Corte Americana, que adotou o entendimento de que os vícios da "*árvore são transmitidos aos seus frutos*", ou seja, havendo uma origem ilícita, como *in casu*, uma investigação eivada de inconstitucionalidade, toda a prova dela decorrente, mesmo que não ilícita em si, não poderá ser admitida, pois já estaria contaminada.

Aliás, o § 1º, do art. 157, do Código de Processo Penal, com a redação dada pela Lei nº 11.690/08, admite a adoção da Teoria dos Frutos da Árvore Envenenada, ressalvando a hipótese de não se comprovar o nexo de causalidade entre as provas derivadas e as ilícitas ou caso as derivadas possam ser obtidas por intermédio de uma fonte diversa das ilícitas.

Discute-se muito acerca da aplicabilidade da teoria ao Direito Pátrio. No entanto, o excelso Supremo Tribunal Federal já se manifestou sobre o tema, em brilhante voto da lavra do em. Ministro Sepúlveda Pertence, cuja ementa transcrevo a seguir:

> *"PROVA ILÍCITA: ESCUTA TELEFÔNICA MEDIANTE AUTORIZAÇÃO JUDICIAL: AFIRMAÇÃO PELA MAIORIA DA EXIGÊNCIA DE LEI, ATÉ AGORA NÃO EDITADA, PARA QUE, "NAS HIPÓTESES E NA FORMA" POR ELA ESTABELECIDAS, POSSA O JUIZ, NOS TERMOS DO ART. 5., XII, DA*

*Superior Tribunal de Justiça*

*CONSTITUIÇÃO, AUTORIZAR A INTERCEPTAÇÃO DE COMUNICAÇÃO TELEFÔNICA PARA FINS DE INVESTIGAÇÃO CRIMINAL; NÃO OBSTANTE, INDEFERIMENTO INICIAL DO HABEAS CORPUS PELA SOMA DOS VOTOS, NO TOTAL DE SEIS, QUE, OU RECUSARAM A TESE DA CONTAMINAÇÃO DAS PROVAS DECORRENTES DA ESCUTA TELEFÔNICA, INDEVIDAMENTE AUTORIZADA, OU ENTENDERAM SER IMPOSSÍVEL, NA VIA PROCESSUAL DO HABEAS CORPUS, VERIFICAR A EXISTÊNCIA DE PROVAS LIVRES DA CONTAMINAÇÃO E SUFICIENTES A SUSTENTAR A CONDENAÇÃO QUESTIONADA: NULIDADE DA PRIMEIRA DECISÃO, DADA A PARTICIPAÇÃO DECISIVA, NO JULGAMENTO, DE MINISTRO IMPEDIDO (MS 21.750, 24.11.93, VELLOSO); CONSEQUENTE RENOVAÇÃO DO JULGAMENTO, NO QUAL SE DEFERIU A ORDEM PELA PREVALÊNCIA DOS CINCO VOTOS VENCIDOS NO ANTERIOR, NO SENTIDO DE QUE A ILICITUDE DA INTERCEPTAÇÃO TELEFÔNICA - A FALTA DE LEI QUE, NOS TERMOS CONSTITUCIONAIS, VENHA A DISCIPLINÁ-LA E VIABILIZÁ-LA - CONTAMINOU, NO CASO, AS DEMAIS PROVAS, TODAS ORIUNDAS, DIRETA OU INDIRETAMENTE, DAS INFORMAÇÕES OBTIDAS NA ESCUTA (FRUITS OF THE POISONOUS TREE), NAS QUAIS SE FUNDOU A CONDENAÇÃO DO PACIENTE." (HC 69912 segundo / RS, Relator Min. SEPÚLVEDA PERTENCE, Julgamento: 16/12/1993 Órgão Julgador: Tribunal Pleno, Publicação DJ 25-03-1994 PP-06012, EMENT VOL-01738-01 PP-00112 RTJ VOL-00155-02 PP-00508)*

Nesse mesmo sentido, cita-se brilhante precedente da lavra da i. Ministra Maria Thereza de Assis Moura, *verbis*:

*"PENAL. PROCESSUAL PENAL. HABEAS CORPUS. 1. AÇÃO PENAL INSTAURAÇÃO. BASE EM DOCUMENTAÇÃO APREENDIDA EM DILIGÊNCIA CONSIDERADA ILEGAL PELO STF E STJ. AÇÕES PENAIS DISTINTAS. IRRELEVÂNCIA. PRINCÍPIOS DA ISONOMIA E SEGURANÇA JURÍDICA. 2. ILICITUDE DA PROVA DERIVADA.*

