EXHIBIT J-1

# Federal Supreme Court

**EXTRAORDINARY APPEAL 680.967 FEDERAL DISTRICT**

| | |
|---|---|
| **RAPPORTEUR :** | JUSTICE. LUIZ FUX |
| **APPELLANT (S) :** | FEDERAL OFFICE OF THE ATTORNEY GENERAL |
| **PROSECUTOR(S):** | FEDERAL PUBLIC PROSECUTORS' OFFICE |
| **APPELLEE (s)** | DANIEL VALENTE DANTAS |
| **ATTORNEY (IES):** | ANDREI ZENKNER SCHMIDT |
| **ATTORNEY (IES):** | LUCIANO FELDENS |
| **ATTORNEY (IES):** | DEBORA POETA |

**Summary**: PENAL AND CRIMINAL PROCEDURE. EXTRAORDINARY APPEAL. PRELIMINARY ISSUE: TIMELINESS. START OF THE PERIOD TO FILE THE APPEAL: FIRST DATE ON WHICH THERE IS CERTAINTY OF HAVING BEEN INFORMED. JURISPRUDENCE. REQUIREMENTS FOR ADMISSIBILITY OF THE APPEAL: NOT MET. INFRA-CONSTITUTIONAL MATTER. MERE NON-CONFORMITY WITH THE GROUNDS OF THE APPEALED JUDGMENT. CLAIM FOR ANALYSIS OF FACTS AND EVIDENCE. PRECEDENT 279. GENERAL REPERCUSSION NOT EXAMINED IN LIGHT OF OTHER GROUNDS THAT PREVENT CONTINUATION OF THE EXTREME APPEAL. EXTRAORDINARY APPEAL DISMISSED.

1. The foregoing and unequivocal knowledge of the adverse judgment, embodied in the apposition of the "informed party," brings forth the *a quo* term with respect to the deadline to appeal (precedents), especially in light of the clause of reasonable length of the proceedings.

Digitally signed document in accordance with MP [Provisional Measure] No. 2.200-2/2001 dated 08/24/2001, establishing the Brazilian Public Key Infrastructure - ICP-Brazil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**

2. The decision on admissibility of the extraordinary appeal by the order of the Deputy Chief Justice of the Superior Court of Justice does not bind the Federal Supreme Court, since it is its' responsibility "*to issue a final judgment on the admissibility of an extraordinary appeal, the positive or negative decision, in full or in part by the Court of origin not having any binding effect*" (RE [Extraordinary Appeal] 593.156-AgR/SP [Internal Appeal/SP], Second Panel, Rapp. Min. Joaquim Barbosa, Court Gazette 10/25/2010).

3. The start of the period to lodge appeals, in the jurisprudential perspective of the Federal Supreme Court, **is the first date on which the party of interest is definitely informed of the publication of the judgment** : HC 83.915/SP, First Panel, Rapp. Justice Sepúlveda Pertence, unanimous decision, Court Gazette 13/05/2005.

4. The summons in person of the Office of the Attorney General can be obtained by collecting the signature of the member of the *Court* with respect to acknowledgment of publication, thus starting the period for appeal (Precedent: AI 707.988-AgR, First Panel, Rapp. Min Cármen Lúcia, unanimous decision, E-Court Gazette of 09/19/2008).

5. The allegation of suspicion is not a direct violation of the principle of due process, since it is governed by the rules of ordinary procedural law and, in the present case, also by virtue of estoppel, due to not filing an appeal against the first instance decision.

2

# Federal Supreme Court

**RE 680967/DF**

6. Annulment of the investigations due to the activities of ABIN agents, without court authorization, refers one to interpretation of the rules of specific legal acts that govern the activities of said agency (Law 9.883/99, Federal Decree 3.695/2000), a matter that is connected to the jurisdiction of the Superior Court of Justice and that means that such violations of Articles 5, LVI, and Art. 144, of the Federal Constitution, if they occur, would be in reflexive, an cannot be examined by an extraordinary appeal.

7. The absence of grounds of the court decisions (Article 93, IX of the CRFB), which authorizes the lodging of an extraordinary appeal, does not amount to a breach of the grounds set out in the appealed judgment, *contraditio in terminis*, all the more so since interpreting such, does not violate said constitutional duty.

8. The constitutional provision regarding the competence of the Federal Regional Court to prosecute *habeas corpus* filed against a federal judge, established under Article 108 of the Constitution, does not exclude the validity of the ordinary laws authorizing the granting of *habeas corpus* ex officio.

3

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# Federal Supreme Court

**RE 680967/DF**

9. *In this case*, the Federal Regional Court was included as a jointly acting authority before the Superior Court of Justice, and the *writ* examined from the perspective of competence in light of the Criminal Procedure Code, is an infra-constitutional matter that considers violation of the Federal Constitution.

10. The constitutional principles of the reasonableness and prohibiting deficient protection do not authorize breach, by the investigative bodies, of the law governing prosecution. In the present case, the appealed judgment was based on violation of those rules in conducting the investigations, stating that "*the damage caused by investigations carried out in disregard of the law is unquestionable, and they do not require, from any perspective, that the matter be analyzed, because the nullity of the procedures carried out by the agents of ABIN and a former agent of the SNI is manifest, in violation of the law*."

11. The constitutional material principles used as a foundation *a latere* contain, at most, a reflexive violation, doing away with assessment of the judgment under appeal from a constitutional perspective.

12. The surprise of the legal actors involved in the investigations, as a result of the declaration of nullity by the Superior Court of Justice and the fact that the lower courts did not invalidate them, constitutes mere repudiation by the appellant, and no direct violation of the constitutional principle of legal certainty.

4

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# Federal Supreme Court

**RE 680967/DF**

13. Precedent 279/Federal Supreme Court provides that: "*For the sole purposes of a review of evidence, no extraordinary appeal may be filed*"; for that reason, assessment of the participation of the agents of ABIN, considered ostensible by the judgment under appeal, would require analysis of the facts and evidence, prohibited by an extraordinary appeal (ARE 676.280-AgR, 1st Panel, Rapp. Justice Roberto Barroso, unanimous decision 04/2015).

Thus, the federal police investigation that verified deviation of duties in said operation found that "*Under these guidelines, it was verified that public servants of the Brazilian Intelligence Agency - ABIN and a former public servant, at the initiative of Police Chief PROTÓGENES QUEIROZ, without court authorization and without any formalization, were included in a concealed manner, in the work of Operation Satiagraha, and they learned of confidential information and, following the orders of said authority and other subordinate public servants, carried out investigative work, monitoring targets, photographic records, filming, doing environmental recordings, reviewing equally confidential documents, generating reports and producing transcriptions from the recordings of telephone conversations intercepted by the surveillance system, in a situation that goes beyond any limits of understanding that this was merely a temporary action involving the exchange of intelligence information between agencies* [...]*.*"

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**

14. The general repercussion must be analyzed after verifying the other requirements for admissibility of the extraordinary appeal, pursuant to Article 323 of the Internal Rules of the Federal Supreme Court and the established jurisprudence of the Federal Supreme Court (Precedents: RE 597.165-AgR, Rapp. Justice Celso de Mello, ARE 716.775-AgR, Rapp. Justice Luiz Fux, RE 728.753-AgR, Rapp. Justice Luiz Fux; AI 689.742-AgR, Rapp. Justice Dias Toffoli. At the first instance: RE 723.284, Rapp. Justice Gilmar Mendes, RE 665.438, Rapp. Justice Marco Aurélio, RE 646.055, Rapp. Justice Ricardo Lewandowski, ARE 769,311, Justice Roberto Barroso, ARE 867,078, Justice Rosa Weber, ARE 736,677, Rapp. Justice Teori Zavascki).

15. Extraordinary appeal dismissed.

**Decision:** This is an Extraordinary Appeal lodged by the Federal Office of the Attorney General against the judgment rendered by the Superior Court of Justice in the trial of HC 149.250, the summary of which is as follows:

> *"CRIMINAL AND PENAL PROCEEDING. HABEAS CORPUS. OPERATION SATIAGRAHA. IMPROPER PARTICIPATION, IMPROPERLY PROVEN, PARTICIPATION OF TENS OF EMPLOYEES OF THE BRAZILIAN INFORMATION AGENCY (ABIN) AND A FORMER PUBLIC SERVANT OF SNI, IN AN INVESTIGATION CONDUCTED BY THE FEDERAL POLICE. MANIFEST ABUSE OF POWER. IMPOSSIBILITY OF CONSIDERING ACTIONS PERFORMED AS AN EXCEPTIONAL CASE, CAPABLE OF ALLOWING DATA SHARING BETWEEN AGENCIES*

6

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**

*MEMBERS OF THE BRAZILIAN INTELLIGENCE SYSTEM. LACK OF A LAW AUTHORIZING IT. CLEAR OCCURRENCE OF STATE INTROMISSION, ABUSIVE AND ILLEGAL IN PRIVATE LIFE, IN THIS SPECIFIC CASE. VIOLATIONS OF HONOR, IMAGE AND DIGNITY OF THE HUMAN PERSON. IMPROPER OBTAINMENT OF UNLAWFUL EVIDENCE, AS IT WAS GATHERED IN BREACH OF LAW. LACK OF REASONABLENESS. NULLITIES VERIFIED IN THE PRE-PROCEDURAL PHASE, AND EXHAUSTIVELY DEMONSTRATED, MAR FUTURE CRIMINAL ACTIONS. BREACH OF VARIOUS PROVISIONS OF LAW. BREACH OF THE PRINCIPLES OF LEGALITY, IMPARTIALITY AND DUE LEGAL PROCESS UNQUESTIONABLY DEFINED. THE JUDGE'S AUTHORITY IS DIRECTLY LINKED TO HIS INDEPENDENCE IN JUDGING AND IMPARTIALITY. A COURT DECISION CANNOT BE DICTATED BY SUBJECTIVE CRITERIA, GOVERNED BY THE ABUSE OF POWER OR BEYOND LEGAL PARAMETERS. THESE REQUIREMENTS RESULT FROM DEMOCRATIC PRINCIPLES AND FROM THE INDIVIDUAL RIGHTS AND GUARANTEES SET FORTH IN THE CONSTITUTION. NULLITY OF THE PROCEDURES, ANNULLING THE CRIMINAL ACTION SINCE THE START.*

*1. A detailed analysis of the 11 (eleven) volumes that comprise the HC* **shows that there is** *a significant amount of evidence to confirm, in full, the undue, flagrantly illegal and abusive participation of ABIN and of the private investigator hired by the Police Chief responsible for heading up Operation Satiagraha.*

*2. There was no data sharing between ABIN and the Federal Police, given that the situation in the case records does not fall under the exceptions provided for under Law No. 9.883/99.*

7

# *Federal Supreme Court*

**RE 680967/DF**

> *3. We live in a democratic rule of law, in which, as Professor Ada Pellegrini Grinover explains, in "Nullities in Criminal Proceedings," "the right to evidence is limited in that it constitutes the guarantees of adversary proceedings and full defense, so that the exercise of such cannot exceed the limits of the law and, above all, of the Constitution."*

> *4. In the case in question, the damage caused by the **investigations carried out in violation of the law is unquestionable, and they do not remedy it, from any angle that the matter may be analyzed, since the nullity of the procedures carried out by the ABIN agents and a former agent of SNI, is manifest, and in violation of the law**.*

> *5. We must point out, as appropriate, that the judge must strictly follow penal law, and cannot depart therefrom unless he recklessly risks following, alone, a tortuous path of subjectivity which, quite often, leads to an odious loss of impartiality. He must never lose sight of the importance of democracy and the democratic rule of law.*

> *6. There is therefore no question that such evidence is irremediably tainted and must be considered to be unlawful and inadmissible, circumstances which make it devoid of any legal effect, in accordance with the position already recognized by well-established legal writing and backed by extensive jurisprudence of our courts.*

> *7. In light of the foregoing, I hereby order the annulment of all evidence produced, in particular that of procedures No. 2007.61.81.010208-7 (telephone surveillance), No. 2007.61.81.011419-3 (telephone surveillance), and No. 2008.61.81.008291-3 (controlled action), and other related procedures, also annulling, from the outset, the criminal action, in the same vein as the well-prepared opinion drawn up by the Federal Office of the Attorney General"*(HC 149.250/SP, Rapp. Justice ADILSON VIEIRA MACABU (JUSTICE CALLED FROM THE TJ/RJ), FIFTH PANEL, decided on 06/07/2011, E-Court Gazette 05/09/2011).

These grounds led to annulment of the investigation by the Federal Police known as Operation Satiagraha.

8

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**


Dissatisfied, the Federal Office of the Attorney General filed this Extraordinary Appeal, in which it maintains that, even though the defendant pleaded, before the Superior Court of Justice, nullity of only three investigative procedures (telephone surveillance, telematic surveillance and a controlled action), the Fifth Panel of the Superior Court of Justice granted the order of *habeas corpus* to annul all evidence produced, leading to the nullity, from the outset, of the criminal action that had been filed based on them, applying the theory of the fruits of the poisonous tree. This is the basis for the lead opinion of the judgment, in the section in question:

> *"Once the unlawfulness of the evidence collected has been recognized, it is necessary to verify the consequences thereof.*
>
> *The theory of the Fruit of the Poisonous Tree originated in the American Supreme Court, which adopted the position that **the flaws of the 'tree are transmitted to its fruits'**, that is, there is unlawful origin, such as in this case, in an investigation that is unconstitutional, in all of its evidence, even if not unlawful in itself, it cannot be admitted, since it would already be tainted.*
>
> *Incidentally, **§1 of Article 157 of the Code of Criminal Procedure, with wording given by Law No. 11.690/08, allows the adoption of the Theory of Fruits of the Poisonous Tree,** noting the case of not proving a causal link between derived and unlawful evidence or if the derived information can be obtained by means of a strong number of unlawful evidence.*
>
> *There is much discussion regarding the applicability of the theory under Brazilian Law. However, the Federal Supreme Court has already manifested itself on the topic, in a brilliant ruling by Justice Sepúlveda Pertence, a summary of which is quoted below:*
>
> [...]."

