Reed R. Kathrein (139304)
Michael W. Stocker (179083)
Kristen McCulloch (177558)
Danielle Smith (291237)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
mikes@hbsslaw.com
reed@hbsslaw.com
kristenm@hbsslaw.com
danielles@hbsslaw.com

*Attorneys for Proposed Lead Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KALMAN ISAACS, Individually and on Behalf of All Others Similarly Situated,<br><br>                                        Plaintiff,<br><br>     v.<br><br>ELON MUSK and TESLA, INC.,<br><br>                                        Defendants. | Case No. 3:18-cv-04865-EMC<br><br>**REPLY OF JAMES JOHNSON IN SUPPORT OF CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**<br><br>Date:           November 15, 2018<br>Time:          1:30 p.m.<br>Courtroom: 5, 17th Floor<br>Judge:         Hon. Edward M. Chen<br><br>ORAL ARGUMENT REQUESTED |
| WILLIAM CHAMBERLAIN, Individually and on Behalf of All Others Similarly Situated,<br><br>                                        Plaintiff,<br><br>     v.<br><br>TESLA, INC. and ELON MUSK,<br><br>                                        Defendants. | Case No. 3:18-cv-04876-EMC |

| | |
|---|---|
| JOHN YEAGER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>TESLA, INC. and ELON MUSK,<br><br>    Defendants. | Case No. 3:18-cv-04912-EMC |
| CARLOS MAIA, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>TESLA, INC. and ELON R. MUSK,<br><br>    Defendants. | Case No. 3:18-cv-04939-EMC |
| KEWAL DUA, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>TESLA, INC. and ELON MUSK,<br><br>    Defendants. | Case No. 3:18-cv-04948-EMC |
| JOSHUA HORWITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>TESLA, INC. and ELON R. MUSK<br><br>    Defendants. | Case No. 3:18-cv-05258-EMC |

010768-11 1075904 V1

| | |
|---|---|
| ANDREW E. LEFT, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>TESLA, INC. and ELON R. MUSK,<br><br>                              Defendants. | Case No. 3:18-cv-05463-EMC |
| ZHI XING FAN, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>TESLA, INC. and ELON R. MUSK,<br><br>                              Defendants. | Case No. 3:18-cv-05470-EMC |
| SHAHRAM SODEIFI, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>TESLA, INC., a Delaware corporation, and ELON R. MUSK, an individual,<br><br>                              Defendants. | Case No. 3:18-cv-05899-EMC |

010768-11 1075904 V1

## I. INTRODUCTION

The oppositions amply demonstrate that the Court should appoint separate lead plaintiffs for longs, shorts and option traders in Tesla. In appointing a single or multiple lead plaintiffs the Court is directed to assure, in addition to their financial interest, that the most adequate plaintiff "satisfies the requirements of" Rule 23(a)[1] that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and that "the representative parties will fairly and adequately protect the interests of the class."[2] In this unusual case where shorts and option traders claim the largest losses—yet are susceptible to unique defenses and damage calculations—such separate representation is needed. *See In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 441 (S.D. Tex. 2010); *In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 444 (S.D. Tex. 2002) ("the Court is required to insure that independent classes with conflicts are protected by subdivision and separate representation"); *see also In re Peregrine Sys., Inc.,* No. Civ.02 CV 870-J (RBB), 2002 WL 32769239, *12 (S.D. Cal. Oct. 11, 2002) (creating one subclass for Securities Act plaintiffs and another for Exchange Act plaintiffs). Such separate representation is consistent with *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir 2002) ("The district court has latitude as to what information it will consider in determining typicality and adequacy.")

The oppositions further make clear that Movant James Johnson should be appointed lead plaintiff for the class of Tesla investors who are traditional long purchasers of Tesla common stock, and not short sellers or option traders. Johnson is the only movant who bought and sold Tesla common stock, and never sold short or traded options. Johnson, consequently, has no divided loyalties to other classes of investors.

Johnson bought 91,846 shares of Tesla common stock during the Class Period—more than any other movant.[3] Johnson's total net funds expended was $34,429,733.27.

---

[1] 15 U.S.C. § 78u-4(a)(3)(B)(i).

[2] 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

[3] FNY Investment Advisers, an institutional investor, bought more shares but has slightly less losses at $304,201.98. *See* ECF No. 117 at 5:7.

