1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6

7    KALMAN ISAACS, et al.,                    Case No. 18-cv-04865-EMC

8              Plaintiffs,                     **RELATED TO**

9         v.                                   Case No. 18-cv-04876-EMC
                                               Case No. 18-cv-04912-EMC
10   ELON MUSK, et al.,                        Case No. 18-cv-04939-EMC
                                               Case No. 18-cv-04948-EMC
11             Defendants.                     Case No. 18-cv-05258-EMC
                                               Case No. 18-cv-05463-EMC
12                                             Case No. 18-cv-05470-EMC
                                               Case No. 18-cv-05899-EMC
13

14

15                                             **ORDER (1) GRANTING PLAINTIFFS'
                                               MOTIONS TO CONSOLIDATE; AND**
16                                             **(2) GRANTING PLAINTIFF
                                               LITTLETON'S MOTION FOR**
17                                             **APPOINTMENT AS LEAD PLAINTIFF
                                               AND APPROVING PLAINTIFF**
18                                             **LITTLETON'S SELECTION OF LEAD
                                               COUNSEL**
19
                                               Docket Nos. 40-41, 45-47, 64, 71, 74, 80
20

21

22        The above-referenced cases are securities fraud class actions. They concern allegedly false

23   statements made by Tesla's CEO Elon Musk that he had secured funding to take the company

24   private. According to plaintiffs, Mr. Musk's statements led to a trading frenzy that drove up the

25   value of Tesla's shares.

26        Currently pending before the Court are motions to consolidate and competing motions to

27   appoint Lead Plaintiff and approve selection of Lead Counsel. Originally, nine competing

28   motions were filed but two of the motions have since been withdrawn or were effectively

1   withdrawn.  This still leaves, however, seven competing motions.

2       Having considered the parties' briefs and accompanying submissions, as well as the oral

3   argument of counsel, the Court hereby **GRANTS** the requests to consolidate.  The Court further

4   **GRANTS** Glen Littleton's motion for appointment as Lead Plaintiff and approves his selection of

5   Lead Counsel.  All other motions to appoint are **DENIED**.

6                           **I.      MOTIONS TO CONSOLIDATE**

7       The Private Securities Litigation Reform Act ("PSLRA") provides that a decision on

8   consolidation should be made before a Lead Plaintiff is selected.  *See* 15 U.S.C. § 78u-4(3)(B)(ii)

9   ("If more than one action on behalf of a class asserting substantially the same claim or claims

10  arising under this title [15 U.S.C. §§ 78a *et seq.*] has been filed, and any party has sought to

11  consolidate those actions for pretrial purposes or for trial, the court shall not make the

12  determination required by clause (i) [*i.e.*, selection of lead plaintiff] until after the decision on the

13  motion to consolidate is rendered.").

14      Federal Rule of Civil Procedure 42 governs consolidation.  The rule provides that, if

15  actions before a court "involve a common question of law or fact," then the court may

16              (1)     join for hearing or trial any or all matters at issue in the
                        actions;
17
18              (2)     consolidate the actions; or

19              (3)     issue any other orders to avoid unnecessary cost or delay.

20  Fed. R. Civ. P. 42(a).

21      Here, there are both common questions of law and fact in the various related cases.  All of

22  them concern the allegedly false statement that Mr. Musk made about securing funding to take

23  Tesla private.  Moreover, no party (including Defendants) has opposed consolidation.

24  Accordingly, the Court grants the consolidation requests.  The requisites of Rule 42 are satisfied.

25             **II.     COMPETING MOTIONS TO APPOINT LEAD PLAINTIFF**

26  A.      Early Notice to Class Members

27      Before addressing the competing motions to appoint Lead Plaintiff, the Court addresses

28  first the PSLRA's requirement that early notice be provided to class members.  *See* 15 U.S.C. §

2

1   78u-4(3)(A).

2          In the instant actions, early notice to the class members has been sufficiently provided.

3   Counsel in the first-filed suit (*Isaacs*, No. C-18-4865) had a notice published in a wire service (PR

4   Newswire). *See* Docket No. 71-2 (King Decl., Ex. A) (PR Newswire notice). The notice was

5   published within 20 days after the filing of the complaint. In fact, the complaint was filed and the

6   notice published on the same day – *i.e.*, August 10, 2018. The notice advised the putative class

7   about the pendency of the lawsuit and the nature of the claims (*i.e.*, that Tesla's Chairman and

8   CEO Elon Musk issued "false and misleading statements regarding Musk taking the Company

9   private"). Docket No. 71-2 (King Decl., Ex. A). While the notice did not identify the putative

10  class period per se, it identified the date Mr. Musk issued the allegedly false statement, *i.e.*,

11  August 7, 2018. Finally, the notice advised the putative class that, "[i]f you wish to serve as lead

12  plaintiff for the Class, you must file a motion with the Court no later than October 9, 2018, which

13  is the first business day on which the District Court . . . is open that is 60 days after the publication

14  date of August 10, 2018." Docket No. 71-2 (King Decl., Ex. A).

