Ramzi Abadou (SBN 222567)
KAHN SWICK & FOTI, LLP
912 Cole Street, # 251
San Francisco, California 94117
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

*Counsel for Movant Bridgestone
Investment Corporation Limited
and Proposed Lead Counsel for the Class*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE TESLA INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>Judge: Hon. Edward M. Chen<br>Date: N/A<br>Time: N/A<br>Courtroom: Courtroom 5 – 17th Floor |

**BRIDGESTONE INVESTMENT CORPORATION LIMITED'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF NOVEMBER 27, 2018 ORDER DENYNG ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**NOTICE OF MOTION AND MOTION**

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that Bridgestone Investment Corporation Limited ("Bridgestone") shall and hereby does move, pursuant Northern District of California Civil Local Rule 7-9, for an order granting it leave to file a Motion for Reconsideration of the Court's November 27, 2018 Order Granting Plaintiff Littleton's Motion for Appointment as Lead Plaintiff (ECF No. 152) (the "Order"), attached to the Declaration of Ramzi Abadou in Support of Bridgestone Investment Corporation Limited's Motion for Leave to File Motion of Reconsideration of November 27, 2018 Order ("Abadou Decl.") as Exhibit A. This Motion for Leave is based upon this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Abadou Decl., filed herewith, and such other written or oral argument as may be presented.

Bridgestone seeks leave for two reasons that are both grounded in the PSRLA and *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002).  ***First***, while the PSLRA "provides in categorical terms that the only basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy," the Court instead expressly sought to appoint a lead plaintiff candidate that was both short and long in investing in Tesla securities.  *Cavanaugh*, 306 F.3d at 732; *compare also* Order at 7 ("[Littleton] held interests that cover ***most*** of the persons/entities likely to be in the class — *i.e.*, long positions in common stock, long positions in options, and short positions in options — and ***thus*** can ***most adequately*** represent the class") with *Cavanaugh*, 306 F.3d at 729 ("While the words 'most capable' seem to suggest that the district court will engage in a wide-ranging comparison to determine which plaintiff is best suited to represent the class, the statute defines the term much more narrowly: The 'most capable' plaintiff - and hence the lead plaintiff - is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23.").[1]

---

[1] Under *Cavanaugh*, financial interest clearly means "losses" suffered. 306 F.3d at 729 ("In step two, the district court must consider the ***losses*** allegedly suffered by the various plaintiffs…"); *id.* at 732 ("So long as the plaintiff with the largest ***losses*** satisfies the typicality and adequacy

Under the PSLRA, however, that "the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence." *Id*. "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Id*.; *see also In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) ("The lead plaintiff determination does not depend on the Court's judgment of which party would be best lead plaintiff for the class, but rather which candidate fulfils the requirements of the Act."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) (lead plaintiff inquiry "is not a relative one.").

The Court's reasoning for finding a lead plaintiff that was both short and long was based on its concerns about conflicts. The Order noted, for instance, that "some moving parties argued that there are clear conflicts of interest among the different types of investors" and suggested that most (if not all) parties "admitted that there may be conflicts as to damages if there is a limited fund available (a prospect that is plausible whether or not the case settles)." Order at 4, n. 2. Thus, the Court held that it "must give due consideration to the potential for conflict." *Id.* This potential was cited as one of the reasons that the court had "concerns regarding the adequacy and typicality of Tempus/OUF because it is a short seller ***only***" and Bridgestone because it did "not appear to have held ***any*** short positions." Order at 4, 6 (emphasis added). While Bridgestone is aware of cases that hold that exclusive short sellers are atypical, it is aware of none holding that long investors with the largest loss should not be appointed as lead plaintiffs. *See* §II.B, *infra*.

Further, the limited fund argument raised by counsel for Mr. Johnson at oral argument, which underscored the Court's conflict reasoning and that it found plausible, is nonexistent. Elon Musk, the primary liable defendant here, has a net worth of approximately ***$23 billion***, and was ranked No. 24 on the *Forbes* list of richest persons on the planet in 2018. *See* Abadou Decl., Ex. B; *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011) ("These alleged conflicts are nothing more

---

requirements …"). All emphasis added and internal citations omitted herein.

