1

**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 291-2420
Email: aapton@zlk.com
Email: amccall@zlk.com

2

3

4

5

6

*Attorneys for Lead Plaintiff Glen Littleton*
*and Lead Counsel for the Class*

7

[Additional counsel on signature blocks]

8

9

10

UNITED STATES DISTRICT COURT

11

NORTHERN DISTRICT OF CALIFORNIA

12

| IN RE TESLA, INC. SECURITIES LITIGATION | No. C-18-04865 |
|---|---|
| | Hon. Edward M. Chen |
| | **GLEN LITTLETON'S OPPOSITON TO DANY DAVID'S MOTION FOR RECONSIDERATION (DKT. NO. 156)** |
| | [No hearing scheduled] |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................................................... 1

II.     STANDARD OF REVIEW ....................................................................................................... 2

III.    THE COURT DID NOT COMMIT CLEAR ERROR WHEN IT DETERMINED THAT
        LITTLETON DID NOT GAIN FROM DEFENDANTS' FRAUD. ............................................ 2

        A.      Net sellers are only unsuitable to act as lead plaintiffs when they have potentially
                benefitted from the fraud by receiving a net gain during the class period......................... 2

        B.      Littleton was not a "net gainer" but lost over $3,500,000 of his investment as a result of
                Defendants' fraud.................................................................................................................... 5

IV.     CONCLUSION......................................................................................................................... 8

GLEN LITTLETON'S OPPOSITION TO DANY DAVID'S MOTION FOR RECONSIDERATION
*In re Tesla, Inc. Securities Litigation*
No. C-18-4865

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*389 Orange St. Partners v. Arnold*,
   179 F.3d 656 (9th Cir. 1999) ...................................................................................................... 2

*In re AudioEye, Inc. Sec. Litig*,
   CV-15-163-TUC-DCB, 2015 WL 13654027 (D. Ariz. Aug. 3 2015) ......................................... 3

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
   No. 12-CV-04000-EMC, 2016 WL 2593654 (N.D. Cal. May 5, 2016).................................... 2

*Crossen v. CV Therapeutics*,
   No. C 03-03709 SI, 2005 WL 1910928 (N.D. Cal. Aug. 10, 2005)......................................... 6

*Eichenholz v. Verifone Hldgs, Inc.*,
   No. C07-06140MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008)...................................... 5

*In re UT Starcom, Inc. Sec. Litig.*,
   No. C 04-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010) ........................................ 3

*Kona Enters. v. Estate of Bishop*,
   229 F.3d 877 (9th Cir. 2000) ...................................................................................................... 2

*In re LeapFrog Enter., Inc. Sec. Litig.*,
   No. 15-cv-00347-EMC, 2016 U.S. Dist. LEXIS 117635 (N.D. Cal. Aug. 31, 2016)............. 2

*Levie v. Sears Roebuck & Co.*,
   496 F. Supp. 2d 944 (N.D. Ill. 2007) ......................................................................................... 7

*In re Magma Design Automation, Inc. Sec. Litig.*,
   No. C 05 2394 CRB, 2007 WL 2344992 (N.D. Cal. Aug. 16, 2007)....................................... 6

*In re McKesson HBOC, Inc. Sec. Litig.*,
   97 F. Supp. 2d 993 (N.D. Cal. 1999).......................................................................................... 3

*Perlmutter v. Intuitive Surgical, Inc.*,
   No. 10-CV-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011) .......................... 1, 3, 4

*Richardson v. TVIA, Inc.*,
   No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ................................... 3

*Rocker Management, L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*,
   No. 00-5965 (JCL), 2005 WL 1366025 (D.N.J. June 8, 2005) ............................................ 7, 8

*San Antonio Fire & Police Pension Fund v. Dole Food Co.*,
   177 F. Supp. 3d 838 (D. Del. 2016) ........................................................................................... 7

*Scheicher v. Wendt*,
   618 F.3d 679 (7th Cir. 2010) ...................................................................................................... 6

1

## I.      INTRODUCTION

2      In its order dated November 27, 2018, the Court appointed Glen Littleton as lead plaintiff because

3 his losses of approximately $3.5 million were the "largest clear financial interest" and because he "held

4 interests that cover most of the persons/entities likely to be in the class – *i.e.*, long positions in common

5 stock, long positions in options, and short positions in options – and thus can most adequately represent

6 the class." 11/27/18 Order (Dkt. No. 152) at 7. Nothing in Movant Dany David's motion for

7 reconsideration (Dkt. No. 156) alters this analysis. In his motion, David simply recycles identical

8 arguments already made to the Court in his opposition brief (Dkt. No. 111) and argued at length at oral

9 argument on November 15, 2018. (Apton Decl., Ex. A[1]). The Court has considered and properly rejected

10 these arguments and the motion for reconsideration should be quickly denied.

