**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 291-2420
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for Lead Plaintiff Glen Littleton and Lead Counsel for the Class*

[Additional counsel on signature blocks]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE TESLA, INC. SECURITIES LITIGATION | No. C-18-04865 |
|---|---|
| | Hon. Edward M. Chen |
| | **GLEN LITTLETON'S OPPOSITION TO BRIDGESTONE INVESTMENT CORPORATION'S MOTION FOR RECONSIDERATION (DKT. NO. 158)** |
| | [No hearing scheduled] |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. STANDARD OF REVIEW ............................................................................................ 3

III. THE COURT CORRECTLY HELD THAT BRIDGESTONE WAS NOT THE MOST ADEQUATE PLAINTIFF UNDER THE PSLRA AND *CAVANAUGH*. ..................................... 4

    A. The Court Correctly Held That Bridgestone Was Not Adequate or Typical Because, Unlike Many Class Members, It Never Held a Short Position. ......................................... 4

    B. Bridgestone Still Fails To Rebut Concerns About The Size of Its Financial Interest. ...... 7

IV. CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*389 Orange St. Partners v. Arnold*,
   179 F.3d 656 (9th Cir. 1999) .................................................................................................. 3

*In re Bank of America Corp. Securities, Derivative, and Employment Retirement Income Security Act (ERISA) Litigation*,
   No. 09-MD-2058-PKC, 2011 WL 3211472 (S.D.N.Y. July 29, 2011) ..................................... 5

*Broadfoot v. Barrick Gold Corp.*,
   No. 17 CIV. 3507 (NRB), 2017 WL 3738444 (S.D.N.Y. Aug. 9, 2017) ................................... 8

*Bryant v. Farmer*,
   460 F. App'x 644 (9th Cir. 2011) ............................................................................................. 7

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ............................................................................................ passim

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
   No. 12-CV-04000-EMC, 2016 WL 2593654 (N.D. Cal. May 5, 2016) ................................... 3

*In re Connetics Corp. Sec. Litig.*,
   257 F.R.D. 572 (N.D. Cal. 2009) ........................................................................................... 10

*In re Countrywide Fin. Corp. Sec. Litig.*,
   273 F.R.D. 586 (C.D. Cal. 2009) ............................................................................................. 8

*In re Critical Path, Inc.*,
   No. 01-cv-00551-WHA, 2002 WL 32627559, (N.D. Cal. June 18, 2002) .............................. 5

*Deitz v. Comcast Corp.*,
   No. C 06-06352 WHA, 2007 WL 2015440 (N.D. Cal. July 11, 2007) .................................... 8

*In re Diamond Foods, Inc.*,
   295 F.R.D. 240 (N.D. Cal. 2013) ........................................................................................... 10

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ............................................................................................................... 10

*Kona Enters. v. Estate of Bishop*,
   229 F.3d 877 (9th Cir. 2000) .................................................................................................... 3

*In re LeapFrog Enter., Inc. Sec. Litig.*,
   No. 15-cv-00347-EMC, 2016 U.S. Dist. LEXIS 117635 (N.D. Cal. Aug. 31, 2016) .............. 3

*Luna v. Marvell Tech. Grp., Ltd.*,
   No. C 15-05447 WHA, 2017 WL 4865559 (N.D. Cal. Oct. 27, 2017) .................................... 6

*In re MicroStrategy Inc. Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) ................................................................................ 10, 11

*In re New Oriental Edu. & Tech. Grp. Secs.Litig.*,
   293 F.R.D. 483 (S.D.N.Y. 2013) .................................................................................................. 5

*In re Royal Bank of Scotland Grp. PLC Sec. Litig.*,
   765 F. Supp. 2d 327 (S.D.N.Y. 2011) ........................................................................................ 5

*Stephens v. Cty. of Haw. Police Dep't*,
   584 F. App'x 506 (9th Cir. 2014) ................................................................................................ 7

*In re Veritas Software Corp. Securities Litigation*,
   496 F.3d 962 (9th Cir. 2007) ...................................................................................................... 5

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
   712 F. Supp. 2d 958 (N.D. Cal. 2010) ........................................................................................ 5

*In re WorldCom Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) .............................................................................................. 10

