ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN (211456)
DANIELLE S. MYERS (259916)
RANDI D. BANDMAN (145212)
TRICIA L. McCORMICK (199239)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
rachelj@rgrdlaw.com
dmyers@rgrdlaw.com
randib@rgrdlaw.com
triciam@rgrdlaw.com

LIEFF, CABRASER, HEIMANN
  & BERNSTEIN, LLP
ELIZABETH J. CABRASER (83151)
RICHARD M. HEIMANN (63607)
KATHERINE C. LUBIN (259826)
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415/956-1000
415/956-1008 (fax)
ecabraser@lchb.com
rheimann@lchb.com
kbenson@lchb.com

[Proposed] Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re TESLA, INC. SECURITIES LITIGATION | ) Case No. 3:18-cv-04865-EMC |
| | ) <u>CLASS ACTION</u> |
| This Document Relates To: | ) |
| | ) DANY DAVID'S REPLY IN FURTHER SUPPORT OF MOTION FOR RECONSIDERATION OF LEAD PLAINTIFF ORDER |
| ALL ACTIONS. | ) |

1511613_1

Failing to address the narrow premise of Dany David's reconsideration motion, Glen Littleton concedes there is a clear error in the determination that "Mr. Littleton has adequately addressed Mr. David's argument that Mr. Littleton is a net seller/net gainer – *i.e.*, that such is not the case when options and short positions are taken into account." ECF No. 152 at 7; ECF No. 156 at 1. Indeed, Mr. Littleton agrees that, but for his pre-Class Period positions, he is a net seller and net gainer, ***and*** that net sellers who are also net gainers cannot serve as lead plaintiff. *See* ECF No. 161 at 5 ("Littleton was harmed as a result of the alleged fraud ***from the positions he opened prior to the class period*** and closed during the class period") and *id.* at 2-3 ("[a]n investor who is a 'net seller', i.e., who sells more securities than he she buys during a class period may be unsuited to serve as lead plaintiff when this trading results in a net gain during the class period") (citing *Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *9 (N.D. Cal. Feb. 15, 2011)).[1]  The Court should grant Mr. David's reconsideration motion.[2]

Rather than address this controlling question, Mr. Littleton instead repeats the same refrain from his reply brief which turns on the false premise that this is simultaneously a purchaser (artificial inflation) and seller (artificial deflation) case. *See generally* ECF No. 161 at 1 ("David's argument assumes that the class in this case consists only of purchasers of Tesla securities. The class, however, consists of all persons who transacted in Tesla securities during the class period, whether purchasers or sellers."), *id.* at 3 ("A large contingent of the class consists of Tesla investors who sold stock or other securities such as options after the first alleged misrepresentation, *i.e.*, Defendant Musk's tweet on August 7, 2018."). It is not.

As Mr. David explained, the net seller/net gainer "analysis was based on Mr. Littleton's Certification and class definition, not a subset thereof." ECF No. 156 at 2 n.1. Mr. Littleton's straw-man argument to the contrary is further undermined by the fact that Mr. David not only had a long stock position, he also sold Tesla shares short before covering by purchasing Tesla stock at inflated

---

[1] All emphasis is added and all citations are omitted unless otherwise noted.

[2] After Mr. David's reconsideration motion was filed, Bridgestone Investment Corporation Limited also filed a reconsideration motion. *See* ECF No. 158. Mr. Littleton and Bridgestone are similarly situated. *See* ECF No. 111 at 9. Therefore, if the Court concludes that Mr. Littleton cannot serve as lead plaintiff because he is a net seller and net gainer, the same is true of Bridgestone. *Id.*

prices during the Class Period. *See* ECF No. 81-2. Mr. Littleton does not explain why Mr. David would have advocated for excluding his own transactions from the case – and indeed, Mr. David did not do so. Put simply: using Mr. Littleton's own "comprehensive class definition," he is a net seller/net gainer when his options and short positions during the Class Period are included in the analysis. *See* ECF No. 156 at 1, 2 n.1.

Equally flawed is Mr. Littleton's contention that this is simultaneously a buyer (inflation) and seller (deflation) case, and "not a conventional securities class action" such that the "presumption against net sellers discussed in *Perlmutter* is irrelevant." ECF No. 161 at 1-2. It is a matter of common sense that the price of a security cannot be both artificially inflated and artificially deflated at the same time. But even if both could simultaneously coexist, as the Order explains, "[a]ccording to plaintiffs, Mr. Musk's statements led to a trading frenzy that ***drove up the value of Tesla's securities***." ECF No. 152 at 1; Transcript at 16:3-6.

