**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 291-2420
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for Lead Plaintiff Glen Littleton*
*and Lead Counsel for the Class*

[Additional counsel on signature blocks]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | No. C-18-04865 |
| | Hon. Edward M. Chen |
| | **LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO SERVE NON-PARTY DOCUMENT PRESERVATION SUBPOENAS** |
| | DATE: January 17, 2019<br>TIME: 1:30 p.m.<br>COURTROOM: Courtroom 5 – 17th Floor |

<u>**NOTICE OF MOTION AND MOTION**</u>

TO:    ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

      PLEASE TAKE NOTICE that on January 17, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Edward M. Chen, Lead Plaintiff Glen Littleton ("Plaintiff"), by their undersigned counsel, will move this Court for an Order granting leave to issue non-party subpoenas for the preservation of documents.

      This motion is based on this notice of motion, the supporting memorandum of points and authorities, the Declaration of Adam M. Apton ("Apton Decl.") in support thereof, the pleadings, other files and records in this action, and such other written or oral argument as may be presented to the Court.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether leave should be granted to Plaintiff to serve subpoenas on a limited number of non-parties requiring them to preserve documents relevant to this action until a time later in the proceedings when Plaintiff can obtain formal discovery.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Among the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA" or the "Act") is one requiring a "[s]tay of [d]iscovery . . . during the pendency of any motion to dismiss." 15 U.S.C. §78u-4(b)(3)(B). The PSLRA provides that, during this period, evidence relevant to the litigation must be adequately preserved by the *parties*. 15 U.S.C. §78u-4(b)(3)(C) (emphasis added). Non-parties are under *no* statutory obligation to preserve evidence that is relevant to this litigation. *See, e.g., In re Equifax Inc.*, No. 1:17-CV-3463-TWT, 2018 U.S. Dist. LEXIS 101041, at *24 (N.D. Ga. June 15, 2018). Plaintiff brings this motion to preserve evidence that these non-parties might otherwise discard, destroy, or misplace in the normal course of business operations or day-to-day living. This is especially important given that the relevant evidence in possession of these entities is in electronic form, *e.g.*, Twitter or Instagram messaging, and is inherently fluid and therefore prone to being discarded inadvertently.

This case arises from Defendant Musk's tweet on August 7, 2018 stating "Am considering taking Tesla private at $420. Funding secured." Complaint, Dkt. No. 1, ¶4. Whether and to what extent Musk was telling the truth when he wrote this is paramount. Indeed, in connection with making this tweet, Plaintiff alleges that Musk and Tesla violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j, and SEC Rule 10b-5, 17 C.F.R. 240.10b-5. To establish a violation under these rules, Plaintiff must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016) (internal quotations omitted).

Plaintiff has identified several non-party sources with information relevant to this case. These sources are: **Business Insider**, an American financial and business news website; **Gizmodo**, a design, technology, science and science fiction website; **The New York Times**; Musk's former girlfriend, **Claire Elise Boucher** (also known as "Grimes"); and **Azealia Amanda Banks**, a current or former friend of Ms. Boucher. As explained below, Ms. Boucher and Ms. Banks were in direct contact with Musk in the hours and days following the tweet. Ms. Boucher and Ms. Banks shared details about what they observed with

several news outlets, including Business Insider, Gizmodo, and The New York Times.

Plaintiff brings this motion to ensure that these non-parties preserve all evidence relevant to the tweet, as it may be important as the litigation unfolds. Plaintiff respectfully requests leave from the Court to serve preservation subpoenas on these individuals and entities. A copy of the proposed subpoena is filed herewith as an exhibit to the accompanying Declaration of Adam M. Apton.

## II.    BACKGROUND FACTS RELEVANT TO MOTION

### A.    Business Insider

On August 13, 2018, Business Insider published an article titled "Rapper Azealia Banks claims she was at Elon Musk's house over the weekend as he was 'scrounging for investors'." A copy of the article is attached to the Apton Declaration as Exhibit A. The article provides an account of what occurred at Musk's house in the hours and days following the August 7, 2018 tweet, as provided by Ms. Banks to Business Insider. Of significance, the article quotes Ms. Banks saying that she observed Musk "stressed and red in the face" while "scrounging for investors" in an attempt to "cover" for the tweet. Ms. Banks told the author of the article that Musk "in fact – didn't have any funding secured."

