Ramzi Abadou (SBN 222567)
KAHN SWICK & FOTI, LLP
912 Cole Street, # 251
San Francisco, California 94117
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

*Counsel for Movant Bridgestone
Investment Corporation Limited
and Proposed Lead Counsel for the Class*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |  |
|---|---|---|
| | ) | Case No. 3:18-cv-04865-EMC |
| | ) | |
| | ) | |
| | ) | |
| IN RE TESLA INC. SECURITIES | ) | Judge:     Hon. Edward M. Chen |
| LITIGATION | ) | Date:      N/A |
| | ) | Time:      N/A |
| | ) | Courtroom: Courtroom 5 – 17th Floor |
| | ) | |
| | ) | |
| | ) | |

### BRIDGESTONE INVESTMENT CORPORATION LTD.'S REPLY
### IN SUPPORT OF ITS MOTION FOR RECONSIDERATION

# TABLE OF CONTENTS

I.    ARGUMENT ...................................................................................................................1

     A.    Glen Littleton Is Not the Most Adequate Plaintiff Because
            He Does Not Possess the "Largest Financial Interest in
            the Relief Sought by the Class" ...............................................................1

     B.    Bridgestone is the Most Adequate Plaintiff Because It Clearly
             Possesses the Largest Loss Among the Three Remaining
            Lead Plaintiff Applicants ..........................................................................4

     C.    Bridgestone is Not a Net Seller/Gainer................................................11

II.   CONCLUSION...............................................................................................................14

1

# <u>TABLE OF AUTHORITIES</u>

2

Cases                                                                                          Page(s)

3

*Binder v. Gillespie*,

4

    184 F.3d 1059 (9th Cir. 1999) ................................................................. 11

5

*Bruce v. Suntech Power Holdings Co., Ltd.*,

6

    2012 U.S. Dist. LEXIS 167702 (N.D. Cal. 2012) ......................................... 2

7

*Conn. Ret. Plans & Tr. Funds v. Amgen, Inc.*,

    2009 U.S. Dist. LEXIS 71653 (C.D. Cal. 2009) ...................................... 7, 8

8

*Erica P. John Fund, Inc. v. Halliburton Co.*,

9

    131 S. Ct. 2179 (2011) ........................................................................ 10

10

*Guohua Zhu v. UCBH Holdings, Inc.*,

    682 F. Supp. 2d 1049 (N.D. Cal. 2010) ..................................................... 3

11

*Hall v. Medicis Pharm. Corp.*,

12

    2009 U.S. Dist. LEXIS 24093 (D. Ariz. 2009) .......................................... 8

13

*Hessefort v. Super Micro Comput., Inc.*,

    317 F. Supp. 3d 1056 (N.D. Cal. 2018) ................................................. 12

14

*Hodges v. Immersion Corp.*,

15

    2009 U.S. Dist. LEXIS 122565 (N.D. Cal. 2009) ................................... 12

16

*In re Bally Total Fitness Sec. Litig.*,

    2005 U.S. Dist. LEXIS 6243 (N.D. Ill. 2005) ...................................... 2-3

17

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,

18

    2011 U.S. Dist. LEXIS 84831 (S.D.N.Y. 2011) ....................................... 8

19

*In re Bausch & Lomb Inc. Sec. Litig.*,

20

    244 F.R.D. 169 (W.D.N.Y. 2007) ........................................................ 13

21

*In re Cavanaugh*,

    306 F.3d 726 (9th Cir. 2002) ........................................................ *passim*

22

*In re Cendant Corp. Litig.*,

23

    264 F.3d 201 (3d Cir. 2001) ............................................................... 11

24

*In re Critical Path*,

    156 F.Supp.2d 1102 (N.D. Cal. 2001) ................................................. 8-9

25

*In re Eletrobras Sec. Litig.*,

26

    245 F. Supp. 3d 450 (S.D.N.Y. 2017) ................................................. 7-8

27

28

*In re Enron Corp., Sec. Litig.*,
    206 F.R.D. 427 (S.D. Tex. 2002) ................................................................ 3

*In re Glob. Crossing, Ltd. Sec. Litig.*,
    313 F. Supp. 2d 189 (S.D.N.Y. 2003) ....................................................... 9

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
    2004 U.S. Dist. LEXIS 27043 (N.D. Ohio 2004) ....................................... 4

*In re Honeywell Int'l*,
    211 F.R.D. 255 (D.N.J. 2002) .................................................................... 8

*In re LDK Solar Sec. Litig.*,
    255 F.R.D. 519 (N.D. Cal. 2009) ............................................................. 11

*In re McKesson HBOC, Inc. Sec. Litig.*,
    97 F. Supp. 2d 993 (N.D. Cal. 1999) ....................................................... 13

*In re NTL Sec. Litig.*,
    2006 U.S. Dist. LEXIS 5346 (S.D.N.Y. 2006) ........................................ 12

*In re Ribozyme Pharm., Inc. Sec. Litig.*,
    192 F.R.D. 656 (D. Colo. 2000) ................................................................ 4

*In re Royal Bank of Scot. Grp. PLC Sec. Litig.*,
    765 F. Supp. 2d 327 ................................................................................... 7

*In re Schering-Plough Corp. Sec. Litig.*,
    2003 U.S. Dist. LEXIS 26297 (D.N.J. 2003) .......................................... 12

*In re Sepracor Inc.*,
    233 F.R.D. 52 (D. Mass. 2005) ................................................................. 8

*In re Telxon Corp. Sec. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999) ................................................... 3, 4

*In re UTStarcom Sec. Litig.*,
    2010 U.S. Dist. LEXIS 48122 (N.D. Cal. 2010) ..................................... 12

*In re Winstar Commc'ns Sec. Litig.*,
    290 F.R.D. 437 (S.D.N.Y. 2013) ............................................................... 8

*In re Zynga Inc. Sec. Litig.*,
    2014 U.S. Dist. LEXIS 24673 (N.D. Cal.  2014) ...................................... 7

*Krim v. Pcorder.com, Inc.*,
    210 F.R.D. 581 (W.D. Tex. 2002) ........................................................... 12

*Lane v. Page*,
    581 F. Supp. 2d 1094 (D.N.M. 2008) ....................................................... 5

