1    DEAN S. KRISTY (CSB No. 157646)
     dkristy@fenwick.com
2    JENNIFER BRETAN (CSB No. 233475)
     jbretan@fenwick.com
3    FENWICK & WEST LLP
     555 California Street, 12th Floor
4    San Francisco, CA  94104
     Telephone:    415.875.2300
5    Facsimile:    415.281.1350

6    Attorneys for Defendants
     Tesla, Inc. and Elon Musk
7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12                                        Case No.: 3:18-cv-04865-EMC

13                                        **DEFENDANTS' OPPOSITION TO
                                          LEAD PLAINTIFF'S MOTION TO
14                                        LIFT THE DISCOVERY STAY TO
                                          ISSUE NON-PARTY SUBPOENAS**

15   IN RE TESLA, INC. SECURITIES
     LITIGATION                           Date:      January 24, 2019
16                                        Time:      1:30 p.m.
                                          Dept.:     Courtroom 5, 17th Floor
17                                        Judge:     Hon. Edward M. Chen

18

19                                        Date Action Filed:  August 10, 2018

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Defendants Tesla, Inc. ("Tesla") and Elon Musk (collectively, "defendants"), respectfully

2    submit this opposition to Lead Plaintiff's ("plaintiff") motion to lift the discovery stay to issue

3    five non-party subpoenas.  *See* Dkt. No. 167.  Plaintiff's motion is both procedurally and

4    substantively flawed.

5        The motion is procedurally flawed because it was filed in contravention of the Court's

6    Standing Order on Discovery.  The Standing Order is designed to streamline or eliminate

7    discovery issues, and expressly provides that "no motions regarding discovery disputes may be

8    filed without prior leave of the Court." Plaintiff did not seek or obtain such leave. Instead, and

9    despite a prompt request that plaintiff abide by the Standing Order, plaintiff insisted on going

10   forward, forcing defendants to prepare this opposition, potentially needlessly, instead of

11   following the informal procedures envisioned by the Standing Order.  This alone justifies denial

12   of the motion.

13       The motion is substantively flawed because it fails to show that any "exceptional

14   circumstances" justify circumventing the mandatory stay of discovery imposed by the Private

15   Securities Litigation Reform Act of 1995 (the "PSLRA").  Instead, plaintiff rests entirely on

16   insufficient, speculative argument that, if accepted, would permit preservation subpoenas to be

17   issued as a matter of course in every securities class action, precisely the opposite of what the

18   PSLRA requires. Indeed, plaintiff has not even bothered to contact any of the third parties to

19   ascertain whether they have any relevant evidence, much less offer any basis for suggesting that it

20   may not be preserved.

21       Moreover, by targeting Mr. Musk's girlfriend at the time (who has never worked for

22   Tesla) and, according to published reports, a "rapper" who, based on the articles plaintiff has

23   submitted, has a "history of making bold and sometimes unverified claims," is a "veteran of long

24   and nonsensical beefs [and has] feuded with everyone from Sarah Palin to Nick Cannon," and has

25   been "banned" from Twitter (*see* Pl. Exs. A, B), it is readily apparent that this is more of an effort

26   to sensationalize these proceedings than a serious, legitimate effort to preserve "electronic

27   documents" of third parties with first-hand knowledge of important facts.  In any event, because

28   there is no evidence that any of the proposed subpoena recipients will imminently discard any

DEFS.' OPP'N TO LEAD PLTF'S
MOT. TO LIFT DISCOVERY STAY                     1                    Case No.: 3:18-CV-04865-EMC
TO ISSUE NON-PARTY SUBPOENAS

1    relevant evidence, which is the showing that the law requires, plaintiff's motion should be denied.

2    **I.    The Motion Was Filed Without Leave Of Court In Violation Of The Standing Order**

3           Plaintiff filed this motion on December 12 without informing defendants of his desire to

4    seek relief from the PSLRA's mandatory discovery stay and without obtaining prior leave of

5    Court. This violates Paragraph 4 of the Court's Standing Order.  Accordingly, defendants brought

6    the Standing Order to plaintiff's attention on December 13, requesting that plaintiff meet and

7    confer and, failing any agreement, that the parties submit the joint three-page letter to the Court

8    outlining the dispute as per the Standing Order.  Declaration of Dean S. Kristy ("Kristy Decl."),

9    Ex. 1.  In that way, the Court could then determine "if additional briefing or a telephonic

10   conference will be necessary." Standing Order ¶ 4.

