**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 291-2420
Email: aapton@zlk.com
Email: amccall@zlk.com

*Attorneys for Lead Plaintiff Glen Littleton
and Lead Counsel for the Class*

[Additional counsel on signature blocks]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | No. 18-cv-04865-EMC<br><br>Hon. Edward M. Chen<br><br>**LEAD PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR LEAVE TO SERVE NON-PARTY DOCUMENT PRESERVATION SUBPOENAS**<br><br>DATE: January 24, 2019<br>TIME: 1:30 p.m.<br>COURTROOM: Courtroom 5 – 17th Floor |

Lead Plaintiff Glen Littleton submits the following in reply and further support of his motion for leave to serve preservation subpoenas:

## I.   PRELIMINARY STATEMENT

The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires a "[s]tay of [d]iscovery . . . during the pendency of any motion to dismiss." 15 U.S.C. §78u-4(b)(3)(B). The PSLRA provides that, during this period, evidence relevant to the litigation must be adequately preserved by the ***parties***. 15 U.S.C. §78u-4(b)(3)(C) (emphasis added). Non-parties are under ***no*** statutory obligation to preserve evidence that is relevant to this litigation. *See*, *e.g.*, *In re Equifax Inc. Sec. Litig.*, No. 1:17-CV-3463-TWT, 2018 WL 3023278, at *7 (N.D. Ga. June 18, 2018). Plaintiff has reason to believe that non-parties have relevant information and evidence to its claims and that this information and evidence is at risk of being deleted. Accordingly, Plaintiff has requested leave to serve non-party document preservation subpoenas.

Defense counsel objects to Plaintiff's request to issue the preservation subpoenas for two main reasons: a) Defendants contend that Plaintiff's motion is procedurally flawed; and b) Defendants allege that Plaintiff has not shown "exceptional circumstances" that justify granting Plaintiff's motion. Defendants are wrong on both counts.

## II.   ARGUMENT

### A.   Plaintiff Did Not Violate the Standing Order Because There is No "Discovery Dispute" with Defendants.

Plaintiff is requesting the Court for leave to serve non-party document preservation subpoenas. Plaintiff is not requesting the Court to open discovery, nor is Plaintiff requesting a single document from parties or non-parties. Rather, Plaintiff is asking the Court for permission to preserve evidence that is at risk of being deleted (discussed in Section II below). This would result in absolutely no burden or prejudice to Defendants, as Defendants are not a party to the subpoena.

Defendants argue that Plaintiff failed to conform to Your Honor's standing order because Plaintiff did not seek leave from the Court prior to filing his motion. Your Honor's standing order states that "no motions regarding ***discovery disputes*** may be filed without prior leave of the Court." Standing Order ¶4. Just because Plaintiff's motion relates to discovery, does not make it a "discovery dispute." When reading

1

Your Honor's standing order, it is clear that "discovery disputes" refer to disputes between the parties who are subject to the requested discovery. For example, it would make no sense for Plaintiff to "compromise" with Defendants about discovery that is not applicable to Defendants. Standing Order ¶4 (a-b) (requiring a joint letter brief to include a statement that "no agreement can be reached" and that the brief must "state each party's last offer of compromise."). Accordingly, this is not a "discovery dispute" between Plaintiff and Defendants as referred to in Your Honor's standing orders. Any "dispute" would be with the non-party subject to the subpoena.

Additional evidence that this motion does not fall under Your Honor's standing orders is the fact that even if Defendants had agreed to Plaintiff's request to the service of the preservation subpoenas, Plaintiff would still have had to file this motion for leave. This is because the PSLRA explicitly requires Plaintiff to file a ***motion***. The PSLRA states, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, ***unless the court finds upon the motion of any party*** that particularized discovery is necessary to preserve evidence or prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added).

