**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel : 415-373-1671
Fax : 415-484-1294
Email: aapton@zlk.com
        amccall@zlk.com

*Attorneys for Lead Plaintiff and the Class*
*[Additional Counsel on Signature Block]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC <br><br> <u>CLASS ACTION</u> <br><br> **LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO CONVERT DEFENDANTS' MOTION TO DISMISS TO MOTION FOR SUMMARY JUDGMENT; MOTION TO STRIKE; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> **ORAL ARGUMENT REQUESTED** <br><br> Date: March 5, 2020 <br> Time: 1:30 p.m. <br> Location: Courtroom 5, 17th Floor <br> Judge: Hon. Edward Chen <br><br> Date Action Filed: August 10, 2018 |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on March 5, 2020 at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 5 – 17th Floor of the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Edward M. Chen presiding, Lead Plaintiff Glen Littleton ("Plaintiff"), by his counsel, will move, and hereby does move, this Court for an Order:

(1) Pursuant Rule 12(d), converting Defendants' Motion to Dismiss to a Motion for Summary Judgment under Rule 56; or,

(2) Alternatively, striking from Defendants' Motion to Dismiss and supporting documents all matters outside the pleadings.

PLEASE TAKE FURTHER NOTICE that this motion is based on the Memorandum of Points and Authorities below, the arguments of counsel, and any other matters properly before this Court. A proposed form of Order is also submitted herewith.

**ISSUES TO BE DECIDED**

1. Whether the Court must convert Defendants' Motion to Dismiss to one for Summary Judgment pursuant to Rule 12(d) because Defendants' Motion advances conclusions that are based on facts extraneous to the pleadings and directly contradict Plaintiff's well-pleaded allegations?

2. In the alternative, whether the Court should exclude all matters outside the pleadings within the Motion to Dismiss and strike Defendants' corresponding arguments?

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Federal Rule of Civil Procedure 12(d) is explicit. It states: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). There can be no mistake on this issue. If a defendant introduces matters outside the pleadings on a motion to dismiss, they **must** be excluded or the motion converted to one for summary judgment and the plaintiff permitted to proceed to discovery.

In their Motion to Dismiss, Defendants have openly and repeatedly introduced and relied on matters from outside the pleadings. They have loaded their motion with factual arguments having absolutely no basis in the Complaint[1]; in fact, the central premise of Defendants' motion contradicts Plaintiff's allegations. They argue that Musk's August 7, 2018 tweet—"*Am considering taking Tesla private at $420. Funding secured.*"—was done in response to a perceived threat of a "leak" in the *Financial Times*. Not only does this narrative fail to have any support in the pleadings, it ignores Plaintiff's well-pleaded allegations of Musk's motive to financially harm short-sellers of Tesla's stock. The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint, not to resolve competing theories of the case.

The Ninth Circuit pressed this exact point in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018). By introducing extraneous facts at the pleading stage, defendants in securities cases are "exploiting" evidentiary procedures in order to "improperly to defeat what would otherwise constitute adequately stated claims . . . ." *Id*. at 998. "Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint,

---

[1] "Complaint" refers to Plaintiff's Consolidated Amended Complaint for Violations of the Federal Securities Laws dated January 16, 2019 (ECF No. 184). "¶__" refers to paragraphs in the Complaint.

1  and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Id*. As the Ninth Circuit held, such "undermining of the usual pleading burdens" will ***not*** be tolerated.

So long as this Court adheres to *Khoja* (which it must), Defendants' Motion to Dismiss must be denied. Plaintiff's well-pleaded factual allegations are irreconcilable with the facts and conclusions asserted by Defendants in their motion. Defendants' decision to rely on—and, indeed, center their brief around—facts outside of the pleadings requires that this Court either convert their motion to one for summary judgment or strike substantial swaths of their motion papers. In either event, the Motion to Dismiss must be denied and the parties should proceed with discovery.

## II.   ARGUMENT

### A.   LEGAL STANDARD

Rule 12(d) is clear that on motion to dismiss, "if . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). As such, "[g]enerally, district courts may not consider materials outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja*, 899 F.3d at 998.

