DEAN S. KRISTY (CSB No. 157646)
dkristy@fenwick.com
KEVIN P. MUCK (CSB No. 120918)
kmuck@fenwick.com
JENNIFER BRETAN (CSB No. 233475)
jbretan@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

ALISON C. JORDAN (CSB NO. 311081)
ajordan@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200

Attorneys for Defendants Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No.: 3:18-cv-04865-EMC<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED COMPLAINT**<br><br>Date: March 5, 2020<br>Time: 1:30 p.m.<br>Dept.: Courtroom 5, 17th Floor<br>Judge: Hon. Edward M. Chen<br><br>Date Action Filed: August 10, 2018 |

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. THE OPPOSITION FAILS TO SHOW A MISSTATEMENT OR SCIENTER ............... 3

    A. The Opposition Does Not Show An Actionable Statement On August 7 ............. 3

        1. Plaintiff's "Funding Secured" Arguments Are Unavailing ........................ 3

        2. The Opposition Abandons The "Intended" Structure Claims ................... 5

        3. The "Only Contingency" Tweet Must Be Read In Context ...................... 6

    B. The August 13, 2018 Statements Also Were Not False Or Misleading ................ 7

    C. The Scienter Allegations Remain Woefully Deficient ........................................... 7

III. TESLA DID NOT MAKE THE ALLEGEDLY ACTIONABLE STATEMENTS .......... 11

IV. LOSS CAUSATION REMAINS AN INSUPERABLE BARRIER HERE ..................... 13

V. THE SECTION 20(a) CLAIM IS STILL A BASELESS AFTERTHOUGHT ................ 15

VI. CONCLUSION ...................................................................................................... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**

Page(s)

Cases

*In re Apollo Grp., Inc. Sec. Litig.*,
 2011 WL 5101787 (D. Ariz. Oct. 27, 2011) ................................................................10

*Attia v. Google LLC*,
 2018 WL 2971049 (N.D. Cal. June 13, 2018) .............................................................10

*Azar v. Yelp, Inc.*,
 2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ...........................................................7, 9

*Basic, Inc. v. Levinson*,
 485 U.S. 224 (1988) ....................................................................................................4, 7

*Bodri v. GoPro, Inc.*,
 252 F. Supp. 3d 912 (N.D. Cal. 2017) ............................................................................8

*Brody v. Transitional Hosps. Corp.*,
 280 F.3d 997 (9th Cir. 2002) ........................................................................................4, 7

*In re ChinaCast Educ. Corp. Sec. Litig.*,
 809 F.3d 471 (9th Cir. 2015) .....................................................................................12, 13

*Cho v. UCBH Holdings, Inc.*,
 890 F. Supp. 2d 1190 (N.D. Cal. 2012) .......................................................................10

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
 856 F.3d 605 (9th Cir. 2017) .............................................................................6, 7, 8, 15

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
 2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) ...........................................................3, 6, 11

*Dura Pharms., Inc. v. Broudo*,
 544 U.S. 336 (2005) ......................................................................................................14

*In re Energy Recovery, Inc. Sec. Litig.*,
 2016 WL 324150 (N.D. Cal. Jan. 27, 2016) ............................................................11, 12

*Evanston Police Pension Fund v. McKesson Corp.*,
 2019 WL 5587311 (N.D. Cal. Dec. 19, 2019) .............................................................10

*Fecht v. Price Co.*,
 70 F.3d 1078 (9th Cir. 1995) ..........................................................................................5

*Fleming v. Impax Labs., Inc.*,
 2018 WL 4616291 (N.D. Cal. Sept. 7, 2018) ...............................................................13

*Glazer Capital Mgmt., L.P. v. Magistri*,
 549 F.3d 736 (9th Cir. 2008) ........................................................................................10

**TABLE OF AUTHORITIES (CONT'D)**

Page(s)
**Cases**

*Hefler v. Wells Fargo & Co.*,
   2018 WL 1070116 (N.D. Cal. Feb. 27, 2018) ................................................................. 11, 12

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) ................................................................................................. 15

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
   564 U.S. 135 (2011) ............................................................................................................ 11, 12

*Lipsky v. Commonwealth United Corp.*,
   551 F.2d 887 (2d Cir. 1976) .................................................................................................... 10

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005) ................................................................................................ 5, 11

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) ............................................................................................ 13, 14

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) .............................................................................................. 13, 14

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014) ........................................................................................... 6

*Mineworkers Pension Scheme v. First Solar Inc.*,
   881 F.3d 750 (9th Cir. 2018) .................................................................................................... 13

*N.Y. Hotel Trades Council & Hotel Ass'n v. Impax Labs, Inc.*,
   2019 WL 3779262 (N.D. Cal. Aug. 12, 2019) ......................................................................... 14

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   135 S. Ct. 1318 (2015) ............................................................................................................... 7

*In re OmniVision Techs., Inc. Sec. Litig.*,
   937 F. Supp. 2d 1090 (N.D. Cal. 2013) ...................................................................................... 5

*Park v. GoPro, Inc.*,
   2019 WL 1231175 (N.D. Cal. Mar. 15, 2019) .................................................................. 6, 7, 8

*In re PayPal Holdings, Inc. S'holder Deriv. Litig.*,
   2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ........................................................................... 4, 5

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) .................................................................................................... 4

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) .................................................................................................. 5, 9

Fenwick & West LLP
Attorneys at Law
San Francisco

**Cases**

*Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods., N.V.*,
 2005 WL 1366025 (D.N.J. June 8, 2005) ...................................................................14

*Rok v. Identiv, Inc.*,
 2017 WL 35496 (N.D. Cal. Jan. 4, 2017), *aff'd*, 716 F. App'x 663 (9th Cir. 2018) ..............................................................................................................................14

