**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
388 Market Street, Suite 1300
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
         amccall@zlk.com

*Attorneys for Lead Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**DECLARATION OF LEAD PLAINTIFF GLEN LITTLETON**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date: February 18, 2021<br>Time: 1:30 p.m.<br>Location: Courtroom 5, 17th Floor<br>Judge: Hon. Edward Chen |

I, GLEN LITTLETON, declare as follows:

1. I submit this declaration in support of my motion for class certification, appointment as class representative, and appointment of class counsel. I have personal knowledge of the statements herein and, if called upon as a witness, could and would competently testify thereto.

2. I grew up on a farm in Oakesdale, Washington and attended Oakesdale High School. On graduation in 1969, I attended Washington State University where I studied in the business school. I graduated in 1973 with a Bachelor of Arts degree majoring in finance.

3. After graduation from WSU, I went to work for Pillsbury in Minneapolis, Minnesota in commodity analysis. After several months I transferred to grain procurement. While at Pillsbury my responsibilities included managing inventory and selling byproducts at Ogden Utah Flour Mill.

4. In 1975, I moved from Pillsbury to Hennessy & Associates. Hennessy was a small commodity brokerage owned by several successful floor traders in Chicago, Illinois who focused exclusively on commercial accounts. I started work in Kansas City, Missouri as an associate at the Kansas City Board of Trade ("KCBOT"). As an associate, my responsibilities included talking to customers and taking futures orders on the phone.

5. While working at Hennessy I learned first hand the mechanics of futures trading. After almost a year of working at Hennessey, I was promoted to partner and later was allowed to trade my own account.

6. In 1979, I left Hennessy and began trading on the KCBOT floor on my own account. I have always traded for my own account with no outside funds being used. While a member of the KCBOT, I was a director and president of the Board of Trade Investment Company, which was a 51% owner of the KCBOT property. I was also chairman of the Technology Committee.

7. During my career on the floor, I was a market maker in the wheat options pit. In 1982, the KCBOT became the first exchange to trade a stock index future, Value Line. I began trading this instrument exclusively on the KCBOT as one of the market makers in the pit. Around 1986 I also leased a membership of the Chicago Mercantile Exchange and traded in the S&P pit.

8. During the 1980s I was encouraged by a friend to invest in a bank called Brookside Savings Bank that was using "risk-controlled arbitrage" to add extra leverage to its earnings. After a short term as a director, I discovered that the so-called "risk-controlled" part of the process had an inadequate dependence on liquidity which could evaporate in the instruments used. I resigned from the board and urged that the bank be sold immediately. Several months later, the bank suffered a loss of several million dollars. I recovered my investment several years later.

9. I retired from the KCBOT around 2005. Since then I have traded electronically on my own account from home. From approximately 2014 to 2017, I used Interactive Brokers for my trading. In March 2017, I switched to Lime Brokerage which is part of Wedbush Securities, Inc. My trading is mainly concentrated in stocks, stock indexes, and grains. The only individual company's securities I trade is Tesla. Before its merger with Tesla, I also traded SolarCity Corp. securities.

10. In 2011, I learned of SpaceX, Elon Musk's rocket and spacecraft company. Ever since I had worked on a farm as a child, I had been interested in space. On graduation from WSU, I applied to the Air Force intending to become a pilot and then an astronaut. My wife objected and I realized that, as there was no assurance I would qualify as a pilot or astronaut, a better way to be involved in space was an investor. I pursued my career in trading as a means to build capital to invest in space technology. I had not heard of SpaceX or Tesla before but thought that investing in Tesla could be a path towards involvement in SpaceX and investing in the exploration of space.

11. I began investing in Tesla in 2015. From the beginning, even though I expected Tesla's stock price to appreciate in the long term, it was apparent that the volatility in its stock price required some form of hedging. The volatility increased during 2018 and I become concerned about various acts and statements by Elon Musk that were affecting its stock price, especially his Tweets. As a result, I decided to purchase additional put options to further protect my investment in Tesla in the event that Tesla's common stock price unexpectedly reduced in price. Accordingly, while my overall position was long, or bullish, on Tesla, and designed to generate a profit as Tesla's common stock price increased, I also transacted in options on Tesla common stock, especially put options, that would generate profits in the event Tesla' stock price unexpectedly declined.

12. In making my investment decisions concerning Tesla securities prior to and during the Class Period, I relied upon both the then-current market prices of Tesla's common stock and the option series on Tesla common stock that I was considering to and ultimately did transact.

13. Consistent with my overall bullish strategy in Tesla securities, as of August 6, 2018, my Tesla portfolio consisted of positions in call option contracts at strike prices ranging from $400 to $650 and positions in put option contracts at strike prices ranging from $250 to $600. My entire open positions in Tesla securities as of August 6, 2018 is set forth in Exhibit A hereto. The call options with strike prices up to $500 were designed to generate profits in the event that Tesla common stock increased in price through 2019 and up to January 2020. The put options were generally designed to hedge my portfolio in the event that Tesla common stock price declined in price during 2019 and up to January 2020. My profits would be greater if Tesla's stock price increased and that is what I anticipated would happen.

