EXECUTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case Number: 3:18-cv-04865-EMC |
|  | STIPULATED [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION |

IT IS HEREBY STIPULATED AND AGREED by and between parties hereto, through their undersigned counsel, and subject to this Court's approval:

## 1.   PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. Nothing herein is intended to expand the scope of discovery beyond the defaults contained in the Federal Rules of Civil Procedure or to require parties to produce irrelevant information in order to comply with this Order. The purpose of this Order is to streamline production to promote efficient electronic discovery in this action. The Parties agree to alert all other Parties concerning any technical problems associated with complying with this Protocol. To the extent a Party reasonably believes that compliance with this Protocol imposes an undue burden with respect to any protocol, source, or search term listed herein, it shall notify the other Parties, and the Parties shall promptly confer in an effort to resolve the issue.

1

EXECUTION

## 2.    DEFINITIONS

2.1.    "Custodian" means the person who maintains a document in the ordinary course and from whom a document was collected for use in this action.

2.2.    "Document" or "Documents" means any writing however recorded, including handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail or facsimile and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds or symbols or combinations thereof, and any record created thereby, regardless of the manner in which the record has been stored, and also specifically includes Electronically Stored Information and Hard-Copy Documents.

2.3.    "Electronically stored information" or "ESI" means any Document or Documents stored or transmitted in electronic form.

2.4.    "Hard-Copy Document" means any Document existing in paper form at the time of collection.

2.5.    "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the text contained within the file or files.

2.6.    "Metadata" means data created as a function of the application software used to create the document or file. To the extent they are available and able to be captured at the time of collection, the metadata values that are to be extracted and produced in the metadata load files (.DAT file using concordance standard delimiters) are listed in "Addendum A" attached hereto. The Parties reserve the right to request additional metadata values depending on the source of the data, if the source is not otherwise covered by this Order (*e.g.*, non-traditional sources of ESI).

2.7.    "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.  For example, the Native Format of an Excel workbook is an .xls or .xslx file.

2.8.    "Load Files" means electronic files provided with a production set of Documents

EXECUTION

and images used to load that production set into a Requesting Party's Document review platform.

2.9.    "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, visible text within an image.

2.10.   "Searchable Text" means the text extracted or generated using OCR from any Document that allows the Document to be electronically searched.

**3.    COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**4.    LIAISON**

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI, as follows:

For Plaintiff: Adam M. Apton, Esq., Levi & Korsinsky, LLP

For Defendants: Brian M. French, Esq., Cooley LLP

Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**5.    SEARCH**

5.1    Consistent with Principle 6 of The Sedona Conference Principles, producing parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.  Upon request from a Requesting Party, the Producing Party will disclose the search criteria, if any, used to respond to a request for production of documents.  The Requesting Party may provide input and suggest supplemental criteria, which will be evaluated in good faith by the Producing Party.

EXECUTION

**6.     PRODUCTION FORMATS**

6.1.     Aside from ESI described in paragraph 6.2, ESI is to be produced in 300 DPI Group IV Grayscale Tagged Image File Format (.TIFF or .TIF) files.  TIFF files shall be produced in single-page format along with image load files (.OPT file and .LFP file).  All documents are to be provided with per document searchable text (.TXT) files, and such text files shall contain the full text extraction. Each TIFF image must convey all the information the document contains, disclosing all track changes, hidden content, notes, and any hidden slides, rows or columns, subject to any redactions. In the event a document does not contain electronically extractable searchable text or is redacted or scanned into TIFF format, the text file should contain that document's OCR text.  These image load files should indicate page breaks, to the extent possible. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents.   The Parties agree not to degrade the searchability of documents as part of the document production process.

6.2.     Spreadsheet files, database files or reports, and media files shall be produced in Native Format accompanied by a Bates-stamped placeholder TIFF bearing the legend "This Document has been produced in Native Format."

6.3.     During the process of converting ESI from the electronic format of the application in which the ESI is normally created, viewed and/or modified to TIFF, metadata values listed in Addendum A should be extracted and produced in a load file.

6.4.     Unless otherwise stated herein, documents in families shall be produced and Bates-stamped in sequence with the Absolute Parent first in sequence, followed by any and all attachments.  Absolute Parent shall be defined as the document that is the source for all other documents in a document family, regardless of whether attachments to the Absolute Parent are also parent documents with attachments.  When producing responsive attachments, the parent email will be produced, regardless of responsiveness unless otherwise protected from disclosure.

