# EXHIBIT "A"

## I.   PLAINTIFF'S POSITION

### A.   Pertinent Factual Background

Beginning on August 7, 2018, Elon Musk, the CEO of Tesla, Inc., made certain statements concerning a proposal to take Tesla private. Those statements spawned an investigation by the U.S. Securities and Exchange Commission and this lawsuit. In connection with the investigation, Egon Pierre-Durban, the Co-CEO of Silver Lake Technology Management L.L.C. and non-party to this litigation, provided sworn testimony to the SEC on September 12, 2018.

Mr. Durban worked directly with Mr. Musk on the going-private transaction that is the subject of this litigation. On August 6, 2018, Mr. Durban spoke with Mr. Musk by phone; no one else was on the call. According to Mr. Durban's notes from the call, Mr. Musk discussed his reasons for wanting to take Tesla private, the funding required for the transaction, investor support for the transaction, and the structure of the company afterwards. They scheduled a further meeting for that Friday, August 10, 2018.

On August 7, 2018, the day after their phone conversation, Mr. Musk tweeted: "Am considering taking Tesla private at $420. Funding secured." Mr. Musk made other statements regarding the potential transaction on August 7, 2018 and thereafter. On August 10, 2018, three days after Mr. Musk's tweets, Mr. Durban met with Mr. Musk at his home. Mr. Durban was the only Silver Lake employee present. Mr. Durban's presentation discussed the process for the going-private transaction and particulars concerning the funding, structure, and timeline. The meeting lasted approximately 60 minutes.

Mr. Durban continued to work with Mr. Musk on the potential going-private transaction. On August 13, 2018, Mr. Musk tweeted that he was "excited to work with Silver Lake . . . as financial advisor[] . . . on the proposal to take Tesla private." Mr. Durban spoke with several potential investors, including Yasir Al-Rumayyan, a representative of the Saudi Arabia Public Investment Fund who Mr. Musk publicly identified as interested in providing funding for the going-private transaction. During the call, Mr. Al-Rumayyan discussed his interest in investing in the transaction. Mr. Durban also spoke with sovereign wealth funds from the United Arab Emirates and Singapore and private companies such as Google and Tencent. On August 24, 2018, Tesla and Mr. Musk announced that they were no longer pursuing a going-private transaction

### B.   Argument

Mr. Durban should be forced to comply with Plaintiff's subpoena and appear for his deposition on September 1, 2021, as scheduled. He played an integral role in the going-private transaction by discussing the proposed transaction and its funding the evening before Mr. Musk's August 7, 2018 tweet as well as providing continuing advice afterwards. Mr. Durban also spoke with potential investors in the going-private transaction in the days following the tweets. "When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) ("it is very unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances" (internal quotations omitted)); *see Choudhuri v. Wells Fargo Bank,* N.A., No. 15-CV-03608-VC (KAW), 2017 WL 4418676, at *2 (N.D. Cal. Oct. 5, 2017) (compelling the

deposition of "an important third-party witness, who can verify Plaintiff's claim").

Given his status as a percipient witness, Mr. Durban faces a "heavy burden" under "the liberal discovery principles of the Federal Rules" if he is to successfully avoid sitting for a deposition. *See Phase Four Indus., Inc. v. Marathon Coach, Inc.*, No. C-04-4801 JW PVT, 2007 WL 2429448, at *1 (N.D. Cal. Aug. 23, 2007) (citing *Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (9th Cir. 1975). His primary reason for wanting to quash the subpoena is simply that he already provided testimony about some aspects of the going-private transaction to the SEC. This does not satisfy Mr. Durban's "heavy burden" under "Rule 26's good cause requirement." *See Powertech Tech., Inc. v. Tessera, Inc.*, No. C 11-6121 CW, 2013 WL 3884254, at *1 (N.D. Cal. July 26, 2013) (internal citation omitted); *see also Cannon v. Austal USA LLC*, No. 15CV2582-CAB (BLM), 2017 WL 2908772, at *6 (S.D. Cal. July 7, 2017) (allowing depositions over objections based on burden and duplication where plaintiff was "not required to rely only on [witness's] declaration to answer any discovery related questions"); *Thomasson v. GC Servs. Ltd. P'ship*, No. 05CV0940-LAB (CAB), 2006 WL 8451614, at *9-10 (S.D. Cal. Aug. 31, 2006) (granting motion to depose additional witnesses where defendants flatly refused to make them available on basis that they would be "unreasonably duplicative").

