# SCHEDULE B

## DOCUMENTS TO BE PRODUCED BY CALDWELL SECURITIES LTD.

It is respectfully requested that Caldwell Securities Ltd. be compelled to produce the following documents that are in its possession, custody, or control, and which are not privileged under Canadian or U.S. law according to the following instructions and definitions:

**I. INSTRUCTIONS FOR RESPONDING TO THE LETTERS ROGATORY**

1. You have been asked by Lead Plaintiff in the matter *In re Tesla, Inc. Securities Litigation*, Case No. 3:18-cv-04865-EMC, pending in the United States District Court for the Northern District of California.

2. The Letters Rogatory demands the production of documents and/or other materials. Unless specified otherwise, specific terms used in the Demands listed below are defined in the Definitions section.

3. You are required, in responding to these Letters Rogatory, to obtain and furnish all documents, electronic data, and information available to you and any of your representatives, employees, agents, brokers, servants, and/or attorneys, and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, brokers, servants, and/or attorneys. Importantly, if at any point you determine that your response to the letters rogatory is not correct or complete, you are required to provide a supplemental response.

4. The documents produced in response to the letters rogatory shall include all attachments and enclosures.

5. Each demand should be responded to separately. However, a document that is the response to more than one request may, if the relevant portion is marked or indexed, be produced, and referred to in a later response.

6. To the extent to which any demand is objected, please set forth all reasons for your objection and furnish documents responsive to the remainder of the demand.

7. All documents and/or materials called for by the letters rogatory, for which you claim a privilege or statutory authority as a ground for non-production, shall be listed chronologically in a privilege log as follows:

    a) The place, date, and manner of recording or otherwise preparing the document;

    b) The name and title of the sender;

    c) The identity of each person or persons (other than clerical assistants) participating in the preparation of the document;

    d) The identity of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, sketch, reading or substantial summarization, the dates of said communication, and the employer and title of said person at the time of said communication;

    e) Type of document;

    f) Subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

    g) Factual and legal basis for claim, privilege, or specific statutory or regulatory authority that provides the claimed ground for non-production.

8. Each demand to produce a document or documents shall be deemed to call to produce the original document or documents to the extent that they are in, or subject to, directly or indirectly, the control of the party to whom these discovery requests are addressed. If you prefer, you may provide legible copies of documents in lieu of originals so long as those copies reflect all markings, notations, and highlighting that is present on the originals. In addition, each demand should be considered as including a demand for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments

having been added to one copy of a document but not on the original or other copies thereof).

9. All Documents should be Bates labeled and marked with appropriate confidentiality indications and should be produced in accordance with any ESI protocol agreed to by the parties and/or entered by the Court.

10. Documents to be produced shall be either (l) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the requests for production.

11. To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them. If any documents herein requested have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date, and subject matter. With respect to any document requested which was once in your possession, custody, or control, but no longer is, please indicate the date the document ceased to be in your possession, custody, or control, the manner in which it ceased, and the name and address of its present custodian.

12. When responding to a demand for documents dated within a specific period, your response shall include all documents, electronic data and information which relate, in whole or in part, to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

**II. DEFINITIONS**

1. "And" and "or" shall be interpreted to mean "and/or," so that said terms are given the most inclusive construction.

2. As used herein, "all" refers to any and all, and the term "any" likewise refers to any and all.

3. The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

1   4. "Account" shall mean a record of debit and credit entries to cover transactions involving a particular item or a particular person that arises from either: (a) an arrangement between Broker and the Customer in which pursuant to this arrangement an investor deposits money with Broker in order for Broker to make trades on securities on behalf of the Customer (a "Customer Account"); or (b) that Broker uses to record transactions that take place on Broker's behalf, such as any proprietary accounts that Broker uses for trading securities, options, or commodities for Broker's own account and risk, *i.e.* all other accounts that are not "customer accounts" (a "Non-Customer Account").

5. "Account Number" shall mean the unique identifier assigned to each Account by the Broker.

6. "Broker" shall mean Caldwell Securities Ltd. and any of its subsidiaries, predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

7. "Customer" shall mean any Person that purchases any items from or through the Broker or who purchases any of the Broker's services.

