1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

IN RE TESLA, INC. SECURITIES LITIGATION

Case No. 3:18-cv-04865-EMC

**LETTERS ROGATORY AS MODIFIED**

### TO THE APPROPRIATE JUDICAL AUTHORITY OF THE STATE OF CANADA:

The U.S. District Court of the Northern District of California presents its compliments to the Superior Court of Justice of Ontario, Canada and requests international judicial assistance to obtain evidence to be used in the above-captioned civil action proceeding before this Court. This Court has determined that it would further the interest of justice if by the proper and usual process of your Court, you summon BMO Nesbitt Burns Inc.; Caldwell Securities Ltd.; CIBC World Markets Inc.; CI Investment Services Inc.; Desjardins Securities Inc.; Fidelity Clearing Canada ULC; National Bank Financial Inc.; Questrade, Inc.; RBC Dominion Securities Inc.; Scotia Capital, Inc.; and TD Waterhouse Canada, Inc. (collectively, the "Brokers"); to produce the documents in their possession, custody or control that are identified in Schedules A-K.

The application for these letters rogatory is brought by Lead Plaintiff Glen Littleton through the Class Counsel, Levi & Korsinsky, LLP. Canadian counsel is available to answer any questions the Canadian Court may have.

This request is made pursuant to Rule 4(f)(2)(B) of the Federal Rules of Civil Procedure; the All-Writs Act, 28 U.S.C. §1651 and 28 U.S.C. §1781 (permitting the transmittal of letters rogatory through the district courts and the Department of State); the *Ontario Evidence Act*, R.S.O. 1990, c. E. 23; and the *Canada Evidence Act*, R.S.C., 1985, c. C-5. The United States District Court for the Northern District of California is a competent court of law and equity which properly has jurisdiction over this proceeding and has the power to compel the attendance of witnesses and

production of documents both within and outside its jurisdiction. The Brokers carry on business in Canada within the Providence of Ontario. Based on its investigation, Plaintiff's counsel believes the Brokers have or are likely to have in their possession, custody, or control, documents, and electronic data responsive to the requests in Schedules A through K herein. Plaintiff's counsel represents that the documents and electronic data sought are relevant to the question of whether Class[1] members suffered an economic loss because of the alleged fraud (*i.e.*, damages), necessary elements of the Class's claims. Furthermore, Plaintiff's counsel represents that the documents/data sought is the type of evidence that may be used to support the claims that Class members suffered damages as a result of the alleged fraud. Defendants reserve the right to argue that the evidence sought by Plaintiff from the Brokers is not relevant to the claims and defenses in this action.

This request is made with the understanding that it will in no way require any person to commit any offense, or to undergo a broader form of inquiry than he or she would if the litigation were conducted in a Canadian court. The requesting Court is satisfied with Plaintiff's counsel's representations that the evidence sought to be obtained through this request is relevant to the question of damages, is the type of evidence that may be used to support the claims that Class members suffered damages as a result of the alleged fraud, and cannot be reasonably obtained by other methods. Because the Court lacks authority to compel production of these documents and Plaintiff's counsel's representations that the documents are necessary in order that justice be served in the above captioned proceeding, this Court respectfully requests assistance from the Ontario Superior Court of Justice.

1. **SENDER**

    Honorable Kandis A. Westmore
    United States Magistrate Judge
    United States District Court for the Northern District of California
    Ronald V. Dellums Federal Building
    1301 Clay Street
    Oakland, CA 94612
    USA

---

[1] Defined below in Section 6(a).

**2. CENTRAL AUTHORITY OF THE REQUESTED STATE**

Superior Court of Justice
393 University Avenue, 10th Floor
Toronto, Ontario
M5G 1E6
Canada

**3. PERSON TO WHOM THE EXECUTED REQUESTED IS TO BE RETURNED**

Adam M. Apton, Esq.
Levi & Korsinsky LLP
388 Market Street, Suite 1300
San Francisco, CA 94111
USA
Tel.: (415) 373-1671
Email: aapton@zlk.com

**4. SPECIFICATION OF DATE BY WHICH THE REQUESTED AUTHORITY REQUIRES RECEIPT OF THE RESPONSE TO THE LETTERS OF REQUEST**

A response is requested as soon as possible.

**5. NAMES AND ADDRESS OF THE PARTIES AND THEIR REPRESENTATIVES**

The evidence requested relates to the action *In re Tesla, Inc. Securities Litigation*, Case No. 3:18-cv-04865-EMC, in the United States District Court for the Northern District of California. The parties and their representatives are listed as follows:

**a. Lead Plaintiff**

Glen Littleton,

*Represented by:*

**Levi & Korsinsky, LLP**
Adam M. Apton
Adam C. McCall
388 Market Street, Suite 1300
San Francisco, CA 94111
USA
Tel.: 415-373-1671
Fax: 415-484-1294
Email: aapton@zlk.com
Email: amccall@zlk.com

1    **Levi & Korsinsky, LLP**
2    Nicholas I. Porritt
     Alexander A. Krot III
3    1101 30th Street N.W., Suite 115
     Washington, D.C. 20007
4    USA
     Tel: (202) 524-4290
5    Fax: (202) 333-2121
     Email: nporritt@zlk.com
6    Email: akrot@zlk.com
     Levi & Korsinsky LLP
7

8    **Levi & Korsinsky, LLP**
     Joseph E. Levi
9    Eduard Korsinsky
     55 Broadway, 10th Floor
10   New York, New York 10006
     USA
11   Tel: (212) 363-7500
     Fax: (212) 363-7171
12   Email: jlevi@zlk.com
     Email: ek@zlk.com
13

14

15   b.   <u>**Defendants**</u>

16       Tesla, Inc., Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias,

17   James Murdoch, Elon Musk, Kimbal Musk, and Linda Johnson Rice,

18       *Represented by:*

19       **Cooley LLP**
     Bingxin Wu
20   Brian French
     Sarah Malke Lightdale
21   55 Hudson Yards
     New York, NY 10001
22   USA
     Tel: (212) 479-6000
23   Email:Bwu@cooley.com
     Bfrench@cooley.com
24   Slightdale@cooley.com
25

26       **Cooley LLP**
     Patrick Edward Gibbs
27   Stephen Cassidy Neal
     Joshua Sol Schelly Walden
28

4

Samantha Anne Kirby
3175 Hanover Street
Palo Alto, CA 94304
USA
Tel: (650) 843-5000
Fax: (650) 849-7400
Email:Pgibbs@cooley.com
Email:Sneal@cooley.com
Email:Jwalden@cooley.com
Email:Skirby@cooley.com

**6.   NATURE AND PURPOSE OF THE PROCEEDINGS AND SUMMARY OF THE FACTS**

**a.      Nature and Purpose of the Claims**

The Plaintiff in the lawsuit, Glen Littleton, represents a Class certified as "[a]ll individuals and entities who purchased or sold Tesla stock, options, and other securities from 12:48 p.m. EDT on August 7, 2018 to August 17, 2018 and were damaged thereby" (the "Class Period" and the "Class"). Plaintiff claims that Musk and Tesla violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j, and SEC Rule 10b-5, 17 C.F.R. 240.10b-5, and that Tesla's Board of Directors violated Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78t. According to the lawsuit, these violations caused Plaintiff and the Class billions of dollars of damages for which Defendants should be held liable.

Plaintiff's allegations concern communications made by Musk and Tesla regarding a potential going private transaction. *See* Dkt. No. 184. On August 7, 2018, at 12:48 p.m. ET, Musk Tweeted the following message to over 22 million followers: "Am considering taking Tesla private at $420. Funding secured." *Id.* at 2. Musk made additional statements about the potential transaction including tweeting about three hours later: "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote." Plaintiff further alleges that on August 17, 2018, *The New York Times* published an article based on a lengthy interview with Musk and others, which included a statement by the reporter that funding for a Tesla take-private "was far from secure." *Id.*  Defendants deny that Mr. Musk or Tesla made any false or misleading statements, deny that they did anything wrong, and believe that the claims have no merit. Among other things, Defendants contend that the challenged statements were entirely true; that Defendants

1   did not make any materially false or misleading statements; that they did not act with scienter; that

2   the Plaintiff and the Class cannot show damages; and that there is no control person liability.

3       As Plaintiff views the law, to prevail on a claim under Section 10(b) and Rule 10b-5, a

4   plaintiff must prove economic loss and that such loss resulted from the alleged fraud. *Matrixx*

5   *Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 37–38 (2011) (listing elements a plaintiff must prove

6   under Section 10(b) and Rule 10b-5 to succeed on its claims). In a private action asserting a Section

7   10(b) claim in which the plaintiff seeks to establish damages by reference to the market price of a

8   security, the statutory law provides a limitation on the award of damages. 15 U.S.C. § 78u-4(e).

9   This limitation provides that: (i) "the award of damages to the plaintiff shall not exceed the

10  difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for

11  the subject security and the mean trading price of that security during the 90-day period beginning

12  on the date on which the information correcting the misstatement or omission that is the basis for

13  the action is disseminated to the market"; and (ii) that "if the plaintiff sells or repurchases the

14  subject security prior to the expiration of the 90-day period . . . the plaintiff's damages shall not

15  exceed the difference between the purchase or sale price paid or received, as appropriate, by the

16  plaintiff for the security and the mean trading price of the security during the period beginning

17  immediately after dissemination of information correcting the misstatement or omission and

18  ending on the date on which the plaintiff sells or repurchases the security." *Id.*

19      In this action, the Class Period begins at 12:48 p.m. EDT on August 7, 2018 and ends on

20  August 17, 2018, when the fraud is alleged to be fully corrected. *See* Dkt. No. 184 at 3; Dkt. No.

21  298 at 3. The associated 90-day period, therefore, ends on November 15, 2018. As such, it is

22  Plaintiff's counsel's understanding that the documents and electronic data concerning potential

23  Class members' transactions correspond to the Class Period and the 90-day period whereby an

24  investor's transactions after the Class Period may impact the amount of the potential award of

25  damages. Thus, it is Plaintiff's counsel's understanding that in a securities class action, such as

26  this one, class-wide damages as well as a class member's individual damages (if any) are impacted

27  not only by the number of securities that each class member purchased and/or sold in the defendant

28

corporation during the Class Period but may be affected by the prices they paid or received for those securities both during and after the Class Period.

Individual banks and brokers-dealers have records in their possession, custody, or control that identify transactions by their customers in a company's securities: evidence of the proof of purchase and sale of the subject security. With retail and other brokerage accounts, a broker-dealer typically holds its customers' securities under the name of the brokerage firm, regularly referred to as the "street name," rather than the name of the individual who is the legal owner of a security, the "beneficial owner." Although the name on a stock certificate is not that of the individual, the individual is still the beneficial owner of the security and has all the rights associated with ownership. It is the broker-dealer that maintains or causes to be maintained the records as to the beneficial holders' holdings and trades.

A broker-dealer maintains records that identify its own customers' securities and their transactions. It is Plaintiff's counsel's understanding that there is no centralized database that collects and maintains this account-level information outside of the broker-dealers themselves or the entities they retain to maintain such records on their behalf. Moreover, neither the companies themselves nor the securities intermediaries that are involved in these transactions possess this account-level information. Although the individual securities owners may also have this information, Plaintiff's counsel is not aware of any way to determine the identity of these beneficial owners (the broker-dealers' customers) from publicly-available information because the stock certificates are not recorded in the beneficial owners' names. Accordingly, based on its investigation, Plaintiff's counsel believes that the Brokers are the only central source to obtain this account-level information.

The Brokers are all Canadian companies who are in possession and control of information concerning trades, transactions, and positions in Tesla common stock, options, and bonds (collectively, "Securities") that Plaintiff believes is relevant to the question of whether Class members suffered an economic loss as a result of the alleged fraud in this action, necessary elements of the Class's claims. Therefore, this Court respectfully requests that, in the interest of

justice, you issue appropriate orders, letters rogatory or other compulsory process needed to compel the production of documents requested in Schedules A-K.

**b.    The Brokers**

i.    *BMO Nesbitt Burns Inc.*

BMO Nesbitt Burns Inc. is an integrated Canadian investment dealer with its head office in Toronto, Ontario. BMO Nesbitt Burns Inc. is a part of the BMO Financial Group's Private Client Group, which provides full-service investment, portfolio management, and wealth advisory services to Individuals, families, businesses, and institutions.

Based on its investigation, Plaintiff's counsel believes that BMO Nesbitt Burns Inc. has in its possession, custody or control relevant documents and electronic data concerning Class members' transactions in Tesla Securities during the Class Period. Plaintiff's counsel further believes the documents and electronic data that BMO Nesbitt Burns Inc. has in its possession, custody or control regarding trades, transactions, and positions in Tesla Securities during the period of August 6, 2018 through November 15, 2018, are relevant evidence to whether Class members suffered an economic loss as a result of the alleged fraud in this action, necessary elements of the Class's claims.

ii.    *Caldwell Securities Ltd.*

Caldwell Securities Ltd. is a Canadian institutional brokerage firm with its head office in Toronto, Ontario. Caldwell Securities Ltd. provides wealth management services, investment solutions, and insurance products for families, individuals, corporations, trusts and foundations.

Based on its investigation, Plaintiff's counsel believes that Caldwell Securities Ltd. has in its possession, custody or control relevant documents and electronic data concerning Class members' transactions in Tesla Securities during the Class Period. Plaintiff's counsel further believes the documents and electronic data that Caldwell Securities Ltd. has in its possession, custody or control regarding trades, transactions, and positions in Tesla Securities during the period of August 6, 2018 through November 15, 2018, are relevant evidence to whether Class members suffered an economic loss as a result of the alleged fraud in this action, necessary elements of the Class's claims.

1            iii.    ***CIBC World Markets Inc.***

2          CIBC World Markets Inc. is the investment banking subsidiary of the Canadian Imperial

3 Bank of Commerce with its head office in Toronto, Ontario.  CIBC World Markets Inc. provides

4 investment banking and capital markets services, including debt and equity underwriting, sales,

5 and trading, to corporate, government, and institutional clients.

6          Based on its investigation, Plaintiff's counsel believes that CIBC World Markets Inc. has

7 in its possession, custody or control documents and electronic data concerning Class members'

8 transactions in Tesla Securities during the Class Period. Plaintiff's counsel further believes the

9 documents and electronic data that CIBC World Markets Inc. has in its possession, custody or

10 control regarding trades, transactions, and positions in Tesla Securities during the period of August

11 6, 2018 through November 15, 2018, are relevant evidence to whether Class members suffered an

12 economic loss as a result of the alleged fraud in this action, necessary elements of the Class's

13 claims.

14            iv.    ***CI Investment Services Inc.***

15          CI Investment Services Inc. is a Canadian broker-dealer that provides brokerage and

16 trading services to portfolio managers that is headquartered in Toronto, Ontario.  CI Investment

17 Services Inc. is a wholly owned subsidiary of CI Financial Corp. CI Financial and is an

18 independent Canadian company that offers global asset management and wealth management

19 advisory services.

20          Based on its investigation, Plaintiff's counsel believes that CI Investment Services Inc. has

21 in its possession, custody or control documents and electronic data concerning Class members'

22 transactions in Tesla Securities during the Class Period. Plaintiff's counsel further believes the

23 documents and electronic data that CI Investment Services Inc. has in its possession, custody or

24 control regarding trades, transactions, and positions in Tesla Securities during the period of August

25 6, 2018 through November 15, 2018, are relevant evidence to whether Class members suffered an

26 economic loss as a result of the alleged fraud in this action, necessary elements of the Class's

27 claims.

28

1

### v.   *Desjardins Securities Inc.*

2    Desjardins Securities Inc. is a Canadian broker-dealer that offers brokerage services for

3    common shares, preferred shares, derivative products, mutual funds, hedge funds, and pension

4    funds. It is a subsidiary of the Desjardins Group, a Canadian Financial Services Cooperative.

5    Based on its investigation, Plaintiff's counsel believes that Desjardins Securities Inc. has

6    in its possession, custody or control documents and electronic data concerning Class members'

7    transactions in Tesla Securities during the Class Period. Plaintiff's counsel further believes the

8    documents and electronic data that Desjardins Securities Inc. has in its possession, custody or

9    control regarding trades, transactions, and positions in Tesla Securities during the period of August

10   6, 2018 through November 15, 2018, are relevant evidence to whether Class members suffered an

11   economic loss as a result of the alleged fraud in this action, necessary elements of the Class's

12   claims.

13

### vi.   *Fidelity Clearing Canada ULC*

14   Fidelity Clearing Canada ULC is an independent clearing broker and custodian in the

15   Canadian securities market. It is an indirect, wholly owned subsidiary of 483A Bay Street

16   Holdings LP, and maintains its head office in Toronto, Ontario.

17   Based on its investigation, Plaintiff's counsel believes that Desjardins Securities Inc. has

18   in its possession, custody or control documents and electronic data concerning Class members'

19   transactions in Tesla Securities during the Class Period. Plaintiff's counsel further believes the

20   documents and electronic data that Desjardins Securities Inc. has in its possession, custody or

21   control regarding trades, transactions, and positions in Tesla Securities during the period of August

22   6, 2018 through November 15, 2018, are relevant evidence to whether Class members suffered an

23   economic loss as a result of the alleged fraud in this action, necessary elements of the Class's

24   claims.

25

### vii.   *National Bank Financial Inc.*

26   National Bank Financial Inc. is a Canadian broker that provides brokerage services to

27   institutions and individuals that maintains a location in Toronto, Ontario. National Bank Financial

28   Inc. is a wholly-owned subsidiary of the National Bank of Canada.

1    Based on its investigation, Plaintiff's counsel believes that National Bank Financial Inc.

2    possesses documents and electronic data concerning Class members' transactions in Tesla

3    Securities during the Class Period. Plaintiff's counsel further believes the documents and

4    electronic data that National Bank Financial Inc. has in its possession, custody or control regarding

5    trades, transactions, and positions in Tesla Securities during the period of August 6, 2018 through

6    November 15, 2018, inclusive, are relevant evidence to whether Class members suffered an

7    economic loss as a result of the alleged fraud in this action, necessary elements of the Class's

8    claims.

9              viii.    ***Questrade, Inc.***

10    Questrade, Inc. is a Canadian registered investment dealer, a member of the Investment

11    Industry Regulatory Organization of Canada (IIROC) and a member of the Canadian Investor

12    Protection Fund (CIPF). Questrade, Inc. is a member of the Questrade Group of Companies and

13    is headquartered in Toronto, Ontario.

14    Based on its investigation, Plaintiff's counsel believes that Questrade, Inc. possesses

15    documents and electronic data concerning Class members' transactions in Tesla Securities during

16    the Class Period. Plaintiff's counsel further believes the documents and electronic data that

17    Questrade, Inc. has in its possession, custody or control regarding trades, transactions, and

18    positions in Tesla Securities during the period of August 6, 2018 through November 15, 2018,

19    inclusive, are relevant evidence to whether Class members suffered an economic loss as a result

20    of the alleged fraud in this action, necessary elements of the Class's claims.

21              ix.    ***RBC Dominion Securities Inc.***

22    RBC Dominion Securities Inc. is one of Canada's leading full-service investment and

23    wealth management firms. RBC Dominion Securities Inc. maintains and office in Toronto,

24    Ontario. RBC Dominion Securities Inc. provides brokerage services and is part of RBC's Wealth

25    Management division.

26    Based on its investigation, Plaintiff counsel believes that RBC Dominion Securities Inc.

27    possesses documents and electronic data concerning Class members' transactions in Tesla

28    Securities during the Class Period. Plaintiff's counsel further believes the documents and

electronic data that RBC Dominion Securities Inc. has in its possession, custody or control regarding trades, transactions, and positions in Tesla Securities during the period of August 6, 2018 through November 15, 2018, inclusive, are relevant evidence to whether Class members suffered an economic loss as a result of the alleged fraud in this action, necessary elements of the Class's claims.

x. ***Scotia Capital Inc.***

Scotia Capital Inc. is the Canadian legal entity within Scotiabank's Global Banking & Markets division regulated by the Investment Industry Regulatory Organization of Canada. Scotia Capital Inc. maintains an office in Toronto, Ontario. Scotia Capital Inc. is a division of The Bank of Nova Scotia that provides securities services and operates in all facets of corporate and government finance, mergers and acquisitions, equity and fixed income sales and trading and investment research.

Based on its investigation, Plaintiff's counsel believes that Scotia Capital Inc. possesses documents and electronic data concerning Class members' transactions in Tesla Securities during the Class Period. Plaintiff's counsel further believes the documents and electronic data that Scotia Capital Inc. has in its possession, custody or control regarding trades, transactions, and positions in Tesla Securities during the period of August 6, 2018 through November 15, 2018, inclusive, are relevant evidence to whether Class members suffered an economic loss as a result of the alleged fraud in this action, necessary elements of the Class's claims.

xi. ***TD Waterhouse Canada, Inc.***

TD Waterhouse Canada, Inc. is a Canadian financial services corporation with an office in Toronto, Ontario. TD Waterhouse Canada, Inc. is owned by the Toronto Dominion Bank and does business through several divisions including, TD Direct Investing, TD Wealth Financial Planning, and TD Wealth Private Investment Advice.

