**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
amccall@zlk.com

*Attorneys for Plaintiff and Counsel for the Class*

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date: March 10, 2022<br>Time: 1:30 p.m.<br>Location: Courtroom 5, 17th Floor<br>Judge: Hon. Edward Chen |
|---|---|

*****REDACTED VERSION*****

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ............... 1

ISSUES TO BE DECIDED ............... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............... 2

INTRODUCTION ............... 2

STATEMENT OF UNDISPUTED FACTS ............... 6

A. Tesla Background. ............... 6

B. July 31, 2018 Meeting with the Saudi Arabia Public Investment Fund. ............... 6

C. "Offer to Take Tesla Private at $420." ............... 7

D. August 7, 2018 Statements. ............... 10

E. The Public's Response to Musk's Tweets. ............... 12

F. Musk's Attempts to Secure Funding and Confirm Investor Support. ............... 13

G. Musk Announces the Withdrawal of the Going-Private Transaction. ............... 15

LEGAL STANDARD ............... 16

ARGUMENT ............... 17

A. Plaintiff Is Entitled to Summary Judgment as to the Elements of Falsity and Scienter. ............... 17

1. "Am considering taking Tesla private at $420. Funding secured." ............... 17

2. "Investor support is confirmed." ............... 21

3. "Only reason why this is not certain is that it's contingent on a shareholder vote." ............... 22

4. "I have continued to communicate with the Managing Director of the Saudi fund. He has expressed support for proceeding subject to financial and other due diligence and their internal review process for obtaining approvals. He has also asked for additional details on how the company would be taken private, including any required percentages and any regulatory requirements." ............... 23

B. Plaintiff Is Entitled to Summary Judgment as to the Element of Reliance. ............... 24

CONCLUSION ............... 25

# TABLE OF AUTHORITIES

**Cases**

*In re Apple Sec. Litig.*,
No. 19-cv-02033-YGR, 2020 U.S. Dist. LEXIS 206298 (N.D. Cal. Nov. 4, 2020)................ 22

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ........................................................................................................... 23

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................................... 16

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008)............................................................................................... 17

*In re Celestica Inc. Sec. Litig.*,
No. 07 Civ. 0312 (GBD), 2014 U.S. Dist. LEXIS 116562 (S.D.N.Y. Aug. 20, 2014) ........... 24

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ........................................................................................................... 23

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ........................................................................................................... 23

*In re Infineon Techs. AG Sec. Litig.*,
266 F.R.D. 386 (N.D. Cal. 2009) ........................................................................................ 24

*Kaplan v. Rose*,
49 F.3d 1363 (9th Cir. 1994)............................................................................................... 23

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
416 F.3d 940 (9th Cir. 2005)............................................................................................... 17

*McCrary v. Elations Co. LLC*,
No. EDCV 13-0242 JGB (SPx), 2014 U.S. Dist. LEXIS 190468 (C.D. Cal. Dec. 8, 2014) ... 24

*S.E.C. v. Platforms Wireless Int'l Corp.*,
617 F.3d 1072 (9th Cir. 2010)........................................................................................ passim

*S.E.C. v. Sourlis*,
851 F.3d 139 (2d Cir. 2016)................................................................................................. 20

*In re Tesla, Inc. Securities Litig.*,
477 F. Supp. 3d 903 (N.D. Cal. 2020) ........................................................................... 2, 17

**Rules**

FED. R. CIV. P. 56 ........................................................................................................ 16, 25

**Regulations**

17 C.F.R §240.10b-5 ............................................................................................................ 22

**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

PLEASE TAKE NOTICE that on March 10, 2022 at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 5 – 17th Floor of the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Edward M. Chen presiding, Plaintiff Glen Littleton, by his counsel, will move, and hereby does move, to enter partial summary judgment in favor of Plaintiff and against Defendants Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice ("Defendants") pursuant to Federal Rule of Civil Procedure 56.

PLEASE TAKE FURTHER NOTICE that Plaintiff seeks partial summary judgment against Defendants on the following elements of his alleged violations of Securities Exchange Act §10(b), 15 U.S.C. §78j(b), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5: (1) material misrepresentations or omissions; (2) scienter; and (3) reliance upon the misrepresentations or omissions.

PLEASE TAKE FURTHER NOTICE that this motion is based on the Memorandum of Points and Authorities below, the Declaration of Adam M. Apton and the exhibits attached thereto, the arguments of counsel, and any other matters properly before this Court. Pursuant to Paragraph 11 of the Court's Civil Standing Order – General, Plaintiff also submits herewith a proposed order.

