ELON MUSK SUPPLEMENTAL INTERROGATORY RESPONSES

1  COOLEY LLP
   STEPHEN C. NEAL (170085) (nealsc@cooley.com)
2  PATRICK E. GIBBS (183174) (pgibbs@cooley.com)
   SAMANTHA A. KIRBY (307917) (skirby@cooley.com)
3  JOSHUA WALDEN (327794) (jwalden@cooley.com)
   3175 Hanover Street
4  Palo Alto, California 94304-1130
   Telephone:    +1 650 843 5000
5  Facsimile:    +1 650 849 7400

6  SARAH M. LIGHTDALE (slightdale@cooley.com) *(Admitted Pro Hac Vice)*
   BRIAN M. FRENCH (bfrench@cooley.com) *(Admitted Pro Hac Vice)*
7  BINGXIN WU (bwu@cooley.com) *(Admitted Pro Hac Vice)*
   55 Hudson Yards
8  New York, New York  10001-2157
   Telephone:    +1 212 479 6000
9  Facsimile:    +1 212 479 6275

10 Attorneys for Defendants
   TESLA, INC., ELON MUSK, BRAD W. BUSS,
11 ROBYN DENHOLM, IRA EHRENPREIS,
   ANTONIO J. GRACIAS, JAMES MURDOCH,
12 KIMBAL MUSK, and LINDA JOHNSON RICE

13

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                      SAN FRANCISCO DIVISION

17

18 IN RE TESLA, INC. SECURITIES          Case No. 3:18-cv-04865-EMC
   LITIGATION
19                                        **ELON R. MUSK'S AMENDED AND**
                                          **SUPPLEMENTAL RESPONSES TO**
20                                        **LEAD PLAINTIFF'S FIRST SET OF**
                                          **INTERROGATORIES**
21

22

23

24 **PROPOUNDING PARTY:**      **GLEN LITTLETON**

25 **RESPONDING PARTY:**       **ELON R. MUSK**

26 **SET NUMBER:**             **ONE**

27

28

COOLEY LLP
ATTORNEYS AT LAW

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Elon R. Musk ("Mr. Musk") responds as follows to Lead Plaintiff Glen Littleton's ("Plaintiff") First Set of Interrogatories (the "Interrogatories, and each individually, "Interrogatory") dated February 24, 2021.

## IV.   GENERAL RESPONSES.

1.      Mr. Musk reserves all rights to object to the use of any responses herein in any subsequent proceeding, including the trial of this or any action.  To the extent Mr. Musk responds to these Interrogatories, he does not concede that the information requested is either relevant to any party's claim or defense or proportional to the needs of the case.  Mr. Musk preserves all objections as to competency, relevancy, authenticity, materiality, privilege and admissibility.  Mr. Musk expressly reserves the right to object to further discovery into the subject matter of any of these interrogatories.

2.      Mr. Musk's response to Plaintiff's Interrogatories is made to the best of Mr. Musk's present knowledge, information, and belief.  Said response is at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Mr. Musk's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Mr. Musk's further discovery or investigation.

3.      Mr. Musk reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to Plaintiff's Interrogatories but discovered subsequent to the date of this response, including, but not limited to, any such information or documents obtained in discovery herein.

4.      To the extent that Mr. Musk responds to Plaintiff's Interrogatories by stating that Mr. Musk will provide information and/or documents that Mr. Musk or any other party to this litigation deems to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c)(1)(G), Federal Rule of Evidence 501, or other applicable laws, Mr. Musk will provide such information, if any, only in accordance with the protective order entered by the Court on May 20, 2020 ("Protective Order") (Dkt. 255) governing the disclosure and use of such information.

1       5.      Mr. Musk is willing to meet and confer with Plaintiff regarding any objection

2   and/or response herein.

3   **V.       GENERAL OBJECTIONS.**

4       Mr. Musk makes the following general objections, whether or not separately set forth in

5   response to each Interrogatory, to each Instruction, Definition, and Interrogatory made in Plaintiff's

6   First Set of Interrogatories:

7       1.      Mr. Musk objects to all Instructions, Definitions, and Interrogatories to the extent

8   that they improperly attempt to expand, alter, or modify the scope of permissible discovery under,

9   or impose a duty or obligation that is inconsistent with, in excess of, or not authorized by, the

10  Federal Rules of Civil Procedure ("FRCP"), the Local Rules of the U.S. District Court for the

11  Northern District of California (the "Local Rules"), or any other applicable law.  In responding to

12  these Interrogatories, Mr. Musk shall follow the FRCP, the Local Rules, and any orders entered

13  by the Court rather than any of Plaintiff's instructions and requirements that go beyond or

14  contradict those legal requirements.

15      2.      Mr. Musk objects to each and every Interrogatory to the extent that such

16  Interrogatory seeks information that is not relevant to the claims or defenses of any party or is not

17  proportional to the needs of the case, considering the importance of the issues at stake in the action,

18  the amount in controversy, the parties' relative access to relevant information, the parties'

19  resources, the importance of the discovery in resolving the issues, and whether the burden or

20  expense of the proposed discovery outweighs its likely benefit.

21      3.      Mr. Musk objects to each and every Interrogatory to the extent that such

22  Interrogatory seeks documents or information already in the possession of Plaintiff, equally

23  accessible to Plaintiff, or available to Plaintiff through public sources or records, on the ground

24  that it subjects Mr. Musk to unreasonable and undue burden and expense.

25      4.      Mr. Musk objects to all Instructions, Definitions, and Interrogatories insofar as each

26  such Instruction, Definition, or Interrogatory seeks information or production of documents

27  protected by the attorney-client privilege, the work product doctrine, or any other privilege,

28  immunity, or doctrine recognized by any and all federal or state rules or laws, or otherwise not

COOLEY LLP
ATTORNEYS AT LAW

MUSK'S AM. AND SUPP. RESPONSES TO LEAD PLAINTIFF'S
FIRST SET OF INTERROGATORIES
CASE NO. 18-CV-04865-EMC

subject to discovery under the FRCP.  Such documents or information shall not be provided in response to the Interrogatories and any inadvertent disclosure or production thereof shall not be deemed a waiver of any privilege with respect to such documents or information, or of any work product immunity which may attach thereto.

5.      Mr. Musk objects to all Instructions, Definitions, and Interrogatories to the extent they seek information protected from discovery by any right to privacy or any other applicable privilege or protection, including the right to privacy of third parties, or by Mr. Musk's obligations under applicable law or contract to protect such confidential information, including as set forth in confidentiality and/or non-disclosure agreements or understandings with third parties.  Mr. Musk will provide such information, if any, only in accordance with the Protective Order.

6.      Mr. Musk objects to all Instructions, Definitions, and Interrogatories to the extent they seek information or documents not currently in Mr. Musk's possession, custody, or control, seek to require Mr. Musk to search for information or documents no longer in existence or in Mr. Musk's possession, custody, or control, or refer to persons, entities, or events not known or controlled by Mr. Musk, which would subject Mr. Musk to unreasonable and undue annoyance, oppression, burden, and expense.

7.      Mr. Musk objects to each and every Interrogatory to the extent it calls for a legal conclusion and/or purports to require Mr. Musk to make ultimate factual determinations without benefit of full discovery, investigation, and evaluation.

8.      Mr. Musk objects to each and every Interrogatory to the extent it is duplicative of or redundant with other Interrogatories herein, or other requests for information made by Plaintiff, including via other discovery methods authorized under the FRCP (e.g., Requests for Production), on the grounds that such Interrogatory would unreasonably subject Mr. Musk to undue annoyance, oppression, burden, and expense.

## VI.   OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS.

1.      Mr. Musk objects to Instruction No. 1 to the extent it seeks to require Mr. Musk to supplement his Interrogatory responses, in the event Mr. Musk obtains additional information that would change or modify one or more of Mr. Musk's previous Interrogatory responses on an

1   accelerated timeline or is otherwise in excess of any obligation imposed by law, including the

2   requirements of the FRCP and the Local Rules.  Mr. Musk further objects to Instruction No. 1 on

3   the grounds that it seeks to require Mr. Musk to serve supplemental and/or amended responses

4   upon "Defendants."

5        2.    Mr. Musk objects to the Definition of "Account" or "Accounts" as vague,

6   ambiguous, and overbroad, and to the extent that it contradicts or conflicts with the Definition of

7   "Service Provider" or "Service Providers."  Subject to these objections, Mr. Musk will interpret

8   these words in accordance with their ordinary meanings.

9        3.    Mr. Musk objects to the Definition of "Communication" and "Communications"

10  to the extent that the reference to "any disclosure, transfer or exchange of information or opinion

11  in whatever form . . . and by any means of transmission or receipt" in the Definition is overbroad,

12  unduly burdensome, and seeking information protected by a privacy interest.

13       4.    Mr. Musk objects to the Definition of "Concerning" as vague and ambiguous, and

14  to the extent that it attempts to define this word beyond its ordinary meaning.  Mr. Musk further

15  objects to the Definition of "Concerning" to the extent it contradicts or conflicts with the

16  Definitions of "related to," "relating to," "in relation to," "regarding," and "concerning."  Subject

17  to these objections, Mr. Musk will interpret this word in accordance with its ordinary meaning.

18       5.    Mr. Musk objects to the definition of "Device" or "Devices" as vague, ambiguous,

19  overbroad, and unduly burdensome, and seeking information not relevant to the claims or defenses

20  of any party to the extent that it seeks "any piece of electronic equipment that has or had the ability

21  to transfer data or Documents by connecting to the Internet via Wi-Fi, satellite, or any

22  telecommunications network," including those that "you . . . lease, leased, received on a loan, were

23  loaned, have or had in your possession, or were provided by or received from any person, entity,

24  or Tesla," and including "smart devices . . . , smart televisions, and onboard electronics integrated

25  into motor vehicles."  Subject to these objections, Mr. Musk will interpret these words in

26  accordance with their ordinary meanings.

27       6.    Mr. Musk objects to the definition of "Document" or "Documents" to the extent

28  that such definition renders any Interrogatory overly broad and unduly burdensome by requiring

reference to Documents including "any record created thereby, regardless of the manner in which the record has been stored," and as such purports to require, for example, restoration of documents or data that are not retained in the ordinary course of business and that reside exclusively on extant backup tapes of electronic media and the recovery of documents or data that have been deleted or are fragmented, among other things. Mr. Musk further objects to the extent that the Definition of "Document or Documents" includes "Electronically Stored Information and Hard Copy Documents," which terms are not defined in the Interrogatories.

