QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (*appearing pro hac vice*)
  alexspiro@quinnemanuel.com
  Kyle Batter (Bar No. 301803)
  kylebatter@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000

  Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
  Jeanine Zalduendo (Bar No. 243374)
  jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendants Tesla, Inc., Elon Musk,
Brad W. Buss, Robyn Denholm, Ira Ehrenpreis,
Antonio J. Gracias, James Murdoch, Kimbal Musk,
And Linda Johnson Rice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC |
| | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| | Date: March 10, 2022<br>Time: 1:30 p.m.<br>Location: Courtroom 5, 17th Floor<br>Judge: Hon. Edward Chen |
| | **REDACTED FOR PUBLIC FILING** |

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...........................................................................................1

ISSUES TO BE DECIDED ................................................................................................2

STATEMENT OF MATERIAL FACTS ............................................................................3

    A.    The Public Investment Fund Has Long Desired to Take Tesla Private. ...................3

    B.    The PIF Agreed to Fund a Transaction to Take Tesla Private. ................................5

    C.    Mr. Musk Discussed Going Private at $420 with Tesla's Board. ...........................6

    D.    Mr. Musk Discussed Going Private With His Financial and Legal Advisors...........7

    E.    Mr. Musk Disclosed the Potential Go-Private Transaction Publicly on August 7. ...............................................................................................................7

    F.    Mr. Musk Spoke with Investors and Advisors. ......................................................9

    G.    Mr. Musk Confirmed His Understanding that Funding Was Secured in Numerous Communications with Mr. Al-Rumayyan. .............................................11

    H.    Mr. Musk Updated Shareholders With Additional Information on August 13. .......................................................................................................................12

    I.    Given Shareholder Feedback, Mr. Musk Decided Tesla Should Remain Public.......................................................................................................................13

LEGAL STANDARD ......................................................................................................13

ARGUMENT ...................................................................................................................14

I.    SUMMARY JUDGMENT SHOULD BE DENIED AS TO FALSITY.............................14

    A.    Plaintiff Ignores Material Facts Showing it was Reasonable for Mr. Musk to State "Funding [Was] Secured" and "Investor Support [Was] Confirmed." ...........14

    B.    Plaintiff Ignores Material Facts Showing That Mr. Musk's Statement Regarding a "Shareholder Vote" Was Not Misleading.............................................17

    C.    Plaintiff's New Argument that Discussions with the PIF Had Ended as of August 13, 2018 is Baseless. .................................................................................18

II.    SUMMARY JUDGMENT SHOULD BE DENIED AS TO SCIENTER. ..........................20

    A.    Scienter is a Question for the Jury. ......................................................................20

    B.    There Is Ample Evidence that Mr. Musk Believed His Statements Were True. ....................................................................................................................20

III.    SUMMARY JUDGMENT SHOULD BE DENIED AS TO RELIANCE. .........................21

A.   There is a Genuine Dispute of Fact Regarding Materiality. ...................................22

B.   There is a Genuine Dispute of Fact Regarding Defendants' Ability to Rebut
     Any Fraud-On-The-Market Presumption..................................................................24

CONCLUSION ...........................................................................................................................26

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Allied Cap. Corp. Sec. Litig.*,
    2003 WL 1964184 (S.D.N.Y. Apr. 25, 2003) .................................................................. 23

*In re Allstate Corp. Sec. Litig.*,
    966 F.3d 595 (7th Cir. 2020) ....................................................................................... 24, 25

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .......................................................................................................... 13

*Antonetti v. Skolnik*,
    2014 WL 1308626 (D. Nev. Mar. 31, 2014) ..................................................................... 15

*In re Apple Computer Sec. Litig.*,
    886 F.2d 1109 (9th Cir. 1989) .......................................................................................... 20

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ............................................................................................. 19, 24, 25

*Brody v. Transitional Hosps. Corp.*,
    280 F.3d 997 (9th Cir. 2002) ............................................................................................ 19

*Buxbaum v. Deutsche Bank AG*,
    196 F. Supp. 2d 367 (S.D.N.Y. 2002) ......................................................................... 16, 21

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017) ............................................................................................ 24

*Davis v. Yelp, Inc.*,
    2021 WL 4923359 (N.D. Cal. Sept. 17, 2021) .............................................. 2, 18, 20, 21

*Durning v. First Bos. Corp.*,
    815 F.2d 1265 (9th Cir. 1987) ...................................................................................... 2, 22

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976) .......................................................................................................... 20

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) ............................................................................................ 14

*U.S. v. Ferguson*,
    676 F.3d 260 (2d Cir. 2011) ............................................................................................. 17

*Garcia v. J2 Glob., Inc.*,
    2021 WL 1558331 (C.D. Cal. Mar. 5, 2021) .................................................................... 15

*Gebhart v. S.E.C.*,
    595 F.3d 1034 (9th Cir. 2010) .......................................................................................... 21

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ............................................................................................. 21, 22, 24

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000) ...................................................................................... 2, 20

*Hsingching Hsu v. Puma Biotechnology, Inc.*,
    2018 WL 4945703 (C.D. Cal. Oct. 5, 2018) .................................................................... 24

*In re Infineon Techs. AG Sec. Litig.*,
    266 F.R.D. 386 (N.D. Cal. 2009) ..................................................................................... 24

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) ................................................................................................... 25

*In re JDS Uniphase Corp. Sec. Litig.*,
  2007 WL 2429593 (N.D. Cal. Aug. 24, 2007) ......................................................... 14

*Jelinek v. Am. Nat'l Prop. & Cas. Co.*,
  747 F. App'x 513 (9th Cir. 2018) ...................................................................... 2, 13

*Kaplan v. Rose*,
  49 F.3d 1363 (9th Cir. 1994) .................................................................................. 24

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
  416 F.3d 940 (9th Cir. 2005) .................................................................................. 16

*Marucci v. Overland Data, Inc.*,
  1999 WL 1027053 (S.D. Cal. Aug. 2, 1999) ......................................................... 15

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) .................................................................................................. 19

*McCrary v. Elations Co. LLC*,
  2014 WL 12561600 (C.D. Cal. Dec. 8, 2014) .................................................. 22, 24

