**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
amccall@zlk.com

*Attorneys for Plaintiff and Counsel for the Class*

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date: March 10, 2022<br>Time: 1:30 p.m.<br>Location: Courtroom 5, 17th Floor<br>Judge: Hon. Edward Chen |
|---|---|

*****FILED UNDER SEAL*****

**PUBLIC VERSION - REDACTED**

**TABLE OF CONTENTS**

I. INTRODUCTION. .......... 1

II. RESPONSE ON STATEMENT OF UNDISPUTED FACTS. .......... 2

III. THERE IS NO GENUINE DISPUTE THAT FUNDING WAS NOT SECURED ON AUGUST 7, 2018. .......... 6

IV. THERE IS NO CREDIBLE DISPUTE THAT INVESTOR SUPPORT WAS NOT CONFIRMED ON AUGUST 7, 2018. .......... 10

V. THERE IS NO GENUINE DISPUTE THAT THE AUGUST 13 BLOGPOST MISREPRESENTED THE STATUS OF NEGOTIATIONS WITH THE PIF. .......... 13

VII. THERE IS NO GENUINE DISPUTE THAT PLAINTIFF HAS ESTABLISHED RELIANCE BY THE CLASS ON THE ALLEGED MISREPRESENTATIONS. .......... 13

VIII. CONCLUSION. .......... 15

## TABLE OF AUTHORITIES

**Cases**

*In re Allstate Corp. Securities Litigation*,
966 F.3d 595 (7th Cir. 2020) .......... 14, 15

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) .......... 7, 11

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .......... 14

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) .......... 7

*Brody v. Transitional Hospitals Corp.*,
280 F.3d 997 (9th Cir. 2002) .......... 7

*Buxbaum v. Deutsche Bank AG*,
196 F. Supp. 2d 367 (S.D.N.Y. 2002) .......... 7

*Carmen v. S.F. Unified Sch. Dist.*,
237 F.3d 1026 (9th Cir. 2001) .......... 9, 11, 14

*Erica P. John Fund v. Halliburton Co.*,
563 U.S. 804 (2011) .......... 15

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) .......... 9

*Pommer v. Medtest Corp.*,
961 F.2d 620 (7th Cir. 1992) .......... 12

*In re REMEC Inc. Sec. Litig.*,
702 F. Supp. 2d 1202 (S.D. Cal. 2010) .......... 7

*S.E.C. v. Platforms Wireless Int'l Corp.*,
617 F.3d 1072 (9th Cir. 2010) .......... 8, 11

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
335 F.R.D. 276 (N.D. Cal. 2020) .......... 15

*Soremekun v. Thrifty Payless, Inc.*,
509 F.3d 978 (9th Cir. 2007) .......... 9, 13

*In re Tesla, Inc. Sec. Litig.*,
477 F. Supp. 3d 903 (N.D. Cal. 2020) .......... 7

*TSC Industries, Inc. v. Northway, Inc.*,
426 U.S. 438 (1976) .......... 9

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) ... 12

*In re VeriFone Sec. Litig.*,
11 F.3d 865 (9th Cir. 1993) ... 7

*Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*,
739 F.2d 1434 (9th Cir.1984) ... 8

*Washtenaw Cty. Employees' Ret. Sys. v. Walgreen Co.*,
2021 WL 5083756 (N.D. Ill. Nov. 2, 2021) ... 7

**I. INTRODUCTION.**

Plaintiff's motion for summary judgment aimed precisely at four key misrepresentations as well as the discrete issue of reliance. It set forth discrete and objective evidence showing that statements by Elon Musk, including key statements that he had "funding secured" to take Tesla Inc. private at $420 per share, that "investor support is confirmed," and "only reason why this is not certain is that it's contingent on a shareholder vote" were indisputably false when made. It also showed that Plaintiff had proven the necessary facts to create a presumption of reliance on material public misstatements regarding Tesla during the Class Period. Defendants do not contradict any of the key facts underlying Plaintiff's motion; instead, they present an entirely subjective and sometimes speculative version of events where words mean only what Musk thinks, regardless of their plain meaning. Under this alternative reality, "funding secured" is true because [REDACTED]

Defendants' proposed subjective approach to disclosures by public companies is not the law. The securities laws impose an objective test for falsity, looking to what a reasonable investor would understand a statement to mean. [REDACTED]. Viewed objectively, the misrepresentations subject to this motion are indisputably false. In addition, Musk knew they were false when he made them. The law does not accept *ex post* statements of integrity and "honest belief" as excuses for making false statements while knowing the true state of affairs.

