# EXCERPTS FROM THE DEPOSITION OF JOSEPH FATH TAKEN JULY 12, 2021

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

------------------------------)

IN RE TESLA, INC.

SECURITIES LITIGATION Civil Action No.

3:18:cv-04865-EMC

------------------------------)

REMOTE DEPOSITION OF JOSEPH FATH

New York, New York

July 12, 2021

Reported by:
Linda Salzman
JOB NO. 196636

July 12, 2021

12:15 p.m.

Remote deposition of JOSEPH FATH, the witness herein, held remotely before Linda Salzman, a Notary Public of the State of New York.

A P P E A R A N C E S:

LEVI & KORSINSKY
Attorneys for Plaintiffs
1101 30th Street, Northwest
Washington, D.C. 20007
BY: NICHOLAS PORRITT, ESQ.
KATHY AMES VALDIVIESO, ESQ.

COOLEY
Attorneys for Tesla
3175 Hanover Street
Palo Alto, California 94304
BY: PATRICK GIBBS, ESQ.
BINGXIN WU, ESQ.

T. ROW PRICE
Attorneys for the Witness
100 East Pratt Street
Baltimore, Maryland 21202
BY: CHRIS SHAHEEN, ESQ.

Also Present:
LEM LATTIMER, Videographer

STIPULATIONS

IT IS HEREBY STIPULATED AND AGREED by and among counsel for the respective parties hereto, that the sealing and certification of the within deposition shall be and the same are hereby waived;

IT IS FURTHER STIPULATED AND AGREED all objections, except as to the form of the question, shall be reserved to the time of the trial;

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed before any Notary Public with the same force and effect as if signed and sworn to before the Court.

THE VIDEOGRAPHER: Good morning, Counselors. My name is Lem Lattimer. I am a legal videographer in association with TSG Reporting, Inc.

Due to the severity of COVID-19 and following the practice of social distancing, I will not be in the same room with the witness. Instead, I will record this videotaped deposition remotely. The reporter, Linda Salzman, also will not be in the same room and will swear the witness in remotely.

Do all parties stipulate to this video recording and remote swearing and that it will be admissible in the courtroom as if it had been taken following Rule 30 of the Federal Rules of Civil Procedures and the state's rules where this case is pending?

Counselors, I need you to stipulate.

MR. PORRITT: Oh, yes. So stipulate.

MR. GIBBS: So stipulated.

THE VIDEOGRAPHER: Thank you. This is the start of media labeled No. 1 of the video-recorded deposition of Joseph Fath in the matter of In re: Tesla, Inc. Securities Litigation on July 12, 2021, at approximately 12:16 p.m.

All appearances are noted on the record. Will the court reporter please swear in the witness.

J O S E P H F A T H,

called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:

EXAMINATION BY

MR. PORRITT:

Q. Good afternoon, Mr. Fath. My name is Nicholas Porritt. I'm with the law firm of Levi & Korsinsky representing the plaintiff Glen Littleton and the class in this action.

Could you start off by just stating your full name and position at T. Rowe Price?

A. Joseph Fath, F-A-T-H. I run the

Q. Do you recall that the Musk Tweet also mentioned the words "funding secured"?

A. I do remember that.

Q. Okay. Do you recall what your reaction was to seeing those words in his Tweet?

A. Again, shock and surprise. Again, at that price point, it would have been a very healthy amount of capital you would need to raise to take the company private. So I was surprised.

And I know we'll talk about following emails, but we all internally tried to speculate who would have the wherewithal to do that type of transaction.

Q. And what was your interpretation of the meaning of "funding secured"?

A. Just as it states. When I read that, I assumed he had secured sources or financial sources to fund a go-private transaction.

Q. And what does it mean by "secured" in your mind?

A. To have locked and loaded and no question at all a hundred percent that you have funding ready to go and you're prepared to move forward with this transaction.

Q. So we can talk to -- back to Exhibit 41.

You start off mentioning that you were on vacation in Nevis. Then you say, "I just spoke to IR."

Do you see that?

A. I do.

Q. Who did you speak to in IR?

A. I believe I spoke to Martin Viecha.

Q. Okay. Do you recall what Martin Viecha told you?

A. He was as shocked as I was, and I just, as you would as any portfolio manager or analyst ask, I saw the Tweet. Is there a press release coming with more details?

And I got the sense they thought the same thing I did, that that wouldn't have been Tweeted unless there was

Q. Okay. Do you recall at this time reaching out through that contact to see to get information from Saudi Arabia regarding potentially investment in Tesla?

