QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (*appearing pro hac vice*)
  alexspiro@quinnemanuel.com
  Kyle Batter (Bar No. 301803)
  kylebatter@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000

  Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
  Jeanine Zalduendo (Bar No. 243374)
  jeaninezalduendo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendants Tesla, Inc., Elon Musk,
Brad W. Buss, Robyn Denholm, Ira Ehrenpreis,
Antonio J. Gracias, James Murdoch, Kimbal Musk,
And Linda Johnson Rice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION PURSUANT TO LOCAL RULE 7-3(d) FOR PERMISSION TO SUPPLEMENT THE RECORD ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge: Hon. Edward M. Chen |

**NOTICE OF MOTION AND MOTION TO SUPPLEMENT THE RECORD ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

PLEASE TAKE NOTICE that Defendants Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, And Linda Johnson Rice, by their counsel, hereby move pursuant to Local Rule 7-3(d), to supplement the summary judgment record in connection with Plaintiff's motion for partial summary judgment (Doc. No. 352).

PLEASE TAKE FURTHER NOTICE that this motion is based on the Memorandum of Points and Authorities below, the Declaration of Kyle Batter and the exhibits attached thereto, the arguments of counsel, and any other matters properly before this Court. Pursuant to Paragraph 11 of the Court's Civil Standing Order – General, Defendants also submit herewith a proposed order.

**ISSUES TO BE DECIDED**

1. Whether Defendants may supplement the summary judgment record on Plaintiff's motion for partial summary judgment with sworn testimony by Plaintiff Glen Littleton, which did not take place until March 31, 2022, after the March 10, 2022 oral argument on Plaintiff's motion.

**MEMORANDUM AND POINTS OF AUTHORITIES**

Defendants respectfully request the Court's permission pursuant to Local Rule 7-3(d) to supplement the summary judgment record with new, material evidence that is now part of the discovery record in this case. As counsel for Defendants noted during the March 10, 2022 oral argument on Plaintiff's motion for partial summary judgment, discovery in this action has not yet concluded. Since the Court held oral argument, the parties have conducted six additional depositions, including—just yesterday—the deposition of Glen Littleton, the lead Plaintiff representing the class in this case.[1]

Evidence adduced during these depositions, and in particular, the deposition of Plaintiff, further confirms that there are material issues of fact as to whether "Elon Musk falsely represented with scienter 'Funding secured,' [and] 'Investor support is confirmed,'" (Doc. No. 352 at 1), as well as

---

[1] The parties have also met and conferred on pending document disputes and agreed that Defendants will be producing 106 additional documents shortly, and Plaintiff has filed a motion to compel production of still more documents pertaining to Tesla's dispute with JPMorgan. *See* ECF No. 385.

whether Plaintiff can establish the element of reliance. In this motion, Defendants respectfully direct the Court's attention to testimony by Plaintiff that, in Defendants' view, makes it clear there are issues of fact remaining. Because those hotly contested issues are the focus of Plaintiff's motion for partial summary judgment—and were similarly the focus of the March 10 argument—Defendants' request to supplement the record with this evidence should be granted.

### 1. *Plaintiff's Interpretation of "Shareholder Support Confirmed."*

Plaintiff testified about his interpretation of the meaning "investor support is confirmed" compared to "funding secured"[2]:

> **Q.** Did you read this Tweet [stating "investor support is confirmed"] to mean that shareholder support was confirmed?
> MR. PORRITT: Object to form.
> **A. No. I just -- to me, it was another affirmation that funding was secured. "Investors support is confirmed" that's -- to me, it's very similar to, if not synonymous with, funding secured. It's another way of saying it.**
> Q. You're reading investors there meaning whoever is financing the go-to private transaction?
> **A. Yeah, the investors, yes.**

Batter Decl. Exhibit A (Littleton Dep. Tr. excerpts) 113:8-19. *Compare with* Plaintiff's Reply in Support of Partial Summary Judgment (Doc. No. 370) at 1 ("[a] reasonable investor does not interpret investor support is confirmed to mean funding secured") (internal quotation marks omitted) and 11 ("there is no way consistent with the English language to treat the two statements as synonymous").

