**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
        amccall@zlk.com

*Attorneys for Plaintiff and Counsel for the Class*

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO SUPPLEMENT RECORD** |

## I.    INTRODUCTION.

Defendants finally deposed lead plaintiff Glen Littleton this past Thursday nearly eighteen months after cancelling his deposition during class certification proceedings in late-2020. Despite his testimony having no ability to alter the underlying merits of the case, Defendants pick four inconsequential snippets in what appears to be a last-ditch effort at avoiding partial summary judgment. Mr. Littleton's testimony does not raise any question of fact at all, let alone one material enough to alter the outcome of the case. Instead, the testimony aligns perfectly with the arguments made by Plaintiff in the briefing and during the hearing on March 10, 2022. If anything, Mr. Littleton's testimony elucidates just how harmful Elon Musk's wildly reckless behavior was when he told the world in August 2018 that he had "secured" funding and "confirmed" investor support to take Tesla private at $420 per share.

Defendants base their motion primarily on testimony about Mr. Littleton's "interpretation" of Musk's tweets on August 7, 2018. But far from creating "material issues of fact," Mr. Littleton's testimony actually squares perfectly with the existing record. When asked during the deposition how he interpreted the initial "funding secured" tweet, Mr. Littleton testified that he understood Musk's words to mean that the "[m]oney was there, funding was certain." How this testimony creates an issue of fact is unknown. It matches with how the vast majority of the investing world interpreted the tweet, which was that the money was "in the bag" as the Court so aptly put it on March 10. Similarly, Mr. Littleton's testimony that "funding secured" was "synonymous" with "investor support is confirmed" is also consistent with the record. Both statements were, as Mr. Littleton testified, an "affirmation that funding was secured" or, as the Court suggested on March 10, that "the investor support is lined up, ready to go, that it's really just a matter of Tesla shareholders saying yes, that there is no contingency on the other side of the equation." Defendants offer no explanation as to how or why Mr. Littleton's testimony creates a material issue of fact.

Defendants also misplace reliance on Mr. Littleton's testimony about Musk's blog posts on August 13 and 24, 2018. Plaintiff argued in their brief that the August 13 blog post created a false impression of the state of affairs existing between Musk and the Saudi PIF at that point in time. Instead of disclosing that Musk had ceased all negotiations with the Saudi PIF not more than 24

hours prior, the blog post lied to investors by making it seem as if the Saudi PIF was still funding the deal. Mr. Littleton's testimony echoed this argument. In fact, as Mr. Littleton testified, he believed the deal was still proceeding until Musk renounced it on August 24, 2018. Nothing about this testimony conflicts with record currently being considered by the Court or in any way prevents Plaintiff's motion for partial summary judgment from being granted.

Mr. Littleton is the class representative. While his testimony is important for many reasons, it legally has no bearing on whether Musk's statements were false at the time they were made and whether he made those statements with scienter. Indeed, had Defendants truly believed Mr. Littleton could have such an impact on these issues, they would have deposed him months if not years earlier instead of waiting till just eight weeks before trial knowing that his testimony would in all likelihood not be received in time for summary judgment proceedings. In sum, Defendants' motion is a day late and a dollar short. The Court should deny it in its entirety.

## II. GLEN LITTLETON'S TESTIMONY DOES NOT CHANGE THE RECORD OR OTHERWISE AFFECT THE OUTCOME OF THE SUMMARY JUDGMENT MOTION.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2015) ("A fact is material only if it might affect the outcome of the case, and a dispute is genuine only if a reasonable trier of fact could resolve the issue in the non-movant's favor. . . ."). Defendants failed to raise a *genuine* issue of material fact in opposition and still cannot do it now even with the addition of Mr. Littleton's testimony. This is because Mr. Littleton's testimony does not stop Musk's statements from being false or otherwise change the fact that Musk knew the statements were false when he made them.

A statement is "false" for the purposes of the Exchange Act when it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists." *In re Tesla Sec. Litig.*, 477 F. Supp. 3d 903, 922 (N.D. Cal. 2020) (internal quotations omitted); *see*

*also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (falsity of statements based on facts that existed at the time). Courts use the "objective standard of a 'reasonable investor' to determine whether a statement is misleading." *Alphabet Sec. Litig., R.I. v. Alphabet, Inc.*, 1 F.4th, 687, 699 (9th Cir. 2021). Thus, Mr. Littleton's individual thoughts about Musk's statements have no bearing on whether they were false. The record demonstrates indisputably that Musk had not "secured" funding or "confirmed" investor support, contrary to what he said publicly. Similarly, Musk's knowledge of this nonpublic, adverse fact is what drives scienter and, therefore, Mr. Littleton's testimony is entirely irrelevant on that issue too. *See SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1093-94 (9th Cir. 2010).

In any event, Mr. Littleton's testimony supports and does not contradict the evidentiary record presently before the Court. His interpretation of "'investor support is confirmed' compared to 'funding secured'" was that two statements were "synonymous." Defs. Mot. at 2. This is precisely what Plaintiff argued and the Court appeared to accept during the March 10 hearing.[1] Likewise, Mr. Littleton's testimony about his interpretation of the term "funding secured" squares exactly with what is already before the Court, *i.e.*, "[m]oney was there, funding was certain." Defs. Mot. at 2-3.[2] Mr. Littleton's testimony about the August 13 blog post also supports (and does not contradict)

---

[1] Summary Judgment Hr'ing Tr. at 10:24-11:9 (Plaintiff's counsel: "And then the final, I think critical point here, when talking about funding secured, is that Mr. Musk says very clearly, as testified, that that funding secured refers to PIF. He didn't speak to any other investors regarding this transaction at this particular point in time before his tweet on August 7th. And yet he also admits and says -- you know, it's undisputed that he had no intention of using the Saudi PIF to fund the entire transaction, that he intended to cap it at 20 percent, no more, at a maximum of 30 percent which still left a large gulf."); *see also id*. at 11:21-12:3 (Court: "All right. Let me ask defendants on this second quote about the, quote, 'investor support is confirmed. The only reason why this is not certain is that it's contingent on the shareholder vote.' Again, that suggest that everything -- similarly that the investor support is lined up, ready to go, that it's really just a matter of Tesla shareholders saying yes, that there is no contingency on the other side of the equation."); *Id*. at 15:6-15:8 (Court: "Well, who else could 'investor support' be referring to in context besides the Saudi investment group?").

