**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
       amccall@zlk.com

*Attorneys for Plaintiff and Counsel for the Class*

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER** |

## MEMORANDUM OF POINTS AND AUTHORITIES

I.  INTRODUCTION

On August 7, 2018, Defendant Elon Musk published two notorious tweets on his Twitter account: "Am considering taking Tesla private at $420. Funding secured." and "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote." As this Court has determined in its recent order granting Plaintiff's motion for partial summary judgment, these statements by Musk were false and misleading and that Musk made these false statements recklessly and with full awareness of the facts that he misrepresented in his tweets. *See* Order Granting in Part and Denying In Part Plaintiff Littleton's Motion for Partial Summary Judgment at 23-29 (ECF No. 387). The Court determined that no reasonable juror could conclude otherwise. Over three years earlier, the United States Securities & Exchange Commission reached the same conclusion. It filed a complaint alleging that Musk violated its Rule 10b-5 by publishing his tweets on August 7, 2018 because the tweets were false and misleading and "premised on a long series of baseless assumptions and were contrary to facts that Musk knew." *See SEC v. Musk* Complaint, case No. 1:18-cv-08865 (S.D.N.Y.) (McCall Decl. Ex. A). Musk settled with the SEC agreeing, *inter alia*, not to make any "public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis." *See id*. Consent of Defendant Elon Musk (McCall Decl. Ex. B).

Despite the findings by this Court, the SEC, and his own written consent, Musk has engaged in a high-profile public campaign to present a contradictory and false narrative regarding his August 7, 2018 tweets. Musk telegraphed this in his deposition in this proceeding taken on November 5, 2021 where he stated his intent to use the upcoming trial in this case as an opportunity to "clear the record" and explain how he was coerced into the "terrible SEC settlement" even though he purportedly and counterfactually did nothing wrong. *See* E. Musk 11/5/21 Dep. at pp. 120:17-122:12 (McCall Decl. Ex. C). Next Musk filed on March 8, 2022 a motion to terminate the SEC settlement accompanied by a declaration in which Musk, in flagrant violation of his consent, proclaimed under penalty of perjury that the allegations in the SEC Complaint were false and the SEC coerced him into settling. *See* Declaration of Elon Musk dated March 7, 2022 (McCall Decl.

1   Ex. D). Yesterday, on April 14, 2022, Mr. Musk added to this. Four days after receiving the Court's
2   order entering judgment against Musk on the question of the falsity of his August 7, 2018 tweets,
3   Musk once again attempted to advance his self-serving narrative regarding his tweets. In a TED
4   Talk in Vancouver while discussing his recent proposal to take Twitter, Inc. private, an interview
5   which has now been streamed *hundreds of thousands* of times and reported in *dozens* of publications
6   in just the past 24 hours alone, Musk insisted "funding was actually secured. I want to be clear
7   about that. In fact, this may be a good opportunity to clarify that. Funding was indeed secured"
8   before going on to refer to the SEC as "bastards" and claiming that he settled with the agency only
9   because they had a "gun to [his] child's head" and was "forced to admit that [he] lied . . . to save
10  Tesla's life and that's the only reason." *See* 4/14/22 Musk Transcript (McCall Ex. E).

11      The gratuitous and apparently premeditated nature of Musk's comments and his flagrant
12  disregard of the opinions of the SEC, this Court, and his own written consent, strongly suggest that
13  Musk is likely to continue making similar statements up to trial. Such statements are potentially
14  highly prejudicial to Plaintiff. Despite the Court's explicit and unambiguous grant of summary
15  judgment in Plaintiff's favor on the issues of falsity and scienter, Musk's comments risk confusing
16  potential jurors with the false narrative that he did not knowingly make misrepresentations with his
17  August 7, 2018 tweets. Such confusion could taint any further determinations that the jury may
18  need to make, such as the liability of Tesla, Inc. and its board or the amount of damages owed by
19  Musk and the other Defendants. Accordingly, Musk should be restrained from making any further
20  public comments about his interpretation and opinions of the allegations in this case until after trial.
21  His present statements on that issue, an unsubtle attempt to absolve himself in the court of public
22  opinion, will only have a prejudicial influence on a jury who may entertain Mr. Musk's claims of
23  veracity despite what the evidence has shown.

