QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (*appearing pro hac vice*)
  alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

  Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
  Jeanine Zalduendo (Bar No. 243374)
  jeaninezalduendo@quinnemanuel.com
  Kyle Batter (Bar No. 301803)
  kylebatter@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendants Tesla, Inc., Elon Musk,
Brad W. Buss, Robyn Denholm, Ira Ehrenpreis,
Antonio J. Gracias, James Murdoch, Kimbal Musk,
And Linda Johnson Rice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Judge: Hon. Edward Chen |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I.   PLAINTIFF'S REQUESTED GAG ORDER WOULD VIOLATE THE FIRST
     AMENDMENT ..................................................................................................................... 2

     A.   Legal Standard ........................................................................................................... 2

     B.   There Is No Clear And Present Danger Or Serious Threat To A Fair Trial .............. 3

     C.   Plaintiff's Requested Gag Order Is Not Narrowly Drawn ......................................... 6

     D.   Less Restrictive Alternatives Are Available ............................................................. 7

II.  THE CONSEQUENCES OF SUPPRESSING MR. MUSK'S SPEECH WOULD
     EXTEND FAR BEYOND THIS LITIGATION .................................................................. 8

CONCLUSION ................................................................................................................................ 9

# MEMORANDUM OF POINTS AND AUTHORITIES

# PRELIMINARY STATEMENT

In a cursory motion devoid of factual support, Plaintiff Glen Littleton asks this Court to trample on Elon Musk's First Amendment rights by barring him from publicly discussing this case or its underlying facts. Plaintiff's motion cannot be reconciled with the Constitution's guarantee of free speech and should be denied. Both the Ninth Circuit and the Supreme Court have made clear that the extraordinary relief of a prior restraint on litigants' speech is subject to strict scrutiny and permissible only where there is a clear and discernable danger that an entire community will be corrupted by pretrial publicity such that locating twelve objective jurors would be impossible. This is not one of those rare cases.

Absent the circumstances that might meet this exacting standard, Plaintiff instead relies on speculation to assert that Mr. Musk's responses to a few questions as part of a wide-ranging, hour-long TED2022 YouTube video on Mr. Musk, his companies, and his business endeavors are "potentially highly prejudicial." But this Court may not restrict Mr. Musk's speech based on speculation, and Plaintiff presents no evidence to support the far-reaching relief he seeks. Plaintiff fails to show how Mr. Musk's petitioning a separate court more than a month ago to relieve him of the onerous—and unconstitutional—requirements of the SEC consent order equates to a pretrial-publicity spree. Plaintiff makes no effort to show that potential jurors would have read or seen Mr. Musk's recent brief statements as part of TED2022, and he certainly makes no effort to show that the coverage of such statements necessarily would have reached each of the millions of jurors in the District. And Plaintiff offers no explanation for how Mr. Musk's statements differ in any event from the statements that have and will be filed with this Court—instead, Plaintiff confirms that Mr. Musk's statements merely reiterated what was already in the public record. Plaintiff fails to satisfy any of the prerequisites for demonstrating a clear and present danger to the Court's ability to seat an impartial jury.

Beyond the baseless deprivation of Mr. Musk's First Amendment rights that Plaintiff seeks—a harm that the Ninth Circuit has identified as extraordinarily grave, even when temporary—Plaintiff nowhere explains how each overreaching category of speech he seeks to prohibit is linked to a clear

and present danger to the guarantee of a fair trial. And Plaintiff dismisses any of the typical ways in which the court preserves the impartiality of a jury in cases such as this one, including through *voir dire*, on which the court system typically relies even in high-profile cases. Finally, Plaintiff's unconstitutionally overbroad and vague proposed restraint seemingly would inhibit Mr. Musk's ability to communicate with Tesla's shareholders, communicate regarding his current proposal to purchase Twitter, and fully pursue his legal rights in the separate SEC action.

Plaintiff comes nowhere close to carrying his heavy burden to restrict Defendants' First Amendment right, and the Court should deny the motion.

