1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2      Alex Spiro (*appearing pro hac vice*)
       alexspiro@quinnemanuel.com
3  51 Madison Avenue, 22nd Floor
   New York, New York 10010
4  Telephone: (212) 849-7000

5      Kathleen M. Sullivan (Bar No. 242261)
       kathleensullivan@quinnemanuel.com
6      Michael T. Lifrak (Bar No. 210846)
       michaellifrak@quinnemanuel.com
7      Jeanine Zalduendo (Bar No. 243374)
       jeaninezalduendo@quinnemanuel.com
8  865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
9  Telephone: (213) 443-3000

10
       Kyle Batter (Bar No. 301803)
11     kylebatter@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
12 Redwood Shores, California 94065
   Telephone: (650) 801-5000
13

14 *Attorneys for Defendants Tesla, Inc., Elon Musk,*
   *Brad W. Buss, Robyn Denholm, Ira Ehrenpreis,*
15 *Antonio J. Gracias, James Murdoch, Kimbal Musk,*
   *And Linda Johnson Rice*
16

17
                    UNITED STATES DISTRICT COURT
18
                  NORTHERN DISTRICT OF CALIFORNIA
19

20

21 IN RE TESLA, INC. SECURITIES         Case No. 3:18-cv-04865-EMC
   LITIGATION
22                                       **DEFENDANTS' MOTION FOR LEAVE**
                                         **TO SEEK RECONSIDERATION OF THE**
23                                       **COURT'S PARTIAL GRANT OF**
                                         **SUMMARY JUDGMENT**
24
                                         Date: N/A
25                                       Time: N/A
                                         Location: Courtroom 5, 17th Floor
26                                       Judge: Hon. Edward Chen
27

28

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendants Tesla, Inc., Elon R. Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice (collectively, "Defendants") will, and hereby do, move for leave, pursuant to Civ. L.R. 7-9, to file a Motion for Reconsideration of this Court's Order dated April 1, 2022, and issued to the parties on April 10, 2022, granting in part the Plaintiff's motion for partial summary judgment (the "Order").

This motion will be based on this Notice of Motion and Motion for Leave to File a Motion for Reconsideration of the Court's Order, the Memorandum of Points and Authorities and proposed order attached hereto, the files and records in this matter, and any oral argument that the Court may hear.

**RELIEF REQUESTED**

Pursuant to Civ. L.R. 7-9(a), Defendants respectfully request leave of Court to file a Motion for Reconsideration of the Court's April 1 Order.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should grant leave to file a Motion for Reconsideration of the Court's Order, ECF 387, which granted the Plaintiff's motion for summary judgment on falsity and scienter while correctly denying summary judgment on reliance, because the failure to apply the same standard for materiality across all three elements is clear legal error and because the Court overlooked material facts in evidence that would allow a reasonable jury to find for Defendants on falsity and scienter.

DATED:  April 22, 2022            Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Kathleen M. Sullivan*
    Kathleen M. Sullivan
    *Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss,*
    *Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias,*
    *James Murdoch, Kimbal Musk, And Linda Johnson Rice*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION.................................................................................................................1

BACKGROUND..................................................................................................................2

LEGAL STANDARD ..........................................................................................................5

ARGUMENT .......................................................................................................................6

I.      THE COURT SHOULD RECONSIDER OR CLARIFY ITS ORDER GRANTING
        SUMMARY JUDGMENT ON FALSITY AND SCIENTER BECAUSE IT IS
        CLEARLY ERRONEOUS IN LIGHT OF FACTUAL DISPUTES ON
        MATERIALITY.........................................................................................................7

        A.      The Court Should Reconsider Its Order Because The Materiality Standard
                Is The Same For Falsity, Scienter, And Reliance .....................................8

        B.      Alternatively, The Court Should Clarify That Materiality Remains At Issue
                For The Jury On All Elements ..................................................................11

II.     THE COURT SHOULD RECONSIDER ITS GRANT OF SUMMARY
        JUDGMENT ON FALSITY AND SCIENTER BECAUSE IT OVERLOOKS
        MATERIAL FACTS ON WHICH A REASONABLE JURY COULD FIND FOR
        DEFENDANTS.........................................................................................................12

CONCLUSION ..................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013) ............................................................................................... 7, 8, 9, 11

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ......................................................................................................... 6

*Bordallo v. Reyes*,
   763 F.2d 1098 (9th Cir. 1985) ....................................................................................... 11

*Dura Pharma, Inc. v. Broudo*,
   544 U.S. 336 (2005) ..................................................................................................... 3, 6

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) ................................................................................................... 7, 11

*Gebhart v. SEC*,
   595 F.3d 1034 (9th Cir. 2010) ......................................................................................... 7

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
   141 S. Ct. 1951 (2021) ............................................................................................. 7, 11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) ................................................................................................... 7, 11

*Hollinger v. Titan Cap. Corp.*,
   914 F.2d 1564 (9th Cir. 1990) ....................................................................................... 14

*In re Alphabet, Inc. Sec. Litig.*,
   1 F.4th 687 (9th Cir. 2021) .............................................................................................. 6

*In re Apple Comput. Sec. Litig.*,
   886 F.2d 1109 (9th Cir. 1989) ................................................................................... 1, 14

