**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
           amccall@zlk.com

*Attorneys for Plaintiff and Counsel for the Class*

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' CORRECTED RENEWED ADMINISTRATIVE MOTION TO FILE UNDER SEAL DOCUMENTS IN SUPPORT OF THE PARTIES' MOTION FOR PARTIAL SUMMARY JUDGMENT PAPERS (DKT. 405)** |

## I. INTRODUCTION

In its Order Granting In Part And Denying In Part Plaintiff Littleton's Motion for Partial Summary Judgment (Dkt. 387), the Court denied Defendants' requests to seal noting that "[t]he information at issue may not be information that Tesla would ordinarily share with the public, but it is far from clear that Tesla would suffer any harm as a result of disclosure, especially as the proposed transaction never came to fruition and is well in the past." Dkt. 387 at 19-20. In giving Defendants an opportunity to file a narrowly tailored request for sealing, the Court cautioned that Tesla had previously "painted with a broad brush in making requests to file under seal." *Id* at 19. Defendants' renewed motion, while narrowed, fares no better. It is bolstered only by a long string cite of cases offering support for sealing types of documents not at issue here. Despite conceding that the compelling reason standard applies, Defendants once again fail to meet their burden. *See Kamakana v. City and County of Honolulu*, 447 F. 3d 1172, 1178 (9th Cir. 2006) (holding that the party seeking seal must "articulate[] compelling reasons supported by specific factual findings" that outweigh access and public policy favoring disclosure).

With respect to the sealing of Court documents, a "strong presumption in favor of access" is the starting point. *Kamakana*, 447 F. 3d at 1178. Compelling reasons can include "the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* Yet in support of their narrowed requests, Defendants articulate for all documents only that they believe Tesla shareholders had an expectation of privacy in their communications with the Company, and so disclosure might "chill future investors' willingness to speak freely and candidly with Defendants." Dkt. 405 at 5. Such hypothetical reasoning and conjecture on the part of Defendants is unavailing and does not meet the compelling reason standard for the continued sealing of these documents. *See Pinto v. Pac. Creditors Ass'n*, 605 F.3d at 665, 678-79 (9h Cir. 2010). Notably, Tesla seeks confidentiality for investor communications that the investor itself does not regard as confidential. Moreover, while Tesla may have had a practice of keeping communications with its shareholders confidential, such a practice does not trump the longstanding policy of providing public access to judicial records. *See Kamakana*, 447 F.3d at 1180 (requiring particularized showing of "compelling reasons" to keep records sealed).

It is notable that representatives from most of these Tesla shareholders were deposed during the course of discovery and were certainly on notice of this litigation, having provided documents in discovery. Any request to the continued sealing of documents could have come from them, as it did from Silver Lake and Goldman Sachs. Declarations from these Tesla shareholders in support of Defendants' narrowed request are noticeably absent here and some of the deposition testimony that is the subject of Tesla's current motion has never been designated by either the shareholder concerned or Defendants themselves. Defendants' renewed motion still fails to provide compelling reasons for keeping a significant portion of the summary judgment record under seal and, with some limited exceptions noted below regarding personal identifying information, should be denied.

## II.     BACKGROUND

Defendants' recounting of the meet and confer process regarding their narrowed requests to seal requires some clarification. On April 14, 2022, the parties met and conferred regarding Defendants' renewed motion to seal and Defendants indicated they did not expect to request that any part of Docket 387 be redacted. On April 15, 2022, Defendants provided Plaintiff with narrowed requests to seal but it was unclear whether this also extended to portions of Docket 387. In an effort to hasten resolution of this issue and avoid unnecessary motions practice, Plaintiff agreed to Defendants' narrow request regarding sealing if they confirmed that no portion of Docket 387 would be redacted. Plaintiff otherwise expressly reserved all future rights with respect to the documents. Defendants responded that, in fact, contrary to their preliminary indication, they were seeking to redact a portion of Docket 387. Thus, on April 20, 2022, Plaintiff specified which documents in Defendants' narrowed request that he would agree to the proposed redactions, as well as specific objections to the documents and testimony Plaintiff does not believe should be sealed. The parties could not reach agreement, and so Defendants filed this motion. In the meantime, Defendants have also filed a motion for reconsideration as well as for certification of an interlocutory, both of which require the further filing of briefs potentially under seal.

