1  **LEVI & KORSINSKY, LLP**
   Adam M. Apton (SBN 316506)
2  Adam C. McCall (SBN 302130)
   75 Broadway, Suite 202
3  San Francisco, CA 94111
   Tel.: (415) 373-1671
4  Email: aapton@zlk.com
           amccall@zlk.com
5
6  *Attorneys for Plaintiff and Counsel for the Class*

7

8              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
9

10 IN RE TESLA, INC. SECURITIES       Case No. 3:18-cv-04865-EMC
   LITIGATION
11                                     **PLAINTIFF'S OPPOSITION TO
                                       DEFENDANTS' MOTION FOR
12                                     CERTIFICATION UNDER 28 U.S.C. §
                                       1292(b)**
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................1

II.    LEGAL STANDARD............................................................................................2

III.   ARGUMENT .......................................................................................................3

      A.     The Court Did Not Apply Different "Materiality" Standards when Deciding
            Plaintiff's Motion for Partial Summary Judgment...................................................3

      B.     Defendants' Argument Regarding the Forum for Musk's Fraudulent Statements is
            Meritless.....................................................................................................6

            1.     Defendants do not present a controlling question of law..............................6

            2.     Defendants do not demonstrate any ground for a difference of opinion. ....7

            3.     Defendants cannot show that certification would materially advance the
                 termination of litigation ............................................................................13

IV.   CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens of Utah v. United States,*
    406 U.S. 128 (1972) ........................................................... 8

*Ahrenholz v. Bd. Trs. of Univ. of Ill.,*
    219 F.3d 674 (7th Cir. 2000) ........................................... 6

*Aldapa v. Fowler Packing Co.,*
    2016 WL 8731316 (E.D. Cal. Aug. 26, 2016) ................. 6

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,*
    568 U.S. 455 (2013) ......................................................... 4

*Ashmore v. Ne. Petroleum Div. of Cargill, Inc.,*
    855 F.Supp. 438 (D.Me.1994) ....................................... 15

*Basic, Inc. v. Levinson,*
    485 U.S. 224 (1988) ..................................................... 1, 5

*Brody v. Transitional Hosps. Corp.,*
    280 F.3d 997 (9th Cir. 2002) ........................................... 7

*Burton v. Stevedoring Servs. of Am.,*
    196 F.3d 1070 (9th Cir. 1999) ......................................... 7

*Casas v. Victoria's Secret Stores, LLC,*
    2015 WL 13446989 (C.D. Cal. Apr. 9, 2015) ............... 14

*In re Cement Antitrust Litig.,*
    673 F.2d 1020 (9th Cir. 1982) .................................... 3, 13

*In re City of Memphis,*
    293 F. 3d 345 (6th Cir. 2002) ....................................... 13

*Cooper v. Pickett,*
    137 F.3d 616 (9th Cir. 1997) ......................................... 10

*Coopers & Lybrand v. Livesay,*
    437 U.S. 463 (1978) ......................................................... 3

*Couch v. Telescope Inc.,*
    611 F.3d 629 (9th Cir. 2010) .................................. 2, 7, 13

*In re CV Therapeutics, Inc.,*
    2004 WL 1753251 (N.D. Cal. Aug. 5, 2004) ................. 10

*In re CytRx Corp. Sec. Litig.*,
   2015 WL 5031232 (C.D. Cal. July 13, 2015) ...................................................... 10

*FERC v. Vitol Inc.*,
   2022 WL 583998 (E.D. Cal. Feb. 25, 2022) ........................................................ 14

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
   ___ U.S. ___, 141 S. Ct. 1951 (2021) ................................................................... 5

*Heaton v. Soc. Fin., Inc.*,
   2016 WL 232433 (N.D. Cal. Jan. 20, 2016) ...................................................... 1, 6

*Henley v. Jacobs*,
   2019 WL 8333448 (N.D. Cal. Oct. 25, 2019) ....................................................... 3

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983) ............................................................................................... 8

*Hightower v. Schwarzenegger*,
   2009 WL 3756342 (E.D. Cal. Nov. 6, 2009) ..................................................... 13

*Home Depot U.S.A., Inc. v. E.I. DuPont de Nemours & Co.*,
   2019 WL 6171063 (N.D. Cal. Nov. 20, 2019) ..................................................... 6

*Hunt v. Bloom Energy Corp.*,
   2022 WL 1122835 (N.D. Cal. Apr. 14, 2022) ................................................... 15

*Hunter v. Legacy Health*,
   2021 WL 4238991 (D. Or. Apr. 13, 2021) ......................................................... 15

*James v. Price Stern Sloan, Inc.*,
   283 F.3d 1064 (9th Cir. 2002) .............................................................................. 3

*Johnson v. Serenity Transportation, Inc.*,
   2017 WL 3168491 (N.D. Cal. July 26, 2017) .................................................. 6, 7

*K.S-A v. Hawaii Dep't of Educ.*,
   2018 WL 3431922 (D. Haw. July 16, 2018) ........................................................ 6

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................................ 7

*Lorenzo v. Sec. & Exch. Comm'n*,
   139 S. Ct. 1094 (2019) .......................................................................................... 9

*Matera v. Google Inc.*,
   2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .................................................... 6

*Matsunoki Grp., Inc. v. Timberwork Or., Inc.*,
   2011 WL 940218 (N.D. Cal. Feb. 18, 2011) ....................................................... 6

