QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*appearing pro hac vice*)
alexspiro@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

Michael T. Lifrak (Bar No. 210846)
michaellifrak@quinnemanuel.com
Jeanine Zalduendo (Bar No. 243374)
jeaninezalduendo@quinnemanuel.com
Kyle Batter (Bar No. 301803)
kylebatter@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendants Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, And Linda Johnson Rice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**CONFIDENTIAL MATERIALS CHART IN SUPPORT OF DEFENDANTS' RENEWED ADMINISTRATIVE MOTION TO FILE UNDER SEAL (DKT. NO. 405)** |
|---|---|

## I. INTRODUCTION

Pursuant to the Court's order of May 9, 2022 (Dkt. No. 419), Defendants Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice (together, "Defendants") hereby present a chart in support of their Renewed Administrative Motion to File Under Seal ("Motion to Seal") (Dkt. No. 405), which identifies those confidential excerpts from the Parties' filings related to Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 352), and the rationale for sealing such excerpts. Per the Court's May 9, 2022 Order (Dkt. No. 419), Plaintiff responds to the request to seal each confidential excerpt herein.

Defendants request that the Court seal select materials from the Parties' summary judgment filings, as identified in the table below, because they contain protectable, non-public, confidential business information related to third party shareholders and investors in Tesla, who had an expectation of the private nature of the communications reflected therein. Defendants have narrowly tailored their request to include only information meriting sealing, using a line-by-line approach, where applicable.[1]

| Document | Dkt. No. | Page/Line | Defendants' Rationale for Sealing | Plaintiff's Response |
|---|---|---|---|---|
| Plaintiff's Partial Motion for Summary Judgment | 352 | 13:5-10 | Excerpt reflects confidential feedback, conveyed to Tesla with the expectation of privacy, from third party investors and shareholders describing their ability to hold interests in private companies and otherwise participate in the Take Private Bid. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by | • The excerpt reflects feedback regarding the going private from three shareholders. Declarations from these Tesla shareholders in support of continued sealing are noticeably absent here.<br>• The testimony from T. Rowe was not designated as confidential at the deposition of Joseph Fath.<br>• Simply because the underlying documents for HHR and the testimony of Koney were designated as |

[1] This list does not include materials of third parties Silver Lake and Goldman Sachs, which the Court has already ordered sealed. (Dkt. 387 at 19-20).

| | | | | |
|---|---|---|---|---|
| | | | chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 17CV205-MMA (MDD), 2020 WL 1911502, at *5 (S.D. Cal. Apr. 20, 2020) (finding compelling reasons to seal "email correspondence between Defendants and third party clients or associate vendors concerning agreements and business dealings with these third parties"). | confidential by Tesla under the protective order does not support their continued sealing. *See Folt v. State Farm Mut. Auto. Ins. Co.*, 331 F. 3d 1122, 1136 (9th Cir. 2003) (holding that the presumption of access is not rebutted where documents subject to a protective order are filed under seal as attachments to a dispositive motion).<br>• There is nothing confidential about this excerpt. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investor in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana v. City and County of Honolulu*, 447 F. 3d 1172, 1178 (9th Cir. 2006) (holding that the party seeking seal must "articulate[] compelling reasons supported by specific factual findings" that outweigh access and public policy favoring disclosure).<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of these documents. *See Pinto v. Pac. Creditors* |

| | | | | |
|---|---|---|---|---|
| | | | | *Ass'n*, 605 F.3d 665, 678-79 (9h Cir. 2010).<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here.<br>. |
| Defendants' Opposition to Partial Motion for Summary Judgment | 365 | 10:21-23 | Excerpt reflects third party confidential business information regarding specific terms on which it would participate in the Take Private Bid, conveyed to Tesla with the expectation of privacy. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | • The excerpt references potential interest by a third-party investor in the going private; it is simply a purported investment interest as relayed by a witness unrelated to the third party.<br>• A declaration from this potential investor in support of continued sealing is noticeably absent here.<br>• This third party's interest in the Tesla going private was widely speculated and publicly discussed. The excerpt has no bearing on current investments.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning |

