EXCERPTS FROM THE DEPOSITION OF
EGON DURBAN
TAKEN SEPTEMBER 7, 2021

1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE NORTHERN DISTRICT OF CALIFORNIA

3             SAN FRANCISCO DIVISION

4

5   IN RE TESLA, INC.                )
                                     )
6   SECURITIES LITIGATION            ) Case No. 3:18-cv-04865-EMC
                                     ) Volume I
7   _____    ) Pages 1 to 165
                                     )
8

9

10

11

12

13

14

15      REMOTE VIDEOCONFERENCED VIDEOTAPED DEPOSITION OF

16                  EGON PIERRE-DURBAN

17          Remotely in Los Angeles, California

18             Tuesday, September 7, 2021

19

20

21

22

23

24   Reported by:
     ELIZABETH BORRELLI, CSR No. 7844, CCRR, CLR
25   JOB NO. 199146

 1

 2

 3

 4

 5

 6

 7

 8        Remote Videoconferenced Videotaped

 9   Deposition of EGON PIERRE-DURBAN, Volume I,

10   taken on behalf of the Plaintiffs, remotely in

11   Los Angeles, California, commencing at

12   10:31 a.m., Tuesday, September 7, 2021, before

13   Elizabeth Borrelli, a Certified Shorthand

14   Reporter in the State of California, License

15   No. 7844.

16                    *  *  *

17

18

19

20

21

22

23

24

25

```
 1   APPEARANCES OF COUNSEL:

 2

 3   For the Plaintiffs:

 4           LEVI & KORSINSKY
             BY:  NICHOLAS PORRITT, ESQ.
 5                ELIZABETH TRIPODI, ESQ.
                  KATHY AMES VALDIVIESO, ESQ.
 6           1101 30th Street NW
             Washington, DC 20007
 7

 8

 9   For Tesla:

10           COOLEY
             BY:  SARAH LIGHTDALE, ESQ.
11           55 Hudson Yards
             New York, New York 10001
12

13

14   For the Witness:

15           DEBEVOISE & PLIMPTON
             BY:  JULIE RIEWE, ESQ.
16                BRANDON FETZER, ESQ.
             801 Pennsylvania Avenue N.W.
17           Washington, DC 20004

18

19

20

21       Also Present:

22          KAREN KING, appearing remotely

23          SHARON BINGER, appearing remotely

24

25
```

1      LOS ANGELES, CALIFORNIA; TUESDAY, SEPTEMBER 7, 2021

2                          10:31 A.M.

3

4           THE VIDEOGRAPHER:  Good morning.  My name

5    is Chris Jordan and I'm the legal videographer in

6    association with TSG Reporting.  Due to the COVID-19

7    and following the practice of social distancing, I

8    will not be in the same room with the witness;

9    instead, I will record this videotaped deposition

10   remotely.

11          The reporter, Ms. Borrelli, also will not

12   be in the same room and will swear the witness

13   remotely.

14          Do all parties stipulate to the validity

15   of this video recording and remote swearing and that

16   it will be admissible in the courtroom as if it had

17   been taken following Rule 30 of the Federal Rules of

18   Civil Procedures and the state's rules where this

19   case is pending?

20          MR. PORRITT:  Yes.

21          MS. RIEWE:  Yes.

22          MS. LIGHTDALE:  Yes.

23          MS. KING:  Yes.

24          THE VIDEOGRAPHER:  Thank you, Counsel.

25   Thank you.

1          This marks the beginning of the videotaped

2   deposition of Egon Durban being taken In Re: Tesla,

3   Inc., Securities Litigation, being held in the

4   United States District Court for the Northern

5   District of California, San Francisco Division.

6          The deposition is being taken on

7   September 7, 2021, at approximately 10:32 a.m.

8   Again, my name is Chris Jordan with TSG Reporting.

9   The court reporter is Liz Borrelli with TSG

10  Reporting.

11         Will counsel please state your name for

12  the record.

13         MR. PORRITT:  Nicholas Porritt on behalf

14  of Plaintiff Glen Littleton and the class.  With me

15  is Elizabeth Tripodi and Kathy Ames for the firm

16  Levi & Korsinsky LLP.

17         MS. RIEWE:  And Julie Riewe.  With me is

18  Brandon Fetzer with Debevoise & Plimpton, counsel

19  for the deponent, Mr. Egon Durban.

