**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
         amccall@zlk.com

*Attorneys for Plaintiff and Counsel for the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b)** |

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................1

II.    LEGAL STANDARD.........................................................................................2

III.   ARGUMENT ....................................................................................................3

      A.    The Court Did Not Apply Different "Materiality" Standards when Deciding
           Plaintiff's Motion for Partial Summary Judgment...................................................3

      B.    Defendants' Argument Regarding the Forum for Musk's Fraudulent Statements is
           Meritless.....................................................................................................6

           1.    Defendants do not present a controlling question of law.............................6

           2.    Defendants do not demonstrate any ground for a difference of opinion. ....7

           3.    Defendants cannot show that certification would materially advance the
               termination of litigation ...........................................................................13

IV.   CONCLUSION................................................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972) ........................................................................... 8

*Ahrenholz v. Bd. Trs. of Univ. of Ill.*,
    219 F.3d 674 (7th Cir. 2000) ............................................................. 6

*Aldapa v. Fowler Packing Co.*,
    2016 WL 8731316 (E.D. Cal. Aug. 26, 2016)................................... 6

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ........................................................................... 4

*Ashmore v. Ne. Petroleum Div. of Cargill, Inc.*,
    855 F.Supp. 438 (D.Me.1994) ........................................................ 15

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988) ..................................................................... 1, 5

*Brody v. Transitional Hosps. Corp.*,
    280 F.3d 997 (9th Cir. 2002) ............................................................. 7

*Burton v. Stevedoring Servs. of Am.*,
    196 F.3d 1070 (9th Cir. 1999) .......................................................... 7

*Casas v. Victoria's Secret Stores, LLC*,
    2015 WL 13446989 (C.D. Cal. Apr. 9, 2015) ................................. 14

*In re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1982) .................................................... 3, 13

*In re City of Memphis*,
    293 F. 3d 345 (6th Cir. 2002) ......................................................... 13

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) .......................................................... 10

*Coopers & Lybrand v. Livesay*,
    437 U.S. 463 (1978) ........................................................................... 3

*Couch v. Telescope Inc.*,
    611 F.3d 629 (9th Cir. 2010) .................................................. 2, 7, 13

*In re CV Therapeutics, Inc.*,
    2004 WL 1753251 (N.D. Cal. Aug. 5, 2004) ................................. 10

*In re CytRx Corp. Sec. Litig.*,
　　2015 WL 5031232 (C.D. Cal. July 13, 2015)..........................................................10

*FERC v. Vitol Inc.*,
　　2022 WL 583998 (E.D. Cal. Feb. 25, 2022) ...........................................................14

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
　　___ U.S. ___, 141 S. Ct. 1951 (2021) .......................................................................5

*Heaton v. Soc. Fin., Inc.*,
　　2016 WL 232433 (N.D. Cal. Jan. 20, 2016)..........................................................1, 6

*Henley v. Jacobs*,
　　2019 WL 8333448 (N.D. Cal. Oct. 25, 2019) ...........................................................3

*Herman & MacLean v. Huddleston*,
　　459 U.S. 375 (1983) ...................................................................................................8

*Hightower v. Schwarzenegger*,
　　2009 WL 3756342 (E.D. Cal. Nov. 6, 2009)...........................................................13

*Home Depot U.S.A., Inc. v. E.I. DuPont de Nemours & Co.*,
　　2019 WL 6171063 (N.D. Cal. Nov. 20, 2019) ..........................................................6

*Hunt v. Bloom Energy Corp.*,
　　2022 WL 1122835 (N.D. Cal. Apr. 14, 2022) .........................................................15

*Hunter v. Legacy Health*,
　　2021 WL 4238991 (D. Or. Apr. 13, 2021) ..............................................................15

*James v. Price Stern Sloan, Inc.*,
　　283 F.3d 1064 (9th Cir. 2002) ...................................................................................3

*Johnson v. Serenity Transportation, Inc.*,
　　2017 WL 3168491 (N.D. Cal. July 26, 2017) .......................................................6, 7

*K.S-A v. Hawaii Dep't of Educ.*,
　　2018 WL 3431922 (D. Haw. July 16, 2018) ..............................................................6

*Khoja v. Orexigen Therapeutics, Inc.*,
　　899 F.3d 988 (9th Cir. 2018) .....................................................................................7

*Lorenzo v. Sec. & Exch. Comm'n*,
　　139 S. Ct. 1094 (2019)................................................................................................9

*Matera v. Google Inc.*,
　　2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ..........................................................6

*Matsunoki Grp., Inc. v. Timberwork Or., Inc.*,
　　2011 WL 940218 (N.D. Cal. Feb. 18, 2011) .............................................................6

*McFarlin v. Conseco Servs., LLC,*
   381 F.3d 1251 (11th Cir. 2004) .................................................................. 6

*Miller v. Thane Int'l, Inc.,*
   615 F.3d 1095 (9th Cir. 2010) .................................................................... 5

*MP Nexlevel of California, Inc. v. Cvin, LLC,*
   2016 WL 5815895 (E.D. Cal. Oct. 5, 2016) ............................................. 6

*In re Nat'l Prescription Opiate Litig.,*
   2020 WL 2128462 (N.D. Ohio May 5, 2020) ........................................ 15

