EXCERPTS FROM THE
DEPOSITION OF DANIEL FISCHEL
TAKEN MARCH 28, 2022

1                UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                    SAN FRANCISCO DIVISION

4
     _____)
5                                )
     IN RE TESLA, INC.,           )
6                                 )
     SECURITIES LITIGATION        )Civil Action No.
7                                 )3:18-cv-04865-EMC
                                  )
8    _____)

9

10

11

12              * C O N F I D E N T I A L *

13

14

15    REMOTE VIDEOTAPED DEPOSITION OF DANIEL FISCHEL

16               Monday, March 28, 2022

17                  Chicago, Illinois

18

19

20

21

22

23   Reported By: TRICIA J. LATHOURIS, CSR, RPR

24   JOB NO. 208865

25

```
 1  A P P E A R A N C E S:

 2  (All counsel appearing remotely.)

 3

 4          Levi & Korsinsky, LLP

 5          BY:   NICHOLAS PORRITT, ESQ

 6                ALEXANDER KROT, ESQ.

 7                PAMELA HUNTER, ESQ.

 8                1101 30th Street NW

 9                Washington, DC 20007

10          APPEARED ON BEHALF OF THE PLAINTIFFS;

11

12

13

14          Quinn Emanuel Urquhart & Sullivan, LLP

15          BY:   JESSE BERNSTEIN, ESQ.

16                ANDREW ROSSMAN, ESQ.

17                51 Madison Avenue

18                New York, New York 10010

19          APPEARED ON BEHALF OF THE DEFENDANTS.

20

21

22

23

24  Also Present:   Phil Rizzuti, Videographer

25
```

1   THE VIDEOGRAPHER:  Good morning, Counsel.  My
2 name is Phil Rizzuti.  I am a legal videographer in
3 association with TSG Reporting, Inc.
4       Due to the severity of the COVID-19 and
5 following the practice of social distancing, I will
6 not be in the same room with the witness.  Instead,
7 I will record this videotaped deposition remotely.
8 The reporter, Tricia Lathouris, also will not be in
9 the same room and will swear the witness remotely.
10      Do all parties stipulate to the validity of
11 this video recording and remote swearing, and that
12 it will be admissible in the courtroom as if it had
13 been taken following Rule 30 of the Federal Rules of
14 Civil Procedure and the State's rules where this
15 case is pending?
16   MR. PORRITT:  Yes.
17   MR. BERNSTEIN:  Yes, on behalf of defendants.
18   THE VIDEOGRAPHER:  Thank you.
19      This is the start of media labeled Number One
20 of the video recorded deposition of Mr. Daniel
21 Fischel in the matter of In Re:  Tesla, Inc.
22 Securities Litigation, in The United States District
23 Court for the Northern District of California, San
24 Francisco Division, Civil Action No. 3:18-CV-04865.
25      This deposition is being held on March 28,

1  2022 at approximately 10:05 AM.  My name is Phil
2  Rizzuti.  I am the legal video specialist from TSG
3  Reporting, Inc.  The court reporter is Tricia
4  Lathouris in association with TSG Reporting.
5          Counsels' appearances have already been
6  noted on the record by the court reporter.
7          Will the court reporter please swear in the
8  witness.
9              D A N I E L   F I S C H E L,
10 called as a witness, having been first duly sworn by
11 a Notary Public, was examined and testified as
12 follows:
13                     EXAMINATION
14 BY MR. PORRITT:
15    Q   Good morning, Mr. Fischel.  As you may have
16 heard --
17    A   Good morning.
18    Q   -- my name is Nick Porritt.  I'm one of the
19 attorneys representing the plaintiff and the class
20 in this matter.  Just some quick housekeeping before
21 we start.
22          So is it correct that you've been retained
23 as an expert by defendants in this case?
24    A   Yes.
25    Q   And you have been asked and have submitted

```
 1   assumed that that structure was feasible?
 2        MR. BERNSTEIN:  Objection to form.
 3        A    I didn't make any assumption about that one
 4   way or the other.
 5   BY MR. PORRITT:
 6        Q    And to be clear, you've not -- you haven't
 7   seen any documents in this case providing more
 8   details regarding the structure suggested by
 9   Mr. Musk, correct?
10        MR. BERNSTEIN:  Objection to form.
11        A    Well, I haven't looked for any, so I don't
12   recall whether I've seen any or reviewed any.  But
13   as I said, my focus has been on the public
14   statements by Mr. Musk, the board and various
15   different categories of market participants,
16   analysts and the press.
17   BY MR. PORRITT:
18        Q    Now, regarding the public statements of
19   Mr. Musk during the class period, are you offering
20   any opinion regarding the materiality of any of
21   those statements?
22        MR. BERNSTEIN:  Objection to form.
23        A    Well, I think I've already said that the --
24   the August 7th and the other disclosures on August
25   7th, following the tweet but during trading hours,
```

