UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re Tesla, Inc., Securities )
Litigation.                   ) No. CV-18-04865-EMC
_____)

San Francisco, California
June 16, 2022

**BEFORE:   THE HONORABLE EDWARD M. CHEN**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS VIA ZOOM PLATFORM**

**MOTION FOR CERTIFICATE OF APPEALABILITY**

Official Court Reporter:
Teri Veres, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 38
Phoenix, Arizona 85003-2151
(602) 322-7251

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

UNITED STATES DISTRICT COURT

```
 1                      A P P E A R A N C E S

 2   (Appearing via Zoom platform)

 3   For the Plaintiff:

 4            LEVI & KORSINSKY, LLP
             By:  Nicholas Porritt, Esq.
 5                Adam Apton, Esq.
                  Adam McCall, Esq.
 6            1101 30th Street NW
             Suite 115
 7            Washington, D.C. 20007

 8   For the Defendant Tesla:

 9            QUINN EMANUEL URQUHART and SULLIVAN, LLP
             By:  Kathleen Sullivan, Esq.
10            865 S. Figueroa Street
             10th Floor
11            Los Angeles, California  90017

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | ***P R O C E E D I N G S*** |
| 2 | *(The proceedings started at 1:28 p.m.)* |
| 3 | COURTROOM DEPUTY:  These proceedings are being |
| 4 | recorded by this court.  Any other recording of this |
| 5 | proceeding either by video, audio, including screen shots or |
| 6 | any copying of the hearing is strictly prohibited. |
| 7 | This Court is now in session.  The Honorable Edward |
| 8 | M. Chen presiding.  Court is calling the case In Regarding |
| 9 | Tesla, Inc., Securities Litigation. |
| 10 | Counsel, please state your appearance for the |
| 11 | record, beginning with the plaintiff. |
| 12 | MR. PORRITT:  Good afternoon, Your Honor, Nicholas |
| 13 | Porritt of the firm Levi & Korsinsky on behalf of the |
| 14 | plaintiff and the class.  With me are Adam Apton and Adam |
| 15 | McCall, also of Levi & Korsinsky. |
| 16 | THE COURT:  All right.  Good afternoon, Mr. Porritt. |
| 17 | MR. PORRITT:  Good afternoon, Your Honor. |
| 18 | MS. SULLIVAN:  And for the defendant good afternoon, |
| 19 | Your Honor, this is Kathleen Sullivan for Tesla. |
| 20 | THE COURT:  All right.  Thank you, Ms. Sullivan, |
| 21 | good afternoon. |
| 22 | MS. SULLIVAN:  Good afternoon, your Honor. |
| 23 | THE COURT:  Okay.  So this is Tesla's motion to |
| 24 | reconsider my summary judgment order, particularly on the |
| 25 | question about materiality and whether I had found materiality |

1   for some purposes and not others, as I understand the

2   argument, and that there's inconsistency to assume or for me,

3   if I did, find materiality with respect to falsity and

4   scienter, because each of those requires that the defendant

5   made a material misrepresentation or omission, and not to find

6   materiality because I only assumed arguendo that -- in the

7   reliance -- on the reliance question.

8          And maybe -- maybe the answer is clarity here if I

9   didn't make it clear.  When I look back at my order and it

10  seems evident to me, maybe I didn't make it clear enough, that

11  all that I found with respect to falsity was that no

12  reasonable juror could find the statement, for instance,

13  "funding secured" accurate and not misleading.

14         So I was only talking about falsely in the literal

15  sense that it was not accurate.  It was inaccurate or

16  misleading, not that that inaccuracy or misleading was

17  material.  So the false -- so the falsity element that's

18  required for a 10b-5 is not -- has not been completely

19  fulfilled, but obviously one component that it was a false

20  statement within, let's say in a literal sense, not in a legal

21  sense; and similarly with scienter, no reasonable juror could

22  find that Mr. Musk did not know or didn't act in disregard to

23  the inaccuracy -- the factual inaccuracy, not the legal.

24         And so I didn't -- and that's why I did not find --

25  when we got to looking at the reliance question, I did not

```
 1   find that there was a predicate of materiality under the
 2   fraud-on-the-market doctrine.  I only looked to even if there
 3   were, they were factual questions so there's actual reliance.
