QUINN EMANUEL URQUHART & SULLIVAN, LLP

  Alex Spiro (*appearing pro hac vice*)
  alexspiro@quinnemanuel.com
  Andrew J. Rossman (*pro hac vice* forthcoming)
  andrewrossman@quinnemanuel.com
  Ellyde R. Thompson (*appearing pro hac vice*)
  ellydethompson@quinnemanuel.com
  Jesse Bernstein (*pro hac vice* forthcoming)
  jessebernstein@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

  Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

  Kyle Batter (Bar No. 301803)
  kylebatter@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000

*Attorneys for Defendants Tesla, Inc., Elon Musk,
Brad W. Buss, Robyn Denholm, Ira Ehrenpreis,
Antonio J. Gracias, James Murdoch, Kimbal Musk,
And Linda Johnson Rice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**MOTION *IN LIMINE* NO. 1**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE MATERIALITY EVIDENCE** |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 1

I. PLAINTIFF FAILS TO SHOW THE ADMISSION OF THE CHALLENGED EVIDENCE WOULD BE CONFUSING OR UNDULY PREJUDICIAL ........................... 1

    A. Plaintiff's Motion *In Limine* Should Be Denied Because It Ignores The Requirement That Each Alleged Misstatement Must Be Material Under Section 10(b) .................................................................................................................................. 2

    B. Plaintiff Fails To Show The Admission Of The Challenged Evidence Would Result In Undue Prejudice Or Confusion That Outweighs Its Probative Value ........ 4

II. PLAINTIFF'S MOTION IS PROCEDURALLY IMPROPER .......................................... 10

CONCLUSION .......................................................................................................................... 10

**INTRODUCTION**

Plaintiff's motion *in limine* improperly seeks to exclude relevant evidence of materiality simply by claiming that the issue cannot be disputed. Plaintiff's argument, however, rests on the mistaken premise that Plaintiff need only show the materiality of the tweets as a whole (which includes portions that are undisputedly true). Not so. The jury must decide whether the ***specific alleged misstatements*** are material. As a result, no confusion or undue prejudice could result from admitting evidence relevant to that determination. Because Plaintiff has not claimed that confusion or undue prejudice will result under the correct standard for assessing materiality, there is no basis for excluding the challenged evidence.

Indeed, Plaintiff's arguments highlight the probative value of such evidence. In particular, the lack of a price reaction following the August 13 blog post is relevant to the jury's determination of whether the market interpreted that August 13 disclosure as materially different from the at-issue portions of the August 7 tweets. As the Supreme Court has recognized, it is "uncontroversial" that "immaterial misrepresentations and omissions" do "not affect … stock price[s] in an efficient market." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466-67 (2013) (alterations in original, quotations omitted). Such evidence is also relevant to loss causation—that is, whether the portions of the tweets that Plaintiff has alleged violate the securities laws (as distinguished from the statements that Plaintiff does not challenge) caused the losses Plaintiff claims here. Plaintiff's attempt to exclude the lack of a stock reaction to the August 13 blog post—a posting that Plaintiff's expert described as an "admission" of falsity and the Court described as a corrective disclosure—should thus be rejected. The lack of any stock decline in reaction to an alleged "admission" of falsity is probative of the absence of loss causation.

In effect, Plaintiff's motion *in limine* invites the Court to decide disputed issues, which is not permitted on such a motion. The jury must decide such factual disputes based on the relevant evidence, and Plaintiff's motion should be denied.

**ARGUMENT**

**I.  PLAINTIFF FAILS TO SHOW THE ADMISSION OF THE CHALLENGED EVIDENCE WOULD BE CONFUSING OR UNDULY PREJUDICIAL**

Under Federal Rule of Evidence 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in

determining the action." Fed. R. Evid. 401; *United States v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000). Federal Rule of Evidence 403 allows a court, in its discretion, to exclude relevant evidence if "its probative value is substantially outweighed by a danger of" unfair prejudice or confusion. Fed. R. Evid. 403. Unfair prejudice means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Advisory Committee's Note; *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991) (evidence is "unfairly prejudicial … if it has an undue tendency to suggest a decision on an improper basis"); *United States v. Thompson*, 2022 WL 2064854, at *1 (W.D. Wash. June 8, 2022) (declining to exclude evidence that did now "sow confusion" and did not have "an undue tendency to suggest decision on an improper basis").

Here, Plaintiff concedes the evidence he seeks to exclude is relevant (indeed, materiality is an essential element of a securities fraud claim) and claims only that "any argument of immateriality at trial would be prejudicial because it would be made without any factual underpinning and would only mislead and confuse the jury." (Br. at 2.) This argument is inconsistent with the law and does not come close to meeting the requisite standard. The motion *in limine* should be denied.

### A. Plaintiff's Motion *In Limine* Should Be Denied Because It Ignores The Requirement That Each Alleged Misstatement Must Be Material Under Section 10(b)

Plaintiff's motion should be denied because it rests on the mistaken premise that it would be confusing to allow evidence regarding the materiality of each alleged misstatement because Plaintiff need only show Mr. Musk's August 7, 2018 tweets as a whole were material. But the law requires Plaintiff to prove the materiality of the alleged ***misstatements***. Thus, under the correct legal standard, the admission of evidence tending to prove or disprove the materiality of a specific alleged misstatement would not confuse the jury or lead the jury to decide the case on an improper basis. As a result, such evidence should not be excluded.

Under Section 10(b), a plaintiff must prove a material misrepresentation or omission. *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008). An alleged misstatement or omission is material where there is "a substantial likelihood that, under all the circumstances, ***the omitted fact*** would have assumed actual significance in the deliberations of the reasonable shareholder." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (emphasis added). "Put another way, there must be a substantial

likelihood that the disclosure of **the omitted fact [or correction of the misstated fact]** would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1259 (N.D. Cal. 2000) (alteration in original) (quoting *TSC Indus.*, 426 U.S. at 449). Determining materiality, therefore, requires "delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him." *TSC Indus.*, 426 U.S. at 450. This "fact-specific inquiry" "should ordinarily be left to the finder of fact." *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1178 (9th Cir. 2009), *aff'd*, 563 U.S. 27 (2011).

      Here, Plaintiff starts from the premise that "there can be no question that Musk's **August 7 tweets** were 'material' to investors." (Br. at 3 (emphasis added); *see also* Br. at 7 ("Defendants do not have any admissible evidence to show a jury that proves the **August 7 tweets** are immaterial." (emphasis added)).) But that argument does not address the question before the jury. The jury must assess whether **each** misstatement is material, and do so in light of the full context. *In re McKesson*, 126 F. Supp. 2d at 1259 (alleged misstatement is not material unless there is a "substantial likelihood that … correction of the misstated fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available"); *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 205 (2d Cir. 2009) (holding statement immaterial where there was not "a substantial likelihood that [Defendant's incorrect] reporting of the transactions as loans rather than as trades would have been viewed by a reasonable investor as having significantly altered the total mix of information made available").[1] The distinction is critical here because Mr. Musk's tweets contained significant information that Plaintiff does not dispute is accurate, including that Mr. Musk was considering taking Tesla private at $420 per share. (*See* Dkt. 387 at 32 (denying summary judgment as to reliance because of evidence that "reaction to the tweets on 8/7/2018 was a response to Mr. Musk contemplating taking Tesla private and not to statements that, *e.g.*, funding was secured or investor support confirmed").)

---

[1] Plaintiff has recognized this distinction, noting that a revenue restatement—which obviously relates to a material piece of information—can be immaterial where the *change* in revenue is not significant. (Ex. F (June 16 Hrg. Tr.) at 13:22-14:10.) The Court agreed with this hypothetical that the revenue figures—an obviously material figure in the abstract—can be misstated in an *immaterial* way. (*Id.* at 14:11-14.)

Plaintiff's failure to distinguish between the tweets as a whole and the at-issue statements renders meaningless Plaintiff's reliance on his cherry-picked testimony of Defendants' expert Professor Fischel. (*See* Br. at 6-7.) Professor Fischel did not dispute that the tweets as a whole—and specifically, the indisputably truthful statements contained in them—were material. (Ex. G at 58:1-5 ("[T]he *entire statement* certainly was material in the way that many truthful statements about possible corporate control transactions are typically material.").)· Professor Fischel did not testify that the at-issue portions of Mr. Musk's tweets were material (Br. at 6), but instead testified repeatedly that there is "no basis to conclude that any of that price reaction [on August 7] was the product of a price increase attributable to a materially false and misleading statement" or that the price reaction on August 7 would have been any different with or without the alleged misrepresentation. (*Id.* at 34:5-15, 55:22-57:21.) He similarly testified that there was no evidence that the alleged misrepresentations were "value-relevant"—what Professor Fischel described as the economic definition of material—relative to what the "truthful" (according to Plaintiff) disclosure would have been. (*Id.* at 101:2-102:20.) Such testimony goes directly to the materiality of the alleged misstatements (*see supra* at 2-3) and makes clear Professor Fischel did not "admit" the at-issue portions of Mr. Musk's tweets were material or that there was a material difference between the August 7 and August 13 disclosures, which is the relevant question.

Plaintiff cannot leap from asserting Mr. Musk's statements as a whole were material to concluding that the allegedly false portions of them were materially false. The jury must consider the materiality of the alleged misstatements, and evidence relevant to that inquiry should not be excluded.

### B. Plaintiff Fails To Show The Admission Of The Challenged Evidence Would Result In Undue Prejudice Or Confusion That Outweighs Its Probative Value

Even if Plaintiff's motion did not rest on this mistaken premise, Plaintiff has failed to show that the probative value of the evidence he seeks to exclude would be substantially outweighed by unfair prejudice or confusion.

Plaintiff seeks to exclude substantial evidence from which a reasonable jury could conclude the at-issue portions of Mr. Musk's tweets were not material. The presentation of such evidence is straightforward and grounded in both observable market reactions to the stock price and explained by expert testimony. Such evidence is probative to both the question of the materiality of the at-issue portions

of the tweets and the question of whether the alleged misstatements caused any damages. Plaintiff has not shown otherwise, and its argument that such evidence would "confuse" the jury is wrong. (Br. at 7.)

1. <u>Evidence From Which A Jury Could Conclude The At-Issue Portions Of The Tweets Were Immaterial Should Not Be Excluded</u>

The evidence Plaintiff seeks to exclude bears directly upon the question of whether the alleged misstatements were material and would not confuse the jury or lead to an improper result.

*First*, the stock reaction on August 13 is evidence the jury can consider when evaluating whether the at-issue statements were materially misleading. Specifically, as described in Defendants' Motion *In Limine* No. 1, on August 13 Mr. Musk published a blog post that contained information regarding the meaning of "funding secured," the status of funding as of August 13, ongoing due-diligence requests from the PIF, and numerous steps before a shareholder vote could occur on any go-private proposal (the details of which were still under consideration). (Defendants' MIL No. 1 at 3-6.) Thus, Mr. Musk's August 13 blog post provided investors all information necessary to evaluate the accuracy of the at-issue portions of the tweets. The reaction to the August 13 blog post, therefore, provides evidence from which the jury may isolate the market reaction to the truthful statements regarding Mr. Musk's intentions from the market reaction to the blog post Plaintiff contends revealed the falsity of the at-issue statements. The absence of any meaningful change in the stock price after the August 13 blog post is substantial evidence that the market reaction to Mr. Musk's tweets on August 7 was isolated to one specific and clearly true portion of his tweets: "Am considering taking Tesla private at $420." This observable market reaction is neither confusing nor likely to cause the jury to rest its decision on an improper basis.

For a fraud-on-the-market claim, this analysis of the "correction of the [allegedly] misstated fact" is precisely what the materiality inquiry requires. *In re McKesson*, 126 F. Supp. 2d at 1259; *see also N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 126 (2d Cir. 2013) ("For a misstatement or omission to qualify as material, 'there must be a substantial likelihood that' ***a complete and truthful disclosure*** 'would have been viewed by [a] reasonable investor as having significantly altered the "total mix" of information made available.'") (emphasis added). And the reaction to the blog post— which Plaintiff's experts described as an "admission" that Mr. Musk's statement "funding secured" was "false" or "premature at best"—was statistically ***insignificant***. (*See* Ex. H (Subramanian Dep. Tr.) at

215:16-216:16; Ex. 375 ¶ 100.)  The lack of any statistically significant price reaction is evidence from which the jury could conclude that the at-issue portions of Mr. Musk's August 7 tweets were not materially different than what was disclosed on August 13, 2018.  *Amgen*, 568 U.S. at 464 (noting the "uncontroversial" notion that the "definition" of "immaterial misrepresentations and omissions" are misrepresentations and omissions that do "not affect … stock price[s] in an efficient market"); *see Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) ("[I]f a company's disclosure of information has no effect on stock prices, it follows that the information disclosed … was immaterial as a matter of law.").  And this authority directly contradicts Plaintiff's assertion that the lack of any negative stock reaction to the revelation should be excluded because it is "an argument on loss causation."  (Br. at 7.)

*Second*, contemporaneous reactions to the August 13 blog post—including by Plaintiff himself—provide further evidence that Mr. Musk's alleged misstatements may have been immaterial.  Indeed, Plaintiff asserted that the August 13 blog post was "consistent" (*i.e.*, not materially different than) Mr. Musk's tweet "funding secured."  (Ex. I at 150:13-151:7.)  Similarly, Plaintiff cites to a CFRA analyst report, which stated that "the [August 13] blog also explains how the deal could be more likely than we previously thought."  (Br. at 5.)  In other words, a jury could conclude that the August 13 explanation of "funding secured" was not materially different from the August 7 interpretation of "funding secured."

*Third*, Plaintiff claims (Br. at 8) that there are alternative fact-intensive explanations for the lack of a stock-price reaction, including that Tesla's stock already had declined prior to August 13.  But this only demonstrates that the question is one for the jury.  Moreover, such argument does not render the lack of a price impact on August 13 irrelevant, confusing, or prejudicial, particularly given that Plaintiff does not argue that the "truth" was revealed ***prior*** to August 13 or that investors were aware of the information contained in the August 13 blog post ***prior*** to August 13.  Plaintiff's reiteration (Br. at 5) of his summary-judgment argument that the lack of a price reaction on August 13 was due to further purported misrepresentations or omissions in the blog post simply identifies a factual dispute.  And, of course, the supposed new misrepresentation presupposes an omission regarding supposed "friction" with PIF, which this Court already has held is a factual dispute for trial.  (Dkt. 387 at 29-30.)  Indeed, the sole "evidence" on which Plaintiff relies for the notion that the supposed new misrepresentation prevented Tesla's stock from declining upon the revelation on August 13 that Mr. Musk had "lied" regarding the state of funding

are analyst reports (including the CFRA report), which remained optimistic regarding the probability of a go-private transaction. (Br. at 5.) But nothing in those analyst reports indicates there was any "lie" as opposed to Mr. Musk's truthful description of the status of funding that provided them with optimism regarding the potential deal (thus providing evidence they were not material in the first place).

*Finally*, Plaintiff confusingly claims (Br. at 5) that the lack of any negative stock reaction to the August 13 blog post is not evidence regarding the materiality of the alleged misstatements because Tesla's volatility did not return to its pre-tweet levels until August 17. Plaintiff's argument appears to be that volatility returned to pre-tweet levels only when the market discounted the probability of a go-private transaction to zero, which, according to Plaintiff, is necessarily when the market learned the "truth" regarding Mr. Musk's tweets. But this argument inappropriately assumes the facts Plaintiff must prove, including when the market learned the facts necessary to assess the accuracy of Mr. Musk's statements. And this argument further assumes that volatility was due only to the specific misstatements at issue (and not any other information). Even if Plaintiff may use his volatility argument in support of materiality, he cannot use it to exclude contrary evidence of immateriality.

At bottom, this evidence—including a lack of price reaction to Mr. Musk's August 13 blog post—is deeply probative of whether the at-issue portions of Mr. Musk's tweets were material, and its admission will not cause confusion or undue prejudice. The jury may accept Plaintiff's explanations for why there was no price reaction, why Plaintiff thought the August 13 blog post was "consistent" with "funding secured," and why market analysts viewed the August 13 blog post favorably, but the jury should make that determination based on all of the evidence, not just one side. *Smilovits v. First Solar, Inc.*, 2019 WL 6698199, at *3 (D. Ariz. Dec. 9, 2019) (denying motion *in limine* where plaintiff could argue weight of evidence to jury).

### 2. Evidence From Which A Jury Could Conclude The At-Issue Portions Of The Tweets Did Not Cause Plaintiff's Alleged Losses Should Not Be Excluded

Plaintiff also is wrong to assert that Defendants should be foreclosed from offering evidence concerning "Tesla's stock price following the August 13 blogpost" (Br. at 8) in connection with loss causation.

While Plaintiff argues that, in *In re Gilead Sci. Sec. Litig.*, 536 F.3d 1049, 1058 (9th Cir. 2008), "the Ninth Circuit held that the absence of a decline in the price of a stock following a corrective disclosure does not prove that a prior misrepresentation was immaterial or otherwise disprove that the misrepresentation caused damages" (Br. at 8-9), that case does not indicate that such evidence lacks probative value. Rather, the Ninth Circuit held only that "[a] limited temporal gap between the time a misrepresentation is publicly revealed and the subsequent decline in stock value does not render a plaintiff's theory of loss causation ***per se implausible***." 536 F.3d at 1058 (emphasis added). Plaintiff thus errs in asserting that "[t]he Ninth Circuit in *Gilead* expressly rejected the argument being posited by Defendants, here, which is that a stock price decline must occur immediately following a corrective disclosure." (Br. at 9.) The question here is not whether Defendants can show Plaintiff's theory is implausible, but whether the evidence is relevant to the jury's assessment of loss causation. It plainly is. Such evidence would not lead to confusion or undue prejudice under the applicable legal test, and Plaintiff's theories for the lack of a price reaction do not render such evidence excludable under FRE 403.

Moreover, Plaintiff's argument is a transparent attempt to lure the Court into excusing Plaintiff from carrying its burden to prove loss causation. Plaintiff asserts that "Defendants should not be allowed to impose a burden … requiring Plaintiff to ***specify which portion of the tweets caused Tesla's securities prices to react***." (Br. at 10 (emphasis added).) In other words, Plaintiff wants to exclude the evidence of materiality because he does not want to be held to his burden of proving "which part of the tweet" (the truthful portion or the allegedly materially false portion) "caused his damages." (Br. at 2.) But, to prove loss causation, Plaintiff must demonstrate "a causal connection between the material misrepresentation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). That is because the securities laws are not intended "'to provide investors with broad insurance against market losses, but to protect them against those ***economic losses that misrepresentations actually cause***.'" *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1119 (9th Cir. 2013) (quoting *Dura*, 544 U.S. at 345). Thus, because there are a "tangle of factors that affect" market prices, "evidence that certain misrepresented risks are responsible for a loss ***must reasonably distinguish the impact of those risks from other economic factors***" such as "'changed economic circumstances, changed investor expectations, [or]

new industry-specific or firm-specific facts.'" *Id.* at 1123 (quoting *Dura*, 544 U.S. at 343).[2] Indeed, the very authority on which Plaintiff relies as the basis for his own expert's loss-causation model, (*see* Ex. J at 3), explicitly holds that a loss-causation model must "adequately account for the possibility that firm-specific, nonfraud related information may have affected the decline in [Defendant's] stock price." *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 423 (7th Cir. 2015).

In the face of this clear law, Plaintiff argues he need not show whether the allegedly materially false portions of Mr. Musk's tweets caused any of his loss because a "misrepresentation needs only to be a 'substantial factor' in causing economic loss." (Br. at 10.)  But Plaintiff's proposed standard would render the "substantial factor" requirement meaningless because it would remove Plaintiff's obligation to connect the alleged misstatements to the losses at all, instead requiring only a statement and a price decline but no connection.  The Ninth Circuit has rejected such an approach, holding that the "substantial factor" requirement does not dispense with the need for Plaintiff to account for confounding information, such as "inflation" due to *true statements*.  *Nuveen*, 730 F.3d at 1123 (holding plaintiff failed to demonstrate misrepresentations were "a substantial factor in causing its loss" where no evidence "reasonably distinguish[ing] the impact of [the undisclosed] risks from other economic factors").  Indeed, Plaintiff's proposed standard is at odds with Plaintiff's correct concession at summary judgment that loss causation is "a question for the jury" to decide based on evidence regarding how much the market moved "in response to ***the particular statements … that may be found to be false or fraudulent***" versus "those that weren't." (Ex. K at 20:18-21:3 (emphasis added).)

Accordingly, Plaintiff's arguments for excluding evidence regarding the August 13 price impact fail when considered in the context of loss causation as well.

---

[2]  *See also In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1273-74 (S.D. Cal. 2010) (loss causation expert "fail[ed] to separate the loss caused by the disclosure of corrective information (new, negative, company-specific, revealing a prior misrepresentation or omission) from loss caused by the disclosure of other company-specific information"); *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 554 (S.D.N.Y. 2008) (similar), *aff'd*, 597 F.3d 501 (2d Cir. 2010); *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Bos.*, 853 F. Supp. 2d 181, 191 (D. Mass. 2012) (similar), *aff'd*, 752 F.3d 82 (1st Cir. 2014); *In re Sci. Atl., Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379 (N.D. Ga. 2010) (similar), *aff'd*, 489 F. App'x 339 (11th Cir. 2012).

## II. PLAINTIFF'S MOTION IS PROCEDURALLY IMPROPER

Even assuming Plaintiff's arguments had merit (they do not), Plaintiff's motion *in limine* is an improper attempt to extend the Court's summary judgment decision to issues the Court did not decide—materiality and loss causation—and should be rejected for this reason as well.

Parties may bring motions *in limine* to limit or exclude evidence that is inadmissible or prejudicial. *Azco Biotech, Inc. v. Qiagen, N.V.*, 2015 WL 12516204, at *1 (S.D. Cal. Nov. 12, 2015). A motion *in limine* is not an opportunity to litigate substantive issues, however, and a court may summarily deny such a motion where it is merely "disguised as a motion *in limine*." *Madrigal v. Allstate Indem. Co.*, 2015 WL 12746232, at *1 (C.D. Cal. Oct. 29, 2015) (internal quotations omitted). Where a purported motion *in limine* "calls for a decision on the merits" or seeks partial summary judgment, it is improper on its face, and the court "should decline to consider it." *Azco*, 2015 WL 12516204, at *1; *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) ("[M]otions *in limine* should not be used as disguised motions for summary judgment.").

As to both materiality and loss causation, Plaintiff's motion *in limine* effectively asks the Court to weigh the evidence, determine Plaintiff's evidence is stronger, and therefore exclude Defendants' evidence. But, as the Court recently made clear as to materiality, the jury must decide factual disputes on materiality (Ex. F 4:14-17), which the Plaintiff stated he was "happy to take" "to the jury" and would "accept" this Court's clarification of its summary judgment decision. (*Id.* at 12:15-20.)

In the context of loss causation, Plaintiff argues similarly that "Defendants cannot be allowed to impugn Plaintiff's theory of causation by pointing to Tesla's stock price movement on August 13, 2018." (Br. at 9.) But a motion *in limine* is not a device by which Plaintiff can attempt to excise from the trial key facts the Court has recognized create triable issues for the jury. (Dkt. 387 at 32 (citing the August 13 blog post as evidence that "the reaction to the tweets on 8/7/2018 was a response to Mr. Musk contemplating taking Tesla private and not to statements that, *e.g.*, funding was secured or investor support confirmed").) Particularly given Plaintiff's prior "conce[ssion]" that loss causation is "a question for the jury," (Ex. K 20:18-21:3), the Court should reject Plaintiff's arguments as to loss causation.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion.

DATED: June 30, 2022          Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Alex Spiro*
    Alex Spiro *(appearing pro hac vice)*

*Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, And Linda Johnson Rice*