QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (*appearing pro hac vice*)
  alexspiro@quinnemanuel.com
  Andrew J. Rossman (*appearing pro hac vice*)
  andrewrossman@quinnemanuel.com
  Ellyde R. Thompson (*appearing pro hac vice*)
  ellydethompson@quinnemanuel.com
  Jesse Bernstein (*pro hac vice* forthcoming)
  jessebernstein@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

  Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

  Kyle Batter (Bar No. 301803)
  kylebatter@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000

*Attorneys for Defendants Tesla, Inc., Elon Musk,
Brad W. Buss, Robyn Denholm, Ira Ehrenpreis,
Antonio J. Gracias, James Murdoch, Kimbal Musk,
And Linda Johnson Rice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**DEFENDANTS' OBJECTION AND RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY** |

Defendants write to object and to respond to Plaintiff's notice of supplemental authority (Dkt. 465) regarding Defendants' motion to exclude the opinions of Dr. Michael Hartzmark.  As discussed in Defendants' motion, approximately 66 percent of the damages Plaintiff seeks are described by Plaintiff as "consequential effects" that would not have occurred had a (according to Plaintiff) truthful disclosure occurred on August 7, 2018. Dkt. 451 at 2-3.  Plaintiff cited no case in his opposition brief that permits such damages where the relevant question is what the buyer would have paid "had there been ***no fraudulent conduct***." *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 155 (1972) (emphasis added).  And despite additional digging after the hearing, none of Plaintiff's supplemental authorities—which were neither cited in Plaintiff's opposition nor during argument on Defendants' motion—supports Plaintiff's damages request. *See* Local Rule 7-3(d) (barring supplemental material after reply).  Plaintiff's approach to damages remains unprecedented and improper.

*First*, none of Plaintiff's authorities involved a situation, like here, where the purported "consequential" or "collateral" effects depend on the alleged fraud ***occurring***.  Instead, each of the purportedly "collateral" effects identified in Plaintiff's authorities would have occurred had the ***truth*** been disclosed originally rather than the alleged misstatements.  In *Waggoner v. Barclays PLC,* the truthful disclosure that Barclays was engaged in the types of business practices that would expose it to regulatory action and fines caused the company's stock price to decline.  875 F.3d 79, 106 (2d Cir. 2017).  In *Baker v. SeaWorld Ent., Inc.* the purportedly "collateral" effects were simply the market's realization that SeaWorld's brand and reputation had been negatively impacted by the movie Blackfish, which had been concealed by the company. 423 F. Supp. 3d 878, 907 (S.D. Cal. 2019).  And in *In re Vivendi Universal, S.A. Sec. Litig.* the purportedly "collateral" effect of a rating agency downgrade would have occurred had the company truthfully disclosed its liquidity issues originally rather than concealing them from investors. 634 F. Supp. 2d 352, 372 (S.D.N.Y. 2009).

In contrast to the cases cited by Plaintiff—all of which involve situations where the "collateral effects" were the product of the truth rather than of the alleged fraud—here the "collateral effects" or "consequential harm" would ***not*** have occurred had Mr. Musk made what Plaintiff considered a completely truthful disclosure on August 7, 2018 on the status of discussions with the Saudi fund.  Thus,

unlike Plaintiff's citations, the purportedly consequential harms here would not have occurred absent the alleged fraud.

*Second*, each of the purportedly "collateral effects" in the cases cited by Plaintiff revealed curative information regarding the alleged misrepresentations. *Waggoner*, 875 F.3d at 106 (Barclays' misrepresentations regarding its management revealed by Attorney General Complaint); *Baker v. SeaWorld*, 423 F. Supp. 3d at 900 (company press release revealed negative impact to attendance from Blackfish); *Vivendi*, 634 F. Supp. 2d at 372 (rejecting Defendants' argument that rating agency downgrade contained no new information since "rating agencies have access to non-public information, and the public could have assumed that the agencies were acting on such information"). Here, by contrast, Plaintiff relies on events that contained no curative information, such as a securities class action based entirely on public information. Dkt. 451 at 9. As Plaintiff's own authority recognizes, "[a] recharacterization of previously disclosed facts cannot qualify as a corrective disclosure." *Vivendi*, 634 F. Supp. 2d at 372 (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 552 (S.D.N.Y. 2008)).[1]

*Finally*, Plaintiff's authorities did not involve a situation, like this one, where Plaintiff claimed there was an observable and reliable measure of front-end inflation directly caused by the alleged misrepresentations. *See, e.g.*, *Waggoner*, 875 F.3d at 88 ("Plaintiffs asserted . . . that the price of Barclays' ADS had been 'maintained' at an inflated level"). Thus, in those cases, the plaintiffs sought to "try to prove the amount of inflation indirectly: They point to a negative disclosure about a company and an associated drop in its stock price; allege that the disclosure corrected an earlier misrepresentation; and ***then claim that the price drop is equal to the amount of inflation maintained by the earlier misrepresentation***." *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1961 (2021) (emphasis added); *see also id.* ("[P]rice impact is the amount of price inflation maintained by an alleged misrepresentation—in other words, the amount that the stock's price would have fallen "***without the false***

---

[1] Notably, by August 13, 2018, Tesla's stock had returned to its pre-announcement price and all of the purported "consequential effects" Plaintiff identified at oral argument (i.e., the announcement of an SEC investigation and purported concerns regarding internal controls) had already occurred. Thus, Plaintiff's request for consequential effects based on events after August 13 is simply an attempt to recover for losses that are, at most, the result of a "recharacterization of previously disclosed facts," which Plaintiff's own authority recognizes cannot be recovered.

*statement*.") (emphasis added).  Here, Plaintiff claims there was an observable stock increase of $23.27 following the alleged misrepresentations.  *See* Dkt. 451 at 2-3.  Thus, there is no need to rely on indirect evidence regarding the stock reaction to the purported corrective disclosures to determine what the stock price would have fallen without the allegedly false statements:  it is—at most—the $23.27 of inflation Plaintiff claims occurred as a result of the alleged misrepresentations.

      Defendants are available to provide further briefing on the issues raised in Defendants' *motion in limine* No. 2 should the Court request such briefing.

                                      Respectfully submitted,

                                      QUINN EMANUEL URQUHART & SULLIVAN, LLP

DATED:  August 1, 2022

                                      By: */s/ Alex Spiro*
                                          Alex Spiro *(appearing pro hac vice)*

                                      *Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss,*
                                      *Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias,*
                                      *James Murdoch, Kimbal Musk, And Linda Johnson Rice*