# EXHIBIT C

# JOINT STATEMENT – EVIDENTIARY RULINGS

Pursuant to Paragraph B.7. of the Court's Civil Pretrial Instructions, the parties hereby each identify fifteen of the opposing party's exhibits for which the identifying party seeks rulings on objections in advance of trial.

## I. Plaintiff's Challenges

| No. | Exhibit No. | Objections |
|---|---|---|
| 1 | Deposition Exh. 76 | This exhibit, an email dated April 15, 2017 regarding discussions with members of the Saudi PIF, and other similar exhibits concerning meetings with members of the Saudi PIF in 2017 and prior to the July 31, 2018 meeting, are no longer relevant to the claims because of the Court's Summary Judgment Order. Any evidence or testimony regarding the truth of the statements or Mr. Musk's state of mind when making the tweets are irrelevant to the remaining elements of Plaintiff's claims.<br><br>Additionally, allowing Defendants to argue or introduce evidence or testimony that contradicts this Court's Summary Judgment Order would create a high risk of juror confusion, invite the jury to draw impermissible inferences, and would lead to a "mini-trial" on a collateral issue that has already been decided by the court and waste time. Accordingly, any limited probative value of the evidence or testimony of Mr. Musk would be substantially outweighed by the risk of undue prejudice.<br><br>The sole purpose for which these exhibits relating to events prior to August 7, 2018 could be used is to argue that the August 7, 2018, tweets were true or that Mr. Musk believed them to be true. The issues of falsity and scienter have already been decided by the Court. Accordingly, these exhibits relating to prior communications with the Saudis are of no "consequence in determining the action" (Fed. R. Evid. 401), and Defendants should be precluded from offering any evidence that contradicts this Court's Summary Judgment Order, including that the August 7, 2018, tweets were true, that Mr. Musk believed them to be true, or that Mr. Musk did not act recklessly.<br><br>Even if the Court decides exhibits that contradict the Court's Summary Judgment Order are relevant, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, . . . [or] wasting time . . . .". Fed. R. Evid. 403. Evidence that contradicts the Court's Summary Judgment Order would confuse and mislead the jury as to the remaining issues in this case.<br><br>Other objectionable exhibits which Plaintiff seeks a ruling on |

| | | | |
|---|---|---|---|
| | | | involving prior communications with or regarding the Saudis include Deposition Exhibits 106, 108, D-0005, D-0122, D-0123, D-0124, D-0125, D-0126, D-0127, D-0128, D-0129, D-0130, D-0145, D-0169, D-0170, D-171, D-0173. |
| | 2 | Deposition Exh. 356 | This exhibit is an August 22, 2018 email memo reflecting an interview between JB Straubel, a co-founder of Tesla, and NY Times reporter David Gelles. David Arnold, Tesla Senor Director of Global Communications, sat in on the interview and this memo reflects his notes, which he emailed to himself.<br><br>Mr. Straubel gave the interview to Mr. Gelles to address an August 16, 2018 NY Times article reflecting an interview with Mr. Musk which raised concerns about Mr. Musk's then current physical, mental and emotional health. The JB Straubel interview was intended to ameliorate some of the concern within the marketplace and paint Mr. Musk in a positive light.<br><br>This exhibit, to the extent it reflects an attempt to portray Mr. Musk in a specific, favorable light, constitutes inadmissible character evidence under Fed. R. Civ. Evid. 404 and 406. In addition, the email memo constitutes inadmissible hearsay within hearsay. |
| | 3 | Deposition Exh. 384 | This exhibit is comprised of 3 pages downloaded from the Wikipedia internet site and presented to Plaintiff's expert, Professor Joshua Mitts, during his deposition. Professor Mitts had/has never previously seen the exhibit material; he did not download the material from the internet and its provenance is unknown.<br><br>With this background, the exhibit cannot be authenticated by any witness who will be called at trial, either live or by deposition. Accordingly, this document is inadmissible under Fed. R. Civ. Evid. 901 and is not subject to self-authentication per Fed. R. Civ. Evid. 902.<br><br>In addition to being inadmissible for lack of authentication, the exhibit constitutes inadmissible hearsay. Further, nothing within this exhibit has a tendency to make a fact of consequence more or less probable in the case. As such, this exhibit is not relevant under Fed. R. Civ. Evid. 401 and is inadmissible under Fed. R. Civ. Evid. 402.<br><br>Other similarly situated exhibits comprised of material downloaded from the internet by unknown persons include Deposition Exhibits 385, 387- 414 and Exhibits D-0356 -- D-0359. |

| | | |
|---|---|---|
| 4 | Deposition Exh. 386 | This exhibit, a tweet from @Tesla Chart FUD, and the subsequent tweets up to Exh. 412 which were shown to Professor Joshua Mitts at his deposition, are subject to numerous evidentiary issues which should preclude their admissibility. First, there is no one on the parties' witness lists who is able to authenticate such tweets and lay a foundation for their admissibility. This document is, accordingly, inadmissible under Fed. R. Civ. Evid. 901 and is not subject to self-authentication per Fed. R. Civ. Evid. 902.<br><br>In addition to being inadmissible for lack of authentication, the exhibit, and the similar subsequent tweets, constitute inadmissible hearsay. Further, nothing within this exhibit has a tendency to make a fact of consequence more or less probable in the case. As such, this exhibit is not relevant under Fed. R. Civ. Evid. 401 and is inadmissible under Fed. R. Civ. Evid. 402.<br><br>The other exhibits involving similar tweets that Plaintiff seeks a ruling on include Deposition Exhibits 385, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 403, 404, 405, 406, 407, 408, 409, 410, 411, and 412. |
| 5 | Deposition Exh 430 | This exhibit is an email dated July 7, 2017 between Plaintiff and a representative of his trading platform. This action concerns alleged misrepresentations made by defendants from August 7, 2018 to August 17, 2018 and the economic harm suffered by Tesla, Inc. investors as a result. Events prior to the Class period and after the expiration of the statutory 90-day lookback period after the end of the Class Period are irrelevant to the issues in this proceeding. Pursuant to the PSLRA, a plaintiff's damages are limited to the difference between the purchase price and "the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." *See* 15 U.S.C. §78u-4(e)(1). As such, this exhibit and similar exhibits are not relevant under Fed. R. Civ. Evid. 401 and inadmissible under Fed. R. Civ. Evid. 402. In addition, the exhibit is subject to the rules of hearsay, making it inadmissible.<br><br>Even when relevant, Rule 403 directs that evidence should be excluded where its probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, any relevance that Plaintiff's pre-Class Period or Post-Class Period trades may have in this case is substantially outweighed by a danger of unfair prejudice and confusing the issues. |

| | | |
|---|---|---|
| | | Plaintiff's Post-Class Period trades may unfairly prejudice Plaintiff or confuse the issues because it may lead a jury to believe that because Plaintiff has subsequently made money trading Tesla securities, he is not entitled to recovery. Similarly, the fact that Tesla's stock price has increased since the end of the Class Period would unfairly prejudice Plaintiff and confuse and mislead the jury,<br><br>Other exhibits involving Plaintiff's Pre and Post-Class Period trades that Plaintiff seeks ruling on include Deposition Exhibits 438, 440, 441 and Exhibits D-0069, D-0070, D-0071, D-0072, D-0073, D-0199, D-0234, D-0235, D-0236, D-0237, D-0238, D-0239. |
| 6 | Deposition Exh. 437 | This exhibit is a Plaintiff's email dated October 2018 and reflects communications with a Tesla representative concerning payment and delivery issues for Tesla product ordered by Plaintiff. Plaintiff's Tesla delivery issue is not relevant under Fed. R. Civ. Evid. 401 and the exhibit contains no information which might even remotely make a fact of consequence more or less probable. Accordingly, it is inadmissible under Fed. R. Civ. Evid. 402. In addition, the exhibit is subject to the rules of hearsay, making it inadmissible.<br><br>Other similarly irrelevant emails concerning delivery of Tesla vehicles, general Tesla vehicle ownership and/or attributes of Tesla vehicles that Plaintiff seeks a ruling on include Deposition Exhibit 439 and Exhibits D-0080, D-0198, D-0226, D-0227, D-0242, D-0243, D-0244, D-0245, D-0246, D-0247, D-0248, D-0249, D-0250, D-0251, D-0252, D-0253, D-0254, D-0255, D-0256, D-0258, D-0259, D-0260, D-0262, D-0263, D-0265, D-0266, D-0269--D-0290, D-0292-D-0294, D-0299, D-0316 and D-0321. |
| 7 | Exh. D-0094 | This exhibit is an amalgamation of data from multiple expert reports compiled into chart form; it characterizes a group of documents that misrepresents the opinions and analysis of Plaintiff's expert, Professor Steven Heston. This exhibit and the related exhibits purport to show price levels supposedly derived from Professor Heston's expert report and analysis. However, Professor Heston's analysis explicitly looks at changes in price levels, which is not what the chart exhibit shows. In the absence of an alternative methodology by either of Defendants' experts, this exhibit is misleading and inadmissible under Fed. R. Civ. Evid 403.<br><br>Other similarly situated exhibits comprised of misleading data amalgamations include Exhibits D-0091, D-0092, D-0093, D-0095, D-0096, D-0097, D-0098, D-0099, D-0100, D-0101, D-0102, D-0200, D-0201, D-202 and D-0203. |

| | | | |
|---|---|---|---|
| 1-5 | 9 | Exh. D-0197 | This exhibit is Plaintiff's Amended Complaint which contains no evidence tending to make a fact of consequence in this matter more or less probable.  Accordingly, the exhibit is not relevant under Fed. R. Civ. Evid. 401 and is inadmissible under Fed. R. Civ. Evid. 402.<br><br>Other similarly situated exhibits comprised of pleadings or other court filing include Exhibits D-0225 and D-0343. |
| 6-10 | 9 | Exh. D-369 | This exhibit is a picture that purports to be of Yasir al-Rumayyan, a representative of the Saudi PIF. The picture has an unknown provenance and further, the exhibit contains no information tending to make a fact of consequence in this matter more or less probable. As such, the exhibit is not relevant under Fed. R. Civ. Evid. 401 and is inadmissible under Fed. R. Civ. Evid. 402.<br><br>Other similarly situated exhibits comprised of irrelevant pictures of unknown provenance include Exhibits D-370 and D-371. |
| 11-28 | 10 | Exh. P-310 – P-407, *inter alia* (and other similar news articles and analyst reports) | Plaintiff has included a series of articles from *inter alia* newspapers, websites, and journals on his exhibit list that were examined by Plaintiff's expert, Dr. Michael J. Hartzmark in connection with his assessment of the market's response to Mr. Musk's August 7, 2018 tweets, and the subsequent dissemination of information regarding the potential going private transaction by Mr. Musk and Tesla. Defendants have objected to all of these articles on the bases of authenticity, foundation, knowledge, hearsay, and relevance. Some articles have elicited additional objections. Plaintiff intends to use these articles for the limited purpose of showing what was being published at the time.<br><br>With respect to authenticity, parties prove authenticity when they adduce sufficient evidence to support a finding that an item is what that party claims it to be. F.R.E. 901(a). Periodicals, trade publications, scientific and academic journals with a regular circulation schedule all come within the definition of a periodical for self-authentication purposes under Fed. R. Evid. 902. Newspapers and magazines are self-authenticating. With respect to other articles, Dr. Hartzmark will be able to testify to the authenticity of the article as indicated in the appendices of his report.<br><br>With respect to foundation and knowledge, Dr. Hartzmark will testify these are the sort of publicly available documents ordinarily used by experts when determining materiality. Indeed, the "total mix" of information includes news stories and other publicly available information generated due to the corporate event in question, thus making this document relevant to proof of materiality since this document is part of the information mix. *Seibert v. Sperry Rand* |

*Corp.*, 586 F.2d 949, 952 (2nd Cir. 1978). F.R.E. 703 provides an expert may base an opinion upon facts or data that experts in the field would reasonably rely in forming an opinion on the subject. Dr. Hartzmark lists these articles in Appendix 2 of his Expert Report, "Materials Relied Upon." Further, he will opine that using articles such as these ones is reliable, have been subject to peer-review, and are commonly used by experts in his field when forming an opinion of this sort. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

With respect to hearsay, these documents are not being offered for the truth of the matter asserted. Rather, they are being offered for the fact that it was said, and the impact that the statement itself had on the total mix of information about Tesla, rather than for the truth of the matter asserted in the documents. *See Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2cd Cir. 1978) (stating news stories and other publicly available information generated due to a corporate event constitute part of the information mix).

Finally, these articles, and others like these ones, are clearly relevant under F.R.E. 401 as it demonstrates the public's reaction to, digestion of, and interpretation of Mr. Musk's August 7, 2018 tweets.

The articles referenced by Dr. Hartzmark go directly to the issue of materiality, a critical element of Plaintiff's case. Going forward, and in an effort to promote efficiency and expediency with expert testimony, Plaintiff seeks a ruling that such news articles are admissible. Plaintiff further notes that Defendants have included a number of similar news articles on their exhibit list.

## II. Defendants' Challenges

| No. | Exhibit No. | Objections |
|---|---|---|
| 1 | Deposition Ex. 58 | This exhibit is an August 7, 2018 email between Martin Viecha and a single buy-side analyst regarding Mr. Viecha's understanding as to the meaning of "funding secured," which Mr. Viecha stated he "actually d[idn't] know" the meaning of. This exhibit is similar to other exhibits on Plaintiff's proposed exhibit list, including Exhibits 150 and 151, where Mr. Viecha is responding to investor inquiries regarding Mr. Musk's August 7 tweet.<br><br>The exhibit is not relevant to what representations were made by Mr. Musk or Tesla and whether they were materially false statements. Indeed, Plaintiff does not pursue the statements contained in this email as misrepresentations by Mr. Viecha, Mr. Musk, Tesla, or anyone else. Nor does Plaintiff allege that this email was somehow conveyed to the market and baked into Tesla's stock price. Thus, it has no relevance and is inadmissible. Fed. R. Evid. 401, 402.<br><br>To the extent the exhibit has any nominal relevance, its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time. *Id.* 403. Specifically, the jury will be confused and misled regarding whether Mr. Musk or Tesla informed investors that "funding secured" meant there was a "firm offer" that was "as firm as it gets." They did not. And, indeed, Plaintiff does not allege that Mr. Musk or Tesla made any misrepresentation by telling investors that there was a "firm offer" that was "as firm as it gets." |
| 2 | Deposition Ex. 80 | This is a deposition exhibit purportedly reflecting notes taken by an unidentified employee of the Saudi Arabian Public Investment Fund ("PIF") during a July 31, 2018 meeting at Tesla's Fremont, California factory.<br><br>Plaintiff will not be able to authenticate or lay a proper foundation for admission of this document, barring the appearance at trial of an employee of the PIF who can testify that he created this document or at the very least directed that this document be created following the July 31 meeting. Mssrs. Musk, Ahuja, and Teller cannot authenticate this document. Ahuja and Teller confirmed as much at their depositions. Ahuja Dep. Tr. 79-81; Teller Dep. Tr. 147-48. It is therefore not admissible. Beyond that, the notes contained in this document—which clearly do not represent a verbatim account of the meeting on July 31—contain inadmissible hearsay under Rules 801 and 802. Plaintiff undoubtedly will seek to introduce this document to assert the truth of statements purportedly made by Yasir Al-Rumayyan, a senior official at the PIF, along the lines that he "would like to see where we can collaborate with you [meaning Elon Musk] |

| | | |
|---|---|---|
| | | and I would like to listen more about your plan to take it private." Plaintiff will offer that evidence to suggest this is the full extent of what Mr. Al-Rumayyan said on July 31, in an attempt to soften the commitment Mr. Al-Rumayyan made to Elon Musk during that meeting. The rule against hearsay prohibits such use, and Plaintiff will not be able to establish any exception to that bar on admissibility. Plaintiff can provide no evidence that this document was created contemporaneously with the July 31 meeting, as would be required to establish that the document constitutes a present sense impression, recorded recollection, or business record. *See* Fed. R. Evid. 803(1), (5), (6). And without a competent testifying custodian, Plaintiff cannot introduce this document under the business records exception. Fed. R. Evid. 803(6)(D).<br><br>In addition, assuming the document was not inadmissible hearsay, it should nonetheless be excluded under Rule 403 because it is substantially more prejudicial than it is probative, and it risks confusing or misleading the jury. The probative value of the document is minimal, at best. It purports to be notes from the July 31 meeting, yet it reduces that substantial meeting, which also involved a tour of Tesla's massive Fremont, CA factory, into less than two pages of substance. Such a document is not a reliable or trustworthy account of the July 31 meeting—a critical event in this case. On the other side of the Rule 403 coin, this document poses a substantial risk of misleading or confusing the jury into believing it is indeed a verbatim account of the conversations, when there is otherwise no evidentiary basis to conclude that. To the contrary, witnesses present at the meeting have already questioned the accuracy of many of the notes in this document in sworn testimony. Ahuja Dep. Tr. 80-86; Teller Dep. Tr. 154-58. The jury should hear live and in person about what happened at the meeting from those trial witnesses who actually attended. A one-and-a-half page, unauthenticated piece of paper is no substitute for competent evidence, and it should be excluded. |
| 3 | Ex. 164 | This is a deposition exhibit announcing Tesla's wholly unrelated acquisition of a company called Solar City. Plaintiff should not be permitted to introduce any exhibits or testimony concerning the Solar City acquisition or subsequent litigation (or any other litigation involving Tesla or Elon Musk). Such evidence has no relevance to the securities fraud claims at issue here.<br><br>First, the Solar City acquisition by Tesla was an entirely different type of transaction than what Mr. Musk proposed with respect to taking Tesla private. The Solar City deal was an all-stock transaction and merger of two companies. The contemplated transaction at issue in this case, on the other hand, was not a merger at all. Instead, it was a plan to take Tesla private or "delist" Tesla from the Nasdaq exchange with a unique and complex structure that would involve |

| | | |
|---|---|---|
| | | certain shareholders' stakes being bought out while other investors would remain shareholders in the private company. Thus, any evidence regarding the Solar City deal, including the processes followed or steps taken to initiate, announce, and consummate the transaction are irrelevant to this case and have the potential to mislead and confuse the jury into believing they should be comparing one transaction against another when deciding whether Mr. Musk's statements were materially false. This evidence should be excluded under Rules 401, 402, and 403.<br><br>Relatedly, any evidence of subsequent litigation regarding the Solar City deal is similarly inadmissible. Defendants have made this clear in their Motion *In Limine* No. 4 to Exclude Evidence of the SEC Complaints and Settlement. The same reasons for exclusion expressed in that motion apply to litigation involving the Solar City acquisition: it is not relevant and poses a substantial risk of prejudicing Defendants by painting them as frequently involved in litigations, misleading or confusing the jury by suggesting the Solar City litigation and the present case are somehow connected, and wasting valuable trial time and resources with a mini-trial regarding a wholly unrelated legal dispute. *See, e.g.*, *Grace v. Apple, Inc.*, 2020 WL 227404, at *2 (N.D. Cal. Jan. 15, 2020) (excluding evidence regarding prior litigations); *Munoz v. PHH Mortg. Corp.*, 2022 WL 88497, at *2-3 (E.D. Cal. Jan. 7, 2022) (similar). |
| 4 | Deposition Ex. 171 | This exhibit is an August 16, 2018 New York Times article that discusses Mr. Musk's physical and emotional health. In addition, the article includes a statement—attributed to no one—that "it turned out funding was far from secure." Plaintiff intends to rely on this document in an attempt to demonstrate that "the truth" regarding Mr. Musk's allegedly false tweets was not fully "corrected" until the New York Times article was published and incorporated into Tesla's stock price on August 17, 2018 (the first trading day after the publication of the New York Times article). The article should be excluded for two fundamental reasons: (1) it is inadmissible hearsay; and (2) it is legally irrelevant to Plaintiff's claims.<br><br>Plaintiff intends to use Exhibit 171 for the truth of the matter asserted in the article. Namely, that funding was supposedly "far from secure." But statements in the New York Times article are classic hearsay. *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050, at *8 (N.D. Cal. June 19, 2009) (news articles and analyst reports "constitute hearsay as they are out of court statements offered to prove the truth of the matter asserted"). Indeed, the articles may constitute hearsay within hearsay to the extent the "far from secure" language—despite not being in quotes or being attributed to anyone—was in fact attributed to some unnamed person. In that scenario—with no way of knowing the actual source of the "quote"— |

| | | it is doubly inadmissible. |
|---|---|---|
| | | Moreover, even ignoring the hearsay issues, because it was—as it appears on its face—a statement attributed to the authors of the article, it is simply a "negative journalistic characterization of previously disclosed facts," *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010), which are not relevant to loss causation and therefore provide an independent basis for exclusion. |
| | | Accordingly, the August 16, 2018 New York Times article—as well as any documents the reference or rely on the content of the article, including for example Exhibit 198—should be excluded. |
| 5 | Deposition Ex. 218 | Exhibit 218 is a communication between the Nasdaq stock exchange and Tesla.  This communication is irrelevant to this case, contains hearsay statements, and poses a substantial risk of unfair prejudice or confusing or misleading the jury.  Similar exhibits include Exhibit 219. |
| | | Plaintiff seeks to introduce this communication between Tesla and Nasdaq discussing the brief trading halt imposed by Nasdaq on August 7, 2018, in order to demonstrate material falsity.  However, the imposition of a trading halt on August 7, 2018, as described in Exhibit 218, is irrelevant to this case.  It is not probative in any sense of whether Mr. Musk's statements that day were materially false or misleading under the securities laws.  Yet a jury may improperly infer that Nasdaq's decision to halt trading indicates that Nasdaq viewed Mr. Musk's statements as materially false or otherwise improper.  Given that Nasdaq is a well-known stock exchange with regulatory authority, any supposition by the jury that Nasdaq was condemning Mr. Musk's statements, as opposed to merely taking a routine step in response to unusually large stock-price movements, would unfairly prejudice Defendants and mislead the jury.  Nor does the fact of a trading halt have any bearing on class damages.  This exhibit and similar communications with Nasdaq, both in letters and in emails, should be excluded under Rules 401 and 403. |
| 6 | Deposition Ex. 320 | This exhibit is a June 6, 2017 tweet by Mr. Musk, stating "A little red wine, vintage record, some Ambien ... and magic!" which has been reported to purportedly regard his "Twitter habits." (*See* Ex. 319.) Exhibits put forward by Plaintiff on the same topic include Exhibits 319 and 348. |
| | | As argued by Plaintiff in his Motion *in Limine* No. 5, Mr. Musk's post-class period character evidence "is not relevant and should be excluded." *Id.* at 3.  Likewise, Plaintiff insists that he "has not launched–and does not intend to launch–any independent attacks on the Defendants' character." *Id.* at 5.  Pre-class period character |

| | | | |
|---|---|---|---|
| | | | evidence should be treated no differently. Thus by Plaintiff's own articulation, Exhibit 320 (and other similar exhibits including Exhibit 319) is not relevant to any issue in this case, and should be excluded from use at trial.<br><br>Moreover, even if the exhibit was relevant (it is not), its probative value is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403. The exhibit is unfairly prejudicial because any use of it (and others like it) will cast Mr. Musk in a bad light, and lead to the unfair and unsupported inference that Mr. Musk is intoxicated when he uses Twitter, and therefore may have been intoxicated when he tweeted on August 7, 2018. *Id*. |
| | 7 | Deposition Ex. 321 | This exhibit is a July 15, 2018 tweet by Mr. Musk directing an insult at a British cave diver on Twitter. Exhibits put forward by Plaintiff on the same topic include for example Exhibits 104, 140.<br><br>This exhibit, and those like it, are not relevant to Plaintiff's claim that Mr. Musk committed securities fraud on August 7, 2018. In particular, they do not demonstrate whether Mr. Musk's August 7 tweets were materially false, nor any other element of Plaintiff's claims. Given the lack of relevance, the exhibit is inadmissible. Fed. R. Evid. 401, 402.<br><br>Even if this exhibit was relevant (it is not), its probative value is substantially outweighed by a danger of unfair prejudice. *Id.* 403. Indeed, the incident reflected in Exhibit 321 (and similar exhibits) involved inflammatory language that led to Mr. Musk being sued for defamation. Although Mr. Musk ultimately prevailed at trial on the claim, the jury may nonetheless be offended by the insult involved and prejudiced by the mere fact that Mr. Musk had been sued. Further, the exhibit would likely confuse and mislead the jury that Mr. Musk's use of Twitter in any capacity, even a personal one, was wrongful and required oversight. Finally, the exhibit will cause undue delay and waste time. This exhibit would necessarily require that Defendants educate the jury on defamation and Mr. Musk's successful defense thereto—a side trial for which there is no time. Accordingly, the exhibit is independently inadmissible under Rule 403 as well as Rules 401 and 402. |
| | 8 | Deposition Ex. 324 | This exhibit is a May 4, 2018 tweet by Mr. Musk suggesting that Tesla stock would perform well, and as a result, short sellers could lose money. Similar exhibits include Exhibits 325 and 327.<br><br>The exhibit is not relevant to Plaintiff's claim that Mr. Musk committed securities fraud more than three months later, on August 7, 2018, during which period numerous intervening acts took place, including a positive Tesla earnings call on August 1, 2018. Further, |

| | | |
|---|---|---|
| | | the exhibit does not bear on any of the elements of Plaintiff's claims. The inadmissibility of the tweet is further evidenced by the fact that Plaintiff does dispute that Mr. Musk's was legitimately considering taking Tesla private when he tweeted on August 7, 2018, and thus, his tweets had nothing to do with "burning" short sellers. It is therefore inadmissible. Fed. R. Evid. 401, 402.<br><br>Even if the exhibit was relevant (it is not), its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time. *Id.* 403. The exhibit is unfairly prejudicial in that Plaintiff sought to use it (and others like it) at Mr. Musk's deposition to cast Mr. Musk in a bad light and suggest that he unfairly maligns short sellers, and would likely use it for the same improper purpose at trial. Further, the exhibit would likely confuse and mislead the jury into incorrectly conflating Mr. Musk's statements concerning short sellers in the months and years *before* the August 2018 alleged fraud with his statements in August 2018 concerning short sellers and his consideration of a go-private transaction for Tesla. Finally, the exhibit (and others like it) will cause undue delay and waste time. Based on the Court's calendar, Defendants understand that the entire trial will be roughly 45 hours, split between the parties. Given the brevity of trial and number of witnesses that the parties plan to have testify, a side trial into Mr. Musk's unrelated communications regarding short sellers in the months and years before the alleged August 2018 fraud would waste precious time. Accordingly, the exhibit is also inadmissible under Rule 403. |
| 9 | P-0530 | This exhibit is an article from the gossip tabloid www.highsnobiety.com, regarding rapper Azealia Banks's claims that Mr. Musk was purportedly on acid when he tweeted on August 7, 2018.<br><br>Plaintiff intends to use this exhibit with his expert, Dr. Michael Hartzmark for the purposes of demonstrating materiality, reliance, loss causation, and damages.<br><br>In addition to containing character evidence, which Plaintiff asserts "is not relevant and should be excluded," (P's Motion *in Limine* No. 5 at 3), this exhibit is not otherwise relevant, and any possible probative value is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403, 404. First, the unsupported allegations discussed in the exhibit do not demonstrate whether Mr. Musk's August 7 tweets were false or made with scienter, nor any other element of Plaintiff's claims. Ms. Banks was not a percipient witness to Mr. Musk's August 7 tweets, and by her own confusing account, may not have met Mr. Musk at any time. Given the lack of relevance, the exhibit is inadmissible. Fed. R. Evid. 401, 402. |

| | | |
|---|---|---|
| | | Second, the exhibit is highly prejudicial because it presents the allegation that Mr. Musk was purportedly using drugs when he tweeted on August 7, 2018.  This allegation has not been substantiated anywhere in the record and is plainly false.  The jury should not be permitted to hear such potentially inflammatory information, where there is simply no probative value therefor.  Fed. R. Evid.  403.<br><br>Finally, this exhibit should be excluded for lack of foundation, lack of authenticity, and as hearsay to the extent that Plaintiff intends to use the exhibit for the truth of the matter asserted therein.  Fed. R. Evid.  801, 802. |
| 10 | P-064, P-084 | These exhibits are representative of dozens of irrelevant tweets by Elon Musk listed on Plaintiff's exhibit list that were made outside the class period—often years outside the class period.  Many of the tweets concern Musk's update on the number of orders of Tesla Model 3 vehicles or short sellers.<br><br>These tweets are, first and foremost, irrelevant to this action, as they mostly occurred outside the class period, including in 2012, 2015, 2016, and 2017, for example.  Fed. R. Evid. 401, 402.  With no colorable connection to any relevant events in this case, they should be excluded.  Even if the Court were to find that the tweets had some probative value, any such value would be substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, and wasting time.  This trial is not a referendum on Mr. Musk's twitter habits, nor is it an opportunity for Plaintiff to paint Mr. Musk as someone obsessed with or paranoid about short sellers, especially where it is not disputed that the negative impact of short sellers on Tesla's long-term mission was part of Mr. Musk's rationale for wanting to take Tesla private in 2018.  These tweets outside the class period should therefore be excluded under Rule 403 as well. |
| 11 | P-335 | This is a media article titled "Did Elon Musk Violate Securities Laws With Tweet About Taking Tesla Private?"  The Court should exclude this and any other exhibits that speculate on whether Mr. Musk's statements in August 2018 constituted securities fraud.<br><br>It is for the jury to determine whether Mr. Musk is liable for securities-fraud violations in this case.  Media articles speculating on the ultimate issue in this case are inadmissible for a host of reasons.  As an initial matter, they are hearsay statements, which themselves contain hearsay statements.  Moreover, it would be improper for the jury to be presented with articles authored by individuals who will not be testifying at trial, and quoting other individuals who will not be testifying at trial, who are opining on legal issues they may or may not be qualified to opine on in the first place.  Fed. R. Evid. 702.  In |

|  |  | addition, such evidence, particularly an article from the well-known New York Times quoting the opinions of a law professor from the well-known Columbia Law School, is likely to mislead the jury and cause it to place undue weight on the evidence. The article and others like it therefore should also be excluded under Rule 403. |

| | | |
|---|---|---|
| 1 | DATED:  September 20, 2022 | Respectfully submitted, |
| 2 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 4 | | By: */s/ Alex Spiro*  |
| 5 | | Alex Spiro *(appearing pro hac vice)* *Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, And Linda Johnson Rice* |
| 8 | | LEVI & KORSINSKY, LLP |
| 10 | | By: */s/ Adam M. Apton* Adam M. Apton *Attorneys for Plaintiff* |