1   **LEVI & KORSINSKY, LLP**
    Adam M. Apton (SBN 316506)
2   Adam C. McCall (SBN 302130)
    75 Broadway, Suite 202
3   San Francisco, CA 94111
    Tel.: (415) 373-1671
4   Email: aapton@zlk.com
            amccall@zlk.com
5

6   *Attorneys for Plaintiff and Counsel for the Class*

7   [Additional Counsel on Signature Block]

8

9                   UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
10

11  IN RE TESLA, INC. SECURITIES          Case No. 3:18-cv-04865-EMC
    LITIGATION
12                                         **PLAINTIFFS' [PROPOSED]**
                                           **VERDICT FORM AND**
13                                         **POSITION STATEMENT**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

PLAINTIFF'S VERDICT FORM                                    CASE NO. 3:18-CV-04865-EMC

## I.     INTRODUCTION

The parties were unable to reach an agreement on the proposed verdict form. Plaintiffs' proposed verdict form is attached hereto as Exhibit A. It deviates from Defendants' proposed verdict form in four (4) meaningful ways. As demonstrated below, Plaintiffs' verdict form should be selected over Defendants' because it is consistent with the jury instructions, testimony to be presented at trial, well-established case law and theory, and greatly reduces the risk of jury confusion by eliminating unnecessary deliberations and sub-deliberations. Plaintiffs' verdict form also follows the verdict forms used in other securities fraud lawsuits, thereby further supporting the conclusion that Plaintiffs' verdict form is correct both in substance and form. These other verdict forms are attached hereto as Exhibits B through G.

## II.    ARGUMENT

### A.     The Jury Should Be Asked a Simple "Yes" or "No" Question as to Whether Plaintiffs Proved Their Rule 10b-5 Claim.

Plaintiffs seek to hold Elon Musk and/or Tesla Inc. liable under Rule 10b-5 in connection with three alleged false and/or materially misleading statements. For each of these statements, Plaintiffs' verdict form asks the jury one straightforward question: "Have Plaintiffs proved their Rule 10b-5 Claim against [] for Statement No. [] identified above?" When deliberating on this question, the jury will consult the instructions which lay out clearly the elements of the Rule 10b-5 Claim in order to arrive at a "yes" or "no" conclusion. Nothing more needs to be asked of the jury.

Verdict forms from past securities fraud lawsuits support Plaintiffs' position. In *Household*, *Vivendi*, *BankAtlantic*, *Pattison*, *Furman*, and *Gruber*, the jury was asked a straightforward, simple "yes" or "no" question concerning the plaintiffs' Rule 10b-5 claims. *See* Exhibits B-G. None of the verdict forms in these cases dissected the question into various subparts or otherwise required sub-deliberations by the jury to arrive at a conclusion, as Defendants presently propose to do. In fact, this Court's verdict form in *SEC v. Michael C. Pattison*, No. C-08-4238 EMC (Sept. 24, 2010), illustrates this point. In that case, the SEC sued Mr. Pattison under Rule 10b-5, among other provisions, for statements and conduct relating to a stock option

1    backdating scheme. The Court's verdict form posed one, simple straightforward question to the

2    jury for each of the SEC's claims: "Do you find, by the preponderance of the evidence, that

3    Defendant violated Rule 10b-5 of the Exchange Act?" Ex. E. That is all we need here.

4            Defendants' proposed verdict form is problematic on a deeper level too. The Court granted

5    partial summary judgment to Plaintiffs, holding 1) that "no reasonable jury could find the

6    statement 'Funding secured' accurate and not misleading" and 2) "that a reasonable jury could

7    reach only one conclusion – *i.e.*, that Mr. Musk recklessly tweeted to the public that funding was

8    secured." ECF No. 387 at 24-26. Likewise, for the statement "Investor support is confirmed. Only

9    reason why this is not certain is that it's contingent on a shareholder vote," the Court held that

10   "the statement . . . is false and misleading" and that "a reasonable jury could reach only one

11   conclusion regarding scienter: that Mr. Musk made his statement recklessly." *Id*. at 26-27, 28.

12   Notwithstanding the Court's holding, Defendants' verdict form invites the jury to revisit these

13   conclusions by, for example, requiring deliberation on whether "Defendants(s) made the

14   statement 'funding secured' with actual knowledge or deliberate recklessness that the statement

15   was materially false or misleading." Defs. Verdict Form, pp. 1-2.

16           Plaintiffs' verdict form asks whether Plaintiffs have "proved their Rule 10b-5 Claim" as

17   to the Defendants charged with making the alleged misrepresentations. Because the jury will be

18   given detailed instructions on each element of Plaintiffs' Rule 10b-5 Claim, they need not make

19   separate findings on an element-by-element basis or run the risk of inadvertently disobeying the

20   Court's summary judgment holding. *See* Exs. A-C; *In re Vivendi Universal, S.A. Sec. Litig.*, 765

21   F. Supp. 2d 512, 580 (S.D.N.Y. 2011) (rejecting argument that the jury should have been required

22   to "check separate boxes" for each element of plaintiffs' Section 10(b) claim because "the Court

23   made clear" that the jury was "required to find each element of a Section 10(b) violation against

24   a particular defendant in order to find against that defendant"); Ex. H at 4361-65 (excerpt of

25   *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, Transcript of Proceedings, Trial Day 21)

26   (overruling defendants' objection to the use of a general verdict for plaintiffs' Rule 10b-5 claim

27   because the jury would be instructed on the elements of proof). *See also* Ex. D at 2 (asking jury

28   to determine whether "you find that any of the Defendants violated Section 10(b)"); *S.E.C. v.*

*Tourre*, 4 F. Supp. 3d 579, 586 (S.D.N.Y. 2014) (general verdict form asking for a finding of "'liable'" or "'not liable'" was appropriate because the court's instructions "provided a detailed roadmap for the jurors through each of the elements of each claim"). A general verdict on Plaintiffs' Rule 10b-5 Claim is also consistent with the PSLRA, which requires a finding of "whether [Defendants] violated the securities laws." 15 U.S.C. §78u-4(f)(3)(A)(i). Additionally, in SEC actions, the jury is typically asked to determine whether "Defendant violated Rule 10b-5 of the Exchange Act" without making findings as to each element. *See* Ex. E at 1 (*SEC v. Pattison*); Ex. F (*SEC vs. Furman*).

**B.     The Jury Can and Should Deliberate on the August 13 Blog Post.**

Plaintiffs have consistently alleged that Defendants are liable under Rule 10b-5 and Section 20(a) for making materially misleading statements in the August 13 blog post. In their complaint, Plaintiffs excerpted three paragraphs from the blog post in particular and then alleged that these paragraphs "omit[ted] and/or conceal[ed]" material information from investors. *See* Complaint (ECF No. 184), ¶¶136, 138. These omission allegations were not dismissed at the pleading stage. Nor were they excluded by the Court in response to Defendants' early motion *in limine*.

The Court's motion to dismiss order stated that "the blog post on August 13 is not independently actionable as a misleading statement" but said nothing of Plaintiffs' omission allegations. *See* ECF No. 251, p. 26. Likewise, the Court held during the motion *in limine* proceedings that, "The only thing I have before me right now, as I understand it, is the challenge to this one statement [referring the statement 'I have continued to communicate with the Managing Director of the Saudi fund . . . .']. It was not previously identified and not identified in a timely way, and so my ruling stands." July 28, 2022 Tr. at 11.

The omission paragraphs identified by Plaintiffs in their verdict form is *not* the portion of the blog post previously excluded by the Court. It is the exact same excerpt of the blog post that appears in Plaintiffs' Complaint. Plaintiffs also have more than enough evidence to show by a preponderance of the evidence that it "omit[ted] to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."

*See* 17 C.F.R. §240.10b-5(b). Indeed, the blog post says that "I [Musk] left the July 31st meeting with no question that a deal with the Saudi sovereign fund could be closed . . . ." Complaint, ¶136. Putting aside whether Musk actually believed that to be the case as of July 31, 2018 (he did not), the circumstances surrounding that conversation had changed materially by the time Defendants published this statement on August 13, 2018. Those circumstances include, for example, the near-complete breakdown of all communications and negotiations between Musk and the Saudi fund (which the Court described as "friction between Mr. Musk and Mr. Al-Rumayyan" in its summary judgment order). *See* ECF No. 387 at 30 (citing Ex. 121). In light of what transpired between the July 31 meeting and the August 13 blog post, Defendants materially misled investors by stating *only* that Musk "left the July 31st meeting with no question that a deal with the Saudi sovereign fund could be closed" because it "affirmatively create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). The jury should be allowed to decide whether Musk and Tesla lied by omission in this instance and, accordingly, violated Rule 10b-5.

### C.   The Verdict Form Must Provide the Jury with the Ability to Award All, Some, or None of the Damages.

Plaintiffs' verdict form allows the jury to award the damages they find appropriate. This means that the jury could award Plaintiffs 100% of the damages they seek, 0%, or some percentage in between depending on what the evidence shows at trial. This coincides with the parties' jury instructions as well as "conventional loss causation theory" in securities fraud cases. *Gruber v. Gilbertson*, No. 16-CV-9727 (JSR), 2022 WL 4232834, at *3 (S.D.N.Y. Sept. 14, 2022) (". . . consistent with plaintiffs' conventional loss causation theory, the damages instruction made clear that the jury could select a middle ground between these all-or-nothing approaches, stating that, as to damages, 'you must determine whether the amount of fraudulent inflation is 100%, as the plaintiff contends; 0%, as Reger contends; or some number in-between.'").

More importantly, Plaintiffs' verdict form coincides with the expert testimony they intend to present at trial. Michael Hartzmark, Ph.D., Plaintiffs' damages expert, stated in his expert report that his "framework for estimating damages per share" and "calculating daily artificial inflation"

1    allow for "flexibility in that alternative figures can be used if additional evidence is presented" at

2    trial. Hartzmark Rep., ¶4 n.9. The "formulaic procedure" that Dr. Hartzmark will use to calculate

3    damages "can accommodate any modification determined to be necessary by the finder of fact,"

4    meaning that he can reliably calculate damages once the jury determines "the levels of artificial

5    inflation (or deflation) in all of Tesla's securities that are related to Plaintiff's allegations for the

6    close on each day of the Class Period." *Id*. at ¶13; *see also id*. at ¶206 (discussing how calculation

7    of damages can change based on what "fact finder determines").

8        Dr. Hartzmark elaborated on the flexibility of Plaintiffs' damages model during his

9    deposition, testifying that it can be used to calculate damages depending on any number of factual

10   determinations made by the jury. *See*, *e.g.*, Hartzmark Dep. Tr. at 104:14-104:23 ("Q: And we'll

11   get a chance to do that in a little bit more detail perhaps as it goes. But that's also true if there

12   were an earlier date. The finder of fact concluded that all of the alleged false misstatements had

13   been corrected by August 9th, then you would turn your -- close your window to August 7th to

14   August 9th? A: Correct. That would adjust my but-for price, and calculate damages based on the

15   model that I've provided to the Court."). He also explained that his damages model can be adapted

16   to the jury's decision on Plaintiffs' "consequential damages." *Id*. at 230:16-230:24 (". . .  As to

17   the consequential damages, to the extent that the finder of fact picked out certain components that

18   were and were not, I could either do another analysis or, more likely, as I understand these types

19   of proceedings, would give me the engagement, or someone else, to take my formulas and make

20   an adjustment to consequential damages."). While Plaintiffs intend to introduce evidence at trial

21   that fully supports 100% of their alleged damages, they nonetheless intend to respect the jury's

22   right to award a lesser amount (as evidenced by their proposed jury instructions, *see* Plaintiffs'

23   Proposed Instruction 30: Damages).

24       Defendants' insistence on an all-or-nothing deliberation is simply a gambit designed to

25   curtail the jury's autonomy when it comes time to award damages. During the meet-and-confer

26   process, Defendants conceded as much stating that under their jury instruction the jury would be

27   forced to award $0 even if they thought Plaintiffs' experts were off by only a few pennies. The

28   law on this issue does *not* condone this sort of gamesmanship. As the court stated in *Vivendi*, "it

---

is well-established that the computation of damages is a quintessential fact issue for the jury, and that a jury need not accept an expert's damage calculations wholesale." *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 575 (S.D.N.Y. 2011) (rejecting defendants' position that "the expert testimony on damages was 'all or nothing,' in the sense that the jury had to either accept or reject Dr. Nye or Dr. Silber's analyses wholesale."); *see also Popovich v. Sony Music Entm't Inc.*, 508 F.3d 348, 359 (6th Cir. 2007) (upholding jury's award of damages for breach of contract which was substantially below the figure proposed by plaintiffs' expert and above the estimate proposed by defendant's expert); *Am. Nat'l Bank & Trust Co. of Chicago v. Reg'l Transp. Auth.*, 125 F.3d 420, 436-39 (7th Cir. 1997) (upholding jury's determination of fair market value for property that exceeded the sum requested by plaintiffs' counsel in closing argument and differed  from the calculations presented by both sides' experts); *First Nat'l Bank of Kenosha v. United States*, 763 F.2d 891, 896 (7th Cir. 1985) (jury finding that fair market value of a piece of real estate was $1.1 million had a reasonable basis in the record where the jury was presented with widely divergent expert opinions regarding the fair market value, and decided not to accept the view of either expert but instead "arrived at its figure independently (very possibly, we suspect, by splitting the difference)").

## D.     The PSLRA Does Not Require a Statement-By-Statement Allocation of Responsibility between Defendants.

The parties disagree over how the jury should allocate responsibility. The need to do so comes from the PSLRA; specifically, requiring the jury to "make findings . . . concerning . . . the percentage of responsibility of [defendants], measured as a percentage of the total fault of all persons who caused or contributed to the loss incurred by the plaintiff; and whether such person knowingly committed a violation of the securities laws." 15 U.S.C. §78u-4(f)(3)(A). No aspect of the statute requires the jury to allocate responsibility between the defendants for *each* statement. Nor does any aspect of the statute require the jury to decide whether the Defendants who "knowingly committed a violation of the securities laws" did so with "actual knowledge" or "deliberate recklessness." Defs. Verdict Form at 8. Thus, requiring the jury to do so adds unnecessary complexity to an already complex deliberation and risks confusion at the tail-end of

1    a three-week long trial.

2         Defendants' verdict form incorrectly reads such a requirement into the statute. It requires

3    the jury to unnecessarily debate whether each Defendant acted with "actual knowledge" or

4    "deliberate recklessness" for *each* false statement. So long as the jury can decide whether the

5    Defendants committed a "knowing violation of the federal securities laws" (which Plaintiffs'

6    proposed jury instruction defines, *see* Plaintiffs' Instruction No. 33), there is no reason under the

7    statute for the jury to specify whether they committed the violation with "actual knowledge" or

8    "deliberate recklessness." Subsection (f)(3)(A)(iii) makes *no* distinction between the two; instead,

9    it requires the jury to decided only "whether such person knowingly committed a violation of the

10   securities laws." 15 U.S.C. §78u-4(f)(3)(A)(iii).

11        Defendants' verdict form further confuses the issue by requiring the jury to allocate

12   responsibility between the Defendants only if the jury concluded that at least one Defendants

13   acted with "deliberate recklessness" for at least one of the false statements. Defs. Verdict Form

14   at 8-9. This does not comply with the statute. The PSLRA requires the jury to determine "the

15   percentage of responsibility of such person, measured as a percentage of the total fault of all

16   persons who caused or contributed to the loss incurred by the plaintiff." 15 U.S.C. §78u-

17   4(f)(3)(A)(ii). This requirement is not limited to "covered persons" but includes both "covered

18   persons *and* each of the other persons claimed by any of the parties to have caused or contributed

19   to the loss incurred by the plaintiff." 15 U.S.C. §78u-4(f)(3)(A) (emphasis added). Thus, to the

20   extent the jury must allocate responsibility between the Defendants, they must do so for all

21   Defendants including those that acted with "deliberate recklessness."

22   **III.     CONCLUSION**

23        Plaintiffs' verdict form is straight-forward, modeled after verdict forms used in several

24   securities fraud trials, and comports with the PSLRA. To ensure a fair and efficient trial, Plaintiffs

25   respectfully request that the Court adopt their verdict form as contained in Exhibit A attached

26   hereto.

27   //

28   //

1    Dated: September 20, 2022                 Respectfully submitted,

2

3                                              **LEVI & KORSINSKY, LLP**

4                                               s/ Adam M. Apton
                                               Adam M. Apton (SBN 316506)
5                                              Adam C. McCall (SBN 302130)
                                               75 Broadway, Suite 202
6                                              San Francisco, CA 94111
                                               Tel.: (415) 373-1671
7                                              Email: aapton@zlk.com
                                               Email: amccall@zlk.com
8

9                                              -and-

10                                             Nicholas I. Porritt
                                               Elizabeth K. Tripodi
11                                             Alexander A. Krot III
                                               LEVI & KORSINSKY, LLP
12                                             1101 30th Street N.W., Suite 115
                                               Washington, D.C. 20007
13                                             Tel.: (202) 524-4290
                                               Email: nporritt@zlk.com
14                                             Email: akrot@zlk.com
                                               (admitted pro hac vice)
15

16                                             -and-

17
                                               Joseph Levi
18                                             Eduard Korsinsky
                                               LEVI & KORSINSKY, LLP
19                                             55 Broadway, 10th Floor
                                               New York, New York 10006
20                                             Tel.: (212) 363-7500
                                               Email: jlevi@zlk.com
21                                             Email: ek@zlk.com
                                               (admitted pro hac vice)
22                                             Attorneys for Plaintiff and Counsel for the Class
23

24

25

26

27

28