Adam M. Apton
aapton@zlk.com
Levi & Korsinsky, LLP
75 Broadway
San Francisco, CA 94111
(415) 373-1671

*Attorneys for Plaintiff*

Michael Lifrak
michaellifrak@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC |
|---|---|
| | **PARTIES' JOINT SET OF [PROPOSED] JURY INSTRUCTIONS** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

OPENING INSTRUCTIONS ..................................................................................................... 1

    **Instruction No. 1:**   Duty of Jury [Stipulated] ................................................................ 1

    **Instruction No. 2:**   Pretrial Statement / Claims and Defenses [Disputed] ................... 2

    **Instruction No. 3:**   Definition of Evidence [Stipulated] ............................................. 14

    **Instruction No. 4:**   What Is Not Evidence [Stipulated] ............................................... 15

    **Instruction No. 5:**   Evidence for Limited Purposes [Stipulated] ................................ 16

    **Instruction No. 6:**   Direct and Circumstantial Evidence [Stipulated] ........................ 17

    **Instruction No. 7:**   Expert Opinion [Stipulated] ......................................................... 18

    **Instruction No. 8:**   Impeachment Evidence [Stipulated] ............................................ 19

    **Instruction No. 9:**   Demonstrative Exhibits (Charts and Summaries) [Stipulated] .............................. 20

    **Instruction No. 10:**   Deposition In Lieu of Live Testimony [Stipulated] .................... 21

    **Instruction No. 11:**   Ruling on Objections [Stipulated] ............................................... 22

    **Instruction No. 12:**   Credibility of Witnesses [Stipulated] .......................................... 23

    **Instruction No. 13:**   Conduct of the Jury [Stipulated] ................................................. 24

    **Instruction No. 14:**   Publicity during Trial [Stipulated] .............................................. 26

    **Instruction No. 15:**   No Transcripts [Stipulated] ......................................................... 27

    **Instruction No. 16:**   Taking Notes [Stipulated] ........................................................... 28

    **Instruction No. 17:**   Bench Conferences and Recesses [Stipulated] ........................... 29

    **Instruction No. 18:**   Outline of Trial [Stipulated] ....................................................... 30

    **Instruction No. 19:**   End of Day [Stipulated] ............................................................... 31

    **Instruction No. 20:**   Beginning of Day [Stipulated] .................................................... 32

CLOSING INSTRUCTIONS ..................................................................................................... 33

    **Instruction No. 21:**   Duty of Jury [Stipulated] ............................................................. 33

    **Instruction No. 22:**   Documents and Testimony Not In Evidence [Stipulated] ................... 34

    **Instruction No. 23:**   Burden of Proof—Preponderance of Evidence [Stipulated]................... 35

    **Instruction No. 24:**   Corporate Entities [Disputed] ..................................................... 36

**Instruction No. 25:**   Rule 10b-5 Claim [Disputed] .................................................................. 39

**Instruction No. 26:**   Maker of Misstatement [Disputed] ......................................................... 50

**Instruction No. 27:**   Material Misrepresentation [Disputed] ................................................... 52

**Instruction No. 28:**   Scienter or State of Mind [Disputed] ..................................................... 66

**Instruction No. 29:**   Reliance [Disputed] ............................................................................... 78

**Instruction No. 30:**   Loss Causation [Disputed] ..................................................................... 86

**Instruction No. 31:**   Damages [Disputed] ............................................................................... 95

**Instruction No. 32:**   Control Person Liability [Stipulated] ................................................... 105

**Instruction No. 33:**   Defense to Control Person Liability [Disputed] ................................... 106

**Instruction No. 34:**   Apportionment of Liability [Disputed] ................................................ 110

**Instruction No. 35:**   Duty to Deliberate [Stipulated] ........................................................... 114

**Instruction No. 36:**   Conduct of the Jury [Stipulated] ......................................................... 115

**Instruction No. 37:**   Communication with Court [Stipulated] .............................................. 117

**Instruction No. 38:**   Return of Verdict [Stipulated] ............................................................. 118

**Instruction No. 39:**   Readback and/or Playback of Testimony [Stipulated] ......................... 119

**Instruction No. 40:**   Post-Discharge Instructions [Stipulated] ............................................ 120

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPENING INSTRUCTIONS**

**Instruction No. 1:   Duty of Jury [Stipulated]**

You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions or anything that I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

Source: Ninth Circuit Model Civil Jury Instruction 1.3; Civil Pretrial Instructions of Judge Chen.

**Instruction No. 2:   Pretrial Statement / Claims and Defenses [Disputed]**

> **Plaintiff's Proposal:**

> To help you follow the evidence, I will give you a brief summary of the parties and positions of the parties:

> The party that brings a lawsuit is called the plaintiff. This case is a "class action," in which a named plaintiff, called the "Class Representative," represents himself and a large number of unnamed persons, called the "class." The Class Representative in this case is Glen Littleton, an individual investor who purchased Tesla securities during the relevant time period in this case. Mr. Littleton, as the Class Representative, represents a class of investors who bought or sold Tesla securities during the period August 7, 2018 through August 17, 2018, which is referred to as the "Class Period." Unless I distinguish them, I will refer to the Class Representative and the class collectively as the "Plaintiff."

> The parties against whom the lawsuit is brought are called the defendants. In this case, the defendants are Elon Musk, Tesla's Chief Executive Officer; members of Tesla's Board of Directors; and Tesla, Inc. Unless I distinguish them, I will refer to them collectively as "Defendants."

> This case arises from statements made concerning a potential going-private transaction involving Tesla. Specifically, on August 7, 2018 Elon Musk made the following tweet: "Am considering taking Tesla private at $420. Funding secured." Mr. Musk tweeted later on August 7, 2018 that "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote." On August 13, 2018, Mr. Musk published a blogpost on Tesla's website titled "Update on Taking Tesla Private". On August 24, 2018, Mr. Musk published a blogpost on Tesla's website titled "Staying Public".

> In this case, Plaintiff asserts that Elon Musk and Tesla violated Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5(b), by making false or misleading statements and omissions that artificially affected the price of Tesla's stock and other securities during the Class Period.  Specifically, Plaintiff alleges that the August 7, 2018 tweets and August 13, 2018 blogpost were false and misleading statements that artificially affected the price of

Tesla's stock and other securities immediately after they were made. Plaintiff alleges that Musk and Tesla knew these statements were false when they were made or were deliberately reckless regarding their truth. Plaintiff alleges that they were harmed when the falsity of these statements was realized by the market. In addition to the Section 10(b) of the Exchange Act and SEC Rule 10b-5, Plaintiff also asserts that the members of Tesla's Board of Directors violated Section 20(a) of the Securities Exchange Act of 1934, which imposes liability upon persons responsible for controlling an entity that is found to have violated the federal securities laws.

Plaintiff has the burden of proving these claims.

Defendants deny these claims.

Prior to this trial, the Court decided as a matter of law that with regard to the statement "Am considering taking Tesla private at $420. Funding secured." 1) the statement "funding secured" was false; and 2) this statement was made by Elon Musk with deliberate recklessness as to its truth or falsity. With regard to the statement "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote." the Court also decided that 1) this entire statement was false; and 2) the entire statement was made by Elon Musk with deliberate recklessness as to its truth of falsity. Consequently, you will accept findings by the Court as established and deliberate only on the remaining elements of the claim, which I will instruct you on at a later time.

Source: Ninth Circuit Model Civil Jury Instruction 1.5; Civil Pretrial Instructions of Judge Chen. See also STM Networks, Inc. v. Clay Pac. S.R.L., 224 F. App'x 609, 610 (9th Cir. 2007) ("The district court did not abuse its discretion in giving jury instructions consistent with its ruling on partial summary judgment."); Nutri-Metics Int'l, Inc. v. Carrington Lab'ys, Inc., 1992 WL 389246, at *5 (9th Cir. Dec. 22, 1992) ("the jury had to be informed whether there was a breach of the Noncompetition Agreement once the judge properly decided it as a matter of law"); McArthur v. City & Cty. of S.F., 190 F. Supp. 3d 895, 907 (N.D. Cal. 2016) ("Partial summary judgment is further granted as follows. The jury will be instructed that no constitutional violation took place up through and including the searches of all of the men. That issue is now decided and

- 3 -

will not be re-litigated at trial but of course sufficient background facts may be allowed . . . .").

**Defendants' Proposal**

To help you follow the evidence, I will give you a brief summary of the parties and positions of the parties:

The party that brings a lawsuit is called the plaintiff. This case is a "class action," in which a named plaintiff, called the "Class Representative," represents himself and a large number of unnamed persons, called the "class." The Class Representative in this case is Glen Littleton, an individual investor who purchased Tesla securities during the relevant time period in this case. Mr. Littleton, as the Class Representative, represents a class of investors who bought or sold Tesla securities during the period August 7, 2018 through August 17, 2018, which is referred to as the "Class Period." Unless I distinguish them, I will refer to the Class Representative and the class collectively as the "Plaintiff."

The parties against whom the lawsuit is brought are called the defendants. In this case, the defendants are Elon Musk, Tesla's Chief Executive Officer; members of Tesla's Board of Directors; and Tesla, Inc. Unless I distinguish them, I will refer to them collectively as "Defendants."

In this case, Plaintiff asserts that Elon Musk and Tesla violated Sections 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5(b), by making materially false or misleading statements that artificially affected the price of Tesla's stock and other securities during the Class Period.  Plaintiff also asserts that the members of Tesla's Board of Directors violated Section 20(a) of the Securities Exchange Act of 1934, which imposes liability upon persons responsible for controlling an entity that is found to have violated the federal securities laws.

Plaintiff has the burden of proving these claims.

Defendants deny these claims.

Source: Ninth Circuit Model Civil Jury Instruction 1.5; Civil Pretrial Instructions of Judge Chen; Ex. N, *In re JDS Uniphase Securities Litig.* 4:02-1486-CW, Dkt. 1874 at 8 (N.D. Cal. Nov. 9,

- 4 -

2007); Ex. M, *Hsingching Hsu v. Puma Biotechnology, Inc., et al.*, 8:15-cv-00865-DOC-SHK (C.D. Cal. Jan. 29, 2019) Dkt. 700, Instruction No. 28.

**Plaintiff's Position:**

Plaintiff's Proposed Opening Instruction No. 2 contains a concise and neutral statement of the parties and the allegations in this case. Defendants' Proposed Opening Instruction No. 2, however, is incomplete and fails to properly describe the action to the jury. In fact, Defendants fail to mention the summary judgment order, or even the false statements at issue in this case.

By far, the Court's partial summary judgment order is the most important pretrial development in this action. It narrows the issues for trial and frames the jury's deliberation for the remaining Rule 10b-5 Claim elements. Plaintiff's proposed instruction provides an objective and neutral description of the Court's holding and how the jury should adhere to it going forward. Plaintiff's proposal in this regard comports with the Court's Order Denying Plaintiff Littleton's Motion for Temporary Restraining Order, holding that "though 'jury instructions are often an ineffective remedy,' the Court finds that unlikely to be true for the instant case where the jury will be told that the Court has already found that the August 2018 tweets were false and made with the requisite scienter." ECF No. 398 at 3 (internal citations omitted).

Defendants' proposal, on the other hand, intentionally omits any reference to the summary judgment ruling. During the meet-and-confer process, Defendants confirmed explicitly that they would propose "no instruction on the summary judgment order" and would not consent to anything proposed by Plaintiff. Defendants' position in this regard is entirely unsupported by the law. *See STM Networks, Inc. v. Clay Pac. S.R.L.*, 224 F. App'x 609, 610 (9th Cir. 2007) ("The district court did not abuse its discretion in giving jury instructions consistent with its ruling on partial summary judgment."); *Nutri-Metics Int'l, Inc. v. Carrington Lab'ys, Inc.*, 1992 WL 389246, at *5 (9th Cir. Dec. 22, 1992) ("the jury had to be informed whether there was a breach of the Noncompetition Agreement once the judge properly decided it as a matter of law"); *McArthur v. City & Cty. of S.F.*, 190 F. Supp. 3d 895, 907 (N.D. Cal. 2016) ("Partial summary judgment is further granted as follows. The jury will be instructed that no constitutional violation took place up through and

including the searches of all of the men. That issue is now decided and will not be re-litigated at trial but of course sufficient background facts may be allowed . . . .").

An instruction is necessary from a practical standpoint too. If the trial were to proceed without any instruction otherwise, the jury will hear three weeks' worth of testimony none of which would include evidence on the falsity of Musk's August 7 tweets or his recklessness when sending them. Jurors will question why Plaintiff is not presenting evidence on these elements and likely assume that there simply is no evidence to present. This will irrevocably prejudice Plaintiff's presentation of his case in chief and risk losing credibility with the jury. Even if the Court were to give some instruction about the order at the end of trial before deliberations, by then it would be too late to undo the damage caused by the silence.

Defendants also take out all references to omissions in Plaintiff's instruction, arguing that the only misrepresentations that are at issue here are the August 7, 2018 tweets for which this Court granted Plaintiff summary judgment on the issues of falsity and scienter, but not materiality or reliance. *See* Jury Instructions Nos.: Opening 2, Closing 4, 5, 7, 8, 10, 11. Plaintiff has consistently alleged that Defendants are liable under Rule 10b-5 and Section 20(a) for making materially misleading statements in the August 13 blog post. In the complaint, Plaintiff excerpted three paragraphs from the blog post in particular and alleged that these paragraphs "omit[ted] and/or conceal[ed]" material information from investors. *See* Complaint (ECF No. 184), ¶¶136, 138. These omission allegations were not dismissed at the pleading stage. Nor were they excluded by the Court in response to Defendants' early motion *in limine*.

The Court's motion to dismiss order stated that "the blog post on August 13 is not independently actionable as a misleading statement" but said nothing of Plaintiff's omission allegations. *See* ECF No. 251, p. 26. Likewise, the Court held during the motion *in limine* proceedings that, "The only thing I have before me right now, as I understand it, is the challenge to this one statement [referring to the statement 'I have continued to communicate with the Managing Director of the Saudi fund . . . .']. It was not previously identified and not identified in a timely way, and so my ruling stands." July 28, 2022 Tr. at 11.

The omission paragraphs identified by Plaintiff in his verdict form are *not* the portion of the

- 6 -

blog post previously excluded by the Court. They are the exact same excerpt of the blog post that appears in Plaintiff's Complaint. Plaintiff also has more than enough evidence to show by a preponderance of the evidence that Defendants "omit[ted] to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." *See* 17 C.F.R. §240.10b-5(b). Indeed, the blog post says that "I [Musk] left the July 31st meeting with no question that a deal with the Saudi sovereign fund could be closed . . . ." Complaint, ¶136. Putting aside whether Musk actually believed that to be the case as of July 31, 2018 (he did not), the circumstances surrounding that conversation had changed materially by the time Defendants published this statement on August 13, 2018. Those circumstances include, for example, the near-complete breakdown of all communications and negotiations between Musk and the Saudi fund (which the Court described as "friction between Mr. Musk and Mr. Al-Rumayyan" in its summary judgment order). *See* ECF No. 387 at 30 (citing Ex. 121). In light of what transpired between the July 31 meeting and the August 13 blog post, Defendants materially misled investors by stating *only* that Musk "left the July 31st meeting with no question that a deal with the Saudi sovereign fund could be closed" because it "affirmatively create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). The jury should be allowed to decide whether Musk and Tesla lied by omission in this instance and, accordingly, violated Rule 10b-5.

**Defendants' Position:**

Defendants respectfully request that the Court adopt their proposed instruction regarding the pretrial statement.  Defendants' proposed instruction provides a short and plain statement of the claims without any improper argument or characterizations of the facts, which is all that is necessary for this preliminary instruction.  The proposed instruction identifies the parties, the class period, and the specific claims asserted against each respective Defendant.  It provides sufficient information to orient the jury prior to opening statements without creating any risk that the jury will reach any conclusions about or prejudge the evidence before it is presented.  The Court should accept this instruction, which is consistent with the pretrial statement given in

recent Section 10b-5 trials in the Ninth Circuit.  *See, e.g.,* Ex. M,[1] *Hsingching Hsu v. Puma Biotechnology, Inc.*, et al., 8:15-cv-00865-DOC-SHK Dkt. 700 (C.D. Cal. Jan. 29, 2019), Instructions, No. 2; Ex. N, *In re JDS Uniphase Securities Litig.* 4:02-1486-CW, Dkt. 1874 at 8 (N.D. Cal. Nov. 9, 2007).

Defendants object to Plaintiff's proposed jury instruction and pretrial statement as overly long, argumentative, misleading, and unduly prejudicial to Defendants.  *See Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005) ("[J]ury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading.").  As an initial matter, the Court should not give any pretrial description of the case beyond an identification of the parties and general statement of the claims at issue; the jury should base its decision on the evidence presented to it and the parties will have the opportunity to make their presentations after the initial instructions are read.  The jury instructions are not the appropriate place for Plaintiff to recite facts favorable to his arguments, or to otherwise present his theory of the case.  He will have plenty of time to do that during the trial.  The jury instructions should be "a clear, concise, and accurate statement of the law in question," nothing more.  *See Floyd v. Laws*, 929 F.2d 1390, 1394 (9th Cir. 1991).  The Court should decline to give Plaintiff's statement of the case.

Further, Defendants object specifically to the content of Plaintiff's proposed statement of the case.  The proposal is argumentative.  An instruction is argumentative if it is "manifestly intended to influence the jury towards accepting the evidence of" one party over another.  *United States v. Hall*, 552 F.2d 273, 275 (9th Cir. 1977) ("Where the evidence raises a factual issue, an instruction dictating the result invades the ultimate fact-finding role of the jury."); *see also United States v. Felix-Gutierrez*, 940 F.2d 1200, 1211 (9th Cir. 1991) (holding district court properly rejected party's proposed theory of the case instruction as argumentative).  Plaintiff's proposed statement of the case is riddled with openly argumentative statements, such as that Mr. Musk published false and misleading tweets on August 7, 2018, that the tweets artificially

---

[1]   All exhibit citations are to the Declaration of Michael T. Lifrak, filed concurrently herewith.

1   affected the price of Tesla's stock and other securities, and that Plaintiff was harmed when the

2   alleged falsity of the statements was purportedly revealed.  These statements present a one-sided

3   view of the case that disregards important evidence that Defendants intend to present, including

4   that the tweets at issue were not materially false when made and that the market did not respond

5   to the purportedly false representations in the tweets but rather reacted to the indisputably true

6   statement that Mr. Musk was considering taking Tesla private at $420 per share (as evidenced by

7   the fact that the market marginally increased in response to the August 13, 2018 corrective

8   disclosure that revealed the state of the funding negotiations and steps that remained before the

9   go-private deal could be consummated).  Plaintiff's one-sided statement of the case is also

10  objectionable because it inaccurately omits materiality from its description of the issues.  *See*

11  *Floyd*, 929 F.2d at 1394.

12      Defendants also object to Plaintiff's proposed statement of the case because it improperly

13  instructs the jury that the August 13, 2018 Blog Post ("Blog Post") is an actionable

14  misstatement/omission at issue in this trial.  As the Court made clear in its order granting

15  Defendants' Motion *in Limine* No. 3, Plaintiff did not allege that the Blog Post was

16  independently actionable in the Consolidated Complaint and is therefore precluded from

17  asserting the same at trial.  (Dkt. 466 at 1-2.)

18      Finally, Defendants object to the Plaintiff's purported description of the Court's summary

19  judgment order and the inclusion of any such description as inaccurate and misleading,

20  confusing to the jury, and unfairly prejudicial to Defendants.  As an initial matter, Plaintiff's

21  statement is not an accurate description of the Court's order, as clarified by the Court at the June

22  16, 2022 hearing on Defendants' motion for reconsideration and corresponding minute order.

23  (Ex. I, ("6/16/22 Hr'ing Tr.") at 3:23-5:8; Dkt. 446.)  As the Court made clear, the summary

24  judgment order only found that the statements "Funding secured" and "Investor support is

25  confirmed.  Only reason why this is not certain is that it's contingent on a shareholder vote" were

26  "false statement[s]…in a literal sense, not in a legal sense."  (6/16/22 Hr'ing Tr. at 4:14-23.)  The

27  Court made the same limited finding as to scienter.  (*Id.* ("and similarly with scienter, no

28  reasonable juror could find that Mr. Musk did not know or didn't act in disregard to the

- 9 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

inaccuracy—the factual inaccuracy, not the legal.").  The Court did not find that the statements at issue were "materially false" or made with knowledge or reckless disregard as to their "material falsity," which are the elements of the Section 10b claim and therefore the questions before the jury.  *See, e.g., Dura Pharma, Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (plaintiff must prove defendant made a "material misrepresentation (or omission)"); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 701 (9th Cir. 2021) (scienter satisfied by "a reckless omission of material facts").

Plaintiff's assertion that the Court made any decisions regarding these statements "as a matter of law" is therefore inaccurate and misleading because it suggests that the Court determined that Plaintiff established legal elements of Plaintiff's claim.  It did not.  (6/16/22 Hr'ing Tr. at 4:14-23 ("[S]o the falsity element that's required for a 10b-5 is not—has not been completely fulfilled…and similarly with scienter, no reasonable juror could find that Mr. Musk did not know or didn't act in disregard to the inaccuracy—the factual inaccuracy, not the legal.") *and* 5:4-8 ("To be clear, I did not find materiality with respect to the misrepresentation or a reckless disregard or knowingly scienter with regard to any such material representation.") *and* Dkt. 446.)  It should be rejected.

Plaintiff's description is also inaccurate and misleading because it suggests that the Court found that the first sentence of the first tweet—"Am considering taking Tesla private at $420"—was false.  (Plaintiff's Proposed Instruction No. 2.)  It did not find that either. (Dkt. 387 at 23 ("the focus would be on the second part of the tweet, *i.e.*, "Funding secured."); *id.* at 24 ("Based on the evidence of record, the Court finds that no reasonable jury could find the statement "Funding secured" accurate and not misleading.").)  Nor did Plaintiff contend in his motion for summary judgment that this first sentence was untrue; his "Issues To Be Decided" only identified "Funding secured" as a false statement. (Dkt. 352 at 1.)  Plaintiff did not make such a contention and the Court did not make such a finding because the evidence establishes that statement was true: Mr. Musk was considering taking Tesla private at $420 per share at the time he published the tweet.  The description misleadingly instructs the jury to conclude that the

entire tweet was false even though the Court did not make, and the evidence does not support, that finding.

Defendants also object to Plaintiff's proposed description of the Court's summary judgment order because it will confuse the jury. An instruction must not "confuse or leave an erroneous impression in the minds of the jurors." *United States v. Walker*, 575 F.2d 209, 213 (9th Cir. 1978) (Kennedy, J). Plaintiff's proposal is likely to do both. First, it will confuse the jury as to what issues it must consider and decide in this case. Because the proposal contends that the Court found "as a matter of law" that the statements identified were false and made with reckless disregard to their truth, the jury will likely be confused as to whether it must make an independent determination on the elements of material falsity or scienter at all, instead of simply checking a box consistent with what it mistakenly believes the Court's earlier decision was. This confusion will likely be compounded as to the first statement—"Am considering taking Tesla private at $420. Funding secured"—because the jury will erroneously believe that the Court found the entire statement to be false, even though the first sentence is indisputably true. Second, and relatedly, the proposal will leave the jury with an "erroneous impression" that Plaintiff has already established "as a matter of law" the elements of material falsity and scienter, when he has not. (6/16/22 Hr'ing Tr. at 3:23-5:8; Dkt. 446.)

Accordingly, Plaintiff's proposal will cause irreparable prejudice to Defendants. If the Court instructs the jury that Plaintiff already has established the elements of falsity and scienter, the jury is unlikely to be receptive to or even consider any evidence presented by Defendants that the statements were not "materially false" or not made with reckless disregard to their "material falsity." The jury may erroneously conclude that the presentation of any such evidence is a waste of time, and penalize the Defendants by not considering it in its deliberations regarding other elements—such as reliance—for which the evidence is also relevant. *See, e.g., Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 463 (2013) ("The fraud-on-the-market theory…recogniz[es] a rebuttable presumption of classwide reliance on public, material misrepresentations when shares are traded in an efficient market."). If the Court finds that it is proper to instruct the jury about its summary judgment findings at all, that instruction should be

- 11 -

reserved until closing instructions to mitigate any prejudicial effect it may have on the jury's ability to fairly hear the evidence as it is presented.

Finally, any reference to the Court's summary judgment order (and particularly in the manner in which Plaintiff presents it) will substantially prejudice Defendants and irrevocably taint the jury's role as finder of fact in this trial.  Courts recognize that "judicial findings of fact 'present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.'"  *United States v. Sine*, 493 F.3d 1021, 1033-34 (9th Cir. 2007) ("jurors are likely to defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder rather than determine those issues for themselves"); *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993); *see also Herrick v. Garvey,* 298 F.3d 1184, 1192 (10th Cir. 2002) ("Juries are likely to give disproportionate weight to such findings of fact because of the imprimatur that has been stamped upon them by the judicial system."); *U.S. Steel, LLC, v. Tieco, Inc*., 261 F.3d 1275, 1288 (11th Cir. 2001) ("The district court abused its discretion in admitting Judge Garrett's opinion. The jury, not Judge Garrett, was charged with making factual findings on Appellees' allegations in this case.").  Plaintiff is asking the Court to begin this trial by effectively testifying not only that the statements at issue are false and made with scienter but also, by strong logical implication, that Mr. Musk—by making such statements with reckless disregard—is an unreliable witness whose statements should not be credited.  It is only natural that the jury will displace its independent judgment for what it believes is the Court's position.  Plaintiff's proposal therefore places the Court in the improper role as essentially a witness in this case and should be rejected outright.

Even if the Court determines that it must make some reference to its summary judgment findings—and such a reference, if any, should not be made until closing instructions after the jury has heard all of the evidence—the Court should, at a minimum, do so in a manner that removes the Court's imprimatur and thereby reduces the reference's prejudicial effect.  Instead of stating that "the Court decided" any issue "as a matter of law" (Plaintiff's Proposed Opening Instruction No. 2), the instruction should inform the jury that "you are to assume" that the

- 12 -

particular factual issue has been proven.  For example, if necessary, it would be far more appropriate and accurate for the Court to instruct the jury, "You are to assume the factual inaccuracy of the statements 'Funding secured' and 'Investor support is confirmed.  Only reason why this is not certain is that it's contingent on a shareholder vote.'   But you still must decide the separate question whether these statements were materially false pursuant to my instructions on that element.  You must also decide whether Mr. Musk knew or acted with deliberate recklessness as to the statements' material falsity pursuant to my instructions on that element." *See Sherwin-Williams Co. v. PPG Indus., Inc*., No. CV 17-1023, 2021 WL 5648019, at *3 (W.D. Pa. Dec. 1, 2021) (adopting "you can assume" language in jury instruction to describe issue previously decided by the court and holding that the alternative phrase "it has been determined " was unnecessary and may confuse the jury).

For these reasons, the Court should adopt Defendants' proposed instruction, and should reject Plaintiff's proposed pretrial statement.

1

2

**Instruction No. 3:   Definition of Evidence [Stipulated]**

The evidence you are to consider in deciding what the facts are consists of: 1) the sworn testimony of any witness; 2) the exhibits that are admitted into evidence; 3) any facts to which the lawyers have agreed; and 4) any facts that I may instruct you to accept as proved.

Source: Ninth Circuit Model Civil Jury Instruction 1.9; Civil Pretrial Instructions of Judge Chen.

**Instruction No. 4:   What Is Not Evidence [Stipulated]**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

   1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

   2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

   3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

   4) Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Source: Ninth Circuit Model Civil Jury Instruction 1.10.

**Instruction No. 5:   Evidence for Limited Purposes [Stipulated]**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

The testimony [you are about to hear / you have just heard] may be considered only for the limited purpose of [describe purpose] and not for any other purpose.

Source: Ninth Circuit Model Civil Jury Instruction 1.11; Civil Pretrial Instructions of Judge Chen.

**Instruction No. 6:   Direct and Circumstantial Evidence [Stipulated]**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

Source: Ninth Circuit Model Civil Jury Instruction 1.12; Civil Pretrial Instructions of Judge Chen.

**Instruction No. 7:   Expert Opinion [Stipulated]**

During the trial, you will hear testimony from witnesses who will testify to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Source: Ninth Circuit Model Civil Jury Instruction 2.13.

**Instruction No. 8:   Impeachment Evidence [Stipulated]**

The evidence that a witness [e.g., lied under oath on a prior occasion, etc.] may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

Source*:* Ninth Circuit Model Civil Jury Instruction 2.9.

**Instruction No. 9:   Demonstrative Exhibits (Charts and Summaries) [Stipulated]**

Certain charts and summaries may be [have been] admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Source: Ninth Circuit Model Civil Jury Instruction 2.15.

**Instruction No. 10: Deposition In Lieu of Live Testimony [Stipulated]**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Source: Ninth Circuit Model Civil Jury Instruction 2.4.

**Instruction No. 11: Ruling on Objections [Stipulated]**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

Source: Ninth Circuit Model Civil Jury Instruction 1.13; Civil Pretrial Instructions of Judge Chen.

**Instruction No. 12:  Credibility of Witnesses [Stipulated]**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the

things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

Source: Ninth Circuit Model Civil Jury Instruction 1.14; Civil Pretrial Instructions of Judge Chen.

**Instruction No. 13: Conduct of the Jury [Stipulated]**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive, here in this courtroom, all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and depending on circumstances, a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

Source: Ninth Circuit Model Civil Jury Instruction 1.15; Civil Pretrial Instructions of Judge Chen.

1

**Instruction No. 14: Publicity during Trial [Stipulated]**

2

3       If there is any news media account or commentary about the case or anything to do with it,

4   you must ignore it. You must not read, watch or listen to any news media account or commentary

5   about the case or anything to do with it. The case must be decided by you solely and exclusively

6   on the evidence that will be received in the case and on my instructions as to the law that applies.

7   If any juror is exposed to any outside information, please notify me immediately.

8   Source: Ninth Circuit Model Civil Jury Instruction 1.16.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Instruction No. 15: No Transcripts [Stipulated]**

2
3

      I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

4
5

Source: Ninth Circuit Model Civil Jury Instruction 1.17; Civil Pretrial Instructions of Judge Chen.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instruction No. 16: Taking Notes [Stipulated]**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes should be left in the jury room. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

Source: Ninth Circuit Model Civil Jury Instruction 1.18; Civil Pretrial Instructions of Judge Chen.

**Instruction No. 17: Bench Conferences and Recesses [Stipulated]**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Source: Ninth Circuit Model Civil Jury Instruction 1.20; Civil Pretrial Instructions of Judge Chen.

**Instruction No. 18: Outline of Trial [Stipulated]**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross- examine. Then the defendant may present evidence, and counsel for the plaintiff may cross- examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

Source: Ninth Circuit Model Civil Jury Instruction 1.21; Civil Pretrial Instructions of Judge Chen.

**Instruction No. 19: End of Day [Stipulated]**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Instruction No. 20: Beginning of Day [Stipulated]**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CLOSING INSTRUCTIONS

**Instruction No. 21: Duty of Jury [Stipulated]**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

Source: Ninth Circuit Model Civil Jury Instruction 18.8; Civil Pretrial Instructions of Judge Chen.

**Instruction No. 22: Documents and Testimony Not In Evidence [Stipulated]**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1)   Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2)   Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3)   Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; if I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4)   Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Source: Ninth Circuit Model Civil Jury Instruction 1.10; Civil Pretrial Instructions of Judge Chen.

**Instruction No. 23: Burden of Proof—Preponderance of Evidence [Stipulated]**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presents it.

Source: Ninth Circuit Model Civil Jury Instruction 1.6.

**Instruction No. 24: Corporate Entities [Disputed]**

**Plaintiff's Proposal**

One of the parties in this case, Tesla, Inc., is a corporation.  Under the law, a corporation is considered to be a person.  All parties are equal under the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

Under the law, a corporation can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of their authority.

An officer of a company is acting within the scope of authority if the officer is engaged in the performance of duties which were expressly or impliedly assigned to the officer by the company.

Source: Ninth Circuit Model Civil Jury Instruction 4.1, 4.2, and 4.5.

**Defendants' Proposal**

One of the parties in this case, Tesla, Inc. is a corporation.  Under the law, a corporation is considered to be a person.  All parties are equal under the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

Under the law, a corporation can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of their authority.

An officer of a company is acting within the scope of authority if the officer is engaged in the performance of duties that were expressly or impliedly assigned to the officer by the company.

If you find against Mr. Musk, but do not find that Mr. Musk was acting within the scope of authority as an officer of Tesla, then you must find that Tesla is not liable.

Source: Ninth Circuit Model Civil Jury Instruction 4.1, 4.2, 4.5, and 4.11.

**Plaintiff's Position:**

The only difference between the two instructions is the last paragraph in Defendants' proposed instruction, which at face value appears to restrict when the jury can and cannot find Tesla liable. Plaintiff objects to the inclusion of this last paragraph because it incorrectly assumes that Musk was the sole "maker" of the August 7 tweets and that Tesla will therefore not be independently liable for them. This assumption contradicts the evidence Plaintiff intends to offer at trial and, therefore, incorrectly instructs the jury as to what they may or may not be able to conclude.

Tesla identified Musk's Twitter feed as an official channel of corporate communications. *See* Plaintiff's Complaint, ECF No. 184, ¶19. Tesla then proceeded to use Musk's Twitter feed to frequently communicate about Tesla's business. *See* Prof. Guhan Subramanian Expert Report, ¶26. Members of Tesla's Board of Directors confirmed this point, testifying at their depositions that Musk routinely used his Twitter channel to provide free marketing for the company and disseminate public information about it. *See*, *e.g.*, *id*. at ¶73. Importantly, Tesla's directors also testified that Tesla's management was responsible for "oversight" of Musk's Twitter. *See id*. at ¶75. Thus, contrary to Defendants' assumptions, the jury will have more than enough evidence to conclude that Tesla had "ultimate authority" over the tweets, was the "maker" of the August 7 tweets and, therefore, can be held liable for the tweets (regardless of whether Musk is also found liable). *See Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ("the maker of a statement is the person or entity with ultimate authority over the statement").

Defendants' instruction also assumes incorrectly that there will be no deliberations over whether they are liable for misleading statements (omissions) in the August 13 blog post. Tesla published the alleged misleading statements on its website and, therefore, is unquestionably a "maker" of the statements in the August 13 blog post. *Id*. As an independent "maker" of statements in the August 13 blog post, Tesla can be found liable even if Musk is not (however unlikely that may be). Thus, Defendants' proposed instruction cannot stand because it would preclude the jury from finding liability against Tesla in this instance, even though the law would require it.

1

**Defendants' Position:**

2

Defendants respectfully request that the Court adopt their proposed instruction regarding

3

corporate entities. Plaintiff asserts a Section 10(b) claim against both Mr. Musk and Tesla for

4

statements that Mr. Musk made from his Twitter account. Plaintiff intends to impute Mr. Musk's

5

statements to Tesla under the theory that Mr. Musk was Tesla's agent acting "within the scope of

6

his authority" when he made the statements at issue. For the jury to reach a considered decision

7

on this issue, it must be instructed on the definition of an agent's scope of authority and,

8

correspondingly, be instructed that Tesla cannot be found liable if Mr. Musk was acting outside of

9

the scope of his authority when he made the statements. Defendants' proposed instruction does

10

just that, using the Ninth Circuit's Model Instructions for "Agent—Scope of Authority Defined"

11

and "Both Principal and Gent Sued—Agency or Authority Denied." Ninth Circuit Model Civil

12

Jury Instruction 4.1, 4.2, 4.5, and 4.11. The Court should therefore adopt the Defendants'

13

instruction.

14

Defendants object to Plaintiff's Proposed Instruction No. 24 on the grounds that it fails to

15

instruct the jury that, if Mr. Musk was not acting within the scope of his authority as an agent of

16

Tesla, it may not find Tesla liable for his statements. This is a necessary instruction, included in

17

the Ninth Circuit's Model Instructions, that appropriately informs the jury how to apply a finding

18

that Mr. Musk was not acting within the scope of his authority to this case. (*Compare* Plaintiff's

19

Proposed Instruction No. 24 *with* Ninth Circuit Model Civil Jury Instruction 4.11.) As written,

20

Plaintiff's proposed instruction is incomplete and inaccurate and should therefore be rejected. *See*

21

*Floyd v. Laws*, 929 F.2d 1390, 1394 (9th Cir. 1991) (jury instructions should be "a clear, concise,

22

and accurate statement of the law in question").

23

24

25

26

27

28

**Instruction No. 25: Rule 10b-5 Claim [Disputed]**

      **Plaintiff's Proposal**

Congress has enacted securities laws designed to protect the integrity of financial markets. The Plaintiff claims to have suffered a loss caused by the Defendants' violation of certain of these laws.

The buying and selling of securities is controlled by the Securities Laws.  A "10b5-Claim" is a claim brought under a federal statute, Section 10(b) of the Securities Exchange Act of 1934, which in essence prohibits acts of deception in connection with the purchase or sale of a security and in violation of rules and regulations that the SEC has the duty and power to issue.  A corresponding SEC Rule, Rule 10b-5, prohibits the misrepresentation of material facts and the omission of material facts in connection with the purchase or sale of securities.  A person or business entity who violates the securities laws, including Rule 10b-5, may be liable for damages caused by the violation.

Plaintiff alleges that Elon Musk and Tesla, Inc. violated Rule 10b-5 and harmed investors by making materially false and misleading statements about a proposed going-private transaction and its financing. This is referred to as "the Plaintiff's 10b-5 claim."

On this claim, Plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

    1) Elon Musk and/or Tesla made untrue statements of a material fact or omitted a material fact necessary under the circumstances to keep the statements that were made from being misleading in connection with the purchase or sale of securities;

    2) Elon Musk and/or Tesla acted with the necessary state of mind;

    3) Elon Musk and/or Tesla used an instrument of interstate commerce, such as the internet, tweets and blogposts in this case, in connection with the sale and/or purchase of Tesla securities;

    4) Plaintiff justifiably relied on Elon Musk and/or Tesla's misrepresentations or omissions in buying or selling Tesla securities during the Class Period; and

    5) Elon Musk and/or Tesla's misrepresentations and omissions caused Plaintiff and the

1    Class to suffer damages.

2        As I stated at the beginning of this trial, the Court previously determined that the evidence

3    in this case demonstrated conclusively as a matter of law that with regard to the statement "Am

4    considering taking Tesla private at $420. Funding secured." 1) the statement "funding secured"

5    was false; and 2) the statement "funding secured" was made by Elon Musk with deliberate

6    recklessness as to its truth. Further, with regard to the statement "Investor support is confirmed.

7    Only reason why this is not certain is that it's contingent on a shareholder vote." the Court also

8    decided that the evidence in this case demonstrated conclusively as a matter of law that 1) this

9    entire statement was false; and 2) the entire statement was made by Elon Musk with deliberate

10   recklessness as to its truth.  Consequently, for these particular tweets, you shall accept that Plaintiff

11   has already proven that they were false and/or misleading at the time they were made and that Mr.

12   Musk made these statements with deliberate recklessness in connection with the purchase and/or

13   sale of Tesla securities.

14       With respect to the remaining elements of Plaintiff's claims against Tesla and Mr. Musk

15   for the August 7, 2018 tweets and the alleged false and/or materially misleading statements on

16   August 13, 2018, there are no similar rulings to consider. Therefore, you will need to decide

17   whether Plaintiff has proved by a preponderance of evidence each of the 10b-5 claim elements.

18

19   Source: Ninth Circuit Model Civil Jury Instruction 18.1, 18.2. *See also STM Networks, Inc. v. Clay*

20   *Pac. S.R.L.*, 224 F. App'x 609, 610 (9th Cir. 2007) ("The district court did not abuse its discretion

21   in giving jury instructions consistent with its ruling on partial summary judgment."); *Nutri-Metics*

22   *Int'l, Inc. v. Carrington Lab'ys, Inc.*, 1992 WL 389246, at *5 (9th Cir. Dec. 22, 1992) ("the jury

23   had to be informed whether there was a breach of the Noncompetition Agreement once the judge

24   properly decided it as a matter of law"); *McArthur v. City & Cty. of S.F.*, 190 F. Supp. 3d 895, 907

25   (N.D. Cal. 2016) ("Partial summary judgment is further granted as follows. The jury will be

26   instructed that no constitutional violation took place up through and including the searches of all

27   of the men. That issue is now decided and will not be re-litigated at trial but of course sufficient

28   background facts may be allowed . . . .").

**Defendants' Proposal**[2]

The buying and selling of securities is controlled by the Securities Laws. A "10b5-Claim" is a claim brought under a federal statute, Section 10(b) of the Securities Exchange Act of 1934, which in essence prohibits acts of deception in connection with the purchase or sale of a security and in violation of rules and regulations that the SEC has the duty and power to issue. A corresponding SEC Rule, Rule 10b-5, prohibits the knowing or deliberately reckless misrepresentation of material facts in connection with the purchase or sale of securities.

Plaintiff alleges that Elon Musk and Tesla, Inc. violated Rule 10b-5 and harmed investors by making materially false and misleading statements about a proposed going-private transaction and its financing. This is referred to as "the Plaintiff's 10b-5 claim."

On this claim, Plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1) Elon Musk and/or Tesla made untrue statements of a material fact in connection with the purchase or sale of securities;

2) Elon Musk and/or Tesla acted with the necessary state of mind;

3) Elon Musk and/or Tesla used an instrument of interstate commerce, in connection with the sale and/or purchase of Tesla securities;

4) Plaintiff justifiably relied on Elon Musk and/or Tesla's material misrepresentations; and

5) Elon Musk and/or Tesla's material misrepresentations caused Plaintiff to suffer damages.

Plaintiff has the burden of proving to you each of the elements I just listed as to each of Tesla and Mr. Musk, by a preponderance of the evidence.

If you find that the Plaintiff has proved each of the above elements, your verdict should be for the Plaintiff. If on the other hand, you find that the Plaintiff has failed to prove any of these elements, your verdict should be for Defendants.

---

[2]   Defendants reserve the right to alter their requested jury instructions based on the evidence Plaintiff presents, including the theory of liability Plaintiff pursues at trial.

Source: Ninth Circuit Model Civil Jury Instruction 18.2; *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267-68 (2014) (including materiality as an element of the fraud-on-the-market doctrine).

**Plaintiff's Position:**

Plaintiff's Proposed Closing Instruction No. 25 largely follows model jury instructions 18.1 and 18.2, and tells the jury which of these claims have already been decided by the Court. Plaintiff's proposal in this regard comports with the Court's Order Denying Plaintiff Littleton's Motion for Temporary Restraining Order, holding that "though 'jury instructions are often an ineffective remedy,' the Court finds that unlikely to be true for the instant case where the jury will be told that the Court has already found that the August 2018 tweets were false and made with the requisite scienter." ECF No. 398 at 3 (internal citations omitted). Additionally, Plaintiff's introduction is neutral and comes straight from model jury instruction 18.1. Defendants' proposal, however, is incomplete, omits the omissions of the August 13, 2018 blog post, and deletes examples of interstate commerce.

In order to give the jury an understanding of the remaining issues in this case, the Court's Summary Judgment order must be explained to the jury. Plaintiff's instructions do that in the most neutral way possible. Defendants' proposal intentionally omits any reference to the summary judgment ruling. During the meet-and-confer process, Defendants confirmed explicitly that they would propose "no instruction on the summary judgment order" and would not consent to anything proposed by Plaintiff. Defendants' position in this regard is entirely unsupported by the law. *See STM Networks, Inc. v. Clay Pac. S.R.L.*, 224 F. App'x 609, 610 (9th Cir. 2007) ("The district court did not abuse its discretion in giving jury instructions consistent with its ruling on partial summary judgment."); *Nutri-Metics Int'l, Inc. v. Carrington Lab'ys, Inc.*, 1992 WL 389246, at *5 (9th Cir. Dec. 22, 1992) ("the jury had to be informed whether there was a breach of the Noncompetition Agreement once the judge properly decided it as a matter of law"); *McArthur v. City & Cty. of S.F.*, 190 F. Supp. 3d 895, 907 (N.D. Cal. 2016) ("Partial summary judgment is further granted as

follows. The jury will be instructed that no constitutional violation took place up through and including the searches of all of the men. That issue is now decided and will not be re-litigated at trial but of course sufficient background facts may be allowed . . . .").

To the extent Defendants do suggest language relating to the Summary Judgment Order, it conflicts with the Court's actual ruling. Defendants attempt to combine the materiality and falsity and scienter requirements to re-litigate issues already decided by the Court. For example, Defendants state the jury "must decide the separate question whether these statements were materially false". This language is unduly prejudicial to Plaintiff as the Court has already found the August 7, 2018 tweets to be false. Defendants' attempt to relitigate these issues should be rejected.

Defendants also take out all references to omissions in Plaintiff's instruction, arguing that the only misrepresentations that are at issue here are the August 7, 2018 tweets for which this Court granted Plaintiff summary judgment on the issues of falsity and scienter, but not materiality or reliance. Plaintiff has consistently alleged that Defendants are liable under Rule 10b-5 and Section 20(a) for making materially misleading statements in the August 13 blog post. In the complaint, Plaintiff excerpted three paragraphs from the blog post in particular and alleged that these paragraphs "omit[ted] and/or conceal[ed]" material information from investors. *See* Complaint (ECF No. 184), ¶¶136, 138. These omission allegations were not dismissed at the pleading stage. Nor were they excluded by the Court in response to Defendants' early motion *in limine*.

The Court's motion to dismiss order stated that "the blog post on August 13 is not independently actionable as a misleading statement" but said nothing of Plaintiff's omission allegations. *See* ECF No. 251, p. 26. Likewise, the Court held during the motion *in limine* proceedings that, "The only thing I have before me right now, as I understand it, is the challenge to this one statement [referring to the statement 'I have continued to communicate with the Managing Director of the Saudi fund . . . .']. It was not previously identified and not identified in a timely way, and so my ruling stands." July 28, 2022 Tr. at 11.

The omission paragraphs identified by Plaintiff in the verdict form are *not* the portion of the

- 43 -

blog post previously excluded by the Court. They are the exact same excerpt of the blog post that appears in Plaintiff's Complaint. Plaintiff also has more than enough evidence to show by a preponderance of the evidence that Defendants "omit[ted] to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." *See* 17 C.F.R. §240.10b-5(b). Indeed, the blog post says that "I [Musk] left the July 31st meeting with no question that a deal with the Saudi sovereign fund could be closed . . . ." Complaint, ¶136. Putting aside whether Musk actually believed that to be the case as of July 31, 2018 (he did not), the circumstances surrounding that conversation had changed materially by the time Defendants published this statement on August 13, 2018. Those circumstances include, for example, the near-complete breakdown of all communications and negotiations between Musk and the Saudi fund (which the Court described as "friction between Mr. Musk and Mr. Al-Rumayyan" in its summary judgment order). *See* ECF No. 387 at 30 (citing Ex. 121). In light of what transpired between the July 31 meeting and the August 13 blog post, Defendants materially misled investors by stating *only* that Musk "left the July 31st meeting with no question that a deal with the Saudi sovereign fund could be closed" because it "affirmatively create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). The jury should be allowed to decide whether Musk and Tesla lied by omission in this instance and, accordingly, violated Rule 10b-5.

Additionally, Defendants disagree with Plaintiff's reference to "A person or business entity who violates the securities laws, including Rule 10b-5, may be liable for damages caused by the violation." This language is taken verbatim from model jury instruction 18.1's definition of a "10b-5 Claim". Damages are a central remaining issue in this case and failure to instruct the jury on this issue is prejudicial to Plaintiff.

Defendants have failed to provide adequate reasons to severely depart from the model instructions. *See Prado v. Fed. Express Corp.*, No. 5:12-CV-03945-PSG, 2015 WL 374965, at *2 (N.D. Cal. Jan. 28, 2015) (No error where the court denied to use an instruction that "reached far beyond what is recommended by the model instructions and belabored the points in an otherwise straightforward jury instruction crafted to avoid juror confusion."); *Chandler v. Frauenheim*, No.

- 44 -

17-CV-00325-EMC, 2018 WL 4056018, at *26 (N.D. Cal. Aug. 23, 2018) (Where phrase is used in the model instruction, it suggests it is appropriate, holding "[t]he phrase 'common sense' also is used in the Ninth Circuit's model instruction on reasonable doubt, which suggests it is not inflammatory language and does not draw away from the jury's duty to evaluate the evidence."). Accordingly, Plaintiff's Proposed Closing Instruction No. 25 should be accepted.

**Defendants' Position:**

Defendants respectfully request that the Court adopt their proposed instruction regarding the Rule 10b-5 claim and its elements. The instruction is based on the Ninth Circuit model instruction for the elements of a Rule 10b-5 claim and does not add any additional instructions that may confuse or mislead the jury. The only changes made to the instruction are modest edits that provide the jury with an explanation of the Rule 10b-5 claim, tailor the instruction to the claims at issue in this trial, and provide a more accurate statement of the law. The proposed instruction includes a brief explanation of the Rule 10b-5 claim before listing the elements to provide the jury with context regarding the claim without including unnecessary detail or argument. The instructions also remove any reference to omissions because the Plaintiff is pursuing a material misstatement theory, and therefore any discussion of omission is unnecessary and will only serve to confuse the jury. *See Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005) ("[J]ury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading."). Defendants' proposed instruction also specifies that Plaintiff must prove he justifiably relied on and was damaged by Mr. Musk and/or Tesla's "material misrepresentations," which is a more accurate description of the damages element and fraud-on-the-market theory of reliance that Plaintiff is advancing in this case. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 463 (2013) ("The fraud-on-the-market theory…recogniz[es] a rebuttable presumption of classwide reliance on public, material misrepresentations when shares are traded in an efficient market."). Finally, Defendants' proposal includes the instruction, from the Ninth Circuit's Model Jury Instructions, that Plaintiff must prove each element of the claim to obtain a verdict in its favor.

1    Ninth Circuit Model Civil Jury Instruction 18.2.  The Court should therefore adopt Defendants'

2    instruction.

3         Defendants object to the Plaintiff's Proposed Instruction No. 25 as inaccurate, overly long,

4    misleading, and unfairly prejudicial to Defendants.  Defendants object to the Plaintiff's purported

5    description of the Court's summary judgment order and the inclusion of any such description as

6    inaccurate and misleading, confusing to the jury, and unfairly prejudicial to Defendants.  As an

7    initial matter, Plaintiff's statement purporting to describe what the Court found on summary

8    judgment is not an accurate description of the order, as clarified by the Court at the June 16, 2022

9    hearing on Defendants' motion for reconsideration and corresponding minute order.  (Ex. I,

10   6/16/22 Hr'ing Tr. at 3:23-5:8; Dkt. 446.)  As the Court made clear, his summary judgment order

11   only found that the statements "Funding secured" and "Investor support is confirmed.  Only reason

12   why this is not certain is that it's contingent on a shareholder vote" were "false statement[s]…in a

13   literal sense, not in a legal sense."  (6/16/22 Hr'ing Tr. at 4:14-23.)  The Court made the same

14   limited finding as to scienter.  (*Id.* ("and similarly with scienter, no reasonable juror could find that

15   Mr. Musk did not know or didn't act in disregard to the inaccuracy—the factual inaccuracy, not

16   the legal.").  The Court did not find that the statements at issue were "materially false" or made

17   with knowledge or reckless disregard as to their "material falsity," which are the elements of the

18   Section 10b claim and therefore the questions before the jury.  *See, e.g., Dura Pharma, Inc. v.*

19   *Broudo*, 544 U.S. 336, 341 (2005) (plaintiff must prove defendant made a "material

20   misrepresentation (or omission); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 701 (9th Cir. 2021)

21   (scienter satisfied by "a reckless omission of material facts").

22        Plaintiff's assertion that the Court made any determinations regarding these statements

23   "conclusively as a matter of law" is therefore inaccurate and misleading because it suggests that

24   the Court determined that Plaintiff established legal elements of Plaintiff's claim.  It did not.

25   (*Compare* Plaintiff's Proposed Instruction No. 25 ("With respect to the ***remaining elements*** of

26   their claims against Tesla and Mr. Musk…") (emphasis added) *with* 6/16/22 Hr'ing Tr. at 4:14-23

27   ("[S]o the falsity element that's required for a 10b-5 is not—has not been completely

28   fulfilled…and similarly with scienter, no reasonable juror could find that Mr. Musk did not know

- 46 -

or didn't act in disregard to the inaccuracy—the factual inaccuracy, not the legal.") *and id.* at 5:4-8 ("To be clear, I did not find materiality with respect to the misrepresentation or a reckless disregard or knowingly scienter with regard to any such material representation.") *and* Dkt. 446.) Plaintiff's instruction should be rejected.

Plaintiff's description is also inaccurate and misleading because it suggests that the Court found that the first sentence of the first tweet—"Am considering taking Tesla private at $420"—was false. It did not find that either. (Dkt. 387 at 23 ("the focus would be on the second part of the tweet, *i.e.*, "Funding secured.") and 24 ("Based on the evidence of record, the Court finds that no reasonable jury could find the statement "Funding secured" accurate and not misleading.").) Nor did Plaintiff contend in his motion for summary judgment that this first sentence was untrue; his "Issues To Be Decided" only identified "Funding secured" as a false statement. (Dkt. 352 at 1.) Plaintiff did not make such a contention and the Court did not make such a finding because the evidence establishes that statement was true: Mr. Musk was considering taking Tesla private at $420 per share at the time he published the tweet. The description misleadingly instructs the jury to conclude that the entire tweet was false even though the Court did not make, and the evidence does not support, that finding.

Defendants also object to Plaintiff's proposed description of the Court's summary judgment order because it will confuse the jury. An instruction must not "confuse or leave an erroneous impression in the minds of the jurors." *United States v. Walker*, 575 F.2d 209, 213 (9th Cir. 1978) (Kennedy, J). Plaintiff's proposal is likely to do both. First, it will confuse the jury as to what issues it must consider and decide in this case. Because the proposal contends that the Court found "as a matter of law" that the statements identified were false and made with reckless disregard to their truth, the jury will likely be confused as to whether it must make an independent determination on the elements of material falsity or scienter at all, instead of simply checking a box consistent with what it mistakenly believes the Court's earlier decision was. This confusion will likely be compounded as to the first statement—"Am considering taking Tesla private at $420. Funding secured"—because the jury will erroneously believe that the Court found the entire statement to be false, even though the first sentence is indisputably true. Second, and relatedly,

- 47 -

the proposal will leave the jury with an "erroneous impression" that Plaintiff has already established "as a matter of law" the elements of material falsity and scienter, when he has not. (6/16/22 Hr'ing Tr. at 3:23-5:8; Dkt. 446.)

Finally, any reference to the Court's summary judgment order (and particularly in the manner in which Plaintiff presents it) will substantially prejudice Defendants and irrevocably taint the jury's role as finder of fact in this trial. Courts recognize that "judicial findings of fact 'present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.'" *United States v. Sine*, 493 F.3d 1021, 1033-34 (9th Cir. 2007) ("jurors are likely to defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder rather than determine those issues for themselves"); *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993) (same); *see also Herrick v. Garvey,* 298 F.3d 1184, 1192 (10th Cir. 2002) ("Juries are likely to give disproportionate weight to such findings of fact because of the imprimatur that has been stamped upon them by the judicial system."); *U.S. Steel, LLC, v. Tieco, Inc*., 261 F.3d 1275, 1288 (11th Cir. 2001) ("The district court abused its discretion in admitting Judge Garrett's opinion. The jury, not Judge Garrett, was charged with making factual findings on Appellees' allegations in this case."). Plaintiff is asking the Court to effectively testify not only that the statements at issue are false and made with scienter but also, by strong logical implication, that Mr. Musk—by making such statements with reckless disregard—is an unreliable witness whose statements should not be credited. It is only natural that the jury will displace its independent judgment for what it believes is the Court's position. Plaintiff's proposal therefore places the Court in the improper role as essentially a witness in this case and should be rejected outright.

Even if the Court determines that it must make some reference to its summary judgment findings—and such a reference, if any, should not be made until closing instructions after the jury has heard all of the evidence—the Court should, at a minimum, do so in a manner that removes the Court's imprimatur and thereby reduces the reference's prejudicial effect. Instead of stating that "the Court decided" any issue "as a matter of law," the instruction should inform the jury that "you are to assume" that the particular factual issue has been proven. For example, if necessary,

1   it would be far more appropriate and accurate for the Court to instruct the jury, "You are to assume

2   the factual inaccuracy of the statements 'Funding secured' and 'Investor support is confirmed.

3   Only reason why this is not certain is that it's contingent on a shareholder vote.'   But you still

4   must decide the separate question whether these statements were materially false pursuant to my

5   instructions on that element.   You must also decide whether Mr. Musk knew or acted with

6   deliberate recklessness as to the statements' material falsity pursuant to my instructions on that

7   element." *See Sherwin-Williams Co. v. PPG Indus., Inc*., No. CV 17-1023, 2021 WL 5648019, at

8   *3 (W.D. Pa. Dec. 1, 2021) (adopting "you can assume" language in jury instruction to describe

9   issue previously decided by the court and holding that the alternative phrase "it has been

10  determined " was unnecessary and may confuse the jury).

11         Defendants also object to Plaintiff's proposal on the grounds that it instructs the jury that the

12  August 13, 2018 Blog Post ("Blog Post") is an actionable misstatement/omission at issue in this

13  trial.  As the Court made clear in its order granting Defendants' Motion *in Limine* No. 3, Plaintiff

14  did not allege that the Blog Post was actionable in the Consolidated Complaint and is therefore

15  precluded from asserting the same at trial.  (Dkt. 466 at 1-2.)  The Blog Post is not an alleged

16  misstatement at issue in this trial and should not be included in the instructions.  *See In re Twitter,*

17  *Inc. Sec. Litig*., No. 16-CV-05314-JST, 2020 WL 4188787, at *4 (N.D. Cal. May 19, 2020)

18  (excluding unpled allegation from trial).

19         Defendants further object to this instruction's reference to omissions.   Plaintiff is not

20  pursuing an omission theory here, so any such reference is unnecessary.  *Roberts v. Spalding*, 783

21  F.2d 867, 873 (9th Cir. 1986)  ("the district court was under no duty to submit to the jury proposed

22  instructions that contain … a theory not supported by the evidence, or that are otherwise

23  incomplete or improper."); *see Twitter*, 2020 WL 4188787, at *4.

24         Finally, Defendants object to the preamble and explanation of the Rule 10b-5 claim in

25  Plaintiff's proposed instructions on the grounds that it is unnecessary.  The jury does not need to

26  be informed of the policy animating the adoption of the securities laws to determine whether

27  Plaintiff has met his burden of establishing all of the elements of a Rule 10b-5 claim.  The language

28  is unhelpful and serves no purpose.  It should therefore be rejected.

1

2   **Instruction No. 26: Maker of Misstatement [Disputed]**

3         **Plaintiff's Proposal:**

4         [Plaintiff includes this instruction with Instruction No. 27: Material Misrepresentation]

5

6         **Defendants' Proposal**:

7         To be liable for a Section 10(b) violation, the plaintiff must prove that the defendant was

8   the maker of a materially false or misleading statement.  A defendant "makes" a statement if the

9   defendant has ultimate authority over the statement, including its content and whether and how

10  to communicate it.

11        Source: *Ninth Circuit Manual of Model Civil Jury Instructions 18.2*; *Janus Cap. Grp.,*

12  *Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011); *Reese v. BP Expl. (Alaska) Inc.*, 643

13  F.3d 681, 694 n.8 (9th Cir. 2011); *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1006

14  (N.D. Cal. 2017).

15

16        **Plaintiff's Position**

17        Plaintiff and Defendants not only agree on including the definition of a maker, but the exact

18  verbiage of an instruction. However, the parties disagree on whether "maker" deserves its own

19  instruction. The "maker" of a statement is not a model jury instruction. Rather, it is a comment to

20  model instruction 18.2 Rule 10b-5 claim. As there is no standalone instruction for "maker,"

21  Plaintiff believes it is better suited in Instruction No. 27 Material Misrepresentation.

22

23        **Defendants' Position:**

24        Defendants respectfully request that the Court adopt their proposed jury instruction on

25  maker of misstatement.  The law requires that, to be liable for a Section 10(b) violation, a

26  defendant must have been the "maker" of the allegedly false and misleading statement.  *See*

27  Ninth Circuit Manual of Model Civil Jury Instructions 18.2 (comments); *Janus Cap. Grp., Inc. v.*

28  *First Derivative Traders*, 564 U.S. 135, 138 (2011) ("JCM cannot be held liable because it did

- 50 -

not make the statements in the prospectuses").  For the purposes of Section 10(b) and Rule 10b-5, "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."  *Janus*, 564 U.S. at 142; *see also Reese v. BP Expl. (Alaska) Inc*., 643 F.3d 681, 694 n.8 (9th Cir. 2011) (defendant could not be held liable where it did not have "ultimate authority over" statements at issue); *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1006-07 (N.D. Cal. 2017) ("Plaintiffs fail to adequately allege that [chief revenue officer] was the 'entity with authority' over any statement that Plaintiffs allege was false or misleading" and therefore he could not be liable under Section 10(b)).

Defendants dispute that Mr. Musk's tweets are attributable to Tesla, and thus whether Tesla is the "maker" of the statements at issue in this trial.  The jury must therefore decide whether Tesla had "authority" over Mr. Musk's tweets and should be instructed on this issue. The Court should adopt this proposed instruction.

1    **Instruction No. 27: Material Misrepresentation [Disputed]**

2        **Plaintiff's Proposal:**

3        To be liable for a Section 10(b) violation, the plaintiff must prove that the defendant was

4    the maker of a materially false or misleading statement.  A defendant "makes" a statement if the

5    defendant has ultimate authority over the statement, including its content and whether and how to

6    communicate it.

7        A misrepresentation is a statement of material fact that is false or misleading when it is

8    made. A statement is misleading if it would give a reasonable investor the impression of a state of

9    affairs that differs in a material way from the one that actually exists. A statement may be

10   misleading even if it is literally true if the context in which the statement was made caused the

11   listener or reader to remain unaware of the actual state of affairs.  A statement may also be

12   misleading if it fails to disclose or omits a material fact that had to be disclosed to prevent other

13   statements that were made from being misleading.

14       Plaintiff must prove by a preponderance of the evidence that any misrepresentation or

15   omission by Elon Musk and/or Tesla was material.

16       A factual representation concerning a security is material if there is a substantial likelihood

17   a reasonable investor would consider the fact important in deciding whether to buy or sell that

18   security.

19       An omission concerning a security is material if a reasonable investor would have regarded

20   what was not disclosed to them as having significantly altered the total mix of information he took

21   into account in deciding whether to buy or sell the Tesla security.

22       You must decide whether something was material based on the circumstances as they

23   existed at the time of the statement or omission.

24

25       The Court has previously determined that the evidence in this case demonstrated

26   conclusively that with regard to the statement "Am considering taking Tesla private at $420.

27   Funding secured." the statement "funding secured" was false. Further, with regard to the statement

28   "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a

shareholder vote." the Court also decided that the evidence in this case demonstrated conclusively that this entire statement was false. Consequently, you shall accept that Plaintiff has already proven that the tweets on August 7, 2018, were false and/or misleading at the time they were made.

Source: Ninth Circuit Model Civil Jury Instruction 18.1, 18.2 18.3; *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 699 (9th Cir. 2021); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008); *Brody v. Transitional Hospitals Corp.,* 280 F.3d 997, 1006 (9th Cir. 2002); *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 892 (9th Cir. 2008) (materiality of statement assessed "at time of the vote"); *S.E.C. v. Reyes*, 491 F. Supp. 2d 906, 910 (N.D. Cal. 2007) ("The law assesses the materiality of a misrepresentation at the time it is made, not after intervening events or remedial action have rendered it harmless."); *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013) (noting materiality is an objective test); *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) ("Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."); *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011); *Lorenzo v. S.E.C.*, 139 S. Ct. 1094 (2019).

**Defendants' Proposal:**

Plaintiff must prove by a preponderance of the evidence that Elon Musk and/or Tesla made a materially false or materially misleading statement.

A statement can be factually false but not material.

A factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether to buy or sell that security.

A statement is materially false or materially misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists.   A statement is not material just because it contains information that relates to a matter of general importance.

- 53 -

For example, when a company inaccurately reports its revenue, such a misstatement is factually false and involves a matter of general importance to the company and its investors. However, that misstatement may not be material if the difference between the disclosed revenue and the accurate revenue is not significant enough to influence a reasonable investor's decision whether to buy or sell securities in that company.

You must decide whether a statement was material based on the circumstances as they existed at the time of the statement, including the statement's content, the context in which the statement was made, and the circumstance in which a reasonable investor would have seen or heard it.

A statement regarding a material fact may not be held false or misleading merely because subsequent events prove it to have been erroneous.

Source: Ninth Circuit Model Civil Jury Instruction 18.3; 15 U.S. §§78j(b); 17 C.F.R. §240.10b-5; 3B Kevin F. O'Malley, et al., Federal Jury Practice and Instructions- Civil §162:235 (6th ed. 2013);; *In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784, 796 (9th Cir. 2017); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1109 (9th Cir. 2010); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017) (holding statements were materially misleading because they "affirmatively created an impression of a state of affairs that differed in a material way from the one that actually existed."); *Tarapara v. K12 Inc.*, No. 16-CV-4069-PJH, 2017 WL 3727112, at *15 (N.D. Cal. Aug. 30, 2017) ("A statement is materially misleading when it 'affirmatively created an impression of a state of affairs that differed in a material way from the one that actually exists.'"); *Habelt v. iRhythm Techs., Inc.*, No. 21-CV-00776-EMC, 2022 WL 971580, at *7 (N.D. Cal. Mar. 31, 2022) (Chen, J.) (applying "total mix" standard to analyze materiality of misstatements); Dkt. 446, Minute Entry at 1 ("A statement can be factually false but not material."); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1261 (N.D. Cal. 2000) (discussing the distinction between information that is generally important from material information that a reasonable investor would consider important in making a decision whether to purchase a security); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 43 (2011) (assessing

- 54 -

1   materiality of omitted information required "consideration of the source, content, and context of

2   reports"); *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1321 (11th Cir. 2019) ("the materiality

3   inquiry includes consideration of the context in which a statement was made and the circumstances

4   in which a reasonable investor would have heard it."); *In re Donald J. Trump Casino Sec. Litig.-*

5   *Taj Mahal Litig.*, 7 F.3d 357, 369 (3d Cir. 1993) ("materiality is a relative concept, so that a court

6   must appraise a misrepresentation or omission in the complete context in which the author conveys

7   it."); *Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 596 (7th Cir. 2006) ("The crux of

8   materiality is whether, in context, an investor would reasonably rely on the defendant's statement

9   as one reflecting a consequential fact about the company."), *as modified on denial of reh'g* (July

10   10, 2006), *vacated and remanded on other grounds*, 551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d

11   179 (2007); 6/16/22 Mot. to Reconsider Hr'ing Tr. at 13:15-14:14 (describing "numbers statement

12   that's simply wrong" as a representation that "can be inaccurate, but [] may not be material.").

14   **Plaintiff's Position:**

15       Plaintiff's proposed instruction largely follows the model jury instructions for both falsity

16   and materiality. *See* 18.1, 18.2. To avoid confusion though, Plaintiff's instruction reminds the jury

17   that the issue of "falsity" has already been resolved for the August 7 tweets and that the jury need

18   only deliberate over whether the tweets were "material." Any instruction on this element without

19   this clarification would run the risk of allowing the jury to reconsider the Court's partial summary

20   judgment holdings, namely that 1) that "no reasonable jury could find the statement 'Funding

21   secured' accurate and not misleading" and 2) "that a reasonable jury could reach only one

22   conclusion – *i.e.*, that Mr. Musk recklessly tweeted to the public that funding was secured." ECF

23   No. 387 at 24-26. Likewise, for the statement "Investor support is confirmed. Only reason why

24   this is not certain is that it's contingent on a shareholder vote," the jury could disregard the Court's

25   holding that "the statement . . . is false and misleading" and that "a reasonable jury could reach

26   only one conclusion regarding scienter: that Mr. Musk made his statement recklessly." *Id*. at 26-

27   27, 28. Thus, for the same reasons this instruction was necessary at the outset of the trial, it is all

28   the more necessary here when tasking the jury to deliberate on this critical element of Plaintiff's

- 55 -

Rule 10b-5 Claim.

Indeed, Defendants' formulation of the instruction would undoubtedly confuse the jury and provide them with the ability to abandon the Court's partial summary judgment holding by intertwining the two standards for falsity and materiality. Whereas Plaintiff's instruction focuses on the latter, Defendants' proposed instruction reinserts the element of falsity into the mix without any explanation or clarification that "falsity" has already been decided by the Court for the first two statements on August 7, 2018. *See Prado v. Fed. Express Corp.*, No. 5:12-CV-03945-PSG, 2015 WL 374965, at *2 (N.D. Cal. Jan. 28, 2015) (No error where the court denied to use an instruction that "reached far beyond what is recommended by the model instructions and belabored the points in an otherwise straightforward jury instruction crafted to avoid juror confusion."); *Chandler v. Frauenheim*, No. 17-CV-00325-EMC, 2018 WL 4056018, at *26 (N.D. Cal. Aug. 23, 2018) (Where phrase is used in the model instruction, it suggests it is appropriate, holding "[t]he phrase 'common sense' also is used in the Ninth Circuit's model instruction on reasonable doubt, which suggests it is not inflammatory language and does not draw away from the jury's duty to evaluate the evidence."). In fact, Defendants' two standards conflict with each other, stating that a statement is "material if there is a substantial likelihood a reasonable investor would consider the fact important", while also stating that "[a] statement is not material just because it contains information that relates to a matter of general importance." Similarly, Defendants' instruction that "[a] statement regarding a material fact may not be held false or misleading merely because subsequent events prove it to have been erroneous" is simply wrong. Often, a subsequent corrective disclosure is used to show that the prior statement was false. And, as multiple courts in the Ninth Circuit have held, the law assesses the materiality of a misrepresentation at the time it is made. *See Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002); *Miller v. Thane Int'l, Inc*., 519 F.3d 879, 892 (9th Cir. 2008) (materiality of statement assessed "at time of the vote"); *S.E.C. v. Reye*s, 491 F. Supp. 2d 906, 910 (N.D. Cal. 2007) ("The law assesses the materiality of a misrepresentation at the time it is made, not after intervening events or remedial action have rendered it harmless."). The Court should follow the model instructions rather than Defendants' proposed instructions which are confusing and contradictory.

1

2

3

4

5

      Additionally, Defendants' above example is unnecessary and repetitive and provides no benefit to the jury as it is inapplicable here. Defendants have indicated that they intend to argue that the misstatements were immaterial because of a lack of stock price movement. Allowing Defendants to relitigate whether the statement was "materially false" is prejudicial as it gives Defendants another bite at the apple on falsity and goes against this Court's prior order.[3]

6

7

8

9

10

11

12

13

14

15

      Defendants also take out all references to omissions in Plaintiff's instruction, arguing that the only misrepresentations that are at issue here are the August 7, 2018 tweets for which this Court granted Plaintiff summary judgment on the issues of falsity and scienter, but not materiality or reliance. Plaintiff has consistently alleged that Defendants are liable under Rule 10b-5 and Section 20(a) for making materially misleading statements in the August 13 blog post. In the complaint, Plaintiff excerpted three paragraphs from the blog post in particular and alleged that these paragraphs "omit[ted] and/or conceal[ed]" material information from investors. *See* Complaint (ECF No. 184), ¶¶136, 138. These omission allegations were not dismissed at the pleading stage. Nor were they excluded by the Court in response to Defendants' early motion *in limine*.

16

17

18

19

20

21

22

      The Court's motion to dismiss order stated that "the blog post on August 13 is not independently actionable as a misleading statement" but said nothing of Plaintiff's omission allegations. *See* ECF No. 251, p. 26. Likewise, the Court held during the motion *in limine* proceedings that, "The only thing I have before me right now, as I understand it, is the challenge to this one statement [referring the statement 'I have continued to communicate with the Managing Director of the Saudi fund . . . .']. It was not previously identified and not identified in a timely way, and so my ruling stands." July 28, 2022 Tr. at 11.

23

24

25

26

      The omission paragraphs identified by Plaintiff in the verdict form ares *not* the portion of the blog post previously excluded by the Court. They are the exact same excerpt of the blog post that appears in Plaintiff's Complaint. Plaintiff also has more than enough evidence to show by a

27

28

---

[3] Defendants should only be allowed to give an instruction as to materiality once to avoid confusing the jury and ending up with contradictory findings, either here or in the reliance definition. Plaintiff believes this is the better place to address materiality.

1  preponderance of the evidence that Defendants "omit[ted] to state a material fact necessary in order

2  to make the statements made, in light of the circumstances under which they were made, not

3  misleading." *See* 17 C.F.R. §240.10b-5(b). Indeed, the blog post says that "I [Musk] left the July

4  31st meeting with no question that a deal with the Saudi sovereign fund could be closed . . . ."

5  Complaint, ¶136. Putting aside whether Musk actually believed that to be the case as of July 31,

6  2018 (he did not), the circumstances surrounding that conversation had changed materially by the

7  time Defendants published this statement on August 13, 2018. Those circumstances include, for

8  example, the near-complete breakdown of all communications and negotiations between Musk and

9  the Saudi fund (which the Court described as "friction between Mr. Musk and Mr. Al-Rumayyan"

10  in its summary judgment order). *See* ECF No. 387 at 30 (citing Ex. 121). In light of what transpired

11  between the July 31 meeting and the August 13 blog post, Defendants materially misled investors

12  by stating *only* that Musk "left the July 31st meeting with no question that a deal with the Saudi

13  sovereign fund could be closed" because it "affirmatively create[d] an impression of a state of

14  affairs that differ[ed] in a material way from the one that actually exist[ed]." *Brody v. Transitional

15  Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). The jury should be allowed to decide whether

16  Musk and Tesla lied by omission in this instance and, accordingly, violated Rule 10b-5.

17        Further, in order to give the jury an understanding of the remaining issues in this case, the

18  Court's Summary Judgment order must be explained to the jury. Plaintiff's instructions do that in

19  the most neutral way possible. On the other hand, Defendants want to act like this Court's

20  Summary Judgment ruling did not happen. Defendants believe that the jury instructions should be

21  completely silent as to the Court's summary judgment ruling, and to the extent that they do suggest

22  language, it conflicts with the Court's actual ruling. Defendants attempt to combine the materiality

23  and falsity and scienter requirements to re-litigate issues already decided by the Court. *STM

24  Networks, Inc. v. Clay Pac. S.R.L.*, 224 F. App'x 609, 610 (9th Cir. 2007) ("The district court did

25  not abuse its discretion in giving jury instructions consistent with its ruling on partial summary

26  judgment."); *Nutri-Metics Int'l, Inc. v. Carrington Lab'ys, Inc.*, 1992 WL 389246, at *5 (9th Cir.

27  Dec. 22, 1992) ("the jury had to be informed whether there was a breach of the Noncompetition

28  Agreement once the judge properly decided it as a matter of law"); *McArthur v. City & Cty. of*

- 58 -

*S.F.*, 190 F. Supp. 3d 895, 907 (N.D. Cal. 2016) ("Partial summary judgment is further granted as follows. The jury will be instructed that no constitutional violation took place up through and including the searches of all of the men. That issue is now decided and will not be re-litigated at trial but of course sufficient background facts may be allowed . . . .").

The Court should deny adopting Defendants' deviations from the model instructions.

**Defendants' Position:**

Defendants respectfully request that the Court adopt their proposed jury instruction on "Material Misstatement." Defendants' proposed instruction is "an accurate statement of the law" and is appropriately tailored to the issues and the Court's prior orders in this case. *See, e.g.*, *United States v. Garza*, 980 F.2d 546, 553-54 (9th Cir. 1992) (jury instruction must be "accurate statement of the law," although "formulation or choice of language of the jury instructions is within the discretion of the district court"); *United States v. Terry*, 911 F.2d 272, 278 (9th Cir. 1990) (jury instruction must be "accurate statement of the law").

To establish the first element of his Rule 10b-5 claim, the Plaintiff must prove a material misstatement. *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008). An alleged misstatement is material where there is "a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *TSC Indus., Inc. v. Northway, Inc*., 426 U.S. 438, 449 (1976). Determining materiality, therefore, requires "delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him." *Id.* at 450.

The instructions proposed by Defendants provide the jury with an accurate and appropriate roadmap necessary to make these assessments in this case. First, the instructions define material fact using the language from the Ninth Circuit's Model Instructions, which parallel the standard articulated by the Supreme Court in *TSC Industries, Inc. See* Ninth Circuit Manual of Model Civil Jury Instructions 18.3 (*citing TSC Indus.*, 426 U.S. at 449). After providing the jury with that foundation, the instructions then provide guidance on how to make the "delicate assessment" by

1    explaining how to determine whether a statement is materially misleading under the standards

2    applied by courts in the Ninth Circuit. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th

3    Cir. 2017) (holding statements were materially misleading because they "affirmatively created an

4    impression of a state of affairs that differed in a material way from the one that actually existed.");

5    *Tarapara v. K12 Inc.*, No. 16-CV-4069-PJH, 2017 WL 3727112, at *15 (N.D. Cal. Aug. 30, 2017)

6    ("A statement is materially misleading when it 'affirmatively created an impression of a state of

7    affairs that differed in a material way from the one that actually exists.'"); 17 C.F.R. § 240.10b-5

8    (unlawful to "make any untrue statement of a material fact or to omit to state a material fact

9    necessary in order to make the statements made, in the light of the circumstances under which they

10   were made, not misleading").  The instruction also clarifies that, under the materiality analysis a

11   statement or subject matter's importance is not considered in a vacuum, but must be assessed in

12   context with the reasonable investor's decision to buy or sell the security.  *In re McKesson HBOC,

13   Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1259 (N.D. Cal. 2000) ("there must be a substantial

14   likelihood that the disclosure of the omitted fact [or correction of the misstated fact] would have

15   been viewed by the reasonable investor as having significantly altered the 'total mix' of

16   information made available.") (alteration in original) (*quoting TSC Indus.*, 426 U.S. at 449.)  It is

17   an accurate statement of the law and should be adopted.

18        Furthermore, this instruction explains to the jury the element of material falsity in a manner

19   consistent with the Court's summary judgment order and subsequent discussions of that decision

20   in both the hearing on Defendants' motion for reconsideration and the minute order related to that

21   motion.  Defendants' proposal instructs the jury on the distinction between "literal falsity" and

22   "material falsity" that the Court drew in its summary judgment order and follow-on statements by

23   using the same guidance that the Court provided to the parties.  (6/16/22 Hr'ing Tr. at 3:23-5:8;

24   Dkt. 446).  The instructions explain, as the Court did in its June 16, 2022 order, that a statement

25   can be factually false but not material. (Dkt. 446.)  They also provide the same example proffered

26   by the Court and Plaintiff's counsel at the June 16, 2022 hearing to help illustrate this distinction

27   to the jury.  (*Compare* Def. Proposed Instruction No. 27 *with* 6/16/22 Hr'ing Tr. at 13:15-14:14).

28   The use of examples that accurately describe the law are appropriate as "aid[s] to a proper

- 60 -

consideration of the case." *See Spigner v. United States*, 369 F.2d 686, 687 (9th Cir. 1966).  Both of these statements fairly cover the issues presented in this case and correctly state the law; they should be adopted. *See Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005) ("[J]ury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading.").

The instruction helpfully builds on the Model Instruction's mandate that the jury "must decide whether something was material based on the circumstances as they existed at the time of the statement" by providing the jury with the list of factors that should be considered in that analysis.  *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 43 (2011) (assessing materiality of omitted information required "consideration of the source, content, and context of reports"); *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1320 n. 6 (11th Cir. 2019) ("the materiality inquiry includes consideration of the context in which a statement was made and the circumstances in which a reasonable investor would have heard it.").  Such an instruction is helpful here given that the statements were made on Twitter, an informal and non-traditional medium of communication that, by design, limits the amount of information an author can convey.  Defendants' proposal also clarifies the "time of the statement" analysis by explaining that a statement regarding a material fact may not be held false or misleading merely because subsequent events prove it to have been erroneous.  *See* 3B Kevin F. O'Malley, et al., Federal Jury Practice and Instructions- Civil §162:235 (6th ed. 2013).

Defendants object to Plaintiff's Proposed Instruction No. 27.

*First*, Plaintiff's separate instruction on misrepresentation fails to accurately state the law, which requires the jury only to consider whether a plaintiff has proven a material misstatement.  *Stoneridge Inv. Partners*, 552 U.S. at 157.  Plaintiff's instruction also contradicts Plaintiff's position that the Court has already found that a misrepresentation was made.  There is no reason for the jury to be given this improper instruction in light of the issues it is required to resolve in this case.  Doing so would only serve to prejudice Defendants by improperly and unnecessarily emphasizing the Court's prior order.

*Second*, the instruction is incomplete and misleading. The materiality instruction makes no effort to incorporate the Court's prior order and draw the distinction between a "literally" false statement and a "materially false" one, as the issues in this case require. The instruction also misleadingly includes a reference to omissions. Plaintiff is not pursuing an omission theory here, so any such reference is unnecessary. *Roberts v. Spalding*, 783 F.2d 867, 873 (9th Cir. 1986) ("the district court was under no duty to submit to the jury proposed instructions that contain … a theory not supported by the evidence, or that are otherwise incomplete or improper."); *see In re Twitter, Inc. Sec. Litig.*, No. 16-CV-05314-JST, 2020 WL 4188787, at *4 (N.D. Cal. May 19, 2020) (excluding unpled allegation from trial).

*Third*, Defendants object to the instruction insofar as it can be read to suggest that the August 13, 2018 Blog Post ("Blog Post") is an actionable misstatement/omission at issue in this trial. As the Court made clear in its order granting Defendants' Motion *in Limine* No. 3, Plaintiff did not allege that the Blog Post was actionable in the Consolidated Complaint and is therefore precluded from asserting the same at trial. (Dkt. 466 at 1-2.) The Blog Post is not an alleged misstatement at issue in this trial and should not be included in the instructions. *See In re Twitter, Inc. Sec. Litig.*, 2020 WL 4188787, at *4 (excluding unpled allegation from trial).

*Finally*, Defendants object to the Plaintiff's purported description of the Court's summary judgment order and the inclusion of any such description as inaccurate and misleading, confusing to the jury, and unfairly prejudicial to Defendants. As an initial matter, Plaintiff's statement is not an accurate description of the Court's order, as clarified by the Court at the June 16, 2022 hearing on Defendants' motion for reconsideration and corresponding minute order. (Ex. I, 6/16/22 Hr'ing Tr. at 3:23-5:8; Dkt. 446.) As the Court made clear, his summary judgment order only found that the statements "Funding secured" and "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote" were "false statement[s]…in a literal sense, not in a legal sense." (6/16/22 Hr'ing Tr. at 4:14-23.) The Court did not find that the statements at issue were "materially false" which is the element of the Section 10b claim and therefore the question before the jury. *See, e.g., Dura Pharma, Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (plaintiff must prove defendant made a "material misrepresentation (or omission).

Plaintiff's assertion that the Court made any determinations regarding these statements "conclusively" is therefore inaccurate and misleading because it suggests that the Court determined that Plaintiff established legal elements of Plaintiff's claim.  It did not.  (Ex. I, 6/16/22 Hr'ing Tr. at 4:14-23 ("[S]o the falsity element that's required for a 10b-5 is not—has not been completely fulfilled…") *and id.* at 5:4-8 ("To be clear, I did not find materiality with respect to the misrepresentation…") *and* Dkt. 446.)  It should be rejected.

Plaintiff's description is also inaccurate and misleading because it suggests that the Court found that the first sentence of the first tweet—"Am considering taking Tesla private at $420"— was false.  It did not find that either. (Dkt. 387 at 23 ("the focus would be on the second part of the tweet, *i.e.*, "Funding secured.") and 24 ("Based on the evidence of record, the Court finds that no reasonable jury could find the statement "Funding secured" accurate and not misleading.").) Nor did Plaintiff contend in his motion for summary judgment that this first sentence was untrue; his "Issues To Be Decided" only identified "Funding secured" as a false statement. (Dkt. 352 at 1.)  Plaintiff did not make such a contention and the Court did not make such a finding because the evidence establishes that statement was true: Mr. Musk was considering taking Tesla private at $420 per share at the time he published the tweet.  The description misleadingly instructs the jury to conclude that the entire tweet was false even though the Court did not make, and the evidence does not support, that finding.

Defendants also object to Plaintiff's proposed description of the Court's summary judgment order because it will confuse the jury.  An instruction must not "confuse or leave an erroneous impression in the minds of the jurors." *United States v. Walker*, 575 F.2d 209, 213 (9th Cir. 1978) (Kennedy, J).  Plaintiff's proposal is likely to do both.  First, it will confuse the jury as to what issues it must consider and decide in this case.  Because the proposal contends that the Court found "conclusively" that the statements identified were false, the jury will likely be confused as to whether it must make an independent determination on the element of material falsity at all, instead of simply checking a box consistent with what it mistakenly believes the Court's earlier decision was.  This confusion will likely be compounded as to the first statement—"Am considering taking Tesla private at $420.  Funding secured"—because the jury will erroneously believe that the Court

found the entire statement to be false, even though the first sentence is indisputably true.  Second, and relatedly, the proposal will leave the jury with an "erroneous impression" that Plaintiff has already established "conclusively" the element of material falsity, when he has not.  (6/16/22 Hr'ing Tr. at 3:23-5:8; Dkt. 446.)

Finally, any reference to the Court's summary judgment order (and particularly in the manner in which Plaintiff presents it) will substantially prejudice Defendants and irrevocably taint the jury's role as finder of fact in this trial.  Courts recognize that "judicial findings of fact 'present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.'" *United States v. Sine*, 493 F.3d 1021, 1033-34 (9th Cir. 2007) ("jurors are likely to defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder rather than determine those issues for themselves"); *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993) (same); *see also Herrick v. Garvey,* 298 F.3d 1184, 1192 (10th Cir. 2002) ("Juries are likely to give disproportionate weight to such findings of fact because of the imprimatur that has been stamped upon them by the judicial system."); *U.S. Steel, LLC, v. Tieco, Inc*., 261 F.3d 1275, 1288 (11th Cir. 2001) ("The district court abused its discretion in admitting Judge Garrett's opinion. The jury, not Judge Garrett, was charged with making factual findings on Appellees' allegations in this case.").  Plaintiff is asking the Court to effectively testify that not only that the statements at issue are false but also, by strong logical implication, that Mr. Musk—by making such statements—is an unreliable witness whose statements should not be credited.  It is only natural that the jury will displace its independent judgment for what it believes is the Court's position.  Plaintiff's proposal therefore places the Court in the improper role as essentially a witness in this case and should be rejected outright.

Even if the Court determines that it must make some reference to its summary judgment findings—and such a reference, if any, should not be made until closing instructions after the jury has heard all of the evidence—the Court should, at a minimum, do so in a manner that removes the Court's imprimatur and thereby reduces the reference's prejudicial effect.  Instead of stating that the Court "determined" any issue "conclusively" (Plaintiff's Proposed Instruction No. 27), the instruction should inform the jury that "you are to assume" that the particular factual

- 64 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

issue has been proven.  For example, if necessary, it would be far more appropriate and accurate for the Court to instruct the jury, "You are to assume the factual inaccuracy of the statements 'Funding secured' and 'Investor support is confirmed.  Only reason why this is not certain is that it's contingent on a shareholder vote.'   But you still must decide the separate question whether these statements were materially false pursuant to my instructions on that element.  You must also decide whether Mr. Musk knew or acted with deliberate recklessness as to the statements' material falsity pursuant to my instructions on that element." *See Sherwin-Williams Co. v. PPG Indus., Inc*., No. CV 17-1023, 2021 WL 5648019, at *3 (W.D. Pa. Dec. 1, 2021) (adopting "you can assume" language in jury instruction to describe issue previously decided by the court and holding that the alternative phrase "it has been determined " was unnecessary and may confuse the jury).

**Instruction No. 28: Scienter or State of Mind [Disputed]**

      **Plaintiff's Proposal:**

      Plaintiff must prove by a preponderance of the evidence that Elon Musk and/or Tesla acted with the necessary state of mind, or scienter, when they made any misrepresentation or omission. Scienter may be established by showing either:

      (1) that the defendant knew his statements were false, or

      (2) by showing that defendant was reckless as to the truth or falsity of his statements.

      A defendant acts with scienter when he makes an untrue statement with knowledge that the statement is false or with reckless disregard in not knowing the statements are false, that is, with no direct knowledge of the truth or falsity of his statements and despite not knowing whether they were true.

      A defendant also acts with scienter when he omits necessary information with the knowledge that the omission would make the statement false or misleading or with reckless disregard for whether the omission would make the statements false or misleading.

      "Reckless" means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it. A defendant cannot disprove evidence of scienter by merely denying subjective knowledge of the risk that a statement could be misleading. In other words, when the defendant is aware of the facts that make a statement false and/or materially misleading, he or she cannot ignore them and plead ignorance of the risk.

      If you find that Elon Musk acted with scienter, then his scienter may be imputed to Tesla.

      The Court has already determined prior to this trial that the evidence in this case demonstrated conclusively as a matter of law that with regard to the statement "Am considering taking Tesla private at $420. Funding secured."  the statement "funding secured" was made by Elon Musk with deliberate recklessness as to its truth or falsity. Further, with regard to the statement "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote." the Court also decided that the evidence in this case demonstrated conclusively as a matter of law that the entire statement was made by Elon Musk with deliberate

recklessness as to its truth or falsity. Consequently, you shall accept that Plaintiff has already proven that Elon Musk made the tweets on August 7, 2018, with deliberate recklessness as to their falsity.

Source: Ninth Circuit Model Civil Jury Instruction 18.5; *SEC v. Platforms Wireless Int'l Corp*., 617 F.3d 1072, 1093-94 (9th Cir. 2010); *Gebhart v. SEC*, 595 F.3d 1034, 1041 (9th Cir. 2010).

**Defendants' Proposal:**

Plaintiffs must prove by a preponderance of the evidence that Elon Musk and/or Tesla acted with the necessary state of mind, which is known as scienter.

A defendant acts with scienter in one of two ways. First, when he makes a materially false statement "knowingly," i.e., with knowledge that the statement is materially false. Second, and alternatively, when he makes a materially false statement with "deliberate recklessness" of its material falsity.

"Deliberate Recklessness" for purposes of Rule 10b-5 must reflect some degree of intentional or conscious misconduct. It must constitute an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it. If a Defendant possessed an honest or good faith belief that a statement was not materially false, then the Defendant did not act with scienter in making that statement.

Source: Ninth Circuit Model Civil Jury Instruction 18.5; *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999), *as amended* (Aug. 4, 1999); *Webb v. Solarcity Corp.*, 884 F.3d 844, 851 (9th Cir. 2018); *Hsingching Hsu v. Puma Biotechnology, Inc., et al.*, 8:15-cv-00865-DOC-SHK (C.D. Cal. Jan. 19, 2019) Dkt. No. 700  Instructions, No. 30; *In re JDS Uniphase Securities Litig.* 4:02-1486-CW, Dkt. 1874 at 8 (N.D. Cal. Nov. 9, 2007), Instructions at 12-13; *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1546 (9th Cir. 1994) (noting "no quarrel" with the following formulation of the scienter element: "the courts have uniformly held inadequate a

- 67 -

complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading.") (*quoting Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) (Breyer, J), *superseded by statute on other grounds*); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 701 (9th Cir. 2021) (scienter satisfied by "a reckless omission of material facts"); *GIA-GMI, LLC v. Michener*, No. C06-7949 SBA, 2007 WL 2070280, at *9 (N.D. Cal. July 16, 2007) ("the complaint must set forth 'specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading.'"); *c.f. United States v. Goyal*, 629 F.3d 912, 917 (9th Cir. 2010) ("The government had to prove that Goyal's representations to PwC that NAI complied with GAAP were materially false or misleading, and that he knew that.") (articulating "knowingly" element under Rule 13b2-2).

**Plaintiff's Position**: Plaintiff's Proposed Closing Jury Instruction No. 28 largely follows the model jury instructions for "knowingly" (*See* 18.5) and reminds the jury that the issue of "scienter" has already been resolved for the August 7 tweets and that the jury need only deliberate over whether the tweets were "material." Plaintiff's proposed instruction provides a neutral explanation that the Court already found "that a reasonable jury could reach only one conclusion – *i.e.*, that Mr. Musk recklessly tweeted to the public that funding was secured." ECF No. 387 at 24-26. Likewise, for the statement "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote," the jury could disregard the Court's holding that "the statement . . . is false and misleading" and that "a reasonable jury could reach only one conclusion regarding scienter: that Mr. Musk made his statement recklessly." *Id.* at 26-27, 28. Thus, for the same reasons this instruction was necessary at the outset of the trial, it is all the more necessary here when tasking the jury to deliberate on this critical element of Plaintiff's Rule 10b-5 Claim.

Defendants' proposed instruction seeks to relitigate issues already decided by the Court in summary judgment applying a subjective test for falsity and scienter, According to Defendants' instruction, "If a Defendant possessed an honest or good faith belief that a statement was not

materially false, then the Defendant did not act with scienter in making that statement." This is plainly wrong. Courts apply an objective standard to determine the falsity of a statement, not a subjective standard as Defendants propose here. *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 699 (9th Cir. 2021).

Plaintiff does not believe there is any reason to divert from the model instruction and Defendants provide no reason why the Court should. Rather, Defendants attempt to confuse the jury and relitigate whether Musk acted with scienter by requiring a jury to find that not only did Musk have scienter as to a misrepresentation, but that Musk had scienter as to a "material misrepresentation". Allowing Defendants to deviate from the model jury instruction this way would be confusing to the jury and be highly prejudicial to Plaintiff as this Court has already found that Musk acted with scienter as to the August 7, 2018 tweets. The Court should follow the model instructions rather than Defendants' proposed instructions which are confusing and prejudicial.

Defendants also take out all references to omissions in Plaintiff's instruction, arguing that the only misrepresentations that are at issue here are the August 7, 2018 tweets for which this Court granted Plaintiff summary judgment on the issues of falsity and scienter, but not materiality or reliance. Plaintiff has consistently alleged that Defendants are liable under Rule 10b-5 and Section 20(a) for making materially misleading statements in the August 13 blog post. In the complaint, Plaintiff excerpted three paragraphs from the blog post in particular and alleged that these paragraphs "omit[ted] and/or conceal[ed]" material information from investors. *See* Complaint (ECF No. 184), ¶¶136, 138. These omission allegations were not dismissed at the pleading stage. Nor were they excluded by the Court in response to Defendants' early motion *in limine*.

The Court's motion to dismiss order stated that "the blog post on August 13 is not independently actionable as a misleading statement" but said nothing of Plaintiffs' omission allegations. *See* ECF No. 251, p. 26. Likewise, the Court held during the motion *in limine* proceedings that, "The only thing I have before me right now, as I understand it, is the challenge to this one statement [referring the statement 'I have continued to communicate with the Managing Director of the Saudi fund . . . .']. It was not previously identified and not identified in a timely

- 69 -

1   way, and so my ruling stands." July 28, 2022 Tr. at 11.

2           The omission paragraphs identified by Plaintiff in the verdict form are *not* the portion of

3   the blog post previously excluded by the Court. They are the exact same excerpt of the blog post

4   that appears in Plaintiff's Complaint. Plaintiff also has more than enough evidence to show by a

5   preponderance of the evidence that tDefendants "omit[ted] to state a material fact necessary in

6   order to make the statements made, in light of the circumstances under which they were made, not

7   misleading." *See* 17 C.F.R. §240.10b-5(b). Indeed, the blog post says that "I [Musk] left the July

8   31st meeting with no question that a deal with the Saudi sovereign fund could be closed . . . ."

9   Complaint, ¶136. Putting aside whether Musk actually believed that to be the case as of July 31,

10  2018 (he did not), the circumstances surrounding that conversation had changed materially by the

11  time Defendants published this statement on August 13, 2018. Those circumstances include, for

12  example, the near-complete breakdown of all communications and negotiations between Musk and

13  the Saudi fund (which the Court described as "friction between Mr. Musk and Mr. Al-Rumayyan"

14  in its summary judgment order). *See* ECF No. 387 at 30 (citing Ex. 121). In light of what transpired

15  between the July 31 meeting and the August 13 blog post, Defendants materially misled investors

16  by stating *only* that Musk "left the July 31st meeting with no question that a deal with the Saudi

17  sovereign fund could be closed" because it "affirmatively create[d] an impression of a state of

18  affairs that differ[ed] in a material way from the one that actually exist[ed]." *Brody v. Transitional

19  Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). The jury should be allowed to decide whether

20  Musk and Tesla lied by omission in this instance and, accordingly, violated Rule 10b-5.

21          As Defendants' proposed instruction goes well beyond the model instructions, Plaintiff's

22  instruction should be adopted. *See Prado v. Fed. Express Corp.*, No. 5:12-CV-03945-PSG, 2015

23  WL 374965, at *2 (N.D. Cal. Jan. 28, 2015) (No error where the court denied to use an instruction

24  that "reached far beyond what is recommended by the model instructions and belabored the points

25  in an otherwise straightforward jury instruction crafted to avoid juror confusion."); *Chandler v.

26  Frauenheim*, No. 17-CV-00325-EMC, 2018 WL 4056018, at *26 (N.D. Cal. Aug. 23, 2018)

27  (Where phrase is used in the model instruction, it suggests it is appropriate, holding "[t]he phrase

28  'common sense' also is used in the Ninth Circuit's model instruction on reasonable doubt, which

- 70 -

suggests it is not inflammatory language and does not draw away from the jury's duty to evaluate the evidence.").

**Defendants' Position:**

Defendants respectfully request that the Court adopt their proposed jury instruction on "Scienter or State of Mind." Defendants' proposed instruction is "an accurate statement of the law" and is appropriately tailored to the issues and the Court's prior orders in this case. *See, e.g.*, *United States v. Garza*, 980 F.2d 546, 554 (9th Cir. 1992) (jury instruction must be "accurate statement of the law," although "formulation or choice of language of the jury instructions is within the discretion of the district court"); *United States v. Terry*, 911 F.2d 272, 278 (9th Cir. 1990) (jury instruction must be "accurate statement of the law").

The element of scienter is the "intent to deceive, manipulate, or defraud," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976), and accordingly requires that Plaintiff prove that Defendants made the statements at issue with knowledge or reckless disregard as to their **material** falsity since an intent to make a non-material false statement does not establish the requisite intent to defraud investors. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1546 (9th Cir. 1994) (noting "no quarrel" with the following formulation of the scienter element: "the courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading.") (*quoting Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) (Breyer, J), (*superseded by statute on other grounds*); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 701 (9th Cir. 2021) (scienter satisfied by "a reckless omission of material facts"); *GIA-GMI, LLC v. Michener*, No. C06-7949 SBA, 2007 WL 2070280, at *9 (N.D. Cal. July 16, 2007) ("[T]he complaint must set forth 'specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading.'"); *Phillips v. LCI Int'l, Inc*., 190 F.3d 609, 621 (4th Cir. 1999) (complaint that "fails adequately to allege that defendants' statements were [materially] false . . . obviously fails to allege facts constituting circumstantial evidence of reckless or conscious misbehavior on the part of

- 71 -

defendants in making statements.") (brackets in original); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc*., 75 F.3d 801, 813 (2d Cir. 1996) (same). This Court has agreed that establishing materiality is a necessary component of the scienter element.  (Ex. I, 6/16/2022 Hr'ing Tr. at 4:14-23.)  Defendants' proposed instruction reflects this requirement and should be adopted as an accurate statement of the law.

Defendants' proposal also properly instructs the jury that Plaintiff must prove that any materially false statement was made knowingly or with "deliberate recklessness."[4]  The level of "recklessness" necessary to meet the "knowledge" or "scienter" requirement is not ordinary recklessness but rather it must be "deliberate recklessness"  that constitutes "an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it."  Ninth Circuit Model Civil Jury Instruction 18.5 ("'Reckless' means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it."); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999), *as amended* (Aug. 4, 1999) (scienter under the federal securities laws must "at a minimum" constitute "'deliberate recklessness'"); *Webb v. Solarcity Corp*., 884 F.3d 844, 851 (9th Cir. 2018) ("Deliberate recklessness is an extreme departure from the standards of ordinary care[,] which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.") (internal quotation marks omitted); Ex. M, *Hsingching Hsu v. Puma Biotechnology, Inc., et al.*, 8:15-cv-00865-DOC-SHK (C.D. Cal. Jan. 19, 2019) Dkt. No. 700, Instructions, No. 30 ("'Reckless means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it.").

---

[4]   While the Ninth Circuit allows proof of recklessness to satisfy the scienter requirement under Section 10(b), *see Gebhart v. SEC*, 595 F.3d 1034, 1040 (9th Cir. 2010), the Supreme Court has not approved such an approach, *see Matrixx Initiatives*, 563 U.S. at 48 (reserving the question whether recklessness suffices). Defendants reserve the right to challenge in an appropriate forum any ultimate finding based on recklessness.

Additionally, Defendants' instruction informs the jury that "[a]n honest or good faith belief on the part of a Defendant that a statement is true is inconsistent with a finding that he acted with scienter in making that statement," which is language that has been utilized in other securities class action trials in this District.  Ex. N, *In Re JDS Uniphase Corp. Securities Litig*., 4:02-1486-CW, Dkt. 1874 at 8 (N.D. Cal. Nov. 9, 2007), Instructions at 12-13.

Defendants object to Plaintiff's Proposed Instruction No. 28 on the grounds that it is an inaccurate statement of the law, misleading, and unduly prejudicial to Defendants.

*First*, Plaintiff fails to instruct the jury that it must find knowledge or deliberate recklessness as to a *material* misrepresentation, which is what the law requires. *E.g.*, *Alphabet*, 1 F.4th at 701 (scienter satisfied by "a reckless omission of material facts"); *Greenstone*, 975 F.2d at 25 (Breyer, J) (the complaint must set "forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading"); *GIA-GMI*, 2007 WL 2070280, at *9 (same); *Phillips*, 190 F.3d at 621 (complaint that fails to allege material falsity "obviously fails to allege facts constituting circumstantial evidence of reckless or conscious misbehavior").

*Second*, Plaintiff's instruction that establishing scienter merely requires proof of "recklessness" as opposed to "deliberate recklessness" is a misleading and incorrect statement of the law.  *See, e.g., In re Silicon Graphics Inc.*, 183 F.3d at 977 (scienter under the federal securities laws must "at a minimum" constitute "'deliberate recklessness'").

*Third*, Plaintiff includes an inappropriate instruction that "[a] defendant cannot disprove evidence of scienter by merely denying subjective knowledge of the risk that a statement could be misleading," but this language (as well as Plaintiff's further explanation of this sentence) appears nowhere in the model instructions or the comments to the model instructions.  Nor does Plaintiff cite any jury instructions containing this language.  This language will confuse the jury and should be rejected.

*Fourth*, Plaintiff's instruction fails to inform the jury that "[a]n honest or good faith belief on the part of a Defendant that a statement is true is inconsistent with a finding that he acted with scienter in making that statement," which is language that has been utilized in other securities class

action trials in this District.  Ex. N, *In Re JDS Uniphase Corp. Securities Litig*., Instructions at 12-13.

*Fifth*, Defendants further object to this instruction's reference to omissions.  Plaintiff is not pursuing an omission theory here, so any such reference is unnecessary.  *Roberts v. Spalding*, 783 F.2d 867, 873 (9th Cir. 1986)  ("the district court was under no duty to submit to the jury proposed instructions that contain … a theory not supported by the evidence, or that are otherwise incomplete or improper."); *see In re Twitter, Inc. Sec. Litig*., No. 16-CV-05314-JST, 2020 WL 4188787, at *4 (N.D. Cal. May 19, 2020) (excluding unpled allegation from trial).

*Sixth,* Defendants object to the instruction insofar as it can be read to suggest that the August 13, 2018 Blog Post ("Blog Post") is an actionable misstatement/omission at issue in this trial.  As the Court made clear in its order granting Defendants' Motion *in Limine* No. 3, Plaintiff did not allege that the Blog Post was actionable in the Consolidated Complaint and is therefore precluded from asserting the same at trial.  (Dkt. 466 at 1-2.)  The Blog Post is not an alleged misstatement at issue in this trial and should not be included in the instructions.  *See In re Twitter, Inc. Sec. Litig*., 2020 WL 4188787, at *4 (excluding unpled allegation from trial).

*Finally*, Defendants object to the Plaintiff's purported description of the Court's summary judgment order and the inclusion of any such description as inaccurate and misleading, confusing to the jury, and unfairly prejudicial to Defendants.  As an initial matter, Plaintiff's statement does not accurately describe the Court's order, as clarified by the Court at the June 16, 2022 hearing on Defendants' motion for reconsideration and corresponding minute order.  (6/16/22 Hr'ing Tr. at 3:23-5:8; Dkt. 446.)  As the Court made clear, the Court found only that the statements "Funding secured" and "Investor support is confirmed.  Only reason why this is not certain is that it's contingent on a shareholder vote" were "false statement[s]…in a literal sense, not in a legal sense." (6/16/22 Hr'ing Tr. at 4:14-23.)  The Court made the same limited finding as to scienter.  (*Id.* ("and similarly with scienter, no reasonable juror could find that Mr. Musk did not know or didn't act in disregard to the inaccuracy—the factual inaccuracy, not the legal.").  The Court did not find that the statements at issue were made with knowledge or reckless disregard as to their "material falsity," which is required before scienter may be established, nor could it have because the Court

- 74 -

did not determine material falsity. *See e.g., Alphabet,* 1 F.4th at 701 (scienter satisfied by "a reckless omission of material facts")*; Greenstone,* 975 F.2d at 25 (Breyer, J) (the complaint must set "forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading")*; GIA-GMI,* 2007 WL 2070280, at *9 (same); *Phillips,* 190 F.3d at 621 (complaint that fails to allege material falsity "obviously fails to allege facts constituting circumstantial evidence of reckless or conscious misbehavior"); *San Leandro,* 75 F.3d at 813 (same).

Plaintiff's assertion that the Court made any decisions regarding these statements "as a matter of law" is therefore inaccurate and misleading because it suggests that the Court determined that Plaintiff established the element scienter. It did not. (*Compare* Plaintiff's Proposed Instruction No. 28 *with* 6/16/22 Hr'ing Tr. at 4:14-23 ("[S]o the falsity element that's required for a 10b-5 is not—has not been completely fulfilled…and similarly with scienter, no reasonable juror could find that Mr. Musk did not know or didn't act in disregard to the inaccuracy—the factual inaccuracy, not the legal.") *and id.* at 5:4-8 ("To be clear, I did not find materiality with respect to the misrepresentation or a reckless disregard or knowingly scienter with regard to any such material representation.") *and* Dkt. 446.)[5]  Plaintiff's proposed instruction should be rejected.

Defendants also object to Plaintiff's proposed description of the Court's summary judgment order because it will confuse the jury. An instruction must not "confuse or leave an erroneous impression in the minds of the jurors." *United States v. Walker*, 575 F.2d 209, 213 (9th Cir. 1978) (Kennedy, J). Plaintiff's proposal is likely to do both. First, it will confuse the jury as to what issues it must consider and decide in this case. Because the proposal contends that the Court found "as a matter of law" that the statements identified were false and made with reckless disregard to their truth, the jury will likely be confused as to whether it must make an independent

---

[5]  The contention that the Court's docket order summarizing the June 16, 2022 hearing suggests that the Court decided all aspects of scienter on summary judgment cannot be squared with the Court's statement at the hearing and accompanying reasoning. The Court made clear at the hearing that "I did not find materiality with respect to the misrepresentation or a reckless disregard or knowingly scienter with regard to any such material representation." (6/16/22 Hr'ing Tr. at 5:4-8.) Defendants are relying on the Court's more comprehensive explanation of the summary judgment order made at the hearing, which accurately reflects the law.

determination on the elements of material falsity or scienter at all, instead of simply checking a box consistent with what it mistakenly believes the Court's earlier decision was.  This confusion will likely be compounded as to the first statement—"Am considering taking Tesla private at $420. Funding secured"—because the jury will erroneously believe that the Court found the entire statement to be false, even though the first sentence is indisputably true.  Second, and relatedly, the proposal will leave the jury with an "erroneous impression" that Plaintiff has already established "as a matter of law" the elements of material falsity and scienter, when he has not. (Ex. I, 6/16/22 Hr'ing Tr. at 3:23-5:8; Dkt. 446.)

Finally, any reference to the Court's summary judgment order (and particularly in the manner in which Plaintiff presents it) will substantially prejudice Defendants and irrevocably taint the jury's role as finder of fact in this trial.  Courts recognize that "judicial findings of fact 'present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.'"  *United States v. Sine*, 493 F.3d 1021, 1033-34 (9th Cir. 2007) ("jurors are likely to defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder rather than determine those issues for themselves"); *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993) (same); *see also Herrick v. Garvey,* 298 F.3d 1184, 1192 (10th Cir. 2002) ("Juries are likely to give disproportionate weight to such findings of fact because of the imprimatur that has been stamped upon them by the judicial system."); *U.S. Steel, LLC, v. Tieco, Inc*., 261 F.3d 1275, 1288 (11th Cir. 2001) ("The district court abused its discretion in admitting Judge Garrett's opinion. The jury, not Judge Garrett, was charged with making factual findings on Appellees' allegations in this case.").  Plaintiff is asking the Court to effectively testify not only that the statements at issue are false and made with scienter but also, by strong logical implication, that Mr. Musk—by making such statements with reckless disregard—is an unreliable witness whose statements should not be credited.  It is only natural that the jury will displace its independent judgment for what it believes is the Court's position. Plaintiff's proposal therefore places the Court in the improper role as essentially a witness in this case and should be rejected outright.

Even if the Court determines that it must make some reference to its summary judgment

findings—and such a reference, if any, should not be made until closing instructions after the jury has heard all of the evidence—the Court should, at a minimum, do so in a manner that removes the Court's imprimatur and thereby reduces the reference's prejudicial effect.  Instead of stating that the Court "determined" any issue "as a matter of law" (Plaintiff's Proposed Instruction No. 28), the instruction should inform the jury that "you are to assume" that the particular factual issue has been proven.  For example, if necessary, it would be far more appropriate and accurate for the Court to instruct the jury, "You are to assume the factual inaccuracy of the statements 'Funding secured' and 'Investor support is confirmed.  Only reason why this is not certain is that it's contingent on a shareholder vote.'   But you still must decide the separate question whether these statements were materially false pursuant to my instructions on that element.  You must also decide whether Mr. Musk knew or acted with deliberate recklessness as to the statements' material falsity pursuant to my instructions on that element." *See Sherwin-Williams Co. v. PPG Indus., Inc.*, No. CV 17-1023, 2021 WL 5648019, at *3 (W.D. Pa. Dec. 1, 2021) (adopting "you can assume" language in jury instruction to describe issue previously decided by the court and holding that the alternative phrase "it has been determined " was unnecessary and may confuse the jury).

**Instruction No. 29:  Reliance [Disputed]**

    **Plaintiff's Proposal:**

        The Plaintiff must prove by a preponderance of the evidence that he relied on Defendants' alleged material misrepresentations and that Plaintiff was justified in doing so. Plaintiff does not have to prove that the Plaintiff or other members of the Class individually relied on the false and/or materially misleading statements at issue in this case if they prove by a preponderance of the evidence that there was an active, open market for Tesla securities during the relevant time period. An "active, open market" means that there were a large number of traders, a high level of activity, and frequent trades, such that the price of the security immediately reflects all publicly available information.

        If you find that Plaintiff has proven by a preponderance of the evidence that (1) an active, open market for the Tesla securities existed during the time in question and (2) investors reasonably relied on that market as an accurate reflection of the current market value of the securities, you may find that Plaintiff has established the element of "reliance" for the Rule 10b-5 violations.

        Defendants may rebut this presumption by proving by a preponderance of the evidence that there was no link between any alleged misrepresentation or omission and the price Plaintiff or any other Class member paid for Tesla securities.  They can do this by proving either that (1) Plaintiff or the Class member did not actually rely on the integrity of the market price when they purchased Tesla securities; or (2) the alleged misrepresentation or omission did not affect the market price of Tesla's stock during the Class Period.

Source: Ninth Circuit Model Civil Jury Instruction 18.7; *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 811 (2011).

    **Defendants' Proposal:**

        The Plaintiff must prove by a preponderance of the evidence that he relied on Defendants' alleged material misrepresentations and that Plaintiff was justified in doing so.  Plaintiff does not

- 78 -

have to prove that he or other members of the Class individually relied on the false and/or materially misleading statements at issue in this case if he proves by a preponderance of the evidence  the requirements for invoking a presumption that he and the class relied on the integrity of the market price, otherwise known as the "fraud-on-the-market" presumption. The fraud-on-the-market presumption can be invoked if (1) there was an active, open market for Tesla securities, meaning that there were a large number of traders, a high level of activity, and frequent trades, such that the price of the security immediately reflects all publicly available information, during the relevant time period;. (2) Investors reasonably relied on that market as an accurate reflection of the current market value of the securities; (3) the alleged misrepresentations were publicly known and material, meaning that a reasonable investor would have regarded what was not disclosed to them as having significantly altered the total mix of information they took into account in deciding whether to buy or sell the Tesla security; and (4) Plaintiff traded the stock between when the alleged material misrepresentations were made and when the truth was revealed.

The "fraud-on-the-market" presumption, however, is not irrebuttable.  Defendants may rebut this presumption by proving by a preponderance of the evidence that there was no link between any alleged misrepresentation or omission and the price Plaintiff paid for Tesla securities. They can do this by proving either that (1) Plaintiff did not actually rely on the integrity of the market price when he purchased Tesla securities; or (2) the alleged misrepresentation did not affect the market price of Tesla's stock.  If Defendants prove Plaintiff would have bought Tesla securities at the same price, even if he knew the security price was affected by fraud, the presumption of reliance does not apply.

Once the information the market needs to assess the accuracy of the alleged misrepresentations has been revealed, a reasonable investor cannot be said to have relied on the alleged misrepresentation in deciding to invest.  In other words, the disclosure of this information cuts off the Plaintiff's reliance on the alleged material misrepresentation at the moment it is issued. If you find the Plaintiff justifiably relied on Defendants' alleged material misrepresentation under the "fraud-on-the-market" theory, the period of that reliance is limited to the time between when the alleged material misrepresentation was made and when the information the market needs to

1    assess the accuracy of the alleged material misrepresentations was disclosed.

2

3        Source: Ninth Circuit Model Civil Jury Instruction 18.7; *Erica P. John Fund, Inc. v.*

4    *Halliburton Co.*, 563 U.S. 804, 811 (2011); *Hsingching Hsu v. Puma Biotechnology, Inc., et al.*,

5    8:15-cv-00865-DOC-SHK (C.D. Cal. Jan. 19, 2019) Dkt. No. 700  Instruction , No. 31; *Teachers'*

6    *Ret. Sys. Of LA v. Hunter*, 477 F.3d 162, 188 (4th Cir. 2007) (stock decline following lawsuit "is

7    not one for which plaintiffs in this case are entitled to compensation"); *W. Virginia Pipe Trades*

8    *Health & Welfare Fund v. Medtronic, Inc.,* 325 F.R.D. 280, 291 (D. Minn. 2018); *In re SunEdison,*

9    *Inc. Sec. Litig.*, 329 F.R.D. 124, 134 (S.D.N.Y. 2019).

10

11        **Plaintiff's Position:**

12        Plaintiff's Proposed Closing Instruction No. 29 is directly in line with the model

13    instructions. Plaintiff objects to Defendants' Proposed Closing Instruction No. 29 as unduly

14    cumulative, unnecessary, and misstates the law.

15        The proper test to invoke the fraud-on-the-market presumption is: "(1) that the alleged

16    misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in

17    an efficient market, and (4) that the plaintiff traded the stock between the time the

18    misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John*

19    *Fund, Inc.*, 573 U.S. 258, 268 (2014). But aside from materiality – which is subsumed within the

20    jury's falsity inquiry – the remaining elements of publicity, market efficiency, and market timing

21    were all established at class certification. *See id.* at 276 ("The burden of proving th[e] prerequisites

22    [to invoke the fraud-on-the-market presumption] still rests with plaintiffs and (with the exception

23    of materiality) must be satisfied before class certification."); *In re Diamond Foods, Inc., Sec. Litig.*,

24    295 F.R.D. 240, 250 (N.D. Cal. 2013) (holding that "a showing of market efficiency is clearly

25    required at the class certification stage in an action relying on the fraud-on-the-market theory").

26    The presumption of reliance has thus been established, and like numerous other securities fraud

27    class actions proceeding to trial on the fraud-on-the-market theory, there is no need to instruct the

28    jury here on that element. See Final Jury Instructions, *In re Apollo Grp., Inc. Sec. Litig.*, No. CV

- 80 -

04-2147-PHX-JAT (D. Ariz. Jan. 16, 2008) (ECF No. 496) (omitting reliance element from "Rule 10b-5 Claim" instruction and declining to give any instruction on the element of reliance); Final Jury Instructions, *Jaffe v. Household Int'l, Inc*., No. 02-CV-05893 (N.D. Ill. May 7, 2009) (ECF No. 1614) (same); Final Jury Instructions, *In re JDS Uniphase Corp. Sec. Litig.*, No. C 02-1486 CW (N.D. Cal. Nov. 19, 2007) (ECF No. 1874) (same).

Even if the Court were to require Plaintiff to re-establish the fraud-on-the-market presumption at trial, the only *Halliburton* factor that requires an independent finding by the jury is that of market efficiency. The first two *Halliburton* factors – i.e., "(1) that the alleged misrepresentations were publicly known," and "(2) that they were material" – are directly subsumed within Plaintiff's affirmative element of falsity, and there is no reason to pose this question to the jury again and risk juror confusion or an inconsistent verdict. The fourth *Halliburton* factor – i.e., "(4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed" – is not disputed.

Additionally, Plaintiff's instructions on Defendants' right to rebut the presumption of reliance is similarly taken almost verbatim from the model instructions 18.7. There is no reason to deviate from the model. The most common way to rebut the presumption of reliance is by showing the "Plaintiff did not actually rely on the integrity of the market." This calls for individualized evidence that is outside the scope of the class-wide liability trial. *Smilovits v. First Solar, Inc.*, No. CV12-0555-PHX-DGC, 2019 WL 6698199, at *6 (D. Ariz. Dec. 9, 2019) (explaining that "'courts in securities fraud actions have consistently recognized that issues of individual reliance can and should be addressed after a class-wide trial'") (citation omitted). The only other avenue to rebut the presumption of reliance at trial is on a class-wide basis by showing that "the alleged misrepresentation or omission did not affect the market price of the security." But that inquiry is directly subsumed within Plaintiff's affirmative elements of materiality, loss causation, and damages. That is, if Plaintiff proves by a preponderance of the evidence that Defendants made material misstatements or omissions that caused Plaintiff to suffer damages, he will have necessarily proven by a preponderance of the evidence that the misrepresentation or omission affected the market price of the security. *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 498 (M.D.

- 81 -

Tenn. 2019) ("Evidence of loss causation is relevant to price impact, because, if the plaintiff is to succeed, the price impact must be what caused the loss—the two become one and the same.").

Even if the Court was inclined to depart from the model instruction, Defendants misstate the law on reliance. Defendants include in their instruction that "Once the information the market needs to assess the accuracy of the alleged misrepresentations has been revealed, a reasonable investor cannot be said to have relied on the alleged misrepresentation in deciding to invest." However, the term "assess the accuracy" appears nowhere in Defendants' case law. "[A]ssess the accuracy" is prejudicial as it is unduly vague and it is unclear what this even means.[6] Therefore, Defendants' instruction is confusing and prejudicial to Plaintiff.

The Court should refuse to go as far beyond the model instructions as proposed by Defendants. *See Prado v. Fed. Express Corp.*, No. 5:12-CV-03945-PSG, 2015 WL 374965, at *2 (N.D. Cal. Jan. 28, 2015) (No error where the court denied to use an instruction that "reached far beyond what is recommended by the model instructions and belabored the points in an otherwise straightforward jury instruction crafted to avoid juror confusion."); *Chandler v. Frauenheim*, No. 17-CV-00325-EMC, 2018 WL 4056018, at *26 (N.D. Cal. Aug. 23, 2018) (Where phrase is used in the model instruction, it suggests it is appropriate, holding "[t]he phrase 'common sense' also is used in the Ninth Circuit's model instruction on reasonable doubt, which suggests it is not inflammatory language and does not draw away from the jury's duty to evaluate the evidence.").

**Defendants' Position:**

The Defendants respectfully request that the Court adopt their proposed jury instruction on "Reliance." Defendants' proposed instruction is "an accurate statement of the law" that comprehensively explains both the fraud-on-the-market presumption and how Defendants may

---

[6] To the extent Defendants' proposed language reflects a disguised "truth-on-the-market" defense, it is also improper. A "truth-on-the-market" defense is an affirmative defense Defendants bear the burden of proving and is a method of refuting an alleged misrepresentation's materiality. *See, e.g. Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*, 568 U.S. 455, 481 (2013); *Provenz v. Miller*, 102 F.3d 1478, 1492-1493 (9th Cir. 1996) (noting that to prevail on a "truth-on-the-market" defense, "defendants must prove that the information that was withheld or misrepresented was 'transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created by insider's one-sided representations'").

rebut it.  *See, e.g.*, *United States v. Garza*, 980 F.2d 546, 554 (9th Cir. 1992) (jury instruction must be "accurate statement of the law," although "formulation or choice of language of the jury instructions is within the discretion of the district court"); *United States v. Terry*, 911 F.2d 272, 278 (9th Cir. 1990) (jury instruction must be "accurate statement of the law"); *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267-68; 278-79 (2014) (articulating the elements of the fraud-on-the-market presumption and its rebuttal) ("*Haliburton II*")

Plaintiff seeks to prove reliance through the rebuttable fraud-on-the-market presumption. This is a two-step analysis.  First, Plaintiff must prove that the presumption applies by establishing "(1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed."  *Halliburton II*, 573 U.S. at 277-78.  As this Court has recognized, materiality (which in the reliance analysis is "directed at price impact—whether the alleged misrepresentations affected the market price in the first place") is an essential predicate of the fraud-on-the-market theory.  *See id.* at 278; *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466-67 (2013); Dkt. No. 387 at 30-31.  Defendants' proposal, unlike Plaintiff's, properly instructs the jury on all of the elements of the fraud-on-the-market theory, including materiality, and should therefore be adopted as the most accurate statement of the law.

The Court should also instruct the jury on the second step of the analysis—rebutting the presumption.  A defendant can rebut the fraud-on-the-market presumption by showing that Plaintiff bought or sold Tesla securities "without relying on the integrity of the market," *Basic Inc. v. Levinson*, 485 U.S. 224, 249 (1988), or that "the asserted misrepresentation (or its correction) did not affect the market price of the defendant's stock," *Haliburton II*, 573 U.S. at 279-80 (*citing Basic*, 485 U.S. at 248).  Defendants' proposed instruction includes a short and plain statement explaining to the jury how the presumption may be rebutted.  Securities class actions within this Circuit have appropriately included such an instruction, Ex. M, *Hsingching Hsu v. Puma Biotechnology, Inc., et al.*, 8:15-cv-00865-DOC-SHK (C.D. Cal. Jan. 19, 2019) Dkt. No. 700, Instructions, No. 31 ("Defendants may rebut the presumption that Plaintiffs relied on the integrity

of the market price when purchasing Puma stock."), and the Court should adopt one here too.

Finally, the Court should adopt the Defendants' instruction explaining the period of time in which the fraud-on-the-market theory presumes that a defendant relied on the allegedly fraudulent statements to buy and sell securities. As the Supreme Court made clear in *Basic* and *Haliburton II*, fraud-on-the-market reliance is only presumed for the period of time between when the "misrepresentations were made and when the truth was revealed." *Haliburton II*, 573 U.S. at 267-68; *Basic*, 485 U.S. at 248-49 (because "news of the merger discussions credibly entered the market and dissipated the effects of the misstatements, those who traded Basic shares after the corrective statements would have no direct or indirect connection with the fraud."). In this case, there is a disputed issue of fact as to when a full corrective disclosure was made to the market. Defendants contend that the market had all of the information necessary to assess the accuracy of Mr. Musk's statements by August 13, whereas the Plaintiff contends that a partial corrective disclosure was made in a *New York Times* article on August 17, 2018 (*see, e.g.,* Dkt. No. 466 ("Plaintiff may be able to show that the *New York Times* article, which was published in print on August 17, 2018, is at least a partial corrective disclosure.").). Since the time period in which Plaintiff may rely on the fraud-on-the-market presumption remains in dispute, it is appropriate to give the jury instruction on how to determine the appropriate reliance period. Defendants' proposal is an accurate statement of the law that does just that and should be adopted.


Defendants object to Plaintiff's Proposed Instruction No. 29 on the grounds that it is inaccurate, incomplete and therefore misleading.

Plaintiff's proposed instruction omits one of the key elements to invoke the fraud-on-the-market presumption: that "alleged misrepresentations were publicly known [and] material." *Hallibuton II*, 573 U.S. at 267-68; *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 811 (2011) ("*Halliburton I*"). As the Court's summary judgment order makes clear, whether the statements were material is a key disputed issue in this case generally and for Plaintiff's fraud-on-the-market theory specifically. (Dkt. No. 387 at 30-31.) Plaintiff cannot side-step its burden by not instructing the jury that he is required to prove this element.

1    Plaintiff's proposed instruction is also incomplete because it does not inform the jury how to

2  apply the fraud-on-the-market presumption to this case by failing to explain that it would not apply

3  if Plaintiff would have purchased the securities even if he knew they were affected by fraud.

4  Additionally, Plaintiff does not provide the jury with adequate information to determine the

5  appropriate period of time in which the fraud-on-the-market exception could apply—which is

6  necessary in this case because there is a disputed issue as to when information the market needed

7  to assess the accuracy of the alleged material misrepresentations was disclosed.  (*See* Dkt. No.

8  466.)

**Instruction No. 30: Loss Causation [Disputed]**

      **Plaintiff's Proposal:**

      Plaintiff must prove by a preponderance of the evidence that Mr. Musk and/or Tesla's misrepresentations or omissions caused their economic injury. To establish causation, Plaintiff must prove that the alleged misrepresentations or omissions played a substantial part in causing the injury or loss that Plaintiff suffered. Plaintiff need not prove that the alleged misrepresentations or omissions were the sole cause of the economic injuries.

Source: Ninth Circuit Model Civil Jury Instruction 18.8; *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025-26 (9th Cir. 2005) (fraudulent statement must be "substantial cause" in plaintiff's damages). *See also Hasbrouck v. Texaco, Inc.*, 842 F.2d 1034, 1044 (9th Cir. 1987) ("A [plaintiff] is entitled to an instruction on a [plaintiff] theory if it has a basis in the law and in the record." (citing *United States v. Coin*, 753 F.2d 1510, 1511 (9th Cir. 1985))); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1053-54, 1057-58 (9th Cir. 2008) (reversing dismissal on loss causation grounds where stock price initially increased in response to FDA Warning Letter and only declined two and a half months later when the "public finally realize[d] the impact of the off-label marketing and the Warning Letter"; holding that "[The Ninth Circuit] rejected 'a bright-line rule requiring an immediate market reaction' because '[t]he market is subject to distortions that prevent the ideal of a free and open public market from occurring.'"); *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 934 (9th Cir. 2003) (rejecting argument that alleged misrepresentations were *per se* immaterial because the drop in stock price took place more than one and a half months after the market learned the truth about the misrepresentations).

      **Defendants' Proposal:**

      Plaintiff must prove by a preponderance of the evidence that Mr. Musk and/or Tesla's material misrepresentations were the proximate cause of Plaintiff's economic loss.  This is commonly referred to as the "loss causation" element.  To prove loss causation, Plaintiff must

prove, by a preponderance of the evidence, that the alleged material misstatements concealed a fact from the market that when disclosed to the market (a so-called "corrective disclosure"), negatively and substantially affected the value of Tesla's securities.  To serve as a basis for finding loss causation, a corrective disclosure must convey information that is new to the market and reveals the information concealed by the alleged material misstatements.  If information has already been disclosed, then a decline in the price of the security accompanying a later repetition or recharacterization of the same information cannot establish loss causation.

To prove loss causation, the Plaintiff must separate any stock-price reaction to a disclosure of the allegedly concealed information from the market's reaction to other information affecting Tesla's securities prices.  Because the Plaintiff's losses are limited only to the stock-price reaction to the corrective disclosure, he cannot recover damages for stock-price losses caused by subsequent events that repeat, recharacterize, or arise from the corrective disclosure, such as negative news stories, lawsuits, or investigations about the information contained in the corrective disclosure.  Plaintiff is only harmed when new facts concealed by the alleged misstatements are revealed, not when risks previously known to the market materialize.

Stated differently, the Plaintiff must provide evidence sufficient for you to attribute some rough proportion of his losses to disclosure of the allegedly concealed information, as opposed to other factors for which the Plaintiff cannot recover losses.  These other factors include negative characterizations of previously disclosed facts identified above as well as any truthful disclosures by Tesla that may have impacted Tesla's stock price.

Source: *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-48 (2005); *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1119 (9th Cir. 2013); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1273–74 (S.D. Cal. 2010); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010); *Teacher's Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 187–88 (4th Cir. 2007).

**Plaintiff's Position**:

Plaintiffs' Proposed Closing Instruction No. 30 adopts the Model Instruction 18.8 almost verbatim. *See also Hsingching Hsu v. Puma Biotechnology, Inc., et al.*, 15-cv-00865-DOC-SHK (Dkt. No. 700 Final Instructions, No. 32). As reflected in Plaintiff's proposed instruction and reaffirmed by the Ninth Circuit, proof of loss causation "requires no more than the familiar test for proximate cause." *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 754 (9th Cir. 2018); *see also In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 789 (9th Cir. 2020) (likening loss causation requirement "to the showing of proximate causation required in ordinary tort actions"); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1053-54, 1057-58 (9th Cir. 2008) (reversing dismissal on loss causation grounds where stock price initially increased in response to FDA Warning Letter and only declined two and a half months later when the "public finally realize[d] the impact of the off-label marketing and the Warning Letter"; holding that "[The Ninth Circuit] rejected 'a bright-line rule requiring an immediate market reaction' because '[t]he market is subject to distortions that prevent the ideal of a free and open public market from occurring.'"); *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 934 (9th Cir. 2003) (rejecting argument that alleged misrepresentations were *per se* immaterial because the drop in stock price took place more than one and a half months after the market learned the truth about the misrepresentations).

Plaintiff objects to Defendants' Proposed Closing Instruction No. 10 as it is confusing and misstates Ninth Circuit law on loss causation. *See Prado v. Fed. Express Corp.*, No. 5:12-CV-03945-PSG, 2015 WL 374965, at *2 (N.D. Cal. Jan. 28, 2015) (No error where the court denied to use an instruction that "reached far beyond what is recommended by the model instructions and belabored the points in an otherwise straightforward jury instruction crafted to avoid juror confusion."); *Chandler v. Frauenheim*, No. 17-CV-00325-EMC, 2018 WL 4056018, at *26 (N.D. Cal. Aug. 23, 2018) (Where phrase is used in the model instruction, it suggests it is appropriate, holding "[t]he phrase 'common sense' also is used in the Ninth Circuit's model instruction on reasonable doubt, which suggests it is not inflammatory language and does not draw away from the jury's duty to evaluate the evidence.").

Defendants' instruction misstates the law, indicating that "Plaintiff must separate any stock-price reaction to a disclosure of the allegedly concealed information from the market's reaction to other information affecting Tesla's securities prices". This is an argument on damages (as evidenced by the fact that the same language appears in their Proposed Instruction 11). Defendants' argument is also unsupported by the case law on loss causation. Plaintiff is not required to show that the misrepresentations or omissions were the "sole reason for the investment's decline in value." *BofI Holding*, 977 F.3d at 790. Thus, "other contributing forces will not bar recovery under the loss causation requirement." *Id*. Defendants' proposed instruction contravenes this well-settled law because it improperly suggests that Plaintiff cannot establish loss causation unless the misrepresentations or omissions were the sole cause of Tesla's stock price declines. Furthermore, consequential damages that "with reasonable certainty ... have resulted from the fraud" may be recovered under Rule 10b-5. *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1030 (9th Cir. 1999); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1203 (9th Cir. 2016) ("the announcement of an SEC investigation related to an alleged misrepresentation, coupled with a subsequent revelation of the inaccuracy of that misrepresentation, can serve as a corrective disclosure for the purpose of loss causation."). Here, the market-adjusted decline from August 7, 2018 to August 17, 2018 is solely attributable to the fraudulent August 7, 2018 tweets as there was no other material, Tesla-specific information disclosed to the market during this time period.

Here, the negative effects of the prices of Tesla securities following the public revelation of details of the SEC investigation, which ultimately result in the SEC's complaints and settlements, are powerful evidence of the Consequential Harm of Defendants' fraud. Defendants' instruction is prejudicial as to Plaintiff's theory and misstates the law.

Tellingly, Defendants only cite a single Ninth Circuit Court of Appeals decision, and all of their case law predates 2013. In fact, the one Ninth Circuit decision Defendants rely on contradicts their position and shows that their instructions are an argument on damages, not loss causation. *See Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1119 (9th Cir. 2013) ("A plaintiff is not required to show 'that a misrepresentation was the *sole* reason for the investment's decline in value' in order to establish loss causation. '[A]s long as the

misrepresentation is one substantial cause of the investment's decline in value, other contributing forces will not bar recovery under the loss causation requirement' but will play a role 'in determining recoverable damages.'" *In re Daou Sys.,* 411 F.3d at 1025 (internal citation omitted)). Additionally, in *Nuveen*, the Ninth Circuit rejected a novel standard for loss causation for notes traded in an inefficient market "namely that loss causation is satisfied if 'the Notes could never have been sold but for the City's fraud.'" *Id.* at 119. This is clearly not the situation here. Furthermore, *Nuveen* does not invoke or discuss the leakage theory as presented by Plaintiff's expert, Dr. Michael Hartzmark.

Nor do Defendants' other authorities support their proposed instruction, as they involve out-of-circuit pleading standards on loss causation, constitute dicta, or are easily distinguishable from the facts here. For example, in *Lentell*, the Second Circuit held that loss causation can be established by allegations that the market reacted negatively to a corrective disclosure or by allegations that a subsequent loss-inducing event qualifies as a materialization of a previously concealed risk. *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 174-75 (2d Cir. 2005) (articulating standard for pleading loss causation, which requires plaintiff to allege that the loss was foreseeable and caused by the materialization of the concealed risk, and affirming dismissal because there was "no allegation that the market reacted negatively to a corrective disclosure" and "no allegation that [defendant] misstated or omitted risks that did lead to the loss"). Defendants' distorted reading of *Lentell* should be rejected, as the court did not endorse Defendants' "materialization of a previously known risk" legal standard and there is no analog in the Ninth Circuit, which has never even explicitly adopted the "materialization of a concealed risk" theory of loss causation articulated in *Lentell*.

Additionally, Defendants' instruction that "Plaintiff must separate any stock-price reaction to a disclosure of the allegedly concealed information from the market's reaction to other information affecting Tesla's securities prices" is prejudicial, as Defendants omit the fact that there may not be a decline in the stock caused by factors other than the alleged misrepresentations or omissions. *See Hsingching Hsu v. Puma Biotechnology, Inc., et al.*, 15-cv-00865-DOC-SHK (Dkt. No. 700 Final Instructions, No. 32) (relied on by Defendants but also including language showing

- 90 -

1    there may not be a material decline from other factors).

2        Accordingly, Defendants' proposed departure from the model instruction is unwarranted and

3    should be rejected. The Court should instead provide the jury with Plaintiff's Proposed Instruction

4    No. 10, which adopts the Model Instruction on causation. *See Prado v. Fed. Express Corp.*, No.

5    5:12-CV-03945-PSG, 2015 WL 374965, at *2 (N.D. Cal. Jan. 28, 2015) (No error where the court

6    denied to use an instruction that "reached far beyond what is recommended by the model

7    instructions and belabored the points in an otherwise straightforward jury instruction crafted to

8    avoid juror confusion."); *Chandler v. Frauenheim*, No. 17-CV-00325-EMC, 2018 WL 4056018,

9    at *26 (N.D. Cal. Aug. 23, 2018) (Where phrase is used in the model instruction, it suggests it is

10   appropriate, holding "[t]he phrase 'common sense' also is used in the Ninth Circuit's model

11   instruction on reasonable doubt, which suggests it is not inflammatory language and does not draw

12   away from the jury's duty to evaluate the evidence.").

13

14       **Defendants' Position:**

15       Defendants respectfully request that the Court adopt their proposed jury instruction on "Loss

16   Causation."  Defendants' proposed instruction is "an accurate statement of the law" that identifies

17   the key elements of loss causation and the requirement that Plaintiff separate the impact of the

18   alleged fraud from other non-fraud information.  *See, e.g.*, *United States v. Garza*, 980 F.2d 546,

19   554 (9th Cir. 1992) (jury instruction must be "accurate statement of the law," although

20   "formulation or choice of language of the jury instructions is within the discretion of the district

21   court"); *United States v. Terry*, 911 F.2d 272, 278 (9th Cir. 1990) (jury instruction must be

22   "accurate statement of the law"); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)

23   (complaint deficient where plaintiff failed "to claim that [the] share price fell significantly after

24   the truth became known"); *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,

25   730 F.3d 1111, 1123 (9th Cir. 2013) (requiring plaintiff to distinguish the impact of the fraudulent

26   statement from "other economic factors" affecting price).

27       To prove loss causation, Plaintiff must establish the existence of a concealed piece of

28   information that inflates the price of a security that, when revealed to be false, causes the price of

1  the security to decline in a significant manner.  *Dura Pharms*, 544 U.S. at 347; *Lentell v. Merrill*

2  *Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) ("[T]o establish loss causation, a plaintiff must

3  allege . . . that the misstatement or omission concealed something from the market that, when

4  disclosed, negatively affected the value of the security.").  Securities class action trials within this

5  District have articulated this precise requirement.  Ex. N, *In Re JDS Uniphase Corp. Securities*

6  *Litig.*, 02-1486-CW, Dkt. 1874 (N.D. Cal. Nov. 9, 2007), Instructions at 14 ("Plaintiffs must prove

7  that the misstatement or omission concealed something from the market, and that as a result

8  JDSU's stock price was higher than it would have been without the material misstatement or

9  omission.  Plaintiffs must also prove that, when the concealed information was revealed, it

10  negatively and substantially affected the value of JDSU stock.").  Defendants' instruction, unlike

11  Plaintiff's, includes a short and plain statement explaining this requirement to the jury and should

12  be adopted.

13         In addition, the loss causation analysis includes the well-settled requirement that Plaintiff

14  separate the impact of the allegedly fraudulent statement from other non-fraud information.

15  *Nuveen*, 730 F.3d at 1123 ("[E]vidence that certain misrepresented risks are responsible for a loss

16  must reasonably distinguish the impact of those risks from other economic factors."); *In re*

17  *REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1273–74 (S.D. Cal. 2010) (failure "to separate the

18  loss caused by the disclosure of corrective information (new, negative, company-specific,

19  revealing a prior misrepresentation or omission) from loss caused by the disclosure of other

20  company-specific information" mandated exclusion of loss causation expert).  Defendants'

21  proposal instructs the jury on this necessary element of the loss causation analysis, which is vital

22  here because of the need to disaggregate the market effect of the indisputably true portions of Mr.

23  Musk's statements—that he was considering taking Tesla private at $420 per share—from the

24  portion the Court has deemed literally false, that "funding was secured."  (*See, e.g.*, Ex. G,

25  Hartzmark Dep. Tr. at 205:12-21; 226:10-229:8; 229:18-231:4.)

26         Finally, the Defendants' proposed instruction properly informs the jury that a negative

27  characterization of previously disclosed information does not constitute a corrective disclosure for

28  purposes of proving loss causation.  *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d

- 92 -

Cir. 2010) ("A negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure of anything but the journalists' opinions."); *Teachers' Ret. Sys. Of LA v. Hunter*, 477 F.3d 162, 187-88 (4th Cir. 2007) (stock decline following filing of complaint based on already-disclosed facts is not a loss "for which the plaintiffs in this case are entitled to compensation."). This instruction is both an accurate statement of the law and necessary to include here because Plaintiff will attempt to argue that media reports negatively characterizing information already known to the market, namely the August 17, 2018 *New York Times* article, is a corrective disclosure. It is therefore important for the jury to be properly instructed as to what kind of information actually constitutes a corrective disclosure, so it has the appropriate tools to decide for itself whether the August 17, 2018 *New York Times* article or any other negative report Plaintiff introduces is a corrective disclosure under the law.

Defendants object to Plaintiff's Proposed Instruction No. 30 on the grounds that it is inaccurate, incomplete and therefore misleading. Plaintiff's proposed instruction omits the key element of loss causation requiring a concealed piece of information that inflates the price of a security that, when revealed to be false, causes the price of the security to decline in a significant manner. *Dura Pharms.*, 544 U.S. at 347. It also fails to instruct the jury that Plaintiff is required to separate the impact of the alleged fraud from the impact of other non-fraud information, *see, e.g., Nuveen*, 730 F.3d at 1123, and the fact that a negative characterization of previously disclosed information does not constitute a corrective disclosure for purposes of proving loss causation, *Omnicom Grp.*, 597 F.3d at 512. These are key components of the loss causation analysis in this case in light of the indisputably true statement that Mr. Musk was considering taking Tesla private at $420 per share and Plaintiff's assertion that the August 16, 2018 *New York Times* article constitutes a corrective disclosure. The Court should reject Plaintiff's instruction for his failure to instruct the jury on these issues.

Plaintiff' contends that the Court should adopt his proposed instruction because it mimics the Ninth Circuit's Model Instruction for causation. However, "the use of a model jury instruction does not preclude a finding of error." *Dang v. Cross*, 422 F.3d 800, 805 (9th Cir. 2005) (vacating

- 93 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

judgment when district court used a model civil jury instruction that provided an incomplete statement of the law); *see also United States v. Paul*, 37 F.3d 496, 501 (9th Cir. 1994) (holding that use of instructions closely tracking model instructions constituted plain error).  Where, as here, an instruction does not address an element of the law or supportable legal theory advanced by a party, it is an error to use it in place of a more complete instruction.  *See Dang*, 422 F.3d at 810-11 ("Failure to give an instruction on a party's theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable") (internal quotation omitted).

**Instruction No. 31: Damages [Disputed]**

      **Plaintiff's Proposal:**

      If you find for Plaintiff on the 10b-5 Claim against Elon Musk and/or Tesla, then you must consider and decide the amount of damages to be awarded to Plaintiff and the Class. You may award only actual damages in that amount which will reasonably and fairly compensate Plaintiff and the Class for the economic losses they sustained.

      Actual damages are measured by the artificial increases or decreases in security prices caused by the false misrepresentations or omissions at issue in this case. Your award must be based on evidence and not upon speculation, guesswork or conjecture. However, damages need not be proven with mathematical certainty. There must only be enough evidence for you to make a reasonable estimate of damages.

      You will be asked to determine the amount, if any, by which the prices for Tesla common stock and convertible bonds were artificially inflated for each day during the Class Period by the false misrepresentations or omissions at issue in this case. You will also be asked to determine the levels of implied volatility that will be used to calculate the effect, if any, by the false misrepresentations or omissions at issue in this case on Tesla options during the Class Period. These determinations of price inflation and implied volatility will be used by the Court to calculate the total amount of damages suffered by Plaintiff and the Class in connection with purchases of stock and convertible bonds and purchases and sales of Tesla stock options during the Class Period.

      Plaintiff has the burden of proving damages by a preponderance of the evidence. You may find that Plaintiff has proved all of the amount of artificial price inflation and appropriate implied volatility as identified by his expert, none of the artificial inflation and implied volatility as identified by Plaintiff's expert, or some number in-between. You are not required to act as trained economists and may make reasonable estimates based on the evidence.

      Source: Ninth Circuit Model Civil Jury Instruction 18.9; *Randall v. Loftsgaarden*, 478 U.S. 647, 664-65 (1986) ("Congress' aim in enacting the 1934 Act was not confined solely to

compensating defrauded investors. Congress intended to deter fraud and manipulative practices in the securities markets, and to ensure full disclosure of information material to investment decisions. This deterrent purpose is ill served by a too rigid insistence on limiting plaintiffs to recovery of their 'net economic loss.'" (internal citations omitted); *Gruber v. Gilbertson*, No. 16-CV-9727 (JSR) (Dkt. No. 478 at *30 (Final Jury Instruction No. 22 on Damages: "If you have determined that Mr. Reger is liable on either Claim I or Claim II, or both, then you must determine whether the amount of fraudulent inflation is 100%, as the plaintiff contends; 0%, as Reger contends; or some number in-between."); *Gruber v. Gilbertson*, _ F.Supp.3d_, No. 16-CV-9727 (JSR), 2022 WL 4232834, at *12 (S.D.N.Y. Sept. 14, 2022) ( "[t]he able members of the jury, who gave up their own time to perform their public service of deciding this complicated case, were not required to act as trained economists, but rather to make reasonable estimates based on evidence they credited."); *Harmsen v. Smith*, 693 F.2d 932, 945 (9th Cir. 1982) ("Although damages need not be proved to a mathematical certainty, 'sufficient facts must be introduced so that a court can arrive at an intelligent estimate without speculation or conjecture.'"); *Garvin v. Greenbank*, 856 F.2d 1392, 1401 (9th Cir. 1988) ("Damages need not be proven to a mathematical certainty.").

### Defendants' Proposal:

If you find for Plaintiffs on the 10b-5 Claim against Elon Musk and/or Tesla, then you must consider and decide the amount of damages to be awarded to Plaintiff. Just because I am instructing you on how to measure damages does not mean that I have any opinion on whether or not Tesla and/or Mr. Musk should be found liable for Plaintiff's 10b-5 claim or whether the Tesla Director Defendants should be found liable for Plaintiff's Section 20(a) claim. That is for you to decide on the evidence presented and the rules of law I have given to you. I am instructing you on damages only so that you will have guidance should you determine that Plaintiff has proven an entitlement to recovery.

If you determine that Tesla and/or Mr. Musk violated Rule 10b-5 with respect to any of the challenged statements, then you must determine the amount of damages, if any, as to which Plaintiff is entitled. If you decide that Plaintiff is not entitled to recover from Tesla or Mr. Musk,

1    you need go no further.

2         You may award only actual damages in an amount which will reasonably and fairly

3    compensate Plaintiff for the economic losses sustained.

4         Actual damages are measured amount of inflation caused by the misrepresentations only

5    on which you based your finding of 10b-5 liability.  In other words, actual damages are measured

6    by the difference between the price at which a stock sold and the price at which the stock would

7    have sold absent the alleged material misrepresentations.  Actual damages are limited to losses

8    caused by the alleged material misrepresentation and do not include losses caused by other events,

9    including subsequent events that repeat, recharacterize, or arise from the corrective disclosure,

10   such as negative news stories, lawsuits, or investigations about the information contained in the

11   corrective  disclosure.    Plaintiff  bears  the  burden  of  separating  the  alleged  material

12   misrepresentations from any other factors that may have affected the price of Tesla's securities

13   and  ascribe  some  proportion  of  the  whole  loss  to  the  alleged  material  misrepresentation.

14   Defendants are not liable for any loss resulting from those other events.

15        Plaintiff  is  not  permitted  to  recover  any  consequential  damages  except  for  outlays

16   attributable to the alleged misconduct, for example money Plaintiff actually spent to mitigate his

17   harm, if proved with sufficient certainty.

18        You will be asked to determine the amount, if any, by which the prices for Tesla common

19   stock and convertible bonds were artificially inflated by any material misrepresentation you may

20   find for each day during the Class Period. You will also be asked to determine the appropriate

21   level  of  implied  volatility  which  should  be  used  to  calculate  the  effect  of  any  material

22   misrepresentation you may find had on Tesla options.

23        Your award must be based on evidence and not upon speculation, guesswork or conjecture.

24   Plaintiff has the burden of proving damages by a preponderance of the evidence. Plaintiff also

25   bears the burden of separating out any share price decline caused by factors other than the alleged

26   misrepresentations.

27

28   Source: Ninth Circuit Model Civil Jury Instruction 18.9; Ex. M, *Hsingching Hsu v. Puma*

*Biotechnology, Inc., et al.*, 8:15-cv-00865-DOC-SHK (C.D. Cal. Jan. 19, 2019) Dkt. No. 700 Instruction , No. 33; Ex. O *Liberty MediaCorp. v. Vivendi Universal*, S.D.N.Y. Case No. 03-cv-02175, Dkt. No. 305. Instructions, 6/21/12 Tr. at 3094:24-3095:11; 3097:4-22; Ex. P, *In re Vivendi Universal, S.A. Securities Litigation,* S.D.N.Y. Case No. 02-cv-05571, Dkt. No. 1052-2, Instruction No. 28; *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 155 (1972); *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014 (C.D. Cal. 2003); ); *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1119 (9th Cir. 2013); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1273–74 (S.D. Cal. 2010); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010); *Teacher's Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 187–88 (4th Cir. 2007); *Meyers v. Moody*, 693 F.2d 1196, 1212 (5th Cir. 1982); *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1030 (9th Cir. 1999).

**Plaintiff's Position**:

Plaintiff's Proposed Closing Instruction No. 31 largely follows the language in the model instructions combined with language recently used in *Gruber v. Gilbertson*, No. 16-CV-9727 (JSR), 2022 WL 4232834, at *12 (S.D.N.Y. Sept. 14, 2022) ("The able members of the jury . . . were not required to act as trained economists, but rather to make reasonable estimates based on evidence they credited."); *see Gruber v. Gilbertson*, No. 16-CV-9727 (JSR) (Dkt. No. 478 at *30 (Final Jury Instruction No. 22 on Damages: "If you have determined that Mr. Reger is liable on either Claim I or Claim II, or both, then you must determine whether the amount of fraudulent inflation is 100%, as the plaintiff contends; 0%, as Reger contends; ***or some number in-between*.**" (emphasis added)).

Plaintiff objects to Defendants' instruction as it is unduly prejudicial to Plaintiff, repetitive, and misstates the law. For example, Defendants' instructions state that "Actual damages are limited to losses caused by the alleged material misrepresentation and do not include losses caused by other events, including subsequent events that repeat, recharacterize, or arise from the corrective disclosure, such as negative news stories, lawsuits, or investigations about the

- 98 -

1    information contained in the corrective disclosure.  Plaintiff is not permitted to recover any
2    consequential damages except for outlays attributable to the alleged misconduct, for example
3    money Plaintiff actually spent to mitigate his harm, if proved with sufficient certainty." However,
4    this is not the law. Consequential damages that "with reasonable certainty ... have resulted from
5    the fraud" may be recovered under Rule 10b-5. *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189
6    F.3d 1017, 1030 (9th Cir. 1999); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1203 (9th Cir. 2016)
7    ("the announcement of an SEC investigation related to an alleged misrepresentation, coupled with
8    a subsequent revelation of the inaccuracy of that misrepresentation, can serve as a corrective
9    disclosure for the purpose of loss causation."). Here, the negative effects of the prices of Tesla
10   securities following the public revelation of details of the SEC investigation, which ultimately
11   result in the SEC's complaints and settlements, are powerful evidence of the Consequential Harm
12   of Defendants' fraud. Defendants may argue to the jury that Plaintiff has failed to prove
13   consequential damages; however, Defendants' proposed instruction is highly prejudicial and
14   should not be adopted.

15         Further, Defendants misstate the law as the jury is entitled to make estimates of damages
16   based on the evidence and decide that Plaintiff proved 100% of damages, 0% of damages, or a
17   number in between. *Gruber v. Gilbertson*, 2022 WL 4232834, at *3 (S.D.N.Y., 2022) ("consistent
18   with plaintiffs' conventional loss causation theory, the damages instruction made clear that the
19   jury could select a middle ground between these all-or-nothing approaches, stating that, as to
20   damages, 'you must determine whether the amount of fraudulent inflation is 100%, as the plaintiff
21   contends; 0%, as Reger contends; or some number in-between.'"). This Circuit agrees noting that,
22   "[d]amages need not be proved to a mathematical certainty" and all that is required is that
23   "sufficient facts must be introduced so that a court can arrive at an intelligent estimate without
24   speculation or conjecture." *Harmsen v. Smith,* 693 F.2d 932, 945 (9th Cir. 1982); *RRW Legacy
25   Mgmt. Grp., Inc. v. Walker*, 751 F. App'x 993, 997 (9th Cir. 2018) (accord). By ignoring this fact,
26   Defendants' instruction is prejudicial. As the court stated in *Vivendi*, "it is well-established that
27   the computation of damages is a quintessential fact issue for the jury, and that a jury need not
28   accept an expert's damage calculations wholesale." *In re Vivendi Universal, S.A. Sec. Litig.*, 765

- 99 -

F. Supp. 2d 512, 575 (S.D.N.Y. 2011) (rejecting defendants' position that "the expert testimony on damages was 'all or nothing,' in the sense that the jury had to either accept or reject Dr. Nye or Dr. Silber's analyses wholesale."); *see also Popovich v. Sony Music Entm't Inc.*, 508 F.3d 348, 359 (6th Cir. 2007) (upholding jury's award of damages for breach of contract which was substantially below the figure proposed by plaintiffs' expert and above the estimate proposed by defendant's expert); *Am. Nat'l Bank & Trust Co. of Chicago v. Reg'l Transp. Auth.*, 125 F.3d 420, 436-39 (7th Cir. 1997) (upholding jury's determination of fair market value for property that exceeded the sum requested by plaintiffs' counsel in closing argument and differed  from the calculations presented by both sides' experts); *First Nat'l Bank of Kenosha v. United States*, 763 F.2d 891, 896 (7th Cir. 1985) (jury finding that fair market value of a piece of real estate was $1.1 million had a reasonable basis in the record where the jury was presented with widely divergent expert opinions regarding the fair market value, and decided not to accept the view of either expert but instead "arrived at its figure independently (very possibly, we suspect, by splitting the difference)"). Indeed, every source cited by Defendants includes this instruction. *See Liberty Media* Instructions, 6/21/12 Tr. at 3095:13-16 ("Damages need not be proven, however, with mathematical certainty, but there must be enough evidence for you to make a reasonable estimate of damages."); *Vivendi* Instruction 28 ("Damages need not be proven with mathematical certainty but there must be enough evidence for you to make a reasonable estimate of damages.").

Additionally, Defendants' instruction that "Plaintiff must separate any stock-price reaction to a disclosure of the allegedly concealed information from the market's reaction to other information affecting Tesla's securities prices" is improper and repeated multiple times. Defendants' attempt to inject the concept of disaggregation into the Model Instruction is confusing and prejudicial to Plaintiff because it improperly presumes there are "factors other than the alleged fraud" that caused Plaintiff's losses. Defendants omit the fact that there may not be a decline in the stock caused by factors other than the alleged misrepresentations or omissions. *See Hsingching Hsu v. Puma Biotechnology, Inc., et al.*, 15-cv-00865-DOC-SHK (Dkt. No. 700 Final Instructions, No. 32) (relied on by Defendants but also including language showing there may not be a material decline from other factors). The parties agree that under Section 10(b) and Rule 10b-5, Plaintiff

- 100 -

can only recover for the "actual" economic loss he sustained.  Because the jury will already be instructed that they may only award "actual" damages, Defendants' proposed language is redundant.

The Court should decline to read Defendants' proposed instruction, which is a prejudicial and unwarranted departure from Model Instruction 18.9.

**Defendants' Position:**

Defendants respectfully request that the Court adopt their proposed jury instruction on "Damages."  Defendants' proposed instruction is "an accurate statement of the law" that identifies the key elements concerning damages that may be recoverable if caused by the alleged material misstatements.  *See, e.g.*, *United States v. Garza*, 980 F.2d 546, 554 (9th Cir. 1992) (jury instruction must be "accurate statement of the law," although "formulation or choice of language of the jury instructions is within the discretion of the district court"); *United States v. Terry*, 911 F.2d 272, 278 (9th Cir. 1990) (jury instruction must be "accurate statement of the law").

Defendants' proposed language regarding the type of damages Plaintiff may recover tracks the law regarding damages in 10b-5 fraud-on-the-market actions, the Ninth Circuit's model jury instructions, and instructions in other securities class actions.  Specifically, Defendants seek an instruction that Plaintiff is only entitled to "actual damages."   Ninth Circuit Model Civil Jury Instruction 18.9 ("You may award only actual damages in that amount which will reasonably and fairly compensate the plaintiff for the economic loss [he] [she] [it] sustained"); Ex. M, *Hsingching Hsu v. Puma Biotechnology, Inc., et al.,* 8:15-cv-00865-DOC-SHK (C.D. Cal. Jan. 19, 2019) Dkt. No. 700 , Instructions, No. 33 ("You may award only actual damages in an amount that will reasonably and fairly compensate Plaintiffs for the economic loss they sustained.").  Defendants similarly request an explanation to aid the jury in the meaning of "actual damages," (i.e., the difference between the price at which a stock sold and the price at which the stock would have sold absent the alleged misrepresentations) as recognized by caselaw and other instructions.  *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014 (C.D. Cal. 2003) ("Damages in a securities fraud case are measured by the difference between the price at which a stock sold

and the price at which the stock would have sold absent the alleged misrepresentations or omissions"), *aff'd sub nom. Mortensen v. Snavely*, 145 F. App'x 218 (9th Cir. 2005); *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 155 (1972) (similar); *Hsingching Hsu*, Instructions, No. 33 ("Actual damages are measured by the amount of inflation per share of Puma stock caused by the misrepresentations or omissions on which you based your finding of a §10(b)-5 violation.").

Defendants also seek the inclusion of language making clear that "Plaintiff also bears the burden of separating out the any share price decline caused by factors other than the alleged misrepresentations," which is consistent with both caselaw and recent securities class action jury instructions in this Circuit and other courts. *Hsingching Hsu v. Puma Biotechnology, Inc., et al*., Instructions, No. 33 ("Plaintiffs also bear the burden of separating out the share price decline, if any, caused by factors other than the alleged misrepresentations or omissions."); *In re Imperial Credit Indus., Inc. Sec. Litig*., 252 F. Supp. 2d at 1014–15 ("A proper measure of damages in the securities context thus requires elimination of that portion of the price decline or price difference which is unrelated to the alleged wrong"); Ex. O, *Liberty MediaCorp. v. Vivendi Universal*, Case No. 03-cv-02175 (S.D.N.Y. Aug. 10, 2012), Dkt. No. 305. Instructions, 6/21/12 Tr. at 3097:4-22 ("Vivendi is not liable for any loss resulting from those other non-fraud related events.").

Finally, Defendants' proposal includes a definition of "consequential damages" that properly explains, consistent with Ninth Circuit law, that any consequential damages are limited to "outlays attributable to the alleged misconduct, for example money Plaintiff actually spent to mitigate his harm, if proved with sufficient certainty." *Meyers v. Moody*, 693 F.2d 1196, 1212 (5th Cir. 1982); *Ambassador Hotel Co. v. Wei-Chuan Inv*., 189 F.3d 1017, 1030 (9th Cir. 1999). Dr. Hartzmark, Plaintiff's damages expert, includes in his model "consequential effects" as "artificial inflation." (Ex. 375 ¶ 171.) However, "courts have generally used an 'out-of-pocket' measure of damages in securities fraud actions premised on a seller's fraud," *Chassin Holdings Corp. v. Formula VC Ltd.*, 2017 WL 66873, at *13 (N.D. Cal. Jan. 6, 2017) (Chen, J.), so it is necessary for the jury instructions to plainly explain the limited circumstances in which a Plaintiff can collect "consequential damages" to prevent the jury from including in any award losses for "consequential effects" not cognizable by law.

1

2          Defendants object to Plaintiff's Proposed Instruction No. 31 on the grounds that it is

3   inaccurate, incomplete and therefore misleading.  Plaintiff's instruction fails to provide the jury

4   with all of the relevant standards it requires to calculate actual damages in this case.  Although

5   Plaintiff's instruction discusses artificial inflation, it does not provide the jury with the proper

6   explanation of how to measure it—"the difference between the price at which a stock sold and the

7   price at which the stock would have sold absent the alleged misrepresentations or omissions." *In

8   re Imperial Credit Indus., Inc. Sec. Litig*, 252 F. Supp. 2d at 1014.  Plaintiff's instruction also fails

9   to explain to the jury Plaintiff's burden to separate out any share price decline caused by factors

10  other than Mr. Musk's alleged misrepresentations.  *See id.* at 1014-15.  Finally, Plaintiff's

11  instruction does not explain to the jury what kind of consequential damages, if any, he is entitled

12  to even though his damages expert contends that the share price was inflated by so-called

13  "consequential effects" of Mr. Musk's tweet.  (Ex. 375 ¶ 171.)

14          Additionally, Plaintiff's instruction states that the jury may award "some number in-

15  between" (Plaintiff's Proposed Instruction No. 31).  Plaintiff's proposed instruction improperly

16  invites the jury to speculate and assess a damages verdict that is not supported by evidence.

17  "Plaintiff has the burden of proving every element of his case, including damages. The law does

18  not require mathematical precision in measuring damages, but sufficient facts must be introduced

19  to support an intelligent estimate without speculation or conjecture." *Feldman v. Simkins Indus.,*

20  *Inc.*, 492 F. Supp. 839, 847 (N.D. Cal. 1980), *aff'd*, 679 F.2d 1299 (9th Cir. 1982) (evidence could

21  not sustain a damages verdict).  Plaintiff has the burden to prove his damages by the preponderance

22  of evidence and intends to offer what the Court recognized was an all-or-nothing damages model.

23  Having offered an inflated damages theory that is vulnerable attack, Plaintiff cannot seek to shirk

24  his burden to prove such damages by instructing the jury that it can pick and choose or discount

25  his experts' conclusions.  Plaintiff will not present the jury with an alternate theory or any evidence

26  that could support "some number in-between" (*see e.g.,* Ex. 375) what his experts propose and no

27  finding of inflation.  This instruction is not supported by the evidence that the jury will be presented

28  and should be rejected.  *See Roberts v. Spalding*, 783 F.2d 867, 873 (9th Cir. 1986)  ("**the district

- 103 -

1    court was under no duty to submit to the jury proposed instructions that contain … a theory not

2    supported by the evidence, or that are otherwise incomplete or improper.**")**.

3          Plaintiff's instruction is likely to mislead the jury to make an unsupportable damages

4    finding and should therefore be rejected.

1    **Instruction No. 32:  Control Person Liability [Stipulated]**

2         Under Section 20(a) of the Securities Exchange Act of 1934, a defendant may be liable as

3    a "controlling person" if during the period that someone else violated Rule 10b-5, the defendant

4    had the authority to control that person or company.

5         A controlling person is an individual or company that possesses the power to direct the

6    management or policies of a business enterprise or of another person involved in the management

7    or policy-making of the enterprise.

8         Plaintiff claims that the Tesla's Board of Directors were controlling persons of Tesla and

9    are therefore each liable under the securities laws for any violations of Rule 10b-5 committed by

10   Tesla. This is referred to as "the Plaintiff's Section 20(a) claim."

11        On this claim, Plaintiff has the burden of proving by a preponderance of the evidence that

12   each Tesla director possessed, directly or indirectly, the actual power to direct or cause the

13   direction of the management and policies of Tesla where Tesla is liable on Plaintiff's Rule 10b-5

14   Claim. Plaintiff does not need to prove that any Tesla director actually exercised that power.

15

16   Source: Ninth Circuit Model Civil Jury Instruction 18.1, 18.10; *No. 84 Employer-Teamster Joint*

17   *Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003).

18

19

20

21

22

23

24

25

26

27

28

**Instruction No. 33: Defense to Control Person Liability [Disputed]**

      **Plaintiff's Proposal:**

      Tesla's directors contend that they are not liable to the Plaintiff even if they were controlling persons because they did not induce the violation(s) that led to the Plaintiff's economic injury and they acted in good faith.

      Each of Tesla's director has the burden of proving both of the following elements by a preponderance of the evidence:

    1.    he or she did not directly or indirectly induce the violation; and

    2.    he or she acted in good faith.

      If you find that a Tesla director has proved both of these elements, your verdict should be for that director. The director can prove good faith only by establishing that he or she maintained and enforced a reasonable and proper system of supervision and internal control. If you find that a director has failed to prove either or both of these elements, your verdict should be for Plaintiff.

Source: Ninth Circuit Model Civil Jury Instruction 18.11.

      **Defendants' Proposal:**

      Even if you find that any Tesla director is a controlling person, you must still find that Tesla director not liable if that Tesla director establishes the defense to control person liability. Each of Tesla's directors contend that they are not liable to the Plaintiffs even if they were controlling persons because they did not induce the violation(s) that you may find and they acted in good faith. In order to establish a good faith defense to the 20(a) claim, the Tesla directors have the burden of proving two elements by the preponderance of evidence: (1) the Tesla director did not directly or indirectly induce the underlying 10b-5 violation you may find; and (2) the Tesla director acted in good faith; in other words they prove they did not act with knowledge or with conscious disregard of the violation you may find.

      Even if you find that any of the Tesla directors is a controlling person, your verdict should be not liable if that Tesla director has proved both of these elements.

Source: Ninth Circuit Model Civil Jury Instruction 18.11; *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2020); 15 U.S.C. 78t(a).

**Plaintiff's Position**:

Plaintiff's Proposed Closing Instruction 33 follows the model instruction almost verbatim, and Defendants provide no good reason to deviate from the model instruction.

Defendants' proposed instruction is misleading as it substantially deviates from the model instruction. For example, Defendants delete the model language "[t]he director can prove good faith only by establishing that he or she maintained and enforced a reasonable and proper system of supervision and internal control." This language was taken from *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1576 (9th Cir.1990), and there is no reason to depart from this language. *Id.* ("supervisory system was adequate and that it reasonably discharged its responsibilities under the system."). To the extent that Defendants attempt to add a scienter instruction here, it should not be able to do so at the cost of the model language. *See Prado v. Fed. Express Corp.*, No. 5:12-CV-03945-PSG, 2015 WL 374965, at *2 (N.D. Cal. Jan. 28, 2015) (No error where the court denied to use an instruction that "reached far beyond what is recommended by the model instructions and belabored the points in an otherwise straightforward jury instruction crafted to avoid juror confusion."); *Chandler v. Frauenheim*, No. 17-CV-00325-EMC, 2018 WL 4056018, at *26 (N.D. Cal. Aug. 23, 2018) (Where phrase is used in the model instruction, it suggests it is appropriate, holding "[t]he phrase 'common sense' also is used in the Ninth Circuit's model instruction on reasonable doubt, which suggests it is not inflammatory language and does not draw away from the jury's duty to evaluate the evidence.").

Defendants' instruction is also misleading as it omits who has the burden from the model instruction. This is highly prejudicial to Plaintiff and should be rejected. *See Hollinger*, 914 F.2d at 1575 (noting that defendant bears the burden of proving the good faith defense).

1  As Defendants' proposed instruction is prejudicial to Plaintiff, the Court should follow the
2  model instructions.

3

4  **Defendants' Position:**

5  Defendants respectfully request that the Court adopt their instruction for "Defense to
6  Control Person Liability."   Control person liability under Section 20(a), 15 U.S.C.A. § 78t(a),
7  provides that "[e]very person who, directly or indirectly, controls any person liable under any
8  provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and
9  severally with and to the same extent as such controlled person to any person to whom such
10  controlled person is liable (including to the Commission in any action brought under paragraph
11  (1) or (3) of section 78u(d) of this title), unless the controlling person acted in good faith and did
12  not directly or indirectly induce the act or acts constituting the violation or cause of action."  15
13  U.S.C.A. § 78t(a).

14  The Tesla Director Defendants in this case are entitled to show that they acted in good faith
15  and did not directly or indirectly induce any underlying Rule 10b-5 violation that may be found.
16  Defendants' proposed instruction defines "good faith" for the jury—an absence of scienter.
17  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2020) (controlling person "may assert
18  a good faith defense by proving the absence of scienter and a failure to directly or indirectly induce
19  the violations at issue") (quotation omitted).

20

21  The Defendants object to Plaintiff's Proposed Instruction No. 33 on the grounds that it is
22  incomplete and therefore misleading.   Plaintiff's instruction notes that the Tesla Director
23  Defendants can avoid liability by asserting a good faith defense, but does not define how they can
24  demonstrate good faith.  *See Howard*, 228 F.3d  at 1065.  It is therefore incomplete and should be
25  rejected.

26  Plaintiff's contends that the Court should adopt its proposed instruction because it mimics
27  the Ninth Circuit's Model Instruction for good faith defense to controlling person liability.
28  However, "the use of a model jury instruction does not preclude a finding of error." *Dang v. Cross*,

422 F.3d 800, 805 (9th Cir. 2005) (vacating judgment when district court used a model civil jury instruction that provided an incomplete statement of the law) (cleaned up); *see also United States v. Paul*, 37 F.3d 496, 501 (9th Cir. 1994) (holding that use of instructions closely tracking model instructions constituted plain error). Where, as here, an instruction does not address an element of the law or supportable legal theory advanced by a party, it is an error to use it in place of a more complete instruction. *See Dang*, 422 F.3d at 810-11 ("Failure to give an instruction on a party's theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable") (internal quotation omitted).

**Instruction No. 34: Apportionment of Liability [Disputed]**

      **Plaintiff's Proposal:**

      If you find that Plaintiff proved the 10b-5 claim against Tesla or Mr. Musk and/or the Section 20(a) claims against the other Defendants, then you must determine whether any Defendant made a knowing violation of the securities laws as well as the percentage of responsibility of each of the Defendants as opposed to any other persons you determine are responsible for the losses suffered by Plaintiff.

      A Defendant commits a knowing violation of the securities laws when (1) they make an untrue statement of material fact, with actual knowledge that the representation is false, or omits to state a fact necessary in order to make the statement made not misleading, with actual knowledge that, as a result of the omission, one of the material representations of the Defendant is false; and (2) persons are likely to reasonably rely on that misrepresentation or omission. Reckless conduct by a Defendant shall not be construed to constitute a knowing violation of the securities laws by that Defendant.

      When apportioning responsibility, the percentages you calculate must total 100% among those parties you find responsible even if you believe that some of the Defendants are 0% responsible. In determining the percentage of responsibility, you must consider the nature of the conduct of each person you determine caused or contributed to the losses incurred by the Plaintiff and the nature and extent of the causal relationship between that person's conduct and the losses incurred by Plaintiff. If you determine that any person's actions and omissions did not proximately contribute to the loss incurred by Plaintiff, then you are to assign 0% responsibility to that person.

Source: 15 U.S.C. § 78u-4(f); *In re WorldCom Sec. Litig.*, No. 02 Civ. 3288, 2005 WL 335201, at *4-7 (S.D.N.Y. Feb. 14, 2005) (holding "all Exchange Act claims result in proportionate liability for all defendants," except where a defendant is specifically found to have "knowingly committed a violation of the securities laws") (citing 15 U.S.C. § 78u-4(f)(2)(A)); *In re WorldCom Sec. Litig.*, No. 02 Civ. 3288, 2005 WL 675782, at *4 (S.D.N.Y. Mar. 24, 2005) (Preliminary Jury Instructions); *Laperriere v. Vesta Ins. Grp., Inc.*, 526 F.3d 715, 728 (11th Cir. 2008).

**Defendants' Proposal:**

If you find that Plaintiff proved the 10b-5 claim against Tesla or Mr. Musk and/or the Section 20(a) claims against the other defendants, then you must determine (1) whether any Defendant knowingly violated any securities law and (2) what percent each of the Defendants is responsible, as opposed to any other persons you determine are responsible, for the losses suffered by Plaintiffs as a result of the 10b-5 claim or Section 20(a) violation you may find.

A Defendant commits a knowing violation of the securities laws when (1) they make an untrue statement of material fact, with actual knowledge that the representation is materially false, or omits to state a fact necessary in order to make the statement made not materially misleading, with actual knowledge that, as a result of the omission, one of the representations of the Defendant is materially false; and (2) persons are likely to reasonably rely on that material misrepresentation or omission.

When apportioning responsibility, the percentages you calculate must total 100% among those parties you find responsible, but you may find that Tesla's, Mr. Musk's, or the Tesla directors' or any other person's responsibility is 0%. In determining the percentage of responsibility, you must consider the nature of the conduct of each person you determine caused or contributed to the losses, if any, incurred by the Plaintiffs and the nature and extent of the causal relationship between that person's conduct and the losses, if any, incurred by Plaintiffs. If you determine that any person's actions and omissions did not proximately contribute to the loss incurred by Plaintiffs, then you are to assign 0% responsibility to that person.

Source: 15 U.S.C. § 78u-4(f); *In re WorldCom Sec. Litig.*, No. 02 Civ. 3288, 2005 WL 335201, at *4-7 (S.D.N.Y. Feb. 14, 2005) (holding "all Exchange Act claims result in proportionate liability for all defendants," except where a defendant is specifically found to have "knowingly committed a violation of the securities laws") (citing 15 U.S.C. § 78u-4(f)(2)(A)); *In re WorldCom Sec. Litig.*, No. 02 Civ. 3288, 2005 WL 675782, at *4 (S.D.N.Y. Mar. 24, 2005) (Preliminary Jury Instructions); *Laperriere v. Vesta Ins. Grp., Inc.*, 526 F.3d 715, 728 (11th Cir. 2008).

1

2   **Plaintiff's Position:**

3   The parties' proposed instructions are near identical in substance and form. However,

4   Plaintiff's instruction more accurately conforms with the PSLRA by not unnecessarily interjecting

5   the element of "materiality" into the instruction. The particular subsection of the PSLRA that

6   requires the jury to assign responsibility states, in pertinent part, that the jury must decide "the

7   percentage of responsibility of such person, measured as a percentage of the total fault of all

8   persons who caused or contributed to the loss incurred by the plaintiff." 15 U.S.C. §78u-

9   4(f)(3)(A)(ii). This provision does not mention the word "material" or "materiality" at all. Thus,

10   Defendants' insistence on its inclusion is unfounded.

11   Plaintiff's instruction also lessens the risk of the jury finding liability but assigning 0%

12   responsibility to each of the liable Defendants. Plaintiff's formulation of the instruction makes

13   clear that they can assign 0% responsibility to one or some of the Defendants while at the same

14   time not unnecessarily confusing jurors on the issue.

15

16   **Defendants' Position:**

17   Defendants respectfully request that the Court adopt their instruction for "Apportionment

18   of Liability."   If the jury finds a violation of Rule 10b-5 or Section 20(a), it must apportion

19   responsibility among the defendants.  15 U.S.C. § 78u-4(f).  First, it must determine whether a

20   defendant acted "knowingly."   Defendants who "the trier of fact specifically

21   determines…knowingly committed a violation of the securities laws" are jointly and severally

22   liable for all damages, whereas Defendants who merely engaged in "reckless conduct" are assessed

23   liability proportionate to the percentage of their responsibility.  15 U.S.C. §§ 78u-4(f); 10(a)-(b).

24   Second, the jury must apportion responsibility for any losses among the defendants it found liable.

25   15 U.S.C. §§ 78u-4(f).  The total amount of responsibility must add up to one-hundred percent,

26   but the jury can assess zero percent responsibility to any defendant if it finds that person did not

27   contribute to the loss. *Id.*

28

1    Defendants' proposed instruction explains both steps consistent with the statute. It also

2 adequately informs the jury that it can assess zero percent liability to any given defendant and

3 explains what factors the jury should consider in making that determination. Finally, the

4 instruction explains how a jury could find a Defendant "knowingly" violated securities laws in a

5 manner that is consistent with the elements and requirements of a 10b-5 claim.

6

7    Defendants object to Plaintiff's Proposed Instruction No. 34 on the grounds that it is

8 incomplete and confusing. First, Plaintiff's definition of "knowingly," although borrowed from

9 the PSLRA, does not adequately inform the jury that a Defendant must know the statement at issue

10 was "materially false" in order to have acted knowingly nor does it inform the jury that persons

11 must rely on a "material" misrepresentation. *See GIA-GMI, LLC v. Michener*, No. C06-7949 SBA,

12 2007 WL 2070280, at *9 (N.D. Cal. July 16, 2007) ("[T]he complaint must set forth 'specific facts

13 that make it reasonable to believe that defendant[s] knew that a statement was materially false or

14 misleading.'"); *Phillips v. LCI Int'l, Inc*., 190 F.3d 609, 621 (4th Cir. 1999) (complaint that "fails

15 adequately to allege that defendants' statements were [materially] false . . . obviously fails to allege

16 facts constituting circumstantial evidence of reckless or conscious misbehavior on the part of

17 defendants in making statements.") (alterations in original); *Amgen Inc. v. Connecticut Ret. Plans

18 & Tr. Funds*, 568 U.S. 455, 463 (2013) (**"**The fraud-on-the-market theory…recogniz[es] a

19 rebuttable presumption of classwide reliance on public, material misrepresentations when shares

20 are traded in an efficient market.**"**). Second, it includes a discussion of "reckless conduct" that is

21 unnecessary here and not a part of the definition of "knowingly." *See* 15 U.S.C. §§ 78u-4(f); 10(a).

22 It would therefore confuse the jury. Finally, Plaintiff's explanation of apportionment does not

23 properly inform the jury at the beginning that it may assess no responsibility to a given Defendant.

24

25

26

27

28

**Instruction No. 35: Duty to Deliberate [Stipulated]**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Source: Ninth Circuit Model Civil Jury Instruction 3.1; Civil Pretrial Instructions of Judge Chen.

1    **Instruction No. 36: Conduct of the Jury [Stipulated]**

2           Because you must base your verdict only on the evidence received in the case and on these

3    instructions, I remind you that you must not be exposed to any other information about the case or

4    to the issues it involves. Except for discussing the case with your fellow jurors during your

5    deliberations:

6           Do not communicate with anyone in any way and do not let anyone else communicate with

7    you in any way about the merits of the case or anything to do with it. This includes discussing the

8    case in person, in writing, by phone, tablet, computer, or any other means, via email, via text

9    messaging, or any internet chat room, blog, website or application, including but not limited to

10   Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social

11   media. This applies to communicating with your family members, your employer, the media or

12   press, and the people involved in the trial. If you are asked or approached in any way about your

13   jury service or anything about this case, you must respond that you have been ordered not to discuss

14   the matter and to report the contact to the court.

15          Do not read, watch, or listen to any news or media accounts or commentary about the case

16   or anything to do with it[, although I have no information that there will be news reports about this

17   case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other

18   reference materials; and do not make any investigation or in any other way try to learn about the

19   case on your own. Do not visit or view any place discussed in this case, and do not use Internet

20   programs or other devices to search for or view any place discussed during the trial. Also, do not

21   do any research about this case, the law, or the people involved— including the parties, the

22   witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear

23   anything touching on this case in the media, turn away and report it to me as soon as possible.

24          These rules protect each party's right to have this case decided only on evidence that has

25   been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy

26   of their testimony is tested through the trial process. If you do any research or investigation outside

27   the courtroom, or gain any information through improper communications, then your verdict may

28   be influenced by inaccurate, incomplete or misleading information that has not been tested by the

trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings [and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

Source: Ninth Circuit Model Civil Jury Instruction 3.2; Civil Pretrial Instructions of Judge Chen.

**Instruction No. 37: Communication with Court [Stipulated]**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal or bailiff, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

Source: Ninth Circuit Model Civil Jury Instruction 3.3; Civil Pretrial Instructions of Judge Chen.

**Instruction No. 38:  Return of Verdict [Stipulated]**

A verdict form has been prepared for you. [Explain verdict form as needed.] After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

Source: Ninth Circuit Model Civil Jury Instruction 3.5; Civil Pretrial Instructions of Judge Chen.

**Instruction No. 39: Readback and/or Playback of Testimony [Stipulated]**

If during jury deliberations a request is made by the jury or by one or more jurors for a readback of a portion or all of a witness's testimony, and the court in exercising its discretion determines after consultation with the lawyers that a readback should be allowed, the Committee recommends the following admonition be given in open court with both sides present:

Because a request has been made for a [readback] [playback] of the testimony of [witness's name] it is being provided to you, but you are cautioned that all [readbacks] [playbacks] run the risk of distorting the trial because of overemphasis of one portion of the testimony. Therefore, you will be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible. [Because of the length of the testimony of this witness, excerpts will be [read] [played].] The [readback] [playback] could contain errors. The [readback] [playback] cannot reflect matters of demeanor [, tone of voice,] and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony [read] [played] cannot be considered in isolation, but must be considered in the context of all the evidence presented.

Source: Jury Instructions Committee of The Ninth Circuit, A Manual On Jury Trial Procedures § 5.1.C (2013).

**Instruction No. 40: Post-Discharge Instructions [Stipulated]**

Now that the case has been concluded, some of you may have questions about the confidentiality of the proceedings. Now that the case is over, you are free to discuss it with any person you choose. By the same token, however, I would advise you that you are under no obligation whatsoever to discuss this case with any person.

If you do decide to discuss the case with anyone, I would suggest you treat it with a degree of solemnity in that whatever you do decide to say, you would be willing to say in the presence of the other jurors or under oath here in open court in the presence of all the parties.

Always bear in mind that if you do decide to discuss this case, the other jurors fully and freely stated their opinions with the understanding they were being expressed in confidence. Please respect the privacy of the views of the other jurors.

Finally, if you would prefer not to discuss the case with anyone, but are feeling undue pressure to do so, please feel free to contact the courtroom deputy, who will notify me and I will assist.

Source: Ninth Circuit Model Civil Jury Instruction 3.9.

[*Signature blocks on following page*]

Dated: September 20, 2022       Respectfully,

**Levi & Korsinsky, LLP**

*/s/   Adam M. Apton*
Adam M. Apton
aapton@zlk.com
75 Broadway
San Francisco, CA 94111
(415) 373-1671

*Attorneys for Plaintiff*

**Quinn Emanuel Urquhart & Sullivan, LLP**

*/s/   Michael Lifrak*
Michael Lifrak
michaellifrak@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

*Attorneys for Defendants*

Pursuant to Civil Local Rule 5-1(i)(3), all signatories concur in filing this document.

Dated: September 20, 2022       */s/   Adam M. Apton*
                                       Adam M. Apton