Court Ex. 1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JON D. GRUBER, *individually and on behalf of all others similarly situated*,

      Plaintiff,

      -v-

MICHAEL L. REGER,

      Defendant.

16-cv-9727 (JSR)

## THE COURT'S INSTRUCTIONS OF LAW TO THE JURY

- 1 -

## I.  GENERAL INSTRUCTIONS

1.   Duty of the Court
2.   Duty of the Jury
3.   Duty of Impartiality
4.   Burden of Proof
5.   Direct and Circumstantial Evidence
6.   Witness Credibility
7.   Depositions and Remote Testimony
8.   Specialized Testimony
9.   Class Action
10.  Defendant

## II.  LIABILITY

11.  Liability in General
12.  Claim I — Securities Fraud
13.  Claim I. First Element — Material Omission
14.  Claim I. Second Element — Knowingly; Intent to Defraud
15.  Claim I. Third Element — Reliance
16.  Claim I. Fourth Element — Loss Causation
17.  Claim II — Control Person Liability for Dakota Plains' Securities Fraud
18.  Claim II. First Element —Violation by the Company
19.  Claim II. Second Element — Control Person
20.  Claim II. Third Element — Culpable Involvement; Good Faith Defense
21.  Claim III — Insider Trading

## III. DAMAGES

22.  Damages: Claims I and II
23.  Damages: Claim III

## IV. CONCLUDING INSTRUCTIONS

24.  Selection of Foreperson; Right to See Exhibits and Hear Testimony; Communications with the Court
25.  Verdict; Need for Unanimity; Duty to Consult

## I.   GENERAL INSTRUCTIONS

### INSTRUCTION NO. 1

#### Duty of the Court

We are now approaching the most important part of this case, your deliberations. You have heard all the evidence in the case, as well as the final arguments of the lawyers for the parties. Before you retire to deliberate, it is my duty to instruct you as to the law that will govern your deliberations. These are the final and binding instructions, which entirely replace the preliminary instructions I gave you after opening statements, which you should now discard.

Regardless of any opinion that you may have as to what the law may be or ought to be, it is your sworn duty to follow the law as I give it to you. Also, if any attorney or other person has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

Because my instructions cover many points, I have provided each of you with a copy of them so that you can follow them as I read them to you now and so that you can have them with you for reference throughout your deliberations. In listening to them now and reviewing them later, you should consider my instructions as a whole and not single out any particular instruction as alone stating the law.

INSTRUCTION NO. 2

## Duty of the Jury

Your duty is to decide the fact issues in the case and, if you can, arrive at a verdict. You, the members of the jury, are the sole and exclusive judges of the facts. You pass upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you determine them.

In determining the facts, you must rely upon your own recollection of the evidence. To aid your recollection, we will provide you with copies of all the exhibits at the start of your deliberations, along with an index. If you need to review particular items of testimony, we can also arrange to provide them to you.

Please remember that none of what the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions, is evidence. Nor is anything I may have said evidence. The evidence before you consists of just three things: the testimony given by witnesses that was received in evidence, the exhibits that were received in evidence, and the stipulations of the parties as to matters in evidence.

Testimony consists of the answers that were given by the witnesses to the questions that were permitted to be asked, either here in court, remotely by video, or in the depositions that were read into evidence. Please remember that questions, although they may provide the context for answers, are not themselves evidence; only answers are evidence, and you should therefore disregard any question to which I sustained an objection. Also, you may not consider any answer that I directed you to disregard or that I directed be stricken from the record. Likewise, you may

- 4 -

not consider anything you heard about the contents of any exhibit that was not received in evidence.

More generally, please be careful not to speculate about matters not in evidence. Your focus should be solely on the evidence that was permitted at this trial and not on any extraneous matters or speculations.

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Counsel also have the right and the duty to ask the Court to make rulings of law and to request conferences out of the hearing of the jury. All such questions of law must be decided by me. You should not show any prejudice against any attorney or party because the attorney objected to the admissibility of evidence, asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

Finally, I ask you to draw no inference from my rulings or from the fact that on occasion I asked questions of certain witnesses. My rulings were no more than applications of the law and my questions were only intended to clarify or to expedite matters. You should understand that I have no opinion as to the verdict that you should render in this case.

## INSTRUCTION NO. 3

### Duty of Impartiality

You are to perform your duty of finding the facts without bias or prejudice or sympathy or hostility or any preconception whatsoever as to any party, for all parties are equal under the law. You are to perform your final duty in an attitude of complete fairness and impartiality. You are not to be swayed by rhetoric or emotional appeals. It must be clear to you that if you were to let extraneous considerations interfere with your thinking, there would be a risk that you would not arrive at a true and just verdict. So, do not be guided by anything except clear thinking and calm analysis of the evidence.

INSTRUCTION NO. 4

## Burden of Proof

As you know, this is a civil case. In order to prevail in a civil case, a party who is making a claim against another party has what we call the "burden of proof," which is the burden of establishing each of the essential elements of the claim. Here, the plaintiff, Jon Gruber, on behalf of the class of shareholders in Dakota Plains, has brought three claims against the defendant, Michael Reger. I will describe the essential elements of each of those claims shortly, but for now please note that the plaintiff, in order to prevail on a claim, must establish each essential element of that claim by what is called the "preponderance" of the credible evidence. To establish an element of a claim by the "preponderance" of the credible evidence simply means to prove that the element is more likely to be true than not true.

- 7 -

## INSTRUCTION NO. 5

### Direct and Circumstantial Evidence

In deciding whether a party has met its burden of proof, you may consider both direct evidence and circumstantial evidence.

Direct evidence is evidence that proves a fact directly. For example, where a witness testifies to what he or she saw, heard, or observed, that is called direct evidence.

Circumstantial evidence is evidence that tends to prove a fact by proof of other facts. To give a simple example: suppose that when you came into the courthouse today, the sun was shining, and it was a nice day, but the courtroom blinds were drawn, and you could not look outside. Later, as you were sitting here, someone walked in with a dripping wet umbrella, and, soon after, somebody else walked in with a dripping wet raincoat. Now, on our assumed facts, you cannot look outside of the courtroom, and you cannot see whether it is raining, so, you have no direct evidence of that fact. But on the combination of the facts about the umbrella and the raincoat, it would be reasonable for you to infer that it had begun raining.

That is all there is to circumstantial evidence. Using your reason and experience, you infer from established facts the existence or the nonexistence of some other fact. Please note, however, it is not a matter of speculation or guess; it is a matter of logical inference.

The law makes no distinction between direct and circumstantial evidence. Circumstantial evidence is of no less value than direct evidence, and you may consider either or both, and may give them such weight as you conclude is warranted.

- 8 -

INSTRUCTION NO. 6

Witness Credibility

It must be clear to you by now that counsel for the opposing parties are asking you to draw very different conclusions about various factual issues in the case. An important part of that decision will involve making judgments about the testimony of the witnesses you have listened to and observed. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you to decide the truth and the importance of each witness's testimony.

Your decision to believe or to not believe a witness may depend on how that witness impressed you. How did the witness appear to you? Was the witness candid, frank, and forthright, or did the witness seem to be evasive or suspect in some way? How did the way the witness testified on direct examination compare with how the witness testified on cross-examination? Was the witness consistent, or contradictory? Did the witness appear to know what he or she was talking about? Did the witness strike you as someone who was trying to report his or her knowledge accurately? These are examples of the kinds of common-sense questions you should ask yourselves in deciding whether a witness is or is not truthful.

How much you choose to believe a witness may also be influenced by the witness's bias. Does the witness have a relationship with any of the parties that may affect how he or she testified? Does the witness have some interest, incentive, loyalty, or motive that might cause him or her to shade the truth? Does the witness have some bias, prejudice, or hostility that may cause the witness to give you something other than a completely accurate account of the facts he or she testified to?

You should also consider whether the witness had an opportunity to observe the facts he or she testified about, and whether the witness's recollection of the facts stands up in light of the other evidence in the case.

In other words, what you must try to do in deciding credibility is to size up a person just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.

INSTRUCTION NO. 7

Depositions and Remote Testimony

Some of the testimony before you is in the form of excerpts from videotaped depositions that were received in evidence. A deposition is simply a procedure where prior to trial the attorneys may question a witness or a party under oath before a court stenographer. You should consider the deposition testimony received at this trial according to the same standards you would use to evaluate the testimony of a witness given live in court.

In addition, one witness testified remotely by video conference. You should consider this testimony according to the same standards you use to evaluate the testimony of the witnesses who testified here in the courtroom.

## INSTRUCTION NO. 8

### Specialized Testimony

The law permits parties to offer opinion testimony from witnesses who were not involved in the underlying events of the case but who by education or experience have expertise in a specialized area of knowledge. In this case, you have heard testimony from two such witnesses offered by the plaintiff—Steven Thel and Bjorn Steinholt—and one such witness offered by the defendant—Jordan Milev. This specialized testimony is presented to you on the theory that someone who is learned in the field may help you understand technical aspects of the evidence.

However, your role in judging credibility and assessing weight applies equally to these experts as to other witnesses. When you consider the expert opinions that were received in evidence in this case, you may give them as much or as little weight as you think they deserve. For example, an expert witness necessarily bases his or her opinions, in part or in whole, on what the expert was told by others, and you may conclude that the weight given the expert's opinions may be affected by how accurate or inaccurate that underlying information is. More generally, if you find that the opinions of an expert were not based on sufficient data, education, or experience, or if you should conclude that the trustworthiness or credibility of an expert is questionable, or if the opinion of the expert was outweighed, in your judgment, by other evidence in the case, then you may, if you wish, disregard the opinions of the expert, either entirely or in part. On the other hand, if you find that an expert is credible, and that the expert's opinions are based on sufficient data, education, and experience, and that the other evidence does not give you reason to doubt the expert's conclusions, you may, if you wish, rely on that expert's opinions and give them whatever weight you deem appropriate.

- 12 -

INSTRUCTION NO. 9

Class Action

This lawsuit has been brought as a class action. A class action is a lawsuit that has been brought by one or more persons, called class representatives, on behalf of a larger group of people who have similar legal claims, called a class. A class action lawsuit allows the claims of many people to be resolved at the same time, rather than requiring each person to sue separately.

In this case, the class includes all persons or entities who purchased or otherwise acquired common stock in the company Dakota Plains Holdings, Inc. during the period from March 23, 2012, through August 16, 2016. That time period is known as the "class period." Certain shareholders are excluded from the class—for example, the defendant himself and his immediate family members.

At this trial, the class is represented by an individual plaintiff, Jon D. Gruber. You should assess the evidence presented and decide the issues as though Mr. Gruber were presenting this case solely on his own behalf. Therefore, you must not infer anything about the merits of this case simply because it is a class action.

INSTRUCTION NO. 10

Defendant

The defendant in this trial is Michael Reger. The company involved in this matter, known as Dakota Plains, filed for bankruptcy before this lawsuit was initiated, and therefore the plaintiff was prohibited from naming the company as a defendant. In addition, Mr. Ryan Gilbertson and certain officers and directors of Dakota Plains—including Gary Alvord, Timothy Brady, Gabriel Claypool, Paul Cownie, David Fellon, Craig McKenzie, Terry Rust, and Jim Thornton—have entered into proposed settlement agreements with the plaintiff class that are subject to final court approval. Parties settle cases for any of a great many reasons, and therefore you may not draw any inference about any issue in this trial from the fact that someone made a decision to enter a settlement agreement with the class.

## II.   **LIABILITY**

### INSTRUCTION NO. 11

### Liability in General

Let us now turn to the specific claims brought by the plaintiff Jon D. Gruber against the defendant Michael Reger. In assessing any given claim, you must determine, according to my instructions, whether the plaintiff has proved each essential element of that claim by a preponderance of the credible evidence. This is known as establishing "liability." If you find that Mr. Reger is liable on a given claim, then, and only then, will you proceed to consider the issue of damages, that is, how much money Mr. Reger must pay on that claim. In determining whether plaintiff has established Mr. Reger's legal liability on any given claim, you must consider only the proof related to that claim.

## INSTRUCTION NO. 12

### Claim I — Securities Fraud

The plaintiff has brought three claims against Michael Reger that we will consider in turn.

The first claim is that Michael Reger committed securities fraud by intentionally failing to

disclose that he controlled more than 5% of the outstanding shares in the company Dakota Plains.

This claim has four elements, each of which the plaintiff must establish by a preponderance of the

evidence:

> (1) First, that Mr. Reger omitted a material fact he was under a duty to disclose in connection with the purchase or sale of securities.
>
> (2) Second, that Mr. Reger made that omission knowingly and with intent to defraud.
>
> (3) Third, that Mr. Gruber reasonably relied on the absence of the omitted information when purchasing Dakota Plains stock.
>
> (4) Fourth, that Mr. Gruber suffered an economic loss as a result of that reliance.

If, and only if, you find that the plaintiff has established all four of these elements, then

you must find Mr. Reger liable for securities fraud under Claim I. Otherwise, you must find Reger

not-liable on this claim. I will now describe each of these elements in more detail.

INSTRUCTION NO. 13

Claim I. First Element — Material Omission

To satisfy the first element of Claim I, the plaintiff must prove that Mr. Reger made a material omission in connection with the purchase or sale of securities by not filing a required form disclosing that he controlled more than 5% of the shares in Dakota Plains.

Under Section 13(d) of the Securities Exchange Act of 1934, once Dakota Plains became a publicly listed company on March 23, 2012, any person who was directly or indirectly the beneficial owner of more than 5% of the company's voting shares was required to file a form with the U.S. Securities and Exchange Commission (the "S.E.C."), disclosing his identity and the number of shares he owned. For the purposes of these requirements, a "beneficial owner" is anyone who, directly or indirectly, through any understanding, relationship, or otherwise, can vote or sell the shares. When two or more persons or entities act as a "group" for the purpose of acquiring or holding the shares, the group must be treated as a single entity for purposes of this rule, and the holdings must be added together.

Mr. Reger admits that, based on what he now knows, he should have filed this form when Dakota Plains became a public company, and that he failed to do so. The parties are agreed, therefore, that there was an omission in connection with the purchase or sale of securities. They disagree, however, as to whether this omission was "material" and several other essential elements of securities fraud.

An omission is material if there is a substantial likelihood that, if the omitted information had been disclosed, a reasonable investor would have considered that information important in deciding to purchase the stock of Dakota Plains. A fact is important if making it known would have significantly altered the total mix of information about the company made available to the

- 17 -

public. A fact is not material merely because its disclosure is legally required. However, the fact

that a statute or regulation requires disclosure of a fact is evidence supporting the conclusion that

the fact is material.

## INSTRUCTION NO. 14

### Claim I. Second Element — Knowingly; Intent to Defraud

To satisfy the second element of Claim I, the plaintiff must prove that when Mr. Reger made his material omission, he acted knowingly and with an intent to defraud.

To prove that Mr. Reger acted "knowingly," in the context of this case, the plaintiff must prove that Mr. Reger acted with actual knowledge of the facts and circumstances that made his conduct a violation of the securities laws. To prove that Mr. Reger acted with an "intent to defraud," the plaintiff must prove that Mr. Reger intended to obtain money or property by deception.

INSTRUCTION NO. 15

Claim I. Third Element — Reliance

Turning to the third element, known as reliance: if you have already found that the plaintiff has proved the first element, that is, that Mr. Reger failed to disclose his beneficial interest in more than 5% of Dakota Plains stock, and that this was a material omission in that the undisclosed information would have been important to a reasonable investor if it had been disclosed, then a legal presumption arises that investors in Dakota Plains stock, as represented here by Mr. Gruber, would reasonably have acted differently in deciding to purchase the stock if they had known the undisclosed information.

However, Mr. Reger can defeat that presumption if he proves, by a preponderance of the evidence, either that Mr. Gruber's decision to purchase or sell Dakota Plains stock would not have been different even if Mr. Reger had disclosed the omitted fact, or that Mr. Gruber, through minimal diligence, could have discovered the truth. If, however, the defendant fails to carry this burden, you must regard the third element as having been proved in plaintiff's favor.

## INSTRUCTION NO. 16

### Claim I. Fourth Element — Loss Causation

To satisfy the fourth, final element of Claim I, the plaintiff must prove that Mr. Gruber lost money in connection with his investment in Dakota Plains stock and that Mr. Reger's material omission caused this loss. However, even if he lost money on his Dakota Plains investment, Mr. Gruber cannot recover if the loss was caused, not by Mr. Reger's omission, but by other factors.

Here, the plaintiff contends that the true value of Dakota Plains stock was close to zero for the entire relevant period because, if a reasonable investor had known that Mr. Reger had knowingly failed to disclose his substantial interest in Dakota Plains, then no reasonable investor would have purchased the stock at any price whatsoever. If you find that the plaintiff has proved this assertion, then the plaintiff has satisfied the fourth element.

If the plaintiff proves all four elements of its securities fraud claim, then Mr. Reger is liable on Claim I and you must determine the amount of monetary damages to be awarded on that claim. Otherwise, you must find Mr. Reger not-liable on Claim I.

## INSTRUCTION NO. 17

### Claim II — Control Person Liability for Dakota Plains' Securities Fraud

As discussed, Claim I accuses Mr. Reger of purposely committing securities fraud. By contrast, Claim II accuses the company, Dakota Plains, of committing securities fraud, but further claims that Mr. Reger is personally liable for the company's securities fraud because he was a "control person" of Dakota Plains, as I will define that later. In other words, even if you were to find that Reger did not directly violate the securities laws himself, he could still be found liable if you find that he exercised control over Dakota Plains and that he culpably participated in a violation of the securities laws committed by Dakota Plains.

Specifically, to prevail on Claim II, the plaintiff must prove the following three elements by a preponderance of the evidence:

(1) First, that Dakota Plains committed securities fraud;

(2) Second, that Mr. Reger directly or indirectly exerted control over Dakota Plains at the time of the violation; and

(3) Third, that Mr. Reger was a culpable participant in the violation committed by Dakota Plains.

I will now explain each of these three essential elements of Claim II in more detail.

## INSTRUCTION NO. 18

### Claim II. First Element —Violation by the Company

To establish the first essential element of Claim II, the plaintiff must prove that the company, Dakota Plains, committed a securities fraud violation. As you already know from our discussion of Claim I, a securities fraud claim requires a plaintiff to prove, in the context of this case, four elements: material omission, knowledge and intent to defraud, reasonable reliance, and loss causation. The same instructions defining these elements that I gave you in connection with Claim I apply here as well. But here, the claim is that Dakota Plains itself committed securities fraud by failing to disclose in various public filings with the S.E.C. that Mr. Reger was the beneficial owner of more than 5% of the company's stock; that Mr. Reger was a "promoter," that is, a founder of Dakota Plains; that Mr. Reger engaged in related-party transactions with Dakota Plains; and/or that the company's stock price had been manipulated. Any one or more of these omissions will satisfy the first element of securities fraud if you find it was material, as I have previously defined that term.

With respect to the second element of the company's violation, the plaintiff must prove that Dakota Plains made one or more of the foregoing material omissions knowingly and with intent to defraud, or recklessly. I have already defined "knowingly" and "intent to defraud" in connection with Claim I. The company acted "recklessly" if it knew that its failure to disclose a particular fact created an obvious danger of misleading investors in its stock. Since Dakota Plains was a corporation, it could only have acted through the persons who were its agents, such as the corporation's officers and directors. Therefore, to prove that Dakota Plains acted with the required state of mind, the plaintiff must prove the persons responsible for the company's public filings with the S.E.C. made one or more material omissions knowingly or recklessly.

- 23 -

With respect to the third element of the company's violation, that is, reliance, please remember that if you find that an omission was material, then reliance is presumed and that the burden shifts to the defendant to disprove reliance, if he can.

Finally, with respect to the fourth element of the company's violation, Mr. Gruber must prove that one or more of the omissions allegedly made by Dakota Plains caused him to suffer an economic loss. As previously explained, the plaintiff contends, and the defendant disputes, that the true value of Dakota Plains stock was zero, or close thereto, for the entire relevant period. The defendant, by contrast, contends that any loss in Mr. Gruber's investment was caused by other factors.

## INSTRUCTION NO. 19

### Claim II. Second Element — Control Person

To establish the second essential element of Claim II, the plaintiff must prove that Mr. Reger acted as a "control person" at the time of the violation.

Under the federal securities laws, a "control person" is an individual who possessed, directly or indirectly, the power to direct the management or policies of a company, in this case Dakota Plains. This power may be exercised through the ownership of voting securities or otherwise. When considering whether Mr. Reger controlled Dakota Plains, you may consider, among other things, factors such as his role in relation to the company, his attendance or participation in meetings of or discussions among the company's directors or executives, and actions he took or directed on the company's behalf.

INSTRUCTION NO. 20

Claim II. Third Element — Culpable Involvement; Good Faith Defense

To establish the third essential element of Claim II, the plaintiff must prove that Reger was, in some meaningful sense, a culpable participant in the primary violation allegedly committed by Dakota Plains. To prove this, the plaintiff must show that Reger knew, or reasonably should have known, that Dakota Plains was engaging in the fraudulent or deceptive conduct described in the first element.

If you find that the plaintiff has established all three essential elements of Claim II, you must then consider Mr. Reger's additional defense that he acted in good faith and did not, for a bad purpose, directly or indirectly cause Dakota Plains to undertake the acts that constituted the alleged securities fraud violation.

INSTRUCTION NO. 21

Claim III — Insider Trading


Claim III alleges that Mr. Reger violated federal securities law by violating a rule against so-called "insider trading," which prohibits a company insider from misusing a company's confidential information to sell the stock of that company for his own benefit. In order to establish that Mr. Reger is liable for insider trading, the plaintiff must prove the following three elements:

(1) First, that Mr. Reger knowingly and with intent to defraud sold Dakota Plains stock on the basis of material, non-public information that he obtained by virtue of his position as a corporate insider;

(2) Second, that Mr. Gruber made a purchase of Dakota Plains stock around the same time as Reger's insider selling; and

(3) Third, that the plaintiff suffered damages as a result.

With respect to the <u>first element</u>, the plaintiff must prove that Mr. Reger knowingly and with intent to defraud sold stock in Dakota Plains on the basis of material, non-public information about the company—specifically the information that either Mr. Reger or Dakota Plains allegedly failed to disclose as described in Claims I or II—and that Mr. Reger obtained that information by virtue of being an insider. Information is "<u>material</u>" if there is a substantial likelihood that a reasonable investor would consider it to be important when deciding whether to buy the stock. A fact is important if making it known would have significantly altered the total mix of information about the company made available to the public. Information is "<u>non-public</u>" if it is not generally available to the public, either through required securities filings or otherwise. When an insider obtains material, nonpublic information about a company, the law requires that the information be used only for a valid, corporate purpose, and the law prohibits that person from using that information to buy or sell stock for his personal benefit. To establish that Mr. Reger was an

"insider" of Dakota Plains, and therefore that he had a duty not to trade on material, non-public information obtained from the company, the plaintiff must prove that Mr. Reger had a relationship of trust and confidence with Dakota Plains, even if he did not have a formal title or role at the company. Therefore, to establish that Mr. Reger is liable for insider trading, the plaintiff must prove that Mr. Reger traded "on the basis of" the material, nonpublic information that he obtained as an insider, meaning he used that information to decide whether to buy or sell shares.

With respect to the second element, the plaintiff, Mr. Gruber, must prove that he purchased Dakota Plains stock within a few days of Mr. Reger's insider selling.

Finally, for the third element, the plaintiff must prove that Mr. Reger's allegedly improper trading caused Mr. Gruber to lose money. The plaintiff can make that showing by proving that the insider selling caused Mr. Gruber to purchase stock at higher prices than he otherwise would have. The plaintiff is not required to show that the insider trading is the reason why the market price of the shares later went down.

- 28 -

### III.  DAMAGES

INSTRUCTION NO. 22

Damages: Claims I and II

If you find that the plaintiff has proved all the essential elements of either Claim I or Claim II, or both, then you must consider the question of "damages," that is, the amount of money to be awarded to the plaintiff on that claim or claims. The plaintiff bears the burden of proving each item of damages by a preponderance of the credible evidence.

Generally speaking, an injured party is entitled to recover from a liable party the sum of money that will justly and fairly compensate the injured party for injuries that were proximately caused by the misconduct of that defendant. An injury is "proximately caused" by the misconduct of the liable party if that misconduct was a substantial factor in causing the injury.

For Claims I and II, the proper amount of damages is the difference between the market value of what the plaintiff, Mr. Gruber, paid on the date he purchased Dakota Plains stock, and the fair market value of what he would have paid if there had been no material omission. You will be asked to express the amount of damages you award, if any, not as a dollar amount but as a percentage of the price of the stock, reflecting the amount by which the alleged fraud inflated the value of the stock. That way, the percentage can be used to determine damages for other members of the plaintiff class, which the Court will do, rather than you.

As previously explained, the plaintiff contends that the true value of Dakota Plains stock was zero, or close thereto, for the entire relevant period because, if Mr. Reger's alleged fraud had been disclosed to the market, no reasonable investor would have purchased the stock at any price whatsoever. In other words, the plaintiff contends that the alleged fraudulent inflation of the stock

price was 100% through the entire period. Mr. Reger, by contrast, contends that there was no fraudulent inflation at any point during the relevant period.

If you have determined that Mr. Reger is liable on either Claim I or Claim II, or both, then you must determine whether the amount of fraudulent inflation is 100%, as the plaintiff contends; 0%, as Reger contends; or some number in-between. Also note that you may find either that the percent price inflation was constant over the relevant period, or that the price inflation varied over the relevant time.

INSTRUCTION NO. 23

Damages: Claim III

If you find that the plaintiff has proved all the essential elements of Claim III, then you must consider the question of damages that you will award to the plaintiff on Claim III. As a reminder, the plaintiff bears the burden of proving by a preponderance of the credible evidence the amount that will reasonably and fairly compensate the plaintiff for any economic losses you find that he sustained as a result of Mr. Reger's alleged insider selling.

The proper amount of damages on Claim III is measured by the difference between the price at which Mr. Reger allegedly sold the stock based on material, non-public information and the price at which the stock would have traded on that day if the material, non-public information had been publicly disclosed. Once again, however, you will be asked to express the amount of damages that you award, if any, as a percentage by which you find that the stock price was inflated. That way, it can be extrapolated by the Court to the other members of the plaintiff class.

The total amount of damages for insider trading may not exceed the loss the defendant avoided in the transactions that are the subject of the violation. Therefore, if you find Mr. Reger liable for insider trading, you must also find the total amount of his loss avoided, and enter that amount on the verdict form.

## IV.  **CONCLUDING INSTRUCTIONS**

### INSTRUCTION NO. 24

### Selection of Foreperson; Right to See Exhibits and Hear Testimony; Communications with the Court

You will shortly retire to the jury room to begin your deliberations. As soon as you get to the jury room, please select one of your number as the foreperson to preside over your deliberations and to serve as your spokesperson if you need to communicate with the Court.

You will be bringing with you into the jury room a copy of my instructions of law and a verdict form on which to record your verdict. In addition, we will send into the jury room all the exhibits that were admitted into evidence. If you want any of the testimony, that can also be provided. But please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting portions of testimony.

Any of your requests, in fact any communication with the Court, should be made to me in writing, signed by your foreperson, and given to the marshal, who will be available outside the jury room throughout your deliberations. After consulting with counsel, I will respond to any question or request you have as promptly as possible, either in writing or by having you return to the courtroom so that I can speak with you in person.

INSTRUCTION NO. 25

Verdict; Need for Unanimity; Duty to Consult

You should not, however, tell me or anyone else how the jury stands on any issue until you have reached your verdict and recorded it on your verdict form.

Each of you must decide the case for yourself, after consideration, with your fellow jurors, of the evidence in the case, and your verdict must be unanimous. In deliberating, bear in mind that while each juror is entitled to his or her opinion, you should exchange views with your fellow jurors. That is the very purpose of jury deliberation — to discuss and consider the evidence; to listen to the arguments of fellow jurors; to present your individual views; to consult with one another; and to reach a verdict based solely and wholly on the evidence.

If, after carefully considering all the evidence and the arguments of your fellow jurors, you entertain a conscientious view that differs from the others', you are not to yield your view simply because you are outnumbered. On the other hand, you should not hesitate to change or modify an earlier opinion that, after discussion with your fellow jurors, now appears to you erroneous.

In short, your verdict must reflect your individual views and it must also be unanimous.

This completes my instructions of law.