1

**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
        amccall@zlk.com

2

3

4

5

6

*Attorneys for Plaintiff and Counsel for the Class*

7

[Additional Counsel on Signature Block]

8

9

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

10

11

IN RE TESLA, INC. SECURITIES
LITIGATION

Case No. 3:18-cv-04865-EMC

12

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE*
NO. 4 TO EXCLUDE EVIDENCE
REGARDING THE SEC
COMPLAINTS AND SETTLEMENTS**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO.4 TO EXCLUDE EVIDENCE REGARDING THE SEC COMPLAINTS AND SETTLEMENTS

CASE NO. 3:18-CV-04865-EMC

## I.      INTRODUCTION

Defendants' Motion in Limine No. 4 seeking to exclude evidence of the Securities & Exchange Commission complaints and settlements with Elon Musk and Tesla, Inc. ignores the significance of the Court's award of partial summary judgment in Plaintiff's favor on the issues of falsity and scienter. Defendants are concerned that if the jury learns of the SEC's complaints and settlements, they will infer wrongdoing merely from these facts. However, as this Court has already established that the primary statements/omissions at issue in the SEC investigation and complaint were false and made with the requisite scienter, Defendants do not explain how the jury will be confused or misled by learning of the SEC complaints and settlement. Instead, it appears Defendants wish to exclude the SEC complaints and settlements as part of their tactic of undermining and contradicting the Court's partial summary judgment order at every opportunity. As the SEC investigation itself is conceded by Defendants to be relevant to loss causation and damages, the existence of an SEC investigation and the timing of disclosures about it is relevant to the primary issue apparently remaining to the jury. As the jury will inevitably learn of the SEC investigation, it would be confusing and artificial for the jury to be kept in the dark about its conclusion. While Defendants proposed that this be dealt with by an appropriate jury instruction, this is unnecessary when the risk of confusion and prejudice from learning of the SEC complaint and settlement is effectively *de minimis.* Defendants' motion should be denied.[1]

## II.      ARGUMENT

### A.      Evidence of the SEC Investigation, Complaints, and Settlements is Highly Relevant to Elements of Causation and Damages.

Defendants are correct to concede that evidence of the SEC investigation is relevant to both loss causation and damages and, therefore, is admissible at trial.

"To be admissible, evidence must be relevant under Fed. R. Evid. 402 and its probative

---

[1] In the event that the Court does grant the motion in whole or in part, Plaintiff agrees that a specific jury instruction would be appropriate.

1  value must not be substantially outweighed by the danger of unfair prejudice under Fed. R.

2  Evid. 403." *Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1019 (9th Cir.

3  2004). A motion *in limine* "should be granted only if the evidence is clearly not admissible for

4  any purpose." *Langer v. Kiser*, 495 F. Supp. 3d 904, 909 (S.D. Cal. 2020). If evidence is not

5  clearly inadmissible, evidentiary ruling should be deferred until trial to allow questions of

6  foundation, relevancy, and prejudice to be resolved in context. *Id.* citing *United States v.*

7  *Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999). Courts deny such motions when they are

8  overbroad and seek to exclude all references to other proceedings. *See In re Homestore.com,*

9  *Inc.,* 2011 WL 291176, at *13 (C.D. Cal. Jan. 25, 2011); *Lopez v. Chula Vista Police*

10  *Dept.,* 2010 WL 6850154, at *7 (S.D. Cal. Feb. 12, 2010).  Courts also deny such motions when

11  a settlement agreement could be used for other purposes besides liability.  *Brocklesby v. United*

12  *States*, 767 F.2d 1288, 1292-93 (9th Cir. 1985); *Gunchick v. Fed. Ins. Co.,* 2015 WL 1781467,

13  at *2 (C.D. Cal. Apr. 20, 2015); *Double Zero Inc. v. Harvest Textile Corp.*, 2015 WL 12781048,

14  at *2 (C.D. Cal. June 25, 2015). Here, the SEC's investigation, complaints, and settlements are

15  not being used to prove liability, but are integral to Plaintiff's causation and damages

16  arguments.

17  Plaintiff's expert, Dr. Michael Hartzmark examined the price movements in Tesla

18  securities over the eight trading days from the close of trading on August 7, 2018 through the

19  close of trading on August 17, 2018. Ex. 375 at ¶¶36-39, 65. His analysis shows that the market

20  was absorbing information regarding the going-private transaction, including information

21  questioning the truth of Defendants' representations, throughout the Class period. One

22  important piece of information was the news that the SEC had rapidly opened an investigation

23  into the circumstances around Elon Musk's August 7, 2018 tweets. Dr. Hartzmark found stark

24  evidence that the market immediately reacted to this news that was announced during the

25  morning of August 8, 2018. On that day, Tesla's share price opened at $369.09 but then quickly

26  increased to $382.64 at approximately 10:10 a.m., an increase of its prior close of $379.57 on

27  August 7, 2018. Tesla's stock price then declined following news reports that the SEC was

28

probing Tesla over Musk's August 7, 2018 tweets. *see Id.* at ¶¶78-88. On Thursday, August 9, 2018, Tesla's share price opened at $365.55, a 1.3% decline from the prior day close of $370.34, and further declined to close at $352.45 on reports that the SEC probe was intensifying. *see Id.* at ¶¶89-93. On Wednesday, August 15, 2018, Tesla's share price opened at $341.91, a 1.6% decrease from the prior day close of $347.64. *see Id.* at ¶¶115-120. Thereafter, the stock price declined further to close at $338.69 on reports that the SEC had issued a subpoena to Tesla and news that the SEC probe was now a formal investigation regarding the Musk Tweets. *Id.* at ¶115.   Dr. Hartzmark cited news articles and analyst commentary in addition to minute-by-minute intraday trading data to show that news regarding the SEC's investigation of the August 7, 2018 was an important part of the total mix of information that he identified as affecting Tesla's share price during the Class Period. *see Id.* at ¶¶ 88, 92, 119.

In his report, Dr. Hartzmark noted that increased legal and regulatory scrutiny and risk, including investigations by the SEC, have been identified as negatively affecting a company's stock price and, therefore, harming investors. *see Id.* at ¶46. Such harm is a direct and foreseeable consequence of making material misrepresentations that are subsequently revealed to be false. *Id.* at ¶4.  He refers to these foreseeable consequences as the "Consequential Harm." *Id.*  The negative effects of the prices of Tesla securities following the public revelation of details of the SEC investigation, which ultimately result in the SEC's complaints and settlements, are powerful evidence of the Consequential Harm of Defendants' fraud. After the SEC complaint filed against Musk on September 27, 2018, analyst commentary was negative especially because the SEC was pursuing barring Elon Musk from acting as an officer or director of any public companies in the future. *Id.* at ¶142. Tesla's common stock price decreased 13.90%, from a close of $307.52 per share on September 27, 2018 to a close of $264.77 per share on September 28, 2018 on volume of 33.6 million shares, which was 4.1 times the average volume during the 120 trading days prior to the start of the Class Period. *Id.* at ¶144.  After the news on Saturday, September 29, 2018 that Musk and Tesla had settled with the SEC, analyst commentary was positive though noting risks remain elevated. *Id.* at ¶143.Tesla's

common stock price increased 17.35%, from a close of $264.77 per share on Friday, September 28, 2018 to a close of $310.70 per share on Monday, October 1, 2018 on volume of 21.8 million shares, which was 2.6 times the average volume during the 120 trading days prior to the start of the Class Period. *Id.* at ¶145.  These stock price movements are relevant to the potential impact of SEC investigations and litigation on the price of Tesla securities and rebut any attempt by Defendants to attribute movements in the prices of Tesla securities during the Class Period to news and developments that are less directly related to the August 7, 2018 tweets. Excluding this evidence thus would prejudice Plaintiff's causation and damages arguments.

## B.     Evidence of the SEC Settlements is Admissible Under FRE 408(b)

Rule 408 does not bar the use of settlement agreements for purposes other than proving or disproving the validity or the amount of a disputed claim. 408(b) allows the court to admit such evidence for another purpose, explicitly identifies proof of bias as a permissible purpose. *See Brocklesby*, 767 F.2d at 1292-93 (9th Cir. 1985) (affirming admission of settlement agreement as relevant to credibility); *S.E.C. v. Retail Pro, Inc.,* 2011 Wl 589828, at *6 (S.D. Cal. Fed. 10, 2011) (noting that the parties could introduce evidence of consent decrees to rebut specific witness testimony); *S.E.C. v. Conaway,* 698 F. Supp 2d 711, 867 (E.D. Mich. 2010)("In discounting testimony, the jury could also consider [witnesses'] potential bias because he had for four years been a co-defendant and he settled with the SEC a month before trial because he 'just had enough.'").

 Moreover, while Rule 408 does bar the introduction of settlement-related evidence "to impeach by a prior inconsistent statement or a contradiction," it only bars this single form of impeachment known as "specific contradiction." 23 Fed. Prac. & Proc. Evid. § 5314.1 (1st ed.). It does not otherwise bar settlement-related evidence to impeach a witness by other means, such as by showing bias. *Id.* Cross-examination of witnesses may make the settlement agreement relevant to a witness's bias or credibility.  Contrary to Defendants' assertions, Plaintiff can establish that the SEC settlement falls within this exception, particularly with respect to Musk's credibility and bias against short sellers. The complaints and settlements are also further

evidence of Musk's bias towards short sellers and provide relevant and necessary context to certain tweets. On October 4, 2018, just days following the settlement with the SEC, Musk tweeted:



Ex. FF. This demonstrates that Musk associated his August 2018 statements, the subject of the SEC's complaints and settlement, with short sellers and that his statements were a deliberate attempt to "burn" short sellers and cause them financial harm. *See* Ex. GG at ¶162. This also occurred during the PSLRA's 90 day "look back" period, which also directly affects any potential award of damages that a plaintiff can be awarded. *See* 15 U.S.C. § 78u-4(e). Plaintiff should be permitted to use the settlement agreements for any purpose, including bias or credibility, not prohibited by Rule 408(a).

## C.    Evidence of the SEC Complaint is Admissible Pursuant to FRE 803(8)(A)(iii)

The SEC's complaints may be admissible pursuant to Federal Rule of Evidence 803(8)(A)(iii) as a record or statement of a public office as factual findings from a legally authorized investigation. *See United States v. Gluk,* 831 F.3d 608, 614 (5th Cir. 2016) (SEC's "clawback complaint" admissible under Rule 803(8)(A)(iii)); *See also Meyer v. Ward*, 2017 WL 1862626, at *3 (N.D. Ill. May 9, 2017)(admitting SEC order instituting proceedings); *Abrams v. Van Kampen Funds, Inc.*, 2005 U.S. Dist. LEXIS 531, at *56-62, 2005 WL 88973 (N.D. Ill. Jan. 12, 2005) (admitting under Rule 803(8) SEC letters issued following an SEC inspection of funds); *S.E.C. v. Pentagon Capital Mgmt.* PLC, 2010 WL 985205, at *5 (S.D.N.Y. Mar. 17, 2010); *Option Resource Group v. Chambers Development Co.*, 967 F. Supp. 846, 851 (W. D. Pa. 1996).

**D.      The Probative Value of the Evidence is Not Substantially Outweighed by the Danger of Unfair Prejudice to the Defendants.**

Federal Rule of Evidence 403 requires a party to show that the probative value of evidence is substantially outweighed by the danger of "unfair prejudice," which means "an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Advisory Committee Notes; *see also United States v. Allen,* 341 F.3d 870, 886 (9th Cir. 2003). Defendants' motion fails to identify any potential inference the jury may draw from the SEC complaints and settlements that would constitute unfair prejudice.

The only prejudice Defendants point to is the risk that the jury might conclude from the SEC complaints and settlements that Elon Musk actually issued false tweets with scienter. *See* Motion at 6. Yet in its summary judgment order, the Court has already found that the evidence has conclusively established these facts and will instruct the jury that it is obliged to accept these conclusions. Therefore, any additional prejudice that might result to Defendants following such instruction by the Court resulting from reference to the SEC complaints and settlements is virtually non-existent. Defendants also argue that they would also have to litigate against "the SEC's unproven and now-dismissed claims" as well as Plaintiff's claims at trial. Yet, Plaintiff's claims are virtually identical to the SEC claims with regard to the August 7, 2018 tweets and the Court has found that these claims are largely conclusively proven as a matter of law. There are no additional factual issues unique to the SEC complaints that would require some superfluous mini-trial.

Defendants' citation to *Grave v. Apple* is unpersuasive. 2020 WL 227404, at *2 (N.D. Cal. Jan 15, 2020). In *Apple,* the Court precluded evidence of prior litigation because the procedural history involved four district court trials and three appeals. *Id.* at *3. Addressing a two-month investigation and three or four documents relating to the same occurrences covered in the Complaint will not confuse the issues, create undue delay, or waste time.

The probative value of the SEC's investigation, complaints, and settlements with

1   appropriate limiting instructions far outweighs any potential prejudice to Defendants, especially

2   considering the Court's Order granting Plaintiff partial-summary judgment. Excluding this and

3   other similar testimony from the jury will unfairly prejudice Plaintiff by preventing him from

4   presenting his damages theory at trial, unjustly hampering his ability to prove his case.

5        Defendants' suggestion of exclusion of evidence of the SEC complaints and settlement

6   combined with a limiting jury instruction creates the risk of jury confusion and unnecessarily

7   complicating the Court's task of instructing the jury. Given how minimal any potential

8   prejudice to Defendants that would result from reference to the SEC complaints and settlement,

9   the Court should simply permit evidence regarding the SEC complaint and settlement to be

10  admitted.[2]

11  **III.    CONCLUSION**

12        For the foregoing reasons, Defendants' motion *in limine* to preclude any and all

13  reference to the SEC settlement and complaints should be denied.

14

15  Dated: September 20, 2022                    Respectfully submitted,

16

17                                              **LEVI & KORSINSKY, LLP**

18                                               s/ Adam M. Apton
                                                Adam M. Apton (SBN 316506)
19                                              Adam C. McCall (SBN 302130)
                                                75 Broadway, Suite 202
20                                              San Francisco, CA 94111
                                                Tel.: (415) 373-1671
21                                              Email: aapton@zlk.com
                                                Email: amccall@zlk.com
22

23                                              -and-

24

_____

25  [2] If the Court is concerned over even the minimal prejudice that might result from reference to
    the SEC complaints and settlement, a suitable limiting instruction that the facts that an SEC
26  complaint was filed and a settlement reached should not cause the jury to infer that Musk or
    Tesla admitted to violating the federal securities laws.
27

28

Nicholas I. Porritt
Elizabeth K. Tripodi
Alexander A. Krot III
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel.: (202) 524-4290
Email: nporritt@zlk.com
Email: akrot@zlk.com
(admitted pro hac vice)

-and-

Joseph Levi
Eduard Korsinsky
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Email: jlevi@zlk.com
Email: ek@zlk.com
(admitted pro hac vice)
Attorneys for Plaintiff and Counsel for the Class

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION *IN LIMINE* NO.4 TO EXCLUDE EVIDENCE
REGARDING THE SEC COMPLAINTS AND
SETTLEMENT

8

CASE NO. 3:18-CV-04865-EMC