**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
         amccall@zlk.com

*Attorneys for Plaintiff and Counsel for the Class*

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**PLAINTIFF'S MOTION *IN LIMINE* NO. 2 TO PRECLUDE AT TRIAL TESTIMONY, OPINION, AND EVIDENCE BY DEFENDANTS' EXPERTS NOT CONTAINED IN THEIR WRITTEN REPORTS** |

## I.     INTRODUCTION

Plaintiff Glen Littleton moves to preclude Defendants from introducing at trial any testimony, opinion, or evidence of their experts, Mr. Daniel Fischel and Professor Amit Seru, that was previously undisclosed. This includes Mr. Fischel's anticipated testimony that Defendants' alleged misstatements and omissions were immaterial and other arguments rebutting Plaintiff's experts' opinions concerning damages on Tesla options and the market for Tesla options as a result of Elon Musk's August 7, 2018 tweets.

## II.    BACKGROUND

On November 8, 2021, Defendants produced their only opening expert report, a 17-page report titled the Report of Daniel Fischel ("Fischel Report" (Ex. 378)). In this report, Mr. Fischel presented opinions in support of his conclusions that: (i) "Mr. Musk's actions were consistent with his prior-stated interest in taking Tesla private and in protecting investors who believed in his vision;" (ii) "[i]t was reasonable to believe that the proposed transaction would have been funded if it moved forward"; (iii) "[t]he $420 potential offer price was reasonable"; and (iv) "[n]either Mr. Musk nor the other Defendants benefited from the alleged fraud." Ex. 378 at ¶11. There is no mention of "materiality" or damages or the market for Tesla stock options in the Fischel Report.

Following the submission of Plaintiff's opening expert reports, Defendants produced the 25-page Rebuttal Report of Daniel Fischel ("Fischel Rebuttal Report" (Ex. 423)) and the Expert Rebuttal Report of Professor Amit Seru (Ex. 370)[1] on December 8, 2021.

In the Fischel Rebuttal Report, Mr. Fischel opined that Dr. Hartzmark's opinions on damages were purportedly flawed for: failing to isolate the effect of the purportedly true statements from the alleged false statements; ignoring market participants' understanding that Musk's going private proposal lacked details and was uncertain, and that Tesla's stock price

---

[1] Professor Seru's opinions were limited solely to options on Tesla common stock, specifically seeking to rebut the soundness of Professor Heston's methodology for calculating counterfactual option values. *See, e.g.,* Ex. 370 at ¶8.

1  increased on August 13, 2018; mistakenly focusing on the August 17, 2018 article published in
2  *The New York Time*s; and using flawed estimates of damages for Tesla notes. Ex. 423 at ¶5. Mr.
3  Fischel also opined in his Rebuttal Report that there was substantial uncertainty about whether
4  short sellers of Tesla stock made or lost money, and that Plaintiffs' experts, Professors Mitts and
5  Subramanian, did not opine on issues at dispute in the action. *Id.* Like the Fischel Report, the
6  Fischel Rebuttal Report neither discussed the immateriality of the alleged misstatements and
7  omissions nor the market for options on Tesla common stock or the damages on these options.

8  **III.   ARGUMENT**

9      **A. Rules 26(a)(2) and 37(c)(1) of the Federal Rules of Civil Procedure Preclude
10      Defendants' Experts from Presenting Opinions, Testimony and Evidence on
11      Matters Not Contained in their Reports.**

12      Federal Rule of Civil Procedure 26(a)(2)(A) requires a litigant in federal court to disclose
13  the identity of every witness from whom the party intends to offer expert opinion testimony under
14  Federal Rule of Evidence Rule 702 and produce an expert witness report containing the detailed
15  information specified in Federal Rule of Civil Procedure Rule 26(a)(2)(B). As to the content of
16  an expert's written report, Rule 26(a)(2)(B) requires that "the report must contain: (i) a complete
17  statement of all opinions the witness will express and the basis and reasons for them; (ii) the data
18  or other information considered by the witness in forming them; (iii) any exhibits that will be
19  used to summarize or support them; …" FED. R. CIV. P. 26(a)(2)(B). The purpose of this rule was
20  to require that any proposed expert witness "must prepare a detailed and complete report, stating
21  the testimony the witness is expected to present during direct examination, together with the
22  reasons therefor." FED. R. CIV. P. 26, 1993 ADVISORY COMMITTEE NOTES, Subdivision (a),
23  Paragraph (2).

24      "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any
25  information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly,*
26  *Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *R & R Sails, Inc. v. Ins. Co.*
27  *of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012) ("Rule 37(c)(1) 'forbid[s] the use at trial of
28  any information required to be disclosed by Rule 26(a) that is not properly disclosed.'").

Specifically, Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) [ ... ], the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Absent the failure to disclose being substantially justified or harmless, "[t]he exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1)...." *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.,* 388 F.3d 976, 983 (6th Cir. 2004); *United Nat. Maint., Inc. v. San Diego Convention Ctr. Corp.*, No. 07-CV-2172-AJB, 2011 WL 672799, at *2 (S.D. Cal. Feb. 18, 2011) ("As amended in 1993, this rule provides for automatic exclusion of expert information that was not disclosed despite the existence of an independent duty to disclose under Rule 26(a) and 26(e)(1).").

1. **The Court Should Preclude Prof. Fischel from Presenting Testimony and Opinions at Trial Concerning the Immateriality of the Alleged Misstatements and Omissions and Concerning Tesla Options.**

The Fischel Report and the Fischel Rebuttal Report are silent as to the immateriality of any of the alleged misstatements and omissions.[2] Likewise, there is no discussion or opinion offered by Prof. Fischel regarding the market for Tesla stock options or any damages suffered by options investors.[3] Prof. Fischel's reports thus provide no indication that he was offering opinions as to the materiality or the immateriality of any of the alleged misstatements and omissions. Indeed, during his deposition, when confronted with questions about whether the alleged misstatements and omissions were material, Prof. Fischel agreed with Plaintiff's expert and conceded that they were. Specifically, Mr. Fischel admitted that Musk's tweets were "clearly material". Ex. Q at 39:18-40:2. Specifically, with regard to the two tweets on which the Court

---

[2] The words "immaterial", "material", and "materiality" do not appear anywhere in these reports except when paraphrasing Plaintiff's allegations and the report of Plaintiff's expert, Dr. Michael Hartzmark. Specifically, the Fischel Rebuttal Report noted that Plaintiff alleged that "Musk's false and materially misleading statements on August 7, 2018 were part of his efforts to harm short sellers of Tesla stock." (Ex. 432 at ¶33) and that "Dr. Hartzmark states that he was asked to: (1) opine on the economic materiality of the alleged false and misleading statements" (*id.* at ¶3).

[3] Mr. Fischel's sole reference to Tesla options is contained in a quote he takes from Dr. Hartmark's report and occurs as part of Prof. Fischel's discussion of damages for Tesla stock not options. *See* Ex. 423 at ¶32.

1    entered summary judgment in favor of Plaintiff, Professor Fischel believes the 12:48 p.m. tweet
2    "certainly was material" and the 3:36 p.m. tweet was "new information in the sense that it resulted
3    in a huge price increase, a statistically significant price increase, on that day." *Id*. at 57:22-58:5
4    ("funding secured") and *Id.* at 141:11-142:2 ("Investor support is confirmed"). Even after Musk's
5    and Tesla's August 13, 2018 blogpost, Professor Fischel believes that the August 7, 2018 tweets
6    "were still part of the total mix of information that was present on August 13th … I would say
7    they're material." *Id*. at 201:16-202:14. Indeed, Professor Fischel believes the impact of Musk's
8    August 7, 2018 tweets persisted all the way to August 17, 2018 and the market reaction following
9    Musk's *New York Times* interview. When asked if there was a connection between the stock price
10   reaction seen on August 17, 2018 and the Musk August 7, 2018 tweets, Professor Fischel
11   unambiguously replied: "yes, I think there's a connection because the August 17th interview that
12   Musk gave comes into context of the events that were occurring at the time, which include the
13   August 7th tweet – or tweets. So, yes, I think there's that connection." *Id*. at 160:17-161:2.

14          Given this unambiguous testimony, Prof. Fischel should not be permitted to change his
15   testimony at trial in an effort to walk back his prior conclusions and introduce opinions and
16   testimony to the contrary.

17          Furthermore, during his deposition, Plaintiff was surprised to learn for the first time that
18   Prof. Fischel intended to offer opinions concerning the market for Tesla stock options and the
19   damages suffered by option investors. *Id.* at 13:5-10 (Q "Do you plan to offer any opinions
20   regarding the market for Tesla options?" to which Prof. Fischel responded "I certainly plan to talk
21   about the market for Tesla options"). Prof. Fischel continued to explain throughout his deposition
22   that he was prepared to offer other opinions on Tesla options, including regarding the
23   informational efficiency of the market for Tesla options during the Class period (*Id.* at 13:15-
24   14:10) and as to damages on Tesla options (*see e.g., id.* at 211:25-212:6).

25          As set forth above, such opinions as well as any reasons do not appear in either of the
26   reports Prof. Fischel has submitted in this proceeding. When asked to refer to where in his reports
27   certain of his previously undisclosed options opinions appeared, Prof. Fischel referred the
28   examiner to Section 2E of his Rebuttal Report. *Id.* at 211:25-216:17. Prof. Fischel, however, later

1  admitted that such "section is just about short sellers", that it did not state anything about option
2  traders, and attempted to extend the report's language plain meaning by stating: "But I -- what
3  I'm saying is, the same considerations that are described in Section 2E also apply to option holders
4  and the differential affect of a price movement on option holders, whether they're holding all
5  options or put options." *Id.* at 216:18-217:16. Mr. Fischel also conceded that the word "options"
6  was not in any of the four paragraphs (Ex. 423 at ¶¶32-26) of Section 2E. Ex. Q at 221:2-15.
7  Thus, in sum, Mr. Fischel was unable to articulate with any specificity the additional opinions
8  about Tesla options that he claimed to have.

9  Given the materiality of the August 7th tweets has already been at the forefront of the
10 motion for summary judgment and an early motion *in limine*, it is apparent that allowing
11 testimony on opinions undisclosed in Mr. Fischel's written reports concerning their materiality
12 could have significant impact on the case. Likewise, any previously undisclosed opinions
13 regarding the amount of damages suffered by Tesla option investors, which are anticipated to be
14 a significant portion of the overall damages in the action, may significantly impact the action and
15 Plaintiff's case.

16 Plaintiff has readied his case for trial on the evidentiary record as it exists. Accordingly,
17 any untimely introduction of evidence would be highly prejudicial to Plaintiff. Simply put,
18 Plaintiff and the Class would be significantly harmed if the jury was permitted to hear
19 unsupported testimony on undisclosed opinions on highly contested aspects of Plaintiff's claims.
20 Given these facts, Defendants cannot show that allowing these opinions outside of their reports
21 is harmless or justifiable. *See Thissel v. Murphy*, No. 15-CV-05937-RS, 2017 WL 2462316, at *3
22 (N.D. Cal. June 7, 2017) (finding failures to disclose damages and to provide a computation of
23 damages as not substantially harmless or justifiable, including for failing to ask to reopen
24 discovery to present opinions); *2-Way Computing, Inc. v. Sprint Sols., Inc.*, No. 2:11-CV-12 JCM
25 PAL, 2015 WL 1932173, at *3-5 (D. Nev. Apr. 28, 2015) (granting motion *in limine* finding
26 opinions not in report as not justifiable or harmless).

27 Pursuant to Rule 37(c)(1), Prof. Fischel should be precluded from introducing testimony,
28 opinions, or evidence on the immateriality of the alleged misstatements and omissions at trial or

on the market for or damages associated with Tesla stock options. "Because Rule 26(a)(2)(B) requires that a report provide 'a complete statement of the opinions a witness will present,' [as] testimony of opinions **outside** of that Report would be inappropriate." *XPays, Inc. v. Internet Com. Grp., Inc.*, No. CV0605688DDPFFMX, 2009 WL 10671981, at *4 (C.D. Cal. Mar. 4, 2009) (precluding expert from testifying on "costs of a new customer or member acquisition" despite report indicating that expert had knowledge on the subject); *Mariscal*, 52 F. Supp. 3d at 983; *2-Way Computing*, 2015 WL 1932173, at *2-5.[4]

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion *in limine* should be granted and Defendants' experts should be precluded from introducing any evidence, testimony, opinion, or argument at trial that was not timely disclosed and/or unsupported by facts in the record, including specifically for Prof. Fischel, opinions regarding: (i) the immateriality of the alleged misstatements and omissions; and (ii) options on Tesla common stock.

Dated: September 20, 2022                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 s/ Adam M. Apton
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

-and-

---

[4] *See also Northlake Mktg. & Supply, Inc. v. Glaverbel, S.A.,* No. 92 C 2732, 1996 WL 732828, at *2 (N.D. Ill. Dec. 17, 1996) (granting motion *in limine* to exclude expert from testifying on matters not set out in his initial report noting that it is "[i]nappropriate for an expert to try to beef up his or her opinion with second thoughts after he or she has already been deposed in connection with the detailed report of his or her opinions." ); *O2 Micro Int'l Ltd. V. Monolithic Power Sys., Inc*., 467 F.3d 1355, 1368-69 (Fed. Cir. 2006) (affirming district court's exclusion of expert opinions concerning matters not disclosed in the opening expert reports).

Nicholas I. Porritt
Elizabeth K. Tripodi
Alexander A. Krot III
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel.: (202) 524-4290
Email: nporritt@zlk.com
Email: akrot@zlk.com
(*admitted pro hac vice*)

-and-

Joseph Levi
Eduard Korsinsky
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Email: jlevi@zlk.com
Email: ek@zlk.com
(admitted pro hac vice)

*Attorneys for Plaintiff and Counsel for the Class*