QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (appearing *pro hac vice*)
  alexspiro@quinnemanuel.com
  Andrew J. Rossman (appearing *pro hac vice*)
  andrewrossman@quinnemanuel.com
  Ellyde R. Thompson (appearing *pro hac vice*)
  ellydethompson@quinnemanuel.com
  Jesse Bernstein (*pro hac vice* forthcoming)
  jessebernstein@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

  Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
  Kyle Batter (Bar No. 301803)
  kylebatter@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendants Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 2 TO PRECLUDE TESTIMONY, OPINION, AND EVIDENCE BY DEFENDANTS' EXPERTS** |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ................................................................................................................................ 2

I.    PROFESSOR FISCHEL'S REBUTTAL REPORT OFFERS OPINIONS AND ANALYSIS DIRECTLY RELEVANT TO MATERIALITY .............................................. 2

II.    PLAINTIFF'S MISCHARACTERIZATION OF PROFESSOR FISCHEL'S DEPOSITION TESTIMONY IS AS INCORRECT AS IT IS IRRELEVANT .................... 4

III.    PROFESSOR FISCHEL'S CRITICISM OF DR. HARTZMARK'S DAMAGES METHODOLOGIES APPLIES IN THE CONTEXT OF OPTIONS DAMAGES .............. 6

CONCLUSION ............................................................................................................................. 7

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) .................................................................................................................. 3

*Carvelli v. Ocwen Fin. Corp.*,
    934 F.3d 1307 (11th Cir. 2019) ................................................................................................. 3

*Mariscal v. Graco, Inc.*,
    52 F. Supp. 3d 973 (N.D. Cal. 2014) ........................................................................................ 4

*Rowe Entm't, Inc. v. William Morris Agency, Inc.*,
    2003 WL 22124991 (S.D.N.Y. Sept. 15, 2003) ........................................................................ 7

*Tarapara v. K12 Inc.*,
    2017 WL 3727112 (N.D. Cal. Aug. 30, 2017) .......................................................................... 3

*Thissel v. Murphy*,
    2017 WL 2462316 (N.D. Cal. June 7, 2017) ............................................................................ 4

*XPays, Inc. v. Internet Comm. Grp., Inc.*,
    2009 WL 10671981 (C.D. Cal. Mar. 4, 2009) .......................................................................... 4

**Rules**

Fed. R. Evid. 702 ............................................................................................................................. 4, 7

**PRELIMINARY STATEMENT**

In his second motion *in limine*, Plaintiff essentially seeks to re-litigate his first, which this Court already has denied. Styled as a motion to preclude "testimony, opinion, and evidence by Defendants' experts not contained in their written reports," Plaintiff's motion is, in actuality, another effort to restrict the jury's ability to consider evidence relevant to a disputed issue: whether Mr. Musk made materially false statements under the securities laws. Like Plaintiff's previous motion *in limine* to preclude any "evidence, opinion, [or] argument of immateriality," this re-run should be denied, as should Plaintiff's equally hollow argument to prevent criticism of his experts' unrealistic damages opinions.

In arguing that Professor Daniel Fischel's rebuttal report is "silent" as to materiality, Plaintiff ignores what Professor Fischel wrote and said. As Plaintiff's own motion acknowledges, Professor Fischel offered opinions and analyses that bear directly on whether the alleged misstatements were material. These include Professor Fischel's criticism of Dr. Hartzmark for failing to analyze the impact of Mr. Musk's indisputably true statements versus his allegedly false statements; the significant market uncertainty about the meaning of the alleged misrepresentations; the hard evidence that "funding secured" was not a material misstatement, as revealed by the lack of stock-price reaction to Mr. Musk's August 13 blog post; and Professor Fischel's opinion that there is evidence indicating Tesla's stock price would have increased even without the alleged misrepresentations. All of those opinions are probative of whether the alleged false statements altered the total mix of information available to investors.

Plaintiff's attempt to twist Professor Fischel's deposition testimony into a dispositive concession on materiality does not change this. Plaintiff tried the same tactic in his early motion *in limine*, and it fares no better here. Professor Fischel testified to the uncontroversial notion that statements announcing a potential major corporate-control transaction for a public company are, generally speaking, material. But he also made crystal clear that Plaintiff and his experts have done nothing to demonstrate that the ***allegedly false*** statements in this case were material. In any event, whether or not Professor Fischel admitted to Plaintiff's false premise at deposition is no basis to exclude or restrict his testimony at trial. Cross-examination is the solution for any trial testimony

Plaintiff believes is inconsistent with Professor Fischel's deposition testimony.

Plaintiff also seeks to stifle criticism of the speculative and unreliable options-damages opinions offered by Dr. Hartzmark and Professor Heston with the argument that he can't find the word "options" in Professor Fischel's report. Plaintiff again ignores the substance. In his rebuttal report, Professor Fischel criticized Dr. Hartzmark's use of unreliable and hypothetical price data—rather than actual market data—that results in overstated artificial inflation for purposes of calculating damages in Tesla's notes. That criticism applies with equal force to Dr. Hartzmark's and Professor Heston's options-damages calculations, in which they also ignored real-world price data.

At bottom, Plaintiff's motion is his latest effort to avoid unavoidable holes in his theory that Defendants violated the securities laws. It depends on an inherently superficial premise—that because Professor Fischel does not use the words "material," "materiality," or "options" in his written report, he should not be able to utter those words on the stand at trial or explain how his opinions are relevant to the jury's assessment of materiality and damages. The Court should deny the motion.[1]

## ARGUMENT

### I. PROFESSOR FISCHEL'S REBUTTAL REPORT OFFERS OPINIONS AND ANALYSIS DIRECTLY RELEVANT TO MATERIALITY

Contrary to Plaintiff's arguments, Professor Fischel has offered several expert opinions that will assist the jury in deciding whether any alleged false statements were material.

*First*, he opined that "Dr. Hartzmark's analysis of alleged damages is fundamentally flawed from the outset because he makes no attempt to isolate the effect of the allegedly false information from the uncontested true statement that Mr. Musk was considering taking Tesla private at $420 per share." (Ex. 423 at ¶¶ 5, 9-14.) Dr. Hartzmark's failure to isolate the market impact of the allegedly

---

[1] Plaintiff's motion purports to also apply to Defendants' expert Professor Amit Seru. (Mot. at 1.) But Plaintiff identifies no purported undisclosed opinions or testimony by Professor Seru that he expects Defendants to introduce at trial; his motion instead focuses entirely on Professor Fischel. Thus, the Court should deny Plaintiff's motion as to Professor Seru because there is no ripe dispute.

false statements is relevant to whether Plaintiff can prove materiality because "immaterial misrepresentations and omissions" do "not affect … stock price[s] in an efficient market." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 464 (2013) (quotations omitted and alterations in original).

*Second*, Professor Fischel opined that "Dr. Hartzmark ignores that Tesla's stock price increased rather than decreased on August 13, 2018 when Mr. Musk elaborated upon his 'funding secured' statement." (Ex. 423 at ¶¶ 5, 23-24.)  The jury could infer that this evidence tends to prove either that "funding secured" did not impact the market at all—including because no one knew what the two-word, tweeted statement meant in the first place—or that the market's understanding of "funding secured" was not materially different than the details Mr. Musk disclosed on August 13.  Either supports the conclusion that the statement was not a material falsehood.  *See Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1320 n.6 (11th Cir. 2019) ("materiality inquiry includes consideration of the context in which a statement was made and the circumstances in which a reasonable investor would have heard it"); *Tarapara v. K12 Inc.*, 2017 WL 3727112, at *15 (N.D. Cal. Aug. 30, 2017) (statement not materially misleading "unless it affirmatively creates an impression of a state of affairs that differs in a material way from the one that actually exists") (quotations omitted).

*Third*, Professor Fischel opined that "Dr. Hartzmark ignores the fact that market participants understood from the beginning that Mr. Musk's proposal lacked details and was uncertain."  (Ex. 423 at ¶ 5.)  Specifically, Professor Fischel cites to extensive evidence demonstrating that the meaning of Mr. Musk's August 7 tweets differed depending on which analyst was asked, and the only seeming consensus was that their meaning was vague and uncertain.  (*Id.* at ¶¶ 15-22.)  From this, the jury could infer that the uncertain meaning of the alleged false statements prevented them from having a market impact and rendered them immaterial.  *Amgen*, 568 U.S. at 464.

*Finally*, Professor Fischel explains in his Rebuttal Report that "it is reasonable to believe that the Company's stock price still would have increased" even without the alleged misrepresentations.  (Ex. 423 at ¶ 35; *id.* at ¶ 13.)  This is, of course, another way of saying it is reasonable to believe that the alleged misrepresentations had no material impact.

All of these disclosed opinions respond directly to Dr. Hartzmark's opinions on the "economic materiality" of the statements, as well as his opinions on loss causation. (*See generally id.* at §§ II.A-E (refuting many of Dr. Hartzmark's assertions in support of economic materiality, which Dr. Hartzmark discusses in pars. 47-145 of his report, Exhibit 375).) Plaintiff thus has no basis to argue that Professor Fischel cannot testify to the immateriality of the statements. His argument elevates form over substance, and his cited authorities do not support his position. For example, *Thissel v. Murphy*, 2017 WL 2462316 (N.D. Cal. June 7, 2017), did not involve expert disclosures at all; it involved the plaintiffs' failure to provide a damages computation in their initial disclosures. In *XPays, Inc. v. Internet Comm. Grp., Inc.*, 2009 WL 10671981 (C.D. Cal. Mar. 4, 2009), the expert was permitted to testify to most of the opinions in his report, with the only exceptions being those where the court was not convinced the expert was qualified or had sufficient factual basis for his opinions under FRE 702. *See id.* at *4-5. Here, Plaintiff has made no FRE 702 arguments for the exclusion of any of Professor Fischel's opinions; he only argues (misleadingly) that Professor Fischel does not use the magic word in his opinions and that he has already conceded materiality at his deposition. And *Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973 (N.D. Cal. 2014), was a case where the plaintiff's expert submitted a report and then, as part of the plaintiff's opposition to summary judgment, submitted a belated second report that "substantially enlarged the scope" of the expert's opinions to include brand new theories of product defects and inadequate warnings. *See id.* at 981-84. That case, too, is a far cry from the facts here.

## II. PLAINTIFF'S MISCHARACTERIZATION OF PROFESSOR FISCHEL'S DEPOSITION TESTIMONY IS AS INCORRECT AS IT IS IRRELEVANT

Setting aside Plaintiff's complaint that the word "materiality" does not appear in Professor Fischel's reports (Mot. at 3 n.2), Plaintiff focuses his argument entirely on mischaracterizing Professor Fischel's deposition testimony into an admission he never made (*id.* at 3-4). This argument was also a theme in Plaintiff's unsuccessful early motion *in limine* to preclude **any** evidence or arguments that the at-issue statements were immaterial. (*See* Dkt. 448 at 6-7.) It has not become any more meritorious in the month and a half since the Court denied the first motion.

Professor Fischel's testimony was clear: he believes that Mr. Musk's August 7, 2018 statements about the potential transaction to take Tesla private, **when assessed together**, were material given the observable price increase on that day. This of course includes the first and most important of Mr. Musk's statements—"Am considering taking tesla private at 420"—which was indisputably a true statement.

> **Q.** Now, regarding the public statements of Mr. Musk during the class period, are you offering any opinion regarding the materiality of any of those statements?
>
> **A.** · Well, I think I've already said that the -- the August 7th and the other disclosures on August 7th, following the tweet but during trading hours, *those statements collectively* were clearly material in terms of the price increase that resulted.
>
> . . . .
>
> I would say *all of that information about the proposal itself* that Mr. Musk was considering and then the analysis of that proposal over time, you know, I would say all of that was material in the sense that, *taken together*, that was material information to investors . . . .
>
> [T]he *entire statement* ["Am considering taking Tesla private at 420. Funding secured."] certainly was material in the way that many *truthful* statements about possible corporate control transactions are typically material . . . .

(Ex. H at 39:18-40:2, 42:17-22, 58:1-5 (emphases added).) Professor Fischel was equally clear that he had seen no evidence that the allegedly false statements by Mr. Musk were themselves material.

> **A.** . . . . [T]here's no basis to conclude that any of that price reaction [on August 7] was the product of a price increase attributable to a *materially false and misleading statement* . . . .
>
> [T]here's no economic evidence that a different disclosure [than "Funding secured"] would have resulted in a different stock price . . . .
>
> Dr. Hartzmark presents no basis for showing that that alternative hypothetical disclosure would have had any different effect. Or for that matter, wouldn't have had a more positive effect than the actual disclosure, which occurred on August 7th.

(*Id.* at 34:12-15, 56:4-6; 57:16-21 (emphasis added); *see also id.* at 101:2-102:20 (similar).) Instead of providing the Court with an accurate summary of the sworn testimony, Plaintiff extracts the

phrase "clearly material" from the context in which it was said and argues disingenuously that Professor Fischel has conceded Mr. Musk made materially false statements. He did no such thing.

Yet, while Defendants are compelled to correct Plaintiff's misleading characterization of the record, it ultimately does not matter. Plaintiff's argument that Professor Fischel "should not be permitted to change his testimony at trial" (Mot. at 4) identifies no legal basis to exclude or dictate the substance of any trial testimony. If a witness's trial testimony is inconsistent with a prior statement, Plaintiff may cross-examine the witness about that inconsistency. That is part of the process in every trial. If Plaintiff believes Professor Fischel has already admitted that Mr. Musk's allegedly false statements were material, Plaintiff can attempt to cross-examine Professor Fischel on that point, just as he attempted to do at deposition. Instead, Plaintiff wastes most of his second motion *in limine* making arguments that he should be making to the jury.

### III. PROFESSOR FISCHEL'S CRITICISM OF DR. HARTZMARK'S DAMAGES METHODOLOGIES APPLIES IN THE CONTEXT OF OPTIONS DAMAGES

Professor Fischel explains in his Rebuttal Report that Dr. Hartzmark's estimation of artificial inflation for Tesla's Notes is "fundamentally flawed" because he fails to use "actual transaction prices" in Tesla Notes as the baseline for his analysis. (*See* Ex. 423 § II.F.) This approach renders Dr. Hartzmark's damages conclusion speculative and unreliable because Dr. Hartzmark's theoretical transaction prices differed from actual transaction prices during the class period. (*Id.* ¶ 38.) According to Professor Fischel, Dr. Hartzmark's analysis thus contains "an upward bias" that artificially increases purported damages for class members. (*Id.*)

The same basic flaw is inherent in Dr. Hartzmark's (and Professor Heston's) analysis of purported damages to Tesla options holders. In Defendants' motion *in limine* no. 5, Defendants explain that Professor Heston's methodology—upon which Dr. Hartzmark relies—is "fundamentally flawed" because he "did not rely on actual market prices for the overwhelming majority of Tesla options traded during the class period" and instead "calculated theoretical prices for only 17 theoretical Tesla instruments and then applied them to over 2,400 different Tesla options with markedly different strike prices, maturities, and moneyness." (Defs' MIL No. 5 at 2-5.) Like Dr. Hartzmark's approach to damages for Tesla Notes, the fake price data that both Dr. Hartzmark

and Professor Heston use for options damages again creates an upward bias and, in some cases, results in the impossible scenario of damages that exceed class members' investments. (*Id.* at 4-5.)

The reason that Professor Fischel's criticism applies to Plaintiff's damages analysis for both Tesla notes and options is simple: an expert is expected to rely on sufficient, accurate data in forming expert opinions. *See* Fed. R. Evid. 702; *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 2003 WL 22124991, at *4 (S.D.N.Y. Sept. 15, 2003) (An "analysis is only as good as the data upon which it rests.") (quotations omitted). Both Dr. Hartzmark and Professor Heston rely on unrealistic and inaccurate data in forming their opinions on damages to purchasers of Tesla notes and options. Professor Fischel describes this analytical flaw in his Rebuttal Report and explained at his deposition that a more reliable and scientifically sound approach for calculating options damages would have been to conduct an event study. (Ex. H at 13:15-14:10.) It is thus entirely appropriate for Professor Fischel to criticize Dr. Hartzmark's methodology for calculating damages to options holders as unrealistic, inconsistent with standard practice in similar cases, and upwardly biased due to Dr. Hartzmark's use of artificial price data rather than the readily available actual market data.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion *in limine* no. 2.

DATED: September 20, 2022         Respectfully submitted,

                                         QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                         By: */s/ Alex Spiro*
                                               Alex Spiro (appearing *pro hac vice*)

                                               *Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice*