**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
        amccall@zlk.com

*Attorneys for Plaintiff and Counsel for the Class*

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**PLAINTIFF'S MOTION *IN LIMINE* NO. 3 TO PRECLUDE EVIDENCE OR TESTIMONY FROM ELON MUSK THAT CONTRADICTS THE COURT'S ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

## I.      INTRODUCTION

Plaintiff moves for an Order precluding Defendants from arguing or introducing into evidence at trial, documents or testimony from Elon Musk that relate to subjects that contradict this Court's Order Granting in Part Plaintiff's Motion for Summary Judgment (Ex. U). This includes evidence or testimony suggesting that Mr. Musk's August 7, 2018, tweets, "Am considering taking Tesla private at $420. Funding secured." and "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote." were true, that Mr. Musk believed them to be true, or that Mr. Musk did not act with scienter or reckless disregard as to the falsity of the statements.

As the falsity and scienter of Mr. Musk's August 7, 2018 statements are no longer in dispute because of the Court's Summary Judgment Order, any evidence or testimony regarding the truth of the statements or Mr. Musk's state of mind when making the tweets are irrelevant to the remaining elements of Plaintiff's claims. Additionally, allowing Defendants to argue or introduce evidence or testimony that contradicts this Court's Summary Judgment Order would create a high risk of juror confusion, invite the jury to draw impermissible inferences, and would lead to a "mini-trial" on a collateral issue that has already been decided by the court and waste time. Accordingly, any limited probative value of the evidence or testimony of Mr. Musk would be substantially outweighed by the risk of undue prejudice.

Therefore, Plaintiff's motion to exclude evidence or testimony of Mr. Musk that contradicts the Court's Summary Judgment Order should be granted.

## II.     SUMMARY JUDGMENT ORDER

On April 1, 2022, this Court Granted in Part Plaintiff's Motion for Partial Summary Judgment. In pertinent part, the Court held that Plaintiff "is entitled to partial summary judgment with respect to the falsity of the phrase 'Funding secured.'", "that a reasonable jury could reach only one conclusion – *i.e.*, that Mr. Musk recklessly tweeted to the public that funding was secured.", and that "[t]here is no dispute that, at the time of the tweet, Mr. Musk knew all of the facts relating to Tesla's interaction with the PIF." Ex. R at 26.  Additionally, in finding that Mr. Musk acted with scienter, the Court "afford[ed] no weight to Mr. Musk's statement in his blog

1  post of 8/13/2018 that he used the phrase 'Funding secured' because he 'left the July 31st meeting

2  with no question that a deal with the Saudi sovereign fund could be closed, and that it was just a

3  matter of getting the process moving.'" *Id.*

4    The Court also granted Plaintiff's motion for summary judgment with respect to Mr.

5  Musk's August 7, 2018, tweet: "Investor support is confirmed. Only reason why this is not certain

6  is that it's contingent on a shareholder vote." In pertinent part, the Court held that "no reasonable

7  [jury] could conclude that support from the Saudi PIF was confirmed given the preliminary nature

8  of the discussions between the PIF and Tesla. In addition, a reasonable jury could reach only one

9  conclusion regarding scienter: that Mr. Musk made his statement recklessly." *Id.* at 27.

10    Further, with respect to the statement, "Only reason why this is not certain is that it's

11  contingent on a shareholder vote.", the Court held:

12    Accordingly, the Court finds that no reasonable jury could find the statement
accurate and not misleading as there were, in fact, a number of contingencies that

13  had to be addressed before the matter could reach a shareholder vote, including but
not limited to the laundry list of items identified by Mr. Littleton: to wit, a

14  determination of the terms and structure to take Tesla private and investor
agreement therewith, the hiring of financial and legal advisors, a formal proposal

15  for the Board to review, a negotiation with independent directors, the preparation
of legal and financial analysis and documentation, the signing of an agreement, the

16  hiring of proxy advisors, and the filing of regulatory approvals. To the extent
Defendants contend Mr. Musk's blog post of 8/13/2018 provided information about

17  contingencies, that argument is beside the point – at least for purposes of the
summary judgment motion. At this juncture, Mr. Littleton is simply asserting that

18  the statement at issue was false at the time it was made. *See* Reply at 12.

19

20  Finally, as above, the scienter analysis follows the falsity analysis. No reasonable
jury could find that Mr. Musk did not act recklessly given his clear knowledge of

21  the discussions that took place at the 7/31/2018 meeting.

22  *Id.* at 29.

23    Accordingly, the falsity and scienter of the above tweets have already been determined and

24  are no longer at issue at trial.

25  **III.**  **DEFENDANTS RELY ON MUSK'S TESTIMONY THAT CONTRADICTS**

26     **THE SUMMARY JUDGMENT ORDER**

27    Mr. Musk and Defendants have argued that "Elon Musk's August 7, 2018, tweet informing

28  the public that he was considering taking Tesla private was entirely truthful . . . Mr. Musk was

considering taking Tesla private at $420 a share.  Funding *was* secured.  There *was* investor support. These conclusions are supported by extensive contemporaneous evidence, including discussions with Saudi Arabia's sovereign wealth fund (the "PIF") and Tesla's Board, as well as the undisputed fact that there was sufficient funding for a go-private transaction, from the PIF or otherwise." Ex. S at 1. Defendants further argue that Mr. Musk's statements were an effort to be open about a potential go-private transaction and to provide equal information to all Tesla shareholders. *Id*. The Court has determined that no reasonable juror would accept these arguments based on the evidential record. Nevertheless, despite the clear record evidence to the contrary, Mr. Musk continues to assert in his deposition testimony and in other public statements that his August 7, 2018 tweets were not false. Indeed, he made these statements even after the Court's Summary Judgment Order.

In his deposition testimony from November 5, 2021, Mr. Musk stated, for instance, that he has a "very sound basis" for tweeting on August 7, 2018 that he had "funding secured" for a going-private transaction. Ex. T at 255:3-4. Mr. Musk also testified that by August 7, 2018 he had confirmed "a lot of investor support". *Id*. at 217:12-24.[1]  In his related litigation with the SEC, Mr. Musk filed a Declaration dated March 7, 2022 in which he positively stated that "funding *was* secured" and that "there *was* investor support." Ex. U, at ¶3.  Mr. Musk went on to say "the SEC's unrelenting regulatory pressure, combined with the attendant collateral consequence of the SEC's complaint against me, caused a scenario in which I was forced to sign the consent decree in 2018" and that "I never lied to shareholders. I would never lie to shareholders. I entered into the consent decree for the survival of Tesla, for the sake of its shareholders." *Id*. at ¶9. Further, on April 14, 2022, ***after*** he had received this Court's Summary Judgment Order, Mr. Musk stated in an interview in Vancouver, Canada that "funding was actually secured – I want to be clear about that – in fact that gives me a good opportunity to clarify that – and funding was indeed secured" before going on to refer to the SEC as "bastards" and claiming that he settled with the agency only because they had a "gun to [his] child's head" and was "forced to admit that [he] lied . . . to save Tesla's

---

[1] *See also Id.* at 92:12-22; 99:17-100:5; 100:9-103:15; 107:18-108:1; 109:14-110:7; 113:4-7; 215:2-217:24; 221:2-14.

1   life and that's the only reason." Ex. V. Additionally, Defendants have indicated that they intend to

2   call Mr. Musk as a witness to "testify regarding, among other things, ***the statements at issue in***

3   ***this case and background related thereto***; facts related to the materiality of the statements

4   challenged by Plaintiff, and to whether those statements altered the total mix of information

5   available, ***including relative to the events that took place between July 31, 2018 and August 17,***

6   ***2018***; the potential go-private transaction and communications related thereto".  Ex. W.

7        Defendants' arguments, Mr. Musk's testimony, and subsequent statements indicate that he

8   intends to directly contradict the Court's Summary Judgment Order finding that his August 7, 2018

9   tweets were false and made with scienter. This would confuse and mislead the jury regarding the

10  issues remaining in this action and Defendants should be precluded from presenting them at trial.

11  ## IV.  ARGUMENT

12       "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than

13  it would be without the evidence; ***and*** (b) the fact is of consequence in determining the action."

14  Fed. R. Evid. 401 (emphasis added). "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

15  Mr. Musk's testimony regarding the truth of the August 7, 2018, tweets or to his state of mind

16  when he tweeted, has no bearing on whether the August 7, 2018 tweets were material, whether

17  investors relied on those tweets, or whether the tweets caused any Tesla investor to suffer losses.

18  For example, Mr. Musk's subjective belief as to the truth of the August 7, 2018 tweets, something

19  this Court has determined should be given no weight, has no bearing on how investors interpreted

20  and reacted to the tweet, the relevant inquiry for Materiality, reliance, and loss causation.

21  Therefore, the sole purpose of Mr. Musk's testimony relating to events prior to August 7, 2018,

22  is to argue that the August 7, 2018, tweets were true or that Mr. Musk believed them to be true.

23  Accordingly, Musk's testimony relating to the attached subjects are of no "consequence in

24  determining the action" (Fed. R. Evid. 401), and Defendants should be precluded from offering

25  any testimony that contradicts this Court's Summary Judgment Order, including that the August

26  7, 2018, tweets were true, that Mr. Musk believed them to be true, or that Mr. Musk did not act

27  recklessly. *See Bob Barker Co. v. Ferguson Safety Prod., Inc.,* No. C 04-04813 JW, 2007 WL

28  4554012, at *1 (N.D. Cal. Dec. 4, 2007) (granting motion *in limine* "to disregard evidence

1    probative of breach as it relates to issues already decided on summary judgment"); *Mag*

2    *Instrument, Inc. v. Dollar Tree Stores Inc.*, No. CV 03-6215 RSWL SHX, 2005 WL 5957825, at

3    *1 (C.D. Cal. Apr. 14, 2005) (granting motion *in limine* to preclude an affirmative defense

4    because "this issue has already been decided . . . at the time of summary judgment on the

5    affirmative defenses").

6         Even if the Court decides that testimony that contradicts the Court's Summary Judgment

7    Order is relevant, "[t]he court may exclude relevant evidence if its probative value is substantially

8    outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, . . . [or]

9    wasting time . . . .". Fed. R. Evid. 403. Mr. Musk's evidence or testimony that contradicts the

10   Court's Summary Judgment Order would confuse and mislead the jury as to the remaining issues

11   in this case. *See Ohio Six Ltd. v. Motel 6 Operating L.P.*, No. CV 11-08102 MMM (EX), 2013

12   WL 12125747, at *10 (C.D. Cal. Aug. 7, 2013) (refusing to allow a party to offer testimony "that

13   is at odds with the undisputed evidence adduced at summary judgment and that represents a

14   subjective belief" and finding that allowing contradictory testimony "would create a high risk of

15   juror confusion and invite the jury to draw impermissible inferences.").

16        Additionally, if Defendants were allowed to offer Mr. Musk's testimony that contradicts

17   the Court's Summary Judgment Order, Plaintiff would want to introduce evidence to rebut

18   Defendants' evidence; "this would lead to a mini-trial on a collateral issue that has already been

19   decided by the court, and waste time." *Id.* (citing *United States v. Jones*, 123 Fed. Appx. 773, 775

20   (9th Cir. Feb. 14, 2005) (Unpub. Disp.) (holding that it was proper to exclude evidence under

21   Rule 403 that gave rise to a "danger of confusing the issues and wasting time with mini-trials");

22   *Miranda v. U.S. Sec. Assocs., Inc.*, No. 18-CV-00734-LHK, 2019 WL 2929966, at *3 (N.D. Cal.

23   July 8, 2019) ("exclud[ing] all evidence contradicting the Court's finding at summary judgment"

24   because "[a]llowing Defendant to relitigate the issue at trial 'would have no probative value, and

25   would merely waste time.'"); *Magadia v. Wal-Mart Assocs., Inc.*, No. 17-CV-00062-LHK, 2018

26   WL 6003376, at *2 (N.D. Cal. Nov. 15, 2018) (granting motion *in limine* because "the Court has

27   already ruled on these matters in its summary judgment orders," thus "testimony on these issues

28   would have no probative value, and would merely waste time").

Further, "[a]llowing the [contradictory] evidence [or testimony] would invite the jury to reevaluate issues decided by the court at the summary judgment stage, and might ultimately result in the jury inappropriately circumventing the court's summary judgment order." *Ohio Six*, 2013 WL 12125747, at *10. Accordingly, "the limited probative value of the evidence would be substantially outweighed by the risk of undue prejudice." *Id*; *Chevron TCI, Inc. v. Capitol House Hotel Manager, LLC*, No. CV 18-00776-BAJ-RLB, 2021 WL 2638036, at *6 (M.D. La. June 25, 2021) (refusing to allow testimony "regarding issues already resolved by the Court" in its summary judgment order); *Borges v. City of Hollister*, No. C03-05670 HRL, 2005 WL 6019704, at *3 (N.D. Cal. Aug. 24, 2005) (prohibiting evidence that contradicted summary judgment order).

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion for an Order excluding evidence and testimony that contradicts the Court's Summary Judgment Order.

Dated: September 20, 2022                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 s/ Adam M. Apton
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

-and-

Nicholas I. Porritt
Elizabeth K. Tripodi
Alexander A. Krot III
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel.: (202) 524-4290
Email: nporritt@zlk.com
Email: akrot@zlk.com
(*admitted pro hac vice*)

-and-

Joseph Levi
Eduard Korsinsky
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Email: jlevi@zlk.com
Email: ek@zlk.com
(*admitted pro hac vice*)

*Attorneys for Plaintiff and Counsel for the Class*