**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
        amccall@zlk.com

*Attorneys for Plaintiff and Counsel for the Class*

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**PLAINTIFF'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE IRRELEVANT AND DUPLICATIVE EVIDENCE RE: FALSITY OR SCIENTER FOR AUGUST 7, 2018 TWEETS** |
|---|---|

## I. INTRODUCTION

The Court's order on summary judgment has unquestionably narrowed the trial that will take place in this action. Elon Musk's tweets on August 7, 2018—specifically, "Am considering take Tesla private at $420. Funding secured." and "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote."—were "false" and "reckless[]." Ex. R, at 32-33. Thus, having already established these elements of the Rule 10b-5 claim, Plaintiff seeks to preclude Defendants from introducing any evidence or testimony at trial that would dispute these factual findings or otherwise cause a jury to question the Court's holding.

Federal Rule of Evidence 402 states that only "[r]elevant evidence is admissible." Evidence is "relevant" if it "has any tendency to make a fact more or less probable than it would be without the evidence" *and* "the fact is of consequence in determining the action." FED. R. EVID. 401. Given the Court's holding on summary judgment, Defendants' evidence concerning the "falsity" of the August 7, 2018 tweets or Musk's "scienter" when making them has zero "consequence in determining the action." Admitting any evidence or testimony concerning these topics would only risk confusion to the jury and prejudice to Plaintiff's case at trial. Consequently, Defendants should be precluded from introducing evidence and testimony on these topics, including but not limited to testimony from Sam Teller and any representatives of the Saudi PIF. *See* FED. R. EVID. 403; *Miranda v. U.S. Sec. Assocs., Inc.*, No. 18-CV-00734-LHK, 2019 WL 2929966, at *3 (N.D. Cal. July 8, 2019) ("exclud[ing] all evidence contradicting the Court's finding at summary judgment" because "[a]llowing Defendant to relitigate the issue at trial 'would have no probative value, and would merely waste time.'"); *Magadia v. Wal-Mart Assocs., Inc.*, No. 17-CV-00062-LHK, 2018 WL 6003376, at *2 (N.D. Cal. Nov. 15, 2018) (granting motion *in limine* because "the Court has already ruled on these matters in its summary judgment orders," thus "testimony on these issues would have no probative value, and would merely waste time"); *Ohio Six Ltd. v. Motel 6 Operating L.P.*, No. CV 11-08102 MMM (EX), 2013 WL 12125747, at *10 (C.D. Cal. Aug. 7, 2013) (precluding testimony that was "at odds with the undisputed evidence adduced at summary judgment" and would have "create[d] a high risk of

jury confusion and invite the jury to draw impermissible inferences").

II.   ARGUMENT

  A.   **Defendants Intend to Introduce Evidence and Testimony that Contradicts the Court's Partial Summary Judgment Order and Disputes the Falsity and Scienter of the August 7, 2018 Tweets.**

Defendants' trial witness list and deposition designations indicate that they intend to introduce evidence and testimony at trial that directly contradicts the Court's partial summary judgment order, and is no longer of consequence given the Court's order. For example, Sam Teller, who served as Elon Musk's Director of the Office of the CEO, is slated to testify for approximately 1.5 hours on the issue of "materiality" and "the potential go-private transaction and communications related thereto." Ex. W at 2. However, despite Defendants' attempt to make Teller's testimony relevant, Teller's testimony does not match with Defendants' disclosure.

Teller's testimony as shown by his deposition and testimony before the Securities & Exchange Commission is limited to his participation in meetings and other conversations where Elon Musk attempted to "secure" funding for the go-private transaction both before and after August 7, 2018. This includes communications that occurred by and between Musk and the Saudi PIF during the July 31, 2018 meeting as well as Musk and his financial and legal advisors in the lead up to the August 7, 2018 tweets. Thus, the substance of Mr. Teller's testimony is narrow and limited only to the factual issue of whether Musk had "secured" funding for the go-private transaction. Given that this issue has already been decided at summary judgment, there is no basis to admit Mr. Teller's testimony at trial because it will be of no "consequence in determining the action." *See Ohio Six Ltd.*, 2013 WL 12125747, at *10. Equally importantly, this testimony is entirely irrelevant regarding the materiality of the August 7, 2018 tweets. Materiality is an objective test assessed from the perspective of a "reasonable investor". *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976); *accord Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 467 (2013) (noting materiality is an objective test).  Unlike members of Tesla's Investor Relations team or financial analysts or actual Tesla investors, Mr. Teller's

testimony provides no insight into the relative weight any reasonable investor would have placed on Musk's August 7, 2018 tweets.

Mr. Teller's testimony is also limited by the fact that he was out-of-pocket from August 3, 2018 through August 7, 2018 (traveling to attend a wedding in New Hampshire) and remembered nothing of substance concerning the conversations he witnessed when he returned. Ex. X, at 185:10-185:15. When asked during his deposition if whether he recalled any conversations about the go-private transaction during this timeframe, Mr. Teller stated unequivocally that, "I don't remember any conversations specifically about the take-private transaction during the time while I was on the East Coast." *Id*. at 186:9-186:16. Mr. Teller also failed to recall anything of substance upon his return from the East Coast. In pertinent part, with regard to Musk's conversation with Egon Durban of Silver Lake Partners on August 6, 2018, Mr. Teller testified that, "I don't have any memory of it. It's possible that I listened in, but I don't remember being on that call" and that "I don't remember speaking with Elon about the call with Egon." *Id*. at 189:19-189:24, 190:10-190:14.

Mr. Teller's testimony concerning conversations he observed after the August 7, 2018 tweets is also irrelevant. "The law assesses the materiality of a misrepresentation at the time it is made...". *S.E.C. v. Reyes*, 491 F. Supp. 2d 906, 910 (N.D. Cal. 2007). In any event, Mr. Teller's testimony concerning the conversations he observed or overheard post-August 7, 2018 would be inadmissible hearsay and/or cumulative in nature. For example, Mr. Teller testified that he did not recall "specific details" from the conversation he attended between Musk and Egon Durban on August 10, 2018 beyond simply that Musk was "discussing the take-private transaction" and "how Silver Lake could be involved." Ex. X, at 238:12-239:7. Given that both Musk and Egon Durban will be testifying at trial as a named defendant, Mr. Teller's testimony on this meeting is redundant.

Similarly, Mr. Teller's testimony about the conversation he overheard between Musk and Yasir Al-Rumayyan from the Saudi PIF on August 10, 2018 also deserves to be excluded. Mr. Teller testified that he overheard the conversation from an "adjacent room[] with the door open."

*Id*. at 242:12-242:19. Mr. Teller only went into the room where Musk was speaking with Mr. Al-Rumayyan several minutes after the call began. *Id*. at 242:20-242:23. Even still, Mr. Teller's testimony about what he overheard on this call would be entirely duplicative of Musk's testimony, as well as the text messages exchanged between Musk and Al-Rumayyan in subsequent days, and, therefore, cumulative evidence that should be excluded. FED. R. EVID. 403. Further, with regard to Musk's text messages to Mr. Al-Rumayyan, Mr. Teller has nothing to add as he testified he did not discuss any of the texts before Musk sent them.  Ex. X, at 261:2-262:1. When asked about the meaning of the messages, Mr. Teller testified, "[y]ou'd have to ask Elon. I can't speak for him." *Id*. at 262:2-262:6. Thus, Mr. Teller even recognized the duplicative and needless nature of his testimony at multiple points during his deposition, thereby supporting Plaintiff's arguments for excluding him from testifying at trial.

Defendants also intend to introduce evidence from representatives of the Saudi PIF, *i.e.*, Yasir Al-Rumayyan, Saad Al Jarboa, Naif Al Mogren, and Turqi Alnowaiser. The substance of their testimony is as follows:

> Mr. Al-Rumayyan is the Governor of the PIF, the sovereign wealth fund of the Kingdom of Saudi Arabia. Defendants expect that Mr. Al-Rumayyan will testify regarding the potential go-private transaction and communications related thereto.

Defendants' Trial Witness List, Ex. W at 4. Defendants also intend to introduce evidence from other witnesses that will testify to Musk's "funding" from the Saudi PIF. *See*, *e.g.*, Ex. Y at 76:17-19 ("Q. So did you understand funding secured in this tweet to mean that funding was available? A. Yes."); Ex. Z at 75:11-14 ("Q. In your opinion is the availability of sufficient capital the same as funding secured? A. That's how I interpreted what he was saying."); Ex. AA at 116:23-117:16 ("Q. Is the availability of sufficient capital the same thing as securing funding, in your mind? A. Well, I mean, we can – I would say I'd go stronger than the availability of capital. . . ."); Ex. BB at 87:14-17; 88:6-8 ("I had been working with Elon for almost 20 years. If he says he has the money, he has the money. As far as I'm concerned, we had the money, yeah…So if Elon tells me he has the money, I believe he had the money."); Ex. CC at 68:6-12 ("I think the background with

the structure and the Saudi commitment, I think he was 100 percent sure that, you know, funding was not going to be an issue due to the structure, due to investor interest and, you know, having the Saudis as the backstop on everything.").

Like Mr. Teller's testimony, testimony from these witnesses relates exclusively to whether Musk had secured funding from the Saudi PIF for the go-private transaction. This testimony is relevant to no issue other than the "falsity" and "scienter" of Musk's August 7, 2018 tweets. Having already determined these issues at summary judgment, testimony from these witnesses is of no consequence as well as cumulative of anything Musk testifies to at the time of trial. For the same reasons the Court should preclude Mr. Teller from testifying, it should also exclude testimony from the Saudi PIF.

### B. Plaintiff Faces Significant Prejudice if Defendants Are Allowed to Introduce Evidence and Testimony from Sam Teller, the Saudi PIF, and Any Other Witness Who Might Dispute the Court's Summary Judgment Holdings.

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: ***unfair prejudice, confusing the issues, misleading the jury***, undue delay, wasting time, or needlessly presenting cumulative evidence" (emphasis added). "Unfair prejudice" is defined as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403 (advisory committee notes). As detailed above, Mr. Teller's testimony and deposition almost exclusively concentrate on the Saudi PIF and the purported going-private transaction, which strictly relate to the issues of falsity and scienter. As this Court has already ruled on these two issues, the probative value of Mr. Teller's testimony and/or testimony from the Saudi PIF is substantially outweighed by the dangers of unfair prejudice, confusing the issues, and misleading the jury. *See Ohio Six*, 2013 WL 12125747, at *10 (refusing to allow a party to offer testimony "that is at odds with the undisputed evidence adduced at summary judgment and that represents a subjective belief" and finding that allowing contradictory testimony "would create a high risk of juror confusion and invite the jury to draw

impermissible inferences."). Accordingly, "[a]llowing the [contradictory] evidence [or testimony] would invite the jury to reevaluate issues decided by the court at the summary judgment stage, and might ultimately result in the jury inappropriately circumventing the court's summary judgment order." *Id; Miranda v. U.S. Sec. Assocs., Inc.*, No. 18-CV-00734-LHK, 2019 WL 2929966, at *3 (N.D. Cal. July 8, 2019) ("exclud[ing] all evidence contradicting the Court's finding at summary judgment" because "[a]llowing Defendant to relitigate the issue at trial 'would have no probative value, and would merely waste time.'"); *Magadia v. Wal-Mart Assocs., Inc.*, No. 17-CV-00062-LHK, 2018 WL 6003376, at *2 (N.D. Cal. Nov. 15, 2018) (granting motion *in limine* because "the Court has already ruled on these matters in its summary judgment orders," thus "testimony on these issues would have no probative value, and would merely waste time").

Indeed, Plaintiff has already succeeded in this matter on the issues of falsity and scienter of Musk's tweets. Admitting irrelevant testimony, which does not correspond to the remaining issues at play in this litigation – reliance, materiality, loss causation, and damages – would inherently cause three dangerous problems. First, the irrelevant testimony and deposition would confuse the jury as to what exact issues remain in the litigation and why the information is being presented. As a consequence of the jury's confusion, they may improperly rely on Mr. Teller's testimony related to falsity and scienter in their assessment of reliance, materiality, loss causation, and damages. Second, the irrelevant testimony and deposition would mislead the jury as to the importance of the information. Undoubtedly, the jury would improperly place credibility and weight on Mr. Teller's testimony that does not aid in or support the determinations they must make on reliance, materiality, loss causation, and damages. Third, this would, ultimately, result in Plaintiff and the Class being unfairly prejudiced by irrelevant information. Excluding testimony from Mr. Teller and the Saudi PIF will protect Plaintiff and the Class from unfair prejudice and ensure that the jury is not confused or misled by information that has no bearing on the remaining determinations that the jury will undertake – reliance, materiality, loss causation, and damages. *See Chevron TCI, Inc. v. Capitol House Hotel Manager, LLC*, No. CV 18-00776-BAJ-RLB, 2021

WL 2638036, at *6 (M.D. La. June 25, 2021) (refusing to allow testimony "regarding issues already resolved by the Court" in its summary judgment order); *Perez v. El Tequila, LLC*, No. 12-CV-588-JED-PJC, 2015 WL 11157117, at *3 (N.D. Okla. July 24, 2015) (precluding testimony where testimony was related to an "issue [that] was determined on summary judgment, and further evidence at trial regarding decided issues, as should be obvious, will not be permitted."); *Callaway v. O'Connell*, 44 F. Supp. 3d 1316, 1324 (M.D. Ga. 2014) ("Of course . . . testimony will be limited to the issues remaining after the Court's ruling on O'Connell's motion for summary judgment."); *Borges v. City of Hollister*, No. C03-05670 HRL, 2005 WL 6019704, at *3 (N.D. Cal. Aug. 24, 2005) (prohibiting evidence that contradicted summary judgment order)

## III.   CONCLUSION

The Court already determined that Musk's August 7, 2018 tweets were false and made with scienter, thereby eliminating the relevance of any evidence bearing on those issues. Allowing such evidence at trial would therefore only tend to prejudice Plaintiff by tempting the jury to revisit the Court's prior factual and legal rulings. Plaintiff's motion *in limine* should be granted.

Dated: September 20, 2022                           Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 s/ Adam M. Apton
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

-and-

Nicholas I. Porritt
Elizabeth K. Tripodi
Alexander A. Krot III
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115

|   |   |
|---|---|
| 1 | Washington, D.C. 20007 |
| 2 | Tel.: (202) 524-4290 |
|   | Email: nporritt@zlk.com |
| 3 | Email: akrot@zlk.com |
|   | (admitted pro hac vice) |

-and-

Joseph Levi
Eduard Korsinsky
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Email: jlevi@zlk.com
Email: ek@zlk.com
(admitted pro hac vice)
Attorneys for Plaintiff and Counsel for the Class

---

PLAINTIFF'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE IRRELEVANT AND DUPLICATIVE TESTIMONY   8   CASE NO. 3:18-CV-04865-EMC