QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Alex Spiro (*appearing pro hac vice*)
   alexspiro@quinnemanuel.com
   Andrew J. Rossman (*appearing pro hac vice*)
   andrewrossman@quinnemanuel.com
   Ellyde R. Thompson (*appearing pro hac vice*)
   ellydethompson@quinnemanuel.com
   Jesse Bernstein (*pro hac vice* forthcoming)
   jessebernstein@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

   Michael T. Lifrak (Bar No. 210846)
   michaellifrak@quinnemanuel.com
   Kyle Batter (Bar No. 301803)
   kylebatter@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendants Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 4 TO EXCLUDE IRRELEVANT AND DUPLICATIVE EVIDENCE RE: FALSITY OR SCIENTER FOR AUGUST 7, 2018 TWEETS** |
|---|---|

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................2

I. PLAINTIFF SEEKS TO EXCLUDE EVIDENCE RELEVANT TO MATERIALITY AND APPORTIONMENT OF LIABILITY ..................................................................2

    A. The Testimony of Sam Teller and Representatives of the PIF is Relevant to Materiality and Apportionment of Liability .........................................................3

    B. The Director's Testimony About the Tweets Is Relevant to the Control Person Defense and Apportionment of Liability ................................................5

II. THE EVIDENCE AT ISSUE IS NOT UNDULY PREJUDICIAL OR CUMULATIVE .............6

CONCLUSION ..............................................................................................................................7

## TABLE OF AUTHORITIES

**Page**

### Cases

*Borges v. City of Hollister*,
  No. C03-05670 HRL, 2005 WL 6019704 (N.D. Cal. Aug. 24, 2005) ................................... 7

*Dees v. Cnty. of San Diego*,
  No. 3:14-CV-0189-BEN-DHB, 2017 WL 168569 (S.D. Cal. Jan. 17, 2017) ....................... 7

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) .......................................................................................................... 5

*Gebhart v. S.E.C.*,
  595 F.3d 1034 (9th Cir. 2010) .......................................................................................... 5

*GIA-GMI, LLC v. Michener*,
  No. C06-7949 SBA, 2007 WL 2070280 (N.D. Cal. July 16, 2007) ................................... 4

*Hollinger v. Titan Cap. Corp.*,
  914 F.2d 1564 (9th Cir. 1990) .......................................................................................... 5

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ................................................................................. 1, 5, 6

*In re McKesson HBOC, Inc. Sec. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) ........................................................................... 3

*Magadia v. Wal-Mart Assocs., Inc.*,
  No. 17-CV-00062-LHK, 2018 WL 6003376 (N.D. Cal. Nov. 15, 2018) ............................ 7

*Ohio Six Ltd. v. Motel 6 Operating L.P.*,
  No. CV 11-08102 MMM (EX), 2013 WL 12125747 (C.D. Cal. Aug. 7, 2013) ................. 7

*Perez v. El Tequila, LLC*,
  No. 12-CV-588-JED-PJC, 2015 WL 11157117 (N.D. Okla. July 24, 2015) ..................... 7

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976) .............................................................................................. 1, 2, 3, 6

*Yowan Yang v. ActioNet, Inc.*,
  No. CV1400792ABPJWX, 2016 WL 8929250 (C.D. Cal. Feb. 19, 2016) ......................... 7

### Statutes

15 U.S.C. § 78t(a) ..................................................................................................................... 2

15 U.S.C. § 78u-4(f) ....................................................................................................... 1, 2, 4, 6

15 U.S.C. §§ 78u-4(f)(3)(A)(iii) ................................................................................................. 4

15 U.S.C. § 78u-10(a)-(b) .................................................................................................. 1, 4, 6

### Rules

17 C.F.R. § 240.10b–5(b) ......................................................................................................... 3

# INTRODUCTION

Yet again, in this fourth motion *in limine*, Plaintiffs adopts an overbroad reading of the Court's summary judgment order that contradicts the Court's clarification of the issues for trial. As set forth in the opposition to Plaintiff's motion to exclude the testimony of Defendant Elon Musk concerning the circumstances surrounding the at-issue tweets, the jury still must determine whether Mr. Musk's tweets were materially false—that is, whether the information found to be misrepresented, if disclosed, "would have assumed actual significance in the deliberations of the reasonable" investor, *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)—and whether Mr. Musk and the other Defendants "knowingly" violated securities laws to apportion liability, 15 U.S.C. §§ 78u-4(f) 10(a)-(b) (finder of fact must determine that defendant knowingly, as opposed to recklessly, for joint and severally liability to attach). The jury must also determine whether Tesla's directors committed a Section 20(a) violation or whether they personally acted in "good faith"—without scienter—when allegedly adopting the tweets. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). The Court did not determine any of these issues on summary judgment and thus all testimony relevant to them is presumptively admissible.

Here, Plaintiff seeks to exclude the relevant testimony of Sam Teller, Tesla's former Director of the Office of CEO, and representatives of the Saudi PIF ("PIF"). While Plaintiff focuses on what Mr. Teller may not know, Plaintiff ignores that Mr. Teller and the PIF representatives were present the meeting with Mr. Musk that preceded the tweet at issue. Such testimony as to the accurate state of affairs presents the jury with a necessary baseline to assess materiality of the tweets that the Court has deemed inaccurate. Only then can the jury assess how significant a reasonable investor would have considered the difference between the actual state of affairs and the statements found to be factually inaccurate. And, once again, Plaintiff ignores that such evidence likewise goes to the jury's determination of whether Mr. Musk and the directors knowingly or recklessly violated securities laws, as necessary to apportion liability.

Separately, in a conclusory paragraph, Plaintiff seeks to prevent the Tesla directors who are defendants in this action from testifying as to their understanding of Mr. Musk's statements. This Court should not prevent these Defendants—who Plaintiff contends "adopted" statements and should be liable for them and against whom no summary judgment has issued—from testifying. Such testimony is directly

relevant to proving the director's states of mind and whether they acted in "good faith" or with scienter, which is a question the jury must answer to determine the directors' liability.

To the extent Plaintiff acknowledges the relevance of such evidence by arguing its admission would be prejudicial, Plaintiff's claimed prejudice is a red herring. Because the evidence has direct bearing on disputed issues before the jury, its admission would not contradict the summary judgment order or waste the jury's, Court's, or parties' time. Plaintiff's motion should be denied.

## ARGUMENT

### I. PLAINTIFF SEEKS TO EXCLUDE EVIDENCE RELEVANT TO MATERIALITY AND APPORTIONMENT OF LIABILITY

At the threshold, the Court should deny the motion because it rests on the incorrect premise that the evidence is "no longer of consequence given the Court's order" on summary judgment. (Mot. at 2.)

As the Court made clear at the June 16 hearing, the jury must still decide whether the statements at issue were materially false and whether Mr. Musk made materially false statements with scienter. (Ex. I, 6/16/22 Hr'ing Tr. at 5:4-8 ("To be clear, I did not find materiality with respect to the misrepresentation or a reckless disregard or knowingly scienter with regard to any such material representation.")[1]. Evidence probative of the jury's determination of materiality—i.e., whether the difference between the actual facts and Mr. Musk's statements "would have assumed actual significance in the deliberations of the reasonable shareholder," *TSC Indus.*, 426 U.S. at 449, is highly relevant to this trial.

Separately, the motion ignores entirely the fact that Defendants'—including the Tesla directors'—knowledge and understanding of the tweets and their individual states of mind are relevant to (1) the jury's apportionment of liability, 15 U.S.C. § 78u-4(f), and (2) the Tesla directors' good faith defense to the Section 20(a) claim, 15 U.S.C. § 78t(a). Plaintiff did not move for summary judgment on either of these issues and they are not implicated in the Court's summary judgment order. (Dkt. Nos. 352, 387.)

Because the evidence Plaintiff seeks to exclude goes directly to these disputed trial issues, Plaintiff is wrong that such evidence is not "of consequence in determining the action."

---

[1] All Exhibit citations are to the Declaration of Michael T. Lifrak.

**A.    The Testimony of Sam Teller and Representatives of the PIF is Relevant to Materiality and Apportionment of Liability**

As to the testimony of Mr. Teller and the PIF representatives, such evidence is relevant to the jury's assessment of materiality.

To prove materiality at trial, Plaintiff is required to show that there was "a substantial likelihood that the…correction of the misstated fact] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1259 (N.D. Cal. 2000) (bracket in original) (quoting *TSC Indus.*, 426 U.S. at 449). Determining materiality, therefore, requires "delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him." *TSC Indus.*, 426 U.S. at 450. It is a context-specific analysis of both the statements and the circumstances in which they were made that requires the jury to compare what was said to what the correct statement would be to determine whether that difference would be important to a reasonable investor. *Id.*; 17 C.F.R. § 240.10b–5(b) (unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.").

In other words, the jury will be asked whether, if the reasonable investor knew the truth of what Mr. Musk allegedly misrepresented, those facts "would have assumed actual significance in [his] deliberations" whether to buy or sell Tesla securities. *TSC Indus.*, 426 U.S. at 449. To make that determination, the jury will have to hear evidence as to what the actual underlying situation regarding the funding of the go-private transaction was. Mr. Teller and the PIF representatives were personally involved in discussions regarding the prospective financing to take Tesla private and can therefore testify as to the actual state-of-play when Mr. Musk made the statements. (*See, e.g.,* Ex. J, Teller Dep. at 130:8-143:23.) They will inform the jury of the exact facts as they existed at the time so the jury could determine how significant the difference was between those actual facts and Mr. Musk's statements, which is critical to the materiality analysis. *In re McKesson HBOC*, 126 F. Supp. 2d at 1249 (finder of fact must determine whether the "disclosure of the omitted fact [or correction of the misstated fact] would have been

1  viewed…as having significantly altered the 'total mix' of information made available."). Excluding this
2  testimony would deprive the jury of the necessary baseline it needs to determine materiality.

3      Mr. Teller's testimony about post-August 7 events, including the August 10 phone call between
4  Mr. Musk and the PIF, likewise are relevant to the materiality analysis.  Such testimony about
5  communications between Mr. Musk and the PIF relating to the PIF's positions and representations in the
6  July 31 meeting (Ex. J, Teller. Dep. at 244:19-248:4) will assist the jury in assessing the status of funding
7  conversations and the state of the PIF's commitment to the deal, which in turn will assist the jury in
8  determining whether the delta between those facts and Mr. Musk's statements was material. It will also
9  inform the jury as to Mr. Musk's personal knowledge and state of mind, which is relevant to establishing
10 whether he knew or recklessly disregarded that the statements were materially false. *See GIA-GMI, LLC*
11 *v. Michener*, No. C06-7949 SBA, 2007 WL 2070280, at *9 (N.D. Cal. July 16, 2007).

12     This evidence also bears directly on the question of whether Mr. Musk or any other Defendant
13 acted "knowingly" or "reckless[ly]" when he made the statements, which the jury must answer to
14 apportion liability. *See* 15 U.S.C. §§ 78u-4(f); 10(a)-(b). Defendants who "the trier of fact specifically
15 determines…knowingly committed a violation of the securities laws" are jointly and severally liable for
16 all damages, whereas Defendants who merely engaged in "reckless conduct" are assessed liability
17 proportionate to the percentage of their responsibility.  15 U.S.C. §§ 78u-4(f); 10(a)-(b). The jury, as
18 indicated in both parties' proposed verdict forms, is responsible for assessing whether each defendant
19 engaged in a knowing or reckless violation in this case. 15 U.S.C. §§ 78u-4(f)(3)(A)(iii).

20     Because the Court determined only that Mr. Musk made the statements at issue "recklessly" and
21 not whether Plaintiff proved the more demanding "knowing" standard (Dkt. No. 387 at 32-33), Mr.
22 Musk's actual knowledge and state-of-mind remain a live issue in trial. *See* 15 U.S.C. §§ 78u-4(f), 10(a)-
23 (b). The testimony of Mr. Teller and the representatives of the PIF concerning the events prior to August
24 7 go to the question of what Mr. Musk actually knew before he issued the tweets.  And the testimony
25 about post-August 7 events are relevant to establish the contemporaneous understanding of Defendants as
26 to what PIF's representations about the go-private transaction meant.  Such testimony is highly relevant
27 to whether Mr. Musk or any other Defendant "had actual knowledge that the representation [was] false."
28 *See id.*

### B. The Director's Testimony About the Tweets Is Relevant to the Control Person Defense and Apportionment of Liability

Plaintiff also seeks to exclude testimony—in a single paragraph of argument—from Tesla's directors as to what they understood the statements at issue meant when they were made. (Mot. at 4-5). Such testimony is directly relevant to establishing the directors' "good faith" defense to control person liability and should not be excluded.

Plaintiff has asserted a Section 20(a) claim against Tesla's directors. The directors can assert a defense to that claim if they show that they did not induce the underlying violation of securities laws and acted in "good faith." *Howard*, 228 F.3d at 1065. "A defendant is entitled to a good faith defense if he can show no scienter and an effective lack of participation." *Id.* Evidence of the Tesla directors' states of mind is relevant to their defense to Section 20(a). *See id.*; *Gebhart v. S.E.C.*, 595 F.3d 1034, 1042 (9th Cir. 2010) ("Scienter, however, is a subjective inquiry. It turns on the defendant's actual state of mind.").

To invoke the good faith defense, the evidence must show that the directors did not personally know that Mr. Musk's statements were materially false and did not act with reckless disregard as to the statements' material falsity when allegedly "adopt[ing]" the statements. *See Howard*, 228 F.3d at 1095; Dkt. No. 251 at 41 (complaint alleged directors "arguably adopted" Mr. Musk's statements). Evidence of what the directors ***actually believed*** the statements at issue to mean is highly probative of whether they knew or recklessly disregarded that the statements were materially false when they "adopted" them. *See Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1570 (9th Cir. 1990) (scienter must "derive from something more egregious than even 'white heart/empty head' good faith.").

The directors intend to testify that they had a good faith belief that the tweets were accurate (*e.g.*, Ex. K, Denholm Dep. at 76:17-19; *see also* Mot. at 4-5), which is relevant to defeating scienter. *See id*. A blanket preclusion of this highly probative state of mind evidence would deprive the directors of their ability to put on a good faith defense in contravention of the requirements of the securities laws. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206 (1976) ("There is no indication that Congress intended anyone to be made liable for such practices unless he acted other than in good faith."). It would also prejudice the directors' ability to avoid joint and several liability by establishing that they merely acted "reckless[ly]" instead of "knowingly" when they allegedly adopted the statement giving rise to a Section

20(a) violation.  *See* 15 U.S.C. §§ 78u-4(f), 10(a)-(b).  The directors' understanding of what the tweets meant when they "adopted" them is among the most probative evidence that they did not actually know the tweet was materially false and therefore did not knowingly violate the securities laws.  *See id.*[2]

## II. THE EVIDENCE AT ISSUE IS NOT UNDULY PREJUDICIAL OR CUMULATIVE

The crux of Plaintiff's prejudice argument is the tautology that because the testimony is irrelevant, Plaintiff will be prejudiced by the jury hearing irrelevant testimony.  (Mot. at 6 ("this would, ultimately, result in Plaintiff and the Class being unfairly prejudiced by irrelevant information.").)  But as established above, the testimony is relevant to the jury's materiality, apportionment, and control liability deliberations.  Plaintiff fails to show any prejudice substantially outweighing the probative value of this evidence.

*First*, Plaintiff claims that allowing Mr. Teller and the PIF representatives to testify about the specific facts Mr. Musk omitted or misrepresented "would mislead the jury as to the importance of the information," (*id.*), but does not acknowledge that this evidence ***is important*** to materiality and the trial as a whole.  The jury must determine whether the true status of financing—about which these witnesses will provide firsthand testimony—would have "assumed actual significance" in the deliberations of the reasonable investor or not.  *See TSC Indus.*, 426 U.S. at 449.  It would not be "improper" for the jury to rely on this testimony in the "assessment of reliance [and] materiality."  (Mot. at 6.)  It will be essential.

*Second*, Plaintiff ignores the questions the jury must answer for apportionment and control person liability.  Contrary to his assertion that evidence relating to the Defendants' actual knowledge and states of mind would be prejudicial because it has "no bearing on the remaining determinations that the jury will undertake" (Mot. at 6), this evidence goes to the heart of the jury's determination of the directors' scienter, *Howard*, 228 F.3d at 1095, and whether any Defendant "knowingly" violated securities laws, 15 U.S.C. §§ 78u-4(f), 10(a)-(b).  Plaintiff makes no argument why evidence probative to apportionment would be unduly prejudicial—beyond the blanket and incorrect assertion that it is "irrelevant"—and therefore cannot meet his burden for its exclusion.

---

[2]  Of course, if the Court has concerns that such testimony would undermine the summary judgment order, the Court has tools at its disposal to ensure such evidence does not result in a relitigation of whether the statements were factually false.  But the Court should not deprive the Tesla directors of evidence supporting their good faith defense, as Plaintiff requests.

*Third*, Plaintiff's contention that the Court should exclude broad categories of relevant evidence because they somehow may contradict the summary judgment order is both legally and factually misplaced. The authority Plaintiff cites does not support a blanket preclusion of evidence relevant to disputed issues at trial. In the cases upon which Plaintiff relies, the courts excluded limited evidence that had "no probative value." *See e.g.*, *Magadia v. Wal-Mart Assocs., Inc*., No. 17-CV-00062-LHK, 2018 WL 6003376, at *2 (N.D. Cal. Nov. 15, 2018) ("testimony on these issues would have no probative value"); *Ohio Six Ltd. v. Motel 6 Operating L.P*., No. CV 11-08102 MMM (EX), 2013 WL 12125747, at *9-10 (C.D. Cal. Aug. 7, 2013) (excluding as irrelevant testimony of incorrect subjective contract interpretation that was never articulated before the litigation); *Perez v. El Tequila, LLC*, No. 12-CV-588-JED-PJC, 2015 WL 11157117, at *3 (N.D. Okla. July 24, 2015) (excluding evidence because it was not relevant to "the only undecided issue remaining"). And, as in other cases Plaintiff cites, the Court should permit the parties to present evidence and argument on matters not directly covered by the prior order. *Magadia*, 2018 WL 6003376, at *2; *Borges v. City of Hollister*, No. C03-05670 HRL, 2005 WL 6019704, at *3 (N.D. Cal. Aug. 24, 2005) (denying motion in part where court did not make a "wholesale ruling" on the matters at issue.). Here, because the evidence is relevant to issues before the jury, it should not be excluded.

*Finally*, Plaintiff's remaining arguments for exclusion are equally meritless. The mere fact that multiple witnesses may testify about the same meetings and conversations—some of the key events in this case—does not render the evidence "needlessly cumulative." *Dees v. Cnty. of San Diego*, No. 3:14-CV-0189-BEN-DHB, 2017 WL 168569, at *4 (S.D. Cal. Jan. 17, 2017) ("Plaintiffs have not identified which evidence they believe would be unfairly prejudicial beyond the fact that the same details might be repeated by multiple witnesses"). And, in any event, potential concerns about cumulative testimony should not be resolved on a categorical basis before trial starts. *See Yowan Yang v. ActioNet, Inc*., No. CV1400792ABPJWX, 2016 WL 8929250, at *2 (C.D. Cal. Feb. 19, 2016) ("[T]o exclude evidence on a motion in limine the evidence must be inadmissible on all potential grounds. Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion.

| | | |
|---|---|---|
| 1 | DATED:  September 20, 2022 | Respectfully submitted, |
| 2 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 4 | | By: */s/ Alex Spiro*<br>     Alex Spiro *(appearing pro hac vice)* |
| 5 | | *Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice* |