1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
        Alex Spiro (appearing *pro hac vice*)
2       alexspiro@quinnemanuel.com
        Andrew J. Rossman (appearing *pro hac vice*)
3       andrewrossman@quinnemanuel.com
        Ellyde R. Thompson (appearing *pro hac vice*)
4       ellydethompson@quinnemanuel.com
5       Jesse Bernstein (*pro hac vice* forthcoming)
        jessebernstein@quinnemanuel.com
6   51 Madison Avenue, 22nd Floor
    New York, New York 10010
7   Telephone: (212) 849-7000

8       Michael T. Lifrak (Bar No. 210846)
9       michaellifrak@quinnemanuel.com
        Kyle Batter (Bar No. 301803)
10      kylebatter@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
11  Los Angeles, California 90017-2543
12  Telephone: (213) 443-3000

13  *Attorneys for Defendants Tesla, Inc., Elon Musk,*
    *Brad W. Buss, Robyn Denholm, Ira Ehrenpreis,*
14  *Antonio J. Gracias, James Murdoch, Kimbal Musk,*
    *and Linda Johnson Rice*
15

16                      UNITED STATES DISTRICT COURT

17                      NORTHERN DISTRICT OF CALIFORNIA

18

19  | IN RE TESLA, INC. SECURITIES | Case No. 3:18-cv-04865-EMC |
20  | LITIGATION | |

21  | | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 5 TO PRECLUDE POST-CLASS PERIOD EVENTS** |
22
23
24
25
26
27
28

1

**TABLE OF CONTENTS**

2
                                                                                                **Page**

3

PRELIMINARY STATEMENT...................................................................................................1

4

ARGUMENT ...........................................................................................................................2

5

I.      PLAINTIFF'S EXPANSION OF THE CLASS PERIOD BY THREE MONTHS IS

6       IMPROPER ..................................................................................................................2

7      II.     THERE IS NO DISPUTE AS TO THE SPECIFIC POST-CLASS PERIOD
               CONDUCT BY MUSK THAT PLAINTIFF SEEKS TO EXCLUDE.................................3

8
       III.    PLAINTIFF'S REQUEST TO EXCLUDE ALL EVIDENCE OF HIS
9              CONTINUED TRADING IN TESLA SECURITIES SHOULD BE DENIED ...................5

10     CONCLUSION .........................................................................................................................6

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
PRECLUDE POST-CLASS PERIOD EVENTS

1

**TABLE OF AUTHORITIES**

2                                                                                    **Page**

3                                        **Cases**

4
*Baker v. SeaWorld Entm't, Inc.*,
5    2020 WL 241441 (S.D. Cal. Jan. 16, 2020) ................................................................. 3

*Branch-Hess Vending Servs. Employees' Pension Tr. v. Guebert*,
6    751 F. Supp. 1333 (C.D. Ill. 1990)............................................................................... 5

7 *Habersham Plantation Corp. v. Molyneux*,
    2011 WL 13216995 (S.D. Fla. Dec. 5, 2011) .............................................................. 4

8 *Hsu v. Puma Biotech., Inc.*,
    Case No. 8:15-cv-00865-AG-SHK (C.D. Cal. Oct. 24, 2018)...................................... 5
9
*In re Mego Fin. Corp. Sec. Litig.*,
10    213 F.3d 454 (9th Cir. 2000)........................................................................................ 2

11 *United States v. Pac. Gas and Elec. Co.*,
    178 F. Supp. 3d 927 (N.D. Cal. 2016) ......................................................................... 3

12 *In re Safeguard Scientifics*,
    216 F.R.D. 577 (E.D. Pa. 2003) .................................................................................. 5
13 *Stewart v. United States*,
    366 U.S. 1 (1961) ......................................................................................................... 6
14
*In re Vivendi Universal, S.A. Sec. Litig.*,
15    123 F. Supp. 3d 424 (S.D.N.Y. 2015).......................................................................... 5

*Wade v. WellPoint, Inc.*,
16    892 F. Supp. 2d 1102 (S.D. Ind. 2012) ........................................................................ 3

17 *United States v. West*,
    826 F.2d 909 (9th Cir. 1987)........................................................................................ 6

18                                        **Rules**

19 Fed. R. Evid. 608.................................................................................................................... 4

20                               **Statutory Authorities**

21 15 U.S.C. § 78u-4(e)(1)......................................................................................................... 2

22                               **Legislative Materials**

23 Sen. Rep. 104-98 (1995) ....................................................................................................... 2

24

25

26

27

28

1

**PRELIMINARY STATEMENT**

2  Plaintiff's motion to exclude events that occurred after the class period is ill-defined, overly

3  broad, and should be denied.  To start, it contorts the definition of "class period" to also include the

4  statutory 90-day "lookback period" following the end of the actual class period on August 17, 2018.

5  Plaintiff asserts that events within that 90-day period, which extended until mid-November 2018,

6  are presumptively relevant, which conveniently would allow Plaintiff to shoehorn into the trial

7  evidence of the SEC's September 2018 (*i.e.*, post-class-period) securities-fraud complaints against

8  Elon Musk and Tesla and the ensuing no-liability settlement agreements.  But the "lookback period"

9  is merely a mechanism to cap damages—assuming liability is established—by calculating the

10  difference between stock purchase price and the average price of the stock during the 90 days after

11  the class period ends, nothing more.  Plaintiff cannot have it both ways, and his use of the "lookback

12  period" to cherry-pick evidence should not be allowed.  The Court should assess the relevance of

13  evidence on a case-by-case basis, and not by whether it fits into a particular, artificially created

14  timeframe.

15  Plaintiff's motion is overbroad in other ways too.  Apart from identifying a few events or

16  tweets—seemingly at random—that Plaintiff believes should be excluded and that Defendants have

17  never expressed any intention of introducing, Plaintiff simply reiterates the uncontroversial

18  principles that (a) falsity and scienter must be assessed as of the time statements were made, and (b)

19  character evidence generally is not admissible.  Why Plaintiff needed to bring a motion *in limine* on

20  these points is not clear.  Defendants have no intention of arguing, for example, that Musk's

21  statements were false when made but somehow became true after the class period ended, and

22  Defendants similarly have no intention of offering improper character evidence.  As to the latter,

23  any ruling should be a two-way street, and Plaintiff also should be precluded from touting his

24  supposed good character at trial by testifying about alleged charitable activity or other good deeds.

25  Finally, Plaintiff's request that the Court exclude evidence of his continued trading in Tesla

26  securities should be denied.  Plaintiff's actions following the disclosure of the alleged fraud,

27  including his continued trading in Tesla securities, is probative of whether the alleged fraudulent

28  statements were material, as confirmed in numerous cases.  Moreover, this evidence is relevant to

-1-                                    Case No. 3:18-cv-04865-EMC

1   Plaintiff's credibility as a witness.  A rational jury could properly conclude that Plaintiff's continued

2   investments in Tesla is inconsistent with his position that the CEO of Tesla committed securities

3   fraud against him and that the Tesla board was derelict in its duty to exercise control over the

4   company's executives.  Witness credibility is always relevant, in any trial, and a blanket request to

5   stifle the fact that Plaintiff continues to invest in the company he claims defrauded him is too broad

6   here.

7                                                    **ARGUMENT**

8   **I.      PLAINTIFF'S EXPANSION OF THE CLASS PERIOD BY THREE MONTHS IS
            IMPROPER**

9

10          As an initial matter, Plaintiff randomly defines "Post-Class Period" events as those

11  "following the expiration of the statutory 90-day lookback period," which ended November 15,

12  2018.  (Mot. at 1.)  By arguing that events after that period are *per se* irrelevant in this case, he

13  implies events occurring during the 90 days after the class period ended are presumptively relevant.

14  But the lookback period established by the Private Securities Litigation Reform Act exists to impose

15  a limit on damages in securities-fraud cases.  It was enacted because Congress recognized that, in

16  cases where a stock rebounds following disclosure of corrective information, a pure out-of-pocket

17  damages measure "'may substantially *overestimate* plaintiff's actual damages.'"  *In re Mego Fin.*

18  *Corp. Sec. Litig.*, 213 F.3d 454, 461 n.4 (9th Cir. 2000) (emphasis in original) (quoting Sen. Rep.

19  104-98, at 20 (1995)).  Thus, only where liability is already established does the lookback period

20  come into play, and damages are then capped at the difference between the price a plaintiff paid for

21  the stock and the mean closing price in the 90 days following a corrective disclosure.

22  15 U.S.C. § 78u-4(e)(1).   Events that occur within the lookback period, therefore, are not

23  presumptively relevant to liability.  If anything, the opposite is true since falsity and scienter depend

24  on the circumstances existing when statements were made, as Plaintiff acknowledges.  (Mot. at 2.)

25          Plaintiff's suggestion that lookback-period events are relevant is in all likelihood meant to

26  allow Plaintiff to take the position that the SEC complaints against Musk and Tesla and the

27  subsequent settlement agreements may be introduced at trial.  The complaints and settlement

28  agreements were filed in late-September 2018, well after the actual class period ended on August

1    17, 2018.  As Defendants have explained in their Motion *In Limine* No. 4, evidence of the complaints

2    and settlements is inadmissible under FRE 408, irrelevant to this case, and likely to unfairly

3    prejudice defendants.  Tying relevance to the end of the lookback period, rather than the true end of

4    the class period, is obvious gamesmanship by Plaintiff.   Plaintiff's cited authorities further

5    illuminate this issue, as they all involve decisions by courts to exclude or discount specific evidence

6    from either before or after the respective class periods—not after the respective class periods ***plus***

7    ***an additional 90 days***.  *See, e.g.*, *Wade v. WellPoint, Inc.*, 892 F. Supp. 2d 1102, 1134 n.21 (S.D.

8    Ind. 2012) (discounting as irrelevant events alleged in proposed amended complaint where they

9    occurred after the last day of the class period).  Plaintiff does not cite a single case where a movant

10   sought or a court endorsed a bright-line relevance rule tied to the end of the 90-day lookback period.

11           Consequently, the Court should decline to draw any line on the calendar that would operate

12   as a blanket adjudication of what events are relevant versus irrelevant.  *United States v. Pac. Gas*

13   *and Elec. Co.*, 178 F. Supp. 3d 927, 941, 944 (N.D. Cal. 2016) (noting "[r]ulings on admissibility

14   of evidence normally should be deferred until trial, so that questions of foundation, relevancy, and

15   potential prejudice may be resolved in proper context" and that the court must "consider evidence

16   on a case-by-case basis").  The Court should instead assess each item of evidence individually.  *Id.*;

17   *see also Baker v. SeaWorld Entm't, Inc.*, 2020 WL 241441, at *4 (S.D. Cal. Jan. 16, 2020) (also

18   cited by Plaintiff (Mot. at 5)) (deferring ruling on motion to exclude post-class period events because

19   "[t]he scope of [the] motion is unclear at this stage" and instead finding that "any analysis of

20   relevancy and/or prejudice concerning such evidence must be conducted on a case-by-case basis").

21   And, as explained in Section II, there is not and has never been a dispute as to the only specific

22   "evidence" Plaintiff actually identifies as needing exclusion.

23   **II.      THERE IS NO DISPUTE AS TO THE SPECIFIC POST-CLASS PERIOD**
              **CONDUCT BY MUSK THAT PLAINTIFF SEEKS TO EXCLUDE**

24

25           The bulk of Plaintiff's motion is moot.  Plaintiff asks the Court to exclude a poll that Elon

26   Musk posted on Twitter in November 2021 asking the internet whether he should sell 10% of his

     Tesla stock.  (Mot. at 2.)  Defendants do not intend to offer that tweet in evidence at this trial, nor
27

     have they ever expressed any intention to do so.  Plaintiff also asks the Court to exclude evidence
28

1  of "donations to various charities or the assemblage of SpaceX's 'Starlink' over Ukraine." (*Id.*)

2  Again, Defendants do not intend to affirmatively offer evidence that Musk donates to charities, and

3  they certainly do not intend to exploit the war in Ukraine in this trial about tweets years earlier. This

4  case is not about any of that.[1]  More generally, Defendants do not intend to offer evidence of good

5  character with respect to Mr. Musk or any of the Director Defendants, unless of course Plaintiff

6  attacks their character for truthfulness. Fed. R. Evid. 608.

7  Of course, the inadmissibility of character evidence offered only to curry favor with the jury

8  must go both ways, and Plaintiff similarly should not be permitted to endorse the character of his

9  witnesses, including his own character. At his deposition, for example, Plaintiff testified that he "is

10  so not litigious" and was motivated to join the present litigation because he and his wife felt an

11  obligation to the charities they support. Ex. L at 158:23-159:3 (**Q.** Why, at this time, were you

12  telling him that you would definitely be a part of any such class action as of September 18? **A.**

13  Because my wife and I had a long discussion and we felt an obligation to the charities we support

14  to try to retrieve some of the funds.); *id.* at 170:15-172:12 ("my wife and I continued to have

15  conversations about doing the right thing for charities and not denying the money that they should

16  have been getting and I said, okay, let's [sue]"); *see also id.* at 162:2-4 ("anybody who knows Mary,

17  my wife and I -- excuse me, I'm sorry, knows we're serious about charity giving"). He also testified

18  that "a vast majority" of any award he receives in this case will go to charity. *Id.* at 161:4-8. That

19  testimony is irrelevant to the merits of the case in addition to being improper character evidence, as

20  Plaintiff's own authorities acknowledge. (*See* Mot. at 3 (collecting cases, many of which excluded

21  evidence of charitableness).) Defendants agree that the parties should not be permitted to introduce

22  improper character evidence (like this) at trial.

23

24

25  [1]  Plaintiff also cites to a case that excluded evidence regarding a company's "mission" and its
"claimed charitable or good acts" as irrelevant. (*See* Mot. at 3 (citing *Habersham Plantation Corp.*
26  *v. Molyneux*, 2011 WL 13216995, at *10 (S.D. Fla. Dec. 5, 2011)).) To the extent Plaintiff is arguing
here that evidence regarding Tesla's "mission" to ensure a sustainable future should be excluded as
27  irrelevant, that should be denied. Tesla's mission and long-term strategic goals were intimately tied
to Elon Musk's rationale for considering a go-private transaction in the summer of 2018, as Musk
28  and numerous other witnesses and documents confirm. That is undeniably relevant in this case.

### III.  PLAINTIFF'S REQUEST TO EXCLUDE ALL EVIDENCE OF HIS CONTINUED TRADING IN TESLA SECURITIES SHOULD BE DENIED

Plaintiff is wrong to argue (Mot. at 5-6) that his continued trading in Tesla securities following the alleged fraud is irrelevant in this case.  The fact that the lead Plaintiff—the individual who is supposedly typical and representative of the entire class—still invests in Tesla is probative of whether the alleged misrepresentations were at all material to the reasonable investor.  *See In re Safeguard Scientifics*, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (fact that lead plaintiff increased holdings in defendant's stock after the alleged fraud came to light "raise[d] serious doubts as to the materiality of the alleged fraud disclosures").  That is because a reasonable jury could infer from Plaintiff's continued trading that the "fraud" he alleges was not important to his investment decisions.  Evidence from a lead plaintiff, in particular, "is both persuasive and revealing" as to what a reasonable investor would find important.  *Branch-Hess Vending Servs. Emps.' Pension Tr. v. Guebert*, 751 F. Supp. 1333, 1340 (C.D. Ill. 1990).  That is especially true here, where Plaintiff has already testified that he considers himself representative of the reasonable investor.  Ex. L at 164:22-165:16.

Because the issue of whether Mr. Musk's alleged misrepresentations were material is a necessary component of the elements of falsity, scienter, and class-wide reliance, any evidence that is probative of materiality is critical evidence that the jury needs in order to resolve nearly all of the disputed issues in this case.  *See Hsu v. Puma Biotech., Inc.*, Case No. 8:15-cv-00865-AG-SHK, Dkt. No. 614 at 5 (C.D. Cal. Oct. 24, 2018) (denying motion *in limine* in which plaintiff sought to preclude evidence of plaintiff's trading in defendant's stock, including post-class period trading (*see* Dkt. 513), because "the Court finds that this evidence is relevant to Defendants' rebuttal of the fraud-on-the-market presumption"); *In re Vivendi Universal, S.A. Sec. Litig.*, 123 F. Supp. 3d 424, 436-38 (S.D.N.Y. 2015) (trading after corrective disclosures and end of the class period supports rebuttal of fraud-on-the-market reliance).

More generally, Plaintiff's complete history of trading in Tesla securities presents a basic credibility issue.  It is a natural inference, and one that a reasonable juror could permissibly draw, that Plaintiff's continued investments in Tesla after the class period ended is inconsistent with his

1    position that Defendants committed fraud.  "[W]henever a witness takes the stand, he necessarily

2    puts the genuineness of his demeanor into issue."  *Stewart v. United States*, 366 U.S. 1, 6 (1961);

3    *see also United States v. West*, 826 F.2d 909, 912 (9th Cir. 1987) (party may be cross-examined "as

4    to all matters reasonably related to the issue he puts in dispute by his testimony on direct").  Thus,

5    the fact that Plaintiff invests to this day in a company that he believes defrauded him is an

6    appropriate topic for cross-examination.

7         Plaintiff's arguments for exclusion are premised mainly on the notion that it would be

8    irrelevant and unfair for the jury to learn that Plaintiff **has made a profit** off of his subsequent Tesla

9    investments, or, more generally, that Plaintiff is wealthy.  (Mot. At 5-6.)  Plaintiff also argues that

10   it would be unfair for the jury to hear that Tesla's stock price has increased to levels well above the

11   price at which the stock traded during the relevant time period in this case.  (*Id.* at 6.)  Defendants

12   do not intend to prove that Plaintiff has profited by introducing evidence of specific, subsequent

13   trading prices in Tesla securities, nor do they intend to argue to the jury that the current share price

14   is relevant to the claims here.  But the basic fact that Plaintiff has continued to trade and invest in

15   Tesla securities—regardless of whether he made any money or at what price he purchased his

16   subsequent investments—is relevant to the disputed issue of materiality, as well as to Plaintiff's

17   general credibility when he is accusing Musk, Tesla, and Tesla's board of directors of fraud.  The

18   Court should deny Plaintiff's request for a blanket ruling that would shield him from a proper line

19   of cross-examination.

## CONCLUSION

21        For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's

22   motion to preclude all post-class-period events.

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
PRECLUDE POST-CLASS PERIOD EVENTS

1    DATED:  September 20, 2022          Respectfully submitted,

2                                        QUINN EMANUEL URQUHART & SULLIVAN, LLP

3
                                         By:  /s/ Alex Spiro
4                                            Alex Spiro (appearing *pro hac vice*)
                                             *Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss,*
5                                            *Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias,*
                                             *James Murdoch, Kimbal Musk, and Linda Johnson Rice*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
PRECLUDE POST-CLASS PERIOD EVENTS