QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (*appearing pro hac vice*)
  alexspiro@quinnemanuel.com
  Andrew J. Rossman (*appearing pro hac vice*)
  andrewrossman@quinnemanuel.com
  Ellyde R. Thompson (*appearing pro hac vice*)
  ellydethompson@quinnemanuel.com
  Jesse Bernstein (*appearing pro hac vice*)
  jessebernstein@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

  Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
  Kyle Batter (Bar No. 301803)
  kylebatter@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendants Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S UNTIMELY SUBMISSION IN RESPONSE TO THE COURT'S OCTOBER 26, 2022 REQUEST FOR INFORMATION REGARDING PLAINTIFF'S UNPLED OMISSION THEORY** |

**INTRODUCTION**

The issues identified by Plaintiff in his interrogatory responses (which were filed two days after the Court's deadline),[1] as well as the arguments made by counsel at the October 25 hearing, have already been evaluated and rejected by the Court. The result should be the same now. In its current iteration, Plaintiff's argument is that Mr. Musk fraudulently omitted the purported "near-breakdown of all communications and negotiations between [Mr. Musk] and the Saudi fund" in the August 13 blog post (the "Blog Post"), which rendered misleading the statement in the Blog Post that "I left the July 31st meeting with no question that a deal with the sovereign wealth fund could be closed…" (Dkt. No. 476 at 5.) But Plaintiff's argument has three fatal problems: (1) it asserts an unpled omission theory that the Court already rejected as unpled and untimely disclosed, (2) it asserts a misleading statement that the Court explicitly ruled was not materially misleading as a matter of law, and (3) it is based on a facially unviable claim.

*First*, Plaintiff never pled this omission theory and the Court **already rejected it** as unpled when it granted Defendants' Motion *in Limine* No. 3. (*Compare* Dkt. No. 452-01 at 3-5 *and* Dkt. No. 466 at 1-2.) Under the PSLRA and the Court's Standing Order, Plaintiff was required to disclose all allegedly misleading statements and omissions along with "the reason or reasons why the statement is misleading" at the pleadings stage. 15 U.S.C. § 78u–4(b)(1)(B); Civil Standing Order R. 10. The Complaint and chart of alleged fraud make no reference to the "near-breakdown" of communications between Mr. Musk and the PIF as a "reason why" the Blog Post is misleading (Compl. ¶ 138; Dkt. No. 224), and Plaintiff has not made any attempt to amend his Complaint to include this new allegation in the two years he has had the communications he contends Mr. Musk should have disclosed. Based on this record, the Court ruled that Plaintiff could not pursue his theory that Mr. Musk misleadingly omitted the status of his communications with the PIF—the very same omission he claims is actionable here—because he did not allege it, did not timely disclose it, and did not have good cause to add it to his Complaint. (Dkt. No. 466 at 1-2.)

---

[1] The Court ordered the Plaintiff to submit the interrogatory responses that purportedly disclosed his unpled theory of liability "by or before 5:00 p.m. on October 26, 2022." (Dkt. No. 499.) Plaintiff submitted the responses at 4:51 p.m. on October 28, 2022. (Dkt. No. 503.)

*Second*, the Court already ruled that the communication Plaintiff claims was made misleading by the alleged omission (which he also identifies in his Proposed Verdict Form)—"I left the July 31st meeting with no question that a deal with the sovereign wealth fund could be closed…"—was not misleading as a matter of law.  (Dkt. No. 251 at 24-25.)  In its Motion to Dismiss Order, the Court held that the Blog Post could not be materially misleading to a reasonable investor because "it contains the true state of affairs that a going-private transaction was not as imminent as he previously represented." (*Id.* at 25.)  The logic of the Court's holding therefore bars Plaintiff from arguing that the Blog Post contains actionable misleading statements.

*Finally*, Plaintiff's theory simply does not state a claim for securities fraud.  The Blog Post is not misleading because: (1) the statement at issue purports to describe the state of affairs as of August 7, rendering any post-August 7 communications irrelevant and in any event (2) the communications at issue show that Mr. Musk and the PIF committed to continue to work with each other on a potential deal as of August 12.  Moreover, Plaintiff cannot plead or prove loss causation for the statement as to the omitted fact—Mr. Musk's communications with the PIF on August 12—was not revealed to the market until **after** the Class Period ended.

In sum, Plaintiff is attempting to combine an omission that the Court has already ruled to be non-actionable with an affirmative statement that the Court has also determined to be non-actionable.  Plaintiff's theory thus doubly fails.  At this late hour shortly before trial, Plaintiff cannot resurrect any claims based on the Blog Post, and any attempt to do so should be rejected.  It is barred by the PSLRA, the Court's Standing Order, the Court's prior motion to dismiss and *in limine* orders, and hornbook securities law.

## ARGUMENT

### I. PLAINTIFF NEVER PLED, AND THE COURT ALREADY REJECTED, THE OMISSION THEORY HE NOW ASSERTS

On July 29, 2022, the Court granted Defendants' Motion *in Limine* No. 3 and rejected Plaintiff's attempt to pursue a theory at trial that the Blog Post was actionable under an omissions theory because it failed to disclose that Mr. Musk's communications with the PIF "were on the brink of collapse." (Dkt. No. 466 at 1-2; *see also* Dkt. No. 452-1 at 5-6 (articulating Plaintiff's omission theory).)  The Court held

that the theory was neither alleged nor "timely disclosed" and that Plaintiff did not have good cause to amend his Complaint to add it. (Dkt. No. 466 at 1-2.) Plaintiff is now attempting to revive this already rejected unpled theory by attempting to tie it, for the first time, to a different statement in the Blog Post. (*Compare* Dkt. No. 452-1 at 5-6 *with* Dkt. No. 476 at 5.)  Indeed, the specific omission identified in Plaintiff's response to the Court's request for additional information is the ***exact same*** omission that Plaintiff identified in response to Motion *in Limine* No. 3. (*Compare* Dkt. No. 503 at 2 ("[O]n Pages 10-26, [Plaintiff] identifies the facts supporting his contention (including Elon Musk's text messages with Yasir Al-Rumayyan of the Saudi PIF.") *with* Dkt. 452-1 at 2 ("Plaintiff also provided Defendants with an extensive list of supporting evidence. This included text messages between Musk and Yassir Al-Rumayyan on behalf of the Saudi PIF . . .").)  The Court, as it did before, should deny Plaintiff's attempt.

It is undisputed that Plaintiff never alleged in his Complaint or addendum chart filed pursuant to the Court's Standing Order that the Blog Post was misleading because it omitted "the near-complete breakdown of all communications and negotiations between Musk and the Saudi fund" between July 31 and August 13. (*Compare* Dkt. No. 476 at 5 *with* Compl. *and* Dkt. No. 224.)  This should end the Court's inquiry. *In re Twitter, Inc. Sec. Litig.*, No. 16-CV-05314-JST, 2020 WL 4188787, at *2 (N.D. Cal. May 19, 2020) (precluding unpled securities fraud theory from being presented to the jury).

The PSRLA requires that a "complaint shall specify each statement alleged to have been misleading**,** [and] ***the reason or reasons why the statement is misleading***…" 15 U.S.C. § 78u–4(b)(1)(B) (emphasis added); *see also In re Twitter, Inc. Sec. Litig.*, 2020 WL 4188787, at *2 ("the complaint 'will go forward only as to those specific statements for which the plaintiff has pled sufficient facts to comply with Rule 9 and the PSLRA.'").  Similarly, the Court's Standing Order requires the plaintiff in a securities fraud case to attach a chart that identifies the alleged fraudulent statement at issue and articulate the "Reason Why False/Misleading When Made."  (Civil Standing Order at R. 10.)  The requirement that Plaintiff articulate his specific theory for why the communication was misleading is crucial since pleading an actionable omission "is no small task." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194 (2015).  Plaintiff was required to "identify particular (and material) facts going to the basis for [Mr. Musk's] opinion…whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Id.*; *see also City of Dearborn Heights*

*Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017) (*Omnicare* pleading standards apply to section 10(b) claims). Neither Plaintiff's Complaint nor chart make any reference to the failure to disclose the alleged "breakdown of all communications and negotiations" and thus do not come close to meeting his obligations under the PSLRA. (*See* Compl.; Dkt. No. 224.) The only allegation regarding any omission theory in either document is the single sentence that the Blog Post "continued to omit and/or conceal that an agreement had not yet been secured from any potential source of funding to fund a going-private transaction at a price of $420 per share or that it was unlikely that current shareholders of the public company could remain shareholders once it went private." (Compl. ¶ 138.) Plaintiff cannot be permitted to circumvent the PSRLA's and the Court's unambiguous and stringent pleading requirements by proffering an unalleged new theory at the eve of trial.

Nor can Plaintiff amend his Complaint at this late date to add this new theory or be permitted to pursue it because he contends he disclosed it in an interrogatory response. First, as the Court correctly held when it first rejected this new omission theory, Plaintiff's deadline to amend his Complaint passed more than two years ago and Plaintiff cannot demonstrate good cause to amend it now. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Neidermeyer v. Caldwell*, 718 F. App'x 485, 488 (9th Cir. 2017) ("[W]hen a party seeks to amend a pleading after the pretrial scheduling order's deadline for amending the pleadings has expired, the moving party must satisfy the 'good cause' standard of [Rule 16].") (quotation omitted). As Plaintiff was aware of the text messages giving rise to his new theory since October 2020 and made no efforts to amend the Complaint since that discovery, he cannot possibly demonstrate the diligence that the good cause standard requires. *See Ray v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 4902357, at *2 (9th Cir. 2021) (affirming denial of leave to amend where plaintiff "d[id] not adequately explain its delay in raising these new theories"). The November 2021 interrogatory responses do not, as the Court previously held, constitute a "timely disclos[ure]" (Dkt. No. 466 at 2), nor do they excuse Plaintiff of his obligation under the PSLRA to plead it in his Complaint, 15 U.S.C. § 78u–4(b)(1)(B); *see, e.g.*, *California Inst. of Tech. v. Broadcom Ltd.*, No. CV 16-3714-GW (AGRX), 2019 WL 8807748, at *4 (C.D. Cal. July 1, 2019), *aff'd*, 25 F.4th 976 (Fed. Cir. 2022) (declining to permit party to rely on unpled claim "the basis that it was disclosed in written discovery").

-4-   Case No. 3:18-cv-04865-EMC
DEFENDANTS' RESPONSE TO PLAINTIFF'S UNTIMELY SUBMISSION IN RESPONSE TO THE COURT'S OCTOBER 26, 2022 REQUEST FOR INFORMATION REGARDING PLAINTIFF'S UNPLED OMISSION THEORY

The interrogatory response Plaintiff identifies does not articulate his new omissions theory but merely states that "in discussions with representatives with the Saudi Arabia Public Investment Fund after August 7, 2018, Musk had attempted to exclude the Public Investment Fund from participating in any going-private transaction." (Dkt. No. 503-1 at 9.) This can hardly be described as putting Defendants on notice of an entirely new theory of liability, particularly under *Omnicare*'s strict standards. Plaintiff's interrogatory response does not, for instance, make any link between this allegation and the statement "I left the July 31st meeting with no question that a deal with the Saudi sovereign fund could be closed . . . " (or even identify this specific statement), or explain why the failure to disclose the post-August 7 discussions rendered Mr. Musk's statement about his state of mind on July 31 misleading. *See Omnicare*, 575 U.S. at 194. Moreover, Plaintiff's new position is contradicted by the position he took in opposition to Defendants' Motion *in Limine* No. 3, which is that this interrogatory response regarding Mr. Musk's post-August 7 discussions with the PIF purportedly put Defendants on notice of his intent to pursue an omission theory regarding a ***different*** portion of the Blog Post, Mr. Musk's statement "I have continued to communicate with the Managing Director of the Saudi fund…" (Dkt. Nos. 452 at 1; 452-1 at 5-7.) Plaintiff cannot credibly contend that the interrogatory responses put Defendants on notice of this new specific theory since he identified the same vague response as disclosing a theory as to a completely different statement in the Blog Post.

## II. THE COURT ALREADY HELD THE BLOG POST AND SPECIFIC COMMUNICATION AT ISSUE ARE NOT MATERIALLY FALSE AS A MATTER OF LAW

Plaintiff's attempt to assert his unpled omission theory at trial has another fatal defect: the Court already ruled that the communication Plaintiff identified purportedly rendered misleading by the omission—"I left the July 31st meeting with no question that a deal with the Saudi sovereign fund could be closed . . . "—was not misleading and therefore "not independently actionable" as a matter of law.

In its Order on Defendants' Motion to Dismiss, the Court identified the statement Plaintiff claims gives rise to his new omission theory and held that a "reasonable investor" would not "read this August 13 blog post and take away an impression of a state of affairs that differs in a material way from the one that actually exists." (*Id.* at 25). It explained that:

> "After claiming that there was 'no question' that a deal could be closed with the PIF once he left the July 2018 meeting, Mr. Musk then proceeds to identify significant hurdles that stand in the way of finalizing the transaction—namely, 'financial and other due diligence' and an 'internal review process' among other conditions. Suffice it to say, Mr. Musk's optimism about closing the deal does not permeate into the latter half of this blog post. While Mr. Musk's representation that he had 'no question' a deal could be closed was arguably untrue, the second half of the same communication contains the truth—*i.e.*, it contains the true state of affairs that a going-private transaction was not as imminent as he previously represented." (*Id.*)

The Court's logic that the statement was not misleading because the Blog Post later explained that "a going private transaction was not as imminent as [Mr. Musk] previously represented" applies with equal force to the Complaint's only articulation of an omission theory that "Musk's blog post also continued to omit and/or conceal that an agreement had not yet been secured from any source of funding to fund a going-private transaction at a price of $420 per share." (*Compare* Dkt. 251 at 25 *with* Dkt. No. 184, Consolidated Complaint ("Compl.") ¶ 138.)  Just as the Court held that the Blog Post's disclosures that any deal was contingent on "financial and other due diligence," "an internal review process," and "other conditions" (including, a decision on "the nature and source of funding to be used" and the "potential structures and options") precluded a finding that representations as to the imminence of a deal closing were misleading, so too would they preclude any finding that Mr. Musk "concealed that an agreement had not yet been secured." (*Compare* Dkt. No, 251 at 25 *with* Compl. ¶¶ 103, 138.)

Thus, the Court's Order holding that the Blog Post and communication, "I left the July 31st meeting with no question that a deal with the Saudi sovereign fund could be closed . . .", could not be misleading as a matter of law foreclosed any section 10(b) claim arising from that statement, including both Plaintiff's pled (Compl. ¶ 138) and unpled omissions theories (Dkt. No. 476 at 5).

## III. PLAINTIFF'S NEW THEORY IS NOT ACTIONABLE

Even if Plaintiff could somehow clear the insurmountable hurdles of a prior dismissal, failure to plead, and a lack of good cause to amend his Complaint, his new theory fails as a matter of law and should not be presented to the jury because it does not give rise to a securities law violation.

*First*, Plaintiff cannot allege a material omission based on the statement, "I left the July 31st meeting with no question that a deal with the Saudi sovereign fund could be closed . . . " Plaintiff's contention that the statement is rendered misleading by its failure to disclose Mr. Musk's August 12, 2018

text messages with representatives from the PIF ignores that the statement is describing the information Mr. Musk had **as of August 7, 2018**. (Compl. ¶ 103) ("This is why I referred to 'funding secured' in the August 7 announcement.")  Accordingly, Mr. Musk's post-August 7 communications with the PIF are not relevant to the veracity of the statement at all; indeed they have nothing to do with it.  And even if they were relevant, the Blog Post was not a materially misleading description of Mr. Musk's relationship with the PIF as of August 13.  Plaintiff's entire theory elides the fact that Mr. Musk's August 12 communications with the PIF conclude with an agreement for the parties to "work on [a] PIF statement" so that PIF and Tesla could continue working together to take the company private. (Ex. 121 at 12.) This is entirely consistent with Mr. Musk's representations in the Blog Post about the then-existing status of the go-private deal.  (*See* Compl. ¶ 103.)

*Second*, Plaintiff cannot plead or prove loss causation under his theory.  Plaintiff has pointed to **nothing** that revealed the purported "disagreement" between Mr. Musk and the PIF to the market.  And if Plaintiff contends that he did not plead this omission theory because he did not learn of it until discovery, then it follows that the market never learned that the statement was false during the Class Period.  In that case, there was no "corrective disclosure" during the Class Period that "revealed" the falsity of the statement, as is necessary to prove loss causation.  *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) ("The burden of pleading loss causation is typically satisfied by allegations that the defendant **revealed the truth** through 'corrective disclosures' which 'caused the company's stock price to drop and investors to lose money.'") (emphasis added).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reject Plaintiff's attempt to assert his dismissed claim and/or new unpled theory at trial.

DATED: October 26, 2022         Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Alex Spiro*
    Alex Spiro *(appearing pro hac vice)*

*Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice*