QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (*appearing pro hac vice*)
  alexspiro@quinnemanuel.com
  Andrew J. Rossman (*appearing pro hac vice*)
  andrewrossman@quinnemanuel.com
  Ellyde R. Thompson (*appearing pro hac vice*)
  ellydethompson@quinnemanuel.com
  Jesse Bernstein (*pro hac vice* forthcoming)
  jessebernstein@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

  Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
  Kyle Batter (Bar No. 301803)
  kylebatter@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendants Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**DEFENDANTS' REQUEST TO ADOPT THEIR AMENDED PROPOSED VERDICT FORM AND OBJECTIONS TO PLAINTIFF'S PROPOSED VERDICT FORM** |

# INTRODUCTION

Pursuant to Federal Rules of Civil Procedure Rules 49 and 51, as well as the Court's Civil Pretrial Instructions Section C. 5, Defendants respectfully submit their Amended Proposed Verdict Form, their request for their adoption by the Court, and their objections to Plaintiff's Proposed Revised Verdict Form.

## I. DEFENDANTS' REQUEST FOR ADOPTION OF THEIR PROPOSED AMENDED VERDICT FORM

Defendants submit the attached Amended Proposed Verdict Form in response to the Court's Final Pretrial Order. In the Pretrial Order, the Court required Plaintiff's options damages expert Dr. Heston to use actual option prices to calculate damages and ordered Plaintiff to use real numbers to calculate the "actual curve." (Dkt. No. 508 at 46-47.) Apparently in response to this Order, Plaintiff has materially changed his options damages theory and has now taken the position that the jury need not render a verdict on the implied liability of options during the Class Period. He has now submitted a "Revised Verdict Form" to that effect. Defendants, in turn, submit their own Amended Verdict Form which, as explained below, poses questions necessary for the jury to render a verdict on whether Plaintiff meets his burden to prove options damages, the date upon which the market learned the information necessary to determine the accuracy of the Tweets, and the date upon which Tesla's stock price returned to the price it would have traded at but-for the alleged misrepresentations.

### A. Plaintiff' Seeks An Award Of Option Damages Without A Verdict On Implied Volatility

In his first proposed verdict form, Plaintiff asked the jury to calculate the percentage of implied volatility of Tesla's stock, which would then be used to calculate inflation or deflation of each option contract during the Class Period. (Dkt. No. 476-1, at 6.) Now, in light of the Court's Pretrial Order requiring Plaintiff's expert Dr. Heston to use actual—and not hypothetical—option prices to calculate the *actual* options prices for purposes of damages (Dkt. No. 508 at 46-47), Plaintiff seeks to remove from the jury any responsibility to render a verdict on implied volatility for the *but-for* options prices and instead proposes that "but-for price should be calculated using the but-for price of Tesla stock as determined by the jury at trial and the actual observed implied volatility as reported by the CBOE [Chicago Board

Options Exchange] Exchange **on the date the option was transacted** during the Class Period." (Plaintiff Submission of Revised Verdict Form at 3.) (emphasis added).

In other words, Plaintiff seeks to be awarded options damages in a judgment without receiving a verdict from the jury that he met his burden to prove a change in implied volatility for "but for" options prices. This shift in the approach to the verdict form is accompanied by a material shift in his theory of options damages.[1] Plaintiff previously argued that Mr. Musk's Tweets caused option volatility to compress, resulting in a reduction of the value of options. Plaintiff's expert sought to calculate what volatility would have been absent the purported misrepresentations in the Tweets and opined that the volatility would have been higher—resulting in higher options prices. Now, in light of the Court's order requiring him to calculate the "actual" options prices using "actual" options prices, Plaintiff has offered a new theory of option damages that assumes that volatility **would have been the same in the but-for world as it was in the actual world**. That is, Plaintiff seeks damages calculated based upon the actual volatility without having to prove that the volatility would have been equally compressed in the but-for world, a position contradicted by Plaintiff's own prior position.

Plaintiff thus seeks to circumvent the jury by proposing that it not be required to render a verdict on his new options theory and whether or not he has proven the assumption that undergirds it. But Plaintiff's new theory of options damages, based on an assumption that contradicts his expert's prior conclusions and seemingly contradicts Plaintiff's underlying theory of the case, must be tested and accepted by the jury in order for him to be awarded damages under it.

Accordingly, Defendants' proposed Verdict Form poses two questions aimed directly at Plaintiff's new theory. The first question—"Has Plaintiff proven that the implied volatilities for each Tesla stock option during each day of the Class Period, as reported by the CBOE, would have been the same but for Tweet 1 and/or Tweet 2?"—directly tests whether Plaintiff has proven the assumption upon which his new options damages is based. The second question—"Has Plaintiff proven that the movements in prices of a January 2020 at-the-money-straddle during the Class Period can be reliably used to measure the

---

[1] Defendants are seeking supplemental reports from Dr. Heston and Dr. Hartzmark and reserve the right to depose one or both and seek the preclusion of the new opinions under *Daubert*.

changes in the direct effect of Tweet 1 and/or Tweet 2?"—tests whether Plaintiff's proposed method of calculating options damages is reliable. These questions address "the factual issues essential to judgment" on Plaintiff's theory of option damages and should thus be included on the Verdict Form. *See United States v. Real Prop. Located at 20832 Big Rock Drive, Malibu, Cal. 902655*, 51 F.3d 1402, 1408 (9th Cir. 1995).

### B. The Jury Should Determine When The Market Learned The Truth Of The Alleged Misstatements And When Tesla's Stock Price Returned To The Level It Would Have Absent Any Misstatements

In addition to including questions relating to Plaintiff's new, previously undisclosed, theory of options damages, Defendants' respectfully request that the Court include two additional questions relating to reliance, loss causation, and damages.

The first, Question No. 8 in the Liability Section, asks the jury—if it determines Plaintiff proved reliance—to indicate the date upon which "the market learned the truth about the information that was allegedly misstated in Tweet 1 and/or Tweet 2." This question, which has been added in response to the Court's determination in the Pretrial Order that August 7, 2018 is the only date in which an actionable misstatement was published (Dkt. No. 508 at 15-17), is necessary because the date of the full corrective disclosure remains a disputed issue in this case. As the Supreme Court made clear in *Basic* and *Haliburton II*, fraud-on-the-market reliance is only presumed for the period of time between when the "misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267-68 (2014); *Basic Inc. v. Levinson*, 485 U.S. 224, 248-49 (1988) (because "news of the merger discussions credibly entered the market and dissipated the effects of the misstatements, those who traded Basic shares after the corrective statements would have no direct or indirect connection with the fraud."). Defendants contend that the market had all of the information necessary to assess the accuracy of Mr. Musk's statements by August 13, whereas the Plaintiff contends that a partial corrective disclosure was made in a *New York Times* article on August 17, 2018 (*see, e.g.,* Dkt. No. 466 ("Plaintiff may be able to show that the *New York Times* article, which was published in print on August 17, 2018, is at least a partial corrective disclosure.").). This is a key dispute with a profound impact on damages in this case. If the jury determines that the August 13 Blog Post disclosed all of the necessary information to the market, Plaintiff will, at a minimum, not be able to prove reliance or obtain damages for any events

that post-date that disclosure, including the *New York Times* article whose impact on the market is primarily responsible for damages in Dr. Hartzmark's report.  Moreover, if the August 13 Blog Post disclosed all necessary information, because the market price of Tesla's stock **did not go down** in response to that information, it suggests that investors were not harmed by the original Tweets.

The second, Question No. 2 in the Damages section, asks "what date did the market price of Tesla stock return to the level it would have been trading at absent any material misstatements?"  "Damages in a securities fraud case are measured by the difference between the price at which a stock sold and the price at which the stock would have sold absent the alleged misrepresentations or omissions."  *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014 (C.D. Cal. 2003) *aff'd sub nom. Mortensen v. Snavely*, 145 F. App'x 218 (9th Cir. 2005).  Accordingly, Plaintiff cannot be awarded damages once the market for Tesla stock returns to the price at which it would have been trading but-for the alleged misrepresentations.  This question asks the jury to identify the date upon which Tesla's stock price was no longer impacted by the alleged fraud and that investors were no longer damaged by artificial inflation.  It is necessary for the calculation of damages in this case—both for stock and options, in light of the Plaintiff's new proposal to simply port the stock price inflation into the CBOE's numbers—for the jury to determine the date in which the market returned to equilibrium and that damages ceased to accrue.

## II. DEFENDANTS' OBJECTIONS TO PLAINTIFF'S PROPOSED REVISED VERDICT FORM

Defendants reserve, incorporate by reference, and reassert their prior objections to Plaintiff's Verdict Form (*see* Dkt. No. 484), including but not limited to Plaintiff's proposal to use a general verdict form on liability instead of a special verdict form that asks the jury to determine each element.

Defendants also object to Plaintiff's Revised Verdict Form on the grounds that it removes from the jury any determination as to whether Plaintiff has proved his implied volatility and options theory.  As discussed above, Plaintiff originally asked the jury to determine whether he proved the implied volatility for various options on each date in the class period.  Plaintiff has now abandoned his initial plan to have the jury decide implied volatility and seeks options damages without obtaining any verdict from the jury on volatility, even though Plaintiff does not dispute that volatility is a component of options prices. Instead, Plaintiff asks the Court to assume that volatility would be the same in the but-for world as in the

actual world—an assumption contradicted by Plaintiff's own prior position—and proposes that the options' "but-for price should be calculated using the but-for price of Tesla stock as determined by the jury at trial *and the actual observed implied volatility* as reported by the CBOE Exchange on the date the option was transacted during the Class Period." (Plaintiff Submission of Revised Verdict Form at 3.) But the question of what the volatility in the but-for world would have been is not something that can simply be presumed; it is a disputed assumption that must be proven by the Plaintiff and accepted by the jury. To the extent Plaintiff wishes to pursue an options damages theory that rests on the notion that the volatility Plaintiff claims was compressed as a result of Mr. Musk's alleged material misstatements would have been compressed to the same extent even without any alleged material misrepresentations, the jury should decide whether such a theory is consistent with the evidence. Plaintiff's proposal that the Court award hundreds of millions in options damages without the jury rendering any verdict on the disputed presumptions and methods by which Plaintiff will calculate his damages removes the jury from the determination of options damages in violation of Defendants' Seventh Amendment rights. *See e.g., Morgan v. Woessner*, 997 F.2d 1244, 1258 (9th Cir. 1993) ("[T]he Seventh Amendment reserves the determination of damages, in jury trials within its scope, to the jury....").

      Defendants further object to Plaintiff's Revised Verdict Form on the grounds that Plaintiff has yet to even disclose his new theory. Plaintiff has not served any supplemental or amended reports from Dr. Heston or Dr. Hartzmark or articulated his new theory outside of his submission in support of the Revised Verdict Form and informal meet and confers with Defendants' counsel. Due to this lack of disclosure, Defendants admittedly do not know precisely what Plaintiff is now seeking to do and have attempted to piece a barely coherent theory together from different sources. Plaintiff's decision to radically shift his options damages approach at the eleventh-hour and without sufficient information for the Defendants to analyze and evaluate his theory is an independent basis to reject his Revised Verdict Form.

      The Court cannot permit Plaintiff to propose an entirely new theory of options damages on the eve of trial and prevent the jury from scrutinizing or rendering any verdict on that theory. The Plaintiff's proposed Revised Verdict Form should be rejected on those grounds and any verdict form should require the jury to determine whether Plaintiff has met his burden to prove the validity of his options' damages theory.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court adopt their Amended Proposed Verdict form.

DATED: December 20, 2022    Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Alex Spiro*
    Alex Spiro *(appearing pro hac vice)*

*Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on this the 20th day of December 2022.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Michael T. Lifrak*
Michael T. Lifrak

*Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice*