**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
        amccall@zlk.com

*Attorneys for Plaintiff and Counsel for the Class*

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**PLAINTIFF'S SUBMISSION OF REVISED PROPOSED VERDICT FORM** |

In response to the Court's Final Pretrial Order (ECF No. 508) as well as statements made by the Court during the Pretrial Conference held on October 25, 2022, Plaintiff hereby submits a revised proposed verdict form to reflect the directions from the Court. Specifically, Plaintiff has revised his proposed verdict form to reflect the Court's rulings and statements on three issues: (1) that the August 13, 2018 blogpost is not an independently actionable statement; (2) the inclusion of pre-filled amounts of artificial inflation in Tesla stock and convertible bonds; and (3) the use of actual trade data for the determination of price inflation or deflation for Tesla stock options. A revised proposed verdict form is attached hereto as Exhibit A.

**August 13, 2018 Blogpost**. In its order, the Court held that statements from the August 13 blog post are not independently actionable. ECF No. 508 at 17. Plaintiff had previously proposed a verdict form that included a question for the jury whether or not he had proven his Rule 10b-5 claim based on the August 13, 2018 blogpost. Consistent with the Court's ruling in the Final Pretrial Order, the revised proposed verdict form removes that question.

1 **Pre-filled Amounts.** Both the proposed verdict forms submitted by Plaintiff and Defendants included tables of pre-filled amounts of artificial inflation for Tesla stock and convertible bonds. (ECF Nos. 476-1 at 4; 484 at 9). These numbers reflected the amount of inflation observed by Plaintiff's expert Dr. Michael Hartzmark for those securities during the Class Period. Following comments by the Court, Plaintiff no longer proposes to include the pre-filled amounts of artificial inflation on the verdict form. 10/25/22 Tr. at 140:2-140:8.

**Option Damages.** To calculate damages suffered by investors in options on Tesla stock, Plaintiff's expert, Dr. Hartzmark, has proposed applying the widely accepted out-of-pocket methodology to their transactions in Tesla options during the Class Period. *See* Hartzmark 11/10/21 Rep. at ¶¶ 4(6), 214, 222, 228.  Under this methodology, damages per share consists of "the difference between the actual purchase price of the security and what would have been the purchase price of the security had there been no fraud or misrepresentation." Hartzmark 11/10/21 Report at ¶ 207; *id.* at ¶ 228 (discussing "the standard 'out-of-pocket' method of calculating damages . . . involves a measure of the net minute-by-minute or daily inflation (or deflation) in the price of the option contract at the time of the purchase and at the time of the sale.").

Defendants have offered no alternative measure of damages. In applying this methodology to options, Dr. Michael Hartzmark, relying on the analysis of Prof. Steven Heston: (1) utilized the well-accepted Black-Scholes-Merton model to derive the "but-for" price of the Tesla options (the price if there had been no fraud); and (2) made adjustments to the actual traded prices to account for market noise and other confounding information. Professor Heston and Dr. Hartzmark both acknowledged, however, that actual unadjusted market prices could also be used.[1]

---

[1] Heston 11/8/21 Rep. at ¶ 163 (noting "to calculate the impact on traded options . . . [o]ne possibility is to calculate a unique but-for price, and then compare that to the transacted price."). Hartzmark 11/10/21 Rep. at ¶¶ 217-223 (noting that the impact quantum is "consistent with the out-of-pocket damages methodology for options I presented in the Class Certification Report" but noting the use of revalued option prices as opposed to actual prices given the benefits of the impact quantum and indicating where the observed option prices would replace the Re-Valued Fitted Option Value); *see also* Hartzmark 3/18/22 Dep. Tr.  at 298:21-299:1 (noting that to the "extent that these values [in Appendix 8 showing the levels of inflation or deflation in Tesla options] are replaced, say, for example, with defendants' values, then the methodology and the out-of-pocket methodology to calculate damage would remain the same"); Hartzmark 11/10/21 Rep. at ¶ 13 ("OPINION 5: Based on a formulaic procedure that can accommodate any

In moving to exclude Dr. Hartzmark's opinions, Defendants argued that no adjustments should be made to actual market data when calculating damages for Tesla stock options. *See* 10/25/22 Tr. at 40:9-42:7.

In its order, the Court held that (1) the use of the Black-Scholes-Merton model for calculation of the "but-for" option price was appropriate; and (2) accepted that Plaintiff would instead use actual transacted prices to calculate damages for traders in Tesla stock options. 12/7/22 Order at 47, 51. Consistent with this ruling, Plaintiff proposes that damages for investors in Tesla stock options be calculated using the out-of-pocket methodology using the Black-Scholes-Merton model to calculate the but-for price for Tesla stock options and this but-for price should be calculated using the but-for price of Tesla stock as determined by the jury at trial and the actual observed implied volatility as reported by the CBOE Exchange on the date the option was transacted during the Class Period.

Plaintiff's proposed approach is also consistent with Defendants' position that Professor Heston needed to use "actual prices" for Tesla options. First, in Defendants' motion to exclude the opinions of Professor Heston and Dr. Hartzmark's opinions that rely upon them, Defendants repeatedly argued that Dr. Hartzmark and Professor Heston opinions were unreliable because the impact quantum did not use "actual prices" of Tesla options to calculate damages. ECF No. 479, at 1:8-13 (taking issue that "Heston does not compare actual Tesla option prices or quotes with 'but for' prices, as is standard, accepted practice."); 3:15 (faulting Heston for not using the actual traded options prices or the bid-ask quotes contained in the CBOE Exchange options data); 3:16-18 (concluding that "[t]he result of Heston's decision not to use actual transaction prices or quotes . . . is that both the theoretical prices he calculated, and the differences between them, are ***demonstrably wrong***."); 3:21-26 (discussing an example from Defendants' expert Professor Seru's rebuttal report in which he criticized Dr. Hartzmark's calculated level of artificiality of a

---

modification determined to be necessary by the finder of fact, I calculate the levels of artificial inflation (or deflation) in all of Tesla's securities that are related to Plaintiff's allegations for the close on each day of the Class Period as presented in Table 1 through Table 3."); *id.* at ¶ 4(2) n.9 (discussing that the framework for estimating damages "offer flexibility in that alternative figures can be used if additional evidence is presented");

Tesla option by arguing that "had Heston calculated, and Hartzmark used, the implied volatility of the particular option being analyzed—rather than that of Heston's ATM forward straddle—he would have concluded that the option price was actually inflated[.]"); 5:9-13 (concluding that the methodology for calculating damages on Tesla options was unreliable because "[e]ven though [Heston] had access to actual market prices and quotes for Tesla options during the class period, he largely ignored them.").[2] Second, Defendants' arguments are complementary to the opinions of their expert, Professor Amit Seru, who criticized Professor Heston's methodology and Dr. Hartzmark's implementation of it to calculate damages on Tesla options because Professor Heston "fails to use actual prices in the actual world to measure damages and consequently fails to reliably estimate the difference between actual and but-for prices"). Seru 12/8/21 Rep. at ¶ 8; *see id.* at ¶¶ 27-32 (section titled "Professor Heston's methodology fails to use actual prices in the actual world to measure damages and fails to reliably estimate the difference between actual and but-for prices"); *id.* at ¶¶ 22-26 (criticizing Professor Heston's use of a constant implied volatility by expiry because it does not use the actual "implied volatilities of the particular option being analyzed").[3] Thus, Plaintiff's proposed use of using actual option prices and the CBOE's implied volatilities for these "actual prices" obviates the issues raised by Defendants and is in accord with Defendants' argument that no adjustments should be made to actual market data when calculating damages for Tesla stock options. *See* 10/25/22 Tr. at 40:9-42:7; 45:14-24.

---

[2] *See also id.* at 2:6-12 (arguing that Heston used theoretical instruments and the implied volatilities calculated therefrom rather than instruments "actually traded in the market"); 2:23-3:3 (arguing again that Heston "[r]ather than compare the actual transaction prices of Tesla options during the class period to 'but-for' option prices—as is standard practice" used theoretical option instruments and prices); 3:6-9 (noting that Heston "did not rely on actual market prices" for a majority of Tesla options).

[3] *See also* Seru 3/22/22 Dep. Tr. at 120:4-121:19 (discussing what the "right implied volatility" was for assessing damages stating "[s]o when I say the right implied volatility, basically what I have sort of done here, which is look at implied volatility of each option and shown you that if you actually were to take that implied volatility" which Seru calculated from the actual bid/ask quotes of Tesla options); 129:8-11 (criticizing Professor Heston's methodology because the modeled prices differed from "actual prices"); 133:1-5 (same); 213:11-15 (same); 230:11-16 (same).

|   |   |
|---|---|
| 1 | Plaintiff's proposal will eliminate the requirement for the jury to determine but-for implied volatilities for Tesla options as reflected in Plaintiff's initial proposed verdict form. This question has now been removed from the revised verdict form. |
| 2 | |
| 3 | |
| 4 | Plaintiff is available to discuss the issue further with the Court at the Court's convenience.[4] |

Dated: December 20, 2022                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

-and-

Nicholas I. Porritt
Elizabeth K. Tripodi
Alexander A. Krot III
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel.: (202) 524-4290
Email: nporritt@zlk.com
Email: etripodi@zlk.com
Email: akrot@zlk.com
(admitted *pro hac vice*)

-and-

Joseph Levi
Eduard Korsinsky
LEVI & KORSINSKY, LLP

---

[4] Plaintiff objects to Defendants' proposed revised verdict form filed earlier this afternoon. ECF No. 511. The verdict form departs materially from the version they initially submitted on September 20, 2022 (ECF No. 484) in ways that are unrelated to the Court's Final Pretrial Conference Order (ECF No. 508). Plaintiff will be submitting a response to Defendants' proposed revised verdict form forthwith.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Email: jlevi@zlk.com
Email: ek@zlk.com
(admitted *pro hac vice*)

*Attorneys for Plaintiff and Counsel for the Class*