**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
         amccall@zlk.com

*Attorneys for Plaintiff and Counsel for the Class*

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**PLAINTIFF'S SUBMISSION OF SECOND REVISED PROPOSED VERDICT FORM** |

Plaintiff submits the attached Second Revised Proposed Verdict Form to resolve the dispute that has arisen over the appropriate use of "actual" market data in the context of calculating option damages. Plaintiff's initial proposed verdict form had included Question B.2. (*i.e.*, requiring the jury to determine "but for" implied volatility percentages for use with the Black-Scholes-Merton model when calculating option damages). ECF No. 476-1. Following the Court's Final Pretrial Conference Order (ECF No. 508), Plaintiff submitted a revised proposed verdict form omitting Question B.2. given the parties' apparent readiness to use "actual" market data where available in order to limit and/or simplify the issues for trial. ECF No. 513-1. Defendants then objected to the removal of Question B.2. and insisted that the jury be required to provide "but for" implied volatility data. Defendants also argued Plaintiff's reliance on "actual" market data for both the "but for" and "actual" curves constituted a material change in his damages theory that warranted supplemental discovery and additional questions on the verdict form. Given Defendants' objection and arguments, Plaintiff now submits the attached Second Revised Proposed Verdict Form that reincorporates Question B.2. and eliminates Defendants' need for supplemental expert discovery and additional questions on the verdict form.

I. <u>Plaintiff's Second Revised Proposed Verdict Form Comports with the Court's Final Pretrial Conference Order.</u>

Defendants had previously argued in motion *in limine* briefing and during the final pretrial conference that Plaintiff should use "actual" market data (including actual implied volatilities) when calculating option damages. *See*, *e.g.*, 10/25/2022 Tr. at 55:15-55:20. In response to this argument and the Court's guidance during the final pretrial conference, Plaintiff recognized that using "actual" market data would simplify issues for the jury and potentially avoid unnecessary complication when addressing options. By relying on "actual" implied volatility data for both the "actual" and "but for" curves, the only input needed from the jury would have been the "but for" stock price. Thus, a reasonable estimate of damages for options would have been possible without needing the jury to decide potentially complicated issues pertaining to implied volatility. Notwithstanding, Defendants objected to this approach in support of using "actual" market data for constructing the "actual" curve only, thereby requiring the jury to determine implied volatility percentages for the "but for" curve. Plaintiff agrees to follow this approach and, pursuant to the Court's order dated December 22, 2022, will provide updated calculations from Professor Steven Heston as well as make Professor Heston available for a 1 hour deposition to address them.[1]

Attached hereto as Exhibit A is Plaintiff's Second Revised Proposed Verdict Form which reincorporates Question B.2. from the initial verdict form. Question B.2. requires the jury to determine "but for" implied volatility percentages. With this revision, Plaintiff believes that there is no need for supplemental expert discovery (let alone any legitimate reason for delaying the trial).

II. <u>Defendants' Amened Verdict Form Includes Special Interrogatories that Are Unnecessary, Confusing, and Prejudicial.</u>

Defendants improperly include specific interrogatories and/or requests for special verdicts in their revised verdict form. These interrogatories appear in Section B (Questions 3 and 4) (ECF No. 511-1, p. 5) and require the jury to decide whether Plaintiff has "proven" that "implied

---

[1] Plaintiff continues to explore with Defendants ways to simplify the presentation of the questions regarding option damages to the jury.

1    volatilities for each Tesla stock option during each day of the Class Period, as reported by the
2    CBOE, would have been the same but for Tweet 1 and/or Tweet 2" and "proven" that "movements
3    in prices of a January 2020 at-the-money-straddle . . . can be reliably used to measure the changes
4    in the direct effect of Tweet 1 and/or Tweet 2." ECF No. 511 at 2, 511-1 at 5. These questions are
5    unnecessary and confusing, given that Plaintiff's Second Revised Proposed Verdict Form tasks
6    the jury with deciding the implied volatility percentages for the "but for" curve. Thus, including
7    these interrogatories would be improper. *See Galdamez v. Potter*, 415 F.3d 1015, 1026 n.9 (9th
8    Cir. 2005) (refusing to use a special verdict form where it "is unlikely to be illuminating, and in
9    many cases may mislead or confuse the jury or otherwise lead to error."); *Santos v. Posadas De
10   P.R. Assocs.*, 452 F.3d 59, 65 (1st Cir. 2006) (refusing to us a special verdict form that was "too
11   complicated," noting that "Less is sometimes more."); *MKB Constructors v. Am. Zurich Ins. Co.*,
12   No. C13-0611JLR, 2015 U.S. Dist. LEXIS 32169, at *83-84 (W.D. Wash. Mar. 14, 2015) (no
13   error where the court refused to adopt a "elaborate, confusing, and slanted special verdict form in
14   favor a simpler form for the jury."); *United States v. Yagi*, No. CR-12-0483 EMC, 2013 U.S. Dist.
15   LEXIS 153704, at *2 (N.D. Cal. Oct. 25, 2013) (rejecting special verdict form where it is
16   "unnecessary under the law and potentially confusing to the jury.").

17        Plaintiff's Second Revised Proposed Verdict Form makes clear that Plaintiff is *not*
18   changing his damages theory. Thus, the inclusion of these special verdicts and/or interrogatories
19   is unnecessary. In particular, Defendants' verdict includes the question: "[h]as Plaintiff proven
20   that the movements in prices of a January 2020 at-the-money-straddle during the Class Period can
21   be reliably used to measure the changes in the direct effect of Tweet 1 and/or Tweet 2?"
22   Defendants' claim that this question is aimed at a purported "new theory" is disingenuous as
23   nothing has changed concerning either Professor Heston's opinions on at-the-money-forward
24   straddles are impacted (excepting in the impact quantum) or Dr. Hartzmark's opinions concerning
25   his calculations of the direct effects on Tesla stock based on the implied volatilities calculated
26   from the January 2020 at-the-money-forward straddle. Defendants fail to explain why this
27   question was not included in their initial proposed verdict form. In any event, having the jury
28   determine the "but for" implied volatility percentages renders Defendants' question unnecessary.

Jury verdict forms in securities fraud cases require juries to decide only whether or not the plaintiff has proven his damages; they do not require specific findings from the juries regarding assumptions and/or calculations upon which the damages theories are based. For example, in *Jaffe v. Household International*, the jury was asked simply to decide whether the plaintiff's damages model "reasonably estimate[d]" the damages. *See* ECF No. 476-2, p. 41. Likewise, in *In re Vivendi Universal S.A. Securities Litigation*, the jury was asked, first, to decide only whether the plaintiff had "proven" the elements of his Section 10(b) claim and then, second, to specify the amount of inflation "caused" by the Section 10(b) violations on each day of the Class Period. *See* ECF No. 476-3 at 58. Plaintiff's expert, Dr. Hartzmark, will explain his calculation of the amount of stock, option, and bond price inflation/deflation at trial. The jury will either find his testimony credible or not and, in turn, decide whether Plaintiff has "proven" his damages. There is no need to have the jury make specific findings with respect to the individual components and assumptions underlying Dr. Hartzmark's methodology, especially when doing so could lead the jury to return an inconsistent verdict and potentially necessitate a new trial. *See Asfall v. L.A. Unified Sch. Dist.*, Nos. 20-55599, 20-56259, 2022 U.S. App. LEXIS 19669, at *3 (9th Cir. July 15, 2022) ("when the jury's answers to interrogatories are inconsistent with the verdict, the district court may order a new trial"). For example, if the jury disagrees with one component of Dr. Hartzmark's methodology but finds overall that Plaintiff has "proven" his damages, that inconsistency would potentially be exploited to evade an unfavorable verdict and force a new trial.

Defendants' amended verdict form also includes new questions that are unrelated to Plaintiff's option damages. These questions are within Section A (Question 8) and Section B (Question 2) and both address the issue of when the "fraud" was "corrected" in the market, *i.e.*, when the "truth" was revealed. Question 8 in Section A asks the jury to specify the "date" on which the "market learn[ed] the truth about the information that was alleged misstated" while Question 2 in Section B asks the jury to specify the "date" when "the market price of Tesla stock return[ed] to the level it would have been trading at absent any material misstatements." ECF No. 511-1 at 3, 4. These questions are unnecessary given that the jury will already be deciding how much artificial inflation existed on each day during the Class Period, as the Court indicated during

the final pretrial conference hearing. *See* Tr. 10/25/22 at 140:2-140:8 (Court: "to the extent that the proposed verdict from the plaintiff has an already table to be prepared and you just have to check a box to say yes, I don't look too favorably on that").[2] Further, presenting the jury with these two questions creates a risk that the jury will answer the questions in conflicting ways and, in turn, return an inconsistent verdict after the trial. The attempt to include these questions on the verdict form should be rejected.

Dated: December 22, 2022                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 *s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

-and-

---

[2] Plaintiffs adhered to the Court's directives in this regard and eliminated the table from their revised verdict form. *See* ECF No. 513-1, pp. 3-4. Defendants' amended verdict form continues to have a table with values already included and seeks to have the jury make an "all-or-nothing" determination, which runs contrary to law on this issue. *See, e.g.*, *Gruber v. Gilbertson*, 2022 WL 4232834, at *3 (S.D.N.Y., 2022) ("consistent with plaintiffs' conventional loss causation theory, the damages instruction made clear that the jury could select a middle ground between these all-or-nothing approaches, stating that, as to damages, 'you must determine whether the amount of fraudulent inflation is 100%, as the plaintiff contends; 0%, as Reger contends; or some number in-between.'"); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 575 (S.D.N.Y. 2011) (rejecting defendants' position that "the expert testimony on damages was 'all or nothing,' in the sense that the jury had to either accept or reject Dr. Nye or Dr. Silber's analyses wholesale."); *see also Harmsen v. Smith*, 693 F.2d 932, 945 (9th Cir. 1982) ("[d]amages need not be proved to a mathematical certainty" and all that is required is that "sufficient facts must be introduced so that a court can arrive at an intelligent estimate without speculation or conjecture."). While Plaintiff does not oppose the presentation of a table including the values identified by Plaintiff's expert as part of the jury verdict form, and included such a table in its initial verdict form, any such table must also provide the jury with the option to select alternative values if it so chooses.

|   |   |
|---|---|
| 1 | |
| 2 | Nicholas I. Porritt |
|   | Elizabeth K. Tripodi |
| 3 | Alexander A. Krot III |
|   | LEVI & KORSINSKY, LLP |
| 4 | 1101 30th Street N.W., Suite 115 |
|   | Washington, D.C. 20007 |
| 5 | Tel.: (202) 524-4290 |
|   | Email: nporritt@zlk.com |
| 6 | Email: etripodi@zlk.com |
|   | Email: akrot@zlk.com |

Nicholas I. Porritt
Elizabeth K. Tripodi
Alexander A. Krot III
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel.: (202) 524-4290
Email: nporritt@zlk.com
Email: etripodi@zlk.com
Email: akrot@zlk.com
(admitted *pro hac vice*)

-and-

Joseph Levi
Eduard Korsinsky
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Email: jlevi@zlk.com
Email: ek@zlk.com
(admitted *pro hac vice*)

*Attorneys for Plaintiff and Counsel for the Class*