QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (*appearing pro hac vice*)
  alexspiro@quinnemanuel.com
  Andrew J. Rossman (*appearing pro hac vice*)
  andrewrossman@quinnemanuel.com
  Ellyde R. Thompson (*appearing pro hac vice*)
  ellydethompson@quinnemanuel.com
  Jesse Bernstein (*appearing pro hac vice*)
  jessebernstein@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

  Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
  Anthony P. Alden (Bar No. 232220)
  anthonyalden@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendants Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**DEFENDANTS' REQUEST TO ADOPT THEIR SECOND AMENDED PROPOSED VERDICT FORM AND SECOND REVISED JURY INSTRUCTION NO. 31** |

**INTRODUCTION**

Pursuant to Federal Rules of Civil Procedure Rules 49 and 51, as well as the Court's Civil Pretrial Instructions Section C. 5, Defendants respectfully submit their Second Amended Proposed Verdict Form, their request for its adoption by the Court, their objections to Plaintiff's Proposed Revised Verdict Form, and their Second Revised Proposed Jury Instruction No. 31

As the Court is aware, the parties had a dispute regarding Plaintiff's implementation of the Court's order, in response to Defendants' Motion *in Limine* to exclude the opinions of Professor Steven L. Heston and Dr. Mark Hartzmark (ECF No. 479), "that he rerun the stock option calculations using actual option price data instead of theoretical prices."  ECF No. 508 (Final Pretrial Conference Order) at 37:1-2.  During the pendency of the dispute, the parties filed revised verdict forms and revised Jury Instructions Nos. 30 and 31 on December 20, 2022.  ECF Nos. 511-513.  At the time, Plaintiff took the position that the jury need not render a verdict on the implied volatility of options during the Class Period and submitted a revised verdict form to that effect.  ECF No. 512.

The following day, Defendants filed an Emergency Motion to Compel Supplemental Expert Reports and Depositions (ECF No. 515).  On December 22, 2022, the Court ordered Plaintiff to file a supplemental report regarding Professor Heston's use of actual stock option market data to derive "actual" implied volatilities and to produce Professor Heston for a one-hour deposition prior to the January 4, 2022. ECF No. 519.  That same day, in response to the Court's order, Plaintiff filed a "Second Revised Proposed Verdict Form" that reinserted a question on implied volatility.  ECF No. 520.

On December 27, 2022 Plaintiff served a Supplemental Heston Report and Defendants deposed Professor Heston on January 3, 2022.  Defendants now respectfully submit the attached Second Amended Verdict Form and Second Revised Proposed Instruction No. 31 in response to the new information disclosed in discovery and Plaintiff's Second Revised Proposed Verdict Form.

**I.   THE COURT SHOULD ADOPT DEFENDANTS' SECOND AMENDED PROPOSED VERDICT FORM**

Defendants' Second Amended Proposed Verdict Form is largely identical to the Amended Proposed Verdict Form filed on December 20, 2022 ("Defendants' December 20 Verdict Form"), with one key difference: Defendants have edited the questions on Page 5 relating to Options Damages to

respond to Plaintiff's December 22, 2022 revisions. Defendants' December 20 Verdict Form added Question No. 8[1] ("On what date did the market learn the truth about the information that was allegedly misstated in Tweet 1 and/or Tweet 2?") to the Liability Section of the Verdict Form and Question No. 2 ("On what date did the market price of Tesla stock return to the level it would have been trading at absent any material misstatements?") to the Damages Section of the Verdict Form. Those additions remain in the Second Amended Proposed Verdict Form. For the Court's convenience, the Defendants have reproduced their arguments, with minor edits to respond to Plaintiff's new position, in support of the adoption of those questions herein.

### A. The Jury Should Be Asked The Threshold Question Of Whether Plaintiff Proved "But For" Implied Volatility

On options damages, the only difference between Defendants' Second Amended Proposed Verdict Form and Plaintiff's Second Revised Proposed Verdict Form is that Defendants include the threshold question of whether Plaintiff has proven what the implied volatilities for each Tesla stock option traded during each day of the Class Period would have been but for the alleged misrepresentations.[2] The Plaintiff bears the burden of proving damages in this case, which includes whether he has established the implied volatilities for all of the options upon which he seeks damages. *See Harmsen v. Smith*, 693 F.2d 932, 945 (9th Cir. 1982) ("plaintiff in a securities fraud action has the burden of proving that damages flowed from the alleged injury"). This initial question therefore "allows the jury to address all factual issues essential to judgment" and should be adopted. *See United States v. Real Prop. Located at 20832 Big Rock Drive, Malibu, Cal. 902655*, 51 F.3d 1402, 1408 (9th Cir. 1995).

---

[1] Defendants reserve, reassert, and incorporate by reference their arguments in support of the Proposed Verdict Form filed on September 20, 2022. ECF No. 484.

[2] Unlike its questions for stock and bond inflation, which presents the jury with a completed chart of Plaintiff's alleged artificial inflation and asks whether they have been proven, Defendants include a blank chart of implied volatility. Defendants include a blank chart in part due to the uncertainty surrounding Plaintiff's alleged but for volatility in light of the eleventh hour changes to Professor Heston's damages report. Defendants reserve the right to submit a new form with a pre-filled chart consistent with their approach for stock and options once the uncertainty is resolved.

**B.     The Jury Should Determine When The Market Learned The Truth Of The Alleged Misstatements And When Tesla's Stock Price Returned To The Level It Would Have Absent Any Misstatements**

In addition to including questions related to Plaintiff's burden to prove "but for" implied volatility, Defendants respectfully request that the Court include two additional questions relating to reliance, loss causation, and damages.

The first, Question No. 8 in the Liability Section, asks the jury—if it determines Plaintiff proved reliance—to indicate the date upon which "the market learned the truth about the information that was allegedly misstated in Tweet 1 and/or Tweet 2." This question, which has been added in response to the Court's determination in the Pretrial Order that August 7, 2018 is the only date in which an actionable misstatement was published (ECF No. 508 at 15-17), is necessary because the date of the full corrective disclosure remains a disputed issue in this case. As the Supreme Court made clear in *Basic* and *Haliburton II*, fraud-on-the-market reliance is only presumed for the period of time between when the "misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267-68 (2014); *Basic Inc. v. Levinson*, 485 U.S. 224, 248-49 (1988) (because "news of the merger discussions credibly entered the market and dissipated the effects of the misstatements, those who traded Basic shares after the corrective statements would have no direct or indirect connection with the fraud."). Defendants contend that the market had all of the information necessary to assess the accuracy of Mr. Musk's statements by August 13, whereas the Plaintiff contends that a partial corrective disclosure was made in a *New York Times* article on August 17, 2018 (*see, e.g.*, ECF. No. 466 ("Plaintiff may be able to show that the *New York Times* article, which was published in print on August 17, 2018, is at least a partial corrective disclosure.").). This is a key dispute with a profound impact on damages in this case. If the jury determines that the August 13 Blog Post disclosed all of the necessary information to the market, Plaintiff will, at a minimum, not be able to prove reliance or obtain damages for any events that post-date that disclosure, including the *New York Times* article whose impact on the market is primarily responsible for damages in Dr. Hartzmark's report. Moreover, if the August 13 Blog Post disclosed all necessary information, because the market price of Tesla's stock ***did not go down*** in response to that information, it suggests that investors were not harmed by the original Tweets.

1  The second, Question No. 2 in the Damages section, asks "what date did the market price of Tesla stock return to the level it would have been trading at absent any material misstatements?" "Damages in a securities fraud case are measured by the difference between the price at which a stock sold and the price at which the stock would have sold absent the alleged misrepresentations or omissions." *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014 (C.D. Cal. 2003) *aff'd sub nom. Mortensen v. Snavely*, 145 F. App'x 218 (9th Cir. 2005).  Accordingly, Plaintiff cannot be awarded damages once the market for Tesla stock returns to the price at which it would have been trading but-for the alleged misrepresentations.  This question asks the jury to identify the date upon which Tesla's stock price was no longer impacted by the alleged fraud and that investors were no longer damaged by artificial inflation.  It is necessary for the calculation of damages in this case—both for stock and options (since the price of an option is calculated using both stock price and implied volatility, *see e.g.,* Ex. 368 ("Heston Report") at ¶ 71)—for the jury to determine the date in which the market returned to equilibrium and that damages ceased to accrue.

## II.  **DEFENDANTS' OBJECTIONS TO PLAINTIFF'S PROPOSED REVISED VERDICT FORM**

Defendants reserve, incorporate by reference, and reassert their prior objections to Plaintiff's Verdict Form (*see* Dkt. No. 484), including but not limited to Plaintiff's proposal to use a general verdict form on liability instead of a special verdict form that asks the jury to determine each element.  In addition, Defendants object to Plaintiff's Second Revised Proposed Verdict Form on the grounds that it fails to ask the jury to decide a factual matter necessary to judgment: whether Plaintiff has proven "but for" implied volatility for each of the options on which he seeks damages.

## III.  **DEFENDANTS' REQUEST THAT THE COURT ADOPT THEIR SECOND REVISED PROPOSED JURY INSTRUCTION NO. 31**

Defendants further request that the Court adopt the below Second Revised Proposed Jury Instruction No. 31.  Plaintiff is seeking damages from three separate financial instruments: (1) stock, (2) options contracts, and (3) convertible bonds.  To determine damages for stock and convertible bonds, the jury must answer whether Plaintiff proved artificial inflation.  However, the issue the jury must resolve for options damages—whether Plaintiff has proven but for implied volatility—is different.  The current

1  drafts of Instruction No. 31 submitted by both parties do not adequately explain this difference or define
2  implied volatility.  Plaintiff's Proposed Instruction No. 31 makes no reference to options or implied
3  volatility (ECF 512, at 7) and Defendants' prior proposal, while informing the jury that it must make a
4  determination as to implied volatility, does not define the concept or explain how options contracts work.
5  *Id.* at 8.  Given the differences in the securities at issue in this case and the fact that these differences will
6  impact how the jury renders a verdict on damages, Defendants believe that it would be helpful to the jury
7  to include an explanation and definition of options contracts and implied volatility in the instruction.
8       Accordingly, Defendants respectfully submit the following:
9  **Instruction No. 31: Damages**:
10      If you find for Plaintiff on the 10b-5 Claim against Elon Musk and/or Tesla, then you must
11 consider and decide the amount of damages, if any, to be awarded to Plaintiff and the Class.  You may
12 award only actual damages in that amount which will reasonably and fairly compensate Plaintiff and the
13 Class for the economic losses they sustained.
14      Actual damages are measured by the amount of inflation or deflation caused by the
15 misrepresentations on which you based your finding of a § 10(b)–5 violation and do not include losses
16 caused by other events, including subsequent events that repeat, recharacterize, or arise from the
17 corrective disclosure, such as negative news stories, lawsuits, or investigations about the information
18 contained in the corrective disclosure.  In other words, actual damages are measured by the difference
19 between the price at which a security sold and the price at which the security would have sold absent the
20 alleged material misrepresentations.
21      Plaintiff is not permitted to recover any consequential damages except for outlays attributable to
22 the alleged misconduct, for example money Plaintiff actually spent to mitigate his harm, if proved with
23 sufficient certainty.
24      There are three categories of securities about which you will be asked to render a verdict on
25 damages: (1) Tesla common stock, (2) Tesla convertible bonds, and (3) Tesla stock options.
26      You will be asked to determine the amount, if any, by which the prices for Tesla common stock
27 and convertible bonds were artificially inflated by the misrepresentations on which you based your
28 finding of a § 10(b)–5 violation for each day during the Class Period.  Plaintiff also has the burden of

1  separating out the price decline, if any, caused by factors other than the alleged misrepresentations. If
2  you find the evidence is not sufficient for you to you to determine how much decline was caused factors
3  other than the alleged misrepresentations, you should award zero damages.

4  Plaintiff also bears the burden of proving damages, if any, to investors who bought or sold Tesla
5  stock options.  An option is a financial instrument that gives its buyer (known as the option holder) the
6  right, but not the obligation, to buy or sell stock at a predetermined price at or until a specified date and
7  time in the future.  The value of the option is based on the prediction of what the stock will be worth in
8  the future.  Investors who hold options often will buy options that predict the stock price will increase
9  and, at the same time, buy options that predict the stock price will decrease.

10  The price of a stock option is primarily determined by two factors: the price of the stock at the
11  time the option is purchased and the implied volatility of the stock.  Implied volatility is the market's
12  forecast of a likely movement in a security's price.

13  You will be asked to determine whether the misrepresentations on which you based your finding
14  of a § 10(b)–5 violation caused any change to the level of implied volatility of each Tesla options traded
15  during the class period and what the implied volatility of each such option would have been on each day
16  during the Class Period "but for" the misrepresentations on which you based your finding of a § 10(b)–5
17  violation.

18  Plaintiff bears the burden of proving by a preponderance of the evidence that the
19  misrepresentations on which you based your finding of a § 10(b)–5 violation caused a change to the
20  implied volatility for each and every option on each class day.  Plaintiff also bears the burden of proving
21  by a preponderance of the evidence what the implied volatility of each option would have been "but for"
22  (i.e., in the absence of) the misrepresentation.  Plaintiff further bears the burden of separating out the
23  change in implied volatility, if any, caused by factors other than the alleged misrepresentations.  If you
24  find the evidence is not sufficient for you to you to determine how much change in implied volatility
25  was caused factors other than the alleged misrepresentations, you should award zero damages.

26  Your award must be based on evidence and not upon speculation, guesswork, or conjecture.
27  Plaintiff has the burden of proving damages by a preponderance of the evidence.

28

1  Source: Ninth Circuit Model Civil Jury Instruction 18.9; Ex. M, *Hsingching Hsu v. Puma*
2  *Biotechnology, Inc., et al.*, *Instructions,* No. 33; Ex. O, *Liberty Media Corp. v. Vivendi Universal*,
3  S.D.N.Y. Case No. 03-cv-02175, Dkt. No. 305, Instructions, 6/21/12 Tr. at 3094:24-3095:11; 3097:4-22;
4  Ex. P, *In re Vivendi Universal, S.A. Securities Litigation,* S.D.N.Y. Case No. 02-cv-05571, Dkt. No.
5  1052-2, Instruction No. 28; *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 155 (1972); *In re*
6  *Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014 (C.D. Cal. 2003); ); *Nuveen Mun.*
7  *High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1119 (9th Cir. 2013); *In re REMEC*
8  *Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1273–74 (S.D. Cal. 2010); *Lentell v. Merrill Lynch & Co.*, 396
9  F.3d 161, 173 (2d Cir. 2005); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010);
10  *Teacher's Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 187–88 (4th Cir. 2007); *Meyers v. Moody*, 693 F.2d
11  1196, 1212 (5th Cir. 1982); *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1030 (9th Cir.
12  1999); Ex. 368, Heston Report at ¶¶ 18, 71, 75.

14  **Defendants' Position**: Defendants reserve, incorporate by reference, and reassert their request that the
15  Court adopt their original Proposed Instruction No. 31 and objections to Plaintiff's instruction No. 31.
16  (Dkt. No. 477, 98-104.)
17  Following the informal Jury Instruction Conference on December 9, 2022, the Court provided
18  the parties with proposed language on Jury Instruction No. 31. Defendants have adopted the Court's
19  proposed language in the above amended Jury Instruction No. 31 but have included additions necessary
20  to educate the jury on specific matters important to the resolution of this case. ***First***, the instructions
21  expand on the Court's definition of actual damages by providing examples to the jury of the types of
22  events for which the Plaintiff is not entitled to recover, including stock drops caused by negative news
23  stories and investigations about information contained in the corrective disclosure. *See Teachers' Ret.*
24  *Sys. Of LA v. ; Hunter*, 477 F.3d 162, 187-88 (4th Cir. 2007) (stock decline following filing of complaint
25  based on already-disclosed facts is not a loss "for which the plaintiffs in this case are entitled to
26  compensation."); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010). ***Second***, the
27  instructions provide the jury with a definition of consequential damages that properly explains, consistent
28  with Ninth Circuit law, that any consequential damages are limited to "outlays attributable to the alleged

misconduct, for example money Plaintiff actually spent to mitigate his harm, if proved with sufficient certainty." *Meyers v. Moody*, 693 F.2d 1196, 1212 (5th Cir. 1982); *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1030 (9th Cir. 1999). This definition is necessary in light of Dr. Hartzmark's inclusion of "consequential effects" in his damages model as "artificial inflation." (Ex. 375 ¶ 171.) **Third**, the instruction informs the jury that Plaintiff bears the burden to disaggregate damages from other factors that may impact security prices and that he should be awarded no damages if he fails to carry that burden. *See Hsingching Hsu v. Puma Biotechnology, Inc., et al.*, Instructions, No. 33 ("Plaintiffs also bear the burden of separating out the share price decline, if any, caused by factors other than the alleged misrepresentations or omissions."); *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d at 1014–15 ("A proper measure of damages in the securities context thus requires elimination of that portion of the price decline or price difference which is unrelated to the alleged wrong").

*Finally,* the instruction includes a definition of stock options and implied volatility and instructs the jury on Plaintiff's burden to prove options damages. This instruction is both necessary and helpful to the jury. To determine damages for stock options, the jury will be required to determine whether Plaintiff proved "but for" implied volatility and what the levels of implied volatility would have been for each option on each day during the class period "but for" the alleged misrepresentations. (*See e.g.,* ECF No. 520-1 (Plaintiff's Second Revised Proposed Verdict Form) at 5.) This is a separate inquiry from artificial inflation, which the jury must determine to assess common stock and convertible bond damages. The jury must therefore be instructed on its charge with regards to options and implied volatility. Moreover, as these concepts are foreign and unfamiliar to most laypersons, the jury should be provided a neutral definition and explanation as to both. Defendants' proposed definitions of both options and implied volatility are largely taken from the Report of Plaintiff's Expert Professor Heston and provide a fair and clear explanation for the jury to assist it in its deliberations. (*See* Ex. 368, Heston Report at ¶¶ 18, 71, 75.)

Defendants' proposed instruction is "an accurate statement of the law" that identifies the key elements concerning damages that may be recoverable if caused by the alleged material misstatements. *See, e.g.*, *United States v. Garza*, 980 F.2d 546, 554 (9th Cir. 1992) (jury instruction must be "accurate statement of the law," although "formulation or choice of language of the jury instructions is within the discretion of

the district court"); *United States v. Terry*, 911 F.2d 272, 278 (9th Cir. 1990) (jury instruction must be "accurate statement of the law").  It should be adopted.

Defendants object to Plaintiff's Proposed Instruction No. 31[3] (ECF No. 512, at 7) on the grounds that it is incomplete and therefore misleading.

***First and foremost***, Plaintiff removes the Court's instruction that he bears "the burden of separating out the price decline, if any, caused by factors other than the alleged misrepresentations." The Court's instruction is an accurate and necessary description of the law and it should be included in any instruction.  *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d at 1014–15 ("A proper measure of damages in the securities context thus requires elimination of that portion of the price decline or price difference which is unrelated to the alleged wrong").  The failure to include this instruction invites error by suggesting the jury that it may award Plaintiff's proposed damages in their entirety—even for price increases the jury believes were caused by anything other than a misrepresentations.  The lack of instruction may also falsely suggest to the jury that Defendants bear the burden of disaggregation.

***Second***, Plaintiff provides no instruction on how to determine options damages (or indeed any reference to options or implied volatility at all).  Plaintiff is seeking damages for options and must prove both a change in stock price and a change in volatility.  The jury should be instructed on this burden.

***Third***,  Plaintiff fails to include necessary instructions like the definition of consequential damages and an explanation of the events for which the Plaintiff is not entitled to collect damages.

***Finally***, Plaintiff includes unnecessary language that "damages need not be proven with mathematical certainty. There must only be enough evidence for you to make a reasonable estimate of damages.  You are not required to act as trained economists and may make reasonable estimates based on the evidence."  This instruction is unnecessary and its only purpose appears to attempt to lower

---

[3]  Defendants are interposing objections to Plaintiff's most recent Proposed Jury Instruction No. 31, filed on December 20, 2022 at ECF No. 512.  Defendants did not meet and confer with Plaintiff in advance of filing this proposed jury instruction, which is being submitted in response to Plaintiff's Second Revised Verdict Form which Plaintiff filed before first meeting and conferring with Defendants.  *See* ECF No. 520.

Plaintiff's burden on damages, promote an improper compromise verdict, and create excuses for Plaintiff's failure to meet his burden.

Plaintiff's proposed instruction should be rejected.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court adopt their Second Amended Proposed Verdict Form and Second Revised Proposed Jury Instruction No. 31.

DATED:  January 4, 2023     Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Alex Spiro*
Alex Spiro *(appearing pro hac vice)*

*Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record electronically or by another manner authorized under FED. R. CIV. P. 5(b) on this the 4th day of January 2023.

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ *Alex Bergjans*
Alex Bergjans

*Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice*