QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Alex Spiro (*appearing pro hac vice*)
   alexspiro@quinnemanuel.com
   Andrew J. Rossman (*appearing pro hac vice*)
   andrewrossman@quinnemanuel.com
   Ellyde R. Thompson (*appearing pro hac vice*)
   ellydethompson@quinnemanuel.com
   Jesse Bernstein (*appearing pro hac vice*)
   jessebernstein@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

   Michael T. Lifrak (Bar No. 210846)
   michaellifrak@quinnemanuel.com
   Kyle Batter (Bar No. 301803)
   kylebatter@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendants Tesla, Inc., Elon Musk,*
*Brad W. Buss, Robyn Denholm, Ira Ehrenpreis,*
*Antonio J. Gracias, James Murdoch, Kimbal Musk,*
*and Linda Johnson Rice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC |
| | **DEFENDANTS' EXCEPTIONS TO THE COURT'S PROPOSED JURY INSTRUCTIONS (ECF NO. 535)** |

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ........................................................................................................2

    A.    The Claims And Contentions ...............................................................2

    B.    The Court's Summary Judgment Order And Clarification ..................4

    C.    The Final Pretrial Order ......................................................................4

ARGUMENT ............................................................................................................6

I.        LEGAL STANDARD AND STANDARD OF REVIEW .............................6

II.      DEFENDANTS' EXCEPTIONS TO THE COURT'S JURY INSTRUCTIONS ................6

    A.    The Court's Proposed Instruction For Defense To Control Person Liability ...........6

    B.    The Court's Proposed Pretrial And Closing Instruction On Rule 10b-5 Claim ................12

    C.    The Court's Proposed Instruction For Scienter Or State Of Mind..........15

    D.    The Court's Proposed Instruction For Material Misrepresentation..........19

    E.    The Court's Proposed Instruction For Reliance ......................................22

    F.    The Court's Proposed Instruction For Loss Causation ...........................23

    G.    The Court's Proposed Instruction For Damages .....................................25

    H.    The Court's Proposed Instruction On Corporate Entities .......................27

    I.    The Court's Proposed Jury Instruction For Imputation Of Scienter .......28

    J.    The Court's Proposed Instruction On Apportionment Of Liability .........29

    K.    The Court's Proposed Pretrial Statement/Claims And Defenses ............29

CONCLUSION ........................................................................................................30

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>CASES</u>

4

5
*Alphabet, Inc. Sec. Litig.*,
    1 F.4th at 701 ..................................................................................................................... 16

6
*Ambassador Hotel Co. v. Wei-Chuan Inv.*,
    189 F.3d 1017 (9th Cir. 1999) ............................................................................................ 25

7

8
*Arthur Children's Tr. v. Keim*,
    994 F.2d 1390 (9th Cir. 1993) .............................................................................................. 7

9
*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ............................................................................................................ 21

10

11
*Christoffel v. E. F. Hutton & Co.*,
    588 F.2d 665 (9th Cir. 1978) ................................................................................................ 9

12
*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017) ................................................................................................ 7

13

14
*Clem v. Lomeli*,
    566 F.3d 1177 (9th Cir. 2009) ................................................................................... 1, 6, 27

15
*Dang v. Cross*,
    422 F.3d 800 (9th Cir. 2005) ....................................................................... 6, 7, 23, 26

16

17
*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976) ..................................................................................................... 10, 15

18
*Gantt v. City of L.A.*,
    717 F.3d 702 (9th Cir. 2013) ................................................................................................ 6

19

20
*Gebhart v. S.E.C.*,
    595 F.3d 1034 (9th Cir. 2010) ............................................................................................ 17

21
*GIA-GMI, LLC v. Michener*,
    No. 06-cv-7949-SBA, 2007 WL 2070280 (N.D. Cal. July 16, 2007)............................ 5, 16

22

23
*Greenstone v. Cambex Corp.*,
    975 F.2d 22 (1st Cir. 1992) ................................................................................................ 16

24
*Haliburton II*,
    573 U.S. at 267 ................................................................................................................... 21

25

26
*Harmsen v. Smith*,
    693 F.2d 932 (9th Cir. 1982) .............................................................................................. 25

27
*Hart v. Massanari*,
    266 F.3d 1155 (9th Cir. 2001) .............................................................................................. 8

28

*Herrick v. Garvey*,
    298 F.3d 1184 (10th Cir. 2002).................................................................................. 12

*Hollinger v. Titan Cap. Corp.*,
    914 F.2d 1564 (9th Cir. 1990)........................................................................... 7, 8, 9

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000)............................................................................. 5, 7

*Hunter v. Cnty. of Sacramento*,
    652 F.3d 1225 (9th Cir. 2011)................................................................. 1, 6, 8, 19

*In re Allstate Life Ins. Co. Litig.*,
    No. CV-09-08162-PHX-GMS, 2013 WL 789106 (D. Ariz. Mar. 1, 2013)................... 8, 9

*In re BofI Holding, Inc. Sec. Litig.*,
    977 F.3d 781 (9th Cir. 2020)............................................................................. 23, 24

*In re ChinaCast Educ. Corp. Sec. Litig.*,
    809 F.3d 471 (9th Cir. 2015)............................................................................. 26, 27

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994).................................................................................. 16

*In Re JDS Uniphase Corp. Securities Litig.*,
    4:02-1486-CW, Dkt. 1874 (N.D. Cal. Nov. 9, 2007)............................................... 17

*In re MannKind Sec. Actions*,
    835 F. Supp. 2d 797 (C.D. Cal. 2011)...................................................................... 7

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................. 19

*In re Netopia, Inc., Sec. Litig.*,
    No. C-04-03364 RMW, 2005 WL 3445631 (N.D. Cal. Dec. 15, 2005) ............................ 8

*In re Omnicom Grp., Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010)............................................................................. 23, 24

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017).............................................................................. 19

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
    998 F.3d 397 (9th Cir. 2021)................................................................................. 24

*Kaplan v. Rose*,
    49 F.3d 1363 (9th Cir. 1994).................................................................................... 7

*Kersh v. Gen. Council of Assemblies of God*,
    804 F.2d 546 (9th Cir. 1986).......................................................................... 8, 9, 10

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) ................................................................................................ 21

*Meyers v. Moody*,
    693 F.2d 1196 (5th Cir. 1982).................................................................................................. 25

*Nipper v. Snipes*,
    7 F.3d 415 (4th Cir. 1993)..................................................................................................... 12

*Norwood v. Vance*,
    591 F.3d 1062 (9th Cir. 2010)..................................................................................... 6, 20, 26

*Phillips v. LCI Int'l, Inc.*,
    190 F.3d 609 (4th Cir. 1999).................................................................................................. 16

*Prodanova v. H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021)................................................................................................ 15

*S.E.C. v. Platforms Wireless Int'l Corp.*,
    617 F.3d 1072 (9th Cir. 2010)................................................................................................ 17

*S.E.C. v. Todd*,
    642 F.3d 1207 (9th Cir. 2011).................................................................................................. 7

*Sec. & Exch. Comm'n v. Janus Spectrum LLC*,
    No. CV-15-609-PHX-SMM, 2017 WL 11500366 (D. Ariz. Sept. 29, 2017)...................... 8

*Siracusano v. Matrixx Initiatives, Inc.*,
    585 F.3d 1167 (9th Cir. 2009)................................................................................................ 20

*Tarapara v. K12 Inc.*,
    No. 16-CV-4069-PJH, 2017 WL 3727112 (N.D. Cal. Aug. 30, 2017).................................. 19

*Teachers' Ret. Sys. Of LA v. Hunter*,
    477 F.3d 162 (4th Cir. 2007).................................................................................................. 23

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ..................................................................................................... 5, 19, 20

*U.S. Steel, LLC, v. Tieco, Inc.*,
    261 F.3d 1275 (11th Cir. 2001).............................................................................................. 12

*United States v. Goyal*,
    629 F.3d 912 (9th Cir. 2010).................................................................................................. 16

*United States v. Joyce*,
    511 F.2d 1127 (9th Cir. 1974)................................................................................................ 20

*United States v. Paul*,
    37 F.3d 496 (9th Cir. 1994)..................................................................................................... 6

*United States v. Sine*,
    493 F.3d 1021 (9th Cir. 2007)......................................................................................... 11, 12

*United States v. Terry*,
    911 F.2d 272 (9th Cir. 1990).................................................................................................. 20

*United States v. Watkins*,
    278 F.3d 961 (9th Cir. 2002) ........................................................................ 15, 16

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ................................................................................ 17


## **STATUTES**

15 U.S.C. § 78u-4(f) .......................................................................................................... 16

15 U.S.C. § 78j .................................................................................................................... 2

15 U.S.C. § 78t ............................................................................................................. 2, 10


## **RULES**

17 C.F.R. § 240.10b-5 .................................................................................................... 2, 19

1

## PRELIMINARY STATEMENT

Defendants respectfully submit their exceptions to the Court's Proposed Jury Instructions. Defendants recognize that the parties' disputes over jury instructions have been substantial and appreciate the Court's dedicated efforts to resolve these disputes in its Proposed Instructions.  This is a complicated case that presents unique issues both as a consequence of the disputed facts and the Court's pre-trial rulings.  The jury instructions should be tailored to reflect the legal and factual issues in this case, as a party is "entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence." *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009).

*First*, the Court has stated a preference for the Ninth Circuit's Model Instructions, which is reflected in the Proposed Instructions.  But the "use of a model jury instruction does not preclude a finding of error."  *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011).  Although the Court has made helpful changes to certain Model Instructions to respond to circumstances present here, other instructions fail in many respects to provide a complete and accurate description of the law and issues in this case.  In such instances, the Court's fidelity to the Model Instructions creates the risk of reversible error.  To take one example, the Court's proposed use of the Model Instruction as to the Director Defendants' good faith defense is contrary to the weight of authority and will provide grounds for reversal if given.

*Second*, the Court's indication that it will instruct the jury as to the findings in its summary judgment ruling is highly prejudicial to Defendants.  As to technical falsity, the Court deviates from its clarification order, which specified that it had not decided legal falsity.  The instruction that the statements are "untrue" fails to account for this clarification.  As to recklessness, Defendants see no reason for the Court to instruct the jury as to its finding that Mr. Musk acted with reckless disregard—particularly so if the Court rejects Defendants' argument that the jury must be instructed to decide whether Mr. Musk acted with reckless disregard as to a material fact. The Court's finding has no bearing on any of the issues the jury will decide.

*Third*, the Court has failed to account for the unique posture of this case in certain instructions.  Specifically, the Court would commit error if it neglected to instruct the jury to determine the time by which the market had the information necessary to assess the accuracy of the August 7 tweets.  Likewise, the Court would commit error by failing to specify—on every occasion—that the question before the jury is whether the statements were materially false and by providing the means for the jury to assess materiality.  Any failure to do so would compound the prejudice resulting from the Court's instructing the jury that the challenged statements are "untrue."

*Finally*, the Court's loss causation, and damages instructions fail to provide the jury with a complete statement of the law and risk permitting Plaintiff to obtain an outsized recovery that fails to account for the fact that any necessary information already had entered the market.  These omissions are prejudicial to Defendants given that the primary cause of Plaintiff's purported loss—the publication of a *New York Times* article on August 16, 2018—discloses information Defendants contend was already publicly known.

Accordingly, Defendants submit the following exceptions and proposal to the Court to craft more accurate, complete, and helpful instructions to the jury and respectfully request that they be adopted.

## **BACKGROUND**

### A.     **The Claims And Contentions**

Lead Plaintiff Glen Littleton represents a class of individuals and entities who purchased or sold Tesla stock, options, and other securities from 12:48 p.m. EST on August 7, 2018 to August 17, 2018 (the "Class Period").  Plaintiff contends that Defendants Elon Musk and Tesla violated Sections 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j, 78t) and SEC Rule 10b-5(b) (17 C.F.R. § 240.10b-5) when Mr. Musk published from his personal Twitter account two Tweets on August 7: "Am considering taking Tesla private at $420. Funding secured" and "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote."

1    Plaintiff alleges that the statements "Funding secured" and "Investor support is confirmed.

2   Only reason why this is not certain is that it's contingent on a shareholder vote" were materially

3   false or misleading.  Plaintiff does not contend that the statement "Am considering taking Tesla

4   private at $420" was untrue or inaccurate.  Plaintiff alleges that he was harmed when Tesla's share

5   price fell in the ten days following the publication of the Tweets and asserts a Rule 10b-5 claim

6   against Mr. Musk and Tesla and a Section 20 Claim against members of Tesla's Board of

7   Directors on the grounds that they were controlling persons of Tesla.

8    The jury at this trial will be required to resolve disputes as to each element of the Rule

9   10b-5 claim and Section 20 claim.  As to the first two elements, Defendants dispute (1) that the

10   alleged misstatements were materially false; (2) that the alleged misstatements (as opposed to the

11   indisputably true statement that Mr. Musk was considering taking Tesla private at $420 per share)

12   were significant to the reasonable investor; and (3) that the difference between the alleged

13   misstatements and the true state of affairs—that, among other things, the Kingdom of Saudi

14   Arabia's Public Investment Fund ("PIF") represented to Mr. Musk prior to the publication of the

15   Tweets that it was ready, willing, and able to finance taking Tesla private—was significant to the

16   reasonable investor.  Defendants also dispute that Plaintiff can prove that Mr. Musk knew or was

17   reckless as to the material falsity of the Tweets.

18    As to the third element, reliance, the parties dispute both whether the Plaintiff can establish

19   fraud-on-the-market reliance and for what period of time Plaintiff can establish that he justifiably

20   relied on the market price of Tesla securities.  The fraud-on-the-market presumption only applies

21   to the period of time between the alleged false statement and the revelation of the truth.  The

22   parties dispute when the truth was revealed to the market—Defendants contend that any alleged

23   misrepresentation was clarified in Mr. Musk's August 13, 2018 Blog Post while Plaintiff contends

24   that the truth was revealed in an August 16, 2018 *New York Times* article about Mr. Musk's

25   physical and mental health.  As to loss causation and damages, Defendants contend that Plaintiff

26   will be unable to prove that the alleged misrepresentations—as opposed to the true statement in

27   Mr. Musk's Tweet and other factors—caused Plaintiff to suffer any losses and that Plaintiff will

28   be unable to prove damages.

### B.       The Court's Summary Judgment Order And Clarification

On April 1, 2022, the Court granted partial summary on the issues of falsity and scienter.  ECF No. 387.  Specifically, the Court found that the following statements in Mr. Musk's August 7 Tweets were false and made recklessly: "Funding secured" and "Investor support is confirmed.  Only reason why this is not certain is that it's contingent on a shareholder vote."

Defendants moved for reconsideration of the Court's order.  ECF No. 401.  At the June 16, 2022 hearing on Defendants' motion for reconsideration, the Court made clear that it found only that the statements "Funding secured" and "Investor support is confirmed.  Only reason why this is not certain is that it's contingent on a shareholder vote" were "false statement[s]…in a literal sense, not in a legal sense."  (6/16/22 Hr'ing Tr. at 4:14-23.)  The Court made the same limited finding as to scienter.  (*Id.* ("and similarly with scienter, no reasonable juror could find that Mr. Musk did not know or didn't act in disregard to the inaccuracy—the factual inaccuracy, not the legal.").  And to avoid any doubt, the Court stated "[t]o be clear, I did not find materiality with respect to the misrepresentation or a reckless disregard or knowingly scienter with regard to any such material representation." (*Id.* at 5:4-8.)  In its Minute Order following the hearing, the Court noted that "[a] statement can be factually false but not material." ECF No. 446.

### C.       The Final Pretrial Order

On December 7, 2022, the Court issued its Final Pretrial Conference Order. ECF No. 508, ("Pretrial Order")  The Pretrial Order contained a number of key rulings.

The Court rejected Plaintiff's attempt to include the August 13, 2018 Blog Post as an actionable omission at trial on the grounds that Plaintiff failed to timely plead or disclose this theory of liability.  Pretrial Order at 17.

The Court denied Plaintiff's Motions *in Limine* Nos. 3 and 4, which sought to preclude Defendants from introducing evidence regarding Mr. Musk's meetings and interactions with the Saudi PIF and his and the Tesla Board of Directors' states of mind regarding the August 7 Tweets.  Pretrial Order at 20-27.

First, the Court held that the evidence was relevant to the materiality of the Tweets.  The Court held that a misstatement is "material where there is a 'substantial likelihood that a reasonable

shareholder would consider it important in deciding how to vote'" and that  "'[t]he determination requires delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact." *Id.* at 22 (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).) Applying this standard to this specific case, the Court held that to "determine whether a misrepresentation is material, the jury will be tasked with determining whether the misrepresented fact would have been significant to a reasonable investor. To make that determination, the jury will need to hear evidence regarding the actual state of affairs *so that the jury can determine whether the difference between the actual state of funding and Mr. Musk's misrepresentations regarding funding would have been significant to a reasonable investor*." *Id.* at 26 (citing *TSC Indus.* at 445) (emphasis added).  The Court in its Pretrial Order thus recognized that the materiality analysis that the jury must conduct in this trial requires two interrelated questions: (1) were the alleged misstatements significant to a reasonable investor and, critically, (2) was the difference between the alleged misstatements and the actual state of affairs significant to a reasonable investor.

Second, the Court held that the evidence was relevant to both Mr. Musk's scienter.  Pretrial Order at 23, 25.  The Pretrial Order noted that "to establish scienter, Mr. Littleton must prove that Mr. Musk 'knew that a statement was *materially* false or misleading' or acted with deliberate recklessness as to its *material* falsity." *Id.* at 23 (citing *GIA-GMI, LLC v. Michener*, No. 06-cv-7949-SBA, 2007 WL 2070280, at *9 (N.D. Cal. July 16, 2007).  The Court found that testimony giving rise to the August 7 Tweets may be probative to Mr. Musk's scienter.  *Id.* at 23, 27.

Third, the Court rejected Plaintiff's attempt to preclude the Tesla Directors from testifying as to their personal interpretations and understanding of the August 7 Tweets.  Pretrial Order at 25, n. 25. The Court held that this testimony is "relevant to a potential 'good faith' defense to control person liability" because a "defendant is entitled to a good faith defense if he can show no scienter and an effective lack of participation." *Id.* (citing *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).).

**ARGUMENT**

## I.     LEGAL STANDARD AND STANDARD OF REVIEW

Jury instructions "must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading."  *Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005).  A party is "entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence," *Clem*, 566 F.3d at 1181, and a trial court "commits error when it rejects proposed jury instructions that are properly supported by the law and the evidence." *Id*.; *see also Dang*, 422 F.3d at 810-11 ("Failure to give an instruction on a party's theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable") (internal quotation omitted).  The "use of a model jury instruction does not preclude a finding of error."  *Hunter*, 652 F.3d at 1232 (citing *Dang*, 422 F.3d at 805 (vacating judgment when district court used a model civil jury instruction that provided an incomplete statement of the law)); *see also United States v. Paul*, 37 F.3d 496, 501 (9th Cir. 1994) (holding that use of instructions closely tracking model instructions constituted plain error).

Whether a jury instruction misstated the relevant law is subject to *de novo* review on appeal, *Hunter*, 652 F.3d at 1232, requiring vacatur and remand for new trial "unless the error is more probably than not harmless," *Gantt v. City of L.A.*, 717 F.3d 702, 707 (9th Cir. 2013) (quotation omitted).  While errors in formulation of an instruction are reviewed for abuse of discretion, any appeal will require the Ninth Circuit to "engage in de novo review when a party challenges a 'jury instruction as an incomplete, and therefore incorrect, statement of the law.'" *Hunter*, 652 F.3d at 1232 (*citing Norwood v. Vance*, 591 F.3d 1062, 1066 (9th Cir. 2010).)

## II.    DEFENDANTS' EXCEPTIONS TO THE COURT'S JURY INSTRUCTIONS

### A.     The Court's Proposed Instruction For Defense To Control Person Liability

The Defendants take exception to the Court's Proposed Instruction for Defense to Control Person Liability (ECF No. 535, at 58) because it is an erroneous statement of the law that is contrary to binding Ninth Circuit precedent.

Specifically, the Defendants take exception to the Court's adoption of the Model Jury Instruction No. 18.11's definition of the "good faith" defense to control person liability which

states that a Tesla director "can prove good faith only by establishing that he or she maintained and enforced a reasonable and proper system of supervision and internal control."  ECF No. 535 at 58.  This language comes from *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564 (9th Cir. 1990) which, as the Court acknowledges, "was explicitly limited to broker-dealer cases."  ECF No. 535 at 58.  Indeed, *Hollinger* did not involve or reference corporate director liability *at all*.  Despite *Hollinger*'s express limitation and controlling authority to the contrary, the Court has made the preliminary and incorrect decision to adopt the Model Instruction to apply the broker-dealer standard to Tesla's corporate directors.

The Court's adoption of Model Jury Instruction No. 18.11 in this case would be reversible error because it is an incorrect statement of the "good faith" defense for corporate directors.  *Compare* ECF No. 535 at 58, *with Howard*, 228 F.3d at 1065 (articulating good faith defense in action against director); *see also Dang*, 422 F.3d at 805 (vacating judgment when district court used a model civil jury instruction that provided an incorrect statement of the law).  For the last three decades—including several decisions post-*Hollinger*—the Ninth Circuit has expressly and unanimously held that the standard for establishing the good faith defense in cases involving control person liability for corporate officers and directors is (1) "the absence of scienter" and (2) "the failure to directly or indirectly induce the violations at issue."  *Howard*, 228 F.3d at 1065 (action against officers and directors); *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011) (action against officer); *Arthur Children's Tr. v. Keim*, 994 F.2d 1390, 1398 (9th Cir. 1993) (action against director); *Kaplan v. Rose*, 49 F.3d 1363, 1383 (9th Cir. 1994) (successor chief executive officer showed "good faith" through declaration stating "that to his knowledge all the information made public was true"), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017).  There are no Ninth Circuit cases holding otherwise.  Accordingly, because the Plaintiff seeks to impose Section 20 control person liability against Tesla's directors—and not a broker-dealer—this Ninth Circuit precedent is directly on point and binds this Court.  *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("[C]aselaw on point is the law.").

1    In accordance with the Ninth Circuit's holdings, district courts in the circuit—including

2    this Court in its Pretrial Order, *see* ECF 508 at 25 n. 4 ("A defendant is entitled to a good faith

3    defense if he can show no scienter and an effective lack of participation.")—have routinely

4    applied the "absence of scienter" standard to determine the good faith defense in corporate director

5    cases. *See, e.g., In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 819 (C.D. Cal. 2011); *Sec. &*

6    *Exch. Comm'n v. Janus Spectrum LLC*, No. CV-15-609-PHX-SMM, 2017 WL 11500366, at *17

7    (D. Ariz. Sept. 29, 2017), *aff'd and remanded sub nom. U.S. Sec. & Exch. Comm'n v. Janus*

8    *Spectrum LLC*, 811 F. App'x 432 (9th Cir. 2020); *In re Netopia, Inc., Sec. Litig.*, No. C-04-03364

9    RMW, 2005 WL 3445631, at *8 (N.D. Cal. Dec. 15, 2005).

10    The proposed instruction relies on a single unpublished case from the District of Arizona

11    to implicitly overrule binding Ninth Circuit law setting forth the "good faith" defense for non-

12    broker dealers.  ECF No. 535 at 59 (citing *In re Allstate Life Ins. Co. Litig.*, No. CV-09-08162-

13    PHX-GMS, 2013 WL 789106, at *5 (D. Ariz. Mar. 1, 2013).)  This is not permitted.  "If a court

14    must decide an issue governed by a prior opinion that constitutes binding authority, the later court

15    is bound to reach the same result, even if it considers the rule unwise or incorrect.  Binding

16    authority must be followed unless and until overruled by a body competent to do so." *Hart*, 266

17    F.3d at 1170.  Only the Ninth Circuit or the Supreme Court can overrule Ninth Circuit law.  *Id.*

18    This Court is not empowered to reject the Ninth Circuit's binding authority setting forth the

19    standard for the good faith defense in the corporate director context even if it is doing so to be

20    consistent with the Model Instructions. *See id.*; *Hunter*, 652 F.3d at 1232 (the "use of a model

21    jury instruction does not preclude a finding of error.").

22    Even if it were permissible, *In re Allstate Life Ins.* and its analysis does not present a

23    compelling justification to ignore binding law.  The case, which has apparently never been cited

24    by any other court for the proposition that the broker-dealer standard of good faith should be

25    applied to corporate directors, rests on a flawed analysis of an outdated and inapplicable case,

26    *Kersh v. Gen. Council of Assemblies of God*, 804 F.2d 546, 549 (9th Cir. 1986), *abrogated by*

27    *Hollinger*, 914 F.2d at 1575.  First and foremost, *Kersh **did not involve the "good faith" defense**.*

28    *Id.  Kersh* involved the application of a prior rule for determining whether a defendant was a

"controlling person" under Section 20.  *Id.*  Under that rule, the plaintiff had the burden to prove that the controlling person had "actual power or influence" over the controlled person and "was a culpable participant" in the alleged illegal activity.  *Id.*  The question presented was whether to apply the broker-dealer exception for "culpable participant"—in which a broker-dealer could be found to be a culpable participant for its failure to supervise—to determine the threshold question of whether plaintiff met its initial burden and not whether the defendant met the good faith defense.  *Id.*  Notably, the court declined to extend the exception in *Kersh.*  *Id.*  But the concerns in *Kersh* about "arbitrarily limit[ing]" the broker-dealer exception to prove whether somebody is a controlling person are no longer relevant: the Ninth Circuit removed the requirement that the plaintiff prove "culpable participat[ion]" in *Hollinger.*  914 F.2d at 1575.  Plaintiffs can now prove a prima facie claim for control person liability by simply showing "actual power or influence."  *Id.*

  *In re Allstate Life Ins.* attempted to write out this important distinction by asserting that pre-*Hollinger*, the Ninth Circuit collapsed the "good faith" defense into the initial question of whether plaintiff proved control person liability and that *Hollinger* simply shifted the burden of proving good faith to the defendant.  2013 WL 789106, at *5.  But that is incorrect as a matter of law.  Pre-*Hollinger*, the Ninth Circuit treated "good faith" as an affirmative defense separate and apart from "culpable participat[ion]."  *Christoffel v. E. F. Hutton & Co.*, 588 F.2d 665, 669 (9th Cir. 1978) (not reaching the question of whether any triable issue of fact was presented in respect to the good faith defense because plaintiff failed to prove alleged controlling person defendant was a "culpable participant").  The premise upon which *In re Allstate Life Ins.*'s holding was based— that the "culpable participant" standard was synonymous with the "good faith" defense—was fatally defective.  The Court should not adopt a jury instruction that contradicts binding Ninth Circuit precedent based on such flawed authority.

  Moreover, *Kersh* rejects and warns against the type of rule that the Model Instruction advances.  Although the *Kersh* court suggested in dicta that the broker-dealer rule for "culpable participant" could potentially be expanded in "special case[s]," it also made clear that the Ninth Circuit was "unwilling to extend vicarious liability where the secondary defendant's activity ***has been mere inaction***."  *Kersh*, 804 F.2d at 551 (emphasis added).  This is precisely what the

1    proposed instruction does here:  it would permit the jury to hold Tesla's directors liable for

2    securities violations simply as result of having power over a controlled person and failing to

3    exercise that power by not supervising Mr. Musk's Twitter account.  *See id.* (rejecting a rule that

4    when "extended to the logical extreme…would hold that once a plaintiff proved the existence of

5    power or influence over the controlled person, a court would then determine whether the

6    defendant behaved 'culpably' in failing to exercise that power.").

7          The Court contends that public policy favors its proposed instruction.  But purported

8    legislative intent or public policy cannot be used to rewrite or extend a statute beyond its plain

9    language.  *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1749 (2020) ("The people are

10   entitled to rely on the law as written, without fearing that courts might disregard its plain terms

11   based on some extratextual consideration."); *Piper v. Chris-Craft Indus., Inc*., 430 U.S. 1, 26

12   (1977) ("We must be wary against interpolating our notions of policy in the interstices of

13   legislative provisions.").  Here, the plain language of Section 20 compels the application of the

14   good faith defense as articulated by the Ninth Circuit and proposed by Defendants.  The text of

15   Section 20 makes no reference to "reasonable controls" but instead imposes liability "unless the

16   controlling person acted in good faith and did not directly or indirectly induce the act or acts

17   constituting the violation or cause of action." 15 U.S.C. § 78t(a).  The term "good faith" is plainly

18   and consistently understood—even outside of the context of control person liability—to mean the

19   absence of an intent to mislead.  *See, e.g., United States v. Bush*, 626 F.3d 527, 539 (9th Cir. 2010)

20   ("Good faith means a belief or opinion honestly held without an intent to mislead.").  Public

21   policy concerns cannot override the clear language of the statute.

22          Moreover, the public policy rationale supporting the instruction is insufficient to override

23   binding Ninth Circuit law.  First, while it is true that an animating purpose of the securities laws is

24   "to insure honest securities markets and thereby promote investor confidence,"  ECF 538 at 60,

25   this broad goal is not specific to the good faith defense and, applied to its logical conclusion, could

26   be used to justify any court-created expansion of securities liability.  The second asserted

27   justification—that the directors owe fiduciary duties to shareholders—runs against policy

28   concerns identified in *Kersh*, mainly that it would "merge secondary liability into primary

liability" and transform Section 20 into a claim for negligent supervision that turns on "whether the controlling person owed a duty *to the plaintiff* to exercise power over a third person (the controlled person)." *Kersh*, 804 F.2d at 551-52 (emphasis original).

Moreover, the Ninth Circuit's articulation of the good faith defense for corporate directors is consistent with the balance that the Securities Exchange Act of 1934 (the "Exchange Act") strikes—reflected in the plain meaning of the statutes—between protecting markets and limiting runaway liability by requiring evidence of intent.  In *Ernst & Ernst v. Hochfelder*, the Supreme Court explicitly called out Section 20 as a provision of the Exchange Act that "contains a state-of-mind condition requiring **something more than negligence**."  425 U.S. 185, 211 n. 28 (1976) ("And s 20, which imposes liability upon 'controlling person(s)' for violations of the Act by those they control, exculpates a defendant who 'acted in good faith and did not . . . induce the act . . . constituting the violation . . .' (emphasis added).  The proposed instruction—which effectively requires the directors to prove that they did not negligently fail to supervise Mr. Musk's Twitter account—writes out the "state-of-mind condition" identified by the Supreme Court and replaces it with a negligent supervision standard for the good faith defense.  Defendants' proposal and Ninth Circuit law is thus more consistent with Section 20's statutory language and its plain meaning as articulated by the Supreme Court.

Accordingly, and as required by the text of Section 20 and binding authority, Defendants submit that the following instruction be given instead:

> Even if you find that any Tesla director is a controlling person, you must still find that Tesla director not liable if that Tesla director establishes the defense to control person liability.  Each of Tesla's directors contend that they are not liable to the Plaintiffs even if they were controlling persons because they did not induce the violation(s) that you may find and they acted in good faith.
>
> In order to establish a good faith defense to the 20(a) claim, the Tesla directors have the burden of proving two elements by the preponderance of evidence: (1) the Tesla director did not directly or indirectly induce the underlying 10b-5 violation you may

1    find; and (2) the Tesla director acted in good faith; in other words they prove they did

2    not act with knowledge or with conscious disregard of the violation you may find.

3    Even if you find that any of the Tesla directors is a controlling person, your verdict

4    should be not liable if that Tesla director has proved both of these elements.

5    **B.    The Court's Proposed Pretrial And Closing Instruction On Rule 10b-5 Claim**

6         Defendants take exception to the Court's description of the 10b-5 claim—and in particular

7    its inclusion of a description of the Court's summary judgment order—as unduly prejudicial and

8    an improper invasion of the jury's responsibility as finder of fact in this case.  ECF No. 535 at 7-8;

9    36-37.

10        *First*, the Court should not include any description of the summary judgment order because

11   it will unduly influence the manner in which the jury hears and considers the evidence presented.

12   It is essentially inevitable that the jury, upon being instructed by a federal judge that Mr. Musk's

13   statements were "untrue" and made "with reckless disregard," will conclude both that Mr. Musk is

14   in the wrong and that he is not a credible witness in this case, as they will defer to—and make

15   additional inferences based on—the statements made by "an authoritative, professional

16   factfinder."  *United States v. Sine*, 493 F.3d 1021, 1033-34 (9th Cir. 2007);  *Nipper v. Snipes*, 7

17   F.3d 415, 418 (4th Cir. 1993); *see also U.S. Steel, LLC, v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th

18   Cir. 2001); *Herrick v. Garvey,* 298 F.3d 1184, 1192 (10th Cir. 2002) ("Juries are likely to give

19   disproportionate weight to such findings of fact because of the imprimatur that has been stamped

20   upon them by the judicial system.").  Although the Defendants appreciate the Court's proposed

21   adoption of the less inflammatory version of the instruction, the very fact that an instruction about

22   the summary judgment order is being given at all by the Court creates substantial prejudice.  The

23   fact that the Court proposes to instruct the jury on these findings before any evidence has even

24   been heard compounds the prejudice, as it will be the paradigm through which the jury will view

25   all evidence in this case.  No instruction on summary judgment should be given at all, let alone

26   before evidence is even heard.

27        The Court distinguishes the authority cited by Defendants on the basis that those cases

28   "arose from the introduction of judicial findings of fact made *in other cases*." ECF No. 535 at 9

1   (emphasis original).  But this distinction does not alter their fundamental proposition: judicial

2   findings of fact create a unique danger of unfair prejudice because jurors "are likely to defer to

3   findings and determinations relevant to credibility made by an authoritative, professional

4   factfinder rather than determine those issues for themselves."  *Sine*, 493 F.3d at 1033-34.

5   Moreover, the fact that the findings at issue were made by ***this Court*** and the specific judge that

6   will be trying the case renders it ***more likely*** that a juror would defer to the factual findings and

7   determinations here.  A jury is more likely to rely on and defer to the judge presiding over the

8   trial—with whom the jury has actual familiarity and who will be a constant, trusted, and

9   authoritative neutral presence at trial—than it would to a judge in some other court with whom the

10   jury has no relationship.  The risk of prejudice arises from the credibility and authoritative power

11   of the court, which is even more pronounced when made by the court that is administering the

12   trial.  Thus, far from the cases cited by Defendants being distinguishable, their reasoning applies *a*

13   *fortiori* here.

14          *Second*, and in the alternative, should the Court choose to provide such an instruction, it

15   should use the following language to mitigate prejudice and to provide a complete and accurate

16   statement of the law and issues in this case:

17          You are to assume that the statements "Funding secured" and "Investor support is

18          confirmed.  Only reason why this is not certain is that it's contingent on a

19          shareholder vote." were <u>factually inaccurate</u>. But you still must decide whether

20          these statements were <u>materially false</u>. You must also assume that Mr. Musk acted

21          with reckless disregard in making these statements, but you still must decide

22          whether <u>he acted with reckless disregard as to their material falsity and whether he</u>

23          <u>knew the statements were materially false</u>.  <u>A factual representation concerning a</u>

24          <u>security is material if there is a substantial likelihood a reasonable investor would</u>

25          <u>consider the fact important in deciding whether to buy or sell that security</u>.  <u>A</u>

26          <u>factual representation can be untrue but not material. For example, if a company</u>

27          <u>inaccurately reports its revenue, this representation is untrue. The factual</u>

28          <u>representation would be material if the difference between the disclosed revenue</u>

1      <u>and the accurate revenue is significant enough to influence a reasonable investor's</u>

2      <u>decision whether to buy or sell securities in that company. If it is not, it would not</u>

3      <u>be material.</u>

4          In the event that the Court provides a description of the summary judgment in its initial

5      instructions, it should accompany it with a brief description of materiality so that the jury is

6      informed on the distinction between factual falsity and materiality.  As the Court stated in the

7      January 4, 2023 Pretrial Conference, the purpose of providing a description of the 10b-5 claim and

8      summary judgment ruling in the proposed instruction is to assist the jury in understanding the

9      issues it must resolve and reduce confusion.  Materiality is a key issue for the jury in this case.

10     Absent a materiality instruction, the jury is unlikely to understand the significance of the

11     distinction between factual falsity and falsity as to a material fact that the Court draws in its

12     proposed summary judgment instruction.  This risks jury confusion, increases the likelihood that

13     the jury will conclude that the Plaintiff has already established the first element of the claim before

14     trial begins, and fails to provide the jury with adequate context to understand the relevance of

15     evidence being offered for materiality.  This concern is especially acute because evidence relevant

16     to materiality—the real state of affairs regarding the take-private prior to August 7—overlaps with

17     evidence that would typically be offered to prove or disprove falsity.  *See e.g.,* ECF No. 508 at 22-

18     26.

19         *Third*, should the Court elect to instruct on the summary judgment findings but disagree

20     with Defendants' position that reckless disregard must be as to material falsity, then the Court

21     should omit any discussion of recklessness from its instructions.  As discussed in the exceptions to

22     the "Scienter or State of Mind" instruction, *see* Section II. C *infra*, the law requires that a plaintiff

23     prove that a defendant knowingly or recklessly disregarded a material fact and the jury should be

24     instructed accordingly.  However, should the Court choose to omit that requirement, then there is

25     no reason for a recklessness instruction to be given at all in this case.  The Court has indicated it

26     already ruled on summary judgment that Mr. Musk acted recklessly as to the factual falsity of the

27     statements.  ECF No. 387.  Thus, absent the burden to prove "reckless disregard or knowingly

28     scienter with regard to any such material representation" (6/16/2022 Hr'g Tr.. at 5:4-8.), the

1    Court's summary judgment order disposed of the scienter element as to Mr. Musk.  And since

2    there are no other individuals whose recklessness is at issue for 10b-5 liability—Tesla's scienter

3    can only be imputed through Mr. Musk (*see e.g.,* ECF No. 535 at 45)—there is no reason for the

4    instruction to be given at all.  Including any instruction or discussion of an element that the Court

5    has already determined has been established is confusing and unnecessary.  Any reference to

6    recklessness should accordingly be stricken from the jury instructions.

7         **C.    The Court's Proposed Instruction For Scienter Or State Of Mind**

8         Defendants take exception to the Court's Proposed Jury Instruction for "Scienter or State of

9    Mind" (ECF No. 535 at 41) being given without the following additions because the Court should

10   include materiality with its instruction for scienter.

11        Plaintiff must prove by a preponderance of the evidence that Elon Musk and/or Tesla

12        acted with the necessary state of mind, which is known as scienter. Scienter may be

13        established by showing either:

14        1. The defendant knew his untrue statement was <u>materially</u> false, or

15        2. The defendant had reckless disregard for whether the statement was <u>materially</u> true.

16        "<u>Deliberate</u> Reckless<u>ness</u>" means highly unreasonable conduct that is an extreme

17        departure from ordinary care, presenting a danger of misleading investors, which is

18        either known to the defendant or is so obvious that the defendant must have been

19        aware of it.  <u>An honest or good faith belief on the part of an individual that a statement</u>

20        <u>is true is inconsistent with a finding that he acted with scienter in making that</u>

21        <u>statement.</u>

22        The element of scienter under Rule 10b-5 encompasses more than just "guilty knowledge," it

23   is the "intent to deceive, manipulate, or defraud." *Ernst & Ernst*, 425 U.S. at 193; *see also* ECF No.

24   535 at 42 (citing *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1106 (9th Cir. 2021)

25   (scienter requires that the defendant "made false or misleading statements with an 'intent to deceive,

26   manipulate, or defraud,' or with deliberate recklessness."); 17 C.F.R. § 240.10b–5(b) (it is unlawful

27   "[t]o employ any device, scheme, or artifice to ***defraud***.") (emphasis added).  Indeed, the Supreme

28   Court noted it was "especially significant" that Section 10 prohibited the use or employment of any

"manipulative" device as it "was virtually a term of art when used in connection with securities markets" that "connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." *Ernst & Ernst*, 425 U.S. at 193.  This term of art is concerned with both the knowledge of falsity ***and*** the intended effect of the false statement, i.e. that the violator not only knew the statements were false but that they would have an impact on the market.  *See id.*  As the Ninth Circuit has found when reviewing other statutes with intent to defraud or mislead elements, the intent to defraud requires more than just knowledge of falsity but the intent to induce the counterparty to act on the false statement.  *See e.g., United States v. Watkins*, 278 F.3d 961, 966 (9th Cir. 2002) ("Considering that common-law jurisdictions do not equate 'intent to mislead' with guilty knowledge, we cannot imagine that Congress used 'intent to mislead' to simply mean knowledge of falsity.").  In other words, proving the intent to deceive or defraud requires both knowledge of falsity and materiality.  *See id.* at 965 ("The government responds that absent an explicit statutory requirement of 'materiality,' the intent element for § 333(a)(2) is satisfied by simply proving knowledge of falsity. We disagree with the government's overly-broad reading of this provision.").

The inclusion of materiality as a requirement to prove scienter finds further support in the broader statutory scheme.  For instance, the PSRLA defines "knowingly," a state of mind provision that parallels scienter, to include both knowledge of (1) falsity and (2) that "persons are likely to reasonably rely on that misrepresentation or omission." 15 U.S.C. § 78u-4(f).  The inclusion of reliance—which the Ninth Circuit has previously determined reflects the intent to "induc[e] persons to act upon" a fraudulent statement—in the definition of "knowing" shows that the drafters of the PSRLA understood the state-of-mind element to prove securities fraud included both falsity and materiality requirements.  *Cf. Watkins*, 278 F.3d at 968 ("Because this language presupposes a desired effect on a third party, an effect best understood as an expectation of reliance, we conclude as a matter of plain meaning that materiality is an element of the felony misbranding offense.")

Thus, although the Court notes that the Ninth Circuit has never explicitly held that scienter requires knowledge of a statement's material falsity, such a requirement is mandated by the text of Section 10, Rule 10b-5, and the Supreme Court's articulation of the scienter requirement.  Additionally, both the Ninth Circuit and other circuit courts have previously articulated that scienter

1    requires knowledge or recklessness as to a statement or omission's material falsity.  *See Alphabet, Inc.*

2    *Sec. Litig.*, 1 F.4th at 701 (scienter satisfied by "a reckless omission of material facts"); *In re GlenFed,*

3    *Inc. Sec. Litig.*, 42 F.3d 1541, 1546 (9th Cir. 1994) (noting "no quarrel" with the following

4    formulation of the scienter element: "the courts have uniformly held inadequate a complaint's general

5    averment of the defendant's 'knowledge' of material falsity, unless the complaint also sets forth

6    specific facts that make it reasonable to believe that defendant knew that a statement was materially

7    false or misleading.") (citing *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) (Breyer,

8    J)); *GIA-GMI,*, 2007 WL 2070280, at *9 ("the complaint must set forth 'specific facts that make it

9    reasonable to believe that defendant[s] knew that a statement was materially false or misleading.'");

10   *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 621 (4th Cir. 1999) (complaint that "fails adequately to allege

11   that defendants' statements were [materially] false . . . obviously fails to allege facts constituting

12   circumstantial evidence of reckless or conscious misbehavior on the part of defendants in making

13   statements.") (brackets in original); *c.f. United States v. Goyal*, 629 F.3d 912, 917 (9th Cir. 2010)

14   ("The government had to prove that Goyal's representations to PwC that NAI complied with GAAP

15   were materially false or misleading, and that he knew that.")

16       In fact, this Court previously adopted the same standard when clarifying its summary judgment

17   order (6/16/22 Hr'ing Tr. at 5:4-8; *see also id.* at 4:14-23 ("and similarly with scienter, no reasonable

18   juror could find that Mr. Musk did not know or didn't act in disregard to the inaccuracy—the factual

19   inaccuracy, not the legal.").) and in its Pretrial Order, Pretrial Order at 23.  The Court had it right the

20   first time and should instruct the jury that Plaintiff must prove scienter as to material falsity, the

21   correct statement of the law.

22       Defendants also take exception to the Court's instruction on recklessness.  First, the standard

23   in the Ninth Circuit is known as "deliberate recklessness" and the instruction should be written

24   accordingly.  *See Webb v. Solarcity Corp.*, 884 F.3d 844, 851 (9th Cir. 2018). Second, the Court

25   should instruct the jury—consistent with the Final Jury Scienter Instruction in *In Re JDS Uniphase*

26   *Corp. Securities Litig.*—that a good faith belief in the truth of a statement is inconsistent with a

27   finding of scienter.  *In Re JDS Uniphase Corp. Securities Litigation*, 4:02-1486-CW, Dkt. 1874 at 8

28

(N.D. Cal. Nov. 9, 2007), Instructions at 12-13.  This instruction[1] is consistent with Ninth Circuit law holding that while good faith alone may not necessarily be able to defeat a finding of recklessness, it is nonetheless relevant to the factfinder's determination.  *See e.g.*, *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1093–94 (9th Cir. 2010) ("Evidence showing that the defendants did not appreciate the gravity of the risk of misleading others is relevant to [the deliberate recklessness] determination.")  Because "scienter is a subjective inquiry" that "turns on the defendant's actual state of mind," *Gebhart v. S.E.C.*, 595 F.3d 1034, 1042 (9th Cir. 2010), it is appropriate and necessary for the jury to be instructed on how to consider and weigh evidence of a Defendant's subjective belief.

Defendants take exception to the Court's inclusion of the summary judgment instruction here. Defendants incorporate by reference their arguments against the inclusion of any such instruction, *see* Section II.B *supra*, and further assert that this instruction is unnecessary and repetitive since, assuming the Court chooses to include the instruction with the explanation of the 10b-5 claim, it will be the third time the jury receives it.  *See* ECF No. 535 at 8 (striking language in a proposed instruction as redundant). Should the Court choose to give the instruction here (and it should not), the instruction should include the following language to correctly reflect the fact that Plaintiff bears the burden to prove that Mr. Musk possessed scienter as to material falsity:

> You must also assume that Mr. Musk acted with reckless disregard in making these statements, but you still must decide whether <u>he acted with reckless disregard as to their material falsity and whether he knew the statements were materially false</u>.

Finally, as discussed above in Section II. B *supra*, should the Court choose to omit materiality from its recklessness instruction, it should simply omit recklessness in its entirety.  The jury will not be asked to determine whether any Defendant acted recklessly as to a factual misstatement—the Court already resolved that issue on summary judgment—so there is no need for it to be instructed on the issue.

---

[1]  The Court found that Defendants' original proposed instruction—"If a Defendant possessed an honest or good faith belief that a statement was not materially false, then the Defendant did not act with scienter in making that statement"—went "too far." ECF No. 535 at 43.  Defendants respectfully disagree and reassert that the Court should adopt that instruction.  However, they offer the above language.

**D.**     **The Court's Proposed Instruction For Material Misrepresentation**

Defendants take exception to the Proposed Instruction for Material Misrepresentation (ECF No. 535 at 38) being given unless it includes the following additions:

Plaintiff must prove by a preponderance of the evidence that Elon Musk and/or Tesla's misrepresentation of a fact was <u>materially false or materially misleading</u>.

A factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether to buy or sell that security.

<u>A statement is materially false or materially misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists. A statement is not material just because it contains information that relates to a matter of general importance.</u>

A factual representation can be untrue but not material. For example, if a company inaccurately reports its revenue, this representation is untrue. The factual representation would be material if the difference between the disclosed revenue and the accurate revenue is significant enough to influence a reasonable investor's decision whether to buy or sell securities in that company. If it is not, it would not be material. You must decide whether something was material based on the circumstances as they existed at the time of the statement, <u>including the statement's content, the context in which the statement was made, and the circumstance in which a reasonable investor would have seen or heard it.</u>

As currently written, the Court's instruction for Material Misrepresentation is "an incomplete, and therefore incorrect, statement of the law.'" *Hunter*, 652 F.3d at 1232. As the Court recognized in its Final Pretrial Order, materiality requires more than a determination whether a given fact is "important" but rather requires an assessment of "whether the difference between the actual state of [affairs]" and the "misrepresentations...would have been significant to a reasonable investor." ECF No. 508 at 26 (citing *TSC Indus.*, 426 U.S. at 449 ); *see also In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1259 (N.D. Cal. 2000) ("there must be a substantial likelihood that the

1   disclosure of the omitted fact [or correction of the misstated fact] would have been viewed by the

2   reasonable investor as having significantly altered the 'total mix' of information made available.")

3   (alteration in original); 17 C.F.R. § 240.10b-5 (unlawful to "make any untrue statement of a material

4   fact or to omit to state a material fact necessary in order to make the statements made, in the light of

5   the circumstances under which they were made, not misleading").

6           The proposed instruction erroneously omits the second part of the materiality analysis—the

7   question of whether the difference between the misrepresentation and the state of affairs is of a

8   sufficient magnitude to impact the reasonable investor's decision. *TSC Indus.*, 426 U.S. at 449; *In re*

9   *Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017) (holding statements were materially

10  misleading because they "affirmatively created an impression of a state of affairs that differed in a

11  material way from the one that actually existed."); *Tarapara v. K12 Inc.*, No. 16-CV-4069-PJH, 2017

12  WL 3727112, at *15 (N.D. Cal. Aug. 30, 2017) ("A statement is materially misleading when it

13  'affirmatively created an impression of a state of affairs that differed in a material way from the one

14  that actually exists.'").  Instead, the jury is only instructed on half of the analysis—whether or not the

15  ***fact*** itself is important and not whether or not the ***difference*** between the representation and the truth

16  is significant enough to an investor.  The Court itself acknowledges in the helpful example that

17  examining the difference between the true state of affairs and the misrepresentation is a necessary

18  component of the materiality analysis (ECF No. 535 at 39), but the example's utility is limited—and

19  the jury would be improperly instructed—absent a clear and complete statement of the law

20  immediately preceding it.  An explicit instruction on the difference portion of the materiality analysis

21  is necessary in this case as the Court apparently intends to instruct the jury that it is to assume the

22  statements at issue are "untrue."  *Id.* at 36-37.  This heightens the risk that the jury will incorrectly

23  believe that it is only tasked with determining whether the fact about which the statements were made

24  are generally important and not, as the Court correctly identified, that "the difference between the

25  actual state of funding and Mr. Musk's misrepresentations regarding funding would have been

26  significant to a reasonable investor."  Pretrial Order at 26.  Since the "intersection between untruth and

27  materiality may not be intuitive," it is all the more important to provide a comprehensive and accurate

28

1  description of the law as proposed by Defendants.  *See United States v. Terry*, 911 F.2d 272, 278 (9th

2  Cir. 1990) (jury instruction must be "accurate statement of the law").

3        The failure to include the difference instruction contradicts the Court's Pretrial Order and

4  materially prejudices the Defendants in light of the summary judgment ruling.  "The pretrial order

5  controls the subsequent course of the action," *United States v. Joyce*, 511 F.2d 1127, 1130 (9th Cir.

6  1974), and the Court's Pretrial Order made clear that the jury was required to "determine whether the

7  difference between the actual state of funding and Mr. Musk's misrepresentations regarding funding

8  would have been significant to a reasonable investor."  Pretrial Order at 26 (citing *TSC Indus.* at 445).

9  The Pretrial Order correctly stated the legal framework for materiality as it should be applied by the

10  jury in this case, yet the Court's proposal fails to instruct the jury on it.  This omission is erroneous

11  since, according to the very order that governs this trial, the difference analysis is the law of

12  materiality.  *Id.*; *see also Norwood*, 591 F.3d at 1067 (vacating judgment because failure to give

13  additional guidance on legal standard rendered "instruction incomplete and misleading").

14        Defendants further take exception to the Court's deletion of the explanation of "the

15  circumstances as they existed at the time of the statement."  Materiality is a context-specific inquiry,

16  *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1178 (9th Cir. 2009), *aff'd*, 563 U.S. 27 (2011),

17  and it is necessary for the jury—which will be made up of lay persons likely without extensive

18  experience with or sophistication in investing, let alone the investment impact of take private

19  transactions—to be given guidance as to what "circumstances" are most relevant to weigh the

20  materiality of a given statement.  The Defendants' proposed instruction—which is largely borrowed

21  from the Supreme Court's explanation of how one must assess materiality in *Matrixx Initiatives, Inc.*

22  *v. Siracusano*, 563 U.S. 27, 43 (2011) (assessing materiality of statement "requires consideration of

23  the source, content, and context of the [statement]")—makes clear that the "circumstances" the jury

24  must consider are not just limited to the facts about which Mr. Musk communicated but also the

25  nature, medium, and content of the communications themselves.  That Mr. Musk made these

26  statements on an untraditional medium is a fact that both Plaintiff and Defendant assert is relevant to

27  their respective theories.  The jury instructions should accordingly reflect the relevant facts and

28  theories in this case.

**E.** <u>**The Court's Proposed Instruction For Reliance**</u>

The Court's Proposed Instruction for Reliance (ECF No. 535 at 45) does not provide the jury with adequate guidance as to a key disputed issue in this case: when the truth of Mr. Musk's alleged misrepresentations were revealed to the market.  Fraud-on-the-market reliance is only presumed for the period of time between when the "misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267-68 (2014); *Basic Inc. v. Levinson*, 485 U.S. 224, 248-49 (1988) (because "news of the merger discussions credibly entered the market and dissipated the effects of the misstatements, those who traded Basic shares after the corrective statements would have no direct or indirect connection with the fraud."). The parties in this case dispute when that occurred.  Defendants contend the truth was revealed on the market by August 13 following the publication of Mr. Musk's Blog Post, while Plaintiff asserts that the truth was revealed in an August 16 *New York Times* article.  Since Plaintiff proffers no theory of reliance outside of the fraud-on-the-market presumption, the resolution of this dispute has a profound impact on this case as the Plaintiff would not be entitled to the presumption—and thus could not collect damages—for any loss that occurred after the truth was revealed.  *Basic*, 485 U.S. at 248-49.  Plaintiff attributes a large portion of the purported losses to the share price reduction on August 17, so a finding by the jury that the truth was revealed on August 13 would likely reduce his damages by hundreds of millions of dollars.  Because this is a key disputed question of fact upon which the quantum of the judgment depends, the jury must be instructed on it.

The Court declined to include this instruction based on the assumption that the "timing of the transactions and the corrective disclosures is baked into the presumption" and the "presumption has a prerequisite requirement that the plaintiff traded stock before he truth was revealed." ECF No. 535 at 49-50.  But Defendants' reliance period instruction does not go to the question of ***whether*** to apply the fraud-on-the-market presumption, but ***how*** to apply it and over what period of time.  In this case, the jury could determine that the Plaintiff may rely on the fraud-on-the-market presumption from August 7 to August 13, but no longer from August 14 to August 17.  The instruction provides the jury with the necessary information to make that determination.

1   Defendants therefore take exception to the Court's Proposed Instruction being given without the

2   following language:

3        <u>Once the information the market needs to assess the accuracy of the alleged</u>

4        <u>misrepresentations has been revealed, a reasonable investor cannot be said to have</u>

5        <u>relied on the alleged misrepresentation in deciding to invest.  In other words, the</u>

6        <u>disclosure of this information cuts off the Plaintiff's reliance on the alleged</u>

7        <u>material misrepresentation at the moment it is issued.  If you find the Plaintiff</u>

8        <u>justifiably relied on Defendants' alleged material misrepresentation under the</u>

9        <u>"fraud-on-the-market" theory, the period of that reliance is limited to the time</u>

10       <u>between when the alleged material misrepresentation was made and when the</u>

11       <u>information the market needs to assess the accuracy of the alleged material</u>

12       <u>misrepresentations was disclosed.</u>

13      **F.**      **<u>The Court's Proposed Instruction For Loss Causation</u>**

14      Defendants take exception to the Court giving its Proposed Instruction for Loss Causation

15   (ECF No. 535 at 52) without including the following:

16        Plaintiff must prove by a preponderance of the evidence that Mr. Musk and/or Tesla's

17        misrepresentations caused their economic injury.  To establish causation, Plaintiff

18        must prove that the misrepresentations played a substantial part in causing the injury or

19        loss that Plaintiff suffered. Plaintiff must reasonably distinguish any security-price

20        reaction to the misrepresentations at issue from the market's reaction to other factors,

21        such as other information or events that could affect the prices of Tesla's securities.

22        <u>Plaintiff can only suffer losses when new information is revealed to the market.  He</u>

23        <u>cannot recover damages for stock-price losses caused by subsequent events that repeat,</u>

24        <u>recharacterize, or arise from the information already known to the market, such as</u>

25        <u>negative news stories, lawsuits, or investigations about the previously disclosed</u>

26        <u>information.</u>  Plaintiff need not prove that the misrepresentations were the sole cause

27        of the economic injuries.

28

1   The Court's proposal, by failing to inform the jury that the Plaintiff's losses cannot be caused
2   by the repetition of information already disclosed to the market, *see In re Omnicom Grp., Inc. Sec.*
3   *Litig.*, 597 F.3d 501, 512 (2d Cir. 2010); *Teachers' Ret. Sys. Of LA v. Hunter*, 477 F.3d 162, 187-88
4   (4th Cir. 2007) (stock decline following filing of complaint based on already-disclosed facts is not a
5   loss "for which the plaintiffs in this case are entitled to compensation."), is an incomplete and
6   therefore inaccurate description of the law.  *See Dang*, 422 F.3d at 805-06.

7   The Court declined to adopt Defendants' proposed instruction on the repetition of previously
8   disclosed information based on two incorrection presumptions.  First, the Court posits that "Plaintiff's
9   leakage theory of loss causation is more nuanced than a pure corrective disclosure-based theory of loss
10   causation." ECF No. 535 at 52.  But Dr. Hartzmark, by his own admission, is asserting a corrective-
11   disclosure damages theory.  Ex. 375, n. 9.  ("As will be discussed in detail, I assume for the purposes
12   of this Damages Report that the finder of fact will determine that the period between the Musk Tweets
13   on August 7, 2018 starting at 12:48 p.m. and the close of trade of August 17, 2018 is ***filled with***
14   ***numerous statements and partial corrective disclosures revealing curative information***; and that
15   there was a final corrective disclosure on August 17, 2018.").  Second, the Court suggests that because
16   "there are an infinite variety of ways for a tort to cause a loss," (ECF No. 535 at 52), the Plaintiff is
17   not required to show that new information caused the stock decline.  However, there is no authority
18   that holds that outdated information already incorporated into a stock price can cause loss in a fraud-
19   on-the-market case.  *See In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020) (BoFI's
20   "stock price should already reflect whatever public information a blog post might be based upon. A
21   corrective disclosure, though, ***must by definition reveal new information to the market that has not***
22   ***yet been incorporated into the price***.") (emphasis added); *Irving Firemen's Relief & Ret. Fund v.*
23   *Uber Techs., Inc.*, 998 F.3d 397, 407 (9th Cir. 2021) (in a fraud-on-the-market case "the plaintiff must
24   show that after purchasing her shares and before selling, the following occurred: (1) 'the truth became
25   known,' and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or
26   eliminated").  Plaintiff's theory of damages and loss causation cannot circumvent the requirement that
27   loss is only caused by the revelation of new information to the market, so the Court should instruct the
28   jury on this law.

1    **G.      <u>The Court's Proposed Instruction For Damages</u>**

2           Defendants take exception to the Court's proposed Jury Instruction for Damages (ECF No. 535

3    at 54) on the grounds that it (1) fails to instruct the jury that Plaintiff can only recover damages for

4    losses caused by the revelation of the alleged fraud and not repetition or recharacterizations of already

5    public information, (2) fails to provide an instruction on consequential damages, (3) fails to instruct

6    the jury that Plaintiff bears the burden to prove the threshold question of whether the

7    misrepresentations caused any change in implied volatility, and (4) includes an unnecessary and

8    suggestive instruction that Plaintiff need not prove damages with mathematical certainty.

9           The Court correctly includes a disaggregation instruction informing the jury of Plaintiff's

10   burden to separate out the price decline caused by factors other than the alleged fraud.  ECF No. 535

11   at 55.  But the Court's instruction is unfortunately incomplete as it fails to describe to the jury what

12   those factors are, including that one of the factors that must be separated are losses caused by the

13   republication of information already known to the market.  *See In re BofI Holding, Inc. Sec. Litig.*, 977

14   F.3d at 794 (damages limited to losses caused by the publication of new information since the "stock

15   price should already reflect" information already known to the public).  This instruction is critical in

16   this case because Plaintiff's damages model attributes losses to events that Defendants' contend

17   simply repeat information that was already public, such as the August 16 *New York Times*' article's

18   journalistic recharacterization of prior reports that "funding was far from secured."  *In re Omnicom*

19   *Grp., Inc. Sec. Litig.*, 597 F.3d at 512 ("A negative journalistic characterization of previously

20   disclosed facts does not constitute a corrective disclosure of anything but the journalists' opinions.");

21   Ex. 171.  Omitting this instruction may not only confuse the jury but will also provide an incomplete,

22   and therefore incorrect, description of the law.  The jury should be given the following instruction,

23   which correctly states the law and is tailored to the theories and issues in this case:

24           Plaintiff also has the burden of separating out the price decline, if any, caused by

25           factors other than the alleged misrepresentations, <u>including but not limited to</u>

26           <u>subsequent events that repeat, recharacterize, or arise from the revelation of the truth to</u>

27           <u>the market, such as negative news stories, lawsuits, or investigations about the</u>

28           <u>information already publicly known.</u>

1    Defendants also take exception to the Court's omission of a consequential damages instruction,

2    which accurately states the law on recovering consequential damages as being limited to "outlays

3    attributable to the alleged misconduct" and out-of-pocket damages. *Meyers v. Moody*, 693 F.2d 1196,

4    1212 (5th Cir. 1982); *Ambassador Hotel Co. v. Wei-Chuan Inv*., 189 F.3d 1017, 1030 (9th Cir. 1999).

5    The Court removed this language because it "is inconsistent with Plaintiff's theory of consequential

6    damages." ECF No. 535 at 56.  But Plaintiff can only recover damages cognizable under the law.  If

7    his theory of consequential damages is inconsistent with the law, that is grounds to reject his theory

8    and not grounds to reject an instruction.   Accordingly, the jury should be made aware of this

9    inconsistency and be instructed as follows:

10         Plaintiff is not permitted to recover any consequential damages except for outlays

11         attributable to the alleged misconduct, for example money Plaintiff actually spent to

12         mitigate his harm, if proved with sufficient certainty.

13    On options damages, the Court should instruct the jury that Plaintiff bears the burden to prove

14    that the alleged misrepresentations caused implied volatility to change, *see Harmsen v. Smith*, 693

15    F.2d 932, 945 (9th Cir. 1982) ("plaintiff in a securities fraud action has the burden of proving that

16    damages flowed from the alleged injury"), and provide the following instruction:

17         Plaintiff bears the burden of proving by a preponderance of the evidence that the

18         misrepresentations on which you based your finding of a § 10(b)–5 violation caused a

19         change to the implied volatility for each and every option on each class day.

20    The Court should slightly modify the current proposed language regarding implied volatility

21    instruction to make it clear to the jury that Plaintiff bears the burden to prove implied volatility for

22    each option bought or sold during the Class Period.  Each option is a separate security with its own

23    implied volatility.  The current instruction incorrectly suggests that it would be sufficient to establish

24    but-for implied volatilities collectively for all options.  It is also improperly suggestive in the sense it

25    implies that each option has only one implied volatility per day when, in fact, it is not disputed that

26    implied volatility changes throughout the day.  Defendants propose the following changes:

27

28

1    You will also be asked to determine what the levels of implied volatility for <u>each</u> Tesla

2    stock <u>option</u> would have been <u>for each option bought or sold</u> during the Class Period

3    "but for" the misrepresentations.

4    Finally, Defendants take exception to the inclusion of the language "[d]amages need not be

5    proven with mathematical certainty" on the grounds and to the extent that it improperly suggests that

6    Plaintiff's damages burden is lower than what is required by law.

7    **H.    <u>The Court's Proposed Instruction On Corporate Entities</u>**

8    Defendants take exception to the Court's Proposed Instruction on Corporate Entities (ECF No.

9    535 at 34) being given without the following addition:

10   <u>If you find against Mr. Musk, but do not find that Mr. Musk was acting within the</u>

11   <u>scope of authority as an officer of Tesla, then you must find that Tesla is not liable.</u>

12   The Court's removal of this statement, which was borrowed from the Ninth Circuit Model Jury

13   Instructions and is an accurate description of hornbook agency law, renders the instruction incomplete,

14   inaccurate, and therefore erroneous.  *Norwood*, 591 F.3d at 1066.  The instruction is incomplete

15   because it fails to inform the jury what the import and implication is should it determine that Plaintiff

16   fails to prove that Mr. Musk was acting within the scope of his authority as a Tesla officer when he

17   sent the Tweets.  The jury is being instructed on agency law but it is not being told how that law

18   would apply to this case.  The failure to include this instruction would therefore be error.  *See Dang*,

19   422 F.3d at 810-11 ("Failure to give an instruction on a party's theory of the case is reversible error if

20   the theory is legally sound and evidence in the case makes it applicable").

21   The Court justifies its deletion on the grounds that it suggests that Tesla could be liable as a

22   "maker" of the Tweets even if the jury concludes that Mr. Musk was not acting within the scope of his

23   authority when he published them.  ECF No. 535 at 34-35.  But "maker" is only one element of

24   Tesla's liability.  The Plaintiff, as the Court acknowledges in its instruction on the imputation of

25   scienter, must also prove that Tesla published the statement with scienter.  *Id.* at 45.  It can only do so

26   if its agents and officers acted with scienter and within the scope of their authority while publishing

27   the Tweets.  As there is no evidence that any other Tesla employee authorized, reviewed, or was

28   otherwise involved in the publication of the Tweet, the only way Plaintiff can establish liability for

1    Tesla is by proving that Mr. Musk was acting within the scope of his authority as a Tesla employee

2    when he published them.  *See In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 475 (9th Cir.

3    2015).  Accordingly, there is no theory to hold Tesla liable without proving that Mr. Musk was acting

4    within the scope of his authority.  The instruction is accurate, appropriate, and does not risk juror

5    confusion under the facts of the case.  It should be given.

6    **I.      The Court's Proposed Jury Instruction For Imputation Of Scienter**

7    The Defendants take exception to the Court's Proposed Jury Instruction for Imputation of

8    Scienter (ECF No. 535 at 45) being given without the following instruction:

9    <u>If you find that Elon Musk acted with scienter but was not acting within the scope</u>

10   <u>of his authority while tweeting the statements at issue on August 7, then his scienter</u>

11   <u>cannot be imputed to Tesla and you must find Tesla not liable.</u>

12   Plaintiff must prove all elements of his Section 10(b) claim against Tesla, including

13   scienter.  Since Tesla is a corporation, its scienter must be imputed from a corporate officer acting

14   within the scope of his or her authority at the time he or she made the statements at issue.  *In re*

15   *ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d at 475.  It follows that Tesla cannot be held liable if

16   the corporate officer making the statement giving rise to liability was acting outside the scope of

17   his or her authority when the statements were made.  *See id.*; *see also* Ninth Circuit Model Civil

18   Jury Instruction 4.11.  Here, it is undisputed that only one Tesla officer was responsible for

19   publishing the Tweets at issue in this case: Mr. Musk.  Accordingly, Plaintiff can only establish

20   Tesla's scienter—and its liability—by proving that Mr. Musk published the Tweets while acting

21   within the scope of his authority.  The jury should therefore be instructed, consistent with the law

22   and Model Jury Instruction No. 4.11, that Tesla ***cannot*** be held liable if Plaintiff fails to establish

23   that Mr. Musk was acting within the scope of his authority when he tweeted.  *See Clem*, 566 F.3d

24   at 1181 (A party is "entitled to an instruction about his or her theory of the case if it is supported

25   by law and has foundation in the evidence").  This instruction is necessary to provide the jury with

26   a complete and accurate description of the law of imputation of scienter.

27

28

**J.      The Court's Proposed Instruction On Apportionment Of Liability**

Defendants take exception to the Court's proposed Instruction on Apportionment of Liability (ECF No. 535 at 61) being given without the following language:

> First, you must determine whether any Defendant knowingly violated any securities
> law. A Defendant commits a knowing violation of the securities laws when (1) they
> make an untrue statement of material fact, with actual knowledge that the
> representation is <u>materially</u> false; and (2) persons are likely to reasonably rely on
> that <u>material</u> misrepresentation.

The Court's instruction does not adequately inform the jury that a Defendant must have knowledge that the misrepresentation at issue is materially false. As discussed in Section II. C, *supra*, scienter under 10b-5—from which the PSRLA's "knowing" standard is based—requires Plaintiff to prove state-of-mind as to both falsity and materiality.

**K.      The Court's Proposed Pretrial Statement/Claims And Defenses**

Defendants take exception to the Pretrial Statement's inclusion of the statements at issue in the case and description of Plaintiff's theory as unfairly one-sided, incomplete, and therefore prejudicial. (ECF No. 535 at 5.)  There is no reason for the Court to provide a description of the Plaintiff's case before the parties open since the Plaintiff will have the opportunity to do so on his own mere minutes after the instruction is given.

Specifically, the proposed instruction states that "[i]n this case, Plaintiff asserts that Elon Musk and Tesla violated Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5(b), by making false or misleading statements regarding a potential going-private transaction for Tesla that artificially affected the price of Tesla's stock and other securities during the Class Period" without making any reference to materiality.  ECF No. 535 at 5.  The Court apparently intends to inform the jury in the following instruction that it is to assume that that the statements Plaintiff "asserts" are "false or misleading" are "untrue." *Id.* at 7-8.  Without any reference to materiality in the Pretrial Statement, the jury will likely conclude before the parties even open that Plaintiff has proven at least half of its assertions.

1     Accordingly, the Defendants respectfully propose that—in the event the Court ultimately

2 provides a description of Plaintiff's case in the Pretrial Statement—the Court include the following

3 language to mitigate against any potential prejudice:

4     "In this case, Plaintiff asserts that Elon Musk and Tesla violated Section 10(b) of the

5 Securities Exchange Act of 1934 and SEC Rule 10b-5(b), by making <u>materially</u> false or

6 misleading statements regarding a potential going-private transaction for Tesla that artificially

7 affected the price of Tesla's stock and other securities during the Class Period."

8 **<u>CONCLUSION</u>**

9     For the foregoing reasons, the Defendants respectfully request that the Court remedy the

10 above-identified issues and errors in the Proposed Jury Instructions and adopt Defendants'

11 proposals.

12

13 DATED:  January 11, 2023       Respectfully submitted,

14         QUINN EMANUEL URQUHART & SULLIVAN, LLP

15

16         By: <u>*/s/ Alex Spiro*</u>

        Alex Spiro *(appearing pro hac vice)*

17         *Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss,*
*Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias,*

18         *James Murdoch, Kimbal Musk, and Linda Johnson Rice*

19

20

21

22

23

24

25

26

27

28