**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
amccall@zlk.com

*Attorneys for Plaintiff and Counsel for the Class*

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE TESLA, INC. SECURITIES LITIGATION

Case No. 3:18-cv-04865-EMC

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO TRANSFER VENUE**

TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. RELEVANT FACTS .......... 2

A. Procedural Posture of the Case .......... 2

B. Location of Witnesses .......... 3

C. The Western District of Texas Is Not an Appropriate Venue .......... 4

III. LEGAL STANDARD .......... 4

IV. ARGUMENT .......... 5

A. Defendants Cannot Transfer the Action to the Western District of Texas Because Venue Did Not Exist There When the Case Was First Brought. .......... 5

B. The Media Coverage Cited by Defendants Is Not Prejudicial and Falls Woefully Short of Satisfying the Heavy Burden Necessary for a Transfer. .......... 6

C. The Convenience of the Parties Weighs in Favor of the Northern District of California. .......... 9

D. The Court Should Deny Defendants' Request for an Adjournment of Trial. .......... 11

V. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Cases**

*A. J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. Of California*, 503 F.2d 384 (9th Cir. 1974) .......... 5

*Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980 (N.D. Cal. 2011) (Chen, J.). Section 1404(a).......... 5, 9, 10

*Bozic v. United States Dist. Court*, 888 F.3d 1048 (9th Cir. 2018) .......... 6

*Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113 (C.D. Cal. 1998) .......... 9

*Ctr. for Biological Diversity v. McCarthy,* 2015 WL 1535594 (N.D. Cal. Apr. 6, 2015).......... 5

*Daniels v. Woodford*, 428 F.3d 1181 (9th Cir. 2005) .......... 6

*Harner v. USAA General Indemnity Co.,* 2022 WL 1138145 (S.D. Cal. 2022).......... 13

*Harris v. Pulley*, 885 F.2d 1354 (9th Cir. 1989) .......... 6, 7

*Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208 (S.D. Cal. 2013) .......... 10

*Healy v. Wells Fargo Bank, N.A.*, 2020 WL 7074939 (S.D. Cal. Dec. 3, 2020) .......... 6

*Hoffman v. Blaski*, 363 U.S. 335 (1960) .......... 5

*Johnson v. Bay Area Rapid Transit Dist.,* 2014 WL 2568458 (N.D. Cal. June 6, 2014).......... 12

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) .......... 12

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) .......... 9

*Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772 (N.D. Cal. 2014).......... 6

*Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*,
726 F.2d 1381 (9th Cir. 1984) .......... 8

*Oliver v. City & Cnty. of San Francisco*,
2009 WL 10736493 (N.D. Cal. Mar. 25, 2009) .......... 8, 10

*R. Prasad Indus. v. Flat Irons Env't Sols. Corp.*,
2017 WL 4409463 (D. Ariz. Oct. 4, 2017) .......... 11

*Rideau v. Louisiana*,
373 U.S. 723 (1963) .......... 7

*Schubert v. OSRAM AG*,
2013 WL 587890 (D. Del. Feb. 14, 2013) .......... 5

*Sec. Inv'r Prot. Corp. v. Vigman*,
764 F.2d 1309 (9th Cir. 1985) .......... 5

*SiteLock LLC v. GoDaddy.com LLC*,
2022 WL 7426426 (D. Ariz. Sept. 2, 2022) .......... 12, 13

*Steshenko v. McKay*,
735 F. App'x 298 (9th Cir. 2018) .......... 10

*Trendsettah USA, Inc. v. Swisher Int'l, Inc.*,
2020 WL 1224288 (C.D. Cal. Jan. 21, 2020) .......... 12

*United States v. Croft*,
124 F.3d 1109 (9th Cir. 1997) .......... passim

*United States v. Dischner*,
974 F.2d 1502 (9th Cir. 1992) .......... 6, 7, 9

*United States v. Flynt*,
756 F.2d 1352 (9th Cir. 1985) .......... 11

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) .......... 4

*Williams v. Vasquez*,
817 F. Supp. 1443 (E.D. Cal. 1993) .......... 7

**Statutes**

28 U.S.C. § 471 .......... 13

28 U.S.C. §1404(a) .......... 1, 4, 5

**Other Authorities**

*Tesla Gigafactory to be Investigated for Labor Standards Violations*, THE AUSTIN CHRONICLE (Nov. 16, 2022) .......... 8

*Top Embarrassing Moments of Our Worst Residents*, THE AUSTIN CHRONICLE (Dec. 16, 2022) .......... 8

## I. INTRODUCTION

Defendants' motion marks the second attempt in the last three weeks where Elon Musk has tried to postpone this trial. First, on December 22, 2022, in conjunction with an "emergency" discovery dispute, Defendants asked for a postponement which the Court promptly rejected. Now, on January 6, 2023, just hours after receiving the Court's final proposed set of jury instructions and ten days before jury selection and opening statements, Defendants ask to transfer this case from San Francisco and postpone the trial for an indeterminate period in hopes of buying enough time to allow what they refer to as "biased local media coverage" to "dissipate." Defendants' request has no merit. What they refer to as "biased" coverage is, in fact, factual reporting about his management of Twitter, Inc., and has no bearing on the jury's ability to render a fair verdict. Importantly, as evidenced by the 200 or so completed jury questionnaires received yesterday morning, none of the potential jurors for this trial work for Twitter and only a small number (2 or 3) even know someone who works for Twitter. Further, the "media coverage" cited by Defendants does not relate to the false and misleading "funding secured" tweets at issue in this case. Accordingly, Defendants fail to provide any evidence whatsoever that recent media coverage is "so pervasive and inflammatory that the jurors cannot be believed when they assert that they can be impartial." *United States v. Croft*, 124 F.3d 1109, 1115 (9th Cir. 1997).

Section 1404 allows for the transfer of an action to any district in which the case "might have been brought" when first commenced. 28 U.S.C. §1404(a). The Western District of Texas is not an option. When Plaintiff commenced this action in 2018, Tesla's headquarters were in Palo Alto and Musk lived in the Bay Area. There was no connection at all to Texas. In fact, there remained no connection to Texas until December 2021 when Musk and Tesla moved to Austin. That connection does not support a transfer of the case, especially considering the significant prejudice Plaintiff would incur as a result. For months now, Plaintiff has been readying his case for trial pursuant to Ninth Circuit controlling law and this Court's local rules, guidelines, and specific evidentiary rulings. The Court, too, has expended substantial judicial resources to prepare for trial. Unquestionably, the Court and its staff have spent numerous hours reviewing evidentiary objections, exhibits, deposition designations, and grappling with complex motion *in limine*

arguments pertaining to Plaintiff's damages theory. Transferring the case less than one week before trial would result in an extreme waste of resources.

Transferring the case would also prejudice Plaintiff in numerous substantive ways. Plaintiff's counsel has prepared for trial on the basis that several key non-party witnesses will be providing live testimony at trial. These witnesses, who include Tesla's former Chief Financial Officer, investor relations personnel, and members of the go-private deal team, live in and around the Bay Area. They are expected to testify on key issues at trial, including but not limited to Musk's knowing violations of the federal securities laws and the material falsity of the "funding secured" tweet. Plaintiff's trial subpoenas will not be enforceable if the case is transferred out of San Francisco, meaning that Plaintiff will have to reorganize his case, rework deposition designations, and revise his overall presentation to the jury. The convenience Musk would enjoy by having the trial in his current hometown of Austin does not outweigh the prejudice that would ensue if the Court were to grant Defendants' request.

With less than three Court days before the start of trial and no new information warranting a delay, Plaintiff respectfully requests that Defendants' motion be denied in its entirety with prejudice so the parties can complete their final trial preparations without further distraction.

## II. RELEVANT FACTS

### A. Procedural Posture of the Case

Defendants filed their motion a mere eleven days before trial is scheduled to begin. Dkt. No. 537. The parties have already had their final pretrial conference before the Court. Dkt. No. 499. Counsel for Plaintiff, most of whom are based on the east coast, have already traveled to San Francisco for trial and, in fact, appeared in Court this morning for the "trial technology check." Plaintiff's witnesses and experts have also traveled (or are in the process of traveling) to San Francisco. Outside equipment vendors and specialists also commenced work in support of Plaintiff's trial preparation. Accordingly, Plaintiff's counsel has already incurred substantial expenses in preparing for the trial scheduled to begin in this District next week.

Moreover, Plaintiff prepared the case for trial in accordance with this Court's specific local rules and guidelines. The parties have agreed upon and filed trial protocols specific to the

time limits and rules of this Court. Dkt. No. 526. Plaintiff has categorized exhibits he anticipates introducing into evidence at trial according to this Court's order. Dkt. No. 514. Plaintiff has prepared deposition designations and the accompanying video clips based on this Court's protocols. Additionally, this Court has issued numerous orders guiding the parties as to admissible evidence, Plaintiff's damages theory, and the elements of the claims required to be proven at trial. *See*, *e.g.*, Dkt. No. 508. The Court has engaged with the parties substantively on the verdict form and on jury instructions, and the parties have submitted numerous revisions of these items in response. *See*, *e.g.*, Dkt. Nos. 512, 520. In short, Plaintiff has prepared for trial in this Court and has expended significant time and resources to do so.

**B. Location of Witnesses**

A substantial number of Plaintiff's anticipated witnesses are located in California and will be testifying live in Court about critical issues in the case. These witnesses are:

- Deepak Ahuja, Tesla's Chief Financial Officer at the time of tweets at issue in this litigation, resides in California and is expected to testify, among other things, regarding his discussions with investors to the potential going private and his involvement with drafting the August 7, 2018 blog post.
- Dave Arnold, a current resident of California, is expected to testify, among other things, regarding his experience as Tesla's Senior Director of Global Communications, and in particular, his conversations with various investors and news outlets following Musk's tweet on August 7, 2018, his familiarity with the topics of public reporting regarding the August 7 tweet, and his involvement drafting the August 7 letter to Tesla employees and the August 13 blog post.
- Martin Viecha, currently located in the Bay Area, will testify regarding, among other things, his experience as Tesla's Director of Investor Relations and his conversations with various analysts and investors following Musk's tweets on August 7, 2018.
- Egon Durban of Silver Lake will testify regarding, among other things, his interactions with Musk and others regarding the proposal to take Tesla private at

$420 per shares, the work Silver Lake performed in connection with the going private, and Silver Lake's presentation to the Tesla board on August 23.

- Dan Dees of Goldman Sachs, is expected to testify, among other things, regarding his interactions with Musk, the Tesla Board, Silver Lake and others concerning the proposed take-private, and Goldman Sachs' outreach to potential sources of funding after Musk's August 7 tweets.

Plaintiff served trial subpoenas on these witnesses months ago in anticipation of examining them in Court during the trial and has been readying examination outlines ever since. *See* Trial Subpoenas dated July 26, 2022, Exhibit A.[1]

### C. The Western District of Texas Is Not an Appropriate Venue

This case has been pending in this Court for over four years. From the commencement of this action in August 2018 to December 2021, Tesla was headquartered in Palo Alto, California, without any connection whatsoever to the Western District of Texas. It was not until December 1, 2021, that Tesla moved its headquarters to Austin, Texas. *See* Tesla Form 8-K dated December 1, 2021, Exhibit B. Aside from the headquarters' relocation, the only purported resident of Texas is Musk himself. None of the actions at issue in this litigation took place in the Western District of Texas, thus there are no facts of the case relating to that forum. Plaintiff filed in this District because Tesla was headquartered here at the time of the case's initiation, the actions giving rise to the litigation occurred in this District, and as discussed above, numerous witnesses are located in or around this District.

## III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought" for the convenience of the parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). The purpose of Section 1404 is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted). "The burden of showing that transfer is appropriate is on the

[1] Exhibits referenced herein are attached to the accompanying Declaration of Adam C. McCall.

moving party." *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 994 (N.D. Cal. 2011) (Chen, J.). Section 1404(a) "requires two findings—that the district court is one where the action might have been brought and that the convenience of parties and witnesses in the interest of justice favors transfer." *Ctr. for Biological Diversity v. McCarthy,* No. 14-CV-05138-WHO, 2015 WL 1535594, at *2 (N.D. Cal. Apr. 6, 2015). Defendants fail to satisfy either of these findings.

## IV. ARGUMENT

### A. Defendants Cannot Transfer the Action to the Western District of Texas Because Venue Did Not Exist There When the Case Was First Brought.

Section 1404 allows a case to be transferred to any district "where it might have been brought" when the action was first commenced. 28 U.S.C. §1404(a). The statute cannot be applied retroactively, meaning that Section 1404 does not allow for transfer to forums that a party may presently find convenient or advantageous. *See Hoffman v. Blaski*, 363 U.S. 335, 342-43 (1960) ("We do not think the § 1404(a) phrase 'where it might have been brought' can be interpreted to mean . . . 'where it may now be rebrought, with defendants' consent.'").[2] "An additional protection [for plaintiffs] is that the determination of transferability must still be made as of the time of filing of the action in the transferor district." *A. J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. Of California*, 503 F.2d 384, 387 (9th Cir. 1974).

Without question, this action could not have been brought in the Western District of Texas when first commenced in August 2018. None of the underlying acts or transactions constituting the federal securities laws violations occurred in that district, which is required to lay venue. *See Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985). It was not until December 1, 2021, that Tesla moved its headquarters to Austin, Texas. Accordingly, the Western District of Texas was not an appropriate venue at the outset of the case and, therefore, the action could not have been brought in that District when commenced. For that reason and that reason alone,

[2] *Hoffman* remains binding law and prohibits transfer to districts where cases could not have been brought when initially commenced, except when the parties agree otherwise as allowed by statute. Therefore, "[b]ecause [the defendant's] consent plays no role in this particular type of transfer decision, the court believes the logic of *Hoffman* continues to apply." *Schubert v. OSRAM AG*, No. CIV.A. 12-923-GMS, 2013 WL 587890, at *3 (D. Del. Feb. 14, 2013) (quotations omitted).

Defendants' motion to transfer under Section 1404 should be denied. *See Bozic v. United States Dist. Court*, 888 F.3d 1048, 1054 (9th Cir. 2018) (holding that a "district court committed clear legal error" when it transferred an action under § 1404 to a district where it could not have originally been brought); *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014) ("An action may not be transferred to a district where venue would have been improper if it ***originally*** had been filed there." (emphasis added)); *Healy v. Wells Fargo Bank, N.A.*, No. 20-CV-01838-H-AHG, 2020 WL 7074939, at *2 (S.D. Cal. Dec. 3, 2020) ("A district court is one in which an action could have been brought ***originally*** if (1) it has subject matter jurisdiction; (2) defendants ***would have been*** subject to personal jurisdiction; and (3) venue ***would have been*** proper" (emphasis added)).

### B. The Media Coverage Cited by Defendants Is Not Prejudicial and Falls Woefully Short of Satisfying the Heavy Burden Necessary for a Transfer.

Defendants have the burden to show that "that the community where the trial was held was saturated with prejudicial and inflammatory media publicity ***about the crime***." *Daniels v. Woodford*, 428 F.3d 1181, 1211 (9th Cir. 2005) (emphasis added); *Harris v. Pulley*, 885 F.2d 1354, 1361 (9th Cir. 1989) (same). The prospective jurors must be subject "to a barrage of inflammatory publicity immediately prior to trial amounting to a huge wave of public passion, that would warrant a presumption that the jurors selected for the trial were prejudiced." *United States v. Dischner*, 974 F.2d 1502, 1524 (9th Cir. 1992) (internal quotations omitted). The adverse publicity must be "so pervasive and inflammatory that the jurors cannot be believed when they assert that they can be impartial." *Croft*, 124 F.3d at 1115. Defendants do not come close to showing that this is a "rare" or "extreme" circumstance warranting a change in venue. *Id*.

Defendants fall short of meeting this high burden and struggle to even link the news coverage of Musk to the issues in this case. They argue that this case should be transferred in the "interest of justice" because of Musk's recent media attention. Mot. at 7. However, out of the hundreds of articles reviewed by Defendants, only one even references Musk's "funding secured"

tweet. *See* Lifrak Decl., Ex. U.[3] This supports the conclusion that there has not been "prejudicial and inflammatory media publicity ***about the crime***" so severe that the jury pool in the Northern District of California cannot be trusted. *Harris*, 885 F.2d at 1361. The relevant case law clearly supports Plaintiff's position. *See Dischner*, 974 F.2d 1524 (177 news stories on Anchorage television stations concerning the events of the case "was not of the kind where a court could not believe the answers of the jurors and would be compelled to find bias or preformed opinion as a matter of law."); *Harris*, 885 F.2d at 1361 (court reviewed 136 articles between a five month period leading up to jury selection and found no prejudice); *Croft*, 24 F.3d at 1115 (no prejudice where "90% of Oregonians knew about Rajneeshpuram, over 60% had heard of their prosecution, and over 40% believed that the indicted conspirators were guilty of the conspiracy" to commit murder); *c.f. Rideau v. Louisiana*, 373 U.S. 723, 726-27 (1963) (prejudice where defendant confessed to robbing a bank, kidnapping three of the bank's employees, and killing one of them, where the confession was taped and broadcast three times by a local television station to a jury population of 150,000, and the broadcast in "a very real sense *was* [defendants'] trial").

Instead of relating to the "funding secured" tweet, the articles largely consist of what Defendants describe as "negative" press concerning Musk's management of Twitter. Mot. at 4. Defendants make no effort at all to describe what constitutes "negative" press or why otherwise "factual" reporting should somehow be perceived as "prejudicial." Indeed, Defendants do not claim any of these articles are false and it is unclear how factual reporting about Musk can result in prejudice. *See Dischner*, 974 F.2d 1524 (collecting cases that find there is no prejudice when news reporting is factual in nature); *Williams v. Vasquez*, 817 F. Supp. 1443, 1474 (E.D. Cal. 1993) (no prejudice where "the articles were factual in nature"). Reports on the number of Twitter layoffs does not translate to evidence of bias in the jury pool, especially when none of the potential jurors for this trial work for Twitter (according to the completed juror questionnaires). In fact, out

---

[3] The article's reference to the tweet is limited to: "That same year, Musk gave up his chairman position at Tesla and paid $20 million under a settlement with the Securities and Exchange Commission after tweeting that he had "funding secured" to take the company private when no such deal was in place."

of the approximate 200 potential jurors for trial, only a small number (2 or 3) even know someone who works for Twitter. Thus, the potential for bias arising out of Musk's management of Twitter is non-existent.

Defendants' argument comparing Musk's media coverage to Jeff Bezos' is similarly misguided. They provide no authority for inferring that Musk cannot receive a fair trial simply because he receives more media attention that Jeff Bezos. For better or worse, Musk is a celebrity who garners attention from the media around the globe. His footprint on Twitter alone is partially to blame for that. If "negative" attention was all that was required to disqualify a jury pool, Musk would effectively be untriable before a jury given his knack for attracting "negative" coverage. This would include the jury pool in Western District of Texas where Musk seemingly attracts a similar level of "negative" attention, according to a cursory search of headlines in Musk's hometown paper. *See*, *e.g.*, *Top Embarrassing Moments of Our Worst Residents*, THE AUSTIN CHRONICLE (Dec. 16, 2022) (listing Elon Musk as #1 "worst resident" of Austin, Texas, because "Boring Co. has delivered on pretty much nothing despite the many projects it has agreed upon"); *Tesla Gigafactory to be Investigated for Labor Standards Violations*, THE AUSTIN CHRONICLE (Nov. 16, 2022) (reporting on alleged DOL violations at Tesla Gigafactory in Austin, Texas).[4]

"Merely unfavorable publicity, 'in itself, however, is insufficient to compel a finding that the defendants were denied an impartial jury.'" *Oliver v. City & Cnty. of San Francisco*, No. C 07-2460 JL, 2009 WL 10736493, at *2 (N.D. Cal. Mar. 25, 2009) (quoting *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1400 (9th Cir. 1984)). There is simply no proof that any of the articles cited by Defendants, individually or collectively, are "so pervasive and inflammatory that the jurors cannot be believed when they assert that they can be impartial." *Croft*, 124 F.3d at 1115. This is especially true considering the fact that the Northern District of California has one of the largest and most diverse populations in the county, with the population consisting of well over 5 million people within the San Francisco courthouse jurisdiction (Sonoma 487,011; Napa 138,481; Marin 265,294; Contra Costa 1,200,997; San Francisco 894,584; Alameda 1,733,977; and San Mateo 778,239). The idea that the media

[4] Copies of these articles are attached to the McCall Declaration as Exhibits C and D.

coverage cited by Defendants is "so pervasive and inflammatory" to render the entire juror pool impartial and biased is absurd. *See Croft*, 124 F.3d at 1115. Given the fact that the media coverage is virtually silent about this trial, Musk's state of mind, or the materiality of Musk's August 7, 2018 tweets, "the publicity in this case [is] not of the type that proclaim[] the defendants' guilt in advance of the trial and preclude[] the jurors from independently evaluating the evidence." *Dischner*, 974 F.2d at 1524. In sum, Defendants cannot show that the jury pool is biased.[5]

**C. The Convenience of the Parties Weighs in Favor of the Northern District of California.**

In deciding whether to transfer a case, the Ninth Circuit considers a number of factors, including: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum." *Barnes & Noble*, 823 F. Supp. 2d at 993; *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). "The primary factors to be considered are convenience of witnesses and parties and concerns for judicial economy (including duplicative effort, waste of time and money)." *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1119 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000).

The convenience of the parties and witnesses weighs heavily in favor of the Northern District of California. Plaintiff will be calling at least five residents of the Bay Area or nearby locales to testify at trial. These witnesses are: Deepak Ahuja, Tesla's Chief Financial Officer at the time of tweets; Dave Arnold, Tesla's Senior Director of Global Communications; Martin Viecha, Tesla's Director of Investor Relations; Egon Durban, co-managing partner of Silver Lake Partners; and Dan Dees, a managing director of Goldman Sachs. As described above (*see* Section II.B., *supra*), these witnesses have highly relevant testimony bearing on critical issues at trial, including but not limited to what Musk knew about his ability to secure funding and investor

[5] Notwithstanding the size and diversity of San Francisco's jury pool, Plaintiff is willing to agree to a non-jury trial in this Court to resolve Defendants' concerns and allow for an orderly and more efficient proceeding on the current schedule.

support both prior to and after the tweets in question. Plaintiff has readied his case under the assumption that these witnesses would be appearing at trial and providing live testimony.[6] Transferring the case out of this District would jeopardize the in-person attendance of these witnesses and force Plaintiff to rework his trial strategy, presentation of the case, and deposition designation preparations. The convenience of these witnesses is entitled to "primary consideration." *See Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1215 (S.D. Cal. 2013) ("[i]n balancing the convenience of the witnesses, primary consideration is given to third part[ies], as opposed to employee witnesses."). By contrast, Defendants have failed to identify any non-party witness located in Texas to support their motion to transfer venue. That Musk and Tesla now reside there is not enough to outweigh the prejudice to Plaintiff in transferring the case. *See Barnes & Noble, Inc.*, 823 F. Supp. 2d at 994 ("a defendant must make a strong showing of inconvenience.").

As to the other factors considered by the courts in determining whether transfer is appropriate, there is no dispute these favor the Northern District of California. Plaintiff has invested a substantial amount of money and time preparing for trial in the Northern District of California, including technology, printing, flights, hotels for both counsel and witnesses, in addition to compliance with this Court's and the Northern District of California rules. It cannot be disputed that a transfer at this point would result in additional, duplicative costs. Moreover, transferring the case would lead to substantial delay. "This Court, having issued numerous orders, including a summary judgment, and handled several pretrial matters, is already familiar with the issues involved the case, whereas a transfer would necessitate the needless expenditure of additional judicial resources and time for the transferee court to familiarize itself with the case." *Oliver*, 2009 WL 10736493, at *3; *see Steshenko v. McKay*, 735 F. App'x 298, 301 (9th Cir. 2018) (no abuse of discretion where "transfer would have substantially delay[ed] the trial."). Here, "Defendants have had ample time in this case to request a transfer of venue and failed to raise the

[6] On January 6, 2023, Defendants announced that Dan Dees would be appearing live, despite prior agreements to present his testimony by deposition. With the exception of Mr. Dees, all other witnesses were always understood to be appearing at trial in person.

issue until the eve of trial. Granting Defendants' request to transfer would unnecessarily delay proceedings and hinder the 'interests of justice' at play in this case, as well as inconvenience the parties and witnesses who have already made arrangements to appear in this Court for the start of trial . . . ." *R. Prasad Indus. v. Flat Irons Env't Sols. Corp.*, No. CV-12-08261-PCT-JAT, 2017 WL 4409463, at *3 (D. Ariz. Oct. 4, 2017). For these reasons, Defendants' motion should be denied.

**D. The Court Should Deny Defendants' Request for an Adjournment of Trial.**

This is not the first time Defendants have sought to delay the trial. *See* Dkt. No. 518 at 4:1-2 (requesting that "the trial date should be moved"). The Court summarily denied this request. Dkt. No. 519 at 1:21-22 ("[t]he trial date of January 17, 2023 will not be moved."). Defendants have provided nothing of substance to warrant a different result now. Despite having concerns over media coverage dating back to the of fall 2021, Defendants waited until now (after receiving the Court's proposed jury instructions and just days before voir dire) to seek an adjournment for some undefined period of time in hopes of Musk's public image having time to improve. Defendants' request should be denied.

Legally, Defendants' request for a "continuance" is meritless. In making such a determination four factors are considered: (1) the diligence of the moving party; (2) if the need for the continuance can be met by a continuance; (3) the extent to which a continuance would inconvenience the court and other parties; and (4) the extent to which the moving party might suffer harm if the continuance is denied. *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985). Defendants have not been diligent in raising this argument. They failed to make this argument at either of the pretrial conferences on October 25, 2022, or January 4, 2023. The foundation of their purported bias claim, Tesla moving its headquarters from California to Texas, was announced over a year ago and a close examination of the specific articles put forth by the Defendants demonstrate that this supposed "critical mass of negative press" was from the first week in November 2022.

Second, Defendants cannot demonstrate that their alleged need for the continuance can be met by a continuance. As discussed above, because Defendants fail to demonstrate that media

coverage of Musk is prejudicial, a continuance will not meet their purported need. Nor can they guarantee that additional media coverage surrounding Musk's future actions would ameliorate the issues they claim interfere with his ability to receive a fair trial. On the other hand, Plaintiff has put forth evidence that a continuance would not only be inconvenient, but seriously prejudicial.

The third factor heavily supports denying a continuance. Plaintiff's counsel has incurred substantial expenses in preparing for trial. Further, Plaintiff's attorneys have already traveled to San Francisco and third-party vendors have already provided various services to ready the case for trial. A continuance would be prejudicial to plaintiff because it would result in additional expense and delay. *See SiteLock LLC v. GoDaddy.com LLC*, 2022 WL 7426426, *3 (D. Ariz. Sept. 2, 2022) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (denying a continuance where good-cause was not shown in light of the "existence or degree of prejudice to the party opposing the modification").

Furthermore, the Court has "invested *substantial* resources in preparing for trial . . . ." *Johnson v. Bay Area Rapid Transit Dist.,* No. C-09-0901 EMC, 2014 WL 2568458, at *3 (N.D. Cal. June 6, 2014), *aff'd sub nom. Grant v. Bay Area Rapid Transit Dist.*, 650 F. App'x 356 (9th Cir. 2016) (Chen, J.) (emphasis in original) (denying motion for a continuance of trial when the issues cited existed prior to the final pre-trial conference). This Court has issued numerous orders guiding the parties as to admissible evidence, Plaintiff's damages theory, and the elements of the claims required to be proven at trial. *See*, *e.g.*, Dkt. No. 508. The Court has engaged with the parties substantively on the verdict form and on jury instructions, and the parties have submitted numerous revisions of these items addressing the colloquy. *See*, *e.g.*, Dkt. Nos. 512, 520.

The first three factors greatly outweigh the extent to which Defendants might suffer harm if the continuance is denied. Again, apart from conclusory assertions of bias, Defendants have put forth no evidence that the jury will be prejudiced by Musk's media coverage. Defendants also cite no authority that favors the extraordinary relief they are seeking. The single case they refer to, *Trendsettah USA, Inc. v. Swisher Int'l, Inc.,* 2020 WL 1224288 (C.D. Cal. Jan. 21, 2020), does not support delaying trial. *Trendsettah* involved a motion to amend the final pretrial conference

order to allow the Defendant to raise additional affirmative defenses of illegality and fraudulent inducement considering information about the plaintiff's conduct that came to light after the Court entered its pretrial conference order. 2020 WL 1224288, *8. Defendants' proposal is also contrary to Congress's mandate to "'ensure just, speedy, and inexpensive resolutions of civil disputes,' 28 U.S.C. § 471, by ensuring trial of this matter as close to three years of the date of filing as possible.'" *SiteLock*, 2022 WL 7426426, *3 (quoting *Harner v. USAA General Indemnity Co.,* 2022 WL 1138145, *2 (S.D. Cal. 2022). This case has been pending for over four years and is ready for trial. Accordingly, Defendants' request for a continuance should be denied with prejudice.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Transfer should be denied in its entirety with prejudice.

Dated: January 11, 2023

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*s/ Adam M. Apton*

Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

-and-

Nicholas I. Porritt
Elizabeth K. Tripodi
Alexander A. Krot III
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel.: (202) 524-4290
Email: nporritt@zlk.com
Email: etripodi@zlk.com
Email: akrot@zlk.com

(admitted *pro hac vice*)

-and-

Joseph Levi
Eduard Korsinsky
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Email: jlevi@zlk.com
Email: ek@zlk.com
(admitted *pro hac vice*)

*Attorneys for Plaintiff and Counsel for the Class*