1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Alex Spiro (appearing *pro hac vice*)
2     alexspiro@quinnemanuel.com
      Andrew J. Rossman (appearing *pro hac vice*)
3     andrewrossman@quinnemanuel.com
      Ellyde R. Thompson (appearing *pro hac vice*)
4     ellydethompson@quinnemanuel.com
5  51 Madison Avenue, 22nd Floor
   New York, New York 10010
6  Telephone: (212) 849-7000

7     Michael T. Lifrak (Bar No. 210846)
      michaellifrak@quinnemanuel.com
8     Anthony P. Alden (Bar No. 232220)
9     anthonyalden@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
10 Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
11

12 *Attorneys for Defendants Tesla, Inc., Elon Musk,*
   *Brad W. Buss, Robyn Denholm, Ira Ehrenpreis,*
13 *Antonio J. Gracias, James Murdoch, Kimbal Musk,*
   *And Linda Johnson Rice*
14

15                    UNITED STATES DISTRICT COURT
16                    NORTHERN DISTRICT OF CALIFORNIA
17

18 | IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC |
19 |---|---|
20 | | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE** |
21 | | |
22 | | Date: January 13, 2023 |
23 | | Time: 9:00 AM |
   | | Location: Courtroom 5, 17th Floor |
24 | | Judge: Hon. Edward Chen |

25
26
27
28

## **REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

## **BACKGROUND AND INTRODUCTION**

The return of nearly 200 potential juror questionnaires confirms the serious concern raised in Defendants' motion: Defendants cannot obtain a fair trial in the Northern District of California in the current climate. Nearly two-thirds of all potential jurors hold a negative view of Mr. Musk. (Declaration of Michael T. Lifrak ("Lifrak Decl.") at Ex. A.) And of the 142 potential jurors who hold any opinion of him at all, 116 or *eighty-two percent* of them view him negatively. (*Id.*) The juror questionnaires reinforce that the jury pool in this District is biased against Mr. Musk, that much of the bias relates directly to issues in this case (namely, Mr. Musk's use of and honesty on Twitter), and that whatever baseline existed previously has been fanned and emphasized by the media coverage of recent events. See e.g., (*Id.* – Potential Juror 160 ("███████████████████████████████████████████████████████████████████████████████.) A jury pool in which the predominant sentiment about Mr. Musk is that he is a ███████████████████████████████████████ who helps to ███████████████████████████████████ cannot fairly and impartially determine whether or not he made a materially false statement on that very same platform. (*Id.* – Potential Jurors 76, 91, 153, 170, 177, 188).

The questionnaires show that the jury pool in this District, which has been saturated with prejudicial pretrial coverage about Mr. Musk, possesses "such fixed opinions" on his character and Twitter use "that they [can]not judge impartially." *See Williams v. Vasquez*, 817 F.Supp. 1443, 1474 (E.D. Cal. 1993). The Court need not presume bias and prejudice; the potential jurors have announced it. The open and passionate bias that the jury pool feels toward Mr. Musk is self-reinforcing and will likely be compounded as jurors deliberate and discuss Mr. Musk, even for those who indicate they will keep an open mind. In the interest of justice and to protect

Defendants' constitutional rights, this trial should be transferred or, in the alternative, continued to allow the passions and bias against Mr. Musk evident in the jury pool to subside.[1]

## ARGUMENT

### I. THE JUROR QUESTIONNAIRES DEMONSTRATE THE REAL AND SEVERE PREJUDICE DEFENDANTS FACE IN THIS VENUE.

#### 1. Nearly Two-Thirds Of Potential Jurors Openly Admit Their Bias Against Mr. Musk.

At the outset, the prejudice that Mr. Musk will face in a trial in this District at this time boils down to a matter of simple math. One-hundred and sixteen—nearly two-thirds—of the potential jurors in this case harbor bias or ill-will toward Mr. Musk and only twenty-six—a mere fourteen percent—view him positively. (Lifrak Decl. Ex. A.) Voir dire cannot remedy the risk of bias—these numbers make clear that an impartial juror cannot feasibly be impaneled from this juror pool.

A closer examination of the questionnaires reveals something even more concerning. Mr. Musk is not just prejudiced by the binary question of whether a juror likes or dislikes him, but by the passion of the negative feelings toward him. The jurors holding negative opinions were not shy and expressed their feelings clearly:

- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* – Potential Juror 122]].
- ▇▇▇▇▇▇▇▇▇▇ (*Id.* – Potential Juror 118]].
- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* – Potential Juror 92]].

Many potential referred to Mr. Musk as an "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* – Potential Jurors 20, 72, 76, 91, 92, 153, 170, 171, 177, 188). Others describe his actions and character as "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* – Potential Jurors 14, 38, 54, 88, 193). In other words, the jury

---

[1] In acknowledging the merit of Defendants' concerns over juror bias, Plaintiff offers to remedy the issue by agreeing to a non-jury trial. *See* Dkt. 550 n. 5. But Defendants brought this motion to protect their right to a fair jury trial and not to waive it. Plaintiff's suggestion is a non-starter.

questionnaires reveal not only that a vast majority of potential jurors hold ill-will toward Mr. Musk but that they are not afraid to declare it proudly and vividly to the Court. The open prejudice toward Mr. Musk is likely reinforcing—jurors who dislike Mr. Musk personally are likely to raise those opinions in deliberation and encourage similar responses from others—and will create a negative feedback loop in the jury room that will render it nearly impossible for Mr. Musk to receive a fair hearing.[2] *Hayes v. Ayers*, 632 F.3d 500, 508 (9th Cir. 2011) (explaining "actual bias infect[s] the jury"); *Davis v. Woodford*, 384 F.3d 628, 643 (9th Cir. 2004) (explaining a jury panel is biased when just one juror is biased).

Given the volume and severity of negative responses to Mr. Musk in the juror questionnaires, this Court must infer that the publicity surrounding Mr. Musk has been "so pervasive and inflammatory that the jurors cannot be believed when they assert that they can be impartial" on voir dire. *See United States v. Croft*, 124 F.3d 1109, 1115 (9th Cir. 1997).

### 2. The Prospective Jurors Hold Fixed Negative Bias Toward Mr. Musk's Conduct On Twitter—A Central Issue In This Case

The completed juror questionnaires provide direct evidence that the prejudicial news coverage of Mr. Musk has created issues of bias that will prevent Defendants from obtaining a fair trial in the Northern District of California as scheduled. The jury pool holds two beliefs about Mr. Musk that are particularly relevant in this case. First, as a result of the biased media coverage of Mr. Musk, the jury pool believes that Mr. Musk is untrustworthy. The jury's perception of Mr. Musk's trustworthiness will impact the weight they give to his testimony as well as their judgment on whether Mr. Musk made a materially false statement with the requisite intent. As Potential Juror 153 explained, their belief that Mr. Musk is ▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉ (Lifrak Decl. Ex. A – Potential Juror 153]]. Some potential jurors even expressed a

---

[2] Moreover, it is not clear that the negative feelings toward Mr. Musk is limited to the one-hundred sixteen jurors who openly declared their bias. More than forty of the remaining jurors do not state any opinion on Mr. Musk (including some who claim they do not know who he is), but the failure to publicly disclose an opinion of Mr. Musk is not necessarily proof that the juror holds none. *See A Proposal to Properly Address Implicit Bias in the Jury,* 31 Hastings Women's L.J. 79, 83 ("Implicit bias may be seen in the jury deliberation process because jurors may harbor stereotypes and not realize they are employing them towards witnesses and defendants.").

1  belief that Mr. Musk ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
2  (*Id.* – Potential Jurors 177, 12 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
3  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓)).  Second,
4  the jury pool disapproves of Mr. Musk's conduct on Twitter—a particularly pernicious bias in light
5  of the fact that the jury will be asked to evaluate wrongdoing and allocate damages resulting from a
6  series of Mr. Musk's Tweets.  Some potential jurors have even drawn explicit connections between
7  Mr. Musk's use of Twitter and stock prices.  *See e.g.*, (*Id.* – Potential Juror 5 (▓▓▓▓▓▓▓▓▓▓
8  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).  Others have made blanket
9  statements that Mr. Musk should stop tweeting completely.  *See e.g.*, (*Id.* – Potential Juror 1 ("▓▓
10 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓), Potential Juror 159 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).  These juror
11 responses make clear that the jury pool has "such fixed opinions" on Mr. Musk's character and
12 Twitter use "that they [can]not judge impartially."  *See Williams*, 817 F.Supp. at 1474.

13           3.      Potential Jurors Point To Recent Events As The Cause Of Their Negative
14                   Sentiments.

15       At the very least, the questionnaires support a continuance of the trial to allow passions to
16 cool as a critical mass of jurors answered that recent events involving Mr. Musk have played major
17 role in shaping their prejudicial bias.  Jurors express personal distaste for Mr. Musk in connection
18 with recent reductions at one of his companies, calling him a ▓▓▓▓▓▓▓ and explaining that ▓▓
19 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Lifrak Decl. Ex. A–
20 Potential Jurors 22, 38, 62, 93]].  Others dislike the policies he has implemented at Twitter.  *See*
21 *e.g.*, (*Id.* Potential Juror 79 ("▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
22 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓), Potential Juror 125 (▓▓▓▓▓▓▓▓▓▓▓
23 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
24 ▓▓▓▓▓▓▓▓▓▓▓, Potential Juror 146 ("▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
25 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓)).  These responses directly
26 contradict Plaintiff's assertion that "the potential for bias arising out of Musk's management of
27 Twitter is non-existent."  Dkt. 550 at 8.
28

1    In fact, a handful of potential jurors claim that their opinion of Mr. Musk was neutral until recent events. *See e.g.,* (Lifrak Decl. Ex.A Potential Juror 14 ("



"), Potential Juror 38 ("                "), Potential Juror 62 ("      "), Potential Juror 79 (              "), Potential Juror 174 (              ), Potential Juror 175 (              ). As Plaintiff points out, only a few potential jurors know a Twitter employee (Dkt. 550 at 8), meaning the volume of negative sentiments is a result of the jury pool's "expos[ure] to excessive and adverse pretrial publicity." *See Los Angeles Memorial Coliseum Com v. Nat. Football League*, 89 F.R.D. 497, 502 (C.D. Cal. 1981).

## II. TRANSFER TO THE WESTERN DISTRICT OF TEXAS IS PROPER REGARDLESS OF A PAST STATE OF AFFAIRS.

This case may be transferred to the Western District of Texas because Tesla is now headquartered and Mr. Musk resides in Texas. Plaintiff distorts general caselaw to claim Section 1404 only allows transfer to a venue that it could have been brought at the time the "case was first brought." Dkt. 550 at 5. None of the cases Plaintiff cites contemplate a situation where a defendant moved its domicile after proceedings were commenced. Dkt. 550 at 5. Cases evaluating a motion to change venue when a company has moved its headquarters make clear that Section 1404 asks whether the requirements for filing suit in that jurisdiction are met at the time of transfer. *See e.g., Green Aire for Air Conditioning W.L.L. v. Salem*, No. 1:18-cv-00873-NONE-SKO, 2020 WL 4734909 (E.D. Cal. Aug. 14, 2020) (granting motion to transfer to venue to venue where company moved headquarters after plaintiff filed suit); *Sonrai Memory v. Oracle Corp.*, No. 6:21-CV-00116-ADA, 2022 WL 315023 (W.D. Tex. Feb. 2, 2022) (granting Oracle's motion to transfer venue to

Austin after moving its headquarters there). This conclusion makes logical sense—a court should not be able to transfer a case to a jurisdiction in which the transferee court does not presently have personal jurisdiction over the defendants. *See* 28 U.S.C. § 1404(a); *Ponomarenko v. Shapiro*, 287 F.Supp. 3d 816, 834 (N.D. Cal. 2018). Thus, this case may properly be transferred to the Western District of Texas where Plaintiff's do not dispute there is personal jurisdiction and venue.

### III.  A BRIEF CONTINUANCE IS REASONABLE TO GUARANTEE A FAIR TRIAL.

Given the recent news coverage of Mr. Musk that has created actual bias within the jury pool, a continuance is necessary without a change in venue to allow negative sentiments in the Bay Area to dissipate. Plaintiff wrongly states the legal standard for a continuance, instead describing the "four salient factors that appellate courts have considered when reviewing" the "broad discretion of the district court" to grant a continuance. *See* Dkt. 550 at 11; *United States v. Flynt*, 756 F.2d 1352, 1358-59 (9th Cir. 1985). Since a final pretrial conference order has been entered in this case (Dkt. 508), the proper standard is the "manifest injustice" standard Defendants offered in the motion. *See* Dkt. 537 at 11; *Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, No. SACV 14-1664 JVS (DFMx), 2020 WL 1224288, at *7-8 (C.D. Cal. Jan. 21, 2020).

Regardless, a continuance is still warranted under Plaintiff's four-factor test. First, Defendants have been diligent in pursuing a remedy to the recent influx of negative news coverage of Mr. Musk. *See Flynt*, 756 F.2d at 1358-59. Plaintiff agrees that the relevant news coverage occurred recently (beginning in November 2022), such that this issue is new to the case and did not arise in the prior four years this case has been pending. Dkt. 550 at 11. Second, a continuance will remedy the issues of bias by allowing sufficient time for news coverage of the Twitter acquisition to subside. *See id*. Third, a short continuance will create minimal inconvenience for the court and other parties. *See id*. The jury, witnesses, and parties have not yet been required to appear in person in San Francisco. Though Plaintiff's attorneys "have already traveled to San Francisco," an unnecessary flight is hardly sufficient justification to deprive Defendants of the opportunity for a fair trial. Finally, the juror questionnaires make clear that Defendants face certain harm in the form of a biased jury if a continuance is denied. *See id*. Though some scheduling inconvenience to

1 | Plaintiffs and the Court will necessarily result, a continuance is warranted to prevent injustice. *See*
2 | *Trendsettah USA, Inc.*, WL 1224288 at *7-8.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court transfer this action from the Northern District of California or, in the alternative, grant a brief trial continuance.

DATED:  January 12, 2023          Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Alex Spiro*
Alex Spiro (appearing *pro hac vice*)

*Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, And Linda Johnson Rice*