UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE TESLA INC. SECURITIES
LITIGATION

Case No.  18-cv-04865-EMC

**ORDER RE FINAL JURY
INSTRUCTIONS**

The Court's set of final jury instructions are reproduced below.

**IT IS SO ORDERED**.

Dated: January 15, 2023

_____
EDWARD M. CHEN
United States District Judge

## I.   PRELIMINARY JURY INSTRUCTIONS (GIVEN AT THE BEGINNING OF TRIAL) (COURT READS INSTRUCTIONS AT THE BEGINNING OF TRIAL BUT DOES NOT PROVIDE WRITTEN COPIES)

### JURY INSTRUCTION NO. ____
### DUTY OF JURY

Jurors:  You now are the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you some preliminary instructions.  At the end of the trial, I will give you more detailed instructions that will control your deliberations.

When you deliberate, it will be your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts.  To the facts as you find them, you will apply the law as I give it to you, whether you agree with the law or not.  You must decide the case solely on the evidence and the law before you.

Perform these duties fairly and impartially.  You should not be influenced by any person's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases.  Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention.  Like conscious bias, unconscious bias can affect how we evaluate information and make decisions.

Do not be afraid to examine any assumptions you or other jurors have made which are not based on the evidence presented at trial.  Please do not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be – that is entirely up to you.


[Court Notes: 9th Cir. Model Instruction No. 1.3.  The Court has modified the instruction.]

2

**JURY INSTRUCTION NO. ____**

**IMPLICIT/UNCONSCIOUS BIAS**

We all have feelings, assumptions, perceptions, fears, and stereotypes about others.  Some biases we are aware of, and others we might not be fully aware of, which is why they are called implicit or unconscious biases.  No matter how unbiased we think we are, our brains are hard-wired to make unconscious decisions. We look at others and filter what they say through our own personal experience and background.  Because we all do this, we often see life and evaluate evidence in a way that tends to favor people who are like ourselves, or who have had life experiences like our own.  We can also have biases about people like ourselves. One common example is the automatic association of male with career and female with family. Bias can affect our thoughts, how we remember what we see and hear, whom we believe or disbelieve, and how we make important decisions.

As jurors, you are being asked to make an important decision in the case.  You must one, take the time you need to reflect carefully and thoughtfully about the evidence.

Two, think about why you are making the decision you are making and examine it for bias. Reconsider your first impressions of the people and the evidence in this case.  If the people involved in this case were from different backgrounds, for example, richer or poorer, more or less educated, older or younger, or of a different gender, gender identity, race, religion or sexual orientation, would you still view them, and the evidence, the same way?

Three, listen to one another.  You must carefully evaluate the evidence and resist, and help each other resist, any urge to reach a verdict influenced by bias for or against any party or witness. Each of you have different backgrounds and will be viewing this case in light of your own insights, assumptions and biases.  Listening to different perspectives may help you to better identify the possible effects these hidden biases may have on decision making.

And four, resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or unconscious biases.

The law demands that you make a fair decision based solely on the evidence, your individual evaluations of that evidence, your reason and common sense, and these instructions.

[Court Notes: The Court has independently proposed this instruction.]

1
2

**JURY INSTRUCTION NO. ____**

**PRETRIAL STATEMENT / CLAIMS AND DEFENSES**

3       To help you follow the evidence, I will give you a brief summary of the parties and

4   positions of the parties:

5       The party that brings a lawsuit is called the plaintiff.  This case is a "class action," in

6   which a named plaintiff, called the "Class Representative," represents himself and a large number

7   of unnamed persons, called the "class."  The Class Representative in this case is Glen Littleton, an

8   individual investor who purchased Tesla securities during the relevant time period in this case.

9   Mr. Littleton, as the Class Representative, represents a class of investors who bought or sold Tesla

10  securities during the period August 7, 2018 through August 17, 2018, which is referred to as the

11  "Class Period."  Unless I distinguish them, I will refer to the Class Representative and the class

12  collectively as the "Plaintiff."

13      The parties against whom the lawsuit is brought are called the defendants.  In this case,

14  the defendants are Elon Musk, Tesla's Chief Executive Officer; members of Tesla's Board of

15  Directors; and Tesla, Inc.  Unless I distinguish them, I will refer to them collectively as

16  "Defendants."

17      In this case, Plaintiff asserts that Elon Musk and Tesla violated Section 10(b) of the

18  Securities Exchange Act of 1934 and SEC Rule 10b-5(b), by making materially false or

19  misleading statements regarding a potential going-private transaction for Tesla that artificially

20  affected the price of Tesla's stock and other securities during the Class Period.  Specifically, on

21  August 7, 2018 Elon Musk made the following tweet: "Am considering taking Tesla private at

22  $420. Funding secured."  Mr. Musk tweeted later on August 7, 2018 that "Investor support is

23  confirmed.  Only reason why this is not certain is that it's contingent on a shareholder vote."

24  Plaintiff also asserts that the members of Tesla's Board of Directors violated Section 20(a) of the

25  Securities Exchange Act of 1934, which imposes liability upon persons responsible for controlling

26  an entity that is found to have violated the federal securities laws.

27      Plaintiff has the burden of proving these claims.

28      Defendants deny these claims.

United States District Court
Northern District of California

1    Court Notes: Plaintiff previously sought to include a portion of the August 13 blog post as

2  an actionable statement under an omission theory.  *See* Docket No. 477 ("Jury Instructions") at 6.

3  Because the Court ruled that Plaintiff failed to plead that the blog post is an actionable omission,

4  *see* Docket No. 508 ("Final Pretrial Conference Order") at 16, the Court struck all references to

5  Plaintiff's omissions-theory found in the instructions.

6    The Court included Mr. Musk's statements from August 7 because it will be helpful to the

7  jury to hear the specific statements at issue.  Defendants have not shown that inclusion of the

8  statements would be prejudicial.

9    The Court deleted Plaintiff's proposed language regarding the Court's summary judgment

10  ruling and the nature of Plaintiff's injury because this instruction is intended to provide a brief,

11  high-level overview of the case.  The Court will describe the summary judgment rulings in the

12  following Rule 10b-5 claim instruction.

13    The Court has added the term "materially" to incorporate the materiality element of

14  Plaintiff's claim.  Defendants proposed this addition and Plaintiff did not object to it.  *See* Docket

15  No. 548 (Defendants' Objections) at 30 (emphasis in original).  The Court agrees with the parties

16  that this addition is warranted.

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. ____**

**RULE 10b-5 CLAIM**

The buying and selling of securities is controlled by the Securities Laws.  A "10b5-Claim" is a claim brought under a federal statute, Section 10(b) of the Securities Exchange Act of 1934, which in essence prohibits acts of deception in connection with the purchase or sale of a security and in violation of rules and regulations that the SEC has the duty and power to issue.  A corresponding SEC Rule, Rule 10b-5, prohibits the misrepresentation of material facts and the omission of material facts in connection with the purchase or sale of securities.  A person or business entity who violates the securities laws, including Rule 10b-5, may be liable for damages caused by the violation.

Plaintiff alleges that Elon Musk and Tesla, Inc. violated Rule 10b-5 and harmed investors by making materially false and misleading statements about a proposed going-private transaction and its financing.  This is referred to as "Plaintiff's 10b-5 claim."

On this claim, Plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1) Elon Musk and/or Tesla made untrue statements of a material fact in connection with the purchase or sale of securities;

2) Elon Musk and/or Tesla acted with the necessary state of mind (*i.e.* knowingly or with reckless disregard for the truth or falsity of the statements);

3) Elon Musk and/or Tesla used an instrument of interstate commerce in connection with the sale and/or purchase of Tesla securities;

4) Plaintiff justifiably relied on Elon Musk and/or Tesla's untrue statements of material fact in buying or selling Tesla securities during the Class Period; and

5) Elon Musk and/or Tesla's misrepresentations caused Plaintiff to suffer damages.

An instrumentality of interstate commerce includes the postal mails, e-mails, telephone, telegraph, telefax, interstate highway system, Internet and similar methods of communication and travel from one state to another within the United States.

You are to assume that the statements "Funding secured" and "Investor support is

confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote." were untrue. But you still must decide whether these statements were of material facts. A factual representation concerning a security is material if there is a substantial likelihood that a reasonable investor would consider the fact important in deciding whether to buy or sell that security. A material misrepresentation gives a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists.

You must also assume that Mr. Musk acted with reckless disregard for whether the statements were true. But you must still decide whether he knew that the statements were untrue.

[Court Notes: 9th Cir. Model Instruction No. 18.1, 18.2.]

There are three main points of disagreement with this jury instruction: (1) the preamble; (2) the elements; and (3) how the summary judgment rulings should be conveyed to the jury. The Court addresses each point in turn.

First, Defendants object to the last sentence of the second paragraph on the grounds that it is unnecessary, unhelpful, serves no purpose, and therefore should be rejected. Jury Instructions at 49. But this language comes straight from the Ninth Circuit Model Instruction 18.1 (Definitions of Recurring Terms). The Court will include this language because it is neutral and provides helpful background information.

Second, there are differences in how the parties describe three of the elements of the claim. The Court will not use Plaintiff's formulation of the third element because it is unfairly suggestive to equate tweets with instruments of interstate commerce. But the Court will provide the definition of interstate commerce as contained in the Ninth Circuit Model Instruction 18.1. Defendants do not explain why they object to "in buying or selling Tesla securities during the Class Period" from the fourth element. The Court will use Plaintiff's formulation of the fourth and fifth elements because they track Ninth Circuit Model Instruction 18.2. But the Court struck "and the Class" from the fifth element because Plaintiff is defined elsewhere to include the class. *See* Claims and Defenses Instruction, *supra*. Defendants have also included the preponderance of

United States District Court
Northern District of California

the evidence standard twice, which is unnecessary.

Finally, the Court agrees with Plaintiff that it is appropriate to instruct the jury on the Court's summary judgment rulings as part of this instruction. Defendants argue that any reference to the summary judgment ruling will substantially prejudice Defendants because it will "irrevocably taint the jury's rule as finder of fact in this trial." Jury Instructions at 48. In support, Defendants cite cases where prejudice arose from the introduction of judicial findings of fact made in *other cases*. *Id.* In *Sine*, for instance, the Ninth Circuit addressed whether the government ran afoul of Rule 403 by weaving portions of an *Ohio judge's* findings of fact against the defendant from a *separate case* into cross-examination. *United States v. Sine*, 493 F.3d 1021, 1032 (9th Cir. 2007). In the same vein, *Nipper* presented the question of "whether judicial findings of fact entered in state court in a different case involving some of the same parties were properly admitted into evidence by the district court." *Nipper v. Snipes*, 7 F.3d 415, 416 (4th Cir. 1993). *U.S. Steel* involved whether a judge's findings of facts in a state court criminal case could be used in cross-examination in a separate federal case. *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1287–88 (11th Cir. 2001). And *Herrick* considered whether a judicial opinion from another case is hearsay. *See Herrick v. Garvey*, 298 F.3d 1184, 1192 (10th Cir. 2002). None of these cases support the proposition that any reference to the summary judgment ruling is substantially prejudicial to Defendants. To the extent that Defendants contend that the Court's summary judgment ruling cannot be referenced in the jury instructions, this argument is meritless.

In Defendants' objections, Defendants argue that "the fact that the findings at issue were made by *this Court* and the specific judge that will be trying the case renders it *more likely* that a juror would defer to the factual findings and determinations here." *See* Defendants' Objections at 13 (emphasis in original). But the jury *should* defer to the Court's summary judgment ruling. The Court has already decided that the statements at issue were false and that Mr. Musk made them with at least reckless disregard as to their falsity. These findings of fact are not open to revisitation by Defendants or the jury.

Defendants also argue that if the jury instructions should reference the summary judgment findings, then the Court should frame its findings in a way that "removes the Court's imprimatur

and thereby removes the reference's prejudicial effect." Jury Instructions at 48.  The Court has proposed language suggested by Defendants as an alternative that removes explicit imprimatur of the past Court rulings and neutrally describes the issues that have already been decided.

Because materiality is one of the key issues at trial and will likely feature prominently in opening statements, the Court agrees with Defendants that it would be helpful to instruct the jury on materiality at the outset of the case.  Defendants' Objections at 14.  The Court has added language from the materiality instruction into the preliminary Rule 10b-5 Claim.

United States District Court
Northern District of California

**JURY INSTRUCTION NO. ____**

**DEFINITION OF EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of: (1) the sworn testimony of any witness; (2) the exhibits that are admitted into evidence; (3) any facts to which the lawyers have agreed; and (4) any facts that I may instruct you to accept as proved.

[Court Notes: 9th Cir. Model Instruction No. 1.9.]

## JURY INSTRUCTION NO. _____

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered.  In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4) Anything you may see or hear when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

[Court Notes: 9th Cir. Model Instruction No. 1.10.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. ____**

**EVIDENCE FOR LIMITED PURPOSES**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose,
you must consider it only for that limited purpose and not for any other purpose.


[Court Notes: 9th Cir. Model Instruction No. 1.11.]

1

2

**JURY INSTRUCTION NO. ____**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

3       Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as

4  testimony by a witness about what that witness personally saw or heard or did.  Circumstantial

5  evidence is proof of one or more facts from which you could find another fact.  You should

6  consider both kinds of evidence.  The law makes no distinction between the weight to be given to

7  either direct or circumstantial evidence.  It is for you to decide how much weight to give to any

8  evidence.

9       By way of example, if you wake up in the morning and see that the sidewalk is wet, you

10  may find from that fact that it rained during the night.  However, other evidence, such as a turned

11  on garden hose, may provide a different explanation for the presence of water on the sidewalk.

12  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must

13  consider all the evidence in the light of reason, experience and common sense.

14

15       [Court Notes: 9th Cir. Model Instruction No. 1.12.]

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. ____**

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

[Court Notes: 9th Cir. Model Instruction No. 1.13.]

**JURY INSTRUCTION NO. ____**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

[Court Notes: 9th Cir. Model Instruction No. 1.14.]

**JURY INSTRUCTION NO. ____**

**CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people

United States District Court
Northern District of California

involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

[Court Notes: 9th Cir. Model Instruction No. 1.15.]

**JURY INSTRUCTION NO. ____**

**PUBLICITY DURING TRIAL**

 If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. if any juror is exposed to any outside information, please notify me immediately.

 [Court Notes: 9th Cir. Model Instruction No. 1.16.]

**JURY INSTRUCTION NO. ____**

**NO TRANSCRIPTS**

I urge you to pay close attention to the trial testimony as it is given.  During deliberations you will not have a transcript of the trial testimony.

[Court Notes: 9th Cir. Model Instruction No. 1.17.]

**JURY INSTRUCTION NO. _____**

**TAKING NOTES**

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you go to the jury room to decide the case.  Do not let note-taking distract you.  When you leave, your notes should be left in the jury room.  No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.

[Court Notes: 9th Cir. Model Instruction No. 1.18.]

1

2

**JURY INSTRUCTION NO. ____**

**BENCH CONFERENCES AND RECESSES**

3

4

5

6

7

8

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

9

10

11

12

Of course, we will do what we can to keep the number and length of these conferences to a minimum.  I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

13

14

[Court Notes: 9th Cir. Model Instruction No. 1.20.]

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

1

**JURY INSTRUCTION NO. \_\_\_\_**

2

**OUTLINE OF TRIAL**

3        Trials proceed in the following way: First, each side may make an opening statement.  An

4    opening statement is not evidence.  It is simply an outline to help you understand what that party

5    expects the evidence will show.  A party is not required to make an opening statement.

6        The plaintiff will then present evidence, and counsel for the defendant may cross-examine.

7    Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

8        After the evidence has been presented, I will instruct you on the law that applies to the case

9    and the attorneys will make closing arguments.

10        After that, you will go to the jury room to deliberate on your verdict.

11

12        [Court Notes: 9th Cir. Model Instruction No. 1.21.]

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**II.  INSTRUCTIONS DURING TRIAL**

**JURY INSTRUCTION NO. \_\_\_\_**

**CAUTIONARY INSTRUCTIONS**

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom.  This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case.  This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers.  You also must not communicate with anyone, in any way, about this case.  And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 2.0.]

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. \_\_\_\_**

**CAUTIONARY INSTRUCTIONS**

**Beginning of the Day:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here.  So you must not learn any additional information about the case from sources outside the courtroom.  To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 2.0.]

**JURY INSTRUCTION NO. \_\_\_\_**

**STIPULATIONS OF FACT**

The parties have agreed to certain facts (listed below).  You must therefore treat these facts as having been proved.

[Court Notes: 9th Cir. Model Instruction No. 2.2.   The Court will administer this instruction if applicable.]

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. _____**

**JUDICIAL NOTICE**

The court has decided to accept as proved the fact that [state fact].  You must accept this fact as true.


[Court Notes: 9th Cir. Model Instruction No. 2.3.  The Court will administer this instruction if applicable.]

**JURY INSTRUCTION NO. ___**

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

[Court Notes: 9th Cir. Model Instruction No. 2.4.]

**JURY INSTRUCTION NO. ____**

**IMPEACHMENT EVIDENCE**

Evidence that a witness has been convicted of a crime or lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 2.9.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. _____**

**EXPERT OPINION**

During the trial, you will hear testimony from witnesses who will testify to opinions and the reasons for their opinions.  This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

[Court Notes: 9th Cir. Model Instruction No. 2.13.]

**JURY INSTRUCTION NO. ____**

**DEMONSTRATIVE EXHIBITS (CHART AND SUMMARIES)**

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.


[Court Notes: 9th Cir. Model Instruction No. 2.15.]

### III.  FINAL JURY INSTRUCTIONS (GIVEN AT THE END OF THE CASE)

### (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE)

### JURY INSTRUCTION NO. ____

### DUTY OF JURY

Members of the Jury, now that you have heard all the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts.  It is also your duty to apply the law as I give it to you to the facts as you find them, whether you agree with the law or not.  You must decide the case solely on the evidence and the law.  Do not allow personal likes or dislikes, opinions, prejudices, sympathy, or bias, including unconscious biases, influence you.  Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention.  Like conscious bias, unconscious bias, too, can affect how we evaluate information and make decisions.  You should also not be influenced by any person's race, color, religion, national ancestry, or gender, sexual orientation, profession, occupation, celebrity, economic circumstances, or position in life or in the community.  Do not be afraid to examine any assumptions you or other jurors have made which are not based on the evidence presented at trial.  You will recall that you took an oath promising to do so at the beginning of the case.

You must follow all these instructions and not single out some and ignore others; they are all important.  Please do not read into these instructions or into anything I may have said or done any suggestion as to what verdict you should return – that is a matter entirely up to you.

[Court Notes: 9th Cir. Model Instruction No. 1.4.  The Court has modified the instruction.]

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. \_\_\_\_**

**DOCUMENTS AND TESTIMONY NOT IN EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; if I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

[Court Notes: 9th Cir. Model Instruction No. 1.10.]

33

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. ____**

**BURDEN OF PROOF – PREPONDERANCE OF EVIDENCE**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.  You should base your decision on all of the evidence, regardless of which party presents it.

[Court Notes: 9th Cir. Model Instruction No. 1.6.]

**JURY INSTRUCTION NO. ____**

**CORPORATE ENTITIES**

One of the parties in this case, Tesla, Inc., is a corporation.  Under the law, a corporation is considered to be a person.  All parties are equal under the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

Under the law, a corporation can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of their authority.

An officer of a company is acting within the scope of authority if the officer is engaged in the performance of duties which were expressly or impliedly assigned to the officer by the company.

If you find against Mr. Musk, but do not find that Mr. Musk was acting within the scope of authority as an officer of Tesla, then you must find that Tesla is not liable.

[Court Notes: 9th Cir. Model Instruction Nos. 4.1, 4.2, 4.5.]


The sole point of dispute arises from the final sentence in Defendants' proposed instruction, which provides that: "If you find against Mr. Musk, but do not find that Mr. Musk was acting within the scope of authority as an officer of Tesla, then you must find that Tesla is not liable."  *See* Jury Instructions at 36.  Plaintiff had originally objected to this language on the basis that it assumed that Mr. Musk was the sole "maker" of the August 7 tweets and that Tesla Inc. would therefore not be independently liable for them.  *See* Jury Instructions at 37.  Plaintiff argued that Tesla Inc. may also be considered a "maker" of the August 7 statements at issue under the theory that Tesla Inc. had "ultimate authority" over the tweets.[1]

Defendants objected that even if Tesla Inc. could be considered a "maker" of the August 7 statements, Plaintiff still needed to show that Tesla published its statement with scienter to be

---

[1] Plaintiff had also argued that Tesla Inc. was a "maker" of the August 13 statements because it posted the August 13 blog post on its website. *See* Jury Instructions at 37.  But because this theory assumes that the blog post is actionable, it is no longer relevant. !

United States District Court
Northern District of California

1    liable under Rule 10b-5.  Defendants' Objections at 27.  During the final pretrial conference

2    hearing on January 13, 2022, Defendants argued that Plaintiff had not pleaded that Tesla Inc. had

3    the requisite corporate scienter apart from the imputation of scienter from Mr. Musk.  After the

4    hearing, Plaintiff withdrew his objection to the final sentence of the instruction.  *See* Docket No.

5    569 ("Plaintiff's Submission Re: Corporate Entities") at 1.  As a result, the Court has included that

6    language in the jury instruction.

**JURY INSTRUCTION NO. _____**

**RULE 10b-5 CLAIM**

The buying and selling of securities is controlled by the Securities Laws.  A "10b5-Claim" is a claim brought under a federal statute, Section 10(b) of the Securities Exchange Act of 1934, which in essence prohibits acts of deception in connection with the purchase or sale of a security and in violation of rules and regulations that the SEC has the duty and power to issue.  A corresponding SEC Rule, Rule 10b-5, prohibits the misrepresentation of material facts and the omission of material facts in connection with the purchase or sale of securities.  A person or business entity who violates the securities laws, including Rule 10b-5, may be liable for damages caused by the violation.

Plaintiff alleges that Elon Musk and Tesla, Inc. violated Rule 10b-5 and harmed investors by making materially false and misleading statements about a proposed going-private transaction and its financing.  This is referred to as "Plaintiff's 10b-5 claim."

On this claim, Plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

  1) Elon Musk and/or Tesla made untrue statements of a material fact in connection with the purchase or sale of securities;

2) Elon Musk and/or Tesla acted with the necessary state of mind (*i.e.*, knowingly or with reckless disregard for the truth or falsity of the statements);

3) Elon Musk and/or Tesla used an instrument of interstate commerce in connection with the sale and/or purchase of Tesla securities;

4) Plaintiff justifiably relied on Elon Musk and/or Tesla's untrue statements of material fact in buying or selling Tesla securities during the Class Period; and

5) Elon Musk and/or Tesla's misrepresentations caused Plaintiff to suffer damages.

An instrumentality of interstate commerce includes the postal mails, e-mails, telephone, telegraph, telefax, interstate highway system, Internet and similar methods of communication and travel from one state to another within the United States.

You are to assume that the statements "Funding secured" and "Investor support is

37

confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote." were

untrue.  But you still must decide whether these statements were of material facts.  You must also

assume Mr. Musk acted with reckless disregard for whether the statements were true.  But you

must still decide whether he knew that the statements were untrue.

[Court Notes: 9th Cir. Model Instruction No. 18.1, 18.2.]

The Court's analysis of this instruction appears as part of the preliminary set of

instructions above.

**JURY INSTRUCTION NO. ____**

**MAKER OF MISSTATEMENT**

To be liable for a Section 10(b) violation, the plaintiff must prove that the defendant was the maker of a materially false or misleading statement. A defendant "makes" a statement if the defendant has ultimate authority over the statement, including its content and whether and how to communicate it.

[Court Notes: 9th Cir. Model Instruction No. 18.2.]

The parties agree that the definition of a maker should be included in the jury instructions and also agree as to the precise definition. *See* Jury Instructions at 50. The sole dispute is whether this language should be provided as a separate instruction or incorporated into the material misrepresentation instruction. Plaintiff argues that because the Ninth Circuit model jury instructions include this language as a comment to the Rule 10b-5 claim instruction rather than as a standalone instruction, it is better suited in the following instruction.

The Court proposes to administer this as a separate instruction because this is a separate legal concept and the material misrepresentation instruction is already fairly long.

1
2

**JURY INSTRUCTION NO. ____**

**MATERIAL MISREPRESENTATION**

3      Plaintiff must prove by a preponderance of the evidence that Elon Musk and/or Tesla's

4   misrepresentation of a fact was material.

5      A factual representation concerning a security is material if there is a substantial likelihood

6   a reasonable investor would consider the fact important in deciding whether to buy or sell that

7   security.  A material misrepresentation gives a reasonable investor the impression of a state of

8   affairs that differs in a material way from the one that actually exists.

9      A factual representation can be untrue but not material.  For example, if a company

10  inaccurately reports its revenue, this representation is untrue.  The factual representation would be

11  material if the difference between the disclosed revenue and the accurate revenue is significant

12  enough to influence a reasonable investor's decision whether to buy or sell securities in that

13  company.  If it is not, it would not be material.

14     You must decide whether something was material based on the circumstances as they

15  existed at the time of the statement.

16

17     [Court Notes: 9th Cir. Model Instruction No. 18.3.]

18

19     The dispute here is the appropriate level of detail with respect to materiality.  Although the

20  Ninth Circuit model instruction on materiality is simple and straightforward, both parties proposed

21  lengthy instructions describing various aspects of materiality.  *See* Jury Instructions at 52–54.  In

22  general, the Court adheres to the model instructions, especially since other courts in the Ninth

23  Circuit have used Model Instruction No. 18.3 to instruct on materiality.  *See Hsingching Hsu v.*

24  *Puma Biotechnology, Inc., et al.*, 15-cv-00865, Docket No. 700 at 33 (C.D. Cal. Jan. 19, 2019); *In*

25  *re JDS Uniphase Securities Litig.*, 02-1486-CW, Docket No. 1874 at 10–11 (N.D. Cal. Nov. 9,

26  2007).

27     Having said that, though, the Court agrees with Defendants that it is helpful and

28  appropriate to instruct the jury that a statement can be untrue but not material.  And Defendants'

United States District Court
Northern District of California

United States District Court
Northern District of California

example (which was used by Plaintiff in the June 2022 hearing, *see* Docket No. 445 at 13:24–14:9) is useful to illustrate the difference between untruth and materiality.  During the first jury conference, Plaintiff maintained that including *any* example to illustrate the difference between untruth and materiality was unnecessary and runs the risk of confusion.  But the intersection between untruth and materiality may not be intuitive.  Because this is one of the major issues that the jury will be deciding, it makes sense to expand upon the model instructions.  Thus, the Court proposes including an example to demonstrate the distinction between materiality and falsity.

The Court initially struck the other language provided by the parties that did not pertain to the difference between untruth and materiality because this language is not included in the model instruction and the Court was not convinced that it is needed.

In their objections, Defendants argued that the proposed jury instruction was incomplete because it did not explicitly instruct the jury to consider whether the difference between the misrepresentation and the state of affairs is of a sufficient magnitude to impact the reasonable investor's decision.  Defendants' Objections at 20.  As illuminated by the Court's proposed example, materiality depends on whether the statements "affirmatively created an impression of a state of affairs that differed in a material way from the one that actually existed."  *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017) (citing *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).  The Court has added language addressing the comparative component of materiality because it is supported by Ninth Circuit cases and Plaintiff did not object.

Defendants also objected that the Court's proposed instruction was incomplete because it did not describe what "circumstances" meant.  Defendants' Objections at 21.  Defendants proposed to instruct the jury that "circumstances" can include "the statement's content, the context in which the statement was made, and the circumstance in which a reasonable investor would have seen or heard it."  *Id.* at 19, 21 (citing *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1178 (9th Cir. 2009), *aff'd*, 563 U.S. 27 (2011)).  Plaintiff objected that Defendants' proposed language was unnecessary and self-evident.  The Court agrees with Plaintiff that "circumstances" is not a concept that requires elaboration and that the proposed language—which is not in the Model

Instruction No. 18.3—is not necessary.  For these reasons, the Court will not add this language to the instruction.

1

**JURY INSTRUCTION NO. ____**

2

**SCIENTER OR STATE OF MIND**

3      Plaintiff must prove by a preponderance of the evidence that Elon Musk and/or Tesla acted

4  with the necessary state of mind, which is known as scienter.  Scienter may be established by

5  showing either:

6      1.  The defendant knew his untrue statement was false, or

7      2.  The defendant had reckless disregard for whether the statement was true.

8      "Reckless" means highly unreasonable conduct that is an extreme departure from ordinary

9  care, presenting a danger of misleading investors, which is either known to the defendant or is so

10  obvious that the defendant must have been aware of it.

11      You are to assume that Elon Musk made the statements "Funding secured" and "Investor

12  support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder

13  vote." with at least reckless disregard for whether the statements were true.  But you must still

14  decide whether Mr. Musk acted knowingly.

15

16      [Court Notes: 9th Cir. Model Instruction No. 18.5.]

17

18      As noted above, the Court generally adheres to the language of the model instructions.

19  The Court has revised the instructions proposed by the parties to better track the language of Ninth

20  Circuit Model Instruction No. 18.5.

21      Defendants object (for the first time on the eve of trial) to *any* instruction on scienter.  *See*

22  Docket No. 572.  Defendants contend that because the Court has already found that Mr. Musk

23  acted with reckless disregard, and Tesla's scienter may only be imputed through Mr. Musk, there

24  is no need to instruct the jury on Mr. Musk's scienter for the 10b–5 claim.  *Id.* at 1.  Trial is set to

25  begin in two days; Defendants' last-minute shift in position is tardy and not well taken.  In any

26  event, whether Mr. Musk meets the higher level of scienter may be relevant for the 10b-5 claim

27  unless Defendants are willing to concede as a matter of law that recklessness will suffice for a

28  10b-5 claim.  *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) (assuming

United States District Court
Northern District of California

1  without deciding that scienter may be satisfied by a showing of deliberate recklessness).  Third,

2  the jury may ultimately need to decide whether Mr. Musk acted knowingly or recklessly for

3  apportionment of liability.  15 U.S.C. §§ 78u-4(f); 10(a)-(b) (defining "knowingly").  For these

4  reasons, the instruction stands.

5        The four main points of dispute as to the form of the instruction here are: (1) whether the

6  jury must find that Defendants made the statements at issue with knowledge or reckless disregard

7  as to their *material* falsity; (2) whether recklessness should be described as "deliberate

8  recklessness," as Defendants urge; (3) whether the instruction should describe aspects of scienter

9  beyond what the model instruction provides, and (4) whether the jury should be instructed that

10  Elon Musk's scienter can be imputed to Tesla, which comes from Plaintiff's proposed instruction.

11  The Court addresses each point in turn below.

12        Materiality

13        Although materiality is not included in the scienter model instruction, Defendants insist

14  that Plaintiff must prove that Defendants made the statements at issue with knowledge or reckless

15  disregard as to their *material* falsity since—according to Defendants—an intent to make a non-

16  material false statement does not establish the requisite intent to defraud investors.  Jury

17  Instructions at 71.  While there are cases that describe scienter and materiality in the same

18  breath—*i.e.*, "We have since held that 'a reckless omission of material facts' satisfies the element

19  of scienter," *see In re Alphabet*, 1 F.4th at 701—the Ninth Circuit has never held that scienter

20  requires knowledge of a statement's *material* falsity.  Rather, scienter requires that the defendant

21  "made false or misleading statements with an 'intent to deceive, manipulate, or defraud,' or with

22  deliberate recklessness."  *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1106 (9th

23  Cir. 2021) (internal citation omitted); *see also Gebhart v. S.E.C.*, 595 F.3d 1034, 1043 (9th Cir.

24  2010) (noting that the SEC "correctly applied the appropriate scienter standard" where it found

25  scienter after determining that the defendants "knew they had no direct knowledge of the truth or

26  falsity" of their statements, and made their statements "despite not knowing whether they were

27  true or false"). !!!

28        In sum: the Court struck Defendants' proposed insertion of the term "materially" into this

44

instruction because scienter does not require that a defendant make a statement with knowledge or reckless disregard as to their *material* falsity.  The fact that *other statutes* with *different scienter standards* may require both knowledge of falsity and materiality does not change the Court's analysis.  *See* Defendants' Objections at 15–16 (citing *United States v. Watkins*, 278 F.3d 961, 965–66 (9th Cir. 2002)).  Defendants believe that materiality is baked into scienter.  But for the reasons explained above, the Court disagrees.

### "Deliberate Recklessness"

Next, the parties disagree about whether scienter should be described as "reckless" (as Plaintiff urges) or "deliberate recklessness" (which Defendants favor).  The model instruction defines "reckless" as "highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it."  The model instruction does not use the term "deliberate recklessness."

While some cases use the term "deliberate recklessness," these cases define this level of scienter as "an extreme departure from the standard of ordinary care" which "presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."  *See, e.g.*, *Webb v. SolarCity Corp.*, 884 F.3d 844, 851 (9th Cir. 2018) (emphasis omitted); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619 (9th Cir. 2017) (same); *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (same); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009), *as amended* (Feb. 10, 2009) (same).  The model instruction properly conveys the legal standard for this element.  Hence "deliberate recklessness" is in essence a term of art, the definition of which is already included in the proposed instruction.

In their objections, Defendants ask the Court to drop recklessness in its entirety from the instructions.  Defendants' Objections at 18.  Defendants reason that because the jury will not be asked to determine whether any defendant acted recklessly as to a factual misstatement, there is no need for the jury to be instructed on the issue.  *Id*.  But the "knowingly" standard of scienter is meaningfully informed by the "recklessness" standard.  In other words, the Court's finding that

Mr. Musk acted with reckless disregard to the falsity of his statements provides a helpful baseline from which the jury can consider whether Mr. Musk had a higher level of scienter – whether he knew that his statements were untrue.  The Court will keep recklessness in the jury instructions.

Descriptions of Scienter not Found in the Model Instruction

Both parties have proposed including descriptions of scienter that are not in the model instruction and favor their respective positions.  Defendants, for instance, seek to include the statement that "[a]n honest or good faith belief that statement was not materially false means that Defendant did not act with scienter."  *See* Jury Instructions at 67.  Plaintiff proposes that the Court include: "A defendant cannot disprove evidence of scienter by merely denying subjective knowledge of the risk that a statement could be misleading.  In other words, when the defendant is aware of the facts that make a statement false and/or materially misleading, he or she cannot ignore them and plead ignorance of the risk."  *Id.* at 66.  The Court struck these statements because they are argumentative and not found in Model Instruction No. 18.5.

After the Court observed that Defendants' proposed language was not supported by its authorities, Defendants toned down their proposed language.  *See* Defendants' Objections at 15, 17–18 & 18 n.1.  But the proposed language that an "honest or good faith belief on the part of an individual that the statement is true is inconsistent with a finding that he acted with scienter" is still argumentative and suggestive.  Defendants can make this argument to the jury.  The Court will not include it in the jury instruction.

Imputing to Tesla

Plaintiff included the statement "If you find that Elon Musk acted with scienter, then his scienter may be imputed to Tesla" in his proposed jury instruction.  This phrase is not in the model instruction, and neither party addresses it in the briefing for this instruction.  Because imputation is a separate legal concept, the Court proposes including this language in the following instruction.

1

2

## JURY INSTRUCTION NO. ____

## IMPUTATION OF SCIENTER

3
4

A corporation can only act through its employees, agents, directors, and officers and can likewise only have scienter through them.

5
6
7
8
9

If you find that Elon Musk acted with scienter and was acting within the scope of his authority while tweeting the statements at issue on August 7, then his scienter may be imputed to Tesla.  If you find that Elon Musk acted with scienter but was not acting within the scope of his authority while tweeting the statements at issue on August 7, then his scienter cannot be imputed to Tesla.

10

11
12
13
14

[Court Notes: 9th Cir. Model Instruction No. 18.5; *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 475 (9th Cir. 2015); *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1577 (9th Cir. 1990)]

15
16
17

Plaintiff included the statement "If you find that Elon Musk acted with scienter, then his scienter may be imputed to Tesla" in the preceding jury instruction.  As imputation is a separate legal concept, the Court has proposed a separate instruction.

18
19
20
21
22
23
24
25
26
27
28

"Because the Securities Exchange Act and accompanying regulations do not contain any explicit instructions on when an employee's acts and intent are to be imputed as those of the company, courts have looked to agency principles for guidance."  *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 475 (9th Cir. 2015).  "In the context of Rule 10b–5, we have adopted the general rule of imputation and held that a corporation is responsible for a corporate officer's fraud committed 'within the scope of his employment' or 'for a misleading statement made by an employee or other agent who has actual or apparent authority.'"  *Id.* at 476 (quoting *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1577 (9th Cir. 1990)).  Hence the Ninth Circuit adopted the rule of imputation for Rule 10b–5 cases: scienter of the senior controlling officers of a corporation may be attributed to the corporation itself when those senior officials act within the scope of their authority.  *See In re Alphabet*, 1 F.4th at 705.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   In response to Defendants' objection, the Court has added language to make clear that if Mr. Musk was not acting within the scope of his authority while tweeting the statements at issue on August 7, then his scienter cannot be imputed to Tesla.  *See* Defendants' Objections at 28.  And because Plaintiff has withdrawn his objection to this language, the Court does not address Plaintiff's objection to the proposed imputation of scienter instruction.  *See* Docket No. 549 ("Plaintiff's Objections") at 9.

**JURY INSTRUCTION NO. \_\_\_\_**

**RELIANCE**

Plaintiff must prove by a preponderance of the evidence that he relied on Defendants' alleged material misrepresentations and that Plaintiff was justified in doing so.  Plaintiff does not have to show that he and other members of the Class individually relied on the false and/or materially misleading statements at issue if he proves the requirements for invoking a presumption that he and the Class relied on the integrity of the market price, otherwise known as the "fraud-on-the-market" presumption.

If you find that Plaintiff has proven by a preponderance of the evidence that:

1.  An active, open market for Tesla securities existed at the time of the transactions in question,

2.  Investors reasonably relied on that market as an accurate reflection of the current market value of the securities,

3.  The misrepresentations were publicly known and material, meaning that a reasonable investor would have regarded the misrepresentations as having significantly altered the total mix of information they took into account in deciding whether to buy or sell the Tesla security; and

4.  Plaintiff traded the security between when the alleged material misrepresentations were made and when the truth was revealed,

then the fraud-on-the-market presumption applies.  This means that you may find that Plaintiff has proved that he relied on Defendants' statements.

An "active, open market" means that there were a large number of traders, a high level of activity, and frequent trades, such that the price of the security immediately reflects all publicly available information.

Defendants may rebut the presumption that Mr. Littleton relied on the integrity of the market price when purchasing Tesla securities by proving by a preponderance of the evidence that Mr. Littleton did not actually rely on the integrity of the market price when he purchased Tesla securities.  In that event, Mr. Littleton must then prove that he justifiably relied directly on the

United States District Court
Northern District of California

misrepresentation.  Defendants may also rebut the presumption that the plaintiff class relied on the integrity of the market price when purchasing Tesla securities by proving by a preponderance of the evidence that the misrepresentation did not affect the market price of Tesla's stock.

The fraud-on-the-market presumption of reliance is limited to the time between when the misrepresentation was made and when the truth was revealed.

[Court Notes: 9th Cir. Model Instruction No. 18.7.]

There are three main disputes: (1) how many of the *Halliburton* factors should be included, (2) whether Defendants may invoke an individualized defense to defeat the class-wide presumption of reliance, and (3) whether the jury must be instructed regarding the cut-off for reliance.  The Court addresses each issue in turn.

### *Halliburton* Factors

First, the parties agree that the test to invoke the fraud-on-the-market presumption is "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014); *see also* Jury Instructions at 80, 83.  These four requirements were set forth in *Basic v. Levinson*, 485 U.S. 224, 248 n.27 (1988) and have been referred to as the *Basic* presumption.  The model instruction, however, only addresses the third element—market efficiency.

In Plaintiff's view, the publicity, market efficiency, and market timing requirements from *Basic* and *Halliburton* were established at class certification.  Jury Instructions at 80.  Plaintiff is correct that the Supreme Court has explained that a plaintiff must prove these prerequisites before class certification.  *Halliburton*, 573 U.S. at 276.  But in this case, Defendants stipulated that Tesla securities traded in an efficient market at all relevant times and did not seek to rebut the presumption of reliance *for purposes of class certification only*.  Docket No. 298 (Class Certification Stipulation) at 2.  As a result, Plaintiff still needs to show that the misrepresentations

50

were publicly known, that the market was efficient, and the timing of the trading.

Plaintiff then contends that market efficiency is the only *Halliburton* factor which requires the jury to make an independent finding. Jury Instructions at 81. In Plaintiff's view, the first two *Halliburton* factors—that the alleged misrepresentations were "publicly known" and "material"— are "directly subsumed" within Plaintiff's affirmative element of falsity, and there is no reason to pose this question to the jury again and risk juror confusion or an inconsistent verdict. Plaintiff has provided no authority to show that the "publicly known" factor is subsumed within falsity. Because public knowledge is part of the presumption, the jury must make an independent finding on this point. The same goes for the other prongs of the presumption.

As a result, the Court has incorporated Defendants' proposed language listing all four *Halliburton* factors.

Individualized Defenses to Rebut *Basic* Presumption

Second, the parties disagree about whether Defendants can rebut the *Basic* presumption by showing that Mr. Littleton would have bought Tesla securities at the same price, even if he knew the security price was affected by fraud. Defendants may use such evidence to rebut the presumption that *Mr. Littleton* did not rely on the integrity of the market price. But to defeat the *class-wide Basic* presumption, Defendants must mount a class-wide defense.

As *Smilovits* explains:

> [*Basic*] suggests that some of the means of rebutting the presumption of reliance can be proven on a class-wide basis, and some necessarily require individualized inquiry. For example, a party may rebut the presumption of reliance by showing that the market already knew the truth that was allegedly omitted from a company's statements, such that any omissions could not have been material. Or a defendant may show that the market is not efficient and therefore cannot be assumed to reflect information known about a security. These rebuttals are properly attempted on a class-wide basis because they concern market matters common to all class members. *Vivendi*, 765 F. Supp. 2d at 584.
>
> On the other hand, certain means of rebutting the presumption of reliance require an individualized inquiry into the buying and selling decisions of particular class members. For example, the Supreme Court stated in *Basic* that the presumption of reliance would be rebutted if the defendant could show that a particular investor would have purchased a company's stock even if she had known of the fraud. 485 U.S. at 248. Alternatively, if a particular investor relied

on information not generally available to the public, it may be argued that the investor did not rely on the integrity of the market. Logically, any attempt to rebut the presumption of reliance on such grounds would call for separate inquiries into the individual circumstances of particular class members. *Vivendi*, 765 F. Supp. 2d at 584. "For this reason, courts in securities fraud actions have consistently recognized that issues of individual reliance can and should be addressed after a class-wide trial, through separate jury trials if necessary." *Id.* at 584–85 (citing six cases).

Defendants seek "to introduce evidence that Lead Plaintiffs traded 'without relying on the integrity of the market.'" Doc. 610 at 2 (quoting *Basic*, 485 U.S. at 249). This is a Plaintiff-specific defense to the fraud-on-the-market presumption of reliance – an attempt to show that these particular Plaintiffs cannot rely on the presumption. As *Vivendi* rightly concludes, this is an individualized issue, not a class issue, and should be addressed after a class-wide trial.

*Smilovits v. First Solar, Inc.*, No. 12-cv-0555, 2019 WL 6698199, at *5–7 (D. Ariz. Dec. 9, 2019); *see also McPhail v. First Command Fin. Plan., Inc.*, 251 F.R.D. 514, 516, 519 (S.D. Cal. 2008) (recognizing that "the methods for rebutting the presumption of reliance under *Basic* permit rebuttal on a class-wide or individual basis" and finding that "issues and information pertaining to individual class members are more appropriately and efficiently addressed in separate proceedings after the determination of common, class-wide issues"); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,* No. 02-cv- 5893, 2005 WL 3801463, at *3 (N.D. Ill. Apr. 18, 2005) (rejecting argument that defendants can defeat the fraud on the market theory of reliance on a class-wide basis by showing that individual investors did not rely on the integrity of the market); *In re Lucent Techs. Inc. Sec. Litig.*, No. 00-cv-621, 2002 WL 32818345, at *2 (D.N.J. May 9, 2002) (rejecting argument that individualized reliance defenses can defeat reliance on a class-wide basis and noting that issues of individualized reliance may be litigated "at a later stage in the case, in which individual rebuttal proceedings may be pursued to determine whether a claimant may recover, once the matter of liability has been adjudicated"); 4 Newberg and Rubenstein on Class Actions § 11:3 (6th ed.) (noting that "courts in securities fraud actions have consistently recognized that issues of individual reliance can and should be addressed after a class-wide trial").[2]

---

[2] While some of these opinions dealt with a different topic, such as considering whether to allow

Because an argument that class members other than Mr. Littleton did not rely on the integrity of the market invokes an individualized defense that calls for individualized evidence that is outside the scope of the class-wide liability trial, it is not appropriate at this juncture. "Numerous other courts have recognized that individual issues of reliance are most efficiently determined after class-wide issues have been determined." *McPhail*, 251 F.R.D. at 520 (citing and collecting authorities); *see also Knapp v. Ernst & Whinney*, 90 F.3d 1431, 1435 (9th Cir. 1996) (noting that district court bifurcated case "into a trial of class-wide issues to be followed, if necessary, by a second-stage proceeding to adjudicate individual issues of reliance and damages); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 430 (7th Cir. 2015) (describing two-phase trial where the jury in Phase I "addressed all issues that were appropriate for class-wide resolution" and Phase II "addressed the remaining issues—e.g., reliance questions and the calculation of individual class members' damages"). The Court agrees with *Smilovits*, *Vivendi*, and the other authorities described above. To the extent that Defendants argue that Mr. Littleton would have bought stock regardless, this is an individualized defense that does not bear on the class-wide liability question.

### Cut-Off for Reliance

Finally, the parties disagree about whether the jury should be instructed as to determining the period of time for reliance. Jury Instructions at 84. The model instruction does not include any such language.

Defendants propose the following language: "If you find the Plaintiff justifiably relied on Defendants' alleged material misrepresentation under the "fraud-on-the-market" theory, the period of that reliance is limited to the time between when the alleged material misrepresentation was made and when the information the market needs to assess the accuracy of the alleged material misrepresentations was disclosed." Jury Instructions at 79–80, 84. The Court agrees that Defendants' proposed reliance period instruction does not go to the question of whether to apply the fraud-on-the-market presumption, but how to apply it and over what period of time.

_____

discovery into absent class members, the Court is persuaded that their analysis applies with equal force in the context of determining the scope of the evidence and arguments at a class trial.

United States District Court
Northern District of California

1    Defendants' Objections at 22.  Defendants argue that the truth was revealed to the market by

2    August 13 following the publication of a blog post by Mr. Musk, while Plaintiff argues that the

3    truth was revealed in an August 16 *New York Times* article.  The jury should thus be instructed on

4    how to determine the end of the presumed reliance.

5         *Halliburton* explains that the "presumption of reliance applies" "between the time the

6    misrepresentations were made and when the truth was revealed."  *Halliburton II*, 573 U.S. 258,

7    268 (2014).  The Court has added this language to the proposed instruction.

8         Finally, in response to Plaintiff's objections, the Court revised the third element because

9    the statements at issue are misrepresentations and not omissions.  *See* Plaintiff's Objections at 10.

10        Plaintiff further objects that issues of individual reliance should be addressed post-verdict.

11   *Id.*  But Mr. Littleton will testify at trial.  Under these circumstances, in light of the case law

12   discussed above, Defendants may challenge Mr. Littleton's individual reliance.

1

**JURY INSTRUCTION NO. ____**

2

**LOSS CAUSATION**

3       Plaintiff must prove by a preponderance of the evidence that Mr. Musk and/or Tesla's

4   misrepresentations caused their economic injury.  To establish causation, Plaintiff must prove that

5   the misrepresentations played a substantial part in causing the injury or loss that Plaintiff suffered.

6   Plaintiff must reasonably distinguish any security-price reaction to the misrepresentations at issue

7   from the market's reaction to other factors, such as other information or events that could affect

8   the prices of Tesla's securities.  Plaintiff need not prove that the misrepresentations were the sole

9   cause of the economic injuries.

10

11       [Court Notes: 9th Cir. Model Instruction No. 18.8; *Nuveen Mun. High Income Opportunity*

12   *Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1123 (9th Cir. 2013)]

13

14       The Court will follow Model Instruction No. 18.8 (which is almost identical to Plaintiff's

15   proposed instruction) but has proposed one additional sentence regarding disaggregation.

16   Defendants argue that Plaintiff's instruction (which mirrors the model instruction) is incomplete

17   and misleading because: (1) it does not address corrective disclosures, nor does it inform the jury

18   that a negative characterization of previously disclosed information is not a corrective disclosure;

19   and (2) it does not discuss disaggregation.  Jury Instructions at 87, 91–92.  The Court addresses

20   each issue in turn.

21       First, Defendants' narrow focus on corrective disclosures is inconsistent with the Ninth

22   Circuit's flexible approach to loss causation that recognizes that "there are an infinite variety of

23   ways for a tort to cause a loss."  *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750,

24   753 (9th Cir. 2018).  As evinced by the model instruction, it is unlikely that the Ninth Circuit

25   would embrace a jury instruction which is as detailed, narrow, and argumentative as the one which

26   Defendants have proposed.  Moreover, Plaintiff's leakage theory of loss causation is more

27   nuanced than a pure corrective disclosure-based theory of loss causation.  For these reasons, and

28   because neither of the exemplar jury instructions cited by the parties instructed the jury on

United States District Court
Northern District of California

1  corrective disclosures as part of the loss causation instruction, the Court rejects Defendants'

2  proposed language. *See Hsingching Hsu v. Puma Biotechnology, Inc., et al.*, Docket No. 700 at

3  36; *In re JDS Uniphase Securities Litig.*, Docket No. 1874 at 13–14.

4         Second, the Court addresses disaggregation.  Because there are myriad reasons why the

5  price of a security may rise or fall, the Ninth Circuit has explained that "evidence that certain

6  misrepresented risks are responsible for a loss must reasonably distinguish the impact of those

7  risks from other economic factors."  *Nuveen Mun. High Income Opportunity Fund v. City of*

8  *Alameda, Cal.*, 730 F.3d 1111, 1123 (9th Cir. 2013).  "[T]he ultimate issue is whether the

9  defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss."

10  *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016).  In other words, as this Court has

11  already found: "because of the 'tangle of factors' that influence stock price, [Plaintiff] must also

12  'reasonably distinguish' the loss attributable to the misrepresentations from the loss attributable to

13  other factors."  *In re Tesla, Inc. Sec. Litig.*, No. 18-cv-04865-EMC, 2022 WL 7374936, at *8

14  (N.D. Cal. Oct. 13, 2022).  In light of the evidence likely to be submitted at trial, it makes sense to

15  expand upon the model instruction and instruct the jury on Plaintiff's burden to reasonably

16  distinguish Tesla's stock price movements due to fraud from stock price movements for other

17  reasons.

18         In Defendants' objections, they rehash arguments that the Court has already rejected.  *See*

19  Defendants' Objections at 24.  In the Court's view, *In re Omnicon* and *Teachers' Ret. Sys.* bear on

20  the question of whether negative news stories and lawsuits can serve as corrective disclosures, not

21  whether the harm arising from such events is recoverable.  *See Teachers' Ret. Sys. of LA v.*

22  *Hunter*, 477 F.3d 162, 186–88 (4th Cir. 2007) (rejecting loss causation analysis where, contrary to

23  plaintiff's theory that a lawsuit "finally revealed the 'true facts' of fraud," the complaint contained

24  no new information regarding the fraud); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d at 511–12

25  (rejecting loss causation analysis where negative media coverage did not contain any new

26  information and thus could not serve as a corrective disclosure).  And as the Court noted in its

27  initial *Daubert* ruling, other courts have upheld damages models that include damages related to

28  subsequent regulatory actions or harm to corporate brand and corporate reputation.  *See* Docket

United States District Court
Northern District of California

56

No. 494 (Order Denying Motion to Exclude Hartzmark) at 26–27.

Plaintiff objects to the term "misrepresentations at issue."  Plaintiff's Objections at 11. Plaintiff argues that "misrepresentations at issue" should be replaced with "fraud at issue" so as to not exclude the possibility of consequential damages.  *Id.*  But the misrepresentations at issue are the fraud.  The Court does not see why it is necessary to replace one term with another which is equivalent under the circumstances.

United States District Court
Northern District of California

**JURY INSTRUCTION NO. ____**

**DAMAGES**

If you find for Plaintiff on the 10b-5 Claim against Elon Musk and/or Tesla, then you must consider and decide the amount of damages to be awarded to Plaintiff and the Class.  You may award only actual damages in that amount which will reasonably and fairly compensate Plaintiff and the Class for the economic losses they sustained.

Actual damages are measured by the amount of inflation or deflation caused by the misrepresentations on which you based your finding of a 10(b)-5 Claim.  In other words, actual damages are measured by the difference between the price at which a security sold and the price at which the security would have sold absent the alleged material misrepresentations.

There are three categories of securities about which you will be asked to render a verdict on damages: (1) Tesla common stock, (2) Tesla convertible bonds, and (3) Tesla stock options.  A stock option is a financial instrument that gives its buyer (known as the option holder) the right, but not the obligation, to buy or sell stock at a predetermined price at or until a specified date and time in the future.  The price of a stock option is primarily determined by two factors: the price of the stock at the time the option is purchased and the implied volatility of the stock.  Implied volatility is the market's forecast of a likely movement in a security's price.

You will be asked to determine the amount, if any, by which the prices for Tesla common stock and convertible bonds were artificially inflated by the misrepresentations on which you based your finding of a 10(b)-5 Claim for each day during the Class Period.  You will also be asked to determine what the levels of implied volatility for each Tesla stock option would have been for each option maturity bought or sold during the Class Period "but for" the misrepresentations.  Plaintiff bears the burden of proving that the misrepresentations caused a change to the implied volatility for each option maturity on each day of the Class Period.  The Court will use your determinations of price inflation and implied volatility to calculate the damages suffered by Plaintiff and the Class in connection with purchases and sales of Tesla securities during the Class Period.

Your award must be based on evidence and not upon speculation, guesswork, or

United States District Court
Northern District of California

conjecture.  Damages need not be proven with mathematical certainty but there must be enough evidence for you to make a reasonable estimate of damages.  Plaintiff has the burden of proving damages by a preponderance of the evidence.  Plaintiff also has the burden of separating out the price decline, if any, caused by factors, if any, other than the alleged misrepresentations.

[Court Notes: 9th Cir. Model Instruction No. 18.9.]

Both parties submitted lengthy instructions that significantly expand upon Model Instruction No. 18.9.  Much of this language is argumentative and not necessary.  As set forth below, however, the Court agrees that it is helpful to expand upon the model instructions in three ways.

First, background information regarding stock options and implied volatility is useful because these concepts may be unfamiliar to jurors.  Defendants proposed two paragraphs of background information describing stock options.  *See* Docket No. 528 (Second Revised Jury Instruction No. 31) at 6.  While two full paragraphs of information is superfluous, a brief description of stock options and implied volatility would be helpful.  The Court has proposed such language as suggested by Defendants.

Second, the Court agrees that it is helpful to explain to the jury that Plaintiff has the burden to separate out any price decline caused by something other than the alleged fraud.  The Ninth Circuit has made clear that Plaintiff can only recover for damages that are connected to the fraud.  *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005) ("As long as the misrepresentation is one substantial cause of the investment's decline in value, other contributing forces will not bar recovery under the loss causation requirement" but will play a role "in determining recoverable damages."); *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014–15 (C.D. Cal. 2003), *aff'd sub nom. Mortensen v. Snavely*, 145 F. App'x 218 (9th Cir. 2005) ("A proper measure of damages in the securities context thus requires elimination of that portion of the price decline or price difference which is unrelated to the alleged wrong.").  Thus, it makes sense to instruct the jury that Plaintiff must account for other events which could have impacted the price

of Tesla's securities.

Finally, the Court agrees with Plaintiff that it is helpful to instruct the jury that damages need not be proven with mathematical certainty. This legal proposition is well-founded and other courts included such statements in damages instructions. *See Harmsen v. Smith*, 693 F.2d 932, 945 (9th Cir. 1982) ("Although damages need not be proved to a mathematical certainty, 'sufficient facts must be introduced so that a court can arrive at an intelligent estimate without speculation or conjecture.'"); *Garvin v. Greenbank*, 856 F.2d 1392, 1401 (9th Cir. 1988) ("Damages need not be proven to a mathematical certainty."); *Jaffe v. Household International, Inc.*, 02-cv-05893, Docket No. 1614 at 32 (N.D. Ill. May 7, 2009) (administering damages instruction which includes "mathematical certainty" language); *In re Vivendi*, Case No. 02-cv-05571, Docket No. 1052-2 at 37 (same).

The Court is not convinced that the remainder of the parties' proposed instructions—which consist of language which is not present in Model Instruction No. 18.9—is helpful or warrants deviation from the model instructions. As for Defendants' proposed language regarding consequential damages, this language is inconsistent with Plaintiff's theory of consequential damages and the Court's prior ruling. *See* Docket No. 494 (Order Denying Motion to Exclude Hartzmark) at 23–25. The instruction makes clear that Plaintiff can only recover for inflation or deflation caused by the fraud.

The Court has further modified the instruction in response to both parties' objections. *See* Plaintiff's Objections at 12; Defendants' Objections at 25–27. In particular, the Court has added Defendants' proposed language regarding stock options to further guide the jury and because Plaintiff agreed in principle to these additions.

**JURY INSTRUCTION NO. ____**

**CONTROL PERSON LIABILITY**

Under Section 20(a) of the Securities Exchange Act of 1934, a defendant may be liable as a "controlling person" if during the period that someone else violated Rule 10b-5, the defendant had the authority to control that person or company.

A controlling person is an individual or company that possesses the power to direct the management or policies of a business enterprise or of another person involved in the management or policy-making of the enterprise.

Plaintiff claims that the Tesla's Board of Directors were controlling persons of Tesla and are therefore each liable under the securities laws for any violations of Rule 10b-5 committed by Tesla.  This is referred to as "the Plaintiff's Section 20(a) claim."

On this claim, Plaintiff has the burden of proving by a preponderance of the evidence that each Tesla director possessed, directly or indirectly, the actual power to direct or cause the direction of the management and policies of Tesla where Tesla is liable on Plaintiff's Rule 10b-5 Claim.  Plaintiff does not need to prove that any Tesla director actually exercised that power.

[Court Notes: 9th Cir. Model Instruction Nos. 18.1, 18.10.]

United States District Court
Northern District of California

61

1

**JURY INSTRUCTION NO. ____**

2

**DEFENSE TO CONTROL PERSON LIABILITY**

3       Even if you find that any Tesla director is a controlling person, you must still find that

4   Tesla director not liable if that Tesla director establishes the defense to control person liability.

5   Under the defense to control person liability, each of Tesla's directors has the burden of proving

6   both of the following elements by a preponderance of the evidence:

7           1.  He or she did not directly or indirectly induce the Section 10b–5 violation; and

8           2.  He or she acted in good faith.

9       The director can prove good faith by establishing that he or she maintained and enforced a

10  reasonable and proper system of supervision and internal control.  If the director is found to have

11  been involved in making a statement which violates Section 10b–5, that director can prove good

12  faith by showing a lack of scienter; *i.e.* that the director did not know that the statement was false,

13  nor did the director have reckless disregard for whether the statement was true.

14      If you find that a Tesla director has proved both of these elements, your verdict should be

15  for that director.  If you find that a director has failed to prove either or both of these elements,

16  your verdict should be for Plaintiff.

17

18      [Court Notes: 9th Cir. Model Instruction No. 18.11.]

19

20      The dispute here is how the jury should be instructed with regard to the scope of good

21  faith.  Plaintiff's proposed instruction mirrors Ninth Circuit Model Instruction No. 18.11, which

22  provides that the defendant "can prove good faith only by establishing that [he] maintained and

23  enforced a reasonable and proper system of supervision and internal control."  This language

24  comes from *Hollinger*, which was explicitly limited to broker-dealer cases.  *See* 914 F.2d at 1575

25  n.24 ("Today's holding, however, is reached in the context of the broker-dealer/registered

26  representative relationship exclusively.").  The model instruction, however, is not so cabined.

27      Defendants argue that good faith means an "absence of scienter," which they further define

28  as "they did not act with knowledge or with conscious disregard of the violation."  Jury

United States District Court
Northern District of California

United States District Court
Northern District of California

Instructions at 106, 108.  Courts have described good faith in terms of the absence of scienter without referencing any system of supervision and internal control.  *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) ("[A] defendant is entitled to a good faith defense if he can show no scienter and an effective lack of participation."); *S.E.C. v. Todd*, 642 F.3d 1207, 1224 (9th Cir. 2011) ("Weitzen does not meet his burden of showing that he is entitled to a good-faith defense.  To be eligible for the defense, Weitzen must demonstrate that he acted in good faith based on an absence of scienter, and did not "directly or indirectly induce the act or acts constituting the violation.""); *Arthur Children's Tr. v. Keim*, 994 F.2d 1390, 1398 (9th Cir. 1993) (finding that genuine questions of material fact existed as to defendant's good faith where evidence showed defendant knew that company was in a precarious financial situation and participated in the discussion of the financing); *Kaplan v. Rose*, 49 F.3d 1363, 1383 (9th Cir. 1994) ("Rose's uncontroverted statement that he never directed anyone to make statements that he knew to be misleading, and that to his knowledge all the information made public was true, is enough to shield him from secondary liability."). !

However, at least one court has denied summary judgment on the question of good faith because a reasonable juror could find that a non-broker dealer's "lack of supervision amounted to a failure to act in good faith."  *In re Allstate Life Ins. Co. Litig.*, No. 09-cv-08162, 2013 WL 789106, at *6 (D. Ariz. Mar. 1, 2013).  *Allstate* noted that in *Kersh* (which preceded *Hollinger*), the Ninth Circuit held that "application of the [failure to supervise] rule cannot arbitrarily be limited to the broker-dealer context" and suggested that "inaction outside the broker-dealer context as a general matter" might constitute sufficient participation in the unlawful activity to warrant imposition of liability.  *Kersh v. Gen. Council of Assemblies of God*, 804 F.2d 546, 551 (9th Cir. 1986), *abrogated by Hollinger*, 914 F.2d 1564.

During the jury instruction conference, both parties claimed that public policy inherent in applicable legislation supports their position.  For instance, there are reasons which broker-dealers may be treated differently from directors.  Section 15(b)(4) of the 1934 Act provides:

> The Commission, by order, shall censure, place limitations on ...,
> suspend ... or revoke the registration of any broker or dealer if it
> finds ... that such broker or dealer ...  has failed reasonably to

> supervise, with a view to preventing violations ... [of the securities laws], another person who ... is subject to his supervision.

15 U.S.C. § 78*o*(b)(4).  Unlike with directors, then, there is a specific statute which provides that sanctions may be imposed on broker-dealers who have failed to provide adequate supervision of their registered representatives.  *Id.*; *see also Hollinger*, 914 F.2d at 1573 ("The SEC argues that the representative/broker-dealer relationship is necessarily one of controlled and controlling person because the broker-dealer is required to supervise its representatives.  This requirement arises from § 15 of the 1934 Act, which the SEC has interpreted as authority to impose sanctions on broker-dealers who have failed to provide adequate supervision of their registered representatives.").

On the other hand, there are also policy arguments grounded in the governing securities laws which support imposing liability based on a director's failure to supervise.  The Supreme Court has explained that "an animating purpose" of securities law is "to insure honest securities markets and thereby promote investor confidence."  *United States v. O'Hagan*, 521 U.S. 642, 658 (1997); *see also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) ("The securities statutes seek to maintain public confidence in the marketplace.  They do so by deterring fraud, in part, through the availability of private securities fraud actions." (internal citation omitted)).  To define good faith as encompassing the maintenance of a reasonable system of supervision and control would thus further an overarching goal of preventing fraud and promoting diligence.  Moreover, directors of a corporation owe fiduciary duties to *both* the corporation itself *and* the corporation's shareholders to make sure that no securities laws are violated.  *See O'Hagan*, 521 U.S. at 652; *Swingless Golf Club Corp. v. Taylor*, 679 F. Supp. 2d 1060, 1073 (N.D. Cal. 2009).

As noted above, there arguably is tension between Model Instruction No. 18.11, which provides that the "only" way to show good faith is by establishing that the director maintained and enforced a reasonable and proper system of controls, and *Howard*, *Todd*, *Arthur Children's Trust*, and *Kaplan*, which all describe good faith in terms of the defendant's lack of scienter.  The Ninth Circuit has never foreclosed applying *Hollinger*'s "system of controls" test to directors.  *Cf. Arthur Children's Tr.*, 994 F.2d at 1398 ("There is no reason to construe the statute as though it were restricted only to broker-dealers and their salespersons.  Congress was well aware of the

special duties owed by a broker-dealer and could have put the rules on control person liability solely in that context if it so desired.  *See e.g.,* 15 U.S.C. §§ 78k and 78*o*. Congress did not act in this restricted way.  Those controlling an issuer of securities are liable for the conduct of the issuer and so are liable if an issuer intentionally or recklessly permitted the fraudulent marketing of its securities.")  And as a factual matter, these post-*Hollinger* cases did not involve a claim under Section 20(a) that the controlling person failed to maintain or enforce a system of internal controls. Rather, these cases involve situations where the controlling person was alleged to have been involved in making a misrepresentation, and the defendant claimed lack of scienter in regard thereto.  *See, e.g.*, *Todd*, 642 F.3d at 1224 ("As discussed *supra,* there is evidence that Weitzen acted with at least recklessness, or scienter, when he reported the Lockheed and AOL transactions as 'accelerated growth.' This precludes his ability to rely on the good-faith defense to defeat summary judgment."); *Howard*, 228 F.3d at 1063, 1066 (holding that the defendant was not entitled to the good faith defense for the Section 20(a) claim "because [the defendant] cannot show an undisputed lack of scienter" where there was evidence sufficient to support a verdict that defendant acted with scienter under section 10(b)); *Arthur Children's Tr.*, 994 F.2d at 1398 (finding that genuine questions of material fact existed as to defendant's good faith where evidence showed defendant knew of and was involved in financing); *Kaplan*, 49 F.3d 1363 (holding that defendant's good faith was shown where there was no evidence that defendant made or directed anyone to make false or misleading statements).  The instruction above (which deletes the word "only" from the Model Instruction) allows for the scenario addressed by Model Instruction No. 18.11 as well as that where the director's scienter as to an alleged misrepresentation is relevant.

**JURY INSTRUCTION NO. ____**

**APPORTIONMENT OF LIABILITY**

If you find that Plaintiff proved the 10b-5 claim against Tesla or Mr. Musk and/or the Section 20(a) claims against the other Defendants, then you must take two more steps.

First, you must determine whether any Defendant knowingly violated any securities law. A Defendant commits a knowing violation of the securities laws when (1) they make an untrue statement of material fact, with actual knowledge that the representation is false; and (2) persons are likely to reasonably rely on that misrepresentation.

Second, you must determine what percentage of responsibility, if any, to assign to each Defendant whom you have found to be liable (including those who have acted with reckless disregard). When apportioning responsibility, the percentages you calculate must total 100% among those parties you find responsible even if you believe that some of the Defendants are 0% responsible. In determining the percentage of responsibility, you must consider the nature of the conduct of each person you determine caused or contributed to the losses, if any, incurred by the Plaintiff and the nature and extent of the causal relationship between that person's conduct and the losses, if any, incurred by Plaintiff. If you determine that any person's actions and omissions did not proximately contribute to the loss incurred by Plaintiff, then you are to assign 0% responsibility to that person.


[Court Notes: 15 U.S.C. § 78u-4(f)]


The Court has proposed minor revisions to the parties' instructions. The particular subsection of the PSLRA that requires the jury to assign responsibility states, in pertinent part, that the jury must decide "the percentage of responsibility of such person, measured as a percentage of the total fault of all persons who caused or contributed to the loss incurred by the plaintiff." 15 U.S.C. §78u-4(f)(3)(A)(ii). This provision does not mention the word "material" or "materiality" at all. As a result, the Court has struck Defendants' insertions of the term "material."

**JURY INSTRUCTION NO. _____**

**STIPULATIONS OF FACT**

The parties have agreed to certain facts (listed below).  You must therefore treat these facts as having been proved.

[Court Notes: 9th Cir. Model Instruction No. 2.2.  The Court will administer this instruction if applicable.]

**JURY INSTRUCTION NO. _____**

**JUDICIAL NOTICE**

The court has decided to accept as proved the fact that [state fact].  You must accept this fact as true.


[Court Notes: 9th Cir. Model Instruction No. 2.3.  The Court will administer this instruction if applicable.]

**JURY INSTRUCTION NO. ____**

**DUTY TO DELIBERATE**

When you begin your deliberations, elect one member of the jury as your foreperson who will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Perform these duties fairly and impartially. Do not allow personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases, to influence you. You should also not be influenced by any person's race, color, religion, national ancestry, or gender, sexual orientation, profession, occupation, celebrity, economic circumstances, or position in life or in the community.

Do not be afraid to examine any assumptions you or other jurors have made which are not based on the evidence presented at trial. Please do not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be – that is entirely up to you.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so. During your deliberations, you should not hesitate to reexamine your own views and change your opinion if you become persuaded that it is wrong.

United States District Court
Northern District of California

[Court Notes: 9th Cir. Model Instruction No. 3.1.  The Court has modified the instruction.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. ____**

**CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved – including the parties, the witnesses or the lawyers – until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications,

1    then your verdict may be influenced by inaccurate, incomplete or misleading information that has

2    not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial

3    jury, and if you decide the case based on information not presented in court, you will have denied

4    the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very

5    important that you follow these rules.

6           A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any

7    juror is exposed to any outside information, please notify the court immediately.

9           [Court Notes: 9th Cir. Model Instruction No. 3.2.]

**JURY INSTRUCTION NO. _____**

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

[Court Notes: 9th Cir. Model Instruction No. 3.3.]

### JURY INSTRUCTION NO. _____

### RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

[Court Notes: 9th Cir. Model Instruction No. 3.5.]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. _____**

**READBACK AND/OR PLAYBACK OF TESTIMONY**

If during jury deliberations a request is made by the jury or by one or more jurors for a readback of a portion or all of a witness's testimony, and the court in exercising its discretion determines after consultation with the lawyers that a readback should be allowed, the Committee recommends the following admonition be given in open court with both sides present:

Because a request has been made for a [readback] [playback] of the testimony of [witness's name] it is being provided to you, but you are cautioned that all [readbacks] [playbacks] run the risk of distorting the trial because of overemphasis of one portion of the testimony.  Therefore, you will be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible. [Because of the length of the testimony of this witness, excerpts will be [read] [played].] The [readback] [playback] could contain errors.  The [readback] [playback] cannot reflect matters of demeanor [, tone of voice,] and other aspects of the live testimony.  Your recollection and understanding of the testimony controls.  Finally, in your exercise of judgment, the testimony [read] [played] cannot be considered in isolation, but must be considered in the context of all the evidence presented.

[Court Notes: Jury Instructions Committee of The Ninth Circuit, A Manual On Jury Trial Procedures § 5.1.C (2013)]

**JURY INSTRUCTION NO. ____**

**POST-DISCHARGE INSTRUCTIONS**

Now that the case has been concluded, some of you may have questions about the confidentiality of the proceedings. Now that the case is over, you are free to discuss it with any person you choose. By the same token, however, I would advise you that you are under no obligation whatsoever to discuss this case with any person.

If you do decide to discuss the case with anyone, I would suggest you treat it with a degree of solemnity in that whatever you do decide to say, you would be willing to say in the presence of the other jurors or under oath here in open court in the presence of all the parties.

Always bear in mind that if you do decide to discuss this case, the other jurors fully and freely stated their opinions with the understanding they were being expressed in confidence. Please respect the privacy of the views of the other jurors.

Finally, if you would prefer not to discuss the case with anyone, but are feeling undue pressure to do so, please feel free to contact the Courtroom Deputy, who will notify me and I will assist.

[Court Notes: 9th Cir. Model Instruction No. 3.9.]