QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (*appearing pro hac vice*)
  alexspiro@quinnemanuel.com
  Andrew J. Rossman (*appearing pro hac vice*)
  andrewrossman@quinnemanuel.com
  Ellyde R. Thompson (*appearing pro hac vice*)
  ellydethompson@quinnemanuel.com
  Jesse Bernstein (*appearing pro hac vice*)
  jessebernstein@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

  Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
  Kyle Batter (Bar No. 301803)
  kylebatter@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendants Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, And Linda Johnson Rice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**DEFENDANTS' OBJECTIONS TO ANTICIPATED TESTIMONY OF PROFESSOR GUHAN SUBRAMANIAN** |

## I. INTRODUCTION

The law is clear: expert witnesses cannot (a) be used to provide a factual narrative of information of which they have no personal knowledge, (b) offer personal judgments and interpretation of the facts and issues that the jury must resolve, (c) offer opinions unbounded by expert analysis, (d) offer testimony on irrelevant matters, or (e) offer opinions that have not been previously disclosed. Yet Plaintiff's recent disclosure of expert witness Guhan Subramanian's Slide Deck and exhibits reveal he is seeking to violate all of these rules. The Court should reject these tactics and exclude the improper portions of Professor Subramanian's Slide Deck and accompanying testimony.

***First***, it is clear that Plaintiff intends to use Professor Subramanian to provide a factual narrative of Plaintiff's theory of this case—a sort of second, more argumentative opening statement. Professor Subramanian is being called to testify before the jury has heard from any of the percipient witnesses with personal knowledge of the facts upon which his opinions are based . As Professor Subramanian's opinions effectively "rehash[] otherwise admissible evidence about which [he] has no personal knowledge," it is clear that Plaintiff intends to use his testimony to give a summary of the evidence before any evidence is admitted. The use of Professor Subramanian as a conduit for Plaintiff's factual theories is improper and should be precluded. *See Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2015 WL 757575, at *27 (N.D. Cal. Feb. 20, 2015).

***Second***, Professor Subramanian's Slide Deck demonstrates that he intends to offer opinions not based on his expertise but rather his personal judgment of the facts and the conduct and motivations of the Defendants. Such testimony invades the province of the jury and is improper. Indeed, the Delaware Chancery Court recently recognized this exact problem when it excluded Professor Subramanian's testimony in another case for his improper inclusion of "views based on his thinking and judgment," rather than expert analysis. *See In re Columbia Pipeline Grp. Merger Litig.*, 2022 WL 2902769, at *3 (Del. Ch. July 14, 2022). Professor Subramanian's factual opinions in this case are even more problematic and objectionable on their face and because he intends to offer them to a jury. They should be excluded too.

***Third***, the bulk of Professor Subramanian's Slide Deck and testimony—a comparison of Mr. Musk's proposal with Management Buy Outs since 2010—is irrelevant to this action. As he admitted

1  in deposition, Professor Subramanian is not providing opinions relating to materiality or loss
2  causation. The only element that these opinions could potentially apply to—recklessness—has been
3  resolved. The testimony is therefore irrelevant, unhelpful, and confusing to the jury.
4       ***Finally***, Professor Subramanian seeks to offer testimony and opinions that were not previously
5  disclosed. These opinions, which are independently objectionable for many of the reasons identified
6  above, should be excluded pursuant to Rule 26.

7       **II.  EXPERT TESTIMONY IN QUESTION**
8            **A.**     **Professor Subramanian's Opinions**

9       Plaintiff estimates that Professor Subramanian will testify for two hours. ECF No. 474-1, at 6.
10 Despite this lengthy estimate—only half an hour less than Plaintiff estimates for Mr. Musk, the key
11 figure in this case—Professor Subramanian's opinions and purported analysis are rather simple.
12      Professor Subramanian intends to opine about the so-called "typical deal process" in a
13 management buy-out (gleaned from categorizing certain information from 28 management buyouts
14 obtained from a public database and review of proxy statements) and present a case study of the Dell
15 MBO. Professor Subramanian will then compare the "typical deal process" to factual conclusions he
16 made about this case after "skimming" two transcripts and reviewing materials identified by his
17 research assistants after they "skimmed" the record on their own. (Ex. 360 ("Subramanian Report"),
18 ¶¶ 37, 41; Subramanian Dep. Tr. 32:23-33:8.)
19      Professor Subramanian also intends to opine that "permitting Mr. Musk's Twitter feed was
20 egregious corporate governance." (Subramanian Report, ¶¶ 72-86.) Professor Subramanian's opinion
21 is based on a review of certain excerpts of deposition testimony and certain exhibits. (*Id.*) Professor
22 Subramanian cites to no academic literature, regulations, law, or even examples from his personal
23 experience in support of this opinion. (*Id.*)
24           **B.**     **Professor Subramanian's Proposed Testimony**
25      Professor Subramanian's proposed testimony—as reflected in the Slide Deck disclosed to
26 Defendants—goes further. First, Professor Subramanian proposes factual findings based on his
27 personal view of the evidence. For instance, Professor Subramanian intends to testify as to the
28 following:

- "Mr. Musk's tweets suggest that he wanted to make a first-and-final offer, skip over the special committee approval process, and proceed to a shareholder vote, all in 30 days or less" (Slide 15)

- "No basis to believe that the Saudi PIF would have funded the transaction had it moved forward." (Slide 11)

- "Use of Twitter in this instance led to disclosures that were haphazard, incomplete, and confusing. Beyond "funding secured," no details were provided about the source or amount of financing for the going-private transaction." (Slide 17)

- "Mr. Musk did not meaningfully engage with bankers or lawyers at any point during the process, and certainly not before public disclosure occurred via the 'funding secured' Tweet on August 7th." (Slide 13)

- "Mr. Musk did not consult with financial or legal advisors before making his $420 offer."[1] (Slide 13)

- "The fact that it took six days after the initial tweet for any further substantive information to be disclosed by either Tesla or Mr. Musk about this major, transformative transaction is stunning and egregious." (Slide 12)

- "Mr. Musk's reasons for wanting to take Tesla private do not justify his actions" (Slide 11)

- "Time from Initial Contact with Shareholders to Board Contact…2 days"[2] (Slide 6)

- "The Musk Proposal was incoherent, incomplete, highly preliminary, illusory, or some combination of these things" (Slide 4)

Professor Subramanian also intends to testify about Mr. Musk's state-of-mind, including that "he wanted to take his $420 offer directly to a shareholder vote" despite direct evidence to the contrary. (*See e.g.*, Musk SEC Dep. 196:2-4 ("I am asking for a board vote because I'm asking that this matter be put to a shareholder vote. That's the request for a board vote.").)

Additionally, under the circumstances, it appears that Plaintiff intends to have Professor Subramanian provide a narrative of the facts of the case based on his review of discovery materials. Professor Subramanian's opinions are based on the testimony provided by Mr. Musk, Egon Durban, Dan Dees, Deepak Ahuja, Sam Teller, Martin Viecha, Dave Arnold, members of Tesla's Board of Directors and others—none of whom will have testified or given evidence at the time that Professor

---

[1] This assertion is based on Professor Subramanian's view that "Mr. Musk's conversation with Mr. Durban on August 6th does not constitute "consultation" with financial advisors in advance of the public disclosure of his offer." (Subramanian Report, fn. 107)

[2] This factual conclusion is based on Professor Subramanian's view that "Prior communications with the PIF were non-substantive…" (Subramanian Report, fn. 19)

Subramanian takes the stand. Given the fact-specific nature of his opinions, it appears he will first provide a narrative of the case based on his personal and incomplete views of the evidence before any of the percipient witnesses with personal knowledge testify. Based on the exhibits Plaintiff disclosed in connection with Professor Subramanian's testimony, which include internal Tesla documents that will not be admitted into evidence at the time he testifies, it appears likely that he will provide the jury with some or all of his narrative.

### III. ARGUMENT

#### A. Prof. Subramanian Cannot Provide a Narrative of the Case or His Personal Thinking and Judgment on the Facts

It is apparent—based on his proposed slides and the order in which he is being called—that Plaintiff intends to use Professor Subramanian to present a factual narrative that inappropriately interprets and comments on the evidence **all before any of that evidence is even presented**. This is plainly improper. An expert cannot serve as a conduit to feed the jury a factual narrative, *see Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 8949299, at *3 (N.D. Cal. June 15, 2018) (excluding expert testimony as a mere conduit for evidence) (citing *United States v. Freeman*, 498 F.3d 893, 903 (9th Cir. 2007)); *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 17CV205-MMA (MDD), 2020 WL 2553181, at *7 (S.D. Cal. May 20, 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021) (excluding expert opinion that is "simply providing a narrative of [Plaintiff's] theory of the case"), and therefore expert testimony that "simply rehashes otherwise admissible evidence about which the expert has no personal knowledge" is inadmissible. *See Fujifilm Corp.*, 2015 WL 757575, at *27 (quoting *Highland Capital Mgmt., L.P. v. Schneider*, 379 F.Supp. 2d 461, 469 (S.D.N.Y. 2005).). Moreover, an expert witness cannot supplant the role of the jury by "propos[ing] factual findings based on his personal view of the evidence," *In re Columbia Pipeline Grp., Inc. Merger Litig.*, No. CV 2018-0484-JTL, 2022 WL 2902769, at *1 (Del. Ch. July 14, 2022) (excluding the expert testimony of Prof. Subramanian for offering "what is effectively a proposed factual finding"), or offering "factual narratives and interpretations of conduct or views as to the motivation of parties." *Est. of Gonzales v. Hickman*, No. 05-660 MMM (RCX), 2007 WL 3237727, at *3 (C.D. Cal. May 30, 2007) (citing *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004).).

Professor Subramanian's proposed testimony is improper in all of these respects. **First**, Professor Subramanian apparently plans to present a narrative of the entire case from Mr. Musk's interactions with the PIF (Slides 6, 11), his offer to the Board of Directors (Slide 6), the publication of the Tweets, and his consultation with legal and financial advisors throughout the class period (Slides 8, 13). *See also* Subramanian Report at ¶¶ 15-33 (presenting a one-sided factual narrative that Subramanian claims is "uncontested by the parties"). There is no other credible explanation for why Plaintiff is choosing to have him testify before the vast majority of the facts upon which his opinion relies are in evidence or why Plaintiff has estimated that his testimony will take two hours given the otherwise simplistic nature of his opinions. ECF No. 474-1 at 6. "[E]xpert testimony cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence," and accordingly Plaintiff cannot use Professor Subramanian for that purpose here. *Aya Healthcare Servs.,* 2020 WL 2553181, at *6 (citing *Johns v. Bayer Corp.*, No. 09-CV-1935, 2013 WL 1498965, at *28 (S.D. Cal. Apr. 10, 2013) (excluding proffered expert testimony that "offer[ed] nothing more than a factual narrative of [ ] documents").) Moreover, permitting Professor Subramanian to present a one-sided narrative before any of the evidence is presented will be highly prejudicial to Defendants as the story offered by the august and well-credentialed Harvard professor will be the paradigm through which the jury views the case, whether or not his description is fair or accurate.[3] The information presented in Professor Subramanian's narrative, "to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence." *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (rejecting portions of expert testimony that was "a narrative reciting selective regulatory events").[4]

**Second,** Professor Subramanian repeatedly proposes factual findings on "lay matters which a jury is capable of understanding and deciding without the expert's help." *Aya Healthcare Servs.,* 2020 WL 2553181, at *6. Among other improper testimony, Professor Subramanian offers an

---

[3] Cross examination would not cure this prejudice. The parties only have 18 hours to put on their case and the Defendants should not be forced to waste their limited trial time refuting a factual narrative presented by a witness with no personal knowledge.

[4] In any event, Plaintiff cannot be permitted to publish any exhibits to the jury through Professor Subramanian's testimony that have not already been admitted into evidence.

interpretation of Mr. Musk's Tweets (Slide 15 ("Mr. Musk's tweets suggest that he wanted to make a first-and-final offer"), opines that Mr. Musk "did not consult with legal or financial advisors" and did not "*meaningfully* engage with bankers or lawyers at any point" (Slide 13) (emphasis added), tries to offer a personal interpretation of when Mr. Musk's "initial contact" with the Saudi PIF was (Slide 5), and even claims that there was "*no basis to believe* that the Saudi PIF would have funded the transaction had it moved forward" (Slide 11) (emphasis added).  In much of this testimony, Professor Subramanian analyzes testimony and documents from discovery and offers an opinion about their implications.  He also asserts that Mr. Musk's proposal was "incoherent, incomplete, highly preliminary, illusory, or some combination of these things."  These are not terms of art from a corporate governance text book, but are lay descriptors used to cast normative aspersions and—in the case of "illusory"—effectively make the personal judgment that Mr. Musk engaged in fraud.[5]

In *In re Columbia Pipeline Grp.*, the Chancery Court excluded similar analysis proffered by Professor Subramanian that "simply looked at the language" of the document at issue and "considered evidence in the record, just like a court would do" on the grounds that it "invaded the province of the" factfinder.  *See* 2022 WL 2902769, at *4 (Del. Ch. July 14, 2022).  In this case, like in *In re Columbia Pipeline Grp.,* Professor Subramanian "largely offers his personal thinking and judgment," which is precisely the type of improper expert opinion that the Delaware Chancery Court excluded him from offering.  *See* 2022 WL 2902769, at *3; *see also Est. of Gonzales*, 2007 WL 3237727, at *3 n. 34 (C.D. Cal. May 30, 2007) (citing *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d at 541 ("Examples of 'expert' testimony that courts have excluded on this basis include factual narratives and interpretations of conduct or views as to the motivation of parties").  The infirmities in Professor Subramanian's proposed testimony mandate the same result here.  In fact, the necessity for exclusion is even greater here since, unlike *In re Columbia Pipeline Grp.*, Professor Subramanian intends to present his "personal thinking and judgment" to a jury and not just the Court.

---

[5] Indeed, Professor Subramanian's Slide Deck reads more like a summation than an expert opinion, which is all the more reason to exclude it and its accompanying testimony. *See Est. of Gonzales,* 2007 WL 3237727, at *3 n. 34 (citing *United States v. Frazier*, 387 F.3d 1244, 1262–63 (11th Cir.2004) ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments").)

***Third***, Professor Subramanian offers opinions that "lack[] any basis in [his] experience or in any methodology and is therefore unreliable and unhelpful to the jury." *Aya Healthcare Servs.,* 2020 WL 2553181, at *7. Specifically, Professor Subramanian opines that "permitting Musk's Twitter feed was egregious corporate governance." (Slide 12; Report ¶¶ 72-86.) But this opinion is based on nothing more than Professor Subramanian's review of the record—he does not compare Tesla's disclosure policy to any other similarly situated corporation, and does not cite to any regulation or academic literature, or even his own purported experience. (*Id.*) As in *In re Columbia Pipeline Grp.*, this section of the report "reads like a Delaware judicial opinion" as he "is effectively finding facts." *See* 2022 WL 2902769, at *4. He offers no expert methodology or analysis to support these opinions. The closest he gets to any expert analysis is a general discussion of how CEOs are prepared for television appearances and earnings calls and a comparison between Twitter and other mediums of communication. (Report ¶¶ 80-81) But these "broad generalizations" that "are designed to make it seem like he is offering an opinion" are not enough to rescue them from the conclusion that he is simply passing judgment on facts. *See* 2022 WL 2902769, at *4. In any event, they are at most tenuously related to the thrust of his opinion. They should be rejected and excluded.

### B. Professor Subramanian's Opinions Should Be Excluded As Irrelevant

Professor Subramanian's first opinion, that the "Musk proposal was incoherent, incomplete, highly preliminary, illusory, or some combination of these things" and accompanying analysis comparing it to MBOs, should be excluded as irrelevant. (Slide 8) This is not a deal dispute or a corporate governance case under Delaware law. The opinion is not related to any of the remaining elements of the 10b-5 claim. Professor Subramanian admits that he is not offering any opinion as to materiality—except his reference to Mr. Musk's testimony that Mr. Musk believed his announcement that he was considering taking Tesla private was likely to move the market—or loss causation. (Subramanian Dep. Tr. 217:21-25; 219:9-13.) And his opinion does not relate to the fraud-on-the-market presumption or Mr. Littleton's individual reliance. At best, this opinion could have potentially been probative to recklessness, but the Court has already decided that element and it is no longer before the jury. Accordingly, the opinion should be excluded. *See Daubert.*, 509 U.S. at 591-92 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo,

nonhelpful.").

### C. Professor Subramanian Is Barred From Offering Undisclosed Opinions

Fed. R. Civ. Pro. 26 requires expert witnesses to disclose "a complete statement of *all* opinions the witness will express and the basis and reasons for them" in their written report. *See* Fed. R. Civ. Pro. 26(a)(2)(B)(i). Additionally, Rule 26 requires a party who made an incomplete expert disclosure to provide a supplemental disclosure "at least 30 days before trial. *See* Fed. R. Civ. Pro. 26(a)(3)(B), (e). Plaintiff has provided no formal disclosure regarding Prof. Subramanian's intent to testify as to whether Mr. Musk had a basis to believe that the PIF would have funded the transaction if it moved forward. (Slide 11). The only notice Plaintiff has provided is in the form of a PowerPoint slide intended as a demonstrative exchanged just prior to Professor Subramanian's scheduled testimony. Professor Subramanian's testimony must be confined to the opinions provided in timely disclosures, pursuant to Rule 26. *See Daly v. FESCO Agencies NA Inc.*, 108 Fed. Appx. 476, 479 (9th Cir. 2004) (excluding expert testimony where opposing party had "no opportunity for discovery regarding [the expert's] knowledge of those matters").

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court prohibit Professor Subramanian from improperly testifying to a factual narrative, providing opinions that displace the role of the jury and reflect only his personal judgments of the facts, opining on matters irrelevant to the action, or giving undisclosed opinions.

DATED: January 17, 2022          Respectfully submitted,

                                 QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                 By: */s/ Alex Spiro*
                                     Alex Spiro *(appearing pro hac vice)*
                                     *Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss,*
                                     *Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias,*
                                     *James Murdoch, Kimbal Musk, And Linda Johnson Rice*