QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (*appearing pro hac vice*)
  alexspiro@quinnemanuel.com
  Andrew J. Rossman (*appearing pro hac vice*)
  andrewrossman@quinnemanuel.com
  Ellyde R. Thompson (*appearing pro hac vice*)
  ellydethompson@quinnemanuel.com
  Jesse Bernstein (*appearing pro hac vice*)
  jessebernstein@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

  Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
  Kyle Batter (Bar No. 301803)
  kylebatter@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendants Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**DEFENDANTS' EXCEPTIONS TO THE COURT'S FINAL JURY INSTRUCTIONS (ECF NO. 573)** |

**PRELIMINARY STATEMENT**

Defendants recognize and appreciate the significant time and thought that the Court has dedicated to crafting its Final Jury Instructions through multiple rounds of briefing, conferences, and argument. The following exceptions are respectfully submitted pursuant to Federal Rules of Civil Procedure Rule 51(c) to make an appropriate record and to preserve issues for appeal if necessary.

**I.  DEFENDANTS' EXCEPTIONS TO THE COURT'S JURY INSTRUCTIONS**

**A.  Pretrial Statement/Claims and Defenses**

The Defendants preserve and incorporate by reference all prior argument about, proposals for, and objections asserted to this Instruction in argument, conference, and prior filings to the Court. *See* ECF Nos. 477, 548. Specifically, Defendant take exception to the description of Plaintiff's theory as unfairly one-sided, incomplete, and therefore prejudicial. (ECF No. 573 at 5.) There is no reason for the Court to provide a description of the Plaintiff's case before the parties open since the Plaintiff will have the opportunity to do so on his own mere minutes after the instruction is given.

**B.  Rule 10b-5 Claim**

The Defendants preserve and incorporate by reference all prior argument about, proposals for, and objections to this Instruction in argument, conference, and prior filings to the Court. *See* ECF Nos. 477, 548, 572.

Specifically, Defendants take exception to the Court's inclusion of any reference to scienter, recklessness, and the Court's summary judgment order.

First, scienter is no longer at issue in this case in light of the Court's summary judgment order and instruction on the element. The Court previously found on summary judgment that Plaintiff established that Mr. Musk acted recklessly in publishing the Tweets at issue in this case (and thus, per its current Proposed Instruction, satisfied the scienter element in the 10b-5 claim) and Plaintiff has conceded that no other person's state-of-mind is relevant to establishing scienter for the 10b-5 claim. Because the Court has found in this case that mere recklessness is sufficient to prove scienter, whether Mr. Musk acted "knowingly" is thus irrelevant to proving the element. Accordingly, the jury need not determine scienter, receive a separate instruction on the element, or even be informed that it is a required element of the 10b-5 claim.

Defendants respectfully disagree with the Court's conclusion that a reference to scienter is necessary because "whether Mr. Musk meets the higher level of scienter may be relevant to the 10b-5" and assertion that the "jury may ultimately need to decide whether Mr. Musk acted knowingly or recklessly for apportionment of liability." ECF No. 573 at 44.  As to the first point, the Court has already determined that recklessness is sufficient to prove the element so it is irrelevant whether the higher standard is met.[1]  As to the second point, Defendants contend that an Apportionment Instruction that defines knowingly as articulated in the PSLRA would be sufficient to inform the jury as to its charge on that issue.

Defendants continue to take exception to the Court providing any instruction on its summary judgment order on the grounds that any such instruction would confer the Court's imprimatur on an instruction suggesting that Mr. Musk is not credible and thus be highly prejudicial.  *See e.g., United States v. Sine*, 493 F.3d 1021, 1033-34 (9th Cir. 2007) ("jurors are likely to defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder rather than determine those issues for themselves").  The inclusion of the recklessness instruction is particularly prejudicial as it is superfluous and irrelevant given the posture of the case and the questions the jury must resolve.

Finally, Defendants object to the instruction on the Court's summary judgment order being provided to the jury before evidence is presented as it will taint how the jury receives and considers it during the pendency of the trial.

### C.     Maker of Misstatement

The Defendants preserve and incorporate by reference all prior argument about, proposals for, and objections to this Instruction in argument, conference, and prior filings to the Court.  *See* ECF

---

[1]  To the extent that the Court suggested that it would remove any and all references to recklessness and scienter should Defendants concede that the jury need not find that Mr. Musk "knowingly" made a material misstatement, Defendants would be willing to consider such an agreement after receiving clarity from the Court as to how it would impact all of the relevant instructions.  Defendants renew their objections to the Court's determination that recklessness alone satisfies scienter on the grounds that the Supreme Court has never approved such an approach. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) (reserving the question whether recklessness suffices), *see also* ECF No. 401 at fn. 1.

Nos. 477, 548, 572. Defendants take exception to the inclusion of this instruction as unnecessary given the current posture of the case. Plaintiff has conceded that his only theory of liability against Tesla is through the imputation of Mr. Musk's conduct (ECF No. 569) so the jury need not determine whether Tesla was an independent maker.

### D. Material Misrepresentation

The Defendants preserve and incorporate by reference all prior argument about, proposals for, and objections to this Instruction in argument, conference, and prior filings to the Court. *See* ECF Nos. 477, 548, 572.

Defendants take exception to the Court giving this instruction without the following language: "<u>A statement is not material just because it contains information that relates to a matter of general importance.</u>" This language is an accurate description of the law that instructs the jury on the critical distinction between information that is important in a vacuum and without context and information that is important to a reasonable investor's decision to buy or sell securities. *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1261 (N.D. Cal. 2000) (discussing the distinction between information that is generally important from material information that a reasonable investor would consider important in making a decision whether to purchase a security).

Defendants also take exception to the Court giving this instruction without language describing what factors a jury can consider when it assesses the circumstances that existed at the time of the statement: "<u>including the statement's content, the context in which the statement was made, and the circumstance in which a reasonable investor would have seen or heard it.</u>" These factors are taken from the Supreme Court's decision in *Matrixx Initiatives*, 563 U.S. at 43 (assessing materiality of omitted information required "consideration of the source, content, and context of reports"). The instruction is therefore an accurate and complete description of the law. *See Dang v. Cross*, 422 F.3d 800, 805 (9th Cir. 2005) (vacating judgment when district court used a model civil jury instruction that provided an incomplete statement of the law).

### E.  Scienter or State of Mind

The Defendants preserve and incorporate by reference all prior argument about, proposals for, and objections to this Instruction in argument, conference, and prior filings to the Court.  *See* ECF Nos. 477, 548, 572.

Defendants respectfully take exception to the Court giving this instruction without the following language:

1. The defendant knew his untrue statement was <u>materially</u> false, or

2. The defendant had reckless disregard for whether the statement was <u>materially</u> true.

As stated in Defendants' prior briefing on this issue, the element of scienter in a 10b-5 claim includes a requirement that the plaintiff prove that Defendant had knowledge of or was reckless as to the material falsity of the statement.  *See Alphabet, Inc. Sec. Litig.*, 1 F.4th at 701 (scienter satisfied by "a reckless omission of material facts"); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1546 (9th Cir. 1994).  The element of scienter under Rule 10b-5 encompasses more than just "guilty knowledge," it is the "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 211 (1976).  It thus requires proof of state-of-mind as to falsity and whether the false statement would induce reliance.  This Court previously adopted the same standard when clarifying its summary judgment order (6/16/22 Hr'ing Tr. at 5:4-8; *see also id.* at 4:14-23 ("and similarly with scienter, no reasonable juror could find that Mr. Musk did not know or didn't act in disregard to the inaccuracy— the factual inaccuracy, not the legal.")) and in its Pretrial Order, ECF No. 508 at 23.  Applying both requirements to the 10b-5 claim is consistent with the language of Section 10, the Supreme Court's interpretation of that language, and the Ninth Circuit's interpretation of other statutes with intent to defraud or mislead requirements.  *See e.g., United States v. Watkins*, 278 F.3d 961, 966 (9th Cir. 2002) ("Considering that common-law jurisdictions do not equate 'intent to mislead' with guilty knowledge, we cannot imagine that Congress used 'intent to mislead' to simply mean knowledge of falsity."). Omitting this language renders the instruction incomplete and therefore incorrect.

Defendants also take exception to the Court's omission of the language: <u>An honest or good faith belief on the part of an individual that a statement is true is inconsistent with a finding that he acted with scienter in making that statement.</u>  This language is consistent with consistent with the

Final Jury Scienter Instruction in *In Re JDS Uniphase Corp. Securities Litig*. And Ninth Circuit law holding that while good faith alone may not necessarily be able to defeat a finding of recklessness, it is nonetheless relevant to the factfinder's determination. *See e.g.*, *In Re JDS Uniphase Corp. Securities Litigation*, 4:02-1486-CW, Dkt. 1874 at 8 (N.D. Cal. Nov. 9, 2007), Instructions at 12-13; *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1093–94 (9th Cir. 2010) ("Evidence showing that the defendants did not appreciate the gravity of the risk of misleading others is relevant to [the deliberate recklessness] determination.").

Further, Defendants renew their objections to the Court's determination that recklessness alone satisfies scienter on the grounds that the Supreme Court has never approved such an approach. *Matrixx Initiatives,* 563 U.S. at 48 (reserving the question whether recklessness suffices), *see also* ECF No. 401 at fn. 1.

Defendants also take exception to the Court's inclusion of an instruction on scienter and any reference to the Court's summary judgment order. Scienter is no longer at issue in this case in light of the Court's summary judgment order and instruction on the element. The Court previously found on summary judgment that Plaintiff established that Mr. Musk acted recklessly in publishing the Tweets at issue in this case (and thus, per its current Proposed Instruction, satisfied the scienter element in the 10b-5 claim) and Plaintiff has conceded that no other person's state-of-mind is relevant to establishing scienter for the 10b-5 claim. Because the Court has found in this case that mere recklessness is sufficient to prove scienter, whether Mr. Musk acted "knowingly" is thus irrelevant to proving the element. Accordingly, the jury need not determine scienter, receive a separate instruction on the element, or even be informed that it is a required element of the 10b-5 claim.

Defendants respectfully disagree with the Court's conclusion that a reference to scienter is necessary because "whether Mr. Musk meets the higher level of scienter may be relevant to the 10b-5" and assertion that the "jury may ultimately need to decide whether Mr. Musk acted knowingly or recklessly for apportionment of liability." ECF No. 573 at 44. As to the first point, the Court has already determined that recklessness is sufficient to prove the element so it is irrelevant whether the higher standard is met. As to the second point, Defendants contend that an Apportionment Instruction

that defines knowingly as articulated in the PSLRA would be sufficient to inform the jury as to its charge on that issue.

Defendants continue to take exception to the Court providing any instruction on its summary judgment order on the grounds that any such instruction would confer the Court's imprimatur on an instruction suggesting that Mr. Musk is not credible and thus be highly prejudicial. *See e.g., United States v. Sine*, 493 F.3d 1021, 1033-34 (9th Cir. 2007) ("jurors are likely to defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder rather than determine those issues for themselves"). The inclusion of the recklessness instruction is particularly prejudicial as it is superfluous and irrelevant given the posture of the case and the questions the jury must resolve.

Defendants respectfully disagree that this position on scienter should not be considered at this time. ECF No. 573, at 43. Defendants took this position at the earliest opportunity in response to the Court's Proposed Instructions—which omitted Defendants' proposal that materiality be included in the scienter instruction—and Plaintiff's concession on corporate scienter. *See* ECF Nos. 548 and 572. Defendants note that Plaintiff offered and then withdrew a new theory of liability on the eve of trial and that Defendants were merely responding to those events.

### F. <u>Imputation of Scienter</u>

The Defendants preserve and incorporate by reference all prior argument about, proposals for, and objections to this Instruction in argument, conference, and prior filings to the Court. *See* ECF Nos. 477, 548, 572.

Defendants take exception to this instruction as redundant in light of the Court's Final Instruction on Corporate Entities. Both instructions state the same proposition: that Tesla cannot be found liable unless Mr. Musk was acting within the scope of his authority when he published the Tweets. *Compare* ECF No. 573 at 47 *with id.* at 35. Providing both instructions risks juror confusion and is unnecessary. Accordingly, Defendants respectfully request that this instruction be deleted.

Defendants also take exception to the inclusion of any reference to scienter for the reasons stated in Sections B and E, *supra*.

**G.     Reliance**

Defendants preserve and incorporate by reference all prior argument about, proposals for, and objections to this Instruction in argument, conference, and prior filings to the Court. *See* ECF Nos. 477, 548.

Defendants take exception to the Court's revision of the third element of the fraud-on-the-market presumption to read "The misrepresentations were publicly known and material, meaning that a reasonable investor would have regarded the <u>misrepresentations</u> as having significantly altered the total mix of information they took into account in deciding whether to buy or sell the Tesla security." Defendants contend that the Court's prior articulation—"The misrepresentations were publicly known and material, meaning that a reasonable investor would have regarded <u>what was not disclosed to them</u> as having significantly altered the total mix of information they took into account in deciding whether to buy or sell the Tesla security"—is appropriate. *See* ECF No. 535 at 46.

Defendants' appreciate the Court's inclusion of language regarding the cut-off of reliance. *See* ECF No. 573 at 50. However, Defendants take exception to the language on the grounds that it is incomplete and does not adequately provide the jury with the context and information it needs to make the determination when Plaintiff could no longer rely on the fraud-on-the-market presumption. Accordingly, Defendants contend that the following language is more helpful to the jury and take exception to the Instruction being given without it:

> <u>Once the information the market needs to assess the accuracy of the alleged misrepresentations has been revealed, a reasonable investor cannot be said to have relied on the alleged misrepresentation in deciding to invest. In other words, the disclosure of this information cuts off the Plaintiff's reliance on the alleged material misrepresentation at the moment it is issued. If you find the Plaintiff justifiably relied on Defendants' alleged material misrepresentation under the "fraud-on-the-market" theory, the period of that reliance is limited to the time between when the alleged material misrepresentation was made and when the information the market needs to assess the accuracy of the alleged material misrepresentations was disclosed.</u>

### H. Loss Causation

The Defendants preserve and incorporate by reference all prior argument about, proposals for, and objections to this Instruction in argument, conference, and prior filings to the Court. *See* ECF Nos. 477, 548.

Defendants take exception to the Court giving this instruction on Loss Causation without including the following:

> Plaintiff must prove by a preponderance of the evidence that Mr. Musk and/or Tesla's misrepresentations caused their economic injury. To establish causation, Plaintiff must prove that the misrepresentations played a substantial part in causing the injury or loss that Plaintiff suffered. Plaintiff must reasonably distinguish any security-price reaction to the misrepresentations at issue from the market's reaction to other factors, such as other information or events that could affect the prices of Tesla's securities. <u>Plaintiff can only suffer losses when new information is revealed to the market. He cannot recover damages for stock-price losses caused by subsequent events that repeat, recharacterize, or arise from the information already known to the market, such as negative news stories, lawsuits, or investigations about the previously disclosed information.</u> Plaintiff need not prove that the misrepresentations were the sole cause of the economic injuries.

The Court's Instruction, by failing to inform the jury that the Plaintiff's losses cannot be caused by the repetition of information already disclosed to the market, *see In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010); *Teachers' Ret. Sys. Of LA v. Hunter*, 477 F.3d 162, 187-88 (4th Cir. 2007) (stock decline following filing of complaint based on already-disclosed facts is not a loss "for which the plaintiffs in this case are entitled to compensation."), is an incomplete and therefore inaccurate description of the law. *See Dang*, 422 F.3d at 805-06.

The Court declined to adopt Defendants' proposed instruction on the repetition of previously disclosed information based on two incorrection presumptions. First, the Court posits that "Plaintiff's leakage theory of loss causation is more nuanced than a pure corrective disclosure-based theory of loss causation." ECF No. 573 at 55. But Dr. Hartzmark, by his own admission, is asserting a corrective-

disclosure damages theory. Ex. 375, n. 9. ("As will be discussed in detail, I assume for the purposes of this Damages Report that the finder of fact will determine that the period between the Musk Tweets on August 7, 2018 starting at 12:48 p.m. and the close of trade of August 17, 2018 is ***filled with numerous statements and partial corrective disclosures revealing curative information***; and that there was a final corrective disclosure on August 17, 2018."). Second, the Court suggests that because "there are an infinite variety of ways for a tort to cause a loss," (ECF No. 573 at 55), the Plaintiff is not required to show that new information caused the stock decline. However, there is no authority that holds that outdated information already incorporated into a stock price can cause loss in a fraud-on-the-market case. *See In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020) (BoFI's "stock price should already reflect whatever public information a blog post might be based upon. A corrective disclosure, though, ***must by definition reveal new information to the market that has not yet been incorporated into the price***.") (emphasis added); *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 407 (9th Cir. 2021) (in a fraud-on-the-market case "the plaintiff must show that after purchasing her shares and before selling, the following occurred: (1) 'the truth became known,' and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated"). Plaintiff's theory of damages and loss causation cannot circumvent the requirement that loss is only caused by the revelation of new information to the market, so the Court should instruct the jury on this law.

### I.  Damages

The Defendants preserve and incorporate by reference all prior argument about, proposals for, and objections to this Instruction in argument, conference, and prior filings to the Court. *See* ECF Nos. 477, 548.

Defendants take exception to the Court's Jury Instruction for Damages (ECF No. 573 at 58-59) on the grounds that it (1) fails to instruct the jury that Plaintiff can only recover damages for losses caused by the revelation of the alleged fraud and not repetition or recharacterizations of already public information, (2) fails to provide an instruction on consequential damages, (3) fails to instruct the jury that Plaintiff bears the burden to prove the threshold question of whether the misrepresentations caused any change in implied volatility, (4) endorses Plaintiff's disputed view that it is sufficient for

1  the jury to determine the but-for implied volatility of Tesla stock options for each maturity, as opposed
2  to each individual option sued upon (which vary by strike price), and once per day, and (4) includes an
3  unnecessary and suggestive instruction that Plaintiff need not prove damages with mathematical
4  certainty.

5        The Court correctly includes a disaggregation instruction informing the jury of Plaintiff's
6  burden to separate out the price decline caused by factors other than the alleged fraud.  ECF No. 573
7  at 59.  But the Court's instruction is unfortunately incomplete as it fails to describe to the jury what
8  those factors are, including that one of the factors that must be separated are losses caused by the
9  republication of information already known to the market.  *See In re BofI Holding, Inc. Sec. Litig.*, 977
10 F.3d at 794 (damages limited to losses caused by the publication of new information since the "stock
11 price should already reflect" information already known to the public).  This instruction is critical in
12 this case because Plaintiff's damages model attributes losses to events that Defendants' contend
13 simply repeat information that was already public, such as the August 16 *New York Times*' article's
14 journalistic recharacterization of prior reports that "funding was far from secured."  *In re Omnicom*
15 *Grp., Inc. Sec. Litig.*, 597 F.3d at 512 ("A negative journalistic characterization of previously
16 disclosed facts does not constitute a corrective disclosure of anything but the journalists' opinions.");
17 Ex. 171.  Omitting this instruction may not only confuse the jury but will also provide an incomplete,
18 and therefore incorrect, description of the law.  The jury should be given the following instruction,
19 which correctly states the law and is tailored to the theories and issues in this case:

20     Plaintiff also has the burden of separating out the price decline, if any, caused by
21     factors other than the alleged misrepresentations, <u>including but not limited to</u>
22     <u>subsequent events that repeat, recharacterize, or arise from the revelation of the truth to</u>
23     <u>the market, such as negative news stories, lawsuits, or investigations about the</u>
24     <u>information already publicly known.</u>

25       Defendants also take exception to the Court's omission of a consequential damages instruction,
26 which accurately states the law on recovering consequential damages as being limited to "outlays
27 attributable to the alleged misconduct" and out-of-pocket damages.  *Meyers v. Moody*, 693 F.2d 1196,
28 1212 (5th Cir. 1982); *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1030 (9th Cir. 1999).

1  The Court removed this language because it "is inconsistent with Plaintiff's theory of consequential
2  damages." ECF No. 535 at 56. But Plaintiff can only recover damages cognizable under the law. If
3  his theory of consequential damages is inconsistent with the law, that is grounds to reject his theory
4  and not grounds to reject an instruction. Accordingly, the jury should be made aware of this
5  inconsistency and be instructed as follows:

> Plaintiff is not permitted to recover any consequential damages except for outlays attributable to the alleged misconduct, for example money Plaintiff actually spent to mitigate his harm, if proved with sufficient certainty.

9  Defendants take exception to the Court's inclusion of the words "maturity" before the word
10 "bought" and following the word "option," and the words "on each day of the Class Period," rather
11 than "during the Class Period," as highly prejudicial. It is undisputed that the prices and implied
12 volatility of stock options vary by strike price, maturity, and time of day. Whether it is sufficient and
13 reasonable for Plaintiff to offer a but-for implied volatility only by maturity (while ignoring strike
14 price), and only once per day, is the subject of a vigorous dispute between the parties. By including
15 the words "maturity" and "on each day of", the Court is severely prejudicing Defendants by signaling
16 to the jury its own views on the dispute. Plaintiff provided no justification or explanation for the
17 inclusion of these term, which will not be helpful in the jury's determination of options damages.

18 Finally, Defendants take exception to the inclusion of the language "[d]amages need not be
19 proven with mathematical certainty" on the grounds and to the extent that it improperly suggests that
20 Plaintiff's damages burden is lower than what is required by law.

21 **J.      Defense to Control Person Liability**

22 The Defendants preserve and incorporate by reference all prior argument about, proposals for,
23 and objections to this Instruction in argument, conference, and prior filings to the Court. *See* ECF
24 Nos. 477, 548.

25 Specifically, Defendants object to the Court's formulation of the "Defense to Control Person
26 Liability" to the extent that it may suggest that the Directors must prove ***both*** that they maintained and
27 enforced a reasonable system of supervision and control ***and*** a lack of scienter. Such a suggestion is
28 inconsistent with controlling Ninth Circuit Law and the position that the Court took at the January 13,

2023 Pretrial Conference that reasonable control and lack of scienter are alternative methods of proving good faith. Defendants respectfully propose the following language to correct and alleviate this suggestion:

> <u>For example</u>, the director can prove good faith by establishing that he or she maintained and enforced a reasonable and proper system of supervision and internal control. <u>Alternatively</u>, if the director is found to have been involved in making a statement which violates Section 10b–5, that director can prove good faith by showing a lack of scienter; i.e. that the director did not know that the statement was false, nor did the director have reckless disregard for whether the statement was true.

### K. **Apportionment of Liability**

The Defendants preserve and incorporate by reference all prior argument about, proposals for, and objections to this Instruction in argument, conference, and prior filings to the Court. *See* ECF Nos. 477, 548.

Specifically, Defendants take exception to this Instruction being given without the following language:

> First, you must determine whether any Defendant knowingly violated any securities law. A Defendant commits a knowing violation of the securities laws when (1) they make an untrue statement of material fact, with actual knowledge that the representation is <u>materially</u> false; and (2) persons are likely to reasonably rely on that <u>material</u> misrepresentation.

The Court's instruction does not adequately inform the jury that a Defendant must have knowledge that the misrepresentation at issue is materially false. As discussed in Section E, *supra*, scienter under 10b-5—from which the PSRLA's "knowing" standard is based—requires Plaintiff to prove state-of-mind as to both falsity and materiality.

Moreover, Defendants take exception to the Court's inclusion of the parenthetical language "including those who have acted with reckless disregard" on the grounds that it is unnecessary.

| | | |
|---|---|---|
| 1 | DATED: January 17, 2023 | Respectfully submitted, |
| 2 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 3 | | |
| 4 | | By: */s/ Alex Spiro* |
| 5 | | Alex Spiro *(appearing pro hac vice)* *Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice* |