**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
       amccall@zlk.com

*Attorneys for Plaintiff and Counsel for the Class*

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION** |

## I. INTRODUCTION

Defendants' objections to the anticipated testimony of Professor Guhan Subramanian is a late and improper motion *in limine* to prevent Professor Subramanian from testifying. Despite having Professor Subramanian's expert report since November 8, 2021, his rebuttal report since December 8, 2021, deposing him on March 1, 2022, and having the Court's Final Prejudgment Order since December 12, 2022, Defendants have not challenged or objected to the contents of Professor Subramanian's report, opinions, or proposed testimony. Instead, they waited until the day of trial to attempt to exclude his opinions that were clearly stated and disclosed in his report. Defendants' late motion *in limine* should be denied in its entirety.

First, Professor Subramanian's proposed testimony is proper under Fed. R. Evid. 702 and 703. Under Fed. R. Evid. 703 experts may base their opinion on "facts or data in the case that the expert has been made aware of or personally observed." *Id*. "If experts in the particular field would reasonably rely on those kind of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id*. Additionally, even when inadmissible, the facts may be disclosed to the jury so long as "their probative value . . . substantially outweighs their prejudicial effect." Professor Subramanian will testify to customary practices and procedures in management buyouts as well as his experience with the Dell Inc. buyout, to opine that Mr. Musk's conduct with respect to the proposed going private transaction deviated from ordinary practices in the industry. Defendants fail to cite a single case holding that an expert cannot testify prior to Defendants' examinations. In this case, where the nature of the subject matter (*i.e.*, management buyout transactions) is complex, a professor like Professor Subramanian is especially necessary in order to educate the jury and frame the issues for their consideration.

Second, Defendants provide no support that Professor Subramanian's testimony is irrelevant. The jury will consider the extent to which the tweets were materially false and whether Mr. Musk knew his tweets were false. The jury will also consider Mr. Musk's apparent defenses, including that his conduct did not deviate materially from standard practices and that he did not act knowingly when making the false tweets. Therefore, Professor Subramanian's analysis of Mr. Musk's proposal compared to ordinary practices and other MBOs is clearly relevant.

Third, Defendants completely ignore the expert opinions provided by Professor Subramanian in his December 8, 2021, rebuttal report. Therefore, there is no basis to exclude them under Rule 26.

Defendants' last-minute attempt to preclude Professor Subramanian from testifying about facts and topics that were clearly laid out in his expert reports should be denied.

## II.   RELEVANT EXPERT REPORTS AND TESTIMONY

On November 8, 2021 Professor Guhan Subramanian submitted an expert report opining on:

(1) What is the typical approach that management takes in proposing a management buyout (MBO)?

(2) How is the public disclosure of the proposal typically handled?

(3) How do management and the board typically gauge investor support for the MBO?

(4) How does the negotiation between management and the company typically take place?

(5) How does the Musk Proposal and its disclosures compare to the typical process in an MBO?

¶34.

On December 8, 2021, Professor Subramanian served a Rebuttal Report to the claims made in the Fischel Report, concluding that:

(1) Mr. Fischel claims that Mr. Musk's "funding secured" tweet and subsequent communications were "consistent with his prior statements about taking Tesla private." Mr. Fischel provides only one prior statement from Mr. Musk to support this claim. To the extent that Mr. Fischel's claim is correct, it would have improved the credibility of the Musk Proposal in the marketplace.

(2) Mr. Fischel claims that "Mr. Musk's rationale is consistent with academic literature that discusses the benefits of being a private company." This statement is either incoherent, unhelpful, or incorrect.

(3) Mr. Fischel claims that the "[i]t was reasonable to believe that the proposed transaction would have been funded if it moved forward." This claim is speculative and not supported

by the evidence that Mr. Fischel cites.

(4) Mr. Fischel claims that "the $420 potential offer price was . . . reasonable." Yet again, this claim is not supported by the evidence that Mr. Fischel presents. In fact, Mr. Fischel makes the same mistake as Mr. Musk by comparing the $420 per share first offer to final offers in other deals.

¶2. Defendants also deposed Professor Subramanian on March 1, 2022.

On December 7, 2022, the Court noted in the Final Pretrial Conference Order that Mr. Littleton would be calling:

> Guhan Subramanian (expert). Professor Subramanian will testify regarding the opinions set forth in his expert report dated November 8, 2021, including customary practices and procedures in management buyouts as well as his experience with the Dell Inc. buyout, that Mr. Musk's conduct with respect to the proposed going private transaction allegedly deviated from ordinary practices in the industry, and that the proposal to take Tesla private was inter *alia illusory*.

(ECF No. 508, at 4).

### III.    ARGUMENT

#### A.    Professor Subramanian's Report Testimony is Proper

An expert may "testify in the form of an opinion" if it "will help the trier of fact to understand the evidence." Fed. R. Evid. 702. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Even where "facts or data would otherwise be inadmissible", they can still be submitted to the jury when their probative value outweighs their prejudicial effect. *Id*.

Professor Subramanian will analyze Mr. Musk's tweets in the context of standard and customary practices relating to management buyout transactions (or MBOs). His opinion is informed by substantial professional experience, including his experience with the Dell Inc. buyout. Professor Subramanian has published extensively on corporate deals, and MBOs in particular. One of these articles, entitled *Deal Process Design in Management Buyouts* (published in the *Harvard Law Review*), was selected by scholars in the field as one of the "top ten" articles published in that year, out of 565 articles. *See* Deal Process Design in Management Buyouts, 130

1  *Harvard Law Review* 590 (2016). In his academic research and in his report in this matter, he has
2  personally studied *every* significant MBO that has been announced since 2006. He is also the
3  Chairman of the Board of a Fortune 500 company, which has made numerous significant
4  acquisitions. *See generally* Professor Subramanian CV (Ex. 360, Appendix A).

5        Professor Subramanian will use all of this expertise to educate the jury as to what an MBO
6  is, how it works, and the basic information they need to know before receiving testimony from
7  other witnesses in this matter. He is a professor law and business and is uniquely suited to educate
8  the jury with a baseline understanding of MBOs. He will conclude that Mr. Musk's proposed
9  MBO amounted to an extreme departure from ordinary practices in the industry and, in turn,
10 provides the jury with a basis for determining that Mr. Musk committed a knowing violation of
11 the law. The facts Professor Subramanian will reference will undisputedly be entered into
12 evidence and will help the jury understand the evidence in this case.[1]

13       Plaintiff's intention to call Professor Subramanian to testify prior to Defendants is not
14 improper. He has reviewed the record in this action and can testify to it pursuant to FRE 703. This
15 necessarily includes Professor Subramanian's review of the events at issue in this case and Mr.
16 Musk's conduct – including meetings he had, Mr. Musk's purported offer to the Board, Mr.
17 Musk's communications to the public, and his consultation with legal and financial advisors –
18 and comparing that to "ordinary practices in the industry". This is proper testimony under FED.
19 R. EVID. 702. While Defendants would like to control when Plaintiff calls his witnesses,
20 Defendants do not and cannot cite a single case where an expert must be called only after
21 documents have been received into evidence. Plaintiff has the right to call witnesses in whatever
22 order he chooses. *see Herrington v. Scribner*, 2009 WL 3157538, *3 (E.D. Cal. 2009)("The Court
23 advised Plaintiff that he could present his case any way he wanted to and that he could call his
24 witnesses in any order he desired.").

---

[1] Defendants argue that "Plaintiff cannot be permitted to publish any exhibits to the jury through Professor Subramanian's testimony that have not already been admitted into evidence." Defs. Br. at 5, n. 4. Again, Defendants provide no basis for this argument. Plaintiff can submit exhibits to the jury even where "otherwise inadmissible" because their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 703.

Instead, Defendants object to the "anticipated testimony" of Professor Subramanian, because they incorrectly assume that "Plaintiff intends to use Professor Subramanian to present a factual narrative that inappropriately interprets and comments on the evidence." Br. at 4. This is false. Professor Subramanian will apply the relevant facts of the case to customary practices and procedures in management buyouts as well as his experience with the Dell Inc. buyout. Nothing in Professor Subramanian's testimony is new information that was not present in Professor Subramanian's export reports. *See* Br. at 5 (showing this information was in the expert reports by citing to Subramanian Report at ¶¶ 15-33). Therefore, it is illogical that Defendants now complain at the eleventh hour that Professor Subramanian's report "inappropriately interprets and comments on the evidence."

Defendants argue that "[e]xpert testimony cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence", and that expert testimony is improper where it sets forth "lay matters which a jury is capable of understanding and deciding without the expert's help." Defs. Br. at 5-6 (quoting *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 17CV205-MMA (MDD), 2020 WL 2553181, at *6 (S.D. Cal. May 20, 2020). While Defendants address these points separately, a reading of *Aya* is clear that the two points are related.[2] The Court in *Aya* indicated that "[e]xpert testimony is inadmissible if it addresses lay matters which a jury is capable of understanding and deciding without the expert's help. As such, expert testimony cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *Id.* The Court held that "such testimony is unhelpful to the jury". *Id.*; *see also* Defs. Br. 5-6. That is clearly not the case here, as Professor Subramanian's expert opinions are not "solely for the purpose of constructing a factual narrative" and will clearly be helpful to the jury.[3]

---

[2] It is also notable that Defendants timely moved to strike the opinions in the expert report in *Aya*, something Defendants have not done here.

[3] Similarly, in *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) defendants timely moved *in limine* to exclude certain proposed testimony by consumers' expert "historian" who "does no more than counsel for plaintiff will do in argument, *i.e.,* propound a particular interpretation of [defendant]'s conduct." *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004). That is not the case here.

     Professor Subramanian's expert reports and proposed testimony will properly apply the facts and events of this case to Professor Subramanian's experience, expertise, ordinary business practices, and other MBOs. As stated explicitly explained in his reports, Professor Subramanian will opine that "Mr. Musk's tweets suggest that he wanted to make a first-and-final offer", that Mr. Musk "did not consult with legal or financial advisors" and did not "meaningfully engage with bankers or lawyers at any point" (Slide 13), analysis of Mr. Musk's "initial contact" with the Saudi PIF (Slide 5), and opinion that there was "no basis to believe that the Saudi PIF would have funded the transaction had it moved forward" (Slide 11). Subramanian Report at Parts II & III. These opinions are directly from Professor Subramanian's reports, often quoted verbatim. *See* ¶¶ 106 ("Mr. Musk's tweets suggest that he wanted to make a first-and-final offer, skip over the special committee approval process, and proceed directly to a shareholder vote, all in 30 days or less."); 107 (" Unlike every deal in the MBO Sample, Mr. Musk did not consult with financial or legal advisors before making his offer."); 90 ("the record seems to indicate that Mr. Musk did not meaningfully engage with bankers or lawyers at any point during the process,"); 87 ("Mr. Musk discussed the buyout possibility with PIF on July 31, 2018, and made his public disclosure of his $420 per share offer one week later, on August 7th."); 88 ("Altogether, Mr. Musk took one week from initial discussion to public disclosure while Mr. Dell took seven months."); 108 (comparing the Dell transaction "initial contact" to that here"); *See also* Rebuttal Report Section IV (Professor Subramanian's analysis of Mr. Fischel's claim that "[i]t was reasonable to believe that the proposed transaction would have been funded if it moved forward").

     Further, Professor Subramanian's opinion that "the Musk Proposal was incoherent, incomplete, highly preliminary, illusory, or some combination of these things" is a direct quote from his report. ¶38 (5). These opinions provide more than "simple inferences", were properly identified by Plaintiff, and are well within Professor Subramanian's expertise, as he will testify to. *See Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2015 WL 757575, at *27 (N.D. Cal. Feb. 20, 2015)(only striking from **expert report** "observations and inferences that jurors are perfectly capable of making for themselves without the assistance of Dr. Bims's technical expertise.").

1    Defendants did not timely object to these opinions, cannot show that Professor
2    Subramanian's expert opinions are not "solely for the purpose of constructing a factual narrative",
3    nor can they show that it will not be helpful to the jury. Therefore, their arguments fail.
4    Defendants' cases do not hold otherwise. *See Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL
5    8949299, at *3 (N.D. Cal. June 15, 2018) (excluding two paragraphs from an expert's report
6    where the report "is simply vouching for fact evidence rather than providing expert opinions"
7    because the paragraph in the report was "a mere conduit to provide additional summation of
8    evidence"); *United States v. Freeman*, 498 F.3d 893, 903 (9th Cir. 2007) (finding that "speculative
9    or unnecessarily repetitive" evidence may provide "additional summation"); *Fujifilm Corp. v.
10   Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2015 WL 757575, at *27 (N.D. Cal. Feb. 20,
11   2015) (where defendants timely filed a motion to strike portions of an expert report, the Court
12   held that paragraphs in Dr. Bim's expert report were "replete with observations and inferences
13   that jurors are perfectly capable of making for themselves without the assistance of Dr. Bims's
14   technical expertise", and that "Motorola has not demonstrated that Dr. Bims's testimony on this
15   subject will provide more than 'simple inferences drawn from uncomplicated facts'", and a
16   factual narrative which "a lay juror is equally capable of constructing".).

17   Similarly, Defendants' reliance on *In re Columbia Pipeline Grp., Inc. Merger Litig.*, No.
18   CV 2018-0484-JTL, 2022 WL 2902769, at *4 (Del. Ch. July 14, 2022), also fails. Defs. Br. at 6.
19   The Court in *Columbia* actually "permit[ed] Subramanian to express . . . opinions" based on "his
20   personal thinking and judgment." *Id*. While the Court excluded his testimony that "analyze[d] a
21   sentence of the agreement and offer an opinion about its implications" and what the "parties
22   believed", the Court correctly noted that "[i]t is therefore 'proper for an expert to testify as to the
23   customs and standards of an industry and to opine as to how a party's conduct measured up against
24   some such standards.'" *Id*. at 1. That is exactly what Professor Subramanian does here.[4]

---

25   [4] At trial, the Court in Columbia Pipeline Group, in recognition of Professor Subramanian's
26   expertise on deal process, *requested* Professor Subramanian's opinions on additional deal process
     points beyond his original testimony.  Columbia Pipeline Trial Transcript Vol V (July 22, 2022)
27   at 1326:1–10, 1332:5–1333:1, 1362:18–1367:17, 1383:2–8, 1335:2-8 ("THE COURT: And I see
     TransCanada wondering: What are these guys doing? Right?  And so the real question, for me, is
28

1    Defendants also argue that Professor Subramanian's testimony will be prejudicial, solely
2 because a "well-credentialed Harvard professor" will testify before the Defendants. Br. at 5.
3 Defendants have offered no actual support or proof that Professor Subramanian's testimony will
4 be so prejudicial that the Court should take away Plaintiff's right to choose the order of its
5 witnesses. Defendants have every right to cross examine Professor Subramanian as they wish.[5]

6    Finally, Defendants also argue that "Professor Subramanian offers opinions that lack any
7 basis in his experience or in any methodology and is therefore unreliable and unhelpful to the
8 jury." Br. at 7 (quotations omitted). Defendants point solely to Professor Subramanian opinion in
9 his report that "permitting Musk's Twitter feed was egregious corporate governance." Defs. Br.
10 at 7 (citing Slide 12; Report ¶¶ 72-86.). This is a direct headline from Professor Subramanian's
11 Report that encompasses Professor Subramanian's "Assessment of Musk MBO Proposal". *See*
12 Report at 28, 29 ("Permitting Mr. Musk's Twitter Feed Was Egregious Corporate Governance").
13 However, again, Defendants are raising this complaint with Professor Subramanian's report *for*
14 *the first time* the day before his testimony. This testimony obviously falls within Professor
15 Subramanian's expertise and is proper testimony as he properly compares Mr. Musk's conduct to
16 "ordinary practices in the industry". While Defendants argue that "he does not compare Tesla's
17 disclosure policy to any other similarly situated corporation," (Br. at 7), this is completely false.
18 First, Professor Subramanian compares it to *Tesla's* prior disclosures, and notes that Tesla had
19 previously followed conventional disclosure practices. *See* Report at ¶¶76-78 ("it appears that
20 Tesla and Mr. Musk had followed conventional disclosure practices in numerous prior
21 transactions"). Additionally, as Defendants also note, he compares the disclosures at issue in this
22 case to ordinary business practices of disclosures that CEOs make in analyst calls and television
23 disclosures. Defs. Br. at 7. Professor Subramanian will testify that a tweet is more comparable to
24 these events than an SEC filing. Professor Subramanian also compares the timing of the

---

whether those signals, those body language, affect the negotiation dynamics. I want to give you two precise points where I would ask you to drill in on and give me your view. . .").

[5] Defendants only argument that cross examination would not cure prejudice is that they do not have enough time to discredit a "well-credentialed Harvard professor". Defendants have no support for this argument.

1  disclosures in this action to ordinary practices in the industry. Report at ¶81 ("In general, companies prefer to communicate information about the company outside of trading hours, to avoid market manipulation concerns.  For example, the CEO and CFO will typically do their quarterly analyst call before the markets open or after the markets close on the day of the earnings release.  This allows market participants to properly process information rather than having to react to new information in seconds."; ¶82 (comparing the timing of Mr. Musk's tweet to Tesla's prior disclosures). Defendants' arguments are therefore unfounded.

### B.     Professor Subramanian's Opinions are Clearly Relevant

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. An expert may "testify in the form of an opinion" if it "will help the trier of fact to understand the evidence." FED. R. EVID. 702. Defendants argue that Professor Subramanian's opinion that "Musk proposal was incoherent, incomplete, highly preliminary, illusory, or some combination of these things" is not relevant because it does not relate to any of the remaining elements of Plaintiff's claim.[6] However, the jury will consider the extent to which the tweets were materially false and whether Mr. Musk knew his tweets were false. The jury will also consider Mr. Musk's apparent defenses, including that his conduct did not deviate materially from standard practices and that he did not act knowingly when making the false tweets The status and circumstances of Mr. Musk's proposal provides relevant opinions that tends to make the extent to which the tweets were false, and Mr. Musk's knowledge that his tweets ("funding secured" and "[o]nly reason why this is not certain is that it's contingent on a shareholder vote") were false, more probable than it would be without the evidence. Indeed, Professor Subramanian, under the heading "Assessment of Musk MBO Proposal" analyses the proposal compared to ordinary practices and other MBOs to opine that the "Musk Proposal was incoherent, incomplete, highly preliminary, illusory, or some combination of all of these things." ¶71. Professor Subramanian's opinions are therefore relevant.

---

[6] This is the only opinion Defendants challenge on this basis.

 

1         **C.**        **Professor Subramanian is Not Offering Undisclosed Opinions.**

2         Defendants also argue that Plaintiff has provided no formal disclosure regarding Prof. Subramanian's intent to testify as to whether Mr. Musk had a basis to believe that the PIF would have funded the transaction if it moved forward. However, Defendants clearly ignore the contents of Professor Subramanian's Rebuttal Report dated December 8, 2021. *See* Rebuttal Report Section IV. Funding for the Transaction Was Speculative. In this Section, Professor Subramanian reviews Mr. Fischel's claim that "[i]t was reasonable to believe that the proposed transaction would have been funded if it moved forward." Rebuttal ¶¶14-25 (citing Fischel Report ¶20). Professor Subramanian relies on his experience, ordinary business practices and other MBOs to show that "funding the Musk Proposal would have been particularly difficult, compared to other MBOs, for two reasons." Rebuttal ¶¶22-25. As this opinion was disclosed on December 8, 2021, and Defendants have failed to previously object to this opinion, it is timely pursuant to Rule 26.

        **D.**        **Defendants' Motion is Late and Should Not Be Considered.**

        Defendants have waited until the eve of the trial to file this motion. *See U.S. v. Wolf*, 2015 WL 6440841 (D. Montana 2015) (finding a motion *in limine* was late and improper when it was filed three weeks after the deadline). Defendants have "failed to provide the Court with a legitimate explanation, let alone good cause, for the lateness of his motion." *id.* citing *Davis v. United States,* 411 U.S. 233 243 (1973)(upholding the district court's decision to deny relief from a rule 12 waiver where the defendant failed to establish good cause to excuse his untimely motion and the prejudice that would result from not litigating his motion); *see also Ranf v. Northwestern Corporation*, 2016 WL 6635630 (D. Montana 2016) (Motion in limine filed after the court's deadline were untimely and no reasons or justifications for the late filings were proffered); *Reynolds v. Gerstel*, 2013 WL 4815788 *2 (E.D. Cal. 2013) (Motion in limine denied as untimely when the moving party "had ample time to prepare this motion prior to the motion in limine deadline and has provided no good cause why this request was filed late."); *Susilo v. Wells Fargo Bank, N.A*., 2012 WL 6086933 (C.D. Cal. 2012) ("Moreover, it is plainly unreasonable to file a motion in limine a day before trial commences because this late filing deprives a defendant of a

1 reasonable chance to prepare a response."). Here too, the Court should find this motion untimely
2 and decline to consider it.
3 **IV.    CONCLUSION**
4      For the foregoing reasons, Plaintiff respectfully request that the Court deny Defendants
5 improper motion *in limine* to prohibit Professor Subramanian from testifying.

7 Dated: January 17, 2023                    Respectfully submitted,

                                             **LEVI & KORSINSKY, LLP**

                                             *s/ Adam M. Apton*
                                             Adam M. Apton (SBN 316506)
                                             Adam C. McCall (SBN 302130)
                                             75 Broadway, Suite 202
                                             San Francisco, CA 94111
                                             Tel.: (415) 373-1671
                                             Email: aapton@zlk.com
                                             Email: amccall@zlk.com

                                             -and-

                                             Nicholas I. Porritt
                                             Elizabeth K. Tripodi
                                             Alexander A. Krot III
                                             LEVI & KORSINSKY, LLP
                                             1101 30th Street N.W., Suite 115
                                             Washington, D.C. 20007
                                             Tel.: (202) 524-4290
                                             Email: nporritt@zlk.com
                                             Email: etripodi@zlk.com
                                             Email: akrot@zlk.com
                                             (admitted *pro hac vice*)

                                             -and-

                                             Joseph Levi
                                             Eduard Korsinsky
                                             Max E. Weiss
                                             LEVI & KORSINSKY, LLP
                                             55 Broadway, 10th Floor
                                             New York, New York 10006
                                             Tel.: (212) 363-7500

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

        Email: jlevi@zlk.com
        Email: ek@zlk.com
        Email: mweiss@zlk.com
        (admitted *pro hac vice*)

*Attorneys for Plaintiff and Counsel for the Class*