QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Alex Spiro (*appearing pro hac vice*)
  alexspiro@quinnemanuel.com
  Andrew J. Rossman (*appearing pro hac vice*)
  andrewrossman@quinnemanuel.com
  Ellyde R. Thompson (*appearing pro hac vice*)
  ellydethompson@quinnemanuel.com
  Jesse Bernstein (*appearing pro hac vice*)
  jessebernstein@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

  Michael T. Lifrak (Bar No. 210846)
  michaellifrak@quinnemanuel.com
  Kyle Batter (Bar No. 301803)
  kylebatter@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendants Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**DEFENDANTS' OBJECTIONS REGARDING THE IRRELEVANT, REDUNDANT, AND UNNECESSARY TESTIMONY OF DAVE ARNOLD** |

# INTRODUCTION

We going into the sixth day of trial and are already more than four days behind. The parties have only completed examinations for *five of the twenty-one witnesses* that Plaintiff intends to call in his case-in-chief. *See* ECF No. 474_1 ("Witness List"). The Court and the parties are in the midst of a trial management quagmire as they attempt to schedule all of the witnesses Plaintiff has identified, many of whom are traveling from out-of-town (and in one case, out-of-hemisphere) or otherwise have significant conflicts. Out of respect for the jury's time and in consideration of the trial clock, it is now appropriate for the parties to streamline their presentations to focus on the most probative issues and cull unnecessary witnesses.

Despite these serious concerns, Plaintiff still intends to call and spend 45 minutes of trial time examining Dave Arnold, Tesla's former senior director of global communications. Mr. Arnold's testimony is unnecessary, redundant, and lacking probative value as to the key issues in this case. Mr. Arnold, who was originally disclosed as a witness to testify on Friday, January 20, and will now likely not be called until *a full week later* on January 27, has no personal knowledge regarding Mr. Musk's Tweets, Mr. Musk's efforts to take Tesla private, Mr. Musk's communications and interactions with the Saudi PIF and other investors, or the Board of Directors' actions and meetings. At best, Mr. Arnold has limited personal knowledge about the process in which the August 7 and August 13 Blog Posts were wordsmithed but not their content or underlying facts. But the process by which the Blog Posts were prepared, even if relevant, is not in dispute and will be offered by other, more relevant witnesses. Indeed, Mr. Musk already testified that the Blog Post was "[d]rafted with Tesla…for me but[] with Tesla people." (1/24/23 Rough Tr. at 10:41:20:02-10:41:32:5). Mr. Arnold's testimony is not probative to any of the issues in the case and is needlessly cumulative at best.

It appears that the real reason Plaintiff intends to call Mr. Arnold is to introduce otherwise inadmissible documents, including internal Tesla media digests (which were not even authored by Mr. Arnold) and an internal Tesla email chain discussing false and anonymous hearsay rumors peddled by a reporter. Throughout this trial, Plaintiff has claimed that such evidence is not hearsay but is rather being offered for their purported effect on Mr. Musk and as evidence of Mr. Musk's state of mind. But this thin reed has been snapped by Plaintiff's presentation at trial. Plaintiff examined Mr. Musk for four-and-a-

half hours over the course of three court-days and yet never asked him about or even referenced ***any of these*** documents, even when asking him what he did "to follow the media attention following [the] August 7 tweets."  (1/24/23 Rough Tr.  at 11:03:18 11-11:03:51 20.)  Plaintiff had the opportunity to probe whether Mr. Musk saw the digests and what his state of mind was in response to the baseless media rumors, yet chose not to do so, thereby denying Mr. Musk the chance to respond.  Plaintiff should not be permitted to backdoor these facially improper documents into evidence through a tangential witness with no personal knowledge of Mr. Musk's reading habits or mind.  This is highly prejudicial, misleading to the jury, and a waste of the dwindling trial time.

The limited trial time available should be used on witnesses with personal knowledge about relevant issues in this case, not overlong examinations of side-characters with hardly probative cumulative testimony.  Plaintiff should not be permitted to call Mr. Arnold in this case.  At the very least, Plaintiff should be required to offer a proffer explaining precisely what he intends to have Mr. Arnold testify to and why this testimony will be probative to the disputed issues and helpful to the jury.  The rules of evidence prohibit evidence that will cause undue delay, waste time, and be needlessly cumulative.  Mr. Arnold's testimony checks all three boxes and should therefore not be presented at this trial.

## BACKGROUND

**Mr. Arnold and His Tenuous Connection to the Issues in this Case**:  During the relevant time period Mr. Arnold worked in Tesla's communications department.  Mr. Arnold had no personal involvement in Mr. Musk's plans to take Tesla private prior to his August 7, 2018 announcement, the meeting between Mr. Musk and the Saudi PIF, the various meetings of Tesla's Board of Directors, Mr. Musk's communications with investors and advisors before or after August 7, 2018, or Mr. Musk's interview with the *New York Times* that preceded the publication of the August 16, 2018 article.  Although Mr. Arnold was responsible for engaging with the press, Plaintiff has identified no evidence—documentary or testimonial—of any specific communications that he had with reporters on August 7 in the immediate aftermath of Mr. Musk's Tweets.  The only matters in this case upon which Mr. Arnold has personal knowledge is the preparation and wordsmithing of the August 7 and August 13 Blog Posts.  Mr. Arnold collaborated with other Tesla employees on the Blog Posts, including with Mr. Ahuja as to the August 7 Blog Post.  Mr. Arnold did not provide any of the substantive or factual information in either

post but instead helped with some of the language in the post and provided his communications perspective. (Vol 1 Arnold Dep. Tr. at 64:8-66:8, Vol. 2 Dep. Tr. 160:4-161:22).

**Plaintiff's Purported Reasons for Calling Mr. Arnold:** Plaintiff estimates that he will examine Mr. Arnold for 45 minutes on "his conversations with various investors and news outlets following Musk's tweet on August 7, 2018, his familiarity with the topics of public reporting regarding the August 7th tweet, his involvement in the drafting of the August 7, 2018 letter to Tesla employees and the August 13th blog post, and his practice of escalating critical media inquiries and press coverage to Musk, the Tesla Board and senior management." (Witness List, at 2.)

Mr. Arnold did not testify in deposition that he spoke to any investors following the publication of Mr. Musk's Tweet on August 7, nor did he testify as to any specific conversation he had with news outlets regarding Mr. Musk's Tweets. Plaintiff has not disclosed that he intends to introduce any exhibits containing email communications between Mr. Arnold and members of the press.

Based on the exhibits he has disclosed, Plaintiff apparently intends to call Mr. Arnold to testify about the preparation of the August 7 Blog Post (Exs. 12, 503-505), Tesla's response to anonymous hearsay rumors relayed by reporters (Ex. 342), and summaries of press coverage prepared by Tesla communications staff (Exs. 303, 339). By the time that Plaintiff intends to call Mr. Arnold, both Mr. Musk and Mr. Ahuja will have already testified about the preparation of the August 7 Blog Post. Based on his deposition testimony, Mr. Arnold will not add any relevant information not already provided by Mr. Musk who already admitted to Plaintiff's broader point that the Blog Post was "[d]rafted with Tesla…for me but[] with Tesla people." (1/24/23 Rgh' Tr. at 10:41:20:02-10:41:32:5; *see also* Vol 1 Arnold Dep. Tr. at 64:8-66:8.) The digests that Plaintiff seeks to admit through Mr. Arnold, summaries of press coverage, are hearsay within hearsay and were not even authored by him. (Vol. 1 Arnold Dep. Tr. at 95:7-17; Exs. 303, 339). Finally, Plaintiff seeks to admit an email containing a summary of a reporter's statements based on claims made by anonymous sources. (Ex. 342.) The Court overruled Defendants' hearsay objections to these internal Tesla documents on the grounds that they were offered

for their effect on the reader (Mr. Musk) and his state of mind.[1]  However in Plaintiff's four-and-half-hour long examination of Mr. Musk, he never once raised or even referenced any of these documents even when asking Mr. Musk how he followed the media attention after the August 7 Tweets.  (1/24/23 Rough Tr. at 11:03:18 11-11:03:51 20.)

## ARGUMENT

### I. MR. ARNOLD'S TESTIMONY IS IRRELEVANT, CUMULATIVE, OR OTHERWISE INADMISSIBLE

Mr. Arnold has little connection to the disputed issues in this case.  His testimony, therefore, is highly unlikely to provide the jury with any useful information that it will not already learn from more involved and central witnesses.  Calling Mr. Arnold will simply waste the limited time the parties and the jury has to resolve this complicated case.  Whatever *de minimis* probative value Mr. Arnold may bring is greatly outweighed by the danger that his testimony will cause undue delay, waste time, and be "needlessly cumulative."  Fed. R. Evid. 403.

It goes without saying that a percipient witness "must have 'personal knowledge of the matter' to which she testifies." *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995) (citing Fed. R. Evid. 602). Here, Mr. Arnold only has personal knowledge about two potentially relevant issues: the preparation of the August 7 and August 13 Blog Posts.  But even then, his personal knowledge brings little probative value to this case.  As Mr. Arnold testified in deposition, he has no knowledge of the underlying facts that are contained in the Blog Post.  His involvement in drafting the Blog Posts was therefore limited to "offer[ing] [his] perspective" and "perhaps help[ing] with some of the language and so on and so forth." (Vol 1 Arnold Dep. Tr. at 64:8-66:8, Vol. 2 Dep. Tr. 160:4-161:22).  He made no substantive decisions about the Blog Post's content—that was left to the subject matter experts like Mr. Ahuja along with Tesla's General Counsel Todd Maron—and cannot provide any insight as to the veracity of their statements or their subject matter.  To the extent that Mr. Arnold's testimony has any relevance at all, it is simply to

---

[1]  There is no other plausible hearsay exception since the Tesla internal documents were never revealed to the market (and thus could not have impacted what the market thought) and were not authored by so-called market influencers, just the Tesla communications staff.

show that Tesla employees assisted in preparing these posts—a fact that Defendants do not dispute and about which Plaintiff already will have had an opportunity to raise with Mr. Ahuja and Mr. Musk. Mr. Arnold's testimony on his minor and tangential involvement is therefore needlessly cumulative and need not be given to the jury. *See Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1430–31 (9th Cir. 1991) (affirming order to limit the number of witnesses testifying on issues "tangentially related" to the trial as needlessly cumulative and potentially confusing).

Plaintiff also seeks to use Mr. Arnold to introduce internal Tesla digests compiling and summarizing snippets of certain media coverage. (Exs. 303, 339). These digests—which were not even personally authored by Mr. Arnold (Vol. 1 Arnold Dep. Tr. at 95:7-17)—are incomplete hearsay within hearsay without proper foundation and should not be admitted. Moreover, these digests (as opposed to the underlying articles themselves) cannot be offered for their effect on the market as they were never disclosed outside of Tesla. Nor can they be offered for Mr. Musk's state-of-mind given that Mr. Arnold has no personal knowledge of whether Mr. Musk even read them. Indeed, Plaintiff did not even bother to ask when the topic naturally arose on cross. (*See* 1/24/23 Rough Tr. at 11:03:18 11-11:03:51 20.)

Finally, Plaintiff seeks to admit email correspondence of Mr. Arnold summarizing a discussion with a *New York Times* reporter in which the reporter made factual assertions based on the representations of anonymous sources. (Ex. 342) This is classic hearsay within hearsay (within hearsay) and should not be admitted. *See United States v. Holmes,* No. 5:18-CR-00258-EJD-1, 2021 WL 2044470, at *25 (N.D. Cal. May 22, 2021) ("quotations from people other than their authors constitute hearsay within hearsay" and should be excluded). Any claim that his document is being offered to show Mr. Musk's state-of-mind falls flat since Plaintiff had the opportunity to ask him about this document as well and again opted not to. Moreover, the email and its contents—including Mr. Arnold's exchange with the reporter—was not disclosed outside Tesla and thus could have no impact on the market. It is highly prejudicial, has no indicia of reliability (it contains multiple layers of anonymous hearsay), and is being offered for a transparently improper purpose.

Plaintiff intends to examine Mr. Arnold to introduce barely relevant, cumulative testimony and otherwise improper and inadmissible documents. This would be strong grounds for exclusion under Rule 403 in normal circumstances; it is self-evident that Mr. Arnold's testimony should be excluded here given

1  that the parties are nearly a week behind schedule. Mr. Arnold's testimony will only serve to waste the
2  jury's time, cause undue delay to an already backed up trial schedule, and offer highly prejudicial (and
3  otherwise inadmissible) evidence that far outweighs its probative value. There is no proper reason to call
4  Mr. Arnold. His testimony should be excluded.

## II. AT THE VERY LEAST, PLAINTIFF SHOULD BE REQUIRED TO MAKE A PROFFER AS TO MR. ARNOLD'S TESTIMONY AND ITS RELEVANCE

Should the Court not grant Defendants' request outright, Defendants respectfully request that it require the Plaintiff to make a proffer regarding Mr. Arnold's testimony and explain precisely what he seeks to elicit and why it is relevant to this case. Under the circumstances, and given the time and scheduling issues, Plaintiff should bear the burden to show what portions of Mr. Arnold's proposed testimony are relevant and why. The jury will have very limited time to hear testimony from witnesses, including individual Defendants, who will provide highly probative information and have personal knowledge of the events underlying this dispute. The jury should not have its time wasted on tangentially related evidence absent a particularized showing of why it needs to hear it.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court exclude the testimony of Dave Arnold or, in the alternative, require Plaintiff to make a proffer as to its relevance to this case.

DATED: January 24, 2023       Respectfully submitted,

                              QUINN EMANUEL URQUHART & SULLIVAN, LLP

                              By: */s/ Alex Spiro*
                                  Alex Spiro *(appearing pro hac vice)*

                                  *Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss,
                                  Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias,
                                  James Murdoch, Kimbal Musk, and Linda Johnson Rice*