# OFFICE OF THE CLERK
# UNITED STATES DISTRICT COURT
## Northern District of California

### CIVIL MINUTES

**Date:** January 13, 2023     **Time:** 8:52- 3:11     **Judge:** EDWARD M. CHEN
(Break 12:33-1:40)
6 hour, 19 minutes

**Case No.**: [18-cv-04865-EMC](18-cv-04865-EMC)     **Case Name:** In re Tesla Inc. Securities Litigation

**Attorneys for Plaintiffs:** Nicholas Porritt, Adam Apton, Elizabeth Tripodi, Alexander Krot

**Attorneys for Defendants:** Alexander Spiro, Michael Lifrak, Ellyde Thompson, Alex Bergjans, Kyle Batter, William Price, Andrew Rossman, Phillip Jobe

**Deputy Clerk:** Vicky Ayala     **Court Reporter:** Belle Ball

### PROCEEDINGS

Motion to Transfer Case and Status Conference - held

### SUMMARY

Parties stated appearances.

The Court disclosed that it had two new externs who planned to work at Quinn Emanuel Urquhart & Sullivan, counsel for Defendants, upon graduation. The Court explained that these externs had been walled off from the case: they did not participate in any discussions that the Court had with its law clerks regarding the case, and they will not have any role in the case during their externship.

The Court next heard argument regarding Defendants' motion to transfer venue. *See* Docket No. 537. The Court expressed its initial view that it disagreed with Defendants' characterization of the jury questionnaire responses. Although Defendants had asserted that there were 116 potential jurors who held negative views of Mr. Musk, in the Court's assessment, the jury questionnaire responses were more nuanced: 27 were solely positive, 38 were neutral, 49 were mixed, and 76 were negative. And of the 61 potential jurors who had indicated that they were available during the trial dates in question, the Court found that there were approximately 40 of them who indicated that they could be fair and impartial jurors. In light of the number of individuals who indicated that they were available and that they could be fair, the Court explained that it did not see any reason why venue needed to be transferred. Defense counsel then expressed his view that the media articles published regarding Mr. Musk over the last year were character assassinations which had tainted the pool of jurors. The Court responded that the Northern District of California had over five million people, and that the diversity of views shown in the questionnaire responses—including the positive responses regarding Mr. Musk—spoke to the diversity of views of the people in the District and undercut Defendants' theory of

bias.  After assessing the nature and quantity and quality of the press reports, and the jury questionnaire responses, the Court found that Defendants had not shown that transfer or a continuance was warranted, and therefore **DENIED** Defendants' motion to transfer venue.

Next, the parties and the Court discussed the 190 jury questionnaire responses which had been timely received.  The Court expressed its view that in light of the number of individuals who indicated that they would be able to serve without scheduling issues and the number of individuals who said that they either did not have a view of the defendants or that their opinion of the defendants would not interfere with their ability to be fair and impartial, it was not necessary to bring in all of the 200 potential jurors who had received summonses.  The parties agreed to bring in a pool of approximately fifty potential jurors for voir dire.  The parties and the Court then reviewed the questionnaire responses, beginning with the jurors who had indicated that they were available during the dates in question, and then moving to the jurors who had a conflict with the relevant dates.  The Court excluded all those prospective jurors who indicated on the questionnaire that they could not serve as fair and impartial jurors in this case.

After reviewing the jury questionnaires with the parties, the Court asked whether the parties would consent to excusing those individuals who had indicated that they were not vaccinated or declined to state their vaccination status.  The Court noted that there were three individuals who were appropriate for voir dire who had indicated that they were either not vaccinated or declined to state their status.  Of these three individuals, one of whom was Caucasian, one of whom was multiracial, and one of whom was African-American, two of them had no opinion one way the other about Defendants, and the third said that Mr. Musk was a little different with really great ideas.  The Court noted that in its experience, jurors were reassured by the Court's representation that all fellow jurors had been vaccinated and that without that assurance, many prospective jurors have stated they were not comfortable serving.  Counsel for Defendants indicated that they were willing to excuse the two individuals who were unvaccinated but wanted to keep the third individual (who had declined to state their vaccination status).  Counsel for Plaintiff informed the Court that they would move to exclude all three individuals.

After hearing from the parties, the Court imposed a vaccination requirement over the objection of the defense.  The Court explained that the reason why it was imposing the vaccination requirement was for public health concerns and because, in the Court's experience, it was advisable in terms of jury comfort and willingness to serve.  First, the Court found that there was no constitutional violation because there was no substantial impact in terms of excluding any cognizable group.  Jurors with views as to Mr. Musk did not create a constitutional issue because such personal views and philosophies were not a cognizable distinctive group within the cross-section requirement of the Sixth Amendment.  Second, the Court also found that any impact from excluding these three individuals was minimal given that the Court and the parties had selected over fifty other facially qualified individuals who would be subject to live voir dire.

The parties and the Court then discussed how best to conduct voir dire.  The Court explained that it would first ask hardship questions of the entire pool.  The parties then proposed to create two groups for purposes of asking attitudinal questions; individuals who had expressed strong views of Mr. Musk would be examined separately so as to avoid tainting the jury pool.  The parties agreed to meet and confer regarding which individuals would be voir dired separately and to report to the Court prior to jury selection next week.

Next, the Court raised the motion to quash the trial subpoenas directed to officials of the Public Investment Fund of the Kingdom of Saudi Arabia, which had been filed the day before. *See* Docket No. 562. Counsel for Defendants explained that they would not be pursuing the subpoenas, which mooted the issue.

The Court then heard argument on the parties' objections to the Court's proposed jury instructions. *See* Docket Nos. 548, 549. Defendants asserted that Plaintiff had exclusively pleaded corporate scienter through Mr. Musk and had not alleged any alternate theory of liability for Tesla's scienter. The Court ordered Plaintiff to file a highlighted version of the complaint or interrogatory response whereby he pleaded or disclosed this alternate theory of liability by 5:00pm that evening. The Court then heard argument on Defendants' objections to the Court's proposed instruction regarding the good-faith defense. Following the conclusion of these arguments, the Court indicated that it would issue its final jury instructions shortly.

The Court then heard argument regarding Defendants' request for leave to file another *Daubert* motion concerning Professor Heston's methodology for calculating option damages and Professor Hartzmark's implementation of it. *See* Docket No. 546. Following the conclusion of the parties' arguments, the Court **DENIED** Defendants' request for leave to file another *Daubert* motion. The Court ruled that the issues that Defendants raised may be explored during cross-examination at trial and go to the weight to be given to each expert's testimony; Defendants had not shown that a renewed *Daubert* motion was warranted.

The Court instructed the parties to meet and confer regarding Defendants' objections to Plaintiff's opening statement.