**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
           amccall@zlk.com

*Attorneys for Plaintiff and Counsel for the Class*

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**PLAINTIFF'S REQUEST FOR CLOSING JURY INSTRUCTIONS** |

Plaintiff respectfully requests that the Court adopt the following jury instructions for use in closing instructions. The proposed instructions relate to: 1) Tesla's and Musk's settlement with the SEC concerning the "funding secured" tweets; 2) the Saudi PIF's absence at trial; and 3) the 10b-5 Claim and how the jury should deliberate over the elements of "falsity" and "scienter" in light of the Court's partial summary judgment order and the evidence admitted at trial. Plaintiff provides below a summary of the instructions followed by the proposed language for the instructions and brief argument in support.

SEC Settlement. The jury has heard testimony relating to the SEC's investigation and/or lawsuit concerning the "funding secured" tweets. *See*, *e.g.*, 1/23 Tr. at 793:3-9 (Musk referring to "first deposition with the SEC"). The jury has not heard any testimony about the conclusion of that investigation, which ended with Tesla and Musk settling, paying a fine, and adopting various corporate governance measures. Consequently, to avoid any confusion or prejudice that might otherwise occur from leaving the jury uninformed on this point, Plaintiff proposes an instruction prohibiting the jury from making any inferences about the conclusion of the investigation or otherwise allowing the absence of evidence concerning the conclusion of the SEC's investigation

to alter their deliberations. The Court expressly acknowledged that such an instruction would be proper when deciding Defendants' Motion *in Limine* No. 4. ECF No. 508 at 34 ("Upon request, the Court will issue a limiting instruction informing the jury that they should not make any assumptions regarding the outcome of the SEC investigation.").

<u>Saudi PIF</u>. The Saudi PIF's role in the "funding secured" tweets has been a primary focus in this trial. The jury has heard extensive argument and testimony concerning Yasir Al-Rumayyan's text messages, prior meetings with Musk, and the Saudi PIF's meeting notes for the July 31 meeting. Unfortunately, the Saudi PIF was unable or unwilling to testify and did not appear at trial.

The Saudi PIF's absence at trial was not due to a lack of trying. Plaintiff attempted to obtain evidence from the Saudi PIF through letters rogatory. *See* ECF No. 315.[1] Despite this, Defendants argued that Plaintiff intentionally did not present Saudi PIF witnesses at trial because it would "destroy [their] case." *See* 1/23 Tr. at 836:16-837:6 (Musk accusing Plaintiff of intentionally not subpoenaing Mr. Al-Rumayyan because "it would destroy [Plaintiff's] case"). The Court struck this testimony but it nonetheless rang the proverbial bell in the mind of the jury and left them doubting Plaintiff's presentation of the facts and credibility when, in reality, Plaintiff sought testimony from the Saudi PIF, and the Saudi PIF's absence at trial had nothing to do with Plaintiff's actions. Consequently, Plaintiff seeks an instruction directing the jury to infer nothing from the Saudi PIF's absence at trial.

<u>10b-5 Claim, Scienter, and Apportionment of Liability</u>. Within the context of materiality, Defendants attempted to relitigate the elements of falsity and scienter throughout the trial. The jury heard extensive testimony bearing directly on the issue of whether "funding secured" was false. This evidence has undoubtedly left the jury wondering "Oh, well, maybe funding was secured," which the Court wanted to prevent with the instructions it issued at the front end of trial. 1/20 Tr. at 474:15-24. The jury also heard extensive testimony concerning Musk's supposed good intentions and non-culpable state of mind. Without a decisive instruction on these two

---

[1] On December 19, 2022, Defendants served subpoenas on the Saudi PIF. *See* ECF Nos. 522-25. The Saudi PIF moved to quash the subpoenas. ECF No. 562. Defendants then voluntarily withdrew them. *See* 1/13 Tr. at 117:16-24.

issues, this testimony will infect the jury's deliberations and irreparably prejudice Plaintiff. Thus, Plaintiff seeks a final instruction telling the jury that the Court previously determined that the "funding secured" tweets (Exhibits 8 and 13) were false and made with scienter. Plaintiff is also proposing that instructions concerning Musk's "knowing" state of mind be moved to the apportionment and allocation of liability jury instruction to avoid confusion, as explained below.

[*Proposed jury instructions on following pages.*]

**JURY INSTRUCTION NO. ____**

**SEC INVESTIGATION**

Some evidence may be admitted only for a limited purpose. When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose. During the course of the trial, you have heard testimony and seen evidence showing that the U.S. Securities and Exchange Commission investigated whether Elon Musk and Tesla Inc. violated the federal securities laws in connection with the tweets at issue in this case. You may consider this testimony and evidence for the limited purpose of deciding whether the tweets at issue in this case were material, whether the tweets caused Plaintiff and the Class to suffer damages, and how much damage the tweets caused.

You have not heard or seen any evidence about how the SEC's investigation concluded. You should not make any assumptions about the outcome of the SEC investigation. Evidence of the SEC's investigation should not be considered for any purposes other than what I just described.

[Ninth Circuit Model Civil Jury Instruction 1.11; ECF No. 508 at 34 ("Upon request, the Court will issue a limiting instruction informing the jury that they should not make any assumptions regarding the outcome of the SEC investigation.")]

**Plaintiff's Position**: The jury knows that the SEC investigated Musk and Tesla for securities laws violations in connection with the "funding secured" tweets. However, they do not know how the investigation ended. If left uninformed, the jury may assume the investigation did not lead to any adverse findings, actions, or penalties, or that the SEC chose not to pursue its investigation. This would be an unfounded assumption and, in fact, contrary to what ultimately occurred. Plaintiff was not allowed to tell the jury about the terms of the settlement to which Musk and Tesla agreed, the $40 million fine, or the corporate governance measures that Tesla was forced to implement. Thus, in order to prevent erroneous assumptions about the merits of the investigation from infecting the jury's deliberation process, a limiting instruction should be provided.

**JURY INSTRUCTION NO. \_\_\_\_**

**MISSING WITNESS**

You have seen evidence from the Saudi PIF and its representatives during the course of this trial. Plaintiff and Defendants both attempted to have the Saudi PIF appear at trial. You should not make any assumptions as to why the Saudi PIF did not appear at trial or draw any inferences from the Saudi PIF's absence. You should consider the evidence from the Saudi PIF as you would any other evidence admitted at trial and not discount it because the Saudi PIF did not testify.

[Ninth Circuit Model Criminal Jury Instruction 4.13; *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 U.S. Dist. LEXIS 114715, at *22-23 (N.D. Cal. Aug. 13, 2012) (explaining application of missing witness instruction in civil case where witness is not under control of either party)]

**Plaintiff's Position**: Musk accused Plaintiff of intentionally failing to call the Saudi PIF as a witness during trial. In pertinent part, he testified that "[Defendants] have tried our absolute hardest to subpoena Yasir, and to have him be part of this lawsuit. The interesting question for you, sir [referring to Plaintiff's counsel], is: Why did you not subpoena him? . . . Because if you did, it would destroy your case. That's why." 1/23 Tr. at 836:18-24. This statement was inappropriate and factually incorrect. Plaintiff's counsel attempted to correct the record, explaining that "[Plaintiff], in fact, did send court process to Saudi Arabia to get his testimony." *Id*. at 836:25-837:1. Defense counsel objected and exclaimed in front of the jury that Plaintiff's counsel's statement was "not true." 1/23 Tr. at 837:2. Plaintiff's counsel's statement was most certainly true; in March 2021, Plaintiff attempted to obtain evidence from the Saudi PIF through the letters rogatory process. *See* ECF No. 315.

Although the Court promptly ended the line of inquiry and struck Musk's answer and his counsel's response, the jury still heard what was said. Defendants' inappropriate and untrue comments will taint the Saudi PIF's evidence (namely the text messages and meeting minutes) and unfairly influence the jury's credibility determinations, if left unchecked. A curative

1  instruction is necessary in order to ensure that the Saudi PIF evidence introduced is given equal
2  footing with all other evidence and not dismissed or discredited out-of-hand due to Defendants'
3  improper accusations.

|   |   |
|---|---|
| 1 | **JURY INSTRUCTION NO. \_\_\_\_** |
| 2 | **RULE 10b-5 CLAIM** |

The buying and selling of securities is controlled by the Securities Laws. . . . .

. . .

<u>Before this trial began, the Court decided that the statements "Funding secured" and "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote." were untrue. The Court also decided that Mr. Musk acted recklessly when making these statements. You should treat these elements as having been proven by a preponderance of the evidence. Therefore, your deliberation is limited to whether these untrue statements were material.</u>

~~You are to assume that the statements "Funding secured" and "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote." were untrue. But you still must decide whether these statements were of material facts. You must also assume Mr. Musk acted with reckless disregard for whether the statements were true. But you must still decide whether he knew that the statements were untrue.~~

[Ninth Circuit Model Civil Jury Instruction 18.1, 18.2; *Hsu v. Puma Biotechnology, Inc.*, No. 15-cv-00865 (C.D. Cal. Jan. 29, 2019) (ECF No. 700 at 36) (instructing jury on summary judgment holding concerning elements of fraud-on-the-market presumption)]

**Plaintiff's Position**: The parties have argued at length over the precise wording to be used when instructing the jury about the Court's partial summary judgment holding. From Plaintiff's perspective, the current instruction falls short of what is required and leaves the jury confused and at risk of returning an erroneous verdict. Evidence of this confusion emerged during voir dire when Prospective Juror Lucian Young (No. 110) asked whether he had to "believe" the tweets were "untrue" or if he could "see [the] statement" and "interpret it, as is." 1/17 Tr. at 187:23-188:3. Defense counsel's response to the question only added to the confusion and left Mr. Young simply wanting to know whether or not the Court "made [the] determination." *Id.* at 188:23-25

1  ("If the courts are saying that it's untrue and they made that determination, then I believe so.").

2  Defendants compounded this confusion first with false statements made during opening
3  arguments and then later through testimony from Musk, Mr. Gracias, and others claiming that the
4  "funding secured" tweets were true and/or made without scienter. *See*, *e.g.*, 1/18 Tr. at 334:8-9
5  (Mr. Spiro: "[Mr. Musk] had the funding"); 1/18 Tr. at 328:7 (Mr. Spiro: "It was secured"); 1/18
6  Tr. at 343:7-9 (Mr. Spiro: "And here in this case on August 7, 2018, his mind was pure. His
7  intentions were sincere. He was operating in good faith . . . ."); 1/24 Tr. at 952:12-22 (Musk: "I
8  was 100 percent truthful."); 1/24 Tr. at 967:25-968:2 (Musk: "It's factually true."); 1/25 Tr. at
9  1264:12-1265:2 (Mr. Gracias: "This is a part of the world where you do business on a handshake.
10 And if they say they're going to do it, they're going to do it."). These statements have created a
11 real, tangible risk that the jury is presently thinking "Oh, well, maybe funding was secured," as
12 the Court anticipated when it decided to issue a cautionary instruction at the front end of this trial.
13 1/20 Tr. at 474:15-24.

14 In its Order regarding Final Jury Instructions, the Court has already "agree[d] with
15 Plaintiff that it is appropriate to instruct the jury on the Court's summary judgment rulings as part
16 of this instruction." ECF No. 573 at 9. The Court ruled that "[t]o the extent that Defendants
17 contend that the Court's summary judgment ruling cannot be referenced in the jury instructions,
18 this argument is meritless." *Id*. The Court has stated time and again that "the jury *should* defer to
19 the Court's summary judgment ruling. The Court has already decided that the statements at issue
20 were false and that Mr. Musk made them with at least reckless disregard as to their falsity. These
21 findings of fact are not open to revisitation by Defendants or the jury." *Id*. (emphasis in original);
22 *see also* ECF No. 398 at 3 ("though 'jury instructions are often an ineffective remedy,' the Court
23 finds that unlikely to be true for the instant case where the jury will be told that the Court has
24 already found that the August 2018 tweets were false and made with the requisite scienter."). The
25 Court granted Plaintiff partial summary judgment on these elements. The jury should be told that
26 these issues have been resolved and eliminate any and all ambiguity. *See Hsu v. Puma*
27 *Biotechnology, Inc.*, No. 15-cv-00865 (C.D. Cal. Jan. 29, 2019) (ECF No. 700 at 36) (instructing
28 jury that "Before this trial began, the Court decided that elements [pertaining to the fraud-on-the-

market presumption] have been established in Plaintiffs' favor. You should treat these elements as having been proven by a preponderance of the evidence.").[2]

Plaintiff respectfully submits that now is the time to issue this jury instruction. Without it, Plaintiff will be irreparably prejudiced and left with no means of recourse as the jury debates internally issues that have already been resolved in Plaintiff's favor as a matter of law.

---

[2] Where, as here, courts have made partial summary judgment findings against parties, their instructions reflect those findings with absolute clarity. *See*, *e.g.*, *STM Networks, Inc. v. Clay Pac. S.R.L.*, Case No. SACV03-1796-DOC (MLGx), Dkt. No. 123 at 22 (C.D. Cal., Feb 17, 2005) (When addressing the summary judgment holding, the jury instructions began as follows, "the court has found the following facts to be true . . . ." ), *aff'd STM Networks, Inc. v. Clay Pac. S.R.L.*, 224 F. App'x 609, 610 (9th Cir. 2007) ("The district court did not abuse its discretion in giving jury instructions consistent with its ruling on partial summary judgment."); *see also Nutri-Metics Int'l, Inc. v. Carrington Lab'ys, Inc.*, 1992 WL 389246, at *5 (9th Cir. Dec. 22, 1992) ("[t]he court's ruling on the partial summary judgment was read to the jury, both during the trial and as part of the instructions."); *McArthur v. City & Cty. of S.F.*, 190 F. Supp. 3d 895, 907 (N.D. Cal. 2016) ("Partial summary judgment is further granted as follows. The jury will be instructed that no constitutional violation took place up through and including the searches of all of the men. That issue is now decided and will not be re-litigated at trial but of course sufficient background facts may be allowed . . . ."); *Mamola v. Group Mfg. Service, Inc.*, 08-cv-01687-GMS Dkt. No. 227, at 27, 29 (D. Ariz., Sept. 30, 2010) (jury instructed: "[t]he Court has already determined that the defendant's determination that plaintiff could not drive on the job does not constitute discrimination under the ADA"; and "[i]n this case, I have already determined, as a matter of law, that Plaintiff suffers from impairments that affect major life activities. You will not be required to decide these issues.").

**JURY INSTRUCTION NO. ____**

**SCIENTER OR STATE OF MIND**

Plaintiff must prove by a preponderance of the evidence that Elon Musk and/or Tesla acted with the necessary state of mind, which is known as scienter. Scienter may be established by showing either:

1. The defendant knew his untrue statement was false, or

2. The defendant had reckless disregard for whether the statement was true.

"Reckless" means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it.

<u>Before this trial began, the Court decided that Mr. Musk acted at least recklessly when making the statements "Funding secured" and "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote." You should therefore treat the element of scienter as having been proven by a preponderance of the evidence when deciding whether Plaintiff has proved his Rule 10b-5 Claim against Mr. Musk.</u>

~~You are to assume that Elon Musk made the statements "Funding secured" and "Investor support is confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote." with at least reckless disregard for whether the statements were true. But you must still decide whether Mr. Musk acted knowingly.~~

[Ninth Circuit Model Civil Jury Instruction 18.5; *Hsu v. Puma Biotechnology, Inc.*, No. 15-cv-00865 (C.D. Cal. Jan. 29, 2019) (ECF No. 700 at 36) (instructing jury on summary judgment holding concerning elements of fraud-on-the-market presumption)]

**Plaintiff's Position**: Similar to the element of falsity, Defendants have made numerous statements during trial that contradict the Court's summary judgment order. ECF No. 573 at 9. ("The Court has already decided that the statements at issue were false and that Mr. Musk made them with at least reckless disregard as to their falsity. These findings of fact are not open to

revisitation by Defendants or the jury."). These statements represent that Musk was acting with a non-culpable intent (*i.e.*, no scienter). *See*, *e.g.*, 1/18 Tr. at 343:7-9 (Mr. Spiro: "And here in this case on August 7, 2018, his mind was pure. His intentions were sincere. He was operating in good faith . . . ."); 1/24 Tr. at 927:25-928:17 (Musk: Q Did you intend to deceive your shareholders? A No, I intended to inform them. To make sure that all shareholders were on equal footing, and there weren't some that were aware of it and some that were not.); 1/24 Tr. at 975:7-13 (Musk: "Q Did you ever tell them that this whole "Am considering" was a hoax and a lie you created to deceive investors? A Not at all."); 1/27 Tr. at 1493:18-25 (Ms. Denholm: " . . . if I believed that Elon was trying to mislead the public, I would have stood down from the board").

This testimony has no probative value given the Court's determinations on summary judgment. Musk acted with scienter; testimony relating to his supposed good intentions or non-culpable state of mind has no place in this trial. There is no balancing of evidence and no weighing of inferences at this point. Musk acted with scienter. Thus, having already made that determination, the above testimony serves only to confuse the jury and improperly reintroduce issues into the deliberation process that have already been decided as a matter of law. The jury should be instructed decisively on this point so that it does not mistakenly take into account irrelevant evidence of Musk's intentions or state of mind for the purposes of deciding whether Plaintiff has proven his Rule 10b-5 Claim.

In the same vein, Plaintiff removed "But you still must decide whether Mr. Musk acted knowingly" from the instruction because, for the purposes of deciding the Rule 10b-5 Claim, it makes no difference whether Musk acted recklessly or knowingly. Plaintiff agrees with the Court that the finding of recklessness "provides a helpful baseline from which the jury can consider whether Mr. Musk had a higher level of scienter" (ECF No. 573 at 45-46), but tasking the jury with deliberating "knowing" at this point on the verdict form serves no purpose. Scienter has already been established. The jury will complete Section A on the verdict form the same way (by ticking "yes") regardless of whether Musk acted recklessly or knowingly. Whether Musk acted knowingly relates *only* to the issue of allocation and/or apportionment of responsibility. Thus, as explained below, the instruction on "knowingly" should be moved to the

allocation/apportionment instruction where the distinction is actually required for the purposes of completing the verdict form.

**JURY INSTRUCTION NO. ____**

**APPORTIONMENT OF LIABILITY**

If you find that Plaintiff proved the 10b-5 claim against Tesla or Mr. Musk and/or the Section 20(a) claims against the other Defendants, then you must take two more steps.

First, you must determine whether any Defendant knowingly violated any securities law. A Defendant commits a knowing violation of the securities laws when (1) they make an untrue statement of material fact, with actual knowledge that the representation is false; and (2) persons are likely to reasonably rely on that misrepresentation. <u>The Court's prior determination that Mr. Musk acted recklessly does not prevent you from concluding that he knowingly violated the securities laws.</u>

Second, you must determine what percentage of responsibility, if any, to assign to each Defendant whom you have found to be liable (including those who have acted with reckless disregard). When apportioning responsibility, the percentages you calculate must total 100% among those parties you find responsible even if you believe that some of the Defendants are 0% responsible. In determining the percentage of responsibility, you must consider the nature of the conduct of each person you determine caused or contributed to the losses, if any, incurred by the Plaintiff and the nature and extent of the causal relationship between that person's conduct and the losses, if any, incurred by Plaintiff. If you determine that any person's actions and omissions did not proximately contribute to the losses incurred by Plaintiff, then you are to assign 0% responsibility to that person.

[15 U.S.C. §78u-4(f)]

**Plaintiff's Position**: The Court previously held that the "'knowingly standard of scienter is meaningfully informed by the 'recklessness' standard. In other words, the Court's finding that Mr. Musk acted with reckless disregard to the falsity of his statements provides a helpful baseline from which the jury can consider whether Mr. Musk had a higher level of scienter – whether he knew that his statements were untrue." ECF No. 573 at 45-46. This point has not been

1  communicated to the jury. Thus, as it presently stands, the jury is unaware that it is free to
2  conclude Musk acted knowingly. The additional sentence in the above proposed instruction
3  makes clear that the Court's summary judgment ruling does not foreclose this possibility, if the
4  jury finds that the evidence supports it. Further, by saving this instruction for the
5  allocation/apportionment issue, it helps cabin the issue to the only question on the verdict form
6  for which it matters, *i.e.*, Allocation of Responsibility (Section D).

[*Signature block on following page.*]

| | | |
|---|---|---|
| 1 | Dated: January 31, 2023 | Respectfully submitted, |
| 2 | | |
| 3 | | **LEVI & KORSINSKY, LLP** |
| 4 | | |
| 5 | | _s/ Adam M. Apton_ |
| | | Adam M. Apton (SBN 316506) |
| 6 | | Adam C. McCall (SBN 302130) |
| | | 75 Broadway, Suite 202 |
| 7 | | San Francisco, CA 94111 |
| | | Tel.: (415) 373-1671 |
| 8 | | Email: aapton@zlk.com |
| | | Email: amccall@zlk.com |
| 9 | | |
| 10 | | -and- |
| 11 | | Nicholas I. Porritt |
| | | Elizabeth K. Tripodi |
| 12 | | Alexander A. Krot III |
| | | LEVI & KORSINSKY, LLP |
| 13 | | 1101 30th Street N.W., Suite 115 |
| | | Washington, D.C. 20007 |
| 14 | | Tel.: (202) 524-4290 |
| | | Email: nporritt@zlk.com |
| 15 | | Email: etripodi@zlk.com |
| | | Email: akrot@zlk.com |
| 16 | | (admitted _pro hac vice_) |
| 17 | | |
| | | -and- |
| 18 | | |
| 19 | | Joseph Levi |
| | | Eduard Korsinsky |
| 20 | | LEVI & KORSINSKY, LLP |
| | | 55 Broadway, 10th Floor |
| 21 | | New York, New York 10006 |
| | | Tel.: (212) 363-7500 |
| 22 | | Email: jlevi@zlk.com |
| 23 | | Email: ek@zlk.com |
| | | (admitted _pro hac vice_) |
| 24 | | |
| | | _Attorneys for Plaintiff and Counsel for the Class_ |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

PLAINTIFF'S REQUEST FOR CLOSING JURY INSTRUCTIONS                                        CASE NO. 3:18-CV-04865-EMC