**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
amccall@zlk.com

*Attorneys for Plaintiff and Counsel for the Class*

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINAL VERDICT FORM** |
|---|---|

Defendants' exceptions to the Court's verdict form rehash arguments that have already been rejected by the Court, misstate the record, and would undoubtedly confuse the jury during deliberations if accepted.

***First,*** Defendants' objections present nothing new from their last proposal. Defendants again request a specific verdict form requiring the jury to be tasked with determining when the market learned the truth of the alleged misstatements as an extra step before deciding daily inflation (damages). This requirement is unnecessary and risks jury confusion. If the jury believes that all inflation was gone from the market post-August 13, then they can indicate that when deciding damages. The additional questions are unnecessary given that the jury will already be deciding how much artificial inflation existed on each day during the Class Period, as the Court indicated during the final pretrial conference hearing. Further, presenting the jury with these questions creates a risk that the jury will answer the questions in conflicting ways and, in turn, return an inconsistent verdict after the trial. The attempt to include these questions on the verdict form should be rejected.

Jury verdict forms in securities fraud cases require juries to decide only whether or not the plaintiff has proven his damages; they do not require specific findings from the juries regarding assumptions and/or calculations upon which the damages theories are based. For example, in *Jaffe v. Household International*, the jury was asked simply to decide whether the plaintiff's damages model "reasonably estimate[d]" the damages. *See* ECF No. 476-2, p. 41. Likewise, in *In re Vivendi Universal S.A. Securities Litigation*, the jury was asked, first, to decide only whether the plaintiff had "proven" the elements of his Section 10(b) claim and then, second, to specify the amount of inflation "caused" by the Section 10(b) violations on each day of the Class Period. *See* ECF No. 476-3 at 58. Plaintiff's expert, Dr. Hartzmark, explained his calculation of the amount of stock, option, and bond price inflation/deflation at trial. The jury will either find his testimony credible or not and, in turn, decide whether Plaintiff has "proven" his damages. There is no need to have the jury make specific findings with respect to the individual components and assumptions underlying Dr. Hartzmark's methodology, especially when doing so could lead the jury to return an inconsistent verdict and potentially necessitate a new trial. *See Asfall v. L.A. Unified Sch. Dist.*, Nos. 20-55599, 20-56259, 2022 U.S. App. LEXIS 19669, at *3 (9th Cir. July 15, 2022) ("when the jury's answers to interrogatories are inconsistent with the verdict, the district court may order a new trial"). For example, if the jury disagrees with one component of Dr. Hartzmark's methodology but finds overall that Plaintiff has "proven" his damages, that inconsistency would potentially be exploited to evade an unfavorable verdict and force a new trial.

Further, Defendants have offered no evidence or experts supporting the notion that the artificial inflation was removed prior to August 17, 2018. During trial, Dr. Hartzmark explicitly testified and provided both "qualitative and quantitative data to support" that the artificial inflation existed all the way through August 16, 2018 as the *New York Times* article was "really sort of the final revelation of the truth related to the fact that funding is not secured." Tr. 1692:12-17. Dr. Hartzmark similarly found that implied volatility remained until the publication of the *New York Times* article. Tr. 1696:10-1698:11. Indeed, Dr. Hartzmark relied on Mr. Brinkman's August 20, 2018 analyst report which relied on the *New York Times* article to determine that artificial inflation remained until August 17, 2018. Tr. 1693:2-1694:14. Mr. Brinkman released

an updated Analyst Report on August 14, 2018, the day after the blog post. However, it was not until August 20, 2018, the trading day following the *New York Times* article that Mr. Brinkman lowered his price target. This quantitative data supported Dr. Hartzmark's conclusion that artificial inflation remained until August 17, 2018. Defendants have offered no evidence or experts to rebut Dr. Hartzmark's well-supported conclusions.

In fact, Defendants have identified two experts that would purportedly go to these topics, but have refused to call them, as their testimony would support, rather than oppose Plaintiff's theory. Even after Musk's and Tesla's August 13, 2018 blogpost, Professor Fischel testified under deposition that the August 7, 2018 tweets "were still part of the total mix of information that was present on August 13th … I would say they're material." Fischel Dep. at 201:16-202:14. Indeed, Professor Fischel believes the impact of Musk's August 7, 2018 tweets persisted all the way to August 17, 2018 and the market reaction following Musk's *New York Times* interview. When asked if there was a connection between the stock price reaction seen on August 17, 2018 and the Musk August 7, 2018 tweets, Professor Fischel unambiguously replied: "yes, I think there's a connection because the August 17th interview that Musk gave comes into context of the events that were occurring at the time, which include the August 7th tweet – or tweets. So, yes, I think there's that connection." *Id*. at 160:17-161:2.

***Second***, Defendants' revised verdict form also attempts to confuse the jury by taking away information and instruction from the jury, which is especially problematic given that Dr. Hartzmark's demonstratives will not be admitted into evidence. The verdict form, as is, contains the most basic and straightforward of instructions for the jury to read and rely on. There is simply no merit to the argument that having the dates filled in "improperly put[s] a thumb on the scale in favor of the Plaintiff's position by not providing the jury with the option to exclude certain dates." Br. at 3. The jury instructions are clear that the jurors have the option and ability to award no damages.

Tellingly, Defendants cannot cite to a single case or verdict form where the jury was required to fill in the dates of the class period. In fact, in ***every*** verdict form submitted to this Court to date, the date of the class period was included when applicable, or simply has the jury

adopt Plaintiff's entire damage methodology. *See* ECF No. 476. Defendants' request should be seen as what it is, an intentional attempt to make the form more confusing to the jury. As the jury has heard the dates of the class period throughout the entire jury trial, there is simply no prejudice whatsoever to having the dates included in the verdict form.

Nor should the jury be required to determine whether Plaintiff has proven that the Black-Scholes-Merton model, the most cited and relied upon model for options that is used by Tesla, is reliable. Defendants misstate the record regarding Professor Heston's testimony. Professor Heston's testimony is not in response to a question about different strike prices, but how volatility it measured. Tr. 1596:14-1597:20. Indeed, Professor Heston indicated that the Black-Scholes formula "adjusts that" and that "it gives you one volatility number for options of all strike prices." Tr. 1594:2-4; 1612:17-1613:3. Indeed, Defendants notably did not ask Professor Heston about strike prices, nor did they even follow-up or ask Professor Heston about his testimony on strike prices. Instead, Defendants cherry-pick and mischaracterize a single line in Heston's testimony. This is clearly improper. Further, as the jury instructions show, damages need not be proven by a mathematical certainty. ECF No. 573, page 58-59. Defendants have not offered any proof, nor called a single expert to testify that the model is unreliable.

Defendants' edits to the verdict form should be denied in their entirety.

Dated: February 1, 2023

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

-and-

Nicholas I. Porritt
Elizabeth K. Tripodi
Alexander A. Krot III
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel.: (202) 524-4290
Email: nporritt@zlk.com
Email: etripodi@zlk.com
Email: akrot@zlk.com
(admitted *pro hac vice*)

-and-

Joseph Levi
Eduard Korsinsky
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Email: jlevi@zlk.com
Email: ek@zlk.com
(admitted *pro hac vice*)

*Attorneys for Plaintiff and Counsel for the Class*