**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
       amccall@zlk.com

*Attorneys for Plaintiff and Counsel for the Class*

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEFING CONCERNING DEFENDANTS' COSTS** |

Plaintiff respectfully submits the following supplemental briefing concerning Defendants' request for costs, as directed by the Court's Order dated March 10, 2023. Dkt. No. 686. Defendants submitted a proposed judgment requiring Plaintiff to pay costs. Defendants' request for costs is contrary to longstanding public policy objectives and, therefore, should be denied.

**I.      Awarding Costs Run Afoul of Longstanding Public Policy**

Rule 54 is not a mandatory provision. Instead, it grants ample discretion to the Court when deciding whether to grant costs. According to the Ninth Circuit, courts should consider the following factors when deciding to award costs. These factors are: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties. *See Ass'n of Mexican–American Educ. v. State of Cal.*, 231 F.3d 572, 592-93 (9th Cir. 2000) (en banc). This list is not exhaustive, but rather is a starting point for

analysis. *Id*. at 593. Importantly, the Court need not review all, or most, of the reasons, but merely needs to specify certain reasons for its decision to deny costs. *See id*. Here, all five reasons weigh in favor of denying costs.

### A. Substantial public importance of the case

First, this case is one of substantial public importance. Over 22 million individuals received Defendant Musk's tweet where he announced his consideration to take Tesla private. During the same time, hundreds of thousands, if not millions, of Tesla investors saw an impact to their financial portfolios. The U.S. Securities and Exchange Commission promptly commenced investigations and filed lawsuits in response to Musk's conduct. Without relitigating materiality, it is evident, purely based on public reaction, that there was a substantial public interest in this case, one that would impact millions of individuals. Notwithstanding this undisputed fact, the present matter is one of a select few securities fraud class actions that made it to trial. Since Congress passed the PSLRA in 1995, less than 30, out of thousands of actions that have been filed, ever made it to trial. Due to the public importance, fully litigating Plaintiff's claims was critical to protecting the interests of the entire class. As a result, the public importance weighs heavily in favor of denying costs.

### B. Closeness and difficulty of the issues in the case

Second, the question of liability was close, and this Court and the jury were tasked with evaluating several complex legal and factual issues. Summary judgment was entered by the Court on two of the key elements of the class claims against Defendants. Some of the remaining issues included: (1) whether Musk's tweets materially impacted Tesla's stock price; (2) whether Defendants sufficiently rebutted the "fraud-on-the-market" resumption; and (3) what loss was caused to investors by the Musk tweets. These were just some of the many complex issues presented before this Court and the jury. Neither party should be penalized for fully litigating these matters. Although Plaintiff did not prevail in this action, this Court recognized the merit of Plaintiff's claim when, for example, it granted Plaintiff partial summary judgment on the issues of falsity and scienter. *See* Dkt. No. 387. This weighs heavily in favor against awarding costs. *See Mexican–American Educ.*, 231 F.3d at 593 (upholding district court's decision to deny costs when

plaintiff's claims had merit and the issues in the case were "close and complex").

### C. Chilling effect on future, similar actions

Third, awarding costs to Defendants would have a substantial impact on future securities fraud class actions—namely disincentivizing plaintiffs and their attorneys to take meritorious claims to trial. *See Makaneole v. Solarworld Indus. Am., Inc.*, No. 3:14-CV-1528-PK, 2017 WL 2345706 at *3-4 (D. Or. May 10, 2017) ("denying costs in wage-claim class action because of the chilling effect it would have on future class action matters"). "[I]t is well recognized that Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing." *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975); *see Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964).

The Ninth Circuit's position on this issue applies equally to all types of class action lawsuits, including securities fraud matters. As noted above, securities class actions rarely go to trial. The reasons for this are many, including the substantial risk to the parties and the substantial cost associated with litigation cases like the present one. Congress specifically enacted the PSLRA to allow for a streamlined dispute resolution method for securities class action matters. But Congress never intended to prevent such cases from being litigated through trial. As a result, if this Court grants Defendants' request for costs, it would immediately cause a ripple effect— further stifling the prosecution of PSLRA cases and departing from the original intent of the legislation, which was to "preserv[e] investors' ability to recover on meritorious claims." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### D. Plaintiff's limited financial resources

A primary reason courts and Congress favor class actions to resolve securities fraud matters is the costs associated with litigating these large cases. In a case like this one, where there are thousands, if not millions, of unknown investors, requiring each investor to bring an individual action would place most of the litigants at a deep disadvantage and would overwhelm the federal judicial system. Due to each individual Plaintiff's lack of resources, the PSLRA allows law firms to bring class actions on behalf of many these investors. But this option does not limit the

PLAINTIFF'S SUPPLEMENTAL BRIEFING RE: COSTS                    CASE NO. 3:18-CV-04865-EMC
3

substantial cost associated with litigating the class action. As a result, the Court should not fault counsel for Plaintiff for attempting to streamline this dispute and lower the overall costs associated with it. Accordingly, this factor also weighs against granting costs.

### E.  Economic disparity between the parties

Finally, the economic disparity between the parties is great. As of March 2023, Tesla had a market capitalization of over $500 billion and Musk was the wealthiest individual in the entire world, worth more than $180 billion. Meanwhile, Plaintiff is a semi-retired individual investor. Even if the jury returned a full verdict against Defendants, it would have made a mere dent in their overall revenue and net worth. Meanwhile, the cost of litigating this matter was relatively equal for both parties, despite the significant economic disparity between the two. As a result, this factor weighs against granting costs.

## II.  Conclusion

Applying all five factors and considering Congress' explicit intent to streamline securities fraud cases through the PSLRA, it becomes evident that costs post-trial should be disfavored. The parties are almost never equal in economic stature, the plaintiff typically has substantially less resources, these cases often involve important public issues that include novel issues of law and fact, and granting costs would have a tremendous impact on future PSLRA cases by substantially reducing, if not eliminating, the amount of cases that go to trial. This was never Congress' intent. The Court should, therefore, deny costs.[1]

Dated: March 17, 2023                                Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 /s/ Adam M. Apton
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111

---

[1] If the Court enters Defendants' proposed judgment and awards costs, Plaintiff reserves all rights to oppose Defendants' motion to tax costs and/or file a motion to retax costs pursuant to Federal Rule of Civil Procedure 54 and Local Rule 54.

Tel.: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

-and-

Nicholas I. Porritt
Elizabeth K. Tripodi
Alexander A. Krot III
Kathy E. Ames Valdivieso
LEVI & KORSINSKY, LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel.: (202) 524-4290
Email: nporritt@zlk.com
Email: etripodi@zlk.com
Email: akrot@zlk.com
Email: kavaldivieso@zlk.com
(admitted *pro hac vice*)

-and-

Joseph Levi
Eduard Korsinsky
LEVI & KORSINSKY, LLP
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Email: jlevi@zlk.com
Email: ek@zlk.com
(admitted *pro hac vice*)

*Attorneys for Plaintiff and Counsel for the Class*