QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Alex Spiro (*appearing pro hac vice*)
   alexspiro@quinnemanuel.com
   Andrew J. Rossman (*appearing pro hac vice*)
   andrewrossman@quinnemanuel.com
   Ellyde R. Thompson (*appearing pro hac vice*)
   ellydethompson@quinnemanuel.com
   Jesse Bernstein (*appearing pro hac vice*)
   jessebernstein@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000

   Michael T. Lifrak (Bar No. 210846)
   michaellifrak@quinnemanuel.com
   Kyle Batter (Bar No. 301803)
   kylebatter@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

*Attorneys for Defendants Tesla, Inc., Elon Musk,*
*Brad W. Buss, Robyn Denholm, Ira Ehrenpreis,*
*Antonio J. Gracias, James Murdoch, Kimbal Musk,*
*and Linda Johnson Rice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE A NEW TRIAL** |
|---|---|

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

2

3  INTRODUCTION ...................................................................................................................1

4  BACKGROUND ...................................................................................................................2

5         A.      Plaintiff's Claims ...........................................................................................2

6         B.      The Court's Summary Judgment Order And Clarification..............................3

7         C.      The Trial..........................................................................................................4

8         D.      Plaintiff's Rule 50(a) Motion .........................................................................7

9         E.      Plaintiff's Instant Motion ...............................................................................7

10  ARGUMENT ........................................................................................................................8

11  II.      PLAINTIFF CANNOT BE GRANTED JUDGMENT AS A MATTER OF LAW .........8

12         A.      Plaintiff's Motion Should Be Denied Outright Because He Failed To Move On All
                   Elements Of The Rule 10b-5 Claim.................................................................8

13

14         B.      Plaintiff Is Not Entitled To Judgment As A Matter Of Law On The Two Elements
                   Of The Rule 10b-5 Claim He Did Move On....................................................10

15         C.      Plaintiff Did Not Move For And Should Not Be Granted Judgment As A Matter Of
                   Law Against Tesla Or The Director Defendants .............................................19

16

17  III.     THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR A NEW TRIAL...................20

18         A.      Plaintiff Did Not Move For And Therefore Cannot Be Granted A New Trial On
                   Liability............................................................................................................20

19         B.      Plaintiff Cannot Be Granted A New Trial On Liability Because He Did Not
                   Challenge The Jury's Verdict Or The Court's Instruction On Loss Causation .................20

20

21         C.      The Court Should Deny Plaintiff's Motion For A New Trial On Damages......................22

22  CONCLUSION......................................................................................................................25

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S JMOL AND ALTERNATIVE REQUEST FOR NEW TRIAL

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

### **Cases**

4

*Barnard v. Theobald*,
    721 F.3d 1069 (9th Cir. 2013) ...................................................................................9

5

6

*Blumhorst v. Pierce Mfg., Inc.*,
    2014 WL 1319717 (D. Idaho Mar. 28, 2014) ..........................................................10

7

*Carvelli v. Ocwen Fin. Corp.*,
    934 F.3d 1307 (11th Cir. 2019) ................................................................................14

8

*CSX Transp., Inc. v. Hensley*,
    556 U.S. 838 (2009).................................................................................................25

9

10

*Est. of Brown v. Lambert*,
    478 F. Supp. 3d 1006 (S.D. Cal. 2020) ....................................................................24

11

*Evoy v. CRST Van Expedited, Inc.*,
    430 F. Supp. 2d 775 (N.D. Ill. 2006) ...............................................................25, 27

12

*Freund v. Nycomed Amersham*,
    347 F.3d 752 (9th Cir. 2003) ...................................................................................10

13

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ..............................................................................20, 23

14

15

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014).................................................................................................18

16

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000) .................................................................................21

17

*Imperial Prod., Inc. v. Zuro*,
    1971 WL 16494 (D. Minn. July 1, 1971) ..................................................................9

18

*In re ChinaCast Educ. Corp. Sec. Litig.*,
    809 F.3d 471 (9th Cir. 2015) ...................................................................................21

19

20

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ...................................................................11

21

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) .................................................................................12

22

*In re REMEC Inc. Sec. Litig.*,
    702 F. Supp. 2d 1202 (S.D. Cal. 2010)....................................................................20

23

*In re Sci. Atlanta, Inc. Sec. Litig.*,
    754 F. Supp. 2d 1339 (N.D. Ga. 2010) ...............................................................20, 23

24

25

*Johnson v. Paradise Valley Unified Sch. Dist.*,
    251 F.3d 1222 (9th Cir. 2001) ............................................................................11, 15

26

*Krechman v. Cnty. of Riverside*,
    723 F.3d 1104 (9th Cir. 2013) ............................................................................10, 17

27

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016) .................................................................................10

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S JMOL AND ALTERNATIVE REQUEST FOR NEW TRIAL

*Madrigal v. Allstate Indem. Co.*,
   697 F. App'x 905 (9th Cir. 2017) ..............................................................................24

*Madrigal v. Allstate Ins. Co.*,
   215 F. Supp. 3d 870 (C.D. Cal. 2016) .................................................................24, 26, 27

*Marker v. City of San Jose*,
   2014 WL 5302175 (N.D. Cal. Oct. 16, 2014) ..............................................................9

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) ...............................................................................................14

*McAllister v. Hawaiiana Mgmt. Co.*,
   918 F. Supp. 2d 1044 (D. Haw. 2013), *aff'd*, 689 F. App'x 560 (9th Cir. 2017) ..........................9

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ..................................................................................9

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
   730 F.3d 1111 (9th Cir. 2013) ...............................................................................20

*Paradise Nw. Inc. v. Randhawa*,
   2014 WL 3867429 (E.D. Cal. Aug. 6, 2014) .............................................................11

*R. S. E., Inc. v. Pennsy Supply, Inc.*,
   523 F. Supp. 954 (M.D. Pa. 1981) .............................................................................8

*Reed v. Lieurance*,
   863 F.3d 1196 (2017) .....................................................................................13, 19

*Reeves v. Sanderson Plumbing Prod., Inc.*,
   530 U.S. 133 (2000) ..............................................................................11, 13, 15, 17

*Sagicor Life Ins. Co. v. Jang*,
   2022 WL 17328237 (C.D. Cal. Oct. 27, 2022) ...............................................8, 10, 19

*Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*,
   1995 WL 150089 (N.D. Cal. Mar. 28, 1995) ..............................................................9

*Sherwin-Williams Co. v. PPG Indus., Inc.*,
   2021 WL 5648019 (W.D. Pa. Dec. 1, 2021) .............................................................24

*Shimko v. Guenther*,
   505 F.3d 987 (9th Cir. 2007) ..................................................................................22

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976) .....................................................................................11, 12, 15

*United States v. 4.0 Acres of Land*,
   175 F.3d 1133 (9th Cir. 1999) ...............................................................................22

*United States v. Kaplan*,
   836 F.3d 1199 (9th Cir. 2016) ...............................................................................26

*United States v. Reyes*,
   660 F.3d 454 (9th Cir. 2011) ..................................................................................25

*United States v. Sine*,
   493 F.3d 1021 (9th Cir. 2007) ...............................................................................24

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
   546 U.S. 394 (2006)                    22

*Vollrath Co. v. Sammi Corp.*,
   9 F.3d 1455 (9th Cir. 1993) .....................................................................................8

*Winarto v. Toshiba Am. Elecs. Components, Inc.*,
    274 F.3d 1276 (9th Cir. 2001) ............................................................................................... 11, 12

**Statutory Authorities**

15 U.S.C. §§ 78j, 78 ........................................................................................................................ 2

**Rules and Regulations**

17 C.F.R. § 240.10b-5 ................................................................................................................ 2, 12

Fed. R. Civ. P. 50 ........................................................................................................................... 9

Fed. R. Civ. P. 54(a) ...................................................................................................................... 9

1

**ISSUES TO BE DECIDED**

2    I.  Should the Court deny Plaintiff's motion for judgment as a matter of law because (a) Plaintiff

3       failed to move on all elements of his Rule 10b-5 claim; (b) in any event, substantial evidence

4       supports that Plaintiff failed to meet his burden to prove the statements were materially false and

5       to prove fraud-on-the-market reliance; and (c) Plaintiff did not move for judgment as a matter of

6       law as to Tesla and the Director Defendants?

7    II.  Should the Court deny Plaintiff's motion for a new trial because (a) Plaintiff did not move for a

8       new trial on liability; (b) Plaintiff did not challenge the jury's verdict or the Court's instruction

9       on loss causation; and (c) Plaintiff's motion for a new trial on damages is contingent on the

10      Court granting his underlying motion for judgment as a matter of law on liability, and because

11      his argument as to instruction error is meritless?

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>INTRODUCTION</u>

2      Plaintiff's motion is baseless and should be denied.  The extremely diligent and attentive jurors

3  who sat through three weeks of trial correctly rejected Plaintiff's claims and Plaintiff offers no reason why

4  no reasonable jury could reach the result that nine jurors unanimously reached in a few hours.  But this

5  Court need not even reach Plaintiff's argument for judgment in its favor because Plaintiff did not move

6  for judgment on the Rule 10b-5 claim, but only on the elements of materiality and reliance.  As with

7  Plaintiff's Rule 50(a) motion, Plaintiff neglected to even request judgment on the required element of loss

8  causation.  Because Plaintiff bears the burden of proof as to each element of his claim, his failure to move

9  on loss causation bars the Court from entering judgment in his favor on liability under any circumstance,

10  particularly in light of the general verdict form.  Plaintiff also failed to move on the element of imputation

11  of scienter against Tesla or his Section 20(a) claim against the Director Defendants and therefore cannot

12  be granted judgment against them either.

13      In any event, the jury's swift verdict confirmed what the record makes clear: Plaintiff did not

14  present sufficient evidence to carry his burden against Mr. Musk, Tesla, and Tesla's Directors Brad W.

15  Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda

16  Johnson Rice.  The great weight of the evidence supports the jury's verdict.

17      While Plaintiff spends most of his motion on the question of materiality, a reasonable juror readily

18  could find Plaintiff failed to meet his burden to prove the materiality of the misrepresentations.  The true

19  state of affairs—that Mr. Musk had a "strong verbal commitment" from the Saudi Arabian Public Interest

20  Fund ("PIF") to fund a take-private and that funding such a transaction would otherwise not be an issue

21  either through his own personal wealth and/or through scores of interested investors—did not differ in a

22  material way that would be significant to a reasonable investor from his Tweets.  Documentary evidence,

23  the testimony of Mr. Musk's advisors, Tesla employees, and market analysts and investors (including

24  Plaintiff) confirmed this conclusion.  The jury's verdict was also supported by the fact that Tesla's stock

25  price ***increased*** when he revealed the full state of affairs to the market on August 13, 2018, and Plaintiff's

26  expert's own admission that Tesla's stock price would have reacted the same way on August 7, 2018 had

27  Mr. Musk simply announced that he was considering taking Tesla private and nothing more.

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S JMOL AND ALTERNATIVE REQUEST FOR NEW TRIAL

1        Beyond that, Plaintiff plainly failed to meet his burden to separate the price impact of the alleged

2   misrepresentations from the truth and other market effects, as Plaintiff's own expert acknowledged that

3   he had failed to even attempt to link the alleged misrepresentations to any loss.  As to reliance, the jury

4   could reasonably conclude that Plaintiff failed to prove all the elements of the fraud-on-the-market

5   presumption or, alternatively, that Defendants rebutted the presumption based on Plaintiff's expert's

6   admission that the price reaction would have been the same even absent the alleged misrepresentations.

7        Plaintiff's alternative motion for a new trial is similarly infirm.  At the threshold, Plaintiff did not

8   move for a new trial on liability—nor could he because he failed to move for judgment as a matter of law

9   on loss causation and cannot challenge the sufficiency of the evidence as to that element—but instead

10  seeks only a new trial on damages.  In other words, the Court can grant Plaintiff's request for a new trial

11  *only if* it first enters judgment on liability—*i.e.*, only if the Court were to rule that no reasonable jury could

12  have found in Defendants' favor on *every* element of Plaintiff's claim.  Plaintiff's failure to move on all

13  the elements of his Rule 10b-5 claim precludes the Court from doing so and in turn dooms Plaintiff's new

14  trial request.  Plaintiff's request fails on the merits in any event.  The great weight of the evidence does

15  not support overturning the jury's verdict on liability and Plaintiff's limited claims of instructional error—

16  which are not directed at any of the Court's substantive instructions on the elements—are unsupported,

17  waived, or harmless.

18       The Court should deny Plaintiff's incomplete, procedurally defective, and meritless motion in its

19  entirety and enter judgment in favor of Defendants.

20                                                   **BACKGROUND**

21      **A.**    **Plaintiff's Claims**

22       Lead Plaintiff Glen Littleton represents a class of individuals and entities who purchased or sold

23  Tesla stock, options, and other securities from 12:48 p.m. EST on August 7, 2018 to August 17, 2018 (the

24  "Class Period").  Plaintiff brought claims against Defendants Elon Musk and Tesla for violations of

25  Sections 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j, 78t) and SEC Rule 10b-5(b) (17

26  C.F.R. § 240.10b-5) when Mr. Musk published from his personal Twitter account two Tweets on August

27  7, 2018: "Am considering taking Tesla private at $420. Funding secured" and "Investor support is

28  confirmed. Only reason why this is not certain is that it's contingent on a shareholder vote."  Plaintiff also

1    brought a Section 20 claim against all members of Tesla's Board of Directors on the grounds that they

2    were controlling persons of Tesla.

3           **B.**     **The Court's Summary Judgment Order And Clarification**

4         On April 1, 2022, the Court granted partial summary judgment on the issues of falsity and scienter.

5    ECF No. 387. Specifically, the Court found that the following statements in Mr. Musk's August 7 Tweets

6    were false and made recklessly: "Funding secured" and "Investor support is confirmed. Only reason why

7    this is not certain is that it's contingent on a shareholder vote."

8         The Court declined to grant summary judgment for Plaintiff on the element of reliance under the

9    fraud-on-the-market presumption. *Id.* at 32. The Court found that there were disputed issues of material

10   fact on materiality and Defendants' entitlement to rebut the fraud-on-the-market presumption.

11   Specifically, the Court found that "there is evidence suggesting that the misrepresentations [at issue] did

12   not actually affect the market price" of Tesla securities because "there is evidence that, after the 8/13/2018

13   blog post, which served as a partial corrective disclosure, there was no decline or at least not a significant

14   decline in stock price; thus, arguably, the reaction to the tweets on 8/7/2018 was a response to Mr. Musk

15   contemplating taking Tesla private and not to statements that, *e.g.*, funding was secured or investor support

16   confirmed." *Id.*

17        Defendants moved for reconsideration of the Court's order. ECF No. 401. At the June 16, 2022

18   hearing on Defendants' motion for reconsideration, the Court made clear that it found only that the

19   statements "Funding secured" and "Investor support is confirmed. Only reason why this is not certain is

20   that it's contingent on a shareholder vote" were "false statement[s]…in a literal sense, not in a legal sense."

21   (6/16/22 Hr'ing Tr. at 4:14-23.) The Court made the same limited finding as to scienter. (*Id.* ("and

22   similarly with scienter, no reasonable juror could find that Mr. Musk did not know or didn't act in

23   disregard to the inaccuracy—the factual inaccuracy, not the legal").) And to avoid any doubt, the Court

24   stated "[t]o be clear, I did not find materiality with respect to the misrepresentation or a reckless disregard

25   or knowingly scienter with regard to any such material representation." (*Id.* at 5:4- 8.) In its Minute Order

26   following the hearing, the Court noted that "[a] statement can be factually false but not material." ECF

27   No. 446.

28

1        C.      **The Trial**

2        On January 17, 2023, the parties went to trial on Plaintiff's claims.  At trial, Plaintiff bore the

3  burden to prove each element of his Rule 10b-5 claim against Defendants Elon Musk and Tesla: (1) that

4  Elon Musk and/or Tesla made untrue statements of a material fact in connection with the purchase or sale

5  of securities, (2) Elon Musk and/or Tesla acted with the necessary state of mind, (3) Elon Musk and/or

6  Tesla used an instrument of interstate commerce, (4) Plaintiff justifiably relied on Elon Musk and/or

7  Tesla's untrue statements of material fact in buying or selling Tesla securities, and (5) loss causation.  ECF

8  No. 655 at 7.  In addition, as to Tesla, Plaintiff bore the burden to impute Mr. Musk's state of mind to

9  Tesla.  Plaintiff also bore the burden to prove his Section 20(a) claim against each of the Director

10  Defendants.    Consistent with the Court's summary judgment order, the jury was instructed "to assume

11  that the statements 'Funding secured' and 'Investor support is confirmed.  Only reason why this is not

12  certain is that it's contingent on a shareholder vote.' were untrue.  But you still must decide whether these

13  statements were of material facts. You must also assume Mr. Musk acted with reckless disregard for

14  whether the statements were true. But you must still decide whether he knew that the statements were

15  untrue." *Id.*

16        At trial, the jury heard evidence concerning Mr. Musk's Tweets and the underlying state of affairs

17  that the Tweets concerned.  Mr. Musk, Tesla's CFO Deepak Ahuja, and Mr. Musk's Chief of Staff Sam

18  Teller testified that the Saudi Arabian Public Investment Fund ("PIF") had, since January 2017, been

19  interested in funding Tesla going private.  The PIF held multiple meetings with Mr. Musk in 2017 in

20  which its Managing Director, Yasir Al-Rumayyan, repeatedly expressed interest in providing full

21  financing to take Tesla private.  In one of those meetings, Mr. Musk informed the PIF that if it was

22  interested in a take-private transaction, it should first purchase significant shares in Tesla stock on the

23  public market.

24        On July 31, 2018, Mr. Musk, Mr. Ahuja, and Mr. Teller attended a meeting with the Saudi PIF at

25  Tesla's Fremont factory.  During that meeting, the PIF revealed to Mr. Musk that it had acquired nearly

26  five percent of Tesla's stock—a multi-billion dollar holding.  During this meeting, the PIF reiterated its

27  interest in taking Tesla private.  The participants discussed the potential size, cost, and structure of the

28  transaction—with Mr. Musk expressing a preference that Tesla's existing shareholders be given the

DEFENDANTS' OPPOSITION TO PLAINTIFF'S JMOL AND ALTERNATIVE REQUEST FOR NEW TRIAL

1    opportunity to retain their shares in a private Tesla.  During the meeting, the PIF expressed that it "was

2    willing to act" and take all necessary steps to fund a take-private.  The participants at the meeting

3    understood that the PIF had made a "strong verbal commitment" to fund the take-private transaction, that

4    the PIF and Mr. Musk had a "handshake deal" in principle to take Tesla private, and that all that was left

5    was to work out the details.  (Exs. 82-83; Tr. 891:10-21 (Musk); 1195:6-1198:3 (Ahuja); 1892:22-1893:3

6    (Teller).)   Following the meeting, Mr. Musk emailed a bid to Tesla's Board of Directors to take the

7    company private at $420 per share (Ex. 81) and both Mr. Musk and Mr. Ahuja independently met with

8    the Board to discuss the transaction and the PIF's interest and commitment (Exs. 82, 83).  Following these

9    meetings, Mr. Musk arranged calls with lawyers and advisors, including Egon Durban of Silverlake

10   Capital, to discuss the take-private.  At no point did Mr. Musk, who was independently wealthy and held

11   tens of billions of dollars of stock in SpaceX, express any concern about funding.

12          On August 7, 2018, after learning that the *Financial Times* intended to publish an article revealing

13   details of Mr. Musk's meeting with the PIF, Mr. Musk published his first Tweet: "Am considering taking

14   Tesla private at $420.  Funding secured."  (Ex. 8.)  Tesla's shares rose on the announcement of Mr. Musk's

15   consideration.  Throughout the day, Mr. Musk published a series of Tweets outlining his preferred

16   structure.  Later that day, Tesla published a Blog Post from Mr. Musk which stated that "no final decision"

17   had been made, made clear that the transaction was in its early stages, articulated the potential structure,

18   and stated that any take-private process would be finalized by a shareholder vote.  (Ex. 12.)  Mr. Musk

19   retweeted and linked to the Blog Post in his second Tweet which stated "Investor support is confirmed.

20   Only reason why this is not certain is that it's contingent on a shareholder vote."  (Ex. 13.)  Prior to

21   publishing this Tweet, Mr. Musk had received messages of interest and support from major Tesla

22   investors, such as Ron Baron.  (Ex. 1008.)

23          At trial, the jury heard testimony that the term "funding secured" was not a financial term of art.

24   The witnesses had multiple interpretations of what the term meant.  Plaintiff Glen Littleton testified that

25   he understood it to be consistent with the fact that "the PIF had strongly expressed their support, and that

26   a deal—[Mr. Musk] thought a deal could be closed[.]"  (Tr. 373:5-14; 422:13-18.)  Investor Timothy Fries

27   testified that the term indicated that "there had been some vetting" of the potential funding source.  (Tr.

28   509:6-7 (Fries).)   Goldman Sachs' head of investment banking, Dan Dees, testified that he thought

1    "funding secured" meant "that [Mr. Musk] was in touch with the capital required."  (Tr. 1385:22-1386:3

2    (Dees).)

3         Following the publication of the Tweets, Mr. Musk worked with advisors Goldman Sachs and

4    Silverlake Capital to take steps to effectuate the take-private transaction.  Mr. Musk's advisors all testified

5    that there was ample funding available to take Tesla private and that funding would not be an issue.

6    Market analysts and investors, such as Owuraka Koney of Jennison, similarly testified that they believed

7    that "the money was out there for [Tesla] to go private."  (Koney Dep. Tr. 56:19-24.)

8         On August 13, 2018, Mr. Musk published a Blog Post that explained why he said "funding

9    secured."  (Ex. 53.)  In that Blog Post, Mr. Musk detailed his meeting with the Saudi PIF and explained

10   that while he did not have funding in hand, the PIF "strongly expressed [] support for funding a going

11   private transaction for Tesla," that the PIF was "eager to proceed," and that he "left the July 31st meeting

12   with no question that a deal with the [PIF] could be closed."  (*Id.*)  Plaintiff testified that the Blog Post

13   was consistent with funding secured.  (Tr. 422:13-18.)  Mr. Musk also explained the next steps, including

14   submitting a final proposal, an evaluation process by a special committee, approval of the plan, regulatory

15   approvals, and finally a shareholder vote.  (*Id.*)  Following the publication of the Blog Post, Tesla's stock

16   price marginally ***increased***.

17        On August 23, 2018, after meeting with his advisors, Mr. Musk informed the Board of Directors

18   that he would not be going forward on the take-private transaction.  (Ex. 101.)  Mr. Musk explained that

19   his decision was based on the fact that many of Tesla's investors preferred that the company remain public.

20   Mr. Musk's advisors, who also attended the meeting, confirmed that "there was more than enough interest

21   and funding to execute" the take private.  (*Id.*)  The following day, Mr. Musk published a Blog Post

22   announcing his decision.

23        Plaintiff called two experts—Dr. Michael Hartzmark and Dr. Steven Heston—to opine on the

24   options market, loss causation, and damages.  Dr. Hartzmark presented a so-called "leakage model."  On

25   cross-examination, Dr. Hartzmark admitted that he analyzed both Tweets together as "an interwoven

26   bundle" and did not separate out the price effect or market impact of the undisputedly true portion of Mr.

27   Musk's Tweet—that he was considering taking Tesla private at $420—from the alleged false statements.

28   (Tr. 1695:2-7.)  Dr. Heston, on cross-examination, admitted that had Mr. Musk only tweeted the true

Case No. 3:18-cv-04865-EMC

DEFENDANTS' OPPOSITION TO PLAINTIFF'S JMOL AND ALTERNATIVE REQUEST FOR NEW TRIAL

1  statement, the market would have had the "same exact movement" as it did when Mr. Musk posted the

2  Tweets at issue.  (Tr. 1617:21-1618:1.)

3      Following closing argument, the jury deliberated and returned a general verdict of not liable in

4  favor of Mr. Musk and Tesla on both Tweets.

5      **D.      Plaintiff's Rule 50(a) Motion**

6      Before the close of evidence, Plaintiff filed a Rule 50(a) motion for judgment as a matter of law.

7  Notably, Plaintiff did not move for judgment as to his entire claim, nor did he move for judgment as to

8  Tesla's imputed liability or his Section 20(a) claim against the Director Defendants.  ECF No. 657 at ii-

9  iii.  Instead, Plaintiff moved only for judgment as a matter of law on the issues of materiality, class-wide

10  reliance, and individual reliance.  *Id.*  Plaintiff did not move for judgment as a matter of law on loss

11  causation or instrument of interstate commerce.  *Id.*  In fact, Plaintiff's Rule 50(a) motion does not even

12  mention the terms "loss causation" or "interstate commerce" at all.  By failing to so move, Plaintiff waived

13  his right to seek judgment as a matter of law on those elements, his entire Rule 10b-5 claim, his claim

14  against Tesla, and his Section 20(a) claim.  Plaintiff also waived his right to challenge the sufficiency of

15  the evidence of those claims in a motion for a new trial.

16      **E.      Plaintiff's Instant Motion**

17      On March 7, 2023, Plaintiff filed his instant Motion for Judgment as a Matter of Law or in the

18  Alternative for a New Trial.  ("Mot.")  Although Plaintiff suggested that he was moving for judgment as

19  a matter of law "on the remaining 10b-5 elements" for liability, he only renewed his 50(a) motion as to

20  the issues of materiality, class-wide reliance, and individual reliance.  Mot. at ii.  He did not move for

21  judgment as a matter of law on the required elements of loss causation or instrument of interstate

22  commerce and thus did not move for judgment as to his Rule 10b-5 claim as a whole.  *Id.* at ii-iii.  Instead,

23  Plaintiff claimed without citing to any authority that "loss causation should be decided in [his] favor"

24  because he purportedly proved materiality, notwithstanding that materiality and loss causation are separate

25  elements of a Rule 10b-5 claim.  *Id.* at 20.  Plaintiff did not move for judgment as to Tesla's imputed

26  liability for the Rule 10b-5 claim or on his Section 20(a) claim.

27      Plaintiff also moved for a new trial.  However, Plaintiff did not move for a new trial on liability.

28  Instead, he simply sought a new trial on damages based only on instructional error.  Mot. at iii.  Plaintiff's

requested new trial is thus contingent on the Court granting judgment as a matter of law as to liability for his entire Rule 10b-5 claim, even though Plaintiff did not so move. *Id.* at ii-iii.

## ARGUMENT

## II.     PLAINTIFF CANNOT BE GRANTED JUDGMENT AS A MATTER OF LAW

### A.     Plaintiff's Motion Should Be Denied Outright Because He Failed To Move On All Elements Of The Rule 10b-5 Claim

Plaintiff did not move under Rule 50(b) on all elements of his Rule 10b-5 claim and therefore cannot be granted judgment as a matter of law.  The motion, like Plaintiff's Rule 50(a) motion before it, omits the elements of "instrument of interstate commerce" and, crucially, "loss causation."  But Rule 50 does not provide or allow for a "partial" judgment as a matter of law, and Plaintiff cites to no authority to the contrary.  Plaintiff cannot reverse the jury's verdict on liability without even attempting to show that he met his burden as to each element of his claim.  His piecemeal motion must therefore be denied in its entirety.

"[I]n order to find in favor of the plaintiff on a motion for judgment n. o. v., plaintiff must prove all of the elements of the offense, whereas a defendant may prevail on a motion for judgment n. o. v. if it can prove any element has not occurred."  *R. S. E., Inc. v. Pennsy Supply, Inc.*, 523 F. Supp. 954, 958 (M.D. Pa. 1981);[1] *Sagicor Life Ins. Co. v. Jang*, 2022 WL 17328237, at *5 (C.D. Cal. Oct. 27, 2022) ("Before the case was submitted to the jury, Plaintiffs moved for judgment in their favor only on the issue of malice…***Without reaching all elements of Plaintiffs' claim***, the Court cannot enter judgment as a matter of law.") (emphasis added).  Under the plain text of Rule 50, the Court is permitted to grant judgment as a matter of law only as to a ***claim*** or defense and not, as with a motion for summary judgment, an element or part of a claim.  *Compare* Fed. R. Civ. P. 50 (a)(1)(B) (the court may "grant a motion for judgment as a matter of law against the party on a ***claim or defense***") (emphasis added) *with* Fed. R. Civ.

---

[1]   A renewed motion for judgment as a matter of law was referred to as a judgment notwithstanding the verdict, or "JNOV," under a prior version of Rule 50.  The Ninth Circuit has made clear that "[t]he standard for granting the post-verdict motion is the same whether designated as a JNOV or a renewed motion for judgment as a matter of law."  *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1458 (9th Cir. 1993).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S JMOL AND ALTERNATIVE REQUEST FOR NEW TRIAL

P. 54(a) ("A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."); *see also Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*, 1995 WL 150089, at *2 (N.D. Cal. Mar. 28, 1995) (under the Federal Rules of Civil Procedure, a "[c]laim is defined as a set of facts which, if established, give rise to one or more enforceable legal rights"); *Imperial Prod., Inc. v. Zuro*, 1971 WL 16494, at *8 (D. Minn. July 1, 1971) ("Under the Federal Rules of Civil Procedure, a 'claim' is synonymous with a 'cause of action.'").

Thus, to be entitled to a judgment as a matter of law under Rule 50, Plaintiff must establish that the jury's verdict was not supported by substantial evidence as to ***each element*** of his Rule 10b-5 claim. *See e.g.*, *Marker v. City of San Jose*, 2014 WL 5302175, at *1 (N.D. Cal. Oct. 16, 2014) (denying plaintiff's motion for JMOL where substantial evidence supported jury's verdict as to one element, even if the court presumed plaintiff would prevail on all others); *McAllister v. Hawaiiana Mgmt. Co.*, 918 F. Supp. 2d 1044, 1062 (D. Haw. 2013) (denying JMOL where plaintiff failed to establish entitlement to judgment on causation element of retaliation claim), *aff'd*, 689 F. App'x 560 (9th Cir. 2017).  This requirement is particularly relevant where, as here, the jury returned a general verdict on liability—as Plaintiff himself had proposed—and the Court cannot identify which particular element the jury found the Plaintiff failed to prove.

Under Rule 10b-5, Plaintiff was required to prove the elements of (1) material falsity, (2) scienter, (3) use of an instrument of interstate commerce, (4) reliance, and (5) loss causation.  ECF No. 655 at 6, 15 ("Plaintiff must prove by a preponderance of the evidence that Mr. Musk and/or Tesla's misrepresentations caused their economic injury); *see also Metzler Inv. GMBH v. Corinthian Colleges*, Inc., 540 F.3d 1049, 1065 (9th Cir. 2008) (affirming dismissal of 10b-5 claim for failure to plead loss causation).  Accordingly, to prevail on his motion, Plaintiff must establish that the "evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict" as to all elements of his Rule 10b-5 claim, including loss causation. *Barnard v. Theobald*, 721 F.3d 1069, 1075 (9th Cir. 2013); *McAllister*, 918 F. Supp. 2d at 1062.  Because Plaintiff did not move on and offers no argument that "there is no legally sufficient basis for a reasonable jury to find for" Defendants on the element of loss causation, *Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1109-10 (9th Cir. 2013), he cannot be granted judgment on his Rule 10b-5 claim and his motion must be denied.  *See Sagicor*, 2022 WL 17328237, at *5.

Plaintiff recognizes that his failure to move on the elements of "loss causation" and "instrument of interstate commerce" is fatal to his motion and that he cannot establish liability under Rule 10b-5 as a matter of law.  But instead of forthrightly addressing this defect, Plaintiff attempts to waive it away by falsely claiming that "the other elements of Rule 10b-5" except for materiality "are undisputed," that "loss causation should be decided in Plaintiff's favor" because "the evidence at trial firmly supports that Musk's tweets were material," and that "if the Court agrees with Plaintiff on materiality, then the only issue necessary for a jury to decide is the amount of damages caused by the Tweets."  (Mot. at 20, 25, n. 8.)  In other words, Plaintiff brazenly asserts that loss causation—an element that he has never even moved on—should be presumed.

Plaintiff is wrong.  First, Plaintiff's claim that "loss causation" and "materiality" are the same element or require the same quantum of proof is incorrect as a matter of a law.  *Compare* ECF No. 655 at 10 (Material Misrepresentation Instruction) *with id.* at 15 (Loss Causation Instruction); *see also Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016) ("the ultimate issue" for the element of loss causation "is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss").  Second, and dispositively, Plaintiff never raised this argument in his Rule 50(a) motion and is therefore precluded from making it now.  *See e.g.*, *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) ("A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion.").  Indeed, not only is this unsupported and borderline frivolous argument not included in Plaintiff's Rule 50(a) motion, the term "loss causation" does not appear in the Rule 50(a) motion *at all*.  ECF No. 657.  Because Plaintiff waived his right to bring a post-trial motion for judgment as a matter of law on his Rule 10b-5 claim when he failed to so move under Rule 50(a), his motion should be denied.  *See Sagicor*, 2022 WL 17328237, at *5; *Blumhorst v. Pierce Mfg., Inc.*, 2014 WL 1319717, at *6 (D. Idaho Mar. 28, 2014) (denying Plaintiff's JMOL for failure to raise all issues on a Rule 50(a) motion).

**B.    Plaintiff Is Not Entitled To Judgment As A Matter Of Law On The Two Elements Of The Rule 10b-5 Claim He Did Move On**

Even if the Court entertained Plaintiff's purported motion for partial judgment as a matter of law— and it should not—it should still be denied because the record shows that there is substantial evidence

supporting the jury's verdict.  "A jury's verdict must be upheld if it is supported by substantial evidence." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).  "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Id.*; *see also Paradise Nw. Inc. v. Randhawa*, 2014 WL 3867429, at *2 (E.D. Cal. Aug. 6, 2014) ("To justify relief through a JMOL, there must be a 'complete absence of probative facts to support the conclusion reached so that no reasonable juror could have found for the nonmoving party.'").  On a motion for judgment as a matter of law, the Court "may not substitute its view of the evidence for that of the jury," *id.*, "must draw all reasonable inferences in favor of the nonmoving party," and "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).  A trial court can overturn the jury "**only if**, under the governing law, there can be but one reasonable conclusion as the verdict," *i.e.*, "there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001) (emphasis added).

          1.    <u>Plaintiff Failed To Meet His Burden To Establish The Statements Were Materially False</u>

To prove material falsity, Plaintiff had the burden to establish **both** that (1) there is a "substantial likelihood that a reasonable investor would consider the [misrepresented] fact important in deciding whether to buy or sell that security" and (2) the "misrepresentation gives a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." ECF No. 655 at 10; *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1259 (N.D. Cal. 2000) ("there must be a substantial likelihood that the disclosure of the omitted fact [or correction of the misstated fact] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available") (alteration in original); 17 C.F.R. § 240.10b-5.  In other words, Plaintiff had the burden to prove that the difference between the actual state of affairs and the misrepresentation would have been significant to a reasonable investor. *TSC Indus.*, 426 U.S. at 449; *In re McKesson*, 126 F. Supp. 2d at 1259; *see also* ECF No. 508 (Pretrial Order) at 26; *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017).  And, on this Motion, Plaintiff carries the additional burden of proving that "there can be but one reasonable

1  conclusion as to the verdict." *Winarto*, 274 F.3d at 1283.  Plaintiff cannot meet his burden because ample

2  evidence supports the jury's verdict here.

3      As to the first Tweet, there was substantial evidence upon which the jury could conclude that

4  Plaintiff failed to meet his burden to establish that "Am considering taking Tesla private at $420.  Funding

5  secured," differed in a material way from the true state of affairs and that the difference would have been

6  significant to the reasonable investor.  To start, there is no dispute that Mr. Musk was actually considering

7  taking Tesla private at $420 at the time he published the Tweet.  (*See e.g.*, Ex. 81.)  And the statement

8  "funding secured" was not materially different from the real state of affairs, and it certainly did not differ

9  in a way that would be significant to the reasonable investor.  There is substantial documentary and

10 testimonial evidence showing that—prior to the Tweets—the PIF made a "strong verbal commitment" to

11 Mr. Musk to take Tesla private and provide the necessary funding to do so.  (Exs. 82- 83; Tr. 891:10-21

12 (Musk); Tr. 1195:6-1198:3 (Ahuja).)  Although no price or percentage was discussed, the PIF made clear

13 to the attendees of the July 31 meeting it was willing to do whatever was necessary to fund the transaction

14 and that it had ample financing to do so.  (Tr. 744:16-746:10 (Musk); 1180:15-1184:11, 1185:16-1186:2,

15 1188:1-1189:19 (Ahuja); Exs. 82-83.)

16     A reasonable juror could therefore conclude that the actual state of affairs did not differ from the

17 term "funding secured" in a way that would be significant to the reasonable investor.  As multiple

18 witnesses testified, "funding secured" is "not a term of art" in the financial industry and was thus capable

19 of multiple interpretations.  (Tr. 1165:16-18 (Ahuja); 1385:22-1386:3 (Durban).)  But Mr. Littleton—who

20 represented to the jury that he possessed the characteristics necessary to be considered a "reasonable

21 investor"—testified that the state of affairs presented at trial that "the PIF had strongly expressed their

22 support, and that a deal—[Mr. Musk] thought a deal could be closed" was consistent with the phrase

23 "funding secured."  (Tr. 373:5-14; 422:13-18.)  So too did Plaintiff's witness Mr. Fries, who testified that

24 "'Funding secured' to me meant that there had been some—vetting, some critical review of those funding

25 sources," and Mr. Dees, who testified that he thought "funding secured" meant "that [Mr. Musk] was in

26 touch with the capital required."  (Tr. 509:6-7 (Fries); 1385:22-1386:3 (Dees).)  The parties presented the

27 jury with substantial evidence that a wide-range of investors'—from retail day traders to the head of

28 investment banking at one of the most prominent investment banks in the world—understanding of the

DEFENDANTS' OPPOSITION TO PLAINTIFF'S JMOL AND ALTERNATIVE REQUEST FOR NEW TRIAL

1   term "funding secured" was not materially different from the actual state of affairs in a manner that would

2   be significant to the reasonable investor.

3          But the jury did not have to rely on this testimony alone.  During the trial, the jury was presented

4   with evidence that, when Mr. Musk disclosed the details of the actual state of affairs regarding his meeting

5   with the PIF to the market in his August 13 Blog Post, ***Tesla's stock price increased*** —rather than falling

6   as one would have expected if the market viewed this disclosure as a revelation of a material

7   misrepresentation.  (Ex. 53; Tr. 1688:2-9 (Hartzmark).)  As the Court noted in its Summary Judgment

8   Order, at the very least, this stock price reaction allows a reasonable juror to reach the conclusion that the

9   initial market reaction to the Tweets "was a response to Mr. Musk contemplating taking Tesla private and

10  not to" the "statements that, *e.g.*, funding was secured or investor support confirmed."  ECF No. 387 at

11  32.  Because "[t]he standard for judgment as a matter of law under Rule 50(a) 'mirrors' the summary

12  judgment standard," *Reed v. Lieurance*, 863 F.3d 1196, 1204 (2017), and the Court is required to "draw

13  all reasonable inferences in favor of the nonmoving party," *Reeves*, 530 U.S. at 150, ***this fact alone***

14  precludes the Court from granting judgment as a matter of law for Plaintiff on whether the statement

15  "funding secured" was materially false.[2]

16         Substantial evidence also supported the jury's verdict that Plaintiff failed to meet his burden to

17  prove that the second Tweet, "Investor support confirmed.  Only reason why this is not certain is that it's

18  contingent on a shareholder vote," was materially false.  As to the first sentence, the record is clear that

19  Mr. Musk had support from the PIF ***and*** that he had already received confirmation of support for his

20  contemplated transaction from Ron Baron, a significant Tesla investor.  (Ex. 1008.)  As the Jury

21  Instructions and case law provide, the jury "must decide whether something was material based on the

22  circumstances as they existed at the time of the statement."  ECF No. 573 at 40; *see also Matrixx*

23  *Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 43 (2011) (assessing materiality of statement "requires

24  consideration of the source, content, and context of the [statement]"); *Carvelli v. Ocwen Fin. Corp.*, 934

25

26  _____

27  [2]  On top of that, the evidence shows that Mr. Musk had "ample funding available" to take Tesla private

28  even without the PIF, including his personal holdings (including tens of billions of dollars in SpaceX
    stock) (Tr. 740:10-741:12 (Musk)) and significant interest from other outside investors. (Exs. 101; 201.)

1   F.3d 1307, 1321 (11th Cir. 2019) ("the materiality inquiry includes consideration of the context in which

2   a statement was made and the circumstances in which a reasonable investor would have heard it").  The

3   second Tweet retweeted and linked to Tesla's August 7 Blog Post, which provided important context to

4   the Tweet.  (Ex. 13.)  The August 7 Blog Post reaffirmed Mr. Musk's statement that he was only

5   "considering" a take private and that the transaction was preliminary and required a number of steps and

6   decisions before it would be taken to a shareholder vote.  (Ex. 12.)  Additionally, the second Tweet was

7   sent *after* Mr. Musk sent a series of Tweets articulating his envisioned structure.  (Exs. 8-11.)  Thus, read

8   in context—as the statement must be, *Matrixx*, 563 U.S. at 43—no reasonable investor would interpret

9   Mr. Musk's Tweet as an announcement that the proposal would go straight to a shareholder vote.  Plaintiff

10  himself testified as such.   (Tr. 389:21-24; 390:21-23; 398:14-399:1 (Littleton).)   When Mr. Musk

11  disclosed to the market on August 13 the additional steps necessary to take Tesla private (Ex. 53), Tesla's

12  stock price increased—again proving that the difference between the Tweet and the true state of affairs

13  did not "significantly alter[] the 'total mix' of information made available."  (Tr. 1688:2-9 (Hartzmark));

14  *see TSC Indus.*, 426 U.S. at 449.  And again, as the Court previously found on summary judgment, the

15  stock price reaction to the August 13 Blog Post alone supports a reasonable inference that investors did

16  not consider the statement "investor support confirmed"—as opposed to the undisputedly true statement

17  that Mr. Musk was considering taking Tesla private—important in deciding whether or not to buy Tesla

18  stock, and it was thus not material.  *See* ECF No. 387 at 32; *Reeves*, 530 U.S. at 150.

19      Faced with a record replete with substantial evidence supporting a reasonable conclusion that

20  Plaintiff failed to meet his burden to prove material falsity and a deferential standard that requires the

21  Court to draw all reasonable inferences in Defendants' favor, Plaintiff has no choice but to attempt to

22  rewrite the law.  ***First***, Plaintiff tries to shift the burden to Defendants to prove that the Tweets "were

23  immaterial."  Mot. at 16, 18.  But Defendants had no such burden at trial, let alone do they have such a

24  burden in opposition to Plaintiff's motion for judgment as a matter of law.  ECF No. 655 at 10.  The

25  relevant inquiry is not whether Defendants proved the Tweets were immaterial, but whether there is

26  substantial evidence to support the jury's conclusion that Plaintiff failed to meet his burden at trial.  *See*

27  *Paradise Valley*, 251 F.3d at 1227.  As discussed above, there is ample evidence to support the jury's

28  finding.  ***Second***, Plaintiff contends that judgment as a matter of law should be granted because the Tweets

DEFENDANTS' OPPOSITION TO PLAINTIFF'S JMOL AND ALTERNATIVE REQUEST FOR NEW TRIAL

1   as a whole were "material." Mot. at 12-13. That misstates the law and the Plaintiff's burden in this case.

2   Plaintiff was required to prove that Mr. Musk's "misrepresentation[s]" were materially false. ECF No.

3   655 at 10. Accordingly, Plaintiff had to separate the undisputedly true statement—"Am considering

4   taking Tesla private at $420"—from the allegedly false statements and prove that the representations in

5   those specific statements differed from the actual state of affairs in a manner that would have been

6   significant to a reasonable investor. *Id.*; *In re McKesson*, 126 F. Supp. 2d at 1259. Plaintiff made the

7   tactical decision not to do so and instead treated the Tweets—including the true statement—as an

8   "interwoven bundle." (Tr. 1732:21-1733:6; 1735:4-9 (Hartzmark).) Plaintiff's failure to offer evidence

9   that the individual false statements moved the market provided the jury with substantial evidence to

10  conclude that Plaintiff did not meet his burden to prove that ***those statements*** alone were material.

11  Numerous witnesses testified that the only material statement was Mr. Musk's announcement of his

12  consideration. (*See* Tr. 1159:8-10 (Ahuja); 1477:13-19 (Denholm).) And Dr. Heston, Plaintiff's own

13  expert**, *affirmed*** that conclusion by testifying that the market would have reacted the same way had Mr.

14  Musk only tweeted "Am considering taking Tesla private at $420." (Tr. at 1617:21-1618:1.)

15      Plaintiff's remaining arguments similarly fall flat. Plaintiff contends that evidence of investor and

16  analyst reactions to the Tweets conclusively prove that the ***misrepresentations*** were materially false. Mot.

17  at 13. This argument rests on cherrypicked evidence and ignores the testimony of one of the analysts, Mr.

18  Koney of Jennison, who stated that he "was never concerned about [Tesla's] ability to go private" because

19  "the money was out there for them to go private" and Tesla and Mr. Musk "had the capacity to do it and

20  also enough cash available" to execute the deal. (Koney Dep. Tr. 56:20-24, 58:1-2, 108:19-24, 158:15-

21  17.) Thus, even accepting Plaintiff's argument that "analysts serve as a proxy for the market" as true,

22  there was substantial evidence for the jury to find that at least some of these market proxies concluded

23  that the statements "funding secured" and "investor support confirmed" did not differ in a material way

24  from the true state of affairs in a way that mattered to their investment decisions.

25      Nor does Plaintiff establish that the evidence compels a verdict that the alleged misstatements were

26  materially false. Plaintiff attempts to advance this argument by narrowly defining "funding secured" to

27  mean a "written commitment for secured funding." Mot. at 14. But the Court already rejected this

28  interpretation (ECF No. 387 at 13), and there is substantial evidence that the reasonable investor

understood the term to be much broader: Mr. Musk was either "in touch with the capital required" to fund the transaction, that the "PIF had strongly expressed their support" and that Mr. Musk thought a deal could be closed, or that there was some sort of "verbal commitment" to fund the transaction.  (*See, e.g.,* Tr. 422:13-18 (Littleton); 1454:8-9 (Dees); Koney Dep. Tr. at 22:3-6.).  This understanding of "funding secured" was consistent with the evidence presented concerning the state of affairs following Mr. Musk's July 31, 2018 meeting with the PIF.  (Tr. 744:16-746:10 (Musk); 1180:15-1184:11, 1185:16-1186:2, 1188:1-1189:19; 1195:6-1198:3 (Ahuja); 1889:8:1893:10 (Teller); Exs. 82-83.)  Plaintiff also argues that the jury could not reasonably conclude that he failed to meet his burden because Mr. Musk "did not know the exact amount of funding needed for the going private transaction" at the time he published the Tweets. Mot. at 15.  But the evidence presented at trial supports the reasonable inference that—notwithstanding the fact that the precise cost of the transaction had not been determined—there was ample funding available to take Tesla private.  For instance, Mr. Ahuja testified that the PIF understood that it may need to fund as much as 50 percent or more of Tesla's market cap and Mr. Dees testified that Goldman Sachs concluded that "there was ample funding available for the transaction" and that "funding would not be an issue." (Tr. 1183:1-12 (Ahuja); 1454:6-18, 1461:4-16 (Dees); Ex. 101.)  These facts were consistent with the understanding of investors and analysts—Plaintiff's so-called "prox[ies] for the market"—who testified that "the money was out there for [Tesla] to go private." (Koney Dep. Tr. 56:20-24, 58:1-2, 108:19-24, 158:15-17.)  Finally, Mr. Musk testified that at worst, he could have used his own considerable wealth and SpaceX stock to fund the transaction if need be.  (Tr. 740:10-741:12 (Musk).)  Mr. Musk's unrebutted testimony provides further substantial evidence from which the jury could reasonably conclude that Tweets did not differ from the true state of affairs in a way that would be significant to the reasonable investor.

Thus, "draw[ing] all reasonable inferences in favor of the nonmoving party," *Reeves*, 530 U.S. at 150, as the Court must, more than substantial evidence supports the jury's verdict.

2.    Plaintiff Failed To Meet His Burden To Prove Fraud-On-The-Market Reliance

Plaintiff also has failed to show that "there is no legally sufficient basis for a reasonable jury to find for" Defendants on the element of reliance.  *See Krechman v. Cnty. of Riverside*, 723 F.3d 1104, 1109-10 (9th Cir. 2013); ECF No. 655 at 13-14.  To prove reliance, Plaintiff had the burden to establish

DEFENDANTS' OPPOSITION TO PLAINTIFF'S JMOL AND ALTERNATIVE REQUEST FOR NEW TRIAL

1   the fraud-on-the-market presumption, ECF No. 655 at 13, by proving that "(1) the alleged

2   misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market,

3   and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth

4   was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014) ("*Halliburton II*").

5          As an initial matter, the jury could reasonably conclude that Plaintiff failed to prove all the

6   elements of the fraud-on-the-market presumption.  As discussed at pages 11-16, *supra*, there is substantial

7   evidence to support the jury's conclusion that Plaintiff failed to meet his burden to establish that the

8   misrepresentations at issue—"Funding secured" and "Investor support confirmed. Only reason why this

9   is not certain is that it's contingent on a shareholder vote."—were materially false.

10         There is also substantial evidence to support a conclusion that Defendants rebutted the

11  presumption.  Defendants could rebut the fraud-on-the-market presumption "by proving by a

12  preponderance of the evidence that the ***misrepresentation*** did not affect the market price of Tesla's stock."

13  ECF No. 655 at 13-14; *Halliburton II*, 573 U.S. at 278-29 (emphasis added).  First, Plaintiff failed to

14  disaggregate the price impact of the misrepresentations from the true statements in the Tweet, and the jury

15  accordingly had substantial evidence to conclude that the statement "Am considering taking Tesla private

16  at $420" and ***not*** the misrepresentations caused the price of Tesla securities to move.  Second, Plaintiff's

17  expert conceded that had Mr. Musk only tweeted the undisputedly true statement, one could expect the

18  "same exact movement" in the price of Tesla's securities. (Tr. 1617:21-1618:1 (Heston).)  Since the price

19  movement would have been the same absent the misrepresentations, this admission alone provides

20  substantial evidence that the "misrepresentations did not affect the market price of Tesla's stock."  *See*

21  ECF No. 655 at 13-14.  Finally, Tesla's stock price ***increased*** after Mr. Musk revealed that the PIF

22  "strongly expressed [its] support for funding a going private transaction for Tesla at this time," was "eager

23  to proceed," and that a final proposal still needed Special Committee and regulatory approvals before any

24  plan was put to a shareholder vote.  (Ex. 53; Tr. 1688:2-9 (Hartzmark).)  That Tesla's stock price rose

25  after the correction of the Tweets and disclosure of this information—instead of plummeting as would be

26  the case after a revelation of fraud—provides substantial evidence that the misrepresentations did not

27  affect the market price and therefore rebuts the presumption.  *Halliburton II*, 573 U.S. at 278-29.  Indeed,

28  the Court previously found on Summary Judgment that the stock price increase on August 13 supports an

DEFENDANTS' OPPOSITION TO PLAINTIFF'S JMOL AND ALTERNATIVE REQUEST FOR NEW TRIAL

1    inference that the misrepresentations did not affect the price of Tesla's stock, ECF No. 387 at 32, and

2    should therefore hold again that this provides substantial evidence to support the jury's conclusion that

3    Defendants met their burden of persuasion to rebut the fraud-on-the-market presumption.  *See Reed*, 863

4    F.3d at 1204.

5         Finally, there is substantial evidence to support the jury's verdict on individual reliance.

6    Defendants were entitled to rebut the presumption of Mr. Littleton's reliance by proving that "he did not

7    actually rely on the integrity of the market price when he purchased Tesla securities."  ECF No. 655 at 13.

8    There is substantial evidence for the jury to reach that verdict as Mr. Littleton's testimony and documents

9    establish that he understood that the market did not accurately reflect the value of Tesla's securities due

10   to the stock's high volatility and attention from short sellers.  (*See e.g.*, Ex. 430-2).

11                    3.    Plaintiff Failed To Meet His Burden To Prove Loss Causation

12        As discussed at pages 8-10, *supra*, Plaintiff did not move for judgment as a matter of law on the

13   element of loss causation or offer any argument that the jury's verdict is not supported by substantial

14   evidence with regard to that element.  By failing to move, Plaintiff has waived that argument and cannot

15   be entitled to judgment as a matter of law on his 10b-5 claim.  *See Sagicor*, 2022 WL 17328237, at *5.

16   For the sake of completeness and to preserve the record, however, Defendants note that there is in any

17   event substantial evidence demonstrating that Plaintiff did not meet his burden to prove loss causation.

18        To prove loss causation, Plaintiff had the burden to prove that "the misrepresentations played a

19   substantial part in causing the injury or loss that Plaintiff suffered.  Plaintiff must reasonably distinguish

20   any security-price reaction to the misrepresentations at issue from the market's reaction to other factors,

21   such as other information or events that could affect the prices of Tesla's securities."  ECF No. 655 at 15.

22   Plaintiff was required to disaggregate or "separate any stock-price reaction to a disclosure of the allegedly

23   concealed information from the market's reaction to other information affecting Tesla's securities prices."

24   ECF No. 494 at 12 ("Because there are a 'tangle of factors' that may affect stock price, 'evidence that

25   certain misrepresented risks are responsible for a loss must reasonably distinguish the impact of those

26   risks from other economic factors.'" (citing *Nuveen Mun. High Income Opportunity Fund v. City of

27   Alameda, Cal*., 730 F.3d 1111, 1119 (9th Cir. 2013).).

28

1    Here, Plaintiff failed to isolate the impact of the allegedly false statements from the true statement

2    that Mr. Musk was considering taking Tesla private at $420.  *See In re REMEC Inc. Sec. Litig.*, 702 F.

3    Supp. 2d 1202, 1273-74 (S.D. Cal. 2010) (failure "to separate the loss caused by the disclosure of

4    corrective information (new, negative, company-specific, revealing a prior misrepresentation or omission)

5    from loss caused by the disclosure of other company-specific information" mandated exclusion of loss

6    causation expert); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 421 (7th Cir. 2015) ("[I]n

7    order to prove loss causation, plaintiffs in securities-fraud cases need to isolate the extent to which a

8    decline in stock price is due to fraud-related corrective disclosures and not other factors.").  Plaintiff's

9    expert, Dr. Hartzmark, admitted he did nothing to isolate how much of the purported inflation he

10   calculated on August 7, 2018 was due to Mr. Musk's undeniably true statement that he was "considering

11   taking Tesla private at $420" from the allegedly false statement "funding secured."  (Tr. 1732:21-1733:2;

12   1735:4-9 (Hartzmark).).  Accordingly, there was substantial evidence for the jury to conclude that Plaintiff

13   failed to meet his burden on loss causation.  *See In re Sci. Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339,

14   1379 (N.D. Ga. 2010) (expert's "failure to disentangle the effect of the new [fraudulent] information"

15   from the confounding "negative characterization" of truthful non-fraudulent news did not enable jury to

16   "determine how much, if any, of Plaintiffs' loss is attributable to Defendants'" misrepresentations), *aff'd*,

17   489 F. App'x 339 (11th Cir. 2012).  Plaintiff's motion should be denied on this basis alone.

18       **C.    Plaintiff Did Not Move For And Should Not Be Granted Judgment As A Matter Of
              Law Against Tesla Or The Director Defendants**

19

20       Plaintiff's motion for judgment as a matter of law and a new trial should be denied as to his Rule

21   10b-5 claim against Tesla and his Section 20 claim against Director Defendants Buss, Denholm,

22   Ehrenpreis, Gracias, Murdoch, Kimbal Musk, and Johnson Rice for the additional reason that he failed to

23   move on these specific claims against them.

24       In order to establish his Rule 10b-5 claim against Tesla, Plaintiff was required to prove that Mr.

25   Musk was "acting within the scope of his authority while tweeting the statements at issue on August 7."

26   ECF No. 655 at 10; *see also In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 475 (9th Cir. 2015).

27   Plaintiff did not move on imputation of scienter and offered no argument that the jury lacked substantial

28   evidence to conclude that Mr. Musk was not acting within the scope of his authority when he issued his

1    Tweets.  To the contrary, there is ample evidence that Mr. Musk was acting as a bidder, independent of

2    his role as Tesla CEO.  (Tr. 860:16-21 (Musk); 1225:14-24 (Gracias); 1479:20-1480:8 (Denholm).).

3    Judgment cannot be entered against Tesla for that reason alone.

4          Plaintiff also asserted Section 20 claims against the Director Defendants.  Under Section 20,

5    Plaintiff was required to prove that the Directors were "controlling persons" who possessed the "power to

6    direct the management or policies" of Tesla.  ECF No. 655;  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057,

7    1067 n. 13 (9th Cir. 2000).  Plaintiff did not move on his Section 20 claims and has not presented any

8    argument that the Directors were controlling persons who were "active in the day-to-day affairs" of the

9    company and "exercised any specific control over the preparation and release" of the statements giving

10   rise to the predicate Rule 10b-5 claim.  *Howard*, 228 F.3d at 1067.  Nor did Plaintiff move on or argue

11   that the jury lacked sufficient evidence to find that the Directors met their burden to prove their affirmative

12   defense of good faith.  *Id*.  Judgment as a matter of law cannot be entered against the Director Defendants

13   either.

14   **III.   THE COURT SHOULD DENY PLAINTIFF'S MOTION FOR A NEW TRIAL**

15        **A.    Plaintiff Did Not Move For And Therefore Cannot Be Granted A New Trial On**
           **Liability**
16

17        Plaintiff's motion for a new trial is narrow.  Instead of requesting a new trial on liability as an

18   alternative to his Rule 50(b) motion, Plaintiff only seeks a new trial on damages should the Court grant

19   his incomplete motion for judgment as a matter of law.  Mot. at ii-iii, 20 ("A new trial should be ordered

20   for the purpose of having a jury decide the damages caused by Musk's tweets.").  Plaintiff has therefore

21   waived any request for a new trial on liability.  Should the Court deny Plaintiff's motion for judgment as

22   a matter of law—and it must—it should also deny the motion for a new trial on damages as moot.

23        **B.    Plaintiff Cannot Be Granted A New Trial On Liability Because He Did Not Challenge**
           **The Jury's Verdict Or The Court's Instruction On Loss Causation**
24

25        As to loss causation, Plaintiff does not challenge the jury's verdict for sufficiency of the evidence

26   and does not assert any instructional error as to that element.  Thus, his New Trial Motion should be

27   denied.

28

1    "Rule 59 does not specify the grounds on which a motion for a new trial may be granted, but allows

2    new trials to be granted for historically recognized grounds." *Shimko v. Guenther*, 505 F.3d 987, 993 (9th

3    Cir. 2007) (quotations omitted).  "The trial court may grant a new trial only if the verdict is contrary to

4    the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of

5    justice."  *Id.*  But "a district court may not grant or deny a new trial merely because it would have arrived

6    at a different verdict."  *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999).  "Where

7    the jury's verdict is not against the clear weight of the evidence, a district court abuses its discretion in

8    ordering a new trial."  *Id.* at 1143.

9        Crucially, a party's "failure to comply with Rule 50(b) forecloses its challenge to the sufficiency

10   of the evidence" in its request for a new trial.  *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S.

11   394, 404 (2006).  Here, Plaintiff failed to move for judgment as a matter of law on the element of loss

12   causation and is thus barred from seeking a new trial on the grounds that the jury's verdict is contrary to

13   the weight of the evidence.  *See id.*

14       Plaintiff does not and cannot establish that the jury's verdict is against the weight of the evidence

15   in any event.  The only argument Plaintiff offers as to loss causation is his conclusion that "the evidence

16   at trial firmly supports that Musk's tweets were material and, in turn, the element[] of…loss causation

17   should be decided in Plaintiff's favor."  Mot. at 20.  This is plainly insufficient.  First, as a matter of law,

18   loss causation and materiality are two separate elements with separate requirements.  *Compare* ECF No.

19   655 at 10 *with id.* at 15.  Second, Plaintiff's expert did not disaggregate the price impact of Mr. Musk's

20   true statement that he was considering taking Tesla private from the technically false statements and

21   therefore failed to "reasonably distinguish any security-price reaction to the misrepresentations at issue

22   from the market's reaction to other factors."  ECF No. 655 at 15; *Glickenhaus*, 787 F.3d at 421; *In re Sci.*

23   *Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d at 1379.  The evidence presented at trial shows that Plaintiff

24   failed to meet his burden—he does not argue otherwise—and therefore supports the jury's verdict that

25   Defendants are not liable for a Rule 10b-5 violation. And because Plaintiff also fails to allege that the

26   Court's Loss Causation instruction was legally erroneous or prejudicial, he has no grounds for entitlement

27   to a new trial on that element.  The jury's verdict should therefore remain undisturbed.

28

1      Finally, even if the Plaintiff's failure to challenge any aspect of the element of loss causation was

2  not dispositive—and it is—Plaintiff cannot establish that the jury's verdict on liability was "against the

3  clear weight of the evidence" because Plaintiff also had to prove materiality and reliance.  *See 4.0 Acres*

4  *of Land*, 175 F.3d at 1139. As discussed above, ample evidence at trial supported rejecting Plaintiff's

5  claim because Mr. Musk's statements were not materially false: Mr. Musk had a handshake deal and

6  verbal commitment from the PIF to fund a take-private transaction, Mr. Musk had ample funding

7  available—from third parties and his own personal wealth—to finance the transaction, and the market

8  reaction to the August 13 Blog Post (as well as testimony of analysts, investors, and Plaintiff) establish

9  that the difference between the true state of affairs and the Tweets was not significant to a reasonable

10  investor's decision to buy or sell Tesla securities.  Moreover, Plaintiff's own expert destroyed Plaintiff's

11  ability to prove materiality and reliance when he admitted that the market would have the same reaction

12  had Mr. Musk only tweeted the undisputedly true statement that he was considering taking Tesla private.

13  The clear weight of the evidence supported the jury's determination that Defendants were not liable;

14  granting a new trial would be an abuse of discretion in this case.

15      **C.    The Court Should Deny Plaintiff's Motion For A New Trial On Damages**

16      Plaintiff's Motion for a New Trial on damages is defective from top to bottom and should be

17  summarily rejected by the Court.  Plaintiff's Motion presumes and is contingent on the Court granting his

18  underlying Motion for Judgment as a Matter of Law on liability.  But for the reasons discussed above, the

19  Court cannot grant Plaintiff judgment on liability for his Rule 10b-5 claim because he waived any

20  argument that he is entitled to judgment as a matter of law on the elements of loss causation and interstate

21  commerce.  The Motion must therefore be denied for that reason alone.

22      Plaintiff also claims he is entitled to a new trial due to instructional error.  This claim is similarly

23  meritless.  Where, as here, the party seeking a new trial "alleges an error in the formulation of the jury

24  instructions, the instructions are considered as a whole and an abuse of discretion standard is applied to

25  determine if they are misleading or inadequate."  *Est. of Brown v. Lambert*, 478 F. Supp. 3d 1006, 1027-

26  28 (S.D. Cal. 2020).  "[E]ven an erroneous instruction is harmless if it is more probable than not that the

27  jury would have reached the same verdict had it been properly instructed.  In making that determination,

28  courts look beyond the instructions to the proceedings as a whole."  *Madrigal v. Allstate Ins. Co.*, 215 F.

1  Supp. 3d 870, 910 (C.D. Cal. 2016), *aff'd sub nom. Madrigal v. Allstate Indem. Co.*, 697 F. App'x 905

2  (9th Cir. 2017).  If the Court's instructions "adequately allowed" a party "to argue its theory of the case

3  to the jury without unduly prejudicing either party," a new trial is not required.  *Id.* at 911.

4                  1.    <u>The Court's Formulation Of Instruction No. 6 Was Not Erroneous</u>

5        Plaintiff first contends that the Court abused its discretion and committed error by not giving

6  Plaintiff's proposed Summary Judgment Instruction and argues that the "instruction was confusing and

7  ultimately led to an erroneous verdict."  Mot. at 21.  Plaintiff is incorrect.

8        The Court's formulation of the summary judgment instruction was not erroneous or an abuse of

9  discretion.  The instruction adequately informed the jury of its charge—and what issues it had to assume

10  were resolved—while protecting Defendants from the "serious danger" of unfair prejudice inherent in

11  judicial findings of fact.  *See United States v. Sine*, 493 F.3d 1021, 1033-34 (9th Cir. 2007) ("jurors are

12  likely to defer to findings and determinations relevant to credibility made by an authoritative, professional

13  factfinder rather than determine those issues for themselves").  The Court has discretion in formulating

14  jury instructions and is permitted to use the "you are to assume" construction.  *See e.g., Sherwin-Williams*

15  *Co. v. PPG Indus., Inc.*, 2021 WL 5648019, at *3 (W.D. Pa. Dec. 1, 2021) (adopting "you can assume"

16  language in jury instruction to describe issue previously decided by the court and holding that the

17  alternative phrase "it has been determined" was unnecessary and may confuse the jury).  The Court clearly

18  instructed the jury "was to assume that the statements were false and made recklessly," and the jury was

19  presumed to follow that instruction.  *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009); *United*

20  *States v. Reyes*, 660 F.3d 454, 468 (9th Cir. 2011).

21        Plaintiff's argument that the instruction created confusion amounts to nothing more than

22  complaints about the evidence in the case and untimely objections to Defendants' arguments.  Plaintiff

23  asserts that the instruction was prejudicial and confusing because Defendants elicited testimony regarding

24  Mr. Musk's meeting with the PIF and his ability to raise money.  But this testimony was relevant to the

25  question of whether Mr. Musk's statements were "materially false" which, as the Jury Instructions made

26  clear, required an inquiry into whether the statements "give[] a reasonable investor the impression of a

27  state of affairs that differs in a material way from the one that actually exists."  ECF No. 655 at 10. Such

28  an inquiry necessarily called for evidence of what the true state of affairs is and what weight and

DEFENDANTS' OPPOSITION TO PLAINTIFF'S JMOL AND ALTERNATIVE REQUEST FOR NEW TRIAL

1  interpretation the reasonable investor would give to the statements.   Plaintiff also complains that

2  Defendants offered evidence regarding the states of mind of Mr. Musk and the Director Defendants, but

3  that information was probative to the Director Defendants' good faith defense and the issue of

4  apportionment. *Id.* at 19-20.  Plaintiff chose to bring a Section 20 claim against the Director Defendants—

5  which put their and Mr. Musk's states of mind at issue—and must live with that strategic decision.

6        Plaintiff also lists a number of statements from Defendants' closing argument that he contends

7  were "improper, prejudicial, and factually incorrect." Mot. at 22-23. But if these statements were

8  improper, Plaintiff had the obligation to make an objection at trial.  *See Evoy v. CRST Van Expedited, Inc.*,

9  430 F. Supp. 2d 775, 783 (N.D. Ill. 2006) (new trial based on attorney argument not warranted where

10 "CRST did not object to Evoy's argument" at trial and a marginally related objection "was insufficient to

11 preserve the point that CRST now argues").  Having waived any such objections, he cannot backdoor a

12 request for new trial based on purportedly improper attorney argument through a complaint about the

13 Court's instruction.

14       A review of the entire record shows that the Court's summary judgment instruction "adequately

15 allowed" Plaintiff "to argue [his] theory of the case to the jury without unduly prejudicing" Defendants.

16 *See Madrigal*, 697 F. App'x at 911.  In both his opening and his closing, Plaintiff repeatedly informed the

17 jury that "there [was] no dispute that Elon Musk lied" and that the jury "must assume" that the Tweets

18 were false and made recklessly.  (Tr. 295:19-23; 295:24-25; 313:5-4; 1994:5-10).  And perhaps most

19 importantly, Plaintiff cannot credibly contend that he was prejudiced by the instruction or that the jury

20 was unaware that the Court made its findings of falsity and recklessness when Plaintiff's own expert

21 testified "*that Judge Chen has ruled on certain portions of these being false and not false*."  (Tr.

22 1727:22-1728:2 (Hartzmark).)  The jury knew that the Court found the statements to be false, and still

23 returned a defense verdict.  Any supposed error was thus harmless.  *See Madrigal*, 697 F. App'x at 911.

24            2.    Plaintiff Waived Any Objection To Instruction No. 9

25       Plaintiff asserts the Court erred by instructing the jury that it "still needed to decide whether [Mr.

26 Musk] acted knowingly." Mot. at 24.  But Plaintiff never objected to this instruction, *see* ECF No. 549 at

27 8, and in fact included "knowing" as an element of scienter in his own proposed instructions, ECF No.

28 477 at 69.  He therefore waived his ability to challenge it now.  *See United States v. Kaplan*, 836 F.3d

1199, 1216-17 (9th Cir. 2016) ("Waiver of a jury instruction occurs when a party considers 'the controlling law, or omitted element, and, in spite of being aware of the applicable law, proposed or accepted a flawed instruction.'").  And since Plaintiff's counsel told the jury, moments into his opening, that "Elon Musk lied," Plaintiff cannot now claim that he was prejudiced by an instruction informing the jury that it must consider whether Mr. Musk acted with "knowing" scienter.  (Tr. 295:19-23.)[3]

    3. <u>The Court Did Not Err By Declining To Give Plaintiff's Proposed Missing Witness Instruction.</u>

  Finally, Plaintiff argues that the Court erred by failing to give his proffered "Missing Witness" Instruction.  The failure to give this instruction—which was transparently offered to bolster the probative effect of the dubious so-called PIF Minutes (Ex. 80)—was not an error.  Plaintiff was permitted to introduce hearsay evidence, in the form of the PIF Minutes and Mr. Al-Rumayyan's text messages, without affording the Defendants the opportunity to cross-examine their authors.  Defendants were well within their rights to challenge the veracity of those documents and Plaintiff was not prejudiced by the Court's decision to not read a plainly improper bolstering instruction.  Plaintiff's argument that the failure to give the instruction "unfairly influenced the jury's deliberations" is meritless.  The Court struck and instructed the jury to ignore Mr. Musk's comments about the absence of the PIF, (Tr. 837:3-6), and Plaintiff failed to object and therefore waived any grounds for a new trial based on Defense counsel's arguments regarding the PIF Notes or the PIF's absence.  *See e.g., Evoy*, 430 F. Supp. 2d at 783.

  Examining the Court's 26 pages of jury instructions and the proceedings as a whole, Plaintiff cannot come close to proving that the jury would have reached a different verdict absent this alleged instructional error.  *See Madrigal*, 697 F. App'x at 911.  Plaintiff's New Trial Motion should be denied.

<u>**CONCLUSION**</u>

  For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Judgment as a Matter of Law and Motion for New Trial and enter judgment in favor of all Defendants.

---

[3]  Further, this instruction was necessary for apportionment purposes in light of Plaintiff's Rule 20 claim, and in any event any purported error was harmless given that the Court informed the jury that recklessness suffices to prove the scienter element.

DATED:  March 20, 2023        Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Alex Spiro*
    Alex Spiro *(appearing pro hac vice)*

*Attorneys for Tesla, Inc., Elon Musk, Brad W. Buss, Robyn Denholm, Ira Ehrenpreis, Antonio J. Gracias, James Murdoch, Kimbal Musk, and Linda Johnson Rice*

### ATTESTATION

I, Kyle K. Batter, am the ECF user whose ID and password are being used to file the above document. In compliance with Local Rule 5-1(h)(3), I hereby attest that Alex Spiro has concurred in the filing of the above document.

*/s/ Kyle K. Batter*
Kyle K. Batter