**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Tel.: (415) 373-1671
Email: aapton@zlk.com
         amccall@zlk.com

Attorneys for Plaintiff and Counsel for the Class

[Additional Counsel on Signature Block]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| IN RE TESLA, INC. SECURITIES LITIGATION | Case No. 3:18-cv-04865-EMC<br><br>**PLAINTIFF'S BRIEF IN REPLY AND FURTHER SUPPORT OF MOTION FOR JUDGMENT AS MATTER OF LAW OR IN THE ALTERNATIVE FOR A NEW TRIAL**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date: April 6, 2023<br>Time: 1:30 p.m.<br>Location: Courtroom 5, 17th Floor<br>Judge: Hon. Edward M. Chen |
|---|---|

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................. 1

II.  ARGUMENT ........................................................................................................................ 3

  A.  Defendants' Opposition Is Premised on an Incorrect Statement of the Law Concerning Rule 50 and Rule 59 Motions. ............................................................... 3

  B.  The Only Conclusion Supported by the Evidence is that Musk's False Statements Were Material. ........................................................................................................... 5

     1.  Defendants Improperly Relitigated Falsity. ..................................................... 6

     2.  The Evidentiary Record Demonstrates Musk's False Statements Were Material ........................................................................................................... 8

  C.  Defendants Offered NO Evidence to Rebut the Presumption of Reliance. .......... 10

  D.  Confusing Jury Instructions and Improper Attorney Argument from Defendants Resulted in an Unfair and Prejudicial Deliberation Process. ............................... 12

III. CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Student Fin. Group, Inc. v. Dade Med. Coll., Inc.*
    180 F.Supp.3d 671 (S.D. Cal. 2015) ....................................................................................... 3

*Chess v. Dovey*,
    790 F.3d 961 (9th Cir. 2015) ................................................................................................. 14

*Dang v. Cross*,
    422 F.3d 800 (9th Cir. 2005) ................................................................................................. 12

*Edmark Auto, Inc. v. Zurich Am. Ins. Co.*,
    No. 15-cv-00520, 2020 WL 127979 (D. Idaho Jan. 9, 2020) .................................................. 3

*Edwards Lifesciences Corp. v. Meril Life Sci. Pvt. Ltd*,
    No. 19-cv-06593, 2021 WL 5233129 (N.D. Cal. Nov. 10, 2021) ........................................... 3

*EEOC v. Go Daddy Software, Inc.*,
    581 F.3d 951 (9th Cir. 2009) ................................................................................................... 4

*Estate of Brown v. Lambert*,
    478 F. Supp. 3d 1006 (S.D. Cal. 2020) ................................................................................. 12

*Fruend v. Nycomed Amersham*,
    347 F.3d 752 (9th Cir. 2003) ............................................................................................. 3, 5

*Fujifilm Corp. v. Motorola Mobility, LLC*,
    182 F.Supp.3d 1014 (N.D. Cal. 2016) .................................................................................... 4

*Gannt v. City of Los Angeles*,
    717 F.3d 702 (9th Cir. 2013) ................................................................................................. 12

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014) .......................................................................................................... 10

*Hangarter v. Provident Life and Acc. Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) ................................................................................................. 14

*In re Harmonic Inc. Sec. Litig.*,
    163 F.Supp.2d 1079 (N.D. Cal. 2001) .................................................................................. 10

*Lakeside-Scott v. Multnomah Cnty.*,
    556 F.3d 797 (9th Cir. 2009) ............................................................................................ 5, 12

*Madrigal v. Allstate Ins. Co.*,
    215 F.Supp.3d 870 (C.D. Cal. 2006) ....................................................................................... 3

*Marker v. City of San Jose*,
    No. C-09-05956, 2014 WL 5302175 (N.D. Cal. Oct. 16, 2014) .......................................... 4

*McAllister v. Hawaiiana Mgmt. Co.*,
    918 F. Supp. 2d 1044 (D. Haw. 2013) ................................................................................ 5

*Miller v. Thane Int'l, Inc.*,
    519 F.3d 879 (9th Cir. 2008) ............................................................................................ 10

*Oglesby v. S. Pac. Transp. Co.*,
    6 F.3d 603 (9th Cir. 1993) ........................................................................................ 12, 13

*PAI Corp v. Inegrated Sci. Solutions, Inc.*,
    No. 2009 WL 1106809 (N.D. Cal. Apr. 23, 2009) ............................................................. 3

*Peralta v. Dillard*,
    744 F.3d 1076 (9th Cir. 2014) ........................................................................................... 5

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) ........................................................................................................... 3

*Sagicor Life Ins. Co. v. Jang*,
    No. 19-2028, 2022 WL 17328237 (C.D. Cal. Oct. 27, 2022) ............................................ 4

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976) ........................................................................................................... 8

*In re Valence Tech. Sec. Litig.*,
    No. C 94-1542-SC, 1995 WL 274343 (N.D. Cal. May 8, 1995) ..................................... 10

**Rules**

Fed. R. Civ. P. 50(a) ..................................................................................................................... 3

Fed. R. Civ. P. 50(b) ..................................................................................................................... 2

Fed. R. Civ. P. 56(a) ..................................................................................................................... 4

Fed. R. Civ. P. 59(a)(1) ................................................................................................................. 4

I. **INTRODUCTION**

Plaintiff properly moved under Fed. R. Civ. P. 50(b) for judgment as a matter of law on the elements of materiality and reliance. The law expressly supports moving under some legal issues and not an entire legal claim. Judgment as a matter of law in Plaintiff's favor on the issues of materiality and reliance is fitting here. The evidence presented at trial on the materiality of Musk's false statements permits only one reasonable conclusion—that the false statements were undisputedly material. Defendants' entire strategy to defend against materiality here was to relitigate the issue of falsity, previously determined by the Court at summary judgment. While the Court put some protections in place, Defendants ultimately presented testimony regarding falsity, not materiality, and continue to do so now. Defendants also offered no evidence to rebut the presumption of reliance, which was their burden. Their argument that Plaintiff did not distinguish between the truthful part of the "funding secured tweet" and the false part is entirely contradicted by Dr. Hartzmark's extensive testimony regarding Musk's consideration of taking Tesla private being previously known to the market. With respect to their argument that the stock price reaction to the August 13 blogpost demonstrates the immateriality of the false statements, this required the jury to rely wholly on improper attorney testimony, as they put forth no evidence on this and relied solely on attorney argument.

Plaintiff's main objection to the jury instructions was that they allowed the jury to revisit the summary judgment order and determine whether Plaintiff proved falsity and scienter. Contrary to Defendants' assertion that the jury was presumed to have followed the instructions properly assuming falsity and scienter, the reality of what occurred at trial cannot be denied. Not only witness testimony, but extensive references during closing to Musk having secured funding, and having acted in good faith, in direct contrast to the Court's ruling at summary judgment, resulted in error.

Defendants continue to twist testimony and contort the record to further their position. Several of the more egregious factual misrepresentations are worth noting:

- Board minutes and related testimony cited by Defendants do not support Defendants' assertion that the PIF had made a "strong verbal commitment" to fund the take-private

transaction or that the PIF, and Mr. Musk had a "handshake deal" in principle. Opp. at 5, 12. In fact, neither the minutes nor the testimony say "strong verbal commitment" or "handshake deal." Rather, the minutes and testimony provide self-serving recollections from Musk that the PIF indicated "it was willing" to fund a going private transaction (891:10-21), from Ahuja that the PIF was "interested in helping Mr. Musk take the company private" (1195:6-1198:3), and from Teller that Yasir "had the intent to fund a take-private transaction of Tesla." 1892:22-1893:3.

- Defendants mistakenly attribute the testimony of Egon Durban to Dan Dees, and in so doing, misquote the record. Opp. at 6, 12. When asked what "funding secured" meant, Durban did not respond that it meant Musk "was in touch with the capital required," as quoted by Defendants. The cited testimony, 1385:22-1386:3, reads:
  > **Q** And with respect it to the phrase "Funding secured," you didn't know what that phrase meant when you read it, correct?
  > **A** Correct.
  > **Q** And in fact, you said you had never seen that term before. Correct?
  > **A** Yeah. The words I used is it's not a term of art in our industry.
  
  Both Mr. Durban and Mr. Dees testified unequivocally that Musk never obtained **any** committed financing for a go-private transaction. (1372:4-5; 1394:6-1395:4; 1463:9-20).

- Dr. Hartzmark did not opine, as indicated by Defendants, regarding the stock price on August 13 reacting to disclosure of a material misrepresentation. Opp. at 13. Rather he was asked about the implied volatility and the stock price lines on a chart for August 13, and he says "[t]he data shows that the implied volatility goes down, which says that the market sentiment is more – more feeling like this is going to happen, and the price goes up slightly." 1688:2-9. This testimony supports Plaintiff's argument that the August 13 blogpost confirmed the false statements made on August 7 rather than serving as a corrective disclosure as urged by Defendants.

- Defendants attribute quotes to Plaintiff that were not his words. Plaintiff did not testify, as cited in their brief, that "PIF had strongly expressed their support." Opp. at 16. Rather, counsel quoted from the August 13 blogpost in asking Plaintiff a question. 422:13-18.

- Defendants also misstate the testimony of Mr. Koney who did not indicate he believed there was a "verbal commitment," Opp. at 16, rather he was questioning whether a verbal commitment existed. Koney Tr. 22:3-6. Mr. Koney also expressly testified that Musk's statement that funding was secured was important to him. *Id*. 71:20-22.

Plaintiff should be granted judgment as a matter of law on the elements of materiality and reliance along with a new trial and proper instructions so the jury can deliberate on the sole remaining issues of loss causation and damages, *i.e.* the amount of harm Musk caused investors.

## II. ARGUMENT

### A. Defendants' Opposition Is Premised on an Incorrect Statement of the Law Concerning Rule 50 and Rule 59 Motions.

Defendants argue that a party must move under Fed. R. Civ. P. 50(b) on all elements of a pending claim. *See* Def. Opp. at 8. However, there is no such requirement. *See EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961-62 (9th Cir. 2009) (discussing a party's decision to move for JMOL on two elements of its retaliation claim—(1) whether the employee engaged in a protected activity and (2) whether there was insufficient evidence that he was terminated because of the activity); *Fruend v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (discussing a party's attempt to move for JMOL on a single element of its claim and reversing on other grounds); *see also Edmark Auto, Inc. v. Zurich Am. Ins. Co.*, No. 15-cv-00520, 2020 WL 127979, at *2 (D. Idaho Jan. 9, 2020) (" . . . courts generally require sufficiency-of-the-evidence arguments to be made at the level of a claim's specific elements or sub-elements"); *PAI Corp v. Inegrated Sci. Solutions, Inc.*, No. 2009 WL 1106809, at *4 (N.D. Cal. Apr. 23, 2009) (granting a new trial on the issue of damages and asserting that " . . . a court may grant a motion for judgment as a matter of law ("JMOL") against a party on a **claim or issue** . . . ") (emphasis added).

Defendants contrast the language in Rule 56 with Rule 50, claiming that there is a difference in language that supports a different standard. But Defendants gloss over that courts in the Ninth Circuit apply the same standard for a judgment as a matter of law under Fed. R. Civ. P. 50(a) as they do for summary judgment. *See Madrigal v. Allstate Ins. Co.*, 215 F.Supp.3d 870, 892 (C.D. Cal. 2006) (referencing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Defendants concede that a party may move for summary judgment as to part of a claim. *See* Def. Opp. at 8; *see, e. g.*, *Edwards Lifesciences Corp. v. Meril Life Sci. Pvt. Ltd*, No. 19-cv-06593, 2021 WL 5233129 at *2 (N.D. Cal. Nov. 10, 2021) (denying summary judgment for a plaintiff that properly moved for partial summary judgment on certain elements of the pending claims); *Am. Student Fin. Group, Inc. v. Dade Med. Coll., Inc.* 180 F.Supp.3d 671, 677-78 (S.D. Cal. 2015) (noting that a party may move for summary judgment as to a claim or part of a claim). Because the summary judgment standard mirrors the judgment as a matter of law ("JMOL")

standard, it would track that JMOL is not an all or nothing proposition. This inquiry also applies to renewed motions for judgment as a matter of law under Rule 50(b). *See id*.

The plain language of Rule 50 confirms this. Rule 50(a)(1) states, in pertinent part:

> [i]f a party has been fully heard **on an issue** during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve **the issue** against the party;
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding **on that issue**.

(emphasis added). The rule makes clear that a party may raise a sufficiency argument on a legal issue, not necessarily on a complete legal claim. This language tracks Rule 56, which allows a party to seek summary judgment on all or part of a claim. *See* Fed. R. Civ. P. 56(a). Thus, Plaintiff may move for judgment in his favor on the elements of materiality and reliance and the Court may order a new trial based solely on the remaining issues: loss causation and damages. *See* Fed. R. Civ. P. 50(b)(2) (permitting a Court to order a new trial when ruling on a renewed JMOL); Fed. R. Civ. P. 59(a)(1) ("The court may . . . grant a new trial on ***all or some of the issues***—and to any party . . ."); *see also Fujifilm Corp. v. Motorola Mobility, LLC*, 182 F.Supp.3d 1014, 1014 (N.D. Cal. 2016) (allowing a party to move for a JMOL and new trial on "virtually every issue on which the jury did not find its favor" and finding JMOL on some, but not all issues the party moved on). This is precisely the relief allowed by the Ninth Circuit and requested by Plaintiff in his motion.

Examining Defendants' response, the present case is easily distinguishable from the cases cited within. First, Defendants place significant emphasis on *Sagicor Life Ins. Co. v. Jang*, No. 19-2028, 2022 WL 17328237, at *5 (C.D. Cal. Oct. 27, 2022), a malicious prosecution case where the plaintiff, in its Rule 50(a) motion, only raised the issue of malice. Because the plaintiff failed to raise any other issue, the Court could not analyze the remaining elements of the claim. *Sagicor* cuts against Defendants for two reasons: (1) the Court in *Sagicor* permitted the plaintiff to move

1  for JMOL on a single element of its claim (which Defendants now claim is improper here); and
2  (2) there were several other disputed issues that the plaintiff failed to raise. Here, as noted in
3  Plaintiff's initial 50(a) motion, all elements, except materiality and reliance, are undisputed.
4  Unlike in *Sagicor*, Plaintiff properly raised both disputed issues in his 50(a) and 50(b) motions.

5  Next, Defendants cite to *Marker v. City of San Jose*, No. C-09-05956, 2014 WL 5302175,
6  at *1 (N.D. Cal. Oct. 16, 2014) and *McAllister v. Hawaiiana Mgmt. Co.*, 918 F. Supp. 2d 1044,
7  1062 (D. Haw. 2013) as cases where courts required the plaintiff to establish evidence of each
8  element of its claim. But in both cases the plaintiff sought JMOL on various elements and issues
9  concerning the overarching claims in dispute. These courts' holdings—whether to grant or deny
10 the motion—are immaterial to the present analysis, because the issue Defendants raise here
11 focuses solely on whether a party may seek JMOL on some issues or elements of the claims in
12 dispute. And in both cases cited above, neither Court denied the pending JMOL for the sole reason
13 the plaintiffs sought ruling on some of the issues and elements of their claims. As a result, based
14 on plain language of the rule, along with the dicta from Defendants' own cases, a party is not
15 required to move for JMOL on all elements of its claims.

16 On the contrary, the only requirement the Ninth Circuit has enumerated is that a party
17 cannot raise **new** arguments on a Rule 50(b) motion that it did not raise in its pre-verdict Rule
18 50(a) motion. *See Fruend*, 347 F.3d at 761. Here, Plaintiff has fully complied with this
19 requirement by reasserting the same arguments he asserted in his Rule 50(a) motion and in his
20 Rule 50(b) motion. Specifically, in the Rule 50(a) motion, Plaintiff asserted that JMOL should be
21 granted on the elements of materiality and reliance, and a new trial be ordered on any remaining
22 elements. *See* ECF No. 657 at 17. In the Rule 50(b) motion, this same argument is put forth with
23 Plaintiff focusing on the elements of materiality and reliance. *See* ECF No. 685 at 25. Because no
24 new arguments are set forth, Plaintiff's 50(b) motion is proper in form and in argument.

25 **B.  The Only Conclusion Supported by the Evidence is that Musk's False
26      Statements Were Material.**

27 The evidence presented at trial demonstrates that Musk's false statements were material—
28 that is the only conclusion. Because such a conclusion is contrary to the jury's verdict, judgment

1  as a matter of law is appropriate. *See Peralta v. Dillard*, 744 F.3d 1076, 1085 (9th Cir. 2014)
2  (finding that Court should enter judgment as a matter of law when the evidence presented at trial
3  permits "only one reasonable conclusion" which is contrary to the jury verdict); *see also Lakeside-*
4  *Scott v. Multnomah Cnty.*, 556 F.3d 797, 802 (9th Cir. 2009) (internal quotation marks and citation
5  omitted). The evidence proffered by Defendants to support their position goes to falsity, which
6  was already decided by the Court, not materiality. Substantial evidence does not exist here
7  supporting Defendants. Indeed, the evidence overwhelmingly favors Plaintiff.

8              1.       <u>Defendants Improperly Relitigated Falsity.</u>

9       Defendants argued at trial and now in this motion that a "strong verbal commitment" and
10 funding potentially being available were nearly the same as "funding secured" such that the
11 statement could not be materially false. At summary judgment, the Court found that "funding
12 secured" was false. ECF No. 387 at 32. In its order, the Court explicitly stated that:

13
> the Court acknowledges that there is some softness to the term
> "secured." But even accepting that there is some room for
14
> disagreement as to precisely how secured something must be before
> the term may be appropriately used, the terms is not so elastic as to
15
> escape any real meaning. No reasonable jury could find "Funding
> secured" accurate and not misleading even under a liberal
16
> understanding of the term "secured."

17 *Id*. at 25. Defendants ignored that the Court previously found that "funding secured" is not so
18 elastic as to escape any real meaning, and argued that in fact, the meaning could be stretched such
19 that the state of "actual affairs" was not that different to "funding secured." But funding was not
20 secured. And the issue that Plaintiff was most concerned with from the outset of the trial, that
21 Defendants would ignore the Court's order on summary judgment and relitigate falsity, transpired
22 at trial, and again materializes in their opposition.

23      The Court recognized this issue at the outset of the trial giving a cautionary instruction to
24 the jury.  1/20 Tr. at 474:15-24. Despite the cautionary jury instruction, Defendants continually
25 subverted, ultimately successfully, the Court's ruling on falsity. Despite being told throughout
26 pretrial proceedings to abide by the Court's summary judgment order, counsel for Defendants
27 proceeded to directly undermine it in opening statements by claiming "[Mr. Musk] had the
28 funding" (1/18 Tr. at 334), that "***It was secured***" (*id*. at 328). Through Musk, Defendants elicited

1  testimony that unquestionably ignored the Court's holding on summary judgment and brought
2  the issue of literal falsity improperly back to the jury. On no less than ten occasions, Musk testified
3  to the accuracy and truthfulness of the "funding secured" tweets. *See* 1/24 Tr. at 926:14-17,
4  927:25-928:17, 941:17-942:6, 952:12-22, 967:25-968:2, 969:23-970:7, 972:11-13, 975:7-13,
5  1033:6-22, 1037:25-1038:3. Defendants further obfuscated the Court's summary judgment ruling
6  on falsity with the testimony of Deepak Ahuja and Antonio Gracias, whose testimony left the jury
7  with the erroneous impression that Musk had obtained the funding to take Tesla private which, in
8  turn, gives rise to the false conclusion that funding was "secured." *See* 1/25 Tr. at 1183:18-
9  1184:11, 1197:14-1198:3, 1204:1-10, 1204:16-25, 1207:7-17, 1247:4-6, 1264:12-1265:2.

10  All evidence offered by Defendants illustrating that there was a "strong verbal
11  commitment" or "ample funding available" goes to the element of "falsity" and not "materiality."
12  Funding was not secured at the time Musk made the tweet, and Defendants' arguments that the
13  actual state of affairs was not that different guts the Court's ruling. This is not a situation where
14  revenue was overstated by a miniscule amount. This was a Company's CEO publicly announcing
15  that he had secured funding for a potential going private transaction at $420 per share—a $60
16  billion deal. Musk did not tweet "funding is available" or "funding is not an issue," he tweeted
17  "funding secured," and the Court ruled that that statement was false, that funding was not secured.

18  Defendants also ignored and continue to ignore the Court's finding that "Investor support
19  is confirmed" is false and misleading. ECF No. 387 at 2-27. The Court found that no reasonable
20  jury "could conclude that support from the Saudi PIF was confirmed given the preliminary nature
21  of the discussions between the PIF and Tesla." *Id*. at 27. Defendants argue that "the record is clear
22  that Musk had support from the PIF *and* that he had already received confirmation of support for
23  his contemplated transaction from Ron Baron, a significant Tesla investor." Opp. at 13. Not only
24  does this improperly re-litigate the issue of falsity, but it is also factually incorrect. The email
25  from Ron Baron was hardly confirmation of support, but rather a mere request to be considered
26  as part of any buying group. *See* Ex. 1001 (erroneously cited as Ex. 1008 by Defendants).
27  Moreover, Musk **never** testified that he contemplated Ron Baron when tweeting investor support
28  confirmed; indeed there is no indication Musk even saw Baron's message before this tweet. *See*

1   *also* Ex. 1001 (showing Musk's reply to Baron's message at 6:20pm, well after he tweeted
2   "Investor support is confirmed."). This demonstrates that Defendants intended to and in fact did
3   improperly re-litigate falsity in front of the jury. The Court found that investor support was not
4   confirmed, and Defendants openly claim that they presented evidence at trial demonstrating that
5   it was.

6   Similarly, with respect to Musk's August 7 statement that "[o]nly reason why this is not
7   certain is that it's contingent on a shareholder vote," the Court stated that "[w]hile the blog post
8   makes clear that a final decision on taking Tesla private had not been made, it did not specify any
9   contingencies other than the finaliz[ation] through a vote of our shareholders. Ex. 12. Thus, a
10  reasonable investor could *only* conclude that the sole contingency left for taking Tesla private
11  was a shareholder vote." ECF No. 387 at 28-29. This ruling contradicts the argument that
12  Defendants are asserting now: the second Tweet (Ex. 13), must be read in context with the August
13  7 blogpost (Ex. 12), and "no reasonable investor would interpret Mr. Musk's Tweet as an
14  announcement that the proposal would go straight to a shareholder vote." Opp. at 14.

15  Defendants have disguised their re-litigation of the Court's summary judgment order on
16  falsity as arguments claiming the tweets were immaterial. The falsity of Musk's statements is not
17  in dispute. See ECF 387. This evidence proffered at trial supports the opposite of Defendants'
18  conclusion about materiality: the jury does not have a legally sufficient evidentiary basis to find
19  that the tweets were not material.

20              2.      The Evidentiary Record Demonstrates Musk's False Statements Were
21                      Material.

22  The evidentiary record here establishes clearly that Musk's August 7 false statements were
23  material when made, and the testimony supports that these false statements "significantly altered
24  the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438,
25  449 (1976). Despite Defendants' argument to the contrary, Plaintiff put forth substantial evidence
26  demonstrating that the false statement, "funding secured" was material, not the portion of the
27  tweet that Defendants contend was "undisputedly true." Opp. at 15. Musk himself testified that
28  the "funding secured" portion of the tweet was material market-moving news. 1/23 Tr. at 787:23-

1   788:4. Contrary to Defendants' argument, neither Ahuja nor Denholm testified that "the only
2   material statement was Musk's announcement of his consideration." Opp. at 15.  Both instead
3   testified that the consideration was simply material. They were not asked if that was the only
4   material information. 1159:8-10; 1477:13-19. Lead Plaintiff Glen Littleton said unequivocally
5   that "funding secured" was the "primary driver," the "only thing that mattered," and the "most
6   important" part of the August 7, 2018 tweet. 1/18 Tr. at 362:9-13; 389:17-18; 461:23-462:8.
7   Timothy Fries testified that "the phrase 'funding secured' was critical." 1/20 Tr. at 509:10-12.
8   Not to mention, Plaintiff set forth extensive evidence showing the market's reaction to the
9   "funding secured" tweet to demonstrate materiality. *See* 1/24 Tr. at 1054:10-17, 1058:8-1059:18,
10  1060:14-1062:24, 1064:16-1066:14*; see also* Brinkman Tr. 61:9-64:2; 72:24-73:15; Ex. 15.
11  Defendants knew of the materiality of the statement "funding secured" to the market based on the
12  immediate inquiries Tesla received about "funding secured." Ex.337.

13         Musk's "Investor support is confirmed" tweet, Ex. 13, was also material. Joseph Fath, a
14  Vice President at T. Rowe Price, testified as to the importance of the second "investor support is
15  confirmed" tweet in light of the "funding secured" tweet Musk sent just hours earlier. Fath Dep.
16  Tr. 45:23-46:8 ("Q. What was your understanding of the meaning of the words 'investor support
17  is confirmed'? A. Well, with the funding secured Tweet followed by this, that he had it lined up,
18  whatever investors that may be, to support the transaction and be able to take them private. That
19  was my, you know - - and again, I think it just reinforced the funding secured."); *see also*
20  Brinkman Dep. Tr. 62:11-20 ("[W]hen he says investor support is confirmed, only reason why
21  it's not certain is because it's contingent on shareholder vote, that tells me that he has got the
22  approval of the board of directors of Tesla, maybe they haven't officially voted, but he has
23  consulted with them as you would imagine before the CEO would go public saying he is
24  considering taking the company private.").

25         When referring to the second tweet ("Investor support is confirmed . . . ."), Dr. Hartzmark
26  also confirmed that the "qualitative information . . . suggests that its information . . . is important
27  to the mix of information investors act[ed] on." 1/31 Tr. at 1674:9-14. Dr. Hartzmark testified
28  that "I've gone through and looked at these dates, looked at the movements in implied volatility

1  and prices, it would suggest that, you know, that 'investor support confirmed' and 'funding
2  secured' are very important pieces of information. And, again, the reason is that we see that the
3  investors were interested in it. That's the quintessential definition for economic materiality." 1/31
4  Tr. at 1696:1-9. Dr. Hartzmark explicitly identified a substantial spike in response to the "Investor
5  support is confirmed . . ." tweet once trading resumed on Nasdaq after the halt. *Id*. at 1651:16-25
6  ("When—at 3:36 p.m. Eastern time Mr. Musk tweets: 'Investor support is confirmed…' And
7  that's in the middle [of a trading day]. That's why trading is halted. Immediately at 3:45 when
8  trading resumes, again, as you would expect in an efficient market, the price immediately spikes
9  up."). Mr. Viecha also received numerous questions about the "Investor support is confirmed"
10 tweet, similarly demonstrating its importance to the market. 1/25 Tr. at 1278:9-11.

11       Defendants' attempt to use the August 13 blogpost to assess the materiality of the August
12 7 tweets has no basis in law. The materiality of a false statement must be decided based on the
13 circumstances that existed at the time of the statement. *See* ECF No. 573 at 40; *see also Miller v.*
14 *Thane Int'l, Inc.*, 519 F.3d 879, 892 (9th Cir. 2008); *In re Harmonic Inc. Sec. Litig.*, 163 F.Supp.2d
15 1079, 1085 (N.D. Cal. 2001) (finding that material falsity is determined based on the time the
16 false statement was made); *In re Valence Tech. Sec. Litig.*, No. C 94-1542-SC, 1995 WL 274343,
17 at *7 (N.D. Cal. May 8, 1995) (same). Using statements made almost one week later to argue that
18 Musk's false statements were not material when made is contrary to law and common sense.
19 Furthermore, Dr. Hartzmark carefully examined the market response to the August 13 blogpost
20 both quantitively and qualitatively and opined that the market response to the blogpost itself was
21 not statistically significant and that artificial inflation caused by the August 7 tweets remained in
22 Tesla's stock price after the blogpost until August 17. No contrary evidence, expert or otherwise,
23 was offered by Defendants. There was no basis in the trial record to support a jury finding that
24 the August 7 tweets were immaterial at the time they were made, and judgment should be entered
25 in Plaintiff's favor on this issue.

26       **C.**    **Defendants Offered <u>No</u> Evidence to Rebut the Presumption of Reliance.**

27       Aside from arguing that materiality was not established, Defendants concede the other
28 elements of reliance based on fraud-on-the-market. Opp. at 17. As set forth above, the evidence

1   that the August 7 tweets were material was overwhelming. To rebut the presumption of class-
2   wide reliance in a fraud-on-the-market case, it was Defendants' burden to proffer "evidence that
3   an alleged misrepresentation did not actually affect the market price of the stock." *Halliburton*
4   *Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2417 (2014). Defendants failed to proffer **any**
5   evidence on this, calling no expert, nor proffering any evidence disputing the material impact of
6   the August 7 tweets on the stock price. Rather, Defendants misconstrue evidence to support their
7   position that the false statements did not impact the stock price. Opp. at 17. Contrary to
8   Defendants' argument, there was **no** evidence before the jury demonstrating that the first
9   statement in the first tweet, Ex. 8, was what exclusively moved the market. Defendants' attempt
10  to utilize testimony by Professor Heston who offered no opinion on materiality, damages or loss
11  causation in response to a hypothetical question to demonstrate evidence properly before the jury
12  is disingenuous and totally mischaracterizes the witness's testimony.[1]

13  Defendants argue that Plaintiff has not distinguished between the impact on the market of
14  "Mr. Musk's true statements" and his false statements. Opp. at 17. This argument fails. Plaintiff
15  presented evidence that the market was already aware of Musk's consideration of taking Tesla
16  private and a reasonable price for such a transaction was known in the marketplace. 1/31 Tr. at
17  1729:15-23; 2/1 Tr. at1844:18-1845:9. Dr. Hartzmark testified that Musk's interest in taking
18  Tesla private was already known to the market. 1/31 Tr. at 1729:20-23 ("[T]here is evidence, I
19  believe, that Mr. Musk had previously indicated his interest in taking Tesla private…"). Dr.
20  Hartzmark further confirmed evidence that the concept of Tesla going private was not new for
21  Musk. Ex. 33; 2/1 Tr. at 1844:18-1845:8 ("[T]here's mention in terms of his wanting to take the
22  company private, that that was – was well known to the market."). Musk himself conceded that

---

[1] In response to questioning regarding whether it was typical following a merger or buyout announcement for there to be abrupt long-term option movement and no movement with short-term options, counsel them posed the question: "Q: So if Mr. Musk had, for example, truthfully tweeted out "Am considering taking Tesla private at $420," that's it, okay, you might expect the same exact movement in option prices. Right? A: Yes. If the market believed the information, it would have that effect." 1/31 Tr. at 1617:12 – 1618:1. Professor Heston merely opined that if the market treated the two statements as equivalent, then it would react the same way. Professor Heston offered no opinion whether his analysis showed the market, in fact, considered the two statements as identical as Defendants now argue.

1  he wanted to communicate by his tweet "three pieces of information" to "all investors of Tesla"
2  that: (1) he was considering taking Tesla private, (2) with funding secured, (3) at $420. Tr. 787:4-
3  15; 787:23-24. Musk as well as the market understood the tweet as a unit.

4      Defendants' only remaining argument on reliance is that a jury could infer based on
5  Tesla's stock price movement after the August 13 blogpost that the false statements made almost
6  one week prior did not affect the market price and therefore presumption of reliance is effectively
7  rebutted. Opp. at 17. This argument also fails. Although Defendants note that Tesla's stock price
8  increased after the August 13 blogpost, they provide no evidence or testimony explaining why or
9  whether the increase was statistically significant. Nor did they proffer any evidence that this stock
10 price increase can be linked to the materiality of the tweets that occurred almost one week prior.
11 Defendants declined to have an expert testify to this and rebut Dr. Hartzmark's unequivocal
12 testimony on this issue. They asked the jury and are now asking this Court to rely on their
13 speculation alone, and that is a proper basis for judgment as a matter of law. *See Lakeside-Scott*
14 *v. Multnomah Cnty.*, 556 F.3d 797, 803 (9th Cir. 2009) (finding that judgment as a matter of law
15 is also "appropriate when the jury could have relied only on speculation to reach its verdict.").

16     **D.  Confusing Jury Instructions and Improper Attorney Argument from**
17     **Defendants Resulted in an Unfair and Prejudicial Deliberation Process.**

18     Defendants' opposition misstates the law in response to this argument too. The standard
19 of review on a motion for a new trial due to instructional error is not, as Defendants contend,
20 limited to "abuse of discretion." Defs. Br. at 22. Instead, it can and should be "de novo" when
21 reviewing a "misstate[ment]" of the "elements that must be proved at trial." *Oglesby v. S. Pac.*
22 *Transp. Co.*, 6 F.3d 603, 606 (9th Cir. 1993) (internal citations omitted); *see also Gannt v. City*
23 *of Los Angeles*, 717 F.3d 702, 702 (9th Cir. 2013); *Dang v. Cross*, 422 F.3d 800, 804 (9th Cir.
24 2005) (same). Defendants cannot deny this; indeed, they cite *Estate of Brown v. Lambert*, 478 F.
25 Supp. 3d 1006 (S.D. Cal. 2020), to support their articulation of the review standard, which
26 includes the full text quoted above from *Oglesby*. *See Lambert*, 478 F. Supp. 3d at 1027-28
27 (quoting *Oglesby*, 6 F.3d at 606).

28     Plaintiff's primary objection to the jury instructions was that they allowed the jury to

1  revisit the order on summary judgment and decide anew whether Plaintiff had proven the Rule
2  10b-5 elements of "falsity" and "scienter." As Plaintiff repeatedly voiced during the trial, the "you
3  are to assume" directive within Jury Instruction Nos. 6 and 9 created confusion amongst the jurors
4  that was never resolved and ultimately infected the entire deliberation process. *See* ECF No. 593
5  (Motion for Cautionary Jury Instruction); ECF No. 623 (Renewed Motion for Cautionary Jury
6  Instruction); ECF No. 644 (Request for Closing Jury Instruction). Defendants capitalized on the
7  confusion by making numerous unfounded and incorrect statements of fact throughout the
8  proceedings, especially during closing arguments. *See* ECF No. 685 at 29-30 (Motion for
9  Judgment as Matter of Law). This was an instructional error that resulted in "the trial court
10 misstat[ing] the elements that must be proved at trial" and, therefore, requires a de novo review
11 and **not** an abuse of discretion. *See Oglesby*, 6 F.3d at 606 (reversing and remanding because jury
12 instructions were improper under law).

13         Defendants argue in opposition that "the jury was presumed to follow" the jury
14 instructions and properly "assume[d]" that Plaintiff had proven "falsity" and "scienter." Defs. Br.
15 at 23. However, when considering the frequency and severity of Defendants' improper statements
16 denying falsity and recklessness during trial, their argument lacks credibility. On at least a dozen
17 occasions within an hour-and-a-half long closing argument just before deliberations, Defendants
18 told the jury that funding was "secured", and that Musk acted in "good faith" because he believed
19 his tweets were true. *See* ECF No. 685 at 29-30 (*e.g.*, "He knew funding was secured. The PIF
20 told him they would go forward," "He didn't need any money. Funding wasn't the issue," "And
21 Deepak Ahuja knew that the PIF committed in that meeting."). These claims about the funding
22 and Musk's intent came at the end of a three-week long period where witnesses time and again
23 testified contrary to the Court's evidentiary holdings at summary judgment. *See id*. at 28-29
24 (excerpting Musk, Ahuja, Gracias, and Denholm's testimony that funding was "secured", and
25 Musk acted in good faith). In addition to all of this, the notion that the jury was "presumed" to
26 follow the instruction is further undermined by the fact that members of the jury pool itself
27 expressed confusion over the "you are to assume" language during *voir dire*. *See id*. at 28
28 (recounting prospective juror's confusion over scope of deliberation concerning "funding

1 secured" tweets). Thus, like Defendants' other arguments in response to Plaintiff's motion, they
2 have no support in the record to substantiate their claim that Jury Instruction Nos. 6 and 9 did **not**
3 result in error.

4 Defendants' reliance on Plaintiff's statements during opening and closing arguments or,
5 for that matter, Dr. Hartzmark's passing reference to the Court's ruling (for which he was
6 admonished) do not change the outcome on this issue. Defs. Br. at 24. During opening and closing
7 arguments, Plaintiff did **not** misrepresent the facts or testimony but instead only reiterated the
8 "you are to assume" language from the jury instructions. *See*, *e.g.*, 2/3 Tr. at 1994:5-10 (". . . the
9 Court has instructed you that you must assume that Elon Musk's tweets at issue in this case were
10 untrue."). These statements did not eliminate the prejudice caused by Defendants' statements
11 during trial, especially if the jury favored the Court's instructions over anything Plaintiff's counsel
12 might have said during argument.

13 Finally, Defendants look to sidestep the improper statements they made during closing
14 argument by faulting Plaintiff for not objecting in real-time. Defs. Br. at 24. This argument
15 disregards the Court's trial rules, which state that: "In a jury trial, to maximize jury time, parties
16 must alert the Court in advance of any problems that will require discussion outside the presence
17 of the jury so that the conference can be held before court begins or after the jury leaves for the
18 day." Guidelines for Trial in Civil Cases, Objections, p. 7. The argument also ignores the Court's
19 directives against objecting on the basis of the summary judgment order during trial. Indeed, in
20 lieu of objecting based on the summary judgment order, the Court suggested asking for a "limiting
21 instruction" which is what Plaintiff ultimately did. *See* 1/27 Tr. at 1311:12-1312:10. Plaintiff
22 adhered to the Court's rules by first moving *in limine* and then formally objecting in writing to
23 Defendants' improper comments and asking for cautionary instructions and, ultimately, a closing
24 instruction. *See* ECF No. 508 at 21-27 (Pre-Trial Order re Motions *in Limine*); ECF No. 593
25 (Motion for Cautionary Jury Instruction); ECF No. 623 (Renewed Motion for Cautionary Jury
26 Instruction); ECF No. 644 (Request for Closing Jury Instruction); *Chess v. Dovey*, 790 F.3d 961,
27 964 (9th Cir. 2015) ("An objection may be a pointless formality when . . . (2) it is clear from the
28 record that the court knew the party's grounds for disagreement with the instruction, and (3) the

1  party offered an alternative instruction."); *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1011-12 (9th Cir. 2004) (declining to find waiver when the defendant objected to a similar issue during motions in limine, making any further objection futile").

The confusion and prejudice created by the "you are to assume" language within the jury instructions was exacerbated by the additional errors relating to tasking the jury to decide whether Musk acted "knowingly" and failing to give a "missing witness" instruction. *See* ECF No. 685 at 31-32. While the jury had to decide if Musk acted "knowingly," the relevance of that decision was limited only to apportionment of liability. Defendants acknowledge this in their opposition to Plaintiff's motion. *See* Defs. Br. at 25 n.3. However, by instructing the jury that they needed to "still decide whether Mr. Musk acted knowingly" in Jury Instruction No. 9, the Court incorrectly led the jury to believe that Musk's state of mind was still in dispute and somehow relevant for the purposes of deciding whether he committed a Rule 10b-5 violation. Plaintiff objected to the jury instructions and did not, as Defendants now argue, waive his right to do so. *Compare* ECF No. 644 at 3, 10-12 (Plaintiff's Request for Closing Jury Instructions) *with* Defs. Br. at 24-25.

The "missing witness" instruction should also have been given to the jury. While Defendants claim they were "within their rights to challenge the veracity" of the Saudi PIF documents (*e.g.*, Ex. 80), that is not what they ultimately did. Defs. Br. at 25. Instead, they impugned Plaintiff's credibility for failing to call the Saudi PIF as a witness while knowing full-well that Plaintiff attempted to obtain discovery from the foreign entity and, if allowed, would have had the Saudi PIF testify in person and at length. Defendants' improper accusations in this regard added to their overarching prejudicial trial conduct and left the jury believing that Musk had secured funding from the Saudi PIF, even though there was not even a scintilla of evidence to support that conclusion. Plaintiff's proposed jury instruction would have helped correct the prejudice caused by Defendants that ultimately led to a misinformed and erroneous jury verdict.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff's motion should be granted.

//

//

| | | |
|---|---|---|
| 1 | Dated: March 24, 2023 | Respectfully submitted, |
| 2 | | |
| 3 | | **LEVI & KORSINSKY, LLP** |
| 4 | | _s/ Adam M. Apton_ |
| | | Adam M. Apton (SBN 316506) |
| 5 | | Adam C. McCall (SBN 302130) |
| 6 | | 75 Broadway, Suite 202 |
| | | San Francisco, CA 94111 |
| 7 | | Tel.: (415) 373-1671 |
| | | Email: aapton@zlk.com |
| 8 | | Email: amccall@zlk.com |
| 9 | | -and- |
| 10 | | Nicholas I. Porritt |
| 11 | | Elizabeth K. Tripodi |
| | | Alexander A. Krot III |
| 12 | | Kathy E. Ames Valdivieso |
| | | LEVI & KORSINSKY, LLP |
| 13 | | 1101 30th Street N.W., Suite 115 |
| | | Washington, D.C. 20007 |
| 14 | | Tel.: (202) 524-4290 |
| 15 | | Email: nporritt@zlk.com |
| | | Email: etripodi@zlk.com |
| 16 | | Email: akrot@zlk.com |
| | | Email: kavaldivieso@zlk.com |
| 17 | | (admitted _pro hac vice_) |
| 18 | | -and- |
| 19 | | Joseph Levi |
| 20 | | Eduard Korsinsky |
| | | LEVI & KORSINSKY, LLP |
| 21 | | 55 Broadway, 10th Floor |
| | | New York, New York 10006 |
| 22 | | Tel.: (212) 363-7500 |
| 23 | | Email: jlevi@zlk.com |
| | | Email: ek@zlk.com |
| 24 | | (admitted _pro hac vice_) |
| 25 | | _Attorneys for Plaintiff and Counsel for the Class_ |
| 26 | | |
| 27 | | |
| 28 | | |