*Superior Tribunal de Justiça*

*TEORIA DA ÁRVORE DOS FRUTOS ENVENENADOS. DENÚNCIA OFERECIDA COM BASE EM PROVA DERIVADA DA PROVA ILÍCITA. IMPOSSIBILIDADE. TRANCAMENTO. 3.ORDEM CONCEDIDA.*

*1.Tendo o STF declarado a ilicitude de diligência de busca e apreensão que deu origem a diversas ações penais, impõe-se a extensão desta decisão a todas as ações dela derivadas, em atendimento aos princípios da isonomia e da segurança jurídica.*

*2. Se todas as provas que embasaram a denúncia derivaram da documentação apreendida em diligência considerada ilegal, é de se reconhecer a imprestabilidade também destas, de acordo com a teoria dos frutos da árvore envenenada, trancando-se a ação penal assim instaurada.*

*3. Ordem concedida para trancar a ação penal em questão, estendendo, assim, os efeitos da presente ordem também ao co-réu na mesma ação LUIZ FELIPE DA CONCEIÇÃO RODRIGUES." (HC 100.879/RJ, Rel. Ministra MARIA THEREZA DE ASSIS MOURA, SEXTA TURMA, julgado em 19/08/2008, DJe 08/09/2008) (grifei)*

Na mesma linha de entendimento, merecem destaque, ainda, os seguintes precedentes desta Corte Superior:

*"HABEAS CORPUS. PROCESSUAL PENAL. DELITO DE FALSIDADE IDEOLÓGICA. PEDIDO DE TRANCAMENTO DA AÇÃO PENAL. "PRIVILÉGIO CONSTITUCIONAL CONTRA A AUTO-INCRIMINAÇÃO: GARANTIA BÁSICA QUE ASSISTE À GENERALIDADE DAS PESSOAS. A PESSOA SOB INVESTIGAÇÃO (PARLAMENTAR, POLICIAL OU JUDICIAL) NÃO SE DESPOJA DOS DIREITOS E GARANTIAS ASSEGURADOS" (STF, HC 94.082-MC/RS, REL. MIN. CELSO DE MELLO, DJ DE 25/03/2008). PRINCÍPIO "NEMO TENETUR SE DETEGERE". POSITIVAÇÃO NO ROL PETRIFICADO DOS DIREITOS E GARANTIAS INDIVIDUAIS (ART. 5.º, INCISO LXIII, DA CONSTITUIÇÃO DA REPÚBLICA): OPÇÃO DO CONSTITUINTE ORIGINÁRIO BRASILEIRO DE CONSAGRAR, NA CARTA DA*

*Superior Tribunal de Justiça*

REPÚBLICA DE 1988, "DIRETRIZ FUNDAMENTAL PROCLAMADA, DESDE 1791, PELA QUINTA EMENDA [À CONSTITUIÇÃO DOS ESTADOS UNIDOS DA AMÉRICA], QUE COMPÕE O "BILL OF RIGHTS"" NORTE-AMERICANO (STF, HC 94.082-MC/RS, REL. MIN. CELSO DE MELLO, DJ DE 25/03/2008). PRECEDENTES CITADOS DA SUPREMA CORTE DOS ESTADOS UNIDOS: ESCOBEDO V. ILLINOIS (378 U.S. 478, 1964); MIRANDA V. ARIZONA (384 U.S. 436, 1966), DICKERSON V. UNITED STATES (530 U.S. 428, 2000). CASO MIRANDA V. ARIZONA: FIXAÇÃO DAS DIRETRIZES CONHECIDAS POR "MIRANDA WARNINGS", "MIRANDA RULES" OU "MIRANDA RIGHTS". DIREITO DE QUALQUER INVESTIGADO OU ACUSADO A SER ADVERTIDO DE QUE NÃO É OBRIGADO A PRODUZIR QUAISQUER PROVAS CONTRA SI MESMO, E DE QUE PODE PERMANECER EM SILÊNCIO PERANTE A AUTORIDADE ADMINISTRATIVA, POLICIAL OU JUDICIÁRIA. INVESTIGADA NÃO COMUNICADA, NA HIPÓTESE, DE TAIS GARANTIAS FUNDAMENTAIS. FORNECIMENTO DE MATERIAL GRAFOTÉCNICO PELA PACIENTE, SEM O CONHECIMENTO DE QUE TAL FATO PODERIA, EVENTUALMENTE, VIR A SER USADO PARA FUNDAMENTAR FUTURA CONDENAÇÃO. LAUDO PERICIAL QUE EMBASOU A DENÚNCIA. PROVA ILÍCITA. TEORIA DOS FRUTOS DA ÁRVORE ENVENENADA (FRUITS OF THE POISONOUS TREE). ORDEM CONCEDIDA.

...omissis...

6. Evidenciado nos autos que a Paciente já ostentava a condição de investigada e que, em nenhum momento, foi advertida sobre seus direitos constitucionalmente garantidos, em especial, o direito de ficar em silêncio e de não produzir provas contra si mesma, resta evidenciada a ilicitude da única prova que embasou a condenação. Contaminação do processo, derivada da produção do laudo ilícito. Teoria dos frutos da árvore envenenada.

7. Apenas advirta-se que a observância de direitos fundamentais não se confunde com fomento à impunidade. É mister essencial do Judiciário garantir que o jus puniendi estatal não seja levado a efeito com máculas ao devido processo legal, para que a observância das

*Superior Tribunal de Justiça*

> *garantias individuais tenha eficácia irradiante no seio de toda a sociedade, seja nas relações entre o Estado e cidadãos ou entre particulares (STF, RE 201.819/RS, 2.ª Turma, Rel. Min. ELLEN GRACIE, Rel. p/ Acórdão: Min. GILMAR MENDES, DJ de 27/10/2006). 8. Ordem concedida para determinar o trancamento da ação penal, sem prejuízo do oferecimento de nova denúncia com base em outras provas." (HC 107.285/RJ, Rel. Ministra LAURITA VAZ, QUINTA TURMA, julgado em 09/11/2010, DJe 07/02/2011) (grifei)*

Assim, não há outro caminho a não ser a descontaminação da investigação, expurgando dos autos todos os elementos colhidos em desconformidade com a lei.

Em decorrência dos desmandos e abusos praticados, as provas obtidas por meios ilícitos, circunstância plenamente evidenciada, não podem mais figurar nos autos do processo, sendo certo que a Constituição de 88 as repudiou, na dicção contida em seu art. 5º, LVI, ao estatuir como cláusula pétrea o princípio de que "*são inadmissíveis, no processo, as provas obtidas por meios ilícitos*".

Portanto, estamos diante de garantia que integra o postulado do devido processo legal, que exige, na apuração da prática de uma infração penal e de sua autoria, a observância da forma legalmente prescrita na norma jurídica.

A propósito, cabe transcrever o entendimento do Ministro do Supremo Tribunal Federal Celso de Mello, ao assinalar, no RHC 90376-3-RJ, Segunda Turma, Julgado em 03/04/07:

> *"A ação persecutória do Estado, qualquer que seja a instância de poder perante a qual se instaure, para revestir-se de legitimidade, não pode apoiar-se em elementos probatórios ilicitamente obtidos, sob pena de ofensa à garantia constitucional do "due process of law", que tem, no dogma da inadmissibilidade das provas ilícitas, uma de suas mais expressivas projeções concretizadoras no plano do nosso sistema de direito positivo".*

No mesmo diapasão já posicionou-se Ada Pellegrini Grinover, *in* "Nulidades no Processo Penal". 9ª Ed. Revista dos Tribunais, São Paulo, 2006, p. 145-146, ao enfatizar que o direito à prova está limitado, na medida em que constitui as garantias do contraditório e da ampla defesa, de sorte que o seu

## Superior Tribunal de Justiça

exercício não pode ultrapassar os limites da lei e, sobretudo, da Constituição.

Seguindo idêntico prisma é o magistério da insigne professora ao discorrer em sua obra "Liberdades Públicas e Processo Penal – As interceptações telefônicas. Saraiva. 1976, pág.189, quando assinala "*a inadmissibilidade processual da prova ilícita torna-se absoluta, sempre que a ilicitude consista na violação de uma norma constitucional, em prejuízo das partes ou de terceiros. Nesses casos, é irrelevante indagar se o ilícito foi cometido por agente público ou por particulares, porque, em ambos os casos, a prova terá sido obtida com infringência aos princípios constitucionais que garantem o direito da personalidade. Será também irrelevante indagar-se a respeito do momento em que a ilicitude se caracterizou (antes ou fora do processo ou no curso do mesmo); será irrelevante indagar-se o ilícito foi cumprido contra a parte ou contra terceiro, desde que tenha importado em violação a direitos fundamentais; e será, por fim, irrelevante indagar-se o processo no qual se utilizaria prova ilícita deste jaez é de natureza penal ou civil*".

Acompanhando a linha do pensamento de ADA PELLEGRINI GRINOVER, o Supremo Tribunal Federal, julgando o *habeas corpus* 90.376-2, em brilhante voto da lavra do e. Ministro Celso de Mello, assim decidiu:

> "*Prova penal. BANIMENTO CONSTITUCIONAL DAS PROVAS ILÍCITAS (CF, ART. 5º. LVI) – ILICITUDE (ORIGINÁRIA E POR DERIVAÇÃO) – INADMISSIBILIDADE – BUSCA E APREENSÃO DE MATERIAIS E EQUIPAMENTOS REALIZADA, SEM MANDATO JUDICIAL, EM QUARTO DE HOTEL AINDA OCUPADO – IMPOSSIBILIDADE (...) GARANTIA QUE TRADUZ LIMITAÇÃO CONSTITUCIONAL AO PODER DO ESTADO EM TEMA DE PERSECUÇÃO PENAL, MESMO EM SUA FASE PRÉ-PROCESSUAL (...) PROVA ILÍCITA – INIDONEIDADE JURÍDICA (...) PORQUE IMPREGNADA DE ILICITUDE ORIGINÁRIA. Doutrina. Precedentes (STF). ILICITUDE DA PROVA – INADMISSIBILIDADE DE SUA PRODUÇÃO EM JUÍZO (OU PERANTE QUALQUER INSTÂNCIA DE PODER) – INIDONEIDADE JURÍDICA DA PROVA RESULTANTE DA TRANSGRESSÃO ESTATAL AO REGIME CONSTITUCIONAL DOS DIREITOS E GARANTIAS INDIVIDUAIS. – A ação persecutória do Estado, qualquer que seja a instância de poder perante a qual se instaure, para revestir-se de legitimidade, não pode apoiar-se em*

*Superior Tribunal de Justiça*

*elementos probatórios ilicitamente obtidos, sob pena de ofensa à garantia constitucional do "due process of law", que tem, no dogma da inadmissibilidade das provas ilícitas, uma de suas mais expressivas projeções concretizadoras no plano do nosso sistema de direito positivo. – A Constituição da República, em norma revestida de conteúdo vedatório (CF, art. 5º, LVI), desautoriza, por incompatível com os postulados que regem uma sociedade fundada em bases democráticas (CF, art. 1º.), qualquer prova cuja obtenção, pelo Poder Público, derive de transgressão a cláusulas de ordem constitucional, repelindo, por isso mesmo, quaisquer elementos probatórios que resultem de violação do direito material (ou, até mesmo, do direito processual), não prevalecendo, em consequência, no ordenamento normativo brasileiro, em matéria de atividade probatória, a fórmula autoritária do "male captum, bene retentum". Doutrina. Precedentes. A QUESTÃO DA DOUTRINA DOS FRUTOS DA ÁRVORE ENVENENADA ("FRUITS OF THE POISONOUS TREE"): A QUESTÃO DA ILICITUDE POR DERIVAÇÃO. – Ninguém pode ser investigado, denunciado ou condenado com base, unicamente, em provas ilícitas, quer se trate de ilicitude originária, quer se cuide de ilicitude por derivação. Qualquer novo dado probatório, ainda que produzido, de modo válido, em momento subsequente, não pode apoiar-se, não pode ter fundamento causal nem derivar de prova comprometida pela mácula da ilicitude originária. – A exclusão da prova originariamente ilícita – ou daquela afetada pelo vício da ilicitude por derivação – representa um dos meios mais expressivos destinados a conferir efetividade à garantia do "due process of Law" e a tornar mais intensa, pelo banimento da prova ilicitamente obtida, a tutela constitucional que preserva os direitos e prerrogativas que assistem a qualquer acusado em sede processual penal. Doutrina. Precedentes. – A doutrina da ilicitude por derivação (teoria dos "frutos da árvore envenenada") repudia, por inconstitucionalmente inadmissíveis, os meios probatórios, que, não obstante produzidos, validamente, em momento ulterior, acham-se afetados, no entanto, pelo vício (gravíssimo) da ilicitude originária, que a eles se transmite, contaminando-os, por efeito da repercussão causal. Hipótese em que*

*Superior Tribunal de Justiça*

*os novos dados probatórios somente foram conhecidos pelo Poder Público, em razão de anterior transgressão praticada, originariamente, pelos agentes da persecução penal, que desrespeitaram a garantia constitucional. (...) Revelam-se inadmissíveis, desse modo, em decorrência da ilicitude por derivação, os elementos probatório a que os órgão da persecução penal somente tiveram acesso em razão da prova originariamente ilícita, obtida como resultado da transgressão, por agentes estatais, de direitos e garantias constitucionais e legais, cuja eficácia condicionante, no plano do ordenamento positivo brasileiro, traduz significativa limitação de ordem jurídica ao poder do Estado em face dos cidadãos".*

Não foi outro o sentido dado pela Lei 11.690/08, que traduziu, de forma expressa, o mandamento constitucional que ordena o desentranhamento das provas obtidas por meios ilícitos, estabelecendo no art. 157, do Código de Processo Penal, a seguinte redação:

*"São inadmissíveis, devendo ser desentranhadas do processo, as provas ilícitas, assim entendidas as obtidas em violação a normas constitucionais ou legais".*

Gostaria de registrar, antes de finalizar o voto, que não se trata de mais um caso rumoroso que ficou impune. Não! Na realidade, os eventuais delitos cometidos pelo ora paciente podem e devem ser investigados e, se comprovados, julgados, desde que observados SEMPRE E EM QUALQUER CASO, a legalidade dos métodos empregados na busca da verdade real, respeitando-se o Estado Democrático de Direito e os Princípios da Legalidade, da Impessoalidade e do Devido Processo Legal.

No caso em exame, é inquestionável o prejuízo acarretado pelas investigações realizadas em desconformidade com as normas legais, e não convalescem, sob qualquer ângulo que seja analisada a questão, porquanto é manifesta a nulidade das diligências perpetradas pelos agentes da ABIN e um ex-agente do SNI, ao arrepio da lei.

Insta assinalar, por oportuno, que o juiz deve estrita fidelidade à lei penal, dela não podendo se afastar a não ser que imprudentemente se arrisque a percorrer, de forma isolada, o caminho tortuoso da subjetividade que, não poucas

*Superior Tribunal de Justiça*

vezes, desemboca na odiosa perda da imparcialidade.

Num estado de direito efetivo e verdadeiro, o magistrado deve julgar sem paixões e em absoluta sintonia com a estrutura normativa existente, mesmo porque não lhe cabe legislar, mas apenas aplicar as regras elaboradas por outro poder, o legislativo, que na sistemática adotada pela nossa Constituição Federal, no seu art. 2°, também goza de independência, consoante a lição advinda do princípio da separação de poderes.

Ora, se todos são iguais perante a lei, em consonância com o princípio da isonomia insculpido no art. 5º da Lei Maior, não se pode aceitar que uma investigação manipulada, realizada *a lattere*, discriminatória em sua essência e inspirada em interesses ilegítimos, tais como motivações políticas e eleitoreiras, possa gerar consequências desastrosas, atingindo a liberdade das pessoas e as garantias processuais, independentemente de quem esteja sendo processado e da natureza da infração penal atribuída ao paciente.

Assim, no caso em exame, induvidoso que as investigações efetivadas pela ABIN, fora de suas atribuições legais elencadas e limitadas, expressamente, no art. 4º, da Lei 9.883/99, em verdadeira usurpação de suas funções e com indisfarçável desvio de poder, na medida em que foi contratado um ex-agente do SNI para realizar atos próprios da polícia judiciária e, o que é mais grave, pago com verbas secretas, ou seja, dinheiro público, sem previsão legal para tanto, constituem uma das mais graves violações ao Estado Democrático de Direito.

Portanto, inexistem dúvidas de que as referidas provas estão irremediavelmente maculadas, devendo ser consideradas ilícitas e inadmissíveis, circunstâncias que as tornam destituídas de qualquer eficácia jurídica, consoante já demonstrado acima pela doutrina pacífica e lastreada na torrencial jurisprudência dos nossos tribunais.

À evidência, não há como embasar uma denúncia ou a formação do convencimento do juiz para uma prestação jurisdicional revestida da indispensável imparcialidade inerente a todos que exercem, com grandeza e dignidade, a nobre missão de julgar, sem subjetivismos ou tendências ideológicas que não condizem com o verdadeiro sentimento de justiça.

Jamais presenciei, eminentes Ministros, ao defrontar-me com um processo, tamanho descalabro e desrespeito a normas constitucionais intransponíveis e a preceitos legais.

Pelo exposto, concedo a ordem para anular, todas as provas produzidas, em especial a dos procedimentos nº 2007.61.81.010208-7

*Superior Tribunal de Justiça*

(monitoramento telefônico), nº 2007.61.81.011419-3 (monitoramento telefônico), e nº 2008.61.81.008291-3 (ação controlada), e dos demais correlatos, anulando também, desde o início, a ação penal, na mesma esteira do bem elaborado parecer exarado pela douta Procuradoria da República.

É como voto.