The Office of the Attorney General states that, as regards the requirement of General Repercussion: "*In analyzing the specific case, the strong presence of social, economic and legal repercussions stemming from the contested decision* is evident," arguing that the judgment under appeal created "*an actual risk of leading to doing away with all criminal proceedings initiated as a result of the investigations already carried out, years of work by the police and the Office of the Attorney General being lost.*"

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**

It maintains that "*To consider unlawful the evidence produced during Operation Satiagraha and the criminal action that led to the conviction of Daniel Dantas for active bribery (requests that were not even made in the HC), in light of the 'purported' collaboration of ABIN agents, through the adoption of only legal theses, is unacceptable and unbelievable, in total disregard for constitutional rules.*"

Preliminarily, it alleges nullity of the judgment for violation of due process, in light of the first instance rejection of the allegation of suspicion made by a third party (Protógenes Queiroz) against the Rapporteur of the *habeas corpus* of origin.

In the merits, the Appellant maintains that "*the following constitutional rules were violated, as will be shown in detail: a) direct and immediate violation of the principle of grounding court decisions (Article 93, IX, Federal Constitution/88) and Article 108, section I, item 'd', Federal Constitution/88 (misappropriation of TRF jurisdiction); b) direct and immediate violation of the lead vote on the judgment of the constitutional principle of reasonableness, as well as the principle of prohibiting deficient protection (of a constitutional nature, already applied by the Justice of that Court) and also the fundamental right of society and the State to security (Articles 5 and 6, caput, Federal Constitution/88); (c) direct and immediate violation of the principle of legal certainty; d) direct and immediate violation of the interpretation of the principle of prohibiting unlawful evidence (Article 5, LVI, Federal Constitution/88), especially with regard to correct evaluation of the principle in itself and its effects, and Article 144, Federal Constitution/88* "(pp. 3201-3202).

He claims that the judgment under appeal "*presented merely hypothetical arguments*" to conclude that "*all evidence gathered by agents of ABIN and the private investigator improperly hired in the course of the operation, is unlawful.*" According to the Appellant, the judgment was not supported by any evidence that would afform that said evidence considered to be unlawful, served as grounds for the conviction. He cites section of the overruled vote in which it is stated that the conclusion as regards the legality or otherwise of ABIN's activity in the investigations required evaluation and detailed comparison of facts and evidence, which was impossible under *habeas corpus* .

10

# *Federal Supreme Court*

**RE 680967/DF**

As to the violation of the principles of reasonableness and prohibiting deficient protection, he argues that "*the beneficial outcome (unraveling countless crimes and dismantling a criminal organization) overcomes the negative aspect. It is not a matter of distinguishing between unlawful and illegitimate evidence, such as that which violates rules of material or procedural law, but rather that* **there is no damage to form when the legal good, protected thereby, has been safeguarded**. *In certain cases, therefore, public interest exceeds individual rights* " (p. 3212).

He emphasizes "*a new trend in legal writing, in considering not only the right of the defendant as a fundamental right, but also the right of security of individuals and of federal criminal law*" (p. 3214).

He cites an excerpt from the judgment delivered by this Court under RE 418.376, Rapp. Justice Gilmar Mendes, which acknowledged the applicability of the principle of prohibiting deficient protection "*to deny application of the rule in the case of doing away with punishment in favor of the defendant convicted of rape who married an absolutely incapable minor*" and concludes that, in the present case, "*the core of the fundamental right of society and the State to security has been violated*" (p. 3216).

The Appellant further contends that the judgment under appeal directly and immediately violated the constitutional principle of legal certainty, "*since decisions handed down by ordinary instances, which have been scrutinized by numerous authorities, have been amended in a single sense, without any specific element that would justify the position expressed by the Hon. Rapporteur*" and adding that "*the non-unanimous decision rendered by the Supreme Court of Justice [Supreme Court of Justice] creates uncertainty as to the proper conduct of tens of thousands of Judges, Prosecutors, Federal Prosecutors and Police Chiefs, whose works could be annulled by reason of a generic and majority position of a Panel*" (p. 3218) .

Regarding the alleged violation of Article 5, LVI of the Federal Constitution, which prohibits the use of unlawful evidence in proceedings, the Appellant maintains that the judgment incorrectly interpreted the aforementioned constitutional provision, thus violating the provisions of Article 144 of the Federal Constitution.

In the merits, grantal of the Extraordinary Appeal is requested, with recognition of the validity of all evidence produced in the criminal action originating from Operation Satiagraha.

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**

In **its counterarguments** , the Respondent claims, in summary, the following:

(1) Preliminarily:

(i) The **<u>untimeliness of the Extraordinary Appeal</u>** , in light of the fact that the appeal was filed only after res judicata of the judgment. It argues that the *a quo* term of the deadline should be the date of attachment of the summons attached to the case records, and not of the subsequent delivery of the case to the Office of the Attorney General;

(ii) Lack of standing to appeal, since *habeas corpus* **was granted in accordance with the opinion of the Public Prosecutor's Office** officiating before the Superior Court of Justice, in the absence of any loss of suit;

(iii) **Lack of pre-questioning of constitutional matters**;

(iv) **Aim of analysis of factual matters and indirect violations of the Constitution**;

(v) **Absence of general repercussion**.

(vi) **Lack of the nullity allegedly preliminarily claimed by the Appellant, since the allegation of suspicion was presented in an untimely manner by a party not part of the procedural relationship (the Chief of Police responsible for Operation Satiagraha), for which reason it cannot be considered**;

(2) As regards the merit, it maintains that:

(i) There was no violation of Article 144, § 1, IV, of the CRFB, by the judgment under appeal, **because there was no legal authorization for ABIN to carry out investigatory procedures under the case records of the original criminal action**, since: (a) Under Article 4 of Law 9.883/99, the Federal Police is not part of the Brazilian Intelligence System, but only the Police Intelligence Directorate of the Federal Police Department, which was not consulted to authorize ABIN's participation in the investigations of the case under analysis; (b) the actions by ABIN agents, in this case, took place without court authorization;

(ii) There was effective, relevant and prominent participation of ABIN in said investigation [Satiagraha], providing, between **03/07/2008 and 07/07/2008, 23 (twenty three) men per day**, in accordance with the declaration of the then Director General of ABIN, Paulo Lacerda, to the Parliamentary Commission of Inquiry (p. 2,215, vol. 9);

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**

(iii) There were also actions taken by a private investigator, former public servant of SNI, Mr. Francisco Ambrósio do Nascimento, who was paid by the Police Chief responsible for conducting Operation Satiagraha;

(iv) Agents of ABIN and the private investigator accessed Banco Opportunity S/A HDs, seized in Operation Chacal, in 2004;

(v) Art. 5, LIV and LV of the Constitution, by enshrining the principles of due process of law, adversary proceedings and full defense, provides **guarantees to the individual against the State** and not to the State to the detriment of the individual;

(vi) Granting of a *writ* ex officio does not violate the provisions of Article 108, I, *d*, of the Constitution;

(vii) The fundamental right to security is not immediately enforceable through the Judiciary Branch;

(viii) **The principles of reasonableness and prohibiting deficient protection do not allow for excessive and abusive action by the State**. In this case, the participation of ABIN and a former public servant of SNI in wiretaps, e-mail messages, data from Opportunity HDs and surveillance actions, would invalidate the police investigation (IPL No. 12-0235/08), the decree ordering initiation thereof was based on such evidence, a nullity that extended to criminal action No. 2008.61.81.009002-8, since those elements were object of consideration in receiving the complaint;

(ix) There is no breach of the principle of legal certainty, since the contested judgment did not result in legal innovative measures.

These are the facts.

**The Court's decision follows.**

As reported, this is an Extraordinary Appeal filed by the Federal Office of the Attorney General, against a judgment by the Supreme Court of Justice that granted *habeas corpus* to the defendant, since it considers the investigations that led to the initiation of the criminal action of origin to be unlawful, mainly due to actions by agents of ABIN and a former public servant of SNI, which did not comply with cases set forth by law.

13

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# Federal Supreme Court

**RE 680967/DF**

The present Extraordinary Appeal is not cognizable.

The timeliness of the appeal now under dispute requires that the date must be considered *o dies a quo* for the purpose of determining the period for lodging the appeal by the Office of the Attorney General, while summons in person takes place in different ways: acknowledgment and receipt of the case records.

In the case *sub examine* , the Federal Office of the Attorney General was notified in person of the publication of the judgment in the *habeas corpus* of origin, on 09/06/2011, with acknowledgement in the writ of summons, which was filed with the Coordination Office of the Fifth Panel of the Superior Court of Justice on 09/09/2011 (p. 3163-v). However, only after 20 days, the Federal Office of the Attorney General **requested examination of the case records** by the Superior Court of Justice, under a petition on p. 3171 (filed on September 29, 2011).

The Federal Office of the Attorney General contends that, by virtue of the prerogative of the summons in person **with examination of the case records**, the *dies a quo* for calculating the deadline would be the date of receipt of the case records at the Public Prosecutor's Office.

From this point of view, the Federal Supreme Court has already had the opportunity to express its views on the matter, in a case analogous to what is now being decided. And, in the ruling on the Internal Appeal under Interlocutory Appeal 707.988/RJ, Rapp. Justice Carmen Lúcia, was of the position that "*In the event of a summons in person in various forms, **one must consider, for calculating the appeal period, that which occurs first***."

Below is the summary of the judgement:

> "*INTERNAL APPEAL UNDER THE INTERLOCUTORY APPEAL. VARIOUS FORMS OF SUMMONS BY THE OFFICE OF THE ATTORNEY GENERAL: **CONSIDERED THAT WHICH OCCURRED FIRST. UNTIMELINESS: AN INTERNAL APPEAL WHICH IS DENIED***.

14

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**

> *1. The summons in person by the Office of the Attorney General can take place by a writ or by delivery of the case records duly formalized in the administrative sector of the Office of the Attorney General, and for the purpose of proving the timeliness of the appeal, 'notice of acknowledgment' is exceptionally admitted.'.*
>
> *2. In the event of summons in person in various forms, the first time is to be considered for calculating the appeal deadlines. Precedent.*
>
> *3. In this case, the Office of the Attorney General was summoned by a writ (Precedent No. 710 of the Federal Supreme Court) and filed the appeal outside the legally established 5 day period.*
>
> *4. Untimely internal appeal. Appeal which is denied"* (AI 707.988-AgR, First Panel, Rapp. Justice Carmen Lúcia, unanimous decision, E-Court Gazette dated 09/19/2008).

As it can be seen, this paradigm addressed a situation in which the Office of the Attorney General was summoned in person, **by a writ** , and only subsequently were the case records **delivered** to the Office of the Attorney General, **and the *dias a quo* different from the date of delivery of the file was considered**.

Moreover, the decision rendered under HC 83.915/SP, Rapp. Justice Sepúlveda Pertence is illustrative as to the establishment of **the position that the *dias a quo* is always defined by the <u>first date</u> on which the summons in person is established**.

The summary of said decision establishes the clear position of this Court on the matter, *verbis*:

> "[...] *"Acknowledgment" by the Office of the Attorney General, for the purpose of calculating the deadline for appeals, presupposes the absence of a previous summons in person which, per se, is sufficient to consummate the act. This is the case "of delivery of case to the administrative sector of the Office of the Attorney General, formalized under the responsibility by the public servant"* (see HC 83.255, Full Session, Marco Aurélio, Court Gazette dated 03/12/04) <u>*which, in turn, also it cedes to its previous and unequivocal summons in person, such as the one established in the main proceedings*</u> *and from which motions at the Supreme Court of Justice would be untimely.*"

15

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**

"Acknowledgement" on the writ of summons, by the representative of the Federal Office of the Attorney General, starts the procedural deadline, under penalty of said summons constituting a non-existent act ("not legal"), which is inconsistent with the criminal proceedings, impregnated with *pro reo*, guarantees among others, estoppel of the accusation periods.

The dispute in interpretation of the rules governing the deadlines in criminal proceedings must be resolved, in principle, in order to favor the one that produces the least delay in resolution of the dispute, provided that it does not result in irreparable damage to the right of the parties to a fair trial.

Thus, in light of the principle of reasonable length of procedure, as set out under Art. 5, LXXVIII, of the Constitution, through EC 45/2004, the jurisprudence of the Court on the matter now at trial is established, and in this case, is in *favor rei*.

Indeed, although the extraordinary appeal was admitted by the Deputy Chief Justice Office of the Superior Court of Justice, it must be stated that the admissibility decision rendered at the appealed instance, together with a generic decision, does not bind the Federal Supreme Court, since it is responsible for "*issuing a final judgment on the admissibility of an extraordinary appeal, and no positive or negative statement either in full or in part by the Court of origin shall have a binding effect*" (RE 593.156-AgR/SP, Second Panel, Rapp. Justice Joaquim Barbosa, Court Gazette 10/25/2010).

Having overcome the issue of untimeliness, this Extraordinary Appeal does not fulfill the other admissibility requirements of the extreme refutation.

The Appellant, as highlighted in the Report, first requests declaration of the nullity of the judgment rendered by the Superior Court of Justice, for alleged violation of the principle of due process of law in a trial arguing suspicion of the Rapporteur.

The request is clearly inapplicable at level of an Extraordinary Appeal.

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**

*In casu*, the Rapporteur of the *habeas corpus* of origin, denied the allegation of suspicion, without considering the merits, on the basis of the appellant's postulatory incapacity and the untimeliness of the plea, a decision that was made final and unappealable.

Indeed, the *exceptio suspicionis* is a flagrantly infraconstitutional matter, which reveals no direct violation of the principle of due process.

Under another approach to the appeal, namely alleged violation of Articles 144 and 5, LVI of the Federal Constitution, without examining the merits of the appealed decision, at no time did the appellant argue or did the Court discuss and decide on any of the constitutional issues raised in the arguments of the extraordinary appeal on pp. 3201-3202:

> *"(a) direct and immediate violation of the principle of grounding court decisions (Article 93, paragraph IX of Federal Constitution/88), of the principles of due process, adversary proceedings and full defense, (Article 5, paragraph V, Federal Constitution/88) and of Article 108, section I, item 'd', Federal Constitution/88 (misappropriation of competence of the TRF);*
>
> *b) direct and immediate violation of the lead vote of the judgment on the constitutional principle of reasonableness, as well as to the principle of prohibiting deficient protection (of a constitutional nature, already in fact applied by a Justice of that Court) and also to the fundamental right of the company and of the State to security (Articles 5 and 6,* caput, *Federal Constitution/88);*
>
> *c) direct and immediate violation of the constitutional principle of legal certainty;*
>
> *d) direct and immediate violation of the interpretation of the principle of prohibition of unlawful evidence (Article 5, LVI, Federal Constitution/88), especially regarding correct evaluation of the principle and its effects, and Article 144, Federal Constitution/88."*

From this approach, the exceptional appeal lacks the requirement of pre-questioning. In this regard, under the Special Appeal with Appeal No. 680,718/SP, that I wrote, regarding necessary compliance with the requirement of pre-questioning, I highlighted what was affirmed by the Federal Supreme Court, at the time of judgment of AI 140.623-2/RS-AgR (Court Gazette date 09/19/1992), when Justice Sepúlveda Pertence, rapporteur, emphasized:

17

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# Federal Supreme Court

**RE 680967/DF**

> "*Thus, the fact that it is not explicit in the Constitution, does not affect the enforceability of pre-questioning as a prerequisite of the extraordinary appeal. Consideration of the very nature of an extraordinary appeal is long-standing and established jurisprudence of this Court. In judging it, the Court does not become a third level of jurisdiction, but examines the judgment under appeal and ascertains whether the rule of law was correctly or incorrectly applied. Hence the necessity that in the contested judgment, the constitutional question posed in the extraordinary appeal be discussed.*"

Moreover, a different approach is not reserved for the theory of the dispensability of the requirement of pre-inquiry for acknowledgement of the extraordinary appeal, on the grounds of taking into account a matter of public order. The jurisprudence of the Federal Supreme Court is well-established, in accordance with the decisions below:

> "*SUMMARY: Labor. Internal appeal in an interlocutory appeal. IPC of June 1987. URP of February 1989. Limitation to the subsequent base date. Execution document. Art. 114 of the Federal Constitution. Lack of pre-questioning. Matter of public order. Federal Supreme Court Precedents 282 and 356.*
>
> *1. There was no pre-questioning of the constitutional provision that was considered violated, because it was not addressed by the judgment under appeal and, although it was raised in the motions for clarification filed there against, it was not opportunely mentioned at the time when the counter arguments to the ordinary appeal were presented. Precedents 282 and 356.*
>
> *2. Requirement of compliance with this appeal requirement, even if the issue raised is of public order. Precedents.*
>
> *3. Internal appeal denied*"(RE 567.165-AgR, Second Panel, Rapp. Justice Ellen Gracie, Court Gazette dated 10/22/2010).

> "*Summary: Internal appeal under the interlocutory appeal.*

18

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**

*Pre-questioning Absence. Matter of public order. Required. Precedents.*

*1. The extraordinary appeal is not admissible when the constitutional provision allegedly violated is not duly pre-questioned. Application of Precedents 282 and 356/Federal Supreme Court.*

*2. The jurisprudence of this Court is well-established in that, even in the case of matters of public order, it is necessary to examine it at the instance of origin in order for the extraordinary appeal to be possible.*

*3. Internal appeal denied"* (AI 836.359-AgR, First Panel, Rapp. Justice Dias Toffoli, Court Gazette 02/01/2012).

It is still evident that the alleged constitutional violations require necessary and prior analysis of infraconstitutional legislation, which, in the jurisprudence of the Court, is an **indirect** violation, which cannot be considered by the Federal Supreme Court, considering its strict competence in an Extraordinary Appeal.

As reported, the judgment by the Superior Court of Justice hereby appealed, annulled the criminal action of origin, alleging that "*irregular participation, undoubtedly proven, of dozens of employees of the Brazilian Information Agency (ABIN) and of a former public servant of SNI, in an investigation conducted by the Federal Police*."

In order to reach this conclusion, the Court *a quo* considered that ABIN's actions did not comply with the parameters imposed by ordinary regulative legislation, stressing "*that the situation of the case records does not fall under the exceptions provided for under Law 9.883/99*."

It is imperative that violation of a constitutional principle that authorizes the acknowledgement of the extraordinary appeal must be direct and clear, and an allegation that is based on interpretation and application of infraconstitutional legislation cannot be accepted, because, in such cases, one would only reach the conclusion of violation of the Constitution based on determining the existence of lack of validity or violation of federal law, as noted in Supreme Court jurisprudence (RE 72.959, Rapp. Justice Luiz Galloti; RE 596.682, Rapp. Justice Ayres Britto; AI 808.361 Rapp. Justice Marco Aurelio; AI 804.854-AgR, Rapp. Justice Cármen Lúcia; AI 756.336-AgR, Rapp. Justice Ellen Gracie.

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**


The appellant himself, in his reasons for lodging this Extraordinary Appeal, refers to the provisions of Law 9.883/1999 and also of Federal Decree 3.695/2000.

Indeed, Article 144 of the Federal Constitution does not set forth any provisions regarding ABIN's participation in the investigations, limiting itself to providing for the attributions of federal, highway patrol, rail, civil and military police, determining that "*The law shall govern the organization and functioning of the agencies responsible for public safety, in order to guarantee the efficiency of its activities*"(§7).

Incidentally, considering the matter, the 2nd Panel of the Federal Supreme Court, in AP 563/SP, Rapp. Justice Teori Zavascki, maintained the conviction of the Police Chief who conducted the original investigations, for violation of professional secrecy, precisely because he shared confidential evidence with ABIN agents whose activities had not been authorized. Below is the summary of the judgment:

> "*CRIMINAL ACTION. CRIMES AGAINST THE GOVERNMENT (VIOLATION OF PROFESSIONAL SECRECY) AND AGAINST ADJUDICATION OF JUSTICE (PROCEDURAL FRAUD). **ACCUSED, CONVICTED AT THE FIRST INSTANCE**, ASSUMING THE TERM OF OFFICE OF FEDERAL REPRESENTATIVE. APPEAL PENDING JUDGMENT BY THE RESPECTIVE COURT. PRIORITY OF JURISDICTION THAT RESULTS IN TRANSFER OF COMPETENCE TO THE SUPREME COURT. **PRELIMINARY ARGUMENTS REJECTED. PARTIAL MAINTENANCE OF CONVICTION**. NOTIFICATION OF THE HOUSE OF REPRESENTATIVES FOR THE PURPOSE OF ART. 55, § 2, OF THE FEDERAL CONSTITUTION.*
>
> *1. It is incumbent upon the Federal Supreme Court, under the terms of Article 102, I, b, of the Constitution, to prosecute and judge at the origin, in common criminal offenses (as is the case), members of the National Congress from the moment they are entitled to hold a seat in the Congress, at the time he is sworn in (Article 53, paragraph 1, of the Constitution).*

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# Federal Supreme Court

**RE 680967/DF**

*2. If the prerogative of the court is upheld after the sentence handed down by the first instance court and the appeal is pending judgment, the case moves over to the jurisdiction of the Federal Supreme Court, to continue there from its current state, and the acts previously practiced are grounded.*

*3. In these cases, judgment of the appeal by the Federal Supreme Court must observe, as well as the oral arguments (order of presentation and length of time), the specific regime of the appeals (and not of the original criminal proceedings).*

*4. The circumstances of the case prevent dismemberment in relation to the co-defendant without the prerogative of forum. Other preliminary arguments rejected.*

*5. Acquittal of the appellants with respect to the charge of procedural fraud (Article 347, sole paragraph, of the Penal Code), by virtue of Article 386, III, of the Code of Criminal Procedure.*

*6. Sentenced to the penalty of Article 325, caput, of the Penal Code, with declaration of dismissal of punishability by state of limitations, in accordance with the terms of Articles 109, VI, and 110, both of the Penal Code; and of Article 325, § 2, of the Penal Code, replaced by two restrictions of law, upholding the loss of public office.*

*7. Stipulation of the minimum amount set forth under Article 387, IV, of the Code of Criminal Procedure, in addition to the corresponding prosecution under an independent proceeding, when there is no doubt that there are no adversary proceedings for such.*

*8. Disagreement within this Supreme Court regarding the power to order the loss of office in the case of a final and unappealable criminal conviction. Original recommendations must prevail, in the sense of assigning it to the Legislature to which the convicted congressman belongs. Grounds of Article 55 (2) of the Federal Constitution "*(AP 563/SP, 2nd Panel, Justice Teori Zavascki, unanimous decision, 10/21/2014, Court Gazette 11/28/2014).

It should be noted that, prior to the criminal action, the illustrious Federal Attorney General had already stated that the evidence was illegal, in the case records of Investigation 3764/DF, Rapp. Justice Teori Zavascki, *verbis* :

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**

"[...]

*13. The illegal acts committed by the representative [Federal Police Chief Protógenes Queiroz] in the course of Operation Satiagraha, especially informal use, without knowledge of the upper echelon of the Federal Police, by agents of ABIN and by persons who had no connection with the public service, in order to carry out investigative acts, constitute well-known facts, even verified by the Federal Police itself. Thus, we must quote an excerpt from the Report presented in the files of Police Investigation No. 2-444/2008-SR-DPF/SP, in which the person represented was investigated:*

*'Upon investigating this criminal conduct, the identification of all persons who, at the time of the alleged leak, were aware of the actual progress of the investigations, was taken as the investigative guideline to define possible authorship thereby.*

*Under these guidelines, it was found that public servants of the Brazilian Intelligence Agency - ABIN and a former public servant, at the initiative of Police Chief PROTÓGENES QUEIROZ, without court authorization and without any formalization, were introduced in a concealed manner, in the work of Operation Satiagraha, learned of data that was to be held confidential and, following an order by said authority and other subordinate public servants, carried out surveillance work, target tracking, photographic records, filming, doing environmental recordings, reviewing equally confidential documents, generating reports and producing transcriptions from the recordings of telephone conversations intercepted by the surveillance system, in a situation that surpasses any limits of understanding that it was a merely temporary action involving exchange of intelligence data between agencies of the Brazilian System of Intelligence - SISBIN, the reason for existence and purpose of action of which, differ diametrically from those corresponding to the Federal Criminal Investigative Department, therefore, in complete deviation from the purpose and in breach of the provisions of Article 8 of Law 9.298 of July 24, 1996, consequently defining breach of the second part of Article 10 of the same law, since it was clear that breach of the court secrecy with objectives not authorized by law and without court authorization.*

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**

> *Note that, before the information leaked to the Folha de São Paulo journalist, the odd presence of an ABIN public servant in the data room, the Operation Satiagraha team workplace, was detected in March 2008, by the Director of the Police Intelligence Division, who immediately called Police Chief Protógenes Queiroz, his subordinate, asked him for an explanation and, finally, condemning his conduct in allowing third-parties to access the operational area, ordered that the person and any other, be barred from ABIN, in the work on the operation.*
>
> *In spite of this explicit condemnation, Police Chief PROTÓGENES QUEIROZ only barred the stranger who had been discovered, from the operational area and, contrary to the order received, not only kept him in the works of the operation, but kept him in another place, and also kept the real extent of that spurious participation in the operation, completely concealed, since other public servants continued to interact in the same area, with other clusters, all secretly.'"*

Violation of Article 93, IX, of the Federal Constitution, which materialized due to the absence of grounds for invalidating all of the criminal proceedings of origin, merely involves the plaintiff's disagreement with the reasons for the ruling, contained in the judgment of the Superior Court of Justice.

*In casu*, regardless of whether or not the judgment under appeal is accepted, it is undeniable that granting the order of *habeas corpus* is based on legal grounds. I quote the following excerpts from the judgment under appeal, mentioning, for example, the use of unauthorized third parties in investigations, *verbis* :

> "[...] *Law No. 9.883/99 instituted the Brazilian Intelligence System 'which is involved in the planning and execution of the country's intelligence activities, with the purpose of providing assistance to the President of the Republic in matters of national interest' (Article 1) and created the Brazilian Intelligence Agency - ABIN, as the central body of such system, establishing its duties that are clearly described in its Article 4, namely:*

23

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**

[...]

*From reading the aforementioned legal provisions, it can be concluded that ABIN's activities are limited to intelligence activities, the primary and sole purpose of which is to provide assistance to the President of the Republic in matters of national interest.*

*And in addition. There is no possibility of characterizing ABIN's participation and the participation of the former SNI public servant for the purpose of 'mere sharing of information', as set forth in the challenged judgment, especially since the judgment itself is categorical in stating that this sharing of information is admitted in exceptional cases 'for situations in which there is interest of the Brazilian state', as noted upon reading the summary of item No. 5.*

[...]

*Thus, if a law explicitly determines the functions and the modus operandi of ABIN, it is not acceptable that such limitations should be extrapolated even more because the list of functions provided for by Law does not allow for flexible interpretation and in breach of the intent of the legislator.*

*It cannot be allowed, that in a Democratic Rule of Law, beyond the law and beyond several established Principles, such as legality, due process and impersonality, that one corroborate the direction and, why not say, with the accomplice in a criminal investigation that exceeded all legal limits, becoming, I dare say, a personal quarrel to incriminate a certain person, using, for such, agents of ABIN and even a former public servant of the no longer existing SNI, on the part of the administrative authority, in questionable and unacceptable misuse of power, tarnishing any administrative or investigative act that was practiced.*

[...]

*For these reasons, I believe that all evidence gathered by ABIN agents and by the private investigator improperly hired in the course of the operation, is illegal."*

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**

It should be added that, in the vote rendered by the Chief Justice of the Fifth Panel, who voted in the same vein as the Rapporteur, there are also grounds for justifying the scope of nullity declared by the Superior Court of Justice, *verbis*:

> *"The Federal Supreme Court has already proclaimed recognition of the Theory of Fruits of the Poisonous Tree in a binding judgment rendered by Mr. Sepúlveda Pertence, that is, if of an illicit origin, as is the case here, an investigation which is considered unconstitutional, any evidence arising therefrom, even if not unlawful in itself, should not be admitted."*

The parties' disagreement with the grounds presented by decisions of the Superior Courts does not challenge the extraordinary appeal, and does not directly challenge the constitutional provision that all court decisions will be grounded (Article 93, IX), since interpreting is not violating, at the mercy of the party pointing out the grounds contrary to its intentions, which does away with the theory of "lack of motivation."

For the same reason, constitutes the claim that the judgment of the Superior Court of Justice granting the order of *habeas corpus* would have violated the provisions of Article 108, I, *d* is an **indirect** violation of the Federal Constitution in accordance with which "*It is the responsibility of the Federal Regional Courts: I - to prosecute and judge, at the origin:* [...] *d) habeas corpus, when the presiding authority is a federal judge."*

*In casu* , this was a judgment of *habeas corpus* against the Federal Regional Court, thereby being no direct violation of the aforementioned constitutional provision. In addition, the filing and judgment of *habeas corpus* follows the provisions of the Code of Criminal Procedure, which is why any possible violation of the procedure is also a reflexive violation, analysis of which is not subject to an Extraordinary Appeal.

25

*Federal Supreme Court*

**RE 680967/DF**

As regards the argument that the contested judgment would result in "*a direct and immediate violation of the constitutional principles of reasonableness and prohibition of deficient protection, in light of the fundamental right of society to security*" (pp. 3211-3217), addresses principles that, although highly relevant and protected by the Federal Constitution, their applicability is intermediated by the ordinary legislation applicable to the investigations.

In this case, the judgment under appeal was based on the breach of those rules, stating that "*the damage caused by investigations carried out in disregard of law is unquestionable, and they are not remedied, from whatever angle the matter is analyzed, because the nullity of the proceedings perpetrated by the agents of ABIN and a former agent of the SNI is manifest, in breach of the law*."

As regards alleged infringement of the principle of legal certainty, the grounds set forth by the Appellant are summarized as follows:

- "*the decision, as it was rendered, astonishes everyone, especially those who worked on the investigation, examination and procedural development of the case in question, with the investment of significant amounts of human and economic resources, the conduct of which was guided in accordance with the law*"(p. 3218);

- "*the decisions issued by the ordinary instances, which were scrutinized by numerous authorities, were amended in a unique way, without there being any concrete evidence to justify the position of the Hon. Rapporteur.*"

As can be seen, this is mere disagreement with the grounds of the judgment under appeal, regarding the actions by the investigating bodies **acting in breach** of the law, considering the facts explained in the lead vote, in a statement that in no way conflicted with the Federal Constitution.

Finally, in the present case, even if one intended to analyze the arguments of the Federal Office of the Attorney General, it would be essential to review the facts and evidence of the specific case, which also proves to be unfeasible in an Extraordinary Appeal and incompatible with Precedent 279/Federal Supreme Court, *verbis*: "*For the sole purposes of review of evidence, an extraordinary appeal is not applicable.*"

26

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**

*In casu*, the contested judgment found the sharing of data between the ABIN and the Federal Police to be illegal and identified damage caused by the investigations carried out in disregard of the law, which cannot be assessed through simple interpretation of the constitutional rules set forth by the Appellant.

Recently, the First Panel unanimously dismissed the Office of the Attorney General's Appeal in a case similar to the present one. The case is ARE 676.280, Rapp. Justice Roberto Barroso, against a decision of the Superior Court of Justice that also fully annulled the criminal action resulting from so-called "Operation Sand Castle" [Operação Castelo de Areia], in view of the unlawfulness of the investigations.

The first instance decision rules on the impossibility of reviewing the matter of the illegality of the operation under an extraordinary appeal and denied the appeal, stating:

> *"Summary: Injunction in a timely Extraordinary Criminal Appeal. Anonymous Plea Bargaining. Breach of telephone secrecy. 1. It is unnecessary to ratify the extraordinary appeal after ruling on the motions for clarification filed by the opposing party, which after all, were rejected. 2. **An extraordinary appeal does not apply if the outcome of the dispute depends on review of facts and evidence and whether the judgment under appeal decided on the case with support from relevant infraconstitutional legislation**. 3. The theory set out in the judgment under appeal is in line with the jurisprudence of the Federal Supreme Court. 4. Appeal granted to deny continuation of the extraordinary appeal."*

Subsequently, in judgment of the Internal Appeal, the divided joint committee upheld the contested decision, as follows transcribed below:

> *"SUMMARY: CRIMINAL PROCEEDING. INTERNAL APPEAL UNDER AN EXTRAORDINARY APPEAL WITH AN APPEAL. ANONYMOUS PLEA BARGAIN. BREACH OF TELEPHONE SECRECY. ORDER GRANTED BY THE SUPREME COURT OF JUSTICE TO ANNUL RECEIPT OF THE COMPLAINT.*
> [...]

27

Digitally signed document in accordance with MP No. 2.200-2/2001 of 08/24/2001, establishing Brazilian Public Key Infrastructure - ICP-Brasil. The document can be accessed at http://www.stf.jus.br/portal/autenticacao/ under the number 8763643.

# *Federal Supreme Court*

**RE 680967/DF**

> *2. The contested decision, without any value judgment with respect to the underlying facts, applied the jurisprudence of the Federal Supreme Court, as regards the inadequacy of the extraordinary appeal for review evidence (Precedent 279 of the Federal Supreme Court) and to discuss an infraconstitutional matter. Decision must be upheld on its own grounds.*
>
> *3. Internal appeal denied* "(ARE 676.280-AgR, 2nd Panel, Rapp. Justice Roberto Barroso, unanimous decision, 04/14/2015).

They also mention the following judgments: AI 823.484-AgR, First Panel, Rapporteur Justice Luiz Fux, E-Court Gazette of 05/29/2013; AI No. 804.854- AgR, First Panel, Rapporteur Justice Carmen Lúcia, E-Court Gazette of 11/24/2010 and AI No. 756.336-AgR, Second Panel, Rapporteur Justice Ellen Gracie, E-Court Gazette of 10/22/2010).

Along the same lines, in a first instance decision: ARE 801.153, Rapp. Justice Cármen Lúcia; ARE 795,923, Rapp. Justice Teori Zavascki; AI 737,378, Rapp. Justice Dias Toffoli; ARE 760.372, Rapp. Justice Ricardo Lewandowski.

*Ex positis*, in accordance with Article 38 of Law 8.038/90, **I deny continuation** of this Extraordinary Appeal because it is manifestly impossible.

To be published. To be notified.

Brasília, June 24, 2015.

Justice **Luiz Fux**

Rapporteur

*Digitally signed document*

28

EXHIBIT J-2


TRANSPERFECT

City of New York, State of New York, County of New York

I, Jordan Johnson, hereby certify that the document "EXTRAORDINARY APPEAL 680.967 FEDERAL DISTRICT dated June 24 2015" is, to the best of my knowledge and belief, a true and accurate translation from Portuguese into English

_____
Jordan Johnson

Sworn to before me this
October 29, 2018

_____
Signature, Notary Public

ANDERS MIKAEL EKHOLM
NOTARY PUBLIC-STATE OF NEW YORK
No. 01EK6378373
Qualified in New York County
My Commission Expires 07-23-2022

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 I T 212.689.5555 I F 212.689.1059 I WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

EXHIBIT J-3

RECURSO EXTRAORDINÁRIO 680.967 DISTRITO FEDERAL

| | |
|---|---|
| RELATOR | : MIN. LUIZ FUX |
| RECTE.(S) | : MINISTÉRIO PÚBLICO FEDERAL |
| PROC.(A/S)(ES) | : PROCURADOR-GERAL DA REPÚBLICA |
| RECDO.(A/S) | : DANIEL VALENTE DANTAS |
| ADV.(A/S) | : ANDREI ZENKNER SCHMIDT |
| ADV.(A/S) | : LUCIANO FELDENS |
| ADV.(A/S) | : DÉBORA POETA |

**Ementa**: PENAL E PROCESSO PENAL. RECURSO EXTRAORDINÁRIO. QUESTÃO PRELIMINAR: TEMPESTIVIDADE. TERMO INICIAL DO PRAZO PARA INTERPOSIÇÃO DO RECURSO: PRIMEIRA DATA EM QUE SE TENHA CERTEZA DA CIÊNCIA. JURISPRUDÊNCIA. REQUISITOS DE ADMISSIBILIDADE DO RECURSO: NÃO PREENCHIMENTO. MATÉRIA INFRACONSTITUCIONAL. MERA INCONFORMIDADE COM OS FUNDAMENTOS DO ACÓRDÃO RECORRIDO. PRETENSÃO À ANÁLISE DE FATOS E PROVAS. SÚMULA 279. REPERCUSSÃO GERAL NÃO EXAMINADA EM FACE DE OUTROS FUNDAMENTOS QUE OBSTAM O SEGUIMENTO DO APELO EXTREMO. RECURSO EXTRAORDINÁRIO NÃO CONHECIDO.

1. A ciência anterior e inequívoca da decisão contrária, consubstanciada na aposição do "ciente", inaugura o termo *a quo* do prazo para a interposição recursal (precedentes), máxime à luz da cláusula da duração

**RE 680967 / DF**

razoável dos processos.

2. O juízo de admissibilidade do recurso extraordinário pela Vice-Presidência do Superior Tribunal de Justiça não vincula o Supremo Tribunal Federal, pois a este compete *"emitir juízo definitivo acerca da admissibilidade de recurso extraordinário, não tendo qualquer efeito vinculante a manifestação positiva ou negativa, integral ou parcial, feita pelo Tribunal de origem"* (RE 593.156-AgR/SP, Segunda Turma, Rel. Min. Joaquim Barbosa, DJ 25/10/2010).

3. O termo inicial do prazo para interposição de recursos, na visão jurisprudencial do Supremo Tribunal Federal, **é a primeira data em que se tenha certeza da ciência da publicação do acórdão pela parte interessada**: HC 83.915/SP, Primeira Turma, Rel. Min. Sepúlveda Pertence, unânime, DJ 13/05/2005.

4. A intimação pessoal do Ministério Público pode ocorrer mediante colheita da assinatura do membro do *Parquet* quanto à ciência da publicação, iniciando-se a contagem do prazo recursal (Precedente: AI 707.988-AgR, Primeira Turma, Rel. Min. Cármen Lúcia, unânime, DJe de 19/09/2008).

5. A arguição de suspeição não revela ofensa direta ao princípio do devido processo, porquanto regida pelas normas da legislação processual ordinária e, no caso vertente, também por força da preclusão,

2

**RE 680967 / DF**

em razão da não interposição de recurso contra a decisão monocrática.

6. A nulidade das investigações por força da atuação de agentes da ABIN, sem autorização judicial, remete à interpretação das normas de diplomas legais específicos que disciplinam as atividades do mencionado órgão (Lei 9.883/99, Decreto Federal 3.695/2000), matéria que se vincula à competência do Superior Tribunal de Justiça e que acarreta que as referidas violações aos artigos 5º, LVI, e art. 144, da Constituição Federal, se ocorrentes, seriam-no de forma reflexa, insindicáveis pela via extraordinária.

7. A ausência de fundamentação das decisões judiciais (art. 93, IX, da CRFB), que autoriza a interposição do recurso extraordinário, não se equipara com a irresignação contra os fundamentos constantes do acórdão recorrido, posto *contraditio in terminis*, tanto mais que interpretar não é violar o referido dever constitucional.

8. A previsão constitucional da competência do Tribunal Regional Federal para processar *habeas corpus* impetrado contra juiz federal, estabelecida no art. 108 da Lei Maior, não afasta a vigência das leis ordinárias que autorizam a concessão de *habeas corpus* de ofício.

9. *In casu*, o Tribunal Regional Federal foi apontado como autoridade coatora perante

3

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001, que institui a Infraestrutura de Chaves Públicas Brasileira - ICP-Brasil. O documento pode ser acessado no endereço eletrônico http://www.stf.jus.br/portal/autenticacao/ sob o número 8763643.

**RE 680967 / DF**

o Superior Tribunal de Justiça, e o *writ* analisado sob o enfoque da competência à luz do Código de Processo Penal, matéria infraconstitucional que conjura a violação à Constituição Federal.

10. Os princípios constitucionais da razoabilidade e da vedação da proteção deficiente não autorizam a inobservância, pelos órgãos de investigação, das normas legais de regência da atividade persecutória. No caso, o acórdão recorrido assentou a violação destas normas na condução das investigações, ao afirmar que é *"inquestionável o prejuízo acarretado pelas investigações realizadas em desconformidade com as normas legais, e não convalescem, sob qualquer ângulo que seja analisada a questão, porquanto é manifesta a nulidade das diligências perpetradas pelos agentes da ABIN e um ex-agente do SNI, ao arrepio da lei"*.

11. Os princípios materiais constitucionais utilizados como fundamentação *a latere* encerram, quando muito, ofensa reflexa, afastando a aferição do acórdão recorrido sob o prisma constitucional.

12. A surpresa dos atores jurídicos envolvidos nas investigações, em decorrência da declaração de nulidade pelo Superior Tribunal de Justiça e do fato de as instâncias inferiores não as terem invalidado, configura mera irresignação do recorrente, ausente ofensa direta ao princípio constitucional da segurança

4

**RE 680967 / DF**

jurídica.

13. A Súmula 279/STF dispõe: "*Para simples reexame de prova não cabe recurso extraordinário*"; por isso que a aferição da participação dos agentes da ABIN, considerada ostensiva pelo acórdão recorrido, demandaria análise de fatos e provas, vedada em recurso extraordinário (ARE 676.280-AgR, 1ª Turma, Rel. Min. Roberto Barroso, unânime, j. 14/04/2015).

Deveras, no inquérito policial federal que apurou desvios funcionais da referida operação constou: "*Nesta diretriz, verificou-se que servidores da Agência Brasileira de Inteligência – ABIN e um ex-servidor, por iniciativa do Delegado PROTÓGENES QUEIROZ, sem autorização judicial e sem qualquer formalização, foram introduzidas ocultamente nos trabalhos da operação Satiagraha, tomaram conhecimento de dados que estavam sob sigilo e, seguindo comando daquela autoridade e de outros servidores a ele subordinados, realizaram trabalhos de vigilância, acompanhamento de alvos, registros fotográficos, filmagens, gravações ambientais, análise de documentos igualmente sigilosos, geraram relatórios e produziram transcrições a partir da audição de gravações de conversações telefônicas interceptadas pelo sistema guardião, em situação que ultrapassa qualquer limite de entendimento de que fosse mera atuação pontual com troca de dados de inteligência entre órgãos [...]*".

5

**RE 680967 / DF**

14. A repercussão geral deve ser analisada após a aferição dos demais requisitos de admissibilidade do recurso extraordinário, na forma do art. 323 do Regimento Interno do Supremo Tribunal Federal e da remansosa jurisprudência do Supremo Tribunal Federal (Precedentes: RE 597.165-AgR, Rel. Min. Celso de Mello; ARE 716.775-AgR, Rel. Min. Luiz Fux; RE 728.753-AgR, Rel. Min. Luiz Fux; AI 689.742-AgR, Rel. Min. Dias Toffoli. Em sede monocrática: RE 723.284, Rel. Min. Gilmar Mendes; RE 665.438, Rel. Min. Marco Aurélio; RE 646.055, Rel. Min. Ricardo Lewandowski; ARE 769.311, Rel. Min. Roberto Barroso; ARE 867.078, Rel. Min. Rosa Weber; ARE 736.677, Rel. Min. Teori Zavascki).

15. Recurso extraordinário não conhecido.

**Decisão:** Cuida-se de Recurso Extraordinário interposto pelo Ministério Público Federal contra o acórdão proferido pelo Superior Tribunal de Justiça no julgamento do HC 149.250, cuja ementa é a seguinte:

*"PENAL E PROCESSO PENAL. HABEAS CORPUS. OPERAÇÃO SATIAGRAHA. PARTICIPAÇÃO IRREGULAR, INDUVIDOSAMENTE COMPROVADA, DE DEZENAS DE FUNCIONÁRIOS DA AGÊNCIA BRASILEIRA DE INFORMAÇÃO (ABIN) E DE EX-SERVIDOR DO SNI, EM INVESTIGAÇÃO CONDUZIDA PELA POLÍCIA FEDERAL. MANIFESTO ABUSO DE PODER. IMPOSSIBILIDADE DE CONSIDERAR-SE A ATUAÇÃO EFETIVADA COMO HIPÓTESE EXCEPCIONALÍSSIMA, CAPAZ DE PERMITIR COMPARTILHAMENTO DE DADOS ENTRE ÓRGÃOS*

6

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001, que institui a Infraestrutura de Chaves Públicas Brasileira - ICP-Brasil. O documento pode ser acessado no endereço eletrônico http://www.stf.jus.br/portal/autenticacao/ sob o número 8763643.

**RE 680967 / DF**

*INTEGRANTES DO SISTEMA BRASILEIRO DE INTELIGÊNCIA. INEXISTÊNCIA DE PRECEITO LEGAL AUTORIZANDO-A. PATENTE A OCORRÊNCIA DE INTROMISSÃO ESTATAL, ABUSIVA E ILEGAL NA ESFERA DA VIDA PRIVADA, NO CASO CONCRETO. VIOLAÇÕES DA HONRA, DA IMAGEM E DA DIGNIDADE DA PESSOA HUMANA. INDEVIDA OBTENÇÃO DE PROVA ILÍCITA, PORQUANTO COLHIDA EM DESCONFORMIDADE COM PRECEITO LEGAL. AUSÊNCIA DE RAZOABILIDADE. AS NULIDADES VERIFICADAS NA FASE PRÉ-PROCESSUAL, E DEMONSTRADAS À EXAUSTÃO, CONTAMINAM FUTURA AÇÃO PENAL. INFRINGÊNCIA A DIVERSOS DISPOSITIVOS DE LEI. CONTRARIEDADE AOS PRINCÍPIOS DA LEGALIDADE, DA IMPARCIALIDADE E DO DEVIDO PROCESSO LEGAL INQUESTIONAVELMENTE CARACTERIZADA. A AUTORIDADE DO JUIZ ESTÁ DIRETAMENTE LIGADA À SUA INDEPENDÊNCIA AO JULGAR E À IMPARCIALIDADE. UMA DECISÃO JUDICIAL NÃO PODE SER DITADA POR CRITÉRIOS SUBJETIVOS, NORTEADA PELO ABUSO DE PODER OU DISTANCIADA DOS PARÂMETROS LEGAIS. ESSAS EXIGÊNCIAS DECORREM DOS PRINCÍPIOS DEMOCRÁTICOS E DOS DIREITOS E GARANTIAS INDIVIDUAIS INSCRITOS NA CONSTITUIÇÃO. NULIDADE DOS PROCEDIMENTOS QUE SE IMPÕE, ANULANDO-SE, DESDE O INÍCIO, A AÇÃO PENAL.*

*1. Uma análise detida dos 11 (onze) volumes que compõem o HC **demonstra que existe** uma grande quantidade de provas aptas a confirmar, cabalmente, a participação indevida, flagrantemente ilegal e abusiva, da ABIN e do investigador particular contratado pelo Delegado responsável pela chefia da Operação Satiagraha.*

*2. Não há se falar em compartilhamento de dados entre a ABIN e a Polícia Federal, haja vista que a hipótese dos autos não se enquadra nas exceções previstas na Lei nº 9.883/99.*

*3. Vivemos em um Estado Democrático de Direito, no qual, como nos ensina a Profª. Ada Pellegrini Grinover, in "Nulidades no*

7

Documento assinado digitalmente conforme MP nº 2.200-2/2001 de 24/08/2001, que institui a Infraestrutura de Chaves Públicas Brasileira - ICP-Brasil. O documento pode ser acessado no endereço eletrônico http://www.stf.jus.br/portal/autenticacao/ sob o número 8763643.

**RE 680967 / DF**

Processo Penal", "o direito à prova está limitado, na medida em que constitui as garantias do contraditório e da ampla defesa, de sorte que o seu exercício não pode ultrapassar os limites da lei e, sobretudo, da Constituição".

4. No caso em exame, é inquestionável o prejuízo acarretado pelas **investigações realizadas em desconformidade com as normas legais, e não convalescem, sob qualquer ângulo que seja analisada a questão, porquanto é manifesta a nulidade das diligências perpetradas pelos agentes da ABIN e um ex-agente do SNI, ao arrepio da lei.**

5. Insta assinalar, por oportuno, que o juiz deve estrita fidelidade à lei penal, dela não podendo se afastar a não ser que imprudentemente se arrisque a percorrer, de forma isolada, o caminho tortuoso da subjetividade que, não poucas vezes, desemboca na odiosa perda da imparcialidade. Ele não deve, jamais, perder de vista a importância da democracia e do Estado Democrático de Direito.

6. Portanto, inexistem dúvidas de que tais provas estão irremediavelmente maculadas, devendo ser consideradas ilícitas e inadmissíveis, circunstâncias que as tornam destituídas de qualquer eficácia jurídica, consoante entendimento já cristalizado pela doutrina pacífica e lastreado na torrencial jurisprudência dos nossos tribunais.

7. Pelo exposto, concedo a ordem para anular, todas as provas produzidas, em especial a dos procedimentos nº 2007.61.81.010208-7 (monitoramento telefônico), nº 2007.61.81.011419-3 (monitoramento telefônico), e nº 2008.61.81.008291-3 (ação controlada), e dos demais correlatos, anulando também, desde o início, a ação penal, na mesma esteira do bem elaborado parecer exarado pela douta Procuradoria da República" (HC 149.250/SP, Rel. Ministro ADILSON VIEIRA MACABU (DESEMBARGADOR CONVOCADO DO TJ/RJ), QUINTA TURMA, julgado em 07/06/2011, DJe 05/09/2011).

Estes fundamentos conduziram à anulação da investigação da Polícia Federal cognominada de Operação Satiagraha.

Inconformado, o Ministério Público Federal interpôs o presente Recurso Extraordinário, no qual sustenta que, embora o ora Recorrido tenha pleiteado, perante o Superior Tribunal de Justiça, a nulidade tão

8

**RE 680967 / DF**

somente de três procedimentos investigatórios (um monitoramento telefônico, um monitoramento telemático e uma ação controlada), a Quinta Turma do Superior Tribunal de Justiça concedeu a ordem de *habeas corpus* para anular todas as provas produzidas, conduzindo à nulidade, desde o início, da ação penal que com base nelas havia sido instaurada, aplicando a teoria dos frutos da árvore envenenada. Eis os fundamentos do voto condutor do acórdão, no trecho em questão:

> "***Uma vez reconhecida a ilicitude das provas colhidas, necessário verificar os desdobramentos daí advindos.***
>
> *A Teoria dos Frutos da Árvore Envenenada (The fruit of the poisonous tree) teve origem na Suprema Corte Americana, que adotou o entendimento de que **os vícios da 'árvore são transmitidos aos seus frutos'**, ou seja, havendo uma origem ilícita, como in casu, uma investigação eivada de inconstitucionalidade, toda a prova dela decorrente, mesmo que não ilícita em si, não poderá ser admitida, pois já estaria contaminada.*
>
> *Aliás, **o §1º do art. 157 do Código de Processo Penal, com a redação dada pela Lei n° 11.690/08, admite a adoção da Teoria dos Frutos da Árvore Envenenada,** ressalvando a hipótese de não se comprovar o nexo da causalidade entre as provas derivadas e as ilícitas ou caso as derivadas possam ser obtidas por intermédio de uma forte diversa das ilícitas.*
>
> *Discute-se muito acerca da aplicabilidade da teoria ao Direito Pátrio. No entanto, o excelso Supremo Tribunal Federal já se manifestou sobre o tema, em brilhante voto da lavra do em. Ministro Sepúlveda Pertence, cuja ementa transcrevo a seguir:*
>
> [...]".

O Ministério Público assenta, quanto ao requisito da Repercussão Geral, que: "*Analisando o caso concreto, evidencia-se a forte presença da repercussão social, econômica e jurídica oriunda da decisão ora impugnada*", argumentando que o acórdão recorrido criou "*efetivo risco de levar-se à estaca zero todos os processos criminais instaurados em decorrência das investigações já realizadas, perdendo-se anos de trabalho da Polícia e do Ministério Público*".

Sustenta que "*Considerar ilícitas as provas produzidas ao longo da*

9

**RE 680967 / DF**

*Operação Satiagraha e, inclusive, a ação penal que ensejou a condenação de Daniel Dantas por corrupção ativa (pedidos que não foram sequer deduzidos no HC), tendo em vista a 'suposta' colaboração de agentes da ABIN, mediante adoção de apenas teses jurídicas, é algo inaceitável e inacreditável, em total desrespeito aos preceitos constitucionais".*

Em sede preliminar, alega a nulidade do acórdão por violação do devido processo legal, tendo em vista o indeferimento monocrático da arguição de suspeição formulada por terceiro (Protógenes Queiroz) contra o Relator do *habeas corpus* de origem.

No mérito, o Recorrente sustenta que "*restaram violadas as seguintes normas constitucionais, conforme será exposto detalhadamente: a) ofensa direta e imediata ao princípio da fundamentação das decisões judiciais (art. 93, inc. IX, CF/88) e ao art. 108, inc. I, alínea 'd', CF/88 (usurpação de competência do TRF); b) ofensa direta e imediata do voto condutor do acórdão ao princípio constitucional da razoabilidade, assim como ao princípio da vedação da proteção deficiente (de índole constitucional, já aliás aplicado por Ministro dessa Colenda Corte) e, ainda, ao direito fundamental da sociedade e do Estado à segurança (arts. 5º e 6º, caput, CF/88); c) ofensa direta e imediata ao princípio da segurança jurídica; d) ofensa direta e imediata à interpretação dada ao princípio da proibição das provas ilícitas (art. 5º, LVI, CF/88), especialmente no tocante à correta avaliação do conteúdo do princípio e seus efeitos, e ao art. 144, CF/88"* (fls. 3201/3202).

Alega que o acórdão recorrido "*apresentou argumentos meramente hipotéticos*" para concluir que "*todas as provas colhidas por agentes da ABIN e pelo investigador particular contratado indevidamente, no curso da operação, são ilícitas*". Segundo o Recorrente, o acórdão não teria apoio em qualquer evidência para afirmar que aquelas provas consideradas ilícitas serviram de fundamento à condenação. Cita trecho de voto vencido no qual se afirma que a conclusão quanto à legalidade ou não da atividade da ABIN nas investigações demandaria avaliação e cotejo minudente de fatos e provas, incabível em *habeas corpus*.

Quanto à violação dos princípios da razoabilidade e da vedação à proteção deficiente, argumenta que "*o resultado benéfico (desvelamento de*

10

**RE 680967 / DF**

inúmeros crimes e desmantelamento de organização criminosa) sobrepuja sua carga negativa. Não se trata de distinguir provas ilícitas e ilegítimas, como aquelas que lesionam normas de direito material ou processual, mas sim de convir que **não há lesão à forma quando o bem jurídico por ela tutelado foi salvaguardado**. Em determinados casos, portanto, o interesse público se sobrepõe aos direitos individuais" (fls. 3212).

Salienta "uma nova tendência na doutrina em considerar como direito fundamental não apenas o direito do réu, mas também o direito de segurança dos indivíduos e o direito penal do Estado" (fls. 3214).

Cita trecho do julgamento proferido por esta Corte no RE 418.376, Rel. Min. Gilmar Mendes, no qual se reconheceu a aplicabilidade do princípio da proibição da proteção deficiente "para negar aplicação à regra da extinção da punibilidade em favor do réu condenado por estupro que se casou com menor absolutamente incapaz" e conclui que, no presente caso, "foi violado, em concreto, o núcleo do direito fundamental à segurança da sociedade e do Estado" (fls. 3216).

O Recorrente alega, ainda, que o acórdão recorrido teria ofendido direta e imediatamente o princípio constitucional da segurança jurídica, "uma vez que as decisões proferidas pelas instâncias ordinárias, que passaram pelo crivo de inúmeras autoridades, foram alteradas de modo único, sem que existisse nenhum elemento concreto que justificasse o entendimento exarado pelo Exmo. Relator" e acrescentando que "a decisão não unânime proferida pelo e. STJ cria uma incerteza quanto ao comportamento devido por parte de dezenas de milhares de Juízes, Promotores, Procuradores da República e Delegados, cujos trabalhos poderão ser anulados em razão de um posicionamento genérico e majoritário de uma Turma" (fls. 3218).

Relativamente à alegada ofensa ao art. 5º, LVI, da Constituição Federal, que proíbe a utilização de provas ilícitas no processo, o Recorrente sustenta que o acórdão conferiu interpretação incorreta ao mencionado dispositivo constitucional, violando, assim, o disposto no art. 144 da Constituição Federal.

No mérito, pede o provimento do Recurso Extraordinário, com o reconhecimento da validade de todas as provas produzidas na ação penal

11

**RE 680967 / DF**

oriunda da Operação Satiagraha.

Em **contrarrazões**, o Recorrido alega, em síntese, o seguinte:

(1) Preliminarmente:

(i) A **intempestividade do Recurso Extraordinário**, tendo em vista que o recurso somente foi interposto depois de lançada a certidão de trânsito em julgado do acórdão. Argumenta que o termo *a quo* da contagem do prazo deve ser a data da juntada do mandado de intimação aos autos, e não a da posterior entrega dos autos ao Ministério Público;

(ii) Ausência de interesse recursal, pois **o *habeas corpus* foi concedido de acordo com o parecer da Procuradoria da República** oficiante junto ao Superior Tribunal de Justiça, inexistindo sucumbência;

(iii) **Ausência de prequestionamento da matéria constitucional**;

(iv) **Pretensão de análise de matéria fática e de ofensas indiretas à Constituição**;

(v) **Inexistência de repercussão geral**.

(vi) **Inocorrência da nulidade alegada preliminarmente pelo Recorrente, pois a arguição de suspeição foi apresentada intempestivamente por figura estranha à relação processual (o Delegado responsável pela Operação Satiagraha), razão pela qual não poderia ser conhecida**;

(2) Quanto ao mérito, sustenta o seguinte:

(i) Inexistência de violação ao art. 144, § 1º, IV, da CRFB, pelo acórdão recorrido, **por não ter havido autorização legal para que a ABIN realizasse diligências investigatórias nos autos da ação penal de origem**, pois: (a) Nos termos do art. 4º da Lei nº 9.883/99, a Polícia Federal não faz parte do Sistema Brasileiro de Inteligência, mas apenas a Diretoria de Inteligência Policial do Departamento de Polícia Federal, órgão esse que não teria sido consultado para autorizar a participação da ABIN nas investigações do caso concreto em análise; (b) a atuação de agentes da ABIN, no caso, ocorreu sem autorização judicial;

(ii) Houve participação efetiva, relevante e proeminente da ABIN na referida investigação [Satiagraha], disponibilizando, no período de **07/03/2008 a 07/07/2008, 23 (vinte e três) homens por dia**, conforme

12

**RE 680967 / DF**

declaração do então Diretor-Geral da ABIN, Paulo Lacerda, à Comissão Parlamentar de Inquérito (fls. 2.215, vol. 9);

(iii) Houve, ainda, atuação de um investigador particular, ex-servidor da SNI, Sr. Francisco Ambrósio do Nascimento, cuja remuneração teria sido paga pelo Delegado responsável pela condução da Operação Satiagraha;

(iv) Agentes da ABIN e o investigador particular teriam acessado HDs do Banco Opportunity S/A, apreendidos na Operação Chacal, em 2004;

(v) O art. 5º, LIV e LV, da Carta Magna, ao consagrar os princípios do devido processo legal, do contraditório e da ampla defesa, albergaria **garantias do indivíduo contra o Estado**, e não do Estado em detrimento do indivíduo;

(vi) A concessão de *writ* de ofício não viola o disposto no art. 108, I, *d*, da Constituição;

(vii) O direito fundamental à segurança não é imediatamente exigível pela via do Judiciário;

(viii) **Os princípios da razoabilidade e da proibição da proteção deficiente não autorizam atuação excessiva e abusiva do Estado**. No caso, a participação da ABIN e de ex-servidor da SNI em escutas telefônicas, mensagens de e-mails, dados dos HDs do Opportunity e de atos de vigilância, inquinaria de nulidade o inquérito policial (IPL nº 12-0235/08), cuja portaria de instauração teria se baseado em tais elementos de prova, nulidade esta que se comunicou à ação penal nº 2008.61.81.009002-8, visto que os referidos elementos foram objeto de consideração no recebimento da denúncia;

(ix) Inexiste violação ao princípio da segurança jurídica, pois o acórdão recorrido não promoveu inovação jurídica.

É o relatório.

**Decido.**

Conforme relatado, cuida-se de Recurso Extraordinário interposto pelo Ministério Público Federal, contra acórdão do STJ que concedeu *habeas corpus* ao ora recorrido, por considerar ilícitas as investigações que

13

**RE 680967 / DF**

conduziram à instauração da ação penal de origem, sobretudo em razão da atuação de agentes da ABIN e de ex-servidor do SNI, fora das hipóteses legais.

O presente Recurso Extraordinário é incognoscível.

A tempestividade do recurso ora sob controvérsia demanda assentar qual data deve ser considerada *o dies a quo* para fins de determinação do prazo de interposição do recurso pelo Ministério Público, quando a intimação pessoal ocorrer por formas diversas: a aposição do ciente e o recebimento dos autos.

No caso *sub examine*, o Ministério Público Federal foi pessoalmente intimado da publicação do acórdão proferido no *habeas corpus* de origem, no dia 06/09/2011, com aposição de ciente no mandado de intimação, que foi arquivado na Coordenadoria da Quinta Turma do Superior Tribunal de Justiça em 09/09/2011 (fls. 3163-v). Porém, somente depois de transcorridos 20 dias, o Ministério Público Federal **requereu vista dos autos** ao Superior Tribunal de Justiça, mediante petição de fls. 3171 (protocolada em 29 de setembro de 2011).

O Ministério Público Federal alega que, em razão da prerrogativa da intimação pessoal **com vista dos autos**, o *dies a quo* para a contagem do prazo seria apenas aquele em que se deu o recebimento dos autos na Procuradoria-Geral da República.

Sob essa ótica, o Supremo Tribunal Federal já teve oportunidade de se manifestar sobre a matéria, em caso análogo ao que ora se decide. É que, no julgamento do Agravo Regimental no Agravo de Instrumento 707.988/RJ, Rel. Min. Cármen Lúcia, entendeu-se que "*Ocorrendo a intimação pessoal por diversas formas, **há de ser considerada, para a contagem dos prazos recursais, a que ocorrer primeiro**".

Eis a ementa daquele julgado:

> "*AGRAVO REGIMENTAL NO AGRAVO DE INSTRUMENTO. DIVERSAS FORMAS DE INTIMAÇÃO DO MINISTÉRIO PÚBLICO: **CONSIDERA-SE A QUE PRIMEIRO OCORREU. INTEMPESTIVIDADE: AGRAVO REGIMENTAL DO QUAL NÃO SE CONHECE.***

14

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001, que institui a Infraestrutura de Chaves Públicas Brasileira - ICP-Brasil. O documento pode ser acessado no endereço eletrônico http://www.stf.jus.br/portal/autenticacao/ sob o número 8763643.

**RE 680967 / DF**

>          *1. A intimação pessoal do Ministério Público pode*
> *ocorrer por mandado ou pela entrega dos autos devidamente*
> *formalizada no setor administrativo do Ministério Público, sendo que,*
> *para efeitos de comprovação da tempestividade do recurso, **admite-se,***
> ***excepcionalmente, a 'aposição do ciente'.***
>          *2. **Ocorrendo a intimação pessoal por diversas formas, há***
> ***de ser considerada, para a contagem dos prazos recursais, a que***
> ***ocorrer primeiro.** Precedente.*
>          *3. No caso, **o Ministério Público foi intimado por mandado***
> *(Súmula n. 710 do Supremo Tribunal Federal) e interpôs o agravo fora*
> *do quinquídio legal.*
>          *4. Agravo regimental intempestivo. Recurso do qual não se*
> *conhece"* (AI 707.988-AgR, Primeira Turma, Rel. Min. Cármen
> Lúcia, unânime, DJe de 19/09/2008).

Como se percebe, cuidava-se, nesse paradigma, de situação em que o Ministério Público foi intimado pessoalmente, **por mandado**, e só posteriormente foi efetuada a **entrega dos autos** no Ministério Público, **sendo certo que considerado o** *dies a quo* **diverso do da entrega dos autos**.

Emblemática, ainda, é a decisão proferida no HC 83.915/SP, Rel. Min. Sepúlveda Pertence, em que se firmou **o entendimento de que o** *dies a quo* **define-se, sempre, pela <u>primeira data</u> em que se tenha a certeza da intimação pessoal**.

A ementa daquele julgado estampa o cristalino entendimento desta Corte sobre a matéria, *verbis*:

>          *"[...] **A aposição do "ciente" pelo Ministério Público, para***
> ***efeitos de contagem do prazo dos recursos, pressupõe a***
> ***ausência de anterior intimação pessoal que, per si, baste para***
> ***consumar o ato. É o caso "da entrega de processo em setor***
> ***administrativo do Ministério Público, formalizada a carga***
> ***pelo servidor"*** *(v.g., HC 83.255, Pleno, Marco Aurélio, DJ 12.3.04)*
> ***<u>que, por sua vez, também cede à sua anterior e inequívoca</u>***
> ***<u>intimação pessoal, tal como a certificada no processo principal</u>***

15

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001, que institui a Infraestrutura de Chaves Públicas Brasileira - ICP-Brasil. O documento pode ser acessado no endereço eletrônico http://www.stf.jus.br/portal/autenticacao/ sob o número 8763643.

**RE 680967 / DF**

*e a partir da qual os embargos no STJ seriam intempestivos*".

A aposição do "ciente" no mandado de intimação, pela representante do Ministério Público Federal, dá início à contagem do prazo processual, sob pena de a referida intimação constituir um ato inexistente ("nada jurídico"), o que não se coaduna com o processo penal, impregnado de garantias *pro reo*, dentre outras a de preclusão de prazos de acusação.

A controvérsia na interpretação das regras que disciplinam os prazos no processo penal deve ser resolvida, em princípio, de modo a prestigiar aquela que produza menor demora na resolução do litígio, desde que não importe prejuízo irreparável para o direito das partes a um processo justo.

Assim, à luz do princípio da duração razoável do processo, insculpido no art. 5º, LXXVIII, da Lei Maior, através da EC 45/2004, a jurisprudência da Corte sobre a matéria ora em julgamento revela-se acertada, operando-se, no caso, em *favor rei*.

Deveras, apesar de o recurso extraordinário haver sido admitido pela Vice-Presidência do Superior Tribunal de Justiça, impõe-se assentar que o juízo de admissibilidade proferido na instância recorrida, a par de veiculado através de decisão genérica, não vincula o Supremo Tribunal Federal, pois a este compete "*emitir juízo definitivo acerca da admissibilidade de recurso extraordinário, não tendo qualquer efeito vinculante a manifestação positiva ou negativa, integral ou parcial, feita pelo Tribunal de origem*" (RE 593.156-AgR/SP, Segunda Turma, Rel. Min. Joaquim Barbosa, DJ 25/10/2010).

Superada a questão da intempestividade, o presente Recurso Extraordinário não preenche os demais requisitos de admissibilidade da impugnação extrema.

O Recorrente, consoante destacado no Relatório, pede, preliminarmente, a declaração da nulidade do julgamento proferido pelo Superior Tribunal de Justiça, por suposta violação do princípio do devido processo legal no julgamento de arguição de suspeição do Relator.

O pedido revela-se manifestamente incabível na sede do Recurso

16

Documento assinado digitalmente conforme MP nº 2.200-2/2001 de 24/08/2001, que institui a Infraestrutura de Chaves Públicas Brasileira - ICP-Brasil. O documento pode ser acessado no endereço eletrônico http://www.stf.jus.br/portal/autenticacao/ sob o número 8763643.

**RE 680967 / DF**

Extraordinário.

*In casu*, o Relator do *habeas corpus* de origem negou seguimento à arguição de suspeição, sem apreciar o mérito, com base na incapacidade postulatória do arguente e a intempestividade do pedido, decisão que transitou em julgado.

Deveras, a *exceptio suspitionis* versa matéria flagrantemente infraconstitucional, o que revela ausente violação direta ao princípio do devido processo legal.

Sob outro enfoque do recurso, qual a suposta violação do disposto nos artigos 144 e 5º, LVI, da Constituição Federal, sem adentrar no exame do mérito da decisão recorrida, em nenhum momento o recorrente arguiu ou a Corte debateu e julgou qualquer dos temas constitucionais suscitados nas razões do recurso extraordinário às fls. 3201/3202:

> *"a) ofensa direta e imediata ao princípio da fundamentação das decisões judiciais (art. 93, inc. IX, da CF/88), aos princípios do devido processo legal, contraditório e ampla defesa (art. 5º, inc. V, CF/88) e ao art. 108, inc. I, alínea 'd', CF/88 (usurpação de competência do TRF);*
>
> *b) ofensa direta e imediata do voto condutor do acórdão ao princípio constitucional da razoabilidade, assim como ao princípio da vedação da proteção deficiente (de índole constitucional, já aliás aplicado por Ministro dessa Colenda Corte) e, ainda, ao direito fundamental da sociedade e do Estado à segurança (arts. 5º e 6º, caput, CF/88);*
>
> *c) ofensa direta e imediata ao princípio constitucional da segurança jurídica;*
>
> *d) ofensa direta e imediata à interpretação dada ao princípio da proibição das provas ilícitas (art. 5º, LVI, CF/88), especialmente no tocante à correta avaliação do princípio e seus efeitos, e ao art. 144, CF/88".*

Sob esse enfoque, o recurso excepcional padece do requisito do prequestionamento. Nesse sentido, no Recurso Extraordinário com Agravo n° 680.718/SP, da minha relatoria, a respeito da necessária observância do requisito do prequestionamento, destaquei o que

17

**RE 680967 / DF**

afirmado pelo Supremo Tribunal Federal, por ocasião do julgamento do AI 140.623-2/RS-AgR (DJ de 19/09/1992), quando o Ministro Sepúlveda Pertence, relator, frisou:

> *"Ora, o fato de não estar explícito na Constituição não afeta a exigibilidade do prequestionamento como pressuposto do recurso extraordinário. Antiga e firme jurisprudência desta Corte o reputa da própria natureza do recurso extraordinário. Ao julgá-lo, o Tribunal não se converte em terceiro grau de jurisdição, mas se detém no exame do acórdão recorrido e verifica se nele a regra de direito recebeu boa ou má aplicação. Daí a necessidade de que no julgamento impugnado se tenha discutido a questão constitucional posta no extraordinário".*

Outrossim, melhor sorte não se reserva à tese da dispensabilidade do requisito do prequestionamento para conhecimento do extraordinário, sob a alegação de ter-se em conta matéria de ordem pública. A jurisprudência do Supremo Tribunal Federal é assente, consoante os julgados a seguir transcritos:

> *"EMENTA: Trabalhista. Agravo regimental em agravo de instrumento. IPC de junho de 1987. URP de fevereiro de 1989. Limitação à data-base subsequente. Título exequendo. Art. 114 da CF. Ausência de prequestionamento. Matéria de ordem pública. Súmulas STF 282 e 356.*
>
> *1. Ausência de prequestionamento do dispositivo constitucional tido como violado, porque não abordado pelo acórdão recorrido e, embora suscitado nos embargos de declaração a ele opostos, não foi apontado oportunamente na ocasião em que foram apresentadas as contra-razões ao recurso ordinário. Súmulas 282 e 356.*
>
> *2. Exigência do cumprimento desse cumprimento desse requisito recursal, ainda que a questão suscitada seja de ordem pública. Precedentes.*
>
> *3. Agravo regimental improvido"* (RE 567.165-AgR, Segunda Turma, Rel. Min. Ellen Gracie, DJ 22/10/2010).

> *"Ementa: Agravo regimental no agravo de instrumento.*

18

Documento assinado digitalmente conforme MP nº 2.200-2/2001 de 24/08/2001, que institui a Infraestrutura de Chaves Públicas Brasileira - ICP-Brasil. O documento pode ser acessado no endereço eletrônico http://www.stf.jus.br/portal/autenticacao/ sob o número 8763643.

**RE 680967 / DF**

> *Prequestionamento. Ausência. Matéria de ordem pública. Necessidade. Precedentes.*
>
> *1. Não se admite o recurso extraordinário quando o dispositivo constitucional que nele se alega violado não está devidamente prequestionado. Incidência das Súmulas 282 e 356/STF.*
>
> *2. Pacífica a jurisprudência desta Corte no sentido de que, mesmo em se tratando de matéria de ordem pública, é necessário o seu exame na instância de origem para que se viabilize o recurso extraordinário.*
>
> *3. Agravo regimental não provido"* (AI 836.359-AgR, Primeira Turma, Rel. Min. Dias Toffoli, DJ 1°/02/2012).

Resta ainda evidente que as alegadas violações constitucionais impõem a necessária e prévia análise da legislação infraconstitucional, o que caracteriza, na jurisprudência da Corte, ofensa **indireta**, incognoscível pelo Supremo Tribunal Federal, considerada sua estrita competência em sede de Recurso Extraordinário.

Conforme relatado, o acórdão do Superior Tribunal de Justiça ora recorrido anulou a ação penal de origem, ao fundamento de que houve *"participação irregular, induvidosamente comprovada, de dezenas de funcionários da Agência Brasileira de Informação (ABIN) e de ex-servidor do SNI, em investigação conduzida pela Polícia Federal"*.

Para chegar a esta conclusão, a Corte *a quo* considerou que a atuação da ABIN não observou os parâmetros impostos pela legislação ordinária de regência, salientando *"que a hipótese dos autos não se enquadra nas exceções previstas na Lei nº 9.883/99"*.

É cediço que a violação a preceito constitucional que autoriza o conhecimento do extraordinário há de ser direta e frontal, não podendo ser acolhida alegação que se funda na interpretação e aplicação da legislação infraconstitucional, pois, em casos assim, somente chegar-se-ia à conclusão de vulneração à Constituição a partir do acertamento quanto à existência de negativa de vigência ou de violação à lei federal, como anotado na jurisprudência da Suprema Corte (RE 72.959, Rel. Min. Luiz Galloti; RE 596.682, Rel. Min. Ayres Britto; AI 808.361, Rel. Min. Marco

19

**RE 680967 / DF**

Aurélio; AI 804.854-AgR, Rel. Min. Cármen Lúcia; AI 756.336-AgR, Rel. Min. Ellen Gracie.

O próprio recorrente, em suas razões de interposição do presente Recurso Extraordinário, remete aos dispositivos da Lei 9.883/1999 e ainda do Decreto Federal 3.695/2000.

Com efeito, o art. 144 da Constituição Federal nada dispõe sobre a participação da ABIN nas investigações, limitando-se a prever as atribuições das polícias federal, rodoviária, ferroviária, civis e militares, determinando que *"A lei disciplinará a organização e o funcionamento dos órgãos responsáveis pela segurança pública, de maneira a garantir a eficiência de suas atividades"* (§7º).

Aliás, apreciando o tema, a E. 2ª Turma do Supremo Tribunal Federal, na AP 563/SP, Rel. Min. Teori Zavascki, manteve a condenação do Delegado que conduziu as investigações de origem, por violação de sigilo funcional, exatamente por ter compartilhado provas sigilosas com agentes da ABIN cuja atuação não fora autorizada. Eis a ementa do julgamento:

> *"AÇÃO PENAL. CRIMES CONTRA A ADMINISTRAÇÃO PÚBLICA (VIOLAÇÃO DE SIGILO FUNCIONAL) E CONTRA A ADMINISTRAÇÃO DA JUSTIÇA (FRAUDE PROCESSUAL).* ***ACUSADO, CONDENADO EM PRIMEIRA INSTÂNCIA****, QUE ASSUME MANDATO DE DEPUTADO FEDERAL. RECURSO DE APELAÇÃO PENDENTE DE JULGAMENTO PELO RESPECTIVO TRIBUNAL. PRERROGATIVA DE FORO QUE IMPÕE DESLOCAMENTO DE COMPETÊNCIA PARA O SUPREMO TRIBUNAL.* ***PRELIMINARES AFASTADAS. MANUTENÇÃO PARCIAL DA CONDENAÇÃO****. NOTIFICAÇÃO DA CÂMARA DOS DEPUTADOS PARA FINS DO ART. 55, § 2º, DA CONSTITUIÇÃO DA REPÚBLICA.*
>
> *1. Incumbe ao Supremo Tribunal Federal, nos termos do art. 102, I, b, da Constituição, processar e julgar originariamente, nas infrações penais comuns (como no caso), os membros do Congresso Nacional desde o momento em que passam a ter direito a assento na cadeira parlamentar, com a expedição do diploma (art. 53, § 1º, da Constituição).*

20

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001, que institui a Infraestrutura de Chaves Públicas Brasileira - ICP-Brasil. O documento pode ser acessado no endereço eletrônico http://www.stf.jus.br/portal/autenticacao/ sob o número 8763643.

**RE 680967 / DF**

      *2. Manifestando-se a prerrogativa de foro após a sentença proferida pelo juízo de primeiro grau e pendente de julgamento a apelação, passa a causa à jurisdição do STF, para aqui ter seu prosseguimento a partir do estado em que se encontra, legítimos os atos anteriormente nela praticados.*

      *3. Nesses casos, o julgamento da apelação pelo Supremo Tribunal Federal deve observar, inclusive quanto às sustentações orais (ordem de apresentação e tempo de duração), o regime próprio dos recursos (e não o das ações penais originárias).*

      *4. As circunstâncias do caso impedem o desmembramento em relação ao corréu despido da prerrogativa de foro. Demais preliminares afastadas.*

      *5. Absolvição dos apelantes da imputação de fraude processual (art. 347, parágrafo único, do Código Penal), por força do art. 386, III, do Código de Processo Penal.*

      *6. Condenação à reprimenda do art. 325, caput, do Código Penal, com declaração de extinção da punibilidade pela prescrição, nos termos dos arts. 109, VI, e 110, ambos do Código Penal; e à do art. 325, § 2º, do Código Penal, substituída por duas restritivas de direito, mantida a perda do cargo público.*

      *7. Afasta-se a estipulação de valor mínimo prevista no art. 387, IV, do Código de Processo Penal, sem prejuízo da persecução correspondente em procedimento autônomo, quando fora de dúvida a ausência de contraditório a respeito.*

      *8. Controvérsia no âmbito desta Suprema Corte a respeito da competência para decretar a perda do mandato no caso de condenação criminal transitada em julgado. Orientação original que deve prevalecer, no sentido de a atribuir à Casa Legislativa a que pertence o parlamentar condenado. Inteligência do art. 55, § 2º, da Constituição da República"* (AP 563/SP, 2ª Turma, Rel. Min. Teori Zavascki, unânime, j. 21/10/2014, DJ 28/11/2014).

      Destaque-se que, anteriormente à ação penal, o ilustre Procurador-Geral da República já se manifestara no sentido da ilegalidade das provas, nos autos do Inq. 3764/DF, Rel. Min. Teori Zavascki, *verbis*:

21

**RE 680967 / DF**

"[...]

13. As ilegalidades cometidas pelo representado [Delegado Federal Protógenes Queiroz] no curso da Satiagraha, especialmente a utilização informal, em sem conhecimento da cúpula da Polícia Federal, de agentes da ABIN e de pessoas que não tinham vínculo com o serviço público, para realização de atos de investigação, constituem fatos notórios, constatados inclusive pela própria Polícia Federal. Nesse sentido, cumpre transcrever trecho do Relatório apresentado nos autos do Inquérito Policial n° 2-444/2008-SR-DPF/SP, em que o representado figurou como investigado:

'Na apuração desta conduta delituosa adotou-se como linha investigativa para delimitar possível autoria, a identificação de todas as pessoas que, à época do suposto vazamento, tinham conhecimento do real andamento das investigações.

Nessa diretriz, verificou-se que servidores da Agência Brasileira de Inteligência – ABIN e um ex-servidor, por iniciativa do Delegado PROTÓGENES QUEIROZ, sem autorização judicial e sem qualquer formalização, foram introduzidas ocultamente nos trabalhos da operação Satiagraha, tomaram conhecimento de dados que estavam sob sigilo e, seguindo comando daquela autoridade e de outros servidores a ele subordinados, realizaram trabalhos de vigilância, acompanhamento de alvos, registros fotográficos, filmagens, gravações ambientais, análise de documentos igualmente sigilosos, geraram relatórios e produziram transcrições a partir da audição de gravações de conversações telefônicas interceptadas pelo sistema guardião, em situação que ultrapassa qualquer limite de entendimento de que fosse mera atuação pontual com troca de dados de inteligência entre órgãos integrantes do Sistema Brasileiro de Inteligência – SISBIN, cuja razão de existir e finalidade de atuação, diferem diametralmente daquelas correspondentes à Polícia Judiciária da União, portanto, em completo desvio de finalidade e desrespeito ao disposto no artigo 8º da Lei 9.298, de 24 de julho de 1996, caracterizando, consequentemente, infração ao disposto na

22

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001, que institui a Infraestrutura de Chaves Públicas Brasileira - ICP-Brasil. O documento pode ser acessado no endereço eletrônico http://www.stf.jus.br/portal/autenticacao/ sob o número 8763643.

**RE 680967 / DF**

> segunda parte, do artigo 10 da mesma lei, uma vez que restou
> patente a quebra do segredo de justiça com objetivos não
> autorizados em lei e sem autorização judicial.
>
> Registra-se que, antes da ocorrência do vazamento de
> informações para a jornalista da Folha de São Paulo, a estranha
> presença de um servidor da ABIN na sala de análise, local de
> trabalho da equipe da operação Satiagraha, foi detectada em
> março de 2008, pelo Diretor da Divisão de Inteligência Policial,
> que imediatamente chamou o Delegado Protógenes Queiroz, seu
> subordinado, cobrou-lhe explicações e por fim, reprovando sua
> conduta em permitir acesso de terceiro ao ambiente operacional,
> determinou-lhe vedação do acesso daquela pessoa estranha ou de
> qualquer outra da ABIN, nos trabalhos da operação.
>
> Apesar daquela reprovação explícita, o Delegado
> PROTÓGENES QUEIROZ apenas retirou, do ambiente
> operacional, o estranho que fora descoberto e, contrariando a
> ordem recebida, não só o manteve nos trabalhos da operação,
> mas em outro local, como manteve completamente oculta a real
> extensão daquela participação espúria, uma vez que outros
> servidores continuaram interagindo naquele mesmo ambiente,
> sendo outros agregados, tudo na clandestinidade'".

A violação do art. 93, IX, da Constituição Federal, que teria se materializado na ausência de fundamentação para a invalidação de toda a ação penal de origem, cuida-se de mera irresignação do Recorrente com as razões de decidir contidas no acórdão do Superior Tribunal de Justiça.

*In casu*, independentemente de concordar-se ou não com o acórdão recorrido, é inegável que a concessão da ordem de *habeas corpus* está assentada em fundamentação jurídica. Extraio os seguintes trechos do acórdão recorrido, com menção, por exemplo, ao fato da utilização de terceiros não autorizados nas investigações, *verbis*:

> "[...] a Lei n° 9.883/99 instituiu o Sistema Brasileiro de
> Inteligência 'que integra as ações de planejamento e execução das
> atividades de inteligência do País, com a finalidade de fornecer
> subsídios ao Presidente da República nos assuntos de interesse
> nacional' (art. 1º) e criou a Agência Brasileira de Inteligência –

23

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001, que institui a Infraestrutura de Chaves Públicas Brasileira - ICP-Brasil. O documento pode ser acessado no endereço eletrônico http://www.stf.jus.br/portal/autenticacao/ sob o número 8763643.

**RE 680967 / DF**

*ABIN, como órgão central de tal sistema, fixando suas atribuições, claramente descritas em seu art. 4º, a saber:*

*[...]*

*Da simples leitura dos acima mencionados dispositivos legais, pode-se concluir que a atuação da ABIN se limita às atividades de inteligência que tenham como finalidade precípua e única fornecer subsídios ao Presidente da República nos assuntos de interesse nacional.*

*E mais. Não há qualquer possibilidade de se caracterizar a participação da ABIN e de ex-servidor do SNI com o intuito de 'mero compartilhamento de informações', como consignado no acórdão vergastado, especialmente porque o próprio acórdão é categórico ao afirmar que esse compartilhamento de informações de dados é admitido em casos excepcionais 'a situações nas quais haja interesse do estado brasileiro', conforme simples leitura da ementa do item nº 5.*

*[...]*

*Ora, se uma lei determina, expressamente, frise-se bem, as funções e o modus operandi da ABIN, não é aceitável que tais limitações sejam extrapoladas, ainda mais, porque o rol de funções disposto na Lei não permite uma interpretação elástica e em desconformidade com o espírito do legislador.*

*Não se pode admitir que em um Estado Democrático de Direito, à margem da lei e de vários Princípios consagrados, como o da legalidade, do devido processo legal e da impessoalidade, se corrobore com o direcionamento e, por que não dizer, com o complô de uma investigação criminal que ultrapassou todos os limites legais, tornando-se, ouso dizer, uma querela pessoal para incriminar determinada pessoa, valendo-se, para tanto, o uso efetivo de agentes da ABIN e até de um ex-servidor do finado SNI, por parte da autoridade administrativa, em duvidoso e inaceitável desvio de poder, maculando todo e qualquer ato administrativo ou investigativo praticado.*

*[...]*

*Por estas razões, tenho que todas as provas colhidas por agentes da ABIN e pelo investigador particular contratado indevidamente, no curso da operação, são ilícitas".*

24

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001, que institui a Infraestrutura de Chaves Públicas Brasileira - ICP-Brasil. O documento pode ser acessado no endereço eletrônico http://www.stf.jus.br/portal/autenticacao/ sob o número 8763643.

**RE 680967 / DF**

Acrescente-se que, no voto proferido pelo Ministro Presidente da Quinta Turma, que acompanhou o Relator, também constam fundamentos aptos a justificar o alcance da nulidade declarada pelo Superior Tribunal de Justiça, *verbis*:

> *"O Supremo Tribunal Federal já proclamou o reconhecimento da Teoria dos frutos da árvore envenenada (fruits of the poisonous tree) em aresto da lavra do Sr. Ministro Sepúlveda Pertence, ou seja, havendo uma origem ilícita, como na espécie, uma investigação eivada de inconstitucionalidade, toda a prova dele decorrente, mesmo que não ilícita em si, não deve ser admitida".*

A irresignação das partes com os fundamentos apresentados por decisões dos Tribunais Superiores não desafia a via recursal extraordinária, não se enquadrando diretamente na previsão constitucional de que todas as decisões judiciais serão fundamentadas (art. 93, IX), haja vista que interpretar não é violar, mercê de a parte apontar fundamentação contrária aos seus desígnios, o que afasta a tese da "ausência de motivação".

Pelo mesmo motivo, configura ofensa **indireta** à Constituição Federal a alegação de que o acórdão do Superior Tribunal de Justiça que concedeu a ordem de *habeas corpus* teria violado o disposto no art. 108, I, *d*, segundo o qual *"Compete aos Tribunais Regionais Federais: I – processar e julgar, originariamente: [...] d) os habeas corpus, quando a autoridade coatora for juiz federal".*

*In casu*, cuidava-se de julgamento de *habeas corpus* contra o Tribunal Regional Federal, de modo que não se pode falar em ofensa direta ao mencionado dispositivo constitucional. Ademais, o processo e julgamento do *habeas corpus* segue o disposto no Código de Processo Penal, razão pela qual eventual ofensa ao procedimento constitui-se, também, como ofensa reflexa, cuja análise é incabível em Recurso Extraordinário.

Quanto ao argumento de que o acórdão impugnado importaria *"ofensa direta e imediata aos princípios constitucionais da razoabilidade e da vedação da proteção deficiente, em face do direito fundamental de segurança da*

25

**RE 680967 / DF**

*sociedade*" (fls. 3211/3217), cuida-se de princípios que, embora altamente relevantes e protegidos pela Constituição Federal, possuem sua aplicabilidade intermediada pela legislação ordinária aplicável às investigações.

No caso, o acórdão recorrido assentou a inobservância destas normas, ao afirmar que é "*inquestionável o prejuízo acarretado pelas investigações realizadas em desconformidade com as normas legais, e não convalescem, sob qualquer ângulo que seja analisada a questão, porquanto é manifesta a nulidade das diligências perpetradas pelos agentes da ABIN e um ex-agente do SNI, ao arrepio da lei*".

Em relação à alegada violação do princípio da segurança jurídica, os fundamentos do Recorrente são, em síntese, os seguintes:

- "*a decisão, assim como foi proferida, surpreende todos, em especial aqueles que atuaram na investigação, apuração e desenvolvimento processual do caso em tela, com investimentos de recursos humanos e econômicos de grande vulto, cujas condutas foram guiadas segundo os ditames legais*" (fls. 3218);

- "*as decisões proferidas pelas instâncias ordinárias, que passaram pelo crivo de inúmeras autoridades, foram alteradas de modo único, sem que existisse nenhum elemento concreto que justificasse o entendimento exarado pelo Exmo. Relator*".

Como se observa, cuida-se de mera irresignação em relação aos fundamentos do acórdão recorrido, sobre a atuação dos órgãos de investigação **não ter respeitado** os ditames legais, considerados os fatos explicitados no voto condutor, em manifestação em nada colidente com a Carta Federal.

Por fim, no presente caso, ainda que se pretendesse analisar os argumentos do Ministério Público Federal, seria imprescindível o revolvimento dos fatos e provas do caso concreto, o que também se revela inviável em Recurso Extraordinário e incompatível com o enunciado da Súmula 279/STF, *verbis*: "*Para simples reexame de prova não cabe recurso extraordinário*".

*In casu*, o acórdão recorrido reputou ilícito o compartilhamento de dados entre a ABIN e a Polícia Federal e identificou prejuízo acarretado

26

**RE 680967 / DF**

pelas investigações realizadas em desconformidade com as normas legais, o que não é aferível mediante simples interpretação das normas constitucionais invocadas pelo Recorrente.

Recentemente, a Primeira Turma, à unanimidade, negou provimento ao Agravo do Ministério Público Federal em caso análogo ao presente. Cuida-se do ARE 676.280, Rel. Min. Roberto Barroso, interposto contra acórdão do Superior Tribunal de Justiça que também anulara integralmente a ação penal oriunda da denominada "Operação Castelo de Areia", tendo em vista a ilicitude das investigações.

A decisão monocrática que assentou a impossibilidade de rever a matéria da ilegalidade da operação em sede extraordinária e negou seguimento ao recurso assinalou:

> *"Ementa: Agravo em Recurso Extraordinário criminal tempestivo. Delação Anônima. Quebra do sigilo telefônico. 1. É desnecessária a ratificação do recurso extraordinário após o julgamento dos embargos declaratórios opostos pela parte adversa, afinal rejeitados. 2. **Não cabe o recurso extraordinário se a solução da controvérsia depende do reexame de fatos e provas e se o acórdão recorrido decidiu a causa com apoio na legislação infraconstitucional pertinente**. 3. A tese retratada no acórdão recorrido está alinhada com a jurisprudência do STF. 4. Agravo conhecido para negar seguimento ao recurso extraordinário".*

Posteriormente, no julgamento do Agravo Regimental, o colegiado fracionário manteve a decisão recorrida, conforme ementa a seguir transcrita:

> *"EMENTA: PROCESSUAL PENAL. AGRAVO REGIMENTAL EM RECURSO EXTRAORDINÁRIO COM AGRAVO. DELAÇÃO ANÔNIMA. QUEBRA DO SIGILO TELEFÔNICO. ORDEM CONCEDIDA PELO STJ PARA ANULAR O RECEBIMENTO DA DENÚNCIA.*
> *[...]*
> *2. **A decisão impugnada, sem qualquer juízo de valor quanto aos fatos subjacentes, aplicou a jurisprudência do***

27

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001, que institui a Infraestrutura de Chaves Públicas Brasileira - ICP-Brasil. O documento pode ser acessado no endereço eletrônico http://www.stf.jus.br/portal/autenticacao/ sob o número 8763643.

RE 680967 / DF

> *Supremo Tribunal Federal, no sentido da inadequação do recurso extraordinário para reexaminar prova (Súmula 279 do STF) e para discutir matéria infraconstitucional*. Decisão que deve ser mantida por seus próprios fundamentos.
>
> 3. *Agravo regimental desprovido"* (ARE 676.280-AgR, 2ª Turma, Rel. Min. Roberto Barroso, unânime, j. 14/04/2015).

Citem-se, ainda, os seguintes acórdãos: AI 823.484-AgR, Primeira Turma, Relator o Ministro Luiz Fux, DJe de 29/05/2013; AI nº 804.854-AgR, Primeira Turma, Relatora a Ministra Cármen Lúcia, DJe de 24/11/2010 e AI nº 756.336-AgR, Segunda Turma, Relatora a Ministra Ellen Gracie, DJe de 22/10/2010).

Na mesma esteira, em sede monocrática: ARE 801.153, Rel. Min. Cármen Lúcia; ARE 795.923, Rel. Min. Teori Zavascki; AI 737.378, Rel. Min. Dias Toffoli; ARE 760.372, Rel. Min. Ricardo Lewandowski.

*Ex positis*, nos termos do art. 38 da Lei 8.038/90, **nego seguimento** ao presente Recurso Extraordinário, por ser manifestamente incognoscível.

Publique-se. Intime-se.

Brasília, 24 de junho de 2015.

Ministro **Luiz Fux**

Relator

*Documento assinado digitalmente*

28

Documento assinado digitalmente conforme MP n° 2.200-2/2001 de 24/08/2001, que institui a Infraestrutura de Chaves Públicas Brasileira - ICP-Brasil. O documento pode ser acessado no endereço eletrônico http://www.stf.jus.br/portal/autenticacao/ sob o número 8763643.