Johnson's background is known to this Court, unlike other movants. Johnson is the only movant to submit a resume showing his educational and work history, as well as his residence in California.[4] Johnson held no open positions in Tesla securities prior to the Class Period.[5] Johnson's purchases were made in response to the Musk 420 Tweets.[6]

Unlike some other competing movants, Johnson has only one counsel: Hagens Berman Sobol Shapiro LLP. His counsel is not seeking to represent other movants or classes of investors. Johnson's counsel also does not represent Tesla, derivatively, as co-lead counsel in other filed actions, unlike other counsel who failed to disclose such a conflict from the Court and other movants (i.e. Dany David, Andrew Left Tesla Investor Group).

As further shown in the opposition papers and below, Johnson has the largest uncompromised financial interest in the relief sought by long investors. Because Johnson only purchased and sold common stock, unlike the other movants, Johnson has made a *prima facie* showing of his typicality and adequacy to long purchasers of Tesla common stock during the Class Period. Accordingly, Johnson is entitled to a strong presumption that he is the "most adequate plaintiff" for the class of long common stock purchasers, should be appointed lead plaintiff for that class, and Hagens Berman Sobol Shapiro LLP approved as Lead Counsel for the class of long purchasers of Tesla common stock.

## II.   THE OTHER MOVANTS

The following summarizes the strengths and deficiencies of each of the movants based on facts and argument set forth in the opposing papers, and how it affects the analysis of Movant

---

[4]  *See* Resume of movant James Johnson attached as Exhibit A to the Decl. Of Reed R. Kathrein In Support Of Mem. Of Law In Further Support Of Mot. Of James Johnson For Appt. As Lead Pl., and Approval of His Selection of Lead Counsel; And In Opp. to Competing Mots. ("Kathrein Opp. Decl."). ECF No. 114-1.

[5]  *See* Johnson Decl. at paragraphs ("¶") 2-4 (attached as Exhibit A to the Decl. Of Reed R. Kathrein In Support Of Reply Mem. Of Law In Further Support Of Mot. Of James Johnson For Consolidation Of Related Cases, Appt. As Lead Pl., And Approval Of His Selection Of Lead Counsel ("Kathrein Reply Decl.")).

[6]  *See* Johnson Decl. at ¶ 5 (attached as Exhibit A to the Kathrein Reply Decl.).

Johnson as being the most adequate plaintiff to represent the class of long common stock purchasers.[7]

### A. The Short Movants

Mr. Johnson takes no position on which movant is the most adequate to represent short sellers. Based on claimed losses, Tempus International Fund SPC and Opportunity Unique Fund ("Tempus") have the largest financial interest. No other movant, other than individuals who were cobbled together in the Andrew Left Tesla Investor group, self-identify as a common stock short-sellers.

#### 1. Tempus International Fund SPC and Opportunity Unique Fund

Tempus has the alleged largest losses of any movant at $15,871,345.00. However, questions have been raised about Tempus' authority to sign the certifications filed with the court, the nature of the entities (whether each existed at the time of their certifications), standing to sue, and whether they traded on a U.S. exchange as reflected by the price they claim to have covered their short positions.[8] Tempus should respond to these alleged deficiencies. Regardless, Tempus never held a single long common stock position at any time.[9] Accordingly, Tempus has little incentive to represent long purchasers of common stock, and every incentive to push for the largest damage theories for shorts.

#### 2. Individual Members of the Andrew Left Tesla Investor Group

Movants have pointed out a myriad of problems with the "Tesla Investor Group" lead by Andrew Left (the Left Group), all of which will not be repeated here. Significantly, the Left Group moved solely as a group, and not individually, and cannot be disaggregated. The members filed declarations that they were choosing to move together and only then did some members sign

---

[7] For convenience, attached as Exhibit B to Kathrein Reply Decl. are separate charts for each movant summarizing the criticisms of each by other movants. The only criticism of Mr. Johnson is that he is that his losses (one of the "Olsten-Lax" factors discussed in the oppositions) are smaller than Dany David. Mr. Johnson is also incorrectly identified as being a short settler by Glenn Littleton (*see* ECF 106, 7:18; *cf*. Johnson Decl. at ¶¶ 2-4 (attached as Exhibit A to the Kathrein Reply Decl.)).

[8] *See* ECF No. 107 at 3:2, ECF No. 108 at 2:20-21 and ECF No. 111 at 1:12-13, 5:10-11.

[9] ECF No. 71-5 at Exhibit D (page 2 of 2).

certifications that they were willing to move.[10] The Left Group is strewn around the world in the USA, Hungary, Europe and the Middle East. No wonder the group has ceded control to Andrew Left "to act as spokesperson, and liaison *with counsel* and the Court."[11]

Also problematic, the Left Group moved to have two unrelated lead counsel, who saw no issue with cobbling together individuals who have admittedly competing interests.[12] Andrew Left, PROtecto and Vilas Capital are short sellers and/or purchasing to cover shorts.[13] PROtecto also sold puts; Bouton purchased stock and sold puts. Dr.Shirazi bought stock.

The joint declaration gives no indication that counsel informed each member of their conflicts. The joint declaration gives no indication of any pre-existing relationship, or that the members ever knew about each other or talked to each other outside the single teleconference just before filing the motion. Little more is needed to show a group controlled and herded by its attorneys.

The joint declaration also shows confusion as to what the Left Group members think that their proper role is in this litigation. They highlight for the Court that they have already hired an expert on corporate governance. But, corporate governance is not part of their fiduciary duty which is to get the greatest potential recovery for the class.[14] Corporate governance is for derivative actions.

---

[10] ECF No. 51-1 at Exhibit A and D.

[11] ECF No. 51-4 at 8, ¶ 15.

[12] "Members of the Tesla Investor Group represent all the different trading strategies and time periods that are covered by the class definition in this case . . . . Thus, the Tesla Investor Group would have standing to represent all members of the Class for the entire length of the Class Period and would fully and fairly represent all the members of the Class, notwithstanding when their purchases or sales occurred. This broad coverage is in stark contrast to Tempus and OUF, which covered their short positions by purchasing Tesla common stock only on the first day of the Class Period." ECF No. 108 at 30.

[13] *See* ECF No. 51-2 Ex. B at 2-7. Strangely, in its opposition, the Left Tesla Investor Group identifies Andrew Left, not as a short seller, but as one who "purchased and sold Tesla securities throughout the Class Period, including on August 17, 2018", thus giving the impression that he is a long common stock purchaser. ECF No. 108 at 30. Rather, his loss calculations show that over two-thirds of his claimed losses are from short positions . . . though without knowing his pre-class position, they too could be short covers.

[14] ECF 47 at 18; ECF 51-4 at 6.

1    Andrew Left is also a lightning rod for Defendants.  Defendants will have unique defenses to
2    Left claims given his public fights with Tesla, and his self-publicized short positions.  Left has also
3    been accused of his own personal problems with filing false reports or statements, and has been,
4    according to some movants, banned by the National Futures Association.

5    More recently, Left also has increased his lightning rod status as pointed out by competing
6    movants.  Just days ago, Left publicly announced he was changing his short position to a long
7    position, helping to drive up the price of Tesla stock.[15]

8    Finally, counsel for the Left Group, Labaton, was one of the co-lead counsel representing
9    Tesla, derivatively on behalf of its shareholders until a couple of weeks ago, when it withdrew to
10   double down on its chances of being appointed counsel in this case.[16]  Having failed to disclose this
11   conflict, while separately filing a suit against Tesla, is reason enough for this the group, led by Left,
12   to be disqualified.

### B.    The Option Trader Movants

Mr. Johnson takes no position on which movant, if any, is the most adequate to represent option purchasers.

#### 1.    Glenn Littleton

Glenn Littleton's losses are almost completely through trading in options.[17]  He claims losses of $3,518,478.68.[18]  While Littleton attacks Tempus (for purposes of representing all investors) for never holding a single long position, Littleton purchased only 100 shares long for a loss of $3,552.  This is less than 1% of his option damages.  Thus, Littleton has little incentive to represent long purchasers, while every incentive to push for the largest theory of damages for options traders.

Littleton has been criticized by other movants for being a net seller and gainer, who profited during the Class Period.[19]  Littleton should respond to this allegation.  If he cannot, he should not be

---

[15] *See* ECF No. 107 at 16:18 - 17:6 and FN 19 at 12:22-26.
[16] *See* ECF No. 115 at 8:25 - 10-9; *see also* Exhibits D-F attached to the Kathrein Reply Decl.
[17] *See* ECF No. 113 at 4:6; *see also* ECF No. 42-2 at Exhibit B (page 2 of 10).
[18] *See* ECF No. 106 at 6:1.
[19] *See* ECF No. 113 at 4:6; *see also* ECF No. 42-2 at Exhibit B (page 2 of 10).

allowed to represent any class, let alone the option trader class. Regardless, the accusation highlights all the more reason options purchasers (and short sellers) need separate representation.

### 2. Bridgestone Investment Corporation Limited

Bridgestone also traded almost exclusively in options claiming a loss of $2,272,864.20 if the class is defined just as purchasers and $3,869,744.20 if the class includes sellers.[20]  Bridgestone has one purchase of 1,000 shares of common stock with losses of $42,883.00 or less than 2% of its total losses.[21]  As does Littleton, Bridgestone thus has little incentive to maximize losses of long purchasers, and every incentive to push for the largest theory of damages for options traders.

Also like Littleton, Bridgestone has also been accused of selling more shares/options than it purchased during the Class Period, and made a profit.[22] Like Littleton, Bridgestone should respond to this allegation, and the allegation highlights all the more reason separate representation is needed for options and shorts.

### C. The Long Investors

No movant, other than Mr. Johnson, is a pure long common stock purchaser.[23]  And only Mr. Johnson provides information regarding his prior position in Tesla stock, where it can be discerned that his stock purchases in the Class Period were not purchases to cover shorts.[24]

### 1. Dany David

Dany David is a long investor, and option trader and a short seller.  He has moved to be lead plaintiff not for one class of investors, but all three classes.  Yet, as a short seller during the first days of the class period, and an options trader, David will be subject him to unique defenses.  David also apparently does not recognize or appreciate the class conflicts noted throughout the briefing.

---

[20] *See* ECF No. 113 at 4:10-11; *see also* ECF No. 52-2 at Exhibit B (page 3 of 2).
[21] *See* ECF No. 113 at 4:10-11; *see also* ECF No. 52-2 at Exhibit B (page 2 of 2).
[22] *See* ECF No. 111 at 2:9-16.
[23] *See* ECF No. 113 at 4:1-19.
[24] *See* Johnson Decl. at ¶¶ 2-5, attached as Exhibit A to the Kathrein Reply Decl.

1       More importantly, his counsel has failed to disclose a serious conflict found by competing

2  movants.[25]  Proposed lead counsel, Robbins Geller, already represents Tesla, derivatively, as co-lead

3  counsel in a conflicting action that has been progressing since 2016.[26]  This is not a past

4  representation, as allowed in some cases.[27]  Robbins representation of Tesla is current and actual.

5  Robbins Geller is supposed to be acting in Tesla's interest.  In that capacity, Robbins is already

6  representing a party against Elon Musk and attempting to collect against Elon Musk.  Not only is

7  Robbins Geller's derivative action in competition with plaintiffs in attempting to recover from Elon

8  Musk in this action, but the Robbins Geller action is attempting to recover for Tesla, whereas this

9  action is attempting to recover for investors in a defined class period.  Elon Musk's wealth is mostly

10 paper and limited.  What kind of horse trading may go on between Robbins Geller and the

11 Defendants to settle this or that action?  Informing Mr. David of the conflict is not sufficient.  The

12 class would need to be informed and consent, and that is not practical.

13      Lieff Cabraser's role is opaque at best.  Mr. David's certification says nothing about two

14 counsel.  More likely, by adding Lieff Cabraser, Robbins Geller hoped to hedge against being

15 disqualified and struck a deal with Lieff Cabraser to give them an out.  Notably, only Robbins Geller

16 has signed the moving, opposition and reply briefs, the declarations and the certificates of service.

17 But, having been caught failing to disclose this conflict upfront—and demonstrating that Mr. David

18 is not really in control of his choice of counsel—Dany David and both of his counsel should be

19 disqualified.

20      In addition, unlike Johnson, little is offered or known about Mr. David.  According to what

21 appears to be his LinkedIn profile, Mr. David lists his profession as "trader" with the Mercantile

22 Exchange.[28]  Mr. David also does not provide his prior trading positions.  Thus, it is possible—

---

[25] *See* ECF No. 106 FN 11 at 10:21 - 22.

[26] See Exhibits D - F attached to the Kathrein Reply Decl.

[27] In *Richman v.Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 478 (S.D.N.Y. 2011) the Court summarily without analysis merely stated a *past* representation is not a conflict. So too, *In re Oracle Corp. Sec. Litig.*, No. C01-0988-MJJ, 2005 U.S. Dist. LEXIS 35723, at *6 (N.D. Cal. Apr. 22, 2005) involved past or "successive" representation. Oracle also involve a representation when the partner was formerly at another firm handling the derivative action.

[28] *See* Exhibit C attached to the Kathrein Reply Decl.

1  indeed likely given that he is a trader—that other of Mr. David's purchases were short covers.
2  Johnson, on the other hand, never sold short, never traded options, and had no pre-existing position
3  in Tesla securities.[29]

4  Finally, Mr. David claims combined long, short and option losses of $439,399.00, compared
5  to Johnson's pure long losses of $333,199.[30]  As previously shown, however, Johnson has 91,846
6  long purchases compared to Mr. David's 25,228 purchases during the class period . . . an
7  "Olson/Lax" factor important when it comes to looking at Dura losses (those that are actually
8  recoverable).[31]  Similarly, Johnson expended $34,429,733.20 to purchase common stock, compared
9  to David's combined stock, option and short expenditures of $8,974,697.88.[32]  Again, by this
10 "Olson/Lax" factor, Johnson has the largest financial interest in this case compared to Dany David.

11 Accordingly, Mr. David neither has the largest financial interest in representing long common
12 stock purchasers, and fails to satisfy the requirements of Rule 23.

### 2.     FNY Investment Advisers, LLC

FNY Investment Advisers had more net purchases and expenditures than any other long common stock investor, but less losses than Mr. Johnson at $304,204.98.[33]  Johnson has losses of $333,199.00.  FNY has been subject to various criticisms concerning its damage calculations.  Some of those accusations—namely the calculation of damages of those who are net sellers in the class period—may in and of themselves call for additional representation of long purchasers.  Regardless, as noted by several movants in the opposition papers, it is often considered appropriate to appoint both an individual and an institution as a lead plaintiff as they often have differing interests. Johnson's counsel has worked well, efficiently and expeditiously with FNY's counsel in the past litigation and would have no objection to FNY's co-appointment.

---

[29] *See* Johnson Decl. ¶¶ 2-4, attached as Exhibit A to the Kathrein Reply Decl.

[30] *Cf*. ECF No. 81-3 at Exhibit C (page 2 of 2) and ECF No. 65-3 at Exhibit C (pages 2 of 3 and 3 of 3).

[31] *Id*.

[32] *Id*.

[33] *Cf*. ECF No. 22-3 at Exhibit A (page 5 of 82 – 23 of 82) and ECF No. 65-3 at Exhibit C (pages 2 of 3 - 3 of 3).

### III.   CONCLUSION

For the reasons stated above, this highly unusual case calls for a lead plaintiff appointment and structure where more than one class of investors is represented.  The fight already simmering amongst the differing investor types or class movants over damages, standing etc. is not something that can be easily resolved at this stage.

James Johnson is the only movant who, along with his counsel, has not been attacked. Johnson has the largest uncompromised financial interest in this litigation for recovering on behalf of long common stock purchasers.  His counsel, Hagens Berman Sobol Shapiro LLP, is not compromised.  Clearly Johnson and Hagens Bermen would properly be appointed to the position of lead plaintiff, with a properly composed executive committee to represent the damage and Rule 23 interests of the other investor classes. Alternatively, Johnson respectfully requests that the Court: (1) appoint him as Lead Plaintiff for the class of long common stock investors; and (2) approve his selection of Hagens Berman Sobol Shapiro LLP as Lead Counsel for long common stock purchasers.

Dated: October 30, 2018

Respectfully submitted,

*/s/ Reed R.Kathrein*
Reed R. Kathrein (139304)
Michael W. Stocker (179083)
Kristen McCulloch (177558)
Danielle Smith (291237)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
mikes@hbsslaw.com
kristenm@hbsslaw.com
danielles@hbsslaw.com

*Attorneys for Proposed Lead Plaintiff James Johnson*