15  B.      Appointment of Lead Plaintiff

16         The parties competing for the position of Lead Plaintiff are identified below. They are

17  ordered from greatest to smallest total asserted loss. *See* 15 U.S.C. § 78u-4(3)(B)(iiii) (providing

18  that "the court shall adopt a presumption that the most adequate plaintiff . . . is the person or group

19  of persons that . . . in the determination of the court, has the largest financial interest in the relief

20  sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of

21  Civil Procedure").

22         (1) Tempus International Fund and Opportunity Unique Fund Inc.

23         (2) Tesla Investor Group (five persons/entities).[1]

24         (3) Bridgestone Investment Corporation Ltd.

25         (4) Glen Littleton.

26

27  _____

28  [1] The persons/entities making up the group are as follows: (1) Andrew E. Left; (2) PROtecto
Informatikai Szolgaltato Korlatolt Felelossegu Tarsasag; (3) Thierry Boutin; (4) Dr. Abrar Shirazi;
and (5) Vilas Capital Management, LLC.

3

1    (5) Dany David.

2    (6) James Johnson.

3    (7) FNY Investment Advisers, LLC.

4    1.    <u>Tempus International Fund and Opportunity Unique Fund Inc.</u>

5    Tempus International Fund and Opportunity Unique Fund Inc. ("Tempus/OUF") claims

6    that its total loss is more than $15.8 million.  The Court declines to appoint Tempus/OUF as Lead

7    Plaintiff for several reasons.

8    First, Tempus/OUF has overstated its loss.  Tempus/OUF calculated its loss – as a short

9    seller – based on the difference between the proceeds from the short sale and the price to cover the

10   short sale.  But the damage to Tempus/OUF should likely be the artificial inflation of the Tesla

11   common stock only due to the asserted fraud.  Any rise in Tesla stock prices (and resulting loss on

12   short sale) prior to the fraud may not be causally related to the fraud.  It appears that, just before

13   Mr. Musk's tweet, Tesla's stock price was already $356.82; therefore, "Tempus/OUF damages per

14   share, based on stock inflation, arguably should not be more than $19.13 per share ($375.9503 –

15   $356.82) for total damages of around $3.386 million (177,022 [shares] x $19.13)."  Docket No.

16   113 (Opp'n at 5).

17   Second, Tempus/OUF will likely be subject to unique defenses – both because of OUF's

18   history and the history of Tempus/OUF's founder, Daniel Dantas – that may well become the

19   focus of the litigation to the detriment of the class.

20   Finally, the Court has concerns regarding the adequacy or typicality of Tempus/OUF

21   because it is a short seller only (*i.e.*, it did not also have a long position in common stock and it did

22   not also trade in options)[2] and because its cover purchases for its short sales took place on one date

23   only – *i.e.*, August 7, 2018 – while the class period extends to at least August 17, 2018.  While

24   events after August 7, 2018, including partial disclosures, may affect the damages claims of, *e.g.*,

25

26   _____

27   [2] At the hearing, some moving parties argued that there are clear conflicts of interest among the
different types of investors.  Other moving parties argued that there are no real conflicts, at least as
to liability, but admitted that there may be conflicts as to damages if there is a limited fund

28   available (a prospect that is plausible whether or not the case settles).  The Court must give due
consideration to the potential for conflict.

4

1   long investors, they may be irrelevant to Tempus/OUF's damages claim.

2           2.      Tesla Investor Group

3           Tesla Investor Group ("TIG") claims a total loss of more than $4.4 million.  The Court

4   declines to appoint TIG for the following reasons.

5           First, even though that more than one person/entity (*i.e.*, a group) can be appointed a lead

6   plaintiff, and a pre-litigation relationship amongst group members is not required, *see, e.g.*, *In re*

7   *Versata, Inc.*, No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270, at *19-20 (N.D. Cal. Aug. 17,

8   2001), courts have also been skeptical of "artificial" groups.  For example, in *In re Network*

9   *Associates Inc. Securities Litigation*, 76 F. Supp. 2d 1017 (N.D. Cal. 1999), Judge Alsup held that

10  a "'group' of unrelated investors with no decisionmaking structure and no connection other than

11  counsel" could not qualify as a candidate for lead plaintiff.  *Id.* at 1018; *see also Eichenholtz v.*

12  *Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *25 (N.D. Cal.

13  Aug. 22, 2008) (stating that "ignoring the basis of the group formation and appointing a group of

14  unrelated investors undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven

15  litigation").

16          In the instant case, the "joint declaration" submitted by the TIG members indicates that

17  TIG is a similar artificial group.  The declaration reflects that the TIG members are unrelated and

18  were introduced to one another by their lawyers (even if at their request), *see also* Docket No. 111

19  (David Opp'n at 15) (noting that the members are "strewn across the globe – Hungary, Europe and

20  the Middle East, Chicago, and California"), and, although the members suggest that they will be

21  able to work together well, efficiently, and so forth, there is nothing concrete to back that up.  *See,*

22  *e.g.*, Docket No. 51-4 (Wagstaffe Decl., Ex. D) (Joint Decl. ¶ 7) (asserting that "[w]e are a small,

23  cohesive group" without explaining what makes the group "cohesive").  It appears that the

24  members participated in only one joint call prior to filing the motion for appointment.  *See* Docket

25  No. 51-4 (Wagstaffe Decl., Ex. D) (Joint Decl. ¶ 10) (asserting that, "[a]s part of our efforts to

26  explore working together, on October 7, 2018, we participated in a joint conference call").  Also,

27  the decisionmaking structure does not appear to be robust.  *See* Docket No. 51-4 (Wagstaffe Decl.,

28  Ex. D) (Joint Decl. ¶¶ 11, 15) (testifying that "we will exercise joint decision-making and work

5

1  together in this litigation to actively monitor the activities of counsel"; that "we do not anticipate

2  that any disagreements between us will arise and agree to make all efforts, in good faith, to reach

3  consensus with respect to all litigation decisions"; and that, if there are disagreements, "we agree

4  to put the decision at issue to a vote and to take the course of action favored by the majority of our

5  group's members").

6      Second, TIG will likely be subject to unique defenses – both because of Andrew Left's

7  history and Thierry Boutin's history[3] – that may well become the focus of the litigation to the

8  detriment of the class.  The Court acknowledges TIG's suggestion that the group may be broken

9  apart if the Court has concerns about any specific member.  But that suggests that the group is

10  artificial and should not have been brought in the first place.

11      3.      Bridgestone Investment Corporation, Ltd.

12      Bridgestone Investment Corporation, Ltd. ("Bridgestone") maintains that its total asserted

13  loss is more than $3.8 million.  The Court declines to appoint Bridgestone as Lead Plaintiff for the

14  following reasons.

15      First, the Court has concerns regarding the adequacy or typicality of Bridgestone.  As

16  indicated above, the plaintiffs largely agree that persons/entities in the class should include those

17  who took long positions as well as those who took short positions.  Those who took long positions

18  were injured when, *e.g.*, they purchased Tesla securities after the alleged fraud (*i.e.*, when the price

19  of the securities was artificially inflated) and then sold after the truth began to be disclosed.  Those

20  who took short positions were injured when, *e.g.*, they covered their short positions by purchasing

21  Tesla securities after the alleged fraud (again, when the price of the securities was artificially

22  inflated).  Bridgestone held long positions – both in common stock and options – but does not

23  appear to have held any short positions.

24      Second, the Court has some concern as to whether Bridgestone may have overstated its

25  loss – or at least questions about its loss could well become a unique defense that would

26  preoccupy it.  As explained by Glen Littleton, one of the other parties seeking appointment,

27

28

---

[3] Mr. Left's history will certainly be a focus given that he is TIG's "spokesperson."

6

a substantial part of Bridgestone's total losses of $3,869,744.20 stem primarily from the $1,641,391 in losses it incurred from buying Tesla January 2019 $450 call options [on August 7, 2018]. [Dkt.] No. 52-5. These transactions, however, subject Bridgestone to a unique defense based on this class definition. Specifically, this loss chart (Dkt. 52-5) is proof that Bridgestone purchased the January 2019 $450 call options by not relying upon the first materially false and/or misleading statement issued by Musk on August 7, 2018 at 12:48 p.m. EDT stating that "Am considering taking Tesla private at $420. Funding secured." *See* Dkt. No. 46, at 3. If Bridgestone was relying upon the content of Musk's 12:48 p.m. tweet, it would not have purchased Tesla January 2019 $450 call option contracts because Musk's tweet was clear that he was only considering to take Tesla private at ***$420*** per share. It simply makes no sense that Bridgestone would have invested $2,156,496 to buy January 2019 $450 call option contracts relying on Musk's 12:48 p.m. tweet when they would expire worthless when Musk took Tesla private at $420. In fact, Bridgestone must have expected that Tesla's stock price would surpass $467.85 per share (the exercise price of $450 plus the highest premium paid of $17.85 for these call option contracts).

Docket No. 118 (Reply at 6) (emphasis in original). This is not to say that a causally related loss based on Bridgestone's purchase of the January 2019 call options cannot be proven; but it does make a substantial portion of its loss assertion uncertain for purposes of the pending motions.

4. Glen Littleton

Mr. Littleton claims that his total loss is approximately $3.5 million. The Court finds that Mr. Littleton is the most adequate plaintiff for several reasons.

First, Mr. Littleton has the largest clear financial interest of the remaining moving parties. This would be true even if the Court were to credit TIG's argument that Mr. Littleton has overstated his financial loss. Moreover, Mr. Littleton has adequately addressed Mr. David's argument that Mr. Littleton is a net seller/net gainer – *i.e.*, that such is not the case when options and short positions are taken into account. *See* Docket No. 118 (Reply at 9).

Second, Mr. Littleton held interests that cover most of the persons/entities likely to be in the class – *i.e.*, long positions in common stock, long positions in options, and short positions in options – and thus can most adequately represent the class (in light of the differing damages analysis that might apply to each class of investors). Although Mr. Littleton does not appear to have held short positions in common stock, short positions on options appear largely aligned with short positions in common stock. In any event, the only other moving parties who did invest in short positions in stock are Tempus/OUF and Dany David, and, as discussed above, the Court

7

1    declines to appoint Tempus/OUF. As for Mr. David, his financial interest is far smaller than Mr.

2    Littleton's. Some moving parties have criticized Mr. Littleton because his long position in

3    common stock (as opposed to options) resulted in a relatively small loss compared to others.

4    While this is true, Mr. Littleton sustained a significant loss from his long position in options; the

5    interests of those who held long positions in options and those who held long positions in common

6    stock are sufficiently similar to render his representation adequate as to both.

7         The Court need not address the remaining moving parties based on its determination that

8    Mr. Littleton is the most adequate plaintiff. His loss is substantially greater than those of the

9    remaining moving parties.[4]

10        Accordingly, Mr. Littleton is hereby appointed Lead Plaintiff.

11   C.   Selection of Lead Counsel

12        "The most adequate plaintiff shall, subject to the approval of the court, select and retain

13   counsel to represent the class." 15 U.S.C. § 78u-4(3)(B)(v). Mr. Littleton has selected Levi &

14   Korsinsky, LLP as his counsel. The firm is experienced in securities fraud litigation and has been

15   appointed Lead Counsel in other securities class actions. The Court approves Mr. Littleton's

16   selection of Levi & Korsinsky. Although Levi & Korsinsky did not identify the specific attorneys

17   who will be litigating the case, the Court understands that there will be, at the very least,

18   significant involvement on the part of Adam McCall and Adam Apton (the attorneys named on the

19   briefs) and Nicholas Porritt (the attorney who appeared at the hearing). These attorneys and any

20   others who will work on the litigation, as well as those who will work under any attorney's

21   supervision, are advised that the Court expects the case to be litigated efficiently and that they

22   should comply with the guidelines the Court set forth in *In re Carrier IQ*, Case No. 12-md-2330

23   EMC (N.D. Cal.) (Docket Nos. 108, 110) (stipulation and order).

24

25   _____

     [4] Because the proposed Lead Plaintiffs largely agree that class members should include those with

26   long positions in common stock, those with short positions in common stock, and options traders,
     the Court considers the asserted loss in all of these categories. The Court declines to create

27   subclasses to cover the different categories (*i.e.*, have a separate representative for each category)
     because Mr. Littleton essentially covers the different categories and, at least at this juncture, there

28   is an insufficient showing that there is such an inherent conflict among the different kinds of
     investors that separate representation is necessary prior to class certification.

1

### III.     CONCLUSION

2     For the foregoing reasons, the Court orders the Clerk of Court to consolidate the above

3   actions.  All future filings shall be made in No. C-18-4865 EMC and shall bear the caption *In re*

4   *Tesla Inc. Securities Litigation*.

5     Mr. Littleton is ordered to file a consolidated amended complaint within forty-five (45)

6   days of this order.

7     This order disposes of Docket Nos. 40, 41, 45, 46, 47, 65, 71, 74, and 80.

8

9     **IT IS SO ORDERED**.

10

11   Dated: November 27, 2018

12

13   _____

14   EDWARD M. CHEN
     United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28