CASE NO. 3:18-CV-04865-EMC
NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION
OF NOVEMBER 27, 2018 ORDER

2

than speculation.").

***Second***, in accepting the argument Littleton first raised for the first time on reply to rebut the presumption in Bridgestone's favor, the Court adopted Littleton's speculation about Bridgestone's trading losses. *See Duarte v. Freeland*, 2008 U.S. Dist. LEXIS 6147, at *4 (N.D. Cal. 2008) ("The Court shall not consider [ ] arguments as they were not raised until the reply brief.") (Chen, J.). Under the PSLRA and *Cavanaugh*, however, the presumption in Bridgestone's favor could "be overcome only upon ***proof*** that the presumptively most adequate plaintiff '***will not*** fairly and adequately protect the interests of the class' or "is subject to unique defenses that render such plaintiff ***incapable*** of adequately representing the class." *Cavanaugh*, 306 F.3d at 741. Here, Littleton's counsel conceded at oral argument "that was really just the question we're raising." *See* Transcript of Proceedings, November 15, 2018 ("Hrg. Tr.") at 54:24. The Court appears to have adopted that speculation about Bridgestone, reasoning, alternatively, that: "the Court has some concern" (Order at 6); "or at least questions" (*id*.); that "could well become" (*id*.); relevant and making Bridgestone's "loss assertion uncertain" (*id*. at 7.). There is simply no "proof" that Bridgestone "will not" adequately represent the class or that it is "incapable" of doing so.[2]

"[O]nce the presumption is triggered, [however,] the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can ***prove*** that the presumptive lead plaintiff will not do a fair and adequate job." *Andrade v. Am. Apparel, Inc.*, 2011 U.S. Dist. LEXIS 79795, at *26-27 (C.D. Cal. 2011). Here, "[Littleton] has not offered sufficient proof beyond mere speculation, that [Bridgestone] cannot fairly and adequately protect the interests of the class." *In re Diamond Foods, Inc.*, 281 F.R.D. 405, 411-412 (N.D. Cal. 2012) (Alsup, J.). Indeed, as set forth herein, the ***same*** speculative argument that Littleton raised against Bridgestone applies to Littleton's ***own*** losses as he, too, purchased call options with $450 (and higher) strike prices. *See* §II.C, *infra*.

---

[2] To the contrary, Bridgestone's representative – Jian Liu – was the only proposed lead plaintiff who attended the hearing in support of his motion. *See* Hr. Tr. 5:4-5.

CASE NO. 3:18-CV-04865-EMC
NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF NOVEMBER 27, 2018 ORDER

3

In fact, the Court overlooked that Littleton claimed losses on call options with strikes high as **$500.00**, purchased well **before** Defendant Musk's August 7, 2018 tweet. For instance, on June 29, 2018, Littleton purchased "to open" call options listed in his chart as "C TSLA JAN **500**" and claimed losses on those transactions. *See* §II.C, *infra*. When one accounts for those purportedly "inflated" losses, Littleton's loss remains smaller than Bridgestone's. *Id*. While Mr. Littleton could have and should have raised his specious reply argument against Bridgestone on opposition, there, he fairly and justifiably conceded that Bridgestone's loss of $3.9 million was larger than his $3.5 million claimed loss. *See* ECF No. 106 at 9. That is precisely why courts, including this Court, hold that arguments raised for the first time on reply should be either ignored or severely discounted, as they are usually raised because they are weak and/or to sandbag, as here, an adversary who justifiably relied on this Court's prior precedents regarding new arguments made on reply. *See Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 917 (N.D. Cal. 2011); *Finkelstein v. San Mateo Cty. Dist. Attorney's Office*, 2018 U.S. Dist. LEXIS 45816, at *11 (N.D. Cal. 2018) ("Perhaps recognizing the weakness of their position, the San Mateo Defendants made a new argument in their reply brief …") (Chen, J.).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Bridgestone respectfully requests, pursuant to Civil L.R. 7-9, that the Court grant it leave to file a motion for reconsideration of the November 27, 2018 Order appointing Glen Littleton as Lead Plaintiff in the above-captioned action. *See* ECF No. 152. Leave should be granted because the Order erroneously deviated from the requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii), as applied by the Ninth Circuit in *Cavanaugh*, in denying Bridgestone's motion for appointment as lead plaintiff.

### II.   ARGUMENT

#### A. Standard for Leave to File Motion for Reconsideration Under Civil L.R. 7-9

This District permits a party to seek reconsideration of an interlocutory order of the Court. Civil L.R. 7-9. The rule requires, in pertinent part, a showing that the Court manifestly failed to

consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order. Civil L.R. 7-9(b)(3). "Whether to grant leave to file under Rule 7-9 is committed to the Court's sound discretion." *Van v. Language Line Servs.*, 2015 U.S. Dist. LEXIS 167773, at *11 (N.D. Cal. 2015).  Courts in this district have granted leave to file for reconsideration where litigants have shown that the court previously failed to "adequately credit" or "consider" their allegations. *Id.* at *16; *see also Westley v. Oclaro, Inc.*, 3:11-cv-02448-EMC, ECF No. 107 (N.D. Cal. Jan. 10, 2013) (Chen, J.).

### B. The Court Erred Under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)

The PSLRA establishes that the presumptive lead plaintiff is "the one who 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Cavanaugh*, 306 F.3d at 730 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). "Once that comparison is made and the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements." *Id.* at 732. "[W]hen the district court makes its initial determination, it must rely on the presumptive lead plaintiff's complaint and sworn certification; there is no adversary process to test the substance of those claims." *Id.* at 730 (citing *Cendant*, 264 F.3d at 264). *Id.* at 409.  Like the Ninth Circuit, other courts of appeal have similarly determined that the lead plaintiff determination does not depend on the Court's judgment of which party would be best lead plaintiff for the class, but rather which candidate fulfills the requirements of the Act. *See Cendant*, 264 F.3d at 268 (finding that the lead plaintiff inquiry "is not a relative one."); *Cavanaugh*, 306 F.3d at 732 (same).

In appointing Littleton, the Court found that he "can most adequately represent the class" because he "held interests ***that cover most*** of the persons/entities likely to be in the class – i.e., long positions in common stock, long positions in options, and short positions in options." Order at 7. Relatedly, in declining to appoint Bridgestone, the Court noted that it "had concerns regarding adequacy or typicality of Bridgestone" because Bridgestone did not hold any short positions. Order

at 6. The Court took this unprecedented approach "in light of the differing damages analysis that might apply to each class of investors." Order at 7. But, by applying a metric that measured the adequacy of putative lead plaintiffs by portfolio diversity, the Court erred. The statute "provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." *Cavanaugh*, 306 F.3d at 732.[3]

The Order and the hearing record establish that the Court sought to find a lead plaintiff who somehow represented the largest amount of class members as opposed to, as required, the "largest financial interest in the relief sought by the class."[4] *See* Order at 4 ("it is a short seller only"); *id*. at 6 ("does not appear to have held any short positions"); Hrg. Tr. at 6:11-25 (equating diversity of investments with financial interest). The Court's basis for prioritizing portfolio diversity appears to be rooted in its concern about the potential for conflicts of interests to emerge between holders of different securities. Again, the Court also "had concerns regarding the adequacy and typicality of Bridgestone" because it did "appear to have held any short positions." *Id.* at 6.

But, as explained above, there is no "limited fund" or other unique conflict here. Regardless, a presumptive lead plaintiff like Bridgestone has a responsibility as a class fiduciary to add named plaintiffs or class representatives to address any such issues. *See Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1150-51 (N.D. Cal. 1999); *Foley,* 272 F.R.D. at 133 ("These alleged conflicts are nothing more than speculation."). If appointed, Bridgestone must exercise its "responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have distinct interests or claims." *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 204 (S.D.N.Y. 2003).

---

[3] Were the Court to review Littleton's opening memorandum, it would find that he (as did the other movants) simply asserted his claimed loss. *See* ECF No. 41 at 14 ("Movant suffered a substantial loss of approximately $3,518,478.68."). Littleton only pointed out his different investment strategies upon realizing his original position would preclude appointment, as he did not possess the largest loss.

[4] *See* n. 1, *supra*.

Further, while Bridgestone is not aware of a single court that has ever held under the PSLRA that a long only investor was inadequate or atypical in a securities class action such as this (for that reason alone), courts have routinely found that short only sellers are inadequate and atypical. *See e.g. In re Critical Path*, 156 F. Supp. 2d 1102, 1110 (N.D. Cal. 2001). Short-sellers have been found inadequate because they "raise the question of whether the seller was actually relying on the market price" when they opened their short position before the class period. *Id*. While this same logic **might** apply to those who **only** opened long positions **prior to the class period**, it does not apply to movants like Bridgestone who opened long positions after – and in reliance on – Musk's misleading statements. Thus, it was error for the Court to reject Bridgestone on this basis.

To the extent that the Court based its finding of inadequacy based on a potential conflict of interest in estimating damages, this is clear error in light of the well-established principle that "courts have generally declined to consider conflicts, particularly as they regard damages, sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975); *see also Luna v. Marvell Tech. Grp., Ltd*., 2017 U.S. Dist. LEXIS 178674, at *14 (N.D. Cal. 2017) ("Courts have noted that 'equity conflict' is '**present in almost every large, complex securities case**' and would therefore be an inappropriate basis for denial of class certification.") (Alsup, J.). Since potential conflicts for damages cannot be used to deny adequacy at the class certification stage, it is illogical to invoke them when evaluating a lead plaintiff.  Thus, while Littleton's possession of short and long interests in Tesla might make him representative of different types of investors, it does not mean he can "most adequately" represent the class or suffered the largest loss.

Finally, the precedent the Court sets here is likely to be abused.  Every securities fraud class action has class members who are long, short, purchased options and/or stock. *See Luna*, 2017 U.S. Dist. LEXIS 178674, at *14 ("'equity conflict' is *'present in almost every large, complex securities case'*"). There is nothing exceptional about this case as it, too, has such investors.  A rule that a court must appoint an investor as lead plaintiff who had as many possible different investment strategies

as possible will turn the PSLRA's lead plaintiff provisions on their head – where it is no longer the largest financial interest but the ***broadest*** financial interest that matters.[5]  That is not the law.  Nor should it be.  Indeed, by appointing Littleton as lead plaintiff, the Court appointed an atypical investor who used every investment strategy imaginable.  If the Court has concerns about conflicts, Littleton is the singular embodiment of a conflict of interest.  *See* Order at n. 2, 4.

At class certification, Defendants will easily demonstrate Littleton's inherent conflicts at his class certification deposition as follows:

> TESLA: Were you long on your investments in Tesla securities, Mr. Littleton?
>
> LITTLETON: Yes.
>
> TESLA: Were you short on your investments in Tesla securities, Mr. Littleton?
>
> LITTLETON: Yes.
>
> TESLA: Can you help us reconcile those conflicting positions, sir?

The honest answer is that Littleton did both – he "straddled" – a strategy, like First New York's, that did not rely on market integrity at all in making his investment decisions.  "This strategy allows the investor to make a profit ***regardless*** of whether the price of the security goes up or down, assuming the change in the underlying stock price is significant enough to move past either of the strike prices and offset the cost of the premiums."[6] *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436-37 (E.D. Va. 2000) ("Evidence presented ... confirmed that Wolverine Trading was an atypical investor that engages in transactions ***far beyond the scope of what a typical investor contemplates***.").

### C.  The Court Erred Under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)

The PSLRA mandates that the lead plaintiff presumption may be rebutted only upon proof

---

[5] That is precisely why Dany David filed his motion for reconsideration despite his vastly smaller loss. *See* Order at 7-8 (noting with favor that Mr. David was one of the "only other moving parties who did invest in short positions in stock" despite Mr. David's smaller loss); *see also Cavanaugh*, 306 F.3d at 732 (the PSLRA does not "authorize the district judge to examine the relative merits of plaintiffs seeking lead status on a round-robin basis.").

[6] Straddle https://www.investopedia.com/terms/s/straddle.asp#ixzz5YTIYnPR6

CASE NO. 3:18-CV-04865-EMC
NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF NOVEMBER 27, 2018 ORDER

8

that a presumptive plaintiff either "***will not*** fairly and adequately protect the interests of the class;" or "is subject to unique defenses that render such plaintiff ***incapable*** of adequately representing the class."[7] 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Not only did Littleton offer no proof that the alleged "unique defense" would apply to Bridgestone, Littleton failed to advise the Court that he was subject to it.  Instead, Littleton suggested for the first time on reply that Bridgestone's opening purchase of call options with a strike price greater than $420: (i) could not have relied on Musk's tweet, possibly exposing Bridgestone to a unique defense; and (ii) potentially overstated Bridgestone's losses by $1,641,391.  Order at 6-7, quoting ECF No. 118.  This argument lacks merit.

In fact, Mr. Littleton purchased to open call options with a strike price ***greater than $420.00***.  Littleton claimed $361,790.00 in losses from his August 3, 2018 purchase of call options marked "C TLSA JUN 450."  ECF No. 42-2, page 6.  From December 19, 2017 through August 3, 2018 he also purchased "to open" C TSLA JAN 450.  *Id*. at 6-7.  For those transactions, he claims losses of $696,502.20.  *Id*. at 7.  Finally, on June 29, 2018 Littleton also purchased "to open" "C TSLA JAN ***500***", selling to close those positions for an overall loss of $549,940.00.[8]  All these call options have strike prices exceeding Musk's tweet price of $420.  Applying Littleton's reply argument to his own transactions, these strike prices suggest he did not rely upon Musk's tweet at the time of those purchases.  Also, since the purchase dates for those options all precede Musk's August 7, 2018 tweet, Littleton conclusively did not rely on Musk's tweet when buying.

Accordingly, when it adopted Littleton's new reply argument, the Order did not likewise consider its impact on Littleton's own call options transactions.  *Cavanaugh*, 306 F.3d at 730 n.4 (district courts should use "accounting methods that are both rational and ***consistently applied***").

---

[7] By contrast, "[a]t step two of the process, when the district court makes its initial determination, it must rely on the presumptive lead plaintiff's complaint and sworn certification; there is no adversary process to test the substance of those claims. At the third stage, the process turns adversarial and other plaintiffs may present ***evidence*** that disputes the lead plaintiff's *prima facie* showing of typicality and adequacy." *Cavanaugh*, 306 F.3d at 730.

[8] Combined, Littleton claimed $1,608,232.20 in losses related to these call options. *See* Abadou Decl., Ex. C, with the subject trades highlighted in yellow.

1  Had it done so, Littleton should have been precluded from claiming $1,608,232.20 in losses arising
2  from his opening purchases of call options bearing a strike price greater than $420. The chart below
3  demonstrates the losses originally claimed by Bridgestone and Littleton and the impact Littleton's
4  reply argument has on both, when it is consistently applied:

|  | Bridgestone (ECF No. 52-5) | Littleton (ECF No. 42-2) | Largest Financial Interest |
|---|---|---|---|
| **Originally Claimed Amount in Loss Charts:**[9] | $3,869,744.20 | $3,518,478.68 | *Bridgestone* |
| Minus: Amount Suggested by Littleton's "Strike Price" Argument | -$1,641,391.00 | -$1,608,232.20 | |
| **Yields: Net Amount** | **$2,228,353.20** | **$1,910,246.48** | *Bridgestone* |

11  Under either measure, Littleton does not have—and never did have—the largest financial interest.
12  *See Frank v. Dana Corp.*, 237 F.R.D. 171, 172-174 (N.D. Ohio 2006) (granting reconsideration of
13  lead plaintiff order to ensure numerical consistency).[10]

14  **III.     CONCLUSION**

15        For the foregoing reasons, the Court should grant Bridgestone's motion for leave to file its
16  motion for reconsideration, or reconsider the Order *sua sponte*.

17  Dated: December 3, 2018                    Respectfully submitted,

18                                              KAHN SWICK & FOTI, LLP

19                                              By:    /s/ Ramzi Abadou

20                                              Ramzi Abadou (SBN 222567)
                                                ramzi.abadou@ksfcounsel.com
21                                              KAHN SWICK & FOTI, LLP
                                                912 Cole Street, # 251
22                                              San Francisco, California 94117

---

[9] Bridgestone and Littleton used the same methodology in their originally-submitted loss charts. *Compare* ECF Nos. 42-2 and 52-5; *see also* ECF No. 123 at 9, n.8.

[10] Littleton's improper reply argument also misdirected the Court by focusing solely on whether or not Bridgestone's **purchase** of the $450 call options relied upon Musk's August 7, 2018 tweet. In doing so, Littleton ignores that three actions included a "seller" class that have now been consolidated. *See* Order at 2.

|   |   |
|---|---|
| 1 | Telephone: (415) 459-6900 |
| 2 | Facsimile: (504) 455-1498 |
| 3 | -and- |

Lewis S. Kahn (*pro hac vice to be submitted*)
Alexander L. Burns (*pro hac vice to be submitted*)
Alayne K. Gobeille (*pro hac vice to be submitted*)
KAHN SWICK & FOTI, LLC
1100 Poydras Street, Suite 3200
New Orleans, Louisiana 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com
alexander.burns@ksfcounsel.com
alayne.gobeille@ksfcounsel.com

*Counsel for Movant Bridgestone Investment Corporation Limited and Proposed Lead Counsel for the Class*

# CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

  */s/ Ramzi Abadou*
  RAMZI ABADOU

**Mailing Information for a Case 3:18-cv-04865-EMC Isaacs v. Musk et al**
**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- Ramzi Abadou
  ramzi.abadou@ksfcounsel.com,dawn.hartman@ksfcounsel.com

- Randi D. Bandman
  randib@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- Jennifer Corinne Bretan
  jbretan@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,aepstein@fenwick.com

- Robert Nicholas Cappucci
  rcappucci@entwistle-law.com,ncasey@entwistle-law.com,ffleming@entwistle-law.com

- Mario Man-Lung Choi
  mchoi@kaplanfox.com

- Andrew John Entwistle
  aentwistle@entwistle-law.com,jbeemer@entwistle-law.com,bbrodeur@entwistle-law.com,sriegert@entwistle-law.com,RArnall@Entwistle-Law.com,ffleming@entwisle-law.com,ncasey@entwistle-law.com,mgayle@entwistle-law.com,rcappucci@entwistle-law.com

- Frederic S. Fox
  FFox@kaplanfox.com

- Eric Marc George
  egeorge@bgrfirm.com,khall@bgrfirm.com,cbonilla@bgrfirm.com

- David William Hall
  dhall@hedinhall.com

- Rachel Lynn Jensen
  rachelj@rgrdlaw.com,e_file_sd@rgrdlaw.com,6139295420@filings.docketbird.com

- Reed R. Kathrein
  reed@hbsslaw.com,peterb@hbsslaw.com,brianm@hbsslaw.com,sf_filings@hbsslaw.com

- Ashley Conrad Keller
  ack@kellerlenkner.com

- Laurence D. King
  lking@kaplanfox.com,spowley@kaplanfox.com,nlee@kaplanfox.com

NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION
OF NOVEMBER 27, 2018 ORDER

CASE NO. 3:18-CV-04865-EMC

- Dean S. Kristy
  dkristy@fenwick.com,kayoung@fenwick.com,lkelleybourne@fenwick.com

- Mara Rachelle Ludmer
  mludmer@fenwick.com

- Adam Christopher McCall
  amccall@zlk.com

- Francis P McConville
  fmcconville@labaton.com,kgutierrez@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- Tricia Lynn McCormick
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- Arthur Vincent Nealon
  anealon@entwistle-law.com

- Uri Seth Ottensoser
  so@kellerlenkner.com

- Jennifer Pafiti
  jpafiti@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- Carl Alan Roth
  croth@bgrfirm.com,khall@bgrfirm.com,mbetti@bgrfirm.com

- Marc M. Seltzer
  mseltzer@susmangodfrey.com,ecf-4d2b1f772250@ecf.pacerpro.com,hdanielson@susmangodfrey.com,ecf-67366a65900c@ecf.pacerpro.com

- Michael Walter Stocker
  mikes@hbsslaw.com,sf_filings@hbsslaw.com

- James Matthew Wagstaffe
  wagstaffe@kerrwagstaffe.com,reboredo@kerrwagstaffe.com,bechtol@kerrwagstaffe.com

**Manual Notice List**

The following is the list of attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

CASE NO. 3:18-CV-04865-EMC

NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION
OF NOVEMBER 27, 2018 ORDER