11      David's primary argument is that Littleton is "a net seller/net gainer" during the class period and,

12 therefore, is unsuitable as a lead plaintiff. Dkt. No. 156 at 1; *see also* Dkt. No. 111 at 9-10. As Littleton

13 explained at length in his reply brief in response to the identical argument, this is incorrect and, indeed, it

14 shows that David either does not fully appreciate the scope of the claims and class alleged in this action

15 or has no interest in protecting the interests of many class members. David's argument assumes that the

16 class in this case consists only of purchasers of Tesla securities. The class, however, consists of all persons

17 who transacted in Tesla securities during the class period, whether purchasers or sellers. As was explained

18 at oral argument, both purchasers and sellers of options may have suffered losses as a result of Defendants'

19 fraud and should be represented by the lead plaintiff. As Littleton suffered losses both purchasing and

20 selling options, as well as buying stock, and from both long and short positions, he provides this

21 representation for the class. David's continued attacks on sellers of Tesla securities shows that he does

22 not.

23      Accordingly, David's reliance on *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK,

24 2011 WL 566814 (N.D. Cal. Feb. 15, 2011), is misplaced. *Perlmutter* is a conventional securities class

25 action with a purchaser-only class and stands for the unremarkable proposition that an investor who

26

27 ---

[1] The transcript from the November 15, 2018 proceeding before Judge Edward Chen is attached as "Exhibit A" to the Declaration of Adam M. Apton in Opposition to Dany David's Motion for Reconsideration.

28

actually benefited from the fraud (a net seller in a conventional purchaser-only class) should not serve as lead plaintiff. As this is not a conventional securities class action and it does not feature a purchasers-only class, the so-called presumption against net sellers discussed in *Perlmutter* is irrelevant.

Motions for reconsideration are not intended to provide dissatisfied litigants with the opportunity to relitigate rejected arguments. Yet this is precisely what David seeks to do. His motion reasserts the exact same "net seller/net gainer" argument made in his opposition to Littleton's motion for lead plaintiff. David's motion does not raise a single new fact, new case, or new argument and therefore should be easily denied by the Court which has already considered and correctly rejected his arguments.

## II.    STANDARD OF REVIEW

A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Thus, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *accord In re LeapFrog Enter., Inc. Sec. Litig.*, No. 15-cv-00347-EMC, 2016 U.S. Dist. LEXIS 117635, at *2 (N.D. Cal. Aug. 31, 2016); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-CV-04000-EMC, 2016 WL 2593654, at *2 (N.D. Cal. May 5, 2016), *aff'd* No. 17-15088, 2018 WL 6262390 (9th Cir. Nov. 29, 2018). David identifies no new evidence or change of controlling law in his motion; he, therefore, must show that the Court committed clear error in appointing Littleton as lead plaintiff.

## III.    THE COURT DID NOT COMMIT CLEAR ERROR WHEN IT DETERMINED THAT LITTLETON DID NOT GAIN FROM DEFENDANTS' FRAUD.

### A.    Net sellers are only unsuitable to act as lead plaintiffs when they have potentially benefitted from the fraud by receiving a net gain during the class period.

David argues that Littleton is a "net seller/net gainer" because he sold more options during the class period than he purchased and, as a result, supposedly gained from Defendants' fraud by approximately $2.4 million. *See* Dkt. No. 156 at 1. An investor who is a "net seller", *i.e.*, who sells more

2

1    securities than he she buys during a class period may be unsuited to serve as lead plaintiff when this

2    trading results in a net gain during the class period. This will typically be the case in a conventional

3    securities class action where the class consists of purchasers of stock at a fraudulently inflated price.  "Net

4    sellers" in these circumstances may be inadequate lead plaintiffs because a "net seller arguably profits

5    more from the fraud than suffers from it." *Perlmutter*, 2011 WL 566814, at *8 (*citing In re McKesson*

6    *HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 996-97 (N.D. Cal. 1999)). When a "net seller" has profited

7    (instead of lost) from the purchase and sale of stock during a class period, the shareholder is considered a

8    "net gainer" and may be inadequate to serve as a lead plaintiff.

9            What was critical to the Court's decision in *Perlmutter* was not whether a movant was a net seller

10   *per se*, but rather that, as a result of his net sales in the context of the class and legal theory alleged in that

11   case, he received a net gain during the class period rather than a net loss. Accordingly "this presumption

12   [against net sellers] applies only when a net seller is also a net gainer." *Id.*, at *8 (*citing Richardson v.*

13   *TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007)); *see also In re*

14   *AudioEye, Inc. Sec. Litig*, CV-15-163-TUC-DCB, 2015 WL 13654027, at *5 (D. Ariz. Aug. 3 2015) ("a

15   'net seller' can be a lead plaintiff or class representative, as long as it has a recoverable loss"); *In re UT*

16   *Starcom, Inc. Sec. Litig.*, No. C 04-04908 JW, 2010 WL 1945737, at *6 (N.D. Cal. May 12, 2010)

17   (accepting net seller as typical lead plaintiff because net sales still resulted in a loss rather than a gain).[2]

18           The alleged class in this case consists of more than just purchasers of Tesla shares at artificially

19   inflated prices. A large contingent of the class consists of Tesla investors who sold stock or other securities

20   such as options after the first alleged misrepresentation, *i.e.*, Defendant Musk's tweet on August 7, 2018

21   ("Am considering taking Tesla private at $420. Funding secured."). Indeed, almost half of the complaints

22   initially filed in this consolidated action included "sellers" in their "class definitions."[3] These sales, as

---

[2] David attempts to distinguish these cases in his motion for reconsideration. Dkt. No. 156 at 2-3. However,
the fundamental principle in these cases is to determine whether the movant suffered a gain or loss, not
whether the movant was a net seller or net purchaser. As Littleton has shown, he has lost over $3.5 million
due to Musk's fraudulent tweets. Accordingly, these cases support his appointment.

[3] *Chamberlain v. Tesla Inc. et al.*, 3:18-cv-04876-EMC, Compl. ¶1, Dkt. No. 1 (Aug. 10, 2018) ("who
purchased or sold securities of Tesla between August 7, 2018 and August 10, 2018, both dates inclusive");
*Dua v. Tesla, Inc. et al.*, 3:18-cv-04948-EMC, Compl. ¶1, Dkt. No. 1 (Aug. 15, 2018) ("who had open

GLEN LITTLETON'S OPPOSITION TO DANY DAVID'S MOTION FOR RECONSIDERATION
*In re Tesla, Inc. Securities Litigation*
No. C-18-4865

1  alleged, were induced by the fraud and resulted in damages. This was discussed in detail at oral argument.

2  The losses from sales could result from selling put options which is economically similar to purchasing a

3  share of common stock. *See* Apton Decl., Ex. A at 14 ("If you sold put options, you are a seller of a

4  security, the put option; but you are effectively taking a bet that the underlying stock is going to rise in

5  price. And if it happened during the class window, you were harmed as well, just as a purchaser of stock.").

6  When the fraud is disclosed, and the stock price loses its fraudulent inflation, the seller of a put option

7  while the stock price is inflated suffers a loss either by paying an increased cost to repurchase the put

8  option or paying the now above market strike price. That loss is as real as that of a purchasers of a share

9  of common stock. Similarly, while counsel for David conceded at oral argument that an investor who

10 purchases stock at an inflated price to close a pre-class period open short stock position has suffered a loss

11 and is included in the class, *id.* at 24-25, an investor who has bought put options before the class period

12 (thus opening a short position) and then sells put options to close it during the class period while the stock

13 price is inflated has, in substance, done exactly the same thing. David, however, proposes to exclude the

14 seller of put options from the class.

15     Accordingly, David's proposed dichotomy between net purchasers/net losers and net sellers/net

16 gainers is illusory. David's motion and his heavy reliance on *Perlmutter* shows that he either does not

17 appreciate this or regards this case as properly involving a purchaser-only class and is proposing to simply

18 ignore the claims of sellers of Tesla securities during the class period; claims that may constitute a

19 substantial portion of the overall class alleged in this case. Indeed, David's motion for appointment as lead

20 plaintiff sought appointment solely for a class of purchasers, not of the entire class as alleged in the

21 consolidated complaints. *See* Dkt. No. 80, at 1. Consistent with other decisions in this District, the Court

22 properly declined at this stage to curtail or limit the class alleged in this action and appointed Littleton to

23 represent all of the various claims alleged in the complaints on file. *See* Order at 8, n.4; *see also Eichenholz*

24

25 short positions or put options for Tesla as of August 7, 2018 or August 8, 2018"); *Left v. Tesla, Inc. et al.,*
3:18-cv-05463-EMC, Compl. ¶1, Dkt. No. 1 (Sept. 6, 2018) ("who purchased, sold, or otherwise
26 transacted in Tesla securities between August 7, 2018 and August 17, 2018, both dates inclusive"; *Sodeifi*
*v. Tesla, Inc. et al.*, 3:18-cv-05899-EMC, Compl. ¶1, Dkt. No. 1 (Aug. 30, 2018) ("who purchased or sold
27 securities of Tesla between August 7, 2018 and August 10, 2018").

28

1   *v. Verifone Hldgs, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at *10 (N.D. Cal. Aug. 22, 2008).

2   David's motion provides no reason why the Court should revisit this decision

3   **B.    Littleton was not a "net gainer" but lost over $3,500,000 of his investment as a result**

4   **of Defendants' fraud.**

5   Thus, the issue raised by David's motion is not whether or not Littleton was a net seller or net

6   purchaser during the class period but whether or not he has suffered a loss caused by Defendants' fraud.

7   There should be no question that Littleton lost approximately $3,518,478.68 as a result of Musk's initial

8   tweet and subsequent misrepresentations during the class period. Littleton was harmed as a result of the

9   alleged fraud from the positions he opened prior to the class period and closed during the class period,

10  positions he opened and closed during the class period, and the positions he opened during the class period

11  and closed after the class period. Littleton incurred losses from both long and short positions in Tesla's

12  calls and puts, and a long position in its common stock. More specifically, as a result of his long call

13  positions entered into before the class period or during the class period, Littleton incurred losses of

14  approximately $3,296,977.20. These losses were incurred by closing these long positions by selling call

15  options. While Littleton received cash from selling the call options to close the positions, this cash was

16  insufficient to offset the cost of opening the position by buying call options.

17  Littleton also suffered losses from other positions. He incurred approximately $3,552 in losses

18  from his purchase of common stock.[4] Littleton incurred losses from long positions in put options. For

19  example, as a result of his long position created by selling Tesla January 2020 $250 put contracts during

20  the class period, Littleton incurred losses of approximately $104,525. Moreover, Littleton also incurred

21  losses as result of his short positions in options. As a result of his short position created by selling Tesla

22  January 2020 $500 calls contracts during the class period, Littleton incurred losses of approximately

23  $45,490.00. From his short position created before the class period by buying Tesla June 2019 $300 put

24  _____

[4] The loss figures in the remainder of this paragraph list Littleton's losses from his trades in a specific

25  Tesla security that he incurred a loss. For instance Littleton incurred losses of approximately $220,080.00

26  from his trades in Tesla January 2020 $350 call contracts. Any of Littleton's trades in other Tesla securities

that resulted in a gain have been offset against his collective losses as depicted on his loss chart. *See* ECF

26  No. 42-2. After offsetting the above losses in specific Tesla securities by gains in other specific Tesla

27  securities as depicted in his loss chart, Littleton incurred a loss of $3,518,478.68. *Id*.

28

GLEN LITTLETON'S OPPOSITION TO DANY DAVID'S MOTION FOR RECONSIDERATION

*In re Tesla, Inc. Securities Litigation*

No. C-18-4865

contracts, Littleton incurred losses of approximately $215,320.00. This loss was incurred by selling put options to cover this position.

The Court appointed Littleton as the lead plaintiff because, among other reasons, he possessed standing to pursue all of the various claims alleged in the complaints on file. Littleton held: long call options, short call options, long put options, short put options, and common stock. *See* Order (Dkt. No. 152) at 7. These positions involved both purchases and sales. In each instance, Littleton's losses stemmed from his reliance on the integrity of the market price of Tesla's securities. His reliance makes him typical of all other class members regardless of which types of securities he purchased. *See Scheicher v. Wendt*, 618 F.3d 679, 684 (7th Cir. 2010) (holding that long and short investors rely similarly on market integrity); *In re Magma Design Automation, Inc. Sec. Litig.*, No. C 05 2394 CRB, 2007 WL 2344992, at *2 (N.D. Cal. Aug. 16, 2007) (certifying class including short sellers with regular purchasers); *Crossen v. CV Therapeutics*, No. C 03-03709 SI, 2005 WL 1910928, at *4 (N.D. Cal. Aug. 10, 2005) (short sale "does not, on its own, rebut the presumption of reliance).

Accordingly, Littleton possesses a recoverable loss of over $3,500,000. *See also* Littleton Reply Brief (Dkt. No. 118), pp. 1-2 (specifying losses incurred with each position). The damages he sustained in connection with having to close out his positions under artificial circumstances are the damages that David now wants to exclude from this action. Put differently, David wants to exclude a significant portion of Littleton's losses (and, indeed, a significant portion the losses of the entire class) from the ultimate recovery in this action. It makes no sense to do this given that these losses are directly related to the alleged fraud.

David's presentation of Littleton as a "net seller/net gainer" with a profit of over $2.4 million is, therefore, wildly misleading. Dkt. No. 156, at 1. The only way to arrive at David's conclusion is to disregard the fact that Littleton's sales during the class period were necessitated by the alleged fraud (*i.e.*, closing positions to stem losses caused by Tesla's artificially inflated stock price). In fact, the vast majority of Littleton's options sales during the class period (almost 80%) were executed to close an open position. As explained above, the allegations in the consolidated complaints allow Littleton and all other similarly situated Tesla investors to recover they damages from these transactions. There is no reason to exclude

1  these damages from the action.

2      Several cases support Littleton's point. For example, in *Levie v. Sears Roebuck & Co.*, 496 F.

3  Supp. 2d 944 (N.D. Ill. 2007), the court addressed a similar argument in the context of a class certification

4  motion. The defendant challenged certification on the basis that "in-and-outs" (shareholders that

5  purchased and sold before the fraud was revealed) should not be part of the class because they could not

6  establish loss causation. *Id*. at 947-48. The court held that, although the defendant's logic may hold true

7  in an ordinary purchaser class, the class at hand was a seller class. Accordingly, "any investor who sold

8  (during the class period) before the fraud was revealed incurred injuries because that investor sold at a

9  price that was artificially lower than the investor should have received." *Id*. at 948. Like the class in *Levie*,

10  Tesla shareholders who sold to close positions before the fraud was revealed were also damaged as a result

11  of the fraud and thus should not be excluded from the recovery.

12      *San Antonio Fire & Police Pension Fund v. Dole Food Co.,* 177 F. Supp. 3d 838 (D. Del. 2016),

13  provides another example. The court in that case considered similar issues while deciding a motion for

14  lead plaintiff on behalf of a seller class (as opposed to "a traditional purchaser class"). *Id*. at 840. One of

15  the movants for lead plaintiff (the Dole Investor Group) effectively argued that another movant (the Dole

16  Institutional Investor Group) was a "net seller/net gainer," like David argues Littleton is here. *Id*. at 840.

17  The court rejected the argument given the nature of the class, holding that "the record indicates that the

18  Dole Institutional Investor Group sold over 3.5 million shares of the Company during the class period,

19  more shares than any other proposed lead plaintiff. The fact that Dole Institutional Investor Group did not

20  suffer a loss in the traditional sense is not dispositive, given that the underlying basis for recovery is the

21  sale of shares at an artificially depressed price." The same logic applies here; given that the alleged

22  damages did not arise in the traditional sense, David's reliance on purchaser-class case law cannot be

23  dispositive.

24      Another case with similar allegations is *Rocker Management, L.L.C. v. Lernout & Hauspie Speech*

25  *Prods. N.V.*, No. 00-5965 (JCL), 2005 WL 1366025 (D.N.J. June 8, 2005). In that case, the plaintiff

26  sustained damages when the defendants executed a scheme intended to "squeeze the shorts" (referring to

27  the traders that were betting against the company). *Id*. at *10. On a Rule 12(b)(6) motion to dismiss, the

28

court held that the plaintiff had adequately pleaded the element of "loss causation" because "[i]n the short-selling context, losses caused by artificially inflated stock prices are incurred at the time of cover. (This differs from the typical fraud-on-the-market scenario where purchasers buy at a fraudulently inflated price and then the stock subsequently drops once the truth is revealed to the market.)" *Id*. at *7. Like here, the damages in *Rocker Management* did not necessarily arise from the traditional purchaser-class allegations.

## IV.    CONCLUSION

For the foregoing reasons, Littleton respectfully requests the Court deny David's motion for reconsideration in its entirety.

Dated: December 7, 2018                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

/s/ Adam M. Apton
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: 415-291-2420
Email: aapton@zlk.com
Email: amccall@zlk.com

Nicholas I. Porritt (admitted pro hac vice)
Alexander A. Krot III (to be admitted pro hac vice)
1101 30th Street, NW, Suite 115
Washington, DC 20007
Tel: 202-524-4290
Email: nporritt@zlk.com

Eduard Korsinsky (to be admitted pro hac vice)
55 Broadway, 10th Floor
New York, New York 10006
Tel: 212-363-7500
Email: ek@zlk.com

*Attorneys for Lead Plaintiff Glen Littleton and*
*Lead Counsel for the Class*

GLEN LITTLETON'S OPPOSITION TO DANY DAVID'S MOTION FOR RECONSIDERATION
*In re Tesla, Inc. Securities Litigation*
No. C-18-4865