*In re Zynga Inc. Sec. Litig.*,
   No. 12-cv-04007-JSW, 2014 WL 721948 (N.D. Cal. Feb. 25, 2014) ........................................ 5

**Other**

1 McLaughlin on Class Actions § 4:18 (14th ed.) (Westlaw 2017) ................................................ 8

iv

GLEN LITTLETON'S OPPOSITION TO BRIDGESTONE'S MOTION FOR RECONSIDERATION
*In re Tesla, Inc. Securities Litigation*
No. C-18-4865

## I.   INTRODUCTION

In its November 27, 2018 Order (Dkt. No. 152), the Court resolved the pending motions of seven movants to be appointed lead plaintiff in this proceeding. As directed by *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002), the Court considered the movants sequentially in the order of their claimed financial interests in the relief sought in this action and also considered whether they met the adequacy and typicality requirements of Rule 23. After concluding that the claimed financial interest of three movants were potentially overstated as well as finding concerns about their adequacy and typicality, the Court appointed Glen Littleton as lead plaintiff because his losses of approximately $3.5 million were the "largest clear financial interest" and because he "held interests that cover most of the persons/entities likely to be in the class – *i.e.*, long positions in common stock, long positions in options, and short positions in options – and thus can most adequately represent the class." 11/27/18 Order (Dkt. No. 152) at 7.

Movant Bridgestone Investment Corp. Ltd. now moves for reconsideration (Dkt. No. 158), arguing that its financial interest in the relief sought by the class is larger than Littleton and it is adequate and typical to represent the entire class alleged in this action. These arguments were made to the Court in the initial briefing on the lead plaintiff motions and at oral argument and rejected by the Court in its November 27, 2018 order. Just like the unsuccessful movant, Dany David, who also has moved for reconsideration, Bridgestone does not raise a single new fact, new case, or new argument that has not already been considered and rejected by the Court.

As identified by the Court, the fundamental weakness in Bridgestone as a lead plaintiff candidate is that it did not hold a single short position in Tesla, Inc. securities immediately before or during the class period. The alleged class in this action includes investors who held both long and short positions. It is entirely reasonable for the Court, and entirely permitted by the Private Securities Litigation Reform Act of 1995 and *Cavanaugh*, to determine that a lead plaintiff candidate who suffered no losses as a result of holding a short position is neither adequate nor typical of a class consisting in substantial part of investors who lost money from short positions. This is particularly true in a case where one primary motive identified for the fraud committed by defendant Elon Musk was an intent to deliberately harm investors who held short positions. Where it is alleged that Musk "has a long-standing public feud with short-sellers

1

GLEN LITTLETON'S OPPOSITION TO BRIDGESTONE'S MOTION FOR RECONSIDERATION
*In re Tesla, Inc. Securities Litigation*
No. C-18-4865

and has threatened them in the recent past" and "artificially manipulated the price of Tesla securities with objectively false tweets in order to 'burn' the Company's short-sellers" (Left Complaint ¶¶17 and 31[1]), it was reasonable for the Court to determine that an investor who did not hold a short position cannot adequately represent the entire class.

The Court had additional reasons for doubting both the size of Bridgestone's financial interest as well as its adequacy and typicality. Specifically, over $1.6 million of Bridgestone's claimed $3.8 million in losses was attributable to call options with strike prices of $450 that, according to Bridgestone and its counsel, Bridgestone purchased *after* Defendant Musk tweeted that he was taking Tesla private at $420 per share. It makes no sense for Bridgestone to have purchased these options with such a high strike price if it knew that there was virtually no chance of Tesla's stock ever surpassing that amount unless Bridgestone either disregarded or was unaware of the tweet. Indeed, for Bridgestone to have profited on these options, Tesla's stock would have had to clear $467.85 per share (the exercise price of $450 plus the highest premium paid of $17.85 for these call option contracts). Whether and to what extent damages from these securities are recoverable is a question for another day. But, at this stage, the Court was correct in holding that Bridgestone's losses were "uncertain for the purposes of the pending motions." 11/27/18 Order (Dkt. No. 152) at 7.

Bridgestone does not provide the Court with any rationale to revisit this aspect of the decision. Instead, Bridgestone makes a misguided attempt at trying to use the same argument to discount Littleton's losses by pointing to Littleton's purchase of call options at the same strike price of $450 per share. However, the critical difference between Bridgestone's call option contracts and Littleton's call option contracts is that Littleton bought his contracts *prior* to Defendant Musk's tweet. In other words, Littleton believed that Tesla's stock would in fact continue to increase over the life of the option contract. When Musk said he was taking Tesla private at $420 per share, it virtually eliminated the chance of Tesla's stock price ever increasing over Littleton's exercise prices and the price of those options plummeted. Thus, when Littleton closed his positions (by selling matching call options after Musk's tweet), he did so at a

---

[1] References to the "Left Complaint ¶__" refer to the complaint filed in *Left v. Tesla Inc. et al.*, 3:18-cv-0563-EMC, Compl. ¶__, Dkt. No. 1 (Sept. 6, 2018).

1  loss that he would have otherwise not incurred.

2      Finally, Bridgestone's attempt to raise the issue of conflict of interest between Littleton's positions in Tesla before and during the class period is both confused and unpersuasive. Bridgestone seems to argue first that there is no conflict, *see* Dkt. No. 158 at 6 ("there is no 'limited fund' or other unique conflict here"), and then argue that the conflict is so great that it is disqualifying for Littleton, *see id*. at 8. As discussed at length at oral argument, there are clearly potential conflicts within the alleged class with regard to different trading positions and strategies adopted during the class period. Neither the parties nor the Court has sufficient information to make any determinations on those issues at this early stage of proceedings. What is in the best interests of the class, and consistent with the PSLRA and *Cavanaugh*, is for the Court to appoint as lead plaintiff the movant with the "largest clear financial interest" who "held interests that cover most of the persons/entities likely to be in the class – *i.e*., long positions in common stock, long positions in options, and short positions in options – and thus can most adequately represent the class." 11/27/18 Order (Dkt. No. 152) at 7. That movant was Littleton and nothing in Bridgestone's motion for reconsideration alters this analysis. The Court should deny Bridgestone's motion without delay so Littleton and his counsel can proceed without further distraction.

## II.  STANDARD OF REVIEW

    A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Thus, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *accord In re LeapFrog Enter., Inc. Sec. Litig.*, No. 15-cv-00347-EMC, 2016 U.S. Dist. LEXIS 117635, at *2 (N.D. Cal. Aug. 31, 2016); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-CV-04000-EMC, 2016 WL 2593654, at *2 (N.D. Cal. May 5, 2016), *aff'd* No. 17-15088, 2018 WL 6262390 (9th Cir. Nov. 29, 2018). Bridgestone identifies no new evidence or change of controlling law in his motion; it, therefore, must show that the Court committed clear error in appointing Littleton as lead plaintiff.

3

GLEN LITTLETON'S OPPOSITION TO BRIDGESTONE'S MOTION FOR RECONSIDERATION
*In re Tesla, Inc. Securities Litigation*
No. C-18-4865

### III. THE COURT CORRECTLY HELD THAT BRIDGESTONE WAS NOT THE MOST ADEQUATE PLAINTIFF UNDER THE PSLRA AND *CAVANAUGH*.

#### A. The Court Correctly Held That Bridgestone Was Not Adequate or Typical Because, Unlike Many Class Members, It Never Held a Short Position.

The Court correctly followed *In re Cavanaugh*, *supra*, when deciding the various motions for lead plaintiff. In *Cavanaugh*, the Ninth Circuit explained the process that courts should follow when selecting a plaintiff under the PSLRA. The Ninth Circuit explained that the Court must first engage in a comparative analysis between the rival movants based solely on their "financial interest in the relief sought by the class." 306 F.3d at 730. The Ninth Circuit does not direct any particular method for measuring "financial interest" and permits the Court to use any method that is "both rational and consistently applied". *Id*. at 730, n.4. "In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Id*. at 730. Once it has identified the movant with the largest financial interest, the Court must then examine, based on the pleadings and other evidence submitted as part of the lead plaintiff motions, whether that movant is typical and adequate to represent the entire class. *Id*.

This is exactly what the Court did. It first considered the movants Tempus International Fund and Opportunity Unique Fund Inc. but found that their claimed losses of more than $15.8 million were probably inflated. The Court also had concerns over their adequacy and typicality because they only held short positions and the class contains investors who were both short and long. 11/27/18 Order (Dkt. No. 152) at 4. The Court then considered the movant Tesla Investor Group, led by Andrew Left, but was concerned about the adequacy of a group of investors serving as lead plaintiff as well as Left's outspoken history regarding Tesla. *Id*. at 6.

The Court then considered Bridgestone's motion. The Court declined to appoint Bridgestone as lead plaintiff due to concerns over its adequacy and typicality. Specifically, "Bridgestone held long positions – both in common stock and options – but does not appear to have held any short positions." 11/27/18 Order (Dkt. No. 152) at 6. The Court's decision was correct. As discussed at length in the underlying briefing and at the hearing on November 15, 2018, the fact that Bridgestone did not hold any

short positions exposed it and the class to unique defenses relating to standing. *See*, *e.g.*, *In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSW, 2014 WL 721948, at *3 (N.D. Cal. Feb. 25, 2014) (dismissing claims because lead plaintiff(s) lacked standing); *In re Royal Bank of Scotland Grp. PLC Sec. Litig.*, 765 F. Supp. 2d 327, 339 (S.D.N.Y. 2011) (same); *In re Bank of America Corp. Securities, Derivative, and Employment Retirement Income Security Act (ERISA) Litigation*, No. 09-MD-2058-PKC, 2011 WL 3211472, at *12 (S.D.N.Y. July 29, 2011) (same); *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 965 (N.D. Cal. 2010) (same). It also raised potential pragmatic concerns about the incentive or willingness of Bridgestone to prosecute claims and recover losses for investors who held short positions when it has no financial interest in the recovery. *See In re Veritas Software Corp. Securities Litigation*, 496 F.3d 962 (9th Cir. 2007) (resolving objections of option traders to settlement that initially excluded them and then only granted them 2% of the recovery); *In re New Oriental Education & Technology Group. Securities Litigation*, 293 F.R.D. 483 (S.D.N.Y. 2013) (lead plaintiff's amended complaint dropped option traders who were initially part of class); *In re Critical Path, Inc.*(court rejected option trader's objection to settlement that excludes options).

The risk that Bridgestone might fail to adequately represent short investors is particularly acute in this case where an identified motive for the fraud is an animus towards short investors. Musk allegedly "has a long-standing public feud with short-sellers and has threatened them in the recent past" Left Complaint ¶31. As alleged by the Securities & Exchange Commission, on May 4, 2018, Musk tweeted that a "short burn of century comin [sic] soon" and on June 17, 2018, he tweeted that short sellers "have about three weeks before their short position explodes." Apton Decl., Ex. A, at ¶16.[2] Accordingly Musk "artificially manipulated the price of Tesla securities with objectively false tweets in order to 'burn' the Company's short-sellers". Left Complaint at ¶¶17 and 31. Further, it appears that much of the damages that can be preliminarily identified were suffered by investors with a short position. *See* 11/15/18 Transcript (Apton Decl., Ex. B) at 28 (counsel noting that short damages may be "a huge dollar amount,

---

[2]   The September 27, 2018 complaint filed by the United States Securities and Exchange Commission against Elon Musk captioned *SEC v. Musk*, Case 1:18-cv-08865 (S.D.N.Y.) is attached as "Exhibit A" to the Declaration of Adam M. Apton in Support of Glen Littleton's Opposition to Bridgestone Investment Corporation's Motion for Reconsideration.

and it's really going to eat up any settlement" compared to long damages).[3] Short investors and Musk's attitude towards them will be an important part of this case and it was reasonable, if not imperative, for the Court to determine that an investor like Bridgestone who did not hold a short position cannot adequately prosecute this aspect.

Bridgestone correctly identifies that there is no current conflict between members of the class as alleged. *See* Dkt. No. 158 at 6. Based on the information currently available the interests of short and long investors as well as traders in stock and options are aligned. Further, as counsel for Bridgestone correctly noted at oral argument, it was premature to start limiting the class in any way through the appointment of lead plaintiff or make any determinations about damages. *See* 11/15/18 Transcript (Apton Decl., Ex. B) at 17. That said, it would be myopic for the Court to ignore the potential for these conflicts in the future either in the context of class certification or allocating a limited settlement fund.[4] The Court properly considered the potential for future conflict by noting, at this early stage, the importance for the lead plaintiff to have "skin in the game" with regard to all interests reflected in the entire class as alleged so that they can be adequately represented. The Court achieved this with its order appointing Littleton.

This consideration of the nature of the claims and class alleged in this proceeding when determining whether a movant is an adequate and typical member of the class is quite different from the considerations criticized by the Ninth Circuit in *Cavanaugh*. There, the district court had chosen the lead plaintiff almost exclusively on the basis of the movant's selection of lead counsel and negotiation of a non-binding fee arrangement. 306 F.3d at 734-35. This sort of "beauty contest" that focused on an issue of only tangential importance is very different from the detailed and thoughtful consideration undertaken by the Court of the likely members of the class alleged in this proceeding and potential conflicts or other failures of representation that might arise. Under the circumstances as alleged in this case, it is hard to see

---

[3] The transcript from the November 15, 2018 proceeding before Judge Edward Chen is attached as "Exhibit B" to the Declaration of Adam M. Apton in Support of Glen Littleton's Opposition to Bridgestone Investment Corporation's Motion for Reconsideration.

[4] Further, the potential conflicts in this case are not typical of other securities class actions where Courts have generally not found potential conflicts between class members who sold all their stock and class members who still retain some stock to be disqualifying. *See*, *e. g.*, *Luna v. Marvell Tech. Grp., Ltd.*, No. C 15-05447 WHA, 2017 WL 4865559, at *5 (N.D. Cal. Oct. 27, 2017).

how a Court could undertake the necessary adequacy and typicality analysis required by the PSLRA and *Cavanaugh* without considering "the interests that cover most of the persons/entities likely to be in the class" and comparing them to the trading positions held by the lead plaintiff movant. 11/27/18 Order (Dkt. No. 152) at 7.

Although Bridgestone may disagree with the Court's decision, disagreement without anything more is not enough to warrant reconsideration. *See*, *e.g.*, *Stephens v. Cty. of Haw. Police Dep't*, 584 F. App'x 506, 507 (9th Cir. 2014) (affirming denial of motion for reconsideration where movant "merely reiterated [his] disagreement with the order granting summary judgment"); *Bryant v. Farmer*, 460 F. App'x 644, 645 (9th Cir. 2011) (affirming denial of motion for reconsideration where movant "failed [to] establish any ground for such relief other than his disagreement with the court's judgment").[5]

**B.     Bridgestone Still Fails To Rebut Concerns About The Size of Its Financial Interest.**

In its order, the Court noted that approximately $1,641,391 of Bridgestone's overall claimed loss of $3,869,744, or 42%, was attributable to transactions that were arguably unrelated to the alleged fraud. *See* 11/27/18 Order (Dkt. No. 152) at 6-7. Those transactions consisted of January 2019 $450 call options supposedly purchased ***after*** Defendant Musk's August 7, 2018 tweet (*i.e.*, ". . . funding secured."). Whether and to what extent Bridgestone would be able to establish "reliance" for these transactions was the issue that led the Court to develop "concerns" regarding Bridgestone's "adequacy or typicality." *Id*. at 6.

Bridgestone argues that the Court erred in considering this issue because Littleton did not provide proof in support of the argument. Bridgestone Mot. at 8-9.[6] This is not true. Bridgestone's certification

---

[5]     It is also consistent with the PSLRA and permitted by *Cavanaugh* for the Court to determine that a lead plaintiff movant such as Bridgestone who suffered no losses as a result of holding a short position does not have the largest financial interest in the relief sought by a class consisting in substantial part of investors who lost money from short positions. Either of the grounds of financial interest or adequacy and typicality ground would be sufficient for the Court to deny Bridgestone's motion to be appointed lead plaintiff and continue, in sequential fashion, to Littleton's motion.

[6]     Bridgestone also references the fact that Littleton raised this argument for the first time in reply. Bridgestone Mot. at 3-4, 9. As explained at the November 27, 2018 hearing, PSLRA lead plaintiff motions are often briefed in an atypical fashion, given that substantive arguments are not truly made until the opposition brief is filed. 11/15/18 Transcript (Apton Decl., Ex. B) at 53. In any event, Bridgestone has now been given a full opportunity to respond to the argument by way of the Court's decision to hear the

and loss chart, which it filed in support of its motion for lead plaintiff, listed its various transactions in Tesla securities before and during the Class Period. *See* Bridgestone Certification and Loss Chart, Dkt. Nos. 52-1, 52-2, 52-5. The charts show that Bridgestone purchased the January 2019 $450 call options ***during*** the Class Period, *i.e.*, after Defendant Musk's August 7, 2018 tweet. Thus, Bridgestone's own sworn certification was all that was required to determine that Bridgestone would have faced a significant "unique defense" had the Court appointed it lead plaintiff. This argument is based on the pleadings and declarations submitted by Bridgestone itself. This is exactly the material identified as appropriate by the Ninth Circuit in *Cavanaugh*, 306 F.3d at 730.

It may still be the case that Bridgestone in fact purchased these call options both ***before and after*** Defendant Musk's tweet.[7] If that is true, then Bridgestone most certainly has a significant "reliance" problem. Having not altered its course of conduct in response to the tweet, Bridgestone either disregarded it or was unaware of it. In either event, that would render Bridgestone inadequate, untypical, and potentially subject to unique defenses. *See In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 603 (C.D. Cal. 2009) (class representative atypical because she relied on "broker's supervening misrepresentations" and not statements by defendants); *Deitz v. Comcast Corp.*, No. C 06-06352 WHA, 2007 WL 2015440, at *5 (N.D. Cal. July 11, 2007) ("Because plaintiff did not read any of Comcast's communications, he will be subject to a unique defense that he did not read, and thus could not have relied on, any of the misstatements."); *see also* 1 McLaughlin on Class Actions § 4:18 (14th ed.) (Westlaw 2017) ("[A] purported representative who lacks standing is not a member of the putative class and thus cannot satisfy the typicality or adequate representation requirements"). In any event, under these circumstances, Bridgestone could not possibly be aligned with the interests of other class members and adequately

---

motion for reconsideration.

[7] Musk's tweet was published on August 7, 2018 at 12:48p.m. EDT, during trading hours. Accordingly, it is not apparent whether a trade occurring on August 7, 2018 occurred before or after the tweet. Trading records showing the exact time of when a trade took place would resolve this ambiguity. Despite having the opportunity to provide clarity on this issue, Bridgestone has yet to provide its trading records to Littleton or the Court. *See*, *e.g.*, *Broadfoot v. Barrick Gold Corp.*, No. 17 CIV. 3507 (NRB), 2017 WL 3738444, at *1 (S.D.N.Y. Aug. 9, 2017) (granting competing movant's request for discovery based on evidence contained in the certification regarding potential unique defenses).

represent them.

Given the potential reliance issues Bridgestone faces in connection with its January 2019 $450 call options, the Court was correct to question whether Bridgestone overstated its losses. The fact that such a substantial portion of Bridgestone's loss (approximately $1,641,391 or 42%) arose from these call options gave the Court more than enough ground to reject Bridgestone's claimed financial interest in the litigation. 11/27/18 Order (Dkt. No. 152) at 7 ("This is not to say that a causally related loss based on Bridgestone's purchase of the January 2019 call options cannot be proven; but it does make a substantial portion of its loss assertion uncertain for purposes of the pending motions.").

In response to the Court's holding on this point, Bridgestone tries to use the same logic to discount Littleton's losses. Bridgestone's argument is misguided. Critical to this issue is the fact that Littleton unquestionably bought his call options *prior* to Defendant Musk's tweet. Accordingly, when he was forced to close these positions in response to the tweet, he sustained damages as a result of the alleged fraud. To illustrate, Littleton purchased call options with strike prices of $450 and $500 between December 19, 2017 and August 3, 2018 (before the tweet). By making these purchases, he believed that Tesla's stock would increase in value before January 2020 (the expiration date). When Defendant Musk told the public that he was taking Tesla private at $420 per share, it virtually eliminated any and all possibility of Tesla's stock ever appreciating to $450 or $500 within the life of the contract and the price dropped accordingly. In response, Littleton promptly closed the positions by selling matching options, receiving substantially less than he would have if anyone at that point reasonably believed the stock would ever exceed $450 or $500.

Bridgestone, on the other hand, claims that it purchased its $450 call options after Defendant Musk's tweet. *See* Bridgestone Loss Chart, Dkt. No. 52-5; *see also* 11/15/18 Transcript (Apton Decl., Ex. B) at 51 (Bridgestone's counsel: "So to the extent that they're arguing that there's no reliance, they're simply incorrect. Mr. Liu, on behalf of Bridgestone, certainly relied on the tweet in purchasing that particular option."). If, as Bridgestone claims, it relied on Musk's tweet when purchasing the $450 call options, then it's unclear whether Bridgestone deserves to receive any compensation at all. Believing that Musk was taking Tesla private at $420, he assumed the substantial risk of Tesla's stock never surpassing $467.85 per share (the exercise price of $450 plus the highest premium paid of $17.85 for these call option

9

contracts).[8]

The Court was absolutely correct to question whether "a substantial portion of [Bridgestone's] loss assertion" was "uncertain for the purposes of the [lead plaintiff] motions." *See* 11/27/18 Order (Dkt. No. 152) at 6-7. The same questions do not apply when analyzing Littleton's losses. Moreover, while Littleton held various positions in an effort to protect against risk (Bridgestone refers to this as "straddling," Dkt. No. 158 at 8), such investing strategies will not render Littleton "vulnerable at trial to a unique defense." *See*, *e.g.*, *In re WorldCom Inc. Sec. Litig.*, 219 F.R.D. 267, 281-82 (S.D.N.Y. 2003) (holding that "[n]one of the different strategies that these institutional plaintiffs . . . used to make investment decisions on behalf of their beneficiaries suggests that these plaintiffs will be vulnerable at trial to a unique defense that will defeat the presumption that they relied on the public statements about [defendant] that are at issue here . . . ."); *accord In re Diamond Foods, Inc.*, 295 F.R.D. 240, 252-53 (N.D. Cal. 2013) (rejecting atypicality argument class certification notwithstanding fact that representative relied on third-party investment advisor that performed "own research and review of publicly available information"); *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 578 (N.D. Cal. 2009) (rejecting "unique defense" argument even though lead plaintiff "made at least some of its trades based on a computer program that was designed to mirror a stock index").

Bridgestone's only cited authority on this point is *In re MicroStrategy Inc. Securities Litigation*, 110 F. Supp. 2d 427 (E.D. Va. 2000). That case does not change the outcome on this issue. The lead plaintiff movant at issue in that case was a hedge fund with several problems in terms of its motion. First, instead of providing its "specific transactions that led to a loss, [the hedge fund] submitted a conclusory affidavit and a collection of indecipherable financial statements that purported to support the affidavit's conclusion" on the loss amount. *Id*. at 436. Second, "most of [the hedge fund's] losses occurred before defendants issued the first correction on March 20, 2000," thus raising the question of whether the losses were even recoverable. *Id*. at 437 n.23. Those circumstances are not present in the matter at hand and,

---

[8] This addresses Bridgestone's point in the last footnote on the last page of its motion. Dkt No. 158 at 10 n.10. Although the class does include sellers, not all losses are necessarily recoverable. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005). Whether and to what extent an investor holding these types of options was damaged is a question for another day.

accordingly, *MicroStrategy* is not applicable.

## IV. CONCLUSION

For the foregoing reasons, Littleton respectfully requests the Court deny Bridgestone's motion for reconsideration in its entirety.

Dated: December 10, 2018

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

/s/ Adam M. Apton
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: 415-291-2420
Email: aapton@zlk.com
Email: amccall@zlk.com

Nicholas I. Porritt (admitted pro hac vice)
Alexander A. Krot III (to be admitted pro hac vice)
1101 30th Street, NW, Suite 115
Washington, DC 20007
Tel: 202-524-4290
Email: nporritt@zlk.com

Eduard Korsinsky (to be admitted pro hac vice)
55 Broadway, 10th Floor
New York, New York 10006
Tel: 212-363-7500
Email: ek@zlk.com

*Attorneys for Lead Plaintiff Glen Littleton and Lead Counsel for the Class*