Indeed, this is a conventional securities case action that seeks to recover damages on behalf of all Tesla securities investors who "purchased Tesla securities after the alleged fraud (*i.e.*, when the price of the securities was artificially inflated) and then sold after the truth began to be disclosed" as well as those investors who "covered their short positions by purchasing Tesla securities after the alleged fraud (again, when the price of the securities was artificially inflated)." ECF No. 152 at 6; *see also* Transcript at 11:2-12, 13:19-16:7.[3] Mr. Littleton is therefore wrong to claim that this case seeks to recover on behalf investors for their Class Period sales of stock, or sales of call options or purchases of put options; those investors were ***not harmed*** but instead ***benefitted*** from the alleged fraud when they transacted at artificially inflated prices. Transcript at 16:3-6.[4] Because this is a

---

[3] As the Court noted at the hearing, while a person who sells shares short is technically called a "seller," he is harmed when he ***buys*** stock to cover at an artificially inflated price. *See* Transcript at 11:2-12. The seller of a put option is identically situated. *See id.* at 13:19-15:16.

[4] If this were a true sellers' case complaining of artificial ***de***flation in the price of a security, sellers of stock and call options and buyers of put options during a class period would be included. *See, e.g.*, *Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 947 (N.D. Ill. 2007) (defining sellers' class to include sellers of stock, sellers of call options, and buyers of put options). Artificial ***de***flation is not what the complaints allege transpired here.

prototypical artificial inflation case in every respect, the standard inquiry as to whether a movant like Mr. Littleton benefited from the artificial inflation during the Class Period is highly relevant.[5]

Rather than simply selling put option contracts and buying Tesla stock during the Class Period to close those short positions (which would not give rise to a net seller/net gainer issue), Mr. Littleton opened massive positions *before* the Class Period (which is outside the class definition, as Mr. Littleton's counsel has acknowledged (Transcript at 54:17-23)) and closed those positions during the Class Period at artificially inflated prices. He therefore benefited from the artificial inflation associated with defendants' alleged fraud. Courts (*and* Mr. Littleton himself) agree that that scenario forecloses appointment as lead plaintiff, irrespective of whether stock or options are the subject of the inquiry. *See Perlmutter*, 2011 WL 566814, at *9; *see also* ECF No. 161 at 2; Transcript at 15:14-17.

One series of transactions involving Tesla January $500 call options poignantly illustrates Mr. Littleton's net seller/net gainer status as well as the flaw in his untenable position that "all persons . . . whether purchasers or sellers" comprise the class in this case. ECF No. 161 at 1. Months *before* the Class Period, Mr. Littleton bought 250 Tesla January $500 call options. *See* ECF No. 42-2 at 8. During the Class Period, he first sold those same 250 Tesla January $500 call options and then sold an additional 75 Tesla January $500 call options:

---

[5] While Mr. Littleton wrongly depicts Mr. David as failing to "fully appreciate" that selling certain options can later yield a stock purchase (ECF No. 161 at 1), Mr. Littleton's real quibble with the net seller/net gainer nomenclature in this scenario involving stock and call option purchases as well as short sales and put option sales (that resulted in stock purchases) appears to be largely semantical. The reality is that Mr. Littleton closed more positions than he opened during the Class Period ("net seller"), and did so at artificially inflated prices, thereby benefitting from the alleged fraud ("net gainer"). Whether the phrase is net seller/net gainer or net closer/net benefiter, the outcome is the same: Mr. Littleton qualifies as such and he cannot serve as lead plaintiff. *See Perlmutter*, 2011 WL 2011 WL 566814, at *9.

| Date of Transaction | (B), (S), (SO), (BO), (SC) or (BC)* | Security | Quantity | Price ($) | Cost/Proceeds ($) |
|---|---|---|---|---|---|
| 6/29/2018 | BO | C TSLA JAN 500 | 25 | 39.7184 | 99,296.00 |
| 6/29/2018 | BO | C TSLA JAN 500 | 25 | 39.1996 | 97,999.00 |
| 6/29/2018 | BO | C TSLA JAN 500 | 25 | 39.0704 | 97,676.00 |
| 6/29/2018 | BO | C TSLA JAN 500 | 25 | 38.9332 | 97,333.00 |
| 6/29/2018 | BO | C TSLA JAN 500 | 13 | 39.34 | 51,142.00 |
| 6/29/2018 | BO | C TSLA JAN 500 | 25 | 39.1788 | 97,947.00 |
| 6/29/2018 | BO | C TSLA JAN 500 | 12 | 39.04666667 | 46,856.00 |
| 6/29/2018 | BO | C TSLA JAN 500 | 25 | 39.5296 | 98,824.00 |
| 6/29/2018 | BO | C TSLA JAN 500 | 25 | 39.5708 | 98,927.00 |
| 6/29/2018 | BO | C TSLA JAN 500 | 25 | 38.3072 | 95,768.00 |
| 6/29/2018 | BO | C TSLA JAN 500 | 4 | 38.13 | 15,252.00 |
| 6/29/2018 | BO | C TSLA JAN 500 | 21 | 38.2952381 | 80,420.00 |
| 8/8/2018 | SC | C TSLA JAN 500 | (50) | 17.25 | (86,250.00) |
| 8/8/2018 | SC | C TSLA JAN 500 | (50) | 16.25 | (81,250.00) |
| 8/8/2018 | SC | C TSLA JAN 500 | (50) | 17.25 | (86,250.00) |
| 8/8/2018 | SC | C TSLA JAN 500 | (50) | 17.25 | (86,250.00) |
| 8/8/2018 | SC | C TSLA JAN 500 | (50) | 17.5 | (87,500.00) |
| 8/10/2018 | SO | C TSLA JAN 500 | (25) | 18.25 | (45,625.00) |
| 8/10/2018 | SO | C TSLA JAN 500 | (25) | 18.25 | (45,625.00) |
| 8/14/2018 | SO | C TSLA JAN 500 | (10) | 12.75 | (12,750.00) |
| 8/14/2018 | SO | C TSLA JAN 500 | (10) | 12.75 | (12,750.00) |
| 8/14/2018 | SO | C TSLA JAN 500 | (5) | 12.75 | (6,375.00) |
| 8/27/2018 | BC | C TSLA JAN 500 | 25 | 21.1 | 52,750.00 |
| 8/27/2018 | BC | C TSLA JAN 500 | 25 | 23.25 | 58,125.00 |
| 8/27/2018 | BC | C TSLA JAN 500 | 25 | 23.096 | 57,740.00 |
| | | | | Loss / (Gain) ($) | 595,430.00 |

Annotations on rows:
- **Pre-Class Period Opening Position** → (6/29/2018 BO rows)
- **Class Period Closing Position** → (8/8/2018 SC rows)
- **Class Period Open Position** → (8/10/2018 and 8/14/2018 SO rows)

*See* ECF No. 42-2 at 8.  As the standard net seller/net gainer inquiry confirms, Mr. Littleton sold more options (325) than he purchased (0) ***during the Class Period***, and received more ($550,625) than he expended ($0) ***during the Class Period***.[6]  That is ***identical*** to the facts in *Perlmutter*.  *See* 2011 WL 566814, at *9 ("[W]hen Marcus purchased Intuitive stock prior to the Class Period, he purchased it at fair market value. When he sold it during the Class Period, however, he sold it at fraudulently inflated prices. As a result, instead of being injured by the fraud on these sales, Marcus actually benefitted from the fraud.").  As such, Mr. Littleton is a classic net seller/net gainer (or, as he may prefer, a net closer/net benefiter) and cannot serve as lead plaintiff.  *See id.* ("Marcus' status as a net seller and a net gainer during the Class Period weighs against Marcus' appointment as the lead plaintiff" because "[b]esides demonstrating that he potentially benefitted from Defendants' fraud, Marcus' status as a net seller and a net gainer . . . may subject him to unique defenses if he were to be the class representative.").

---

[6] Notably, Mr. Littleton was only able to claim a loss because he included ***pre- and post***-Class Period transactions – neither of which are directly relevant to either the case or the net seller inquiry, as Mr. Littleton's counsel has duly acknowledged.  *Compare* ECF No. 42-2 at 8 *with* Transcript at 54:17-23 ("And if [the options] were purchased, obviously, before the tweet, then obviously they're not part of the case.").  Stated differently, Mr. Littleton cannot recover the losses on the Tesla January $500 call options because he did not purchase the options during the Class Period when their price was alleged to have been artificially inflated.  His loss on the purchase of these Tesla January $500 call options was incurred outside the Class Period (and not in reliance on the tweet) and is entirely irrelevant to the "relief sought by the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

The second part of the transaction also demonstrates the fallacy in Mr. Littleton's portrayal of this case as both a seller and buyer case. During the Class Period, Mr. Littleton *sold* 75 Tesla January $500 call options, but did not repurchase those options until *after* the Class Period:

| Date | Action | Option | Qty | Price | Amount |
|---|---|---|---|---|---|
| 8/10/2018 | SO | C TSLA JAN 500 | (25) | 18.25 | (45,625.00) |
| 8/10/2018 | SO | C TSLA JAN 500 | (25) | 18.25 | (45,625.00) |
| 8/14/2018 | SO | C TSLA JAN 500 | (10) | 12.75 | (12,750.00) |
| 8/14/2018 | SO | C TSLA JAN 500 | (10) | 12.75 | (12,750.00) |
| 8/14/2018 | SO | C TSLA JAN 500 | (5) | 12.75 | (6,375.00) |
| 8/27/2018 | BC | C TSLA JAN 500 | 25 | 21.1 | 52,750.00 |
| 8/27/2018 | BC | C TSLA JAN 500 | 25 | 23.25 | 58,125.00 |
| 8/27/2018 | BC | C TSLA JAN 500 | 25 | 23.096 | 57,740.00 |

ECF No. 42-2. And, Mr. Littleton actually *gained* $45,490 when he repurchased *after* the Class Period (which purchases are outside the scope of the litigation), which confirms why Class Period sellers of call options have no claim (as opposed to pre-Class Period sellers of puts who do have a claim *if* they also purchased during the Class Period).

As he did in his reply brief, Mr. Littleton continues to obfuscate the purpose behind isolating the calculation of net sales (net closings) and net gains (net benefits) to the Class Period – *i.e.*, "to determine whether a party potentially benefitted from the fraud" (*Perlmutter*, 2011 WL 566814, at *9) – by echoing his prior response that "as a result of his long call positions ***entered into before the class period*** or during the class period, Littleton incurred losses of approximately $3,296,977.20." *Compare* ECF No. 161 at 5-6 ("Littleton was harmed as a result of the alleged fraud from the positions he ***opened prior to the class period*** and closed during the class period.") *with* ECF No. 118 at 1-2, 8-10.[7] But pre-Class Period purchases of call options are simply outside the scope of the net seller/net gainer analysis, which looks exclusively at what an investor expended and received during the period of artificial inflation caused by defendants' false statements. That is not, as Judge Koh recognized, "the same as determining whether a party lost or earned money trading in a particular stock." *Perlmutter*, 2011 WL 566814, at *9. "As alleged in the complaint, Defendants' fraud artificially inflated [Tesla's] stock price during the Class Period. Thus, when [Littleton] purchased

---

[7] Mr. Littleton's statement that "counsel for David conceded at oral argument that an investor who purchases stock at an inflated price to close a pre-class period open short stock position has suffered a loss and is included in the class," merely confirms that rather than excluding short sellers or sellers of put options from the class, or failing to "fully appreciate" the nature of option transactions, Mr. David comprehends the nature of the claims and who was harmed by defendants' alleged wrongdoing. ECF No. 161 at 1, 4 (citing Transcript at 24-25).

1  [Tesla] stock prior to the Class Period, he purchased it at fair market value. When he sold it during
2  the Class Period, however, he sold it at fraudulently inflated prices. As a result, instead of being
3  injured by the fraud on these sales, [Littleton] actually benefitted from the fraud." *Id.*

4  Judge Koh further clarified that, in conducting the net seller/net gainer analysis, it matters not
5  whether a movant reports a profit or loss on pre-class period positions closed during the class period
6  because "[e]ven if [a movant] lost money in all of his . . . stock transactions, this amount was
7  reduced by his Class Period sales when the stock prices were inflated." *Id.*  As such, Mr. Littleton's
8  continued reference to his ***pre-***Class Period open long positions that were closed during the Class
9  Period does not refute the fact that he is a net seller and net gainer ***during*** the Class Period. *See* ECF
10 No. 152 at 7.

11 Nor is this inconvenient truth avoided by Mr. Littleton's focus on a handful of isolated
12 positions without regard to the overall net impact of ***all*** of his Class Period transactions. *See* ECF
13 No. 161 at 5-6 (contending Mr. Littleton lost money on a few discrete Class Period stock and option
14 transactions).  The purpose of the net seller/net gainer analysis is to holistically assess a movant's
15 class period investments to determine whether that movant received more during the ***entire*** period of
16 alleged artificial inflation than was expended, thereby benefitting from the alleged fraud.
17 *Perlmutter*, 2011 WL 566814, at *9. Mr. Littleton does not, and cannot, dispute that he did benefit
18 from the artificial inflation in this case, receiving far more in proceeds than he expended during the
19 entire Class Period:

| Movant | Shares or Options Purchased During Class Period | Funds Expended on Purchases | Shares or Options Sold During Class Period | Funds Received on Sales | Loss/Gain on Class Period Transactions |
|---|---|---|---|---|---|
| Mr. Littleton | 100 shares<br>2,325 options | $35,043<br>$9,450,364 | 0 shares<br>3,630 options | $0<br>$11,958,574 | ($3,552) loss on shares<br>**$2,473,167 gain on options**<br>**$2,469,615 total gain** |

*See* ECF No. 111 at 9; ECF Nos. 42-1, 42-2.

Mr. Littleton's new case citations do not alter the analysis. *See* ECF No. 161 at 7.  The
defendants in *Levie* – a traditional seller case in which the complaint alleges the stock price was
artificially deflated, not inflated – actually "attack the definition of the class, arguing that 'in-and-

1511613_1   DANY DAVID'S REPLY IN FURTHER SUPPORT OF MOTION FOR RECONSIDERATION OF
LEAD PLAINTIFF ORDER - 3:18-cv-04865-EMC                                                                    - 6 -

1 outs' cannot be members of the class *because they cannot prove loss causation*."  496 F. Supp. 2d at 947-48 (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005)).  Loss causation asks whether, during a class period, an investor both bought *and* sold securities before the revelation of the alleged fraud.  *Id.*  That inquiry is wholly distinct from whether an investor is a net seller/net gainer, which was not at issue in *Levie*.

Mr. Littleton also cites *Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*, 2005 WL 1366025 (D.N.J. June 8, 2005), which held that "allegations relating to transaction causation in this short-selling context are sufficient to withstand a motion to dismiss based on loss causation" because "[i]n the short-selling context, losses caused by artificially inflated stock prices are incurred at the time of cover."  *Id.* at *7.  But, loss causation for short sellers is not the subject of the reconsideration motion.  More to the point, *Rocker* simply does not imply, let alone hold, that Mr. Littleton, a net seller/net gainer during the Class Period, can be a lead plaintiff in this case.  As with *Levie*, *Rocker* did not address the net selling/net gaining concept at all.

*San Antonio Fire & Police Pension Fund v. Dole Food Co., Inc*., 177 F. Supp. 3d 838 (D. Del. 2016) is similarly unavailing as it too involved a seller-only case (which this is not).  *See id.* at 840 ("The fact that Dole Institutional Investor Group did not suffer a loss in the traditional sense is not dispositive, given that the underlying basis for recovery is the sale of shares at an artificially *depressed price*.").  Mr. Littleton does not contend, nor could he, that Tesla's securities were artificially depressed during the Class Period.  *See* ECF No. 41 at 9 ("Movant, like other members of the Class, acquired or sold Tesla securities during the Class Period at prices artificially *inflated* by the defendants' materially false and misleading statements, and were damaged thereby.").

In conclusion, Mr. Littleton does not dispute that he *is* a net seller and a net gainer (or net closer/net benefiter) *during the Class Period* because of his long and short option positions.  Mr. Littleton also agrees that the case law is clear that net sellers who are also net gainers cannot serve as lead plaintiff.  *See* ECF No. 161 at 2 ("Net sellers are only unsuitable to act as lead plaintiffs when they have potentially benefitted from the fraud by receiving a net gain during the class period.").

In opposing reconsideration, Mr. Littleton merely equivocates (again) that he is not a net seller or net gainer if his *pre-Class Period* transactions are considered.  *See* ECF No. 161 at 5.  As

1  such, there was a clear error in the Order's determination that Mr. Littleton was not a net seller/net

2  gainer (or net closer/net benefiter) when the entirety of his Class Period trading, including options

3  and short positions, is taken into account.  *See* ECF No. 152 at 7.  Accordingly, Mr. David

4  respectfully submits that the Court should reconsider the Order, deny Mr. Littleton's motion, and

5  appoint Mr. David as Lead Plaintiff.

6  DATED:  December 11, 2018            Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
RACHEL L. JENSEN
DANIELLE S. MYERS
RANDI D. BANDMAN
TRICIA L. McCORMICK


              s/ Danielle S. Myers
            DANIELLE S. MYERS

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

LIEFF, CABRASER, HEIMANN
 & BERNSTEIN, LLP
ELIZABETH J. CABRASER
RICHARD M. HEIMANN
KATHERINE C. LUBIN
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415/956-1000
415/956-1008 (fax)

[Proposed] Lead Counsel for Plaintiff

1511613_1

DANY DAVID'S REPLY IN FURTHER SUPPORT OF MOTION FOR RECONSIDERATION OF
LEAD PLAINTIFF ORDER - 3:18-cv-04865-EMC                                                                                       - 8 -

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on December 11, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

    s/ Danielle S. Myers
    DANIELLE S. MYERS

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dmyers@rgrdlaw.com

1511613_1

# Mailing Information for a Case 3:18-cv-04865-EMC In re Tesla Inc. Securities Litigation

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzi.abadou@ksfcounsel.com,dawn.hartman@ksfcounsel.com

- **Adam Marc Apton**
  aapton@zlk.com

- **Randi D. Bandman**
  randib@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,aepstein@fenwick.com

- **Elizabeth Joan Cabraser**
  ecabraser@lchb.com

- **Robert Nicholas Cappucci**
  rcappucci@entwistle-law.com,ncasey@entwistle-law.com,ffleming@entwistle-law.com

- **Mario Man-Lung Choi**
  mchoi@kaplanfox.com

- **Andrew John Entwistle**
  aentwistle@entwistle-law.com,jbeemer@entwistle-law.com,bbrodeur@entwistle-law.com,sriegert@entwistle-law.com,RArnall@Entwistle-Law.com,ffleming@entwisle-law.com,ncasey@entwistle-law.com,mgayle@entwistle-law.com,rcappucci@entwistle-law.com

- **Frederic S. Fox**
  FFox@kaplanfox.com

- **Eric Marc George**
  egeorge@bgrfirm.com,khall@bgrfirm.com,cbonilla@bgrfirm.com

- **David William Hall**
  dhall@hedinhall.com

- **Richard Martin Heimann**
  rheimann@lchb.com

- **Rachel Lynn Jensen**
  rachelj@rgrdlaw.com,e_file_sd@rgrdlaw.com,6139295420@filings.docketbird.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,peterb@hbsslaw.com,brianm@hbsslaw.com,sf_filings@hbsslaw.com

- **Ashley Conrad Keller**
  ack@kellerlenkner.com

- **Christopher J. Keller**
  ckeller@labaton.com,5497918420@filings.docketbird.com,kgutierrez@labaton.com,electroniccasefiling@labaton.com

- **Laurence D. King**
  lking@kaplanfox.com,spowley@kaplanfox.com,nlee@kaplanfox.com

- **Dean S. Kristy**
  dkristy@fenwick.com,kayoung@fenwick.com,lkelleybourne@fenwick.com

- **Katherine Collinge Lubin**
  klubin@lchb.com

- **Mara Rachelle Ludmer**
  mludmer@fenwick.com

- **Adam Christopher McCall**
  amccall@zlk.com

- **Francis P McConville**
  fmcconville@labaton.com,kgutierrez@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Tricia Lynn McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,3045517420@filings.docketbird.com,e_file_sd@rgrdlaw.com

- **Arthur Vincent Nealon**
  anealon@entwistle-law.com

- **Uri Seth Ottensoser**
  so@kellerlenkner.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,jpalazzolo@pomlaw.com

- **Nicholas Ian Porritt**
  nporritt@zlk.com

- **Carl Alan Roth**
  croth@bgrfirm.com,khall@bgrfirm.com,mbetti@bgrfirm.com

- **Marc M. Seltzer**
  mseltzer@susmangodfrey.com,ecf-4d2b1f772250@ecf.pacerpro.com,hdanielson@susmangodfrey.com,ecf-67366a65900c@ecf.pacerpro.com

- **Michael Walter Stocker**
  mikes@hbsslaw.com,sf_filings@hbsslaw.com

- **James Matthew Wagstaffe**
  wagstaffe@kerrwagstaffe.com,reboredo@kerrwagstaffe.com,bechtol@kerrwagstaffe.com

# Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`