### B.    Gizmodo

Also on August 13, 2018, Gizmodo published an article titled "Elon Musk Responds to Azealia Banks' Claims of Ghosting, Tweeting, and LSD: I Don't Know Her." A copy of the article is attached to the Apton Declaration as Exhibit B. The article reiterated the claims made by Ms. Bank (as described in the Business Insider article), but also provided a statement in response obtained directly from Musk. According to Gizmodo, Musk told Gizmodo that he "has never even met [Ms. Banks] or communicated with her in any way."

### C.    The New York Times

On August 16, 2018, the New York Times published an in-depth article on Musk after an interview. A copy of the article is attached to the Apton Declaration as Exhibit C. The article, titled "Elon Musk Details 'Excruciating' Personal Toll of Tesla Turmoil," featured a detailed timeline of Musk's day on the day of the tweet. The article also discussed, in detail, the veracity of the tweet itself. In pertinent part, the article states: "Mr. Musk has said he was referring to a potential investment by Saudi Arabia's

government investment fund. Mr. Musk had extensive talks with representatives of the $250 billion fund about possibly financing a transaction to take Tesla private — maybe even in a manner that would have resulted in the Saudis' owning most of the company. One of those sessions took place on July 31 at the Tesla factory in the Bay Area, according to a person familiar with the meeting. But the Saudi fund had not committed to provide any cash, two people briefed on the discussions said."

### D. Claire Elise Boucher

According to the New York Times' interview, Ms. Boucher may have been the last person Musk spoke with prior to sending the August 7, 2018 tweet at issue in this lawsuit. According to Ms. Banks (as discussed in the Business Insider article), Ms. Boucher was with Musk in the hours and days following the tweet. If, as Ms. Banks claims, Musk was actively attempting to find investors to "cover" for the tweet, then Ms. Boucher likely observed this behavior or overheard conversations between Musk and potential investors. It is also likely that Ms. Boucher, as Musk's girlfriend, discussed the tweet and/or the fallout caused by it with Musk shortly after it was sent.

### E. Azealia Amanda Banks

Ms. Banks has proven to be a key source of information in this matter. As recounted by Business Insider, she purportedly observed Musk attempting to "cover" for the tweet after it was sent. She was also present in Musk's home in Los Angeles while Musk was dealing with the fallout from the tweet and likely observed relevant events in addition to those described in the media.

## III. ARGUMENT

### A. The PSLRA Requires the Preservation of Relevant Evidence by Parties Only.

The PSLRA includes a provision intended to ensure that the parties preserve evidence while a stay is effective:

> During the pendency of any stay of discovery pursuant to this paragraph, unless otherwise ordered by the court, any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(b)(3)(C)(i).

The PSLRA does not specifically provide for a similar rule with respect to documents in the possession of non-parties. *See*, *e.g.*, *In re Equifax Inc.*, 2018 U.S. Dist. LEXIS 101041, at *24 (noting that third-parties are not subject to "document preservation mandate of the PSLRA"); *In re Grand Casinos, Inc. Secs. Litig.*, 988 F. Supp. 1270, 1272 (D. Minn. 1997) ("Unlike the evidence in the parties care, custody or control, the documentary evidence of third-parties is not expressly subject to any preservation Order and, inadvertently, or otherwise, such evidence may be destroyed before the Court rules on the pending dispositive Motion."). Nevertheless, persons and entities who are not parties, such as individuals unaffiliated with Tesla that spoke and/or interviewed Defendant Musk and other persons with information, possess relevant evidence. Because of the extended stay in this case and risk of data purging, that evidence is increasingly in danger of disappearing unless Plaintiff is allowed to issue preservation subpoenas. This risk is very real, as noted in the Gizmodo article. *See* Apton Declaration, Exhibit B at 2 ("Gizmodo, it should be noted, could not verify all of these messages were sent by Banks, which were captured by other reporters but have apparently been deleted since."). The nature of the evidence at stake, *e.g.*, Twitter messages, text messages, and Instagram messages, renders it highly susceptible to deletion. Thus, the relief sought by Plaintiff is necessary.

**B.    Subpoenas Are Necessary Because Various Non-Parties Possess Relevant Information.**

The five sources identified in this motion—Business Insider, Gizmodo, The New York Times, Claire Elise Boucher, and Azealia Amanda Banks—possess relevant information to this lawsuit. They have information bearing on the veracity of Musk's tweet. Business Insider interviewed Ms. Banks, who was present in Musk's home following the tweet and claims to have observed Musk trying to "cover" for it. Gizmodo communicated with Musk, who reportedly disputed Ms. Banks' accounts and even claimed to have never met Ms. Banks. The New York Times conducted an hour-long interview with Musk, focusing directly on the tweet and its consequences for investors. Finally, Ms. Boucher, as Musk's then-current girlfriend, was with Musk both before and after the tweet and is almost certain to have overheard or observed Musk say or take actions relevant to this lawsuit.

4

Although the PSLRA does not specifically address the preservation of evidence in the possession of such third-parties, it could not have intended to prejudice plaintiffs by allowing the wholesale destruction of relevant information. Nevertheless, because of the stay, that is exactly what could happen absent permission to issue subpoenas that notify third-parties to preserve relevant information. Plaintiff is requesting permission to issue five (5) such subpoenas to the identified non-parties.

Allowing lead plaintiffs to serve preservation subpoenas concerning particularized categories of documents will not burden the defendants because the proposed subpoenas impose no obligation on them. *See SG Cowen Sec. Corp. v. U.S. District Court*, 189 F.3d 909, 911 (9th Cir. 1999) (PSLRA discovery stat "'intended to prevent unnecessary imposition of discovery costs **on defendants**'") (citing H.R. Conf. Rep. No. 104-369, 104th Cong. 1st Session at 32 (1995)) (emphasis added)). In interpreting the PSLRA, numerous courts have permitted the issuance of preservation subpoenas and even allowed limited discovery from third-parties. *See*, *e.g.*, *Vezzetti v. Remec*, Civil No. 99CV0796 L(JAH), 2001 U.S. Dist. LEXIS 10462, at *7-8 (S.D. Cal. July 23, 2001) (granting *ex parte* application for leave to serve preservation subpoenas upon nonparties and holding that request via *ex parte* application was proper and less burdensome than noticed motion and drawn out briefing); *Neibert v. Monarch Dental Corp.*, 3-99-CV-762-X, 1999 U.S. Dist. LEXIS 22312, at *4 (N.D. Tex. Oct. 20, 1999) (granting motion to serve third party preservation subpoenas during pendency of defendants' motion to dismiss); *In re Tyco International, Ltd. Sec. Litig.*, MDL No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 11659, at *8 (D.N.H. July 27, 2000) ("service of a limited number of particularized preservation subpoenas on third parties is consistent with the language and purpose of the PSLRA"). Because Plaintiff proposes serving preservation subpoenas only, the burden on third parties is minimal—requiring them simply to retain documents in their possession until the defendants' motion to dismiss is decided once and for all.

On the other hand, were the Court to deny Plaintiff's request and the third-party documents become lost or destroyed, it would be unlikely that Plaintiff could ever establish all facts contained in the documents. *See Chapman v. National Aeronautics & Space Admin.*, 682 F.2d 526, 529 (5th Cir. 1982) (noting "memories fade with the passage of time"). This risk of lost evidence outweighs any inconvenience

the third parties may incur and is "necessary to preserve evidence or to prevent undue prejudice." 15 U.S.C. §78u-4(b)(3)(B).

## IV.    CONCLUSION

Based on the foregoing, this Court should grant this application and permit plaintiffs to issue the attached preservation subpoenas.

Dated: December 12, 2018                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

/s/ Adam M. Apton
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: 415-291-2420
Email: aapton@zlk.com
Email: amccall@zlk.com

Nicholas I. Porritt (admitted pro hac vice)
Alexander A. Krot III (to be admitted pro hac vice)
1101 30th Street, NW, Suite 115
Washington, DC 20007
Tel: 202-524-4290
Email: nporritt@zlk.com

Eduard Korsinsky (to be admitted pro hac vice)
55 Broadway, 10th Floor
New York, New York 10006
Tel: 212-363-7500
Email: ek@zlk.com

*Attorneys for Lead Plaintiff Glen Littleton and
Lead Counsel for the Class*