*Luna v. Marvell Tech. Grp., Ltd.*,
    2017 U.S. Dist. LEXIS 178674 (N.D. Cal. 2017) ................................................. 6, 7, 8

*Mulligan v. Impax Labs., Inc.*,
    2013 U.S. Dist. LEXIS 93119 (N.D. Cal. 2013) ......................................................... 3

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012) ...................................................................................... 8

*Nicolow v. Hewlett Packard Co.*,
    2013 U.S. Dist. LEXIS 29876 (N.D. Cal. 2013) .............................................. 2, 13, 14

*Perlmutter v. Intuitive Surgical, Inc.*,
    2011 U.S. Dist. LEXIS 16813 (N.D. Cal. 2011) ...................................................... 13

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*,
    2004 U.S. Dist. LEXIS 27008 (N.D. Cal. 2004) ...................................................... 12

*Richardson v. TVIA, Inc.*,
    2007 U.S. Dist. LEXIS 28406 (N.D. Cal. 2007) ...................................................... 12

*Shurkin v. Golden State Vintners, Inc.*,
    2005 U.S. Dist. LEXIS 39301 (N.D. Cal. 2005) ........................................................ 5

*Smajlaj v. Brocade Commc'ns Sys. Inc.*,
    2006 U.S. Dist. LEXIS 97618 (N.D. Cal. 2006) .................................................. 2, 12

*Takara Tr. v. Molex, Inc.*,
    229 F.R.D. 577 (N.D. Ill. 2005) ................................................................................ 2

*Weisz v. Calpine Corp.*,
    2002 U.S. Dist. LEXIS 27831 (N.D. Cal. 2002) .................................................. 9, 13

Statutes

15 U.S.C. §77k .................................................................................................................. 7

15 U.S.C. §78u-4 .............................................................................................................. 4

Rules

Fed. R. Civ. P. 23 .............................................................................................................. 7

# I.   ARGUMENT

## A.   Glen Littleton Is Not the Most Adequate Plaintiff Because He Does Not Possess the "Largest Financial Interest in the Relief Sought by the Class"

On October 9, 2018, Bridgestone Investment Corp. Ltd. ("Bridgestone") and Glen Littleton filed their initial motions for appointment as lead plaintiff.  There, Bridgestone and Littleton each asserted that they possessed the "largest financial interest in the relief sought by the class" because they suffered the largest "*loss*."[1]  ECF No. 41 at 14 (Littleton: "Movant suffered a substantial loss of approximately $3,518,478.68."); ECF No. 46 at 10 (Bridgestone: "Bridgestone suffered a loss of approximately $3.9 million from its transactions in Tesla securities between August 7, 2018 and August 17, 2018").  Then, on October 23, 2018, while Littleton conceded that Bridgestone's loss of $3.9 million was larger, he tellingly altered his financial interest analysis from largest "losses" to broadest investment strategy.  *See* ECF No. 106 at 9.  That, however, is not the law.  *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.").

Recognizing that the proper application of the PSLRA, as interpreted by the Ninth Circuit in *Cavanaugh*, compelled the denial of Littleton's lead plaintiff motion, Littleton—an investor (like Dany David) who to this day we know nothing about, and who inexplicably failed to attend the November 15, 2018 lead plaintiff hearing—abandoned his initial reliance on losses to demonstrate his financial interest in favor of other metrics that have needlessly muddled the PSLRA's "straightforward" process for selecting a lead plaintiff here.[2] *Cavanaugh*, 306 F.3d at 729 (PSLRA is "neither overly complex nor ambiguous").   Specifically, Littleton—for the first time in his opposition brief—argued that broadest investment strategy is the favored approximation of financial

---

[1]     All emphasis added herein unless otherwise noted.

[2]     Indeed, Judge Alsup requires lead plaintiff applicants to attend lead plaintiff hearings.  *See* Abadou Decl., Ex. A ("Each candidate must attend the hearing on **August 15, 2016**, and be prepared to answer questions.") (emphasis in original).

interest, despite having previously relied on losses in his opening brief to support his assertion that he possessed the "largest financial interest."[3]  *See* ECF No. 106 at 9.  Littleton's opposition to David's motion for reconsideration concedes this. *See* ECF No. 161 at 9 ("The Court appointed Littleton as the lead plaintiff because … he possessed standing to pursue all of the various claims alleged in the complaints on file.").[4]

In other words, once Littleton realized that *Cavanaugh* precluded his appointment, he changed strategies to claim that what matters most under the PSLRA is not loss, but one's personal investment strategies (short, long, *etc.*).  ECF No. 106 at 6-15; ECF No. 118 at 1-2.  As Littleton's initial motion properly acknowledged, however, under *Cavanaugh* and its progeny, financial interest clearly means "losses" suffered.  306 F.3d at 729 ("In step two, the district court must consider the *losses* allegedly suffered by the various plaintiffs…"); *id*. at 732 ("So long as the plaintiff with the largest *losses* satisfies the typicality and adequacy requirements …").  Indeed, the "weight of authority puts the most emphasis on the competing movants' estimated losses …" *Nicolow v. Hewlett Packard Co*., 2013 U.S. Dist. LEXIS 29876, at *18-19 (N.D. Cal. 2013) (Breyer, J.); *Bruce v. Suntech Power Holdings Co., Ltd.,* 2012 U.S. Dist. LEXIS 167702, at *5 (N.D. Cal. 2012) ("While the PSLRA does not specify how to calculate the largest financial interest, approximate losses in the subject securities is the preferred measure.") (Seeborg, J.); *Smajlaj v. Brocade Commc'ns Sys. Inc.*, 2006 U.S. Dist. LEXIS 97618, at *9, *12-13 (N.D. Cal. 2006) (utilizing loss to determine financial interest) (Breyer, J.).[5]

---

[3]     Also, as the only remaining institutional investor, Bridgestone is exactly the type of investor whose participation in complex securities class actions the PSLRA was intended to foster. *See* H.R. Conf. Rep. No. 104-369 at 34 (1995), reprinted in 1995 U.S.C.A.A.N. 730, 733; S. Rep. No. 104-98 at 6 (1995), reprinted in 1995 U.S.C.A.A.N. 679, 685, 733 ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.").

[4]     Further, as explained below in §I.B, *infra*, there are no "standing" issues present here as all of the now-consolidated complaints brought identical claims pursuant to §§10(b), 20(a) and Rule 10b-5 promulgated thereunder.

[5]     While the "PSLRA does not specify exactly how we should decide which plaintiff has the 'largest financial interest' in the relief sought by the class ...We believe that the best yardstick by which to judge "largest financial interest" is the ***amount of loss, period*.**"  *In re Bally Total Fitness*

BRIDGESTONE'S REPLY ISO MOTION FOR RECONSIDERATION
OF NOVEMBER 27, 2018 ORDER

1        This makes sense under the PSLRA's overall purpose and structure.  Simple loss calculations

2   can be completed quickly and efficiently by courts.  Not so with the belated approaches now

3   advocated by Littleton and David, which not only ignore the PSLRA's statutory text, but would

4   require the Court to engage in a detailed legal/factual analysis that does not properly occur in

5   securities cases until expert testimony is obtained and presented to a district court.[6]  In short,

6   engaging in a lengthy damages analysis at this time would be entirely inconsistent with the PSLRA

7   given that courts have concluded that the "the obvious intent of these [lead plaintiff] provisions is to

8   ensure that the lead plaintiff is appointed at the earliest possible time, and to expedite the lead

9   plaintiff process."  *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818-19 (N.D. Ohio 1999)

10  (finding that the PSLRA evidences Congress's intent "to expedite the lead appointment process");

11  *Mulligan v. Impax Labs., Inc*., 2013 U.S. Dist. LEXIS 93119, at *11 (N.D. Cal. 2013) (same) (Chen,

12  J.); *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 440 (S.D. Tex. 2002) (same).

13       By asking the Court to engage in lengthy and premature damage analyses reserved for

14  summary judgment and trial (involving, *inter alia*, things like net shares, calls versus puts, option

15  strike prices, *etc*.), Littleton (and David) have each invited the Court to engage in an analysis that

16  would thwart Congress's intent in enacting the PSLRA.  *See Guohua Zhu v. UCBH Holdings, Inc*.,

17  682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010) ("[t]he intent of the provisions is to ensure that the lead

18  plaintiff is appointed at the earliest possible time and to expedite the lead plaintiff process.").

19  Further, the various damage analyses Littleton and David ask the Court to utilize cannot even be

20  credibly conducted at this early juncture.  By injecting a fact-intensive damage analysis into the lead

21  plaintiff process, they have cleverly attempted to morph the PSLRA's statutory text into something it

22  is not.  In fact, the PSLRA's lead plaintiff provisions do not even use the term "damages," it uses the

23

24  *Sec. Litig.*, 2005 U.S. Dist. LEXIS 6243, at *13-15 (N.D. Ill. 2005); *Takara Tr. v. Molex, Inc.*, 229
    F.R.D. 577, 579 (N.D. Ill. 2005) (to determine the "most adequate plaintiff," "most courts simply
25  determine which potential lead plaintiff has suffered the greatest total losses.").

26  [6]      Notably, David implicitly concedes this in his opposition where he stated that, "because Mr.
    Johnson's loss is smaller than Mr. David's loss, Mr. Johnson's motion need not be considered …"
27  ECF No. 111 at 31.

28  BRIDGESTONE'S REPLY ISO MOTION FOR RECONSIDERATION                    CASE NO. 3:18-CV-04865-EMC
    OF NOVEMBER 27, 2018 ORDER

                                        3

phrase "largest financial interest in the relief sought by the class" to determine the presumptive lead plaintiff.  *Compare* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) (using "financial interest") with 15 U.S.C. §78u-4(f)(3)(C)(ii) (using "damages").[7]

Congress's intentional use of the phrase "financial interest" instead of "damages" for its lead plaintiff criteria makes sense as the statutory scheme for appointing lead plaintiffs was designed to enable courts to conduct a simple, straightforward loss analysis and to avoid district courts getting bogged down in the very arcane, complex minutiae of damage analysis arguments that Littleton and David baselessly attempt to capitalize on here.  *See Telxon*, 67 F. Supp. 2d at 818.  Indeed, damages and financial interest are distinct terms under the federal securities laws:

> *I agree that the determination of financial interest does not equate to damages*. Damages is a term of art and a technical matter to be established by experts. The lead plaintiff provision in the PSLRA does not use the term 'damages' but instead, 'largest financial interest ... I hold, therefore, that 'damages' under the PSLRA is *not the proper test* to determine largest financial interest.

*In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 661 (D. Colo. 2000); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 2004 U.S. Dist. LEXIS 27043, at *17 (N.D. Ohio 2004) (stating that the lead plaintiff analysis "is limited to resolving the lead plaintiff motions, and is not an ultimate determination of liability and damages.").  Given that Bridgestone's financial interest – under any measure – is larger than Littleton's, Bridgestone should have been appointed as lead plaintiff. *Cavanaugh*, 306 F.3d at 732.

**B.     Bridgestone is the Most Adequate Plaintiff Because It Clearly Possesses the Largest Loss among the Three Remaining Lead Plaintiff Applicants**

Littleton's speculation that Defendants may challenge Bridgestone's reliance on Musk's tweet with regards to Bridgestone's purchase of the $450 call options is meritless. ECF No. 164 at 2 ("When Musk said he was taking Tesla private at $420 per share, it virtually eliminated the chance

---

[7]     Littleton concedes that "[w]hether and to what extent damages from these securities are recoverable is a question for another day." ECF No. 164 at 2. But the approach he advocates would still require the Court to do precisely that.

of Tesla's stock price ever increasing …"). Littleton's argument reflects either a profound misunderstanding of market forces and the federal securities laws, or deliberate misdirection as there is nothing unique or novel about believing that an acquisition announcement will start a bidding war that could lead to a higher transaction price. *See Lane v. Page*, 581 F. Supp. 2d 1094, 1100-01 (D.N.M. 2008) (acquisition of target company was originally announced at a price of $200.00 per share; subsequent bidding war drove the price to $315.00 per share); *Shurkin v. Golden State Vintners, Inc.*, 2005 U.S. Dist. LEXIS 39301, at *3-8 (N.D. Cal. 2005) (going-private reverse stock split decision announced shares would be consolidated on a 1-for-5,900 basis or at a price of $3.25 per share; company was later sold at a price of $8.25 per share; *Berkowitz v. Conrail, Inc.*, 1997 U.S. Dist. LEXIS 14951, at *8 (E.D. Pa. 1997) (railroad company announced that it would make an offer at $100 per share; subsequent events drove the share price to $115 per share).

In fact, here, on August 7, 2018, sophisticated market analysts from *Morningstar* concluded regarding Musk's $420 tweet that: "***We think it is also possible that he wants to get a price higher than $420***, else we would expect him to simply announce he is considering going private with funding secured and leave the $420 number out of the tweet." Abadou Decl., Ex. B. Littleton's reliance argument against Bridgestone for its 2019 $450 option (and the Court's adoption of it in the Order) overlooked this critical fact.[8]  *See id.*; *see also* Abadou Decl., Ex. C (*Berenberg*: "The funding of the transaction is unclear, but is potentially less of an obstacle than obtaining shareholders' approval, in our view. ***We consider the $420/share proposal as low and believe the fair value per share is higher at $500***."); *id*. Ex. D (*The Street*: "***Tesla Could Get Bid Above $420*** as Board Looks at Take-Private Plan"); *id*. Ex. E (*MarketWatch*: "We think some shareholders may demand ***a steeper premium than the $420 mark***, and we think shares could move higher as shorts

---

[8]      At oral argument, Bridgestone's counsel made this very argument.  *See* Hrg. Tr. at 50:17-25; 51:1-8 ("And there's absolutely nothing inconsistent with the 450 strike price because what you're saying is, what you think, as a long investor, is that this is going to be a really good deal and it's going to go for more than 420. People are going to get on board with this private transaction. The stock market is going to support this move, ***and it's going to go to 450***. So to the extent that they're arguing that there's no reliance, they're simply incorrect.").

1 cover and investors demand a higher price to go private").

2      Littleton then again invites error by suggesting that Bridgestone is somehow inadequate

3 because it "did not hold a single short position in Tesla" which he claims is pertinent because of

4 Musk's alleged intent to harm short sellers.  ECF No. 164 at 1, 4-7.  While Littleton is correct that

5 Defendant Musk's well-documented animosity towards short sellers weighs in favor of his *scienter*,

6 it has absolutely no bearing on which movant has the "largest financial interest" or loss.  Indeed,

7 despite Bridgestone's claim in its Motion for Leave for Reconsideration that it was (and is) unaware

8 of a single securities fraud case (ever) requiring a proposed lead plaintiff to be long and short,

9 Littleton still cites neither case nor statute to support his argument.

10      Reconsideration should also be granted because the Court's precedent would result in lead

11 plaintiff contests where a court can and should only appoint an investor that is both short and long.

12 Indeed, here, the applicant with the second *smallest* loss (*i.e.*, David) appears to still be in contention

13 due to the Court's focus on appointing a long/short investor. *See* Order at 7 ("[Littleton] held

14 interests that cover *most* of the persons/entities likely to be in the class — *i.e.*, long positions in

15 common stock, long positions in options, and short positions in options — and *thus* can *most*

16 *adequately* represent the class"); *c/f Cavanaugh*, 306 F.3d at 729 ("While the words 'most capable'

17 seem to suggest that the district court will engage in a wide-ranging comparison to determine which

18 plaintiff is best suited to represent the class, the statute defines the term much more narrowly: The

19 'most capable' plaintiff - and hence the lead plaintiff - is the one who has the greatest financial stake

20 in the outcome of the case, so long as he meets the requirements of Rule 23.").

21      Every securities fraud class action, however, includes absent class members who are long,

22 short, purchased options and/or stock such that this purported "'equity conflict' is 'present in almost

23 every large, complex securities case.'"  *See Luna v. Marvell Tech. Grp., Ltd.*, 2017 U.S. Dist. LEXIS

24 178674, at *14 (N.D. Cal. 2017) (Alsup, J.) (collecting cases).  This case is no different and,

25 contrary to Littleton's suggestion, investment strategies do not present any "standing" issues here.

26 *See* ECF No. 161 at 9 ("The Court appointed Littleton as the lead plaintiff because … he possessed

27

28
BRIDGESTONE'S REPLY ISO MOTION FOR RECONSIDERATION
OF NOVEMBER 27, 2018 ORDER

1     standing to pursue all of the various claims alleged in the complaints on file.").  Indeed, all of the

2     now-consolidated complaints allege the *same claims* – those brought pursuant to §§10 and 20(a) of

3     the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder.  There are no other

4     claims and, accordingly, there are no "standing" issues present.  In fact, the purported equity conflict

5     that drove the Court to find an investor who was short and long has "been rejected by virtually every

6     court to consider it."  *Luna*, 2017 U.S. Dist. LEXIS 178674, at *14. "Thus, while class members

7     may have competing interests in *distributing the monetary relief*, such interests are ultimately

8     ancillary to their unified interest in establishing liability." *Conn. Ret. Plans & Tr. Funds v. Amgen,*

9     *Inc.*, 2009 U.S. Dist. LEXIS 71653, at *21 (C.D. Cal. 2009) (collecting cases).[9]

10         Littleton's opposition is badly misleading in transforming this issue into one related to

11    standing. *See* ECF No. 161 at 9 ("The Court appointed Littleton as the lead plaintiff because … he

12    possessed *standing* to pursue all of the various claims alleged in the complaints on file.").  Indeed,

13    three of the four cases Littleton cites in support of his "standing" claim are wholly irrelevant.  For

14    instance, *In re Zynga Inc. Sec. Litig.*, 2014 U.S. Dist. LEXIS 24673, at *9 (N.D. Cal.  2014), *In re*

15    *Royal Bank of Scot. Grp. PLC Sec. Litig.*, 765 F. Supp. 2d 327, 339) (S.D.N.Y. 2011), and *In re*

16    *Wells Fargo Mortg. Backed Certificates Litig.*, 712 F. Supp. 2d 958, 965 (N.D. Cal. 2010), all

17    concerned claims brought under *§11* of the Securities Act of 1933. 15 U.S.C. § 77k. To have

18    standing in a §11 case, "a plaintiff must have purchased a security *actually issued in the offering* for

19    which the plaintiff claims there was a false or otherwise misleading registration statement." *Zynga*,

20    2014 U.S. Dist. LEXIS 24673, at *9. This standing issue does not apply to investors in §10(b) cases

21    with different investment strategies so long as they "suffered some actual injury as a result of the

22    allegedly material misrepresentations." *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 461

23

24

25    _____

26    [9]    *See also* Hrg. Tr. 17:20-25; 18:1-11 (Bridgestone: "[P]eople may come back at the end of the
       case, if there's a settlement or a resolution, and *object at the plan of allocation* or object under
27    Federal Rule of Civil Procedure 23(e)(5) and say this doesn't make sense or this isn't fair.").

28    BRIDGESTONE'S REPLY ISO MOTION FOR RECONSIDERATION
       OF NOVEMBER 27, 2018 ORDER

1   (S.D.N.Y. 2017).[10]  Here, Bridgestone is adequate since, like every other class member, it suffered

2   losses as a result of Defendants' alleged fraud.  *See Amgen, Inc.*, 2009 U.S. Dist. LEXIS 71653, at

3   *16-21 (discussing and rejecting Littleton's equity conflict/standing argument); *Luna*, 2017 U.S.

4   Dist. LEXIS 178674, at *14 (same); *In re Honeywell Int'l*, 211 F.R.D. 255, 261 (D.N.J. 2002)

5   (discussing and rejecting "intra-class conflict" argument).

6          Indeed, further demonstrating the baselessness of Littleton's standing argument, courts

7   routinely appoint investors as lead plaintiff who traded ***solely*** in options under the PSLRA even for

8   putative classes of common stock purchasers.  *See Hall v. Medicis Pharm. Corp.,* 2009 U.S. Dist.

9   LEXIS 24093, at *12 (D. Ariz. 2009) (collecting cases); *In re Sepracor Inc.*, 233 F.R.D. 52, 56 (D.

10  Mass. 2005) (appointing purchaser of options as lead plaintiff for class that included purchasers of

11  all defendant company's equity securities).  Even at the motion to dismiss stage in PSLRA cases,

12  courts hold that common stock purchasers can bring claims on behalf of bondholders even if the lead

13  plaintiffs themselves ***never purchased*** those bonds.  *See, e.g., In re Winstar Commc'ns Sec. Litig.*,

14  290 F.R.D. 437, 450 (S.D.N.Y. 2013) ("The Second Circuit has recently clarified the ability of

15  purchasers of one type of security to represent purchasers of other types of securities that no named

16  plaintiff purchased.") (citing *NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co*., 693

17  F.3d 145 (2d Cir. 2012) *cert. denied* 2015 U.S. Dist. LEXIS 1268, 133 S. Ct. 1624 (S.D.N.Y. Jan. 6,

18  2015).  But, again, here, there are no different securities or claims among the competing movants;

19  just different investment strategies.

20          In any event, a rule that a court must appoint an investor as lead plaintiff who was short and

21  long would also require the appointment of short sellers who are routinely questioned on adequacy

22  and typicality grounds.  *See In re Critical Path*, 156 F.Supp.2d 1102, 1109-1110 (N.D. Cal. 2001)

23  ("Short sales raise the question of whether the seller was actually relying on the market price, and

---

24

25  [10]    The fourth case Littleton cites, *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income*
26  *Sec. Act (ERISA) Litig*., 2011 U.S. Dist. LEXIS 84831, at *52 (S.D.N.Y. 2011), is no longer good
    law following the Second Circuit's decision in *NECA-IBEW Health & Welfare Fund v. Goldman*
27  *Sachs & Co*., 693 F.3d 145, 167 (2d Cir. 2012).

28

1   *the class is not served by its representative coming under such scrutiny*."); *Weisz v. Calpine Corp.*,

2   2002 U.S. Dist. LEXIS 27831, *28 (N.D. Cal. 2002) ("Hickam-Makadia collectively purchased

3   71,000 shares during the Class Period and suffered losses of $ 435,216.60 which suggests that they

4   are the plaintiffs with the next largest financial interest in this case. However, Hickam is disqualified

5   from serving as a lead plaintiff by virtue of the fact that he admittedly sold Calpine stock 'short'

6   during the Class Period.").[11]

7        Again, this is not to say that short sellers can, should or will be excluded here.  If appointed,

8   Bridgestone may very well decide to include short sellers in a plan of allocation, as a named plaintiff

9   or proposed class representative as it would have a fiduciary duty to all absent class members as the

10   Court-appointed lead plaintiff.  *See* ECF No. 107 at 24, n.16 ("While Bridgestone respectfully

11   submits herein that short sellers seeking lead plaintiff appointment should be precluded from serving

12   in that role due to their Rule 23 infirmities, Bridgestone can and will represent the interests of all

13   class members – including short sellers – if charged by this Court with the responsibility of serving

14   as lead plaintiff.").  However, the focus on appointing as lead plaintiff an investor who was short

15   *and* long at this early stage is unnecessary.  *See In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp.

16   2d 189, 204 (S.D.N.Y. 2003) (a lead plaintiff must exercise its "responsibility to identify and include

17   named plaintiffs who have standing to represent the various potential subclasses of plaintiff who

18   may be determined, at the class certification stage, to have distinct interests or claims.").

19        This is particularly true given that Tesla short sellers who were harmed in this case may

---

[11]    That is why this Court and others often decline to even include short sellers in plans of allocation in the context of PSLRA settlements.  *See* Abadou Decl., Ex. F at 11 ("Any claimant that sold Vocera common stock "short" will have **no Recognized Loss** with respect to such purchase during the Class Period to cover said short sale.").  In fact, counsel for Littleton, who has made much ado of the importance having a short seller as a lead plaintiff, routinely excludes short sellers from cases such as this at settlement in PSLRA cases such as this: (i) "In accordance with the Plan of Allocation, however, the Recognized Loss Amount on purchases/acquisitions used to cover "short sales" is **zero**." Abadou Decl., Ex. G at 11; (ii) "**No claims** will be calculated for any purchase of NHTC securities to cover a short sale." Abadou Decl., Ex. H at 6; and (iii) "The date of covering a "short sale" is deemed to be the date of purchase, and the date of a "short sale" is deemed to be the date of sale. Shares originally sold short will have a Recognized Loss of **zero**." Abadou Decl., Ex. I at 3.

BRIDGESTONE'S REPLY ISO MOTION FOR RECONSIDERATION
OF NOVEMBER 27, 2018 ORDER

CASE NO. 3:18-CV-04865-EMC

represent a very small fraction of the putative class.  An August 18, 2018 article in *Fortune* titled

"Tesla Short-Sellers Made More Than $1 Billion from CEO Elon Musk's Troubling *New York Times*

Interview" confirms this, reporting:

> Investors betting that Tesla stock will lose value — so-called "shorts" — have ***made $1.2 billion*** since CEO Elon Musk first tweeted about taking the company private. Much of that gain came on Friday, after the New York Times published a revealing, emotional interview with Musk that drove Tesla stock down nearly 9%.
>
> The tally comes from a report released Friday by stock analytics firm S3 Partners. The Friday collapse helped reverse a price spike after Musk's August 7 Tweet saying he was "considering taking Tesla private at $420," about 18% higher than the stock's market value at the time.
>
> According to S3, the subsequent surge in Tesla stock cost short positions $1.3 billion. But soon after, it became clear that Musk had exaggerated the certainty of his funding, and the SEC began a probe of his statements, driving the stock back down. On Friday, the Times interview with Musk detailed his 120-hour work weeks, lack of social life, and reliance on Ambien to sleep. That sent the stock down 9% in one day, for a total drop of 19% over 10 days. ***That gave $2.5 billion back to the shorts, for a net gain of $1.2 billion since Musk's going-private tweet.***

Abadou Decl., Ex. J.

Finally, Littleton almost completely ignores Bridgestone's argument that the Court should

consider the impact of Littleton's own "strike price" argument on his claimed losses.  *See* ECF No.

158 at 8-10, citing *Cavanaugh*, 306 F.3d at 730, n.4 (requiring consistent application of that

accounting methods to competing movants).  Instead, Littleton tries to distinguish his call options

purchases from Bridgestone's on the basis of timing.  ECF No. 164 at 9 ("Critical to this issue is the

fact that Littleton unquestionably bought his call options ***prior*** to Defendant Musk's tweet.").  This

makes no sense because: "[i]n cases [as here] involving affirmative misstatements, the most direct

way to demonstrate reliance is to show that the plaintiff was aware of a company's statement and

engaged in the relevant transaction based on that specific misrepresentation." *Erica P. John Fund,*

*Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2185 (2011).  By admitting that he bought his call options

"prior" to Musk's tweet, Littleton has effectively sued himself out of Court on the basis of non-

1    reliance.

2         Further, while Littleton concedes that he did not rely on Musk's tweet when purchasing his

3    $450 call options, he then claims reliance when he was "forced to close these positions in response

4    to the tweet, [sustaining] damages as a result of the alleged fraud." *Id.*  But Littleton ignores that

5    Bridgestone *also* sold all of his $450 call options to close its position before the Class Period ended.

6    ECF No. 52-5.  If selling to close those options is valid for Littleton, then the same is true for

7    Bridgestone.[12]  Bridgestone and Littleton both sold their comparable call options during the putative

8    Class Period.  In any case, if Bridgestone were to be appointed Lead Plaintiff, the issue would be

9    moot because Bridgestone also transacted in other call options with strike prices of $380, $400, and

10   $420.  Regardless of the method used, Bridgestone's losses remain larger than Littleton's under an

11   apples-to-apples comparison of losses.  *See charts at* ECF No. 106 at 9; *also* ECF No. 158 at 10.

12        Given the foregoing, and the majority view in this Circuit that loss determines a proposed

13   lead plaintiff's financial interest, Bridgestone should be deemed the PSLRA's "most adequate

14   plaintiff." *See Cavanaugh*, 306 F.3d at 732 ("The court must examine potential lead plaintiffs one at

15   a time, starting with the one who has the greatest financial interest, and continuing in descending

16   order *if and only if* the presumptive lead plaintiff is found inadequate or atypical."); *In re Cendant

17   Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001), *cert. denied*, *Mark v. Cal. Pub. Emps.' Ret. Sys.*, 535

18   U.S. 929 (2002) ("[T]he court's initial [Rule 23] inquiry should be confined to determining whether

19   such movants have stated a *prima facie* case of typicality and adequacy" and this inquiry "*need not

20   be extensive*."); *Cavanaugh*, 306 F.3d at 730-31 (same).

21        **C.    Bridgestone is Not a Net Seller/Gainer**

22        Lastly, Bridgestone responds to the argument Dany David expressly raised against it in his

23

---

24   [12]    Implicit in Littleton's argument is the misguided idea that Bridgestone must have *personally*
25   seen the tweet at the time of purchase to have relied upon it.  But under the "fraud on the market"
     presumption, misleading statements will defraud securities purchasers even if that purchaser did not
26   directly rely on the misstatement because the efficient market incorporates all publicly available
     information into the securities price.  *See Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir.
27   1999); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 526 (N.D. Cal. 2009).

                                                                    CASE NO. 3:18-CV-04865-EMC
28   BRIDGESTONE'S REPLY ISO MOTION FOR RECONSIDERATION
     OF NOVEMBER 27, 2018 ORDER

reply to Littleton. *See* ECF No. 166 at 1, n.2. There, David claims that Bridgestone is a "net seller" and "net gainer" that purportedly profited from its transactions in Tesla securities—effectively asking the Court prematurely decide damages, and ignore Bridgestone's larger losses (*i.e.*, "financial interest").[13]  *See* ECF 166 at n.2.  He is incorrect and, regardless, this District routinely appoints so-called "net gainers" and "net sellers" as lead plaintiff where, like Bridgestone here, they suffered millions of dollars in losses. *See, e.g., Richardson v. TVIA, Inc.,* 2007 U.S. Dist. LEXIS 28406, at *13-15 (N.D. Cal. 2007) (appointing "net seller" who suffered a LIFO loss); *Hodges v. Immersion Corp.,* 2009 U.S. Dist. LEXIS 122565, at *9 (N.D. Cal. 2009) (appointing "net seller" asserting FIFO and LIFO losses); *Smajlaj,* 2006 U.S. Dist. LEXIS 97618, at *13 (appointing lead plaintiff with largest loss despite net seller/gainer challenges); *In re UTStarcom Sec. Litig.*, 2010 U.S. Dist. LEXIS 48122, at *19-20 (N.D. Cal. 2010) (rejecting Rule 23 challenge to investor represented by Mr. David's counsel for being "a 'net seller' and a 'net gainer'"); *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys.*, *Inc.*, 2004 U.S. Dist. LEXIS 27008, at *11, *17 (N.D. Cal. 2004) (certifying net seller as lead plaintiff represented by Mr. David's counsel); *see also In re Schering-Plough Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 26297, at *25-27 (D.N.J. 2003); *In re NTL Sec. Litig.*, 2006 U.S. Dist. LEXIS 5346, at *41 (S.D.N.Y. 2006) ("Defendants have not shown that Fleck's net sales of NTL stock destroys its typicality for the purposes of class certification.").

The cases David cites are not to the contrary because the majority of Bridgestone's $3.9 million loss resulted from its options transactions.  *See* ECF No. 111 at 9; *see Weisz v. Calpine Corp.*, 2002 U.S. Dist. LEXIS 27831, at *26-28 (N.D. Cal. 2002) (addressing net seller argument for

---

[13]    Here, Bridgestone's claimed losses are nearly 9 times greater than the loss claimed by David. *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) (Tigar, J.). Further, as already provided in the record, David's counsel has admitted that it is currently serving as co-lead counsel in another Tesla case in Delaware Chancery Court.  ECF No. 121 at 13. This presents a clear, disqualifying conflict of interest. *See Krim v. Pcorder.com, Inc.*, 210 F.R.D. 581, 590 (W.D. Tex. 2002) ("With multiple lawsuits, more than a fair chance exists that the shareholders represented in the various suits may be different but overlapping groups of people, and their interests may not always coincide."); *Cavanaugh*, 306 F.3d at 733.

1    common shares, not sales to close stock options); *In re McKesson HBOC, Inc. Sec. Litig*., 97 F.

2    Supp. 2d 993, 996 (N.D. Cal. 1999) (same); *In re Bausch & Lomb Inc. Sec. Litig*., 244 F.R.D. 169,

3    173-74 (W.D.N.Y. 2007) (same); *Perlmutter v. Intuitive Surgical, Inc.*, 2011 U.S. Dist. LEXIS

4    16813, at *27 (N.D. Cal. 2011) (same); *see also* ECF No. 52-5.

5    David has still yet to muster a single case as applied to options losses because all of

6    Bridgestone's options sales were made to close its open positions. *See* ECF No. 52-5 (properly

7    netting options contracts). Bridgestone's sales proceeds were correctly matched against the cost

8    basis for those options. A net seller analysis, by contrast, "applies only when a net seller is also a net

9    gainer[,]" which is not the case with Bridgestone here. *Id*. at 7–10; *see Perlmutter*, 2011 U.S. Dist.

10   LEXIS 16813, at *27; *see also* ECF No. 42-2 at 3–4 (Littleton's Loss Chart) (same). In addition,

11   here, the net seller claim is without merit since, as Judge Breyer reasoned in *HP*:

> The allegations here involve ***multiple partial corrective disclosures*** by
> [Tesla] during the class period. As many district courts have observed, net
> shares purchased and a 'retained shares' calculation are less useful
> analytical tools where gradual disclosures are involved, because those
> methods assume a constant "fraud premium" throughout the class period.
> The Court accordingly ***declines to give significant weight to net shares
> purchased and a retained shares calculation***.

*HP*, 2013 U.S. Dist. LEXIS 29876, at *19-20.

Here, as in *HP*, there are also partial disclosures pled.  Within a day of Musk's August 7,

2018 misleading tweet, news reports cast doubt on whether or not funding to take the Company

private had truly been "secured."  Between August 8-9, 2018, *The Wall Street Journal* (*see Isaacs*

Complaint at ¶ 24; *Fan* Complaint at ¶¶ 9-10, 31-32) and *Bloomberg* (*see Maia* Complaint at ¶¶ 32-

33; *see also Left* Complaint at ¶¶ 9, 11, 39, 41) both reported that the SEC was probing the matter.

The Company's share price declined $27.12 (7.14%) as a result of these partial disclosures.  On

August 9, 2018, *Reuters* also reported that even Tesla's own Tesla's Board of Directors was

demanding answers from Musk about his purported financing plan (see *Left* Complaint at ¶¶ 10-11,

40-41), and by August 13, 2018 the *New York Times* had reported that the Board was just as

surprised by Musk's announcement as the investing public (s*ee Left* Complaint at ¶ 44; *see also*

*Maia* Complaint at ¶ 39).  Tesla's share price feel in response.  On August 14, 2018, shares of Tesla securities again tumbled as *Bloomberg* reported that – contrary to Musk's earlier representations – the investment banks Goldman Sachs and Silver Lake had not signed any agreement to fund Musk's privatization proposal (*see Left* Complaint at ¶¶ 15-16, 47, 49; *see also Fan* Complaint at ¶¶ 11-12, 33-34).

In response to this negative news, Bridgestone (like all typical investors) started divesting itself of its holdings in Tesla beginning on August 15, 2018, just in time to avoid additional losses as even more bad news sent Tesla's stock price falling (but which ***benefitted*** short sellers like Littleton and David).  On August 15, 2018 *The Wall Street Journal* reported that the SEC had formally subpoenaed Tesla, and a follow-up piece the next day expanded upon the news by announcing the SEC was investigation whether Musk intentionally misled investors (*see Sodeifi* Complaint at ¶ 30; *Left* Complaint at ¶ 48, respectively).  By the time the market closed on August 16, Bridgestone was fully divested of its holdings in Tesla common stock and options – right before the *New York Times* published after-hours an interview with Musk that caused Tesla's share price to fall again the next day on August 17 (*see Left* Complaint at ¶¶ 15-16, 47, 49).  Under identical facts, Judge Breyer rejected the same net seller/gainer argument David raises here, reasoning, *inter alia*, that:

> VRS, however, urges the Court to turn away from estimated losses and focus instead on 'net shares purchased' and the related calculation of which movant has the largest potential recovery in the lawsuit as measured through a 'retained shares' analysis. Tellingly, VRS itself made no reference to net shares purchased or a retained shares calculation in its opening motion seeking appointment as lead plaintiff, shifting its argument only after PGGM came forward with larger LIFO losses.
>
> Whether or not VRS is correct that a retained shares calculation may be preferable to a LIFO calculation in some cases, ***this is not such a case***. The allegations here involve multiple partial corrective disclosures by HP during the class period.

*HP,* 2013 U.S. Dist. LEXIS 29876, at *19-20.

## II.      CONCLUSION

For the foregoing reasons, Bridgestone's lead plaintiff motion should be granted.  All other

1   motions should be denied.

2

3   Dated: December 12, 2018                    Respectfully submitted,

4                                               KAHN SWICK & FOTI, LLP

5                                               By:____/s/ Ramzi Abadou_____

6                                               Ramzi Abadou (SBN 222567)
                                                ramzi.abadou@ksfcounsel.com
7                                               KAHN SWICK & FOTI, LLP
                                                912 Cole Street, # 251
8                                               San Francisco, California 94117
                                                Telephone: (415) 459-6900
9                                               Facsimile: (504) 455-1498

10
                                                -and-
11
                                                Lewis S. Kahn (*pro hac vice to be submitted*)
12                                              Alexander L. Burns (*pro hac vice to be
                                                submitted*)
13                                              Alayne K. Gobeille (*pro hac vice to be
                                                submitted*)
14                                              KAHN SWICK & FOTI, LLC
                                                1100 Poydras Street, Suite 3200
15                                              New Orleans, Louisiana 70163
                                                Telephone: (504) 455-1400
16                                              Facsimile: (504) 455-1498
                                                lewis.kahn@ksfcounsel.com
17                                              alexander.burns@ksfcounsel.com
18                                              alayne.gobeille@ksfcounsel.com

19
                                                *Counsel for Movant Bridgestone Investment
20                                              Corporation Limited and Proposed Lead
                                                Counsel for the Class*
21

22

23

24

25

26

27                                                          CASE NO. 3:18-CV-04865-EMC

28   BRIDGESTONE'S REPLY ISO MOTION FOR RECONSIDERATION
     OF NOVEMBER 27, 2018 ORDER

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on December 12, 2018, I electronically filed the foregoing with the Clerk

3

of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4

addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that

5

I have mailed the foregoing document or paper via the United States Postal Service to the non-

6

CM/ECF participants indicated on the attached Manual Notice List.

7

8

*/s/ Ramzi Abadou*
RAMZI ABADOU

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CASE NO. 3:18-CV-04865-EMC

28

BRIDGESTONE'S REPLY ISO MOTION FOR RECONSIDERATION
OF NOVEMBER 27, 2018 ORDER

**Mailing Information for a Case 3:18-cv-04865-EMC Isaacs v. Musk et al**
**Electronic Mail Notice List**
The following are those who are currently on the list to receive e-mail notices for this case.

- Ramzi Abadou
  ramzi.abadou@ksfcounsel.com,dawn.hartman@ksfcounsel.com

- Randi D. Bandman
  randib@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- Jennifer Corinne Bretan
  jbretan@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,aepstein@fenwick.com

- Robert Nicholas Cappucci
  rcappucci@entwistle-law.com,ncasey@entwistle-law.com,ffleming@entwistle-law.com

- Mario Man-Lung Choi
  mchoi@kaplanfox.com

- Andrew John Entwistle
  aentwistle@entwistle-law.com,jbeemer@entwistle-law.com,bbrodeur@entwistle-law.com,sriegert@entwistle-law.com,RArnall@Entwistle-Law.com,ffleming@entwisle-law.com,ncasey@entwistle-law.com,mgayle@entwistle-law.com,rcappucci@entwistle-law.com

- Frederic S. Fox
  FFox@kaplanfox.com

- Eric Marc George
  egeorge@bgrfirm.com,khall@bgrfirm.com,cbonilla@bgrfirm.com

- David William Hall
  dhall@hedinhall.com

- Rachel Lynn Jensen
  rachelj@rgrdlaw.com,e_file_sd@rgrdlaw.com,6139295420@filings.docketbird.com

- Reed R. Kathrein
  reed@hbsslaw.com,peterb@hbsslaw.com,brianm@hbsslaw.com,sf_filings@hbsslaw.com

- Ashley Conrad Keller
  ack@kellerlenkner.com

- Laurence D. King
  lking@kaplanfox.com,spowley@kaplanfox.com,nlee@kaplanfox.com

CASE NO. 3:18-CV-04865-EMC

BRIDGESTONE'S REPLY ISO MOTION FOR RECONSIDERATION
OF NOVEMBER 27, 2018 ORDER

- Dean S. Kristy
  dkristy@fenwick.com,kayoung@fenwick.com,lkelleybourne@fenwick.com

- Mara Rachelle Ludmer
  mludmer@fenwick.com

- Adam Christopher McCall
  amccall@zlk.com

- Francis P McConville
  fmcconville@labaton.com,kgutierrez@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- Tricia Lynn McCormick
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com

- Arthur Vincent Nealon
  anealon@entwistle-law.com

- Uri Seth Ottensoser
  so@kellerlenkner.com

- Jennifer Pafiti
  jpafiti@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- Carl Alan Roth
  croth@bgrfirm.com,khall@bgrfirm.com,mbetti@bgrfirm.com

- Marc M. Seltzer
  mseltzer@susmangodfrey.com,ecf-4d2b1f772250@ecf.pacerpro.com,hdanielson@susmangodfrey.com,ecf-67366a65900c@ecf.pacerpro.com

- Michael Walter Stocker
  mikes@hbsslaw.com,sf_filings@hbsslaw.com

- James Matthew Wagstaffe
  wagstaffe@kerrwagstaffe.com,reboredo@kerrwagstaffe.com,bechtol@kerrwagstaffe.com

**Manual Notice List**

The following is the list of attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

BRIDGESTONE'S REPLY ISO MOTION FOR RECONSIDERATION
OF NOVEMBER 27, 2018 ORDER

CASE NO. 3:18-CV-04865-EMC