11          Plaintiff refused, insisting that, because the proposed subpoenas targeted third parties,

12   there was no obligation under the Standing Order and no burden imposed on defendants. *See*

13   Kristy Decl., Ex. 2.  Courts across the country, however, recognize that defendants have a

14   legitimate interest in the PSLRA's mandatory discovery stay, and have standing to assail

15   "preservation subpoenas" of this exact sort.  *See, e.g.*, *In re Cree, Inc. Sec. Litig.*, 220 F.R.D. 443,

16   446 (M.D.N.C. 2004) ("Given the intent of the stay provision and its application to all types of

17   discovery, Defendants have standing to challenge Plaintiffs' [preservation] subpoenas"); *see In re*

18   *Fluor Corp. Sec. Litig.*, 1999 WL 817206, at *2-3 (C.D. Cal. Jan. 15, 1999) (denying plaintiffs'

19   motion to serve preservation subpoenas in light of defendants' objections); *In re Heckmann Corp.*

20   *Sec. Litig.*, 2011 WL 10636718, at *3-6 (D. Del. Feb. 28, 2011) (denying leave to serve

21   preservation subpoenas); *Sapssov v. Health Mgmt. Assocs., Inc.*, 2013 WL 12153530, at *1-2

22   (M.D. Fla. May 7, 2013) (accepting defense arguments and denying leave to serve preservation

23   subpoenas).  In any event, the point here is that the Standing Order *expressly provides* that "no

24   motions" regarding discovery may be filed without prior leave of Court. Those words have

25   meaning. This alone justifies the denial of this motion.

26   **II.   Plaintiff Failed To Show The Exceptional Circumstances The PSLRA Requires**

27          This suit is subject to the PSLRA, which provides that "all discovery and other

28   proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    upon the motion of any party that particularized discovery is necessary to preserve evidence or to

2    prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B).  As with any discovery,

3    modifying the mandatory stay to serve preservation subpoenas requires a showing of exceptional

4    circumstances.  *See Fluor*, 1999 WL 817206, at *1-3 (denying motion to issue preservation

5    subpoenas because "exceptional circumstances" not present); *see also Faulkner v. Verizon*

6    *Commc'ns, Inc.*, 156 F. Supp. 2d 384, 402 (S.D.N.Y. 2001) ("The sole example proffered by

7    Congress as to what justifies lifting the [PSLRA] stay is the 'the terminal illness of an important

8    witness,' which might 'necessitate the deposition of the witness prior to ruling on the motion to

9    dismiss'").  Indeed, in virtually every securities class action, at least some relevant information is

10   in the possession of third parties, yet the issuance of preservation subpoenas is the exception, not

11   the rule, because exceptional circumstances are rarely present.

12           Where, as here, the putative justification for the subpoenas is concern that information

13   will be lost or discarded, plaintiff must not only establish that the information is relevant, but

14   show preservation is "necessary … to save evidence from imminent destruction." *Heckmann*,

15   2011 WL 10636718, at *3.  This requires an evidentiary showing that there is a *real threat* that

16   important information will be lost and merely asserting "that issuing preservation subpoenas is

17   necessary because loss or destruction of evidence is possible," due to document retention policies

18   or other reasons, is insufficient.  *Id.* at *5.  In fact, "generalizations of fading memories and

19   allegations of possible loss or destruction" are routinely rejected.  *See Fluor*, 1999 WL 817206, at

20   *3.  Plaintiff must show that there is a real "prospect" that existing information, even in the hands

21   of "crucial actors," will not be retained in the period between now and resolution of a motion to

22   dismiss.  *See Asset Value Fund Ltd. Partnership v. FIND/SVP, Inc.*, 1997 WL 588885, at *1

23   (S.D.N.Y. Sept. 19, 1997) (denying preservation motion); *Sapssov*, 2013 WL 12153530, at *2

24   (denying motion in absence of affidavits or other proof sufficient to meet standard).  Importantly,

25   "'wholly speculative assertions as to the risk of lost evidence and undue prejudice' will not satisfy

26   the standard." *Cree*, 220 F.R.D. at 447.

27           Plaintiff does not come close to meeting this standard.  He just ignores it altogether, never

28   once mentioning it in his motion.  Putting aside his rather transparent motive (discussed below),

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    his entire basis for seeking to serve subpoenas is premised on a wholly speculative lawyer

2    argument that non-parties "***might*** otherwise discard, destroy, or misplace" unspecified evidence

3    in "electronic form, *e.g.*, Twitter or Instagram messaging," which plaintiff asserts (without any

4    basis whatsoever) is "inherently fluid and therefore prone to being discarded inadvertently." Mot.

5    at 1 (emphasis added); *see* Mot. at 4 (nakedly claiming that "evidence is increasingly in danger of

6    disappearing unless Plaintiff is allowed to issue preservation subpoenas").  But there is no basis

7    for concluding that Twitter or Instagram messages are more likely to disappear than any other

8    document type, so the underlying premise of the motion is simply illusory. These are precisely the

9    type of speculative assertions that courts repeatedly reject as a basis for end-running the discovery

10   stay. *See Heckmann*, 2011 WL 10636718, at *4 ("The loss or destruction of evidence must be

11   imminent, as opposed to being hypothetically possible or merely speculative").  Indeed, plaintiffs

12   did not bother to contact any of the five non-parties it intends to subpoena to find out if they even

13   have any relevant information, much less provide a reasonable basis for suggesting that such

14   evidence will not be retained prior to resolution of a motion to dismiss. *See id.* at *5 (noting that

15   plaintiff failed to show why sending preservation letters to third parties would be insufficient).

16          Moreover, given the alleged "relevance" of each of the third parties, it is evident that this

17   is really more of an effort to sensationalize these proceedings than a legitimate attempt to

18   preserve evidence.  Indeed, ***none of the third parties ever worked for Tesla or Mr. Musk, or is***

19   ***alleged to have had any involvement in his tweets or in his evaluation of a potential go-private***

20   ***transaction***.  Instead, plaintiff focuses on Claire Elise Boucher (a musician known as Grimes),

21   who was Mr. Musk's girlfriend at the time.  Based on a *New York Times* article stating that Mr.

22   Musk "woke up at home with his girlfriend … and had an early workout" on the day of his first

23   go-private tweet on August 7, 2018 (which the article said he wrote as he "drove himself to the

24   airport") (Pl. Ex. C at 2), plaintiff speculates that she "likely observed [his] behavior or overheard

25   conversations" over the ensuing days and "[i]t is also likely that Ms. Boucher, as Musk's

26   girlfriend, discussed the tweet and/or the fallout caused by it with Musk shortly after it was sent."

27   Mot. at 3.  Putting aside such rank speculation – indeed, every defendant in every securities class

28   action has a spouse, significant other and friends, but that does not justify discovery of them –

1   there is nothing in plaintiff's recitation that even remotely suggests that Ms. Boucher has ***ever***

2   ***had relevant documents,*** much less that their destruction is imminent. That is a far cry from the

3   required showing of exceptional circumstances; if anything, given Ms. Boucher's lack of

4   involvement in any contemplated transaction, it would merit a protective order under Rule

5   26(c)(1) even if this case ever gets to discovery.[1]

6          The same is true as to Ms. Azealia Banks, a rapper who, according to plaintiff's articles, is

7   a former friend of Ms. Boucher.  Those same articles state that she is a "veteran of long and

8   nonsensical beefs [having] feuded with everyone from Sarah Palin to Nick Cannon"; she

9   "remains a Twitter villain even after being banned from the service"; she went on a rant on

10  Instagram "that began as a delirious critique of colonial wealth and racial privilege, [and] became

11  a vaguely eugenicist denigration of Musk as a caveman"; and she "has a history of making bold

12  and sometimes unverified claims," including against Beyonce, MonetX (a rival) and Russell

13  Crowe.  Pl. Exs. A, B.  Published reports also indicate that Ms. Banks apparently claims to have

14  offered Twitter's CEO a form of "protection" from ISIS.  *See* Kristy Decl., Ex. 3. Despite reports

15  that completely undermine her credibility, plaintiff calls her a "key source of information in this

16  matter" – which if anything underscores how weak plaintiff's case is – based entirely on her

17  claim that she was present in Mr. Musk's home to visit Ms. Boucher from August 10-12 (well

18  after the August 7 tweets) and supposedly observed Mr. Musk, even though he flatly denies ever

19  meeting her.  According to plaintiff, she "likely observed relevant events in addition to those"

20  Ms. Banks "described in the media." Mot. at 3. Putting aside Ms. Banks' history and her lack of

21  first-hand information that is even arguably relevant, plaintiff has submitted no evidence

22  supporting claims that she has relevant documents (in electronic or any other form) or that there is

23  any risk that any such information will not be retained.  This is simply not the type of witness, or

24

25  [1] Plaintiff's reliance on *In re Tyco Int'l, Ltd. Sec. Litig.*, 2000 WL 33654141 (D. N.H. July 27, 2000) is entirely misplaced.  There, the court found exceptional circumstances were present to justify preservation subpoenas based on a detailed affidavit explaining the non-parties'

26  preservation policies and how relevant documents were at risk.  No such affidavit has been submitted here.  Plaintiff's other cases, *Neibert v. Monarch Dental Corp.*, 1999 WL 33290643

27  (N.D. Tex. Oct. 22, 1999) and *Vezzetti v. Remec, Inc.*, 2001 WL 37118900 (S.D. Cal. July 23, 2001) failed to address or apply the exceptional circumstances test, and in any event did not

28  involve non-percipient witnesses such as those here.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    factual record, that could justify the required finding of exceptional circumstances necessary to

2    obtain relief from the mandatory discovery stay.

3           Two of the other third parties, the *Business Insider* and *Gizmodo*, are included simply

4    because they published the stories about the claims made by Ms. Banks on August 13, 2018 (Pl.

5    Exs. A, B).  Plaintiff makes no claim that these entities have or are about to discard relevant

6    documents; indeed, plaintiff does not even claim that these entities use "Twitter or Instagram

7    messaging" that is supposedly at risk of being purged.  Nor does plaintiff even purport to explain

8    what document preservation policies these entities employ.  Hence, there is no basis offered for

9    serving preservation subpoenas on these media outlets.

10          Similarly, the fact that the *New York Times* published an article on August 16, 2018

11   following an interview with Mr. Musk (Pl. Ex. C) on a range of topics, including his extensive

12   pre-tweet contacts with the Saudi Arabia sovereign wealth fund about a potential go-private

13   transaction, does not merit relief from the stay.  Plaintiffs make no showing that the *New York*

14   *Times* has information beyond what is set forth in its article, much less that such information is at

15   risk of being discarded.  It is hardly unusual for the financial and mainstream press to report on

16   relevant events, but that has never been a basis for circumventing the PSLRA stay.  Indeed, as

17   with the other media outlets, the entire basis for plaintiff's motion – that Twitter or Instagram

18   messages may be "lost" – has no apparent application to the *New York Times*.

19          Finally, plaintiff makes no real effort to show "undue prejudice" if leave to issue these

20   subpoenas is denied, offering only a one-sentence throwaway assertion that if documents are lost

21   or destroyed, "it would be unlikely that Plaintiff could ever establish all facts contained in the

22   documents."  Mot. at 5.  But since plaintiff's motion purports to rely on published stories, it is

23   hardly evident why that is the case.  In any event, such an argument can be made *in every*

24   securities class action before a motion to dismiss is resolved.  As the cases hold, "the inherent

25   delay in the PSLRA's discovery stay that compels "the plaintiff to wait until its complaint has

26   been legally tested before it can conduct discovery is not *unduly* prejudicial." *Heckmann*, 2011

27   WL 10636718, at *4 (emphasis in original; internal quotation omitted).  *See In re Celera Corp.*

28   *Sec. Litig.*, 2014 WL 3827570, at *2 (N.D. Cal. Feb. 25, 2014) ("Prejudice caused by the delay

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    inherent in the PSLRA's discovery stay cannot be 'undue' prejudice because it is prejudice which

2    is neither improper nor unfair").[2]

3    Dated:    January 3, 2019                    FENWICK & WEST LLP

4                                                By: /s/      *Dean S. Kristy*
                                                         Dean S. Kristy

5
                                                555 California Street, 12th Floor
6                                               San Francisco, California 94104
                                                Telephone: (415) 875-2300
7                                               Facsimile: (415) 281-1350

8                                               Attorneys for Defendants Tesla, Inc. and Elon Musk

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    _____
      [2] The proposed subpoenas are also not sufficiently particularized, as they fail to "identify the
26    *specific types* of evidence that fall within its scope." This requires a "clearly defined universe of
      documents," rather than a string of requests and an obligation to preserve "all documents."
27    *Heckmann*, 2011 WL 10636718, at *4.  Despite predicating his motion on a concern about
      Twitter and Instagram messaging, the subpoenas here are overly broad and all-encompassing,
28    going to all documents in whatever form.  *Id.*

DEFS.' OPP'N TO LEAD PLTF'S                          7                    Case No.: 3:18-CV-04865-EMC
MOT. TO LIFT DISCOVERY STAY
TO ISSUE NON-PARTY SUBPOENAS