Defendants' case law on this matter is inapplicable and unpersuasive. For example, Defendants cite *In re Cree, Inc. Sec. Litig.*, 220 F.R.D. 443, 446 (M.D.N.C. 2004) to argue that Defendants "have standing to assail 'preservation subpoenas' of this exact sort." Opp. at 2.[1] In *Cree*, plaintiffs served preservation subpoenas without leave of the court. *Cree*, 220 F.R.D. at 445. The court quashed the subpoenas for the sole reason that "Plaintiffs unilaterally served the subpoenas in violation of the PSLRA . . . ." *Id*. at 447. That is not the case here as Plaintiff has filed a motion in accordance with the PSLRA requesting permission from the Court prior to serving subpoenas.[2]

---

[1] Defendants also cite the following cases for the same proposition: *In re Fluor Corp. Sec. Litig.*, 1999 WL 817206, at *2-3 (C.D. Cal. Jan. 15, 1999); *In re Heckmann Corp. Sec. Litig.*, 2011 WL 10636718, at *3-6 (D. Del. Feb. 28, 2011); and *Sapssov v. Health Mgmt. Assocs., Inc.*, 2013 WL 12153530, at *1-2 (M.D. Fla. May 7, 2013). However, as stated below, Plaintiff does not assert that Defendants do not have standing to oppose Plaintiff's motion.

[2] Notably, the court in *Cree* refused defendants' request to prohibit plaintiff from any further attempts to lift the stay. *Id*. at 447. The court "recognized that the potential for destruction of evidence exists, especially in securities fraud cases." *Id*. (citations omitted). The court concluded that "[b]ecause Plaintiffs' concerns regarding document destruction may be legitimate, a protective order prohibiting further

Contrary to Defendants' arguments, Plaintiff does not dispute that Defendants have standing to oppose this motion. However, it is unclear why Defendants would want to. Plaintiff's motion simply asks that discovery be preserved so that all parties—not just Plaintiff—can have a fair opportunity to conduct discovery when/if the Court denies Defendants' upcoming motion to dismiss. This results in absolutely no burden or prejudice to Defendants.

Therefore, as this is not a "motion[] regarding [a] discovery dispute[]," but a motion *required* by the PSLRA for leave to serve non-party preservation subpoenas, Plaintiff did not violate Your Honor's standing orders.[3]

**B.      Recent Events Confirm That the Preservation Subpoenas are Necessary.**

"The legislative history of the PSLRA indicates that Congress enacted the discovery stay in order to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery, or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint." *Turocy v. El Pollo Loco*, No. SACV151343DOCKESX, 2017 WL 2495172, at *2 (C.D. Cal. May 10, 2017) (citations omitted). Neither rationale underlying the PSLRA's discovery stay provision is contravened by plaintiffs' application. Instead, Defendants argue that Plaintiff does not show "exceptional circumstances" nor does Plaintiff "show preservation is necessary to save evidence from imminent destruction." Opp. at 3 (citations omitted). However, as previously stated in Plaintiff's motion, social media is very transient and often deleted inadvertently. For example, there is nothing from stopping the witnesses from simply deactivating their social media accounts at any given time. Additionally, recent events contradict Defendants' argument and confirm that preservation subpoenas are necessary.

On January 4, 2019, Azealia Banks posted to her Instagram account a picture of Defendants' opposition to Plaintiff's request for leave to serve subpoenas stating, "This was written by Elon Musk's

---

attempts to lift the stay will be denied." *Id*.

[3] Defendants argue that "the Standing Order *expressly provides* that 'no motions' regarding **discovery** may be filed without prior leave of Court. Those words have meaning." Opp. at 2 (emphasis in italics in original, emphasis added in bold). However, that is not what the Standing Order says. Conspicuously absent from Defendants' argument is the word "dispute." As Defendants point out, "words have meaning." Here, Plaintiff has no "discovery dispute" with Defendants.

lawyer Dean Kristy. ***Not enough that they took my phone and tried tampering with evidence,*** - they are STILL slighting me like I don't have plenty more dirt to spill on Elon. He thinks this is a game. I'm now even more angered by the fact that his lawyer is falsely stating I lied after being vindicated in both incidents with Russel Crowe and Jack Dorsey. This is going to get extremely ugly. I may be a lot of things but a liar is not one of them. Elon will learn very soon who is more powerful of us two." Apton Decl. Ex. A (emphasis added in bold and italic).

Banks also stated in an "Instagram Story" that, "Elon can hack my phone , my computer , my website , have a PI [private investigator] wait on my block , stalk my social media , have failed attempt to poison me etc etc, and none of it is enough to truly make me give a fuck about the situation lol [laughing out loud]. I'm not getting paid to report this Tesla shit and it's cutting into my single promo !!!!! In the same breath, I'm tired of letting men walk all over me and make my life unnecessarily hard while I sit back and take it." Apton Decl. Ex. A. Banks' Instagram post and story were deleted soon after they were published.

Further, on January 8, 2019, Banks told Business Insider that she told "Musk's lawyers about her reticence [to testify] earlier in the day on Monday [January 7, 2019]." Apton Decl. Ex. B. Despite indicating she spoke with Musk's lawyers, when Business Insider followed up, Banks "declined to say whether Musk's lawyers reached out to her over the weekend." Apton Decl. Ex. B.

The fact that Banks' Instagram posts ***have already been deleted*** shows that preservation is necessary to save this evidence from imminent destruction. Additionally, Banks' statements that she has been in communications with Musk's lawyers and that Musk's lawyer "took [her] phone and tried tampering with evidence" shows that Musk and/or Tesla appear to be pressuring witnesses to conceal and/or delete evidence. If this were not the case, there would be no reason for Banks to so drastically reverse her course of action and tone so severely. If Musk and/or Tesla have been this forceful with Banks, there is no reason to believe that Musk and/or Tesla have not also influenced Claire Elise Boucher, who was Musk's girl friend at the time of the tweets.

The Court should similarly grant Plaintiff's motion as it relates to Business Insider, Gizmodo, and the New York Times. In the past, Musk has attempted to silence authors who published articles criticizing

4

Musk and Tesla. For example, on July 24, 2018, Musk contacted the boss of an author who published an article on *Seeking Alpha*. Apton Decl. Ex. C.  As the author indicates in his "farewell article," the author's colleague spoke by phone with Musk who complained about the author's writing at *Seeking Alpha* and on Twitter. Musk stated that if the author continued to write, that Musk would engage counsel and sue the author. Apton Decl. Ex. C.  As a result of Musk's phone conversation, the author immediately stopped writing at *Seeking Alpha* and **deactivated his Twitter account**. Apton Decl. Ex. C.  The fact that Musk has personally called and threatened those who publically criticize him or Tesla, show that preservation subpoenas should also be issued to Business Insider, Gizmodo, and the New York Times. This is especially true for those who have communicated via social media with witnesses like Business Insider, as this evidence is more likely to be deleted.

Therefore, the Court should allow Plaintiff leave to serve the preservation subpoenas. *See In re Smith Barney Transfer Agent Litig.*, No. 05 CIV. 7583 WHP, 2012 WL 1438241, at *3 (S.D.N.Y. Apr. 25, 2012) ("courts have generally permitted plaintiffs in PSLRA actions to issue subpoenas that give specified third parties notice of the action and impose upon them only a duty to preserve certain relevant evidence in their possession." (citations omitted).

### C. Not Only Should the Court Grant Plaintiff's Motion, But the Court Would Also Be Entirely Justified in Ordering Production of Discovery Now.

The PSLRA "is a shield intended to protect security-fraud defendants from costly discovery requirements, not to be a sword with which defendants can destroy the plaintiffs' ability to obtain information from third parties who are otherwise willing to disclose it." *In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127, 1134 (N.D. Cal. 2002) (citations omitted); *Takiguchi v. MRI Int'l, Inc.*, No. 2:13-CV-1183-JAD-VCF, 2014 WL 3105068, at *6 (D. Nev. July 7, 2014) (same); *In re Flir Sys., Inc. Sec. Litig.*, No. 00-360- HA, 2000 WL 33201904, at*3 (D. Or. Dec. 13, 2000) (same). Defendants' efforts to potentially silence Ms. Banks and other witnesses are extremely violative of strong public policy. As such, courts have routinely allowed discovery where Defendants have attempted to silence potential witnesses. *See JDS*, 238 F. Supp. 2d 1127, 1137 (N.D. Cal. 2002) (holding confidentiality agreements "conflict[ed] with the public policy in favor of allowing even current employees to assist in securities

fraud investigations"); *Brado v. Vocera Communcs., Inc.*, 14 F. Supp. 3d 1316, 1320 (N.D. Cal. 2014) (recognizing "public policy of the Sarbanes-Oxley Act favoring whistleblowers"); *Kensington Int'l Ltd. v. Republic of Congo*, No. 03 Civ. 4578 (LAP), 2007 WL 2456993, *2 (S.D.N.Y. Aug. 24, 2007), *aff'd sub nom.*, *Cleary Gottlieb Steen & Hamilton LLP v. Kensington Int'l Ltd.*, 284 F. App'x 826 (2d Cir. 2008); *In re Nat'l Century Fin. Enters. Inc. Fin. Inv. Litig.*, 347 F. Supp. 2d 538, 542 (S.D. Ohio 2004) (finding that the destruction of the documents and electronic information held by a non-party "will likely cause actual prejudice to the Plaintiffs"); *Flir*, 2000 WL 33201904, at *3.

Here, there is substantial evidence that Defendants attempted to tamper with evidence as shows by Banks' statements. Accordingly, Plaintiff has attached as Exhibit D to the Apton Declaration, particularized requests for production of documents relating to Defendants tampering of evidence. A discovery request is "particularized" within the meaning of 15 U.S.C. §78u-4(b)(3)(B) if it seeks a "clearly defined universe of documents" and other information. *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004). Here, Plaintiff seeks a very narrow category of discovery related solely and specifically to facts surrounding the tampering of relevant evidence, including non-disclosure agreements, letters from counsel to witnesses, and copies of documents relating to payments to third parties. Apton Decl. Ex. D.

Given the gravity and uncertainty regarding the tampering at issue, Plaintiff must be given an opportunity to discover facts regarding the intentional destruction of relevant evidence. See *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 182 (S.D.N.Y. 2004); Lichtenstein, 917 F. Supp. at 720-21. Courts have defined "undue prejudice" sufficient to overcome the statutory bar as improper or unfair treatment under the circumstances. *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 107 (D. Mass. 2002); *Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*, 917 F. Supp. 717, 720-21 (S.D. Cal. 1996) (undue prejudice concept attempts to "balance the competing concerns of maintaining truth and integrity in the marketplace while curbing meritless litigation"). Courts have found that, denying plaintiffs access to discovery "would prejudice them because of their resulting 'inability to make informed decisions about . . . [their] litigation strategy.'" *In re Mut. Funds Inv. Litig.*, No. MDL-15863, 2005 U.S. Dist. LEXIS 3469, at *1 (D. Md. Mar. 7, 2005) (citing *Worldcom*, 234 F. Supp. 2d. at 305).

Without the information sought, Plaintiff will not be able to assess whether documents are being preserved, whether Plaintiff can and should move to enjoin Defendants from further destruction of evidence, or seek adverse inferences against Defendants for the destruction that has already occurred. *See Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 567 (N.D. Cal. 2008) ("It is therefore of no consequence that Symonds, not defendants, destroyed the materials in question. Spoliation includes not only the destruction of evidence, but also 'the failure to preserve property for another's use as evidence.'").

Accordingly, the Court would be entirely justified in ordering the production of discovery now.

### III.  CONCLUSION

Based on the foregoing, this Court should grant this application and permit plaintiffs to issue the preservation subpoenas.

Dated: January 11, 2018                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

/s/ Adam M. Apton
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 291-2420
Email: aapton@zlk.com
Email: amccall@zlk.com

-and-

Nicholas I. Porritt (admitted *pro hac vice*)
LEVI & KORSINSKY LLP
1101 30th Street NW, Suite 115
Telephone:  (202) 524-4290
Facsimile: (202) 337-1567
Email: nporritt@zlk.com

*Attorneys for Lead Plaintiff Glen Littleton
and Lead Counsel for the Class*