The Ninth Circuit emphasized the importance of this rule in *Khoja*. In what it described as a "concerning pattern in securities cases," the *Khoja* court sought to stop defendants from "exploiting [judicial notice and incorporation by reference] procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Id*. "If defendants are permitted to present their own version of the facts at the pleading stage — and district courts accept those facts as uncontroverted and true — it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." *Id*. at 999. Consequently, courts must not allow defendants to rely upon "extrinsic documents to resolve competing theories against the complaint," especially in fraud cases "where there is already a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not

yet have access." *Id*. at 998.[2]

## B. DEFENDANTS VIOLATE *KHOJA* BY PROFFERING AN UNSUBSTANTIATED AND CONTRADICTED FACTUAL NARRATIVE CONCERNING A "LEAK" IN THE *FINANCIAL TIMES*.

Defendants begin their motion to dismiss with the premise that Musk's August 7, 2018 tweet was prompted by a "leak" in the *Financial Times*. They claim that the "leak" about "PIF's recent acquisition of nearly 5% of Tesla stock" caused Musk to become "[c]oncerned his discussions with PIF regarding taking Tesla private would also leak." Def. Mem. at 2. Tweeting, Defendants claim, was "the right thing to do" because it was supposedly the only way Musk could "ensure that all shareholders were privy to his intentions" of taking Tesla private at the same time. *Id*.

This narrative is absolute fiction. It has no support from any of Plaintiff's allegations in the Complaint and, in fact, even contradicts statements made by Musk in the days, weeks, and months after the August 7, 2018 tweet. For example, when Musk explains "Why did I make a public announcement?" in his August 13, 2018 blog post, not once does he mention the "leak" in the *Financial Times* or that he was "[c]oncerned" about his discussions with PIF becoming public. ¶103. Instead, Musk's August 13, 2018 blog post paints the August 7, 2018 tweet as a decisive, thought-through step towards a greater objective. He claims that he wanted to have "meaningful discussions" with Tesla's shareholders about taking the company private, and that "it wouldn't be right to share information . . . with just our largest investors without sharing the same information with all investors at the same time." ¶103. According to Musk, this was why it "was

---

[2] *See also Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1281-82 (C.D. Cal. 2016) (describing "practical reality" of "inappropriate efforts by defendants" in SEC matters to "expand courts' consideration of extrinsic evidence at the motion to dismiss stage"); *Grooms v. Legge*, No. 09-cv-489-IEG-POR, 2009 WL 2031730, at *2 (S.D. Cal. July 8, 2009) ("On a motion to dismiss, it is not the court's function to weigh the evidence."); *S.E.C. v. Cotton*, No. SACV 06-0905 AG(ANX), 2006 WL 6382128, at *6 (C.D. Cal. Dec. 21, 2006) ("Because the Court is required to accept plaintiff's allegations as true, the Court may not make such a contrary factual determination at this pleading stage and will not grant the motion to dismiss on this ground.").

clear to [him] that the right thing to do was announce [his] intentions publicly." ¶103.

This is irreconcilable with what Defendants now claim. If the impetus behind the August 7, 2018 tweet was truly Musk's "[c]oncern" over a "leak," then that explanation would have been present in the August 13, 2018 blog post (the purpose of which was to elaborate on and explain why Musk did what he did just six days earlier). It was not, however, and that was because Musk's tweet arose from very different motivations altogether. As Plaintiff alleges, Musk had a documented hatred for short-sellers of Tesla stock. ¶¶153-60. When Musk said what he did on August 7, 2018, he did so in order to harm these short-sellers. ¶¶7, 152. Indeed, Musk admitted as much when, on October 26, 2018, he tweeted that the $20 million fine he paid to the SEC in response to the August 7, 2018 tweet was "worth it."[3]

Defendants go further and ask the Court to consider that Musk's dislike of short-sellers is justified because, supposedly, "many companies, executives and shareholders take a similarly dim view of short-selling." Def. Mem. at 18. In support of this "fact", Defendants cite two journal articles attached as Exhibits U and V to the Bratan Affidavit. Notably, even though Defendants aggressively seek the Court to take judicial notice of many disputed facts, they do not even seek judicial notice of public opinion of short -sellers. The Court should totally disregard this assertion of widespread disdain for short-sellers as it is unsupported by any evidence in the record and is plainly a matter of factual dispute.

Notwithstanding the lack of factual support and in spite of Plaintiff's factual allegations to the contrary, Defendants continue with their alternative narrative throughout their brief. Def. Mem. at 6 ("The danger that a further leak of the potential take private transaction was acute. . . ."), 17 ("Give the leak of PIF's stake, he thought public disclosure was 'the right thing to do.'"). Defendants are within their rights to take discovery on this issue and present it to a jury. However, at the pleading stage, Defendants are not allowed to proffer unsubstantiated facts in order to "resolve competing theories against the complaint." *Khoja*, 899 F.3d at 998. For this reason alone,

---

[3] Taylor Telford, *Elon Musk: Tweet that cost $20 million was 'worth it'*, THE WASHINGTON POST (Oct. 29, 2018).

the Court should grant Plaintiff's motion to convert and deny Defendants' Motion to Dismiss.

### C. DEFENDANTS ATTEMPT TO UNDERCUT PLAINTIFF'S CASE BY INTRODUCING UNVERIFIED AND INCORRECT REPORTS CLAIMING THAT SHORT-SELLERS DID NOT SUSTAIN DAMAGES.

To undercut Plaintiff's theory of the case, Defendants assert that short-sellers of Tesla stock suffered no damages in response to Musk's tweet, but in fact profited by "about $1.2 billion." Def. Mem. at 3. These profits, Defendants argue, show that Musk's tweet could not have been a "ruse" to harm the "short-sellers." Def. Mem. at 3. Defendants' ploy in this regard is entirely improper under *Khoja*, and further supports granting Plaintiff's motion.

First, Defendants are categorically wrong when it comes to short-seller damages. Plaintiff conducted a thorough analysis of the facts before filing the Complaint. With expert consultation, Plaintiff concluded that Musk's tweet caused substantial damages to short-sellers of Tesla stock and alleged as much in the Complaint. ¶¶199-202. Consequently, when Defendants claim that short-sellers were not damaged, they make that claim in direct contradiction of Plaintiff's well-pleaded factual allegations. That is expressly prohibited under *Khoja*. *See Khoja*, 899 F.3d at 998; *see also Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1031 (N.D. Cal. 2018) ("[Defendant] is not explaining or arguing the allegations in Plaintiffs' [complaint]—it is trying to factually rebut them.").

Second, Defendants try to substantiate their claim about the short-seller damages by citing to a report and an article from third-parties that are neither subject to judicial notice nor incorporated by reference in the Complaint. The report and article, which are written by *S3 Analytics* and *MarketWatch*, summarily conclude that short-sellers profited during the Class Period. Def. Mem. at 19 n.11 (citing Exhibits Y and Z). Defendants' reliance on these reports is improper and, as explained previously, explicitly prohibited by *Khoja*. Indeed, Defendants arguments are contradicted by the same commentators whose "analysis" they inappropriately present to the Court with their motion. Defendants cite author Ihor Dusaniwsky for an article suggesting shortsellers profited from Tesla trades, but ignore another article by the same author

stating the opposite (https://twitter.com/ihors3/status/1026930707065647104) ("$TSLA shorts down $1.3 billion in mark-to-market losses today as #Tesla rallied 11% on Elon Musk's tweets."), *see also* ¶7). This disagreement highlights the misleading aspect of Defendants' entire argument. Although some shortsellers may have profited during the Class Period (by shorting Tesla stock when its price was inflated and profiting when Musk and Tesla's fraud was subsequently revealed), there is no doubt that shortsellers who were short Tesla stock prior to 12:48 p.m. on August 7, 2018 and covered while the stock price was inflated suffered significant damages. The extent of those losses requires discovery into the extent of short positions before Musk's August 7, 2018 tweet and the level of covering those positions afterwards. This further illustrates that reliance on such materials is improper at this stage, and that these and other issues must await development in discovery. Consequently, assuming any of the underlying evidence made in the media is even correct or admissible, Defendants' claims about short-seller profits require the Court under Rule 12(d) to grant Plaintiff's motion to convert and deny Defendants' Motion to Dismiss. *See, e.g.*, *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 639 (N.D. Cal. 2019) (Chen J.) ("the Court cannot accept the truth of the contents of the exhibits and create a factual dispute at this juncture").

**D.   IN SPITE OF PLAINTIFF'S WELL-PLEADED ALLEGATIONS, DEFENDANTS SUMMARILY CLAIM THAT MUSK'S GO-PRIVATE TRANSACTION WAS UNDERWAY.**

When Musk tweeted "*Am considering taking Tesla private at $420. Funding secured.*" on August 7, 2018 he did not have an agreement in place to fund the transaction and there were still several significant obstacles standing in his way. ¶121. Yet, in spite of Plaintiff's well-pleaded allegations on this point, Defendants largely base their Motion to Dismiss on the premise that Musk was actively in the "process of evaluating the transaction" to take Tesla private and, therefore, did not mislead investors when tweeting. Def. Mem. at 2. To support this narrative, Defendants rely exclusively on the August 13, 2018 blog post in which Musk recreated history in order to paint his August 7, 2018 tweet in a positive light. This August 13, 2018 revisionist blog

post, because it itself is false and materially misleading, cannot support a competing factual narrative of the case for the purposes of Defendants' Motion to Dismiss. *See Khoja*, 899 F.3d at 1003 ("it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint"); *Evanston Police Pension Fund v. McKesson Corp.*, No. 18-CV-06525-CRB, 2019 WL 5587311, at *3 (N.D. Cal. Oct. 30, 2019) (holding the court could not "assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.").

Plaintiff articulates in great detail how and why the August 13, 2018 blog post was false and materially misleading. As alleged, it concealed that Musk had not taken (or even considered) many of the steps necessary to effect a going-private transaction, including securing funding or even providing Tesla's board with a specific proposal. ¶135. Moreover, the blog post misrepresented that there was "no question that a deal with the [PIF] could be closed" because Musk knew at that point in time that Tesla's board would not approve a Middle East production facility, which was a requirement of the PIF. ¶¶137-38 (Tesla director referred to Middle East production facility as a "non-starter"). In light of Plaintiff's allegations concerning the August 13, 2018 blog post, Defendants cannot rely on its contents at the pleading stage. This is especially true given Musk's statements after August 13, 2018 which, as alleged, show that Musk had not engaged seriously with anyone in any capacity about taking Tesla private prior to August 7, 2018. *See* ¶112 (Musk told *The New York Times* that the $420 price per share was a marijuana-related joke, that no one had seen or reviewed the August 7, 2018 tweet before he sent it, and that funding from the PIF was "far from secure"); ¶147 (Musk admitted to the SEC that there was no way to retain retail investors in a private Tesla); ¶150 (Musk admitted to the SEC that the $420 price reflected a joke with his girlfriend at the time which "[was] not a great reason to pick a price").

By analogy, Defendants' reliance on the August 13, 2018 blog post is no different than a party seeking to defeat summary judgment with a "sham affidavit." *See*, *e.g.*, *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."). Like a "sham

affidavit," the August 13, 2018 blog post is a self-serving statement that cannot and should not be accepted by the Court as "fact" as a matter of law. To do otherwise would run contrary to the holding of *Khoja*.

### III.   CONCLUSION

Defendants' Motion to Dismiss forces the Court to decide under Rule 12(d) whether to consider information outside the Complaint and thus convert Defendants' Motion to Dismiss to one for summary judgment, or to exclude large swaths of the motion from the record (as identified in the redacted version of Defendants' Motion to Dismiss attached as Exhibit A to the accompanying proposed order). In either event, the Court should deny Defendants' Motion to Dismiss.

Dated: December 27, 2019                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 s/ Adam M. Apton
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel : 415-373-1671
Fax : 415-484-1294
Email: aapton@zlk.com
Email: amccall@zlk.com

-and-

Nicholas I. Porritt
Alexander A. Krot III
**LEVI & KORSINSKY, LLP**
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel:   (202) 524-4290
Fax:   (202) 333-2121
Email: nporritt@zlk.com
Email: akrot@zlk.com

(*admitted pro hac vice*)

-and-

Joseph Levi
Eduard Korsinsky
**LEVI & KORSINSKY, LLP**
55 Broadway, 10th Floor
New York, New York 10006
Tel:    (212) 363-7500
Fax:   (212) 363-7171
Email: jlevi@zlk.com
Email: ek@zlk.com

(*admitted pro hac vice*)

*Attorneys for Lead Plaintiff and the Class*