*Ronconi v. Larkin*,
 253 F.3d 423 (9th Cir. 2001) ...........................................................................................9

*SEC v. Platforms Wireless Intern. Corp.*,
 617 F.3d 1072 (9th Cir. 2010) .........................................................................................8

*Sgarlata v. PayPal Holdings, Inc.*,
 2018 WL 6592771 (N.D. Cal. Dec. 13, 2018) ...............................................................15

*In re Sunrun Inc. Sec. Litig.*,
 2018 WL 10323335 (N.D. Cal. July 19, 2018) ................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) .........................................................................................................8

*In re Tenet Healthcare Corp. Sec. Litig.*,
 2007 WL 5673884 (C.D. Cal. Dec. 5, 2007) .................................................................10

*United States v. Bailey*,
 696 F.3d 794 (9th Cir. 2012) .........................................................................................10

*Veal v. LendingClub Corp.*,
 2019 WL 5698072 (N.D. Cal. Nov. 4, 2019) .................................................................10

*In re Verifone Holdings, Inc. Sec. Litig.*,
 704 F.3d 694 (9th Cir. 2012) .........................................................................................10

*Webb v. SolarCity Corp.*,
 884 F.3d 844 (9th Cir. 2018) ...........................................................................................8

*Wilamowsky v. Take-Two Interactive Software, Inc.*,
 818 F. Supp. 2d 744 (S.D.N.Y. 2011) ............................................................................14

*Yourish v. Cal. Amplifier*,
 191 F.3d 983 (9th Cir. 1999) ...........................................................................................6

*Zucco Partners, LLC v. Digimarc Corp.*,
 552 F.3d 981 (9th Cir. 2009) ......................................................................................7, 8

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I. INTRODUCTION

The PSLRA sets a high bar for a private litigant to plead securities fraud. It requires detailed facts showing that a defendant's statement, read in context, is materially misleading and explaining the reasons why. It further requires specific facts showing that plaintiff's theory of fraud is more than plausible or even reasonable; the law mandates a strong inference of scienter, one that is cogent and as compelling as any competing inference of non-fraudulent intent. The Opposition does none of those things. In place of facts supporting claimed misstatements, it substitutes invented "admissions." In place of facts raising a strong inference of scienter, it offers a theory of fraud that defies common sense, is contrary to law, and does not address the many facts identified in defendants' motion that overwhelmingly indicate good faith. Even plaintiff knows this does not suffice to plead fraud. That is why, despite the PSLRA's stay on discovery, and in an improper effort to fix these gaps, he (unsuccessfully) asked to subpoena the SEC.

As to putative misstatements, the Opposition does not reconcile plaintiff's claim with the fact that Mr. Musk's public tweets on August 7, 2018 were no different than what he told Tesla's Board privately days earlier about his goals, rationale, and the availability of funding for taking Tesla private. *See* CC ¶¶ 63, 69, 72; Ex. A; Mot. at 2, 5-7, 10-16. Nor does the Opposition point to anything that shows funding was not available. As Mr. Musk indicated on August 24 (in a post-class period statement quoted in the CC and not challenged), there was more than ample funding to take Tesla private, but he elected not to pursue the idea for other reasons (as detailed). CC ¶ 115; Ex. N. Funding was *not* the issue, and Mr. Musk's tweet was not false or misleading.

Lacking any legitimate response, the Opposition makes one up, falsely claiming that Mr. Musk "admitted that there was never any funding" (Opp. at 1) and "admitted that on August 7, 2018 funding was highly uncertain with, at best, a 50% chance of success" (*id*. at 3). This is fiction. Mr. Musk said no such thing. Instead, plaintiff attempts to pass off the SEC settlement as an "admission." Not only does this ignore **black letter** law that unadjudicated settlements like this one are not admissions of any kind, the settlement expressly allows Mr. Musk to contest the sufficiency of all factual and legal allegations in **this case**. Mot. at 8, Ex. R. Plaintiff's position misstates the terms of the settlement and disregards well-settled law.

The Opposition fares no better as to other statements. It abandons any pretense that Mr. Musk's August 7 statements about the structure he "envisioned," "hoped for," "intended" and "would like" are actionable. Plaintiff never addresses defendants' arguments about those purely aspirational statements (Mot. at 12-14) and, indeed, drops them entirely from his discussion of alleged misstatements (Opp. at 10-13). As to the tweet stating that a transaction was "[o]nly . . . contingent on a shareholder vote," the Opposition ignores Ninth Circuit law by disregarding important context (including the blog post to which the tweet linked), which emphasized that "a final decision has not yet been made" and a host of other uncertainties. No reasonable investor viewing the complete picture would have believed, just hours after the initial tweet and despite the blog, that the only hurdle remaining was a stockholder vote.

Nor does the Opposition come close to establishing the strong inference of fraud the law demands. Mr. Musk's tweets were consistent with both his long-standing interest in taking Tesla private (Opp. at 1) and his statements to the Board days earlier, and set off a formal process. Mr. Musk retained prominent legal and financial advisors to assist him. Tesla's Board formed a special committee and retained its own skilled advisors, as did Tesla. Every aspect of the evaluation process that followed Mr. Musk's initial email, and subsequent tweets, demonstrates that the transaction Mr. Musk was considering was being taken seriously. ***None of those actions would make any sense if it was all just an elaborate lie.***

The Opposition has no response. Instead, it repeats the same false charge that Mr. Musk "admitted" his statements lacked any basis – again, a claim that flies in the face of the SEC settlement and established law. It also offers the implausible argument that all these efforts were just a smokescreen, and that his *only* aim was to hurt short-sellers (even for a few days). That is not a reasonable or plausible inference, much less one that is strong, cogent and compelling. Short-sellers bet against companies, so it is hardly surprising (or indicative of fraud) that Mr. Musk has talked about the harm they have caused to Tesla's brand, business, and stockholders. Or that among the benefits of being private would be to end their "negative propaganda." If anything, such transparent statements make Mr. Musk's interest in a private Tesla more plausible, not less. Nor would such a short-term scheme make any sense. It is obvious that lying just to hurt short-

sellers on August 7, knowing he would soon abandon the take private plan (and thus "reveal" the lie within days), would only cause the stock to drop, benefitting short-sellers. Regardless, alleging "a motive to commit fraud and opportunity to do so is **not enough**." *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.,* 2019 WL 6877195, at *18 (N.D. Cal. Dec. 17, 2019). The inference of good faith, which is the *only* logical way to view Mr. Musk's statements and the process that ensued, is vastly more cogent and compelling.

The remaining Opposition arguments fail. Claims that Mr. Musk had "apparent authority" to speak on Tesla's behalf, even though he was expressly speaking as a bidder, are contrary to plaintiff's own allegations and governing law. As to loss causation, plaintiff fails to show that any decline was due to a "corrective disclosure." And the "control person" claim fails because the Opposition identifies no facts showing that the Director Defendants controlled Mr. Musk's personal tweets; to the contrary, plaintiff concedes that Mr. Musk *did not* preview the tweets with the directors before making them.

## II. THE OPPOSITION FAILS TO SHOW A MISSTATEMENT OR SCIENTER

### A. The Opposition Does Not Show An Actionable Statement On August 7

On August 2, *days prior to any public disclosure*, Mr. Musk was already evaluating a take private transaction that he believed made sense for Tesla (CC ¶ 69; Ex. A). The next day, on August 3, he discussed his interest with the Board (CC ¶ 72). The consistent public disclosures that followed were not false or misleading or the product of fraud.

#### 1. Plaintiff's "Funding Secured" Arguments Are Unavailing

Unlike a typical securities case, the Opposition does not argue that Mr. Musk's public statements about contemplated funding conflicts with what he said privately (*see* Mot. at 10-12). It also fails to show that funding was *not* available. *Id., see* CC ¶ 115; Ex. N.[1] Rather, the Opposition takes a different tack, falsely claiming that Mr. Musk "admitted that there was never any funding" (Opp. at 1) and "has since admitted that on August 7, 2018, funding was highly uncertain with, at best, a 50% chance of success" (*id*. at 3). This is beyond baseless. Mr. Musk

---

[1] The Opposition abandons the allegation that the $420 price was too high or could not be financed (*see* CC ¶ 71), and for good reason: in little over a year, Tesla's shares vastly exceeded that price, now trading at almost $560 per share.

*never* made such admissions. As detailed in the moving papers (Mot. at 8, 17-18), and discussed more fully below in Section II.C, the SEC settlement expressly provides Mr. Musk the unfettered "right to take legal or factual positions in litigation or other legal proceedings in which the [SEC] is not a party," such as ***this case***. Ex. R ¶ 13.[2] On this point there can be no debate.

And while plaintiff relies heavily on the SEC's unadjudicated allegations (not the settlement), even that is of no help here. The SEC merely alleged that, at the time of his original August 2 email to the Board, Mr. Musk thought "the likelihood of consummation of a transaction was about 50%" and that "it was worth investigating" (Ex. P, ¶ 26). That is a statement about *completing* a take private transaction (which involves many elements), not an "admission" about a lack of funding. *See also Basic, Inc. v. Levinson,* 485 U.S. 224, 232 (1988) (the "ever-present possibility that the contemplated transaction will not be effectuated" is obvious).[3]

With the supposed "admission" dispelled, the Opposition is left to argue that the "funding secured" tweet was misleading because there was no "formal agreement" with PIF, with specific "terms" and "price" discussed and agreed. CC ¶ 121; *see* Opp. at 5, 11. As noted in the moving papers (and not disputed by plaintiff), Mr. Musk never said he had done those things. Mot. at 10-11. He was at the beginning of a process, "***considering***" whether to proceed, with critical terms, including how many shares would need to be acquired (and hence the cost of any deal), yet to be determined. While investors may have desired more detail than what was in the tweet (which is character-constrained by design), there is no completeness requirement. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014); *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Plaintiff must "show[] that, due to its incompleteness, the statement affirmatively led the plaintiff in the wrong direction." *In re PayPal Holdings, Inc. S'holder Deriv. Litig.,* 2018 WL 466527, at * 4 (N.D. Cal. Jan. 18, 2018), quoting

---

[2] The SEC case was settled by consent "without admitting or denying the allegations" solely as to the SEC (consistent with SEC policy). Ex. R. Ignoring the actual language (and black letter law), plaintiff plays semantic games, claiming Mr. Musk "admits, or does not deny" the SEC allegations. CC ¶¶ 170-71. That assertion (Opp. at 9) is frivolous.

[3] Plaintiff's falsehoods do not stop there. Assertions that the price was "picked essentially out of thin air" (Opp. at 5) or "by Musk's girlfriend as a joke because it reflected marijuana jargon" (*id.* at 11) ignore the CC, which concedes that Mr. Musk arrived at $420 by adding a typical 20% premium to the price at the time (*i.e.*, to $419.49) and then rounding up. CC ¶ 70.

*In re OmniVision Techs., Inc. Sec. Litig.,* 937 F. Supp. 2d 1090, 1101 (N.D. Cal. 2013).[4]

The Opposition's attempt to rely on two analyst reports to discharge this burden backfires. Those reports recognized that "details" about funding had not been provided (CC ¶¶ 96, 97), and acknowledged (as defendants noted) that funding secured could mean a "verbal commitment" or something "less than this" (*id.* ¶ 97) and that the amount of funding needed was still uncertain (*id.* ¶¶ 96, 97). Those analysts opined only that the proposal should be taken seriously (*id.*), and neither interpreted the statement as plaintiff suggests, as if it were a *fait accompli*. *See* Opp. at 7.[5] An allegedly incomplete statement does not become actionable simply because analysts say to take it seriously. *See In re Rigel Pharms., Inc. Sec. Litig.,* 697 F.3d 869, 880 n.8 (9th Cir. 2012). Indeed, an incomplete statement is not actionable even if (unlike here) analysts interpret it incorrectly. *See OmniVision,* 937 F. Supp. 2d at 1102 ("[t]he mere fact that defendants' statements did not disabuse lead plaintiffs or analysts of their conclusion . . . does not render the statements actionable").[6] Moreover, the CC belies any claim that investors were led in the wrong direction. When Mr. Musk elaborated in his August 13 blog post on "why I said funding secured," Tesla's stock price did not decline, it ***increased***. Mot. at 7, 12; Ex. T. The Opposition offers no real response.[7]

### 2. The Opposition Abandons The "Intended" Structure Claims

The Opposition abandons any pretense that Mr. Musk's August 7 statements about the structure he "envisioned," "hoped for," "intended," and "would like" are actionable. The

---

[4] Plaintiff's citation to a pre-PSLRA case, *Fecht v. Price Co.,* 70 F.3d 1078 (9th Cir. 1995), does not relieve him of his pleading burden. *Fecht* merely held that issues of materiality or the sufficiency of risk warnings under bespeaks caution are generally not resolved at this stage. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940, 947 (9th Cir. 2005) (bespeaks caution "requires a stringent showing" under *Fecht*). Defendants' motion raised no such issues.

[5] Nor did the market. Unlike the typical scenario, where the stock price approaches the announced price on news of a likely "done deal," plaintiff admits Tesla's stock price increased just 6% after the tweet, closing at $379 (Opp. at 6 & n.3), well below the contemplated $420 price. The only reasonable inference is that investors recognized a take private transaction was far from certain.

[6] Plaintiff uses the same rationale to assail another tweet about funding in which Mr. Musk said "investor support is confirmed." Opp. at 11-12; *see* Mot. at 12 n.8. It fails for the same reasons.

[7] Despite Mr. Musk saying he was only "considering" an offer and had made "no final decision," plaintiff purports to quote an unpublished comment by Tesla's IR head that there was a "firm offer" as if it were an assurance about funding. Opp. at 1. But plaintiff ignores the SEC complaint from which he lifts the allegation. According to the SEC, when asked if there was a commitment letter or verbal agreement for funding, the IR head indicated "I actually don't know." Ex. Q, ¶ 31.

arguments in defendants' motion (Mot. at 12-14) are never addressed and the statements are excluded from plaintiff's discussion of alleged misstatements (Opp. at 10-13). And with good reason: the statements were aspirational and accurately reflected Mr. Musk's desire for a structure that would let shareholders remain in a private Tesla. That sentiment is not transformed into a misstatement simply because it did not work out. *See Yourish v. Cal. Amplifier,* 191 F.3d 983, 997 (9th Cir. 1999) ("[I]t is clearly insufficient for plaintiffs to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood"); *Park v. GoPro, Inc.*, 2019 WL 1231175, at *10, 13 (N.D. Cal. Mar. 15, 2019) (subsequent developments do not show falsity at time of statement). Mr. Musk originally "thought there would be some way to retain small investors," but ultimately learned "there isn't." CC ¶ 147. That is not falsity. *See In re Lululemon Sec. Litig.,* 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) ("[f]alsity is a failure to be truthful – it is not a misapprehension, misunderstanding or mistake of fact at the time a statement was made").

### 3. The "Only Contingency" Tweet Must Be Read In Context

The Opposition also proceeds as if every statement exists in a vacuum. But whether a statement is misleading "***always depends on the context***, which includes all its surrounding text, including hedges, disclaimers, and apparently conflicting information." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,* 856 F.3d 605, 615 (9th Cir. 2017) (emphasis added); *see also GoPro,* 2019 WL 1231175, at *14 (plaintiffs failed to provide needed context).

No reasonable investor would read Mr. Musk's August 7 tweet that a transaction was "[o]nly . . . contingent on a shareholder vote" in isolation to suggest that ***nothing else*** needed to happen. It was just three hours earlier that Mr. Musk first tweeted that he was "considering" taking Tesla private – a statement conveying uncertainty on its face. And this specific tweet also linked directly to a blog post in which Mr. Musk offered more expansive comments emphasizing various uncertainties, including that a "***final decision has not yet been made***." *See* CC ¶ 84, Ex. I (emphasis added). A reasonable investor would not believe (mere hours after the initial tweet) that the only remaining hurdle was a shareholder vote. *See Oracle,* 2019 WL 6877195, at *12.

While the Opposition attempts to misstate defendants' argument to suggest a statement is not actionable if it is "obviously false" (Opp. at 3), defendants argued only that context matters.

Under well-established law, the tweet did not exist in isolation, but must be read along with the blog it linked to and surrounding circumstances. Mot. at 14-15. *See Basic,* 485 U.S. at 234 (securities laws do not assume "investors are nitwits" or attribute "child-like simplicity" to them).

### B. The August 13, 2018 Statements Also Were Not False Or Misleading

As for the August 13 statement that Mr. Musk was "excited to work with Silver Lake and Goldman Sachs as financial advisors" (CC ¶ 104), plaintiff meekly asserts that was "misleading" because Mr. Musk "had not signed an agreement to formally engage or retain" them "by August 13" (*id.* ¶ 140). But Mr. Musk ***did not say*** that he had signed a "formal agreement," nor is it at all unusual to start working with advisors beforehand. The alleged lack of an "executed formal agreement" does not "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exist[ed]." *See Brody,* 280 F.3d at 1006.[8]

Equally deficient is the Opposition's effort to address Mr. Musk's "belief" that there was "no question that a deal with the Saudi fund could be closed," which was why he said "funding secured" on August 7. *See* Mot. at 15; CC ¶ 103; Ex. K. Plaintiff ignores Mr. Musk's actual explanation, which discussed the form of PIF's commitment, and insists that no "commitment" was made by PIF. That is an empty "conclusion couched as a factual allegation." *GoPro,* 2019 WL 1231175, at *7. In any event, since Mr. Musk subjectively believed he had funding (and revealed the facts on which his belief was based), the claim fails. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,* 135 S. Ct. 1318, 1327 (2015) (opinion must be both subjectively and objectively untrue); *Align Tech.,* 856 F.3d at 615-16 (plaintiff must show "that the speaker did not hold the belief" and "that the belief is objectively untrue").[9]

### C. The Scienter Allegations Remain Woefully Deficient

Mr. Musk's longstanding interest in taking Tesla private was no secret. It was incumbent on plaintiff in the Opposition to identify facts suggesting Mr. Musk was lying (or, at a minimum,

---

[8] The two articles relied on do not specify a source (CC ¶ 107) and are no basis for bringing fraud claims under the PSLRA. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) (information must reliable and based on personal knowledge); *In re Sunrun Inc. Sec. Litig.*, 2018 WL 10323335, at *1 (N.D. Cal. July 19, 2018) (rejecting reporter's hearsay account).

[9] Plaintiff's other arguments (Opp. at 13) are unsupported and beside the point as they do not concern "the basis for the [defendant's] opinion" about funding from PIF. *Align Tech.,* 856 F.3d at 616. *See Azar v. Yelp, Inc.,* 2018 WL 6182756, at *10 (N.D. Cal. Nov. 27, 2018).

speaking with deliberate recklessness tantamount to an intent to mislead). *See Zucco,* 552 F.3d at 991; *Align Tech.,* 856 F.3d at 619. The inference of deception must be "strong," and at least as cogent and compelling as any opposing inference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 309 (2007) ("must be more than merely plausible or reasonable"); *GoPro,* 2019 WL 1231175, at *20-22. That standard is "not easy to satisfy." *Webb v. SolarCity Corp.,* 884 F.3d 844, 855 (9th Cir. 2018). Yet all the Opposition offers is a gross distortion of the terms of the SEC settlement (to manufacture a supposed "admission") and a so-called "motive" to hurt short-sellers. Neither comes close to raising the required strong inference.

No facts suggest Mr. Musk acted with an intent to defraud (or anything remotely close). Days before he tweeted, Mr. Musk told the Board of his goals, rationale, and the availability of funding for taking Tesla private. He hired lawyers and financial advisors to assist. In response, the Board formed a special committee and retained its own advisors, as did Tesla. ***None of this would make a whit of sense unless Mr. Musk firmly meant what he said***. It is just not plausible for anyone to undertake all that effort if simply engaged in a ruse. *See Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 933 (N.D. Cal. 2017) ("illogical" allegations undermine inference of scienter).

There is also no serious claim that Mr. Musk stood to gain ***anything***. Triggering an entire process, just to "dupe" shareholders, was of no benefit to him. That too weighs heavily against scienter. The Opposition has no answer to that or the many other facts undermining scienter. Mot. at 16-18. As to "funding secured," there is no dispute that PIF pursued taking Tesla private for almost two years and invested billions in Tesla stock. Nor is there a single fact to dispute that, given his July 31 meeting with PIF's senior decision-maker, and its vast resources, Mr. Musk believed PIF stood ready and able to fund a deal. *See* Exs. B, K; Mot. at 5, 17. Had Mr. Musk hoped to mislead by tweeting the "only" contingency was a shareholder vote, he would not link directly to a blog describing a whole range of uncertainties (including that he had not even decided to pursue a transaction). Mot. at 17. While plaintiff quarrels with the words Mr. Musk used, ***no facts*** suggest he did not genuinely believe them. That is what the law ***requires***. *See SEC v. Platforms Wireless Intern. Corp.,* 617 F.3d 1072, 1093 (9th Cir. 2010) ("Scienter is a subjective inquiry. It turns on the defendant's state of mind."). Nor does it suffice to allege he

"should have had different expectations and beliefs." *Rigel,* 697 F.3d at 882; *see Ronconi v. Larkin,* 253 F.3d 423, 430 (9th Cir. 2001) ("[t]hat a pessimistic argument could have been made . . . does not raise a strong inference that defendants actually knew" statements were false).

Likewise, plaintiff cannot seriously contest that the August 7 tweets were prompted by breaking reports of PIF having acquired almost 5% of Tesla's stock in the *Financial Times* ("*FT*") that morning. Mot. at 6; Ex. B. While plaintiff asks the Court to disregard the *FT* story as "outside the pleadings," the Opposition elsewhere ***relies*** on it. Opp. at 19. Plaintiff cannot both embrace and object to a widely-published news story.[10] Plaintiff also makes a conclusory claim that what prompted Mr. Musk's initial tweet is a "disputed" fact, but does not plead any other reason for why Mr. Musk tweeted that day. This Court has rejected such a "bare assertion." *See Azar,* 2018 WL 6182756, at *5. But even if the *FT* story is not considered, Mr. Musk explained that he tweeted because he thought public disclosure was "the right thing to do" so that ***all*** shareholders had the same information at the same time. CC ¶ 103; Ex. K. That is good faith, not fraud.

Ignoring the overwhelming facts running counter to any fraud, the Opposition claims that in the SEC settlement, Mr. Musk "admitted" his statements were false or "premised on a long series of baseless assumptions." Opp. at 3, 9, 16, 19. Such blatantly misguided "advocacy" reveals desperation. The SEC Consent is before the Court. It has a standard provision stating that, solely for purposes of the SEC case, Mr. Musk does not admit or deny the SEC's allegations (other than jurisdiction). Ex. R, ¶ 2. It contains no "findings" and provides an unfettered "right to take legal or factual positions in" any other litigation. *Id.* ¶ 13.[11]

Courts unequivocally hold that such consent settlements ***are not*** admissions. That is just black letter law – and plaintiff cites no case to the contrary. As Judge White ruled, an SEC consent in which defendants "neither admitted nor denied the [SEC's] allegations against them . .

---

[10] Oddly, plaintiff cites the *FT* article to note that another company (Tencent) took a 5% stake in Tesla in 2018 without prompting Mr. Musk to tweet about a take private transaction. ***That is precisely the point.*** Unlike Tencent, Mr. Musk actually was engaged in discussions with PIF to take Tesla private, most recently on July 31 when he was told that PIF had bought almost 5% of Tesla (just below the public reporting threshold).

[11] Equally false is the claim that Mr. Musk "admitted" there was no funding in the *New York Times* on August 16. Opp. at 23. Plaintiff never quotes Mr. Musk because ***he said nothing of the kind***. Since the Opposition relies on it so heavily, we submit that article for the Court's reference (Bretan Reply Decl., Ex. 1). It reveals nothing new about the potential take private transaction.

. *are no[t] findings upon which Plaintiffs may rely*." *Cho v. UCBH Holdings, Inc.,* 890 F. Supp. 2d 1190, 1203 (N.D. Cal. 2012). The Ninth Circuit emphasized the same point in *Glazer Capital Mgmt., L.P. v. Magistri*, 549 F.3d 736 (9th Cir. 2008), holding that settlement agreements with the SEC do not show scienter and "**were not sufficient to meet the pleading requirements of the PSLRA.**" *Id.* at 748.[12] Hoping to distinguish *Cho,* plaintiff erroneously claims it involved an FDIC report that did not implicate certain defendants (Opp. at 21 n.17). In fact, *Cho* concerned improper use of an SEC settlement just like plaintiff attempts to do here. 890 F. Supp. 2d at 1203. As to *Glazer*, plaintiff notes the court's observation that the "settlement" there lacked detailed facts, but ignores that the consent here is similarly conclusory. *See* Ex. R.

Furthermore, the weight of authority also holds that even ***allegations*** in an SEC complaint may not be relied on because they are unadjudicated. *See United States v. Bailey,* 696 F.3d 794, 801 (9th Cir. 2012) ("We risk stating the obvious here: a complaint is merely an accusation of conduct and not, of course, proof that the conduct alleged occurred"). Plaintiff must do more than merely copy the SEC complaint wholesale. *See In re Apollo Grp., Inc. Sec. Litig.,* 2011 WL 5101787, at *10 n.5 (D. Ariz. Oct. 27, 2011) ("because allegations from other complaints are unproven and contested, they do not amount to 'facts' sufficient to establish a strong inference of scienter"); *Veal v. LendingClub Corp.,* 2019 WL 5698072, at *16 (N.D. Cal. Nov. 4, 2019) ("Plaintiff may not allege 'facts' simply because they appear in" FTC Complaint); *Attia v. Google LLC,* 2018 WL 2971049, at *14-15 (N.D. Cal. June 13, 2018) ("[p]laintiff may not simply regurgitate other parties' pleading" and instead has "nondelegable responsibility" to "validate" the allegations).[13] As shown on this motion, however, plaintiff's allegations are deficient regardless of the "source."

Nor is proper to infer that Mr. Musk's statements, and the extensive process that followed, were a grand ruse to conceal a deliberate intention to harm short-sellers for mere days. *See* Opp.

---

[12] *See also Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir. 1976) (SEC consent "which is not the result of an actual adjudication of any of the issues . . . cannot be used as evidence in subsequent litigation [with] another party"); *In re Tenet Healthcare Corp. Sec. Litig.,* 2007 WL 5673884, at *2 (C.D. Cal. Dec. 5, 2007) (refusing to consider SEC settlement).

[13] Plaintiff's cases are inapposite. *See Evanston Police Pension Fund v. McKesson Corp.,* 2019 WL 5587311 (N.D. Cal. Dec. 19, 2019) (many facts beyond antitrust complaint); *In re Verifone Holdings, Inc. Sec. Litig.,* 704 F.3d 694, 706-07 (9th Cir. 2012) (no objection to SEC complaint).

at 17-18, 20. Because short-sellers bet against companies, it is hardly surprising (or indicative of fraud) that Mr. Musk has spoken out about the harm they have caused Tesla's brand, business, and stockholders. Or that the benefits of being private would include ending their "negative propaganda" and "defamatory" remarks. *See* Exs. A, G, I. If anything, such candid statements make Mr. Musk's genuine interest in a private Tesla more reasonable, not less. Nor would such a short-term scheme make any sense. Abandoning a take private plan (and revealing the "lie" within days) would only cause the stock to drop, thus **benefitting** short-sellers. But no matter how construed, alleging "motive to commit fraud . . . is **not enough.**" *Oracle,* 2019 WL 6877195, at *18. Viewed holistically, the inference of good faith, which is the *only* logical way to view Mr. Musk's statements and the extensive process that ensued, is vastly more cogent and compelling.[14]

### III. TESLA DID NOT MAKE THE ALLEGEDLY ACTIONABLE STATEMENTS

It is uncontroverted that the "maker" of a statement is the person with "ultimate authority" over its "content and whether and how to communicate it." *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011). The Opposition does not try to argue that anyone other than Mr. Musk "had ultimate authority over the alleged misstatements." Mot. at 20 (quoting *Hefler v. Wells Fargo & Co.*, 2018 WL 1070116, at *9 (N.D. Cal. Feb. 27, 2018)). Instead, plaintiff attempts to impute the statements to Tesla on the theory that Mr. Musk had "apparent authority" to speak on its behalf. Opp. at 13-14. That theory fails.

To invoke "apparent authority," plaintiff must show that the challenged statements were made by Mr. Musk within the scope of his role as CEO, and that he was purporting to speak on Tesla's behalf. *See, e.g., In re Energy Recovery, Inc. Sec. Litig.*, 2016 WL 324150, at *25 (N.D. Cal. Jan. 27, 2016). The Opposition makes no attempt to show such facts for the statements at issue here (*see* CC ¶¶ 120, 122, 124, 126, 128, 130, 134, 136, 139), nor could it. As discussed in the moving papers, Mr. Musk expressly stated that he was "speaking for myself as a potential bidder for Tesla" (CC ¶ 103), and the challenged statements were all attributed on their face to

---

[14] Plaintiff relies on *Livid* (Opp. at 17), but that case involved a brazen financial fraud, in which defendants stated a $25 million fundraise was complete (inducing plaintiff to invest $10 million more), when in reality only $2 million was raised and the company had a negative net worth. 416 F.3d at 947. Scienter was easy to find on those facts, but that is a far cry from this case. *Id.* at 948.

him (*see* Mot. at 19-20) – points the Opposition does not dispute. Nor does plaintiff contest that, as a matter of law, such attribution is "strong evidence" that the statements were "made by – and only by – the party to whom it is attributed." *Id*. (quoting *Janus*, 564 U.S. at 142-43).

Unable to cite a single fact overcoming that "strong evidence," the Opposition resorts to misdirection. Plaintiff tries to disregard Mr. Musk's statement that he was "speaking for myself as a potential bidder" as "self-serving" and claims it "creates fact questions not resolvable prior to discovery." Opp. at 15 n.9. The Opposition cites no authority to support this argument, which flies in the face of *Janus* and the PSLRA's requirement that plaintiff must plead facts showing the statement is attributable to Tesla. *See Hefler*, 2018 WL 1070116, at *9. Equally unavailing is plaintiff's recitation of innocuous averments – *e.g.,* that Mr. Musk is Tesla's "co-founder, Chairman and CEO," the "face of" the Company, and often "communicated about and promoted Tesla's … business" via Twitter (Opp. at 14) – untethered to the challenged statements. That Mr. Musk has, at other times and in other circumstances, spoken on Tesla's behalf does not overcome the "strong evidence" that the ***specific statements at issue here*** were not made in the scope of his employment. *Cf. Energy Recovery,* 2016 WL 324150, at *25.

Similarly, the fact that Tesla posted some of the statements on its website (Opp. at 14-15) is legally irrelevant. "[H]osting a document on a Web site" does not transform the host into the "maker" of the statement. *Janus*, 564 U.S. at 148 n.12. Plaintiff's only response is to suggest that others at Tesla (*i.e.*, the directors and Tesla's head of IR) made statements that purportedly "buttress[ed]," "bolster[ed]" or "confirmed" Mr. Musk's comments. Opp. at 14-15. But that argument misses the point. Putting aside that the CC does not claim those statements are actionable, that directors or the head of IR may have later commented on Mr. Musk's statements has no bearing on plaintiff's inability to plead that: (i) anyone else had "ultimate authority" over Mr. Musk's challenged statements; or (ii) that those statements were made in the scope of his employment. *See Hefler*, 2018 WL 1070116, at *9; *Energy Recovery,* 2016 WL 324150, at *25.

Finally, plaintiff cites *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 472-73 (9th Cir. 2015), but that case only underscores why he cannot rely on "apparent authority." There, the statements were indisputably made by a CEO purporting to act in the scope of his employment –

*e.g.*, in corporate press releases, earnings calls, and SEC filings that carried "the ***imprimatur of the corporation that selected him to speak on its behalf and sign SEC filings***." 809 F.3d at 473, 477. Here, Mr. Musk stated unequivocally that he was speaking on his own behalf as a potential bidder, a point underscored in statements by Tesla's independent directors (CC ¶¶ 93, 106).

## IV. LOSS CAUSATION REMAINS AN INSUPERABLE BARRIER HERE

As the Opposition notes, there may be an "'infinite variety' of . . . theories a plaintiff might allege" to plead loss causation in a hypothetical case. Opp. at 22 (quoting *Mineworkers Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 754 (9th Cir. 2018)). But plaintiff ***in this case*** relies on a ***specific theory***: that a handful of decreases in Tesla's stock price between August 8-17 (CC ¶¶ 191, 192, 194-96) "revealed" the "truth" about facts that had purportedly been misstated (¶ 197). Having chosen to assert "a causation theory based on market revelation of the fraud," the only question is whether plaintiff has "pleaded . . . the facts relevant to [that] theory." *First Solar*, 881 F.3d at 754. The Opposition identifies no such facts.

If anything, as to the first identified decline on August 8 (CC ¶ 191), the Opposition concedes ***the absence*** of loss causation. *See* Mot. at 21-22. CC ¶ 191 is mentioned just once in passing (Opp. at 22), without any argument that a decline resulted from revelation of a misstated fact that day. More devastating still, the Opposition elsewhere argues that the August 8 statement "further bolster[ed]" Mr. Musk's tweet about funding. *See* Opp. at 15. If so, it is not corrective. *See Fleming v. Impax Labs., Inc.*, 2018 WL 4616291, at *4-5 (N.D. Cal. Sept. 7, 2018).

As for August 9 (CC ¶ 192), plaintiff persists in claiming that news of an SEC request for documents prompted a decline that day (Opp. at 23), but does not dispute that mere notice of an SEC inquiry is not sufficient to allege loss causation. *See* Mot at 22; *see also Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014). Instead, plaintiff argues that under *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200 (9th Cir. 2016), an SEC inquiry ***plus*** a "subsequent revelation of the inaccuracy of [a] misrepresentation" can satisfy his burden. Opp. at 23. But plaintiff cannot identify any "subsequent revelation" here. Mr. Musk did not "admit" to the *New York Times* that his statements were inaccurate (Opp. at 23, citing CC ¶ 112). As discussed, ***nothing*** in the August 16 article supports that false claim. That Mr. Musk later settled with the SEC on September 27

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

also does not suffice. Opp. at 23 (citing CC ¶ 116). Again, the resolution of untested claims by the SEC on a "no admit, no deny" basis is not an "admission" of any inaccuracy. In fact, the CC's loss causation allegations (*id*. ¶¶ 188-211), do not even mention the September 27 announcement, much less argue that it was "corrective." In sum, the CC never "detail[s] a 'subsequent corrective disclosure' that might convert disclosures of investigations found lacking under *Loos* into the types of disclosures found sufficient in *Lloyd*." *N.Y. Hotel Trades Council & Hotel Ass'n v. Impax Labs, Inc.*, 2019 WL 3779262, at *3 (N.D. Cal. Aug. 12, 2019).

The remaining alleged disclosures also fail. Nothing said on August 14 (CC ¶ 194) contradicted a challenged statement. *See* Mot. at 22. While the Opposition argues that the market learned Tesla had yet to "form a special committee" (Opp. at 24), CC ¶ 194 ***alleges just the opposite***. And the claim that "Tesla's board had not received a formal plan for the going-private transaction" (Opp. at 24) is neither contained in CC ¶ 194 nor inconsistent with anything that Mr. Musk said previously. The August 15 drop, allegedly prompted by reports of SEC subpoenas (CC ¶ 195), not only fails for the reasons discussed with respect to August 9, plaintiff cannot show those reports disclosed anything new. *See* Mot. at 23; *Rok v. Identiv, Inc.*, 2017 WL 35496, at *18 (N.D. Cal. Jan. 4, 2017), *aff'd*, 716 F. App'x 663 (9th Cir. 2018). And as for the final decline on August 17 (CC ¶ 196), nothing shows it was caused by revelation of information that was corrective. Instead, the Opposition just repeats the false assertion that Mr. Musk "admitted" to the *New York Times* that his statements "lack[ed] sound factual basis." Opp. at 24.

Finally, the contention that short-sellers may plead loss causation by alleging they covered at "artificially inflated prices" (Opp. at 22) is wrong. *See Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744, 755 (S.D.N.Y. 2011). No matter what the reason for buying, "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Even if a short-seller alleges that "he was damaged at the time of his covering purchases," he must ***still*** show his "losses are attributable to . . . misstatements and omissions." *Take-Two,* 818 F. Supp. 2d at 755.[15]

---

[15] Plaintiff misplaces reliance on *Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods., N.V.*, 2005 WL 1366025, at *7 (D.N.J. June 8, 2005), which conflates damage and causation and is inconsistent with *Dura*. *See Take-Two*, 818 F. Supp. 2d at 758-59 (declining to follow *Rocker*).

## V. THE SECTION 20(a) CLAIM IS STILL A BASELESS AFTERTHOUGHT

Not only is there no predicate Section 10(b) violation by Tesla (which the SEC did not allege), the Opposition's attempt to bolster a control person claim against the Director Defendants based on Mr. Musk's statements (which the SEC also did not allege) fails as a matter of law.

*First*, Mr. Musk was speaking, **not for Tesla**, but in his personal capacity as a bidder. With no corporate statement at issue, the claim fails. *Second*, even if plaintiff could get past that roadblock, the CC expressly pleads (and the Opposition ignores) that the directors **did not know** of Mr. Musk's tweet until after-the-fact. *See* CC ¶¶ 6, 112, 166 (no one saw or reviewed the tweets and Mr. Musk "did not discuss the content . . . with anyone else prior to publishing them"). A request to refrain from further tweets as a formal process got underway (s*ee* Opp. at 25) does not suggest control over **the content** of Mr. Musk's prior statements as a bidder or at any time. *Finally*, attempting to shirk any burden, plaintiff argues that he "need not allege that [] defendants actually exercised control," as though merely stating a conclusion will suffice. (Opp. at 24, citing *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000)). *Howard* holds no such thing. It demands facts (absent here) showing a "defendant exercised actual power or control over [a] primary violator." *Id*.; *see Align Tech.,* 856 F.3d at 623 (same).[16]

## VI. CONCLUSION

The high bar for pleading securities fraud is not met. "In few other areas are motions to dismiss . . . so powerful." *Ronconi*, 253 F.3d at 437. The CC should be dismissed.

Dated: January 27, 2020        FENWICK & WEST LLP

By: /s/ *Dean S. Kristy*
Dean S. Kristy

Attorneys for Defendants Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice

---

[16] The Opposition's cursory attempt to plead control fails. Far from "admissions" raising a "plausible inference" that the directors "authorized Musk's disclosure" (*see* Opp. at 25), the August 8 statement (confirming Mr. Musk *had* opened discussions on taking Tesla private) and the fact that a special committee was formed do not suggest **control over Mr. Musk**. Those are ordinary responses to a potential proposal. *See Sgarlata v. PayPal Holdings, Inc.*, 2018 WL 6592771, at *8 (N.D. Cal. Dec. 13, 2018) ("conclusory" allegations of control are insufficient).