14. During August 2018, I monitored financial market information primarily through Bloomberg.com. I also subscribed to the online editions of the *Financial Times* and the *Wall Street Journal*. Due to Elon Musk's frequent use of

his Twitter account to announce news about Tesla, I also had a Twitter account and followed Elon Musk's account. On August 7, 2018, I saw Elon Musk's Tweet indicating that he was considering taking Tesla private at $420 per share and that he had funding secured. Upon reading that Tweet, I believed that Elon Musk was committed to taking Tesla private. The market price for Tesla common stock immediately increased significantly in price. I quickly realized that this Tweet would have a massive and detrimental effect on my portfolio even though it had resulted in an increase in Tesla's stock price. My put options, which were mostly priced below the $420 proposed transaction price, would soon become worthless. In addition, my call options, which were priced near or above $420, would also decline in price as Elon Musk's proposal effectively put a cap on Tesla's future stock price below their strike prices.

15. After confirming with my broker, Robert Morse at Lime Brokerage, that my understanding of the effect of Elon Musk's Tweet on my Tesla portfolio was correct, I immediately tried to start reducing my exposure. I began selling my put options before they became completely worthless and also selling certain of my call options whose price was also dropping quickly. I also began opening positions designed to profit when Elon Musk took Tesla at around $420 per share. This ultimately resulted in a Tesla portfolio consisting of a small position in Tesla common stock, and positions in put and call options ranging in strike price from $250 to $600. My transactions in Tesla securities over the period from August 7, 2018 to August 17, 2018 are set forth in Exhibit B hereto.

16. Following the *New York Times* article published on August 17, 2018, it became clear that Elon Musk did not have funding secured to take Tesla private and that he did not have investor support for the transaction as he had said. This revelation further harmed my Tesla positions that I had built from August 7, 2018 to August 16, 2018 and I had to liquidate that position at a further loss.

17.     After August 17, 2018, I continued trading in Tesla securities but only maintaining a small position. After I saw the video of Elon Musk supposedly smoking marijuana while recording a podcast, I decided to eliminate even that small position. Accordingly, by September 12, 2018, I had closed my entire position in Tesla securities.

18.     In December 2019, I resumed trading in Tesla securities. I currently own Tesla securities.

19.     I have been and remain a firm believer in Tesla. My wife and I have purchased 8 Tesla vehicles, either directly or indirectly. I fully support Elon Musk's vision of solar power and electronic vehicles, as well as his goals for space exploration. As a Tesla investor I have seen the negative attacks from short sellers and other critics against Tesla and Elon Musk which I think are unjustified and harmful.

20.     The attacks on Tesla by short sellers and other critics do not, however, justify Elon Musk making false statements such as his "Funding secured" Tweet on August 7, 2018. These statements may have hurt short sellers in the short term but they also harmed Tesla investors such as myself who believe in Elon Musk and Tesla's efforts, invest in the company, and buy its products.

21.     Following the August 7, 2018 Tweets and then the collapse of any going-private transaction, I asked my broker, Robert Morse, to let me know if there were any class actions. He referred me to Levi & Korsinsky, LLP. I was initially reluctant to get involved as a lead plaintiff as I am not naturally litigious. However, I felt a responsibility to the charities we support as well as other Tesla investors to recover the harm caused by Elon Musk and Tesla's actions. Accordingly, I contacted Levi & Korsinsky about serving as lead plaintiff and authorized them to move on my behalf to serve as lead plaintiff in this action.

22.     After my appointment as the lead plaintiff, I have been and continue to be actively involved in the litigation. I regularly speak and communicate via

email with my attorneys, review the pleading and motion papers, and participate in discovery. I reviewed the amended complaint before it was filed. I also reviewed the briefing on the motion to dismiss and initial discovery papers served to date. To date, I have spent approximately 50 to 75 hours participating in the litigation. I have provided to counsel all my trading records for Tesla from Interactive Brokers and Wedbush that are available to me as well as my entire email account and the contents of my computers. I understand these materials have been reviewed by my attorneys and any relevant documents are in the process of being produced to the defendants.

23. In moving for class certification, I am seeking to be appointed as a class representative for the Class. I understand the Class consists of all purchasers and sellers of Tesla securities from when the "Funding Secured" Tweet was published on August 7, 2018 to August 17, 2018. This includes purchasers and sellers of option contracts on Tesla common stock as well as purchasers of Tesla common stock.

24. If appointed as class representative, I understand that I will need to remain involved in this action until it is completed.  I understand that I have a duty to represent all the class members and ensure that their claims are prosecuted vigorously. This includes supervising class counsel, participating in discovery, and attending trial in San Francisco, California, among other things.  I will continue to participate in this action in the same manner and capacity as I have been doing since being appointed lead plaintiff.  I will work with my attorneys to do everything I can to maximize the recovery for the Class.

25. I also support the accompanying motion to have my attorneys, Levi & Korsinsky appointed as class counsel based on the firm's substantial experience and expertise in prosecuting securities class actions and the significant work it has completed in this case, including prevailing on the defendants' motion to dismiss this case. To date, the attorneys at Levi & Korsinsky have demonstrated a thorough

understanding of the subject matter of this case and an expertise in the field of securities litigation. I believe that Levi & Korsinsky possesses the necessary financial and human resources to prosecute this case effectively and successfully through trial and any post-trial appeals.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 22, 2020.

_____
Glen Littleton