6.5.     The Parties may deduplicate document families found to be MD5 Hash duplicates across or within Custodians.   Moreover, (a) de-duplication shall be performed only at the document family level so that attachments are not de-duplicated against identical stand-alone

4

EXECUTION

versions of such documents and vice versa, although each family member shall be hashed separately for purposes of populating the MD5 Hash field; (b) attachments to emails, instant messages, or other documents shall not be disassociated from the parent email, instant Messages, or document even if they are exact duplicates of another Document in the production.  A party electing to deduplicate exact duplicates across Custodians shall take reasonable steps to ensure that at least one copy of a responsive exact duplicate that is located in the files of one or more Custodians agreed to by the Parties (or ordered by the Court) is produced.

6.6.   Upon review of a Party's production, a Receiving Party may request the production of ESI in native format where the production in native format is reasonably necessary to the ESI's comprehension or use.  For ESI produced in Native Format, a Bates-stamped placeholder TIFF bearing the legend "This Document has been produced in Native Format" shall also be produced in the same manner as other TIFFs, if TIFFs were not previously included.

## 7.   DOCUMENTS PROTECTED FROM DISCOVERY

7.1   Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.  For example, the mere production of privileged or work-product-protected documents in this case is not itself a waiver in this case or in any other federal or state proceeding.  For the avoidance of doubt, the parties will not conduct an inquiry under Fed. R. Evidence 502(b) to determine whether information was produced inadvertently.  Instead, the parties will determine inadvertence solely based on the good faith representation of the producing party.  When a producing party gives notice to receiving parties that certain produced material is subject to a claim of privilege or other protection, the obligations of the receiving parties are those set forth in Fed. R. Civ. P. 26(b)(5)(B).

7.2   Communications need not be placed on a privilege log if they are:  (i) subject to the attorney-client privilege and/or work product doctrine (e.g., in light of the subject matter of the document and because no waiver occurred); (ii) exchanged between a party and its in-house

EXECUTION

counsel or outside counsel; and (iii) dated after August 17, 2018.

**8.     MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: October 13, 2020                        s/ Adam M. Apton
_____

Counsel for Plaintiff

Dated: October 13, 2020                        s/ Brian M. French
_____

Counsel for Defendants

Pursuant to Civil Local Rule No. 5-1(i)(3), all signatories concur in filing this Stipulation and Proposed Order.

Dated: October 13, 2020                        By:  s/ Adam M. Apton
                                                             Adam M. Apton

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated:                        _____

UNITED STATES DISTRICT/MAGISTRATE JUDGE

6

EXECUTION

**ADDENDUM A[1]**

| Field | Definition | Doc Type |
|---|---|---|
| CUSTODIAN | Name of person from where Documents/files were collected or, in the case of non-human sources, a short description of that source (*e.g.*, "Shared Drive"). | All |
| | | |
| BEGBATES | Beginning Bates Number (production number) | All |
| ENDBATES | Ending Bates Number (production number) | All |
| BEGATTACH | First Bates number of family range (*i.e.*, Bates number of the first page of the parent Document) | All |
| ENDATTACH | Last Bates number of family range (*i.e.*, Bates number of the last page of the last attachment or, if no attachments, the Document itself) | All |
| PAGE COUNT | Number of pages in the Document | All |
| APPLICATION | Commonly associated application for the specified file type. | All |
| NATIVE FILE LINK | The file path for Documents provided in Native Format | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |

---

[1] In the case of previously processed document productions—including, but not limited to, Defendants' prior productions to the U.S. Securities and Exchange Commission—the Parties are not required to re-process such productions to comply with this Order or Addendum A.

EXECUTION

| | | |
|---|---|---|
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Additional Recipients | E-mail |
| BCC | Blind Additional Recipients | E-mail |
| SUBJECT | Subject line of e-mail | E-mail |
| DATESENT | Date Sent (mm/dd/yyyy hh:mm:ss AM) | E-mail |
| DATERCVD | Date Received (mm/dd/yyyy hh:mm:ss AM) | E-mail |
| OUTLOOK TYPE | Type of Outlook item, *e.g.*, e-mail, calendar item, contact, note, task | Outlook or similar system data |
| HASHVALUE | Hash value (*e.g.*, MD5 or SHA-1) | All |
| FILENAME | Original file name at the point of collection | E-Document |
| TITLE | Internal Document property | E-Document |
| AUTHOR | Creator of a Document | E-Document |
| DATE CREATED | Creation Date (mm/dd/yyyy hh:mm:ss AM) | E-Document |
| DOCUMENT TYPE | Descriptor for the type of Document: e.g. "E-Document" for electronic Documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Hard Copy" for Hard-Copy Documents. | All |
| | | |
| PRODVOL | Name of media that data was produced on. | All |
| TIMEZONE | Time zone of data used during processing of data. | All |