Plaintiff has "the right to depose" Mr. Durban "absent a showing of abuse," notwithstanding his prior testimony to the SEC. *SEC v. Seaforth Meridian*, No. 06-4107-RDR, 2007 WL 9724347, at *2 (D. Kan. June 14, 2007) (allowing party to depose defendant even though defendant already provided testimony in related action). Furthermore, Mr. Durban's testimony to the SEC did not address several key topics. For example:

(1) <u>Presentations prepared by Silver Lake for Mr. Musk in connection with the potential going-private transaction</u>. As described above, Mr. Durban made a presentation during his meeting with Mr. Musk on August 10, 2018. The presentation was 35 pages long and contained extensive detail concerning a strategy for the going-private transaction, the status of financing, potential structures, and investor support (SL_3P00000001-35). It was mentioned by Mr. Durban during his SEC testimony, but never introduced as an exhibit and only discussed at a "high level." SEC Tr. at 127:4-127:22. In fact, Mr. Durban offered to produce and review the presentation during his testimony, but the SEC declined. *Id*. at 127:21-22. Additional presentations were prepared by Mr. Durban and Silver Lake but were not referred to during his SEC testimony.

(2) <u>Communications by/between Silver Lake and the Tesla's Special Committee</u>. Discovery shows that Silver Lake coordinated with Tesla's Special Committee concerning investor outreach and funding for the going-private transaction. Correspondence from the Special Committee to Silver Lake provide information as to the process for the going-private transaction at various points during the relevant period and demonstrate how the process advanced over time (SL_3P00000156, 232, 315). The SEC did not question Mr. Durban about these communications.

(3) <u>Correspondence between Silver Lake and Goldman Sachs</u>. Silver Lake worked with Goldman Sachs and others to structure the going-private transaction. Communications by/between these entities show when the transaction was first

developed on paper and how it changed before it was abandoned just two weeks later (SL_3P00000266-68, 1080-89, 1094, 1205-14). These materials demonstrate that the going-private transaction never achieved funding or a structure for its execution. The SEC did not question Mr. Durban about these communications.

This is not an exhaustive list and there are aspects of topics that Mr. Durban did testify to the SEC about that Plaintiff is entitled to explore further. A party should not be limited in the examination of a witness with first-hand relevant information to the questioning conducted by an unrelated examiner in another proceeding, especially when that party was not present for the questioning and does not stipulate to its admissibility. Mr. Durban's case law, *infra*, supports Plaintiff's point on this issue. In *Koch v. Royal Wine Merchants, Ltd.*, the court *denied* a non-party's motion to quash because the deposition testimony was "relevant to the present action" and "would not be unduly cumulative and duplicative because not all of the wines at issue in the *Royal* action [were] also at issue in the *Greenberg* action," *i.e.*, the subject matter of the new deposition did not entirely overlap with the old subject matter. 2013 WL 5693744, at *3 (N.D. Cal. Oct. 15, 2013). Similarly, in *Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of New York Mellon*, the court denied a motion to quash even though the deponent had already sat for "six depositions lasting over 40.5 hours" and, notwithstanding the burden another deposition was likely to impose, it was "likely that Adler [the deponent] possess[ed] relevant information" based on the fact that Adler's testimony was used in a related enforcement action brought by the SEC. 2013 WL 12139833, at *1, *3 (C.D. Cal. Aug. 7, 2013). In both cases, the courts *allowed* the non-parties to be re-deposed. Further, while Mr. Durban claims Defendants will stipulate to the admissibility of his SEC testimony at trial, Plaintiff will be significantly prejudiced if Mr. Durban's testimony is used against him given that Plaintiff will have had no opportunity to examine Mr. Durban beforehand. *See id*. at *3 (declining to quash subpoena because defendant did not have "chance to examine Adler").

## II.   NON-PARTY EGON PIERRE-DURBAN'S POSITION

### A.   Pertinent Factual Background

In August 2018, Elon Musk, the founder and CEO of Tesla, Inc. ("Tesla"), made certain statements concerning his efforts to take Tesla private. Those statements gave rise to an investigation by the U.S. Securities and Exchange Commission ("SEC") and to this lawsuit. In connection with the SEC investigation, Egon Pierre-Durban, the Co-CEO of Silver Lake Technology Management L.L.C. ("Silver Lake"), provided sworn testimony to the SEC on September 12, 2018. Mr. Durban is not a party to this litigation. The transcript of Mr. Durban's SEC testimony has been produced to Plaintiff in this litigation, and Mr. Durban would be happy to provide a copy to the Court if it would be helpful to the resolution of this dispute.

As his SEC testimony makes clear, Mr. Durban's involvement was limited to a handful of meetings and communications with Mr. Musk and others regarding Tesla over a two-week period in August 2018. Mr. Durban's SEC testimony, which lasted four hours, covered these meetings and communications in great detail, as well as his background with Silver Lake and his experience with go-private transactions generally.

In addition to Mr. Durban's SEC testimony, Silver Lake has produced to Plaintiff the

3

documents that it previously produced to the SEC. That production was based on a broad set of search criteria and included over 1,700 pages of emails and text messages.

Plaintiff served Mr. Durban with a deposition subpoena on May 26, 2021. Mr. Durban promptly objected to the subpoena as imposing an undue burden in light of his prior SEC testimony and Silver Lake's document production. Mr. Durban asked Plaintiff to identify any specific information not already covered in his SEC testimony or Silver Lake's document production and offered to discuss a less burdensome means of providing it.

In response, Plaintiff expressed concern that Mr. Durban's SEC testimony would not be admissible at trial. Plaintiff also noted vaguely that it "may wish to explore other topics or revisit certain areas of his testimony" but refused to identify any such areas. The admissibility of Mr. Durban's SEC testimony would be an issue only in the unlikely event that this matter were to proceed to trial and Mr. Durban were "unavailable" to testify in person (despite residing in this District). Fed. R. Evid. 804. Nonetheless, counsel for Mr. Durban conferred with counsel for Defendants in this litigation, who agreed to stipulate to the admissibility of the SEC testimony. Mr. Durban also agreed that he would not contest a subpoena for his testimony if a trial were held. (Mr. Durban can provide evidence of Defendants' agreement at the Court's request.)

When notified of these agreements, Plaintiff quickly changed course and claimed to need Mr. Durban's deposition because of a handful of purportedly "critical" documents not directly addressed in Mr. Durban's SEC testimony. As discussed below in more detail, however, Plaintiff fails to explain why questions about these documents justify the undue burden a second deposition imposes on Mr. Durban.

### B.   Argument

The Court should quash the subpoena because a deposition on Mr. Durban would be unreasonably duplicative of his SEC testimony – which Defendants have agreed will be admissible in this action – as well as other materials already produced in discovery or available from other sources. *See Callwave Commc'ns, LLC v. Wavemarket, Inc.*, 2014 WL 2918218, at *2 (N.D. Cal. June 26, 2014) (courts "must protect" a nonparty subject to a subpoena that imposes an "undue burden" and "must" limit discovery "if it is unreasonably duplicative, if it can be obtained from a source that is more convenient or less burdensome, or if the burden of producing it outweighs its likely benefit"); Fed. R. Civ. P. 45(d)(3)(iv) (courts "must quash or modify a subpoena that . . . subjects a person to undue burden"). The Ninth Circuit "has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1218-19 (N.D. Cal. 2015).

The burden of preparing and sitting for a deposition outweighs any purported benefit to Plaintiff. Mr. Durban has already testified under oath before the SEC regarding the subject matter of this litigation, and Plaintiff has a transcript of that testimony. Mr. Durban's SEC testimony covered in detail his background with Silver Lake, his experience with go-private transactions generally and his limited involvement in the events that are relevant to Plaintiff's claims in this case. Mr. Durban's involvement was limited to a handful of meetings and communications during a two-week period in August 2018, and his SEC testimony took place on September 12, 2018 – just weeks after those events. Mr. Durban's recollection of those events obviously has not

improved in the intervening three years, and he has nothing to add to his extensive testimony. Plaintiff also has access to the broad set of emails, text messages and other documents that Silver Lake produced to the SEC in connection with its investigation.

Where courts have permitted duplicative depositions in other cases, the inadmissibility of the prior testimony was a crucial factor in the analysis. *See*, *e.g.*, *Koch v. Royal Wine Merchants, Ltd.*, 2013 WL 5693744, at *3 (N.D. Cal. Oct. 15, 2013) (allowing second deposition where movant had not provided any evidence showing that the defendant would have "stipulated to the admissibility and use of the prior testimony"); *Ret. Bd. of Policemen's Annuity & Benefit Fund of City of Chicago v. Bank of N.Y. Mellon*, 2013 WL 12139833, at *3 (C.D. Cal. Aug. 7, 2013) (noting that "an important consideration in gauging the reasonableness of a discovery request is whether it will lead to additional *admissible* evidence" and allowing duplicative deposition because defendant "has refused to stipulate to the admissibility of [movant's] prior depositions") (emphasis in original). In contrast to those cases, inadmissibility is not an issue here.

When Mr. Durban notified Plaintiff that Defendants would stipulate to the admissibility of Mr. Durban's SEC testimony, Plaintiff then claimed to need his deposition in order to ask about a handful of documents that the SEC did not specifically address. That the SEC did not ask questions about each and every document produced by Silver Lake during Mr. Durban's extensive testimony does not justify a duplicative deposition, nor does the content of any of the documents Plaintiff cites. For example, Plaintiff cites a presentation accompanying an August 10, 2018 meeting but ignores that the SEC questioned Mr. Durban extensively about the substance of that meeting. (SEC Tr. 94-97, 126-132.) Similarly, although the SEC did not question Mr. Durban about certain emails between Goldman Sachs and Silver Lake, it is not credible that Plaintiff needs Mr. Durban's testimony on those documents in order to show that "the going-private transaction never achieved funding or a structure for its execution." In addition to the fact that such information is readily available from other sources, Mr. Durban explained to the SEC that "price, structure, roll amount [and] how much capital you could raise" remained uncertain at the end of his work on a potential transaction. (SEC Tr. 142:4-13.) Likewise, Plaintiff need not depose Mr. Durban to discuss how Tesla's Special Committee functioned because all of the members of that committee are Defendants in this lawsuit.

None of the cases that Plaintiff cites justify requiring a second deposition of Mr. Durban because none involve similar circumstances – where a non-party had already given extensive testimony on the same topics. The closest Plaintiff comes is *SEC v. Seaforth Meridian, Ltd.*, but in that case the potential deponent was the *defendant* and the prior testimony was offered in a related, yet "distinctly different" action. 2007 WL 9724347, at *2 (D. Kan. June 14, 2007).

Throughout the process, Mr. Durban has been willing to discuss less burdensome means of providing information. To the extent that Plaintiff seeks specific information that is not covered in Mr. Durban's SEC testimony, Silver Lake's production to the SEC or other available sources of discovery, Mr. Durban remains willing to discuss whether that information can be provided through means other than a deposition.

//

//

Respectfully,

| **Levi & Korsinsky, LLP** | **Conrad | Metlitzky | Kane LLP** |
|---|---|

*/s/   Draft*
Adam M. Apton
aapton@zlk.com
388 Market Street, Suite 1300
San Francisco, CA 94111
(415) 373-1671

*/s/   Draft*
Warren Metlitzky
wmetlitzky@conmetkane.com
Four Embarcadero Center, Suite 1400
San Francisco, CA  94111
(415) 343-7100

**Debevoise & Plimpton LLP**
Elliot Greenfield (*pro hac vice* forthcoming)
egreenfield@debevoise.com
919 Third Avenue
New York, NY 10022
(212) 909-6772