8. "Document" or "documents" includes, by way of illustration only and not by way of limitation, any written, typed, printed, recorded, electronically stored data or information, or graphic matter, however preserved, produced, or reproduced, of any type or description, regardless of medium, origin or location, including without limitation any binder, cover note, certificate, correspondence, electronic communications and electronically stored information (including but not limited to, audio recordings, emails, attachments, databases, word documents, spreadsheets, graphic files, photographs, sound recordings, images, and other data or data compilations), record, chart, analysis, report, test, study, memorandum, note, list, diary, log, calendar, questionnaire, bill, purchase order, permit, ledger entry, check, order, receipt, statement, financial data, acknowledgement, computer-generated matter, and all other data compilations from which information can be obtained or translated, drafts and revisions of drafts of any documents

and original preliminary notes, no matter how produced or maintained, in your actual or constructive possession, custody or control, and whether prepared, published or released by you or by any other person. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment, or any notation of any character, and not a part of the original text is to be considered a separate document.

9.  "Electronic Data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of electronic data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts or transmittals, logs of electronic mail history and usage, header information, and deleted files), Internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF and TIF files, batch files, native files and all ASCII files, and any and all miscellaneous files or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment.  Electronic data includes, but is not limited to, any and all items stored on any electronic media, computers, or networks and backup files containing electronically stored data. The term "electronic data" also includes the file, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each such original or copy.

1    10.    "Open interest" shall mean an option contract that was traded but has not yet been liquidated by an offsetting option transaction, including by any assignment or expiration of the option contract.

4    11.    "Opening Purchase Transaction" shall mean as to Tesla Options a confirmed trade in which the purchaser's intention is to create or increase a long position in a series of cleared contracts.

7    12.    "Opening Sale (Writing Transaction) Transaction" shall mean as to Tesla Options a confirmed trade in which the seller's intention is to create or increase a short position in a series of cleared contracts.

10   13.    "Person" shall mean any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, commission, representative, employee, agent, broker, servant, attorney, or other entity.

13   14.    "Tesla" shall mean Defendant Tesla, Inc. and any of its predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

16   15.    "Tesla Bonds" shall mean all bonds issued by Tesla including, but not limited to, the following bonds:

    a.    Tesla Convertible Bond 0.250% Due 3/1/2019 (CUSIP 88160RAB7);
    b.    Tesla Convertible Bond 1.25% Due 3/1/2021 (CUSIP 88160RAC5);
    c.    Tesla Convertible Bond 2.375% Due 3/15/2022 (CUSIP 88160RAD3); and
    d.    Tesla Bond 5.3% Due 8/15/2025 (CUSIP U8810LAA1); and
    e.    Tesla Bond 5.3% Due 8/15/2025 (CUSIP 88160RAE1).

23   16.    "Tesla Common Stock" shall mean the common stock of Tesla (CUSIP number 88160R101).

25   17.    "Tesla Options" shall mean all Option Contracts on any Tesla security, including but not limited to Tesla Common Stock.

27   18.    As used herein, the terms "relating to" and "concerning" means in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing,

commenting on, describing, constituting, supporting, contradicting, or having any logical or factual connection with the matter identified, in whole or in part.

### III. REQUESTS FOR PRODUCTION

**Request for Production 1:**

For any Account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Common Stock during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;
2. Identity of any introducing brokers to the transaction;
3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;
4. Account Numbers and/or customer numbers;
5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);
6. Security identification;
7. CUSIP number;
8. Trade date;
9. Trade / transaction time (in at least millisecond resolution);
10. Settlement date;
11. Whether the trade/transaction is a purchase or sale;
12. Whether the purchase was to cover a short position;
13. Whether the sale was to open a short position;

14. Whether the purchase or sale was pursuant to an option exercise or assignment;
15. Any information concerning the underlying option that is related to any option exercise or assignment;
16. Quantity of securities traded/transacted;
17. Price per share that the trade was executed; and
18. Trade value.

**Request for Production 2:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Options during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;
2. Identity of any introducing brokers to the transaction;
3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;
4. Account Numbers and/or customer numbers;
5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);
6. Security identification;
7. Ticker symbol;
8. Underlying security;
9. Type of option;

| | | |
|---|---|---|
| | 10. | Style of option; |
| | 11. | Whether the trade is a put or call; |
| | 12. | Expiration date and/or series/contract date; |
| | 13. | Strike price and/or exercise price; |
| | 14. | Whether the trade is a purchase or sale; |
| | 15. | The type of option transaction (*i.e.* Opening Purchases Transaction; closing purchase transaction; Opening Sale (Writing) Transaction; closing (sale) transaction; exercise; expiration; or assignment); |
| | 16. | Trade date; |
| | 17. | Trade / transaction time (in at least millisecond resolution); |
| | 18. | Settlement date; |
| | 19. | Quantity of securities traded/transacted; |
| | 20. | Trade price / premium on the transaction; |
| | 21. | Trade value; |
| | 22. | Whether the option is an over-the-counter option; |
| | 23. | Any order identification number; |
| | 24. | Any related purchase or sale of the underlying security; and |
| | 25. | Identification of the marketplace of execution. |

**Request for Production 3:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades and/or transactions, and/or positions in Tesla Bonds during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;
2. Identity of any introducing broker to the transaction;

3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4. Account Numbers and/or customer numbers;

5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6. Trade date;

7. Trade / transaction time (in at least millisecond resolution);

8. Trade execution date;

9. Trade execution time;

10. Trade report date;

11. Trade report time;

12. The quantity of units (the uncapped par value volume reported on the trade not subject to any dissemination caps);

13. The identification of quantity of units (*e.g.*, hundreds, thousands, etc.);

14. Price (including price per unit);

15. Reported price;

16. Trade settlement date;

17. Type of transaction (*e.g.*, buy, sell, short, cross, etc.);

18. Reference number;

19. Trade status;

20. Security identification;

21. CUSIP number;

22. Ticker symbol;

23. TRACE symbol;

24. Security type;

25. Bloomberg Identifier;

26. Issue symbol;

27. Issuer name;

28. Coupon rate;

29. Coupon type;

30. Maturity date;

31. Buyer commission;

32. Buyer capacity;

33. Seller commission;

34. Seller capacity; and

35. Mark up.

**Request for Production 4:**

For any account with a trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence at the Account level any positions held in Tesla Common Stock, Tesla Bonds, or Tesla Options in any Account as of the end of: (i) August 6, 2018; and (ii) August 17, 2018.

**Request for Production 5:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased short positions in Tesla Common Stock that were held in any Account as of the end of August 6, 2018, including all of the following information:

1. Account positions;

2. Account and/or customer numbers;

3. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);
4. Security identification;
5. CUSIP number;
6. Trade date;
7. Trade / transaction time (in at least millisecond resolution);
8. Settlement date;
9. Whether the trade/transaction was a purchase or sale;
10. Whether the sale was to open a short position;
11. Whether the purchase or sale is pursuant to an option exercise or assignment;
12. Any information concerning the underlying option that is related to any option exercise or assignment;
13. Quantity of securities traded/transacted;
14. Price per share that the trade was executed; and
15. Trade value.

**Request for Production 6:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased positions in Tesla Options that were held in any Account as of the end of August 6, 2018, including all of the following information:
1. Account positions;
2. Account and/or customer numbers;
3. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);
4. Security identification;

5. CUSIP number;
6. Ticker symbol;
7. Underlying security;
8. Type of option;
9. Style of option;
10. Whether the trade is a put or call;
11. Expiration date and/or series/contract date;
12. Strike price and/or exercise price;
13. Whether the trade is a purchase or sale;
14. The type of option transaction (*i.e.* Opening Purchases Transaction; Opening Sale (Writing) Transaction);
15. Trade date;
16. Trade / transaction time (in at least millisecond resolution);
17. Settlement date;
18. Quantity of securities traded/transacted;
19. Trade price / premium on the transaction;
20. Trade value;
21. Whether the option is an over-the-counter option; and
22. Any order identification number.

**Request for Production 7:**

Documents and Electronic Data to interpret any codes, abbreviations, or any other system of symbols used to represent other information contained in the information produced in response to any Demand for Production. By way of example and not by limitation, Documents and Electronic Data responsive to this demand may include legends, code lists, ciphers, or keys which can be used to interpret and/or decipher the names or codes used for any brokers, dealers, contra-parties, internal nomenclature, individuals, or securities.