Based on its investigation, Plaintiff's counsel believes that TD Waterhouse Canada, Inc. possesses documents and electronic data concerning Class members' transactions in Tesla Securities during the Class Period. Plaintiff's counsel further believes the documents and electronic data that Scotia Capital Inc. has in its possession, custody or control regarding trades,

transactions, and positions in Tesla Securities during the period of August 6, 2018 through November 15, 2018, inclusive, are relevant evidence to whether Class members suffered an economic loss as a result of the alleged fraud in this action, necessary elements of the Class's claims

7.  **EVIDENCE TO BE OBTAINED**

The evidence to be obtained consists of documents and electronic data for use at trial or in preparing for trial in this matter. Plaintiff's counsel represents that the Brokers have or likely have information concerning trades of Tesla Securities during the Class Period and during the period of August 6, 2018 through November 15, 2018, inclusive, that is directly relevant to the Class's damages and claims in this matter that cannot be obtained by any other means. Moreover, Plaintiff's counsel represents that the documents/data sought is the type of evidence that may be used to establish the claims that Class members suffered damages as a result of the alleged fraud.

As previously detailed, it is Plaintiff's counsel's understanding that an award of damages for the claims asserted in this action for both individual Class member and for the Class as a whole are dependent, in part, on the number of Tesla Securities that each class member purchased and/or sold, the prices at which their trades were executed, and the timing of such trades. Accordingly, Plaintiff's counsel represents that the Brokers' clients' positions immediately prior to their transactions during the Class Period, trade information concerning the creation of their positions in Tesla Securities, and their trades both during the Class Period and during the 90-day period ending on November 15, 2018, are relevant to Class-wide damages and an individual Class member's damages. Because elements of the claims asserted requires proof of economic loss related to the fraud, Plaintiff's counsel represents that this evidence is relevant to pre-trial discovery and/or trial.

It is my understanding from Plaintiff's counsel that the Defendants are not in possession of the requested information and there is no centralized database that collects this data at the account-level for beneficial owners. Furthermore, it is my understanding that only the Brokers maintain centralized records that identify their customers' transactions in Tesla Securities at an account level and that there is not a publicly-available source that identifies each account holder

1   at these Brokers that transacted in Tesla Securities during the relevant time period. Accordingly,

2   the documents and data identified in Schedules A-K can only be obtained from these Brokers.

3          Plaintiff's letters rogatory are not contrary to public policy. The above-captioned matter is

4   a civil action and the information sought is for the limited purposes for use at trial or in preparing

5   for trial in this matter.

6          The documents and data sought by the letters rogatory are reasonably specified. Schedules

7   A-K herein list in detail what is requested and are narrowly tailored to identify the Brokers'

8   customers' trades in Tesla Securities. The documents and electronic data sought in Schedules A-

9   K are kept in the Brokers' usual course of business and producing same will therefore not

10  constitute an undue burden.

11         I appreciate that some of the documents and electronic data in Schedules A-K, sought in

12  may call for confidential information. The Stipulated Protective Order entered in this matter

13  extends to document productions of third parties, including the Brokers, who elect to designate

14  materials or disclosures as protected materials. The Stipulated Protective Order covers protected

15  materials or any disclosure that are designated as "Confidential" or as "Highly Confidential -

16  Attorneys' Eyes Only." The parties and their lawyers are deemed to undertake not to use evidence

17  or information that is designated as "Confidential" or as "Highly Confidential – Attorneys' Eyes

18  Only" for any purposes other than those of the instant proceeding. Even after the final disposition

19  of the above-captioned litigation, the confidentiality obligations imposed by the Stipulated

20  Protective Order will remain in effect unless certain events occur. Use of any protected material

21  at trial will be governed by a separate agreement or order, similarly, ensuring confidentiality.

22  Finally, all materials must be destroyed or returned to the producing party after the final disposition

23  of the action per the terms of the Stipulated Protective Order. A copy of the operative Stipulated

24  Protective Order is attached as Exhibit A.

25         The Court concludes that it is in the interest of justice for the Brokers to produce the

26  documents listed in Schedules A-K. The Court considers production of the documents in

27  Schedules A-K to be fair, appropriate, and potentially relevant to the elements of the claims

28  asserted in the litigation.

It is, therefore, respectfully requested that the Ontario Superior Court of Justice compel the Brokers to produce documents and/or electronic data responsive to the requests for production in Schedules A-K to this Letter of Request, to the extent that they are in their possession, custody, or control, and are not privileged under the applicable laws of Canada or the United States. While this Court expresses no view at this time as to the merits in the above-captioned case, it accepts for this letters rogatory Plaintiff's counsel representations that the evidence sought here will be relevant to the question of whether Class members suffered an economic loss as a result of the alleged fraud in this action, necessary elements of the Class's claims.

**8. <u>IDENTITIES AND ADDRESS OF THE ENTITIES TO PRODUCE DOCUMENTS</u>**

The identity and addresses of the entities to produced documents listed in Schedules A through K herein, are set forth below. The addresses provided are based on currently available information and may be supplemented.

> BMO Nesbitt Burns Inc.
> c/o Legal Dept.
> One First Canadian Place, 21st Floor
> Toronto, ON
> A6 M5X 1H3
>
> Caldwell Securities Ltd.
> 150 King Street West, Suite 1710
> PO Box 47
> Toronto, ON
> M5H 1J9
>
> CIBC World Markets Inc.
> 161 Bay Street
> 8th Floor
> Toronto, ON
> M5J 2S8
>
> CI Investment Services, Inc.
> 199 Bay Street
> Commerce Court West, #2600
> Toronto, ON
> M5L 1E2
>
> Desjardins Securities Inc.
> 4100 Yonge Suite 507
> Toronto, ON

M2P 2B5

Fidelity Clearing Canada ULC
483 Bay Street
South Tower, Suite 200
Toronto, ON
M5G 2N7

National Bank Financial Inc.
The Exchange Tower
130 King St. W.
4th Floor Podium
Toronto, ON
M5X 1J9

Questrade, Inc.
5700 Yonge Street
Suite 1900
Toronto, ON
M2M 4K2

RBC Dominion Securities Inc.
200 Bay Street, 39th Floor
Toronto, ON
M5J 2J2

Scotia Capital, Inc.
40 King St W
Toronto, ON
M5H 3Y2

TD Waterhouse Canada, Inc.
12th Floor, TD Tower,
66 Wellington Street West
Toronto, ON
M5K 1A2

9. **DOCUMENTS AND OTHER EVIDENCE TO BE EXAMINED**

It would further the interests of justice if you would summon the Brokers to produce or

make available for inspection the documents and electronic data set forth in Schedules A-K.

**10. REQUEST FOR NOTIFICATION**

We respectfully request that any order made by the Court will require the requesting party to provide copies of the documents produced to the parties' representative as identified in Section 8 above.

**11. REQUEST FOR ATTENDANCE OR PARTICIPATION OF JUDICIAL PERSONNEL OF THE REQUESTING AUTHORITY AT THE EXECUTION OF THE LETTER OF REQUEST**

None.

**12. SPECIFICATION OF PRIVILEGE OR DUTY TO REFUSE TO GIVE EVIDENCE UNDER THE LAW OF THE STATE OF ORIGIN**

Under the laws of the United States, a witness has a privilege to refuse to give evidence if to do so would disclose a confidential communication between the witness and his or her attorney that was communicated specifically for the purpose of obtaining legal advice and which privilege has not been waived. United States law also recognizes a privilege against criminal self-incrimination. Other limited privileges on grounds not applicable here also exist, such as communications between doctors and patients, husband and wife, and clergy and penitent. Certain limited immunities are also recognized outside the strict definition of privilege, such as the limited protection of work product created by attorneys during or in anticipation of litigation

**13. RECIPROCITY**

In the furtherance of justice and by the proper and usual process of this court, the United States District Court for the Northern District of California assures the Superior Court of Justice of Ontario, Canada that it is willing to provide similar cooperation and assistance to the judicial authorities of Canada in the event that Canada requests similar assistance.


Dated: September 30, 2021


KANDIS A. WESTMORE
United States Magistrate Judge

AS MODIFIED LETTERS ROGATORY CASE NO. 3:18-CV-04865-EMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SCHEDULE A**

**DOCUMENTS TO BE PRODUCED BY BMO NESBITT BURNS INC.**

It is respectfully requested that BMO Nesbitt Burns Inc. be compelled to produce the following documents that are in its possession, custody, or control, and which are not privileged under Canadian or U.S. law according to the following instructions and definitions:

**I.   INSTRUCTIONS FOR RESPONDING TO THE LETTERS ROGATORY**

1.      You have been asked by Lead Plaintiff in the matter *In re Tesla, Inc. Securities Litigation*, Case No. 3:18-cv-04865-EMC, pending in the United States District Court for the Northern District of California.

2.      The Letters Rogatory demands the production of documents and/or other materials. Unless specified otherwise, specific terms used in the Demands listed below are defined in the Definitions section.

3.      You are required, in responding to these Letters Rogatory, to obtain and furnish all documents, electronic data, and information available to you and any of your representatives, employees, agents, brokers, servants, and/or attorneys, and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, brokers, servants, and/or attorneys. Importantly, if at any point you determine that your response to the letters rogatory is not correct or complete, you are required to provide a supplemental response.

4.      The documents produced in response to the letters rogatory shall include all attachments and enclosures.

5.      Each demand should be responded to separately. However, a document that is the response to more than one request may, if the relevant portion is marked or indexed, be produced, and referred to in a later response.

6.      To the extent to which any demand is objected, please set forth all reasons for your objection and furnish documents responsive to the remainder of the demand.

7.     All documents and/or materials called for by the letters rogatory, for which you claim a privilege or statutory authority as a ground for non-production, shall be listed chronologically in a privilege log as follows:

    a)     The place, date, and manner of recording or otherwise preparing the document;

    b)     The name and title of the sender;

    c)     The identity of each person or persons (other than clerical assistants) participating in the preparation of the document;

    d)     The identity of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, sketch, reading or substantial summarization, the dates of said communication, and the employer and title of said person at the time of said communication;

    e)     Type of document;

    f)     Subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

    g)     Factual and legal basis for claim, privilege, or specific statutory or regulatory authority that provides the claimed ground for non-production.

8.     Each demand to produce a document or documents shall be deemed to call to produce the original document or documents to the extent that they are in, or subject to, directly or indirectly, the control of the party to whom these discovery requests are addressed. If you prefer, you may provide legible copies of documents in lieu of originals so long as those copies reflect all markings, notations, and highlighting that is present on the originals. In addition, each demand should be considered as including a demand for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments

having been added to one copy of a document but not on the original or other copies thereof).

9.     All Documents should be Bates labeled and marked with appropriate confidentiality indications and should be produced in accordance with any ESI protocol agreed to by the parties and/or entered by the Court.

10.     Documents to be produced shall be either (l) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the requests for production.

11.     To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them. If any documents herein requested have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date, and subject matter. With respect to any document requested which was once in your possession, custody, or control, but no longer is, please indicate the date the document ceased to be in your possession, custody, or control, the manner in which it ceased, and the name and address of its present custodian.

12.     When responding to a demand for documents dated within a specific period, your response shall include all documents, electronic data and information which relate, in whole or in part, to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

**II. DEFINITIONS**

1.     "And" and "or" shall be interpreted to mean "and/or," so that said terms are given the most inclusive construction.

2.     As used herein, "all" refers to any and all, and the term "any" likewise refers to any and all.

3.     The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

4.     "Account" shall mean a record of debit and credit entries to cover transactions involving a particular item or a particular person that arises from either: (a) an arrangement between Broker and the Customer in which pursuant to this arrangement an investor deposits money with Broker in order for Broker to make trades on securities on behalf of the Customer (a "Customer Account"); or (b) that Broker uses to record transactions that take place on Broker's behalf, such as any proprietary accounts that Broker uses for trading securities, options, or commodities for Broker's own account and risk, *i.e.* all other accounts that are not "customer accounts" (a "Non-Customer Account").

5.     "Account Number" shall mean the unique identifier assigned to each Account by the Broker.

6.     "Broker" shall mean BMO Nesbitt Burns Inc. and any of its subsidiaries, predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

7.     "Customer" shall mean any Person that purchases any items from or through the Broker or who purchases any of the Broker's services.

8.     "Document" or "documents" includes, by way of illustration only and not by way of limitation, any written, typed, printed, recorded, electronically stored data or information, or graphic matter, however preserved, produced, or reproduced, of any type or description, regardless of medium, origin or location, including without limitation any binder, cover note, certificate, correspondence, electronic communications and electronically stored information (including but not limited to, audio recordings, emails, attachments, databases, word documents, spreadsheets, graphic files, photographs, sound recordings, images, and other data or data compilations), record, chart, analysis, report, test, study, memorandum, note, list, diary, log, calendar, questionnaire, bill, purchase order, permit, ledger entry, check, order, receipt, statement, financial data, acknowledgement, computer-generated matter, and all other data compilations from which information can be obtained or translated, drafts and revisions of drafts of any documents

and original preliminary notes, no matter how produced or maintained, in your actual or constructive possession, custody or control, and whether prepared, published or released by you or by any other person. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment, or any notation of any character, and not a part of the original text is to be considered a separate document.

9.      "Electronic Data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of electronic data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts or transmittals, logs of electronic mail history and usage, header information, and deleted files), Internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF and TIF files, batch files, native files and all ASCII files, and any and all miscellaneous files or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment.  Electronic data includes, but is not limited to, any and all items stored on any electronic media, computers, or networks and backup files containing electronically stored data.  The term "electronic data" also includes the file, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each such original or copy.

10.     "Open interest" shall mean an option contract that was traded but has not yet been liquidated by an offsetting option transaction, including by any assignment or expiration of the option contract.

11.     "Opening Purchase Transaction" shall mean as to Tesla Options a confirmed trade in which the purchaser's intention is to create or increase a long position in a series of cleared contracts.

12.     "Opening Sale (Writing Transaction) Transaction" shall mean as to Tesla Options a confirmed trade in which the seller's intention is to create or increase a short position in a series of cleared contracts.

13.     "Person" shall mean any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, commission, representative, employee, agent, broker, servant, attorney, or other entity.

14.     "Tesla" shall mean Defendant Tesla, Inc. and any of its predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

15.     "Tesla Bonds" shall mean all bonds issued by Tesla including, but not limited to, the following bonds:

a.      Tesla Convertible Bond 0.250% Due 3/1/2019 (CUSIP 88160RAB7);

b.      Tesla Convertible Bond 1.25% Due 3/1/2021 (CUSIP 88160RAC5);

c.      Tesla Convertible Bond 2.375% Due 3/15/2022 (CUSIP 88160RAD3); and

d.      Tesla Bond 5.3% Due 8/15/2025 (CUSIP U8810LAA1); and

e.      Tesla Bond 5.3% Due 8/15/2025 (CUSIP 88160RAE1).

16.     "Tesla Common Stock" shall mean the common stock of Tesla (CUSIP number 88160R101).

17.     "Tesla Options" shall mean all Option Contracts on any Tesla security, including but not limited to Tesla Common Stock.

18.     As used herein, the terms "relating to" and "concerning" means in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing,

commenting on, describing, constituting, supporting, contradicting, or having any logical or factual connection with the matter identified, in whole or in part.

### III. REQUESTS FOR PRODUCTION

**Request for Production 1:**

For any Account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Common Stock during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;
2. Identity of any introducing brokers to the transaction;
3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;
4. Account Numbers and/or customer numbers;
5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);
6. Security identification;
7. CUSIP number;
8. Trade date;
9. Trade / transaction time (in at least millisecond resolution);
10. Settlement date;
11. Whether the trade/transaction is a purchase or sale;
12. Whether the purchase was to cover a short position;
13. Whether the sale was to open a short position;

14.   Whether the purchase or sale was pursuant to an option exercise or assignment;

15.   Any information concerning the underlying option that is related to any option exercise or assignment;

16.   Quantity of securities traded/transacted;

17.   Price per share that the trade was executed; and

18.   Trade value.

**Request for Production 2:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Options during the period of August 6, 2018 through November 15, 2018, inclusive:

1.   Account positions;

2.   Identity of any introducing brokers to the transaction;

3.   Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4.   Account Numbers and/or customer numbers;

5.   Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6.   Security identification;

7.   Ticker symbol;

8.   Underlying security;

9.   Type of option;

10.  Style of option;

11.  Whether the trade is a put or call;

12.  Expiration date and/or series/contract date;

13.  Strike price and/or exercise price;

14.  Whether the trade is a purchase or sale;

15.  The type of option transaction (*i.e.* Opening Purchases Transaction; closing purchase transaction; Opening Sale (Writing) Transaction; closing (sale) transaction; exercise; expiration; or assignment);

16.  Trade date;

17.  Trade / transaction time (in at least millisecond resolution);

18.  Settlement date;

19.  Quantity of securities traded/transacted;

20.  Trade price / premium on the transaction;

21.  Trade value;

22.  Whether the option is an over-the-counter option;

23.  Any order identification number;

24.  Any related purchase or sale of the underlying security; and

25.  Identification of the marketplace of execution.

**Request for Production 3:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades and/or transactions, and/or positions in Tesla Bonds during the period of August 6, 2018 through November 15, 2018, inclusive:

1.  Account positions;

2.  Identity of any introducing broker to the transaction;

3.    Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4.    Account Numbers and/or customer numbers;

5.    Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6.    Trade date;

7.    Trade / transaction time (in at least millisecond resolution);

8.    Trade execution date;

9.    Trade execution time;

10.    Trade report date;

11.    Trade report time;

12.    The quantity of units (the uncapped par value volume reported on the trade not subject to any dissemination caps);

13.    The identification of quantity of units (*e.g.*, hundreds, thousands, etc.);

14.    Price (including price per unit);

15.    Reported price;

16.    Trade settlement date;

17.    Type of transaction (*e.g.*, buy, sell, short, cross, etc.);

18.    Reference number;

19.    Trade status;

20.    Security identification;

21.    CUSIP number;

22.    Ticker symbol;

23.    TRACE symbol;

1    24.   Security type;

2    25.   Bloomberg Identifier;

3    26.   Issue symbol;

4    27.   Issuer name;

5    28.   Coupon rate;

6    29.   Coupon type;

7    30.   Maturity date;

8    31.   Buyer commission;

9    32.   Buyer capacity;

10   33.   Seller commission;

11   34.   Seller capacity; and

12   35.   Mark up.

13

14   **Request for Production 4:**

15        For any account with a trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla

16   Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and

17   Electronic Data sufficient to evidence at the Account level any positions held in Tesla Common

18   Stock, Tesla Bonds, or Tesla Options in any Account as of the end of: (i) August 6, 2018; and (ii)

19   August 17, 2018.

20

21   **Request for Production 5:**

22        Document and Electronic Data sufficient to evidence the opening purchases or sales trades

23   and/or transactions that created or increased short positions in Tesla Common Stock that were held

24   in any Account as of the end of August 6, 2018, including all of the following information:

25        1.    Account positions;

26        2.    Account and/or customer numbers;

27

28

3.    Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4.    Security identification;

5.    CUSIP number;

6.    Trade date;

7.    Trade / transaction time (in at least millisecond resolution);

8.    Settlement date;

9.    Whether the trade/transaction was a purchase or sale;

10.   Whether the sale was to open a short position;

11.   Whether the purchase or sale is pursuant to an option exercise or assignment;

12.   Any information concerning the underlying option that is related to any option exercise or assignment;

13.   Quantity of securities traded/transacted;

14.   Price per share that the trade was executed; and

15.   Trade value.


**Request for Production 6:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased positions in Tesla Options that were held in any Account as of the end of August 6, 2018, including all of the following information:

1.    Account positions;

2.    Account and/or customer numbers;

3.    Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4.    Security identification;

5.   CUSIP number;

6.   Ticker symbol;

7.   Underlying security;

8.   Type of option;

9.   Style of option;

10.   Whether the trade is a put or call;

11.   Expiration date and/or series/contract date;

12.   Strike price and/or exercise price;

13.   Whether the trade is a purchase or sale;

14.   The type of option transaction (*i.e.* Opening Purchases Transaction; Opening Sale (Writing) Transaction);

15.   Trade date;

16.   Trade / transaction time (in at least millisecond resolution);

17.   Settlement date;

18.   Quantity of securities traded/transacted;

19.   Trade price / premium on the transaction;

20.   Trade value;

21.   Whether the option is an over-the-counter option; and

22.   Any order identification number.

**Request for Production 7:**

Documents and Electronic Data to interpret any codes, abbreviations, or any other system of symbols used to represent other information contained in the information produced in response to any Demand for Production. By way of example and not by limitation, Documents and Electronic Data responsive to this demand may include legends, code lists, ciphers, or keys which can be used to interpret and/or decipher the names or codes used for any brokers, dealers, contra-parties, internal nomenclature, individuals, or securities.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SCHEDULE B**

**DOCUMENTS TO BE PRODUCED BY CALDWELL SECURITIES LTD.**

It is respectfully requested that Caldwell Securities Ltd. be compelled to produce the following documents that are in its possession, custody, or control, and which are not privileged under Canadian or U.S. law according to the following instructions and definitions:

**I.   INSTRUCTIONS FOR RESPONDING TO THE LETTERS ROGATORY**

1.      You have been asked by Lead Plaintiff in the matter *In re Tesla, Inc. Securities Litigation*, Case No. 3:18-cv-04865-EMC, pending in the United States District Court for the Northern District of California.

2.      The Letters Rogatory demands the production of documents and/or other materials. Unless specified otherwise, specific terms used in the Demands listed below are defined in the Definitions section.

3.      You are required, in responding to these Letters Rogatory, to obtain and furnish all documents, electronic data, and information available to you and any of your representatives, employees, agents, brokers, servants, and/or attorneys, and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, brokers, servants, and/or attorneys. Importantly, if at any point you determine that your response to the letters rogatory is not correct or complete, you are required to provide a supplemental response.

4.      The documents produced in response to the letters rogatory shall include all attachments and enclosures.

5.      Each demand should be responded to separately. However, a document that is the response to more than one request may, if the relevant portion is marked or indexed, be produced, and referred to in a later response.

6.      To the extent to which any demand is objected, please set forth all reasons for your objection and furnish documents responsive to the remainder of the demand.

7.     All documents and/or materials called for by the letters rogatory, for which you claim a privilege or statutory authority as a ground for non-production, shall be listed chronologically in a privilege log as follows:

a)    The place, date, and manner of recording or otherwise preparing the document;

b)    The name and title of the sender;

c)    The identity of each person or persons (other than clerical assistants) participating in the preparation of the document;

d)    The identity of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, sketch, reading or substantial summarization, the dates of said communication, and the employer and title of said person at the time of said communication;

e)    Type of document;

f)    Subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

g)    Factual and legal basis for claim, privilege, or specific statutory or regulatory authority that provides the claimed ground for non-production.

8.     Each demand to produce a document or documents shall be deemed to call to produce the original document or documents to the extent that they are in, or subject to, directly or indirectly, the control of the party to whom these discovery requests are addressed. If you prefer, you may provide legible copies of documents in lieu of originals so long as those copies reflect all markings, notations, and highlighting that is present on the originals. In addition, each demand should be considered as including a demand for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments

having been added to one copy of a document but not on the original or other copies thereof).

9.    All Documents should be Bates labeled and marked with appropriate confidentiality indications and should be produced in accordance with any ESI protocol agreed to by the parties and/or entered by the Court.

10.    Documents to be produced shall be either (l) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the requests for production.

11.    To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them. If any documents herein requested have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date, and subject matter. With respect to any document requested which was once in your possession, custody, or control, but no longer is, please indicate the date the document ceased to be in your possession, custody, or control, the manner in which it ceased, and the name and address of its present custodian.

12.    When responding to a demand for documents dated within a specific period, your response shall include all documents, electronic data and information which relate, in whole or in part, to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

## II. DEFINITIONS

1.    "And" and "or" shall be interpreted to mean "and/or," so that said terms are given the most inclusive construction.

2.    As used herein, "all" refers to any and all, and the term "any" likewise refers to any and all.

3.    The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

4.      "Account" shall mean a record of debit and credit entries to cover transactions involving a particular item or a particular person that arises from either: (a) an arrangement between Broker and the Customer in which pursuant to this arrangement an investor deposits money with Broker in order for Broker to make trades on securities on behalf of the Customer (a "Customer Account"); or (b) that Broker uses to record transactions that take place on Broker's behalf, such as any proprietary accounts that Broker uses for trading securities, options, or commodities for Broker's own account and risk, *i.e.* all other accounts that are not "customer accounts" (a "Non-Customer Account").

5.      "Account Number" shall mean the unique identifier assigned to each Account by the Broker.

6.      "Broker" shall mean Caldwell Securities Ltd. and any of its subsidiaries, predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

7.      "Customer" shall mean any Person that purchases any items from or through the Broker or who purchases any of the Broker's services.

8.      "Document" or "documents" includes, by way of illustration only and not by way of limitation, any written, typed, printed, recorded, electronically stored data or information, or graphic matter, however preserved, produced, or reproduced, of any type or description, regardless of medium, origin or location, including without limitation any binder, cover note, certificate, correspondence, electronic communications and electronically stored information (including but not limited to, audio recordings, emails, attachments, databases, word documents, spreadsheets, graphic files, photographs, sound recordings, images, and other data or data compilations), record, chart, analysis, report, test, study, memorandum, note, list, diary, log, calendar, questionnaire, bill, purchase order, permit, ledger entry, check, order, receipt, statement, financial data, acknowledgement, computer-generated matter, and all other data compilations from which information can be obtained or translated, drafts and revisions of drafts of any documents

and original preliminary notes, no matter how produced or maintained, in your actual or constructive possession, custody or control, and whether prepared, published or released by you or by any other person. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment, or any notation of any character, and not a part of the original text is to be considered a separate document.

9.      "Electronic Data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of electronic data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts or transmittals, logs of electronic mail history and usage, header information, and deleted files), Internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF and TIF files, batch files, native files and all ASCII files, and any and all miscellaneous files or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment.  Electronic data includes, but is not limited to, any and all items stored on any electronic media, computers, or networks and backup files containing electronically stored data.  The term "electronic data" also includes the file, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each such original or copy.

10.     "Open interest" shall mean an option contract that was traded but has not yet been liquidated by an offsetting option transaction, including by any assignment or expiration of the option contract.

11.     "Opening Purchase Transaction" shall mean as to Tesla Options a confirmed trade in which the purchaser's intention is to create or increase a long position in a series of cleared contracts.

12.     "Opening Sale (Writing Transaction) Transaction" shall mean as to Tesla Options a confirmed trade in which the seller's intention is to create or increase a short position in a series of cleared contracts.

13.     "Person" shall mean any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, commission, representative, employee, agent, broker, servant, attorney, or other entity.

14.     "Tesla" shall mean Defendant Tesla, Inc. and any of its predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

15.     "Tesla Bonds" shall mean all bonds issued by Tesla including, but not limited to, the following bonds:

a.      Tesla Convertible Bond 0.250% Due 3/1/2019 (CUSIP 88160RAB7);

b.      Tesla Convertible Bond 1.25% Due 3/1/2021 (CUSIP 88160RAC5);

c.      Tesla Convertible Bond 2.375% Due 3/15/2022 (CUSIP 88160RAD3); and

d.      Tesla Bond 5.3% Due 8/15/2025 (CUSIP U8810LAA1); and

e.      Tesla Bond 5.3% Due 8/15/2025 (CUSIP 88160RAE1).

16.     "Tesla Common Stock" shall mean the common stock of Tesla (CUSIP number 88160R101).

17.     "Tesla Options" shall mean all Option Contracts on any Tesla security, including but not limited to Tesla Common Stock.

18.     As used herein, the terms "relating to" and "concerning" means in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing,

commenting on, describing, constituting, supporting, contradicting, or having any logical or factual connection with the matter identified, in whole or in part.

### III. REQUESTS FOR PRODUCTION

**Request for Production 1:**

For any Account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Common Stock during the period of August 6, 2018 through November 15, 2018, inclusive:

1.  Account positions;
2.  Identity of any introducing brokers to the transaction;
3.  Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;
4.  Account Numbers and/or customer numbers;
5.  Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);
6.  Security identification;
7.  CUSIP number;
8.  Trade date;
9.  Trade / transaction time (in at least millisecond resolution);
10. Settlement date;
11. Whether the trade/transaction is a purchase or sale;
12. Whether the purchase was to cover a short position;
13. Whether the sale was to open a short position;

7

14. Whether the purchase or sale was pursuant to an option exercise or assignment;

15. Any information concerning the underlying option that is related to any option exercise or assignment;

16. Quantity of securities traded/transacted;

17. Price per share that the trade was executed; and

18. Trade value.

**Request for Production 2:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Options during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;

2. Identity of any introducing brokers to the transaction;

3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4. Account Numbers and/or customer numbers;

5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6. Security identification;

7. Ticker symbol;

8. Underlying security;

9. Type of option;

10.   Style of option;

11.   Whether the trade is a put or call;

12.   Expiration date and/or series/contract date;

13.   Strike price and/or exercise price;

14.   Whether the trade is a purchase or sale;

15.   The type of option transaction (*i.e.* Opening Purchases Transaction; closing purchase transaction; Opening Sale (Writing) Transaction; closing (sale) transaction; exercise; expiration; or assignment);

16.   Trade date;

17.   Trade / transaction time (in at least millisecond resolution);

18.   Settlement date;

19.   Quantity of securities traded/transacted;

20.   Trade price / premium on the transaction;

21.   Trade value;

22.   Whether the option is an over-the-counter option;

23.   Any order identification number;

24.   Any related purchase or sale of the underlying security; and

25.   Identification of the marketplace of execution.

**Request for Production 3:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades and/or transactions, and/or positions in Tesla Bonds during the period of August 6, 2018 through November 15, 2018, inclusive:

1.   Account positions;

2.   Identity of any introducing broker to the transaction;

3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4. Account Numbers and/or customer numbers;

5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6. Trade date;

7. Trade / transaction time (in at least millisecond resolution);

8. Trade execution date;

9. Trade execution time;

10. Trade report date;

11. Trade report time;

12. The quantity of units (the uncapped par value volume reported on the trade not subject to any dissemination caps);

13. The identification of quantity of units (*e.g.*, hundreds, thousands, etc.);

14. Price (including price per unit);

15. Reported price;

16. Trade settlement date;

17. Type of transaction (*e.g.*, buy, sell, short, cross, etc.);

18. Reference number;

19. Trade status;

20. Security identification;

21. CUSIP number;

22. Ticker symbol;

23. TRACE symbol;

SCHEDULE B
CASE NO. 3:18-CV-04865-EMC

24.    Security type;

25.    Bloomberg Identifier;

26.    Issue symbol;

27.    Issuer name;

28.    Coupon rate;

29.    Coupon type;

30.    Maturity date;

31.    Buyer commission;

32.    Buyer capacity;

33.    Seller commission;

34.    Seller capacity; and

35.    Mark up.

**Request for Production 4:**

For any account with a trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence at the Account level any positions held in Tesla Common Stock, Tesla Bonds, or Tesla Options in any Account as of the end of: (i) August 6, 2018; and (ii) August 17, 2018.

**Request for Production 5:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased short positions in Tesla Common Stock that were held in any Account as of the end of August 6, 2018, including all of the following information:

1.    Account positions;

2.    Account and/or customer numbers;

11

3. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4. Security identification;

5. CUSIP number;

6. Trade date;

7. Trade / transaction time (in at least millisecond resolution);

8. Settlement date;

9. Whether the trade/transaction was a purchase or sale;

10. Whether the sale was to open a short position;

11. Whether the purchase or sale is pursuant to an option exercise or assignment;

12. Any information concerning the underlying option that is related to any option exercise or assignment;

13. Quantity of securities traded/transacted;

14. Price per share that the trade was executed; and

15. Trade value.

**Request for Production 6:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased positions in Tesla Options that were held in any Account as of the end of August 6, 2018, including all of the following information:

1. Account positions;

2. Account and/or customer numbers;

3. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4. Security identification;

5.      CUSIP number;

6.      Ticker symbol;

7.      Underlying security;

8.      Type of option;

9.      Style of option;

10.     Whether the trade is a put or call;

11.     Expiration date and/or series/contract date;

12.     Strike price and/or exercise price;

13.     Whether the trade is a purchase or sale;

14.     The type of option transaction (*i.e.* Opening Purchases Transaction; Opening Sale (Writing) Transaction);

15.     Trade date;

16.     Trade / transaction time (in at least millisecond resolution);

17.     Settlement date;

18.     Quantity of securities traded/transacted;

19.     Trade price / premium on the transaction;

20.     Trade value;

21.     Whether the option is an over-the-counter option; and

22.     Any order identification number.

**Request for Production 7:**

Documents and Electronic Data to interpret any codes, abbreviations, or any other system of symbols used to represent other information contained in the information produced in response to any Demand for Production. By way of example and not by limitation, Documents and Electronic Data responsive to this demand may include legends, code lists, ciphers, or keys which can be used to interpret and/or decipher the names or codes used for any brokers, dealers, contra-parties, internal nomenclature, individuals, or securities.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SCHEDULE C**

**DOCUMENTS TO BE PRODUCED BY CIBC WORLD MARKETS INC.**

It is respectfully requested that CIBC World Markets Inc. be compelled to produce the following documents that are in its possession, custody, or control, and which are not privileged under Canadian or U.S. law according to the following instructions and definitions:

**I.  INSTRUCTIONS FOR RESPONDING TO THE LETTERS ROGATORY**

1.    You have been asked by Lead Plaintiff in the matter *In re Tesla, Inc. Securities Litigation*, Case No. 3:18-cv-04865-EMC, pending in the United States District Court for the Northern District of California.

2.    The Letters Rogatory demands the production of documents and/or other materials. Unless specified otherwise, specific terms used in the Demands listed below are defined in the Definitions section.

3.    You are required, in responding to these Letters Rogatory, to obtain and furnish all documents, electronic data, and information available to you and any of your representatives, employees, agents, brokers, servants, and/or attorneys, and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, brokers, servants, and/or attorneys. Importantly, if at any point you determine that your response to the letters rogatory is not correct or complete, you are required to provide a supplemental response.

4.    The documents produced in response to the letters rogatory shall include all attachments and enclosures.

5.    Each demand should be responded to separately. However, a document that is the response to more than one request may, if the relevant portion is marked or indexed, be produced, and referred to in a later response.

6.    To the extent to which any demand is objected, please set forth all reasons for your objection and furnish documents responsive to the remainder of the demand.

7.     All documents and/or materials called for by the letters rogatory, for which you claim a privilege or statutory authority as a ground for non-production, shall be listed chronologically in a privilege log as follows:

        a)     The place, date, and manner of recording or otherwise preparing the document;

        b)     The name and title of the sender;

        c)     The identity of each person or persons (other than clerical assistants) participating in the preparation of the document;

        d)     The identity of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, sketch, reading or substantial summarization, the dates of said communication, and the employer and title of said person at the time of said communication;

        e)     Type of document;

        f)     Subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

        g)     Factual and legal basis for claim, privilege, or specific statutory or regulatory authority that provides the claimed ground for non-production.

8.     Each demand to produce a document or documents shall be deemed to call to produce the original document or documents to the extent that they are in, or subject to, directly or indirectly, the control of the party to whom these discovery requests are addressed. If you prefer, you may provide legible copies of documents in lieu of originals so long as those copies reflect all markings, notations, and highlighting that is present on the originals. In addition, each demand should be considered as including a demand for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments

having been added to one copy of a document but not on the original or other copies thereof).

9.   All Documents should be Bates labeled and marked with appropriate confidentiality indications and should be produced in accordance with any ESI protocol agreed to by the parties and/or entered by the Court.

10.   Documents to be produced shall be either (l) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the requests for production.

11.   To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them. If any documents herein requested have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date, and subject matter. With respect to any document requested which was once in your possession, custody, or control, but no longer is, please indicate the date the document ceased to be in your possession, custody, or control, the manner in which it ceased, and the name and address of its present custodian.

12.   When responding to a demand for documents dated within a specific period, your response shall include all documents, electronic data and information which relate, in whole or in part, to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

**II. DEFINITIONS**

1.   "And" and "or" shall be interpreted to mean "and/or," so that said terms are given the most inclusive construction.

2.   As used herein, "all" refers to any and all, and the term "any" likewise refers to any and all.

3.   The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

4.      "Account" shall mean a record of debit and credit entries to cover transactions involving a particular item or a particular person that arises from either: (a) an arrangement between Broker and the Customer in which pursuant to this arrangement an investor deposits money with Broker in order for Broker to make trades on securities on behalf of the Customer (a "Customer Account"); or (b) that Broker uses to record transactions that take place on Broker's behalf, such as any proprietary accounts that Broker uses for trading securities, options, or commodities for Broker's own account and risk, *i.e.* all other accounts that are not "customer accounts" (a "Non-Customer Account").

5.      "Account Number" shall mean the unique identifier assigned to each Account by the Broker.

6.      "Broker" shall mean CIBC World Markets Inc. and any of its subsidiaries, predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

7.      "Customer" shall mean any Person that purchases any items from or through the Broker or who purchases any of the Broker's services.

8.      "Document" or "documents" includes, by way of illustration only and not by way of limitation, any written, typed, printed, recorded, electronically stored data or information, or graphic matter, however preserved, produced, or reproduced, of any type or description, regardless of medium, origin or location, including without limitation any binder, cover note, certificate, correspondence, electronic communications and electronically stored information (including but not limited to, audio recordings, emails, attachments, databases, word documents, spreadsheets, graphic files, photographs, sound recordings, images, and other data or data compilations), record, chart, analysis, report, test, study, memorandum, note, list, diary, log, calendar, questionnaire, bill, purchase order, permit, ledger entry, check, order, receipt, statement, financial data, acknowledgement, computer-generated matter, and all other data compilations from which information can be obtained or translated, drafts and revisions of drafts of any documents

and original preliminary notes, no matter how produced or maintained, in your actual or constructive possession, custody or control, and whether prepared, published or released by you or by any other person. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment, or any notation of any character, and not a part of the original text is to be considered a separate document.

9.      "Electronic Data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of electronic data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts or transmittals, logs of electronic mail history and usage, header information, and deleted files), Internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF and TIF files, batch files, native files and all ASCII files, and any and all miscellaneous files or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment.  Electronic data includes, but is not limited to, any and all items stored on any electronic media, computers, or networks and backup files containing electronically stored data.  The term "electronic data" also includes the file, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each such original or copy.

10.     "Open interest" shall mean an option contract that was traded but has not yet been liquidated by an offsetting option transaction, including by any assignment or expiration of the option contract.

11.     "Opening Purchase Transaction" shall mean as to Tesla Options a confirmed trade in which the purchaser's intention is to create or increase a long position in a series of cleared contracts.

12.     "Opening Sale (Writing Transaction) Transaction" shall mean as to Tesla Options a confirmed trade in which the seller's intention is to create or increase a short position in a series of cleared contracts.

13.     "Person" shall mean any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, commission, representative, employee, agent, broker, servant, attorney, or other entity.

14.     "Tesla" shall mean Defendant Tesla, Inc. and any of its predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

15.     "Tesla Bonds" shall mean all bonds issued by Tesla including, but not limited to, the following bonds:

a.     Tesla Convertible Bond 0.250% Due 3/1/2019 (CUSIP 88160RAB7);

b.     Tesla Convertible Bond 1.25% Due 3/1/2021 (CUSIP 88160RAC5);

c.     Tesla Convertible Bond 2.375% Due 3/15/2022 (CUSIP 88160RAD3); and

d.     Tesla Bond 5.3% Due 8/15/2025 (CUSIP U8810LAA1); and

e.     Tesla Bond 5.3% Due 8/15/2025 (CUSIP 88160RAE1).

16.     "Tesla Common Stock" shall mean the common stock of Tesla (CUSIP number 88160R101).

17.     "Tesla Options" shall mean all Option Contracts on any Tesla security, including but not limited to Tesla Common Stock.

18.     As used herein, the terms "relating to" and "concerning" means in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing,

commenting on, describing, constituting, supporting, contradicting, or having any logical or factual connection with the matter identified, in whole or in part.

### III. REQUESTS FOR PRODUCTION

**Request for Production 1:**

For any Account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Common Stock during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;
2. Identity of any introducing brokers to the transaction;
3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;
4. Account Numbers and/or customer numbers;
5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);
6. Security identification;
7. CUSIP number;
8. Trade date;
9. Trade / transaction time (in at least millisecond resolution);
10. Settlement date;
11. Whether the trade/transaction is a purchase or sale;
12. Whether the purchase was to cover a short position;
13. Whether the sale was to open a short position;

14.  Whether the purchase or sale was pursuant to an option exercise or assignment;

15.  Any information concerning the underlying option that is related to any option exercise or assignment;

16.  Quantity of securities traded/transacted;

17.  Price per share that the trade was executed; and

18.  Trade value.

**Request for Production 2:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Options during the period of August 6, 2018 through November 15, 2018, inclusive:

1.  Account positions;

2.  Identity of any introducing brokers to the transaction;

3.  Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4.  Account Numbers and/or customer numbers;

5.  Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6.  Security identification;

7.  Ticker symbol;

8.  Underlying security;

9.  Type of option;

10. Style of option;

11. Whether the trade is a put or call;

12. Expiration date and/or series/contract date;

13. Strike price and/or exercise price;

14. Whether the trade is a purchase or sale;

15. The type of option transaction (*i.e.* Opening Purchases Transaction; closing purchase transaction; Opening Sale (Writing) Transaction; closing (sale) transaction; exercise; expiration; or assignment);

16. Trade date;

17. Trade / transaction time (in at least millisecond resolution);

18. Settlement date;

19. Quantity of securities traded/transacted;

20. Trade price / premium on the transaction;

21. Trade value;

22. Whether the option is an over-the-counter option;

23. Any order identification number;

24. Any related purchase or sale of the underlying security; and

25. Identification of the marketplace of execution.

**Request for Production 3:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades and/or transactions, and/or positions in Tesla Bonds during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;

2. Identity of any introducing broker to the transaction;

3.    Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4.    Account Numbers and/or customer numbers;

5.    Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6.    Trade date;

7.    Trade / transaction time (in at least millisecond resolution);

8.    Trade execution date;

9.    Trade execution time;

10.    Trade report date;

11.    Trade report time;

12.    The quantity of units (the uncapped par value volume reported on the trade not subject to any dissemination caps);

13.    The identification of quantity of units (*e.g.*, hundreds, thousands, etc.);

14.    Price (including price per unit);

15.    Reported price;

16.    Trade settlement date;

17.    Type of transaction (*e.g.*, buy, sell, short, cross, etc.);

18.    Reference number;

19.    Trade status;

20.    Security identification;

21.    CUSIP number;

22.    Ticker symbol;

23.    TRACE symbol;

24.   Security type;

25.   Bloomberg Identifier;

26.   Issue symbol;

27.   Issuer name;

28.   Coupon rate;

29.   Coupon type;

30.   Maturity date;

31.   Buyer commission;

32.   Buyer capacity;

33.   Seller commission;

34.   Seller capacity; and

35.   Mark up.

**Request for Production 4:**

For any account with a trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence at the Account level any positions held in Tesla Common Stock, Tesla Bonds, or Tesla Options in any Account as of the end of: (i) August 6, 2018; and (ii) August 17, 2018.

**Request for Production 5:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased short positions in Tesla Common Stock that were held in any Account as of the end of August 6, 2018, including all of the following information:

1.   Account positions;

2.   Account and/or customer numbers;

1          3.    Account or account type (*i.e.* customer account, non-customer

2                 account, market maker Account, firm account, proprietary account,

3                 etc.);

4          4.    Security identification;

5          5.    CUSIP number;

6          6.    Trade date;

7          7.    Trade / transaction time (in at least millisecond resolution);

8          8.    Settlement date;

9          9.    Whether the trade/transaction was a purchase or sale;

10         10.   Whether the sale was to open a short position;

11         11.   Whether the purchase or sale is pursuant to an option exercise or

12                assignment;

13         12.   Any information concerning the underlying option that is related to

14                any option exercise or assignment;

15         13.   Quantity of securities traded/transacted;

16         14.   Price per share that the trade was executed; and

17         15.   Trade value.

18

19    **Request for Production 6:**

20        Document and Electronic Data sufficient to evidence the opening purchases or sales trades

21 and/or transactions that created or increased positions in Tesla Options that were held in any

22 Account as of the end of August 6, 2018, including all of the following information:

23         1.    Account positions;

24         2.    Account and/or customer numbers;

25         3.    Account or account type (*i.e.* customer account, non-customer

26                account, market maker Account, firm account, proprietary account,

27                etc.);

28         4.    Security identification;

5.    CUSIP number;

6.    Ticker symbol;

7.    Underlying security;

8.    Type of option;

9.    Style of option;

10.   Whether the trade is a put or call;

11.   Expiration date and/or series/contract date;

12.   Strike price and/or exercise price;

13.   Whether the trade is a purchase or sale;

14.   The type of option transaction (*i.e.* Opening Purchases Transaction; Opening Sale (Writing) Transaction);

15.   Trade date;

16.   Trade / transaction time (in at least millisecond resolution);

17.   Settlement date;

18.   Quantity of securities traded/transacted;

19.   Trade price / premium on the transaction;

20.   Trade value;

21.   Whether the option is an over-the-counter option; and

22.   Any order identification number.

**Request for Production 7:**

Documents and Electronic Data to interpret any codes, abbreviations, or any other system of symbols used to represent other information contained in the information produced in response to any Demand for Production. By way of example and not by limitation, Documents and Electronic Data responsive to this demand may include legends, code lists, ciphers, or keys which can be used to interpret and/or decipher the names or codes used for any brokers, dealers, contra-parties, internal nomenclature, individuals, or securities.

SCHEDULE C
CASE NO. 3:18-CV-04865-EMC

**SCHEDULE D**

**DOCUMENTS TO BE PRODUCED BY CI INVESTMENT SERVICES INC.**

It is respectfully requested that CI Investment Services Inc. be compelled to produce the following documents that are in its possession, custody, or control, and which are not privileged under Canadian or U.S. law according to the following instructions and definitions:

**I.   INSTRUCTIONS FOR RESPONDING TO THE LETTERS ROGATORY**

1.      You have been asked by Lead Plaintiff in the matter *In re Tesla, Inc. Securities Litigation*, Case No. 3:18-cv-04865-EMC, pending in the United States District Court for the Northern District of California.

2.      The Letters Rogatory demands the production of documents and/or other materials. Unless specified otherwise, specific terms used in the Demands listed below are defined in the Definitions section.

3.      You are required, in responding to these Letters Rogatory, to obtain and furnish all documents, electronic data, and information available to you and any of your representatives, employees, agents, brokers, servants, and/or attorneys, and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, brokers, servants, and/or attorneys. Importantly, if at any point you determine that your response to the letters rogatory is not correct or complete, you are required to provide a supplemental response.

4.      The documents produced in response to the letters rogatory shall include all attachments and enclosures.

5.      Each demand should be responded to separately. However, a document that is the response to more than one request may, if the relevant portion is marked or indexed, be produced, and referred to in a later response.

6.      To the extent to which any demand is objected, please set forth all reasons for your objection and furnish documents responsive to the remainder of the demand.

7.     All documents and/or materials called for by the letters rogatory, for which you claim a privilege or statutory authority as a ground for non-production, shall be listed chronologically in a privilege log as follows:

        a)     The place, date, and manner of recording or otherwise preparing the document;

        b)     The name and title of the sender;

        c)     The identity of each person or persons (other than clerical assistants) participating in the preparation of the document;

        d)     The identity of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, sketch, reading or substantial summarization, the dates of said communication, and the employer and title of said person at the time of said communication;

        e)     Type of document;

        f)     Subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

        g)     Factual and legal basis for claim, privilege, or specific statutory or regulatory authority that provides the claimed ground for non-production.

8.     Each demand to produce a document or documents shall be deemed to call to produce the original document or documents to the extent that they are in, or subject to, directly or indirectly, the control of the party to whom these discovery requests are addressed. If you prefer, you may provide legible copies of documents in lieu of originals so long as those copies reflect all markings, notations, and highlighting that is present on the originals. In addition, each demand should be considered as including a demand for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments

SCHEDULE D
CASE NO. 3:18-CV-04865-EMC

having been added to one copy of a document but not on the original or other copies thereof).

9.     All Documents should be Bates labeled and marked with appropriate confidentiality indications and should be produced in accordance with any ESI protocol agreed to by the parties and/or entered by the Court.

10.     Documents to be produced shall be either (l) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the requests for production.

11.     To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them. If any documents herein requested have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date, and subject matter. With respect to any document requested which was once in your possession, custody, or control, but no longer is, please indicate the date the document ceased to be in your possession, custody, or control, the manner in which it ceased, and the name and address of its present custodian.

12.     When responding to a demand for documents dated within a specific period, your response shall include all documents, electronic data and information which relate, in whole or in part, to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

**II. DEFINITIONS**

1.     "And" and "or" shall be interpreted to mean "and/or," so that said terms are given the most inclusive construction.

2.     As used herein, "all" refers to any and all, and the term "any" likewise refers to any and all.

3.     The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

4. "Account" shall mean a record of debit and credit entries to cover transactions involving a particular item or a particular person that arises from either: (a) an arrangement between Broker and the Customer in which pursuant to this arrangement an investor deposits money with Broker in order for Broker to make trades on securities on behalf of the Customer (a "Customer Account"); or (b) that Broker uses to record transactions that take place on Broker's behalf, such as any proprietary accounts that Broker uses for trading securities, options, or commodities for Broker's own account and risk, *i.e.* all other accounts that are not "customer accounts" (a "Non-Customer Account").

5. "Account Number" shall mean the unique identifier assigned to each Account by the Broker.

6. "Broker" shall mean CI Investment Services Inc. and any of its subsidiaries, predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

7. "Customer" shall mean any Person that purchases any items from or through the Broker or who purchases any of the Broker's services.

8. "Document" or "documents" includes, by way of illustration only and not by way of limitation, any written, typed, printed, recorded, electronically stored data or information, or graphic matter, however preserved, produced, or reproduced, of any type or description, regardless of medium, origin or location, including without limitation any binder, cover note, certificate, correspondence, electronic communications and electronically stored information (including but not limited to, audio recordings, emails, attachments, databases, word documents, spreadsheets, graphic files, photographs, sound recordings, images, and other data or data compilations), record, chart, analysis, report, test, study, memorandum, note, list, diary, log, calendar, questionnaire, bill, purchase order, permit, ledger entry, check, order, receipt, statement, financial data, acknowledgement, computer-generated matter, and all other data compilations from which information can be obtained or translated, drafts and revisions of drafts of any documents

and original preliminary notes, no matter how produced or maintained, in your actual or constructive possession, custody or control, and whether prepared, published or released by you or by any other person. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment, or any notation of any character, and not a part of the original text is to be considered a separate document.

9.      "Electronic Data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of electronic data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts or transmittals, logs of electronic mail history and usage, header information, and deleted files), Internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF and TIF files, batch files, native files and all ASCII files, and any and all miscellaneous files or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment.  Electronic data includes, but is not limited to, any and all items stored on any electronic media, computers, or networks and backup files containing electronically stored data.  The term "electronic data" also includes the file, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each such original or copy.

10.     "Open interest" shall mean an option contract that was traded but has not yet been liquidated by an offsetting option transaction, including by any assignment or expiration of the option contract.

11.     "Opening Purchase Transaction" shall mean as to Tesla Options a confirmed trade in which the purchaser's intention is to create or increase a long position in a series of cleared contracts.

12.     "Opening Sale (Writing Transaction) Transaction" shall mean as to Tesla Options a confirmed trade in which the seller's intention is to create or increase a short position in a series of cleared contracts.

13.     "Person" shall mean any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, commission, representative, employee, agent, broker, servant, attorney, or other entity.

14.     "Tesla" shall mean Defendant Tesla, Inc. and any of its predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

15.     "Tesla Bonds" shall mean all bonds issued by Tesla including, but not limited to, the following bonds:

a.     Tesla Convertible Bond 0.250% Due 3/1/2019 (CUSIP 88160RAB7);

b.     Tesla Convertible Bond 1.25% Due 3/1/2021 (CUSIP 88160RAC5);

c.     Tesla Convertible Bond 2.375% Due 3/15/2022 (CUSIP 88160RAD3); and

d.     Tesla Bond 5.3% Due 8/15/2025 (CUSIP U8810LAA1); and

e.     Tesla Bond 5.3% Due 8/15/2025 (CUSIP 88160RAE1).

16.     "Tesla Common Stock" shall mean the common stock of Tesla (CUSIP number 88160R101).

17.     "Tesla Options" shall mean all Option Contracts on any Tesla security, including but not limited to Tesla Common Stock.

18.     As used herein, the terms "relating to" and "concerning" means in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing,

commenting on, describing, constituting, supporting, contradicting, or having any logical or factual connection with the matter identified, in whole or in part.

### III. REQUESTS FOR PRODUCTION

**Request for Production 1:**

For any Account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Common Stock during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;
2. Identity of any introducing brokers to the transaction;
3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;
4. Account Numbers and/or customer numbers;
5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);
6. Security identification;
7. CUSIP number;
8. Trade date;
9. Trade / transaction time (in at least millisecond resolution);
10. Settlement date;
11. Whether the trade/transaction is a purchase or sale;
12. Whether the purchase was to cover a short position;
13. Whether the sale was to open a short position;

14.  Whether the purchase or sale was pursuant to an option exercise or assignment;

15.  Any information concerning the underlying option that is related to any option exercise or assignment;

16.  Quantity of securities traded/transacted;

17.  Price per share that the trade was executed; and

18.  Trade value.

**Request for Production 2:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Options during the period of August 6, 2018 through November 15, 2018, inclusive:

1.  Account positions;

2.  Identity of any introducing brokers to the transaction;

3.  Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4.  Account Numbers and/or customer numbers;

5.  Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6.  Security identification;

7.  Ticker symbol;

8.  Underlying security;

9.  Type of option;

10.   Style of option;

11.   Whether the trade is a put or call;

12.   Expiration date and/or series/contract date;

13.   Strike price and/or exercise price;

14.   Whether the trade is a purchase or sale;

15.   The type of option transaction (*i.e.* Opening Purchases Transaction; closing purchase transaction; Opening Sale (Writing) Transaction; closing (sale) transaction; exercise; expiration; or assignment);

16.   Trade date;

17.   Trade / transaction time (in at least millisecond resolution);

18.   Settlement date;

19.   Quantity of securities traded/transacted;

20.   Trade price / premium on the transaction;

21.   Trade value;

22.   Whether the option is an over-the-counter option;

23.   Any order identification number;

24.   Any related purchase or sale of the underlying security; and

25.   Identification of the marketplace of execution.

**Request for Production 3:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades and/or transactions, and/or positions in Tesla Bonds during the period of August 6, 2018 through November 15, 2018, inclusive:

1.   Account positions;

2.   Identity of any introducing broker to the transaction;

3.   Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4.   Account Numbers and/or customer numbers;

5.   Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6.   Trade date;

7.   Trade / transaction time (in at least millisecond resolution);

8.   Trade execution date;

9.   Trade execution time;

10.   Trade report date;

11.   Trade report time;

12.   The quantity of units (the uncapped par value volume reported on the trade not subject to any dissemination caps);

13.   The identification of quantity of units (*e.g.*, hundreds, thousands, etc.);

14.   Price (including price per unit);

15.   Reported price;

16.   Trade settlement date;

17.   Type of transaction (*e.g.*, buy, sell, short, cross, etc.);

18.   Reference number;

19.   Trade status;

20.   Security identification;

21.   CUSIP number;

22.   Ticker symbol;

23.   TRACE symbol;

24. Security type;

25. Bloomberg Identifier;

26. Issue symbol;

27. Issuer name;

28. Coupon rate;

29. Coupon type;

30. Maturity date;

31. Buyer commission;

32. Buyer capacity;

33. Seller commission;

34. Seller capacity; and

35. Mark up.

**Request for Production 4:**

For any account with a trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence at the Account level any positions held in Tesla Common Stock, Tesla Bonds, or Tesla Options in any Account as of the end of: (i) August 6, 2018; and (ii) August 17, 2018.

**Request for Production 5:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased short positions in Tesla Common Stock that were held in any Account as of the end of August 6, 2018, including all of the following information:

1. Account positions;

2. Account and/or customer numbers;

3. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4. Security identification;

5. CUSIP number;

6. Trade date;

7. Trade / transaction time (in at least millisecond resolution);

8. Settlement date;

9. Whether the trade/transaction was a purchase or sale;

10. Whether the sale was to open a short position;

11. Whether the purchase or sale is pursuant to an option exercise or assignment;

12. Any information concerning the underlying option that is related to any option exercise or assignment;

13. Quantity of securities traded/transacted;

14. Price per share that the trade was executed; and

15. Trade value.


**Request for Production 6:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased positions in Tesla Options that were held in any Account as of the end of August 6, 2018, including all of the following information:

1. Account positions;

2. Account and/or customer numbers;

3. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4. Security identification;

5.   CUSIP number;

6.   Ticker symbol;

7.   Underlying security;

8.   Type of option;

9.   Style of option;

10.   Whether the trade is a put or call;

11.   Expiration date and/or series/contract date;

12.   Strike price and/or exercise price;

13.   Whether the trade is a purchase or sale;

14.   The type of option transaction (*i.e.* Opening Purchases Transaction; Opening Sale (Writing) Transaction);

15.   Trade date;

16.   Trade / transaction time (in at least millisecond resolution);

17.   Settlement date;

18.   Quantity of securities traded/transacted;

19.   Trade price / premium on the transaction;

20.   Trade value;

21.   Whether the option is an over-the-counter option; and

22.   Any order identification number.

**Request for Production 7:**

Documents and Electronic Data to interpret any codes, abbreviations, or any other system of symbols used to represent other information contained in the information produced in response to any Demand for Production. By way of example and not by limitation, Documents and Electronic Data responsive to this demand may include legends, code lists, ciphers, or keys which can be used to interpret and/or decipher the names or codes used for any brokers, dealers, contra-parties, internal nomenclature, individuals, or securities.

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SCHEDULE E**

**DOCUMENTS TO BE PRODUCED BY DESJARDINS SECURITIES INC.**

It is respectfully requested that Desjardins Securities Inc. be compelled to produce the following documents that are in its possession, custody, or control, and which are not privileged under Canadian or U.S. law according to the following instructions and definitions:

**I.   INSTRUCTIONS FOR RESPONDING TO THE LETTERS ROGATORY**

1.      You have been asked by Lead Plaintiff in the matter *In re Tesla, Inc. Securities Litigation*, Case No. 3:18-cv-04865-EMC, pending in the United States District Court for the Northern District of California.

2.      The Letters Rogatory demands the production of documents and/or other materials. Unless specified otherwise, specific terms used in the Demands listed below are defined in the Definitions section.

3.      You are required, in responding to these Letters Rogatory, to obtain and furnish all documents, electronic data, and information available to you and any of your representatives, employees, agents, brokers, servants, and/or attorneys, and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, brokers, servants, and/or attorneys. Importantly, if at any point you determine that your response to the letters rogatory is not correct or complete, you are required to provide a supplemental response.

4.      The documents produced in response to the letters rogatory shall include all attachments and enclosures.

5.      Each demand should be responded to separately. However, a document that is the response to more than one request may, if the relevant portion is marked or indexed, be produced, and referred to in a later response.

6.      To the extent to which any demand is objected, please set forth all reasons for your objection and furnish documents responsive to the remainder of the demand.

7.      All documents and/or materials called for by the letters rogatory, for which you claim a privilege or statutory authority as a ground for non-production, shall be listed chronologically in a privilege log as follows:

        a)    The place, date, and manner of recording or otherwise preparing the document;

        b)    The name and title of the sender;

        c)    The identity of each person or persons (other than clerical assistants) participating in the preparation of the document;

        d)    The identity of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, sketch, reading or substantial summarization, the dates of said communication, and the employer and title of said person at the time of said communication;

        e)    Type of document;

        f)    Subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

        g)    Factual and legal basis for claim, privilege, or specific statutory or regulatory authority that provides the claimed ground for non-production.

8.      Each demand to produce a document or documents shall be deemed to call to produce the original document or documents to the extent that they are in, or subject to, directly or indirectly, the control of the party to whom these discovery requests are addressed. If you prefer, you may provide legible copies of documents in lieu of originals so long as those copies reflect all markings, notations, and highlighting that is present on the originals. In addition, each demand should be considered as including a demand for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments

having been added to one copy of a document but not on the original or other copies thereof).

9.     All Documents should be Bates labeled and marked with appropriate confidentiality indications and should be produced in accordance with any ESI protocol agreed to by the parties and/or entered by the Court.

10.     Documents to be produced shall be either (l) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the requests for production.

11.     To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them. If any documents herein requested have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date, and subject matter. With respect to any document requested which was once in your possession, custody, or control, but no longer is, please indicate the date the document ceased to be in your possession, custody, or control, the manner in which it ceased, and the name and address of its present custodian.

12.     When responding to a demand for documents dated within a specific period, your response shall include all documents, electronic data and information which relate, in whole or in part, to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

## II. DEFINITIONS

1.     "And" and "or" shall be interpreted to mean "and/or," so that said terms are given the most inclusive construction.

2.     As used herein, "all" refers to any and all, and the term "any" likewise refers to any and all.

3.     The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

4.      "Account" shall mean a record of debit and credit entries to cover transactions involving a particular item or a particular person that arises from either: (a) an arrangement between Broker and the Customer in which pursuant to this arrangement an investor deposits money with Broker in order for Broker to make trades on securities on behalf of the Customer (a "Customer Account"); or (b) that Broker uses to record transactions that take place on Broker's behalf, such as any proprietary accounts that Broker uses for trading securities, options, or commodities for Broker's own account and risk, *i.e.* all other accounts that are not "customer accounts" (a "Non-Customer Account").

5.      "Account Number" shall mean the unique identifier assigned to each Account by the Broker.

6.      "Broker" shall mean Desjardins Securities Inc. and any of its subsidiaries, predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

7.      "Customer" shall mean any Person that purchases any items from or through the Broker or who purchases any of the Broker's services.

8.      "Document" or "documents" includes, by way of illustration only and not by way of limitation, any written, typed, printed, recorded, electronically stored data or information, or graphic matter, however preserved, produced, or reproduced, of any type or description, regardless of medium, origin or location, including without limitation any binder, cover note, certificate, correspondence, electronic communications and electronically stored information (including but not limited to, audio recordings, emails, attachments, databases, word documents, spreadsheets, graphic files, photographs, sound recordings, images, and other data or data compilations), record, chart, analysis, report, test, study, memorandum, note, list, diary, log, calendar, questionnaire, bill, purchase order, permit, ledger entry, check, order, receipt, statement, financial data, acknowledgement, computer-generated matter, and all other data compilations from which information can be obtained or translated, drafts and revisions of drafts of any documents

and original preliminary notes, no matter how produced or maintained, in your actual or constructive possession, custody or control, and whether prepared, published or released by you or by any other person. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment, or any notation of any character, and not a part of the original text is to be considered a separate document.

9.    "Electronic Data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of electronic data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts or transmittals, logs of electronic mail history and usage, header information, and deleted files), Internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF and TIF files, batch files, native files and all ASCII files, and any and all miscellaneous files or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment.  Electronic data includes, but is not limited to, any and all items stored on any electronic media, computers, or networks and backup files containing electronically stored data.  The term "electronic data" also includes the file, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each such original or copy.

10.     "Open interest" shall mean an option contract that was traded but has not yet been liquidated by an offsetting option transaction, including by any assignment or expiration of the option contract.

11.     "Opening Purchase Transaction" shall mean as to Tesla Options a confirmed trade in which the purchaser's intention is to create or increase a long position in a series of cleared contracts.

12.     "Opening Sale (Writing Transaction) Transaction" shall mean as to Tesla Options a confirmed trade in which the seller's intention is to create or increase a short position in a series of cleared contracts.

13.     "Person" shall mean any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, commission, representative, employee, agent, broker, servant, attorney, or other entity.

14.     "Tesla" shall mean Defendant Tesla, Inc. and any of its predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

15.     "Tesla Bonds" shall mean all bonds issued by Tesla including, but not limited to, the following bonds:

a.     Tesla Convertible Bond 0.250% Due 3/1/2019 (CUSIP 88160RAB7);

b.     Tesla Convertible Bond 1.25% Due 3/1/2021 (CUSIP 88160RAC5);

c.     Tesla Convertible Bond 2.375% Due 3/15/2022 (CUSIP 88160RAD3); and

d.     Tesla Bond 5.3% Due 8/15/2025 (CUSIP U8810LAA1); and

e.     Tesla Bond 5.3% Due 8/15/2025 (CUSIP 88160RAE1).

16.     "Tesla Common Stock" shall mean the common stock of Tesla (CUSIP number 88160R101).

17.     "Tesla Options" shall mean all Option Contracts on any Tesla security, including but not limited to Tesla Common Stock.

18.     As used herein, the terms "relating to" and "concerning" means in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing,

commenting on, describing, constituting, supporting, contradicting, or having any logical or factual connection with the matter identified, in whole or in part.

### III. REQUESTS FOR PRODUCTION

**Request for Production 1:**

For any Account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Common Stock during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;
2. Identity of any introducing brokers to the transaction;
3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;
4. Account Numbers and/or customer numbers;
5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);
6. Security identification;
7. CUSIP number;
8. Trade date;
9. Trade / transaction time (in at least millisecond resolution);
10. Settlement date;
11. Whether the trade/transaction is a purchase or sale;
12. Whether the purchase was to cover a short position;
13. Whether the sale was to open a short position;

14. Whether the purchase or sale was pursuant to an option exercise or assignment;

15. Any information concerning the underlying option that is related to any option exercise or assignment;

16. Quantity of securities traded/transacted;

17. Price per share that the trade was executed; and

18. Trade value.

**Request for Production 2:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Options during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;

2. Identity of any introducing brokers to the transaction;

3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4. Account Numbers and/or customer numbers;

5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6. Security identification;

7. Ticker symbol;

8. Underlying security;

9. Type of option;

10. Style of option;

11. Whether the trade is a put or call;

12. Expiration date and/or series/contract date;

13. Strike price and/or exercise price;

14. Whether the trade is a purchase or sale;

15. The type of option transaction (*i.e.* Opening Purchases Transaction; closing purchase transaction; Opening Sale (Writing) Transaction; closing (sale) transaction; exercise; expiration; or assignment);

16. Trade date;

17. Trade / transaction time (in at least millisecond resolution);

18. Settlement date;

19. Quantity of securities traded/transacted;

20. Trade price / premium on the transaction;

21. Trade value;

22. Whether the option is an over-the-counter option;

23. Any order identification number;

24. Any related purchase or sale of the underlying security; and

25. Identification of the marketplace of execution.

**Request for Production 3:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades and/or transactions, and/or positions in Tesla Bonds during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;

2. Identity of any introducing broker to the transaction;

3.     Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4.     Account Numbers and/or customer numbers;

5.     Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6.     Trade date;

7.     Trade / transaction time (in at least millisecond resolution);

8.     Trade execution date;

9.     Trade execution time;

10.     Trade report date;

11.     Trade report time;

12.     The quantity of units (the uncapped par value volume reported on the trade not subject to any dissemination caps);

13.     The identification of quantity of units (*e.g.*, hundreds, thousands, etc.);

14.     Price (including price per unit);

15.     Reported price;

16.     Trade settlement date;

17.     Type of transaction (*e.g.*, buy, sell, short, cross, etc.);

18.     Reference number;

19.     Trade status;

20.     Security identification;

21.     CUSIP number;

22.     Ticker symbol;

23.     TRACE symbol;

24.   Security type;

25.   Bloomberg Identifier;

26.   Issue symbol;

27.   Issuer name;

28.   Coupon rate;

29.   Coupon type;

30.   Maturity date;

31.   Buyer commission;

32.   Buyer capacity;

33.   Seller commission;

34.   Seller capacity; and

35.   Mark up.

**Request for Production 4:**

For any account with a trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence at the Account level any positions held in Tesla Common Stock, Tesla Bonds, or Tesla Options in any Account as of the end of: (i) August 6, 2018; and (ii) August 17, 2018.

**Request for Production 5:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased short positions in Tesla Common Stock that were held in any Account as of the end of August 6, 2018, including all of the following information:

1.   Account positions;

2.   Account and/or customer numbers;

3.   Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4.   Security identification;

5.   CUSIP number;

6.   Trade date;

7.   Trade / transaction time (in at least millisecond resolution);

8.   Settlement date;

9.   Whether the trade/transaction was a purchase or sale;

10.   Whether the sale was to open a short position;

11.   Whether the purchase or sale is pursuant to an option exercise or assignment;

12.   Any information concerning the underlying option that is related to any option exercise or assignment;

13.   Quantity of securities traded/transacted;

14.   Price per share that the trade was executed; and

15.   Trade value.

**Request for Production 6:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased positions in Tesla Options that were held in any Account as of the end of August 6, 2018, including all of the following information:

1.   Account positions;

2.   Account and/or customer numbers;

3.   Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4.   Security identification;

5.      CUSIP number;

6.      Ticker symbol;

7.      Underlying security;

8.      Type of option;

9.      Style of option;

10.     Whether the trade is a put or call;

11.     Expiration date and/or series/contract date;

12.     Strike price and/or exercise price;

13.     Whether the trade is a purchase or sale;

14.     The type of option transaction (*i.e.* Opening Purchases Transaction; Opening Sale (Writing) Transaction);

15.     Trade date;

16.     Trade / transaction time (in at least millisecond resolution);

17.     Settlement date;

18.     Quantity of securities traded/transacted;

19.     Trade price / premium on the transaction;

20.     Trade value;

21.     Whether the option is an over-the-counter option; and

22.     Any order identification number.

**Request for Production 7:**

Documents and Electronic Data to interpret any codes, abbreviations, or any other system of symbols used to represent other information contained in the information produced in response to any Demand for Production. By way of example and not by limitation, Documents and Electronic Data responsive to this demand may include legends, code lists, ciphers, or keys which can be used to interpret and/or decipher the names or codes used for any brokers, dealers, contra-parties, internal nomenclature, individuals, or securities.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SCHEDULE F**

**DOCUMENTS TO BE PRODUCED BY FIDELITY CLEARNING CANADA ULC**

It is respectfully requested that Fidelity Clearing Canada ULC be compelled to produce the following documents that are in its possession, custody, or control, and which are not privileged under Canadian or U.S. law according to the following instructions and definitions:

**I.   INSTRUCTIONS FOR RESPONDING TO THE LETTERS ROGATORY**

1.      You have been asked by Lead Plaintiff in the matter *In re Tesla, Inc. Securities Litigation*, Case No. 3:18-cv-04865-EMC, pending in the United States District Court for the Northern District of California.

2.      The Letters Rogatory demands the production of documents and/or other materials. Unless specified otherwise, specific terms used in the Demands listed below are defined in the Definitions section.

3.      You are required, in responding to these Letters Rogatory, to obtain and furnish all documents, electronic data, and information available to you and any of your representatives, employees, agents, brokers, servants, and/or attorneys, and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, brokers, servants, and/or attorneys. Importantly, if at any point you determine that your response to the letters rogatory is not correct or complete, you are required to provide a supplemental response.

4.      The documents produced in response to the letters rogatory shall include all attachments and enclosures.

5.      Each demand should be responded to separately. However, a document that is the response to more than one request may, if the relevant portion is marked or indexed, be produced, and referred to in a later response.

6.      To the extent to which any demand is objected, please set forth all reasons for your objection and furnish documents responsive to the remainder of the demand.

7.     All documents and/or materials called for by the letters rogatory, for which you claim a privilege or statutory authority as a ground for non-production, shall be listed chronologically in a privilege log as follows:

        a)   The place, date, and manner of recording or otherwise preparing the document;

        b)   The name and title of the sender;

        c)   The identity of each person or persons (other than clerical assistants) participating in the preparation of the document;

        d)   The identity of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, sketch, reading or substantial summarization, the dates of said communication, and the employer and title of said person at the time of said communication;

        e)   Type of document;

        f)   Subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

        g)   Factual and legal basis for claim, privilege, or specific statutory or regulatory authority that provides the claimed ground for non-production.

8.     Each demand to produce a document or documents shall be deemed to call to produce the original document or documents to the extent that they are in, or subject to, directly or indirectly, the control of the party to whom these discovery requests are addressed. If you prefer, you may provide legible copies of documents in lieu of originals so long as those copies reflect all markings, notations, and highlighting that is present on the originals. In addition, each demand should be considered as including a demand for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments

having been added to one copy of a document but not on the original or other copies thereof).

9.      All Documents should be Bates labeled and marked with appropriate confidentiality indications and should be produced in accordance with any ESI protocol agreed to by the parties and/or entered by the Court.

10.      Documents to be produced shall be either (l) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the requests for production.

11.      To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them. If any documents herein requested have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date, and subject matter. With respect to any document requested which was once in your possession, custody, or control, but no longer is, please indicate the date the document ceased to be in your possession, custody, or control, the manner in which it ceased, and the name and address of its present custodian.

12.      When responding to a demand for documents dated within a specific period, your response shall include all documents, electronic data and information which relate, in whole or in part, to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

## II. DEFINITIONS

1.      "And" and "or" shall be interpreted to mean "and/or," so that said terms are given the most inclusive construction.

2.      As used herein, "all" refers to any and all, and the term "any" likewise refers to any and all.

3.      The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

4.      "Account" shall mean a record of debit and credit entries to cover transactions involving a particular item or a particular person that arises from either: (a) an arrangement between Broker and the Customer in which pursuant to this arrangement an investor deposits money with Broker in order for Broker to make trades on securities on behalf of the Customer (a "Customer Account"); or (b) that Broker uses to record transactions that take place on Broker's behalf, such as any proprietary accounts that Broker uses for trading securities, options, or commodities for Broker's own account and risk, *i.e.* all other accounts that are not "customer accounts" (a "Non-Customer Account").

5.      "Account Number" shall mean the unique identifier assigned to each Account by the Broker.

6.      "Broker" shall mean Fidelity Clearing Canada ULC and any of its subsidiaries, predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

7.      "Customer" shall mean any Person that purchases any items from or through the Broker or who purchases any of the Broker's services.

8.      "Document" or "documents" includes, by way of illustration only and not by way of limitation, any written, typed, printed, recorded, electronically stored data or information, or graphic matter, however preserved, produced, or reproduced, of any type or description, regardless of medium, origin or location, including without limitation any binder, cover note, certificate, correspondence, electronic communications and electronically stored information (including but not limited to, audio recordings, emails, attachments, databases, word documents, spreadsheets, graphic files, photographs, sound recordings, images, and other data or data compilations), record, chart, analysis, report, test, study, memorandum, note, list, diary, log, calendar, questionnaire, bill, purchase order, permit, ledger entry, check, order, receipt, statement, financial data, acknowledgement, computer-generated matter, and all other data compilations from which information can be obtained or translated, drafts and revisions of drafts of any documents

and original preliminary notes, no matter how produced or maintained, in your actual or constructive possession, custody or control, and whether prepared, published or released by you or by any other person. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment, or any notation of any character, and not a part of the original text is to be considered a separate document.

9.      "Electronic Data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of electronic data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts or transmittals, logs of electronic mail history and usage, header information, and deleted files), Internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF and TIF files, batch files, native files and all ASCII files, and any and all miscellaneous files or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment.  Electronic data includes, but is not limited to, any and all items stored on any electronic media, computers, or networks and backup files containing electronically stored data.  The term "electronic data" also includes the file, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each such original or copy.

10.     "Open interest" shall mean an option contract that was traded but has not yet been liquidated by an offsetting option transaction, including by any assignment or expiration of the option contract.

11.     "Opening Purchase Transaction" shall mean as to Tesla Options a confirmed trade in which the purchaser's intention is to create or increase a long position in a series of cleared contracts.

12.     "Opening Sale (Writing Transaction) Transaction" shall mean as to Tesla Options a confirmed trade in which the seller's intention is to create or increase a short position in a series of cleared contracts.

13.     "Person" shall mean any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, commission, representative, employee, agent, broker, servant, attorney, or other entity.

14.     "Tesla" shall mean Defendant Tesla, Inc. and any of its predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

15.     "Tesla Bonds" shall mean all bonds issued by Tesla including, but not limited to, the following bonds:

a.     Tesla Convertible Bond 0.250% Due 3/1/2019 (CUSIP 88160RAB7);

b.     Tesla Convertible Bond 1.25% Due 3/1/2021 (CUSIP 88160RAC5);

c.     Tesla Convertible Bond 2.375% Due 3/15/2022 (CUSIP 88160RAD3); and

d.     Tesla Bond 5.3% Due 8/15/2025 (CUSIP U8810LAA1); and

e.     Tesla Bond 5.3% Due 8/15/2025 (CUSIP 88160RAE1).

16.     "Tesla Common Stock" shall mean the common stock of Tesla (CUSIP number 88160R101).

17.     "Tesla Options" shall mean all Option Contracts on any Tesla security, including but not limited to Tesla Common Stock.

18.     As used herein, the terms "relating to" and "concerning" means in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing,

commenting on, describing, constituting, supporting, contradicting, or having any logical or factual connection with the matter identified, in whole or in part.

### III. REQUESTS FOR PRODUCTION

**Request for Production 1:**

For any Account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Common Stock during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;
2. Identity of any introducing brokers to the transaction;
3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;
4. Account Numbers and/or customer numbers;
5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);
6. Security identification;
7. CUSIP number;
8. Trade date;
9. Trade / transaction time (in at least millisecond resolution);
10. Settlement date;
11. Whether the trade/transaction is a purchase or sale;
12. Whether the purchase was to cover a short position;
13. Whether the sale was to open a short position;

14.   Whether the purchase or sale was pursuant to an option exercise or assignment;

15.   Any information concerning the underlying option that is related to any option exercise or assignment;

16.   Quantity of securities traded/transacted;

17.   Price per share that the trade was executed; and

18.   Trade value.

**Request for Production 2:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Options during the period of August 6, 2018 through November 15, 2018, inclusive:

1.   Account positions;

2.   Identity of any introducing brokers to the transaction;

3.   Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4.   Account Numbers and/or customer numbers;

5.   Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6.   Security identification;

7.   Ticker symbol;

8.   Underlying security;

9.   Type of option;

10. Style of option;

11. Whether the trade is a put or call;

12. Expiration date and/or series/contract date;

13. Strike price and/or exercise price;

14. Whether the trade is a purchase or sale;

15. The type of option transaction (*i.e.* Opening Purchases Transaction; closing purchase transaction; Opening Sale (Writing) Transaction; closing (sale) transaction; exercise; expiration; or assignment);

16. Trade date;

17. Trade / transaction time (in at least millisecond resolution);

18. Settlement date;

19. Quantity of securities traded/transacted;

20. Trade price / premium on the transaction;

21. Trade value;

22. Whether the option is an over-the-counter option;

23. Any order identification number;

24. Any related purchase or sale of the underlying security; and

25. Identification of the marketplace of execution.

**Request for Production 3:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades and/or transactions, and/or positions in Tesla Bonds during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;

2. Identity of any introducing broker to the transaction;

3.   Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4.   Account Numbers and/or customer numbers;

5.   Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6.   Trade date;

7.   Trade / transaction time (in at least millisecond resolution);

8.   Trade execution date;

9.   Trade execution time;

10.  Trade report date;

11.  Trade report time;

12.  The quantity of units (the uncapped par value volume reported on the trade not subject to any dissemination caps);

13.  The identification of quantity of units (*e.g.*, hundreds, thousands, etc.);

14.  Price (including price per unit);

15.  Reported price;

16.  Trade settlement date;

17.  Type of transaction (*e.g.*, buy, sell, short, cross, etc.);

18.  Reference number;

19.  Trade status;

20.  Security identification;

21.  CUSIP number;

22.  Ticker symbol;

23.  TRACE symbol;

SCHEDULE F
CASE No. 3:18-CV-04865-EMC

24.   Security type;

25.   Bloomberg Identifier;

26.   Issue symbol;

27.   Issuer name;

28.   Coupon rate;

29.   Coupon type;

30.   Maturity date;

31.   Buyer commission;

32.   Buyer capacity;

33.   Seller commission;

34.   Seller capacity; and

35.   Mark up.

**Request for Production 4:**

For any account with a trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence at the Account level any positions held in Tesla Common Stock, Tesla Bonds, or Tesla Options in any Account as of the end of: (i) August 6, 2018; and (ii) August 17, 2018.

**Request for Production 5:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased short positions in Tesla Common Stock that were held in any Account as of the end of August 6, 2018, including all of the following information:

1.   Account positions;

2.   Account and/or customer numbers;

11

3.   Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4.   Security identification;

5.   CUSIP number;

6.   Trade date;

7.   Trade / transaction time (in at least millisecond resolution);

8.   Settlement date;

9.   Whether the trade/transaction was a purchase or sale;

10.   Whether the sale was to open a short position;

11.   Whether the purchase or sale is pursuant to an option exercise or assignment;

12.   Any information concerning the underlying option that is related to any option exercise or assignment;

13.   Quantity of securities traded/transacted;

14.   Price per share that the trade was executed; and

15.   Trade value.

**Request for Production 6:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased positions in Tesla Options that were held in any Account as of the end of August 6, 2018, including all of the following information:

1.   Account positions;

2.   Account and/or customer numbers;

3.   Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4.   Security identification;

5.  CUSIP number;

6.  Ticker symbol;

7.  Underlying security;

8.  Type of option;

9.  Style of option;

10. Whether the trade is a put or call;

11. Expiration date and/or series/contract date;

12. Strike price and/or exercise price;

13. Whether the trade is a purchase or sale;

14. The type of option transaction (*i.e.* Opening Purchases Transaction;
    Opening Sale (Writing) Transaction);

15. Trade date;

16. Trade / transaction time (in at least millisecond resolution);

17. Settlement date;

18. Quantity of securities traded/transacted;

19. Trade price / premium on the transaction;

20. Trade value;

21. Whether the option is an over-the-counter option; and

22. Any order identification number.

**Request for Production 7:**

Documents and Electronic Data to interpret any codes, abbreviations, or any other system of symbols used to represent other information contained in the information produced in response to any Demand for Production. By way of example and not by limitation, Documents and Electronic Data responsive to this demand may include legends, code lists, ciphers, or keys which can be used to interpret and/or decipher the names or codes used for any brokers, dealers, contra-parties, internal nomenclature, individuals, or securities.

SCHEDULE F
CASE NO. 3:18-CV-04865-EMC

**SCHEDULE G**

**DOCUMENTS TO BE PRODUCED BY NATIONAL BANK FINANCIAL INC.**

It is respectfully requested that National Bank Financial Inc. be compelled to produce the following documents that are in its possession, custody, or control, and which are not privileged under Canadian or U.S. law according to the following instructions and definitions:

**I.   INSTRUCTIONS FOR RESPONDING TO THE LETTERS ROGATORY**

1.      You have been asked by Lead Plaintiff in the matter *In re Tesla, Inc. Securities Litigation*, Case No. 3:18-cv-04865-EMC, pending in the United States District Court for the Northern District of California.

2.      The Letters Rogatory demands the production of documents and/or other materials. Unless specified otherwise, specific terms used in the Demands listed below are defined in the Definitions section.

3.      You are required, in responding to these Letters Rogatory, to obtain and furnish all documents, electronic data, and information available to you and any of your representatives, employees, agents, brokers, servants, and/or attorneys, and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, brokers, servants, and/or attorneys. Importantly, if at any point you determine that your response to the letters rogatory is not correct or complete, you are required to provide a supplemental response.

4.      The documents produced in response to the letters rogatory shall include all attachments and enclosures.

5.      Each demand should be responded to separately. However, a document that is the response to more than one request may, if the relevant portion is marked or indexed, be produced, and referred to in a later response.

6.      To the extent to which any demand is objected, please set forth all reasons for your objection and furnish documents responsive to the remainder of the demand.

7.     All documents and/or materials called for by the letters rogatory, for which you claim a privilege or statutory authority as a ground for non-production, shall be listed chronologically in a privilege log as follows:

      a)    The place, date, and manner of recording or otherwise preparing the document;

      b)    The name and title of the sender;

      c)    The identity of each person or persons (other than clerical assistants) participating in the preparation of the document;

      d)    The identity of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, sketch, reading or substantial summarization, the dates of said communication, and the employer and title of said person at the time of said communication;

      e)    Type of document;

      f)    Subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

      g)    Factual and legal basis for claim, privilege, or specific statutory or regulatory authority that provides the claimed ground for non-production.

8.     Each demand to produce a document or documents shall be deemed to call to produce the original document or documents to the extent that they are in, or subject to, directly or indirectly, the control of the party to whom these discovery requests are addressed. If you prefer, you may provide legible copies of documents in lieu of originals so long as those copies reflect all markings, notations, and highlighting that is present on the originals. In addition, each demand should be considered as including a demand for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments

having been added to one copy of a document but not on the original or other copies thereof).

9.     All Documents should be Bates labeled and marked with appropriate confidentiality indications and should be produced in accordance with any ESI protocol agreed to by the parties and/or entered by the Court.

10.     Documents to be produced shall be either (l) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the requests for production.

11.     To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them. If any documents herein requested have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date, and subject matter. With respect to any document requested which was once in your possession, custody, or control, but no longer is, please indicate the date the document ceased to be in your possession, custody, or control, the manner in which it ceased, and the name and address of its present custodian.

12.     When responding to a demand for documents dated within a specific period, your response shall include all documents, electronic data and information which relate, in whole or in part, to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

## II. DEFINITIONS

1.     "And" and "or" shall be interpreted to mean "and/or," so that said terms are given the most inclusive construction.

2.     As used herein, "all" refers to any and all, and the term "any" likewise refers to any and all.

3.     The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

4.      "Account" shall mean a record of debit and credit entries to cover transactions involving a particular item or a particular person that arises from either: (a) an arrangement between Broker and the Customer in which pursuant to this arrangement an investor deposits money with Broker in order for Broker to make trades on securities on behalf of the Customer (a "Customer Account"); or (b) that Broker uses to record transactions that take place on Broker's behalf, such as any proprietary accounts that Broker uses for trading securities, options, or commodities for Broker's own account and risk, *i.e.* all other accounts that are not "customer accounts" (a "Non-Customer Account").

5.      "Account Number" shall mean the unique identifier assigned to each Account by the Broker.

6.      "Broker" shall mean National Bank Financial Inc. and any of its subsidiaries, predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

7.      "Customer" shall mean any Person that purchases any items from or through the Broker or who purchases any of the Broker's services.

8.      "Document" or "documents" includes, by way of illustration only and not by way of limitation, any written, typed, printed, recorded, electronically stored data or information, or graphic matter, however preserved, produced, or reproduced, of any type or description, regardless of medium, origin or location, including without limitation any binder, cover note, certificate, correspondence, electronic communications and electronically stored information (including but not limited to, audio recordings, emails, attachments, databases, word documents, spreadsheets, graphic files, photographs, sound recordings, images, and other data or data compilations), record, chart, analysis, report, test, study, memorandum, note, list, diary, log, calendar, questionnaire, bill, purchase order, permit, ledger entry, check, order, receipt, statement, financial data, acknowledgement, computer-generated matter, and all other data compilations from which information can be obtained or translated, drafts and revisions of drafts of any documents

and original preliminary notes, no matter how produced or maintained, in your actual or constructive possession, custody or control, and whether prepared, published or released by you or by any other person. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment, or any notation of any character, and not a part of the original text is to be considered a separate document.

9.     "Electronic Data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of electronic data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts or transmittals, logs of electronic mail history and usage, header information, and deleted files), Internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF and TIF files, batch files, native files and all ASCII files, and any and all miscellaneous files or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment.  Electronic data includes, but is not limited to, any and all items stored on any electronic media, computers, or networks and backup files containing electronically stored data.  The term "electronic data" also includes the file, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each such original or copy.

10.    "Open interest" shall mean an option contract that was traded but has not yet been liquidated by an offsetting option transaction, including by any assignment or expiration of the option contract.

11.    "Opening Purchase Transaction" shall mean as to Tesla Options a confirmed trade in which the purchaser's intention is to create or increase a long position in a series of cleared contracts.

12.    "Opening Sale (Writing Transaction) Transaction" shall mean as to Tesla Options a confirmed trade in which the seller's intention is to create or increase a short position in a series of cleared contracts.

13.    "Person" shall mean any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, commission, representative, employee, agent, broker, servant, attorney, or other entity.

14.    "Tesla" shall mean Defendant Tesla, Inc. and any of its predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

15.    "Tesla Bonds" shall mean all bonds issued by Tesla including, but not limited to, the following bonds:

a.    Tesla Convertible Bond 0.250% Due 3/1/2019 (CUSIP 88160RAB7);

b.    Tesla Convertible Bond 1.25% Due 3/1/2021 (CUSIP 88160RAC5);

c.    Tesla Convertible Bond 2.375% Due 3/15/2022 (CUSIP 88160RAD3); and

d.    Tesla Bond 5.3% Due 8/15/2025 (CUSIP U8810LAA1); and

e.    Tesla Bond 5.3% Due 8/15/2025 (CUSIP 88160RAE1).

16.    "Tesla Common Stock" shall mean the common stock of Tesla (CUSIP number 88160R101).

17.    "Tesla Options" shall mean all Option Contracts on any Tesla security, including but not limited to Tesla Common Stock.

18.    As used herein, the terms "relating to" and "concerning" means in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing,

commenting on, describing, constituting, supporting, contradicting, or having any logical or factual connection with the matter identified, in whole or in part.

### III. REQUESTS FOR PRODUCTION

**Request for Production 1:**

For any Account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Common Stock during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;
2. Identity of any introducing brokers to the transaction;
3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;
4. Account Numbers and/or customer numbers;
5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);
6. Security identification;
7. CUSIP number;
8. Trade date;
9. Trade / transaction time (in at least millisecond resolution);
10. Settlement date;
11. Whether the trade/transaction is a purchase or sale;
12. Whether the purchase was to cover a short position;
13. Whether the sale was to open a short position;

14. Whether the purchase or sale was pursuant to an option exercise or assignment;

15. Any information concerning the underlying option that is related to any option exercise or assignment;

16. Quantity of securities traded/transacted;

17. Price per share that the trade was executed; and

18. Trade value.

**Request for Production 2:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Options during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;

2. Identity of any introducing brokers to the transaction;

3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4. Account Numbers and/or customer numbers;

5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6. Security identification;

7. Ticker symbol;

8. Underlying security;

9. Type of option;

10.   Style of option;

11.   Whether the trade is a put or call;

12.   Expiration date and/or series/contract date;

13.   Strike price and/or exercise price;

14.   Whether the trade is a purchase or sale;

15.   The type of option transaction (*i.e.* Opening Purchases Transaction; closing purchase transaction; Opening Sale (Writing) Transaction; closing (sale) transaction; exercise; expiration; or assignment);

16.   Trade date;

17.   Trade / transaction time (in at least millisecond resolution);

18.   Settlement date;

19.   Quantity of securities traded/transacted;

20.   Trade price / premium on the transaction;

21.   Trade value;

22.   Whether the option is an over-the-counter option;

23.   Any order identification number;

24.   Any related purchase or sale of the underlying security; and

25.   Identification of the marketplace of execution.


**Request for Production 3:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades and/or transactions, and/or positions in Tesla Bonds during the period of August 6, 2018 through November 15, 2018, inclusive:

1.   Account positions;

2.   Identity of any introducing broker to the transaction;

3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4. Account Numbers and/or customer numbers;

5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6. Trade date;

7. Trade / transaction time (in at least millisecond resolution);

8. Trade execution date;

9. Trade execution time;

10. Trade report date;

11. Trade report time;

12. The quantity of units (the uncapped par value volume reported on the trade not subject to any dissemination caps);

13. The identification of quantity of units (*e.g.*, hundreds, thousands, etc.);

14. Price (including price per unit);

15. Reported price;

16. Trade settlement date;

17. Type of transaction (*e.g.*, buy, sell, short, cross, etc.);

18. Reference number;

19. Trade status;

20. Security identification;

21. CUSIP number;

22. Ticker symbol;

23. TRACE symbol;

| | |
|---|---|
| 1 | 24. Security type; |
| 2 | 25. Bloomberg Identifier; |
| 3 | 26. Issue symbol; |
| 4 | 27. Issuer name; |
| 5 | 28. Coupon rate; |
| 6 | 29. Coupon type; |
| 7 | 30. Maturity date; |
| 8 | 31. Buyer commission; |
| 9 | 32. Buyer capacity; |
| 10 | 33. Seller commission; |
| 11 | 34. Seller capacity; and |
| 12 | 35. Mark up. |

**Request for Production 4:**

For any account with a trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence at the Account level any positions held in Tesla Common Stock, Tesla Bonds, or Tesla Options in any Account as of the end of: (i) August 6, 2018; and (ii) August 17, 2018.

**Request for Production 5:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased short positions in Tesla Common Stock that were held in any Account as of the end of August 6, 2018, including all of the following information:

1. Account positions;
2. Account and/or customer numbers;

3.      Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4.      Security identification;

5.      CUSIP number;

6.      Trade date;

7.      Trade / transaction time (in at least millisecond resolution);

8.      Settlement date;

9.      Whether the trade/transaction was a purchase or sale;

10.     Whether the sale was to open a short position;

11.     Whether the purchase or sale is pursuant to an option exercise or assignment;

12.     Any information concerning the underlying option that is related to any option exercise or assignment;

13.     Quantity of securities traded/transacted;

14.     Price per share that the trade was executed; and

15.     Trade value.


**Request for Production 6:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased positions in Tesla Options that were held in any Account as of the end of August 6, 2018, including all of the following information:

1.      Account positions;

2.      Account and/or customer numbers;

3.      Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4.      Security identification;

5.    CUSIP number;

6.    Ticker symbol;

7.    Underlying security;

8.    Type of option;

9.    Style of option;

10.    Whether the trade is a put or call;

11.    Expiration date and/or series/contract date;

12.    Strike price and/or exercise price;

13.    Whether the trade is a purchase or sale;

14.    The type of option transaction (*i.e.* Opening Purchases Transaction; Opening Sale (Writing) Transaction);

15.    Trade date;

16.    Trade / transaction time (in at least millisecond resolution);

17.    Settlement date;

18.    Quantity of securities traded/transacted;

19.    Trade price / premium on the transaction;

20.    Trade value;

21.    Whether the option is an over-the-counter option; and

22.    Any order identification number.

**Request for Production 7:**

Documents and Electronic Data to interpret any codes, abbreviations, or any other system of symbols used to represent other information contained in the information produced in response to any Demand for Production. By way of example and not by limitation, Documents and Electronic Data responsive to this demand may include legends, code lists, ciphers, or keys which can be used to interpret and/or decipher the names or codes used for any brokers, dealers, contra-parties, internal nomenclature, individuals, or securities.

SCHEDULE G
CASE NO. 3:18-CV-04865-EMC

**SCHEDULE H**

**DOCUMENTS TO BE PRODUCED BY QUESTRADE, INC.**

It is respectfully requested that Questrade, Inc. be compelled to produce the following documents that are in its possession, custody, or control, and which are not privileged under Canadian or U.S. law according to the following instructions and definitions:

**I.   INSTRUCTIONS FOR RESPONDING TO THE LETTERS ROGATORY**

1.      You have been asked by Lead Plaintiff in the matter *In re Tesla, Inc. Securities Litigation*, Case No. 3:18-cv-04865-EMC, pending in the United States District Court for the Northern District of California.

2.      The Letters Rogatory demands the production of documents and/or other materials. Unless specified otherwise, specific terms used in the Demands listed below are defined in the Definitions section.

3.      You are required, in responding to these Letters Rogatory, to obtain and furnish all documents, electronic data, and information available to you and any of your representatives, employees, agents, brokers, servants, and/or attorneys, and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, brokers, servants, and/or attorneys. Importantly, if at any point you determine that your response to the letters rogatory is not correct or complete, you are required to provide a supplemental response.

4.      The documents produced in response to the letters rogatory shall include all attachments and enclosures.

5.      Each demand should be responded to separately. However, a document that is the response to more than one request may, if the relevant portion is marked or indexed, be produced, and referred to in a later response.

6.      To the extent to which any demand is objected, please set forth all reasons for your objection and furnish documents responsive to the remainder of the demand.

7.     All documents and/or materials called for by the letters rogatory, for which you claim a privilege or statutory authority as a ground for non-production, shall be listed chronologically in a privilege log as follows:

      a)    The place, date, and manner of recording or otherwise preparing the document;

      b)    The name and title of the sender;

      c)    The identity of each person or persons (other than clerical assistants) participating in the preparation of the document;

      d)    The identity of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, sketch, reading or substantial summarization, the dates of said communication, and the employer and title of said person at the time of said communication;

      e)    Type of document;

      f)    Subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

      g)    Factual and legal basis for claim, privilege, or specific statutory or regulatory authority that provides the claimed ground for non-production.

8.     Each demand to produce a document or documents shall be deemed to call to produce the original document or documents to the extent that they are in, or subject to, directly or indirectly, the control of the party to whom these discovery requests are addressed. If you prefer, you may provide legible copies of documents in lieu of originals so long as those copies reflect all markings, notations, and highlighting that is present on the originals. In addition, each demand should be considered as including a demand for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments

having been added to one copy of a document but not on the original or other copies thereof).

9.      All Documents should be Bates labeled and marked with appropriate confidentiality indications and should be produced in accordance with any ESI protocol agreed to by the parties and/or entered by the Court.

10.      Documents to be produced shall be either (l) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the requests for production.

11.      To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them. If any documents herein requested have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date, and subject matter. With respect to any document requested which was once in your possession, custody, or control, but no longer is, please indicate the date the document ceased to be in your possession, custody, or control, the manner in which it ceased, and the name and address of its present custodian.

12.      When responding to a demand for documents dated within a specific period, your response shall include all documents, electronic data and information which relate, in whole or in part, to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

**II. DEFINITIONS**

1.      "And" and "or" shall be interpreted to mean "and/or," so that said terms are given the most inclusive construction.

2.      As used herein, "all" refers to any and all, and the term "any" likewise refers to any and all.

3.      The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

4.      "Account" shall mean a record of debit and credit entries to cover transactions involving a particular item or a particular person that arises from either: (a) an arrangement between Broker and the Customer in which pursuant to this arrangement an investor deposits money with Broker in order for Broker to make trades on securities on behalf of the Customer (a "Customer Account"); or (b) that Broker uses to record transactions that take place on Broker's behalf, such as any proprietary accounts that Broker uses for trading securities, options, or commodities for Broker's own account and risk, *i.e.* all other accounts that are not "customer accounts" (a "Non-Customer Account").

5.      "Account Number" shall mean the unique identifier assigned to each Account by the Broker.

6.      "Broker" shall mean Questrade, Inc. and any of its subsidiaries, predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

7.      "Customer" shall mean any Person that purchases any items from or through the Broker or who purchases any of the Broker's services.

8.       "Document" or "documents" includes, by way of illustration only and not by way of limitation, any written, typed, printed, recorded, electronically stored data or information, or graphic matter, however preserved, produced, or reproduced, of any type or description, regardless of medium, origin or location, including without limitation any binder, cover note, certificate, correspondence, electronic communications and electronically stored information (including but not limited to, audio recordings, emails, attachments, databases, word documents, spreadsheets, graphic files, photographs, sound recordings, images, and other data or data compilations), record, chart, analysis, report, test, study, memorandum, note, list, diary, log, calendar, questionnaire, bill, purchase order, permit, ledger entry, check, order, receipt, statement, financial data, acknowledgement, computer-generated matter, and all other data compilations from which information can be obtained or translated, drafts and revisions of drafts of any documents

and original preliminary notes, no matter how produced or maintained, in your actual or constructive possession, custody or control, and whether prepared, published or released by you or by any other person. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment, or any notation of any character, and not a part of the original text is to be considered a separate document.

9.      "Electronic Data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of electronic data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts or transmittals, logs of electronic mail history and usage, header information, and deleted files), Internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF and TIF files, batch files, native files and all ASCII files, and any and all miscellaneous files or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment.  Electronic data includes, but is not limited to, any and all items stored on any electronic media, computers, or networks and backup files containing electronically stored data.  The term "electronic data" also includes the file, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each such original or copy.

10.    "Open interest" shall mean an option contract that was traded but has not yet been liquidated by an offsetting option transaction, including by any assignment or expiration of the option contract.

11.    "Opening Purchase Transaction" shall mean as to Tesla Options a confirmed trade in which the purchaser's intention is to create or increase a long position in a series of cleared contracts.

12.    "Opening Sale (Writing Transaction) Transaction" shall mean as to Tesla Options a confirmed trade in which the seller's intention is to create or increase a short position in a series of cleared contracts.

13.    "Person" shall mean any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, commission, representative, employee, agent, broker, servant, attorney, or other entity.

14.    "Tesla" shall mean Defendant Tesla, Inc. and any of its predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

15.    "Tesla Bonds" shall mean all bonds issued by Tesla including, but not limited to, the following bonds:

a.    Tesla Convertible Bond 0.250% Due 3/1/2019 (CUSIP 88160RAB7);

b.    Tesla Convertible Bond 1.25% Due 3/1/2021 (CUSIP 88160RAC5);

c.    Tesla Convertible Bond 2.375% Due 3/15/2022 (CUSIP 88160RAD3); and

d.    Tesla Bond 5.3% Due 8/15/2025 (CUSIP U8810LAA1); and

e.    Tesla Bond 5.3% Due 8/15/2025 (CUSIP 88160RAE1).

16.    "Tesla Common Stock" shall mean the common stock of Tesla (CUSIP number 88160R101).

17.    "Tesla Options" shall mean all Option Contracts on any Tesla security, including but not limited to Tesla Common Stock.

18.    As used herein, the terms "relating to" and "concerning" means in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing,

commenting on, describing, constituting, supporting, contradicting, or having any logical or factual connection with the matter identified, in whole or in part.

### III. REQUESTS FOR PRODUCTION

**Request for Production 1:**

For any Account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Common Stock during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;
2. Identity of any introducing brokers to the transaction;
3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;
4. Account Numbers and/or customer numbers;
5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);
6. Security identification;
7. CUSIP number;
8. Trade date;
9. Trade / transaction time (in at least millisecond resolution);
10. Settlement date;
11. Whether the trade/transaction is a purchase or sale;
12. Whether the purchase was to cover a short position;
13. Whether the sale was to open a short position;

14. Whether the purchase or sale was pursuant to an option exercise or assignment;

15. Any information concerning the underlying option that is related to any option exercise or assignment;

16. Quantity of securities traded/transacted;

17. Price per share that the trade was executed; and

18. Trade value.

**Request for Production 2:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Options during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;

2. Identity of any introducing brokers to the transaction;

3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4. Account Numbers and/or customer numbers;

5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6. Security identification;

7. Ticker symbol;

8. Underlying security;

9. Type of option;

10. Style of option;

11. Whether the trade is a put or call;

12. Expiration date and/or series/contract date;

13. Strike price and/or exercise price;

14. Whether the trade is a purchase or sale;

15. The type of option transaction (*i.e.* Opening Purchases Transaction; closing purchase transaction; Opening Sale (Writing) Transaction; closing (sale) transaction; exercise; expiration; or assignment);

16. Trade date;

17. Trade / transaction time (in at least millisecond resolution);

18. Settlement date;

19. Quantity of securities traded/transacted;

20. Trade price / premium on the transaction;

21. Trade value;

22. Whether the option is an over-the-counter option;

23. Any order identification number;

24. Any related purchase or sale of the underlying security; and

25. Identification of the marketplace of execution.

**Request for Production 3:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades and/or transactions, and/or positions in Tesla Bonds during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;

2. Identity of any introducing broker to the transaction;

3.    Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4.    Account Numbers and/or customer numbers;

5.    Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6.    Trade date;

7.    Trade / transaction time (in at least millisecond resolution);

8.    Trade execution date;

9.    Trade execution time;

10.    Trade report date;

11.    Trade report time;

12.    The quantity of units (the uncapped par value volume reported on the trade not subject to any dissemination caps);

13.    The identification of quantity of units (*e.g.*, hundreds, thousands, etc.);

14.    Price (including price per unit);

15.    Reported price;

16.    Trade settlement date;

17.    Type of transaction (*e.g.*, buy, sell, short, cross, etc.);

18.    Reference number;

19.    Trade status;

20.    Security identification;

21.    CUSIP number;

22.    Ticker symbol;

23.    TRACE symbol;

24.   Security type;

25.   Bloomberg Identifier;

26.   Issue symbol;

27.   Issuer name;

28.   Coupon rate;

29.   Coupon type;

30.   Maturity date;

31.   Buyer commission;

32.   Buyer capacity;

33.   Seller commission;

34.   Seller capacity; and

35.   Mark up.

**Request for Production 4:**

For any account with a trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence at the Account level any positions held in Tesla Common Stock, Tesla Bonds, or Tesla Options in any Account as of the end of: (i) August 6, 2018; and (ii) August 17, 2018.

**Request for Production 5:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased short positions in Tesla Common Stock that were held in any Account as of the end of August 6, 2018, including all of the following information:

1.   Account positions;

2.   Account and/or customer numbers;

11

3.    Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4.    Security identification;

5.    CUSIP number;

6.    Trade date;

7.    Trade / transaction time (in at least millisecond resolution);

8.    Settlement date;

9.    Whether the trade/transaction was a purchase or sale;

10.    Whether the sale was to open a short position;

11.    Whether the purchase or sale is pursuant to an option exercise or assignment;

12.    Any information concerning the underlying option that is related to any option exercise or assignment;

13.    Quantity of securities traded/transacted;

14.    Price per share that the trade was executed; and

15.    Trade value.

**Request for Production 6:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased positions in Tesla Options that were held in any Account as of the end of August 6, 2018, including all of the following information:

1.    Account positions;

2.    Account and/or customer numbers;

3.    Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4.    Security identification;

SCHEDULE H
CASE NO. 3:18-CV-04865-EMC

5.    CUSIP number;

6.    Ticker symbol;

7.    Underlying security;

8.    Type of option;

9.    Style of option;

10.    Whether the trade is a put or call;

11.    Expiration date and/or series/contract date;

12.    Strike price and/or exercise price;

13.    Whether the trade is a purchase or sale;

14.    The type of option transaction (*i.e.* Opening Purchases Transaction; Opening Sale (Writing) Transaction);

15.    Trade date;

16.    Trade / transaction time (in at least millisecond resolution);

17.    Settlement date;

18.    Quantity of securities traded/transacted;

19.    Trade price / premium on the transaction;

20.    Trade value;

21.    Whether the option is an over-the-counter option; and

22.    Any order identification number.

**Request for Production 7:**

Documents and Electronic Data to interpret any codes, abbreviations, or any other system of symbols used to represent other information contained in the information produced in response to any Demand for Production. By way of example and not by limitation, Documents and Electronic Data responsive to this demand may include legends, code lists, ciphers, or keys which can be used to interpret and/or decipher the names or codes used for any brokers, dealers, contra-parties, internal nomenclature, individuals, or securities.

13

**SCHEDULE I**

**DOCUMENTS TO BE PRODUCED BY RBC DOMINION SECURITIES INC.**

It is respectfully requested that RBC Dominion Securities Inc. be compelled to produce the following documents that are in its possession, custody, or control, and which are not privileged under Canadian or U.S. law according to the following instructions and definitions:

**I. INSTRUCTIONS FOR RESPONDING TO THE LETTERS ROGATORY**

1.      You have been asked by Lead Plaintiff in the matter *In re Tesla, Inc. Securities Litigation*, Case No. 3:18-cv-04865-EMC, pending in the United States District Court for the Northern District of California.

2.      The Letters Rogatory demands the production of documents and/or other materials. Unless specified otherwise, specific terms used in the Demands listed below are defined in the Definitions section.

3.      You are required, in responding to these Letters Rogatory, to obtain and furnish all documents, electronic data, and information available to you and any of your representatives, employees, agents, brokers, servants, and/or attorneys, and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, brokers, servants, and/or attorneys. Importantly, if at any point you determine that your response to the letters rogatory is not correct or complete, you are required to provide a supplemental response.

4.      The documents produced in response to the letters rogatory shall include all attachments and enclosures.

5.      Each demand should be responded to separately. However, a document that is the response to more than one request may, if the relevant portion is marked or indexed, be produced, and referred to in a later response.

6.      To the extent to which any demand is objected, please set forth all reasons for your objection and furnish documents responsive to the remainder of the demand.

7.      All documents and/or materials called for by the letters rogatory, for which you claim a privilege or statutory authority as a ground for non-production, shall be listed chronologically in a privilege log as follows:

      a)      The place, date, and manner of recording or otherwise preparing the document;

      b)      The name and title of the sender;

      c)      The identity of each person or persons (other than clerical assistants) participating in the preparation of the document;

      d)      The identity of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, sketch, reading or substantial summarization, the dates of said communication, and the employer and title of said person at the time of said communication;

      e)      Type of document;

      f)      Subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

      g)      Factual and legal basis for claim, privilege, or specific statutory or regulatory authority that provides the claimed ground for non-production.

8.      Each demand to produce a document or documents shall be deemed to call to produce the original document or documents to the extent that they are in, or subject to, directly or indirectly, the control of the party to whom these discovery requests are addressed. If you prefer, you may provide legible copies of documents in lieu of originals so long as those copies reflect all markings, notations, and highlighting that is present on the originals. In addition, each demand should be considered as including a demand for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments

having been added to one copy of a document but not on the original or other copies thereof).

9. All Documents should be Bates labeled and marked with appropriate confidentiality indications and should be produced in accordance with any ESI protocol agreed to by the parties and/or entered by the Court.

10. Documents to be produced shall be either (l) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the requests for production.

11. To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them. If any documents herein requested have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date, and subject matter. With respect to any document requested which was once in your possession, custody, or control, but no longer is, please indicate the date the document ceased to be in your possession, custody, or control, the manner in which it ceased, and the name and address of its present custodian.

12. When responding to a demand for documents dated within a specific period, your response shall include all documents, electronic data and information which relate, in whole or in part, to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

## II. DEFINITIONS

1. "And" and "or" shall be interpreted to mean "and/or," so that said terms are given the most inclusive construction.

2. As used herein, "all" refers to any and all, and the term "any" likewise refers to any and all.

3. The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

4.     "Account" shall mean a record of debit and credit entries to cover transactions involving a particular item or a particular person that arises from either: (a) an arrangement between Broker and the Customer in which pursuant to this arrangement an investor deposits money with Broker in order for Broker to make trades on securities on behalf of the Customer (a "Customer Account"); or (b) that Broker uses to record transactions that take place on Broker's behalf, such as any proprietary accounts that Broker uses for trading securities, options, or commodities for Broker's own account and risk, *i.e.* all other accounts that are not "customer accounts" (a "Non-Customer Account").

5.     "Account Number" shall mean the unique identifier assigned to each Account by the Broker.

6.     "Broker" shall mean RBC Dominion Securities Inc. and any of its subsidiaries, predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

7.     "Customer" shall mean any Person that purchases any items from or through the Broker or who purchases any of the Broker's services.

8.     "Document" or "documents" includes, by way of illustration only and not by way of limitation, any written, typed, printed, recorded, electronically stored data or information, or graphic matter, however preserved, produced, or reproduced, of any type or description, regardless of medium, origin or location, including without limitation any binder, cover note, certificate, correspondence, electronic communications and electronically stored information (including but not limited to, audio recordings, emails, attachments, databases, word documents, spreadsheets, graphic files, photographs, sound recordings, images, and other data or data compilations), record, chart, analysis, report, test, study, memorandum, note, list, diary, log, calendar, questionnaire, bill, purchase order, permit, ledger entry, check, order, receipt, statement, financial data, acknowledgement, computer-generated matter, and all other data compilations from which information can be obtained or translated, drafts and revisions of drafts of any documents

SCHEDULE I
CASE NO. 3:18-CV-04865-EMC

and original preliminary notes, no matter how produced or maintained, in your actual or constructive possession, custody or control, and whether prepared, published or released by you or by any other person. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment, or any notation of any character, and not a part of the original text is to be considered a separate document.

9.     "Electronic Data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of electronic data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts or transmittals, logs of electronic mail history and usage, header information, and deleted files), Internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF and TIF files, batch files, native files and all ASCII files, and any and all miscellaneous files or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment.  Electronic data includes, but is not limited to, any and all items stored on any electronic media, computers, or networks and backup files containing electronically stored data.  The term "electronic data" also includes the file, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each such original or copy.

10.      "Open interest" shall mean an option contract that was traded but has not yet been liquidated by an offsetting option transaction, including by any assignment or expiration of the option contract.

11.      "Opening Purchase Transaction" shall mean as to Tesla Options a confirmed trade in which the purchaser's intention is to create or increase a long position in a series of cleared contracts.

12.      "Opening Sale (Writing Transaction) Transaction" shall mean as to Tesla Options a confirmed trade in which the seller's intention is to create or increase a short position in a series of cleared contracts.

13.      "Person" shall mean any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, commission, representative, employee, agent, broker, servant, attorney, or other entity.

14.      "Tesla" shall mean Defendant Tesla, Inc. and any of its predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

15.      "Tesla Bonds" shall mean all bonds issued by Tesla including, but not limited to, the following bonds:

a.      Tesla Convertible Bond 0.250% Due 3/1/2019 (CUSIP 88160RAB7);

b.      Tesla Convertible Bond 1.25% Due 3/1/2021 (CUSIP 88160RAC5);

c.      Tesla Convertible Bond 2.375% Due 3/15/2022 (CUSIP 88160RAD3); and

d.      Tesla Bond 5.3% Due 8/15/2025 (CUSIP U8810LAA1); and

e.      Tesla Bond 5.3% Due 8/15/2025 (CUSIP 88160RAE1).

16.      "Tesla Common Stock" shall mean the common stock of Tesla (CUSIP number 88160R101).

17.      "Tesla Options" shall mean all Option Contracts on any Tesla security, including but not limited to Tesla Common Stock.

18.      As used herein, the terms "relating to" and "concerning" means in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing,

commenting on, describing, constituting, supporting, contradicting, or having any logical or factual connection with the matter identified, in whole or in part.

### III. REQUESTS FOR PRODUCTION

**Request for Production 1:**

For any Account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Common Stock during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;
2. Identity of any introducing brokers to the transaction;
3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;
4. Account Numbers and/or customer numbers;
5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);
6. Security identification;
7. CUSIP number;
8. Trade date;
9. Trade / transaction time (in at least millisecond resolution);
10. Settlement date;
11. Whether the trade/transaction is a purchase or sale;
12. Whether the purchase was to cover a short position;
13. Whether the sale was to open a short position;

14. Whether the purchase or sale was pursuant to an option exercise or assignment;

15. Any information concerning the underlying option that is related to any option exercise or assignment;

16. Quantity of securities traded/transacted;

17. Price per share that the trade was executed; and

18. Trade value.

**Request for Production 2:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Options during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;

2. Identity of any introducing brokers to the transaction;

3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4. Account Numbers and/or customer numbers;

5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6. Security identification;

7. Ticker symbol;

8. Underlying security;

9. Type of option;

SCHEDULE I
CASE NO. 3:18-CV-04865-EMC

10. Style of option;

11. Whether the trade is a put or call;

12. Expiration date and/or series/contract date;

13. Strike price and/or exercise price;

14. Whether the trade is a purchase or sale;

15. The type of option transaction (*i.e.* Opening Purchases Transaction; closing purchase transaction; Opening Sale (Writing) Transaction; closing (sale) transaction; exercise; expiration; or assignment);

16. Trade date;

17. Trade / transaction time (in at least millisecond resolution);

18. Settlement date;

19. Quantity of securities traded/transacted;

20. Trade price / premium on the transaction;

21. Trade value;

22. Whether the option is an over-the-counter option;

23. Any order identification number;

24. Any related purchase or sale of the underlying security; and

25. Identification of the marketplace of execution.

**Request for Production 3:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades and/or transactions, and/or positions in Tesla Bonds during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;

2. Identity of any introducing broker to the transaction;

3.   Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4.   Account Numbers and/or customer numbers;

5.   Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6.   Trade date;

7.   Trade / transaction time (in at least millisecond resolution);

8.   Trade execution date;

9.   Trade execution time;

10.  Trade report date;

11.  Trade report time;

12.  The quantity of units (the uncapped par value volume reported on the trade not subject to any dissemination caps);

13.  The identification of quantity of units (*e.g.*, hundreds, thousands, etc.);

14.  Price (including price per unit);

15.  Reported price;

16.  Trade settlement date;

17.  Type of transaction (*e.g.*, buy, sell, short, cross, etc.);

18.  Reference number;

19.  Trade status;

20.  Security identification;

21.  CUSIP number;

22.  Ticker symbol;

23.  TRACE symbol;

10

|   |   |   |
|---|---|---|
| 1 | 24. | Security type; |
| 2 | 25. | Bloomberg Identifier; |
| 3 | 26. | Issue symbol; |
| 4 | 27. | Issuer name; |
| 5 | 28. | Coupon rate; |
| 6 | 29. | Coupon type; |
| 7 | 30. | Maturity date; |
| 8 | 31. | Buyer commission; |
| 9 | 32. | Buyer capacity; |
| 10 | 33. | Seller commission; |
| 11 | 34. | Seller capacity; and |
| 12 | 35. | Mark up. |

**Request for Production 4:**

For any account with a trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence at the Account level any positions held in Tesla Common Stock, Tesla Bonds, or Tesla Options in any Account as of the end of: (i) August 6, 2018; and (ii) August 17, 2018.

**Request for Production 5:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased short positions in Tesla Common Stock that were held in any Account as of the end of August 6, 2018, including all of the following information:

        1.    Account positions;

        2.    Account and/or customer numbers;

3.    Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4.    Security identification;

5.    CUSIP number;

6.    Trade date;

7.    Trade / transaction time (in at least millisecond resolution);

8.    Settlement date;

9.    Whether the trade/transaction was a purchase or sale;

10.    Whether the sale was to open a short position;

11.    Whether the purchase or sale is pursuant to an option exercise or assignment;

12.    Any information concerning the underlying option that is related to any option exercise or assignment;

13.    Quantity of securities traded/transacted;

14.    Price per share that the trade was executed; and

15.    Trade value.

**Request for Production 6:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased positions in Tesla Options that were held in any Account as of the end of August 6, 2018, including all of the following information:

1.    Account positions;

2.    Account and/or customer numbers;

3.    Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4.    Security identification;

12

5.   CUSIP number;

6.   Ticker symbol;

7.   Underlying security;

8.   Type of option;

9.   Style of option;

10.   Whether the trade is a put or call;

11.   Expiration date and/or series/contract date;

12.   Strike price and/or exercise price;

13.   Whether the trade is a purchase or sale;

14.   The type of option transaction (*i.e.* Opening Purchases Transaction;
Opening Sale (Writing) Transaction);

15.   Trade date;

16.   Trade / transaction time (in at least millisecond resolution);

17.   Settlement date;

18.   Quantity of securities traded/transacted;

19.   Trade price / premium on the transaction;

20.   Trade value;

21.   Whether the option is an over-the-counter option; and

22.   Any order identification number.

**Request for Production 7:**

Documents and Electronic Data to interpret any codes, abbreviations, or any other system of symbols used to represent other information contained in the information produced in response to any Demand for Production. By way of example and not by limitation, Documents and Electronic Data responsive to this demand may include legends, code lists, ciphers, or keys which can be used to interpret and/or decipher the names or codes used for any brokers, dealers, contra-parties, internal nomenclature, individuals, or securities.

**SCHEDULE J**

**DOCUMENTS TO BE PRODUCED BY SCOTIA CAPITAL INC.**

It is respectfully requested that Scotia Capital Inc. be compelled to produce the following documents that are in its possession, custody, or control, and which are not privileged under Canadian or U.S. law according to the following instructions and definitions:

**I.   INSTRUCTIONS FOR RESPONDING TO THE LETTERS ROGATORY**

1.      You have been asked by Lead Plaintiff in the matter *In re Tesla, Inc. Securities Litigation*, Case No. 3:18-cv-04865-EMC, pending in the United States District Court for the Northern District of California.

2.      The Letters Rogatory demands the production of documents and/or other materials. Unless specified otherwise, specific terms used in the Demands listed below are defined in the Definitions section.

3.      You are required, in responding to these Letters Rogatory, to obtain and furnish all documents, electronic data, and information available to you and any of your representatives, employees, agents, brokers, servants, and/or attorneys, and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, brokers, servants, and/or attorneys. Importantly, if at any point you determine that your response to the letters rogatory is not correct or complete, you are required to provide a supplemental response.

4.      The documents produced in response to the letters rogatory shall include all attachments and enclosures.

5.      Each demand should be responded to separately. However, a document that is the response to more than one request may, if the relevant portion is marked or indexed, be produced, and referred to in a later response.

6.      To the extent to which any demand is objected, please set forth all reasons for your objection and furnish documents responsive to the remainder of the demand.

7.     All documents and/or materials called for by the letters rogatory, for which you claim a privilege or statutory authority as a ground for non-production, shall be listed chronologically in a privilege log as follows:

        a)     The place, date, and manner of recording or otherwise preparing the document;

        b)     The name and title of the sender;

        c)     The identity of each person or persons (other than clerical assistants) participating in the preparation of the document;

        d)     The identity of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, sketch, reading or substantial summarization, the dates of said communication, and the employer and title of said person at the time of said communication;

        e)     Type of document;

        f)     Subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

        g)     Factual and legal basis for claim, privilege, or specific statutory or regulatory authority that provides the claimed ground for non-production.

8.     Each demand to produce a document or documents shall be deemed to call to produce the original document or documents to the extent that they are in, or subject to, directly or indirectly, the control of the party to whom these discovery requests are addressed. If you prefer, you may provide legible copies of documents in lieu of originals so long as those copies reflect all markings, notations, and highlighting that is present on the originals. In addition, each demand should be considered as including a demand for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments

having been added to one copy of a document but not on the original or other copies thereof).

9.     All Documents should be Bates labeled and marked with appropriate confidentiality indications and should be produced in accordance with any ESI protocol agreed to by the parties and/or entered by the Court.

10.     Documents to be produced shall be either (l) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the requests for production.

11.     To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them. If any documents herein requested have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date, and subject matter. With respect to any document requested which was once in your possession, custody, or control, but no longer is, please indicate the date the document ceased to be in your possession, custody, or control, the manner in which it ceased, and the name and address of its present custodian.

12.     When responding to a demand for documents dated within a specific period, your response shall include all documents, electronic data and information which relate, in whole or in part, to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

**II. DEFINITIONS**

1.     "And" and "or" shall be interpreted to mean "and/or," so that said terms are given the most inclusive construction.

2.     As used herein, "all" refers to any and all, and the term "any" likewise refers to any and all.

3.     The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

4.      "Account" shall mean a record of debit and credit entries to cover transactions involving a particular item or a particular person that arises from either: (a) an arrangement between Broker and the Customer in which pursuant to this arrangement an investor deposits money with Broker in order for Broker to make trades on securities on behalf of the Customer (a "Customer Account"); or (b) that Broker uses to record transactions that take place on Broker's behalf, such as any proprietary accounts that Broker uses for trading securities, options, or commodities for Broker's own account and risk, *i.e.* all other accounts that are not "customer accounts" (a "Non-Customer Account").

5.      "Account Number" shall mean the unique identifier assigned to each Account by the Broker.

6.      "Broker" shall mean Scotia Capital Inc. and any of its subsidiaries, predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

7.      "Customer" shall mean any Person that purchases any items from or through the Broker or who purchases any of the Broker's services.

8.       "Document" or "documents" includes, by way of illustration only and not by way of limitation, any written, typed, printed, recorded, electronically stored data or information, or graphic matter, however preserved, produced, or reproduced, of any type or description, regardless of medium, origin or location, including without limitation any binder, cover note, certificate, correspondence, electronic communications and electronically stored information (including but not limited to, audio recordings, emails, attachments, databases, word documents, spreadsheets, graphic files, photographs, sound recordings, images, and other data or data compilations), record, chart, analysis, report, test, study, memorandum, note, list, diary, log, calendar, questionnaire, bill, purchase order, permit, ledger entry, check, order, receipt, statement, financial data, acknowledgement, computer-generated matter, and all other data compilations from which information can be obtained or translated, drafts and revisions of drafts of any documents

and original preliminary notes, no matter how produced or maintained, in your actual or constructive possession, custody or control, and whether prepared, published or released by you or by any other person. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment, or any notation of any character, and not a part of the original text is to be considered a separate document.

9.     "Electronic Data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of electronic data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts or transmittals, logs of electronic mail history and usage, header information, and deleted files), Internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF and TIF files, batch files, native files and all ASCII files, and any and all miscellaneous files or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment.  Electronic data includes, but is not limited to, any and all items stored on any electronic media, computers, or networks and backup files containing electronically stored data.  The term "electronic data" also includes the file, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each such original or copy.

10.     "Open interest" shall mean an option contract that was traded but has not yet been liquidated by an offsetting option transaction, including by any assignment or expiration of the option contract.

11.     "Opening Purchase Transaction" shall mean as to Tesla Options a confirmed trade in which the purchaser's intention is to create or increase a long position in a series of cleared contracts.

12.     "Opening Sale (Writing Transaction) Transaction" shall mean as to Tesla Options a confirmed trade in which the seller's intention is to create or increase a short position in a series of cleared contracts.

13.     "Person" shall mean any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, commission, representative, employee, agent, broker, servant, attorney, or other entity.

14.     "Tesla" shall mean Defendant Tesla, Inc. and any of its predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

15.     "Tesla Bonds" shall mean all bonds issued by Tesla including, but not limited to, the following bonds:

a.      Tesla Convertible Bond 0.250% Due 3/1/2019 (CUSIP 88160RAB7);

b.      Tesla Convertible Bond 1.25% Due 3/1/2021 (CUSIP 88160RAC5);

c.      Tesla Convertible Bond 2.375% Due 3/15/2022 (CUSIP 88160RAD3); and

d.      Tesla Bond 5.3% Due 8/15/2025 (CUSIP U8810LAA1); and

e.      Tesla Bond 5.3% Due 8/15/2025 (CUSIP 88160RAE1).

16.     "Tesla Common Stock" shall mean the common stock of Tesla (CUSIP number 88160R101).

17.     "Tesla Options" shall mean all Option Contracts on any Tesla security, including but not limited to Tesla Common Stock.

18.     As used herein, the terms "relating to" and "concerning" means in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing,

commenting on, describing, constituting, supporting, contradicting, or having any logical or factual connection with the matter identified, in whole or in part.

### III. REQUESTS FOR PRODUCTION

**Request for Production 1:**

For any Account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Common Stock during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;
2. Identity of any introducing brokers to the transaction;
3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;
4. Account Numbers and/or customer numbers;
5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);
6. Security identification;
7. CUSIP number;
8. Trade date;
9. Trade / transaction time (in at least millisecond resolution);
10. Settlement date;
11. Whether the trade/transaction is a purchase or sale;
12. Whether the purchase was to cover a short position;
13. Whether the sale was to open a short position;

SCHEDULE J
CASE NO. 3:18-CV-04865-EMC

14. Whether the purchase or sale was pursuant to an option exercise or assignment;

15. Any information concerning the underlying option that is related to any option exercise or assignment;

16. Quantity of securities traded/transacted;

17. Price per share that the trade was executed; and

18. Trade value.

**Request for Production 2:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Options during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;

2. Identity of any introducing brokers to the transaction;

3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4. Account Numbers and/or customer numbers;

5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6. Security identification;

7. Ticker symbol;

8. Underlying security;

9. Type of option;

1           10.    Style of option;

2           11.    Whether the trade is a put or call;

3           12.    Expiration date and/or series/contract date;

4           13.    Strike price and/or exercise price;

5           14.    Whether the trade is a purchase or sale;

6           15.    The type of option transaction (*i.e.* Opening Purchases Transaction;

7                    closing purchase transaction; Opening Sale (Writing) Transaction;

8                    closing (sale) transaction; exercise; expiration; or assignment);

9           16.    Trade date;

10          17.    Trade / transaction time (in at least millisecond resolution);

11          18.    Settlement date;

12          19.    Quantity of securities traded/transacted;

13          20.    Trade price / premium on the transaction;

14          21.    Trade value;

15          22.    Whether the option is an over-the-counter option;

16          23.    Any order identification number;

17          24.    Any related purchase or sale of the underlying security; and

18          25.    Identification of the marketplace of execution.

19

20      **Request for Production 3:**

21         For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or

22 Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents

23 and Electronic Data sufficient to evidence the following information for any trades and/or

24 transactions, and/or positions in Tesla Bonds during the period of August 6, 2018 through

25 November 15, 2018, inclusive:

26          1.    Account positions;

27          2.    Identity of any introducing broker to the transaction;

28

SCHEDULE J
CASE NO. 3:18-CV-04865-EMC

3.     Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4.     Account Numbers and/or customer numbers;

5.     Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6.     Trade date;

7.     Trade / transaction time (in at least millisecond resolution);

8.     Trade execution date;

9.     Trade execution time;

10.    Trade report date;

11.    Trade report time;

12.    The quantity of units (the uncapped par value volume reported on the trade not subject to any dissemination caps);

13.    The identification of quantity of units (*e.g.*, hundreds, thousands, etc.);

14.    Price (including price per unit);

15.    Reported price;

16.    Trade settlement date;

17.    Type of transaction (*e.g.*, buy, sell, short, cross, etc.);

18.    Reference number;

19.    Trade status;

20.    Security identification;

21.    CUSIP number;

22.    Ticker symbol;

23.    TRACE symbol;

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24.   Security type;

25.   Bloomberg Identifier;

26.   Issue symbol;

27.   Issuer name;

28.   Coupon rate;

29.   Coupon type;

30.   Maturity date;

31.   Buyer commission;

32.   Buyer capacity;

33.   Seller commission;

34.   Seller capacity; and

35.   Mark up.

**Request for Production 4:**

For any account with a trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence at the Account level any positions held in Tesla Common Stock, Tesla Bonds, or Tesla Options in any Account as of the end of: (i) August 6, 2018; and (ii) August 17, 2018.

**Request for Production 5:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased short positions in Tesla Common Stock that were held in any Account as of the end of August 6, 2018, including all of the following information:

1.   Account positions;

2.   Account and/or customer numbers;

SCHEDULE J
CASE NO. 3:18-CV-04865-EMC

3.   Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4.   Security identification;

5.   CUSIP number;

6.   Trade date;

7.   Trade / transaction time (in at least millisecond resolution);

8.   Settlement date;

9.   Whether the trade/transaction was a purchase or sale;

10.   Whether the sale was to open a short position;

11.   Whether the purchase or sale is pursuant to an option exercise or assignment;

12.   Any information concerning the underlying option that is related to any option exercise or assignment;

13.   Quantity of securities traded/transacted;

14.   Price per share that the trade was executed; and

15.   Trade value.

**Request for Production 6:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased positions in Tesla Options that were held in any Account as of the end of August 6, 2018, including all of the following information:

1.   Account positions;

2.   Account and/or customer numbers;

3.   Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4.   Security identification;

5.    CUSIP number;

6.    Ticker symbol;

7.    Underlying security;

8.    Type of option;

9.    Style of option;

10.    Whether the trade is a put or call;

11.    Expiration date and/or series/contract date;

12.    Strike price and/or exercise price;

13.    Whether the trade is a purchase or sale;

14.    The type of option transaction (*i.e.* Opening Purchases Transaction; Opening Sale (Writing) Transaction);

15.    Trade date;

16.    Trade / transaction time (in at least millisecond resolution);

17.    Settlement date;

18.    Quantity of securities traded/transacted;

19.    Trade price / premium on the transaction;

20.    Trade value;

21.    Whether the option is an over-the-counter option; and

22.    Any order identification number.

**Request for Production 7:**

Documents and Electronic Data to interpret any codes, abbreviations, or any other system of symbols used to represent other information contained in the information produced in response to any Demand for Production. By way of example and not by limitation, Documents and Electronic Data responsive to this demand may include legends, code lists, ciphers, or keys which can be used to interpret and/or decipher the names or codes used for any brokers, dealers, contra-parties, internal nomenclature, individuals, or securities.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SCHEDULE K**

**DOCUMENTS TO BE PRODUCED BY TD WATERHOUSE CANADA, INC.**

It is respectfully requested that TD Waterhouse Canada, Inc. be compelled to produce the following documents that are in its possession, custody, or control, and which are not privileged under Canadian or U.S. law according to the following instructions and definitions:

**I.   INSTRUCTIONS FOR RESPONDING TO THE LETTERS ROGATORY**

1.      You have been asked by Lead Plaintiff in the matter *In re Tesla, Inc. Securities Litigation*, Case No. 3:18-cv-04865-EMC, pending in the United States District Court for the Northern District of California.

2.      The Letters Rogatory demands the production of documents and/or other materials. Unless specified otherwise, specific terms used in the Demands listed below are defined in the Definitions section.

3.      You are required, in responding to these Letters Rogatory, to obtain and furnish all documents, electronic data, and information available to you and any of your representatives, employees, agents, brokers, servants, and/or attorneys, and to obtain and furnish all information that is in your possession or under your control, or in the possession or under the control of any of your representatives, employees, agents, brokers, servants, and/or attorneys. Importantly, if at any point you determine that your response to the letters rogatory is not correct or complete, you are required to provide a supplemental response.

4.      The documents produced in response to the letters rogatory shall include all attachments and enclosures.

5.      Each demand should be responded to separately. However, a document that is the response to more than one request may, if the relevant portion is marked or indexed, be produced, and referred to in a later response.

6.      To the extent to which any demand is objected, please set forth all reasons for your objection and furnish documents responsive to the remainder of the demand.

7.     All documents and/or materials called for by the letters rogatory, for which you claim a privilege or statutory authority as a ground for non-production, shall be listed chronologically in a privilege log as follows:

          a)    The place, date, and manner of recording or otherwise preparing the document;

          b)    The name and title of the sender;

          c)    The identity of each person or persons (other than clerical assistants) participating in the preparation of the document;

          d)    The identity of each person to whom the contents of the document have heretofore been communicated by copy, exhibition, sketch, reading or substantial summarization, the dates of said communication, and the employer and title of said person at the time of said communication;

          e)    Type of document;

          f)    Subject matter (without revealing the relevant information for which privilege or statutory authority is claimed); and

          g)    Factual and legal basis for claim, privilege, or specific statutory or regulatory authority that provides the claimed ground for non-production.

8.     Each demand to produce a document or documents shall be deemed to call to produce the original document or documents to the extent that they are in, or subject to, directly or indirectly, the control of the party to whom these discovery requests are addressed. If you prefer, you may provide legible copies of documents in lieu of originals so long as those copies reflect all markings, notations, and highlighting that is present on the originals. In addition, each demand should be considered as including a demand for separate production of all copies and, to the extent applicable, preliminary drafts of documents that differ in any respect from the original or final draft or from each other (e.g., by reason of differences in form or content or by reason of handwritten notes or comments

having been added to one copy of a document but not on the original or other copies thereof).

       9.     All Documents should be Bates labeled and marked with appropriate confidentiality indications and should be produced in accordance with any ESI protocol agreed to by the parties and/or entered by the Court.

       10.    Documents to be produced shall be either (l) organized as they are kept in the usual course of business or (2) organized and labeled to correspond with the paragraphs of the requests for production.

       11.    To the extent that any document cannot be furnished, such documents as are available shall be supplied, together with a description of the documents not furnished and the reason for not furnishing them. If any documents herein requested have been lost or destroyed, the documents so lost or destroyed shall be identified by author, date, and subject matter. With respect to any document requested which was once in your possession, custody, or control, but no longer is, please indicate the date the document ceased to be in your possession, custody, or control, the manner in which it ceased, and the name and address of its present custodian.

       12.    When responding to a demand for documents dated within a specific period, your response shall include all documents, electronic data and information which relate, in whole or in part, to such period, or to events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

**II. DEFINITIONS**

       1.     "And" and "or" shall be interpreted to mean "and/or," so that said terms are given the most inclusive construction.

       2.     As used herein, "all" refers to any and all, and the term "any" likewise refers to any and all.

       3.     The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

SCHEDULE K
CASE NO. 3:18-CV-04865-EMC

4.     "Account" shall mean a record of debit and credit entries to cover transactions involving a particular item or a particular person that arises from either: (a) an arrangement between Broker and the Customer in which pursuant to this arrangement an investor deposits money with Broker in order for Broker to make trades on securities on behalf of the Customer (a "Customer Account"); or (b) that Broker uses to record transactions that take place on Broker's behalf, such as any proprietary accounts that Broker uses for trading securities, options, or commodities for Broker's own account and risk, *i.e.* all other accounts that are not "customer accounts" (a "Non-Customer Account").

5.     "Account Number" shall mean the unique identifier assigned to each Account by the Broker.

6.     "Broker" shall mean TD Waterhouse Canada, Inc. and any of its subsidiaries, predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

7.     "Customer" shall mean any Person that purchases any items from or through the Broker or who purchases any of the Broker's services.

8.     "Document" or "documents" includes, by way of illustration only and not by way of limitation, any written, typed, printed, recorded, electronically stored data or information, or graphic matter, however preserved, produced, or reproduced, of any type or description, regardless of medium, origin or location, including without limitation any binder, cover note, certificate, correspondence, electronic communications and electronically stored information (including but not limited to, audio recordings, emails, attachments, databases, word documents, spreadsheets, graphic files, photographs, sound recordings, images, and other data or data compilations), record, chart, analysis, report, test, study, memorandum, note, list, diary, log, calendar, questionnaire, bill, purchase order, permit, ledger entry, check, order, receipt, statement, financial data, acknowledgement, computer-generated matter, and all other data compilations from which information can be obtained or translated, drafts and revisions of drafts of any documents

SCHEDULE K
CASE NO. 3:18-CV-04865-EMC

and original preliminary notes, no matter how produced or maintained, in your actual or constructive possession, custody or control, and whether prepared, published or released by you or by any other person. Any document or reproduction of a document bearing on any sheet or side thereof any marks, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment, or any notation of any character, and not a part of the original text is to be considered a separate document.

9.      "Electronic Data" means the original (or identical copies when originals are not available) and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of electronic data of any kind or description, whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such data may include, but is not limited to, all text files (including word processing documents), presentation files (such as PowerPoint), spreadsheets, electronic mail files and information concerning electronic mails (including electronic mail receipts or transmittals, logs of electronic mail history and usage, header information, and deleted files), Internet history of files and preferences, graphical files in any format, databases, calendar and scheduling information, task lists, telephone logs, contact managers, computer system activity logs, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, output resulting from the use of any software program including, but not limited to, database files, charts, graphs, outlines, operating systems, source codes of all types, programming languages, linkers and compilers, peripheral drivers, PDF and TIF files, batch files, native files and all ASCII files, and any and all miscellaneous files or file fragments, regardless of the medium or media on which they reside and regardless of whether such electronic data is in an active file, deleted file, or file fragment.  Electronic data includes, but is not limited to, any and all items stored on any electronic media, computers, or networks and backup files containing electronically stored data.  The term "electronic data" also includes the file, folder tabs, or containers and labels appended to or associated with any physical storage device associated with each such original or copy.

10.    "Open interest" shall mean an option contract that was traded but has not yet been liquidated by an offsetting option transaction, including by any assignment or expiration of the option contract.

11.    "Opening Purchase Transaction" shall mean as to Tesla Options a confirmed trade in which the purchaser's intention is to create or increase a long position in a series of cleared contracts.

12.    "Opening Sale (Writing Transaction) Transaction" shall mean as to Tesla Options a confirmed trade in which the seller's intention is to create or increase a short position in a series of cleared contracts.

13.    "Person" shall mean any individual, corporation, partnership, joint venture, firm, association, proprietorship, governmental agency, board, authority, commission, representative, employee, agent, broker, servant, attorney, or other entity.

14.    "Tesla" shall mean Defendant Tesla, Inc. and any of its predecessors, successors, divisions, or affiliates and its attorneys, accountants, agents, employees, directors, officers, successors, assigns, or any other person or entity acting on its behalf.

15.    "Tesla Bonds" shall mean all bonds issued by Tesla including, but not limited to, the following bonds:

a.    Tesla Convertible Bond 0.250% Due 3/1/2019 (CUSIP 88160RAB7);

b.    Tesla Convertible Bond 1.25% Due 3/1/2021 (CUSIP 88160RAC5);

c.    Tesla Convertible Bond 2.375% Due 3/15/2022 (CUSIP 88160RAD3); and

d.    Tesla Bond 5.3% Due 8/15/2025 (CUSIP U8810LAA1); and

e.    Tesla Bond 5.3% Due 8/15/2025 (CUSIP 88160RAE1).

16.    "Tesla Common Stock" shall mean the common stock of Tesla (CUSIP number 88160R101).

17.    "Tesla Options" shall mean all Option Contracts on any Tesla security, including but not limited to Tesla Common Stock.

18.    As used herein, the terms "relating to" and "concerning" means in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing,

commenting on, describing, constituting, supporting, contradicting, or having any logical or factual connection with the matter identified, in whole or in part.

### III. REQUESTS FOR PRODUCTION

**Request for Production 1:**

For any Account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Common Stock during the period of August 6, 2018 through November 15, 2018, inclusive:

1. Account positions;
2. Identity of any introducing brokers to the transaction;
3. Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;
4. Account Numbers and/or customer numbers;
5. Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);
6. Security identification;
7. CUSIP number;
8. Trade date;
9. Trade / transaction time (in at least millisecond resolution);
10. Settlement date;
11. Whether the trade/transaction is a purchase or sale;
12. Whether the purchase was to cover a short position;
13. Whether the sale was to open a short position;

14.  Whether the purchase or sale was pursuant to an option exercise or assignment;

15.  Any information concerning the underlying option that is related to any option exercise or assignment;

16.  Quantity of securities traded/transacted;

17.  Price per share that the trade was executed; and

18.  Trade value.

**Request for Production 2:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades, transactions, and/or positions in Tesla Options during the period of August 6, 2018 through November 15, 2018, inclusive:

1.  Account positions;

2.  Identity of any introducing brokers to the transaction;

3.  Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4.  Account Numbers and/or customer numbers;

5.  Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6.  Security identification;

7.  Ticker symbol;

8.  Underlying security;

9.  Type of option;

10.  Style of option;

11.  Whether the trade is a put or call;

12.  Expiration date and/or series/contract date;

13.  Strike price and/or exercise price;

14.  Whether the trade is a purchase or sale;

15.  The type of option transaction (*i.e.* Opening Purchases Transaction; closing purchase transaction; Opening Sale (Writing) Transaction; closing (sale) transaction; exercise; expiration; or assignment);

16.  Trade date;

17.  Trade / transaction time (in at least millisecond resolution);

18.  Settlement date;

19.  Quantity of securities traded/transacted;

20.  Trade price / premium on the transaction;

21.  Trade value;

22.  Whether the option is an over-the-counter option;

23.  Any order identification number;

24.  Any related purchase or sale of the underlying security; and

25.  Identification of the marketplace of execution.

**Request for Production 3:**

For any account with any trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence the following information for any trades and/or transactions, and/or positions in Tesla Bonds during the period of August 6, 2018 through November 15, 2018, inclusive:

1.  Account positions;

2.  Identity of any introducing broker to the transaction;

SCHEDULE K
CASE NO. 3:18-CV-04865-EMC

3.   Market participant identifier issued by the Financial Industry Regulatory Authority, Inc., for any party, account owner, beneficial owner, member, broker/dealer, contra-broker/dealer, and/or marketplace relating to the trade/transaction;

4.   Account Numbers and/or customer numbers;

5.   Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

6.   Trade date;

7.   Trade / transaction time (in at least millisecond resolution);

8.   Trade execution date;

9.   Trade execution time;

10.  Trade report date;

11.  Trade report time;

12.  The quantity of units (the uncapped par value volume reported on the trade not subject to any dissemination caps);

13.  The identification of quantity of units (*e.g.*, hundreds, thousands, etc.);

14.  Price (including price per unit);

15.  Reported price;

16.  Trade settlement date;

17.  Type of transaction (*e.g.*, buy, sell, short, cross, etc.);

18.  Reference number;

19.  Trade status;

20.  Security identification;

21.  CUSIP number;

22.  Ticker symbol;

23.  TRACE symbol;

| | |
|---|---|
| 1 | 24.   Security type; |
| 2 | 25.   Bloomberg Identifier; |
| 3 | 26.   Issue symbol; |
| 4 | 27.   Issuer name; |
| 5 | 28.   Coupon rate; |
| 6 | 29.   Coupon type; |
| 7 | 30.   Maturity date; |
| 8 | 31.   Buyer commission; |
| 9 | 32.   Buyer capacity; |
| 10 | 33.   Seller commission; |
| 11 | 34.   Seller capacity; and |
| 12 | 35.   Mark up. |

**Request for Production 4:**

For any account with a trade or transaction in Tesla Common Stock, Tesla Bonds, or Tesla Options during the period of August 7, 2018 through August 17, 2018, inclusive, Documents and Electronic Data sufficient to evidence at the Account level any positions held in Tesla Common Stock, Tesla Bonds, or Tesla Options in any Account as of the end of: (i) August 6, 2018; and (ii) August 17, 2018.

**Request for Production 5:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased short positions in Tesla Common Stock that were held in any Account as of the end of August 6, 2018, including all of the following information:

1.   Account positions;

2.   Account and/or customer numbers;

3.      Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4.      Security identification;

5.      CUSIP number;

6.      Trade date;

7.      Trade / transaction time (in at least millisecond resolution);

8.      Settlement date;

9.      Whether the trade/transaction was a purchase or sale;

10.    Whether the sale was to open a short position;

11.    Whether the purchase or sale is pursuant to an option exercise or assignment;

12.    Any information concerning the underlying option that is related to any option exercise or assignment;

13.    Quantity of securities traded/transacted;

14.    Price per share that the trade was executed; and

15.    Trade value.


**Request for Production 6:**

Document and Electronic Data sufficient to evidence the opening purchases or sales trades and/or transactions that created or increased positions in Tesla Options that were held in any Account as of the end of August 6, 2018, including all of the following information:

1.      Account positions;

2.      Account and/or customer numbers;

3.      Account or account type (*i.e.* customer account, non-customer account, market maker Account, firm account, proprietary account, etc.);

4.      Security identification;

SCHEDULE K
Case No. 3:18-cv-04865-EMC

5.     CUSIP number;

6.     Ticker symbol;

7.     Underlying security;

8.     Type of option;

9.     Style of option;

10.     Whether the trade is a put or call;

11.     Expiration date and/or series/contract date;

12.     Strike price and/or exercise price;

13.     Whether the trade is a purchase or sale;

14.     The type of option transaction (*i.e.* Opening Purchases Transaction; Opening Sale (Writing) Transaction);

15.     Trade date;

16.     Trade / transaction time (in at least millisecond resolution);

17.     Settlement date;

18.     Quantity of securities traded/transacted;

19.     Trade price / premium on the transaction;

20.     Trade value;

21.     Whether the option is an over-the-counter option; and

22.     Any order identification number.

**Request for Production 7:**

Documents and Electronic Data to interpret any codes, abbreviations, or any other system of symbols used to represent other information contained in the information produced in response to any Demand for Production. By way of example and not by limitation, Documents and Electronic Data responsive to this demand may include legends, code lists, ciphers, or keys which can be used to interpret and/or decipher the names or codes used for any brokers, dealers, contra-parties, internal nomenclature, individuals, or securities.