**ISSUES TO BE DECIDED**

1.      Should the Court grant partial summary judgment in Plaintiff's favor against Defendants where the record indisputably shows that Elon Musk falsely represented with scienter "Funding secured," "Investor support is confirmed," and "Only reason why this is not certain is that it's contingent on a shareholder vote" on August 7, 2018 and made materially misleading statements with scienter in his blog post on August 13, 2018?

2.      Should the Court grant partial summary judgment in Plaintiff's favor against Defendants on the element of "reliance" where the record indisputably shows that Plaintiff has established the presumption of reliance set forth in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)

  
and this presumption has not, and cannot, be rebutted?

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On August 7, 2018, at 9:48 a.m. PDT, Elon Musk ("Musk"), Chairman and Chief Executive Officer of Tesla, Inc., shocked its investors and the public by announcing through his Twitter account: "Am considering taking Tesla private at $420. Funding secured." No one expected this announcement, [redacted]. Tesla's stock price immediately rocketed upwards leading to a temporary suspension of its trading by NASDAQ. Musk followed up his earlier tweet by tweeting at 12:36 p.m. PDT: "Investor support is confirmed. Only reason why this is not certain is that its contingent on a shareholder vote." Tesla's stock continued its rise, closing on August 7, 2018 at $379.57 per share, 6.36% higher than its price at 9:47 a.m. PDT immediately before Musk's tweets. As this Court noted in its opinion denying Defendants' motion to dismiss the complaint: "The statement could be read by a reasonable investor to mean complete funding for the transaction was unconditionally secured" and "as something more than a speculative amorphous opinion about future possibilities" but instead "implying a more concrete state of affair." *In re Tesla, Inc. Securities Litig.*, 477 F. Supp. 3d 903, 922-25 (N.D. Cal. 2020).

Musk's tweets created a frenzy of media and investor attention on Tesla and his proposal. In the following ten days, over 2400 articles were published concerning it. After providing a further "update" on August 13, 2018 that continued to omit key information regarding the proposed transaction's structure, funding, and level of investor support, Musk sat for an interview with the *New York Times*, published on August 16, 2018, which revealed that funding was not secured, investor support was far from confirmed, and the basic feasibility of the transaction was still uncertain. Tesla's stock price plummeted and analysts quickly discounted completely the likelihood of any going private transaction. On August 23, 2018, Musk informed Tesla's Board that he was no longer pursuing the transaction, just 16 days after his tweet that the only remaining step to finalizing the transaction was a shareholder vote.

The evidence shows that Musk's August 7, 2018 tweets were false at the time they were made. Specifically, the undisputed facts, based almost exclusively on testimony and documents from Musk and other members of Tesla management are:

**1. Funding was not secured on August 7, 2018.** [redacted] This plan would have been completely unnecessary if funding was "secured" on August 7, 2018.

**2. Investor support was not confirmed by August 7, 2018.** [redacted]

**3. A shareholder vote was not the only contingency for the proposed transaction.** Tesla going private would be one of the largest corporate transactions in American history. In addition to a shareholder vote, it would require extensive deliberation by Tesla's Board, independent legal and financial advice, negotiation of comprehensive legal documentation, and extensive regulatory approval. [redacted]

These undisputed facts show that the statements made by Musk in his August 7, 2018 tweets were false when made. The immediate market reaction as well as the intense media and investor scrutiny over the ensuing ten days, allows no dispute over their materiality. Finally, there is no dispute that Musk knew every fact that rendered his statements untrue: and knew there was no funding secured; and, accordingly, investor support could not possibly be confirmed; and . Yet on August 7, 2018, he nevertheless made these tweets to his then over 22 million followers.

. But this subjective belief is legally insufficient to avoid liability under Rule 10b-5. If Musk's subjective belief were sufficient, there could be never be liability for making a false statement absent a complete confession of guilt. The law imposes an objective standard for assessing falsity and holds defendants liable when they know the facts that render their statements objectively false. Objectively, Musk knew his statements here were false.

Similarly, the August 13, 2018 blog post authorized by Musk and published by Tesla purportedly giving an update on the proposed going private transaction omitted material information about it. It represented that discussions with the Saudi PIF were continuing and consensual . These critical facts were omitted from the blog post which continued to present certainty that the transaction would

proceed. Once again, Musk was in full possession of the contradictory and omitted facts but chose not to disclose them.

Finally, Plaintiff is entitled to summary judgment on the element of reliance. Plaintiff invokes the fraud-on-the-market doctrine to create a presumption of reliance by every class member on the public statements alleged to be misleading in this case. Under binding Supreme Court precedent, reliance is presumed on material public statements made regarding a security that trades in an efficient market. Tesla's securities are some of the most highly traded on the NASDAQ and Tesla is one of the most closely followed companies in the world. If there were any doubt regarding the efficiency of the market for its securities, Plaintiff's expert, Dr. Michael Hartzmark, conducted a detailed analysis of the trading in Tesla securities during the class period and concluded they traded in an efficient market. Defendants have offered no testimony or evidence, expert or otherwise, to the contrary. Accordingly, Plaintiff is entitled to summary judgment on this element of his claim.

From August 7, 2018 to August 17, 2018, Musk's tweets that he had a fully funded proposal to take Tesla private at $420 per share with confirmed investor support roiled the market for Tesla stock and other securities. No part of this unconventional announcement was true: Musk had not secured funding to take Tesla private at $420 per share nor confirmed investor support. Furthermore, Musk knew that, as of August 7, 2018 when he impulsively tweeted to over 22 million followers, his going private proposal was little more than a preliminary, half-baked concept. When the truth about the haphazard and misleading nature of the statements was revealed, Tesla's investors lost billions of dollars. Based on the evidentiary record in this case, no reasonable juror could conclude that the August 7 and August 13, 2018 statements were ***not*** materially false and misleading, that Musk did ***not*** make those statements with scienter, and that class members did ***not*** rely on those statements. Partial summary judgment should be entered in Plaintiff's favor.

## STATEMENT OF UNDISPUTED FACTS

### A. Tesla Background.

In July 2018, Tesla was a NASDAQ-listed company with approximately $50 billion in market capitalization.[1] Musk served as its Chairman and Chief Executive Officer.[2] Its Board of Directors consisted of Defendants Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice.[3] On July 31, 2018, Tesla's stock price closed at $298.14.[4]

### B. July 31, 2018 Meeting with the Saudi Arabia Public Investment Fund.

[1] M. Hartzmark Dep. at 34:8-36:15; *see also* Hartzmark Report (ECF No. 291-1) at ¶51 & Appendix C; Defendants' Answer to Consolidated Complaint for Securities Fraud ("Answer") (ECF No. 264) at ¶16.
[2] Answer at ¶17.
[3] *Id*. at ¶¶ 20-26.
[4] Hartzmark Report (ECF No. 291-1) at Appendix C.
[5] E. Musk Dep. at 89:19-24, 99:7-14; E. Musk SEC Tr. at 143:10-13.
[6] E. Musk Dep. at 99:4-6; Teller Dep. at 131:3-9, 163:13-17; Ahuja Dep. at 82:6-11.
[7] Teller Dep. at 132:2-17; E. Musk SEC Tr. at 110:8-10; Exhibit 80.
[8] Teller Dep. at 143:24-144:3, 148:21-24; Ahuja Dep. at 278:14-20.
[9] Teller Dep. at 134:18-23, 156:16-157:16; Exhibit 80.

[redacted]

Importantly, critical terms were not discussed with the Saudi PIF on July 31, 2018. [redacted]

### C. "Offer to Take Tesla Private at $420."

[redacted]

[10] Exhibit 121; Teller Dep. at 145:7-21; Ahuja Dep. at 97:7-98:1; E. Musk Dep. 225:11-230:23, 249:12-250:7; *see also* Exhibit 80 [redacted]

[11] Ahuja Dep. at 97:18-98:1; Teller Dep. at 145:7-21.

[12] E. Musk Dep. at 125:9-25.

[13] E. Musk Dep. at 109:23-110:1; E. Musk SEC Tr. at 231:22-232:10; Ahuja Dep. at 100:22-101:14; Ahuja SEC Tr. at 93:20-24.

[14] E. Musk Dep. at 112:3-16; Ahuja SEC Tr. at 104:20-25.

[15] E. Musk Dep. at 110:22-24; E. Musk SEC Tr. at 136:9-13; Ahuja Dep. at 84:2-6; 102:14-16; Ahuja SEC Tr. at 93:3-5; Teller Dep. at 164:20-24.

[16] Ahuja Dep. at 104:21-105:5.

[17] E. Musk Dep. at 132:24-133:13; 220:7-11; Ahuja Dep. at 108:22-110:8.

[18] E. Musk Dep. at 129:14-131:1; Exhibit 81.



[redacted]

[19] Exhibit 81.
[20] *Id.*
[21] *Id.*
[22] E. Musk Dep. at 129:20-130:9.
[23] *Id.* at 131:25-132:5.
[24] *Id.* at 137:24-138:2; E. Musk SEC Tr. at 178:16-179:25.
[25] Exhibit 82.
[26] *Id.*
[27] *Id.*
[28] Ahuja Dep. at 131:17-132:5.
[29] E. Musk Dep. at 159:6-10, 213:8-12; *see also* Denholm Dep. at 44:25-45:16.
[30] Exhibit 83.

[redacted]

[31] *Id.*
[32] *Id.* at 2.
[33] *Id.* at 3.
[34] *Id.* at 3; E. Musk Dep. at 159:20-160:2.
[35] Musk's Amended and Supplemental Responses to Lead Plaintiff's First Set of Interrogatories dated September 10, 2021 ("Musk Interrogatory Responses") at 27, 28, 30, and 35; E. Musk Dep. at 165:15-17, 189:10-16; Ahuja Dep. at 172:8-173:1; Viecha Dep. at 159:6-161:17; *see also* Exhibits 121, 151, 165.
[36] Exhibit 91; Ahuja Dep. at 224:10-224:19.
[37] E. Musk SEC Tr. at 165:1-5.
[38] E. Musk Dep. at 167:7-169:10.
[39] *Id.* at 167:14-168:14; E. Musk SEC Tr. at 161:6-21.

**D. August 7, 2018 Statements.**

On August 7, 2018 at 9:48 a.m. PDT, Musk tweeted "Am considering taking Tesla private at $420. Funding secured."[46] At 10:40 a.m. PDST, Musk tweeted "I don't have a controlling vote now & wouldn't expect any shareholder to have one if we go private. I won't be selling in either scenario."[48] At 11:00 a.m. PDT, Musk tweeted "My hope is *all* current investors remain with Tesla even if we're private. Would create special purpose fund enabling anyone to stay with Tesla. Already do this with Fidelity's SpaceX investment."[49] At 11:13 a.m. PDT, Musk tweeted

---

[40] E. Musk Dep. at 169:11-23; E. Musk SEC Tr. at 162:7-11, 175:22-176:6.
[41] Durban SEC Tr. at 76:2-5, 81:15-18, 82:9-10, 86:25-88:10.
[42] E. Musk SEC Tr. at 170:2-11.
[43] Durban SEC Tr. at 89:14-89:24.
[44] Durban Dep. at 28:8-29:10; Exhibit 175.
[45] Durban Dep. at 43:6-11.
[46] Exhibit 8.
[47] E. Musk Dep. at 133:6-9.
[48] Exhibit 9.
[49] Exhibit 10.

"Shareholders could either to sell at 420 or hold shares & go private."[50]

Musk sent it to Tesla's employees and posted it on Tesla's website.[54] The email reiterated, "First, I would like to structure this so that all shareholders have a choice. Either they can stay investors in a private Tesla or they can be bought out at $420 per share, which is a 20% premium over the stock price following our Q2 earnings call (which had already increased by 16%)."[55] It stated further that, "Basically, I'm trying to accomplish an outcome where Tesla can operate at its best, free from as much distraction and short-term thinking as possible, and where there is as little change for all of our investors, including all of our employees, as possible."[56]

At 12:36 p.m. PDT, Musk tweeted a link to his email to Tesla employees adding the statement: "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote."[59]

---

[50] Exhibit 11.
[51] Exhibit 121 at 4.
[52] Ahuja Dep. at 58:15-59:6, 171:8-24.
[53] Exhibit 121 at 4; Ahuja Dep. at 182:19-185:21.
[54] Exhibit 301; E. Musk Dep. at 196:16-197:3, 208:5-7; Exhibit 12.
[55] Exhibit 12.
[56] *Id.*
[57] E. Musk Dep. at 210:15-25.
[58] *Id.* at 208:18-20.
[59] Exhibit 13.
[60] E. Musk SEC Tr. at 258:1-4.

**E. The Public's Response to Musk's Tweets.**

Analysts and investors immediately responded to Musk's tweets.

Most analysts following Tesla interpreted Musk's tweets as indicating a going private transaction was likely. JP Morgan's analyst, Ryan Brinkman, wrote on August 8, 2018:

> As surprising to us as these developments are, and as lacking as the statements are in any details regarding who is expected to provide the required amount of financing and on what terms, they are nevertheless declarative statements from the CEO of a public company which we feel should be considered seriously. Either funding is secured or it is not secured, and Tesla's CEO says funding is secured. Therefore, we are incorporating into our valuation the

[61] Exhibit 146; *see also* Viecha Dep. at 129:8-129:18.
[62] Exhibit 58; *see also* Viecha Dep. at 137:13-138:21.
[63] Koney Dep. at 116:8-116:15.
[64] Exhibit 150; *see also* Viecha Dep. at 154:13-155:11.
[65] Exhibit 151 at 1-2; *see also* Viecha Dep. at 156:21-158:15.

real possibility the equity will be taken out at $420 per share.[66] [redacted]

F. **Musk's Attempts to Secure Funding and Confirm Investor Support.**

[redacted]

---

[66] Brinkman Dep. at 72:18-75:10; Exhibit 15.
[67] Exhibits 113-120; Exhibit 147.
[68] Viecha Dep. at 149:25-150:20.
[69] Exhibit 90.
[70] Fath Dep. at 48:13-49:7, 53:24-54:13; *see also* Exhibits 44-47.
[71] Koney Dep. at 113:13-114:5.
[72] E. Musk Dep. at 297:5-23; *see also* Viecha Dep. at 171:21-178:3, 189:19-190:22, 191:12-193:14, 194:4-201:10; Exhibits 79, 155, 157, 158 [redacted]
[73] Durban SEC Tr. at 126:18-22.
[74] *Id.* at 127:10-17.
[75] Durban Dep. at 48:21-56:23; Exhibit 179 at 29.

On August 13, 2018, Musk posted an "Update on Taking Tesla Private" on Tesla's website.[81] In this update, Musk stated that the Saudi PIF "has expressed support for proceeding subject to financial and other due diligence and their internal review process for obtaining

[76] Durban Dep. at 57:10-20.
[77] E. Musk Dep. 225:11-230:23; Exhibit 121 at 8.
[78] E. Musk Dep. 244:1-248:15; Exhibit 121 at 11-2.
[79] E. Musk Dep. at 247:5-248:15.
[80] *Id*. at 244:1-245:1; Exhibit 121.
[81] Exhibit 16.

approvals. He has also asked for additional details on how the company would be taken private, including any required percentages and any regulatory requirements."[82] Musk then stated "I continue to have discussions with the Saudi fund, and I also am having discussions with a number of other investors, which is something that I always planned to do since I would like for Tesla to continue to have a broad investor base."[83] With respect to the next steps, Musk wrote: "If and when a final proposal is presented, an appropriate evaluation process will be undertaken by a special committee of Tesla's board . . . . If the board process results in an approved plan, any required regulatory approvals will need to be obtained and the plan will be presented to Tesla shareholders for a vote."[84]

**G. Musk Announces the Withdrawal of the Going-Private Transaction.**

On August 16, 2018, the *New York Times* published a lengthy interview with Musk.[88] The article described the events of August 7, 2018, including his tweets as well as facts such as the August 7, 2018 tweets were not approved in advance by Tesla's Board and that "funding, it turned

[82] *Id*. at 2.
[83] *Id*. at 2.
[84] *Id*. at 2.
[85] E. Musk Dep. at 257:9-258:20; Exhibit 121 at 13.
[86] Durban Dep. at 134:1-135:18; Exhibit 194.
[87] Durban Dep. at 135:20-136:3; Exhibit 194
[88] Exhibit 19.

out, [was] far from secure."[89] This article led analyst Brinkman of JP Morgan to discount entirely the possibility of a going private transaction for Tesla and conclude that the August 7, 2018 tweets were not true.[90]

## LEGAL STANDARD

Summary judgment is proper where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is material only when it "might affect the outcome of the suit under the governing law," and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party based upon it." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter, rather "to determine whether there is a genuine issue for trial." *Id*. at 249. There is

[89] *Id*. at 4.
[90] Brinkman Dep. at 100:9-106:15; Exhibit 23at 1-2.
[91] Exhibit 101.
[92] *Id*. at 2.
[93] Durban Dep. at 149:12-22; Exhibit 201 at 9, 58.
[94] Exhibit 101 at 2-3.
[95] *Id*. at 1.
[96] *Id*. at 4.

no issue for trial unless there is sufficient evidence supporting a jury verdict for the nonmoving party, meaning that the evidence must be more than merely colorable but probative and persuasive. *Id*. at 249-250. A defendant cannot defeat summary judgment by "the mere denial of subjective knowledge of the risk that a statement could be misleading. Summary judgment requires a statement that is materially misleading such that no reasonable jury could conclude otherwise." *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1094 (9th Cir. 2010). "When the defendant is aware of the facts that made the statement misleading, 'he cannot ignore the facts and plead ignorance of the risk.'" *Id*. at 1094 (internal quotations omitted). When analyzed under this rubric, the discovery record leads undeniably to one conclusion: that Musk acted with scienter when making the false and materially misleading tweets on August 7, 2018 and blog post on August 13, 2018.

**ARGUMENT**

**A. Plaintiff Is Entitled to Summary Judgment as to the Elements of Falsity and Scienter.**

1. "Am considering taking Tesla private at $420. Funding secured."

Discovery has confirmed what the Court plausibly inferred when denying Defendants' motion to dismiss, *i.e.*, Musk's tweet "could be read by a reasonable investor to mean complete funding for the transaction was unconditionally secured." *In re Tesla, Inc. Securities Litig.*, 477 F. Supp. 3d at 922. This is precisely what happened. [REDACTED] Brinkman, JP Morgan's analyst, concluded that "Either funding is secured or it is not secured, and Tesla's CEO says funding is secured."[101] This was not true.

---

[97] Durban Dep. at 42:12 – 43:2.
[98] Exhibit 150; *see also* Viecha Dep. at 154:13-155:11.
[99] Exhibit 58; *see also* Viecha Dep. at 137:13-138:21.
[100] Exhibit 151 at 1-2; *see also* Viecha Dep. at 156:21-158:15.
[101] Exhibit 15 at 1.

[redacted]

A statement is misleading if it creates an "impression of a state of affairs that differs in a material way from the one that actually exists." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (internal quotations omitted). As demonstrated, Musk created the impression that funding had been "secured" to take Tesla private when, in reality, there was no agreement to fund the transaction at any price let alone $420 per share. Musk, of course, knew this when he tweeted on August 7, 2018 because he was the one conversing with the Saudi PIF on July 31, 2018. Thus, the evidentiary record indisputably establishes both falsity and scienter in favor of Plaintiff's claims against Musk. *See Platforms Wireless*, 617 F.3d at 1095 (granting summary judgment where defendants' statement left investors with the "unmistakable impression" that product "exist[ed]"); *see also Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 948 (9th Cir. 2005) (holding that numerous contingencies to "fund-raising effort" directly contradicted statement that $25 million offering had been "completed").

The Ninth Circuit's holding in *Platforms Wireless*, *supra*, is instructive. There, the defendants issued a press release that left investors with the impression that they had actually developed a viable ARC system, when in fact at the time, Platforms had only a design of the

[102] Exhibit 80; *see also* Teller Dep. at 134:19-23, 156:16-157:16; E. Musk Dep. at 109:23-110:1; Ahuja Dep. at 100:22-101:10; Ahuja SEC Tr. at 93:20-94:4; Viecha Dep. at 135:10-135:19.
[103] E. Musk Dep. at 125:9-25.

system and no operational prototype. 617 F.3d at 1094-95. In affirming the grant of summary judgment to plaintiff on the Section 10(b) and Rule 10b-5 claims based on this press release, the court held that considering the press release as a whole, the press release was "deceptive, an absolute and unequivocal falsehood" in that it left the "unmistakable impression that the ARC System exists." *Id.* at 1095. Similarly, Musk's "funding secured" tweet is an explicit and unambiguous representation that Musk had secured funding for a going-private transaction at $420 per share when, in fact, [REDACTED] "Funding secured" created the unmistakable impression that funding for a going-private transaction at $420 was in place; it does not reflect Musk's mere nascent discussions of funding in an uncertain and unknowable amount for a going private transaction at some unknown price using an uncertain structure. The numerous analyst reports and inquiries in response to the tweet, *e.g.*, JP Morgan, Jennison Associates, bolster this conclusion. *See No. 84 Emp'r-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003) (relying on analyst statements when determining cause of stock price movement); *see also United States v. Ferguson*, 676 F.3d 260, 274 n.10 (2d Cir. 2011) (placing "substantial" weight on "stock analysts" when evaluating statement).

Musk has stated that his tweets were true because he was confident funding could be obtained. This is unavailing. A defendant cannot defeat a fraud claim merely by asserting that he believed the statements were true. "If such a self-serving assertion could be views as controlling, there would never be a successful prosecution or claim for fraud." *Id.* at 1095. [REDACTED] the undisputed facts demonstrate that funding was not secured at $420 per share as he represented in his tweet. Musk's testimony clearly demonstrates that he was aware of this.[104] [REDACTED]

---

[104] E. Musk SEC Tr. at 231:22-232:10 [REDACTED]

[redacted], there can be no genuine issue of material fact that Musk acted with scienter when he tweeted that funding was secured. *See id.* (finding defendant acted with scienter when he had knowledge that the statement at issue was false and still authorized its release).

The events and conversations transpiring after the July 31, 2018 meeting with the Saudi PIF underscore Plaintiff's point on this issue. [redacted]

[105] Musk Interrogatory Responses at 25.
[106] Exhibit 179 at 29.
[107] Exhibit 121 at 8.
[108] *Id.* at 11.
[109] Exhibit 101 at 2.

2. <u>"Investor support is confirmed."</u>

Contrary to Musk's tweet, discovery shows that "investor support" had not been "confirmed." There was a stark difference between what Musk represented publicly and what actually existed at the time, thereby demonstrating that the tweet was "deceptive, an absolute and unequivocal falsehood." *See Platforms Wireless*, 617 F.3d at 1094-95; *see also S.E.C v. Sourlis*, 851 F.3d 139 (2d Cir. 2016) (affirming judgment for violating Section 10(b) and Rule 10b-5 where defendant represented she spoke with certain "note-holders" in connection with proposed transaction when, in fact, she indisputably did not).

Any effort by Musk to avoid summary judgment on this issue should be rejected.

---

[110] Exhibit 201 at 9.
[111] E. Musk Dep. at 218:19-219:2; Musk Interrogatory Responses at 25, 26, 27, 30, and 35.
[112] Exhibit 80; *see also* Teller Dep. at 134:19-23, 156:16-157:16; E. Musk Dep. at 109:23-110:1, 112:3-16; Ahuja Dep. at 100:22-101:10; Ahuja SEC Tr. at 93:20-94:04; Viecha Dep. at 135:10-135:19.
[113] E. Musk SEC Tr. at 116:20-22.

[redacted]

3. <u>"Only reason why this is not certain is that it's contingent on a shareholder vote."</u>

Not only was investor support not confirmed, but there were also numerous contingencies to the transaction before even getting to a shareholder vote. [redacted]

[114] Exhibits 113-120.
[115] Exhibits 113-120.
[116] Exhibit 101 at 1; E. Musk Dep. at 292:15-293:9.
[117] Exhibit 121 at 8, 11.
[118] E. Musk Dep. at 159:6-10, 213:8-12; Ahuja Dep. at 127:17-128:13; Denholm Dep. at 44:25-45:16.
[119] Exhibit 83 at 3.
[120] E. Musk SEC Tr. at 258:1-4 (emphasis added).

Thus, a shareholder vote was not the "only reasons why this is not certain," and Musk knew that at the time of his tweet.

4. "I have continued to communicate with the Managing Director of the Saudi fund. He has expressed support for proceeding subject to financial and other due diligence and their internal review process for obtaining approvals. He has also asked for additional details on how the company would be taken private, including any required percentages and any regulatory requirements."

On August 13, 2018, Musk used a blog post on Tesla's website to purportedly "answer some of the questions" that had been asked in response to his tweets from the previous week.[124] The blog post was titled "Update on Taking Tesla Private" and discussed *inter alia* why he wanted to take Tesla private, why he said "funding secured," and what his next steps would be. In pertinent part, Musk described the history of his communications with the Saudi PIF.

Rule 10b-5(b) prohibits the making of "any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R §240.10b-5(b). Musk was under no obligation to provide the public with an update on his conversations with the Saudi PIF.

[121] Exhibit 179 at 29.
[122] Exhibit 16 at 2.
[123] *Id*. at 2.
[124] *See generally id*.
[125] Exhibit 121.

However, once Musk chose to do so, he was "bound to do so in a manner that wouldn't mislead investors as to what [those conversations] consisted of." *Berson*, 527 F.3d at 987. [REDACTED] and his blog post to investors underscores the scienter with which he acted when making this statement. *See In re Apple Sec. Litig.*, No. 19-cv-02033-YGR, 2020 U.S. Dist. LEXIS 206298, at *29 (N.D. Cal. Nov. 4, 2020) ("the law is clear that close temporal proximity between an allegedly fraudulent statement or omission and a later disclosure may bolster an inference of scienter").

**B. Plaintiff Is Entitled to Summary Judgment as to the Element of Reliance.**

Where, as here, Plaintiff relies on the fraud-on-the-market doctrine, reliance by every class member is presumed where: "(1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014) ("*Halliburton II*"). Indeed, the Supreme Court has repeatedly held that "courts may presume that investors trading in efficient markets indirectly rely on public, material misrepresentations through their 'reliance on the integrity of the price set by the market.'" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 462 (2013); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011) ("*Halliburton I*"); *Basic Inc. v. Levinson*, 485 U.S. 224, 249-50 (1988). The discovery record at hand shows without question that each of the above factors is met.

First, there is no dispute that Musk's false and misleading statements were publicly known as they were made on the public platform, Twitter, by Musk who had over 22 million followers at the time. Second, the statements at issue were material.[126] Tesla's stock price reaction to the tweets was instantaneous and the market quickly reacted to further developments during the class period.[127] Third, Plaintiff's expert, Dr. Michael Hartzmark, opined that the market for Tesla's securities traded in an open, developed, and efficient market during the class period.[128] This

---

[126] Hartzmark Report (ECF No. 291-1) at ¶¶71-76.
[127] *Id.* at ¶74.
[128] *Id.* at ¶¶1, 92, 155, 179.

opinion is supported by detailed analysis of trading in Tesla securities utilizing the factors widely accepted by federal courts across the country.[129] This evidence "affords . . . [P]laintiff[] a presumption of reliance," and to defeat summary judgment, Defendants have "the burden of producing evidence to rebut the presumption" such that "no rational jury could find for [Plaintiff] on this issue." *Kaplan v. Rose*, 49 F.3d 1363, 1376 (9th Cir. 1994), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017). But Defendants have made no effort to challenge the finding of market efficiency. At class certification, Defendants did not contest any of Dr. Hartzmark's findings or Plaintiff's contention that Tesla's securities traded in an efficient market.[130] While Defendants have introduced three expert reports since then, none opines on the issue of market efficiency or the applicability of the *Basic* presumption. Finally, there is no dispute that Plaintiff and the Class traded Tesla securities between when the misrepresentations were made and when the truth was revealed.

As Plaintiff has "put forth unrebutted evidence that [Tesla] securities traded on an efficient market," summary judgment is warranted "on the issue of class-wide reliance." *In re Celestica Inc. Sec. Litig.*, No. 07 Civ. 0312 (GBD), 2014 U.S. Dist. LEXIS 116562, at *39-40 n.15 (S.D.N.Y. Aug. 20, 2014); *see also McCrary v. Elations Co. LLC*, No. EDCV 13-0242 JGB (SPx), 2014 U.S. Dist. LEXIS 190468, at *10 (C.D. Cal. Dec. 8, 2014) (where "'under the governing law, there can be but one reasonable conclusion as to the [issue],'" summary judgment is appropriate); *In re Infineon Techs. AG Sec. Litig.*, 266 F.R.D. 386, 389 (N.D. Cal. 2009) ("where a rational trier of fact could not find for the nonmoving party based on the record as a whole, there is no 'genuine issue for trial'").

**CONCLUSION**

The discovery in this case is one-sided on the issues of falsity, scienter, and reliance. Defendants cannot point to anything in the record capable of creating a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). Plaintiff's motion should be granted in its entirety.

---

[129] *Id.* at ¶¶22-92, 93-155.

[130] *See* Stipulation and Order for Class Certification dated November 25, 2020 (ECF No. 298).

Dated: January 11, 2022

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

s/ Adam M. Apton
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

-and-

Nicholas I. Porritt
Elizabeth K. Tripodi
Alexander A. Krot III
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel.: (202) 524-4290
Email: nporritt@zlk.com
Email: akrot@zlk.com
(*admitted pro hac vice*)

-and-

Joseph Levi
Eduard Korsinsky
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Email: jlevi@zlk.com
Email: ek@zlk.com
(*admitted pro hac vice*)

*Attorneys for Plaintiff and Counsel for the Class*