7.  Mr. Musk objects to the Definition of "Goldman Sachs" as overbroad and unduly burdensome to the extent that the Interrogatories seek information from inaccessible or unknown parties and to the extent that they seek information that is not reasonably known to or obtainable by Mr. Musk. Mr. Musk further objects to the Definition of "Goldman Sachs" as vague and ambiguous and because it calls for legal conclusions with respect to the terms "predecessors," "successors," "divisions," "affiliates," "agents," and "any other Person or entity acting on its behalf." Mr. Musk further objects to the Definition of "Goldman Sachs" to the extent it purports to encompass information that is protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other lawfully recognized privilege, protection, or immunity from disclosure; and/or to the extent that it purports to impose obligations greater than those set forth in the FRCP. Subject to these objections, Mr. Musk will interpret the term "Goldman Sachs" as referring to Goldman Sachs Group, Inc. and any of its employees, officers, or directors acting in their official capacities.

8.  Mr. Musk objects to the Definition of "Identify" or "Identification," and to all Interrogatories containing those terms, as overbroad, vague, ambiguous, and unduly burdensome, and to the extent that the Interrogatories seek information from inaccessible or unknown parties, seek information that is not reasonably known to or obtainable by Mr. Musk, and would impose upon Mr. Musk an obligation in excess of what is called for by the FRCP. Mr. Musk further objects to the Definition of "Identify" or "Identification" to the extent that the term "document" contained in the subparts therein is undefined, vague, and ambiguous, and to the extent that it contradicts or conflicts with the Definition of the term "Document" or "Documents." Subject to

these objections, Mr. Musk will interpret the term "document" in accordance with its ordinary meaning.  Mr. Musk also objects to the Definition of "Identify" or "Identification" to the extent that it is circular because it uses the terms "identity," "identify(ing)" and "identification."  Subject to these objections, Mr. Musk will interpret the terms "Identify" and "Identification" in accordance with their ordinary meanings.

9.      Mr. Musk objects to the Definition of "Identify" or "Identification" when used with respect to a person or entity as overbroad, unduly burdensome, and seeking information not relevant to the claims or defenses of any party to the extent that it seeks the last known address and present or last known place of employment for any natural person and the principal place of business for any entity.

10.      Mr. Musk objects to the Definition of "Identify" or "Identification" when used with respect to the term "Communication" or "Communications" as overbroad, unduly burdensome, and seeking information not relevant to the claims or defenses of any party to the extent that it seeks the type of Communication; the identification of each person who made, received, or was present when the Communication or Communications were made; the phone number, email, or user/handle name of each person who made, received, or was present when the Communication or Communications were made, where the Communication or Communications were not conducted in person; the location of each person who made, received, or was present when the Communication or Communications took place; and the subject matter discussed to the extent that subject matter is not relevant to the claims or defenses of any party.

11.      Mr. Musk objects to the Definition of "Identify" or "Identification" when used with respect to the term "Account" or "Accounts" as overbroad, unduly burdensome, and seeking information not relevant to the claims or defenses of any party to the extent that it seeks information related to Accounts associated with any Device or Devices containing information or used for communications not related to this case and the address of the business or person providing or maintaining the account.

12.      Mr. Musk objects to the Definition of "Identify" or "Identification" when used with respect to the term "Device" or "Devices" as overbroad, unduly burdensome, seeking information

protected by a privacy interest and seeking information not relevant to the claims or defenses of any party to the extent that it seeks information relating to Devices containing information or used for communications not related to this case, and to the extent it seeks each Device's make, model number, and serial number; International Mobile Equipment Identity Number and/or Electronic Serial Number; and Internet Protocol address.

13. Mr. Musk objects to the Definition of "Identify" or "Identification" when used with respect to the assertion of a claim of privilege or other immunity from discovery as overbroad, unduly burdensome, and seeking information not relevant to the claims or defenses of any party to the extent that such Definition seeks to impose obligations on Mr. Musk different from or greater than those imposed by the FRCP 26(b)(5) and other applicable laws.  Mr. Musk further objects to the Definition of "Identify" or "Identification" when used with respect to the assertion of a claim of privilege or other immunity from discovery as overbroad, unduly burdensome, and seeking information not relevant to the claims or defenses of any party to the extent that it seeks each document's type, title, all subject matter contained within it, title, and number of pages; the identity of each person who participated in its preparation; the identity of each person who signed or sent the document; the identity of each person to whom the document or information was addressed, copied, or sent; and the identity of each person who received the document or information.

14. Mr. Musk objects to the Definition of "Morgan Stanley" as overbroad and unduly burdensome to the extent that the Interrogatories seek information from inaccessible or unknown parties and to the extent that they seek information that is not reasonably known to or obtainable by Mr. Musk.  Mr. Musk further objects to the Definition of "Morgan Stanley" as vague and ambiguous and because it calls for legal conclusions with respect to the terms "predecessors," "successors," "divisions," "affiliates," "agents," and "any other Person or entity acting on its behalf."  Mr. Musk further objects to the Definition of "Morgan Stanley" to the extent it purports to encompass information that is protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other lawfully recognized privilege, protection, or immunity from disclosure; and/or to the extent that it purports to impose obligations greater than those set forth in the FRCP.  Subject to these objections, Mr. Musk will interpret the term "Morgan Stanley" as

1  referring to Morgan Stanley and any of its employees, officers, or directors acting in their official

2  capacities.

3         15.    Mr. Musk objects to the Definition of "Munger Tolles" as overbroad and unduly

4  burdensome to the extent that the Interrogatories seek information from inaccessible or unknown

5  parties and to the extent that they seek information that is not reasonably known to or obtainable

6  by Mr. Musk.  Mr. Musk further objects to the Definition of "Munger Tolles" as vague and

7  ambiguous and because it calls for legal conclusions with respect to the terms "predecessors,"

8  "successors," "divisions," "affiliates," "agents," and "any other Person or entity acting on its

9  behalf."  Mr. Musk further objects to the definition of "Munger Tolles" to the extent it purports to

10 encompass information that is protected by the attorney-client privilege, the attorney work-product

11 doctrine, and/or any other lawfully recognized privilege, protection, or immunity from disclosure;

12 and/or to the extent that it purports to impose obligations greater than those set forth in the FRCP.

13 Subject to these objections, Mr. Musk will interpret the term "Munger Tolles" as referring to

14 Munger, Tolles & Olson LLP and any of its employees, officers, or directors acting in their official

15 capacities.

16         16.    Mr. Musk objects to the Definition of "Public Investment Fund" or

17 "PIF" as overbroad and unduly burdensome to the extent that the Interrogatories seek information

18 from inaccessible or unknown parties and to the extent that they seek information that is not

19 reasonably known to or obtainable by Mr. Musk.  Mr. Musk further objects to the Definition of

20 "Public Investment Fund" of "PIF" as vague and ambiguous and because it calls for legal

21 conclusions with respect to the terms "predecessors," "successors," "divisions," "affiliates,"

22 "agents," and "any other Person or entity acting on its behalf."  Mr. Musk further objects to the

23 Definition of "Public Investment Fund" of "PIF" to the extent it purports to encompass information

24 that is protected by the attorney-client privilege, the attorney work-product doctrine, and/or any

25 other lawfully recognized privilege, protection, or immunity from disclosure; and/or to the extent

26 that it purports to impose obligations greater than those set forth in the FRCP.  Subject to these

27 objections, Mr. Musk will interpret the terms "Public Investment Fund" and "PIF" as referring to

28 the Public Investment Fund of Saudi Arabia and any of its employees, officers, or directors acting

in their official capacities.

17.     Mr. Musk objects to the Definition of "Person" as vague and ambiguous and to the extent that it attempts to define words beyond their ordinary meaning.  Subject to these objections, Mr. Musk will interpret this word in accordance with its ordinary meaning.

18.     Mr. Musk objects to the Definition of "Service Provider" or "Service Providers" as vague, ambiguous, overbroad, and to the extent that it contradicts or conflicts with the Definition of "Account" or "Accounts."  Subject to these objections, Mr. Musk will interpret these words in accordance with their ordinary meanings.

19.     Mr. Musk objects to the Definition of "Silver Lake" as overbroad and unduly burdensome to the extent that the Interrogatories seek information from inaccessible or unknown parties and to the extent that they seek information that is not reasonably known or obtainable by Mr. Musk.  Mr. Musk further objects to the Definition of "Silver Lake" as vague and ambiguous and because it calls for legal conclusions with respect to the terms "predecessors," "successors," "divisions," "affiliates," "agents," and "any other Person or entity acting on its behalf."  Mr. Musk further objects to the Definition of "Silver Lake" to the extent it purports to encompass information that is protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other lawfully recognized privilege, protection, or immunity from disclosure; and/or to the extent that it purports to impose obligations greater than those set forth in the FRCP.  Subject to these objections, Mr. Musk will interpret the term "Silver Lake" as referring to Silver Lake Management, L.L.C. and any of its employees, officers, or directors acting in their official capacities.

20.     Mr. Musk objects to the Definition of "Tesla" as overbroad and unduly burdensome to the extent that the Interrogatories seek information from inaccessible or unknown parties and to the extent that they seek information that is not reasonably known or obtainable by Mr. Musk.  Mr. Musk further objects to the Definition of "Tesla" as vague and ambiguous and because it calls for legal conclusions with respect to the terms "predecessors," "successors," "divisions," "affiliates," "agents," and "any other Person or entity acting on its behalf."  Mr. Musk further objects to the Definition of "Tesla" to the extent it purports to encompass information that is protected by the

attorney-client privilege, the attorney work-product doctrine, and/or any other lawfully recognized privilege, protection, or immunity from disclosure; and/or to the extent that it purports to impose obligations greater than those set forth in the FRCP.  Subject to these objections, Mr. Musk will interpret the term "Tesla" as referring to Tesla, Inc. and any of its employees, officers, or directors acting in their official capacities.

21.    Mr. Musk objects to the Definition of "Wachtell" as overbroad and unduly burdensome to the extent that the Interrogatories seek information from inaccessible or unknown parties and to the extent that they seek information that is not reasonably known or obtainable by Mr. Musk.  Mr. Musk further objects to the Definition of "Wachtell" as vague and ambiguous and because it calls for legal conclusions with respect to the terms "predecessors," "successors," "divisions," "affiliates," "agents," and "any other Person or entity acting on its behalf."  Mr. Musk further objects to the Definition of "Wachtell" to the extent it purports to encompass information that is protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other lawfully recognized privilege, protection, or immunity from disclosure; and/or to the extent that it purports to impose obligations greater than those set forth in the FRCP.  Subject to these objections, Mr. Musk will interpret the term "Wachtell" as referring to Wachtell, Lipton, Rosen & Katz and any of its employees, officers, or directors acting in their official capacities.

22.    Mr. Musk objects to the Definition of "related to," "relating to," "in relation to," "regarding," and "concerning" as vague and ambiguous, to the extent that it attempts to define words beyond their ordinary meaning, and to the extent it contradicts or conflicts with the Definition of "Concerning."  Subject to these objections, Mr. Musk will interpret these words in accordance with their ordinary meanings.

VII.    SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES.

Without waiving or limiting in any manner any of the foregoing General Responses and Objections and Objections to Instructions and Definitions, but rather incorporating them into each of the following responses to the extent applicable, Mr. Musk responds to the specific Interrogatories as follows:

COOLEY LLP
ATTORNEYS AT LAW

MUSK'S AM. AND SUPP. RESPONSES TO LEAD PLAINTIFF'S
FIRST SET OF INTERROGATORIES
CASE NO. 18-CV-04865-EMC

1    **INTERROGATORY NO. 1:**

2          Identify any Account or Accounts with a Service Provider or Service Providers associated

3    with any Devices used by Elon Musk during July 1, 2018 through August 24, 2018, inclusive.

4    **RESPONSE TO INTERROGATORY NO. 1:**

5          In addition to the foregoing General Objections and Objections to Instructions and

6    Definitions, which are incorporated by reference herein, Mr. Musk objects to this Interrogatory on

7    the grounds that it is overbroad and unduly burdensome and seeks information that is not relevant

8    to the claims or defenses of any party and not proportional to the needs of the case insofar as none

9    of Plaintiff's allegations relate to any of Mr. Musk's Account(s) with any Service Provider(s).

10         Mr. Musk also objects to this Interrogatory to the extent that it seeks information protected

11   from discovery by any right to privacy or any other applicable privilege or protection, including

12   the right to privacy of third parties, or by Mr. Musk's obligations under applicable law or contract

13   to protect such confidential information, including as set forth in confidentiality and/or non-

14   disclosure agreements or understandings with third parties.   Mr. Musk will provide such

15   information, if any, only in accordance with the Protective Order.

16         Mr. Musk further objects that as defined herein, the terms "Account" and "Service

17   Provider" are vague, ambiguous, and overbroad and objects to the extent that their Definitions

18   contradict or conflict with one another.  Mr. Musk also objects that as defined herein the term

19   "Devices" is vague, ambiguous, overbroad, and unduly burdensome, and seeking information not

20   relevant to the claims or defenses of any party to the extent that it seeks "any piece of electronic

21   equipment that has or had the ability to transfer data or Documents by connecting to the Internet

22   via Wi-Fi, satellite, or any telecommunications network," including those that "you . . . lease,

23   leased, received on a loan, were loaned, have or had in your possession, or were provided by or

24   received from any person, entity, or Tesla," and including "smart devices . . . , smart televisions,

25   and onboard electronics integrated into motor vehicles."  For the purpose of this Interrogatory, Mr.

26   Musk will interpret these words in accordance with their ordinary meanings.

27         Subject to and without waiving the foregoing objections, Mr. Musk responds as follows:

28         Mr. Musk refers Plaintiff to the following document for information regarding an Account

1  held by Mr. Musk: SEC-EPROD-000009602.

2       Mr. Musk's use of mobile phones was discussed in his testimony to the U.S. Securities and

3  Exchange Commission ("SEC").[1]  (*See, e.g.*, Musk Tr. SEC-EPROD-000016128-16132.)

4       Discovery is ongoing and Mr. Musk reserves the right to supplement and/or amend this

5  response should he learn any additional information responsive to the Interrogatory.

6  **INTERROGATORY NO. 2:**

7       Identify all funding that was secured as of 12:48 P.M. EST on August 7, 2018 to take Tesla

8  private at $420 per share.

9  **RESPONSE TO INTERROGATORY NO. 2:**

10      In addition to the foregoing General Objections and Objections to Instructions and

11  Definitions, which are incorporated by reference herein, Mr. Musk objects to this Interrogatory on

12  the grounds that it is a premature contention interrogatory.   Mr. Musk also objects to this

13  Interrogatory to the extent that it seeks information protected from discovery by any right to privacy

14  or any other applicable privilege or protection, including the right to privacy of third parties, or by

15  Mr. Musk's obligations under applicable law or contract to protect such confidential information,

16  including as set forth in confidentiality and/or non-disclosure agreements or understandings with

17  third parties.   Mr. Musk will provide such information, if any, only in accordance with the

18  Protective Order.

19      Mr. Musk also objects that the word "secured" is undefined and susceptible to multiple

20  varied interpretations.   Mr. Musk further objects to this Interrogatory to the extent that it seeks

21  information protected by the attorney-client privilege, work product doctrine, common interest

22  privilege, or common law privilege, doctrine, immunity, rule of confidentiality, or protection from

23  disclosure that may attach to the information requested.

24      Subject to and without waiving the foregoing objections, Mr. Musk responds as follows:

25      At the July 31, 2018 meeting at Tesla's Fremont factory attended by Yasir Al-Rumayyan,

26  Saad Al-Jarboa, and Naif Al-Mogren from the Public Investment Fund of Saudi Arabia ("PIF") and

27

28  _____
[1] All "Tr." cites are to testimony taken by the SEC in August and September 2018, which transcripts have been produced to Plaintiff.

1   Mr.   Musk,   Sam   Teller,   and   Deepak   Ahuja   from   Tesla   (*see,   e.g.*,

2   TESLA_LITTLETON_00005289), Mr. Musk received an oral commitment from Mr. Al-

3   Rumayyan to fund the contemplated going-private transaction, as Mr. Musk and multiple other

4   participants in that meeting confirmed in their testimony to the SEC (*see, e.g.*, Musk Tr. SEC-

5   EPROD-000016253-55; Teller Tr. SEC-EPROD-000017399-402; Ahuja Tr. SEC-EPROD-

6   000014461-65). Mr. Musk was referring to this oral commitment from the PIF when he used the

7   phrase "funding secured" at 12:48 P.M. EST on August 7, 2018. *See, e.g.*, Musk Tr. SEC-EPROD-

8   000016333. At that time Mr. Musk also "had other funding sources in mind" but "felt . . . [he] was

9   subscribed based on the PIF desire to take Tesla private alone." *See, e.g.*, Musk Tr. SEC-EPROD-

10   000016334. Those other sources of funding included "Google or Alphabet," SpaceX, and the

11   "UA[E] fund." *See, e.g.*, Musk Tr. SEC-EPROD-000016334-39.

12        Mr. Musk further responds that, as Mr. Musk explained in his blog post "Update on Taking

13   Tesla Private," published on Tesla's website on August 13, 2018:

14
15       Going back almost two years, the Saudi Arabian sovereign wealth fund has
    approached me multiple times about taking Tesla private. . . . Recently, after the

16       Saudi fund bought almost 5% of Tesla stock through the public markets, they
    reached out to ask for another meeting. That meeting took place on July 31st.

17       During the meeting, the Managing Director of the fund expressed regret that I had
    not moved forward previously on a going private transaction with them, and he

18       strongly expressed his support for funding a going private transaction for Tesla at
    this time. I understood from him that no other decision makers were needed and

19       that they were eager to proceed. I left the July 31st meeting with no question that a
    deal with the Saudi sovereign fund could be closed, and that it was just a matter of

20       getting the process moving. This is why I referred to "funding secured" in the
    August 7th announcement.

21

22   Elon Musk, *Update on Taking Tesla Private*, Tesla (Aug. 13, 2018)

23   https://www.tesla.com/blog/update-taking-tesla-private.

24        Discovery is ongoing and Mr. Musk reserves the right to supplement and/or amend this

25   response should he learn any additional information responsive to the Interrogatory.

26   **INTERROGATORY NO. 3:**

27        Identify every source of funding that was legally committed for a going private transaction

28   of Tesla and when such funding became legally committed.

1    **RESPONSE TO INTERROGATORY NO. 3:**

2         In addition to the foregoing General Objections and Objections to Instructions and

3    Definitions, which are incorporated by reference herein, Mr. Musk objects to this Interrogatory on

4    the grounds that it is a premature contention interrogatory.   Mr. Musk also objects to this

5    Interrogatory to the extent that it seeks information protected from discovery by any right to privacy

6    or any other applicable privilege or protection, including the right to privacy of third parties, or by

7    Mr. Musk's obligations under applicable law or contract to protect such confidential information,

8    including as set forth in confidentiality and/or non-disclosure agreements or understandings with

9    third parties.   Mr. Musk will provide such information, if any, only in accordance with the

10   Protective Order.

11        Mr. Musk further objects that the term "legally committed" is undefined, vague, and

12   ambiguous in the context of this Interrogatory.   Mr. Musk further objects to the term "legally

13   committed" as undefined, vague, and ambiguous on the grounds that it calls for a legal conclusion

14   and also because the Interrogatory does not specify which nation's legal system is contemplated.

15        Mr. Musk further objects on the grounds that the phrase "source of funding" is undefined,

16   vague, ambiguous, and overbroad in the context of this Interrogatory.

17        Mr. Musk also objects that the phrase "a going private transaction of Tesla" is vague,

18   ambiguous, and overbroad.   Mr. Musk further objects that this Interrogatory is overbroad and

19   unduly burdensome and seeks information that is not relevant to the claims or defenses of any party

20   and not proportional to the needs of the case, to the extent that it seeks information relating to *any*

21   funding committed for *any* going private transaction contemplated at *any* time.   For the purpose of

22   this Interrogatory, Mr. Musk will interpret the phrase "a going private transaction of Tesla" to refer

23   to the contemplated going private transaction that was the subject of the proposal Mr. Musk sent

24   by email to Tesla's Board of Directors on August 2, 2018.

25        Mr. Musk further objects that this Interrogatory is overbroad and unduly burdensome and

26   seeks information that is not relevant to the claims or defenses of any party and not proportional to

27   the needs of the case because no Defendant is alleged to have stated that funding was "legally

28   committed" for any "going private transaction" and/or the contemplated going private transaction.

Mr. Musk also objects on the grounds that the Interrogatory is overbroad and unduly burdensome and seeks information that is not relevant to the claims or defenses of any party and not proportional to the needs of the case because it does not define any relevant time period.

Mr. Musk also objects that as defined herein, the term "Identify" when used with respect to a person or entity is overbroad, unduly burdensome, and seeking information not relevant to the claims or defenses of any party to the extent that it seeks the last known address and present or last known place of employment for any natural person and the principal place of business for any entity.

Mr. Musk further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, work product doctrine, common interest privilege, or common law privilege, doctrine, immunity, rule of confidentiality, or protection from disclosure that may attach to the information requested.

Subject to and without waiving the foregoing objections, Mr. Musk responds as follows:

At the July 31, 2018 meeting at Tesla's Fremont factory attended by Yasir Al-Rumayyan, Saad Al-Jarboa, and Naif Al-Mogren from the PIF and Mr. Musk, Sam Teller, and Deepak Ahuja from Tesla (*see, e.g.*, TESLA_LITTLETON_00005289), Mr. Musk received an oral commitment from Mr. Al-Rumayyan to fund the contemplated going-private transaction, as Mr. Musk and multiple other participants in that meeting confirmed in their testimony to the SEC (*see, e.g.*, Musk Tr. SEC-EPROD-000016253-55; Teller Tr. SEC-EPROD-000017399-402; Ahuja Tr. SEC-EPROD-000014461-65).

Mr. Musk further responds that, as Mr. Musk explained in his blog post "Update on Taking Tesla Private," published on Tesla's website on August 13, 2018:

> Going back almost two years, the Saudi Arabian sovereign wealth fund has approached me multiple times about taking Tesla private. . . .  Recently, after the Saudi fund bought almost 5% of Tesla stock through the public markets, they reached out to ask for another meeting.  That meeting took place on July 31st. During the meeting, the Managing Director of the fund expressed regret that I had not moved forward previously on a going private transaction with them, and he strongly expressed his support for funding a going private transaction for Tesla at this time.  I understood from him that no other decision makers were needed and that they were eager to proceed.  I left the July 31st meeting with no question that a deal with the Saudi sovereign fund could be closed, and that it was just a matter of

getting the process moving.  This is why I referred to "funding secured" in the August 7th announcement.

Elon Musk, *Update on Taking Tesla Private*, Tesla (Aug. 13, 2018)

https://www.tesla.com/blog/update-taking-tesla-private.

Mr. Musk did not execute a written agreement to fund the contemplated going-private transaction with any source of funding.

Discovery is ongoing and Mr. Musk reserves the right to supplement and/or amend this response should he learn any additional information responsive to the Interrogatory.

**INTERROGATORY NO. 4:**

Identify every source of funding for a going private transaction at $420 per share of Tesla with whom Elon Musk had communicated prior to 12:48 P.M. EST on August 7, 2018.

**RESPONSE TO INTERROGATORY NO. 4:**

In addition to the foregoing General Objections and Objections to Instructions and Definitions, which are incorporated by reference herein, Mr. Musk objects to this Interrogatory on the grounds that it is a premature contention interrogatory.  Mr. Musk also objects to this Interrogatory to the extent that it seeks information protected from discovery by any right to privacy or any other applicable privilege or protection, including the right to privacy of third parties, or by Mr. Musk's obligations under applicable law or contract to protect such confidential information, including as set forth in confidentiality and/or non-disclosure agreements or understandings with third parties.  Mr. Musk will provide such information, if any, only in accordance with the Protective Order.

Mr. Musk also objects that the phrase "a going private transaction" is vague, ambiguous, and overbroad.  Mr. Musk further objects that this Interrogatory is overbroad and unduly burdensome and seeks information that is not relevant to the claims or defenses of any party and not proportional to the needs of the case, to the extent that it seeks information relating to *any* communication Mr. Musk had at *any* time prior to August 7, 2018, with *any* individual linked to a potential source of funding for *any* contemplated going private transaction.  For the purpose of this Interrogatory, Mr. Musk will interpret the phrase "a going private transaction" to refer to the

1   contemplated going private transaction that was the subject of the proposal Mr. Musk sent by email

2   to Tesla's Board of Directors on August 2, 2018.

3       Mr. Musk further objects on the grounds that the phrase "source of funding" is undefined,

4   vague, ambiguous, and overbroad in the context of this Interrogatory.

5       Mr. Musk also objects that as defined herein, the term "Identify" when used with respect to

6   a person or entity is overbroad, unduly burdensome, and seeking information not relevant to the

7   claims or defenses of any party to the extent that it seeks the last known address and present or last

8   known place of employment for any natural person and the principal place of business for any

9   entity.

10      Mr. Musk further objects to this Interrogatory to the extent that it seeks information

11  protected by the attorney-client privilege, work product doctrine, common interest privilege, or

12  common law privilege, doctrine, immunity, rule of confidentiality, or protection from disclosure

13  that may attach to the information requested.

14      Subject to and without waiving the foregoing objections, Mr. Musk responds as follows:

15      At the July 31, 2018 meeting at Tesla's Fremont factory attended by Yasir Al-Rumayyan,

16  Saad Al-Jarboa, and Naif Al-Mogren from the PIF and Mr. Musk, Sam Teller, and Deepak Ahuja

17  from Tesla (*see, e.g.*, TESLA_LITTLETON_00005289), Mr. Musk received an oral commitment

18  from Mr. Al-Rumayyan to fund the contemplated going-private transaction, as Mr. Musk and

19  multiple other participants in that meeting confirmed in their testimony to the SEC (*see, e.g.*, Musk

20  Tr. SEC-EPROD-000016253-55; Teller Tr. SEC-EPROD-000017399-402; Ahuja Tr. SEC-

21  EPROD-000014461-65).

22      Mr. Musk further responds that, as Mr. Musk explained in his blog post "Update on Taking

23  Tesla Private," published on Tesla's website on August 13, 2018:

24      Going back almost two years, the Saudi Arabian sovereign wealth fund has
25      approached me multiple times about taking Tesla private. . . .  Recently, after the
        Saudi fund bought almost 5% of Tesla stock through the public markets, they
26      reached out to ask for another meeting.  That meeting took place on July 31st.
        During the meeting, the Managing Director of the fund expressed regret that I had
27      not moved forward previously on a going private transaction with them, and he
        strongly expressed his support for funding a going private transaction for Tesla at
28      this time.  I understood from him that no other decision makers were needed and

that they were eager to proceed. I left the July 31st meeting with no question that a deal with the Saudi sovereign fund could be closed, and that it was just a matter of getting the process moving. This is why I referred to "funding secured" in the August 7th announcement.

Elon Musk, *Update on Taking Tesla Private*, Tesla (Aug. 13, 2018)

https://www.tesla.com/blog/update-taking-tesla-private.

Mr. Musk also communicated with Egon Durban of Silver Lake on August 6, 2018 (*see, e.g.*, Musk Tr. SEC-EPROD-000016277-83).

Discovery is ongoing and Mr. Musk reserves the right to supplement and/or amend this response should he learn any additional information responsive to the Interrogatory.

**INTERROGATORY NO. 5:**

Identify every investor referred to in Elon Musk's tweet sent at 3:36 P.M. EST on August 7, 2018 set forth in paragraph 85 of the Complaint.

**RESPONSE TO INTERROGATORY NO. 5:**

In addition to the foregoing General Objections and Objections to Instructions and Definitions, which are incorporated by reference herein, Mr. Musk objects to this Interrogatory to the extent that it seeks information protected from discovery by any right to privacy or any other applicable privilege or protection, including the right to privacy of third parties, or by Mr. Musk's obligations under applicable law or contract to protect such confidential information, including as set forth in confidentiality and/or non-disclosure agreements or understandings with third parties. Mr. Musk will provide such information, if any, only in accordance with the Protective Order.

Mr. Musk also objects that as defined herein, the term "Identify" when used with respect to a person or entity is overbroad, unduly burdensome, and seeking information not relevant to the claims or defenses of any party to the extent that it seeks the last known address and present or last known place of employment for any natural person and the principal place of business for any entity.

Mr. Musk further objects on the grounds that the term "investor" is undefined, vague, and ambiguous in the context of this Interrogatory.

Mr. Musk also objects to this Interrogatory to the extent that it seeks information protected

1  by the attorney-client privilege, work product doctrine, common interest privilege, or common law

2  privilege, doctrine, immunity, rule of confidentiality, or protection from disclosure that may attach

3  to the information requested.

4      Subject to and without waiving the foregoing objections, Mr. Musk responds as follows:

5      When Mr. Musk used the term "investor" in the tweet sent at 3:36 P.M. EST on August 7,

6  2018, he meant "funding to take the company private."  *See, e.g.*, Musk Tr. SEC-EPROD-

7  000016358-59.  Mr. Musk was referring to the oral commitment from the PIF when he used the

8  phrase "investor support is confirmed" at 3:36 P.M. EST on August 7, 2018.  *See, e.g.*, *id*.  At that

9  time Mr. Musk also had in mind other investors, including Google, SpaceX, and the UAE.  *See,*

10  *e.g.*, Musk Tr. SEC-EPROD-000016359-61.

11      Mr. Musk considered his statement in the tweet sent at 3:36 P.M. EST on August 7, 2018,

12  "investor support is confirmed," to be "synonymous with 'funding secured,'" and that he "felt like

13  there was sufficient—in fact, more than sufficient investor support to take the company private."

14  (*See, e.g.*, Musk Tr. SEC-EPROD-000016357-58.)

15      Mr. Musk further responds that with respect to the statement "funding secured," as Mr.

16  Musk later explained in his blog post "Update on Taking Tesla Private," published on Tesla's

17  website on August 13, 2018:

18      Going back almost two years, the Saudi Arabian sovereign wealth fund has
19      approached me multiple times about taking Tesla private. . . .  Recently, after the
        Saudi fund bought almost 5% of Tesla stock through the public markets, they
20      reached out to ask for another meeting.  That meeting took place on July 31st.
        During the meeting, the Managing Director of the fund expressed regret that I had
21      not moved forward previously on a going private transaction with them, and he
        strongly expressed his support for funding a going private transaction for Tesla at
22      this time.  I understood from him that no other decision makers were needed and
        that they were eager to proceed.  I left the July 31st meeting with no question that a
23      deal with the Saudi sovereign fund could be closed, and that it was just a matter of
        getting the process moving.  This is why I referred to "funding secured" in the
24      August 7th announcement.

25

26  Elon Musk, *Update on Taking Tesla Private*, Tesla (Aug. 13, 2018)

27  https://www.tesla.com/blog/update-taking-tesla-private.

28      Discovery is ongoing and Mr. Musk reserves the right to supplement and/or amend this

COOLEY LLP
ATTORNEYS AT LAW

20

MUSK'S AM. AND SUPP. RESPONSES TO LEAD PLAINTIFF'S
FIRST SET OF INTERROGATORIES
CASE NO. 18-CV-04865-EMC

1    response should he learn any additional information responsive to the Interrogatory.

2    **INTERROGATORY NO. 6:**

3        Identify every instance prior to August 7, 2018 where Elon Musk had stated that funding

4    for a transaction had been secured.

5    **RESPONSE TO INTERROGATORY NO. 6:**

6        In addition to the foregoing General Objections and Objections to Instructions and

7    Definitions, which are incorporated by reference herein, Mr. Musk objects to this Interrogatory to

8    the extent that it seeks information protected from discovery by any right to privacy or any other

9    applicable privilege or protection, including the right to privacy of third parties, or by Mr. Musk's

10   obligations under applicable law or contract to protect such confidential information, including as

11   set forth in confidentiality and/or non-disclosure agreements or understandings with third parties.

12   Mr. Musk will provide such information, if any, only in accordance with the Protective Order.

13       Mr. Musk also objects on the grounds that the Interrogatory is overbroad and unduly

14   burdensome and seeks information that is not relevant to the claims or defenses of any party and

15   not proportional to the needs of the case because it does not define any relevant time period.

16       Mr. Musk further objects on the grounds that the phrase "secured" is undefined and

17   susceptible to multiple varied interpretations.

18       Mr. Musk also objects to the phrase "every instance" on the grounds that it is undefined,

19   overbroad, and unduly burdensome.  Mr. Musk further objects on the grounds that this Interrogatory

20   is overbroad and unduly burdensome and seeks information that is not relevant to the claims or

21   defenses of any party and not proportional to the needs of this case because the Interrogatory does

22   not limit the phrase "every instance" in any way, for example to public statements or statements to

23   certain individuals, nor does it limit the scope of the request to statements relating to the potential

24   transaction that was the subject of the proposal Mr. Musk sent by email to Tesla's Board of

25   Directors on August 2, 2018.

26       Mr. Musk further objects to this Interrogatory to the extent that it seeks information

27   protected by the attorney-client privilege, work product doctrine, common interest privilege, or

28   common law privilege, doctrine, immunity, rule of confidentiality, or protection from disclosure

1    that may attach to the information requested.

2         Subject to and without waiving the foregoing objections, Mr. Musk responds as follows:

3         At the July 31, 2018 meeting at Tesla's Fremont factory attended by Yasir Al-Rumayyan,

4    Saad Al-Jarboa, and Naif Al-Mogren from the PIF and Mr. Musk, Sam Teller, and Deepak Ahuja

5    from Tesla (*see, e.g.*, TESLA_LITTLETON_00005289), Mr. Musk received an oral commitment

6    from Mr. Al-Rumayyan to fund the contemplated going-private transaction, as Mr. Musk and

7    multiple other participants in that meeting confirmed in their testimony to the SEC (*see, e.g.*, Musk

8    Tr. SEC-EPROD-000016253-55; Teller Tr. SEC-EPROD-000017399-402; Ahuja Tr. SEC-

9    EPROD-000014461-65).

10        Mr. Musk further responds that Mr. Musk discussed the PIF's funding commitment and the

11   contemplated going private transaction with a number of individuals prior to August 7, 2018,

12   including Sam Teller on July 31 and August 1, 2018 (*see, e.g.*, Teller Tr. SEC-EPROD-000017439-

13   40); James Murdoch on August 2, 2018 (*see, e.g.*, Murdoch Tr. SEC-EPROD-000015917-19);

14   participants in the August 3, 2018 meeting of Tesla's Board of Directors, including Deepak Ahuja,

15   Todd Maron,  Phil Rothenberg, Jonathan Chang, and Tesla Directors Brad Buss, Robyn Denholm,

16   Ira Ehrenpreis, Antonio Gracias, Kimbal Musk, James Murdoch, and Linda Johnson Rice (*see, e.g.*,

17   Ahuja Tr. SEC-EPROD-000014525-28, SEC-EPROD-000014533, SEC-EPROD-000014545;

18   Buss Tr. SEC-EPROD-000014795-97; Denholm Tr. SEC-EPROD-000016955-56; Ehrenpreis Tr.

19   SEC-EPROD-000015154-57; Gracias Tr. SEC-EPROD-000015542-46); and Egon Durban of

20   Silver Lake on August 6, 2018 (*see, e.g.*, Musk Tr. SEC-EPROD-000016277-78).

21        Discovery is ongoing and Mr. Musk reserves the right to supplement and/or amend this

22   response should he learn any additional information responsive to the Interrogatory.

23   **INTERROGATORY NO. 7:**

24        Identify when Elon Musk retained "Silver Lake and Goldman Sachs as financial advisors,

25   plus Wachtell, Lipton, Rosen & Katz and Munger, Tolles & Olson as legal advisors" as set forth in

26   paragraph 104 of the Complaint.

27   **RESPONSE TO INTERROGATORY NO. 7:**

28        In addition to the foregoing General Objections and Objections to Instructions and

Definitions, which are incorporated by reference herein, Mr. Musk also objects to this Interrogatory to the extent that it seeks information protected from discovery by any right to privacy or any other applicable privilege or protection, including the right to privacy of third parties, or by Mr. Musk's obligations under applicable law or contract to protect such confidential information, including as set forth in confidentiality and/or non-disclosure agreements or understandings with third parties. Mr. Musk will provide such information, if any, only in accordance with the Protective Order.

Mr. Musk further objects on the grounds that the phrase "retained" is undefined, vague, ambiguous, and overbroad in the context of this Interrogatory.  Mr. Musk also objects that this Interrogatory is overbroad and unduly burdensome and seeks information not relevant to any party's claim or defense because no Defendant is alleged to have stated that Mr. Musk "retained" Silver Lake, Goldman Sachs, Wachtell Lipton Rose & Katz, and/or Munger Tolles & Olson. *Cf.* Complaint ¶ 104.

Musk also objects that the term "Identify" when used with respect to time is undefined, vague, and ambiguous in the context of this Interrogatory.

Mr. Musk further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, work product doctrine, common interest privilege, or common law privilege, doctrine, immunity, rule of confidentiality, or protection from disclosure that may attach to the information requested.

Subject to and without waiving the foregoing objections, Mr. Musk responds as follows:

Mr. Musk's dealings with legal and/or financial advisors regarding the contemplated going private transaction that was the subject of the proposal Mr. Musk sent by email to Tesla's Board of Directors on August 2, 2018 are addressed in documents and testimony including: Musk Tr. SEC-EPROD-000016277-79; Musk Tr. SEC-EPROD-000016283-84; ERM_SEC_AUG7_00000001; ERM_SEC_AUG7_00000006;   SEC-EPROD-000005436;   SEC-EPROD-000007442;   SEC-EPROD-000008081;   ERM_SECAUG7_00000021;   SEC-EPROD-000006255;   SEC-EPROD-000006256;      Durban      Tr.      SEC-EPROD-000016652;      SEC-EPROD-000006103; TESLA_LITTLETON_00005195; TESLA_LITTLETON_00001212; SEC-EPROD-000017136; SEC-EPROD-000011315;   SEC-EPROD-000005377;   SEC-EPROD-000009780;   SEC-EPROD-

1   000009781;              SEC-EPROD-000009787;              SEC-EPROD-000009866;

2   TESLA_LITTLETON_00004961; TESLA_LITTLETON_00006108; SEC-EPROD-000009826;

3   SEC-EPROD-000010904; SEC-EPROD-000010905; SEC-EPROD-000005518.

4       Discovery is ongoing and Mr. Musk reserves the right to supplement and/or amend this

5   response should he learn any additional information responsive to the Interrogatory.

6   **INTERROGATORY NO. 8:**

7       Identify when prior to August 7, 2018 Elon Musk had discussed the potential price of $420

8   for a going private transaction of Tesla with the Public Investment Fund.

9   **RESPONSE TO INTERROGATORY NO. 8:**

10      In addition to the foregoing General Objections and Objections to Instructions and

11  Definitions, which are incorporated by reference herein, Mr. Musk objects to this Interrogatory to

12  the extent that it seeks information protected from discovery by any right to privacy or any other

13  applicable privilege or protection, including the right to privacy of third parties, or by Mr. Musk's

14  obligations under applicable law or contract to protect such confidential information, including as

15  set forth in confidentiality and/or non-disclosure agreements or understandings with third parties.

16  Mr. Musk will provide such information, if any, only in accordance with the Protective Order.

17      Mr. Musk also objects that the phrase "a going private transaction of Tesla" is vague,

18  ambiguous, and overbroad.  Mr. Musk further objects that this Interrogatory is overbroad and

19  unduly burdensome and seeks information that is not relevant to the claims or defenses of any party

20  and not proportional to the needs of the case, to the extent that it seeks information relating to *any*

21  time Mr. Musk discussed the potential price of $420 with the PIF for *any* going private transaction

22  contemplated at *any* time prior to August 7, 2018.  For the purpose of this Interrogatory, Mr. Musk

23  will interpret the phrase "a going private transaction of Tesla" to refer to the contemplated going

24  private transaction that was the subject of the proposal Mr. Musk sent by email to Tesla's Board of

25  Directors on August 2, 2018.

26      Mr. Musk also objects that the term "Identify" when used with respect to time is undefined,

27  vague, and ambiguous in the context of this Interrogatory.

28      Mr. Musk further objects to this Interrogatory to the extent that it seeks information

protected by the attorney-client privilege, work product doctrine, common interest privilege, or common law privilege, doctrine, immunity, rule of confidentiality, or protection from disclosure that may attach to the information requested.

Subject to and without waiving the foregoing objections, Mr. Musk responds as follows:

Mr. Musk testified that he arrived at the potential price of $420 on August 2, 2018, by calculating a 20% premium above the closing price of Tesla's stock on that date, because he believed that "in any kind of acquisition like this, a premium is standard," and that 20% was "a reasonable expectation in the absence of a specific number" and "a typical number for . . . take privates or acquisitions." (*See, e.g.*, Musk Tr. SEC-EPROD-000016235-36.) When Mr. Al-Rumayyan made an oral commitment to fund the contemplated going private transaction at the July 31, 2018 meeting, the most reasonable inference—which Mr. Musk made—was that the PIF was ready, willing, and able to fund the transaction at a standard, reasonable price premium. (*See, e.g.*, *id.*; Musk Tr. SEC-EPROD-000016244; SEC-EPROD-000016255-61.) Prior to August 7, 2018, Mr. Musk did not discuss the specific potential price of $420 for a going private transaction of Tesla with the PIF.

Discovery is ongoing and Mr. Musk reserves the right to supplement and/or amend this response should he learn any additional information responsive to the Interrogatory.

**INTERROGATORY NO. 9:**

Identify when prior to August 7, 2018 Elon Musk had discussed the potential price of $420 for a going private transaction of Tesla with any investor.

**RESPONSE TO INTERROGATORY NO. 9:**

In addition to the foregoing General Objections and Objections to Instructions and Definitions, which are incorporated by reference herein, Mr. Musk objects to this Interrogatory to the extent that it seeks information protected from discovery by any right to privacy or any other applicable privilege or protection, including the right to privacy of third parties, or by Mr. Musk's obligations under applicable law or contract to protect such confidential information, including as set forth in confidentiality and/or non-disclosure agreements or understandings with third parties. Mr. Musk will provide such information, if any, only in accordance with the Protective Order.

1   Mr. Musk further objects on the grounds that the term "investor" is undefined, vague, and

2   ambiguous in the context of this Interrogatory.  Subject to this objection, Mr. Musk will interpret

3   the term "investor" to exclude Tesla employees and members of Tesla's Board of Directors and

4   their affiliated fund(s).  Mr. Musk will also interpret the term "investor" to refer to potential

5   investors in the contemplated going private transaction that was the subject of the proposal Mr.

6   Musk sent by email to Tesla's Board of Directors on August 2, 2018.

7   Mr. Musk also objects that the phrase "a going private transaction of Tesla" is vague,

8   ambiguous, and overbroad.  Mr. Musk further objects that this Interrogatory is overbroad and

9   unduly burdensome and seeks information that is not relevant to the claims or defenses of any party

10   and not proportional to the needs of the case, to the extent that it seeks information relating to *any*

11   time Mr. Musk discussed the potential price of $420 for *any* going private transaction contemplated

12   at *any* time prior to August 7, 2018.  For the purpose of this Interrogatory, Mr. Musk will interpret

13   the phrase "a going private transaction of Tesla" to refer to the contemplated going private

14   transaction that was the subject of the proposal Mr. Musk sent by email to Tesla's Board of

15   Directors on August 2, 2018.

16   Mr. Musk also objects that the term "Identify" when used with respect to time is undefined,

17   vague, and ambiguous in the context of this Interrogatory.

18   Mr. Musk further objects to this Interrogatory to the extent that it seeks information

19   protected by the attorney-client privilege, work product doctrine, common interest privilege, or

20   common law privilege, doctrine, immunity, rule of confidentiality, or protection from disclosure

21   that may attach to the information requested.

22   Subject to and without waiving the foregoing objections, Mr. Musk responds as follows:

23   Mr. Musk does not recall, prior to August 7, 2018, discussing the specific potential price of

24   $420 with any potential source of funding for a transaction to take Tesla private.  Mr. Musk testified

25   that he arrived at the potential price of $420 on August 2, 2018, by calculating a 20% premium

26   above the closing price of Tesla's stock on that date, because he believed that "in any kind of

27   acquisition like this, a premium is standard," and that 20% was "a reasonable expectation in the

28   absence of a specific number" and "a typical number for . . . take privates or acquisitions."  (*See,*

*e.g.*, Musk Tr. SEC-EPROD-000016235-36.)  When Mr. Al-Rumayyan made an oral commitment to fund the contemplated going private transaction at the July 31, 2018 meeting, the most reasonable inference—which Mr. Musk made—was that the PIF was ready, willing, and able to fund the transaction at a standard, reasonable price premium.  (*See, e.g.*, *id.*; Musk Tr. SEC-EPROD-000016244; SEC-EPROD-000016255-61.)

Mr. Musk further responds that Mr. Musk did not speak to investors other than the PIF about the contemplated going private transaction prior to August 7, 2018, when he made the information public to all investors at once via Twitter.  For Mr. Musk's testimony on this point, *see, e.g.*, Musk Tr. SEC-EPROD-000016321-23.

Discovery is ongoing and Mr. Musk reserves the right to supplement and/or amend this response should he learn any additional information responsive to the Interrogatory.

**INTERROGATORY NO. 10:**

Identify any Communications Elon Musk had with the Public Investment Fund and/or its representatives after July 31, 2018 and before August 7, 2018.

**RESPONSE TO INTERROGATORY NO. 10:**

In addition to the foregoing General Objections and Objections to Instructions and Definitions, which are incorporated by reference herein, Mr. Musk objects to this Interrogatory to the extent that it seeks information protected from discovery by any right to privacy or any other applicable privilege or protection, including the right to privacy of third parties, or by Mr. Musk's obligations under applicable law or contract to protect such confidential information, including as set forth in confidentiality and/or non-disclosure agreements or understandings with third parties.  Mr. Musk will provide such information, if any, only in accordance with the Protective Order.

Mr. Musk further objects that this Interrogatory is overbroad and unduly burdensome and seeks information that is not relevant to the claims or defenses of any party and not proportional to the needs of the case, to the extent that it seeks information relating to *any* Communications Mr. Musk had with the Public Investment Fund and/or its representatives such that this Interrogatory is not limited to Communications related to the subject matter of this case.  Mr. Musk also objects on the grounds that the term "Communications" is overbroad, unduly burdensome, and seeking

1    information protected by a privacy interest, to the extent that the Definition refers to "any

2    disclosure, transfer or exchange of information or opinion in whatever form . . . and by any means

3    of transmission or receipt."

4        Mr. Musk also objects that as defined herein, the term "Identify" with respect to

5    "Communications" is overbroad, unduly burdensome, and seeking information not relevant to the

6    claims or defenses of any party to the extent that it seeks the type of Communication; the

7    identification of each person who made, received, or was present when the Communication or

8    Communications were made; the phone number, email, or user/handle name of each person who

9    made, received, or was present when the Communication or Communications were made, where

10   the Communication or Communications were not conducted in person; the location of each person

11   who made, received, or was present when the Communication or Communications took place; and

12   the subject matter discussed to the extent that subject matter is not relevant to the claims or defenses

13   of any party.

14       Mr. Musk further objects to the time period of "after July 31, 2018 and before August 7,

15   2018" as vague and ambiguous.  To the extent that Mr. Musk provides information in response to

16   this Interrogatory, he interprets the phrase "after July 31, 2018 and before August 7, 2018" to refer

17   to the period between August 1, 2018 and August 6, 2018, inclusive.

18       Mr. Musk further objects to this Interrogatory to the extent that it seeks information

19   protected by the attorney-client privilege, work product doctrine, common interest privilege, or

20   common law privilege, doctrine, immunity, rule of confidentiality, or protection from disclosure

21   that may attach to the information requested.

22       Subject to and without waiving the foregoing objections, Mr. Musk responds as follows:

23       Mr. Musk cannot rule out the possibility that there were communications between him and

24   the PIF and/or its representatives between August 1, 2018 and August 6, 2018, but has not been

25   able to identify a specific instance of such a communication.  (*See, e.g.*, Musk Tr. SEC-EPROD-

26   000016271-72).

27       Discovery is ongoing and Mr. Musk reserves the right to supplement and/or amend this

28   response should he learn any additional information responsive to the Interrogatory.

1    **INTERROGATORY NO. 11:**

2        Identify any potential investors with whom Elon Musk discussed a going private transaction

3    of Tesla prior to August 7, 2018.

4    **RESPONSE TO INTERROGATORY NO. 11:**

5        In addition to the foregoing General Objections and Objections to Instructions and

6    Definitions, which are incorporated by reference herein, Mr. Musk also objects to this Interrogatory

7    to the extent that it seeks information protected from discovery by any right to privacy or any other

8    applicable privilege or protection, including the right to privacy of third parties, or by Mr. Musk's

9    obligations under applicable law or contract to protect such confidential information, including as

10   set forth in confidentiality and/or non-disclosure agreements or understandings with third parties.

11   Mr. Musk will provide such information, if any, only in accordance with the Protective Order.

12       Mr. Musk also objects on the grounds that the Interrogatory is overbroad and unduly

13   burdensome and seeks information that is not relevant to the claims or defenses of any party and

14   not proportional to the needs of the case because it does not define any relevant time period.

15       Mr. Musk further objects on the grounds that the phrase "potential investors" is undefined,

16   vague, and ambiguous in the context of this Interrogatory.

17       Mr. Musk also objects that the phrase "a going private transaction of Tesla" is vague,

18   ambiguous, and overbroad.  Mr. Musk further objects that this Interrogatory is overbroad and

19   unduly burdensome and seeks information that is not relevant to the claims or defenses of any party

20   and not proportional to the needs of the case, to the extent that it seeks information relating to *any*

21   potential investors with whom Mr. Musk discussed *any* going private transaction contemplated at

22   *any* time prior to August 7, 2018.  For the purpose of this Interrogatory, Mr. Musk will interpret

23   the phrase "a going private transaction of Tesla" to refer to the contemplated going private

24   transaction that was the subject of the proposal Mr. Musk sent by email to Tesla's Board of

25   Directors on August 2, 2018.

26       Mr. Musk also objects that the Definition of "Identify" when used with respect to a person

27   or entity is overbroad, unduly burdensome, and seeking information not relevant to the claims or

28   defenses of any party to the extent that it seeks the last known address and present or last known

1   place of employment for any natural person and the principal place of business for any entity.

2      Mr. Musk further objects to this Interrogatory to the extent that it seeks information

3   protected by the attorney-client privilege, work product doctrine, common interest privilege, or

4   common law privilege, doctrine, immunity, rule of confidentiality, or protection from disclosure

5   that may attach to the information requested.

6      Subject to and without waiving the foregoing objections, Mr. Musk responds as follows:

7      At the July 31, 2018 meeting at Tesla's Fremont factory attended by Yasir Al-Rumayyan,

8   Saad Al-Jarboa, and Naif Al-Mogren from the PIF and Mr. Musk, Sam Teller, and Deepak Ahuja

9   from Tesla (*see, e.g.*, TESLA_LITTLETON_00005289), Mr. Musk received an oral commitment

10   from Mr. Al-Rumayyan to fund the contemplated going-private transaction, as Mr. Musk and

11   multiple other participants in that meeting confirmed in their testimony to the SEC (*see, e.g.*, Musk

12   Tr. SEC-EPROD-000016253-55; Teller Tr. SEC-EPROD-000017399-402; Ahuja Tr. SEC-

13   EPROD-000014461-65).

14      Mr. Musk further responds that Mr. Musk did not speak to investors other than the PIF

15   about the potential transaction prior to August 7, 2018, when he made the information public to all

16   investors at once via Twitter.  For Mr. Musk's testimony on this point, *see, e.g.*, Musk Tr. SEC-

17   EPROD-000016321-23.

18      Mr. Musk further responds that Mr. Musk spoke about his ongoing interest in taking Tesla

19   private both in private conversations and in public statements multiple times over the years.  *See,*

20   *e.g.*, *Neil Strauss, Elon Musk: The Architect of Tomorrow* (Nov. 15, 2017),

21   https://www.rollingstone.com/culture/culture-features/elon-musk-the-architect-of-tomorrow-

22   120850/ ("I wish we could be private with Tesla . . . .  It actually makes us less efficient to be a

23   public company."); (Kimbal Musk Tr. SEC-EPROD-000016417-18 (recounting conversation with

24   Mr. Musk about taking Tesla private several days after Tesla went public in 2010)).

25      Discovery is ongoing and Mr. Musk reserves the right to supplement and/or amend this

26   response should he learn any additional information responsive to the Interrogatory.

27   **INTERROGATORY NO. 12:**

28      Identify any proposal Elon Musk provided to Tesla's Board prior to August 7, 2018 for a

1  going private transaction of Tesla.

2  **RESPONSE TO INTERROGATORY NO. 12:**

3      In addition to the foregoing General Objections and Objections to Instructions and

4  Definitions, which are incorporated by reference herein, Mr. Musk objects to this Interrogatory to

5  the extent that it seeks information protected from discovery by any right to privacy or any other

6  applicable privilege or protection, including the right to privacy of third parties, or by Mr. Musk's

7  obligations under applicable law or contract to protect such confidential information, including as

8  set forth in confidentiality and/or non-disclosure agreements or understandings with third parties.

9  Mr. Musk will provide such information, if any, only in accordance with the Protective Order.

10     Mr. Musk further objects on the grounds that the term "proposal" is undefined, vague,

11 ambiguous, and overbroad in the context of this Interrogatory.

12     Mr. Musk also objects on the grounds that the Interrogatory is overbroad and unduly

13 burdensome and seeks information that is not relevant to the claims or defenses of any party and

14 not proportional to the needs of the case because it does not define any relevant time period.

15     Mr. Musk also objects that the phrase "a going private transaction of Tesla" is vague,

16 ambiguous, and overbroad.  Mr. Musk further objects that this Interrogatory is overbroad and

17 unduly burdensome and seeks information that is not relevant to the claims or defenses of any party

18 and not proportional to the needs of the case, to the extent that it seeks information relating to *any*

19 proposal Mr. Musk provided to Tesla's Board for *any* going private transaction at *any* time prior to

20 August 7, 2018.  For the purpose of this Interrogatory, Mr. Musk will interpret the phrase "a going

21 private transaction of Tesla" to refer to the contemplated going private transaction that was the

22 subject of the proposal Mr. Musk sent by email to Tesla's Board of Directors on August 2, 2018.

23     Mr. Musk further objects to this Interrogatory to the extent that it seeks information

24 protected by the attorney-client privilege, work product doctrine, common interest privilege, or

25 common law privilege, doctrine, immunity, rule of confidentiality, or protection from disclosure

26 that may attach to the information requested.

27     Subject to and without waiving the foregoing objections, Mr. Musk responds as follows:

28     Mr. Musk made a proposal to Tesla's Board for the contemplated going private transaction

1  in his August 2, 2018 email to Tesla's Board.  (*See, e.g.*, TESLA_LITTLETON_00005463.)

2       Discovery is ongoing and Mr. Musk reserves the right to supplement and/or amend this

3  response should he learn any additional information responsive to the Interrogatory.

4  **INTERROGATORY NO. 13:**

5       Identify any legal and/or financial advisors that Elon Musk retained prior to August 7, 2018

6  to assist with a going private transaction of Tesla.

7  **RESPONSE TO INTERROGATORY NO. 13:**

8       In addition to the foregoing General Objections and Objections to Instructions and

9  Definitions, which are incorporated by reference herein, Mr. Musk objects to this Interrogatory to

10  the extent that it seeks information protected from discovery by any right to privacy or any other

11  applicable privilege or protection, including the right to privacy of third parties, or by Mr. Musk's

12  obligations under applicable law or contract to protect such confidential information, including as

13  set forth in confidentiality and/or non-disclosure agreements or understandings with third parties.

14  Mr. Musk will provide such information, if any, only in accordance with the Protective Order.

15       Mr. Musk also objects that the phrase "a going private transaction of Tesla" is vague,

16  ambiguous, and overbroad.  Mr. Musk further objects that this Interrogatory is overbroad and

17  unduly burdensome and seeks information that is not relevant to the claims or defenses of any party

18  and not proportional to the needs of the case, to the extent that it seeks information relating to *any*

19  legal and/or financial advisors that Mr. Musk retained to assist with *any* going private transaction

20  at *any* time prior to August 7, 2018.  For the purpose of this Interrogatory, Mr. Musk will interpret

21  the phrase "a going private transaction of Tesla" to refer to the contemplated going private

22  transaction that was the subject of the proposal Mr. Musk sent by email to Tesla's Board of

23  Directors on August 2, 2018.

24       Mr. Musk further objects on the grounds that the phrase "retained" is undefined, vague,

25  ambiguous, and overbroad in the context of this Interrogatory.  Mr. Musk also objects that this

26  Interrogatory is overbroad and unduly burdensome and seeks information not relevant to any

27  party's claim or defense because no Defendant is alleged to have stated that Mr. Musk "retained"

28  any legal and/or financial advisors.

1   Mr. Musk also objects that the Definition of "Identify" when used with respect to a person

2   or entity is overbroad, unduly burdensome, and seeking information not relevant to the claims or

3   defenses of any party to the extent that it seeks the last known address and present or last known

4   place of employment for any natural person and the principal place of business for any entity.

5   Mr. Musk further objects to this Interrogatory to the extent that it seeks information

6   protected by the attorney-client privilege, work product doctrine, common interest privilege, or

7   common law privilege, doctrine, immunity, rule of confidentiality, or protection from disclosure

8   that may attach to the information requested.

9   Subject to and without waiving the foregoing objections, Mr. Musk responds as follows:

10   Between the July 31, 2018 meeting attended by representatives from the PIF and Tesla at

11   Tesla's Fremont factory and the morning of August 7, Mr. Musk did not retain advisors to assist

12   with the contemplated going private transaction that was the subject of the proposal Mr. Musk sent

13   by email to Tesla's Board of Directors on August 2, 2018.  (*See, e.g.*, Musk Tr. SEC-EPROD-

14   000016273.)

15   Mr. Musk's dealings with legal and/or financial advisors regarding the contemplated going

16   private transaction that was the subject of the proposal Mr. Musk sent by email to Tesla's Board of

17   Directors on August 2, 2018 are addressed in documents and testimony including: Musk Tr. SEC-

18   EPROD-000016277-79; Musk Tr. SEC-EPROD-000016283-84; ERM_SEC_AUG7_00000001;

19   ERM_SEC_AUG7_00000006;   SEC-EPROD-000005436;   SEC-EPROD-000007442;   SEC-

20   EPROD-000008081;   ERM_SECAUG7_00000021;   SEC-EPROD-000006255;   SEC-EPROD-

21   000006256;   Durban   Tr.   SEC-EPROD-000016652;   SEC-EPROD-000006103;

22   TESLA_LITTLETON_00005195; TESLA_LITTLETON_00001212; SEC-EPROD-000017136;

23   SEC-EPROD-000011315;   SEC-EPROD-000005377;   SEC-EPROD-000009780;   SEC-EPROD-

24   000009781;   SEC-EPROD-000009787;   SEC-EPROD-000009866;

25   TESLA_LITTLETON_00004961;  TESLA_LITTLETON_00006108;  SEC-EPROD-000009826;

26   SEC-EPROD-000010904; SEC-EPROD-000010905; SEC-EPROD-000005518.

27   Discovery is ongoing and Mr. Musk reserves the right to supplement and/or amend this

28   response should he learn any additional information responsive to the Interrogatory.

1    **INTERROGATORY NO. 14:**

2          Identify any Communications prior to August 7, 2018 that Elon Musk had with retail

3    investors regarding their ability to remain shareholders in Tesla if it ceased being a publicly listed

4    corporation.

5    **RESPONSE TO INTERROGATORY NO. 14:**

6          In addition to the foregoing General Objections and Objections to Instructions and

7    Definitions, which are incorporated by reference herein, Mr. Musk objects to this Interrogatory to

8    the extent that it seeks information protected from discovery by any right to privacy or any other

9    applicable privilege or protection, including the right to privacy of third parties, or by Mr. Musk's

10   obligations under applicable law or contract to protect such confidential information, including as

11   set forth in confidentiality and/or non-disclosure agreements or understandings with third parties.

12   Mr. Musk will provide such information, if any, only in accordance with the Protective Order.

13          Mr. Musk also objects on the grounds that as defined herein, the term "Communications"

14    is overbroad, unduly burdensome, and seeks information protected by a privacy interest, to the

15    extent that the Definition refers to "any disclosure, transfer or exchange of information or opinion

16    in whatever form . . . and by any means of transmission or receipt."

17          Mr. Musk further objects on the grounds that the phrase "retail investors" is undefined,

18   vague, and ambiguous in the context of this Interrogatory.  Subject to this objection, Mr. Musk will

19   interpret the phrase "retail investors" as referring to "non-professional investor[s] who buy[] and

20   sell[] securities or funds that contain a basket of securities such as mutual funds and exchange

21   traded funds . . . through traditional or online brokerage firms or other types of investment

22   accounts."    Adam    Hayes,    Retail    Investor,    Investopedia    (Feb.    17,    2021),

23   https://www.investopedia.com/terms/r/retailinvestor.asp.

24          Mr. Musk also objects on the grounds that the Interrogatory is overbroad and unduly

25   burdensome and seeks information that is not relevant to the claims or defenses of any party and

26   not proportional to the needs of the case because it does not define any relevant time period.

27          Mr. Musk also objects on the grounds that the phrase "if [Tesla] ceased being a publicly

28   listed corporation" is vague and ambiguous.  Mr. Musk further objects that this Interrogatory is

1   overbroad and unduly burdensome and seeks information that is not relevant to the claims or

2   defenses of any party and not proportional to the needs of the case, to the extent that it seeks

3   information relating to *any* Communications Mr. Musk had with retail investors regarding their

4   ability to remain shareholders in Tesla if it ceased being a publicly listed corporation under *any*

5   circumstance, at *any* time prior to August 7, 2018.  Subject to this objection, Mr. Musk will interpret

6   the phrase "if [Tesla] ceased being a publicly listed corporation" as referring to the possibility that

7   Tesla would cease to be a publicly listed corporation if the contemplated going private transaction

8   that was the subject of the proposal Mr. Musk sent by email to Tesla's Board of Directors on August

9   2, 2018 went forward.

10       Mr. Musk further objects that as defined herein, the term "Identify" with respect to

11   "Communications" is overbroad, unduly burdensome, and seeking information not relevant to the

12   claims or defenses of any party to the extent that it seeks the type of Communication; the

13   identification of each person who made, received, or was present when the Communication or

14   Communications were made; the phone number, email, or user/handle name of each person who

15   made, received, or was present when the Communication or Communications were made, where

16   the Communication or Communications were not conducted in person; the location of each person

17   who made, received, or was present when the Communication or Communications took place; and

18   the subject matter discussed to the extent that subject matter is not relevant to the claims or defenses

19   of any party.

20       Mr. Musk also objects to this Interrogatory to the extent that it seeks information protected

21   by the attorney-client privilege, work product doctrine, common interest privilege, or common law

22   privilege, doctrine, immunity, rule of confidentiality, or protection from disclosure that may attach

23   to the information requested.

24       Subject to and without waiving the foregoing objections, Mr. Musk responds as follows:

25   Mr. Musk did not speak to investors other than the PIF about the potential transaction prior

26   to August 7, 2018, when he made the information public to all investors at once via Twitter.  For

27   Mr. Musk's testimony on this point, *see, e.g.*, Musk Tr. SEC-EPROD-000016321-23.

28       Discovery is ongoing and Mr. Musk reserves the right to supplement and/or amend this

1   response should he learn any additional information responsive to the Interrogatory.

2   **INTERROGATORY NO. 15:**

3   Identify all investigations into any Defendant relating to Elon Musk's August 7, 2018 tweets

4   by any federal or state department, agency, or other regulatory body, including FINRA.

5   **RESPONSE TO INTERROGATORY NO. 15:**

6   In addition to the foregoing General Objections and Objections to Instructions and

7   Definitions, which are incorporated by reference herein, Mr. Musk objects to this Interrogatory to

8   the extent that it seeks information protected from discovery by any right to privacy or any other

9   applicable privilege or protection, including the right to privacy of third parties, or by Mr. Musk's

10  obligations under applicable law or contract to protect such confidential information, including as

11  set forth in confidentiality and/or non-disclosure agreements or understandings with third parties.

12  Mr. Musk will provide such information, if any, only in accordance with the Protective Order.

13  Mr. Musk further objects on the grounds that the term "investigations" is undefined, vague,

14  ambiguous, and overbroad in the context of this Interrogatory. Mr. Musk also objects to this

15  Interrogatory to the extent that it would seek to impose on Mr. Musk an obligation to investigate or

16  discover information or materials from third parties equally accessible to Plaintiff.

17  Mr. Musk further objects to this Interrogatory to the extent that it seeks information

18  protected by the attorney-client privilege, work product doctrine, common interest privilege, or

19  common law privilege, doctrine, immunity, rule of confidentiality, or protection from disclosure

20  that may attach to the information requested.

21  Subject to and without waiving the foregoing objections, Mr. Musk responds as follows:

22  Mr. Musk is aware of the following investigations relating to Mr. Musk's August 7, 2018

23  tweets: the Securities and Exchange Commission (No. SF-4082), the United States Department of

24  Justice (No. 2017R01454), and the New York State Office of the Attorney General (subpoena to

25  Tesla served on September 24, 2018).

26  Discovery is ongoing and Mr. Musk reserves the right to supplement and/or amend this

27  response should he learn any additional information responsive to the Interrogatory.

28

1    **INTERROGATORY NO. 16:**

2        Identify any actual, proposed, or contemplated investment from January 1, 2018 to October

3    31, 2018 which would result in a potential investor owning, directly or indirectly, 4% or more of

4    Tesla's total equity or total debt.

5    **RESPONSE TO INTERROGATORY NO. 16:**

6        In addition to the foregoing General Objections and Objections to Instructions and

7    Definitions, which are incorporated by reference herein, Mr. Musk objects to this Interrogatory to

8    the extent that it seeks information protected from discovery by any right to privacy or any other

9    applicable privilege or protection, including the right to privacy of third parties, or by Mr. Musk's

10   obligations under applicable law or contract to protect such confidential information, including as

11   set forth in confidentiality and/or non-disclosure agreements or understandings with third parties.

12   Mr. Musk will provide such information, if any, only in accordance with the Protective Order.

13       Mr. Musk also objects on the grounds that this Interrogatory is overbroad and unduly

14   burdensome, and seeks information not relevant to the claims or defenses of any party and not

15   proportional to the needs of this case, as Mr. Musk cannot possibly be aware of *any* potential

16   investor who *may have* "proposed" or "contemplated" such an investment and because there are no

17   allegations about any actual, proposed, or contemplated investment that would result in a potential

18   investor owning, directly or indirectly, 4% or more of Tesla's total equity or total debt other than

19   the investment by the PIF.

20       Mr. Musk further objects on the grounds that the phrase "potential investor" is undefined,

21   vague, and ambiguous in the context of this Interrogatory.  Mr. Musk also objects on the grounds

22   that the phrase "investment . . . which would result in a potential investor owning, directly or

23   indirectly, 4% or more of Tesla's total equity or total debt" is undefined, vague, and ambiguous in

24   the context of this Interrogatory.  For the purpose of this Interrogatory, Mr. Musk will interpret that

25   phrase to only concern investment(s) that would result in an investor owning 4% or more of Tesla's

26   total equity or total debt where that investor previously owned less than 4% of Tesla's total equity

27   or total debt.

28       Mr. Musk further objects to this Interrogatory as overbroad and unduly burdensome to the

COOLEY LLP
ATTORNEYS AT LAW

MUSK'S AM. AND SUPP. RESPONSES TO LEAD PLAINTIFF'S
FIRST SET OF INTERROGATORIES
CASE NO. 18-CV-04865-EMC

extent it seeks information that is publicly available and/or already in Plaintiff's possession.  Mr. Musk also objects to this Interrogatory to the extent that it would seek to impose on Mr. Musk an obligation to investigate or discover information or materials from third parties equally accessible to Plaintiff.

Mr. Musk further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, work product doctrine, common interest privilege, or common law privilege, doctrine, immunity, rule of confidentiality, or protection from disclosure that may attach to the information requested.

Subject to and without waiving the foregoing objections, Mr. Musk responds as follows:

Mr. Musk is aware of SEC guidelines requiring investor(s) to file certain public disclosures when a person or group acquires more than 5% of a company's stock.  Any such public disclosures are equally available to Plaintiff.

During the July 31, 2018 meeting attended by representatives from the PIF and Tesla at Tesla's Fremont factory, Mr. Al-Rumayyan informed Mr. Musk that the PIF had invested in Tesla stock resulting in an ownership stake of nearly 5%.  (*See, e.g.*, Musk Tr. SEC-EPROD-000016224.)

Discovery is ongoing and Mr. Musk reserves the right to supplement and/or amend this response should he learn any additional information responsive to the Interrogatory.

Dated:    September 10, 2021                 COOLEY LLP


By: _____ */s/ Patrick E. Gibbs* _____
                                PATRICK E. GIBBS

Attorney for Defendants TESLA, INC., ELON MUSK, BRAD W. BUSS, ROBYN DENHOLM, IRA EHRENPREIS, ANTONIO J. GRACIAS, JAMES MURDOCH, KIMBAL MUSK, and LINDA JOHNSON RICE

**PROOF OF SERVICE**

I am a citizen of the United States and a resident of the State of California.  I am employed in Santa Clara County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made.  I am over the age of eighteen years, and not a party to the within action.  My business address is Cooley LLP, 3175 Hanover Street, Palo Alto, California 94304-1130.  On the date set forth below I served the documents described below in the manner described below:

**ELON R. MUSK'S AMENDED AND SUPPLEMENTAL RESPONSES TO**
**LEAD PLAINTIFF'S FIRST SET OF INTERROGATORIES**

I am personally and readily familiar with the business practice of Cooley LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below on the following part(ies) in this action:

**LEVI & KORSINSKY, LLP**
Adam M. Apton
Adam C. McCall
388 Market Street, Suite 1300
San Francisco, CA 94111
aapton@zlk.com
amccall@zlk.com

**LEVI & KORSINSKY, LLP**
Nicholas I. Porritt (*admitted PHV*)
Elizabeth K Tripodi (*admitted PHV*)
Alexander Krot III (*admitted PHV*)
Brian Stewart (*admitted PHV*)
1101 30th Street NW, Suite 115
Washington, D.C. 20007
nporritt@zlk.com
etripodi@zlk.com
akrot@zlk.com
bstewart@zlk.com

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky (*admitted PHV*)
Joseph Levi (*admitted PHV*)
Max Weiss (*admitted PHV*)
55 Broadway, 10th Floor
New York, NY 10006
ek@zlk.com
jlevi@zlk.com
mweiss@zlk.com

Executed on September 10, 2021, at Pacifica, California.

_____
/s/ Amy Garcia
Amy Garcia

1

**VERIFICATION**

2          I, Elon R. Musk, have read Lead Plaintiff Glen Littleton's First Set of Interrogatories to

3     Elon R. Musk and my answers to those interrogatories, which are true according to the best of my

4     knowledge, information, and belief.

5          I declare under penalty of perjury that the foregoing is true and

6     correct. Executed in Los Angeles, California on April 14, 2021.

7

8                                                                 _____

9                                                                            Elon R. Musk

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28