*McGovney v. Aerohive Networks, Inc.*,
  2019 WL 8137143 (N.D. Cal. Aug. 7, 2019) ......................................................... 21

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
  320 F.3d 920 (9th Cir. 2003) ............................................................................ 17, 23

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000) .................................................................................. 23

*Reese v. BP Expl. Inc.*,
  643 F.3d 681 (9th Cir. 2011) .................................................................................. 14

*In re REMEC Inc. Sec. Litig.*,
  702 F. Supp. 2d 1202 (S.D. Cal. 2010) ................................................................. 16

*S.E.C. v. Bankatlantic Bancorp, Inc.*,
  661 F. App'x 629 (11th Cir. 2016) ........................................................................ 15

*S.E.C. v. Jasper*,
  2009 WL 10701938 (N.D. Cal. Dec. 10, 2009) ............................................ 2, 20, 21

*S.E.C. v. Phan*,
  500 F.3d 895 (9th Cir. 2007) ...................................................................... 15, 18, 21

*S.E.C. v. Platforms Wireless Int'l Corp.*,
  617 F.3d 1072 (9th Cir. 2010) .......................................................................... 14, 16

*S.E.C. v. Sourlis*,
  851 F.3d 139 (2d Cir. 2016) .................................................................................. 16

*S.E.C. v. Todd*,
  642 F.3d 1207 (9th Cir. 2011) ................................................................................ 14

*In re Skechers USA, Inc. Sec. Litig.*,
  444 F. Supp. 3d 498 (S.D.N.Y. 2020) ................................................................... 18

*In re Sun Microsystems Sec. Litigation*,
  1992 WL 226898 (N.D. Cal. July 10, 1992) ......................................................... 15

*In re Tesla, Inc. Sec. Litig.*,
  477 F. Supp. 3d 903 (N.D. Cal. 2020) ................................................................... 17

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ........................................................................................................ 18

*In re Twitter, Inc. Sec. Litig.*,
    2020 WL 4187915 (N.D. Cal. Apr. 17, 2020) ................................................. 2, 20, 21

*In re Volkswagen*,
    2017 WL 6041723 (N.D. Cal. Dec. 6, 2017) ............................................. 2, 15, 20, 21

*Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*,
    739 F.2d 1434 (9th Cir. 1984).......................................................................... 20, 21

*Washtenaw Cty. Employees' Ret. Sys. v. Walgreen Co.*,
    2021 WL 5083756 (N.D. Ill. Nov. 2, 2021)........................................................ 16, 21

**Rules and Regulations**

Fed. R. Civ. P. 56(a)........................................................................................................ 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Plaintiff has litigated this case for nearly three years, taken numerous depositions, received hundreds of thousands of pages of documents, and now must contend with one basic truth: Elon Musk's August 7, 2018 tweet informing the public that he was considering taking Tesla private was entirely truthful and cannot support the claims that Plaintiff brings—much less a motion for summary judgment. Mr. Musk *was* considering taking Tesla private at $420 a share. Funding *was* secured. There *was* investor support. These conclusions are supported by extensive contemporaneous evidence, including discussions with Saudi Arabia's sovereign wealth fund (the "PIF") and Tesla's Board, as well as the undisputed fact that there *was* sufficient funding for a go-private transaction, from the PIF or otherwise. Plaintiff ignores all of this, ignores what Mr. Musk actually said (and when), ignores what Mr. Musk truly believed, and instead creates strawman arguments that overlook large swaths of evidence adduced during discovery. Far from "fraud," Mr. Musk's statements were an effort to be open about a potential go-private transaction and to provide equal information to all Tesla shareholders. Plaintiff has no valid claims, never mind ones that can be decided in his favor on summary judgment. Plaintiff's transparent attempt to avoid a trial on the merits should be rejected, and the Court should deny Plaintiff's motion in its entirety.

To obtain summary judgment, a plaintiff must show that there are *no* disputes as to *any* material facts. A plaintiff cannot cherry pick certain facts and sweep the remaining inconvenient and unhelpful facts under the rug. But that is precisely what Plaintiff does here, disregarding material facts demonstrating, among other things, that: █████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

█████████████████████████████████████████████████████████

These material facts go to the key elements of Plaintiff's claims, and Plaintiff does not say a word about them. "A fact is material if it *might* affect the outcome of the case." *Jelinek v. Am. Nat'l Prop. & Cas. Co.*, 747 F. App'x 513, 514 (9th Cir. 2018) (emphasis added). The material facts detailed herein relate directly to the alleged falsity of Mr. Musk's statements and thus must be evaluated by the jury. Moreover, the facts demonstrate that Mr. Musk believed his statements were true. Countless courts—including this Court—have held that "[g]enerally, scienter should not be resolved by summary judgment" and have denied summary judgment on that basis. *Davis v. Yelp, Inc.*, 2021 WL 4923359, at *13 (N.D. Cal. Sept. 17, 2021) (Chen, J.).[1] This is because "materiality and scienter are both fact-specific issues which should ordinarily be left to the trier of fact." *Id.*

Plaintiff's motion on the element of reliance fares no better. Plaintiff cannot obtain summary judgment on reliance without first establishing that Mr. Musk's alleged misstatements were material. But materiality is a question for the jury (*see, e.g.*, *Durning v. First Bos. Corp.*, 815 F.2d 1265, 1268 (9th Cir. 1987)), and it is easy to see why. It is not enough to point out that Tesla's stock price moved after Mr. Musk's statements, as Plaintiff does here. That movement could have been caused by Mr. Musk's *other* indisputably true statements (e.g., that he was considering taking Tesla private or that the PIF had heavily invested in Tesla). Indeed, when Mr. Musk disclosed further details concerning the discussions about funding after his initial tweets, Tesla's stock price hardly moved, suggesting that the alleged misstatements were not material. Plaintiff has not even attempted to meet his burden on this necessary element. This too is a question for the jury, not summary adjudication.

Defendants respectfully request that the Court deny Plaintiff's motion in its entirety.

## ISSUES TO BE DECIDED

(1)   Numerous courts, including this one, have recognized that scienter is a question for the jury. Plaintiff in this case ignores the abundance of documentary and contemporaneous evidence demonstrating that Mr. Musk was considering taking Tesla private, that a premium of 20% over the

---

[1]   *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1060 (9th Cir. 2000); *In re Volkswagen*, 2017 WL 6041723, at *12 (N.D. Cal. Dec. 6, 2017); *S.E.C. v. Jasper*, 2009 WL 10701938, at *3 (N.D. Cal. Dec. 10, 2009); *In re Twitter, Inc. Sec. Litig.*, 2020 WL 4187915, at *12 (N.D. Cal. Apr. 17, 2020).

1    share price was reasonable, that funding was secured at the time of the tweet, and that there was

2    investor support for the transaction. Should the Court deny partial summary judgment on falsity and

3    scienter where the evidence creates numerous triable issues of fact?

4           (2) The rebuttable fraud-on-the-market presumption requires Plaintiff to prove that the alleged

5    misrepresentations were material. Plaintiff argues that Mr. Musk's statement "funding secured" was

6    material because Tesla's stock price changed following the statement, but ignores that Mr. Musk made

7    *other* indisputably true statements that could account for stock price changes (e.g., "am considering

8    taking Tesla private"). Days later, Mr. Musk clarified what "funding secured" meant and Tesla's

9    stock price hardly moved. Should the Court deny partial summary judgment on the element of

10   reliance where Plaintiff has not attempted to prove the materiality of the challenged statements?

11                      **STATEMENT OF MATERIAL FACTS**

12   **A.     The Public Investment Fund Has Long Desired to Take Tesla Private.**

13          The PIF is Saudi Arabia's sovereign wealth fund. (Batter Decl., Ex. A.)[2] The PIF's purpose

14   is to provide financing support for strategic projects on behalf of the Saudi government. (*Id.*) As of

15   August 2018, it was reported to have $225 billion in assets. (*Id.*) As part of the Saudi government's

16   efforts to "transform Saudi Arabia from a staid petrostate to a technology-focused economy" (*id.*), ███

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████

25   _____

26   [2]   Deposition exhibits are marked with numbers (e.g., 1-400); new exhibits in support of this
     opposition are marked with letters (e.g., A-Z). All cited exhibits are to the Batter Declaration.

27   [3]   Likewise, Mr. Musk believed—and expressed publicly—that Tesla would operate more

28   efficiently as a private company, benefiting its employees and shareholders. (Ex. D.)



DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

2

3

4

**B.**      **The PIF Agreed to Fund a Transaction to Take Tesla Private.**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Similarly, the PIF is well known for orally committing to transactions and moving quickly in making large investments.  For example, the PIF orally agreed to commit $45 billion to SoftBank's technology fund after a 45-minute conversation and similarly bought a $3.5 billion stake in Uber within weeks of meeting its CEO.  (Ex. A at 5-6.)

C.    **Mr. Musk Discussed Going Private at $420 with Tesla's Board.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14  **D.** **Mr. Musk Discussed Going Private With His Financial and Legal Advisors.**

15

16

17

18

19

20

21

22

23

24

25  **E.** **Mr. Musk Disclosed the Potential Go-Private Transaction Publicly on August 7.**

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT



On August 7 at 9:18 a.m., the *Financial Times* reported that the PIF had acquired a $2 billion stake in Tesla.  (Ex. 225.)  Tesla's stock immediately began to rise sharply.

At 9:48 a.m., 30 minutes after the *Financial Times* report, Mr. Musk tweeted: "Am considering taking Tesla private at $420.  Funding secured."  (Ex. 8.)  Over the next few hours, in response to questions from his Twitter followers, Mr. Musk provided additional information, including his "hope

[that] *all* current investors remain with Tesla even if we're private," and that the rationale for the take-private transaction was that it would be "way smoother & less disruptive as a private company." (Exs. 10, 11.)  Some investors interpreted "funding secured" consistently with what had occurred, as "a strong verbal commitment, with funds available and parties willing to execute quickly." (Ex. 33.)

Later that day, Mr. Musk emailed Tesla's employees, a copy of which was then posted on Tesla's blog, entitled "Taking Tesla Private." (Ex. 12.)  Mr. Musk reiterated, "I'm considering taking Tesla private at a price of $420/share," and went on to explain his rationale. (*Id.*)  He added that, "a final decision has not yet been made," and the proposal "would ultimately be finalized through a vote of our shareholders." (*Id.*)  Mr. Musk linked to this blog post on his Twitter account, including a short cover note: "Investor support is confirmed. Only reason why this is not certain is that it's contingent on shareholder vote." (Ex. 13.) ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████ The next morning, before the market opened, Tesla's Board announced that Mr. Musk had opened a discussion about taking Tesla private, and that the Board was "taking the appropriate next steps to evaluate this." (Ex. 26.)

**F.**    **Mr. Musk Spoke with Investors and Advisors.**

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

[4]

27

28

**G.** **Mr. Musk Confirmed His Understanding that Funding Was Secured in Numerous Communications with Mr. Al-Rumayyan.**



DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12    **H.    Mr. Musk Updated Shareholders With Additional Information on August 13.**

13         Before the markets opened on August 13, Mr. Musk posted an "Update on Taking Tesla

14    Private" on Tesla's blog.  (Ex. 16.)  The post included additional details regarding, among other

15    things, Mr. Musk's funding discussions with the PIF, the potential structure of the transaction, and the

16    various actions that would need to be completed before the transaction could move forward.  (*Id.*)  Mr.

17    Musk explained why he said "funding secured" in his August 7 tweet.  (*Id.*)  Mr. Musk noted that he

18    had "engaged advisors to investigate a range of potential structures and options" to get to a "more

19    precise understanding" on how many shareholders might remain if Tesla became private.  (*Id.*)  The

20    market did not view this information as revelatory—Tesla's stock price barely moved at all, and in

21    fact *rose* slightly in response to it, increasing from $355.49 to $356.41.  (Ex. I.)

22

23

24

25

26    Later that night, after the

27    close of trading, Mr. Musk posted that statement on his Twitter account.  (Ex. K.)

28

I.      **Given Shareholder Feedback, Mr. Musk Decided Tesla Should Remain Public.**

After the market closed on August 16, the *New York Times* published an article based on an interview with Mr. Musk.  (Ex. 19.)  The article made a number of unfounded assertions without providing any supporting evidence, including a statement by the reporter that funding for a take-private "was far from secure."  (*Id.*)  The next day, Tesla's stock price declined 9%.  (Ex. I.).  In contrast to the *New York Times* reporter's claim, not only did Mr. Musk firmly believe funding was secured when he tweeted, in reality (per Mr. Musk's discussions with the PIF) it *was* secured.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██  Mr. Musk explained his decision to shareholders in a blog post the next day.  (Ex. 229.)

**LEGAL STANDARD**

Summary judgment must be denied unless the moving party can demonstrate that (1) "there is *no* genuine dispute as to *any* material fact" and (2) "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added).  "A fact is material if it *might* affect the outcome of the case." *Jelinek*, 747 F. App'x at 514 (emphasis added).  When considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgement is not appropriate where "a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Courts may deny summary judgment "where there is reason to believe that the better course would be to proceed to a full trial."  *Id.* at 255.  This is especially so given that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Id.*

**ARGUMENT**

**I.**   **SUMMARY JUDGMENT SHOULD BE DENIED AS TO FALSITY.**

Despite ample support in the record showing Mr. Musk's August 7 tweet being true, Plaintiff nonetheless persists in claiming that the following statements were false:  (1) "Am considering taking Tesla private at $420. Funding secured."  (2) "Investor support is confirmed."  (3) "Only reason why this is not certain is that it's contingent on a shareholder vote."  (4) "I have continued to communicate with the Managing Director of the Saudi fund. . . ."  (Mot. at 17-23.)

In securities cases, a statement is not false unless it "affirmatively creates an impression of a state of affairs that differs in a material way from the one that actually exists."  *Reese v. BP Expl. Inc.*, 643 F.3d 681, 687 (9th Cir. 2011) (citation and alteration omitted).  Summary judgment on the element of falsity must be denied if *any* reasonable jury could conclude that the statement at issue is truthful.  *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1094 (9th Cir. 2010).  This is because whether a statement is false "is a mixed question to be decided by the trier of fact."  *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995); *S.E.C. v. Todd*, 642 F.3d 1207, 1220 (9th Cir. 2011).  Summary judgment is thus improper where "there are triable questions of fact related to whether statements . . . were misleading."  *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 2429593, at *20 (N.D. Cal. Aug. 24, 2007) (denying summary judgment).

Plaintiff has failed to show that there are *no* disputed facts concerning the truth of Mr. Musk's statements concerning a go-private transaction, and has failed to show that *no* reasonable jury could find in Mr. Musk's favor.  Indeed, as the evidence ignored by Plaintiff shows, Mr. Musk's statements concerning a go-private transaction were truthful.  Plaintiff's motion therefore must be denied.

**A.**   **Plaintiff Ignores Material Facts Showing it was Reasonable for Mr. Musk to State "Funding [Was] Secured" and "Investor Support [Was] Confirmed."**

Plaintiff argues that Mr. Musk's statements about funding being secured were false because they were based on "one 30-minute conversation [with the PIF] about potentially taking Tesla private."  (Mot. at 3.)  That is incomplete and false. ██████████████████

██████████████████████████████████████

██████████████████████████████████████

1

2

3

4

5

6

7

8

9

10           Plaintiff is "not permitted to cherry pick allegations that entitle them to summary judgment"

11  while ignoring other material facts. *Antonetti v. Skolnik*, 2014 WL 1308626, at *25 (D. Nev. Mar. 31,

12  2014).  The full factual picture demonstrates a sufficient basis for a jury to conclude that, as the PIF

13  represented to Mr. Musk, "funding [was] secured" and "investor support [was] confirmed."  Because

14  there are triable issues of fact, summary judgment must be denied. *See, e.g.*, *S.E.C. v. Phan*, 500 F.3d

15  895, 907 (9th Cir. 2007) (reversing summary judgment where the district court "refused to credit"

16  defendant's testimony about events at issue); *In re Volkswagen*, 2017 WL 6041723 at *6 ("the Court

17  DENIES partial summary judgment with respect to the falsity of the 31 investor-report statements"

18  because "a reasonable trier of fact could conclude that Plaintiffs have not met their burden of proving

19  that [the] statements were false"); *In re Sun Microsystems Sec. Litigation*, 1992 WL 226898, at *6

20  (N.D. Cal. July 10, 1992) (denying summary judgment and stating that question of falsity was for the

21  jury); *Marucci v. Overland Data, Inc.*, 1999 WL 1027053, at *1 (S.D. Cal. Aug. 2, 1999) (denying

22  summary judgment where "[m]aterial questions of fact existed concerning whether statements . . .

23  were misleading"); *Garcia v. J2 Glob., Inc.*, 2021 WL 1558331, at *15 (C.D. Cal. Mar. 5, 2021)

24  (whether statements were misleading "raises questions of fact"); *S.E.C. v. Bankatlantic Bancorp, Inc.*,

25

26
    [6]  Plaintiff also makes a number of strawman arguments in an effort to muddy the waters.  For
example, Plaintiff asserts that Mr. Musk did not discuss the $420 stock price with the PIF during their

27  July 31 meeting, that Mr. Musk never obtained a signed commitment from the PIF, and that there had
been no discussion about structure or percentage ownership. (Mot. at 6, 19, 21.) But Mr. Musk *never*

28  *made any public representations on any of these issues.*

1    661 F. App'x 629, 637 (11th Cir. 2016) (where a defendant presents evidence demonstrating that a

2    factual dispute exists, "the court has an obligation to allow a jury or judge to resolve the parties'

3    differing versions of the truth *at trial*.") (internal citation omitted, emphasis added).

4         Not only must the jury decide factually whether "funding [was] secured," the jury must also

5    decide between the parties differing interpretations of what "funding secured" even means in this

6    context. *See, e.g., Washtenaw Cty. Employees' Ret. Sys. v. Walgreen Co.*, 2021 WL 5083756, at *7

7    (N.D. Ill. Nov. 2, 2021) (jury must decide disputed meaning of "unusual activity," as well as

8    application of facts to that definition); *Buxbaum v. Deutsche Bank AG*, 196 F. Supp. 2d 367, 373

9    (S.D.N.Y. 2002) (disagreement "as to the correct translation of 'Übernahmegespräche'" (i.e., whether

10   it meant preliminary merger talks or advanced stage discussions) raised an issue of material fact and

11   therefore "is not a basis for summary judgment."); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d

12   1202, 1223 (S.D. Cal. 2010) ("a jury must decide" whether the defendant's statement that its gross

13   profit margin was "consistent" with its business plan was true or false).[7]

14        The cases cited by Plaintiff, on the other hand, do not support granting summary judgment as

15   to falsity.  *Platforms*, 617 F.3d 1072, is the ***only case*** cited by Plaintiff in which a court granted

16   summary judgment on the issue of falsity.  (Mot at 18-19.)  In that case, the challenged press release

17   described a product with nine pages of detail, even though ***the product did not even exist and the***

18   ***defendants even lacked the funding to build a single prototype***.  617 F.3d at 1082, 94-95.  It was thus

19   undisputed that the press release was false, the defendants knew it, and the defendants had no

20   evidence to the contrary.  *Id.*

21        In *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940 (9th Cir. 2005) (Mot. at

22   18), the defendants created an offering memorandum falsely stating that a corporation had *already*

23   *received* a $25 million investment. *Id.* at 945.  The defendants and the corporation then used that

24   memorandum to solicit additional investors. *Id.*  The court held only that the plaintiff's allegations

---

[7]  In the motion, Plaintiff references the hearsay opinions of Egon Durban (Silver Lake) and Ryan Brinkman (J.P. Morgan) in an effort to establish a self-serving definition of what the term "secured" means. (Mot. at 17.) First, neither Mr. Durban nor Mr. Brinkman was at the July 31 meeting between Mr. Musk and Mr. Al-Rumayyan, so they have no first-hand knowledge as to the PIF's commitment to take Tesla private.  Second, their opinions cannot supplant the role of the jury.

1    were sufficient to survive *dismissal* (i.e., summary judgment was not at issue). *Id.* at 952.  In *S.E.C. v.*

2    *Sourlis*, 851 F.3d 139 (2d Cir. 2016) (Mot. at 21), the defendant affirmatively represented that she

3    "had spoken to the original note-holders." *Id.* at 145.  The defendant's statement was false because

4    *"no original note-holders existed and indeed no notes existed." Id.* (emphasis added).[8]

5         These cases stand in stark contrast to the facts here, which demonstrate a sufficient basis for

6    Mr. Musk's statements that "funding [was] secured" and "investor support [was] confirmed."

7         **B.      Plaintiff Ignores Material Facts Showing That Mr. Musk's Statement Regarding**

8                 **a "Shareholder Vote" Was Not Misleading.**

9         On August 7, 2018, Mr. Musk tweeted, "Investor support is confirmed. Only reason why this

10   is not certain is that it's contingent on a shareholder vote." (Ex. 13.)  This tweet was truthful, but

11   Plaintiff argues that it was false because "there were also numerous contingencies to the transaction

12   before even getting to a shareholder vote." (Mot. at 22.)  However, Mr. Musk publicly disclosed these

13   other "contingencies" and clarified that Tesla was still considering the transaction.

14         Specifically, Mr. Musk linked a Tesla blog post to his August  7 tweet, which stated clearly

15   that he was "*considering* taking Tesla private," "a final decision ha[d] not yet been made," and "[t]his

16   proposal to go private would ultimately *be finalized* through a vote of [Tesla's] shareholders." (Ex. 12

17   (emphasis added).)  Mr. Musk then posted additional details regarding the various actions that would

18   need to be completed, including "a final proposal," "an appropriate evaluation process" by Tesla's

19   special committee, "required regulatory approvals," and ultimately "the plan [to] be presented to Tesla

20   shareholders for a vote." (Ex. 53.[9])  Additionally, Tesla's stock price closed *up* from the prior day's

21   _____

22      [8]  Plaintiff cites two cases in support of his argument that the Court should consider the opinions
     of analysts in defining "funding secured." (Mot. at 19.)  However, in *No. 84 Emp.-Teamster Joint*

23   *Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920 (9th Cir. 2003), the court did not
     "rely[] on analyst statements when determining cause of stock price movement," as Plaintiff suggests.

24   (Mot. at 19.)  Instead, the court held simply that the plaintiff's arguments were sufficient to withstand
     *dismissal on the pleadings. Id.* at 933, 936, 946.  Plaintiff asserts that in *U.S. v. Ferguson*, 676 F.3d

25   260 (2d Cir. 2011), the court "plac[ed] 'substantial' weight on 'stock analysts' when evaluating [the
     allegedly false] statement." (Mot. at 19.)  That is false, as the Court was evaluating materiality, not

26   falsity, and the Court said nothing about the weight of the stock analyst evidence.  *Id.* at 274.

27      [9]  The Court previously acknowledged Mr. Musk's disclosure of this additional information: "Mr.

28   Musk then proceeds to identify significant hurdles that stand in the way of finalizing the transaction—

1   close (increasing from $355.49 to $356.41) after Mr. Musk disclosed these additional "contingencies"

2   concerning the potential go-private transaction (Ex. I), so Plaintiff cannot argue that (1) stockholders

3   were harmed by Mr. Musk's initial tweet, or that (2) stockholders viewed Mr. Musk's additional

4   disclosure of information as material.  Plaintiff's motion ignores these facts.[10]  "The key question in

5   considering the misleading nature of a statement is whether defendants' representations, *taken*

6   *together and in context*, would have misle[d] a reasonable investor, not whether it is susceptible to any

7   interpretation that could generate misleading impressions *when read in isolation*."  *In re Skechers*

8   *USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 516 (S.D.N.Y. 2020) (emphasis added, citation omitted).

9   Given the numerous factual disputes and the full context, Plaintiff cannot possibly meet this burden.

10      C.   **Plaintiff's New Argument that Discussions with the PIF Had Ended as of August**

11           **13, 2018 is Baseless.**

12      On August 13, 2018, Mr. Musk posted on Tesla's blog that, "[f]ollowing the August 7th

13   announcement [i.e., his initial tweet], [he] continued to communicate with the Managing Director of

14   [the PIF].  He has expressed support for proceeding subject to financial and other due diligence and

15   their internal review process for obtaining approvals.  He has also asked for additional details on how

16   the company would be taken private, including any required percentages and any regulatory

17   requirements."[11]  (Ex. 53.)  Everything Mr. Musk wrote is indisputably true.  (*See* Ex. 121 at 8-13

18   (post August 7 communications between Mr. Musk and Mr. Al-Rumayyan).)  Plaintiff argues *only*

19   that in the blog post, Mr. Musk did not disclose that "he had sought to end all negotiations with the

20   Saudi PIF."  (Mot. at 23.)  Plaintiff's argument is nothing more than misdirection, and these issues are

21   "for the trier of fact."  *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976); *see also Davis*,

22

23   namely, 'financial and other due diligence' and an 'internal review process' among other conditions."
    *In re Tesla, Inc. Sec. Litig.*, 477 F. Supp. 3d 903, 925 (N.D. Cal. 2020).

24      [10]  Mr. Musk's testimony that he believed ███████████████

25   ███████████  (Mot. at 22) is consistent with his public statements, where he indicated
    that the transaction was contingent on a shareholder vote, a final proposal, and regulatory compliance.

26   While Musk was confident in his *desire* to take Tesla private and he had the *funding* to do so, ████
    ████████████████████████████████████████████████████

27      [11]  In his Complaint and addendum thereto (ECF Nos. 184, 224), Plaintiff does not allege that this

28   statement was false or misleading.  Accordingly, it is not properly the subject of summary judgment.

1   2021 WL 4923359 at *13; *Phan*, 500 F.3d at 908.

2        *First*, Plaintiff misstates the facts, as Mr. Musk and Mr. Al-Rumayyan did not "end all

3   negotiations." (Mot. at 23.) █████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████

11      ██████████████████████████████████████████████████████████

12  ████████████████████████████████████ that was not material to shareholders.

13  Omitted information is actionable only if it is material. *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32

14  (1988) ("to fulfill the materiality requirement there must be a substantial likelihood that the disclosure

15  of the omitted fact would have been viewed by the reasonable investor as having significantly altered

16  the total mix of information made available") (citation and quotation omitted). ███████████████

17  ████████████████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████████████████

19  ███████████████████████████████████████████████████████████

20      *Third*, the securities laws "prohibit *only* misleading and untrue statements, not statements that

21  are incomplete." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (emphasis in

22  original). "No matter how detailed and accurate disclosure statements are, there are likely to be

23  additional details that could have been disclosed but were not." *Id.* The securities laws "do not create

24  an affirmative duty to disclose any and all material information. Disclosure is required . . . only when

25  necessary 'to make . . . statements made, in the light of the circumstances under which they were

26  made, not misleading." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). ██████████

27  ████████████████████████████████████████████████████████████████████████████

28  ███████████████████████████████████████████████████████████

1   **II.      SUMMARY JUDGMENT SHOULD BE DENIED AS TO SCIENTER.**

2          **A.      Scienter is a Question for the Jury.**

3          Countless courts—including this Court—have held that "[g]enerally, scienter should not be

4   resolved by summary judgment" and have denied summary judgment on that basis.  *Davis*, 2021 WL

5   4923359 at *13 (Chen, J.) (denying summary judgment where "there is a genuine issue of material

6   fact as to whether Defendants made false or misleading statements, with scienter"); *Howard*, 228 F.3d

7   at 1060; *In re Volkswagen*, 2017 WL 6041723 at *12 ("Court DENIES Plaintiffs' motion for partial

8   summary judgment on the issue of scienter" "because material issues of fact remain"); *Jasper*, 2009

9   WL 10701938 at *3 (denying summary judgment and stating, "[a]lthough the SEC may ultimately

10  prove scienter with circumstantial evidence, the conflicting evidence here does not allow for a finding

11  that as a matter of law, Defendant possessed the requisite mental state to establish a securities fraud

12  claim"); *In re Twitter*, 2020 WL 4187915 at *12 (denying summary judgment where "a genuine

13  dispute exists as to whether Defendants acted with scienter in making the challenged statements").

14         As this Court noted, summary judgment is typically improper in such cases because

15  "[m]ateriality and scienter are both fact-specific issues which should ordinarily be left to the trier of

16  fact."  *Davis*, 2021 WL 4923359 at *13 (Chen, J.) (citation omitted); *Vucinich v. Paine, Webber,*

17  *Jackson & Curtis, Inc.*, 739 F.2d 1434, 1436 (9th Cir. 1984) (reversing summary judgment where "the

18  facts before the court were sufficient to raise factual questions as to defendant's state of mind"); *In re*

19  *Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989).

20         **B.      There Is Ample Evidence that Mr. Musk Believed His Statements Were True.**

21         To prevail on his motion, Plaintiff must show—as a matter of law—that Mr. Musk either

22  *intended* to "deceive, manipulate, or defraud" the public, or his behavior was a "reckless" and

23  "extreme departure from the standards of ordinary care" that goes beyond "even inexcusable

24  negligence." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976); *Howard*, 228 F.3d at 1063.

25         Mr. Musk has presented numerous facts, including facts proving his state of mind at the time,

26  that demonstrate he had no such intent. ████████████████████████████

27  ████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

These facts demonstrate beyond a shadow of a doubt that Mr. Musk reasonably believed funding was secured, reasonably believed his public disclosures were accurate, and that Mr. Musk had the genuine desire to take Tesla private.  Plaintiff may disagree with Mr. Musk's beliefs and conclusions, which only underscores that these issues must go to the jury.  *Vucinich*, 739 F.2d at 1436 (reversing summary judgment in action alleging securities fraud and noting that motion can be denied where "the defendant presents affidavits or other evidence establishing a lack of scienter"); *Davis*, 2021 WL 4923359 at *13 (Chen, J.) (denying summary judgment due to disputed material facts); *In re Volkswagen*, 2017 WL 6041723 at *12 (N.D. Cal. Dec. 6, 2017); *Jasper*, 2009 WL 10701938 at *3; *In re Twitter*, 2020 WL 4187915 at *12; *Washtenaw*, 2021 WL 5083756 at *7; *Buxbaum*, 196 F. Supp. 2d at 377.[12]  To the extent Plaintiff's theory is that Mr. Musk revealed new and negative information to investors regarding the status of funding through the August 13, 2018 blog post  (Ex. 16), that further undermines scienter for the August 7 tweets.  *See, e.g.*, *McGovney v. Aerohive Networks, Inc.*, 2019 WL 8137143, at *23 (N.D. Cal. Aug. 7, 2019) (defendant's disclosure of additional information "on the very topics they supposedly concealed undermines an inference of a deliberate omission").

## III.   SUMMARY JUDGMENT SHOULD BE DENIED AS TO RELIANCE.

To prevail on his Section 10(b) claims, Plaintiff must prove that he relied upon Defendants' alleged misrepresentations.  *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 263

---

[12]   Plaintiff argues that "[a] defendant cannot defeat a fraud claim merely by asserting that he believed the statements were true."  (Mot. at 19.)  But Mr. Musk does not simply state that he "believed" his statements were true.  Rather, Mr. Musk has put forth *evidence* showing that Mr. Al-Rumayyan represented that funding was secured, as well as contemporaneous evidence that Mr. Musk believed it.  *See Gebhart v. S.E.C.*, 595 F.3d 1034, 1042 n.11 (9th Cir. 2010) (rejecting argument that defendants' statements "are so false that defendants must have known they were false and must have intended to mislead the public" where defendants "submitted sworn declarations testifying that they believed in good faith that their statements were true") (quotation omitted).  Summary judgment is improper where the parties disagree as to the interpretation of the evidence, as the evidence must be viewed "in the light most favorable to the nonmoving party."  *Phan*, 500 F.3d at 901.

(2014).  Plaintiff has not put forward any evidence of direct reliance.  Instead, Plaintiff seeks to invoke the *rebuttable* fraud-on-the-market presumption.  (Mot. at 24.)  The fraud-on-the-market presumption is based on the theory that an "investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price."  *Halliburton*, 573 U.S. at 268.  Therefore, if an allegedly material fraudulent misrepresentation impacted the market price of the security, an investor can be presumed to have relied on the purportedly material misrepresentation.  *Id.*

As Plaintiff concedes, to invoke the fraud-on-the-market presumption, a plaintiff must prove by a preponderance of the evidence that "(1) the alleged misrepresentations were publicly known, (2) ***they were material***, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed."  (Mot. at 24 (emphasis added).)  Even where Plaintiff proves these requirements, a defendant can rebut the presumption through "***[a]ny showing*** that severs the link between the alleged misrepresentation and . . . the price received (or paid) by the plaintiff."  *Halliburton*, 573 U.S. at 269 (emphasis added).

Here, Plaintiff is not entitled to summary judgment on the element of reliance for at least two independent reasons.  *First*, there is a genuine dispute of material fact regarding at least one of the requirements necessary to invoke the fraud-on-the-market presumption: materiality.  *Second*, even if there were no dispute the presumption could be invoked, there is a genuine dispute of material fact regarding whether Defendants can rebut that presumption by, among other things, demonstrating that when the purported "truth" was revealed, there was no price impact.

### A.   There is a Genuine Dispute of Fact Regarding Materiality.

There is no dispute that Plaintiff must prove materiality to invoke the fraud-on-the-market presumption for purposes of proving reliance.  There also does not appear to be any dispute that questions regarding materiality "are peculiarly ones for the trier of fact."  *Durning*, 815 F.2d at 1268 (quotation omitted).  Indeed, Plaintiff's own authorities say as much.  (*See* Mot. at 25 (citing *McCrary v. Elations Co. LLC*, 2014 WL 12561600, at *12 (C.D. Cal. Dec. 8, 2014) ("Materiality is generally a question for the jury") (internal quotation marks omitted)).)  ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Despite this uphill battle, Plaintiff spends all of ***two*** sentences—citing six paragraphs in an expert report—to support its

claim that there are no genuine disputes of fact regarding whether the purportedly false portion of Mr. Musk's tweet, "funding secured," was material. (Mot. at 24 (citing Hartzmark Class Cert. Report, ECF No. 291-1 at ¶¶ 71.76).)[13] Those cited paragraphs say nothing more than that there was a stock movement following Mr. Musk's allegedly false tweet. But as a matter of law, a stock price movement alone is insufficient to prove materiality. *See, e.g.*, *In re Allied Cap. Corp. Sec. Litig.*, 2003 WL 1964184, at *6 (S.D.N.Y. Apr. 25, 2003).

Moreover, inferring materiality from stock movements in this case would be particularly inappropriate since there is no dispute that Mr. Musk's tweet also contained the undisputedly true disclosure that Mr. Musk was considering taking Tesla private. The jury is entitled to conclude that Tesla's stock price increase—which is the evidence Plaintiff relies upon to prove materiality to invoke the presumption—was not attributable to the allegedly false portion of Mr. Musk's tweet. This is particularly true where, as noted above, there is a dispute regarding what a reasonable investor would understand Mr. Musk's allegedly false statements to mean. Therefore, the jury will be required to determine what "funding secured" even meant, and that determination will obviously impact the jury's determination of the materiality of the statement (and the allegedly undisclosed information).

Notably, the evidence actually supports the conclusion that—whatever the market believed the statement meant—it was the indisputably true portion of Mr. Musk's tweet that the market deemed material rather than the allegedly false information. For example, on August 13, 2018, Mr. Musk provided further detail regarding the proposed transaction. ███████████████████████████████ Similarly, a public sell-side analyst from Barclays noted that Mr. Musk's August 13, 2018 blog post "made it clear that the funding was in its very early stages." (Ex. M.) Yet, despite the purported revelation that funding was far different than Plaintiff's theory of what the market understood "funding secured" to mean, Tesla's stock did not decline in a statistically significant manner. (Ex. L at ¶¶ 100-108.) ███████████████████████

---

[13] Because Plaintiff does not even attempt to produce evidence regarding the purported materiality of any of the other alleged misstatements—another basis to deny summary judgment—Defendants respond solely to the materiality allegations regarding "funding secured."

1

2      Thus, the jury is entitled to conclude that the lack of *any decline* following these purported

3  revelations regarding the meaning of "funding secured" proves that the "funding secured" portion of

4  Mr. Musk's tweet was immaterial.  *Teamster*, 320 F.3d at 949 ("[T]he static or dynamic nature of

5  a stock price after the disclosure of previously withheld information is strong evidence of how

6  reasonable investors view the significance of the information.") (Tallman, J., dissenting); *Oran v.*

7  *Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) ("[I]f a company's disclosure of information has no effect

8  on stock prices, 'it follows that the information disclosed . . . was immaterial as a matter of law.'")

9  (Alito, J.) (citation omitted).  Accordingly, because there is a genuine issue of dispute regarding the

10  materiality of the allegedly false information, there is a genuine issue of dispute regarding whether the

11  fraud-on-the-market presumption can be invoked and whether reliance can be established.  *Hsingching*

12  *Hsu v. Puma Biotechnology, Inc.*, 2018 WL 4945703, at *4-5 (C.D. Cal. Oct. 5, 2018) (denying

13  summary judgment on reliance through fraud-on-the-market presumption where material disputes

14  regarding materiality).[14]

15      **B.    <u>There is a Genuine Dispute of Fact Regarding Defendants' Ability to Rebut Any</u>**

16          **<u>Fraud-On-The-Market Presumption.</u>**

17      Even assuming Plaintiff had established all of the necessary requirements to invoke the fraud-

18

19      [14]   Plaintiff's authorities are not to the contrary.  In the sole case in which a court granted a
20  plaintiff summary judgment on the issue of reliance, *In re Celestica Inc. Sec. Litig.*, 2014 WL
   4160216 (S.D.N.Y. Aug. 20, 2014), "Defendants opposed Plaintiffs' motion [solely] on the basis that
21  the Supreme Court's decision in *Halliburton . . .*, might overrule *Basic* and change the law regarding
   the fraud on the market presumption," which did not occur.  *Id.* at *5 n.3.  They did not oppose the
22  motion on the basis that the allegedly false information was immaterial, as Defendants do here.  In
   *Kaplan v. Rose*, 49 F.3d 1363, 1378 (9th Cir. 1994), *abrogated on other grounds by City of Dearborn*
23  *Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017), the court
   partially affirmed *defendants'* motion for summary judgment on the *inapplicability* of the fraud-on-
24  the-market presumption and overturned in part noting that "claims based on fraud on the market
   theory are fact-specific and generally for the trier of fact to decide."  Similarly, in *McCrary*, 2014 WL
25  12561600 at *12, the court *denied* plaintiff's request for summary judgment on the issue of reliance
   precisely because the presumption of reliance under the relevant law in that case, like this one,
26  required proof of materiality, which "is generally a question of fact for the jury." (quotation omitted).
   Finally, in *In re Infineon Techs. AG Sec. Litig.*, 266 F.R.D. 386 (N.D. Cal. 2009) did not even involve
27  a summary judgment motion on the issue of reliance.

28

on-the-market presumption—he has not—that would still be insufficient to grant summary judgment on the issue of reliance since the presumption is *rebuttable*.   Although Plaintiff claims that "Defendants did not contest any of Dr. Hartzmark's findings or Plaintiff's contention that Tesla's stock traded in an efficient market" (Mot. at 24), Plaintiff overlooks that Defendants can also rebut the presumption if the "'market makers' were privy to the truth" about information allegedly concealed, or second, if "news of [the allegedly concealed truth] credibly entered the market and dissipated the effects of the misstatement." *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 606 (7th Cir. 2020) (citation omitted).   "Under the first option, the defense shows that only true information was impounded in the market price at the time of purchase; the second option does the same by the time of sale." *Id.*  Here, there are genuine issues of fact with respect to both defenses.

First, Defendants' expert put forward evidence that the market understood from the beginning that the entire proposal and source of funding was uncertain.  (Ex. N at ¶¶ 15-22.)  Thus, there is sufficient evidence from which the jury can infer that market understood that funding secured did not mean that there was some sort of signed term sheet or formal agreement regarding funding.

Second, as noted above, following Mr. Musk's August 13 blog post, Tesla's stock did not decline.  Thus, the jury is entitled to infer that either the original statement was immaterial to begin with—in which case the presumption does not apply—or that by virtue of, among other things the evidence detailed in the Fischel Report, the market understood the truth regarding the meaning of "funding secured" prior to the August 13 blog post—in which case the presumption is also rebutted. Either way, as the Supreme Court has recognized, these defenses should be heard at trial.  *Basic*, 485 U.S. at 249 & n. 29 (proof that information "credibly entered the market and dissipated the effects of the misstatements" "is a matter for trial.").  Accordingly, Plaintiff's request for summary judgment with respect to the element of reliance should be denied.[15]

---

[15]   Plaintiff's Motion is defective on other grounds as well.  First, Plaintiff seeks summary judgment against both Tesla and Mr. Musk, but Plaintiff failed to include any evidence that Tesla had "ultimate authority over [Mr. Musk's] statement [concerning going private], including its content and whether and how to communicate it." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).  On this basis alone Plaintiff's Motion must be denied as to Tesla.  Second, while the Motion purports to be against Tesla's board members (as well as Tesla and Mr. Musk), the relief

1

## **CONCLUSION**

2

For the foregoing reasons, Defendants respectfully request that the Court deny in its entirety

3 Plaintiff's Motion for Partial Summary Judgment.

4

5 DATED:  February 1, 2022              Respectfully submitted,

6                                                              QUINN EMANUEL URQUHART & SULLIVAN, LLP

7
                                                                 By: */s/ Alex Spiro*
8                                                                       Alex Spiro *(appearing pro hac vice)*
                                                                        *Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss,*
9                                                                       *Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias,*
                                                                        *James Murdoch, Kimbal Musk, And Linda Johnson Rice*
10

11

12

13

## **ATTESTATION**

14

I, Kyle K. Batter, am the ECF user whose ID and password are being used to file the above

15 document.  In compliance with Local Rule 5-1(h)(3), I hereby attest that Alex Spiro has concurred

16 in the filing of the above document.

17                                                                                   */s/ Kyle K. Batter*

18                                                                                   Kyle K. Batter

19

20

21

22

23

24

25

26

27 _____
sought is limited to the claims against Tesla and Mr. Musk.  (Notice of Motion.)  The director
28 defendants have no place in Plaintiff's Motion.