Plaintiff has also presented unrebutted evidence that the market for Tesla stock and other securities was efficient during the Class period of August 7, 2018 to August 17, 2018. Plaintiff and the class, accordingly, are entitled to the legal presumption that they relied on material public misrepresentations made during that period. To rebut this presumption, Defendants must show that the truth about the proposed going-private transaction, its funding, and level of investor support credibly entered the market. Defendants have utterly failed to put forth the required evidence to

do this and their attempt to utilize the proposed report of their expert on loss causation as evidence rebutting the presumption of reliance should be rejected.

## II. RESPONSE ON STATEMENT OF UNDISPUTED FACTS.

Despite Defendants' submission of a 10-page "Statement of Material Facts", the material facts underlying Plaintiff's motion for summary judgment remain undisputed. On August 7, 2018, when Musk tweeted he was contemplating taking Tesla private at $420 per share with "funding secured," where "investor support is confirmed," and "only reason why this is not certain is that it's contingent on a shareholder vote," [redacted]

[redacted]

[redacted]

[1] E. Musk Dep. at 126:10-13; Ahuja Dep. at 108:22-110:8.
[2] Exhibit 121 at 8.
[3] *Id*. at 11-12 [redacted]
[4] Exhibit 80.
[5] E. Musk Dep. at 244:1-248:15; Exhibit 121 at 11; Ahuja Dep. at 82:12-23.
[6] Musk Interrogatory Responses at 27, 28, 30, and 35; E. Musk Dep. at 165:15-17, 189:10-16.

[redacted]

Defendants also do not discuss, and therefore, concede, the strong reaction to Musk's August 7, 2018 tweets from the market, financial analysts, Tesla investors, and even Tesla's own investor relations team. [redacted]

[7] Exhibit 83; E. Musk Dep. at 159:6-10, 213:8-12; Denholm Dep. at 44:22-45:16.
[8] Musk Interrogatory Responses at 33; E. Musk SEC Tr. at 165:1-5.
[9] E. Musk Dep. at 140:21-145:15.
[10] E. Musk Dep. at 125:9-25.
[11] E. Musk Dep. at 101:9-20; E. Musk SEC Tr. at 128:20-129:17, 260:2-15.
[12] Exhibits 101 and 179; *see also* Fath Dep. at 91:8-92:5 ("If a deal had been done and funding had been secured, why reach out to us [T. Rowe Price]?").
[13] Exhibit 265 at 5; *see also* Exhibit 179 at 29.
[14] Durban Dep. at 134:1-135:18, 135:20-136:3; Exhibit 194.
[15] Exhibit 101 at 3.

[redacted] Ryan Brinkman, a JP Morgan analyst, wrote "Either funding is secured or it is not secured, and Tesla's CEO says funding is secured."[17] Joseph Fath at T. Rowe Price understood "funding secured" to mean it was "locked and loaded and no question at all a hundred percent that you have funding ready to go."[18] As Fath testified: "There's nothing left for interpretation in those statements."[19] Tesla's stock price responded within seconds of Musk's tweets, rising to $379.57 per share by close of trading on August 7, 2018, a statistically significant increase.[20] For the remainder of the Class Period, Musk's proposed going-private transaction was heavily followed in the financial media, with over 2,400 articles published over just ten days.[21]

[redacted]

[redacted]

---

[16] Exhibits 58 and 151.
[17] Exhibit 15.
[18] Fath Dep. at 28:18-29:5.
[19] *Id.* at 32:26-33:8; *see also* Exhibit 41 (Fath email stating "I can't imagine he would Tweet this if not truth to it because that would seem to me like pretty black-and-white stock manipulation.").
[20] Hartzmark Rpt., ¶64.
[21] Hartzmark Rpt., ¶56.
[22] Defendants note that the Saudi PIF is reported to have over $225 billion in assets under management, citing a *Wall Street Journal* article dated August 15, 2018. *See* Batter Ex. A. Defendants fail to note that the same article also reports that "The PIF is scrambling to raise money for its investments. The fund is in talks with banks to raise billions of its own debt…" *Id.* at 5.
[23] Exhibit 107.
[24] Ahuja Dep. at 45:20-46:9.



[redacted]

[redacted]

[redacted]

[25] Ahuja Dep. at 84:2-14. Defendants omit this testimony from their brief.
[26] Teller Dep. at 143:10-13.
[27] Teller SEC Tr. at 225:18-24; 227:1-2.
[28] E. Musk SEC Tr. at 120:21-25. Defendants omit this testimony from their brief.
[29] E. Musk Dep. at 109:23-110:24; 132:24-133:13; 220:7-11; 247:5-248:15.
[30] Exhibit 82; *see also* Ahuja Dep. at 132:16-23 [redacted]
[31] Exhibit 82 at 1; *see also* Ahuja Dep. at 131:17-132:5 ([redacted]).
[32] Exhibits 12; 121 at 3; 301; Ahuja Dep. at 182:19-185:21.
[33] Exhibit 121 at 7.

[redacted]

## III. THERE IS NO GENUINE DISPUTE THAT FUNDING WAS NOT SECURED ON AUGUST 7, 2018.

[redacted]

[redacted]

[redacted] "We apply the objective standard of a 'reasonable investor' to determine

---

[34] *Id*. at 9.

[35] *Id*. at 12.

[36] Exhibit 121 at 8.

[37] E. Musk Dep. at 125:9-25.

[38] [redacted] *See, e. g.*, E. Musk Dep. at 216:6-220:11. [redacted]

whether a statement is misleading." *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 699 (9th Cir. 2021)(*citing In re VeriFone Sec. Litig.*, 11 F.3d 865, 869 (9th Cir. 1993)). "[A] statement is misleading if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'" *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008)(*quoting Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)). As this Court found in denying Defendants' motion to dismiss this case: "a reasonable stock investor could believe that Tesla had secured funding for the going-private transaction at $420 per share." *In re Tesla, Inc. Sec. Litig.*, 477 F. Supp. 3d 903, 924 (N.D. Cal. 2020)(identifying 13 facts supporting falsity). This is especially the case because, "notably Mr. Musk used the past tense in this regard. The word 'secured' implicitly negates any condition." *Id.* at 923.[39]

Furthermore, the evidence indisputably shows that reasonable investors did conclude that funding for a going-private transaction had been committed to Musk unconditionally.

---

[39] Defendants' citations do not support their argument that the jury must decide the meaning of "funding secured." Opp. Br. at 16:4-13. In *Washtenaw,* to defeat summary judgment, Defendants put forth evidence that generic price inflation was well-known in the industry and had been publicly remarked upon by their competitors and other market participants to demonstrate that Walgreens had not seen any "unusual activity" regarding generic inflation "compared to the rest of the industry." *Washtenaw Cty. Employees' Ret. Sys. v. Walgreen Co.*, 2021 WL 5083756, at *8 (N.D. Ill. Nov. 2, 2021). The Court in *Buxbaum* found that the parties' experts put forth two equally plausible translations of a German word that precluded summary judgment. *Buxbaum v. Deutsche Bank AG*, 196 F. Supp. 2d 367, 373 (S.D.N.Y. 2002). Finally, in *REMEC,* the Court denied summary judgment finding that a reasonable jury could accept "Defendants' explanation and take the 5% depreciation into account to reconcile the different figures in the current budget and the goodwill impairment test," and there was room for the parties to argue whether these numbers fall within the definition of the word "consistent." *In re REMEC Inc. Sec. Litig.*,702 F. Supp. 2d 1202, 1226 (S.D. Cal. 2010). Here, Defendants offer no evidence—expert or otherwise—that the term phrase "funding secured" should be interpreted other than by its plain meaning or that a reasonable investor would agree with their novel interpretation.

[40] Exhibit 151 at 1; *see also* Viecha Dep. at 156:21-158:22.

[41] Exhibit 146 at 1.

Under these circumstances, summary judgment in favor of Plaintiff on the falsity of the August 7, 2018 tweet is supported as there is no genuine factual dispute that it was false when issued: funding was not secured as of August 7, 2018. Furthermore, Musk knew it was false and subsequent self-serving statements of "belief" are insufficient under the securities laws. *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1094 (9th Cir. 2010)("When the defendant is aware of the facts that made the statement misleading, 'he cannot ignore the facts and plead ignorance of the risk'")(internal quotations omitted). Indeed, this argument runs squarely into black letter law holding that "a defendant will ordinarily not be able to defeat summary judgment by the mere denial of subjective knowledge of the risk that a statement could be misleading." *Platforms Wireless*, 617 F.3d at 1094. Where, as here, "no reasonable person could deny that the statement was materially misleading, a defendant with knowledge of the relevant facts cannot manufacture a genuine issue of material fact merely by denying (or intentionally disregarding) what any reasonable person would have known." *Id.* at 1094.

Defendants' attempt to distinguish *Platforms Wireless* is unavailing. The funding "secured" by Musk was exactly as illusory as the product described in *Platforms Wireless*. "If such a self-serving assertion could be viewed as controlling, there would never be a successful prosecution or claim for fraud." *Id.* at 1095.

Defendants' lengthy citations to cases holding that summary judgment is generally inappropriate on the issue of scienter are inapposite here. *See* Opp. Br. at 21. As one of their own cases provide, "Summary judgment is generally inappropriate when mental state is an issue, ***unless no reasonable inference supports the adverse party's claim.***" *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434, 1436 (9th Cir.1984) (emphasis added). There is no conflicting evidence here and no reasonable inference to be made, only Musk's purported belief. The

[42] Exhibit 14 at 1.

undisputed facts demonstrate that Musk acted with scienter.

Defendants' other arguments may be easily dismissed. First, Defendants state that [REDACTED] *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (affirming the grant of summary judgment where non-movant failed to identify any parts of record that established a genuine dispute of material fact).

Second, Defendants argue that, regarding the proposed price of $420 per share never being discussed with the Saudi PIF, [REDACTED]

Finally, [REDACTED] A statement is material if it "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). Musk's August 7, 2018 tweets had an immediate impact on Tesla's stock price,[44] led to a trading halt of its shares on Nasdaq,[45] and quickly became one of the most keenly followed stories in financial media. Numerous analysts issued reports discussing the tweets, including the importance of the phrase "funding secured" as

[43] E. Musk Dep. at 132:24-133:13.
[44] Hartzmark Rpt., ¶64.
[45] Exhibits 149 and 204.

well as other tweets issued by Musk on August 7, 2018.[46] Over 2,400 news articles or mentions about the tweets were published over the next ten days.[47] To argue that the tweet did not "significantly alter the total mix of information" available to Tesla investors is absurd.

[redacted] This is fundamentally different from materiality which requires a statement altering the "total mix" of information, not that it is the only statement affecting a company's stock price on a particular day. Defendants' materiality argument may be summarily dismissed.

## IV. THERE IS NO CREDIBLE DISPUTE THAT INVESTOR SUPPORT WAS NOT CONFIRMED ON AUGUST 7, 2018.

The evidence of the falsity of Musk's statement on August 7, 2018 that "investor support is confirmed" is simple and undisputed. [redacted] [48] [redacted] [49] [redacted]

Faced with this undisputed evidence, Defendants largely try to pretend this misrepresentation does not exist. [redacted]

---

[46] Hartzmark Rpt., ¶56; Class Certification Report, ¶32 and Appendix D; *see also* Exhibit 15.
[47] Hartzmark Rpt., ¶56.
[48] *See* Fath Dep. at 45:13-46:8 (interpreting "investor support is confirmed" as meaning "he had it lined up, whatever investors that may be, to support the transaction and be able to take them private.")
[49] Exhibits 113 to 120.

[redacted] Neither of these statements form any cogent argument in favor of the position, nor do they identify specific evidence to rebut the evidence put forward by Plaintiff. *See Carmen*, 237 F.3d at 1031. [redacted] *See* Opp. Br. at 9.[50]

Putting to one side the fact that "funding secured" was indisputably false, there is no way consistent with the English language to treat the two statements as synonymous. The truth or falsity of Musk's statements is assessed against an objective standard of a reasonable investor not his *ex post* stated "intended meaning." *See Alphabet, Inc.*, 1 F.4th at 699. [redacted] Under any objective standard, no reasonable person could deny that that the statement was materially misleading when made. *See Platforms Wireless*, 617 F. 3d at 1094.

[redacted]

---

[50] [redacted] *See Alphabet, Inc.*, 1 F.4th at 699.

[51] Musk Interrogatory Responses at 27, 28, 30, and 35; E. Musk Dep. at 165:15-17, 189:10-16.

[52] Exhibit 83 at 3.

[53] E. Musk Dep. at 167:7-168:14; E. Musk SEC Tr. at 161:6-21.

[redacted]

Defendants do not dispute these facts but instead point to statements made by Musk and Tesla on August 13, 2018 in a blogpost. In this blogpost, Musk and Tesla gave more details on the process being followed, including the formation of a special committee. [redacted] It is axiomatic that misrepresentations are assessed based on the facts that existed at the time they were made. *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1086 (9th Cir. 2002). Subsequent disclosures may correct, in whole or in part, an earlier misrepresentation but they cannot travel backwards in time to render a prior misrepresentation not misleading. *See*, *e.g.*, *Pommer v. Medtest Corp.*, 961 F.2d 620, 623 (7th Cir. 1992) (Easterbrook J.) (misrepresentation regarding patent was false when made notwithstanding fact that defendant ultimately obtained patent two years later). In any event, the record shows that Tesla investors were still misled about the status of the transaction even after the August 13, 2018 blogpost. Morningstar, for example, understood the August 13, 2018 blogpost, read together with Musk's August 7, 2018 tweets, to indicate that Musk had approximately 60% of shareholders supporting the transaction.[56] [redacted]

---

[54] Exhibit 179 at 29. *See also* Exhibit 265 at 7.

[55] E. Musk SEC Tr. at 258:1-4.

[56] Morningstar, *Tesla Buyout Looks Likely to Us, but Timing and Structure Uncertain*, August 13, 2018, 4:50 p.m. cited in Hartzmark Rpt., ¶106.

[57] [redacted]

## V. THERE IS NO GENUINE DISPUTE THAT THE AUGUST 13 BLOGPOST MISREPRESENTED THE STATUS OF NEGOTIATIONS WITH THE PIF.

The critical facts for determining the truthfulness of the August 13, 2018 blogpost are not disputed: [redacted]

## VII. THERE IS NO GENUINE DISPUTE THAT PLAINTIFF HAS ESTABLISHED RELIANCE BY THE CLASS ON THE ALLEGED MISREPRESENTATIONS.

Defendants offer two arguments against Plaintiff's motion on reliance: [redacted] However, Defendants offer no facts, let alone material facts, to rebut the presumption of reliance. *See Soremekun*, 509 F.3d at 984.

As shown above, Defendants have failed to show any genuine dispute as to whether Musk's statements were material. Indeed, the entire argument is baseless and an attempt to repackage arguments regarding loss causation, which is not at issue on this motion, with materiality. Musk's tweets had an immediate and observable impact on Tesla's stock price and were front page news

---

[redacted]

[58] Exhibit 121 at 11-13.

for the next two weeks. To suggest they were not material is ridiculous.[59] Defendants also fail to show a genuine dispute of fact as to their ability to rebut the fraud-on-the-market presumption. This presumption may be rebutted by a showing that "the 'market makers' were privy to the truth . . . and thus that the market price would not have been affected by their misrepresentations", or that the truth "credibly entered the market and dissipated the effects of the misstatements." *Basic Inc. v. Levinson*, 485 U.S. 224, 248-49 (1988).[60] Defendants have offered no evidence that either of these conditions applies here. *See Carmen*, 237 F.3d at 1031.

On the first condition, Defendants have not offered the name of a single market maker who was "privy to the truth." Mere speculation that one of the many market makers active in Tesla's stock might have known the truth (but have remained invisible in the documents produced in this case) is insufficient to defeat summary judgment on this issue. On the second *Basic* condition, Defendants again offer no evidence. Instead, [redacted]

---

[59] [redacted]

[60] *In re Allstate Corp. Securities Litigation*, 966 F.3d 595 (7th Cir. 2020), does not assist Defendants. *See* Opp. Br. at 25. In *Allstate*, the Seventh Circuit simply went on to prohibit district courts from deciding "materiality and loss causation" at the class certification stage while still requiring them to consider evidence relative to whether the alleged misrepresentations "affect[ed] the price of the securities" at issue. *Allstate*, 966 F.3d at 608-09. This issue is not presented here.

[61] [redacted]

[redacted] There is no systematic analysis of market movement or any attempt to identify when the truth "credibly entered the market and dissipated the effects of the misstatements." *See c.f. Allstate,* 966 F.3d at 613 (directing district court on remand to "square" defendants' price impact argument with "10 percent price drop" at end of class period). This is fatal to their argument. *See Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, 141 S. Ct. 1951, 1962 (2021) ("The defendant must 'in fact' 'seve[r] the link' between a misrepresentation and the price paid by the plaintiff—and a defendant's mere production of *some* evidence relevant to price impact would rarely accomplish that feat." (internal quotations omitted)).

[redacted] As an initial matter, whether "the alleged misrepresentations impacted [Tesla's] stock price" improperly "present[s] loss causation issues." *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 287 (N.D. Cal. 2020) (citing *Erica P. John Fund v. Halliburton Co.*, 563 U.S. 804, 807 (2011)). Further, it disregards the indisputable fact that Tesla's stock price declined 19.5% at the end of the Class Period.[63] The extent to which Musk's misrepresentations caused Plaintiff's losses is not at issue here because, as previously stated, Plaintiff has not moved for summary judgment on loss causation. *See Halliburton*, 563 U.S. at 813 ("The fact that a subsequent loss may have been caused by factors other than the revelation of a misrepresentation has nothing to do with whether an investor relied on the misrepresentation in the first place, either directly or presumptively through the fraud-on-the-market theory. Loss causation has no logical connection to the facts necessary to establish the efficient market predicate to the fraud-on-the-market theory.").

## VIII. CONCLUSION.

For the foregoing reasons and the reasons set forth in Plaintiff's opening brief, his motion for summary judgment should be granted.

---

[62] *See* McCall Decl. Exhibit R ("It sounds to us that he is not done talking to shareholders to gauge interest, but his estimate of about 66% of shareholders not tendering is not far off from our own assumption of 60%.")

[63] Hartzmark Rpt. ¶65.

Dated: February 15, 2022

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

s/ Adam M. Apton
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

-and-

Nicholas I. Porritt
Elizabeth K. Tripodi
Alexander A. Krot III
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel.: (202) 524-4290
Email: nporritt@zlk.com
Email: akrot@zlk.com
(*admitted pro hac vice*)

-and-

Joseph Levi
Eduard Korsinsky
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Email: jlevi@zlk.com
Email: ek@zlk.com
(*admitted pro hac vice*)

*Attorneys for Plaintiff and Counsel for the Class*