A. Absolutely not. We don't have communication with them. They direct all communication to us. We don't have an open line.

Q. Referring back to Exhibit 41, you conclude, "If I learn anything else, I'll be back to you all. But I can't imagine he would Tweet this if not truth to it because that would seem to me like pretty black-and-white stock manipulation."

Do you see that there?

A. I do.

Q. Does that reflect your sort of understanding as of 1:17 p.m. on August 7th?

A. It does.

Q. Why would you think it would be pretty black-and-white stock manipulation for this Tweet go out without truth to it?

A. Well, as you see in the Tweet,

it's very specific. It talks about the company being taken private, has a specific dollar amount, along with the verbiage funding secured.

That to me in my role seems pretty black-and-white. There's nothing left for interpretation in those statements.

MR. PORRITT: Kathy, if you can bring over Bates-stamp 6, 6 through 8.

MS. VALDIVIESO: Did you say 6, Nick?

MR. PORRITT: Yes, 6.

MS. VALDIVIESO: By the way, Exhibit 8 was uploaded, and if you need the other exhibits previously marked, just clarify the date and hour of the Tweet to be able to upload the previously marked exhibit, Nick.

MR. PORRITT: Okay. Thank you.

I'll refer the witness -- and you may have to go through the submitted folder to Exhibit 8. It's a document previously marked as Exhibit 8.

the witness a document previously marked as Exhibit 13.

Q. Do you see that, Mr. Fath?

A. I do.

Q. Do you recognize this document?

A. I recognize that Tweet, yes.

Q. Okay. Do you recall when you first saw that Tweet?

A. Again, it was a frenzy that day, but I see it's August 7th. I remember seeing it. But, again, I was on vacation. I saw it sometime during the day.

Q. Do you recall reading the statement there on the top of -- beginning of the Tweet in Exhibit 13, "Investor support is confirmed"?

A. Absolutely.

Q. Do you recall what your reaction was to seeing those words?

A. Yes. I was shocked because I said to myself, well, I know it's not us because we haven't spoken to them.

Q. What was your understanding of the meaning of the words "investor support is confirmed"?

A. Well, with the funding secured Tweet followed by this, that he had it lined up, whatever investors that may be, to support the transaction and be able to take them private.

That was my, you know -- and again, I think it just reinforced the funding secured.

MR. PORRITT: So, Kathy, if you can bring up Bates-stamp 12.

MS. VALDIVIESO: Yes, Nick. It's uploading and it's there.

MR. PORRITT: Is this Exhibit 44? I think so. Yes.

(Fath Exhibit 44, Email, Bates No. TRP_000012, marked for identification, as of this date.)

MR. PORRITT: I've placed before the witness a document marked as Exhibit 44. It's an email dated August 8, 2018, Bates-stamped TRP_000012.

Q. Do you have that document in front of you, Mr. Fath?

A. I do.

Q. Is Josh Spencer also in the Baltimore office?

A. He is.

Q. What about Joel Grant?

A. He was. He is now located in London. But at the time, he was here in Baltimore.

Q. Do you recall -- what do you recall next following your return from vacation about the Tesla go-private transaction?

A. Well, I think as the days passed and given they were reaching out, I think I became much more suspicious that the funding was secured and that, you know, they were clearly probably trying to set up funding to consummate the transaction.

But I don't recall the conversations that ensued in the days that followed.

Q. So what's the basis for the sort of understanding that you just described?

A. Well, I think that email that you referenced before this, him just reaching out and wanting to speak with me,

started to raise yellow flags in my mind that a deal was done.

If a deal had been done and funding had been secured, why reach out to us.

MR. PORRITT: Why don't we -- Kathy, why don't you bring up the previous Exhibit 19. It's the New York Times article.

MS. VALDIVIESO: It's uploading. It's taking some time. And it's there.

MR. PORRITT: The witness has in front of him a document previously marked as Exhibit 19, a New York Times article dated August 16, 2018.

Q. Do you recall reading this newspaper article, Mr. Fath?

A. I don't. I don't. There were so many -- I may have. There were so many publications that had articles out. I read some and some I didn't.

Q. When do you recall first reaching the conclusion that the go-private transaction was probably not

C E R T I F I C A T E

STATE OF NEW YORK )

: ss

COUNTY OF NEW YORK )

I, Linda Salzman, a Notary Public within and for the State of New York, do hereby certify:

That JOSEPH FATH, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by the witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 18th day of July, 2021.

Linda Salzman

___________________________

Linda Salzman