### 2. *Plaintiff's Understanding of "Funding Secured."*

Plaintiff testified about his interpretation of the term "funding secured."

> **Q.** Other than -- let me ask you: So what was your understanding of "funding secured"? What did that mean to you?
> **A. That somebody was willing to write a check, the Saudis, the -- Elon through banks. I thought that he would probably arrange for funding from banks to make up for whatever was shortfall. Money was there, funding was certain.**

---

[2] Plaintiff testified that he had "40 years of experience in the markets" and considers himself to be representative of a reasonable investor. *See* Ex. A 86:13-24; 158:12-17 (" **Q.** So you thought that you had possessed, you know, what was necessary to be thought of as a reasonable investor in connection with your investment decisions in the Tesla securities, right? **A. Based on my limited knowledge of how the [lead plaintiff] process works, I thought yes.**") (emphasis added).

> . . . .
>
> **Q.** That's fair enough. So let me change a question so we have a question and answer on the same page. So you read funding secured to mean that someone or a group of someones had committed, basically, cash, write a check, for a go-to private transaction at $420 per share?
> **A. Well, the nature of the funding was -- it would be [conjecture].[3] I just knew that he said there was funding certain. There was a group/individual, somehow, bank lending, that he would arrange to make it happen.**
>
> . . . .
>
> **Q.** Regardless of the nature of the structure, did you read that to mean that he had a signed, binding agreement to get funding for going private at $420 per share?
> **A. You know, I didn't -- I just knew he had funding secured and you're asking me questions about this possibility and that possibility, and I understand that's your job. I had no idea -- and at the time I had no idea how it would happen, it was just going to be done.**

Ex. A 114:16-23; 115:6-17; 116:12-21. *Compare with* Plaintiff's Brief in Support of Partial Summary Judgment (Doc. No. 352) at 3 (arguing funding not secured as matter of law because "[t]here was no legally binding agreement and no recourse to Musk or Tesla if the Saudi PIF backed out") and 19-20 ("while Musk may presently claim 'that the [Saudi PIF] was ready, willing, and able to fund the transaction at a standard, reasonable price premium,' this does not translate into 'Funding secured.'") (alteration in original).

### 3. *Plaintiff's Understanding of August 13, 2018 Blog Post*

Plaintiff offered additional testimony with respect to Musk's August 13, 2018 blog post[4] that also sheds light on Plaintiff's reasonable interpretation of the meaning of "funding secured." For context, Musk's August 13 blog post stated that Musk tweeted "funding secured" based on the following: "the Saudi Arabian sovereign wealth fund has approached me multiple times about taking

---

[3] In the rough draft of the transcript, this word was recorded as "Connecticut juncture," but Plaintiff's testimony was indeed "conjecture."

[4] This document is Exhibit 53 in this case and is already a part of the summary judgment record. It is reattached as Exhibit B to the Batter Declaration, filed herewith.

Tesla private," beginning in 2017; the PIF "held several additional meetings with me over the next year [2017-2018] to reiterate this interest and to try to move forward with a going private transaction"; "[o]bviously, the Saudi sovereign fund has more than enough capital needed to execute on such a transaction,"; "[d]uring the [July 31, 2018] meeting, the Managing Director of the fund … strongly expressed his support for funding a going private transaction for Tesla at this time. I understood from him that no other decision makers were needed and that they were eager to proceed"; "I left the July 31st meeting with no question that a deal with the Saudi sovereign fund *could be closed* …. This is why I referred to 'funding secured' in the August 7th announcement." Ex. B at 1-2 (emphasis added). Musk also noted in the blog that PIF had "expressed support for proceeding *subject to* financial and other due diligence and their internal review process for obtaining approvals," and that PIF had "asked for additional details on how the company would be taken private." *Id.* at 2 (emphasis added).

With respect to Exhibit 53—and specifically after having reviewed the above-quoted section titled "Why did I say 'funding secured'?"—Plaintiff testified as follows:

> **Q.** Given the definition that you had about funding secured, given that definition, once you read these paragraphs, did you still feel that funding was secured for going private at 420 per share?
> **A. I believe they confirmed one version of it, yes**
> **Q.** And when you say these paragraphs confirm the one version of your belief that funding was secured at 420, what do you mean by that?
> **A. I mean this was possibly one way he would get the capital.**
> **Q.** Now, when you read this August 13th Tweet about why Mr. Musk said funding was secured, you notice that he doesn't say there was some written signed agreement to fund Tesla going private at 420, right; that's not in there?
> **A. No, correct.**
>
> . . . .
>
> **Q.** Well, because here on August 13th, he's telling you why he said funding was secured, what he meant by that, right?
> **A. Again, I interpret this as one version, one possible version.**
> **Q.** And if you look at this, as you say, one possible version of what he meant by funding secured, you know, you, given your experience with Tesla and Mr. Musk, would conclude that this supported a belief that funding was secure, right?
> **A. It was a -- you know, it checked one of the boxes, yes.**
>
> . . . .

> **Q.** Did anything in this August 13 blog post where Mr. Musk explained what he meant by "funding secured," did anything lead you to believe that funding, in fact, was not secured?
> **A. No, no.**
>
> . . . .
>
> **Q.** Nothing in these paragraphs [of the blog post] that we've reviewed has changed your view that funding was secured for a go-to private transaction at 420, right?
> **A. No, nothing changes that –**

Ex. A 144:7-24; 145:16-146:2; 146:3-7; 149:19-23. *Compare with* Doc. No. 370 at 7 (arguing falsity is established because "the evidence indisputably shows that reasonable investors did conclude that funding for a going-private transaction had been committed to Musk *unconditionally*") (emphasis added); Doc. No. 352 at 20 ("Given that Musk knew the lack of any binding commitment to provide "secured funding" by the Saudi PIF … can be no genuine issue of material fact that Musk acted with scienter when he tweeted that funding was secured.").

### 4.   *Plaintiff's Testimony about Purported Corrective Disclosures*

Plaintiff testified that none of the numerous purported corrective disclosures that Plaintiff's experts claimed occurred during the class period altered his view that "funding [was] secured," and that he continued to believe funding was secured and the transaction would occur until August 24, 2018, when Musk announced that he was withdrawing his bid to take Tesla private.

> **Q.** As of August 24, 2018, did you still believe that funding was secure?
> MR. PORRITT: Object to form.
> **Q.** Before the [August 24, 2018] blog post?
> **A. Until Elon renounce[d] it and said that it wasn't going to happen, I assumed it was going to happen based on his Tweet.**
> **Q.** But -- and when you say you assumed it was going to happen, does that also mean that you assumed funding was secure?
> **A. Yeah. I assumed funding was secure because that's what he said.**

Littleton Dep. Tr. 139:22-140:8. *Compare with* Doc. No. 352 at 2 ("Musk sat for an interview with the *New York Times*, published on August 16, 2018, which revealed that funding was not secured, investor support was far from confirmed, and the basic feasibility of the transaction was still uncertain").

\*\*\*

Defendants respectfully submit that this testimony is further evidence of material issues of fact as to the issues on which Plaintiff has requested partial summary judgment. The Court should have the benefit of a full record in deciding a motion that seeks to dispose of the core issues in this case before trial. For that reason, there is good cause to permit Defendants to supplement the summary judgment record with this new and material evidence.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion and supplement the summary judgment record with the cited evidence prior to deciding Plaintiff's motion.

DATED:  April 1, 2022            Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Alex Spiro*
　　Alex Spiro *(appearing pro hac vice)*

*Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, And Linda Johnson Rice*

## ATTESTATION

I, Kyle K. Batter, am the ECF user whose ID and password are being used to file the above document. In compliance with Local Rule 5-1(h)(3), I hereby attest that Alex Spiro has concurred in the filing of the above document.

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Kyle K. Batter*
　　　　　　　　　　　　　　　　　　　　　　　Kyle K. Batter