[2] Summary Judgment Hr'ing Tr. at 5:9-5:12 (Court: "-- it's not an issue because -- not that I'm not interested or we don't need it. It's because it's been, quote, secured. It's [not] an issue because I got it, it's in the bag or something like that."); *see also id*. at 6:19-6:25 (Court: "Well, but you use the word 'handshake deal.' A deal means there's an understanding. And if you don't even have an understanding of price or what the structure is, whether they're going to demand 30 percent

1  Plaintiff's argument on the motion, which was that the blog post created a materially misleading

2  impression of Musk's then-existing negotiations with the Saudi PIF instead of disclosing that all

3  negotiations had been terminated by Musk not more than 24 hours previously. Defs. Mot. at 4-5.[3]

4  Mr. Littleton's testimony about the blog post also addresses loss causation, which is not before the

5  Court on the motion. If anything, Mr. Littleton's testimony bolsters the arguments made in the

6  summary judgment briefing and at the hearing on March 10, 2022. Thus, if the Court is inclined to

7  consider Mr. Littleton's testimony, it only reinforces the conclusion that granting Plaintiff's motion

8  would absolutely be the correct decision.[4]

9  **III.    DEFENDANTS' MOTION IS PROCEDURALLY IMPROPER AND UNTIMELY.**

10          Rule 56(d) explicitly allows a non-moving party to oppose a motion for summary judgment

11  where "facts are unavailable" due to outstanding discovery. FED. R. CIV. P. 56(d). Defendants did

12  not raise this defense during the summary judgment proceedings either in their opposition brief or

13  at the hearing. In fact, Defendants' only comment about discovery had nothing to do with Mr.

14  Littleton at all, but instead "expert witness[]" depositions.[5] Their decision to forgo Mr. Littleton's

15  deposition during class certification and then postpone it until after summary judgment reflects the

---

17  ownership, 51 percent ownership or something else, how can there be a, quote, 'deal,' even if it's just a handshake deal?").

19  [3] *Compare* Defs. Mot. at 4-5 (quoting Mr. Littleton's testimony that blog post did not "change [his] view that funding was secured for a go-to private transaction at 420") *with* Plaintiff's Reply Brief at 13 ("The blogpost portrays a cordial and mutually supportive discussion between Musk and the Saudi PIF to engage in a process whereby the Saudi PIF would help take Tesla private. In fact, the going-private process was now being run by Goldman Sachs and Silver Lake with a minimal role, if any, for the Saudi PIF, and the relationship between Musk and Al-Rumayyan would be more accurately described as hostile and angry.").

23  [4] Similar to Mr. Littleton's testimony about the August 13 blog post, the last excerpt of testimony relied upon by Defendants speaks to when Mr. Littleton learned that funding had in fact not been secured. Defs. Mot. at 5. In any event, testimony at trial will show that the market had discounted the probability of any going private transaction to zero regardless of when Mr. Littleton individually discovered that funding for the transaction had in fact not been secured.

26  [5] Summary Judgment Hr'ing Tr. at 26:5-26:12 (Defense counsel stated: "I feel an obligation to tell the Court, the expert witnesses aren't even done being deposed yet in this case. So the idea that -- I don't leave the Court with the impression, well, the experts have said one thing absolutely never to change. Not only have they not testified at trial, they haven't even been deposed to much of what plaintiffs' counsel is speaking to.").

- 4 -

reality Mr. Littleton's testimony has no bearing on the factual issues presently before the Court. Thus, Defendants have no credible basis for seeking leave to file a sur-reply, which is the relief they effectively seek even though they styled the motion as an objection to evidence offered in reply under Local Rule 7-3(d). *See Applied Materials, Inc. v. Demaray LLC*, No. 5:20-cv-05676-EJD, 2020 U.S. Dist. LEXIS 236758, at *2-3 (N.D. Cal. Dec. 16, 2020) (denying administrative motion for leave to file sur-reply because "evidence submitted with a reply brief is not new evidence when it is submitted to rebut arguments raised in the opposition brief").

## IV.    CONCLUSION.

Plaintiff's evidentiary showing on the motion demonstrated, indisputably, that Musk lied on August 7, 2018 when he tweeted to over 22 million people that he had "secured" funding to take Tesla private at $420 per share and that investor support for the transaction had been "confirmed." He then kept that lie alive in the market by hiding the fact that he had not and, indeed, never obtained funding for his fictitious take-private transaction. Defendants' present last-ditch effort to avoid partial summary judgment on should be rejected.

Dated: April 5, 2022                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 s/ Adam M. Apton
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

-and-

Nicholas I. Porritt
Elizabeth K. Tripodi
Alexander A. Krot III
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel.: (202) 524-4290

- 5 -

Email: nporritt@zlk.com
Email: akrot@zlk.com
(*admitted pro hac vice*)

-and-

Joseph Levi
Eduard Korsinsky
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: jlevi@zlk.com
Email: ek@zlk.com
(*admitted pro hac vice*)

*Attorneys for Plaintiff and Counsel for the Class*