24      A fair trial is among the Constitution's most significant guarantees. "Few, if any interests
25  under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and
26  an outcome affected by extrajudicial statements would violate that fundamental right." *Gentile v.*
27  *State Bar*, 501 U.S. 1030, 1075 (1991). This Court has the responsibility of ensuring that media
28  coverage does not affect the fairness of the proceeding. *Sheppard v. Maxwell*, 384 U.S. 333, 362-

63 (1966) ("[T]he cure lies in those remedial measures that will prevent the prejudice at its inception. The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences."); *Levine v. United States Dist. Court for the Central Dist. of Cal.*, 764 F.2d 590, 596 (9th Cir. 1985). The government and public have a fundamental interest in ensuring the integrity of the judicial process. *Levine*, 764 F.2d at 596. "[T]he circus-like environment that surrounds highly publicized trials threatens the integrity of the judicial system." *Levine*, 764 F.2d at 598; see Sheppard, 384 U.S. at 342–49.

In light of the highly prejudicial pretrial media blitz seemingly underway by Musk, and in order to ensure a fair and impartial trial with a jury untainted by inflammatory and distracting media quotes seeking to sway public opinion, Plaintiff requests that the Court issue a narrowly drawn restraining order precluding Musk from speaking with the press and/or media about the case and its underlying facts until the end of trial. As officers of the Court, the lawyers will then be able to focus their full attention on performing their duties with respect to the courtroom proceedings only. Because there are no restrictions on the media's First Amendment rights, the media can fully perform their duties of apprising the public without any assistance from Musk. *See*, *e.g.*, *Levine*, 764 F.2d at 597–99; *cf. Farr v. Pitchess*, 522 F.2d 464, 468–69 (9th Cir. 1975) (encouraging use of such orders).

Such a limited and narrowly drawn order—following substantial evidence of inflammatory and improper statements by Musk threatening Plaintiff's constitutional right to a fair trial—will strike the proper balance between: (1) ensuring the parties' right to a fair trial without the distractions of media inquiries; (2) minimizing the risk of improperly influencing prospective and actual jurors; and (3) not interfering with the media's function to accurately and fairly report the proceedings and keep the public apprised. Given Mr. Musk's demonstrated proclivity towards publicity, a fair trial is unlikely without such an order in this case.

II.     **FACTUAL AND PROCEDURAL BACKGROUND.**

Following his Tweets on August 7, 2018, the SEC immediately began an investigation into the circumstances of their publication. After an investigation which included taking testimony from Musk and other witnesses, the SEC filed a complaint against Musk on September 27, 2018 in the

1  United States District Court for the Southern District of New York. (McCall Ex. A). The SEC
2  alleged in its complaint that Musk's August 7, 2018 statements, including his statements that "Am
3  considering taking Tesla private at $420. Funding secured." And "Investor support is confirmed.
4  Only reason why this is not certain is that it's contingent on a shareholder vote.", were false and
5  misleading. *Id*. ¶¶ 61-67. The SEC further alleged that Musk acted knowingly or recklessly when
6  he made his statements on August 7, 2018 as he knew they "were premised on a long series of
7  baseless assumptions and were contrary to facts that [he] knew". *Id.* ¶ 68. The SEC also alleged
8  that Musk's August 7, 2018 statements caused market chaos and harmed Tesla investors. *Id*. at ¶¶
9  75-77. The SEC alleged that Musk violated Section 10(b) of the Securities Exchange Act of 1934,
10 15 U.S.C. § 78j, and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

The next day, Musk signed a consent to entry of final judgment on the claims he knowingly or recklessly violated Section 10(b) and Rule 10b-5. He agreed to pay a penalty of $20 million and resign as Chairman of Tesla. *See* McCall Ex. B. As part of his consent to entry of judgment, Musk agreed to comply with 17 C.F.R. § 202.5(e). Specifically, Musk undertook that he:

> (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations, without also stating that Defendant does not deny the allegations….[1]

*Id*. p.5. Judgment was duly entered on October 16, 2018.

In this proceeding, Plaintiff's Consolidated Complaint was filed on January 16, 2019. (ECF No. 184). By order dated April 15, 2020, the Court denied Defendants' motion to dismiss the complaint. (ECF No. 251). Discovery commenced. On November 5, 2021, Plaintiff took the deposition of Musk. In the middle of his testimony, Musk took the opportunity to volunteer that he was "quite excited" to "clear the record" in this proceeding, stating in pertinent part:

---

[1] Although Musk's consent permits him to take legal or factual positions in other proceedings, this right does not include proceedings to which the SEC is a party. *Id.*

- 4 -

> I should mention that I'm actually quite excited about this case, because I've -- I'm extremely unhappy about the SEC settlement, but I'm prohibited from talking about it, but now I'm forced to talk about it under penalty of perjury. And so I can now clear the record about that terrible SEC settlement where they held a gun to Tesla's head, and it was Tesla would either die or they would force me to lie. And now I can finally clear the record, and I'd like to thank you for that.
>
> . . .
>
> No.  It was saying that the SEC -- and this is the reason why I lack respect for the SEC, is that they knew they had no case. They knew that they were factually in the wrong, but they also knew that Tesla would be under extreme pressure to settle the case, and  that -- and I declined to settle the case with the SEC. And then I was told by Deepak Ahuja that if we did not settle the SEC, that the banks would stop providing Tesla with working capital, and we would go bankrupt immediately.
>
> So I was faced with a terrible choice, publicly settle with the SEC -- and although the – it says there is no admission or denial of guilt, if you pay a fine to the SEC, everyone thinks you're guilty. I knew this, and this has been used against me for a long time. And now I can finally clear the record. And I'm going to do it, and it's going to be great.

E. Musk 11/5/21 Deposition, pp. 120:17-122:12 (McCall Decl. Ex. C).[2]

On January 12, 2022, Plaintiff filed his motion for partial summary judgment, including judgment on the issues of the falsity of Musk's August 7, 2018 tweet and the on the issue that he acted knowingly or recklessly. (ECF No. 352). Oral argument was scheduled for March 10, 2022. On February 17, 2022, Musk's counsel submitted a letter to the Court in New York seeking relief from its judgment entered in favor of the SEC and against Musk and erroneously stating that Musk consented to judgment "without admitting or denying wrongdoing relative to the SEC's dubious legal theories".  *See* 2/17/22 letter from A. Spiro to Nathan J. (McCall Ex. F). As set forth above, this was already contrary to the express terms of Musk's consent to entry of judgment.

On March 8, 2022, Musk went even further, moving to quash the entire judgment entered in *SEC v. Musk*.  The motion attached a declaration from Musk where, in violation of his consent to entry of judgment, he both "made [a] public statement denying, directly or indirectly, [an]

---

[2] Musk's deposition was initially designated as confidential but the contents of this portion of the transcript were publicly disclosed by Musk when he filed his declaration in *SEC v. Musk*. Therefore, to the extent this portion contains any confidential information protected under the confidentiality order entered in this proceeding, which is highly dubious, such confidentiality has now been waived by Musk.

allegation in the complaint or creating the impression that the complaint is without factual basis" as well as made a "public statement to the effect that [Musk] does not admit the allegations of the complaint without also stating that [he] does not deny the allegations." Specifically, he swore under penalty of perjury that "My August 7, 2018 tweet was written at a time when I was in fact considering taking Tesla private at $420 a share, funding was secured, and there was investor support." *See* McCall Ex. D at ¶ 3. Musk also swore that "I never lied to shareholders. I would never lie to shareholders. I entered into the consent decree for the survival of Tesla, for the sake of its shareholders." *Id*. at ¶ 9. Musk's motion to quash his consent judgment with the SEC remains pending. Musk's motion got widespread media coverage. *See* Dave Michaels and Rebecca Elliot, *Elon Musk Seeks to Terminate 2018 Fraud Settlement With SEC*, WALL STREET JOURNAL (Mar. 8, 2022); Lauren Feiner, *Musk seeks to end SEC settlement that required preapproval of his tweets*, CNBC (Mar. 8, 2022); Faiz Siddiqui, *Elon Musk asks court to scrap SEC settlement over his tweets, claims he was 'forced' to enter into it*, THE WASHINGTON POST (Mar. 8, 2022).

On April 1, 2022, this Court entered its order granting in part Plaintiff's motion for partial summary judgment. As the Court held, the evidentiary record demonstrated that no reasonable jury could find Musk's tweets on August 7, 2018 accurate or not misleading. Likewise, given that Musk was intimately involved with the facts leading to that conclusion, the Court also held that he recklessly made the statements with knowledge as to their falsity. *See* ECF No. 387 at 24-29. The parties received the Court's order on April 10, 2022.

On April 14, 2022, Musk appeared at TED 2022 Vancouver for an in-person, sit-down interview with TED CEO Chris Anderson. In front of nearly 1,800 attendees and thousands more who were streaming the interview online in real-time, Anderson quipped with Musk whether he had "funding secured" for his recent proposal to take Twitter, Inc. private. Musk eagerly used the prompt to emphatically proclaim his innocence with respect to the August 2018 "funding secured" tweet at issue in this case. In pertinent part, Musk said:

> Q <Chris Anderson>: . . . is funding secured?
>
> A <Elon R. Musk>: I have sufficient assets to complete the -- it's not a forward-looking statement, blah, blah, blah. I have suff-- I mean, I can do it if possible.

> Q <Chris Anderson>: Right.
>
> A <Elon R. Musk>: So, -- and I mean, I should say actually, even in the -- or originally the -- with Tesla back in the day, funding was actually secured. I want to be clear about that. In fact, this may be a good opportunity to clarify that. Funding was indeed secured, and I should say, like, why do I not have respect for the SEC in that situation. And I don't mean to blame everyone at the SEC, but certainly the San Francisco office. It's because the SEC knew that the funding was secured, but they pursued the -- an active public investigation none the less. At the time, Tesla was in a precarious financial situation, and I was told by the banks that if I did not agree to settle with the SEC, that they would -- the banks would cease providing working capital and Tesla would go bankrupt immediately. So, that's like having a gun to your child's head. So, I was forced to concede to the SEC, unlawfully, those bastards. And now, they -- it makes it look like I lied, when I did not in fact lie. I was forced to admit that I lied for -- to save Tesla's life and that's the only reason.

E. Musk 4/18/22 Transcript (excerpt), pp. 2:5-3:16 (McCall Decl., Ex. E). Again, Musk's comments received widespread media coverage.  See Hyunjoo Jin and Sheila Dang, *Musk says U.S. SEC 'bastards' forced settlement over Tesla tweets*, REUTERS (Apr. 14, 2022); Andrew Hawkins, *Elon Musk says the SEC's investigations into Tesla are 'like having a gun to your child's head' 'Funding was actually secured'*, THE VERGE (Apr. 14, 2022); Alan Ohnsman, *Did Elon Musk Trigger New Legal Headache With SEC 'Bastards' Comment?*, FORBES (Apr. 14, 2022). These statements clearly violate Musk's written consent to judgment in favor of the SEC as well as squarely contradict the Court's entry of summary judgment against Musk on the issues of falsity and scienter.

### III. MUSK'S EXTENSIVE PRETRIAL MEDIA INTERVIEWS POSE A CLEAR DANGER AND SERIOUS RISK TO A FAIR TRIAL BECAUSE THEY ATTRACT PRETRIAL PUBLICITY, POISON THE JURY POOL, AND INFLUENCE THE OUTCOME ON THE EVE OF TRIAL.

Musk's public statements about his August 7, 2018 tweet or the merits of the SEC settlement are inflammatory and prejudicial in light of the Court's recent order granting partial summary judgment. The truth of the August 7, 2018 tweets and Musk's state of mind when publishing them are no longer issues to be decided by the jury. Therefore, Musk's continuing public statements about these issues only serve to prejudice the jury pool in this case by potentially influencing their deliberations during trial. Any impression held by a juror that "funding was actually secured", as repeatedly and publicly stated by Musk, would affect that juror's ability to fairly consider, for

example, whether Tesla or its board of directors should be liable for Musk's false statement or assessing the damages that Tesla investors should receive resulting from Musk's fraudulent August 7, 2018 tweets. Furthermore, the gratuitous nature of Musk's statements, volunteered to questions that do not directly address the topic, suggest that these statements are deliberate and part of a purposeful strategy on Musk's behalf. Without a narrowly drawn restraining order against Musk, this type of extensive publicity campaign will jeopardize the Court's ability to select a fair and impartial jury. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 562-63 (1976). Measures short of this will not ensure Plaintiff a fair trial. *See id*. at 563; *see also In re Russell*, 726 F.2d 1007, 1009-10 (4th Cir. 1984) ("reasonable likelihood that prejudicial news prior to trial will prevent a fair trial"); *United States v. Tijerina*, 412 F.2d 661, 666–67 (10th Cir. 1969) ("'reasonable likelihood' of prejudicial news which would make difficult the impaneling of an impartial jury and tend to prevent a fair trial").[3]

## IV. THE NARROWLY DRAWN LIMITED RESTRAINING ORDER ON DEFENDANTS WILL NOT INTERFERE WITH THE FIRST AMENDMENT GUARANTEE OF THE PRESS TO REPORT FAIRLY AND OPENLY AND NO LESS RESTRICTIVE ALTERNATIVES ARE VIABLE.

The Court has ruled that, because the First Amendment guarantees the media and public access to a full and open trial, the media is unrestricted in attending the proceedings, gathering information, and reporting on the proceedings. Plaintiff's request neither denies the media access to the proceeding nor bars the media from disseminating any information that it obtains. *See Levine*, 764 F.2d at 594; *Sheppard*, 384 U.S. at 359, 361-62, 363; *Nebraska Press*, 427 U.S. at 564 & n. 8; id. at 601 & n. 27 (Brennan, J., concurring); *cf. In re Halkin*, 598 F.2d 176, 195 & n.44 (D.C. Cir.

---

[3] This applies equally to Defendants' counsel in ongoing related legal disputes. *See Doe v. Cabrera*, 307 F.R.D. 1, 9 (D.D.C. 2014) ("The Court is deeply concerned and troubled by the public statement made by the plaintiff—presumably with the plaintiff's consent—to the media after the plaintiff filed the complaint. It appears that the plaintiff, her attorney, and others operating on her behalf, are attempting to try her case in the media or gain a tactical advantage through their public statements. . . Upon the filing of the complaint, the plaintiff and any counsel representing the plaintiff or otherwise acting on her behalf should have remained silent about the case. Although the court appreciates zealous advocacy, counsel for the plaintiff and other attorneys acting on her behalf should have known better than to publicize the plaintiff's case.").

1979) (order directed against lawyers and litigants is less drastic than restraining the press). Plaintiff's request for this narrowly drawn order is an effective and workable method of ensuring a fair trial. *See Nebraska Press*, 427 U.S. at 562-63.

Officers of the court have a fiduciary obligation not to prejudice fair trials. Lawyers have special access to information not available to the public, a vested interest in a particular outcome, and a professional responsibility to the Court to conduct themselves in a manner that does not harm the integrity of the judicial process or impede fair judicial proceedings. *See*, *e.g.*, *Sheppard*, 383 U.S. at 363; *Nebraska Press*, 427 U.S. at 601 n.27 (Brennan, J., concurring) ("As officers of the court, court personnel and attorneys have a fiduciary responsibility not to engage in public debate that will redound to the detriment of the accused or that will obstruct the fair administration of justice. It is very doubtful that the court would not have the power to control the release of information to impose suitable limitations whose transgression could result in disciplinary proceedings.") (citation omitted); *Gentile*, 501 U.S. at 1075 ("The State has a substantial interest in preventing officers of the court, such as lawyers, from imposing such costs [as detrimental effects of pretrial publicity] on the judicial system and on the litigants.").

No alternative other than a limited restraining order on Mr. Musk will achieve a fair trial. The parties are preparing for trial; trial is scheduled to begin May 31, 2022 (though the Court has scheduled a conference for April 18, 2022 to discuss new trial dates); public attention is nationwide; public attention is unlikely to subside given Mr. Musk's proclivity to publicity and his celebrity status. Screening out potential jurors and admonishing jurors to consider only the admissible evidence presented at trial is an insufficient remedy unlikely to cure the harm if Mr. Musk is able to continue to provide on the record quotes deliberately intended to sway the jury and public opinion. No less restrictive alternatives will "alleviate the harm to the integrity of the judicial process caused by the extrajudicial statements of trial participants." *See Levine*, 764 F.2d at 600. Such an order limiting the speech of Defendants will significantly enhance the likelihood of a fair trial. *See*, *e.g.*, *Levine*, 764 F.2d at 599–601.

Specifically, Plaintiff seeks an order prohibiting Mr. Musk from communicating with the media, press, news outlets, and the like about the case and its underlying facts. This includes but is

not limited to: the character, credibility, or reputation of any party or witnesses; the contents of any pretrial materials or evidence in the case; the strengths or weaknesses of the case of either party; and any other information Mr. Musk or his counsel knows or reasonably should know is likely to be inadmissible as evidence and would create a substantial risk of prejudice if disclosed. *Levine*, 764 F.2d at 599; *Younger v. Smith*, 30 Cal. App. 3d 138, 167– 69 (1973).

## V.    CONCLUSION

Mr. Musk candidly stated his intent for this trial during his November 5, 2021 deposition, which was to "clear the record" and explain why he agreed to the "terrible SEC settlement" even though he "never lied to shareholders." He has used his fame and notoriety to sway public opinion in his favor, waging battle in the press having been defeated in the courtroom. Mr. Musk's demonstrated proclivity to publicity warrants the relief being requested. *See*, *e.g.*, *Levine*, 764 F.2d at 597-98 ("this court finds it quite reasonable to expect that such publicity has been and will become even more pervasive, creating in effect a lobbying effort by counsel on behalf on their clients. The public has a right to expect a fairer trial than that.").

Dated: April 15, 2022                                        Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 s/ Adam M. Apton
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

-and-

Nicholas I. Porritt
Elizabeth K. Tripodi
Alexander A. Krot III
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel.: (202) 524-4290

Email: nporritt@zlk.com
Email: akrot@zlk.com
(*admitted pro hac vice*)

-and-

Joseph Levi
Eduard Korsinsky
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: jlevi@zlk.com
Email: ek@zlk.com
(*admitted pro hac vice*)

*Attorneys for Plaintiff and Counsel for the Class*