## ARGUMENT

### I. PLAINTIFF'S REQUESTED GAG ORDER WOULD VIOLATE THE FIRST AMENDMENT

Plaintiff's motion is antithetical to the First Amendment's guarantee of free speech and should be denied. Plaintiff fails to show a clear danger (or even a serious threat) to the right to a fair trial. Plaintiff does not request a "narrowly drawn limited restraining order" (Mot. 8) but instead asks the Court to prevent any public speech whatsoever by Mr. Musk "about the case and its underlying facts" (Mot. 9). And Plaintiff ignores the other less restrictive measures available to the Court to ensure an impartial jury.

### A. Legal Standard

Any judicial gag order is a prior restraint on free speech, and "[p]rior restraints 'are the most serious and the least tolerable infringement on First Amendment rights.'" *In re Dan Farr Prods.*, 874 F.3d 590, 596 (9th Cir. 2017) (quoting *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976)). That is because "the damage resulting from a prior restraint—even a prior restraint of the shortest duration—is extraordinarily grave." *CBS, Inc. v. U.S. Dist. Ct. for Cent. Dist. Of Cal.*, 729 F.2d 1174, 1177 (9th Cir. 1984); *Dan Farr*, 874 F.3d at 597 ("'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976)). There accordingly exists a "heavy presumption" that the requested gag order would be unconstitutional, and the Court must apply a "strict scrutiny standard of review." *Dan*

*Farr*, 874 F.3d at 593 n.2; *Doe v. Uber Techs., Inc.*, 2022 WL 767094, at *1 (N.D. Cal. Mar. 11, 2022) (strict scrutiny required due to "peculiar dangers presented by such restraints").

Strict scrutiny in practice means that, to find a gag order warranted, the Court must first be convinced the party seeking to restrain speech has made an evidentiary showing that such speech poses a "clear and present danger [or] a serious and imminent threat" to a fair trial, such that the lack of any restraint "would prevent securing twelve jurors who could, with proper judicial protection, render a verdict based only on the evidence admitted during trial." *Dan Farr*, 874 F.3d at 593 (citing *Levine v. U.S. Dist. Ct. for Cent. Dist. Of Cal.*, 764 F.2d 590, 595 (9th Cir. 1985) and *Hunt v. Nat'l Broad. Co.*, 872 F.2d 289, 295 (9th Cir. 1989)). "[T]wo critical factors" in this inquiry are "whether the subject matter of the case is lurid or highly inflammatory, and whether the community from which the jury will be drawn is small and rural, or large, populous, metropolitan, and heterogeneous." *Id.* at 594. Even if the Court determines there is a serious threat to a fair trial, it must then consider whether the proposed restraining order is narrowly drawn, as well as whether less restrictive alternatives are available. *Id.* at 593; *Steep Hill Labs, Inc. v. Moore*, 2018 WL 1242182, at *13 (N.D. Cal. Mar. 8, 2018) (restricting speech of a litigant requires showing of "(1) clear and present danger or a serious and imminent threat to a protected competing interest, (2) the [order] is narrowly drawn, and (3) less restrictive alternatives are not available"). It is ultimately a "rare instance[] in which pretrial publicity mandates prior restraints" on a party's speech. *Dan Farr*, 874 F.3d at 594 (granting writ of mandamus and directing district court to vacate prior gag orders on litigants).

### B. There Is No Clear And Present Danger Or Serious Threat To A Fair Trial

None of Mr. Musk's public statements presents "a clear and present danger" or "imminent threat" to a fair trial in this case.

*First*, Plaintiff makes no evidentiary showing that pretrial publicity will taint the entire jury pool such that selection of an impartial jury is not possible. Even in the most highly publicized cases, the Ninth Circuit has noted that "many, if not most, potential jurors are untainted by press coverage." *CBS*, 729 F.2d at 1179-80 (citing the Watergate prosecutions, which involved "perhaps the most pervasive publicity accorded any trial in American history," and noting the D.C. Circuit found that, "without undue effort, it would be possible to empanel a jury whose members had never even heard

the [Watergate] tapes") (alteration in original).  Community-wide prejudice is especially unlikely in a case like this, which involves civil claims arising from a series of tweets, and not the kind of lurid, passion-inflaming acts of violence that are typical of the few cases in which pretrial restraints on speech are found to be justified.  *Skilling v. United States*, 561 U.S. 358, 384 (2010) ("In this case … news stories about Enron did not present the kind of vivid, unforgettable information we have recognized as particularly likely to produce prejudice ….").

*Second*, the Supreme Court consistently has recognized that the risk of such prejudice is also diminished where, as here, the jury pool is drawn from a large and diverse populace.  *Id.* at 382 ("Given this large, diverse pool of potential jurors [in Houston, Texas], the suggestion that 12 impartial individuals could not be empaneled is hard to sustain."); *Mu'Min v. Virginia*, 500 U.S. 415, 429 (1991) (similar, where jury pool was drawn from Washington, D.C. area); *see also Dan Farr*, 874 F.3d at 595 ("[A]s we have long held, pretrial publicity is less likely to threaten the fairness of trial in a large metropolitan area.").  The jury pool in this District is composed of millions of people of diverse backgrounds, so "even pervasive, adverse publicity"—of which there is no evidence here—"[would] not inevitably lead to an unfair trial." *Skilling*, 561 U.S. at 384 (quotations omitted).  In fact, Plaintiff makes no effort at all to connect the YouTube video to viewings by potential jurors in this District.

*Third*, the common thread in all of the statements about which Plaintiff complains (Mot. 1-2) is simply that Musk asserts he did not do anything wrong when he tweeted about taking Tesla private in August 2018.  That public messaging—made in the course of an hour-long interview on a wide range of topics—is neither new nor prejudicial.  *See Doe v. Cty. Of San Diego*, 2014 WL 11997808, at *2 (S.D. Cal. Feb. 13, 2014) (no prejudice where public statements were "regurgitations of the all-too-familiar facts of this matter").  Indeed, it is the expected public position of any defendant who steadfastly believes that he is not liable.  Plaintiff relies on Mr. Musk's response to a question in a recent interview (Mot. at 2), but nowhere claims that the statements add anything new to the public record.  Instead, Mr. Musk simply reiterated what he had previously stated in his deposition and in a publicly filed declaration in another litigation.

*Fourth*, while Plaintiff accuses Mr. Musk of violating his settlement agreement with the SEC and improperly suggests that provides a basis for this Court to gag Musk's free speech in connection with this action, Plaintiff offers no valid justification for treating such legitimate petitioning of a court more than a month ago as part of a "highly prejudicial pretrial media blitz." Mot. 3. Plaintiff admits that Mr. "Musk's consent [order] permits him to take legal or factual positions in other proceedings." Mot. at 4 n.1.[1] And the provision of the SEC settlement agreement purporting to deprive Musk of the right to publicly deny the allegations against him is of dubious constitutionality. *See Romeril v. SEC*, 15 F.4th 166 (2d Cir. 2021), *petition for cert. filed*, (U.S. Mar. 23, 2022) (No. 21-1284). Plaintiff offers nothing more than speculation to link Mr. Musk's valid challenge to the SEC consent order to pretrial publicity in this case.

*Finally*, Plaintiff's own authority fails to support the requested gag order. For example, *Levine v. United States District Court for the Central District of California*, on which Plaintiff relies heavily, implicated the Sixth Amendment right to a fair trial in criminal cases and involved a situation where the Court had admonished defense counsel on numerous occasions about their public statements, including inflammatory allegations that evidence had been exaggerated and detailed public discussion of defense theories in articles specifically covering the upcoming trial. 764 F.2d at 592-93. As Plaintiff makes evident in the conclusion of his motion, the *Levine* case concerned first and foremost "a lobbying effort by counsel on behalf on their clients." Mot. 10 (citing "*See*, *e.g.*, *Levine*, 764 F.2d at 597-98). Plaintiff does not (and cannot) point to any such "lobbying" of the public by Mr. Musk or his counsel, particularly given that the statements to which Plaintiff points are buried in the middle of an hour-long video. In *Nebraska Press Association v. Stuart*, the Supreme Court struck down a restraining order on media outlets **despite** the risk that the publicity surrounding the murder of six people in a town of 850 would taint a jury against the defendant. 427 U.S. at 568-69. And *In re Russell*, a Fourth Circuit case, involved restricting the speech of witnesses in a criminal prosecution of members of the Ku Klux Klan and Nazi Party who were accused of brutally murdering five people in

---

[1] Plaintiff of course has no standing to enforce the SEC settlement agreement, as he is not a party to that agreement or the underlying action in the Southern District of New York that it resolved. *See* Dkt. 6, Case No. 1:18-cv-8865 (S.D.N.Y. Sept. 29, 2018).

a North Carolina community. 726 F.2d 1007, 1008 (4th Cir. 1984). These cases offer no support for the drastic relief Plaintiff seeks in connection with a securities-fraud case seated in a district with millions of potential jurors concerning speech not specifically directed at the jury pool months in advance of trial.[2]

Plaintiff's hyperbolic foreboding of "a pretrial media blitz" (Mot. 3) lacks any foundation in the facts and does nothing to justify the limitation he seeks to impose on Defendants' speech. Under any standard—and certainly under the strict scrutiny standard applicable here—Plaintiff's request for a gag order fails.

### C. Plaintiff's Requested Gag Order Is Not Narrowly Drawn

Plaintiff's requested relief likewise should be denied because his request to suppress any case-related comments by Mr. Musk is the opposite of a narrowly tailored restraint. In his own words, "Plaintiff seeks an order prohibiting Mr. Musk from communicating with the media, press, news outlets, and the like about the case and its underlying facts." Mot. 9. Such relief would be both unconstitutionally vague and grossly overbroad.

A proposed protective order must seek to "only limit that speech which is substantially likely to have a materially prejudicial effect." *Uber*, 2022 WL 767094, at *3 (quotations omitted). But the categories of speech Plaintiff identifies and seeks to stifle—ranging from comments on potential witnesses, to "the contents of any pretrial materials or evidence in the case," to the merits of the case generally (Mot. 9-10)—are "exceptionally broad." *Uber*, 2022 WL 767094, at *3 (denying request to prohibit exact same categories of speech, even under the lesser protections afforded to attorney speech). And "perhaps most troublingly, the proposed protective order here is only [applicable] to one party"—Mr. Musk. *Id.*; *Dan Farr*, 874 F.3d at 596 (granting writ of mandamus and reversing district court's orders that "silence[d] one side of a vigorously litigated" proceeding).

---

[2] Plaintiff's attenuated argument that Musk's statements could bleed into the jury's consideration of separate issues in the case based on the idea that, under the Court's summary judgment order, "[t]he truth of the August 7, 2018 tweets and Musk's state of mind … are no longer issues to be decided by the jury" (Mot. 7), underscores that Plaintiff cannot meet the "clear and present danger" or "serious and imminent threat" standard applicable here.

Plaintiff's attempt (Mot. 3) to frame the restraint as narrow because it does not seek to gag the press and would let the lawyers "focus their full attention on performing their duties with respect to the courtroom proceedings only," should be rejected. Such an argument is a red herring: Plaintiff has presented no argument for enjoining the speech of Defendants' attorneys or the media but has sought a restraint that would sweep so broadly to prevent Mr. Musk from making any statements concerning the case. Plaintiff may not seek to avoid "*the distractions of media inquiries*" or "interfering with the media's function to accurately and fairly report the proceedings and keep the public apprised" (Mot. 3) (emphasis added) by restricting Mr. Musk's speech.

Plaintiff seeks to silence Mr. Musk from speaking about the case generally rather than limit a subset of speech narrowly tailored to statements that would impede the Court's ability to ensure a fair trial. As a result, the motion should be denied even if Plaintiff had met his burden to demonstrate an imminent threat of prejudice.

### D. Less Restrictive Alternatives Are Available

Finally, the motion should be denied because less restrictive means of protecting the impartiality of the jury exist that do not infringe First Amendment rights.

Both the Supreme Court and the Ninth Circuit previously have blessed as "preferable to censorship" several alternative methods for mitigating any prejudice from pretrial publicity. *See Dan Farr*, 874 F.3d at 595. These methods include thorough *voir dire* questioning, explicit and emphatic instructions to the empaneled jury, jury sequestration, and delaying the trial itself, among others. *Id.*; *Nebraska Press*, 427 U.S. at 563-64. Indeed, there is a presumption, long recognized by both the Ninth Circuit and the Supreme Court, that juries follow the instructions provided to them by presiding trial judges. *Dan* Farr, 874 F.3d at 595 (citing *Harris v. Rivera*, 454 U.S. 339, 346 (1991)); *see also L.A. Mem. Coliseum Com'n v. NFL*, 726 F.2d 1381, 1400 (9th Cir. 1984) (in light of "thorough cautionary actions" by trial court, including detailed *voir dire* questioning and daily instructions to jury not to read press coverage, it was merely "speculation" that trial had been corrupted by extensive press coverage). All of these alternative methods are available in this case, too, and all present a lesser evil than suppressing Defendants' First Amendment rights—especially where Plaintiff has failed to

clear even his first hurdle of demonstrating there is a real and serious threat to the impartiality of the entire jury pool.

\*    \*    \*

In sum, Plaintiff's suggestion that the Court should stamp out any case-related speech by Mr. Musk so as to preserve the integrity of the judicial process evokes a level of censorship entirely incompatible with our justice system and the basic tenets of free speech. This is not "one of the rare instances in which pretrial publicity mandates prior restraints" on speech. *Dan Farr*, 874 F.3d at 594 (reversing district court). The Court should deny the motion and uphold Defendants' First Amendment rights.

## II. THE CONSEQUENCES OF SUPPRESSING MR. MUSK'S SPEECH WOULD EXTEND FAR BEYOND THIS LITIGATION

This Court should be particularly cautious in assessing Plaintiff's request here because Plaintiff knowingly seeks to influence Mr. Musk's conduct apart from this litigation.

*First*, Mr. Musk is in the middle of a public offer to take Twitter private, an undertaking which has led to a debate concerning the improper censorship of speech. In that context, the media has made comparisons with Musk's previous consideration of taking Tesla private. The recent conference Musk attended is a prime example. Chris Anderson of TED asked Mr. Musk if funding was secured for the Twitter deal, an obvious allusion to the events underlying this case. Mr. Musk should be permitted to respond meaningfully and truthfully to inquiries such as this, and not be compelled to remain silent about false insinuations in questions posed to him by the media. Plaintiff's request for a gag order is not designed to limit certain narrow forms of speech to ensure a fair trial; it is instead designed to silence Mr. Musk's statements outside the context of this litigation. *See* Mot. 1 ("In a TED Talk in Vancouver while discussing his recent proposal to take Twitter, Inc. private…").

*Second*, Mr. Musk continues to pursue his rights in separate court proceedings to vacate the SEC settlement he had indicated he was coerced into signing in September 2018. That agreement involved the same allegations at issue in this case, and Mr. Musk undoubtedly will be called upon by the media and by his shareholders to speak about that ongoing dispute. Imposing a broad and unwarranted gag order in this case would prejudice Musk's rights in connection with that proceeding

1  as well.  Although Plaintiff spends much of his motion arguing that Mr. Musk violated his SEC
2  settlement agreement by publicly denying wrongdoing (Mot. 1-2, 5-6), it is not Plaintiff's place to
3  deputize himself as an SEC prosecutor, and the appropriate forum for any dispute over the settlement
4  agreement is in the Southern District of New York.

*Finally*, Mr. Musk has a duty as the Chief Executive of Tesla to communicate with the public and with his shareholders.  Indeed, this very action rests on Plaintiff's allegations that Mr. Musk failed to provide information to shareholders, yet Plaintiff now seeks to prevent Mr. Musk from doing just that.  Plaintiff's attempt to control the information Mr. Musk provides concerning litigation his company faces should be rejected.

## CONCLUSION

Plaintiffs' motion should be denied.

DATED:  April 20, 2022           Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Alex Spiro*
   Alex Spiro *(appearing pro hac vice)*
   *Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss,*
   *Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias,*
   *James Murdoch, Kimbal Musk, And Linda Johnson Rice*

**ATTESTATION**

I, Kyle K. Batter, am the ECF user whose ID and password are being used to file the above document.  In compliance with Local Rule 5-1(h)(3), I hereby attest that Alex Spiro has concurred in the filing of the above document.

                                                */s/ Kyle K. Batter*

                                                Kyle K. Batter