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) ........................................................................................... 6, 7, 9, 11

*Oran v. Stafford*,
   226 F.3d 275 (3d Cir. 2000) ............................................................................................ 8

*Phillips v. LCI Int'l, Inc.*,
   190 F.3d 609 (4th Cir. 1999) ......................................................................................... 10

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
   845 F.3d 1268 (9th Cir. 2017) ........................................................................... 6, 9, 10, 11

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*,
   75 F.3d 801 (2d Cir. 1996) ............................................................................................. 10

*School Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*,
   5 F.3d 1255 (9th Cir. 1993) ......................................................................................... 5, 6

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   552 U. S. 148 (2008) ........................................................................................................ 6

*W. Coast Stock Transfer, Inc. v. Terra Tech Corp.*,
   No. SACV 181-213 (JVS), 2019 WL 1878348 (C.D. Cal. Feb. 14, 2019) ............................. 5, 7

*Wahl v. Am. Sec. Ins. Co.*,
   No. C 08-0555 RS, 2010 WL 2867130 (N.D. Cal. July 20, 2010) ............................................ 11

*Webb v. Solarcity Corp.*,
   884 F.3d 844 (9th Cir. 2018) ................................................................................................... 14

*Worthy v. City of Berkeley*,
   No. 20-CV-05558-EMC, 2021 WL 5758887 (N.D. Cal. Dec. 3, 2021) ................................. 5, 12

## <u>Statutes</u>

28 U.S.C. § 1292(b) ........................................................................................................................ 2

## <u>Rules</u>

17 C.F.R. § 240.10b–5(b) ............................................................................................................... 6

Local Civil Rule 7-9 ............................................................................................................. 2, 5, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Defendants respectfully request leave of Court to file a Motion for Reconsideration of the Court's Order (ECF 387) partially granting summary judgment on the elements of falsity and scienter as to three August 7, 2018 statements by Elon Musk, the CEO of Tesla, Inc. ("Tesla"). Depriving a defendant of a jury trial on the elements of falsity and scienter in a Section 10(b) securities fraud case is an extraordinarily grave and rare step. Defendants are unaware of any case in which a court has similarly taken these issues out of the jury's hands where the statements were at best ambiguous and were issued in the word-constrained and informal context of posts on Twitter. As the Ninth Circuit has long held, "[m]ateriality and scienter are both fact-specific issues which should ordinarily be left to the trier of fact." *In re Apple Comput. Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989).

Here the Court got it half right in ruling that the jury must be allowed decide the issue of reliance. (ECF 387 at 30-32.) As the Court noted, there is sharply conflicting evidence as to whether the alleged misrepresentations did or did not "actually affect the market price." (*Id.* at 32.) For example, as the Court noted, while there is some evidence that "Tesla's stock price went up after the tweets, analysts issued reports commenting on the tweets, and Tesla's investors reached out to Tesla after the tweets," there is also "evidence that, after the 8/13/2018 blog post, which served as a partial corrective disclosure, there was no decline or at least not a significant decline in stock price; thus, arguably, the reaction to the tweets on 8/7/2018 was a response to Mr. Musk contemplating taking Tesla private and not to statements that, *e.g.*, funding was secured or investor support confirmed." (*Id.*) In light of this conflicting evidence, the Court rightly ruled that summary judgment on reliance was precluded. While the Court did not expressly decide the issue of materiality for reliance purposes (*id.*), it necessarily sent that issue too to the jury because price impact and materiality are inextricably intertwined in Section 10(b) cases like this one.

But the Court got it half wrong in taking the elements of falsity and scienter away from the jury (*id.* at 23-29), and that clear legal error warrants reconsideration. That is because all three elements—falsity, scienter, and reliance—require materiality, and the standard of materiality is identical for all three elements. If the evidence fails to show as a matter of law that the statements

were material to investors so as to move the market price and thus evince reliance, then the evidence cannot show as a matter of law that the statements were materially false or that Mr. Musk acted with the requisite scienter as to the truth of a material fact.  Thus the Court's reliance ruling contradicts its falsity and scienter ruling and warrants reconsideration.  Reconsideration is also warranted for the independent reason that the Court overlooked critical record evidence demonstrating the existence of at least a triable issue of fact on falsity and scienter.  The proper consideration of that overlooked evidence would show that summary judgment was not warranted on either element.

For all these reasons and as explained further below, the jury should be permitted to decide the issues of falsity and scienter as well as reliance.  Defendants therefore respectfully request that the Court grant Defendants leave pursuant to Local Rule 7-9 to file their Motion for Reconsideration of the Court's Order.  If the Court denies such leave, then Defendants respectfully request that the Court grant Defendants' concurrently filed Motion for Certification of its Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## BACKGROUND

The relevant facts are as follows:  On July 31, 2018, Mr. Musk met with the managing director of Saudi Arabia's Public Investment Fund (PIF) to discuss a deal to take Tesla private—a meeting that followed years of lobbying and discussions about such a transaction.  As the meeting concluded, the managing director told Musk "[w]e want to do this," and an eyewitness described the discussion as a "handshake agreement to have the Saudis finance a private transaction for Tesla." (ECF 365-1 (Ex. B at 155:20-156:2); ECF 365-1 (Ex. P at 161:7-162:1).)  Mr. Musk then proposed to Tesla's board of directors a take-private transaction for $420 per share, which reflected a premium over Tesla's stock price for such a deal.  (ECF 352-32 (Ex. 81); ECF 365-1 (Ex. B at 192:10-14).)  Mr. Musk later explained to the Tesla board of directors that the PIF "was willing to fund the entire going-private transaction." (ECF 352-32 (Ex. 83); ECF 365-1 (Ex. B at 206:6-23).)

On August 7, Mr. Musk published a tweet that stated:  "Am considering taking Tesla private at $420. Funding secured."  (ECF 352-15 (Ex. 8).)  Later the same day, Musk wrote a blog post explaining that he was "considering taking Tesla private at a price of $420/share" but cautioning that "a final decision has not yet been made," that he was hoping "to structure [it] so that all shareholders

have a choice," and that any proposal "would ultimately be finalized through a vote of our shareholders." (ECF 352-19 (Ex. 12).) He tweeted a link to the blog post with a cover note stating: "Investor support is confirmed. Only reason why this is not certain is that it's contingent on shareholder vote." (ECF 352-20 (Ex. 13).)

The price of Tesla stock rose on August 7 after Mr. Musk's tweets and blog post. (ECF 291-1 at ¶¶ 71-76.) Six days later, on August 13, Mr. Musk published a more detailed blog post explaining that a funding agreement was not yet finalized and describing a series of additional steps necessary to close any deal, including consulting with advisors and legal counsel about the structure of the deal, obtaining consent from a special committee of Tesla's board, and securing any necessary regulatory approvals. (ECF 352-22 (Ex. 16).) In response to that more detailed explanation, the price of Tesla stock barely moved; in fact, controlling for market and industry effects, it rose slightly. (ECF 365-1 (Ex. I).)

Despite the fact that investors greeted the more detailed August 13 disclosure with a shrug, Plaintiff Glen Littleton filed a class action complaint against Defendants claiming that Mr. Musk's August 7 tweets and certain other statements were "material misrepresentations" in violation of Section 10(b) of the Securities and Exchange Act and SEC Rule 10b-5 because they allegedly deceived investors about the level of certainty of a take-private deal. (ECF 184.) Mr. Littleton moved for partial summary judgment with respect to the two August 7 tweets and another statement not relevant here. (ECF 352.) He sought judgment on three of the six elements of a Section 10(b) claim, *see Dura Pharma, Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (identifying six elements): "(1) material misrepresentations or omissions; (2) scienter; and (3) reliance upon the misrepresentations or omissions." (ECF 352 at 1.) Mr. Littleton's theory was that "Funding secured" in the first tweet necessarily signified a binding commitment to provide funding (*id.* at 17, 20); that "Investor support is confirmed" in the second tweet referred to support from existing shareholders, rather than the new investors who would facilitate a take-private deal (*id.* at 21); and that the second tweet should be interpreted in isolation from the more detailed blog post to which it linked (*id.* at 22).

The Court granted Plaintiff's summary judgment motion in part as to the elements of falsity and scienter. (ECF 387 at 21-30.) The Court disagreed with Plaintiff's interpretation of all three

contested statements in the two tweets. The Court found that Mr. Littleton's proposed reading of "Funding secured" in the first tweet as meaning a binding commitment was "too narrow a reading" (*id.* at 24) and that "there is some softness to the term 'secured'" (*id.* at 25). The Court likewise disagreed with Mr. Littleton's reading of "Investor support is confirmed" in the second tweet as referring to "shareholder support," noting that "shareholders" are separately mentioned in the same tweet. (*Id.* at 26.) And, contrary to Mr. Littleton's insistence on reading the statement in the second tweet—"Only reason why this is not certain is that it's contingent on a shareholder vote"—in isolation from the blog post to which that tweet linked, the Court reasoned that the linked blog post, which it quoted at length, was properly part of the "full context" in which the second tweet must be read. (*Id.* at 27-28.)

Despite interpreting the tweets very differently from Plaintiff, the Court nevertheless granted partial summary judgment to Plaintiff on the elements of falsity and scienter. On the element of falsity, the Court ruled that "Funding secured" must "mean (1) at least a verbal commitment (2) based on a discussion of at least some details about what funding would entail" (*id*. at 25), and concluded that, under that interpretation, the statement was false as a matter of law (*id*. at 26). The Court also ruled that the statement "Investor support is confirmed" was false and misleading as a matter of law "given the preliminary nature of the discussions between the PIF and Tesla." (*Id*. at 26-27.) And the Court ruled that the statement "Only reason why this is not certain is that it's contingent on a shareholder vote" was also misleading as a matter of law, even when read in the "full context" of the linked blog post, because there were "a number of contingencies that had to be addressed before the matter could reach a shareholder vote." (*Id*. at 28-29.)

On the element of scienter, the Court concluded as a matter of law that the requisite mental state was established because "Mr. Musk recklessly tweeted to the public that funding was secured" while he "knew all of the facts relating to Tesla's interaction with the PIF." (*Id*. at 26.) The Court likewise found scienter as a matter of law as to the "Investor support is confirmed" and "Only reason why this is not certain is that it's contingent on a shareholder vote" statements for the same reason (*id*. at 27, 29), noting that "the scienter analysis follows the falsity analysis" (*id*. at 29).

In contrast to its falsity and scienter rulings, the Court denied Plaintiff's motion for summary

1   judgment on the reliance element.  (*Id*. at 30-32.)  The Court noted that Mr. Littleton is relying on the

2   fraud-on-the-market doctrine to establish reliance, which creates "a rebuttable presumption of reliance

3   where '(1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock

4   traded in an efficient market, and (4) the plaintiff traded the stock between when the

5   misrepresentations were made and when the truth was revealed.'"  (*Id*. at 31 (citations omitted).)  The

6   Court reasoned that, even if the Court "assumes that the three statements at issue were material," there

7   remained "a question of fact precluding summary judgment because, as Defendants have noted, there

8   is evidence suggesting that the misrepresentations did not actually affect the market price." (*Id*. at 32.)

9   As the Court further noted, "Specifically, there is evidence that, after the 8/13/2018 blog post, which

10  served as a partial corrective disclosure, there was no decline or at least not a significant decline in

11  stock price; thus, arguably, the reaction to the tweets on 8/7/2018 was a response to Mr. Musk

12  contemplating taking Tesla private and not to statements that, *e.g.*, funding was secured or investor

13  support confirmed."  (*Id*.)  The Court accordingly concluded that Defendants would be permitted to

14  rebut the presumption of reliance at trial.  (*Id*.)

15                                    **LEGAL STANDARD**

16          Motions for reconsideration are governed by Local Civil Rule 7-9(a), which provides that any

17  party can request "leave to file a motion for reconsideration of any interlocutory order made by that

18  Judge on any ground set forth in Civil L.R. 7-9 (b)."  A court may grant a motion for reconsideration

19  of an interlocutory order pursuant to N.D. Cal. Local Rule 7-9 if, with reasonable diligence, the

20  movant, *inter alia*, shows that "a material difference in fact or law exists from that which was

21  presented to the Court before entry of the interlocutory order for which reconsideration is sought" or

22  identifies "a manifest failure by the Court to consider material facts or dispositive legal arguments

23  which were presented to the Court before the interlocutory order." *Worthy v. City of Berkeley*, No. 20-

24  CV-05558-EMC, 2021 WL 5758887, at *1 (N.D. Cal. Dec. 3, 2021) (quoting L.R. 7-9(b)).

25  "Reconsideration is also appropriate if the court committed clear error or the initial decision was

26  'manifestly unjust.'"  *W. Coast Stock Transfer, Inc. v. Terra Tech Corp.*, No. SACV 181-213 (JVS),

27  2019 WL 1878348, at *2 (C.D. Cal. Feb. 14, 2019) (quoting *School Dist. No. 1J, Multnomah Cnty. v.*

28  *AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)).

1

## <u>ARGUMENT</u>

2     The Supreme Court has held that a private right of action under Section 10(b) and Rule

3 10(b)(5) has six elements:  (i) misrepresentation or omission of a material fact; (ii) scienter; (iii) a

4 connection with a purchase or sale of a security; (iv) reliance; (v) economic loss; and (vi) loss

5 causation.  *Dura Pharma*, 544 U.S. at 341; *see Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27,

6 37-38 (2011); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U. S. 148, 157 (2008).

7 Three of those elements are at issue on Plaintiff's partial summary judgment motion here:  falsity,

8 scienter, and reliance.  Crucially, each of these three elements hinges on the requirement that the

9 misrepresentation or omission be *material* to investors.

10     *First*, the element of falsity can be satisfied only by "a *material* misrepresentation (or

11 omission)," *Dura Pharma*, 544 U.S. at 341 (emphasis added), and thus a plaintiff must show that "the

12 defendant made a statement that was '*misleading* as to a *material* fact,'" *Matrixx Initiatives*, 563 U.S.

13 at 38 (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988)) (emphasis in original).  Indeed, the

14 very text of Rule 10b-5 makes it unlawful only to "make any untrue statement of a *material* fact or to

15 omit to state a *material* fact necessary in order to make the statements made, in the light of the

16 circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b–5(b) (emphases

17 added).  The Supreme Court has long "held that this materiality requirement is satisfied when there is

18 a substantial likelihood that the disclosure of the omitted fact would have been viewed by the

19 reasonable investor as having significantly altered the total mix of information made available."

20 *Matrixx Initiatives*, 563 U.S. at 38 (internal quotations omitted); *see also Retail Wholesale & Dep't*

21 *Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) ("A

22 statement is misleading if it would give a reasonable investor the impression of a state of affairs that

23 differs in a material way from the one that actually exists.") (alteration and quotations omitted).

24     *Second*, materiality is likewise essential to the element of scienter, which requires a Section

25 10(b) plaintiff to show that the defendant deliberately (or, under Ninth Circuit law, recklessly) made a

26 misrepresentation or omission of a *material* fact.  *See, e.g.*, *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th

27 687, 701 (9th Cir. 2021) (scienter satisfied by "a reckless omission of *material* facts") (emphasis

28

added).[1]   That follows from the basic definition of scienter in this context: an "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976).  An intent to make a non-material false statement—a statement that would not be viewed as significantly altering the mix of information for investors—does not establish an intent to deceive, manipulate, or defraud investors.

*Third*, in a securities class action like this one, materiality is an essential predicate of the fraud-on-the-market theory under which a plaintiff is entitled to a rebuttable presumption of reliance.  *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466-67 (2013); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 278 (2014).  The requirement to show materiality for purposes of invoking the fraud-on-the-market presumption is "directed at price impact—whether the alleged misrepresentations affected the market price in the first place." *Id.* (internal quotations omitted).  The concepts of price impact and materiality are, thus, "overlapping" and "the evidence relevant to one will almost always be relevant to the other." *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1961 n.2 (2021).

I.   **THE COURT SHOULD RECONSIDER OR CLARIFY ITS ORDER GRANTING SUMMARY JUDGMENT ON FALSITY AND SCIENTER BECAUSE IT IS CLEARLY ERRONEOUS IN LIGHT OF FACTUAL DISPUTES ON MATERIALITY**

The Court correctly found that reliance is not established as a matter of law because the facts remain disputed on whether the challenged statements moved Tesla's market price.  While the Court "assume[d]" materiality without deciding whether it was established (ECF 387 at 32), the above controlling precedent makes clear that, if there is no price impact as a matter of law, there is also no materiality as a matter of law for reliance purposes.  And if there is no materiality as a matter of law for reliance purposes, the above controlling precedent makes equally clear that there is no materiality as a matter of law for purposes of falsity or scienter.  The Court's summary judgment ruling on falsity and scienter was thus "clear error" that was not evident before the order issued, warranting the Court's reconsideration. *W. Coast Stock Transfer*, 2019 WL 1878348, at *2.

---

[1] While the Ninth Circuit allows proof of recklessness to satisfy the scienter requirement under Section 10(b), *see Gebhart v. SEC*, 595 F.3d 1034, 1040 (9th Cir. 2010), the Supreme Court has not approved such an approach, *see Matrixx Initiatives*, 563 U.S. at 48 (reserving the question whether recklessness suffices).  Defendants reserve the right to challenge in an appropriate forum any ultimate finding based on recklessness.

A.   **<u>The Court Should Reconsider Its Order Because The Materiality Standard Is The Same For Falsity, Scienter, And Reliance</u>**

*Reliance*.  In denying summary judgment on the reliance element of the Section 10(b) claim, the Court correctly ruled that there is "[a]t the very least" a "question of fact" for the jury to decide on whether the three allegedly false statements had any impact on the price of Tesla's stock.  (ECF 387 at 32.)  Specifically, in assuming without deciding that the statements were material, the Court noted that "there is evidence to support materiality because Tesla's stock price went up after the tweets, analysts issued reports commenting on the tweets, and Tesla's investors reached out to Tesla after the tweets." (*Id*.)  On the other hand, in ruling that "there is a question of fact precluding summary judgment" on reliance, the Court noted that "there is evidence suggesting that the misrepresentations did not actually affect the market price," including "evidence that, after the 8/13/2018 blog post, which served as a partial corrective disclosure, there was no decline or at least not a significant decline in stock price." (*Id*.)  As the Court noted, this countervailing evidence "arguably" showed that "the reaction to the tweets on 8/7/2018 was a response to Mr. Musk contemplating taking Tesla private and not to statements that, *e.g.*, funding was secured or investor support confirmed."  (*Id*.)

The factual dispute the Court properly identified as to whether the statements had any price impact, however, necessarily compels the conclusion that there is a factual dispute as to materiality as well.  That is because, for purposes of the reliance element in a fraud-on-the-market-presumption case like this one, materiality and price impact are inextricably intertwined.  As the Supreme Court has observed, it is "uncontroversial" that, in such a case, the "definition" of "immaterial misrepresentations and omissions" means misrepresentations and omissions that do "not affect . . . stock price[s] in an efficient market."  *Amgen*, 568 U.S. at 464 (quotations omitted); *see Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) (Alito, J.) ("[I]f a company's disclosure of information has no effect on stock prices, 'it follows that the information disclosed . . . was *immaterial* as a matter of law.'") (emphasis added).  Thus, even though the Court "assume[d]" materiality while finding price impact in dispute, the governing law makes it legally impossible to have materiality as a matter of law if price impact remains in factual dispute.  Because the Court correctly found price impact to be in factual dispute, its Order effectively precludes any finding of materiality as a matter of law.

*Falsity*.  In the absence of materiality as a matter of law for purposes of reliance, it is likewise legally impossible to find materiality as a matter of law for purposes of falsity.  That is because the materiality standard for a "material misrepresentation or omission" is identical to the materiality standard for reliance.  Specifically, the Supreme Court held in *Amgen* that proving a material misrepresentation or omission under the falsity element requires the very same proof as is needed to invoke the fraud-on-the-market presumption under the reliance element.  *See Amgen*, 568 U.S. at 459-60, 467.  It was on that basis that the Court held that materiality need not be proved at the class-certification stage:  because a failure of proof on materiality will defeat the Section 10(b) claim on the merits under the element of falsity, there is no risk that a failure to prove materiality as a prerequisite to the fraud-on-the-market theory under the reliance element would cause individual reliance issues to predominate at trial.  *Id.*  Under *Amgen*, it thus is not legally possible to conclude that materiality is an open jury question for purposes of reliance and the fraud-on-the-market theory while at the same time granting summary judgment on the element of "material misrepresentation or omission."  The two standards of materiality are the same.  Indeed, if this Court fails to reconsider its grant of summary judgment on "material misrepresentation or omission" while allowing reliance to go to the jury, it would risk exactly the outcome that the Supreme Court held in *Amgen* was legally precluded:  that the jury finds that the statements were not material, defeating the fraud-on-the-market presumption, and so is required to decide reliance on an individualized rather than class-wide basis.  *See Amgen*, 458 U.S. at 473-74.

Put another way, a reasonable jury could not find the alleged misrepresentations to be *material* for purpose of the "material misrepresentation or omission" element if it also finds that those same statements were *immaterial* for purposes of reliance; the two elements rise and fall together.  Because the August 13 disclosures of contingencies concerning the deal did not cause the price of Tesla stock to fall, a reasonable jury could find that the August 7 statements were not materially false because the disclosure of the same "truth" at the time the statements were made would not have "been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available," *Matrixx Initiatives*, 563 U.S. at 38, or would not have "give[n] a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists," *Retail Wholesale*, 845

1    F.3d at 1275.  The Court accordingly should grant Defendant's motion for leave to file a Motion for

2    Reconsideration on the element of falsity.

3         *Scienter*.  As to the scienter element, the above-described settled precedent similarly requires a

4    defendant to have acted deliberately (or, in the Ninth Circuit, recklessly) as to a *materially* false

5    statement.  And just as with falsity, it is legally impossible to find materiality for scienter as a matter

6    of law if disputes of fact preclude a finding of materiality for reliance as a matter of law.  Specifically,

7    if the allegedly false statements did not actually affect Tesla's stock price, which the Court ruled is an

8    inference the current evidence might well support, then a jury could reasonably conclude that the

9    statements were not material for reliance purposes and also reasonably conclude that the statements

10   were not materially false and that Mr. Musk was not deliberate or reckless as to their material falsity.

11   Again, the materiality standard is identical for falsity and scienter as well as for reliance.  *See Phillips*

12   *v. LCI Int'l, Inc.*, 190 F.3d 609, 621 (4th Cir. 1999) (complaint that "fails adequately to allege that

13   defendants' statements were [materially] false . . . obviously fails to allege facts constituting

14   circumstantial evidence of reckless or conscious misbehavior on the part of defendants in making

15   statements.") (alterations in original); *San Leandro Emergency Med. Grp. Profit Sharing Plan v.*

16   *Philip Morris Cos., Inc.*, 75 F.3d 801, 813 (2d Cir. 1996) (same).  The fact that a reasonable jury

17   might well conclude that there was no materiality for purposes of reliance—for example, because the

18   market price did not move in response to the August 13 "partial corrective" disclosure, and thus any

19   market reaction to the August 7 tweets "was a response to Mr. Musk contemplating taking Tesla

20   private" and not to the "Funding secured" or "Investor support confirmed" statements (ECF 387 at

21   32)—thus means that a reasonable jury might also well conclude there was no materiality for purposes

22   of falsity or scienter.

23         Put another way, because the Court correctly found that there were triable issues of fact with

24   respect to price impact and thus necessarily left materiality for reliance purposes to the jury, it should

25   also have left falsity and scienter to the jury because a jury could reasonably find that the statements

26   did not contained *materially* misleading information and that Mr. Musk did not deliberately or

27   recklessly tweet such information.  If there is sufficient evidence for a jury to reasonably conclude that

28   investors did not consider the allegedly false statements material, then there is also sufficient evidence

for the jury to reasonably conclude that Mr. Musk, a sophisticated businessman attuned to the perceptions of the market, reasonably believed that investors would not consider those statements to "alter[] the 'total mix' of information" for investors, *Matrixx Initiatives*, 563 U.S. at 38, or "give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists," *Retail Wholesale*, 845 F.3d at 1275.  If so, Mr. Musk lacked the requisite intent to "deceive, manipulate, or defraud investors," *Ernst & Ernst*, 425 U.S. at 193, because he did not deliberately (or, in the Ninth Circuit, recklessly) disregard the truth of anything that would in fact matter to them, as materiality requires.

For all these reasons, Defendants respectfully submit that the Court should grant them leave to file a Motion for Reconsideration of the Court's Order with respect to falsity and scienter.  The Court's analysis of price impact in denying summary judgment on reliance was correct.  Under the Supreme Court's decisions in *Halliburton* and *Goldman*, that ruling necessarily means that the jury will determine materiality for reliance purposes because price impact and materiality are inextricably intertwined in a fraud-on-the-market-presumption case.  And under the Supreme Court's holding in *Amgen* and related precedent, that conclusion in turn requires that the jury should also decide whether the statements were material for purposes of falsity and scienter.  Reconsideration is necessary to correct the Order's clear legal error on these points.

### B.   Alternatively, The Court Should Clarify That Materiality Remains At Issue For The Jury On All Elements

In the event that the Court rejects the legal arguments for reconsideration set forth above and declines to grant leave to seek reconsideration of its grant of partial summary judgment with respect to falsity and scienter, Defendants respectfully request that the Court at a minimum clarify the Order.  A party may request clarification "'for the guidance of the parties,'" and "[a] court may clarify its order for any reason.'"  *Wahl v. Am. Sec. Ins. Co.*, No. C 08-0555 RS, 2010 WL 2867130, at *3 (N.D. Cal. July 20, 2010) (quoting *Bordallo v. Reyes*, 763 F.2d 1098, 1102 (9th Cir. 1985)).  Here, the Court assumed without reaching materiality for purposes of reliance (ECF 387 at 32), and did not explicitly address materiality with respect to the falsity or scienter elements.  Accordingly, for the "guidance of the parties" and to promote the efficient administration of this case, the Court should make clear that

the materiality of the August 7 tweets remains an issue for the jury to decide as to all three elements: falsity, scienter, and reliance.  Such a ruling would streamline future proceedings by making clear that Defendants are free to argue at trial that the challenged statements were not *materially* false or misleading, were not made with the requisite scienter as to their *material* falsity, and were not *material* so as to cause investor reliance that moved the market price.

## II.   THE COURT SHOULD RECONSIDER ITS GRANT OF SUMMARY JUDGMENT ON FALSITY AND SCIENTER BECAUSE IT OVERLOOKS MATERIAL FACTS ON WHICH A REASONABLE JURY COULD FIND FOR DEFENDANTS

Reconsideration is warranted where a party identifies "a manifest failure by the Court to consider material facts ... which were presented to the Court before the interlocutory order." *Worthy*, 2021 WL 5758887, at *1 (quoting L.R. 7-9(b)).  Defendants respectfully submit, as a second and independent ground to grant leave to file their Motion for Reconsideration, that the Court overlooked record evidence that is nowhere discussed in the Court's order and that places significant facts in dispute that preclude summary judgment for Plaintiff on falsity and scienter.

**"Funding Secure" And "Investor Support Is Confirmed."**  The Court concluded that both "Funding secured" and "Investor support is confirmed" referred to a "fairly concrete and reasonably certain" funding commitment and that any reasonable juror would find the statements misleading because the discussions were "preliminary" and there was no "verbal commitment . . . based on at least some details about what funding would entail."  (ECF 387 at 24-25, 26-27.)  The Court's order, however, overlooks contrary evidence from which a reasonable juror might have found in favor of Defendants on whether the statements were materially false or made with scienter even under the Court's definitions of "secured" and "confirmed."

*First*, the Court overlooked evidence that, after investing billions of dollars to acquire 5% of Tesla, the PIF stated that funding for a take-private deal of the entire company was "not a problem," and the investment was a "strategic priority" for Saudi Arabia (ECF 365-1 (Ex. C at 206:17-207:8); ECF 365-1 (Ex. P at 161:7-162:1); ECF 365-1 (Ex. E at 92:7-93:14)), evidence that would permit a reasonable jury to conclude that the parties knew "what funding would entail."

*Second*, the Court overlooked Mr. Teller's testimony that he understood there was a "handshake agreement to have the Saudis finance a private transaction for Tesla" (ECF 365-1 (Ex. P

at 161:7-162:1)), and evidence that Mr. Musk had entered into significant business transactions based on a handshake (ECF 365-1 (Ex. E at 121:18-124:13)), evidence that would permit a reasonable jury to conclude that a "verbal commitment" existed.[2]

*Third*, the court overlooked Mr. Al-Rumayyan's statement to Mr. Musk as the meeting ended, "Let us know how you want to do this.  We want to do this" (ECF 365-1 (Ex. B at 155:23-156:1)), evidence that confirms Mr. Musk's understanding following the meeting that "the funding was secure for this deal" because the PIF was committed to any reasonable proposal he presented (ECF 365-1 (Ex. B at 146:1-13)), and that would permit a reasonable jury to conclude that a "verbal commitment" existed.

*Fourth*, the Court overlooked Mr. Musk's communications with Mr. Al-Rumayyan following the August 7 tweet, which stated "You said you were definitely interested in taking Tesla private," and "You also made it clear that you were the decision-maker, moreover backed strongly by the Crown Prince, who regards this as strategically important at a national level" (ECF 352-46 (Ex. 121 at 10)), evidence that would permit a reasonable jury to conclude that a "verbal commitment" existed.

*Fifth*, the Court overlooked Mr. Musk's statements to his own CFO Mr. Ahuja that he understood Mr. Al-Rumayyan to have verbally committed to financing the transaction (ECF 365-1 (Ex. E at 248:4-249:17)) and to his own Board that the PIF was willing to fund the transaction (ECF 365-1 (Ex. B at 206:4-23)), evidence that would permit a reasonable a jury to conclude that a "verbal commitment" existed because Mr. Musk told his own CFO and Board that same thing he told investors about that commitment.

*Sixth*, the Court overlooked evidence that the PIF made oral agreements in other transactions, for example committing $45 billion to SoftBank's technology fund after a 45-minute conversation and buying a $3.5 billion stake in Uber within weeks of meeting its CEO (ECF 365-1 (Ex. A at 5-6)), evidence that would permit a reasonable jury to conclude that, given the customary business practices of the deal participants here, the meeting between the PIF and Mr. Musk likewise concluded with a

---

[2]   In addition, the sell-side analyst Defendants cited said "funding secured" could mean a "verbal commitment," but that it "*could be less*."  (ECF 365-1 (Ex. 33) (emphasis added).)

"verbal commitment."

*Seventh*, the Court overlooked Mr. Littleton's own sworn admissions that he understood "Funding secured" to mean simply that Mr. Musk "would arrange to make it happen" (ECF 386 at 3) and that Mr. Musk's August 13 blog post was consistent with "Funding secured" such that it was confirmatory rather than corrective of the August 7 statement (*id.* at 145:16-146:2). Such testimony would allow a reasonable jury to conclude that a "verbal commitment" existed at the end of the meeting notwithstanding the regulatory and funding details that remained to be worked out, and thus to conclude that Mr. Musk's statements on August 7 did not give a reasonable investor the impression of a state of affairs materially different from the one that actually existed.[3]

Reconsideration is warranted for the additional reason that to overlook the above-summarized evidence would misapprehend the Ninth Circuit's demanding legal standard for scienter. Defendants are unaware of any case granting summary judgment on the issue of scienter—an element virtually always reserved for the jury, see *In re Apple Comput.*, 886 F.2d at 1113—where there is (as here) substantial contemporaneous evidence that the defendant reasonably believed his statements to be true and not materially misleading to the reasonable investor. Scienter in the Ninth Circuit requires at the very least "deliberate recklessness," or in other words "a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Webb v. Solarcity Corp.*, 884 F.3d 844, 851 (9th Cir. 2018); *see also Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1570 (9th Cir. 1990). But the above-summarized overlooked evidence would permit a reasonable jury to conclude that Mr. Musk reasonably believed his statements to be true at the time and not materially misleading to reasonable investors. For example, Mr. Musk told his own CFO and Board, just as he told investors, that the PIF had committed to financing a take-private deal. Moreover, Mr. Littleton admitted that the August 13 blog post confirmed rather than corrected the state of affairs implied by the August 7 tweet. Had the Court properly considered all this overlooked

---

[3]   Mr. Littleton's understanding accords with the uncontroverted evidence that no negative stock reaction followed Mr. Musk's August 13 blog post in which he explained why he thought funding was secured, the status of support from the PIF, and the status of the take-private proposal process. (ECF 365 at 12, 23-24.)  For this reason, the Court also should reconsider its rejection (ECF 387 at 1 n.1) of Defendants' motion to supplement the record with Mr. Littleton's testimony.

1  evidence, it would have necessarily left the issue of scienter to the jury under the Ninth Circuit's

2  standard.

3  **The "Only Reason Why This Is Not Certain Is That It's Contingent On A Shareholder**

4  **Vote."**  The Court found this phrase misleading as a matter of law because certain other steps would

5  have to be completed before closing any take-private deal but Mr. Musk omitted "any contingencies

6  other than the 'finaliz[ation] through a vote of our shareholders.'"  (ECF 387 at 27-28.)  A reasonable

7  juror, however, could draw a different inference from the summary judgment evidence that the Court

8  overlooked.

9       *First*, the Court did not discuss the linked blog post's disclosure that "a final decision has not

10 yet been made" as to whether Mr. Musk would ultimately elect to pursue the deal (ECF 352-19 (Ex.

11 12))—itself a key "contingency" that would permit a reasonable jury to conclude that Mr. Musk had

12 not misled (or intended to mislead) investors to believe that a shareholder vote was the only hurdle to

13 a deal.

14      *Second*, the Court did not address Mr. Musk's statement in the linked blog post that he "would

15 *like to structure* this so that all shareholders have a choice" (ECF 352-19 (Ex. 12) (emphasis added)),

16 evidence that would permit a reasonable jury to conclude that the statement did not mislead (and was

17 not intended to mislead) investors to believe that the precise structure of the potential deal had been

18 determined.

19      *Third*, the Court did not address the absence of any stock price reaction following the August

20 13 blog post, which disclosed the specific additional contingencies (implied in the August 7 blog post)

21 that affected the conclusion of the deal, including board approval, the retention of advisors, and

22 regulatory approvals.  (ECF 365 at 17-18.)  The lack of any stock price reaction in response to these

23 disclosures would permit a reasonable jury to conclude that Mr. Musk had not misled (or intended to

24 mislead) investors to believe that a shareholder vote was the only hurdle to a deal.

25      For all these reasons, the Court should grant Defendants leave to file a Motion for

26 Reconsideration requesting the Court to consider the above-described overlooked evidence and

27 modify its Order accordingly.

28

1

## **CONCLUSION**

2        For any and all of the above reasons, the Court should grant leave to Defendants to file a

3   Motion for Reconsideration of the partial summary judgment Order.

4

5   DATED:  April 22, 2022          Respectfully submitted,

6                                   QUINN EMANUEL URQUHART & SULLIVAN, LLP

7
                                    By: */s/ Kathleen M. Sullivan*
8                                        Kathleen M. Sullivan
                                         *Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss,*
9                                        *Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias,*
                                         *James Murdoch, Kimbal Musk, And Linda Johnson Rice*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28