///

///

///

## III. DEFENDANTS FAIL TO PROVIDE A "COMPELLING REASON" FOR SEALING

### A. Defendants' Requests Are Still Overbroad.

Defendants provide only cursory information regarding the materials they request to remain sealed, thus failing to provide the specific facts necessary to establish compelling reasons for confidentiality. A closer look at some of this material shows that Defendants continue to apply too broad an approach to confidentiality rather than the narrow approach mandated by *Kamakana*. Exhibit 41, for instance, simply contains a communication from Joseph Fath, a fund manager at T. Rowe Price, containing his reaction to Elon Musk's August 7, 2018 tweets. It contains no references to T. Rowe's internal policies or its ability to participate in a potential going private for Tesla. Further, this exhibit was discussed extensively at Fath's deposition and neither T. Rowe nor Defendants designated that testimony as confidential.[1] *See also* Exs. 44-47 and 157. Similarly, Exhibit 58 contains criticism from another shareholder about the manner in which Musk disclosed the potential go-private via Twitter but does not discuss any internal policies or strategies of that shareholder. There is nothing confidential about any of these documents and communications. They do not contain trade secrets or personal information and strictly relate to a potential transaction occurring in 2018. They have no relevance to Tesla or the shareholder in 2022; indeed, it is unclear on the record if these shareholders even still own Tesla stock or securities in 2022.

The redacted portions from Elon Musk's testimony to the U.S. Securities & Exchange Commission (Dkt. No. 365-1 Ex. E) also do not contain any confidential or proprietary information. Instead, Musk describes his own understanding in August 2018 of the ability of institutional investors to participate in a private Tesla, an understanding Musk concedes was mistaken. *Id.* at 126, 208. Musk also describes the absence of any communications with institutional investors before he tweeted on August 7, 2018 that their support for the transaction was confirmed. *Id.* at 217, 219. They do not "discuss certain confidential terms of the participation of third party investors in the Take Private Bid" as represented by Nathaniel Smith in his declaration (Dkt. 403-1 at ¶12).

Space precludes Plaintiff from discussing each document and transcript in detail but these

---

[1] Accordingly, Defendants' request to seal portions of Fath's deposition testimony should be denied.

few examples demonstrate that Defendants' entire test for confidentiality is flawed and they continue to overreach. As set forth below, with a few noted exceptions, Defendants' renewed motion should otherwise be denied.[2]

### B. Shareholder Communications Regarding The Potential Going Private.

As discussed above, Exhibits 41, 44-47 are emails regarding the reaction of T. Rowe Price analysts and fund managers to Musk's August 7 tweets on August 7 and their potential participation. Defendants' reason for sealing is "[i]nternal third party shareholder reaction to take private bid." This merely identifies the documents, but fails to provide a compelling reason for sealing. Simply because these documents were produced pursuant to a protective order and labeled as confidential does not mean that Defendants do not need to provide a compelling reason for their sealing. *Folt v. State Farm Mut. Auto. Ins. Co.*, 331 F. 3d 1122, 1136 (9h Cir. 2003) (holding that the presumption of access is not rebutted where documents subject to a protective order are filed under seal as attachments to a dispositive motion). Defendants offer no factual support that the third party intended these documents to remain confidential. Given that these communications relate to an almost four-year-old failed going private, Plaintiff can see no compelling reason for them to remain seal especially as each of these exhibits was discussed at Fath's non-confidential deposition. Additionally, the public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets on August 7.

Communications between Tesla shareholders and Martin Viecha, Tesla's director of investor relations, Exhibits 58, 90, 147, 155, 157, and 158, and Viecha and Koney testimony, also reflect shareholder questions and feedback regarding Musk's tweets of August 7, their position on a going private transaction, and Tesla's internal response to those positions. The communications are very specific to the transaction as proposed in 2018 as well as Elon Musk's Twitter habits at that time and contain nothing that could give any competitor of either Tesla or its investors any competitive advantage in 2022. *See*, *e. g*., Ex. 158. Defendants' reason for sealing these exhibits and testimony is "[c]onfidential feedback from third party shareholder related to Take Private Bid"

---

[2] Defendants also seek to redact portions of the briefing that refers to these documents and testimony. That portion of the motion should also be denied.

and "[i]nternal Tesla discussion of confidential third-party feedback on Take Private Bid." Dkt. 405 at 4-5. There is, however, no factual support that the shareholder deemed his feedback confidential as Defendants posit. The designation of the exhibit and the transcript as confidential pursuant to the operative protective order does not automatically mean these items should be sealed. *Folt*, 331 F. 3d at 1136. Given that these communications relate only to an almost four-year-old failed going private, there is no compelling reason to keep them sealed.

### C.  Internal Tesla Communications.

Exhibit 91 is an internal Tesla email chain discussing a hypothetical scenario regarding the ability of an existing Tesla investor to vote his shares when he had lent those shares to a short seller. The proposed redactions do not even involve the actual shareholdings of Tesla back in 2018.

### D.  Deposition Excerpts

The redacted excerpts of deposition transcripts of Elon Musk and Deepak Ahuja discuss potential terms of third party investors in the going private, as well as issues impacting these investors interest and participation. Defendants' reasoning for sealing is that these excerpts reflect either confidential terms of third party investment or internal discussion regarding confidential third party feedback. Dkt. 405 at 5. Defendants provide no factual support that the investors deemed their conversations regarding the going private as confidential. Defendants' belief that these investors expected these discussions to remain private constitutes only speculation and conjecture which cannot support the sealing of these materials. *See Pinto*, 605 F.3d at 678-79. Indeed, the source of investment in the going private was speculated and widely reported by the media at the time.

### E.  Plaintiff Agrees To Certain Proposed Redactions

As indicated in the communication to Defendants on April 20, 2022, Plaintiff agrees to the updated redactions in Exhibits 79, 121, and 165, which reflect personal contact information.

## IV.  CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendants' Corrected Renewed Administrative Motion To File Under Seal Documents In Support Of The Parties' Motion For Partial Summary Judgment (Dkt. 405), with the exception of permitting the updated redactions to Exhibits 79, 121, and 165.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: April 26, 2022 | Respectfully submitted, |
| 3 | | **LEVI & KORSINSKY, LLP** |
| 4 | | |
| 5 | | s/ Adam M. Apton |
|  | | Adam M. Apton (SBN 316506) |
| 6 | | Adam C. McCall (SBN 302130) |
|  | | 75 Broadway, Suite 202 |
| 7 | | San Francisco, CA 94111 |
|  | | Tel.: (415) 373-1671 |
| 8 | | Email: aapton@zlk.com |
|  | | Email: amccall@zlk.com |
| 9 | | |
| 10 | | -and- |
| 11 | | Nicholas I. Porritt |
| 12 | | Elizabeth K. Tripodi |
|  | | Alexander A. Krot III |
| 13 | | LEVI & KORSINSKY, LLP |
|  | | 1101 30th Street N.W., Suite 115 |
| 14 | | Washington, D.C. 20007 |
|  | | Tel.: (202) 524-4290 |
| 15 | | Email: nporritt@zlk.com |
|  | | Email: akrot@zlk.com |
| 16 | | (*admitted pro hac vice*) |
| 17 | | -and- |
| 18 | | |
| 19 | | Joseph Levi |
|  | | Eduard Korsinsky |
| 20 | | LEVI & KORSINSKY, LLP |
|  | | 55 Broadway, 10th Floor |
| 21 | | New York, New York 10006 |
|  | | Tel.: (212) 363-7500 |
| 22 | | Fax: (212) 363-7171 |
|  | | Email: jlevi@zlk.com |
| 23 | | Email: ek@zlk.com |
|  | | (*admitted pro hac vice*) |
| 24 | | |
| 25 | | *Attorneys for Plaintiff and Counsel for the Class* |
| 26 | | |
| 27 | | |
| 28 | | |