*McFarlin v. Conseco Servs., LLC,*
   381 F.3d 1251 (11th Cir. 2004) ........................................................................ 6

*Miller v. Thane Int'l, Inc.,*
   615 F.3d 1095 (9th Cir. 2010) .......................................................................... 5

*MP Nexlevel of California, Inc. v. Cvin, LLC,*
   2016 WL 5815895 (E.D. Cal. Oct. 5, 2016) ..................................................... 6

*In re Nat'l Prescription Opiate Litig.,*
   2020 WL 2128462 (N.D. Ohio May 5, 2020) .................................................. 15

*Perrin v. United States,*
   444 U.S. 37 (1979) ............................................................................................ 8

*Piazza v. Major League Baseball,*
   836 F.Supp. 269 (E.D.Penn.1993) .................................................................. 15

*In re QuantumScape Sec. Class Action Litig.,*
   2022 WL 137729 (N.D. Cal. Jan. 14, 2022) ................................................... 10

*Reese v. BP Exploration (Alaska) Inc.,*
   643 F.3d 681 (9th Cir. 2011) ............................................................................ 5

*Roberts v. C.R. England, Inc.,*
   2018 WL 2386056 (D. Utah Apr. 24, 2018) ................................................... 15

*S.E.C. v. Franklin,*
   265 F. App'x 644 (9th Cir. 2008) ..................................................................... 9

*S.E.C. v. James Alan Craig,*
   Case No. 3:15-cv-05076-CRB (N.D. Cal. May 20, 2019) (ECF No. 46) ......... 9

*S.E.C. v. Reyes,*
   491 F. Supp. 2d 906 (N.D. Cal. 2007) .............................................................. 4

*S.E.C. v. Steven M. Gallagher, a/k/a "Alexander Delarge 655321,"*
   Case No. 21-cv-8739-PKC (S.D.N.Y Oct. 26, 2021) ...................................... 9

*SEC v. Zandford,*
   535 U.S. 813 (2002) .......................................................................................... 8

*Sec. & Exch. Comm'n v. Husain,*
   2017 WL 810269 (C.D. Cal. Mar. 1, 2017) ...................................................... 8

*Sikorski v. Paul Revere Life Ins. Co.,*
   2016 WL 7495805 (C.D. Cal. Mar. 22, 2016) ................................................ 14

*In re Skelaxin (Metaxalone) Antitrust Litig.,*
   2013 WL 4821337 (E.D. Tenn. Sept. 10, 2013) ............................................. 15

*Stiner v. Brookdale Senior Living, Inc.*,
   383 F. Supp. 3d 949 (N.D. Cal. 2019) .................................................................... 3

*Superintendent of Ins. of the State of N.Y. v. Bankers Life & Cas. Co.*,
   404 U.S. 6 (1971) ..................................................................................................... 8

*T.P. by & through S.P. v. Walt Disney Parks & Resorts U.S., Inc.*,
   445 F. Supp. 3d 665 (C.D. Cal. 2020) .................................................................. 14

*Toombs v. Leone*,
   777 F.2d 465 (9th Cir. 1985) .................................................................................. 4

*TSC Industries, Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976) ................................................................................................ 4

*U.S. S.E.C. v. Brandonisio*,
   2013 WL 5375283 (D. Nev. Sept. 24, 2013) ....................................................... 10

*U.S. v. Charnay*,
   537 F.2d 341 (9th Cir. 1976) .................................................................................. 8

*United States Rubber Co. v. Wright*,
   359 F.2d 784 (9th Cir. 1966) ............................................................................. 3, 13

*United States v. Smith*,
   155 F. 1051 (9th Cir. 1998) .................................................................................... 8

*Vasquez v. Libre by Nexus, Inc.*,
   2018 WL 9868570 (N.D. Cal. Nov. 20, 2018) .................................................... 6, 7

*White v. Nix*,
   43 F.3d 374 (8th Cir. 1994) ................................................................................... 13

**Statutes**

17 C.F.R. §240.10b-5(b) .............................................................................................. 8

28 U.S.C. §1291 ....................................................................................................... 1, 2

28 U.S.C. §1292(b) .................................................................................................. 1, 2

# I.    INTRODUCTION

Defendants try to raise two issues for appellate review stemming from the Court's Order Granting in Part and Denying in Part Plaintiff Littleton's Motion for Partial Summary Judgment dated April 1, 2022 (ECF No. 387) ("MSJ Order"). The first relates to what they perceive as an "error" in applying "different" standards for materiality when assessing the evidentiary record for falsity, scienter, and reliance. The second concerns the Court's analysis with respect to the falsity of Musk's statements on August 7, 2018 and its supposed failure to account for the fact that Musk's statements were made via Twitter. Neither issue provides a basis for interlocutory appeal and Defendants categorically fail to satisfy the "exceptional circumstances" and "heavy burden" required for certification of an interlocutory order. Defendants' motion should be denied in its entirety.

Only "final decisions of the district courts" are appealable. 28 U.S.C. §1291. An exception to this rule exists where an interlocutory order involves (1) a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) an immediate appeal would materially advance the ultimate termination of the litigation. 28 U.S.C. §1292(b). A litigant seeking to an appeal an interlocutory order faces not just a burden, but a heavy burden in establishing these requisites. Indeed, interlocutory appeals are reserved for "exceptional circumstances [that] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Heaton v. Soc. Fin., Inc.*, 2016 WL 232433, at *2 (N.D. Cal. Jan. 20, 2016).

No such exceptional circumstances exist here. With respect to their first issue, Defendants' entire argument is premised on the faulty assumption that the Court applied different standards for assessing materiality when evaluating the parties' arguments on falsity, scienter, and reliance. Plaintiff submitted a wealth of evidence showing that Musk's statements on August 7, 2018 "significantly altered the total mix of information made available" to investors. Thus, the Court █████ ███████████████████████████████████████████████████████ That ███████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ Indeed, to the Court's credit, it ████████████████████████████████████████ ████████████████████████████████████████████████████████

1   ███████████████████████████████████████████████ While it remains to be seen if

2   Defendants will be able to persuade a jury on this point, the Court █████████████████

3   ████████████████████████ That decision in and of itself does not lead to the conclusion that the

4   Court applied different standards for materiality and, therefore, does not give rise to an issue

5   involving a controlling question of law calling for the certification of an interlocutory appeal.

6       Defendants fare no better on their second issue. Contrary to the law and the facts, they claim

7   that the Court ████████████████████████████████████████████████████

8   █████████████████████████████████████████ because of the forum in which they

9   appeared, *i.e.*, Twitter. Section 10(b) and Rule 10b-5 do not provide any exceptions for statements

10  made on Twitter versus SEC filings, press releases, interviews, or any other medium for that matter.

11  The rules clearly prohibit issuers from making "any" false statements in connection with the

12  purchase or sale of a security. Furthermore, Defendants' argument contradicts Musk's testimony in

13  this case, ████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████. Thus,

16  there is no basis for suggesting that the Court did ████████████████████████████

17  ██████████████████████████████████████████████████████████

18  █████████████████ The Court committed no legal error in its decision and, as a result, there is no

19  basis for certifying an interlocutory appeal.

20  **II.    LEGAL STANDARD**

21      Federal courts of appeals generally have jurisdiction only over appeals from "final decisions

22  of the district courts." 28 U.S.C. §1291. Section 1292(b) provides a "narrow exception to [this] final

23  judgment rule." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). It allows a court to

24  certify a non-final order for appellate review only if it finds, in writing, that the order "involves [1]

25  a controlling question of law [2] as to which there is substantial ground for difference of opinion and

26  that [3] an immediate appeal from the order may materially advance the ultimate termination of the

27  litigation." 28 U.S.C. §1292(b).

28

1    The party seeking certification must meet a demanding standard. Certification under Section

2    1292(b) is appropriate only in "extraordinary cases" or in "exceptional situations in which allowing

3    an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust*

4    *Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982), *aff'd* 459 U.S. 1190 (1983); *United States Rubber Co.*

5    *v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966). "Section 1292(b) is a departure from the normal rule

6    that only final judgments are appealable, and therefore must be construed narrowly"; it is accordingly

7    applied only in "rare circumstances." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th

8    Cir. 2002). Proponents of certification thus bear not only the burden but a "heavy burden" to satisfy

9    each of the statute's three requirements. "A movant seeking an interlocutory appeal [under Section

10   1292(b)] has a heavy burden to show 'that exceptional circumstances justify a departure from the

11   basic policy of postponing appellate review until after the entry of a final judgment.'" *Henley v.*

12   *Jacobs*, 2019 WL 8333448, at *2 (N.D. Cal. Oct. 25, 2019) (citing *Coopers & Lybrand v. Livesay*,

13   437 U.S. 463, 475 (1978)). Even then, "[t]he decision to certify an issue for interlocutory appeal is

14   discretionary." *Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 957 (N.D. Cal. 2019).

15   **III.   ARGUMENT**

16   **A.   The Court Did Not Apply Different "Materiality" Standards when Deciding**

17   **Plaintiff's Motion for Partial Summary Judgment.**

18   Defendants' motion is premised on the misconception that the Court applied "different"

19   standards for materiality when evaluating the evidentiary record on falsity, scienter, and reliance.

20   Defs. Br. at 9.[1] The Court did not do this. As explained, the Court correctly ████████████████

21   ████████████████████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████████████████████████

23   ███████████████████████████   MSJ Order at 32.[2] Nevertheless, the Court gave Defendants the

24   ────────────────────

25   [1] Citations to Defendants' Motion for Certification (ECF No. 402) are referred to as "Defs. Br. at

26   __."

     [2] In fact, ███████████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████████████████████████████████

1

2 ████████████████████████████████████████████████████████████████

████████████████████████████████████████████. *Id*. What Defendants

3 incorrectly presuppose in their motion is that evidence of a lack of price impact equates to a lack of

4 materiality.

5       Defendants' entire motion on this point is premised on this one faulty assumption, *i.e.*, "a

6 factual dispute as to price impact means that materiality is also in factual dispute." Defs. Br. at 1.

7 The case law on this issue shows that this is not the case. The test for materiality across all federal

8 securities laws was established by the Supreme Court in *TSC Industries, Inc. v. Northway, Inc.* where

9 a fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it

10 important". 426 U.S. 438, 449 (1976). This requires "a showing of a substantial likelihood that,

11 under all the circumstances, the omitted fact would have assumed actual significance in the

12 deliberations of the reasonable shareholder." *Id*. The Court continued: "Put another way, there must

13 be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the

14 reasonable investor as having significantly altered the 'total mix' of information made available."

15 *Id*. Importantly, this is an objective test, assessing the significance of a piece of information to a

16 "reasonable investor". *Id*. at 445; *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568

17 U.S. 455, 467 (2013) (noting materiality is an objective test). Materiality is also assessed at the time

18 the misrepresentation or omission occurs. *S.E.C. v. Reyes*, 491 F. Supp. 2d 906, 910 (N.D. Cal.

19 2007)("The law assesses the materiality of a misrepresentation at the time it is made, not after

20 intervening events or remedial action have rendered it harmless."); *see also Toombs v. Leone*, 777

21 F.2d 465, 469 (9th Cir. 1985)(" Materiality, of course, must be determined in light of facts existing

22 at the time of nondisclosure or misinformation.")

23       The question of reliance, specifically the issue of whether a defendant has rebutted the

24 presumption of reliance established by *Basic*, is, in contrast, a subjective test. A defendant must

25

26 ───────────────────

27 ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

28 ███████████████████████████████████████ *See* Opposition to

Motion for Reconsideration (ECF No. 414).

- 4 -

prove that a misrepresentation or omission *in fact* had no impact on a security's price at a particular point in time. "The defendant must 'in fact' 'seve[r]' the link' between a misrepresentation and the price paid by the plaintiff—and a defendant's mere production of *some* evidence relevant to price impact would rarely accomplish that feat." *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, ___ U.S. ___, 141 S. Ct. 1951, 1962 (2021); *see also Basic*, 485 U.S. at 249 (presumption rebutted where it is shown truth "credibly entered the market and dissipated the effects of the misstatements"). The same is true for the issue of loss causation. Unlike the test for materiality which is "hypothetical and objective … . the loss causation inquiry assesses whether a particular misstatement *actually* resulted in loss. It is historical and context-dependent." *Miller v. Thane Int'l, Inc.*, 615 F.3d 1095, 1101–02 (9th Cir. 2010)(citations omitted). The two inquiries essentially intersect when the "price impact" or "actual loss" caused by a misrepresentation equal $0.00 which will typically be at the end of a class period.

Unquestionably, the evidentiary record in this action shows that Musk's statements on August 7, 2018 were material at the time they were made and, unsurprisingly, immediately impacted the price of Tesla's stock and other securities. As set forth in Plaintiff's opposition to Defendants' motion for reconsideration, ████████████████ Nevertheless, in an effort to rebut Plaintiff's presumption of reliance under *Basic*, Defendants have crafted an argument centered on the reaction of Tesla's stock price to the blog post made several days later on August 13, 2018. The Court held ████████████████████████████████████ MSJ Order at 32. While it remains to be seen whether and to what extent Defendants can actually establish an absence of price impact, the Court's holding ████████████████████ ████████████████████████████████ Without any contradiction to speak of, Defendants cannot create a "controlling question of law" or a "novel legal issue[]" to be ruled upon and, therefore, have no basis for seeking certification. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *see also Aldapa v. Fowler Packing Co.*, 2016 WL 8731316,

1 | at *1-2 (E.D. Cal. Aug. 26, 2016) (similar, citing authorities); *K.S-A v. Hawaii Dep't of Educ.*, 2018

2 | WL 3431922, at *2 (D. Haw. July 16, 2018) (same).[3]

3 |       **B.**     **Defendants' Argument Regarding the Forum for Musk's Fraudulent**

4 |       **Statements is Meritless.**

5 |         1.   <u>Defendants do not present a controlling question of law.</u>

6 |       For the purposes of Section 1292(b), a question of law is "a pure legal question, such that the

7 | court of appeals could decide the question quickly and cleanly without having to study the record."

8 | *Heaton,* 2016 WL 232433, at *3 (quoting *Matsunoki Grp., Inc. v. Timberwork Or., Inc.,* No. 08-CV-

9 | 04078, 2011 WL 940218, *2 (N.D. Cal. Feb. 18, 2011) (citing *Ahrenholz v. Bd. Trs. of Univ. of Ill.,*

10 | 219 F.3d 674, 676-77 (7th Cir. 2000)). "[A] proper question for interlocutory appeal must be stated

11 | at a high enough level of abstraction to lift the question out of the details of the evidence of facts of

12 | a particular case." *Vasquez v. Libre by Nexus, Inc.,* 2018 WL 9868570, at *4 (N.D. Cal. Nov. 20,

13 | 2018) (quoting *Matera v. Google Inc.*, 2016 WL 8200619, at *15 (N.D. Cal. Aug. 12, 2016)). "The

14 | anthesis of a proper § 1292(b) appeal is one that turns on whether . . . the district court properly

15 | applied settled law to the facts or evidence of a particular case." *MP Nexlevel of California, Inc. v.*

16 | *Cvin, LLC,* 2016 WL 5815895, at *4 (E.D. Cal. Oct. 5, 2016)(quoting *McFarlin v. Conseco Servs.,*

17 | *LLC,* 381 F.3d 1251, 1259 (11th Cir. 2004)); *see also Home Depot U.S.A., Inc. v. E.I. DuPont de*

18 | *Nemours & Co.*, 2019 WL 6171063, at *2 (N.D. Cal. Nov. 20, 2019) (quoting *Johnson v. Serenity*

19 | *Transportation, Inc.*, 2017 WL 3168491, at *1 (N.D. Cal. July 26, 2017) ("[a] mixed question of law

20 | and fact or the application of law to a particular set of facts by itself is not appropriate for permissive

21 | interlocutory review.")).

22 |       Defendants do not present a "controlling question of law" and one does not exist. Far from

23 | it, the standard for proving the element of "falsity" in a securities fraud case is well-established. A

24 | statement is false or misleading if it acts to "create an impression of a state of affairs that differs in

25 |

26 | ――――――――――――――
[3] Without the prerequisite of a legal error, the remainder of the Section 1292(b) analysis is moot.

27 | However, for the purposes of preserving the record, Defendants have not demonstrated the existence of any of the three factors. The MSJ Order did not involve a controlling legal issue; there are no

28 | differences of opinion; and an appeal would not materially advance the termination of the litigation. *See* Sections III.B., *infra*.

a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). This may be proven "when a plaintiff points to defendant's statements that directly contradict what the defendant knew at that time." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018). The Court applied this standard and ███████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████ MSJ Order at 21-29.

Given the Court's correct application of the legal standard for falsity, Defendants do not credibly raise a "controlling question of law." *See Johnson*, 2017 WL 3168491, at *1. Indeed, as Defendants admit in their motion, they seek to appeal the issue of whether the "different characteristics of social media as a means for conveying information and the public's receipt of such information" should have outweighed the falsity and scienter evidence considered by the Court when deciding Plaintiff's motion and led to a different conclusion." Defs. Br. at 16-17. However, such factual considerations are not appropriate for certification. *See Vasquez,* 2018 WL 9868570, at *4.

2.      Defendants do not demonstrate any ground for a difference of opinion.

The second requirement under Section 1292(b) is that there be a "substantial ground for difference of opinion" on the certified question. As the Ninth Circuit has explained:

> courts must examine to what extent the controlling law is unclear. Courts traditionally will find a substantial ground for difference of opinion where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented. . . . [A] party's strong disagreement with the Court's ruling is not sufficient for there to be a substantial ground for difference.

*Couch,* 611 F.3d at 633 (internal quotations and citation omitted).

Defendants cannot meet this requirement. Indeed, Defendants offer no legal basis for suggesting that different standards apply (or should apply) to statements made in different forums (*i.e.*, Twitter versus any other medium). Defendants' argument is not only inconsistent with this Court's precedents but contradicts the plain meaning of the Section 10(b) and Rule 10b-5. If "the statute is clear and unambiguous, that is the end of the matter." *Burton v. Stevedoring Servs. of Am.,* 196 F.3d 1070, 1072 (9th Cir. 1999); *see also United States v. Smith,* 155 F. 1051, 1057 (9th Cir.

1   1998) ("A fundamental canon of statutory construction is that, *unless otherwise defined,* words will

2   be interpreted as taking their ordinary, contemporary, common meaning.") (quoting *Perrin v. United*

3   *States,* 444 U.S. 37, 42 (1979) (emphasis in the original)). Section 10(b) and SEC Rule 10(b)-5 are

4   clear that it is unlawful to make "*any* untrue statement of a material fact or to omit to state a material

5   fact necessary in order to make the statements made, in the light of the circumstances under which

6   they were made, not misleading." 17 C.F.R. §240.10b-5(b) (emphasis added).  Here, the plain

7   meaning of the word "any" in the statute provides no limitation of coverage of the securities laws to

8   formal regulatory filings. There is no carve out for tweets.

9          Defendants' argument also contradicts Congress's intent in enacting the federal securities

10  laws. Courts provide liberal construction of the securities laws to promote the remedial purpose of

11  protecting the investing public. *SEC v. Zandford*, 535 U.S. 813, 820 (2002); *Affiliated Ute Citizens*

12  *of Utah v. United States*, 406 U.S. 128, 151 (1972) ("The Supreme Court has explained that Congress

13  intended for the statute to be construed "not technically and restrictively, but flexibly to effectuate

14  its remedial purpose.") (internal citations omitted*); Superintendent of Ins. of the State of N.Y. v.*

15  *Bankers Life & Cas. Co.*, 404 U.S. 6, 11 n.7 (1971) (section 10(b) prohibits both the "garden type

16  variety of fraud" and "unique form[s] of deception" that employ "[n]ovel or atypical methods....")

17  (citation and internal quotation marks omitted); *Herman & MacLean v. Huddleston*, 459 U.S. 375,

18  386 (1983) ("A cumulative construction of the securities laws also furthers their broad remedial

19  purposes."); *U.S. v. Charnay*, 537 F.2d 341, 349 (9th Cir. 1976) ("'[The securities fraud provisions]

20  are not intended as a specification of particular acts or practices that constitute 'manipulative or

21  deceptive devices or contrivances,' but are instead designed to encompass the infinite variety of

22  devices that are alien to the 'climate of fair dealing.").  In passing the legislation, Congress sought

23  to "substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve

24  a high standard of business ethics in the securities industry." *Sec. & Exch. Comm'n v. Husain*, 2017

25  WL 810269, at *10 (C.D. Cal. Mar. 1, 2017) (quoting *Affiliated Ute*, 406 U.S. at 151).  Providing

26  special considerations for fraudulent statements made via Twitter would be wholly inconsistent with

27  this precedent.

28

There is no question that tweets made by the CEO of a publicly traded company fall within the scope of the securities laws and Defendants cite no authority to contrary. This is consistent with how courts enforce the law, the plain language of Section 10(b) and SEC Rule 10(b)-5, the law's remedial purpose, the SEC's regulations regarding public companies' use of social media, and Musk's own statements about his tweets. Yet Defendants argue that because a statement made on Twitter is different from a statement made in a formal regulatory filing, the Court must consider the forum where Musk made his fraudulent statements to determine falsity and scienter and the Court's failure to do so warrants an interlocutory appeal. Defs. Br. at 17. Courts have never limited their falsity analysis or enforcement of the securities laws to statements made in formal regulatory filings and consistently find successful allegations of securities fraud in statements made in any forum or through whatever medium a fraudulent statement might be made, including Twitter. For example:

- *S.E.C. v. Steven M. Gallagher, a/k/a* "Alexander Delarge 655321," Case No. 21-cv-8739-PKC (S.D.N.Y Oct. 26, 2021) (Stock trader charged with securities fraud for using his Twitter account to operate a pump-and-dump scheme)[4];

- *S.E.C. v. James Alan Craig,* Case No. 3:15-cv-05076-CRB (N.D. Cal. May 20, 2019) (ECF No. 46) (Individual charged with securities fraud for creating Twitter accounts to look like real Twitter accounts of well-known securities research firms and tweeting multiple false statements about two companies to affect their stock prices in an attempt to profit from resulting price swings);

- *Lorenzo v. Sec. & Exch. Comm'n*, 139 S. Ct. 1094 (2019) (misrepresentations appeared in email written by director of brokerage firm);

- *S.E.C. v. Franklin*, 265 F. App'x 644, 646 (9th Cir. 2008) ("Defendant engaged in an unlawful "pump and dump" scheme by publishing an internet newsletter that fraudulently touted stocks he owned and then selling the stocks at inflated prices.");

---

[4] *See* Press Release, Department of Justice, "Ohio-Based Stock Trader Pleads Guilty to Securities Fraud" (Feb. 25, 2022), available at https://www.justice.gov/usao-sdny/pr/ohio-based-stock-trader-pleads-guilty-securities-fraud.

1

- *Cooper v. Pickett*, 137 F.3d 616, 624 (9th Cir. 1997) (false statements provided to securities analysts with the intent that the analysts communicate those statements to the market);

- *In re QuantumScape Sec. Class Action Litig.,* 2022 WL 137729 (N.D. Cal. Jan. 14, 2022) (misleading statements given by CEO during an earnings call and CNBC interviews and statements made in another officer's LinkedIn post were false and misleading and made with scienter);

- *In re CytRx Corp. Sec. Litig.,* 2015 WL 5031232, at *9 (C.D. Cal. July 13, 2015) (Company statements in press release and conference calls contained actionable omissions);

- *U.S. S.E.C. v. Brandonisio,* 2013 WL 5375283, at *2 (D. Nev. Sept. 24, 2013) ("To 'pump' the stock, [Defendant] began a direct mail campaign, an email campaign, and posted videos on the internet.'); and

- *In re CV Therapeutics, Inc.,* 2004 WL 1753251, at *6 (N.D. Cal. Aug. 5, 2004) (Plaintiffs alleged with particularity that statements made during a CNBC interview were false and/or misleading when made).

In addition to the law, the unique facts in this case further support holding Musk accountable for the false statements he made, notwithstanding that he made the statements on Twitter. On November 5, 2013, Tesla filed a current report on Form 8-K stating: "Tesla investors and others should note that we announce material information to the public about our company, products and services and other issues through a variety of means, including Tesla's website, press releases, SEC filings, blogs and social media, in order to achieve broad, non-exclusionary distribution of information to the public. . . . For additional information, *please follow Elon Musk's . . . Twitter accounts*: twitter.com/elonmusk . . . ." Ex. 103 at 2 (emphasis added). Thus, Defendants themselves identified Musk's personal Twitter as a forum for "material information to the public about [Tesla]." Musk ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████. Musk Dep. at

- 10 -

18:2-11. He was also ███████████████████████████████████████

████████████████████████████████████████████████████████████

████ *Id.* at 20:18-23, 63:17-23. Musk also █████████████████████

████████████████████████████ *Id.* at 183:15-184:1.

In fact, Musk ███████████████████████████████████████

████ *Id.* at 114:4-15; 142:17-143:6; 165:9-14; 281:25-282:3. He ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ *See id.* at 127:3-18, 182:7-14; 184:4-185:9. ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* at

185:5-9. Musk ██████████████████████████████████████████████

████████████████████████████████████████████. *See id.* at 185:10-

18. And, █████████████████████████████████████████████████

███████████. MSJ Order at 9 ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████

This is the "context" of Musk's tweets that Defendants now claim to be "informal" and whose falsity should be subject to a nebulous standard akin to defamation jurisprudence. Far from presenting "substantial ground for difference of opinion" on the controlling law, Defendants arguments ignore SEC regulations and Musk's own testimony about his tweets. Given the intentionality behind Musk's use of Twitter on August 7, 2018, his statements should not be subjected to some lower, less scrupulous standard for falsity; to the contrary, the importance of his statements and his knowledge of their likely effect on the public weigh in favor of holding him and his statements to a higher, more rigorous standard.

The fact that tweets are limited in length (characters) does not alter the analysis or otherwise change the outcome on this issue. Even if there were a scintilla of authority supporting Defendants'

argument, it is undermined by the entirety of their conduct. Musk ████████████████████

██████████████████████████████████████████████████████ Musk

Dep. at 21:6-25. He also ████████████████████████████████████████████████████

████████████████████████████████████████. *Id.* at 186: 18-21. And he did just that. Not

only did he issue his initial tweet, but he also replied to questions from members of the public, as

demonstrated below:

- ████████████████████████████████████████████████

  ████████████████████████

  █ ██████████████████████████████████████████████

  ████████████████████████████████████████████████

  ██████████████████████████████████

  █ ██████████████████████████████████████████████

  ████████████████████████████████████████████████

  ████████████████████████████████████████████████

  ████████

  █ ██████████████████████████████████████████████

  ████████████████████████████

  █ ██████████████████████████████████████████████

  ████████████████████████████████████████████████

  ████████████████████████████████████

*See* MSJ Order at 7-8. Musk's replies to questions he received on Twitter further perpetuated the

fraud that he had "secured" funding to take Tesla private at $420 per share and that the only

contingency on taking Tesla private was a shareholder vote. Musk also linked to documents in his

tweets to circumvent the limit on the number of characters in a tweet: ████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████ MSJ Order. at 9, citing Ex. 13 ██████ (emphasis in the MSJ

Order).

Defendants' disagreement with the Court's summary judgment ruling does not constitute a substantial ground for a difference of opinion warranting an interlocutory appeal. *Couch,* 611 F.3d at 633 (9th Cir. 2010) (internal quotations and citation omitted).  The evidentiary record considered by the Court in its summary judgment ruling, overwhelming case law, and Defendants' own SEC filings provide ample evidence that the securities laws apply to tweets and there is no special consideration for the falsity of statements made on Twitter.

3.      Defendants cannot show that certification would materially advance the termination of litigation

Section 1292(b) is not only limited to "extraordinary cases," it is limited to circumstances in which interlocutory appeal would "*avoid* protracted and expensive litigation." *United States Rubber Co.,* 359 F.2d at 785 (emphasis added). Defendants must show that "an immediate appeal may 'materially advance,' rather than impede or delay, ultimate termination of the litigation." *Hightower v. Schwarzenegger*, 2009 WL 3756342, at *4 (E.D. Cal. Nov. 6, 2009) (quoting *Cement Antitrust Litig.,* 673 F.2d at 1026). "When litigation will be conducted in substantially the same manner regardless of our decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *Hightower* 2009 WL 3756342, at *4 (*quoting White v. Nix*, 43 F.3d 374, 378-79 (8th Cir. 1994)); *see also In re City of Memphis*, 293 F. 3d 345, 351 (6th Cir. 2002) ("When litigation will be conducted in substantially the same manner regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation.") (internal quotations omitted). Because there is "no assurance that the Ninth Circuit would accept an appeal" and Defendants then would still have "the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment," the action could very likely only be prolonged by the immediate appeal. *Hightower,* 2009 WL 3756342, at *5.

Defendants do not and cannot show how interlocutory review would materially advance the termination of this litigation. Instead, permitting an appeal would prolong the litigation rather than advance its resolution. This is demonstrated by the fact that Defendants cite only one case in which certification was granted in connection with a summary judgment decision and that case, *T.P. by &*

1   through *S.P. v. Walt Disney Parks & Resorts U.S., Inc.*, 445 F. Supp. 3d 665 (C.D. Cal. 2020), is

2   entirely distinguishable. It involved 55 individuals with cognitive disabilities who sued the defendant

3   for violations of the Americans with Disabilities Act (ADA). To manage the case, the Court

4   proceeded with "bellwether" phases, adjudicating the claims of two or three families at a time and

5   then directing the parties to engage in mediation and settlement negotiations. *Id.* at 667. In granting

6   plaintiffs' interlocutory appeal on the question of whether it was "necessary" under the ADA for an

7   amusement park to accommodate customers with cognitive disabilities, the Court found that,

8   "[r]egardless of the outcome, an interlocutory appeal will expedite future proceedings. . . . It would

9   be a significant and needless waste of the Court and the parties' resources to proceed through

10  additional bellwether phases only to face reversal on a common issue of law." *Id.* at 671. Those

11  considerations are entirely absent in this case.  Even if this Court certified interlocutory appeal and

12  Ninth Circuit ruled in Defendants' favor, this matter would still have to be tried and the litigation

13  would proceed in substantially the same fashion.[5]

14       Furthermore, there is no indication that an appeal would facilitate settlement in this matter.

15  Defendants argue, "that this is a class action further favors certification for interlocutory review,

16  because most class actions settle and settlement is far more likely to occur where the parties have

17  received clear instruction on the status of key claims." Defs. Br. at 19.  However, Defendants offer

18  no justification for this argument. *See Sikorski v. Paul Revere Life Ins. Co.*, 2016 WL 7495805, at

19  *3 (C.D. Cal. Mar. 22, 2016) ("The mere fact that a future reversal . . . would alter the parties'

20

21  _____

22  [5] The other cases that Defendants cite also do not support their argument. In *Casas v. Victoria's
    Secret Stores, LLC*, the Court allowed for interlocutory appeal of a motion to dismiss and stay the

23  action pending the interlocutory appeal. *Casas v. Victoria's Secret Stores, LLC*, 2015 WL 13446989
    (C.D. Cal. Apr. 9, 2015).  In doing so the Court noted that the "early stage at which the issues present

24  itself" would not "unduly delay[] the currently-planned course of litigation." *Id.* at *4.   *FERC v.
    Vitol Inc.* also involved an interlocutory appeal of a denial of a motion to dismiss based on a statute

25  of limitations argument. *FERC v. Vitol Inc.*, 2022 WL 583998 (E.D. Cal. Feb. 25, 2022). In granting
    the interlocutory appeal, the Court found that doing so may advance the ultimate resolution of the

26  litigation because it may increase the chance of settlement. *Id.* at *4.  Unlike *Casas* and *FERC*, both
    expert and fact discovery are closed, and the case is nearly ready for trial. Revisiting the Court's

27  summary judgment order would prolong this litigation, as Plaintiff would renew his motion for
    summary judgment, which would require the Court to again set aside its trial dates. This would be a

28  significant and needless waste of the Court's resource.

1   settlement posture is not enough to justify an immediate appeal."); *Ashmore v. Ne. Petroleum Div.*

2   *of Cargill, Inc.,* 855 F.Supp. 438, 440 n. 3 (D.Me.1994) (expressing doubt on the likelihood of

3   settlement as a consideration under § 1292(b) and noting "[r]esolution of nearly any disputed issue

4   of law will to a greater or lesser extent, make settlement more probable"); *Piazza v. Major League*

5   *Baseball,* 836 F.Supp. 269, 272 n. 7 (E.D.Penn.1993) ("Baseball stresses in its submissions that

6   settlement will not be possible in the absence of certification, and that therefore certification will

7   materially advance the ultimate termination of the litigation by making settlement possible. I reject

8   this as a controlling contention for § 1292(b) certification in this case.").

9         Nowhere in Defendants' motion do they explain how an appeal of this, or any issue will lead

10  to settlement. In fact, an appeal would achieve the opposite result. The Court's summary judgment

11  order has already narrowed the issues and provided clear instruction on Plaintiff's liability claims.

12  *See Roberts v. C.R. England, Inc*., 2018 WL 2386056, at *3 (D. Utah Apr. 24, 2018)(Denying motion

13  to certify interlocutory appeal where a successful appeal would not eliminate any of plaintiffs' claims

14  or narrow the substantive issues); *see also In re Skelaxin (Metaxalone) Antitrust Litig.*, 2013 WL

15  4821337, at *4 (E.D. Tenn. Sept. 10, 2013) ("If the circuit reversed the Court's order in part, the

16  settlement calculus would change unpredictably. Whether such a ruling would make settlement more

17  or less likely is mere speculation."). Thus, it appears that certification would have the opposite effect

18  by delaying and confusing the issues in the litigation.

19        Defendants may litigate their case as they see fit, but their unwillingness to settle before an

20  appeal is not a relevant basis to justify an interlocutory appeal under §1292(b). *Hunt v. Bloom Energy*

21  *Corp.,* 2022 WL 1122835, at *4 (N.D. Cal. Apr. 14, 2022); *see also Hunter v. Legacy Health,* 2021

22  WL 4238991, at *12 (D. Or. Apr. 13, 2021). Defendants' argument is further speculative as nothing

23  in the history of this case supports their implication that settlement will not occur unless this issue

24  is resolved. *See In re Nat'l Prescription Opiate Litig.,* 2020 WL 2128462, at *2 (N.D. Ohio May 5,

25  2020). A "successful appeal would not promote earlier settlement but merely redistribute the

26  pressure to settle among the parties." *Roberts*, 2018 WL 2386056, at *3.

27

28

1   IV.     **CONCLUSION**

2           Defendants' motion fails to identify legitimately appealable issues, let alone satisfy the strict

3   requirements and heavy burden for appealing prior to entry of judgment under Section 1292(b).

4   Their supposed legal issues are premised on mistaken interpretations of the law and the Court's MSJ

5   Order. Their arguments also run contrary to the evidentiary record in this matter. Defendants entirely

6   fail to substantiate their request for certification. Plaintiff respectfully requests that their motion be

7   denied in its entirety.

8   Dated: May 6, 2022                            Respectfully submitted,

9                                                 **LEVI & KORSINSKY, LLP**

10                                                 s/ Adam M. Apton
11                                                Adam M. Apton (SBN 316506)
                                                  Adam C. McCall (SBN 302130)
12                                                75 Broadway, Suite 202
                                                  San Francisco, CA 94111
13                                                Tel.: (415) 373-1671
                                                  Email: aapton@zlk.com
14                                                Email: amccall@zlk.com

15
                                                          -and-
16
                                                  Nicholas I. Porritt
17                                                Elizabeth K. Tripodi
                                                  Alexander A. Krot III
18                                                LEVI & KORSINSKY, LLP
19                                                1101 30th Street N.W., Suite 115
                                                  Washington, D.C. 20007
20                                                Tel.: (202) 524-4290
                                                  Email: nporritt@zlk.com
21                                                Email: akrot@zlk.com
22                                                (*admitted pro hac vice*)

23                                                        -and-

24                                                Joseph Levi
25                                                Eduard Korsinsky
                                                  LEVI & KORSINSKY, LLP
26                                                55 Broadway, 10th Floor
                                                  New York, New York 10006
27                                                Tel.: (212) 363-7500
                                                  Fax: (212) 363-7171
28                                                Email: jlevi@zlk.com

Email: ek@zlk.com
(*admitted pro hac vice*)

*Attorneys for Plaintiff and Counsel for the Class*