| | | | | |
|---|---|---|---|---|
| | | | | and conjecture and do not meet the compelling reason standard for the continued sealing of these documents. *See Pinto*, 605 F.3d at 678-79.<br>• For the reasons stated above, Defendants' reliance on *Aya Healthcare Servs.* is misplaced. |
| Reply in Support of Partial Motion for Summary Judgment | 370 | 4:23 -24 (note 19) | Excerpt reflects internal third party shareholder reaction to Take Private Bid as quoted in a third party's confidential, internal email.  *See Pinnacle Ventures LLC, v. Bertelsmann Education Services*, No. 18-CV-03412-BLF, 2018 WL 11392741, at *1 (N.D. Cal. Aug. 1, 2018)(sealing non-party confidential internal information). | • This excerpt discusses Exhibit 41, a communication from Joseph Fath, a fund manager at T. Rowe Price, containing his reaction to Elon Musk's August 7, 2018 tweets. It contains no references to T. Rowe's internal policies or its ability to participate in a potential go-private for Tesla. There is nothing confidential about this document; it does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018.<br>• This underlying exhibit was discussed extensively at Mr. Fath's deposition and neither T. Rowe nor Defendants designated that testimony as confidential.<br>• Simply because the underlying document was initially designated confidential under the protective order does not support its continued sealing. *See Folt*, 331 F. 3d at 1136.<br>• *Pinnacle Ventures LLC* is inapposite here as the excerpt does not contain |

| | | | | |
|---|---|---|---|---|
| | | | | confidential business and financial information, or information that would cause competitive harm to T. Rowe Price. |
| Exhibit 41 | 369-2; 371-10 | Fath email at 1:17 pm. | Confidential email reflects internal third party shareholder reaction to Take Private Bid. Email was designated by third party as "Confidential" under the protective order in this case. *See Pinnacle Ventures*, 2018 WL 11392741, at *1. | • Exhibit 41 is a communication from Joseph Fath, a fund manager at T. Rowe Price, containing his reaction to Elon Musk's August 7, 2018 tweets. It contains no references to T. Rowe's internal policies or its ability to participate in a potential go-private for Tesla. There is nothing confidential about this document; it does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018.<br>• This exhibit was discussed extensively at Fath's deposition and neither T. Rowe nor Defendants designated that testimony as confidential.<br>• Simply because the exhibit was initially designated confidential under the protective order does not support its continued sealing. *See Folt*, 331 F. 3d at 1136.<br>• *Pinnacle Ventures LLC* is inapposite here as the excerpt does not contain confidential business and financial information, or information that would cause competitive harm to T. Rowe Price. |

| | | | | |
|---|---|---|---|---|
| Exhibit 44 | 351-4; 352-25 | Entire email | Confidential email reflects internal third party shareholder reaction to Take Private Bid and ability to participate therein.  Email was designated by third party as "Confidential" under the protective order in this case.  *See Pinnacle Ventures*, 2018 WL 11392741, at *1. | • Exhibit 44 is an internal communication from Joseph Fath, a fund manager at T. Rowe Price, regarding the going private. There is nothing confidential about this document; it does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018.<br>• This exhibit was discussed at Mr. Fath's deposition and neither T. Rowe nor Defendants designated that testimony as confidential.<br>• Simply because the underlying document was initially designated confidential under the protective order does not support its continued sealing. *See Folt*, 331 F. 3d at1136.<br>• *Pinnacle Ventures LLC* is inapposite here as the excerpt does not contain confidential business and financial information, or information that would cause competitive harm to T. Rowe Price. |
| Exhibit 45 | 351-5; 352-26 | Entire email chain | Confidential email reflects internal third party shareholder reaction to Take Private Bid and ability to participate therein.  Email was designated by third party as "Confidential" under the protective order in this case. *See Pinnacle Ventures*, 2018 WL 11392741, at *1. | • Exhibit 45 is a response to Exhibit 44, reflecting someone's willingness to participate in a potential transaction occurring in 2018.<br>• This exhibit was discussed at Mr. Fath's deposition and neither T. Rowe nor Defendants designated that testimony as confidential.<br>• Simply because the underlying document was |

| | | | | |
|---|---|---|---|---|
| | | | | initially designated confidential under the protective order does not support its continued sealing. *See Folt*, 331 F. 3d at 1136.<br>• *Pinnacle Ventures LLC* is inapposite here as the excerpt does not contain confidential business and financial information, or information that would cause competitive harm to T. Rowe Price. |
| Exhibit 46 | 351-6; 352-27 | Entire email chain | Confidential email reflects internal third party shareholder reaction to Take Private Bid and ability to participate therein. Email was designated by third party as "Confidential" under the protective order in this case. *See Pinnacle Ventures*, 2018 WL 11392741, at *1. | • Exhibit 46 is a response to Exhibit 44, reflecting someone's willingness to participate in a potential transaction occurring in 2018.<br>• This exhibit was discussed at Mr. Fath's deposition and neither T. Rowe nor Defendants designated that testimony as confidential.<br>• Simply because the underlying document was initially designated confidential under the protective order does not support its continued sealing. *See Folt*, 331 F. 3d at 1136.<br>• *Pinnacle Ventures LLC* is inapposite here as the excerpt does not contain confidential business and financial information, or information that would cause competitive harm to T. Rowe Price. |
| Exhibit 47 | 351-7; 352-28 | Entire email chain | Confidential email reflects internal third party shareholder reaction to Take Private Bid and ability to participate | • Exhibit 47 is a response to Exhibit 44, reflecting someone's willingness to participate in a potential |

| | | | | |
|---|---|---|---|---|
| | | | therein. Email was designated by third party as "Confidential" under the protective order in this case. *See Pinnacle Ventures*, 2018 WL 11392741, at *1. | transaction occurring in 2018.<br>• This exhibit was discussed at Mr. Fath's deposition and neither T. Rowe nor Defendants designated that testimony as confidential.<br>• Simply because the underlying document was initially designated confidential under the protective order does not support its continued sealing. *See Folt*, 331 F. 3d at 1136.<br>• *Pinnacle Ventures LLC* is inapposite here as the excerpt does not contain confidential business and financial information, or information that would cause competitive harm to T. Rowe Price. |
| Exhibit 79 | 351-9; 352-30 | As highlighted | Private contact information of third-party individuals. This category of confidential information is uncontested. *See Snapkeys, Ltd. v. Google LLC*, 2021 WL 1951250, at *3 (N.D. Cal. May14, 2021) (compelling reasons exist to seal personally identifiable information). | Uncontested |
| Exhibit 90 | 351-13; 352-35 | Fassnacht email at 1:06 pm. | Email describes confidential feedback from third party shareholder related to Take Private Bid, including terms upon which the third party would consider participating, conveyed to Tesla with the expectation of privacy. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court | • The email reflects feedback regarding the going private from a shareholder. A declaration from this shareholder in support of continued sealing is noticeably absent here.<br>• Simply because the email from HHR was deemed confidential by Tesla under the protective order does not necessarily support its |

| | | | | |
|---|---|---|---|---|
| | | | new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | continued sealing. *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this email. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investor in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third |

| | | | | |
|---|---|---|---|---|
| | | | | parties." None of those are at issue here. |
| Exhibit 90 | 351-13; 352-35 | Fassnacht email at 4:22 pm. | Email describes confidential feedback from third party shareholder related to Take Private Bid, in particular, why the third party believes it cannot participate in the Bid, conveyed to Tesla with the expectation of privacy. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | • The email reflects feedback regarding the going private from a shareholder. A declaration from this shareholder in support of continued sealing is noticeably absent here.<br>• Simply because the email from HHR was deemed confidential by Tesla under the protective order does not necessarily support its continued sealing. *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this email. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investor in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets |

| | | | | |
|---|---|---|---|---|
| | | | | on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here. |
| Exhibit 90 | 351-13; 352-35 | Chew email at 1:25 pm. | Excerpt describes confidential feedback from third party shareholder related to Take Private Bid, including, the third party's interest in participating in the Bid, conveyed to Tesla with expectation of privacy.  Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | • There is nothing indicating that shareholder feedback to Tesla regarding the going private transaction was deemed confidential by the shareholders. No declarations from shareholders have been submitted.<br>• Simply because the email was designated as confidential by Tesla under the protective order does not support its continued sealing *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this email. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investors in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See* |

| | | | | |
|---|---|---|---|---|
| | | | | *Kamakana*, 447 F. 3d at 1178.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here.<br>. |
| Exhibit 90 | 351-13; 352-35 | Ahuja email at 7:08 pm. | Excerpt describes confidential feedback from third party shareholder related to Take Private Bid, including, the third party's interest in participating in the Bid, conveyed to Tesla with expectation of privacy. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to | • There is nothing indicating that shareholder feedback to Tesla regarding the going private transaction was deemed confidential by the shareholders.<br>• Simply because the email was designated as confidential by Tesla under the protective order does not support its continued sealing *See Folt*, 331 F. 3d at 1136. |

| | | | | |
|---|---|---|---|---|
| | | | preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | • There is nothing confidential about this email. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investors in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here. |

| | | | | |
|---|---|---|---|---|
| | | | | . . |
| Exhibit 91 | 351-14; 352-36 | Ownership chart in email at 16:17. | Internal Tesla chart that reflects third party shareholder ownership percentages in Tesla. Whereas the identities of certain investors in Tesla may have been publicly known, the specific level of participation, and other details related to the investments, were not. *See Alcon Ent., LLC v. Automobiles Peugeot SA*, No. CV1900245CJCAFMX, 2020 WL 8365239, at *2 (C.D. Cal. Jan. 16, 2020) (sealing the names of non-party clients). | • Tesla is a public company and its institutional investor base is, and was at the time, known to the public. <br>• The information contained in this chart detailing the number of shares held by investors at the time and percentage of shares outstanding that represented could be found in the "Holders" section of Tesla's page on Yahoo Finance, or other similar financial information websites. All of this information was and is publicly available. Thus, Defendants' reference to *Alcon Ent., LLC* is irrelevant. |
| Exhibit 121 | 351-24; 352-46 | As highlighted | Private contact information of third-party private individuals. This category of confidential information is uncontested. *See Snapkeys, Ltd.*, 2021 WL 1951250, at *3 (compelling reasons exist to seal personally identifiable information). | Uncontested |
| Exhibit 147 | 351-26; 352-48 | Fassnacht email at 1:06 pm. | Email describes confidential feedback from third party shareholder related to Take Private Bid, including terms upon which the third party would consider participating, conveyed to Tesla with the expectation of privacy. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court | • The email reflects feedback regarding the going private from a shareholder. A declaration from this shareholder in support of continued sealing is noticeably absent here. <br>• Simply because the email from HHR was deemed confidential by Tesla under the protective order does not necessarily support its |

| | | | | |
|---|---|---|---|---|
| | | | new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | continued sealing. *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this email. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investor in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third |

| | | | | |
|---|---|---|---|---|
| | | | | parties." None of those are at issue here. |
| Exhibit 147 | 351-26; 352-48 | Fassnacht email at 4:22 pm. | Email describes confidential feedback from third party shareholder related to Take Private Bid, including why the third party believes it cannot participate in the Bid, conveyed to Tesla with the expectation of privacy. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | • The email reflects feedback regarding the going private from a shareholder. A declaration from this shareholder in support of continued sealing is noticeably absent here.<br>• Simply because the email from HHR was deemed confidential by Tesla under the protective order does not necessarily support its continued sealing. *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this email. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investor in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets |

| | | | | |
|---|---|---|---|---|
| | | | | on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here. |
| Exhibit 147 | 351-26; 352-48 | Chew email at 13:25 | Excerpt describes confidential feedback from third party shareholder related to Take Private Bid, including the third party's interest in participating in the Bid, conveyed to Tesla with expectation of privacy. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | • There is nothing indicating that shareholder feedback to Tesla regarding the going private transaction was deemed confidential by the shareholders. No declarations from shareholders have been submitted.<br>• Simply because the email was designated as confidential by Tesla under the protective order does not support its continued sealing *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this email. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investors in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See* |

| | | | | |
|---|---|---|---|---|
| | | | | *Kamakana*, 447 F. 3d at 1178.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here.<br>. |
| Exhibit 147 | 351-26; 352-48 | Viecha email at 1:29 pm. | Excerpt describes confidential feedback from third party shareholder related to Take Private Bid, including the third party's interest in participating in the Bid, conveyed to Tesla with expectation of privacy. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to | • There is nothing indicating that shareholder feedback to Tesla regarding the going private transaction was deemed confidential by the shareholders. No declarations from shareholders have been submitted.<br>• Simply because the email was designated as confidential by Tesla under the protective order does |

| | | | | |
|---|---|---|---|---|
| | | | preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | not support its continued sealing *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this email. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investors in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations |

| | | | | |
|---|---|---|---|---|
| | | | | and agreements with third parties." None of those are at issue here. . |
| Exhibit 155 | 351-29; 352-51 | Page 1, paragraph 1 | This excerpt describes very specific third party confidential business information, conveyed to Tesla with the expectation of privacy. In particular, it reveals the third party's interest in the Take Private Bid at that time, the specific reasons why, and what potential road blocks would prevent the party from participating. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | • The excerpt reflects feedback received by Tesla investor relations regarding the going private.<br>• The feedback from T. Rowe was discussed at the deposition of Mr. Fath, which was not designated as confidential.<br>• There is nothing indicating that shareholder feedback to Tesla regarding the going private transaction was deemed confidential by the shareholders. No declarations from shareholders have been submitted.<br>• Simply because the email was designated as confidential by Tesla under the protective order does not support its continued sealing *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this email. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investors in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• Defendants' concerns regarding chilling future investors' willingness to |

| | | | | |
|---|---|---|---|---|
| | | | | speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here. |
| Exhibit 155 | 351-29; 352-51 | Page 1, paragraph 2 | This excerpt describes very specific third party confidential business information, conveyed to Tesla with the expectation of privacy. In particular, it reveals the third party's interest in the Take Private Bid at that time, the specific reasons why, and what potential road blocks would prevent the party from participating. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its | • The excerpt reflects feedback received by Tesla investor relations regarding the going private.<br>• There is nothing indicating that shareholder feedback to Tesla regarding the going private transaction was deemed confidential by the shareholders. No declarations from shareholders have been submitted.<br>• Simply because the email was designated as confidential by Tesla under the protective order does not support its continued |

| | | | | |
|---|---|---|---|---|
| | | | relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | sealing *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this email. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investors in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third |

| | | | | |
|---|---|---|---|---|
| | | | | parties." None of those are at issue here. |
| Exhibit 155 | 351-29; 352-51 | Page 1, paragraph 3 | This excerpt describes very specific third party confidential business information, conveyed to Tesla with the expectation of privacy. In particular, it reveals the third party's interest in the Take Private Bid at that time, the specific reasons why, and what potential road blocks might prevent the party from participating. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | • The excerpt reflects feedback received by Tesla investor relations regarding the going private.<br>• There is nothing indicating that shareholder feedback to Tesla regarding the going private transaction was deemed confidential by the shareholders. No declarations from shareholders have been submitted.<br>• Simply because the email was designated as confidential by Tesla under the protective order does not support its continued sealing *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this email. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investors in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. |

| | | | | |
|---|---|---|---|---|
| | | | | *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here. |
| Exhibit 155 | 351-29; 352-51 | Page 2, paragraph 1 | This excerpt describes specific third party confidential business information, conveyed to Tesla with the expectation of privacy.  In particular, it reveals the third party's disinterest in the Take Private Bid at that time, and the road blocks preventing the party from participating.  Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. | • The excerpt reflects feedback received by Tesla investor relations regarding the going private.<br>• There is nothing indicating that shareholder feedback to Tesla regarding the going private transaction was deemed confidential by the shareholders. No declarations from shareholders have been submitted.<br>• Simply because the email was designated as confidential by Tesla under the protective order does not support its continued sealing *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this email. It does not contain trade secrets or personal |

| | | | | |
|---|---|---|---|---|
| | | | No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investors in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here. |
| Exhibit 155 | 351-29; 352-51 | Page 2, paragraph 2 | This excerpt describes specific third party confidential business | • The excerpt reflects feedback received by Tesla |

| | | | | |
|---|---|---|---|---|
| | | | information, conveyed to Tesla with the expectation of privacy. In particular, it reveals the third party's disinterest in the Take Private Bid at that time, and the road blocks preventing the party from participating. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | investor relations regarding the going private.<br>• There is nothing indicating that shareholder feedback to Tesla regarding the going private transaction was deemed confidential by the shareholders. No declarations from shareholders have been submitted.<br>• Simply because the email was designated as confidential by Tesla under the protective order does not support its continued sealing *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this email. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investors in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' |

| | | | | |
|---|---|---|---|---|
| | | | | reactions to Musk's tweets on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here. |
| Exhibit 157 | 351-30; 352-52 | Viecha email at 2:43 pm. | This excerpt describes specific third party confidential business information, conveyed to Tesla with the expectation of privacy. In particular, it reveals the third party's internal business decision to not speak with Mr. Musk, and why it might not be able to participate in the Take Private Bid. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | • The excerpt reflects feedback received by Tesla investor relations regarding the going private.<br>• There is nothing indicating that shareholder feedback to Tesla regarding the going private transaction was deemed confidential by the shareholders. No declarations from shareholders have been submitted.<br>• Simply because the email was designated as confidential by Tesla under the protective order does not support its continued sealing *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this email. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investors in |

| | | | | |
|---|---|---|---|---|
| | | | | 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here. |
| Exhibit 157 | 351-30; 352-52 | Viecha email at 10:09 pm. | This excerpt describes specific third party confidential business information, conveyed to Tesla with the expectation of privacy.  In particular, it reveals the third party's interest in the Take Private | • There is nothing indicating that shareholder feedback to Tesla regarding the going private transaction was deemed confidential by the shareholders. No declarations from |

| | | | | |
|---|---|---|---|---|
| | | | Bid at that time, the specific reasons why, and what potential road blocks might prevent the party from participating. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | shareholders have been submitted.<br>• Simply because the email was designated as confidential by Tesla under the protective order does not support its continued sealing *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this email. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investors in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents |

| | | | | |
|---|---|---|---|---|
| | | | | because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here. |
| Exhibit 158 | 351-31; 352-53 | Chamberlayne email at 00:43. | This email describes specific third party confidential business information, conveyed to Tesla with the expectation of privacy. In particular, it reflects very specific confidential business information regarding the third party's own investors' sentiments regarding the investment in Tesla, and the third party's ability to participate in the Take Private Bid.  Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20).  *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | • There is nothing indicating that shareholder feedback to Tesla regarding the going private transaction and Mr. Musk's use of Twitter was deemed confidential by the shareholder. No declaration from the shareholder has been submitted.<br>• No sentiments from specifically identified investors are disclosed; this email provides the opinion of a shareholder representative regarding Mr. Musk's use of Twitter.<br>• Simply because the email was designated as confidential by Tesla under the protective order does not support its continued sealing *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this email. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investors in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See* |

| | | | | |
|---|---|---|---|---|
| | | | | *Kamakana*, 447 F. 3d at 1178.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here.<br>. |
| Exhibit 165 | 351-32; 352-54 | As highlighted | Private contact information of third-party private individuals. This category of confidential information is uncontested. *See Snapkeys, Ltd.*, 2021 WL 1951250, at *3 (compelling reasons exist to seal personally identifiable information). | Uncontested. |
| Excerpts from the Deposition | 352-6 | 48:13-49:12 | This deposition excerpt discusses an email regarding internal third | • This excerpt discusses Exhibit 44. |

| | | | | |
|---|---|---|---|---|
| of Joseph Fath | | | party shareholder reaction to Take Private Bid and ability to participate therein.  Email was designated by third party as "Confidential" under the protective order in this case. *See Pinnacle Ventures*, 2018 WL 11392741, at *1. | • The testimony from T. Rowe was not designated as confidential at the deposition of Joseph Fath.<br>• Simply because the underlying exhibit was designated as confidential by Tesla under the protective order does not support their continued sealing. *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this excerpt. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investor in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing.  *See Kamakana*, 447 F. 3d at 1178.<br>• *Pinnacle Ventures LLC* is inapposite here as the excerpt does not contain confidential business and financial information, or information that would cause competitive harm to T. Rowe Price. |
| Excerpts from the Deposition of Joseph Fath | 352-6 | 54:9-13 | This deposition excerpt discusses a third party shareholder's ability to participate in the Take Private Bid. *See Pinnacle Ventures*, 2018 WL 11392741, at *1. | • The testimony from T. Rowe was not designated as confidential at the deposition of Joseph Fath.<br>• There is nothing confidential about this excerpt. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in |

| | | | | |
|---|---|---|---|---|
| | | | | 2018. It has no relevance to Tesla or the investor in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• *Pinnacle Ventures LLC* is inapposite here as the excerpt does not contain confidential business and financial information, or information that would cause competitive harm to T. Rowe Price. |
| Excerpts from the Deposition of Joseph Fath | 371-4 | 32:9-33:8 | This deposition excerpt discusses an email regarding internal third party shareholder reaction to Take Private Bid. Email was designated by third party as "Confidential" under the protective order in this case. *See Pinnacle Ventures*, 2018 WL 11392741, at *1. | • This excerpt discusses Exhibit 41 which simply contains a communication from Joseph Fath, a fund manager at T. Rowe Price, containing his reaction to Elon Musk's August 7, 2018 tweets. It contains no references to T. Rowe's internal policies or its ability to participate in a potential go-private for Tesla.<br>• The testimony from T. Rowe was not designated as confidential at the deposition of Joseph Fath.<br>• Simply because the underlying exhibit was designated as confidential by Tesla under the protective order does not support their continued sealing. *See Folt*, 331 F. 3d at 1136.<br>• There is nothing confidential about this excerpt. It does not contain trade secrets or personal information and strictly |

| | | | | |
|---|---|---|---|---|
| | | | | relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investor in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• *Pinnacle Ventures LLC* is inapposite here as the excerpt does not contain confidential business and financial information, or information that would cause competitive harm to T. Rowe price. |
| Excerpts from the Deposition of Nii Owuraka Koney | 351-45; 352-8 | 113:13-114:5 | This deposition excerpt recounts third party confidential business information, conveyed to Tesla with the expectation of privacy. In particular, it reveals the third party's interest in the Take Private Bid, the specific reasons why, and what potential road blocks would prevent the party from participating. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | • This excerpt discusses a shareholder representative's estimation of funds that would not be able to hold shares in a private Tesla.<br>• There is nothing confidential about this excerpt and the underlying document. No specific, proprietary fund information is disclosed. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investor in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• Simply because the underlying document was initially designated |

| | | | | |
|---|---|---|---|---|
| | | | | confidential under the protective order does not support its continued sealing. *See Folt*, 331 F. 3d at 1136.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto* 605 F.3d at 678-79.<br>• The public has a clear interest in understanding Tesla shareholders' reactions to Musk's tweets on August 7 and what restrictions were conveyed to Tesla.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here. |
| Excerpts from the Deposition of Martin Viecha | 351-47; 352-11 | 149:1-24 | This deposition excerpt describes confidential feedback from a third party shareholder related to the Take Private Bid, conveyed to Tesla with the expectation of privacy. In particular, it reveals the third party's interest in participating in the Bid. | • This excerpt simply reflects Mr. Viecha's understanding of whether a particular shareholder was willing to participate in a going private.<br>• There is no factual support that the shareholder deemed his feedback confidential as Defendants |

| | | | | |
|---|---|---|---|---|
| | | | Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | posit. No declarations have been submitted from shareholders in support of continued sealing.<br>• There is nothing confidential about this excerpt. It does not contain trade secrets or personal information and strictly relate to a potential transaction occurring in 2018. It has no relevance to Tesla or the investor in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• The designation of the transcript as confidential pursuant to the operative protective order does not automatically mean it should be sealed. *See Folt*, 331 F. 3d at 1136.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here.<br>. |
| Excerpts from the Deposition of Martin Viecha | 351-47; 352-11 | 176:1-8 | This deposition excerpt recounts third party confidential business information, conveyed to Tesla with the expectation of privacy.  In particular, it | • This excerpt simply reflects Mr. Viecha's understanding of investor feedback on the $420 price.<br>• There is no factual support that the shareholder |

| | | | | |
|---|---|---|---|---|
| | | | reveals reasons why a third party did not want to participate in the Take Private Bid. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | deemed his feedback confidential as Defendants posit. No declarations have been submitted from shareholders in support of continued sealing.<br>• There is nothing confidential about this excerpt. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investor in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• The designation of the transcript as confidential pursuant to the operative protective order does not automatically mean it should be sealed. *See Folt*, 331 F. 3d at 1136.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here.<br>• The public has a strong interest in understanding feedback received from Tesla shareholders |

| | | | | |
|---|---|---|---|---|
| | | | | regarding the proposed price of the going private. |
| Excerpts from the Deposition of Martin Viecha | 351-47; 352-11 | 192:3-9; 193:1-14 | These deposition excerpts recount third party confidential business information, conveyed to Tesla with the expectation of privacy. In particular, it reveals information regarding the third party's ability to participate in the Take Private Bid and to what extent. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | • This excerpt simply reflects Mr. Viecha's understanding of whether a particular shareholder was willing to participate in a going private.<br>• There is no factual support that the shareholder deemed his feedback confidential as Defendants posit. No declaration has been submitted from the shareholder in support of continued sealing.<br>• There is nothing confidential about this excerpt. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investor in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• The designation of the transcript as confidential pursuant to the operative protective order does not automatically mean it should be sealed. *See Folt*, 331 F. 3d at 1136.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents because they contained "proprietary business records that detail sensitive financial terms, proprietary |

| | | | | |
|---|---|---|---|---|
| | | | | business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here. |
| Excerpts from the Deposition of Martin Viecha | 351-47; 352-11 | 196:1-197:2; 197:19-198:4; 198:17-200:2; 200:11-201:1; 201:6-10 | These deposition excerpts recount third party confidential business information, conveyed to Tesla with the expectation of privacy. In particular, it reflects very specific confidential business information regarding the third party's own investors' sentiments regarding the investment in Tesla, and the third party's ability to participate in the Take Private Bid. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | • This excerpt simply reflects Mr. Viecha's understanding of whether a particular shareholder was willing to participate in a going private.<br>• There is no factual support that the shareholder deemed his feedback confidential as Defendants posit. No declaration has been submitted from the shareholder in support of continued sealing.<br>• There is nothing confidential about this excerpt. It does not contain trade secrets or personal information and strictly relates to a potential transaction occurring in 2018. It has no relevance to Tesla or the investor in 2022. Defendants have failed to meet their burden of demonstrating a compelling reason for continued sealing. *See Kamakana*, 447 F. 3d at 1178.<br>• The designation of the transcript as confidential pursuant to the operative protective order does not automatically mean it should be sealed. *See Folt*, 331 F. 3d at 1136.<br>• Defendants' reliance on *Aya Healthcare Servs.* is misplaced. The Court found compelling reasons to seal these documents |

| | | | | |
|---|---|---|---|---|
| | | | | because they contained "proprietary business records that detail sensitive financial terms, proprietary business strategies, and confidential negotiations and agreements with third parties." None of those are at issue here. |
| Excerpts from the Deposition of Deepak Ahuja | 365-1 (Ex. E) | 243:9-20 | This deposition excerpt recounts third party confidential business information, conveyed to Tesla with the expectation of privacy. In particular, it reflects very specific confidential business information regarding the terms on which the third party would participate in the Take Private Bid. Revelation of such information would "hinder [Tesla's] ability to obtain financing, to court new investors, or to preserve its relationships with existing investors," by chilling future investors' willingness to speak freely and candidly with Defendants for fear of their communications being released publicly. (Dkt. No. 387 at 20). *See also Aya Healthcare Servs.*, 2020 WL 1911502, at *5. | • The excerpt does not reflect specific terms, simply a purported investment interest as relayed by a witness unrelated to the third party.<br>• A declaration from this potential investor in support of continued sealing is noticeably absent here.<br>• This third party's interest in the Tesla going private was widely speculated and publicly discussed. The excerpt has no bearing on current investments.<br>• Defendants' concerns regarding chilling future investors' willingness to speak freely and candidly are hypothetical reasoning and conjecture and do not meet the compelling reason standard for the continued sealing of this document. *See Pinto*, 605 F.3d at 678-79.<br>• For the reasons stated above, Defendants' reliance on *Aya Healthcare Servs.* is misplaced. |

DATED: May 23, 2022

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Alex Spiro*
Alex Spiro *(appearing pro hac vice)*
*Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, And Linda Johnson Rice*

DATED: May 23, 2022

Respectfully submitted,

LEVY & KORSINSKY, LLP

By: */s/ Nicholas I. Porritt*
Nicholas I. Porritt (*appearing pro hac vice*)
*Attorneys for Lead Plaintiff Glen Littleton and Lead Counsel for the Class*

****

I, Kyle Batter, am the ECF user whose ID and password are being used to file the above motion. In compliance with Local Rule 5-1(h)(3), I hereby attest that Alex Spiro has concurred in the filing of the above motion.

DATED: May 23, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Kyle Batter*
Kyle Batter