20         MS. LIGHTDALE:  Sarah Lightdale from

21  Cooley on behalf of the defendants.

22         And I have two preliminary matters to

23  cover as we have covered in other depositions in

24  this case.  The first is to confirm that as with --

25  again, as with other depositions, we will reserve

1   purely evidentiary objections until a later time and

2   only offer form objections.  And the second is to go

3   ahead and put this transcript and designate it as

4   confidential under the protective order.

5           MR. PORRITT:  And once again, noting your

6   statement, reserving rights, obviously, on that --

7   on the designation.

8           THE VIDEOGRAPHER:  Has all counsel stated

9   their name and appearance?

10          MS. KING:  This is Karen King, counsel for

11  Silver Lake, the defendant's [sic] employer.

12          MS. BINGER:  And Sharon Binger as well for

13  Silver Lake.

14          THE VIDEOGRAPHER:  Thank you.

15          Will the reporter please swear in the

16  witness.

17                    EGON PIERRE-DURBAN,

18              having been duly administered

19              an oath in accordance with CCP 2094,

20          was examined and testified as follows:

21                    EXAMINATION

22  BY MR. PORRITT:

23      Q.   Good morning, Mr. Durban.  As I stated

24  before, my name is Nicholas Porritt.  I'm one of the

25  attorneys for the plaintiff in this matter.

1          Do you recall giving that testimony?

2     A.   Yes.

3     Q.   Have you reviewed the transcript of that

4     testimony?

5     A.   No.

6     Q.   Well, then, if I can refer you to -- it's

7     going to be page 82 of Exhibit 176.

8          And if you could also -- this testimony

9     was also in connection with the handwritten notes we

10    previously marked as Exhibit 175, which is tab 4 in

11    your binder.

12         So do you have that -- you can see that

13    now on the screen, page 82 of your testimony?

14    A.   Yes.

15    Q.   Okay.  And you have your notes, tab 4 in

16    the binder in front of you?

17    A.   Yes.

18    Q.   Okay.  The notes in the top right-hand

19    write Saudis and UAE Qatar.  Or I say Qatar.  I

20    don't -- do you see that there?

21    A.   Yes.

22    Q.   And you -- you see you testified in the

23    middle that starts as the line 15 here on page 82,

24    referring to the same notes, you mentioned Saudi

25    Arabia being interested, United Emirates/Qatar.  (As

 1   read) "I can't remember if I wrote that down or --

 2   or -- I can't remember if I said that or if he had

 3   spoke to them.  I just can't remember."

 4            Do you see that?

 5       A.   Yes.

 6       Q.   Okay.  Sitting here today, do you have any

 7   additional recollection about whether Mr. Musk, in

 8   this conversation on August 6, 2018, mentioned the

 9   UAE or Qatar?

10       A.   No.

11       Q.   Okay.  If I could refer you to page 87 of

12   your testimony, Exhibit 176, you'll see there in the

13   middle starting at line 10, and this also refers to

14   your notes, Exhibit 175, there's a note saying

15   "shareholder account below 300."

16            Do you see those notes?

17            MS. RIEWE:  Objection.  I think it says

18   "amount."

19            MR. PORRITT:  Oh, "amount," okay.  Sorry.

20   I didn't mean to misspeak.

21   BY MR. PORRITT:

22       Q.   Sorry, yes, shareholder amount below 300.

23   Do you see that, Mr. Musk -- Mr. Durban?

24       A.   Yes.

25       Q.   Sorry.

```
 1              (Whereupon Exhibit 178 was marked for

 2              identification.)

 3  BY MR. PORRITT:

 4      Q.   So if you could just take a chance to read

 5  Exhibit 178, Mr. Durban.  I have a question

 6  regarding the first paragraph, but please read --

 7      A.   Yep, I've read the first paragraph.

 8      Q.   Okay.  Here in this -- so would you have

 9  reviewed a -- this press release before it was

10  issued by Silver Lake?

11      A.   Yes.

12      Q.   Okay.  And in this press release Silver

13  Lake says, "The firm secured limited partner capital

14  commitments of 14.5 billion."

15           Do you see that?

16      A.   Yes.

17      Q.   Okay.  So in this press release, Silver

18  Lake uses the word "secured" talking about capital

19  commitments and funding, correct?

20      A.   Yes.

21      Q.   Okay.  How -- what was the status of these

22  capital commitments described here in this press

23  release as of April 18, 2017?

24      A.   Contractual.

25      Q.   Okay.  So you had binding legal contracts
```

1   committing that capital to Silver Lake?

2      A.   Yes.

3           MS. RIEWE:   Objection to form.

4           THE WITNESS:   Yes.

5   BY MR. PORRITT:

6      Q.   Okay.   Was that the status that the

7   potential funding for a going private transaction of

8   Tesla had on August 7, 2018?

9           MS. RIEWE:   Objection to form.

10          MS. LIGHTDALE:   Objection to form.

11          THE WITNESS:   No.

12          MR. PORRITT:   Why don't we bring up...

13  BY MR. PORRITT:

14     Q.   As of August 7, 2018, you had not spoken

15  to any potential investors in the going private

16  transaction; is that correct?

17     A.   Sorry, could you repeat the question.

18     Q.   Sure.   As of August 7, 2018, you had not

19  spoken to any potential investors in a going private

20  transaction with Tesla; isn't that correct?

21     A.   No.

22     Q.   No, you have not spoken to anyone?

23     A.   No, had not spoken to any.

24     Q.   Okay.   At that time were you aware that

25  Mr. Musk had made an any form of proposal to the

1   page 17, I think just following on to that text we

2   were just discussing.  And Mike Bingle sends you a

3   text saying, "Any life to that one?"

4           Do you see that?

5   A.   I do.

6   Q.   Is that referring to this potential Tesla

7   transaction that you were looking at at the time?

8   A.   I don't recall.

9   Q.   A little bit further down on page 17 you

10  wrote to Mr. Bingle, Mr. Hao, and Mr. Mondre, "My

11  gut is he has and/or can raise the money (maybe

12  easily) after reading everything and preparing."

13          Do you see that?

14  A.   I do.

15  Q.   Okay.  Do you recall what your basis for

16  that statement was?

17  A.   I do not.

18  Q.   Okay.  Was this sent before your meeting

19  with Mr. -- Mr. Musk?

20  A.   I don't recall, actually.

21  Q.   So do you recall meeting with Mr. Musk on

22  August 10, 2018, at his home?

23  A.   I do.

24  Q.   Okay.  Did you provide Mr. Musk with any

25  material at that meeting?

1        A.    I believe we made a presentation, or

2    prepared a presentation.

3        Q.    Okay.

4            MR. PORRITT:  All right.  Elizabeth, why

5    don't we bring over the August 10, 2018, discussion

6    materials, Bates-stamped 1 through 35.  I'll read

7    into the record.  This will be Exhibit 179.

8            (Whereupon Exhibit 179 was marked for

9            identification.)

10            MS. TRIPODI:  Sure.  And Mr. Durban,

11    that's tab 11 in your binder.

12            THE WITNESS:  Thank you.  I'm on it.

13            MR. PORRITT:  All right.  So I've placed

14    before the witness a document marked as Exhibit 179.

15    It is a presentation dated August 10, 2018,

16    Bates-stamped SL_3P00000001 through 35.

17            I'll tell the witness I only have

18    questions on pages 3 and 29 and 30 of the

19    presentation but he should familiarize himself with

20    it to the extent he wants to.

21            THE WITNESS:  Thank you, but you may

22    proceed.

23    BY MR. PORRITT:

24        Q.    Okay.  Oh, actually, and 16.  I apologize.

25            Is this the presentation you made to

1    Mr. Musk on August 10, 2018?

2             MS. RIEWE:  Objection --

3             THE WITNESS:  Yes.

4             MS. RIEWE:  Objection to form.

5             THE WITNESS:  Yes, I believe so.

6    BY MR. PORRITT:

7        Q.   Okay.  Did you physically hand Mr. Musk a

8    copy of this?

9        A.   I don't -- I don't recall if -- if he

10   retained a copy, but I'm sure we went through a copy

11   of this.

12       Q.   Okay.  So if I can refer you to page 3 of

13   Exhibit 179, it's a slide titled, "Benefits of going

14   private."

15       A.   Yes.

16       Q.   All right.  The second bullet point there

17   is, "Eliminate negative sentiment and disinformation

18   from short sellers; impacts customer and employees."

19            Do you see that?

20       A.   Yes.

21       Q.   Okay.  Was that -- why was that identified

22   as a benefit of going private for Tesla?

23       A.   If I recall correctly, there was a fair

24   amount of short selling interest in the company and

25   it created negative sentiment over the company.

1        Q.   All right.  Is that something that

2    Mr. Musk told you?

3        A.   I don't recall whether it's him or whether

4    it was something that we had sort of read and

5    processed in the press.

6        Q.   Do you know, did Silver Lake do any work

7    to analyze the extent of the short interest in -- or

8    short position in Tesla in August 2018?

9        A.   I don't recall.

10            THE VIDEOGRAPHER:  I'm sorry, Mr. Durban.

11   Can I have you move a little to your left.  I

12   believe you're kind of out of the scope -- oh, thank

13   you.

14            THE WITNESS:  There we go.

15   BY MR. PORRITT:

16       Q.   At this time was Silver Lake a

17   shareholder?  Did it own any shares in Tesla?

18       A.   I don't think so.  I don't know.

19       Q.   Okay.

20       A.   Not -- not in the -- not in any funds that

21   I was responsible -- part of the partnership

22   responsible for, so I'll...

23       Q.   Understood.  Everything is to the limit of

24   your knowledge.  I understand.

25       A.   Yeah.

1      Q.   Right.  In the seventh bullet point,

2   subbullet there, it says, "Opportunity for SWF

3   preferred equity and more flexible funding of new

4   capital projects."

5           Do you see that?

6      A.   Yes.

7      Q.   What is SWF referring to?

8      A.   Sovereign wealth fund.

9      Q.   Oh, sovereign wealth fund, okay.

10          If I can refer you to the next page, so

11   page 4.  Do you -- do you have that in front of you?

12   It's a slide titled, "Illustrative Transaction

13   Setup."

14     A.   Yes.

15     Q.   Okay.  At this point was there any

16   particular -- a particular structure for the

17   transaction that was -- you were considering?

18     A.   No.

19     Q.   Okay.  On this slide there's a reference

20   to -- on the -- on the right-hand column in the --

21   in the two boxes, "Merlin's equity and vested

22   unexercised options convert into common and entire

23   stake roles into NewCo."

24          Do you see that?

25     A.   Yes.

1      Q.   All right.  Is Merlin there a reference to

2   Elon Musk?

3      A.   I believe so.

4      Q.   Okay.  At this time, by August 10th, had

5   you spoken to any potential investors in a going

6   private transaction with -- involving Tesla?

7      A.   I don't recall but I don't believe so.

8      Q.   Okay.  So in -- when you're discussing

9   these two scenarios here on page 4 of Exhibit 179,

10   this is -- this -- at this point, this is just

11   speculative from Silver Lake?

12          MS. RIEWE:  Objection to form.

13          THE WITNESS:  Yes.

14   BY MR. PORRITT:

15      Q.   If I can refer you to page 16 of

16   Exhibit 179, a slide titled "Alignment with

17   Sovereign Fund Investment."

18          Do you see that?

19   A.   Yes.

20      Q.   Okay.  I apologize.  You know, on the

21   first one, I just skipped a page.  Sorry, page -- if

22   I can refer you to page 10.

23          Oh, you know what?  Sorry.  I apologize.

24   Let's go to 16.  (Mumbling.)

25          Exhibit -- one column there is titled

1   "Alignment with Sovereign Fund Investment."  Do you

2   see that?

3        A.   Yes.

4        Q.   And then the second bullet is,

5   "Oftentimes, these investments are not just

6   'passive,' but also include the expectation of job

7   creation in the local economies."

8        A.   Yes.

9        Q.   Okay.  First of all, was this something

10  that you discussed with Elon Musk at the August 10th

11  meeting?

12       A.   I don't recall.

13       Q.   Okay.  What was your -- what is the basis

14  for this -- for the points contained on this slide

15  regarding investments by sovereign wealth funds?

16       A.   Can you clarify the question, please.

17       Q.   Well, I guess, let me ask a different

18  question, then.  Maybe we're -- had Silver Lake had

19  any investments which also involved investments from

20  sovereign wealth funds?

21            MS. RIEWE:  Objection to form.

22            THE WITNESS:  Yes, we've invested with

23  sovereign wealth funds previously.

24  BY MR. PORRITT:

25       Q.   And you had -- that was true in

Page 55

1   August 2018?

2        A.   Correct.

3        Q.   Okay.  So was the basis for this slide

4   based on Silver Lake's experience investing with

5   sovereign wealth funds?

6             MS. RIEWE:  Objection to form.

7             THE WITNESS:  Yes.

8   BY MR. PORRITT:

9        Q.   Okay.  If I can refer you to page --

10   sorry, page 29 --

11        A.   Yes.

12        Q.   -- of Exhibit 179, the Illustrative

13   Public-to-Private Process Timeline.  Do you see

14   that?

15        A.   Yes.

16        Q.   Once again, this was -- was this prepared

17   based on Silver Lake's experience in prior

18   public-to-private transactions?

19             MS. RIEWE:  Objection to form.

20             THE WITNESS:  Yes.

21   BY MR. PORRITT:

22        Q.   Okay.  The point one there -- the first

23   point is, "Submit full proposal to board following

24   arrangement of committed financing."  Do you see

25   that?

Page 56

```
 1        A.   Yes.

 2        Q.   Okay.  Was it your understanding that as

 3   of August 10th, no formal proposal had yet been

 4   submitted to the Tesla board?

 5             MS. RIEWE:  Objection to form.

 6             THE WITNESS:  Yes.

 7   BY MR. PORRITT:

 8        Q.   And then at point three there is, "Sign

 9   merger agreement/announce deal."

10             Do you see that?

11        A.   Yes.

12        Q.   Okay.  And this is consistent with your

13   experience that public-to-private transactions are

14   usually announced after a definitive agreement has

15   been signed?

16             MS. RIEWE:  Objection to form.

17             THE WITNESS:  Sorry, can you please repeat

18   the question.

19   BY MR. PORRITT:

20        Q.   Sure.  Is that your -- is that consistent

21   with your experience regarding the timing of the

22   announcement of a public-to-private transaction?

23        A.   Yes.

24             MS. RIEWE:  Objection to form.

25             MR. PORRITT:  Okay.
```

Page 57

```
 1              THE WITNESS:  Sorry, Julie.
 2    BY MR. PORRITT:
 3         Q.   Okay.  On this timeline here on page 29 of
 4    Exhibit 179, on August 10, 2018, where were you on
 5    this timeline?
 6              MS. RIEWE:  Objection to form.  Lacks
 7    foundation.
 8    BY MR. PORRITT:
 9         Q.   All right.  Strike -- yeah, strike that.
10              Where was the proposed going private
11    transaction with Tesla on this proposed timeline on
12    August 10, 2018?
13         A.   As it related to Silver Lake, it -- we
14    were -- we would have been at the initial stages.
15         Q.   So you hadn't yet reached stage one on
16    this timeline?
17         A.   No.
18         Q.   Okay.  No, you had not reached stage one?
19         A.   No, as it relates to Silver Lake's
20    participation, we had not reached stage one.
21         Q.   Okay.
22              MR. PORRITT:  All right.  Why don't we
23    bring over --
24              MS. RIEWE:  And Nick --
25              MR. PORRITT:  Again, this is a --
```

1   Exhibit 195?

2            MS. TRIPODI:  And that's tab 34.  It's

3   Exhibit 194.

4            MR. PORRITT:  194.  Yeah.  Okay.

5            THE WITNESS:  I'm there.

6            (Whereupon Exhibit 194 was marked for

7            identification.)

8            MR. PORRITT:  So I've placed before the

9   witness a document marked Exhibit 195 [sic]

10  Bates-stamped SL_3P00000306.

11           THE WITNESS:  Yep.

12  BY MR. PORRITT:

13       Q.   Do you recall this e-mail, Mr. Durban?

14       A.   I do not.

15       Q.   Okay.  The second paragraph there or

16  second sentence you write, "While being sensitive to

17  Section 203."  Do you see that?

18       A.   Yes.

19       Q.   Do you know what you're referring to

20  there?

21           MS. RIEWE:  Objection to form.

22           THE WITNESS:  I actually do not.

23  BY MR. PORRITT:

24       Q.   Okay.  Once again, then there was a list

25  of investors, potential interested existing

1   investors in the middle of Exhibit 195.  You see

2   that?

3          A.   I do.

4          Q.   Okay.  Do you recall if this was the list

5   of potential or -- potentially interested or

6   existing investors in Tesla that you were to reach

7   out after August 16, 2018?

8              MS. RIEWE:  Objection to form.  Objection

9   to form.

10             THE WITNESS:  Yes.

11  BY MR. PORRITT:

12         Q.   Okay.  Do you recall reaching out to any

13  potential interest -- or existing investors in Tesla

14  that -- who aren't listed here?

15             MS. RIEWE:  Objection to form.  And this

16  was covered extensively in the SEC testimony.

17             THE WITNESS:  No, I do not recall any

18  other additional initial investors that were called.

19  BY MR. PORRITT:

20         Q.   Below that it says, "Goldman and Silver

21  Lake will make the calls.  Not Elon."

22             Do you see that?

23  A.   Yes.

24         Q.   Do you know why Goldman and Silver Lake

25  were tasked with making the calls rather than Elon

1   Musk?

2           MS. RIEWE:  Objection to form.

3           THE WITNESS:  I do not recall.

4   BY MR. PORRITT:

5       Q.   In this stage in a public-to-private

6   transaction, is it typical for financial advisers to

7   reach out to potentially interested or existing

8   investors rather than the principal --

9           MS. RIEWE:  Objection to form.

10  BY MR. PORRITT:

11      Q.   -- in your experience?

12      A.   Yeah, sure.

13      Q.   And then finally there, you say, "However,

14  speed is our collective highest priority and this

15  will help accelerate development of a fully financed

16  proposal."

17          Do you see that?

18      A.   Yes.

19      Q.   Okay.  Do you recall what the status of

20  the proposal was as of August 16, 2018?

21          MS. RIEWE:  Objection to form.

22          THE WITNESS:  I do not.

23          MR. PORRITT:  Elizabeth, if you could

24  bring over 320.

25          MS. TRIPODI:  And that's tab 37.

```
 1        A.   No.

 2        Q.   Do you recall that Morgan Stanley was

 3   added to the advisers assisting Elon Musk on this

 4   transaction?

 5        A.   I don't.

 6             MR. PORRITT:  All right.  Elizabeth, why

 7   don't you bring over 6169.  This will be

 8   Exhibit 201.

 9             MS. TRIPODI:  That's tab 47.

10             (Whereupon Exhibit 201 was marked for

11             identification.)

12             MR. PORRITT:  So the witness has before

13   him Exhibit 201.  It's a document Bates-stamped

14   TESLA_LITTLETON_00006169 through 6238.

15             THE WITNESS:  Yes, I'm in the document.

16   BY MR. PORRITT:

17        Q.   Okay.  Do you recognize this -- this

18   document?

19        A.   Yes.

20        Q.   All right.  What is it?

21        A.   It's a presentation I believe we prepared,

22   if I recall correctly, to share with the board.

23             (Reporter requests clarification.)

24             THE WITNESS:  The board of directors I

25   believe that's the case.
```

*In re Tesla, Inc. Securities Litigation*

**Errata Sheet and Declaration for the Deposition of Egon Pierre-Durban**
**Deposition Date:  September 7, 2021**

| Page No. | Line No. | Original Text | Change To | Reason |
|---|---|---|---|---|
| 11 | 11 | "defendant's [sic]" | "witness's" | Correction |
| 95 | 5 | "8:14" | "8/14" | Transcription Error |
| 113 | 11 | "He's reporter" | "He's a reporter" | Transcription Error |
| 118 | 19 | "pages my" | "pages of my" | Transcription Error |
| 127 | 22-25 | "A. Is there a tab? Well, that's -- that's what I'm --  what we're figuring out. Apparently, it may not be in there, so we'll have to figure a workaround." | "A. Is there a tab?<br><br>Q. Well, that's -- that's what I'm -- what we're figuring out. Apparently, it may not be in there, so we'll have to figure a workaround." | Transcription Error |
| 135 | 18 | "additional initial investors" | "additional investors" | Transcription Error |
| 138 | 22-23 | "If -- again, this is" | "If -- you know, this is" | Transcription Error |
| 139 | 2 | "the company" | "a company" | Transcription Error |
| 151 | 18 | "not beyond" | "not -- beyond" | Transcription Error |
| 158 | 20-21 | "which is the Minimar (phonetic) Partners, which" | "which is the -- me and my partners -- which" | Transcription Error |
| 158 | 21 | "(indiscernible)" | "of assets" | Transcription Error |
| 158 | 24 | "MS. RIEWE:" | "THE WITNESS:" | Transcription Error |

I, Egon Pierre-Durban, declare under penalty of perjury that I have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

Executed on the 11th day of October 2021.

 Egon Durban            (Printed Name)

(Signature)

Page 164

1   STATE OF CALIFORNIA        )
                               )    ss.
2   COUNTY OF LOS ANGELES      )

3

4            I, Elizabeth Borrelli, Certified Shorthand

5   Reporter, Certificate No. 7844, for the State of

6   California, hereby certify:

7            I am the deposition officer that

8   stenographically recorded the testimony in the

9   foregoing deposition;

10           Prior to being examined the deponent was

11  first duly sworn by me;

12           The foregoing transcript is a true record

13  of the testimony given;

14           Before completion of the deposition,

15  review of the transcript [X] was [ ] was not

16  requested.  If requested, any changes made by the

17  deponent (and provided to the reporter) during the

18  period allowed are appended hereto.

19

20  Dated: September 17th, 2021.

21

22

23  _____
    ELIZABETH BORRELLI, CSR 7844
24

25