*Perrin v. United States,*
   444 U.S. 37 (1979) .................................................................................... 8

*Piazza v. Major League Baseball,*
   836 F.Supp. 269 (E.D.Penn.1993) .......................................................... 15

*In re QuantumScape Sec. Class Action Litig.,*
   2022 WL 137729 (N.D. Cal. Jan. 14, 2022) ........................................... 10

*Reese v. BP Exploration (Alaska) Inc.,*
   643 F.3d 681 (9th Cir. 2011) .................................................................... 5

*Roberts v. C.R. England, Inc.,*
   2018 WL 2386056 (D. Utah Apr. 24, 2018) .......................................... 15

*S.E.C. v. Franklin,*
   265 F. App'x 644 (9th Cir. 2008) ............................................................ 9

*S.E.C. v. James Alan Craig,*
   Case No. 3:15-cv-05076-CRB (N.D. Cal. May 20, 2019) (ECF No. 46) ........... 9

*S.E.C. v. Reyes,*
   491 F. Supp. 2d 906 (N.D. Cal. 2007) ..................................................... 4

*S.E.C. v. Steven M. Gallagher, a/k/a* "Alexander Delarge 655321,"
   Case No. 21-cv-8739-PKC (S.D.N.Y Oct. 26, 2021) .............................. 9

*SEC v. Zandford,*
   535 U.S. 813 (2002) .................................................................................. 8

*Sec. & Exch. Comm'n v. Husain,*
   2017 WL 810269 (C.D. Cal. Mar. 1, 2017) ............................................. 8

*Sikorski v. Paul Revere Life Ins. Co.,*
   2016 WL 7495805 (C.D. Cal. Mar. 22, 2016) ....................................... 14

*In re Skelaxin (Metaxalone) Antitrust Litig.,*
   2013 WL 4821337 (E.D. Tenn. Sept. 10, 2013) .................................... 15

*Stiner v. Brookdale Senior Living, Inc.*,
    383 F. Supp. 3d 949 (N.D. Cal. 2019) ......................................................................... 3

*Superintendent of Ins. of the State of N.Y. v. Bankers Life & Cas. Co.*,
    404 U.S. 6 (1971) ......................................................................................................... 8

*T.P. by & through S.P. v. Walt Disney Parks & Resorts U.S., Inc.*,
    445 F. Supp. 3d 665 (C.D. Cal. 2020) ...................................................................... 14

*Toombs v. Leone*,
    777 F.2d 465 (9th Cir. 1985) ...................................................................................... 4

*TSC Industries, Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ..................................................................................................... 4

*U.S. S.E.C. v. Brandonisio*,
    2013 WL 5375283 (D. Nev. Sept. 24, 2013) ............................................................ 10

*U.S. v. Charnay*,
    537 F.2d 341 (9th Cir. 1976) ...................................................................................... 8

*United States Rubber Co. v. Wright*,
    359 F.2d 784 (9th Cir. 1966) ............................................................................... 3, 13

*United States v. Smith*,
    155 F. 1051 (9th Cir. 1998) ......................................................................................... 8

*Vasquez v. Libre by Nexus, Inc.*,
    2018 WL 9868570 (N.D. Cal. Nov. 20, 2018) ........................................................ 6, 7

*White v. Nix*,
    43 F.3d 374 (8th Cir. 1994) ...................................................................................... 13

**Statutes**

17 C.F.R. §240.10b-5(b) ................................................................................................... 8

28 U.S.C. §1291 ............................................................................................................ 1, 2

28 U.S.C. §1292(b) ........................................................................................................ 1, 2

## I.   INTRODUCTION

Defendants try to raise two issues for appellate review stemming from the Court's Order Granting in Part and Denying in Part Plaintiff Littleton's Motion for Partial Summary Judgment dated April 1, 2022 (ECF No. 387) ("MSJ Order"). The first relates to what they perceive as an "error" in applying "different" standards for materiality when assessing the evidentiary record for falsity, scienter, and reliance. The second concerns the Court's analysis with respect to the falsity of Musk's statements on August 7, 2018 and its supposed failure to account for the fact that Musk's statements were made via Twitter. Neither issue provides a basis for interlocutory appeal and Defendants categorically fail to satisfy the "exceptional circumstances" and "heavy burden" required for certification of an interlocutory order. Defendants' motion should be denied in its entirety.

Only "final decisions of the district courts" are appealable. 28 U.S.C. §1291. An exception to this rule exists where an interlocutory order involves (1) a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) an immediate appeal would materially advance the ultimate termination of the litigation. 28 U.S.C. §1292(b). A litigant seeking to an appeal an interlocutory order faces not just a burden, but a heavy burden in establishing these requisites. Indeed, interlocutory appeals are reserved for "exceptional circumstances [that] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Heaton v. Soc. Fin., Inc.*, 2016 WL 232433, at *2 (N.D. Cal. Jan. 20, 2016).

No such exceptional circumstances exist here. With respect to their first issue, Defendants' entire argument is premised on the faulty assumption that the Court applied different standards for assessing materiality when evaluating the parties' arguments on falsity, scienter, and reliance. Plaintiff submitted a wealth of evidence showing that Musk's statements on August 7, 2018 "significantly altered the total mix of information made available" to investors. Thus, the Court was entirely justified in assuming materiality for the purposes of the motion. That assumption, however, did not conflict with the Court's subsequent decision to afford Defendants an opportunity at trial to rebut Plaintiff's presumption of reliance under *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988). Indeed, to the Court's credit, it generously provided Defendants with the ability to rebut Plaintiff's presumption based on little more than attorney argument concerning the reaction of Tesla's stock

price to a blog post issued several days later on August 13, 2018. While it remains to be seen if Defendants will be able to persuade a jury on this point, the Court held that it was sufficient to preclude summary judgment. That decision in and of itself does not lead to the conclusion that the Court applied different standards for materiality and, therefore, does not give rise to an issue involving a controlling question of law calling for the certification of an interlocutory appeal.

Defendants fare no better on their second issue. Contrary to the law and the facts, they claim that the Court should have applied a more lenient (*pro*-defendant) standard when determining whether Musk's tweets were false and/or materially misleading because of the forum in which they appeared, *i.e.*, Twitter. Section 10(b) and Rule 10b-5 do not provide any exceptions for statements made on Twitter versus SEC filings, press releases, interviews, or any other medium for that matter. The rules clearly prohibit issuers from making "any" false statements in connection with the purchase or sale of a security. Furthermore, Defendants' argument contradicts Musk's testimony in this case, which demonstrates that he knew his Twitter account was a formal corporate channel of communication for Tesla and that he intentionally selected Twitter to make his announcement because of the expediency it provided him in terms of getting information to shareholders. Thus, there is no basis for suggesting that the Court did anything wrong when applying well-established securities law precedent in deciding that Musk's statements on August 7, 2018 were false and materially misleading. The Court committed no legal error in its decision and, as a result, there is no basis for certifying an interlocutory appeal.

## II.      LEGAL STANDARD

Federal courts of appeals generally have jurisdiction only over appeals from "final decisions of the district courts." 28 U.S.C. §1291. Section 1292(b) provides a "narrow exception to [this] final judgment rule." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). It allows a court to certify a non-final order for appellate review only if it finds, in writing, that the order "involves [1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b).

The party seeking certification must meet a demanding standard. Certification under Section 1292(b) is appropriate only in "extraordinary cases" or in "exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982), *aff'd* 459 U.S. 1190 (1983); *United States Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966). "Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly"; it is accordingly applied only in "rare circumstances." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002). Proponents of certification thus bear not only the burden but a "heavy burden" to satisfy each of the statute's three requirements. "A movant seeking an interlocutory appeal [under Section 1292(b)] has a heavy burden to show 'that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Henley v. Jacobs*, 2019 WL 8333448, at *2 (N.D. Cal. Oct. 25, 2019) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). Even then, "[t]he decision to certify an issue for interlocutory appeal is discretionary." *Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 957 (N.D. Cal. 2019).

## III.  ARGUMENT

### A.  The Court Did Not Apply Different "Materiality" Standards when Deciding Plaintiff's Motion for Partial Summary Judgment.

Defendants' motion is premised on the misconception that the Court applied "different" standards for materiality when evaluating the evidentiary record on falsity, scienter, and reliance. Defs. Br. at 9.[1] The Court did not do this. As explained, the Court correctly "assume[d] that the three statements at issue were material" for the purposes of the motion because "Tesla's stock price went up after the tweets, analysts issued reports commenting on the tweets, and Tesla's investors reached out to Tesla after the tweets." MSJ Order at 32.[2] Nevertheless, the Court gave Defendants the

---

[1] Citations to Defendants' Motion for Certification (ECF No. 402) are referred to as "Defs. Br. at ___."

[2] In fact, Plaintiff's evidence of materiality in support of the motion was far more significant and substantial than the Court's opinion suggested. As explained in more detail by Plaintiff in his opposition to Defendants' motion for reconsideration, there is no dispute between the parties regarding the materiality of Musk's August 7, 2018 at the time they were made. They had an immediate and observable impact on the price of Tesla stock and other securities as well as

opportunity to rebut Plaintiff's presumption at trial because "there [was] evidence suggesting that the misrepresentations did not actually affect the market price" of Tesla's stock. *Id*. What Defendants incorrectly presuppose in their motion is that evidence of a lack of price impact equates to a lack of materiality.

Defendants' entire motion on this point is premised on this one faulty assumption, *i.e.*, "a factual dispute as to price impact means that materiality is also in factual dispute." Defs. Br. at 1. The case law on this issue shows that this is not the case. The test for materiality across all federal securities laws was established by the Supreme Court in *TSC Industries, Inc. v. Northway, Inc.* where a fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important". 426 U.S. 438, 449 (1976). This requires "a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *Id*. The Court continued: "Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id*. Importantly, this is an objective test, assessing the significance of a piece of information to a "reasonable investor". *Id*. at 445; *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013) (noting materiality is an objective test). Materiality is also assessed at the time the misrepresentation or omission occurs. *S.E.C. v. Reyes*, 491 F. Supp. 2d 906, 910 (N.D. Cal. 2007)("The law assesses the materiality of a misrepresentation at the time it is made, not after intervening events or remedial action have rendered it harmless."); *see also Toombs v. Leone*, 777 F.2d 465, 469 (9th Cir. 1985)(" Materiality, of course, must be determined in light of facts existing at the time of nondisclosure or misinformation.")

The question of reliance, specifically the issue of whether a defendant has rebutted the presumption of reliance established by *Basic*, is, in contrast, a subjective test. A defendant must

---

dominated media and analyst coverage of Tesla for the next ten days. Tesla investors made numerous inquiries about the meaning and significance of "funding secured". Finally, experts retained by both Plaintiff and Defendants agree that the August 7, 2018 tweets were material. *See* Opposition to Motion for Reconsideration (ECF No. 414).

prove that a misrepresentation or omission *in fact* had no impact on a security's price at a particular point in time. "The defendant must 'in fact' 'seve[r]' the link' between a misrepresentation and the price paid by the plaintiff—and a defendant's mere production of *some* evidence relevant to price impact would rarely accomplish that feat." *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, ___ U.S. ___, 141 S. Ct. 1951, 1962 (2021); *see also Basic*, 485 U.S. at 249 (presumption rebutted where it is shown truth "credibly entered the market and dissipated the effects of the misstatements"). The same is true for the issue of loss causation. Unlike the test for materiality which is "hypothetical and objective … . the loss causation inquiry assesses whether a particular misstatement *actually* resulted in loss. It is historical and context-dependent." *Miller v. Thane Int'l, Inc.*, 615 F.3d 1095, 1101–02 (9th Cir. 2010)(citations omitted). The two inquiries essentially intersect when the "price impact" or "actual loss" caused by a misrepresentation equal $0.00 which will typically be at the end of a class period.

Unquestionably, the evidentiary record in this action shows that Musk's statements on August 7, 2018 were material at the time they were made and, unsurprisingly, immediately impacted the price of Tesla's stock and other securities. As set forth in Plaintiff's opposition to Defendants' motion for reconsideration, Defendants' own expert agrees. Nevertheless, in an effort to rebut Plaintiff's presumption of reliance under *Basic*, Defendants have crafted an argument centered on the reaction of Tesla's stock price to the blog post made several days later on August 13, 2018. The Court held this argument sufficient to create a triable issue of fact precluding summary judgment. MSJ Order at 32. While it remains to be seen whether and to what extent Defendants can actually establish an absence of price impact, the Court's holding did not contradict itself or otherwise conclude that Musk's statements on August 7, 2018 were *not* material. Without any contradiction to speak of, Defendants cannot create a "controlling question of law" or a "novel legal issue[]" to be ruled upon and, therefore, have no basis for seeking certification. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *see also Aldapa v. Fowler Packing Co.*, 2016 WL 8731316,

at *1-2 (E.D. Cal. Aug. 26, 2016) (similar, citing authorities); *K.S-A v. Hawaii Dep't of Educ.*, 2018 WL 3431922, at *2 (D. Haw. July 16, 2018) (same).[3]

**B.    Defendants' Argument Regarding the Forum for Musk's Fraudulent Statements is Meritless.**

1.    <u>Defendants do not present a controlling question of law.</u>

For the purposes of Section 1292(b), a question of law is "a pure legal question, such that the court of appeals could decide the question quickly and cleanly without having to study the record." *Heaton,* 2016 WL 232433, at *3 (quoting *Matsunoki Grp., Inc. v. Timberwork Or., Inc.,* No. 08-CV-04078, 2011 WL 940218, *2 (N.D. Cal. Feb. 18, 2011) (citing *Ahrenholz v. Bd. Trs. of Univ. of Ill.,* 219 F.3d 674, 676-77 (7th Cir. 2000)). "[A] proper question for interlocutory appeal must be stated at a high enough level of abstraction to lift the question out of the details of the evidence of facts of a particular case." *Vasquez v. Libre by Nexus, Inc.,* 2018 WL 9868570, at *4 (N.D. Cal. Nov. 20, 2018) (quoting *Matera v. Google Inc.*, 2016 WL 8200619, at *15 (N.D. Cal. Aug. 12, 2016)). "The anthesis of a proper § 1292(b) appeal is one that turns on whether . . . the district court properly applied settled law to the facts or evidence of a particular case." *MP Nexlevel of California, Inc. v. Cvin, LLC,* 2016 WL 5815895, at *4 (E.D. Cal. Oct. 5, 2016)(quoting *McFarlin v. Conseco Servs., LLC,* 381 F.3d 1251, 1259 (11th Cir. 2004)); *see also Home Depot U.S.A., Inc. v. E.I. DuPont de Nemours & Co.*, 2019 WL 6171063, at *2 (N.D. Cal. Nov. 20, 2019) (quoting *Johnson v. Serenity Transportation, Inc.*, 2017 WL 3168491, at *1 (N.D. Cal. July 26, 2017) ("[a] mixed question of law and fact or the application of law to a particular set of facts by itself is not appropriate for permissive interlocutory review.")).

Defendants do not present a "controlling question of law" and one does not exist. Far from it, the standard for proving the element of "falsity" in a securities fraud case is well-established. A statement is false or misleading if it acts to "create an impression of a state of affairs that differs in

[3] Without the prerequisite of a legal error, the remainder of the Section 1292(b) analysis is moot. However, for the purposes of preserving the record, Defendants have not demonstrated the existence of any of the three factors. The MSJ Order did not involve a controlling legal issue; there are no differences of opinion; and an appeal would not materially advance the termination of the litigation. *See* Sections III.B., *infra*.

a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). This may be proven "when a plaintiff points to defendant's statements that directly contradict what the defendant knew at that time." *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1008 (9th Cir. 2018). The Court applied this standard and granted partial summary judgment finding that Plaintiff demonstrated that there was no genuine issue of material fact that Musk's August 7, 2018 tweets were false and misleading. MSJ Order at 21-29.

Given the Court's correct application of the legal standard for falsity, Defendants do not credibly raise a "controlling question of law." *See Johnson*, 2017 WL 3168491, at *1. Indeed, as Defendants admit in their motion, they seek to appeal the issue of whether the "different characteristics of social media as a means for conveying information and the public's receipt of such information" should have outweighed the falsity and scienter evidence considered by the Court when deciding Plaintiff's motion and led to a different conclusion." Defs. Br. at 16-17. However, such factual considerations are not appropriate for certification. *See Vasquez,* 2018 WL 9868570, at *4.

          2.    <u>Defendants do not demonstrate any ground for a difference of opinion.</u>

The second requirement under Section 1292(b) is that there be a "substantial ground for difference of opinion" on the certified question. As the Ninth Circuit has explained:

> courts must examine to what extent the controlling law is unclear. Courts traditionally will find a substantial ground for difference of opinion where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented. . . . [A] party's strong disagreement with the Court's ruling is not sufficient for there to be a substantial ground for difference.

*Couch,* 611 F.3d at 633 (internal quotations and citation omitted).

Defendants cannot meet this requirement. Indeed, Defendants offer no legal basis for suggesting that different standards apply (or should apply) to statements made in different forums (*i.e.*, Twitter versus any other medium). Defendants' argument is not only inconsistent with this Court's precedents but contradicts the plain meaning of the Section 10(b) and Rule 10b-5. If "the statute is clear and unambiguous, that is the end of the matter." *Burton v. Stevedoring Servs. of Am.*, 196 F.3d 1070, 1072 (9th Cir. 1999); *see also United States v. Smith,* 155 F. 1051, 1057 (9th Cir.

1998) ("A fundamental canon of statutory construction is that, *unless otherwise defined,* words will be interpreted as taking their ordinary, contemporary, common meaning.") (quoting *Perrin v. United States,* 444 U.S. 37, 42 (1979) (emphasis in the original)). Section 10(b) and SEC Rule 10(b)-5 are clear that it is unlawful to make "*any* untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. §240.10b-5(b) (emphasis added).   Here, the plain meaning of the word "any" in the statute provides no limitation of coverage of the securities laws to formal regulatory filings. There is no carve out for tweets.

Defendants' argument also contradicts Congress's intent in enacting the federal securities laws. Courts provide liberal construction of the securities laws to promote the remedial purpose of protecting the investing public. *SEC v. Zandford*, 535 U.S. 813, 820 (2002); *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151 (1972) ("The Supreme Court has explained that Congress intended for the statute to be construed "not technically and restrictively, but flexibly to effectuate its remedial purpose.") (internal citations omitted*); Superintendent of Ins. of the State of N.Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 11 n.7 (1971) (section 10(b) prohibits both the "garden type variety of fraud" and "unique form[s] of deception" that employ "[n]ovel or atypical methods....") (citation and internal quotation marks omitted); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 386 (1983) ("A cumulative construction of the securities laws also furthers their broad remedial purposes."); *U.S. v. Charnay*, 537 F.2d 341, 349 (9th Cir. 1976) ("'[The securities fraud provisions] are not intended as a specification of particular acts or practices that constitute 'manipulative or deceptive devices or contrivances,' but are instead designed to encompass the infinite variety of devices that are alien to the 'climate of fair dealing.").   In passing the legislation, Congress sought to "substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry." *Sec. & Exch. Comm'n v. Husain*, 2017 WL 810269, at *10 (C.D. Cal. Mar. 1, 2017) (quoting *Affiliated Ute*, 406 U.S. at 151).   Providing special considerations for fraudulent statements made via Twitter would be wholly inconsistent with this precedent.

There is no question that tweets made by the CEO of a publicly traded company fall within the scope of the securities laws and Defendants cite no authority to contrary. This is consistent with how courts enforce the law, the plain language of Section 10(b) and SEC Rule 10(b)-5, the law's remedial purpose, the SEC's regulations regarding public companies' use of social media, and Musk's own statements about his tweets. Yet Defendants argue that because a statement made on Twitter is different from a statement made in a formal regulatory filing, the Court must consider the forum where Musk made his fraudulent statements to determine falsity and scienter and the Court's failure to do so warrants an interlocutory appeal. Defs. Br. at 17. Courts have never limited their falsity analysis or enforcement of the securities laws to statements made in formal regulatory filings and consistently find successful allegations of securities fraud in statements made in any forum or through whatever medium a fraudulent statement might be made, including Twitter. For example:

- *S.E.C. v. Steven M. Gallagher, a/k/a* "Alexander Delarge 655321," Case No. 21-cv-8739-PKC (S.D.N.Y Oct. 26, 2021) (Stock trader charged with securities fraud for using his Twitter account to operate a pump-and-dump scheme)[4];

- *S.E.C. v. James Alan Craig,* Case No. 3:15-cv-05076-CRB (N.D. Cal. May 20, 2019) (ECF No. 46) (Individual charged with securities fraud for creating Twitter accounts to look like real Twitter accounts of well-known securities research firms and tweeting multiple false statements about two companies to affect their stock prices in an attempt to profit from resulting price swings);

- *Lorenzo v. Sec. & Exch. Comm'n*, 139 S. Ct. 1094 (2019) (misrepresentations appeared in email written by director of brokerage firm);

- *S.E.C. v. Franklin*, 265 F. App'x 644, 646 (9th Cir. 2008) ("Defendant engaged in an unlawful "pump and dump" scheme by publishing an internet newsletter that fraudulently touted stocks he owned and then selling the stocks at inflated prices.");

---

[4] *See* Press Release, Department of Justice, "Ohio-Based Stock Trader Pleads Guilty to Securities Fraud" (Feb. 25, 2022), available at https://www.justice.gov/usao-sdny/pr/ohio-based-stock-trader-pleads-guilty-securities-fraud.

- *Cooper v. Pickett*, 137 F.3d 616, 624 (9th Cir. 1997) (false statements provided to securities analysts with the intent that the analysts communicate those statements to the market);

- *In re QuantumScape Sec. Class Action Litig.,* 2022 WL 137729 (N.D. Cal. Jan. 14, 2022) (misleading statements given by CEO during an earnings call and CNBC interviews and statements made in another officer's LinkedIn post were false and misleading and made with scienter);

- *In re CytRx Corp. Sec. Litig.,* 2015 WL 5031232, at *9 (C.D. Cal. July 13, 2015) (Company statements in press release and conference calls contained actionable omissions);

- *U.S. S.E.C. v. Brandonisio,* 2013 WL 5375283, at *2 (D. Nev. Sept. 24, 2013) ("To 'pump' the stock, [Defendant] began a direct mail campaign, an email campaign, and posted videos on the internet.'); and

- *In re CV Therapeutics, Inc.,* 2004 WL 1753251, at *6 (N.D. Cal. Aug. 5, 2004) (Plaintiffs alleged with particularity that statements made during a CNBC interview were false and/or misleading when made).

In addition to the law, the unique facts in this case further support holding Musk accountable for the false statements he made, notwithstanding that he made the statements on Twitter. On November 5, 2013, Tesla filed a current report on Form 8-K stating: "Tesla investors and others should note that we announce material information to the public about our company, products and services and other issues through a variety of means, including Tesla's website, press releases, SEC filings, blogs and social media, in order to achieve broad, non-exclusionary distribution of information to the public. . . . For additional information, *please follow Elon Musk's . . . Twitter accounts*: twitter.com/elonmusk . . . ." Ex. 103 at 2 (emphasis added). Thus, Defendants themselves identified Musk's personal Twitter as a forum for "material information to the public about [Tesla]." Musk knew this at the time he tweeted, as confirmed during his deposition when he testified that he was aware that Twitter was identified by Tesla as a source of corporate information and that it was a means of interacting directly with investors without going through a media filter. Musk Dep. at

18:2-11. He was also aware that retail investors followed him on Twitter, that he thought about the effect of his tweets on these investors before he tweeted, and that investors could trade based on his tweets. *Id.* at 20:18-23, 63:17-23. Musk also knew that his tweets on August 7, 2018 were going to materially impact the price of Tesla's stock. *Id.* at 183:15-184:1.

In fact, Musk intentionally chose Twitter for his platform of communication on August 7, 2018. *Id.* at 114:4-15; 142:17-143:6; 165:9-14; 281:25-282:3. He claimed in his deposition that he tweeted because he was concerned about the potential that a forthcoming Financial Times article, which disclosed the Saudi Public Investment Fund's 5% stake in Tesla, would include a "leak" about his supposed take-private transaction. *See id.* at 127:3-18, 182:7-14; 184:4-185:9. "So just so there wouldn't be any confusion or perhaps selective information that some investors could take advantage of and others could not, that the right thing to do would be to state publicly my position." *Id.* at 185:5-9. Musk chose Twitter to make this material disclosure "as soon as possible" instead of waiting until after the market closed or choosing another means of communication. *See id.* at 185:10-18. And, as intended, his tweets prompted immediate reactions from analysts and investors, as the Court recognized. MSJ Order at 9 ("There was an immediate reaction to Mr. Musk's tweets and the blog post. For example, on the same day that the tweets and blog post were sent out, several of Tesla's shareholders reached out to Martin Viecha, Tesla's Director of Investor Relations. Mr. Viecha essentially conveyed to these shareholders that there was a "firm offer.").

This is the "context" of Musk's tweets that Defendants now claim to be "informal" and whose falsity should be subject to a nebulous standard akin to defamation jurisprudence. Far from presenting "substantial ground for difference of opinion" on the controlling law, Defendants arguments ignore SEC regulations and Musk's own testimony about his tweets. Given the intentionality behind Musk's use of Twitter on August 7, 2018, his statements should not be subjected to some lower, less scrupulous standard for falsity; to the contrary, the importance of his statements and his knowledge of their likely effect on the public weigh in favor of holding him and his statements to a higher, more rigorous standard.

The fact that tweets are limited in length (characters) does not alter the analysis or otherwise change the outcome on this issue. Even if there were a scintilla of authority supporting Defendants'

argument, it is undermined by the entirety of their conduct. Musk testified that he would issue a series of connected tweets or a "thread" if his message went beyond Twitter's character limit. Musk Dep. at 21:6-25. He also knew at the time he issued the initial tweet on August 7, 2018, that he could elaborate in response to questions from his followers. *Id.* at 186: 18-21. And he did just that. Not only did he issue his initial tweet, but he also replied to questions from members of the public, as demonstrated below:

- 8/7/2018. At 9:48 a.m., Mr. Musk tweeted: "Am considering taking Tesla private at $420. Funding secured." Ex. 8 (tweet).

- 8/7/218. At 10:40 a.m., he tweeted: "I don't have a controlling vote now [over the company] & wouldn't expect any shareholder to have one if we go private. I won't be selling in either scenario." Ex. 9 (tweet).

- 8/7/2018. Then, at 11:00 a.m., he tweeted: "My hope is *all* current investors remain with Tesla even if we're private. Would create special purpose fund enabling anyone to stay with Tesla. Already do this with Fidelity's SpaceX investment." Ex. 10 (tweet).

- 8/7/2018. At 11:13 a.m., he tweeted: "Shareholders could either to sell [sic] at 420 or hold shares & go private." Ex. 11 (tweet)

- 8/7/2018. About twenty minutes later, at 11:33 a.m. he tweeted: "Def no forced sales. Hope all shareholders remain. Will be way smoother & less disruptive as a private company. Ends negative propaganda from shorts." Ex. 11 (tweet).

*See* MSJ Order at 7-8. Musk's replies to questions he received on Twitter further perpetuated the fraud that he had "secured" funding to take Tesla private at $420 per share and that the only contingency on taking Tesla private was a shareholder vote. Musk also linked to documents in his tweets to circumvent the limit on the number of characters in a tweet: "At 12:36 p.m., Mr. Musk sent out another tweet: '**Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote.**' At the bottom of the tweet, there was a link to the above blog post on 'Taking Tesla Private.'" MSJ Order. at 9, citing Ex. 13 (tweet) (emphasis in the MSJ Order).

Defendants' disagreement with the Court's summary judgment ruling does not constitute a substantial ground for a difference of opinion warranting an interlocutory appeal. *Couch,* 611 F.3d at 633 (9th Cir. 2010) (internal quotations and citation omitted). The evidentiary record considered by the Court in its summary judgment ruling, overwhelming case law, and Defendants' own SEC filings provide ample evidence that the securities laws apply to tweets and there is no special consideration for the falsity of statements made on Twitter.

3. <u>Defendants cannot show that certification would materially advance the termination of litigation</u>

Section 1292(b) is not only limited to "extraordinary cases," it is limited to circumstances in which interlocutory appeal would "*avoid* protracted and expensive litigation." *United States Rubber Co.,* 359 F.2d at 785 (emphasis added). Defendants must show that "an immediate appeal may 'materially advance,' rather than impede or delay, ultimate termination of the litigation." *Hightower v. Schwarzenegger,* 2009 WL 3756342, at *4 (E.D. Cal. Nov. 6, 2009) (quoting *Cement Antitrust Litig.,* 673 F.2d at 1026). "When litigation will be conducted in substantially the same manner regardless of our decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *Hightower* 2009 WL 3756342, at *4 (quoting *White v. Nix,* 43 F.3d 374, 378-79 (8th Cir. 1994)); *see also In re City of Memphis,* 293 F. 3d 345, 351 (6th Cir. 2002) ("When litigation will be conducted in substantially the same manner regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation.") (internal quotations omitted). Because there is "no assurance that the Ninth Circuit would accept an appeal" and Defendants then would still have "the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment," the action could very likely only be prolonged by the immediate appeal. *Hightower,* 2009 WL 3756342, at *5.

Defendants do not and cannot show how interlocutory review would materially advance the termination of this litigation. Instead, permitting an appeal would prolong the litigation rather than advance its resolution. This is demonstrated by the fact that Defendants cite only one case in which certification was granted in connection with a summary judgment decision and that case, *T.P. by &*

*through S.P. v. Walt Disney Parks & Resorts U.S., Inc.*, 445 F. Supp. 3d 665 (C.D. Cal. 2020), is entirely distinguishable. It involved 55 individuals with cognitive disabilities who sued the defendant for violations of the Americans with Disabilities Act (ADA). To manage the case, the Court proceeded with "bellwether" phases, adjudicating the claims of two or three families at a time and then directing the parties to engage in mediation and settlement negotiations. *Id.* at 667. In granting plaintiffs' interlocutory appeal on the question of whether it was "necessary" under the ADA for an amusement park to accommodate customers with cognitive disabilities, the Court found that, "[r]egardless of the outcome, an interlocutory appeal will expedite future proceedings. . . . It would be a significant and needless waste of the Court and the parties' resources to proceed through additional bellwether phases only to face reversal on a common issue of law." *Id.* at 671. Those considerations are entirely absent in this case.  Even if this Court certified interlocutory appeal and Ninth Circuit ruled in Defendants' favor, this matter would still have to be tried and the litigation would proceed in substantially the same fashion.[5]

Furthermore, there is no indication that an appeal would facilitate settlement in this matter. Defendants argue, "that this is a class action further favors certification for interlocutory review, because most class actions settle and settlement is far more likely to occur where the parties have received clear instruction on the status of key claims." Defs. Br. at 19.  However, Defendants offer no justification for this argument. *See Sikorski v. Paul Revere Life Ins. Co.*, 2016 WL 7495805, at *3 (C.D. Cal. Mar. 22, 2016) ("The mere fact that a future reversal . . . would alter the parties'

---

[5] The other cases that Defendants cite also do not support their argument. In *Casas v. Victoria's Secret Stores, LLC*, the Court allowed for interlocutory appeal of a motion to dismiss and stay the action pending the interlocutory appeal. *Casas v. Victoria's Secret Stores, LLC*, 2015 WL 13446989 (C.D. Cal. Apr. 9, 2015).  In doing so the Court noted that the "early stage at which the issues present itself" would not "unduly delay[] the currently-planned course of litigation." *Id.* at *4.  *FERC v. Vitol Inc.* also involved an interlocutory appeal of a denial of a motion to dismiss based on a statute of limitations argument. *FERC v. Vitol Inc.*, 2022 WL 583998 (E.D. Cal. Feb. 25, 2022). In granting the interlocutory appeal, the Court found that doing so may advance the ultimate resolution of the litigation because it may increase the chance of settlement. *Id.* at *4.  Unlike *Casas* and *FERC,* both expert and fact discovery are closed, and the case is nearly ready for trial. Revisiting the Court's summary judgment order would prolong this litigation, as Plaintiff would renew his motion for summary judgment, which would require the Court to again set aside its trial dates. This would be a significant and needless waste of the Court's resource.

settlement posture is not enough to justify an immediate appeal."); *Ashmore v. Ne. Petroleum Div. of Cargill, Inc.,* 855 F.Supp. 438, 440 n. 3 (D.Me.1994) (expressing doubt on the likelihood of settlement as a consideration under § 1292(b) and noting "[r]esolution of nearly any disputed issue of law will to a greater or lesser extent, make settlement more probable"); *Piazza v. Major League Baseball,* 836 F.Supp. 269, 272 n. 7 (E.D.Penn.1993) ("Baseball stresses in its submissions that settlement will not be possible in the absence of certification, and that therefore certification will materially advance the ultimate termination of the litigation by making settlement possible. I reject this as a controlling contention for § 1292(b) certification in this case.").

  Nowhere in Defendants' motion do they explain how an appeal of this, or any issue will lead to settlement. In fact, an appeal would achieve the opposite result. The Court's summary judgment order has already narrowed the issues and provided clear instruction on Plaintiff's liability claims. *See Roberts v. C.R. England, Inc.*, 2018 WL 2386056, at *3 (D. Utah Apr. 24, 2018)(Denying motion to certify interlocutory appeal where a successful appeal would not eliminate any of plaintiffs' claims or narrow the substantive issues); *see also In re Skelaxin (Metaxalone) Antitrust Litig.*, 2013 WL 4821337, at *4 (E.D. Tenn. Sept. 10, 2013) ("If the circuit reversed the Court's order in part, the settlement calculus would change unpredictably. Whether such a ruling would make settlement more or less likely is mere speculation."). Thus, it appears that certification would have the opposite effect by delaying and confusing the issues in the litigation.

  Defendants may litigate their case as they see fit, but their unwillingness to settle before an appeal is not a relevant basis to justify an interlocutory appeal under §1292(b). *Hunt v. Bloom Energy Corp.,* 2022 WL 1122835, at *4 (N.D. Cal. Apr. 14, 2022); *see also Hunter v. Legacy Health,* 2021 WL 4238991, at *12 (D. Or. Apr. 13, 2021). Defendants' argument is further speculative as nothing in the history of this case supports their implication that settlement will not occur unless this issue is resolved. *See In re Nat'l Prescription Opiate Litig.,* 2020 WL 2128462, at *2 (N.D. Ohio May 5, 2020). A "successful appeal would not promote earlier settlement but merely redistribute the pressure to settle among the parties." *Roberts*, 2018 WL 2386056, at *3.

## IV.    CONCLUSION

Defendants' motion fails to identify legitimately appealable issues, let alone satisfy the strict requirements and heavy burden for appealing prior to entry of judgment under Section 1292(b). Their supposed legal issues are premised on mistaken interpretations of the law and the Court's MSJ Order. Their arguments also run contrary to the evidentiary record in this matter. Defendants entirely fail to substantiate their request for certification. Plaintiff respectfully requests that their motion be denied in its entirety.

Dated: May 6, 2022                        Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 s/ Adam M. Apton
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

-and-

Nicholas I. Porritt
Elizabeth K. Tripodi
Alexander A. Krot III
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel.: (202) 524-4290
Email: nporritt@zlk.com
Email: akrot@zlk.com
(*admitted pro hac vice*)

-and-

Joseph Levi
Eduard Korsinsky
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: jlevi@zlk.com

Email: ek@zlk.com
(*admitted pro hac vice*)

*Attorneys for Plaintiff and Counsel for the Class*