Page 40

1  those statements collectively were clearly material
2  in terms of the price increase that resulted.
3         I believe, if I remember correctly, that
4  Dr. Hartzmark found that the New York Times story on
5  August 17th also had a statistically significant
6  reaction, and I believe that's correct.  And if I
7  remember correctly, in Dr. Hartzmark's event study,
8  he didn't find any other day to be statistically
9  significant, I -- if I -- recollection that he had
10 some intra-day results that -- where he might have
11 found statistic -- statistical significance.
12        But as I said, for my purposes, I don't --
13 I don't really have any dispute with Dr. Hartzmark's
14 statistical findings as opposed to the
15 interpretation of those findings.
16 BY MR. PORRITT:
17    Q   Is a statistically significant price
18 reaction necessary before any statement or piece of
19 information can be considered material?
20    MR. BERNSTEIN:  Objection to form.
21    A   I -- I think that really depends on the
22 relevant facts and circumstances.
23 BY MR. PORRITT:
24    Q   Well, if it depends on the relevant facts
25 and circumstances, that suggests the statistical

```
 1  occurred in the real world.  And, again, my focus is
 2  on Dr. Hartzmark provides no basis for concluding
 3  that a different -- that that disclosure, as opposed
 4  to a different disclosure, would have had any
 5  different effect on Tesla's stock price in terms of
 6  its increase on August 7th.  And that being one of
 7  the basic flaws in his conclusion.
 8          But, again, speaking hypothetically, in
 9  light of all the speculation in the analyst reports
10  about what exactly Mr. Musk was referring to when he
11  said funding secured in a transaction that he was
12  considering, if all the information that eventually
13  came out about what he was considering when he made
14  that statement, if that was in the August 7th
15  disclosure, there's no basis.  And certainly,
16  Mr. Hart -- Dr. Hartzmark presents no basis for
17  showing that that alternative hypothetical
18  disclosure would have had any different effect.  Or
19  for that matter, wouldn't have had a more positive
20  effect than the actual disclosure, which occurred on
21  August 7th.
22      Q   You don't think that the mark -- the
23  analyst discussing all funding secured evidences its
24  materiality and impact on stock price?
25      MR. BERNSTEIN:  Objection to form.
```

1      A   I think the entire statement certainly was
2   material in the way that many truthful statements
3   about possible corporate control transactions are
4   typically material.  I believe that.  And I'm not
5   sure if that's responsive to your question.
6   BY MR. PORRITT:
7      Q   Well, have you reviewed the media reaction
8   to the tweets on August 7th?
9      A   Yes, in detail, I have.
10     Q   Okay.  And reviewed the analyst reports
11  that were published on August 7th and August 8th
12  immediately following the tweets?
13     A   Yes.  And I discuss a lot of them in my
14  report.
15     Q   Is it fair to say that some of those
16  analysts placed reliance on the statement "funding
17  secured"?
18     MR. BERNSTEIN:  Objection to form.
19     A   You know, again, I -- it's -- I think you
20  have to be a little bit more specific.  You know, I
21  think the reality is -- and I discuss this in my
22  reports -- the price reaction to the announcement;
23  price rose from approximately $356 to $379 in
24  response to a transaction that Mr. Musk was
25  considering at $420.  So there was a lot of

 1      A    I don't believe he stated that he made a
 2   misrepresentation, in the article or anywhere else.
 3   BY MR. PORRITT:
 4      Q    So we've been talking about the August 7th
 5   tweets and talking primarily about the first tweet,
 6   the 12:48 PM tweet; isn't that correct?
 7      A    I think various questions and answers have
 8   dealt with other things that came out on August 7th,
 9   so I wouldn't -- I wouldn't agree that that was the
10   only thing we were talking about.
11      Q    Towards the end of the day, at 3:36 PM,
12   Musk sends another tweet forwarding an email he had
13   sent to Tesla employees called "Taking Tesla
14   Private."  And then the tweet commented, "Investor
15   support is confirmed.  Only reason why this is not
16   certain is that it's contingent on the shareholder
17   vote."
18           Do you recall that tweet?
19      A    I do.
20      Q    Okay.  Was that new information for the
21   market?
22      MR. BERNSTEIN:  Objection to form.
23      A    Yes.  I -- I think everything about the
24   proposed transaction that he was considering was new
25   information in the sense that it resulted in a huge

1  price increase, a statistically significant price
2  increase, on that day.
3  BY MR. PORRITT:
4      Q    If I can refer you back to your rebuttal
5  report, Exhibit 423.
6      A    Okay.
7      Q    Paragraph 7; do you see that?
8      A    Yes, I see that.
9      Q    All right.  This -- you write,
10 "Dr. Hartzmark opines that had the alleged fraud not
11 occurred, Tesla's stock price would have traded on
12 every day during the class period at his adjusted
13 price of $312.90."
14          Do you see that?
15     A    I do.
16     Q    And you cite to Hartzmark report, Paragraph
17 174?
18     A    Correct.
19     Q    Okay.  Can you turn to Paragraph 174 of the
20 Hartzmark report, Exhibit 375?
21     A    Hold on.  What paragraph did you say?  I'm
22 sorry.
23     Q    It's 174.
24     A    Hold on.
25          Okay.  I've got it.

Page 160

1  tweets?

2      MR. BERNSTEIN:  Objection to form.  Vague and

3  ambiguous.

4      A   I'm not -- I'm not sure what you mean what

5  would I say?  I would say they were made and the

6  stock price reacted the way it did.

7  BY MR. PORRITT:

8      Q   Well, I said -- I asked you -- you said

9  that -- I asked you whether August 17th stock price

10 reaction had no connection with the August 7th

11 tweets and you said, no, I would not say that.

12     MR. BERNSTEIN:  Objection.  Objection to form.

13 Mischaracterizes the question and the answer.

14 BY MR. PORRITT:

15     Q   So that was one of my questions follow-up,

16 but -- so I'll ask the first question again.

17         Do you believe there's any connection

18 between the stock price reaction seen on August 17th

19 and the Elon Musk tweets made on August 7th, 2018,

20 the issue in this lawsuit?

21     A   I mean, when -- when you say any

22 connection, yes, I think there's a connection

23 because the August 17th interview that Mr. Musk gave

24 comes into context of the events that were occurring

25 at the time, which include the August 7th tweet --

Page 161

1  or tweets.  So, yes, I think there's that
2  connection.
3         I -- I don't think you can assume that
4  there's no context that's relevant in connection
5  with the October 17th story and the interview that
6  Mr. Musk gave that produced a story.
7  BY MR. PORRITT:
8     Q   If I can refer you to Paragraph 15 on Page
9  9 of your rebuttal report, Exhibit 423.
10        THE REPORTER:  I'm sorry.  Which exhibit?
11        MR. PORRITT:  423.
12     A   Is that the rebuttal report?
13 BY MR. PORRITT:
14     Q   That is the rebuttal report, yes.
15     A   Okay.  I got it.
16     Q   Again, the last sentence -- I'm always
17 picking on the last sentence of your paragraphs, I
18 think it's just coincidence, but anyway --
19        You write, "He" -- referring to
20 Dr. Hartzmark -- "ignores the fact that market
21 participants understood from the beginning that
22 Mr. Musk's proposal lacked details and quickly
23 understood that it was uncertain."
24        Do you see that?
25     A   I do.

```
 1        I also think you said April 7th, again, but --
 2        MR. PORRITT:  Oh, I'm sorry.  August 7th.  I
 3   apologize.
 4        A    It must be getting late in the day because
 5   I didn't pick that up.  But I understood what you
 6   meant.
 7        MR. BERNSTEIN:  Or I'm hearing things, which is
 8   always possible.
 9   BY MR. PORRITT:
10        Q    So -- so let me redo the question or do you
11   have an answer framed?
12        A    I -- well, my answer is, I don't understand
13   the question because current stock prices reflect
14   past stock prices.  You know, so other than that, I
15   don't understand the question.
16        Q    Well, is -- is your response, then, that
17   the August 7th, 2018 tweets by Elon Musk were still
18   material to the Tesla stock price and the price of
19   other securities as of August 13th, 2018?
20        A    You know, again, I'm not sure what you mean
21   by "still material."  You can judge the price
22   reaction on August 7th to analyze whether the price
23   reaction is statistically significant.
24             With respect to the price reactions on
25   future days, those days are in the context of what's
```

```
 1   occurred before and expectations that have resulted
 2   from information that -- that -- that has occurred
 3   prior to the date in question.  So to the extent
 4   that the disclosure on August 13th was affected by
 5   all the information about the proposed transaction
 6   that Mr. Musk was considering starting from August
 7   7th, I think the information, as well as the price
 8   reactions on August 7th, were still part of the
 9   total mix of information that was present on August
10   13th.
11            If that's what you mean by material, I
12   would say they're material.  If -- if you mean
13   something different, then I'm not sure what you
14   mean.
15        MR. PORRITT:  If you could -- Pamela, if you
16   could bring over Tab 40 and put it up on there,
17   which is the Morningstar report?
18        THE REPORTER:  Is this 429?
19        MR. PORRITT:  This will be 429, yes.
20        THE REPORTER:  Thank you.
21             (Exhibit 429 marked for identification.)
22        MR. PORRITT:  I'll stop sharing this.
23   BY MR. PORRITT:
24        Q    So I've placed before the witness a
25   document marked as Exhibit 429.  It is a Morningstar
```

```
 1  STATE OF ILLINOIS)
 2  COUNTY OF C O O K)
 3
 4           I, TRICIA J. LATHOURIS, Certified
 5  Shorthand Reporter No. 084-004472 in and for the
 6  State of Illinois, do hereby certify that previous
 7  to the commencement of the examination, said witness
 8  was duly sworn by me to testify the truth; that the
 9  said deposition was taken at the time and place
10  aforesaid; that the testimony given by said witness
11  was reduced to writing by means of shorthand and
12  thereafter transcribed into typewritten form; and
13  that the foregoing is a true, correct and complete
14  transcript of my shorthand notes so taken as
15  aforesaid.
16           I further certify that there were present
17  at the taking of the said deposition the persons and
18  parties as indicated on the appearance page made a
19  part of this deposition.
20           I further certify that I am not counsel
21  for nor in anyway related to any of the parties to
22  this action, nor am I in anyway interested in the
23  outcome thereof.
24
25
```

1        I further certify that this certificate

2   applies to the original signed IN BLUE and certified

3   transcripts only.  I assume no responsibility for

4   the accuracy of any reproduced copies not made under

5   my control or direction.

6   Dated: March 30, 2022

7   _____

8        TRICIA J. LATHOURIS, CSR, RPR

9

10  My Commission Expires:

11  March 8, 2023