 4            So that's what I intended, and so once I've laid
 5   that out it seems to me that there is not an inconsistency
 6   there.  To be clear, I did not find materiality with respect
 7   to the misrepresentation or a reckless disregard or knowingly
 8   scienter with regard to any such material representation.
 9            I'll let the parties comment.  But, I mean, that's
10   what I intended and I think that's what I said; but if you
11   have further comments, I'll take those.
12            MS. SULLIVAN:  Well, Your Honor, if I may begin for
13   Tesla?
14            THE COURT:  Yeah.
15            MS. SULLIVAN:  Well, first of all, thank you very
16   much, Your Honor, for that clarification and Tesla, of course,
17   believes that Your Honor was completely correct in the holding
18   that the reliance element must go to the jury, can't be
19   decided as a matter of law because there are triable issues of
20   fact with respect to price impact; and if there wasn't any
21   ability to move the market on the price, then there would not
22   be materiality for purposes of Goliath on the
23   fraud-on-the-market theory.  So to begin with your reliance
24   ruling, your Honor, we think it's completely correct.
25            Your Honor's clarification is very helpful because
```

1    falsity is -- excuse me.

2         Sorry, Your Honor, for that.

3         THE COURT:  Normally I confiscate your phone, but I

4    can't do that over the Internet so. . .

5         MS. SULLIVAN:  Your Honor, we were just trying to

6    make sure that you could hear me, and I take it there are no

7    tech issues?

8         THE COURT:  No, we can hear you fine.

9         MS. SULLIVAN:  Thank you, Your Honor.

10        So, Judge, the clarification, Your Honor, that Your

11   Honor was not deciding materiality as a matter of law as to

12   any of the three elements at issue on the summary judgment

13   motion, falsity, scienter, or reliance is very helpful and we

14   did ask for that as alternative relief, Your Honor; but if I

15   could, Your Honor, may I just say why we think that's not an

16   entire fix here?

17        THE COURT:  Sure.

18        MS. SULLIVAN:  That is because the falsity and

19   scienter -- you can't disaggregate the falsity of the

20   statement from its material falsity, and we think it's legally

21   impossible to disaggregate the scienter toward a materially

22   misleading statement from its materiality.

23        So, in other words, it's not quite enough to say

24   well, I'm going to send abstract falsity -- I'm going to take

25   abstract falsity away from the jury but let the jury decide

```
 1   whether it was a material false statement, a statement that
 2   would alter the mix of information for investors in the
 3   marketplace in a way that mattered to them; and it's not quite
 4   enough to take scienter away from the jury because, again,
 5   falsity and scienter as a -- each as a whole incorporate
 6   materiality as a necessary predicate.
 7           So, Your Honor, maybe I can use the metaphor of it's
 8   a coin, and falsity has a materiality requirement that's built
 9   into it.  You can't carve the coin in half.  You have to let
10   falsity go to the jury in its entirely.
11           THE COURT:  Well, why is that?  Why is that,
12   Ms. Sullivan?  You can have something that's false.  There is
13   such thing as something that's false or true, right,
14   literally; but it could be not material, I mean -- and that's
15   exactly what we have here.
16           It was -- I found it was false to say "funding
17   secured," but it may well be that the average, reasonable
18   investor cared more about the 420 and the fact of going
19   private, the fact -- you know, all the things that go with it
20   rather -- and didn't care that much.  I mean, I don't know if
21   that's -- one would argue, you know, that's -- it's pretty
22   important, therefore, it would be objectively material; but
23   you could have a false statement that's kind of insignificant.
24           So why can't you carve that up into two?
25           MS. SULLIVAN:  Well, Your Honor, we think that the
```

1    garning precedent requires -- and we've cited it in detail in

2    the briefing, Your Honor, but, you know, if you look at *Dura*,

3    *Matrixx*, the original basic decision, if you look at *Amgen*,

4    *Halliburton* and *Goldman Sachs,* if you look at all of the

5    decisions that treat materiality as baked into falsity,

6    materiality is baked into scienter and, of course, as Your

7    Honor correctly decided, materiality is baked into reliance,

8    meaning baked into price impact in a fraud-on-the-market case,

9    then, Your Honor, with respect, we don't think you can take

10   falsity and scienter away from the jury if materiality is in

11   dispute as you now have -- as Your Honor has now correctly, I

12   think, clarified it is in factual dispute.  It is in triable

13   dispute.

14        And that's because, Your Honor, materiality is a

15   necessary prerequisite for a false statement.  It isn't just

16   any false statement that's reached by the securities laws.

17   It's only a material false statement, a statement that would

18   alter the mix of information.

19        THE COURT:  That's why I said it's not a done deal

20   for 10b-5.  The element of falsity and scienter have not been

21   automatically fulfilled here because there's a component of

22   that, but I do see it as -- you know, a jury's going to have

23   to decide two things normally.  Was it false in a literal

24   sense -- I mean, because if it's accurate, you don't even get

25   to materiality, right?

1    If somebody's accurate, that's it.  That's game

2 over, defendant wins; but if it's not accurate, they still

3 have to decide, "Well, is that inaccuracy -- did it matter to

4 the average -- to the reasonable" -- so it is a two-stage

5 analysis in the ultimate analysis, and I'm saying stage one I

6 find that it was inaccurate -- factually inaccurate.  I know

7 you disagree with that, but that's what I found; but it

8 doesn't answer the question about materiality.

9    So falsity within the meaning of 10b-5 as a term of

10 art has not been taken off the table.  That's still -- there's

11 still a component of that that's still live.

12    MS. SULLIVAN:   Well, we -- we appreciate that very

13 much, Your Honor, and that's a very helpful clarification; and

14 it does enable us to go to the jury on whether the statement

15 was materially -- the statements were materially false and to

16 go to the jury on whether scienter was established as to a

17 materially false statement.

18    That's helpful; but, Your Honor, we respectfully

19 think that you can't direct the jury to find falsity or

20 scienter halfway.  We think it's one element -- one

21 indivisible element in which you can't segregate the falsity

22 from the materiality of the statement and you can't segregate,

23 as a matter of law, the scienter from the intent with respect

24 to the material misstatement because the securities laws are

25 concerned only with deliberately or recklessly made material

1   false statements.

2           So, Your Honor, we believe there's still the risk of

3   reversible error in directing the jury -- taking away from the

4   jury the chance to decide falsity as a whole, scienter as a

5   whole; and if that were to infect the trial -- of course, that

6   was the reason we suggested interlocutory review as an

7   alternative to Your Honor's reconsideration.

8           If that were to infect the trial such that the

9   Circuit ultimately decided, well, falsity really had to go all

10  the way to the jury, couldn't just go halfway to the jury, or

11  scienter had to go all the way to the jury, it couldn't just

12  go halfway to the jury, if that were to prove reversible

13  error, we would be back in a situation I am sure no one,

14  including Your Honor wants us to be in, and that would be

15  facing a second trial after all the exertion that went in to

16  the first one.

17          So, Your Honor, I think that's the key point, is

18  that falsity and scienter are not divisible elements with two

19  steps.  They're single elements in which materiality is a

20  necessary prerequisite for the finding; and because Your Honor

21  correctly found materiality to be in dispute for reliance,

22  it's also in dispute for falsity and scienter, but that means

23  the whole element of falsity and scienter is in dispute.

24          THE COURT:  All right.

25          Mr. Porritt or I'm not sure if it's Mr. Apton or

1   Mr. McCall want to respond.

2           MR. PORRITT:  Thank you, your Honor.

3           So my initial reaction is this debate is somewhat

4   trivial in the sense that there's no dispute that the -- what

5   was said in the tweets were material.  I mean, everyone

6   agrees.  Plaintiff agrees, defendant's expert agrees.

7           So this whole debate about being able to argue --

8   they're gonna argue to the jury that the over seven tweets

9   were immaterial at the time they were made is completely

10  hypothetical because, no, they won't because there's no

11  evidence.

12          THE COURT:  I didn't find that.  If you look in my

13  opinion, I didn't make that finding.  I understand the

14  argument that the defendant's own expert referred to it as

15  material; but, of course, the comeback to that was, well, you

16  looked at the price for -- after the partial correction.  You

17  didn't see any movement at all, and you would have expected

18  something.

19          There were several things going on.  I think I made

20  a -- maybe in the context of reliance that it may be that the

21  thing that moved the price initially was the announcement --

22  the big announcement was, "We're going private.  I'm going to

23  take it private" and "420."

24          So I'm not going to reargue this because you didn't

25  move for reconsideration, but I'm telling you I did not find

 1    -- and maybe you think I should have found -- but I did not

 2    find -- and I searched.  I re-read my order several times.  I

 3    did not say that this was material.  I just said it was

 4    inaccurate and misleading.

 5              MR. PORRITT:  Understood and we would agree.  We

 6    obviously didn't seek reconsideration on that point; and, as I

 7    said, I just don't think -- I think it's sort of an academic

 8    debate now because I think the evidence -- there is no

 9    evidence that is to immaterial and even the -- the parts -- it

10    has to be assessed at the time it was made.

11              So on August 7th the materiality is so -- it's so

12    overwhelming in this case that -- and that their own expert

13    doesn't even offer an opinion that it was immaterial.  So

14    there is nothing in the record to suggest it was immaterial.

15              So we're happy to take that issue to the jury.  The

16    jury will presumably decide based on the evidence in court

17    that it was immaterial, because there really is no other

18    conclusion it can reach; but Your Honor didn't feel like it --

19    you were able to get to there on the summary judgment order

20    and that's fine.  You know, we'll accept that.

21              So -- and then for the purposes of -- you did not

22    find that reliance was an issue, I don't believe, for the

23    purposes of -- or materiality was an issue in terms of

24    reliance.  You assumed -- according to the order, you assumed

25    materiality for the purposes of establishing a presumption.

1          You established there was a -- as far as I

2    understand the ruling, there was a issue of material fact as

3    to whether defendants could rebut the presumption, which

4    means --

5          THE COURT:  Yeah, which is factual reliance, right.

6          MR. PORRITT:  So -- which means you have to

7    completely sever the effect of the misrepresentation, or

8    what's in the tweet, from the stock price at a particular

9    point in time.

10         I mean, that's -- so materiality -- whether you view

11   it as materiality, that's really the same inquiry as kind of

12   loss causation.  You say she's saying that the loss causation

13   is now diminished down to zero, so it has a zero impact is

14   really what you're arguing in that particular inquiry.

15         THE COURT:  What's your response to Ms. Sullivan's

16   point that -- even on the point of inaccuracy, what I call

17   falsity, kind of a literal sense, not a legal sense, I can't

18   really do that.  I can't separate that from materiality.  It's

19   improper for the Court to say, "Well, I do find it was

20   inaccurate.  That leaves the question whether it was

21   materially inaccurate."

22         MR. PORRITT:  Yeah, I would say Your Honor is

23   absolutely correct.  Courts do that all the time.  You can

24   take a very classic example, which is in a restatement case,

25   for instance, the county restatement, where people misstate

1  revenues.  That's -- their prior revenue was false.  It was in

2  error.  They corrected it.  They might correct it six months

3  later.

4          Lots of Courts at motion to dismiss level say, yes,

5  but the chain was so immaterial that I'm gonna -- you know,

6  we're gonna deny -- you know, we're gonna grant a motion to

7  dismiss and dismiss the claim at that particular point in

8  time.  So it's just not true that you can't -- that they are

9  so interwoven you can't decide one without the other.

10          So that would be my response.

11          THE COURT:  All right.  That's a pretty simple,

12  clear-cut response.  Ms. Sullivan, what's wrong with that?

13  Take a numbers statement that's simply wrong.  That can be

14  inaccurate, but it may not be material.

15          MS. SULLIVAN:  Your Honor, the question of falsity

16  and scienter are for the jury.  It isn't the truth -- Courts

17  do this all the time, as Your Honor well knows.  Summary

18  judgment for defendants is common in securities class actions,

19  but summary judgment for plaintiffs which take the issue of

20  falsity and scienter away from the jury are quite uncommon.

21          In fact, my friend on the other side I don't believe

22  can cite -- or has cited a single case in which falsity and

23  scienter were taken away from the jury; and, Your Honor, I

24  think the main point is that falsity must -- falsity must be

25  material and it's the jury's province to decide whether a

reasonable investor would have found that the false statement altered the mix of information on which that investor decided to buy or sell or hold the security.

So it's the jury's decision whether the false statement was a material false statement that is a single inquiry and it must be done as a whole by one decision maker, and that should be the finding -- finder of fact here, which would be the jury.

So, Your Honor, I see the logic in Your Honor's point but, unfortunately, I think it's a legally unacceptable thing to disaggregate falsity from materiality, send one to the jury and one not or to disaggregate scienter from materiality.

In fact, I don't know of any decision that disaggregates the elements.  The cases we cite all discuss falsity as requiring materiality, scienter as requiring materiality, and if there's no falsity -- no material falsity, Your Honor, we wouldn't even get to the scienter question.

So the real point here, Your Honor, is that we've got to be sort of all in or all out of jury determination here.  I -- I appreciate Your Honor's clarification very much that Your Honor is allowing materiality to go to the jury, but we fear that that might become a reversible error down the line and it would be far better to simply reconsider and send the issues of falsity and scienter in their entirety to the

 1   jury because -- to put it another way, Your Honor, there's
 2   kind of no such thing as an immaterial false statement in
 3   securities law.
 4        The securities law is not a requirement of literal
 5   truthfulness.  It's a requirement of material truthfulness in
 6   the market and, therefore, to disaggregate the question and
 7   carve it up into one issue for the Court to decide and one
 8   half for the jury to decide, we respectfully submit it's a
 9   potentially reversible error that the Court need not wade into
10   at this point and if Your Honor thinks -- I actually think
11   it's a new question of first impression, the idea that you can
12   separately decide technical falsity as a matter of law, but
13   allow materiality when the facts are disputed and triable to
14   go to the jury.
15        That almost raises a new legal question of first
16   impression, Your Honor.  So certification to the Ninth Circuit
17   might be an option if Your Honor is choosing to clarify
18   part way but not reconsider all the way the falsity and
19   scienter determination.
20        THE COURT:  Well, let's talk about the certification
21   or 1292(b).  Normally you need to show a substantial ground
22   for difference of opinion, not just that something is novel.
23   Maybe there's grounds if it's completely novel, but I'm not
24   familiar with any case that says a Court is barred from taking
25   certain other fact -- otherwise factual questions away from

1   the jury when it's so clear that no reasonable jury could find

2   on a particular fact.

3           It's not unusual for a Court to -- or party to move

4   for partial summary adjudication and say, well, all right, we

5   don't win the whole ball of wax.  We're not going to get rid

6   of the whole cause of action, but Elements 2 and 3 or Facts X

7   and Y we want, you know, found and so -- and to so instruct

8   the jury.  We do that all the time.

9           If it is so clear -- now you may disagree, but if it

10  is so clear that something cannot be found by a reasonable

11  juror in any other way, I don't -- I know of no law that says

12  "Well, you still have to go to trial -- unless you do the

13  whole ball of wax, you still have to send everything to the

14  jury even if certain elements are very clear."

15          I don't know why you're forced to -- the Court would

16  be barred from disaggregating certain facts, making findings,

17  and that's what partial summary adjudication is about.

18          MR. PORRITT:  And, Your Honor, if I may address that

19  point and also the prior point made by my friend,

20  Ms. Sullivan.  The Ninth Circuit in *Monroe v. Hughes*, case

21  from 1994, said quite clearly the elements of a 10b-5 claim

22  involve a false statement.  That such statement or omission

23  was material.  That's factor two.  Three, reliance.  Four,

24  active scienter or intent to defraud.

25          So -- and in *Provenz v. Miller*, 102 F.3rd 1478, you

know, they identified materiality as a second element of Rule

10b-5.  *Monroe v. Hughes* is 31 F.3d 772.

So other Courts -- and as we talked about in the

context of -- you know, in accounting cases and motions to

dismiss statements are assessed -- false statements are

assessed with materiality all the time.  That's not a --

that's not a -- that's not an unusual inquiry.  So there's

nothing novel about what Your Honor did here.

So with respect, my friend, Ms. Sullivan, is just

incorrect in saying this is novel or that she's never heard of

or cannot find a case where this is being considered

separately as a separate element.

And on the question of certification for appeal, I

think Your Honor is absolutely right.  This is the very

definition of what would be considered a piecemeal appeal.   I

mean, the Section 1292 jurisprudence says very clearly that,

you know, cases that involve a -- you know, application of law

to the detailed facts involved in the case, as exactly what

Your Honor did in the summary judgment motion, are

particularly ill suited for 1292 certification.

So here I don't think there's any -- there's no -- I

don't think there's -- your order gets anywhere close to

meeting the 1292 requirement for certification of

appealability, your Honor.

THE COURT:  All right.  Ms. Sullivan, I'll give you

1    the last word and then I'm going to move on.

2           MS. SULLIVAN:  Your Honor, just to be clear, I want

3    to make sure I understand Your Honor.

4           You're clarifying that we may go to the jury on

5    materiality for purposes of falsity element, materiality for

6    purposes of the scienter element, and materiality for purposes

7    of the reliance element, that materiality is in play as to all

8    three?

9           THE COURT:  It is right now.  Now, if something

10    happens, there's a summary judgment motion or some other kind

11    of in limine motion later that makes it so clear that even

12    that doesn't go to the jury, so I'm not saying -- but I'm

13    saying as of right now those are jury issues.  Those are

14    factual issues.

15           MS. SULLIVAN:  Understood, Your Honor, and we -- we

16    very much appreciate that.  Let me just take one last try,

17    Your Honor, at why we think you should go one step further and

18    send falsity and scienter in their entirety to the jury; and

19    the reason is, this is not like a motion for summary

20    adjudication where you rule on one claim and not another claim

21    or one element or not another element.

22           Our main argument here is materiality is an

23    inextricable, necessary prerequisite for a securities

24    violation falsity.  It's a necessary, inextricable sub element

25    of scienter; and so, Your Honor, you wouldn't be carving out

1    an element and sending the element to the jury.

2          The legal error, which may prove problematic

3    ultimately on appeal, is separating out a sub element or a

4    component of an element and dividing the element into two

5    parts and sending one piece to the jury and one -- and keeping

6    one piece away from the jury.

7          We think it creates confusion and taints the

8    ultimate verdict if the Court is essentially directing the

9    jury on technical falsity and technical recklessness even

10   though falsity and scienter can exist only if it was falsity

11   with respect to a material misstatement.

12         So, Your Honor, we respectfully would urge you to

13   just go one step further, let falsity and scienter go to the

14   jury in its entirety.  We also appreciate that Your Honor has

15   clarified that materiality is in play for all three issues.

16         THE COURT:  All right.  Thank you, counsel.

17         My original order stands.  To the extent that

18   there's any ambiguity, I will make doubly clear now that I did

19   not make any finding that the inaccuracy, which I found as a

20   matter of law that was made in the three instances and

21   scienter -- and finding scienter in regard thereto, I did not

22   make any finding about materiality of the inaccuracy or we

23   call it falsity, inaccuracy, misleadingness.

24         That is still an element and it's the same element

25   -- materiality informs all three factors, all three elements:

 1    reliance, scienter and falsity.  That's still a question at

 2    this point for the jury.

 3            The only thing I'm taking away from the jury is the

 4    inaccuracy of the statements and whether or not -- and I think

 5    -- you know, I think that is the proper thing to do since I

 6    found that no reasonable juror could find otherwise and I

 7    don't see a -- any basis for granting a 1292(b) petition for

 8    interlocutory appeal.

 9            I really made a factual finding, not a legal

10    finding; and in any event even if it's deemed a legal finding

11    -- the question is -- legal question whether I can

12    disaggregate in the way that Ms. Sullivan says I shouldn't, I

13    find there's no quote "substantial ground" for difference of

14    an opinion on that particular and therefore -- and I don't

15    think it's going to materially advance termination of this

16    litigation.

17            So I'm denying the request for a 1292(b), and I

18    guess I'm denying the motion for leave for reconsideration

19    because I -- but I am issuing this clarification for that

20    purpose.  So there you have it, thank you.

21            MS. SULLIVAN:  Thank you, your Honor.

22            THE COURT:  Thank you everyone.

23            MR. PORRITT:  Thank you, your Honor.

24            THE COURT:  Thanks.

25    (Proceedings ended at 1:55 p.m.)

1                    *REPORTER'S CERTIFICATION*

2

3              I, TERI VERES, do hereby certify that I am duly

4    appointed and qualified to act as Official Court Reporter for

5    the United States District Court for the District of Arizona.

6              I FURTHER CERTIFY that the foregoing pages

7    constitute a full, true, and accurate transcript of all of

8    that portion of the proceedings contained herein, had in the

9    above-entitled cause on the date specified therein, and that

10   said transcript was prepared under my direction and control.

11             DATED at Phoenix, Arizona, this 21st of

12   June, 2022.

13
                                      ___s/Teri Veres___
14                                    TERI VERES, RMR, CRR

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT